# Exhibit C



# Hart-Scott-Rodino
## Premerger notification Program

### Introductory Guide III

# Model Request for Additional Information and Documentary Material
## (Second Request)

## Revised June 2010

## FTC Premerger Notification Office

FTC.GOV/BC/HSR                     (202) 326-3100

## AN OVERVIEW

*Guide III* is one in a series of guides prepared by the Federal Trade Commission's Premerger Notification Office ("PNO"). *Guide III* provides background information on the process for a Request for Additional Information and Documentary Materials ("Second Request") and contains a sample model of a Second Request. Also, the Antitrust Division of the Department of Justice Second Request Internal Appeal Procedure has been provided as reference.

The Guides are intended to provide a general overview and do not address specific proposed transactions. Because the premerger notification program applies to many different types of reporting persons and to many different types of transactions, the rules implementing the program are necessarily technical and complex. In order to assist those unfamiliar with the program, the PNO has published a variety of helpful information, including guides, procedures, announcements, speeches, rules and regulations, and interpretations of the rules. This information is available at the Federal Trade Commission web site (www.ftc.gov) and from the PNO, 600 Pennsylvania Avenue N.W., Room 301, Washington, D.C. 20580

If you have a specific question on a proposed transaction and your question is not addressed by these reference resources, call the PNO between the hours of 8:30AM and 5:00PM, Eastern Standard Time, Monday through Friday, except holidays, at (202) 326-3100.

### Introduction

Title II of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 § 7A of the Clayton Act or (the Act), established the Federal Premerger Notification Program (the Program). The Act requires that parties to certain mergers or acquisitions notify the Federal Trade Commission ("FTC") and the Department of Justice ("DOJ") (the enforcement agencies) before consummating the proposed acquisition. The parties must wait a specific period of time, usually 30 days (15 days in the case of a cash tender offer or a bankruptcy sale)[1], while the enforcement agencies complete their review. Much of the information needed for a preliminary antitrust evaluation is included in the notification filed with the agencies by the parties to proposed transactions and thus is immediately available for review during the waiting period. The Program became effective September 5, 1978, after final promulgation of the Premerger Notification Rules (the Rules)[2].

### Second Request Process

If either the FTC or the DOJ determines during the waiting period that further inquiry is necessary, the determining agency is authorized by Section 7A(e) of the Clayton Act to request additional information and documentary materials from any person required to file notification. A second request extends the waiting period for a specified period, usually 30 days (10 days in the case of a cash tender offer or a bankruptcy sale) [3], after all parties have complied with the request (or, in the case of a tender offer or bankruptcy, after the acquiring person has complied)[4]. This additional time provides the reviewing agency with the opportunity to analyze the information and to take appropriate action, if necessary, before the transaction is consummated. If the reviewing agency believes that a proposed transaction may violate the antitrust laws, it may seek an injunction in federal district court to prohibit consummation of the transaction.

---

[1] 16 CFR Section 803.10(a).
[2] 43 FR 33537, effective July 31, 1978.
[3] 16 CFR Section 803.20(c).
[4] 16 CFR Section 803.20(c).

### FTC Review Process

The FTC has implemented procedures to make merger investigations more effective and more efficient.[5]   Procedures include a review process, conferences, modification procedures and an appeals process.

Second Requests are prepared by the Bureau of Competition ("BC") litigation staff. BC senior management reviews all second requests before issuance to ensure that specifications are as precisely and narrowly framed as possible and consistent with the needs of the investigation.

Soon after the issuance of a second request, the BC staff will convene a second request conference with the parties to the transaction. At the conference, the BC staff will discuss with the parties the competitive issues raised by the proposed transaction, if known, and consider which information and documents may be obtained relating to the competitive issues raised.

### FTC Second Request Appeals Process[6]

All Requests for Additional Information issued by the FTC invite recipients to discuss possible modifications with staff.  If the recipient of a Request from the FTC believes that compliance with portions of the Request should not be required and the recipient has exhausted reasonable efforts to obtain modification of the Request from the lead staff attorney and the BC Assistant Director supervising the investigation, the recipient may petition the General Counsel of the FTC to hear an appeal on unresolved issues.

The petition for an appeal shall be made by letter to the General Counsel, with a copy to the lead staff attorney. The petition shall be no longer than 2 pages in length and shall address petitioner's efforts to obtain modification from BC staff.

1.  Within 2 business days of receipt of such a petition, the General Counsel shall set a date for a conference with the petitioner and investigating staff.

2.  Such conference shall take place within 7 business days of receipt of the petition, unless petitioner agrees to a longer time period before the conference or waives his right to a conference.

3.  No later than 3 business days before the date of the conference, the petitioner and investigating staff may each submit to the General Counsel written briefs regarding the issues presented in the appeal petition. The briefs shall be no longer than 5 pages double spaced, shall be exchanged with opposing counsel on the same day they are submitted to the General Counsel, and shall include:

    (a) a concise explanation of the reasons why the petitioner believes compliance should not be required or of the reasons why investigating staff believe compliance is necessary; and

    (b) modifications that the petitioner proposes.

4.  The General Counsel shall render a decision on the appeal within 3 business days following the conference.

A petition for an appeal made pursuant to this procedure must be made before the petitioner asserts substantial compliance with the Request for Additional Information, and the petitioner must agree to defer asserting substantial compliance until after this appeal process is completed or the petitioner withdraws its appeal.

---

[5]   Reforms to the Merger Review Process: Announcement By Deborah Platt Majoras, Chairman, Federal Trade Commission dated February 16, 2006. http://www.ftc.gov/os/2006/02/mergerreviewprocess.pdf See also Federal Trade Commission, Bureau of Competition - Memo to staff dated May 16, 2000, http://www.ftc.gov/bc/hsr/MergerReform.htm

[6]   66 FR 8721, effective February 1, 2001, http://www.ftc.gov/bc/hsr/appeal~1.htm

### DOJ Second Request Appeals Process[7]

A. Appeals Regarding Modifications

If the recipient of a second request from the Department of Justice believes that the request is unreasonably cumulative, unduly burdensome, or duplicative and, after exhausting reasonable efforts, has been unable to reach agreement with the section chief regarding a modification, the recipient may appeal the matter to a Deputy Assistant Attorney General, who does not have direct responsibility for the review of any enforcement recommendation concerning the transaction at issue (the "Reviewer"). The appeal shall be in writing, no longer than ten (10) pages double spaced, and shall include:

1. A concise explanation of the reasons why the recipient believes that compliance would be unduly burdensome, including a summary of compliance discussions at the staff and section chief level; and

2. the modifications that the recipient proposes.

All appeals should be sent to the Office of Operations (Attn: Second Request Appeals), which will immediately forward the request to the appropriate Deputy Assistant Attorney General. Upon receipt of a written appeal, the Reviewer may request additional information from or a telephone conference with the recipient within two (2) business days. The Reviewer will render a decision on the appeal within seven (7) days after the recipient has provided all necessary information.

An appeal must be made prior to assertion of compliance by the recipient, and the recipient must agree to defer asserting compliance until after the appeal process has been completed or the recipient has withdrawn its appeal.

B. Appeals Regarding Substantial Compliance

If the recipient of a second request has certified that it is in substantial compliance with the request and, after exhausting reasonable efforts, has been unable to reach agreement with the section chief regarding compliance, the recipient, after receiving the deficiencies believed to exist from the section chief, may appeal the matter to a Deputy Assistant Attorney General, who does not have direct responsibility for the review of any enforcement recommendation concerning the transaction at issue (the "Reviewer"). The appeal shall be in writing, no longer than ten (10) pages double spaced, and shall include a concise explanation of the reasons why the recipient believes that it is in compliance, including a summary of compliance discussions at the staff and section chief level.

All appeals should be sent to the Office of Operations (Attn: Second Request Appeals), which will immediately forward the request to the appropriate Deputy Assistant Attorney General. Upon receipt of a written appeal, the Reviewer may request additional information from or a telephone conference with the recipient within two (2) business days. The Reviewer will render a decision on the appeal within three (3) business days after the recipient has provided all necessary information.

If the Reviewer determines that the recipient is in substantial compliance, the date of certification of substantial compliance will be the date on which the waiting period is determined to have begun. If the Reviewer determines that the recipient is not in substantial compliance, the Reviewer will recommend that a formal deficiency letter be issued.

---

[7] http://www.usdoj.gov/atr/public/8430.htm

SAMPLE - MODEL REQUEST for
ADDITIONAL INFORMATION and DOCUMENTARY INFORMATION
(SECOND REQUEST) with Comments
JUNE 2010

The model request for additional information and documentary material is based on the fictitious transaction between Weebyewe Ltd. and Beeside Corporation. Following the model request is a sample certification page. This model request addresses issues typically encountered in a merger investigation. This model request contains only suggestions for language and the particular circumstances of the merger being investigated will determine the information that will be requested. The purpose of the model request for additional information is to provide the basic framework of a request for additional information. Comments follow each specification explaining how the information that is sought relates to the issues involved in a merger investigation.

---

**REQUEST FOR ADDITIONAL INFORMATION
AND DOCUMENTARY MATERIAL
ISSUED TO WEEBYEWE CORPORATION**


Unless modified by agreement with the staff of the Federal Trade Commission, each specification of this Request requires a complete search of "the company" as defined in Paragraph "A" of the Definitions and Instructions which appear after the following Specifications.  If the company believes that the required search or any other part of the Request can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss such questions and possible modifications with the Commission representatives identified on the last page of this Request.  All modifications to this Request must be agreed to in writing by those representatives.  You may find it useful to provide the response to Specification 1 of this Request promptly and discuss limiting the required search with the Commission's representatives before you begin your search.

Responses to Specifications identified with an asterisk (*) are to be provided in electronic format specified in Instruction I 4.d.

# SPECIFICATIONS

1.  Submit (a) one copy of each organization chart and personnel directory in effect since January 1, [Yr-2] for the company as a whole and for each of the company's facilities or divisions involved in any activity relating to any relevant product [service] and (b) a list of all agents and representatives of the company, including, but not limited to, all attorneys, consultants, investment bankers, product distributors, sales agents, and other persons retained by the company in any capacity relating to the proposed acquisition of Beeside by Weebyewe or any relevant product or relevant area covered by this Request (excluding those retained solely in connection with [environmental, tax,] human resources, pensions, benefits, ERISA, or OSHA issues).

2.  List each relevant product manufactured or sold [service provided] by the company, and (a) provide a detailed description of the product [including its end uses] [service]; and (b) state [the brand name] and the division, subsidiary, or affiliate of the company that manufactures or sells [provides] or has manufactured or sold [provided] the product [service].

3.  **\*** For each relevant product listed in response to Specification 2 above, state:

    (a)  the company's sales to all customers in each relevant area, stated separately in units and dollars;

    [(b)  that portion of the company's sales to customers in each relevant area, stated separately, in units and dollars, that were of products manufactured in the U.S.;]

    [(c)  that portion of the company's sales to customers in each relevant area, stated separately in units and dollars, that were of products manufactured outside the U.S.;]

    (d)  that portion of the company's sales to customers in each relevant area, stated separately, in units and dollars, that were of products purchased from sources outside the company and resold by the company rather than of products manufactured by the company;

    (e)  the names and addresses of the [company's 20 largest customers] 20 persons who purchased the greatest unit and dollar amounts of the relevant product from the company in each relevant area; and

    (f)  the name, address, estimated sales, and estimated market share of the company and each of the company's competitors in each relevant area in the [relevant service] manufacture or sale of the product.

4.  State the location of each facility that manufactures or sells [including distribution centers, etc.], or has manufactured or sold, any relevant product [provides any relevant service] for the company, and for each such facility state:

(a)  whether the facility was leased, acquired, or built by or for the company, and, if not built by the company, the name of the person who built the facility for the company or from whom the facility was leased or acquired;

(b)  the date of the facility's opening or acquisition, the length of time and cost in dollars required to open the facility from initial plan to full production, and its current estimated replacement cost and time necessary to replace it; and

(c)  the current nameplate and practical capacity and the annual capacity utilization rate for production of each relevant product manufactured at the facility, specifying all other factors used to calculate capacity, the number of shifts normally used at the facility, and the feasibility of increasing capacity [by X% or more], including the costs and time required.

If the company believes that this Specification may be narrowed in any way that is consistent with the Commission's need for documents and information it is encouraged to discuss possible modifications with Commission representatives who will consider modifying this Specification on a case-by-case basis.

5.   For each relevant product [service], submit (a) one copy of all current selling aids and promotional materials and (b) all documents relating to advertising plans and strategies.

6.   Submit all documents relating to the company's or any other person's plans relating to any relevant product [service], including, but not limited to, business plans, short term and long range strategies and objectives; budgets and financial projections; expansion or retrenchment plans; research and development efforts; and presentations to management committees, executive committees, and boards of directors.  For regularly prepared budgets and financial projections, the company need only submit one copy of final year-end documents and cumulative year to date documents for the current year.

7.   Submit all documents relating to competition in the manufacture or sale of any relevant product [each relevant service], including, but not limited to, market studies, forecasts and surveys, and all other documents relating to (a) the market share or competitive position of the company or any of its competitors; (b) the relative strength or weakness of companies producing or selling each relevant product [providing each relevant service]; (c) supply and demand conditions; (d) attempts to win customers from other companies and losses of customers to other companies, [including, but not limited to, all sales personnel call reports]; (e) allegations by any person that any company that manufactures or sells any relevant product [provides any relevant service] is not behaving in a competitive manner, including, but not limited to, customer and competitor complaints, threatened, pending, or completed lawsuits, and federal and state investigations; and (f) any actual or potential effect on the supply, demand, cost or price of any relevant product [service] as a result of competition from any other possible substitute product [service].

8.   Submit all documents relating to the company's or any other person's price lists, pricing

plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, and pricing decisions relating to any relevant product [service].

9. State the name and address of each person that has entered or attempted to enter into, or exited from, the manufacture or sale of each relevant product [any relevant service] in any relevant area from [Yr-10] to the present.  For each such person, identify the relevant product(s) it manufactures or sells or manufactured or sold [service(s) it provides or provided], the relevant area in which it sells or sold the product(s) [provided the services], and the date of its entry into or exit from the market.  For each entrant, state whether the entrant built a new facility, converted assets previously used for another purpose (identifying that purpose), or began using facilities that were already being used for the same purpose.

10. For each relevant product [service], identify or describe (including the bases for your response) and submit all documents relating to:

(a)  requirements for entry into the production or sale of the product [providing the relevant service] in each relevant area including, but not limited to, research and development, planning and design, production requirements, distribution systems, service requirements, patents, licenses, sales and marketing activities, and any necessary governmental and customer approvals, and the time necessary to meet each such requirement;

(b) the total costs required for entry into the production or sale of the product [providing the relevant service]; the amount of such costs that would be recoverable if the entrant were unsuccessful or elected to exit the manufacture or sale of the product [providing the relevant service]; the methods and amount of time necessary to recover such costs; and the total sunk costs entailed in satisfying the requirements for entry;

(c)  possible new entrants into the manufacture or sale of the product [providers of the service] in each relevant area; and

(d)  the minimum viable scale, the minimum and optimum plant size, production line size, capacity utilization rate, production volume, requirements for multi-plant, multi-product, or vertically integrated operations, or other factors required to attain any available cost savings or other efficiencies necessary to compete profitably in the manufacture or sale of the product [providing the relevant service] {deleting references as appropriate for service industries}.

11. Submit all documents (except engineering and architectural plans and blueprints) relating to any plans of the company or any other person for the construction of new facilities, the closing of any existing facilities, or the expansion, conversion, or modification (if such modification has a planned or actual cost of more than $xxxxxxxx) of current facilities for [providing any relevant service] the manufacture or sale of any relevant product.

12. Submit all documents relating to actual and potential imports into, or exports from, each relevant area of any relevant product, including, but not limited to, documents showing: the names of importers or exporters; the market share or position of such importers or exporters; the quality or quantity of products imported or exported in total or by any person; and any costs or barriers to imports or exports.  Describe all quotas, tariffs, and transportation costs relating to imports into, or exports from, each relevant area of any relevant product.

13. Identify, and state whether the company is a member of or subscribes to, all trade associations, information services, and other organizations relating to the production or sale of any relevant product [relating to any relevant service].  Submit one copy of all documents that discuss or describe production, sale, prices, competition or entry conditions relating to the relevant product submitted by the company or any other person to each such association, service and organization or its agents.  Submit one copy of all documents that discuss or describe production, sale, prices, competition or entry conditions relating to the relevant product received by the company or any other person from each such association, service and organization or its agents.

14. Submit all documents relating to any plans of, interest in, or efforts undertaken by the company or any other person for any acquisition, divestiture, joint venture, alliance or merger of any kind involving the manufacture or sale of any relevant product [any relevant service] other than the proposed acquisition of Beeside by Weebyewe.

15. Submit all documents (except documents solely relating to [environmental, tax,] human resources, OSHA, or ERISA issues) relating to the proposed acquisition of Beeside by Weebyewe and provide:

(a) a timetable for the proposed acquisition, a description of all actions that must be taken prior to consummation of the proposed acquisition, and any harm that will result if the acquisition is not consummated;

(b) a detailed description of (including the rationale for, and identification of all documents directly or indirectly used to prepare the company's response to this sub-part) all plans for changes in Weebyewe's and Beeside's operations, structure, policies, strategies, corporate goals, financing, business, officers, employees or any other area of corporate activity as a result of the proposed acquisition;

(c) a detailed description of (including the identification of all documents directly or indirectly used to prepare the company's response to this sub-part and quantification, if possible, of all cost savings, economies or other efficiencies) the reasons for the proposed acquisition and the benefits, costs, and risks anticipated as a result of the proposed acquisition, including, but not limited to, all cost savings, economies, or other efficiencies of whatever kind; and

(d)  a detailed description of all statements or actions by any person (identifying the person by name, title, and business address) in support of, in opposition to, or otherwise expressing opinions about the proposed acquisition or its effects.

16.   Submit documents sufficient to show and, to the extent not reflected in such documents, describe in detail the company's policies and procedures relating to the retention and destruction of documents.

17.   List (a) each federal judicial district (e.g., District of Columbia, Southern District of New York) within the United States in which the company has an agent to receive service of process as well as each such agent's name, current business and home addresses, and telephone numbers; (b) each federal judicial district within the United States in which the company is incorporated or licensed to do business or currently is doing business; and (c) each federal judicial district within the United States in which the company has an office or a facility, and, for each such office or facility, list the address and the individual in charge (with his or her title).

18.   Identify the person(s) responsible for preparing the response to this Request and submit a copy of all instructions prepared by the company relating to the steps taken to respond to this Request.  Where oral instructions were given, identify the person who gave the instructions and describe the content of the instructions and the person(s) to whom the instructions were given.  For each specification, identify the individual(s) who assisted in the preparation of the response, with a listing of the persons (identified by name and corporate title or job description) whose files were searched by each.

# DEFINITIONS

_____For the purposes of this Request, the following definitions apply:

D 1.   The term "the company" or "Weebyewe" means Weebyewe Ltd., plc, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents and representatives of the foregoing.  The terms "subsidiary", "affiliate" and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control between the company and any other person.

D 2.   The term "Beeside" means Beeside Corporation, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents and representatives of the foregoing.  The terms "subsidiary", "affiliate" and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control between Beeside and any other person.

D 3.   The term "documents" means all computer files and written, recorded, and graphic materials of every kind in the possession, custody or control of the company.  The term "documents" includes, without limitation: electronic mail messages; electronic correspondence and drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computer systems; copies of documents that are not identical duplicates of the originals in that person's files; and copies of documents the originals of which are not in the possession, custody or control of the company.

    a.   Unless otherwise specified, the term "documents" excludes:

        i.   bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature;

        ii.   architectural plans and engineering blueprints; and

        iii.   documents solely relating to [environmental, tax, human resources, OSHA, or ERISA issues].

    b.   The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems.  Thus, the company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off company premises.  If the company believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are

encouraged to discuss a possible modification to this instruction with the Commission representatives identified on the last page of this Request.  The Commission representative will consider modifying this instruction to:

      i.   exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from files that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by the company;

      ii.  limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, or certain time periods or certain specifications identified by Commission representatives; or

      iii.  include other proposals consistent with Commission policy and the facts of the case.

D 4.    The term "person" includes the company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

D 5.    The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

D 6.    The terms "and" and "or" have both conjunctive and disjunctive meanings.

D 7.    The term "plans" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

D 8.    The term "sales" means net sales, i.e., total sales after deducting discounts, returns, allowances and excise taxes.  "Sales" includes sales of the relevant product whether manufactured by the company itself or purchased from sources outside the company and resold by the company in the same manufactured form as purchased.

D 9.    The term "relevant product [service]" as used herein means, and information shall be provided separately for, each [name or list of product(s) or service(s) at issue].

D 10.   The term "relevant area" means, and information shall be provided separately for, (a) the United States and (b) worldwide [or regional or local market(s)].

D 11.   The term "minimum viable scale" means the smallest amount of production [smallest service volume] at which average costs equal the price currently charged for the relevant product [service].  It should be noted that minimum viable scale differs from the concept of minimum efficient scale, which is the smallest scale at which average costs are minimized.

D 12.   The term "sunk costs" means the acquisition costs of tangible and intangible assets necessary to manufacture and sell the relevant product [provide the relevant service] that cannot be recovered through the redeployment of these assets for other uses.

# <u>INSTRUCTIONS</u>

For the purposes of this Request, the following instructions apply:

I 1.     All references to year refer to calendar year.  Unless otherwise specified, each of the specifications calls for: (1) documents for each of the years from [WPE - 2 years] to the present; and (2) information for each of the years from January 1, [Yr-3] to the present.  Where information, rather than documents, is requested, provide it separately for each year; where yearly data is not yet available, provide data for the calendar year to date.  If calendar year information is not available, supply the company's fiscal year data indicating the twelve month period covered, and provide the company's best estimate of calendar year data.

I 2.     This Request shall be deemed continuing in nature so as to require production of all documents <u>responsive to any specification included in this Request</u> produced or obtained by the company up to forty-five calendar days prior to the date of the company's full compliance with this Request.   [*If warranted add the following language*: <u>except</u> for documents responsive to Specification 7 or Specification 15, for which the date is (*insert #*) calendar days prior to the date of the company's full compliance with this Request.]

I 3.     Unless specifically requested by a specification in this Second Request, do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with a Commission representative.  If any document responsive to a particular specification contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the document.

I 4.     Forms of Production: The Company shall submit documents as instructed below absent written consent signed by an Assistant Director.

    a.   Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in electronic format provided that such copies are true, correct, and complete copies of the original documents:

        i.   submit Microsoft Access, Excel, and PowerPoint in native format with extracted text and metadata; and

        ii.   submit all documents other than those provided pursuant to subparts (a)(i) or (a)(iii) in image format with extracted text and metadata.

        iii.   submit all hard copy documents in image format accompanied by OCR.

    b.   For each document submitted electronically, include the following metadata fields and information:

  i. For loose electronic files other than email: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, creation date and time, modification date and time, last accessed date and time, size,  location or path file name, and SHA Hash value;

  ii. for emails: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, to, from, CC, BCC, subject, date and time sent, child records (the beginning Bates or document identification number of attachments delimited by a semicolon); and

  iii. for email attachments: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, creation date and time, modification date and time, last accessed date and time, size, location or path file name, parent record (beginning Bates or document identification number of parent email), and SHA Hash value;

  iv. for hard copy documents: beginning Bates or document identification number, ending Bates or document identification number, page count, and custodian.

 c. If the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media in response to this Request, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this Request.

 d. For each Specification marked with an asterisk (*), and to the extent any other responsive data exists electronically, provide such data in Excel spreadsheet with all underlying data un-redacted and all underlying formulas and algorithms intact.

 e. Submit electronic files and as follows:

  i. for any production over 10 gigabytes, use IDE and EIDE hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in a USB 2.0 external enclosure; and

  ii. for productions under 10 gigabytes, CD-R CD-ROM and DVD-ROM for Windows-compatible personal computers, and USB 2.0 Flash Drives are also acceptable storage formats.

      iii.  **all documents produced in electronic format shall be scanned for and free of viruses.  The Commission will return any infected media for replacement, which may affect the timing of the Company's compliance with this Request.**

I 5.    All documents responsive to this request, regardless of format or form and regardless of whether submitted in paper or electronic form:

    a.  shall be produced in complete form, un-redacted unless privileged, and in the order in which they appear in the company's files and shall not be shuffled or otherwise rearranged. For example:

        i.  if in their original condition papers were stapled, clipped or otherwise fastened together or maintained in file folders, binders, covers or containers, they shall be produced in such form, and any documents that  must be removed from their original folders, binders, covers or containers in order to be produced shall be identified in a manner so as to clearly specify the folder, binder, cover or container from which such documents came; and

        ii.  if in their original condition electronic documents were maintained in folders or otherwise organized, they shall be produced in such form and information shall be produced so as to clearly specify the folder or organization format;

    b.  if written in a language other than English, shall be translated into English, with the English translation attached to the foreign language document;

    c.  shall be produced in color where necessary to interpret the document;

    d.  shall be marked on each page with corporate identification and consecutive document control numbers;

    e.  shall be accompanied by an affidavit of an officer of the company stating that the copies are true, correct and complete copies of the original documents;

    f.  shall be accompanied by an index that identifies: (i)  the name of each person from whom responsive documents are submitted; and (ii) the corresponding consecutive document control number(s) used to identify that person's documents, and if submitted in paper form, the box number containing such documents.  If the index exists as a computer file(s), provide the index both as a printed hard copy and in machine-readable form (provided that Commission representatives determine prior to submission that the machine-readable form would be in a format that allows the agency to use the computer files).  The Commission representative will provide a sample index upon request.

I 6.    If any documents created prior to the company's HSR filing are withheld from production based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support thereof, in the form of a log [hereinafter Complete Log] that includes each document's authors, addressees, date, a description of each document, and all recipients of the original and any copies.  Attachments to a document should be identified as such and entered separately on the log.  For each author, addressee, and recipient, state the person's full name, title, and employer or firm, and denote all attorneys with an asterisk.  The description of the subject matter shall describe the nature of each document in a manner that, though not revealing information itself privileged, provides sufficiently detailed information to enable Commission staff, the Commission, or a court to assess the applicability of the privilege claimed.  For each document withheld under a claim that it constitutes or contains attorney work product, also state whether the company asserts that the document was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based.  Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments) for which a claim of privilege is asserted (except where the only non-privileged information has already been produced in response to this instruction), noting where redactions in the document have been made.  Documents authored by outside lawyers representing the company that were not directly or indirectly furnished to the company or any third-party, such as internal law firm memoranda, may be omitted from the log.

In place of a Complete Log of all documents withheld from production based on a claim of privilege, the company may elect to submit a Partial Privilege Log ("Partial Log") for each person searched by the company whose documents are withheld based on such claim and a Complete Log for a subset of those persons, as specified below:

a.    The Partial Log will contain the following information: (1) the name of each person from whom responsive documents are withheld on the basis of a claim of privilege; and (2) the total number of documents that are withheld under a claim of privilege (stating the number of attachments separately) contained in each such person's files.  Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments) for which a claim of privilege is asserted (except where the only non-privileged information has already been produced in response to this instruction), noting where redactions in the document have been made.

b.    Within five (5) business days after receipt of the Partial Log, Commission staff may identify in writing five individuals or ten percent of the total number of persons searched, whichever is greater, for which the company will be required to produce a Complete Log in order to certify compliance with this Request.

c.    For the company to exercise the option to produce a Partial Log, the company must provide a signed statement in which the company acknowledges and agrees that, in consideration for being permitted to submit a Partial Log:

   i. the Commission retains the right to serve a discovery request or requests regarding documents withheld on grounds of privilege in the event the Commission seeks relief through judicial or administrative proceedings;

   ii. the company will produce a Complete Log of all documents withheld from production based on a claim of privilege no later than fifteen (15) calendar days after such a discovery request is served, which will occur promptly after the filing of the Commission's complaint; and

   iii. the company waives all objections to such discovery, including the production of a Complete Log of all documents withheld from production based on a claim of privilege, except for any objections based strictly on privilege.

  d. The company retains all privileged documents that are responsive to this Request until the expiration of the Hart Scott Rodino waiting period or the completion of any litigation challenging the acquisition of Beeside by Weebyewe.

  e. The Commission will retain the right to require the company to produce a Complete Log for all persons searched in appropriate circumstances.

 I 7. If the company is unable to answer any question fully, supply such information as is available.  Explain why such answer is incomplete, the efforts made by the company to obtain the information, and the source from which the complete answer may be obtained.  If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates.  Estimated data should be followed by the notation "est."  If there is no reasonable way for the company to make an estimate, provide an explanation.

 I 8. If documents responsive to a particular specification no longer exist for reasons other than the ordinary course of business or the implementation of the company's document retention policy as disclosed or described in response to Specification 16 of this Request, but the company has reason to believe have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the specification(s) to which they are responsive, and identify persons having knowledge of the content of such documents.

 I 9. In order for the company's response to this Request to be complete, the attached certification form must be executed by the official supervising compliance with this Request, notarized, and submitted along with the responsive materials.

 I 10. Any questions you have relating to the scope or meaning of anything in this Request or suggestions for possible modifications thereto should be directed to (appropriate staff) at

(telephone number).  The response to the Request shall be addressed to the attention of (appropriate staff) and delivered between 8:30 a.m. and 5:00 p.m. on any business day to Federal Trade Commission.  If you wish to submit your response by United States mail, please call one of the staff listed above for mailing instructions.

<u>CERTIFICATION</u>

As required by § 803.6 of the implementing rules for the Hart-Scott-Rodino Antitrust Improvements Act of 1976, this response to the Request for Additional Information and Documentary Material, together with any and all appendices and attachments thereto, was prepared and assembled under my supervision in accordance with instructions issued by the Federal Trade Commission.  Subject to the recognition that, where so indicated, reasonable estimates have been made because books and records do not provide the required information, the information is, to the best of my knowledge, true, correct, and complete in accordance with the statute and rules.

Where copies rather than original documents have been submitted, the copies are true, correct, and complete.  If the Commission uses such copies in any court or administrative proceeding, the company will not object based on the Commission not offering the original document.


_____
(Signature)


_____
(Type or Print Name and Title)


Subscribed and sworn to before me at the City of _____,

State of _____, this _____day of _____, 19\_\_\_\_\_.


_____
(Notary Public)


_____
\_\_\_\_(Date Commission Expires)