# Exhibit D

to the Declaration of Mark C. Hansen in Support of Facebook, Inc.'s Motion to Dismiss the
FTC's Amended Complaint in *Federal Trade Commission v. Facebook, Inc.*
Case No. 1:20-cv-03590-JEB (D.D.C.)



UNITED STATES OF AMERICA
Federal Trade Commission
WASHINGTON, D.C. 20580

# Statement of Commissioner Christine S. Wilson

*Regarding the Announcement of Pre-Consummation Warning Letters*

August 9, 2021

      The Federal Trade Commission (FTC) announced on August 3, 2021[1] that it will send pre-consummation warning letters in connection with deals it cannot fully investigate within the timelines established by the Hart-Scott-Rodino (HSR) Antitrust Improvements Act.[2] These letters alert parties to notified deals that their transactions remain under investigation, and warn that consummation occurs at the parties' own risk.[3]

      I am gravely concerned that the carefully crafted HSR framework is suffering death by a thousand cuts. The Commission's pre-consummation warning letters must be considered in conjunction with other recent FTC actions. In February, the Agencies announced a "temporary" and "brief" suspension of grants of early termination.[4] More than six months later, the public has received no clarity regarding when this unwarranted and unprecedented suspension will be lifted.[5] In May, the Commission flouted a negotiated timing agreement after the parties voluntarily extended the timing several times,[6] failed to order a divestiture in a transaction that all Commissioners had reason to believe violated the antitrust laws, and consequently left consumers unprotected.[7] In July, the Commission rescinded a 1995 policy statement on prior

---

[1] Press Release, Fed. Trade Comm'n, FTC Adjusts its Merger Review Process to Deal with Increase in Merger Filings (Aug. 3, 2021), https://www.ftc.gov/news-events/press-releases/2021/08/ftc-adjusts-its-merger-review-process-deal-increase-merger.

[2] 15 U.S.C. § 18a.

[3] FED. TRADE COMM'N, SAMPLE PRE-CONSUMMATION WARNING LETTER (Aug. 3, 2021), https://www.ftc.gov/system/files/attachments/blog_posts/Adjusting%20merger%20review%20to%20deal%20with%20the%20surge%20in%20merger%20filings/sample_pre-consummation_warning_letter.pdf.

[4] Press Release, Fed. Trade Comm'n, FTC, DOJ Suspend Discretionary Practice of Early Termination (Feb. 4, 2021), https://www.ftc.gov/news-events/press-releases/2021/02/ftc-doj-temporarily-suspend-discretionary-practice-early.

[5] Noah J. Phillips & Christine S. Wilson, Comm'rs, Fed Trade Comm'n, Statement Regarding the Commission's Indefinite Suspension of Early Terminations (Feb. 4, 2021), https://www.ftc.gov/system/files/documents/public_statements/1587047/phillipswilsonetstatement.pdf.

[6] Press Release, 7-Eleven, Inc., 7-Eleven, Inc. Response to FTC Commissioner Statement (May 14, 2021), https://corp.7-eleven.com/corp-press-releases/05-14-2021-7-eleven-inc-response-to-ftc-commissioner-statement.

[7] Statement of Comm'rs Noah Joshua Phillips and Christine S. Wilson, *In re Seven & i Holdings Co., Ltd. / Marathon Petroleum Corporation*, File No. 201-0108 (May 14, 2021),

notice and prior approval, facilitating a massive end-run around HSR filing requirements and opening the door for vindictive and wasteful enforcement.[8] Collectively, these actions raise the costs of doing mergers and threaten to chill harmful and beneficial deals alike.[9]

  Before the HSR Act was passed in 1976, parties to a transaction could merge at will, but bore the burden of uncertainty: would the government subsequently conclude the deal was anticompetitive and seek to unwind it? From the merging parties' perspective, the time and resources required to negotiate and implement the merger, and to integrate the two entities, would have been for naught. The pre-HSR landscape was sub-optimal for enforcers, too. With no advance notice of transactions, enforcers had to undertake lengthy and resource-intensive litigation to unwind anticompetitive deals after they were consummated. And even if those challenges were successful, consumers suffered — not just from the loss of competition from anticompetitive deals, but also from the prospect of insufficient remedies arising from typically inadequate attempts to "unscramble the eggs" after the parties have integrated their operations to restore pre-merger levels of competition.[10]

  Passage of the HSR Act addressed these issues in a sensible compromise. Under the HSR Act, the FTC and the Antitrust Division of the Department of Justice receive premerger notifications for deals that meet certain criteria. The agencies are afforded time and empowered with investigative tools to determine whether notified transactions may harm competition. The advance notice afforded by the HSR Act enables the government to halt problematic deals before they occur, preserving pre-merger levels of competition and avoiding the challenges of "unscrambling the eggs." But these benefits come with a cost — the agencies must invest the

---

https://www.ftc.gov/system/files/documents/public_statements/1590067/2010108sevenmarathonphillipswilsonstatement.pdf.

[8] Christine S. Wilson, Comm'r, Fed Trade Comm'n, Oral Remarks at the Open Commission Meeting (July 21, 2021), https://www.ftc.gov/system/files/documents/public_statements/1592366/commissioner_christine_s_wilson_oral_remarks_at_open_comm_mtg_final.pdf; Noah J. Phillips, Comm'r, Fed Trade Comm'n, Dissenting Statement of Commissioner Noah Joshua Phillips Regarding the Commission's Withdrawal of the 1995 Policy Statement Concerning Prior Approval and Prior Notice Provisions in Merger Cases (July 21, 2021), https://www.ftc.gov/system/files/documents/public_statements/1592398/dissenting_statement_of_commissioner_phillips_regarding_the_commissions_withdrawal_of_the_1995.pdf.

[9] And let us not forget about attempts in 2020 to suspend the HSR process entirely through enactment of a merger moratorium. *See, e.g.*, Erik Wasson, *Warren, Ocasio-Cortez Float Long-Shot Bid to Pause M&A in Crisis*, BLOOMBERG, (Apr. 28, 2020), https://www.bloomberg.com/news/articles/2020-04-28/warren-ocasio-cortez-propose-temporary-corporate-merger-ban.

[10] Kelly Signs, *Milestones in FTC History: HSR Act Launches Effective Premerger Review*, FED. TRADE COMM'N (Mar. 16, 2015), https://www.ftc.gov/news-events/blogs/competition-matters/2015/03/milestones-ftc-history-hsr-act-launches-effective ("In the words of Congressman Rodino, the wisdom of premerger notification was a lesson learned the hard way: … 'Under present law, companies need not give advance notification of a planned merger to the Federal Trade Commission and the Department of Justice. But if the merger is later judged to be anticompetitive, and divestiture is ordered, that remedy is usually a costly exercise in futility—untangling the merged assets and management of the two firms is like trying to unscramble an omelet.'") (citing 122 Cong. Rec. 25051 (1976)).

requisite time and effort to analyze notified deals, and must do so within specified statutory timeframes (or negotiated extensions).

On the flip side, businesses no longer enjoy an unqualified right to merge. Instead, if certain criteria are satisfied, parties to a proposed transaction must file premerger notifications with the FTC and DOJ, observe specified waiting periods, and provide sometimes significant volumes of documents and data to the agencies to facilitate competitive effects analysis. Compliance with the merger review process can be costly — if a transaction draws agency scrutiny, the merger review process can consume many months (if not years), require the submission of several terabytes of documents and data, and cost millions of dollars. But these costs, at least traditionally, have brought the benefit of repose. In fact, many parties voluntarily choose to informally notify non-reportable transactions to the agencies so as to achieve this repose. While the agencies have the authority to challenge deals that have undergone HSR review, those challenges have been understandably rare.[11]

Last Monday's announcement reneges on the Congressionally-mandated compromise and defies the will of Congress by undermining the premerger notification program and diminishing the purpose of the HSR Act. For the HSR Act to retain meaning, it cannot be that the FTC will keep merger investigations open indefinitely, as a matter of routine, every time there is a surge in filings. With rare exceptions, businesses that faithfully comply with the HSR process should not be trapped perpetually beneath a Sword of Damocles. Such a policy would not serve consumers or competition.

Merger filings have increased,[12] and dedicated FTC staff are working hard to assess the deals notified in those filings. But one plausibly could wonder if the FTC is struggling to review

---

[11] *See* Complaint, FTC v. Facebook, Inc., Case No. 1:20-cv-03590 (D.D.C. Jan. 13, 2021), https://www.ftc.gov/system/files/documents/cases/051_2021.01.21_revised_partially_redacted_complaint.pdf (requesting divestiture of assets related to at least two consummated transactions).

[12] Mergers filings have been higher over the last twelve months than in recent history, but the antitrust agencies have faced high merger filings in the past. Merger filings today have not reached the number of filings consistently seen in the late 1990s and early 2000s. Reportable transactions per month have averaged 273 per month during the last twelve months. The five-year period from 1996-2000 averaged 359 reportable transactions per month – nearly 90 more transactions per month than reviewed by the antitrust agencies during the last twelve months. *See Premerger Notification Program*, FED. TRADE COMM'N, https://www.ftc.gov/enforcement/premerger-notification-program (HSR transactions by month for October 2019 to July 2021); U.S. DEP'T OF JUST. & FED. TRADE COMM'N, HART-SCOTT-RODINO ANNUAL REPORT: FISCAL YEAR 2019 at app. B, tbl. 1 (2020), https://www.ftc.gov/system/files/documents/reports/federal-trade-commission-bureau-competition-department-justice-antitrust-division-hart-scott-rodino/p110014hsrannualreportfy2019.pdf (HSR transactions by month for October 2010 to September 2019); U.S. DEP'T OF JUST. & FED. TRADE COMM'N, HART-SCOTT-RODINO ANNUAL REPORT: FISCAL YEAR 2010 at app. B, tbl. 1 (2011), https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-competition-and-department-justice-antitrust-division-hart-scott.s.c.18a-hart-scott-rodino-antitrust-improvements-act-1976-t/1101hsrreport.pdf (HSR transactions by month for October 2001 to September 2010); U.S. DEP'T OF JUST. & FED. TRADE COMM'N, ANNUAL REPORT TO CONGRESS: FISCAL YEAR 2001 at app. B, tbl. 1 (2002), https://www.ftc.gov/sites/default/files/documents/reports/annual-report-congress-regarding-operation-hart-scott-rodino-premerger-notification-program/hsrarfy2001.pdf (HSR transactions by month for October 1992 to September 2001).

transactions in a timely manner not only because of filing volume, but also because something else is afoot.[13] We know the Biden Administration has called for a review of the existing merger guidelines,[14] and we know that some have advocated returning to the 1968 Merger Guidelines that suggest challenging an acquisition in a "less highly concentrated" market if a firm with 5% market share seeks to acquire another firm with 5% market share.[15] Under merger review standards applied by both Democrat and Republican administrations over time, roughly 95 percent of deals are viewed as benign or beneficial.[16] Applying outdated (or no) analytical standards to new HSR filings – rendering suspect even 10 to 15 percent of deals – would certainly create a logjam.[17]

      The FTC has now taken several steps that threaten the integrity of the HSR process. The Commission's announcement of pre-consummation warning letters – together with the decisions to disregard a negotiated timing agreement, rescind the prior approval and prior notice policy statement, and suspend early terminations – disrupt the carefully crafted balance that Congress established through the HSR Act. If the majority wishes to overhaul the premerger notification framework, it should ask Congress to pass the appropriate legislation. And if additional resources are necessary to review notified transactions, the FTC should work with Congress to boost appropriations. But the Commission should not rely on self-help to increase the cost and decrease the certainty of completing transactions.

---

[13] The DOJ does not appear to be experiencing any issues in completing timely review of notified deals.

[14] *See* Exec. Order No. 14036, 86 Fed. Reg. 36987 (July 14, 2021), https://www.govinfo.gov/content/pkg/FR-2021-07-14/pdf/2021-15069.pdf ("To address the consolidation of industry in many markets across the economy, as described in section 1 of this order, the Attorney General and the Chair of the FTC are encouraged to review the horizontal and vertical merger guidelines and consider whether to revise those guidelines."); Press Release, Fed. Trade Comm'n, Statement of FTC Chair Lina Khan and Antitrust Division Acting Assistant Attorney General Richard A. Powers on Competition Executive Order's Call to Consider Revisions to Merger Guidelines (July 9, 2021), https://www.ftc.gov/news-events/press-releases/2021/07/statement-ftc-chair-lina-khan-antitrust-division-acting-assistant ("We must ensure that the merger guidelines reflect current economic realities and empirical learning and that they guide enforcers to review mergers with the skepticism the law demands. The current guidelines deserve a hard look to determine whether they are overly permissive. We plan soon to jointly launch a review of our merger guidelines with the goal of updating them to reflect a rigorous analytical approach consistent with applicable law.")

[15] U.S. DEP'T. OF JUST., 1968 MERGER GUIDELINES, https://www.justice.gov/archives/atr/1968-merger-guidelines.

[16] Over the ten-year period from 2010-2019, Second Requests were issued in 2.2%-3.9% of reportable transactions per year. *See* U.S. DEP'T OF JUST. & FED. TRADE COMM'N, HART-SCOTT-RODINO ANNUAL REPORT: FISCAL YEAR 2019 at 6 (2020), https://www.ftc.gov/system/files/documents/reports/federal-trade-commission-bureau-competition-department-justice-antitrust-division-hart-scott-rodino/p110014hsrannualreportfy2019_0.pdf.

[17] Imagine the standstill in merger review that will arise if – as some commentators and legislators have suggested – the burden of proof is flipped for mergers. *See, e.g.*, Platform Competition and Opportunity Act of 2021, H.R. 3826, 117th Cong. (2021) (proposing to flip the burden of proof for acquisitions involving certain online platforms). If we must evaluate arguments from the 95 percent of benign deals explaining why their transactions are not harmful, we would need 20 times the personnel we have today.