**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **META PLATFORMS, INC.** <br><br> Defendant. | Civil Action No. 1:20-cv-03590 (JEB) |

**PLAINTIFF'S STATUS REPORT AND PROPOSAL FOR PROTECTIVE ORDER**

Plaintiff ("the FTC") and Defendant ("Meta") have met and conferred on multiple occasions regarding an appropriate protective order but have been unable to reach agreement. The Court should adopt the FTC's proposed order because it addresses the concerns of third parties and vindicates the public interest in preventing the inadvertent use or disclosure of trade secrets and other confidential information without hindering Meta's ability to defend itself.

The parties dispute two key issues. First, the FTC proposes to prohibit Meta's in-house counsel from accessing Highly Confidential Information absent a particularized showing of need. Ex. A §§ D.1, E. Meta proposes that designated in-house counsel be allowed access to third parties' Highly Confidential Information, unless third parties bear the burden to oppose such disclosures. Ex. E § 7.2. Second, the FTC proposes to permit up to four of Meta's in-house counsel to access Confidential Information, as long as they certify that they are not engaged in Competitive Decision-Making and will not become involved in Competitive Decision-Making for two years following their last access to the Confidential Information. Ex. A §§ D.2(d). In contrast, Meta proposes that it be given virtually free reign to disclose third parties' Confidential Information to its business executives, in addition to in-house counsel. *See* Ex. E § 7.1 (permitting disclosure to "officers, directors, and employees" "to whom disclosure is reasonably necessary for this litigation" and who have signed an "Acknowledgement and Agreement to Be Bound"). Meta has neither identified a need for such access, nor provided to the FTC any analogous case in which a court granted such access.

Recent analogous cases unquestionably favor the FTC's proposals: in *United States v. Google*, Judge Mehta adopted a similar protective order following contested briefing, oral argument, and input from third parties – indeed, the FTC copied the provisions in dispute nearly verbatim from the *Google* Protective Order. *Compare* Ex. A (FTC's Proposed Protective Order)

1

§§ D.1, D.2 *with* Ex. B (Stipulated Protective Order, *United States v. Google, LLC*, 1:20-cv-03010-APM, Dkt. No. 98 (D.D.C. Jan. 21, 2021)) §§ D.11, D.12.  *See also* Ex. C (Status Conference Transcript, *United States v. Google, LLC*, 1:20-cv-03010-APM, Dkt. No. 66 (D.D.C. Dec. 4, 2020)); *United States v. Google, LLC*, 1:20-cv-03010-APM at Dkt. Nos. 24, 28, 33, 34, 47, 50, 51, 52, 53, 63, 73 (statements regarding protective order filed parties and by non-parties).

Aside from these key issues, the parties' proposals have minor differences.  In each case, the Court should adopt the FTC's proposed approach.  The FTC has – for more than a year – advanced reasonable proposals and offered compromises that address the needs of both Meta and third parties.  *See* Ex. D (Matheson Declaration).  The FTC's proposals are entirely reasonable, they mimic the protective order entered in *Google*, and Meta has provided no reason the FTC's proposals are inadequate or contrary to the weight of authority in this District.

**I.     THE COURT SHOULD LIMIT META'S ACCESS TO INFORMATION DESIGNATED BY THIRD PARTIES AS "HIGHLY CONFIDENTIAL" AND "CONFIDENTIAL"**

Throughout this litigation third parties will be required to provide sensitive information in response to subpoenas.  Meta has already noticed 91 third party subpoenas, which include requests for sensitive business plans across many different lines of business, strategy documents, and documents relating to third parties' negotiating strategies, and has identified nearly 200 additional third parties in its initial disclosures, which will likely also receive subpoenas from Meta.  The third parties targeted by Meta cross a range of business lines and commercial interests in the economy, and include customers, suppliers, and API trading partners of Meta and other firms with business lines where Meta may have a strategic interest.  These third parties naturally have an interest in preventing disclosure of their negotiating strategies and business plans to Meta, a company that by any measure wields enormous power in multiple markets.  The FTC seeks to protect third parties from the possibility that their sensitive information could be

used by Meta employees – whether inadvertently or intentionally – to harm third-parties' interests. In so doing, the FTC seeks to protect both the commercial interests of third parties as well as the FTC's own long-run interest in encouraging third parties to provide confidential information in connection with FTC investigations. *Cf. Akzo N.V. v. U.S. Intern. Trade Comm'n*, 808 F. 2d 1471, 1483 (Fed. Cir. 1986) ("Disclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the [Government's] fact-finding processes.").

The FTC's proposed Protective Order protects these interests but also would not hamper Meta's ability to defend itself. Meta's contrary proposals should be rejected because even the inadvertent disclosure of third-party confidential information could unfairly advantage Meta, undermine third parties' confidence in the treatment of their confidential information, and chill third-party cooperation in current and future FTC investigations.

### A.  Access to Third Parties' Highly Confidential Information Should be Restricted to Meta's Outside Counsel, Absent a Showing of Need

Meta's in-house counsel should not have access to third parties' Highly Confidential Information, unless Meta provides notice to the impacted third party and demonstrates that specific in-house counsel have "a particularized need for access to the Highly Confidential Information that materially outweighs the risk of harm to both the Designating Party and to the public interest." Ex. A § E. This FTC's proposal is virtually identical to the provision adopted by Judge Mehta in the *Google* litigation. *See* Ex. B § E (requiring Google to demonstrate "a particularized need for access to the Highly Confidential Information that outweighs the risk of harm to the Designating Party or the public interest"). And it is more permissive than other Government litigations in this District in which protective orders entirely prohibited in-house counsel access to third-party confidential information. *See, e.g.*, *FTC v. RAG-Stiftung*, 1:19-cv-

3

02337-TJK, Dkt. No. 10, ¶ 7 (D.D.C. Aug. 5, 2019) (confidential information available only to the defendants' "outside counsel of record . . . provided they are not employees of a Defendant"); *United States v. Anthem, Inc.*, No. 16-cv-1493, 2016 WL 11164026, *4 (D.D.C. Sept. 15, 2016) ("does not permit disclosure to Defendants' in-house counsel"); Supplemental Protective Order, *United States v. Microsoft Corp.*, No. 98-cv-1232, Dkt. No. 929 (D.D.C. May 27, 1998) (explaining that the Protective Order restricted access to highly confidential material to outside counsel).

Antitrust litigations brought by the Government require sensitivity to confidentiality concerns because they often involve commercially or competitively sensitive (often forward looking) analysis and business plans. As such, courts have routinely allowed third parties to prevent a defendant's in-house counsel from reviewing particularly sensitive information,[1] and/or required a defendant to make a particularized showing that in-house counsel seeking access to such information will not be involved in competitive decision making. For example, in *United States v. Aetna Inc.*, the court initially denied the defendants' request for in-house counsel access to sensitive information, and then later provided that defendants could make a motion to a special master requesting in-house disclosure by identifying the specific third-party whose information was needed, noticing said third party, and demonstrating that specified in-house

---

[1] *See, e.g.*, Stipulated Protective Order Concerning Confidentiality at ¶ 9, *United States v. US Airways Group, Inc.*, No. 13-cv-01236, Dkt. No. 55 (D.D.C. Aug. 30, 2013); Stipulated Protective Order at ¶ 7.3, *United States v. Bazaarvoice, Inc.*, No. 13- cv-00133, Dkt. No. 35 (N.D. Cal. Mar. 4, 2013); *see also* Stipulation and Protective Order at 12, *United States v. American Express Company, et al.*, No. 10-cv-4496, Dkt. No. 102 (E.D.N.Y. April 7, 2011) (excluding in-house counsel from being able to access materials designated as Highly Confidential); Stipulated Protective Order at ¶ 4, *Fed. Trade Comm'n v. Vyera Pharmaceuticals, et al.*, No. 20-cv-00706, Dkt. No. 92 (S.D.N.Y. April 20, 2020) (same); Amended Protective Order Regarding Confidentiality at ¶ 20, *United States v. Carolinas Healthcare System*, No. 16-cv-311, Dkt. No. 57 (W.D.N.C. Oct. 16, 2017) (same).

counsel would not be involved in defendants' competitive decision making. *See United States v. Aetna Inc.*, No. 16-cv-1494, 2016 U.S. Dist. LEXIS 191730, *17 (D.D.C. Sept. 5, 2016) (denying request to modify protective order to provide in-house counsel access); Second Am. Protective Order at ¶ E, *United States v. Aetna Inc.*, No. 16-cv-1494, Dkt. No. 132 (D.D.C. Sept. 30, 2016).

The FTC's proposal appropriately balances the interests of third parties in protecting their most sensitive information, the government's interest in promoting cooperation with future investigations, and Meta's litigation needs. *See United States v. Aetna Inc.*, No. 16-cv-1494, 2016 U.S. Dist. LEXIS 191730, *17-33 (D.D.C. Sept. 5, 2016) (balancing defendant's litigation needs, the sensitivity of the information at issue, the appropriateness of the designated in-house counsel seeking access, and the potential deterrent effect on third-party cooperation in future Government investigations). The FTC's proposal appropriately protects third parties and the public interest because in the event of a dispute: (1) Meta will be required to demonstrate that its interest in disclosure "materially outweighs the risk of harm to both the Designating Party and to the public interest," Ex. A § E; and (2) the FTC will be able to oppose any disclosures of Highly Confidential Information that might threaten the public interest. In contrast, Meta's proposal would eliminate any ability for the FTC to protect the public interest, and would place the burden entirely on third parties to: (1) provide a detailed written objection to Meta; (2) affirmatively file a motion to seek relief from the Court or waive their rights; and (3) "bear the burden of proving that the risk of harm that the disclosure" would outweigh Meta's interests. *See* Ex. E §§ 7.6(b), (c). Meta's proposal fails to give adequate weight to third parties' interests, and places inappropriate burdens on third parties that are "not targets of government action," yet have been compelled or will be compelled "to give up exceedingly confidential information in response to a

government subpoena." *Aetna*, 2016 U.S. Dist. LEXIS 191730, at *20 (quoting *FTC v. Advocate*, 162 F. Supp. 3d 666, 671-72 (N.D. Ill. 2016)).

Importantly, the FTC's proposal approach is narrowly tailored to prevent in-house counsel from accessing only the information that "if disclosed, is likely to cause material and significant harm" to a third party. *See* Ex. A § A.1(g) (defining "Highly Confidential Information"); *see also* Ex. B § A.1(h) (similar definition of "Highly Confidential Information").[2] The definition both imposes a demanding standard that ensures against over-designation of information as Highly Confidential and provides precise guidance for third parties in order to minimize any potential for disputes about whether information is properly designated. *Cf.* Ex. C at 12-13, 25-28 (Judge Mehta expressed concern with the plaintiffs' originally proposed definition of Highly Confidential Information because it was too subjective).

Meta has not identified to the FTC any precedent in a government enforcement action for its proposal, nor any good reason to impose such burdens on third parties and depart from Judge Mehta's reasonable approach in *Google*. The FTC's narrowly tailored definition of Highly Confidential Information, coupled with its proposal to allow Meta to demonstrate a particularized need, adequately addresses any litigation needs Meta may have. Meta has retained numerous experienced outside counsel who will have unfettered access to the discovery record. *Cf. Advocate*, 162 F. Supp. 3d at 672 ("[G]iven the extraordinarily sophisticated, experienced and talented counsel in this case, the critical question is: why is it 'essential,' as the defendants put it, that in-house counsel, as opposed to outside counsel, review [third party information]?").

---

[2] The FTC does not propose a presumption adopted in *Google* that "[m]aterial that is more than three (3) years old at the time of production is presumptively not entitled to protection as Highly Confidential Information . . . ." *See* Ex. B § A.1(h). Based on the FTC's communications with third parties, the FTC believes that third parties are opposed to such a provision.

*See generally Intel Corp. v. VIA Technologies, Inc.* 198 F.R.D. 525, 528 (N.D. Cal. 2000) ("Requiring a party to rely on its competent outside counsel does not create any 'undue or unnecessary burden.'"); *Akzo*, 808 F. 2d at 1482-83 (rejecting as "groundless" Akzo's arguments that denying in-house counsel access to confidential information "deprived it of its rights to confrontation, to rebuttal, and to effective assistance of counsel"). To the extent that Meta's outside counsel require the assistance of in-house counsel, Meta is free to show that its need outweighs the risk that inadvertent use or disclosure of Highly Confidential Information might prejudice third parties and harm the public interest. Ex. A § E; *see Aetna*, 2016 U.S. Dist. LEXIS 191730, at *29 ("To the extent that outside counsel require in-house counsel assistance with respect to particular documents, nothing prevents outside counsel from requesting that in-house counsel have access to that particular information based upon more specific and compelling grounds.").

      **B.**    **In-House Counsel Granted Access to Third Parties' Confidential Information Should be Restricted From Competitive Decision-Making**

The FTC proposes that third parties' Confidential Information should not be disclosed to Meta's business personnel, nor to in-house counsel who are involved in Competitive Decision-Making or may become involved in Competitive Decision-Making within two years. *See* Ex. A § D(2)(d). The FTC's proposal is more favorable to Defendant than the *Google* protective order: in *Google* the defendant was allowed to designate only two in-house counsel able to access Confidential Information, *see* Ex. B §§ A(1)(e), D.12(d), whereas the FTC has attempted to accommodate concerns expressed by Meta during the meet-and-confer process by proposing access for up to four in-house counsel. In all other respects, the FTC's proposal for in-house access to Confidential Information is the same as in *Google*. Notably, the FTC proposes the same definition of Competitive Decision-Making as the *Google* protective order. *Compare* Ex.

7

A § A.1(c) with Ex. B § A.1(c). This definition addresses any concerns regarding overbreadth, *cf.* Ex. C at 13-14, 34-35, and closely tracks the often-invoked interpretation of "competitive decisionmaking" – "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984); *see also FTC v. Peabody Energy Corp.*, 2020 U.S. Dist. LEXIS 57051, at *23 (E.D. Mo. Apr. 1, 2020) (same, quoting *U.S. Steel*). The FTC's proposal, as in *Google*, will allow appropriate access to in-house "litigators" for Meta responsible for "overseeing the case," *see* Ex. C at 34-35, while denying access to individuals whose job functions risk inadvertent disclosure or use of sensitive information, to the detriment Meta's customers, counter parties, or rivals.

In contrast with the FTC's reasonable proposal, Meta offers the remarkable suggestion that <u>any employee</u>, including non-lawyer business executives and in-house attorneys involved in Competitive Decision-Making, should be able to view Confidential Information whenever Meta decides that disclosure to that employee is "reasonably necessary for this litigation." *See* Ex. E § 7.2(b). This proposal is inadequate to protect either the interests of third parties or the public interest. Meta should be required to specifically identify in-house counsel to whom it proposes to provide access to Confidential Information, as courts often require. *U.S. Steel*, 730 F.2d at 1468 ("[w]hether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis[.]"); *Peabody Energy*, 2020 U.S. Dist. LEXIS 57051, at *8 ("[T]his Court understands its task to be to assess—"by the facts, on a counsel-by-counsel basis" *U.S. Steel*, 730 F.2d at 1468—whether each of the individuals for whom Defendants seek access to confidential material presents *too great* a risk of inadvertent

8

disclosure") (citation and emphasis in original).

Courts regularly require disclosure of each specific individual who will have access to sensitive information in order to analyze the job duties of each relevant employee. For example, in *Peabody Energy Corp.*, the court engaged in a fact-specific analysis of six individuals to whom the defendants proposed to disclose sensitive information: it granted access to two litigation-focused in-house attorneys and denied access to the other four employees, including in-house attorneys and also business people who submitted declarations "deny[ing] involvement in competitive decisionmaking on behalf of their employers." 2020 U.S. Dist. LEXIS 57051, at *18-19. While the Court found "no reason to doubt either [the declarants'] truthfulness or their commitment to using confidential material only in the defense of this litigation," it nonetheless held that access to competitively sensitive material "would create an unacceptably high risk of inadvertent disclosure." *Id.*; *see also id.* at *23 ("[T]he district court in *Sysco* denied such access to an attorney whose activities brought him merely 'within the orbit' of competitive decisionmaking activities [and] certainly d[id] not support granting full access to employees who actually are businesspeople.") (citing *FTC v. Sysco Corp.*, 83 F. Supp. 3d 1, 4 (D.D.C. 2015)).

Meta has provided to the FTC no precedent from a government enforcement case that supports its proposal to provide a potentially large number of employees and/or in-house counsel with access to third parties' "trade secret or other confidential research, development, or commercial information." Ex. E § 2.3 (Meta's proposed definition of "Confidential Information"). Meta's suggestion that the employees and in-house counsel will execute an "Agreement to Be Bound" fails to provide any mechanism for the case-by-case assessments necessary to assess the risk of inadvertent disclosure. It is thus inadequate, as "[t]he primary concern . . . is not that lawyers involved in such activities will intentionally misuse confidential

information; rather, it is the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." *Sysco*, 83 F. Supp. 3d 1, 3-4; *Peabody*, 2020 U.S. Dist. LEXIS 57051, at *8 (quoting *Sysco*). *See also Saint Alphonsus Med. Ctr. v. St. Luke's Health Sys.*, 2013 WL 139324, at *4 (D. Idaho Jan. 10, 2013) ("[T]he very nature of competitive information makes it difficult to compartmentalize.").

## II.   THE COURT SHOULD ADOPT THE FTC'S PROPOSED PROTECTIVE ORDER RATHER THAN DEFENDANT'S

Meta's most recent proposal to the FTC, attached as Ex. E, differs from the FTC's proposal in other minor ways. In each case the FTC's proposal should be adopted. To the extent the parties dispute the definitions of terms, the FTC has attempted to offer reasonable definitions that are supported by analogous protective orders, including the order adopted in *Google*.

## CONCLUSION

For the reasons explained above, the FTC respectfully requests that the Court enter the FTC's Proposed Protective Order, attached as Exhibit A.

Dated: March 7, 2022

Respectfully submitted,

By: /s/ Daniel Matheson
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Maria Dimoscato (D.C. Bar 489743)
Owen Masters (D.C. Bar 242139)
Susan Musser (D.C. Bar 1531486)
Michael Smith (D.C. Bar 996738)

Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*