IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **META PLATFORMS, INC.**, <br><br> Defendant. | Civil Action No. 1:20-cv-03590 (JEB) |

## META PLATFORMS, INC.'S STATUS REPORT AND PROPOSAL FOR PROTECTIVE ORDER

In this action, Plaintiff Federal Trade Commission ("FTC") alleges that Defendant Meta Platforms, Inc. ("Meta") is a monopolist, with almost no competitors other than Snap and a handful of defunct applications. Apparently unaware of the irony, the FTC proposes a protective order that would effectively bar Meta's lawyers from assisting in Meta's defense – the stated reason: Meta's numerous competitors are concerned that the documents and information they have provided to Plaintiff, and will provide in discovery to Meta, are *competitively sensitive information* that cannot be seen by *any* Meta personnel. That is, they *compete* with Meta.

The FTC brought this action with the avowed purpose of breaking Meta apart. Yet, the FTC proposes a protective order that would unfairly impede Meta's ability to defend itself against this threat. The FTC's proposal would effectively prevent all in-house counsel from reviewing documents a third party labels as "Highly Confidential." In a case of this magnitude – where outside counsel's ability to consult and collaborate with in-house counsel is essential – that effective prohibition on in-house counsel access is unfair and unreasonable.

This case will involve substantial discovery. The FTC has already sought documents relating to everything Meta has done since 2009 (for certain requests since 2007). Meta plans to

seek discovery from over 100 competitors and many other companies, and is seeking discovery from the FTC, including its pre-suit investigation and review of the challenged acquisitions in 2012 and 2014.  Meta originally proposed a protective order that was consistent with numerous orders the FTC has entered into in the past.  The FTC rejected that proposal.  In an effort to reach agreement, Meta agreed to limit the disclosure of information third parties wish to keep from its competitor, Meta, to only four in-house counsel – a concession the FTC omits from its filing.  The FTC rejected this, too.  It then filed with the Court a version of Meta's proposal that did not accurately reflect the state of negotiations.  With the goal of narrowing the issues to those that Meta believes are truly essential, Meta has now accepted almost all of the FTC's terms.  *See* Ex. B (Redline Comparison).  Meta proposes a protective order that tracks the FTC's proposal with two discrete changes that are necessary for Meta to defend itself in this first-of-its-kind case.[1]

*First*, Meta proposes that two in-house counsel be permitted to review documents labeled "Highly Confidential."  This proposal is consistent with settled law, which recognizes that courts should not deny in-house counsel access to third-party information merely because of their in-house status – which is the only basis for the FTC's objection to their access.  The longstanding practice of courts in this District is to allow in-house counsel who are not involved in "competitive decision-making" to access competitively sensitive material.  Meta's proposed safeguards – which include prohibiting these two in-house counsel from participating in or

---

[1] In light of the FTC's concession (at 8) that in-house counsel who supervise and assist with litigation and investigations are not engaged in competitive decision-making, Meta's proposal clarifies the FTC's definition of competitive decision-making to mean "*business* decision-making relating to a competitor . . . ." Ex. A, § A(1)(c) (Meta's Proposed Protective Order).  Meta also proposes minor modifications to the information that in-house counsel must disclose to the FTC and third parties in order to maintain the confidentiality of any nonpublic investigations.  *See id.* § E(1).

advising Meta on "competitive decision-making" for two years – together with the Court's inherent authority to manage discovery, are more than sufficient to protect third parties' Highly Confidential Information.

*Second*, Meta proposes that four in-house counsel be permitted to review documents labeled "Confidential Information" without barring those attorneys from accepting certain jobs or job responsibilities in the future. Circumscribing an attorney's future employment as a condition to access lower-tiered Confidential Information is unnecessary and unreasonable.

The Court should enter Meta's proposed Protective Order, attached as Exhibit A.

## ARGUMENT

**I.     TWO META IN-HOUSE COUNSEL SHOULD HAVE ACCESS TO "HIGHLY CONFIDENTIAL INFORMATION"**

      **A.**     The FTC insists that *none* of Meta's in-house counsel should have access to *any* Highly Confidential Information unless the producing party consents or the Court finds Meta's "particularized need" for access to specific and identified documents "materially outweighs the risk of harm to both the Designating Party and to the public interest." FTC Ex. A, § E (ECF No. 105-1). Neither law nor logic supports such extreme restrictions, and Meta's proposal is more than adequate to protect a third party's interests in safeguarding Highly Confidential Information.

          **1.**     The FTC's proposal runs afoul of the principle that "status as in-house counsel cannot alone create th[e] probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984); *see Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (recognizing *U.S. Steel* as the "leading authority" on in-house counsel access); *accord Nevro Corp. v. Bos. Sci. Corp.*, 2017 WL 2351997, at *2 (N.D. Cal. May 31, 2017)

("Courts may not deny access to confidential information solely on the basis of counsel's in-house or retained status."); *Merial Ltd. v. Virbac SA*, 2010 WL 11534378, at *6 (N.D. Tex. June 10, 2010) ("the law is clear that [in-house counsel] cannot be prohibited from having access to all documents . . . based solely on her status as in-house counsel"). Courts instead must assess whether there is an unacceptable risk of a company's in-house counsel disclosing third-party information "inadvertently" due to their participation in the company's "competitive decision-making." *FTC v. Sysco Corp.*, 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015). Because that determination depends on the "factual circumstances surrounding each individual counsel's activities," it must be made "on a counsel-by-counsel basis." *U.S. Steel*, 730 F.2d at 1468; *see United States v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 24 (D.D.C. 2001) (*U.S. Steel* requires an "individualized, fact specific determination"); *cf. FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("On the facts of this case," district court did not err by denying access to in-house counsel inextricably involved in competitive decision-making). Accordingly, courts in this District routinely permit in-house counsel access to at least some competitively sensitive information if they have no role in competitive decision-making. *See United States v. AB Electrolux*, 139 F. Supp. 3d 390, 393-94 (D.D.C. 2015); *Sysco*, 83 F. Supp. 3d at 3-4; *FTC v. Whole Foods Mkt., Inc.*, 2007 WL 2059741, at *3 (D.D.C. July 6, 2007); *Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 56-58 (D.D.C. 2007); *Sungard Data*, 173 F. Supp. 3d at 24.

      The FTC offers no reason to jettison this time-tested approach for a blanket prohibition on in-house counsel accessing Highly Confidential Information. It has not shown that Meta's in-house counsel pose a heightened risk of inadvertent disclosure. Nor has the FTC identified any third party likely to be harmed if two, identified in-house counsel access Highly Confidential Information. It instead argues (at 2-3) that its restrictions are generally necessary to protect third

4

parties and its own ability to conduct future investigations. But the "mere prospect of retaliation" and "unsubstantiated" concerns that the disclosure of information "would have a 'chilling effect' on witnesses whose cooperation the FTC may seek in future investigations" do not provide good cause to limit Meta's access to discovery it needs to prepare a defense. *FTC v. Sysco Corp.*, 83 F. Supp. 3d 271, 275 (D.D.C. 2015); *see Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998) ("[T]he party requesting a protective order must make a specific demonstration of facts in support of the request . . . and the harm which will be suffered without one.").

Lacking a factual basis for its proposal, the FTC asks the Court (at 3) to defer to the protective order entered in *Google*. The protective order entered in that case is a clear outlier in this District, and the case is distinguishable. There, many of the same third parties that cooperated with DOJ were allegedly "targets of Google's anticompetitive conduct" and had "expressed concern about the potential for disclosure to Google." Pl.'s Status Report & Proposal for Protective Order, *United States v. Google LLC*, No. 20-cv-03010-APM (D.D.C. Nov. 13, 2020), ECF No. 34, at 2. The FTC makes no such representations here. Nor could it, given its position that Meta has no meaningful competitors. Further, the alleged antitrust violations in *Google* – an ongoing scheme of unlawful tying arrangements – arguably give rise to a concrete risk of harm to third parties if their information is disclosed. That risk does not exist in this case, which concerns two acquisitions Meta consummated ten and eight years ago.

The other cases on which the FTC relies (at 3-5) are similarly unhelpful to its argument. In *FTC v. RAG-Stiftung* and *United States v. Microsoft Corp.*, the parties consented to the protective order that the court entered. *See* Tr. of Status Conf., *FTC v. RAG-Stiftung*, No. 19-cv-02337-TJK (D.D.C. Aug. 4, 2019), ECF No. 32, at 3:21-4:14; Joint Mot. for a Suppl. Protective Order & Supporting Mem. of P. & A., *United States v. Microsoft Corp.*, No. 98-cv-1232-CKK

(D.D.C. May 27, 1998), ECF No. 928, at 1.² In *United States v. Aetna*, the special master handling discovery recommended that the court deny Aetna's request to modify the protective order so it could disclose third-party information to in-house counsel on the ground that Aetna had failed to show that its designated attorneys were not involved in competitive decision-making. *See* 2016 WL 8738420, at *6-7 (D.D.C. Sept. 5, 2016). Nor did the courts in *Aetna* and the related case of *United States v. Anthem* impose anything like the FTC's proposal; instead, the courts directed the defendants to seek approval from the special master to share confidential information "with a very small number of specified in-house attorneys so long as those attorneys are not involved in Defendants' competitive decision-making." Second Am. Protective Order, *United States v. Aetna, Inc.*, No. 16-cv-01494-JDB (D.D.C. Sept. 30, 2016), ECF No. 132, at 11; Second Am. Protective Order, *United States v. Anthem, Inc.*, No. 16-cv-01493-ABJ (D.D.C. Sept. 26, 2016), ECF No. 161, at 10-11. The defendants there were not required to identify specific documents to be accessed, nor were they forced to justify their need to disclose information to in-house counsel. Yet the FTC demands these procedures here, which in practice would result in a total ban – as it apparently has in *Google*. *See infra* p. 7.

      **2.**      The FTC's proposal would impair Meta's ability to mount an effective defense. Third-party discovery is crucially necessary for Meta to defend itself against the FTC's allegations. To that end, Meta has already identified many third parties that are likely to have relevant information it may use to support its defenses. Much of this material is likely to be designated Highly Confidential. Without access to this information, in-house counsel will be effectively shut out of participating in litigation strategy. *See FTC v. Peabody Energy Corp.*,

---

² For the same reason, the FTC's string cite (at 4 n.1) of *stipulated* protective orders is not illuminating.

6

2020 WL 1557168, at *4 (E.D. Mo. Apr. 1, 2020) ("the cost to Defendants of denying their most integrally involved in-house litigators full access to the evidence adduced against them" outweighed the "speculative possibility" of disclosure); *accord FTC v. Foster*, 2007 WL 2219410, at *9 (D.N.M. Apr. 26, 2007). Nor would in-house counsel be able to effectively assist outside counsel, who rely on their in-house colleagues' invaluable expertise and institutional knowledge. *See Sungard Data*, 173 F. Supp. 2d at 21, 24 (granting in-house counsel access, as it would otherwise be "extremely difficult, if not impossible, for the defendants' outside counsel to prepare [their] case for trial").

       **3.**      Finally, the FTC's "particularized need" exception to its general ban on disclosing Highly Confidential Information to in-house counsel is tantamount to no exception at all. As in *Google*, the FTC proposes that Meta would have to notify the FTC and the third party *each* time it needs access to Highly Confidential Information and explain its need "with particularity" on a *document-by-document basis*. This proposal would force Meta's outside counsel to disclose attorney work product and litigation strategy in order to consult with in-house counsel. Given the remarkably high cost of making a request for access that might not be granted, it is hard to conceive of Meta ever availing itself of this "exception" in practice. The public docket in *Google* contains no indication that Google has ever done so. The FTC's proposal is effectively an absolute ban on in-house counsel access to third-party documents labeled Highly Confidential.[3] And were Meta ever to invoke this "exception," this Court would be forced to adjudicate such access *each and every time* the third party or the FTC (if the FTC is

---

[3] The FTC's proposal also assigns the burden to the wrong party. The FTC would require Meta to justify sharing information with in-house counsel. But the FTC has it backwards – Federal Rule of Civil Procedure 26(c) requires the party seeking to avoid or limit discovery to establish "good cause" for a protective order. Fed. R. Civ. P. 26(c); *see Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 520 (D.D.C. 2017) (Boasberg, J.).

the producing party) objected to the disclosure of even a single document. The burden on the Court could be immense.

On top of these flaws, the FTC's proposal will, if adopted, mire the parties and the Court in needless disputes over confidentiality designations. The FTC's proposal will encourage third parties to over-designate materials as Highly Confidential, leading to many fights over whether particular documents should be designed Highly Confidential or Confidential. The Court will invariably have to resolve these disputes continually throughout discovery, because, under the FTC's proposal, the difference between Highly Confidential and Confidential will have a profound impact on whether Meta's in-house counsel can participate meaningfully in the case. This collateral litigation will be unavoidable under the FTC's proposal.

**B.** The better approach is reflected in Meta's proposed Protective Order, which contains rigorous protections to safeguard Highly Confidential Information. Meta agrees to limit disclosures to two in-house counsel. *See* Ex. A, § D(1)(d). These attorneys would be prohibited from participating in Meta's competitive decision-making from when they sign an "In-House Litigation Counsel Agreement Concerning Confidentiality" attached as Appendix B to the proposed Protective Order until two years after the last date on which Highly Confidential Information is disclosed to them. Were the attorneys to leave Meta, they would have to refrain – for the same two-year period – from participating in competitive decision-making in connection with any third party whose information they reviewed. Also for two years and whether at Meta or a new employer, the attorneys would be prohibited from participating in or advising on litigation or other legal actions against those third parties.[4] By signing Appendix B, the attorneys

---

[4] Meta proposes a minor modification to the FTC's language to make clear that this prospective restriction applies only in cases where Meta and the Protected Person are genuinely

"agree to be bound by the terms of the Protective Order," Ex. A, App. B, which provides that Highly Confidential Information "shall not be used for any business, commercial, competitive, personal, or other purpose," *id.* § G(2). The attorneys also acknowledge that "failure to abide by the terms . . . will subject" them "without limitation, to civil and criminal penalties for contempt of Court." *Id.* App. B. Because the Court has the full "spectrum of sanctions" at its disposal to "deter" the improper use of confidential information, no additional restrictions are necessary. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

Meta's proposal is *more* restrictive than protective orders that have been entered in recent antitrust cases and have allowed in-house counsel to access Highly Confidential Information without broadly restricting counsel's future activities. *See*, *e.g.*, Protective Order, *FTC v. Surescripts, LLC*, No. 19-cv-01080-JDB (D.D.C. Mar. 9, 2020), ECF No. 57; Protective Order, *FTC v. Qualcomm Inc.*, No. 17-cv-00220-LHK (N.D. Cal. May 1, 2017), ECF No. 81; Protective Order, *FTC v. AbbVie Inc.*, No. 14-cv-05151-HB (E.D. Pa. May 8, 2015), ECF No. 86.

## II.  IN-HOUSE COUNSEL WHO ACCESS ONLY "CONFIDENTIAL INFORMATION" SHOULD NOT BE SUBJECT TO PROSPECTIVE JOB RESTRICTIONS

The FTC's proposal would limit the disclosure of "Confidential Information" to four in-house counsel and subject these four attorneys to severe restrictions on their future job responsibilities and opportunities. *See* FTC Ex. A, § D(2)(d). That is unreasonably burdensome.

Meta does not object to limiting the disclosure of Confidential Information to four in-house counsel, but it does object to the onerous restrictions the FTC would impose on them. The

---

adverse parties. *See* Ex. A, § D(1)(d), (2)(d). This ensures the designated in-house counsel are not disqualified from engaging in routine litigation where the parties may be aligned with or only nominally adverse to Meta – circumstances in which the risks associated with inadvertent disclosure are remote.

FTC has provided no reason why it is necessary to broadly restrict the future activities of Meta's in-house lawyers before they can view documents – many of which will be almost a decade old – that the producing party has determined do not qualify for Highly Confidential treatment because they would not cause "material and significant harm" if disclosed. *See United States v. Aetna Inc.*, 2016 WL 8738421, at *5 (D.D.C. Sept. 14, 2016) (rejecting proposed two-year restriction on outside counsel's future activities where third party had "not shown a specific need for such restrictions"). These restrictions are also inconsistent with protective orders entered in recent antitrust cases with the FTC's consent that allowed the defendant's officers, directors, or employees to access Confidential Information if reasonably necessary for the litigation. *See*, *e.g.*, Stipulated Protective Order, *FTC v. Disruption Theory LLC*, No. 20-cv-06919-VC (N.D. Cal. Feb. 22, 2021), ECF No. 64, at 7-8; Stipulated Protective Order, *FTC v. AH Media Grp., LLC*, No. 19-cv-04022-JD (N.D. Cal. Aug. 1, 2019), ECF No. 39, at 7. The FTC identifies no antitrust case other than *Google*, and Meta is aware of none, where the court imposed such extensive restrictions on in-house counsel's future job opportunities.

Meta would allow the disclosure of Confidential Information to four in-house counsel who do not participate in competitive decision-making and who agree to be bound by the terms of the protective order. *See* Ex. A, § D(2)(d). To that end, Meta's proposal eliminates the two-year restriction and makes a few additional conforming changes. *See* Ex. B, § D(2)(d). These measures are commensurate with the category of information at issue, which includes all nonpublic commercial information, and would protect third parties' material without impinging on in-house counsel's ability to change roles within Meta or seek employment elsewhere.

## CONCLUSION

For the reasons set forth above, the Court should enter Meta's proposed Protective Order.

DATED:  March 14, 2022                             Respectfully submitted,


   */s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Kenneth J. Fetterman (D.C. Bar No. 474220)
Alex P. Treiger (D.C. Bar No. 1670925)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

James P. Rouhandeh (D. C. Bar No. NY0390)
Michael Scheinkman (D.C. Bar No. NY0381)
Davis Polk & Wardwell LLP
450 Lexington Ave.
New York, New York 10017
Tel: (212) 450-4754
james.rouhandeh@davispolk.com

Sonal N. Mehta (CA SBN 222086)
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
Sonal.Mehta@wilmerhale.com

David Z. Gringer (D.C. Bar No. 1001200)
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
David.gringer@wilmerhale.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

    */s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*