**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**,                 Plaintiff, <br><br>          v. <br><br> **META PLATFORMS, INC.** <br><br>                Defendant. | Civil Action No. 1:20-cv-03590 (JEB) |

**PLAINTIFF'S REPLY IN SUPPORT OF PROPOSAL FOR PROTECTIVE ORDER**

For more than a year, the FTC has advanced proposals and attempted to come to agreement with Meta on the terms of a protective order.  *See* Dkt. No. 105 ("FTC Mem.") Ex. D.  The FTC was therefore surprised and disappointed to see Meta's most recent proposal for the first time two days ago, attached to Meta's Court filing.[1]  Meta's failure to disclose its proposal to the FTC during the meet and confer process is plainly contrary to the purpose of Local Civil Rule 7(m), and for this reason alone the Court should reject Meta's proposals.  *U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008) (denying nondispositive motion where a defendant "merely genuflected to the letter of the Rule instead of trying in good faith to achieve its objectives" because "[t]he obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the nondispositive disputes that occur in the course of litigation") (citation omitted).

More fundamentally, the Court should reject Meta's new proposal because it fails to protect third parties' interests and the public interest.  Meta downplays third parties' legitimate concerns by suggesting that only a direct competitor would be worried about the disclosure of sensitive information, in a predictable attempt to imply that third parties' confidentiality concerns mean that Meta lacks monopoly power.  ECF 113 ("Meta Mem.") at 1.  Meta is transparently incorrect.  Many businesses that do not compete with Meta in the provision of personal social networking services may be harmed by the disclosure of confidential information.  For example, Meta's advertising customers (and potential customers) need to prevent the inadvertent use or disclosure by in-house counsel of information that might give Meta an unfair negotiating advantage.  Likewise, firms that offer advertising have a strong

---

[1] As discussed below, Meta's proposals on the areas of dispute are new proposals.  Meta's only specific proposals were its February 11, 2022 proposal and its March 4, 2022 proposed definition of Competitive Decision-Making.  *See* FTC Mem. Ex. D ¶¶ 7, 9.

interest in preventing Meta from using their confidential information, such as strategy documents, to unfairly advantage Meta's advertising offerings. The same concerns exist for any supplier that does business with or may in the future do business with Meta, and for firms that participate in fields that Meta may enter in the future. More generally, no third party should be denied robust protections for their trade secrets and similar confidential information simply because Meta chooses to request all manner of sensitive business strategy documents from numerous companies across the economy in this litigation. *See* Meta Mem. at 2.

Meta's arguments likewise fail to address the public interest. First, Meta speculates that the FTC's proposal might "mire" the Court in disputes over in-house counsel access to highly confidential information. Meta Mem. at 8. But this speculation is undercut by Meta's own arguments: Meta itself concedes that the public docket in *Google* reveals precisely *zero* disputes of this sort, *id.* at 7, and the FTC has copied nearly verbatim the relevant paragraph of the *Google* protective order. *Compare* FTC Mem. Ex. A §§ D.1, D.2 *with* FTC Mem. Ex. B §§ D.11, D.12. Just as in *Google*, the FTC's proposal will advance the public interest in the efficient resolution of this action. Second, Meta fails to acknowledge the possibility that its insistence on broader in-house counsel access will chill third parties from future cooperation with the FTC. The potential chilling effect is acute here, as some impacted third parties – like the FTC – until recently had no notice of Meta's proposals on the three areas in dispute: (1) the definition of "Competitive Decision-Making"; (2) future involvement in Competitive Decision-Making by in-house counsel granted access to Confidential Information; and (3) in-house counsel access to Highly Confidential Information ("HCI").

**I.      Meta's Proposed Definition of "Competitive Decision-Making" Fails to Protect Against Counsel's Inadvertent Use or Disclosure of Information**

Meta proposes a novel and unworkable limitation on the FTC's proposed definition of

2

"Competitive Decision-Making." *See* Meta Mem. Ex. B § A.1(c).[2]  While Meta's one-word addition of "business" to the FTC's definition may appear minor, it materially threatens the FTC's efforts to protect the interests of third parties because it fails to protect against the possibility that in-house counsel will inadvertently use or disclose confidential information in the course of offering advice on legal issues or other non-"business" issues.

Meta's definition appears entirely novel, as Meta cites no instances in which a court has adopted it.  In contrast, the FTC's definition of "Competitive Decision-Making" is commonly used and consistent with authoritative precedent.  *See* FTC Mem. at 7; *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).  Meta provides no reasons supporting its novel alteration of the definition of "Competitive Decision-Making," nor any reason to believe that its proposed definition will adequately protect against in-house counsel's inadvertent use or disclosure of rivals' protected information when offering legal or strategic advice.

## II.     The FTC's Proposes Appropriate Restrictions on In-House Counsel's Future Involvement in Competitive Decision-Making

Meta previously took the position that it could provide an unlimited number of "officers, directors, or employees," as well as four in-house counsel, with access to Confidential Information whenever "reasonably necessary."  *See* FTC Mem. Ex. E § 7.2(b).  Meta's new proposal no longer requests access by "officers, directors, or employees."  *See* Meta Mem. Ex B § D.2(d).[3]  While the FTC agrees that access for up to four in-house counsel appropriately meets

---

[2] The FTC's opening Statement did not address this issue for two reasons.  First, Meta proposed a different definition to the FTC than Meta now proposes.  *Compare* FTC Mem. Ex. D ¶ 9 *with* Meta Mem. Ex. B § A.1(c).  Second, Meta's previous proposals were clearly inadequate regardless of the definitions used, so the FTC had no reason to address Meta's definitions.

[3] Meta previously suggested to the FTC that limiting access to four in-house counsel would be appropriate, but never told the FTC it would accept a limit on the number of additional "officers, directors, or employees" that could be provided access whenever "reasonably necessary."

Meta's needs, the parties still have a dispute because the FTC believes that third parties' interests will not be appropriately protected if those in-house counsel can immediately change roles to engage in Competitive Decision-Making.

Meta incorrectly asserts that the FTC's proposed restrictions on in-house counsel's future activities are "inconsistent with protective orders entered in recent ***antitrust cases*** with the FTC's consent." Meta Mem. at 10 (emphasis added). But Meta provides no basis for this assertion, as the two cases Meta cites involve consumer deception, not violations of the antitrust laws. *See* Complaint, *FTC v. Disruption Theory LLC*, No. 20-cv-06919-VC (N.D. Cal. Oct. 5, 2020), ECF No. 1, at 13-14; Complaint, *FTC v. AH Media Grp., LLC*, No. 19-cv-04022-JD (N.D. Cal. July 12, 2019), ECF No. 1, at 22-29. Litigations involving consumer deception are inapposite, because they do not necessitate the extensive discovery into other companies' competitive strategies common in antitrust cases.[4]

Meta misses the mark in suggesting that limits on in-house counsel's future involvement in Competitive Decision-Making are unnecessary because some information produced in discovery may be "almost a decade old." Meta Mem. at 7. The age of the information is not dispositive of its importance, and the FTC and Meta agree that Confidential Information is limited to trade secrets and similarly sensitive material. *See* Meta Mem. Ex. B A(1)(b). A speculative suggestion that third parties will inappropriately designate outdated or competitively unimportant material as Confidential Information is irrelevant to the risk that in-house counsel will inadvertently use or disclose trade secrets and similarly sensitive material.

---

[4] Meta is likewise incorrect that these inapposite cases suggest that in "antitrust cases," the FTC has consented to "defendant's officers, directors, or employees to access Confidential Information if reasonably necessary for the litigation." Meta Mem. at 10. Meta cites no such "antitrust cases," and counsel for the FTC is aware of none.

4

Further, Meta identifies no reason to believe that either Meta or its in-house counsel will suffer hardship from the same provisions adopted in the *Google* case. *See* FTC Mem. Ex. B. Meta suggests that it seeks access for "in-house litigators," and there is no reason to believe that such litigation-focused attorneys would suffer hardship from avoiding involvement in Competitive Decision-Making for a reasonable period of time. *See* Meta Mem. at 7 (quoting *FTC v. Peabody Energy Corp.*, 2020 WL 1557168, at *4 (E.D. Mo. Apr. 1, 2020)).

### III. The FTC Proposes Appropriate Limits on In-House Counsel's Access to Highly Confidential Information

Meta's new proposal to provide Highly Confidential Information ("HCI") to two in-house counsel remains unacceptable. Just like Meta's previous proposal, it burdens third parties and denies the FTC notice and the ability to protect the public interest. *See* FTC Mem. at 5.

Meta incorrectly claims that the FTC's proposal to require a justification before Meta shares HCI with in-house counsel contravenes the FTC's burden to "establish 'good cause' for a protective order." Meta Mem. at 7 n.3. Federal Rule of Civil Procedure 26(c) merely requires that the moving party offer more than "conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Huthnance v. District of Columbia*, 255 F.R.D. 285, 296 (D.D.C. 2008). The FTC has plainly supported the need for a protective order in this matter. *See* FTC Mem. at 3-4. Indeed, Meta accepts that disclosure or use of HCI – inadvertent or otherwise – will harm third parties, and itself seeks protection. Allowing Meta to provide a particularized showing justifying in-house counsel access to HCI does not shift the burden to show that protection is appropriate; rather, it provides a mechanism for Meta to show a need that justifies in-house access *despite* the risk of harm to third parties.

### CONCLUSION

The FTC respectfully requests that the Court enter the FTC's Proposed Protective Order.

Dated: March 16, 2022

Respectfully submitted,

By: /s/ Daniel Matheson
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Maria Dimoscato (D.C. Bar 489743)
Owen Masters (D.C. Bar 242139)
Susan Musser (D.C. Bar 1531486)
Michael Smith (D.C. Bar 996738)

Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff
Federal Trade Commission*