**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>*Plaintiff*,<br><br>- v. -<br><br>META PLATFORMS, INC.,<br><br>*Defendant*. | Case No.<br>1:20-cv-03590 (JEB)<br><br>HON. JAMES E. BOASBERG |

## NON-PARTIES' POSITION STATEMENT ON THE PROTECTIVE ORDER[1]

In its subpoenas to non-parties, Defendant Meta Platforms, Inc. seeks almost unlimited amounts of extremely sensitive documents and data regarding the non-parties' businesses. In addition, many non-parties produced competitively sensitive information to the FTC during the investigatory phase of this matter, which the FTC has already produced to Meta on an outside-counsel-only basis. Disclosure to Meta's in-house employees of the information already provided to Meta, or the information called for by the subpoenas, risks serious harm to competition, innovation, and the non-parties, which compete against, are customers of, and/or negotiate against Meta.

Accordingly, the undersigned Non-Parties respectfully request that the Court adopt Plaintiff's Protective Order proposals to: (1) prohibit Meta's in-house counsel from accessing Highly Confidential Information unless Meta shows a particularized need; and (2) allow only four designated Meta in-house counsel access to Confidential Information, provided that they are not engaged in Competitive Decision-Making for two years after their access to Confidential

---

[1]   "Non-Parties" refers to the non-parties filing this statement: LinkedIn Corporation; Match Group, Inc.; Oracle Corporation; Pinterest, Inc.; Reddit, Inc.; Snap Inc.; and Twitter, Inc.

Information.[2] The Non-Parties also request that the Court clarify certain other provisions of the proposed Protective Order.

## I. Meta's Non-Party Subpoenas Demand Almost Limitless Amounts of Extremely Sensitive Information

Meta is casting an extraordinarily wide net for extremely sensitive materials from non-parties. Meta has served 91 non-party subpoenas so far and identified almost 200 additional non-parties to whom Meta likely will also issue subpoenas. (*See* Dkt. 105 at 2).

Based on the subpoenas that the Non-Parties are aware of, the breadth of Meta's subpoenas is stunning.[3] The subpoenas call for documents and data revealing the Non-Parties' most sensitive business information—including product pricing determinations, strategic plans, new product offerings, and potential acquisitions—dating back over twelve years, to January 1, 2010. The subpoenas contain 44 to 65 separately numbered requests for materials, many of which contain multiple and detailed sub-parts. Collectively, the requests encompass numerous competitively sensitive business activities.

A few examples of the dozens of individual requests for competitively sensitive information also demonstrate the overbreadth and burden of Meta's subpoenas:

- "All Documents referring or relating to how pricing for Your [the Non-Party's] Products is set . . ."

- "All Documents referring or relating to the Company's [Non-Party's] strategy to acquire new users for, monetize, and scale each of its Products . . ."

- "All Documents referring or relating to competition with Meta, the substitutability of Your Products with Meta's Products, Diversion of users and Advertisers between Your

---

[2]   This Position Statement incorporates the definitions set forth in Plaintiff's proposed Protective Order (Dkt. 105-1).

[3]   Non-Party Reddit, Inc. has not to date received a subpoena in this matter, but it did produce competitively sensitive information to the FTC during the investigatory phase of this matter.

Products and Meta's Products, or comparisons between Your Products and Meta's Products . . ."

- "All Documents concerning actual or potential competition, including for user time or attention, You [the Non-Party] face relating to each of Your Products . . ." with *any* company, including these—among other—subparts:

  o "All presentations or strategic Documents relating to the Sales, Marketing, market share, quality metrics, competitive landscape, or competitive positioning of the [Non-Party] or any of its competitors (including competitors for user time and attention) . . ."

  o "All Documents showing Your strategies and efforts to attract users from other Products . . ."

- "[F]or each year and for each of Your Advertising Products," the name, address, and total spend of the top 250 advertisers broken out by sub-categories, and the proportion of advertising customers whose total spend falls into certain categories.

- Documents concerning all actual or potential acquisitions by the non-party and actual or potential acquisitions of, or investments in, the non-party.

- Documents seeking unlimited information regarding research and development for cloud computing architecture and cloud computing services as well as the amount spent, pricing plans, average reliability of the cloud computing services to five decimal points, total number of outages and downtime per month of cloud computing services along with the five largest customers each year from 2010 to the present ranked in order of business significance, the amount of bandwidth or transmission capacity provided on a monthly, quarterly and annual basis to each of these five largest customers, systems and processes for releasing patches and updates to cloud services customers, and improvements to cloud computing services, among other requests.

- Documents and data assessing cybersecurity and privacy practices and policies, including communications, presentations, audits and reports from outside security contractors provided in the regular course of business.

To illustrate the overwhelming breadth, consider a few of the above examples: For companies like the Non-Parties, a request for "all documents" "referring and relating to" "the Company's strategy to acquire new users for, monetize, and scale each of its Products," "concerning actual or potential competition, including for user time and attention," and "how pricing for Your Products is set" over a time period of more than twelve years, amounts to a request for millions of documents. And there are many similarly broad requests in the subpoenas.

In addition to being highly burdensome, the subpoenas are also highly invasive. The types of information called for—including the Non-Parties' pricing, user-acquisition, and competitive strategies—are among the most competitively sensitive documents that the Non-Parties possess. A key theme in the FTC's complaint is that Meta has used data to compete unfairly. *See* Dkt. 75-1 at 1 (Am. Compl.) ("Facebook has systematically tracked potential rivals and acquired companies that it viewed as serious competitive threats."). In a lawsuit that alleges Meta misused data, Meta's subpoenas create a dangerous risk of further misuse.

In addition, for many of the requests, Meta demands "all documents referring or relating" to the subject matters of the request, meaning the scope of what is sought is almost unbounded. *See Sonnino v. Univ. of Kan. Hosp. Auth.*, No. 02-2576-KHV-DJW, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) ("This Court has recognized on many occasions that the use of such omnibus terms as 'relating to' or 'regarding' can render a discovery request overly broad on its face."). And Meta broadly defines many terms in the subpoenas to further expand their scope.

Given these factors and the competitively sensitive nature of the requested materials, it is especially important that the Protective Order guards against the improper disclosure of the non-parties' competitively sensitive information. It would contravene the purpose of this lawsuit to allow Meta liberal access to confidential information that it could use, even inadvertently, to disadvantage competitors, gain unfair advantage in negotiations, and harm consumers.

## II.     Meta's In-House Counsel Should Be Prohibited from Accessing Highly Confidential Information Absent a Particularized Showing of Need

The Non-Parties ask that the Court adopt Plaintiff's proposal to prohibit Meta's in-house counsel from accessing Highly Confidential Information unless Meta shows a particularized need that materially outweighs the risk of harm to the non-party and to the public interest. (Dkt. 105-1 §§ D.1, E).

The "particularized need" requirement is critical for safeguarding against the risks of disclosure by Meta's in-house counsel. As the D.C. Circuit has recognized, disclosure of Highly Confidential Information to in-house counsel without adequate protections poses serious risks because in-house lawyers' "continuing employment often intimately involves them in the management and operation of the corporation of which they are a part." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980). Thus, as this court has repeatedly recognized, the in-house lawyer's role in the client's business decisions creates a heightened "risk that such [confidential] information will be used or disclosed inadvertently . . ." *United States v. Aetna, Inc.*, No. 16-cv-01494, 2016 WL 8738420, *5 (D.D.C. Sept. 5, 2016) (quoting *FTC v. Sysco Corp.*, 83 F. Supp. 3d 1, 3 (D.D.C. 2015)).

Here, misuse or inadvertent disclosure of Highly Confidential Information by Meta's in-house counsel would be especially harmful because the information at issue would allow Meta to gain an unfair advantage in competition, commercial negotiations, and other business activities. *See, e.g.*, *Aetna*, 2016 WL 8738420, at *5-6 (providing defendant Aetna's in-house counsel access to other competitor insurers' confidential information "undoubtedly risks giving [Aetna] an unfair advantage in competition in the insurance marketplace," and providing access to healthcare providers' confidential information "could provide [Aetna] with a significant advantage in future negotiations" with providers).

Previously, many non-parties produced competitively sensitive information during the investigatory phase of this matter. Now, Meta's subpoenas seek volumes of additional Highly Confidential Information pertaining to multiple products, strategies, pricing, and future innovation, including in a market in which Meta is alleged to unlawfully hold monopoly power. Given the quantity and sensitivity of the Non-Parties' Highly Confidential Information and that non-parties,

including the undersigned Non-Parties, are competitors, customers, and/or partners of Meta, their information requires vigilant protections from inappropriate disclosure to Meta.

Because of the importance of safeguarding non-party information, courts regularly impose strict limitations on in-house counsel's access, especially in antitrust cases. *See, e.g.*, Stipulated Protective Order, *United States v. Google*, No. 20-cv-03010, Dkt. 98 ¶ 17 (D.D.C. Jan. 21, 2021) (requiring defendant to "stat[e] with particularity the need for" disclosure to designated in-house counsel and allowing disclosure only upon consent of the producing party or the court's finding that such "particularized need for access . . . outweighs the risk of harm to the [producing party] or the public interest"); *United States v. Hillsdale Cmty. Health Ctr.*, No. 15-cv-12311, Dkt. 49 at ¶ 13 (E.D. Mich. Dec. 15, 2015) (prohibiting disclosure of Highly Confidential Information to defendant's in-house counsel). Thus, placing strict limitations on Meta's access is critical here given the nature of the allegations against Meta and the type of information at issue.

Meta seeks to allow two in-house counsel not engaged in Competitive Decision-Making access to Highly Confidential Documents without any showing of particularized need. (Dkt. 113-2 § D.1; *see also* Dkt. 113-2 at 21-22 (deletion of § E)). According to Meta, the particularized need requirement could impose a burden on the Court because it could create disputes that the Court would need to resolve. (Dkt. 113 at 7-8). But the particularized need requirement has not created any burden on the Court in *Google*. As Meta acknowledges, the public docket in *Google* shows that Google has not brought any disputes concerning the particularized need requirement to the Court. It is not surprising that Google's in-house counsel have not sought access to Highly Confidential materials given that their outside counsel have complete access to these materials, just as Meta's outside counsel will have here.

Finally, Meta's proposal would allow Meta's in-house counsel to retain Highly Confidential exhibits and other documents after the conclusion of the litigation. (Dkt. 113-2 § H). For the reasons set forth above, Meta should not be allowed access to any Highly Confidential materials, much less be allowed to retain those materials, after the litigation concludes.

## III. Meta's Designated In-House Counsel Should Be Prohibited from Engaging in Competitive Decision-Making for Two Years After Accessing Confidential Information

The Non-Parties request that the Court adopt Plaintiff's proposal to allow only four designated Meta in-house counsel access to Confidential Information, provided that they are not engaged in Competitive Decision-Making for two years after their access to Confidential Information. (Dkt. 105-1 § D.2(d)).

This two-year restriction on Competitive Decision-Making is essential for safeguarding against the risk of harmful use or disclosure of non-parties' Confidential Information. Meta's subpoenas seek to collect Confidential Information from essentially the entire technology industry. Without the two-year restriction, Meta's in-house counsel can examine this compilation of Confidential Information one day and the next day be responsible for weighing in on strategy, key investment decisions, customer relationships, contract negotiations, and other competitively sensitive activities relating to non-parties. The potential for misuse—intentional or inadvertent— is especially high as non-parties and the Court have little or no ability to monitor what Meta's in-house counsel does with the Confidential Information that they receive. Moreover, as the D.C. Circuit has recognized, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Exxon*, 636 F.2d at 1350 (denying Exxon's in-house counsel access to possible competitor's confidential competitively sensitive information). Thus, the "inescapable reality" is that, once Meta's in-house counsel "learns the confidential information," they "cannot rid [themselves] of

the knowledge [they have] gained" and "cannot perform a prefrontal lobotomy on [themselves]"

after their involvement in this litigation. *FTC v. Advocate Health Care Network*, 162 F. Supp. 3d

666, 670 (N.D. Ill. 2016) (citing cases).

## IV.   Plaintiff's Proposed Treatment of Confidential and Highly Confidential Information Will Not Impair Meta's Defense

Plaintiff's proposals regarding the treatment of Confidential and Highly Confidential

Information will in no way prejudice Meta's ability to litigate this case. Meta's experienced outside

counsel will have complete access to *all* Confidential and *all* Highly Confidential materials. These

attorneys are highly competent antitrust litigators who are familiar with Meta's business and can

advise Meta on the litigation, its chances for success, and other matters—all without divulging

Highly Confidential Information. Should Meta dispute any non-party's confidentiality

designations, Meta's outside counsel are fully capable of availing themselves of the procedures set

forth in Plaintiff's proposal for challenging confidentiality designations. (Dkt. 105-1 § C). And,

while any challenges are pending, Meta's outside counsel will continue to have full access to all

documents produced by non-parties.

Moreover, Plaintiff's proposals do not impose blanket restrictions. Rather, they allow for

access by certain of Meta's in-house counsel, subject to appropriate safeguards against harmful

disclosure. With regard to Confidential Information, Plaintiff's proposal allows for appropriate

access of this information by four designated Meta in-house litigators who are responsible for

overseeing this litigation and who do not engage in Competitive Decision-Making at Meta. (Dkt.

105-1 § D.2(d)) ("Four In-House Counsel of Defendant with responsibilities for the litigation of

this Action . . ."). With regard to Highly Confidential Information, to the extent the Court later

determines that certain Highly Confidential documents need to be disclosed to an in-house

designee, Plaintiff's proposal allows the Court to grant access on a document-by-document basis

upon Meta's showing of a particularized need that outweighs the confidentiality interest of the producing party. (Dkt. 105-1 § E).

**V.      The Court Should Clarify That Non-Parties May Designate Confidentiality Levels On a Document-by-Document Basis**

With regard to the manner of confidentiality designations (Dkt. 105-1 §§ B.2, B.6; Dkt. 113-2 §§ B.2, B.6), the Court should clarify that non-parties can designate confidentiality levels on a document-by-document basis rather than a page-by-page basis. Especially in light of Meta's expansive subpoenas, determining and marking confidentiality on a page-by-page basis likely would be exceedingly burdensome for non-parties. Moreover, page-by-page confidentiality designations would have almost no value to Meta as their outside counsel can view all documents and because only a small percentage of documents produced in this matter are likely to ultimately be used in the litigation. More particularized designations can be prepared for trial, if and as needed.

Attached as **Exhibit A** is the Non-Parties' mark-ups to Plaintiff's proposed Protective Order, which clarify ambiguity within the document with respect to the manner of confidentiality designations. (*See* Ex. A at pp. 7, 12-13). This mark-up also proposes other technical corrections and minor modifications. (*See* Ex. A at pp. 3, 7-9, 11-13, 24-25).

**CONCLUSION**

For the reasons set forth above, the Non-Parties respectfully request that the Court adopt Plaintiff's proposals regarding the treatment of Confidential and High Confidential Information. The Non-Parties also request that the Court conform the Protective Order to reflect the edits shown in Exhibit A.


Dated:          March 16, 2022                    Respectfully submitted,

                                                  /s/ Peter J. Mucchetti
                                                  Peter J. Mucchetti (D.C. Bar#: 463202)
                                                  Abigail L. Cessna (D.C. Bar#: 1552622)
                                                  (*pro hac vice* pending)
                                                  CLIFFORD CHANCE US LLP
                                                  2001 K St. NW
                                                  Washington, D.C. 20006
                                                  Tel: (202) 912-5053
                                                  Fax: (202) 912-6000
                                                  peter.mucchetti@cliffordchance.com
                                                  abigail.cessna@cliffordchance.com

                                                  Minji Reem (*pro hac vice* forthcoming)
                                                  CLIFFORD CHANCE US LLP
                                                  31 West 52nd Street
                                                  New York, NY 10019
                                                  Tel: (212) 878-8000
                                                  Fax: (212) 878-8375
                                                  minji.reem@cliffordchance.com

                                                  *Counsel for non-party Snap Inc.*

/s/ Jonathan I. Gleklen
Jonathan Gleklen (D.C. Bar#: 443660)
Ryan Z. Watts (D.C. Bar#: 478395)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
jonathan.gleklen@arnoldporter.com
ryan.watts@arnoldporter.com

*Counsel for non-party LinkedIn Corporation*

/s/ Justin P. Hedge
Justin P. Hedge (D.C. Bar#: 979378)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
justin.hedge@arnoldporter.com

C. Scott Lent (*pro hac vice* forthcoming)
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th St.
New York, NY 10019
Tel: (212) 836-8220
Fax: (212) 836-8689
scott.lent@arnoldporter.com

*Counsel for non-party Match Group, Inc.*

/s/ Craig A. Holman
Craig A. Holman (D.C. Bar#: 447852)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
craig.holman@arnoldporter.com

*Counsel for non-party Oracle Corporation*

/s/ Peter J. Mucchetti
Peter J. Mucchetti (D.C. Bar#: 463202)
CLIFFORD CHANCE US LLP
2001 K St. NW
Washington, D.C. 20006
Tel: (202) 912-5053
Fax: (202) 912-6000
peter.mucchetti@cliffordchance.com

Minji Reem (*pro hac vice* forthcoming)
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375
minji.reem@cliffordchance.com

*Counsel for non-party Pinterest, Inc.*

/s/ Edward D. Hassi
Edward D. Hassi (D.C. Bar#: 1026776)
Leah S. Martin (D.C. Bar#: 1029757)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
thassi@debevoise.com
lmartin@debevoise.com

*Counsel for non-party Reddit, Inc.*

/s/ Kenneth R. O'Rourke
Kenneth R. O'Rourke (D.C. Bar#: 1613849)
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street, NW, Fifth Floor
Washington, D.C. 20006
Tel: (202) 973-8800
Fax: (202) 973-8899
korourke@wsgr.com

*Counsel for non-party Twitter, Inc.*