## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

META PLATFORMS, INC.,

        Defendant.

Case No. 1:20-cv-03590-JEB

## JOINT STATUS REPORT

Pursuant to the Joint Scheduling Order ("JSO") dated March 3, 2022 (ECF No. 103), the parties submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions.

## I.    The FTC's and Meta's Joint Summary of the Status of Discovery

### A.    Nonparty Confidentiality Designations

Pursuant to the Protective Order (ECF No. 134), the FTC notified each third-party that had provided Investigation Materials to the FTC and furnished these parties with a copy of the Protective Order.  May 31, 2022 is the latest date on which any non-party so notified by the FTC may designate any Investigation Materials as Highly Confidential under the Protective Order.

### B.    Nonparty Discovery

Meta and the FTC have both served non-party discovery.  Meta has served document subpoenas on 127 non-parties.  The FTC has served cross-notices on 106 of those non-parties, and has served subpoenas on four additional non-parties.  The parties expect to serve additional subpoenas on non-parties as discovery progresses.

The parties are exchanging notices of modifications, extensions, or postponements to the subpoenas and cross-notices served on non-parties.  The parties are also exchanging non-party productions on a rolling basis.

### C.    Party Discovery

As set forth in Section II, the FTC requests Court intervention to order Meta to (a) begin its custodial document review and production, based on the search terms and custodians to which Meta has agreed at this point; and (b) identify to the FTC the shared file locations that Meta will search for responsive documents.  Meta does not believe that the relief requested by the FTC is necessary or appropriate for the reasons discussed in Section III.  The FTC has requested and Meta has no objection to providing a further report on the status of document discovery on June 30th.

As set forth in Section III, Meta requests Court intervention to order the FTC to produce documents it created in 2012 and 2014 relating to the acquisitions it is challenging in this action, and to provide interrogatory responses to identify which activities on Meta's products the FTC contends qualify as "personal social networking."  The FTC does not believe that either dispute is ripe for the reasons discussed in Section II.

### II.    __The FTC's Statement on the Status of Discovery__[1]

The FTC propounded its First Set of Requests for Production ("RFPs") over 100 days ago.  Since that time, Meta has not produced a single document from the files of agreed-upon

---

[1] The FTC did not receive Meta's final version of Meta's statements regarding discovery issues until 11:50 p.m. on May 31.  In order to comply with the May 31, 11:59 p.m. deadline for the joint filing, the FTC was forced to finalize its positions on discovery issues without reviewing any changes to Meta's assertions or final positions.  The FTC may request the Court's permission to respond as appropriate to new assertions by Meta that the FTC did not have a chance to review filing.

custodians.  Based on the lack of progress to date, the FTC fears that Meta will not complete its document production in sufficient time to allow the FTC to conduct depositions of fact witnesses and prepare expert reports.  Two matters require the Court's intervention if the parties are to complete discovery in timely fashion.  First, Meta must promptly begin its custodial document review and production, based on the search terms and custodians to which Meta has agreed at this point.  Second, Meta must identify to the FTC the shared drives and other shared resources from which it will collect documents.  Further, the FTC asks the Court to order, and Meta does not oppose, a further report on the status of document discovery on June 30th.

With respect to Meta's discovery to the FTC, Meta is attempting to manufacture two disputes when neither is ripe.  First, Meta claims that the parties have reached impasse regarding certain documents that the FTC provided to the House of Representatives in 2019.  The FTC's position is that the Court will benefit from full briefing on the issue, and that Meta is attempting to prejudice the FTC by curtailing the FTC's ability to assert its privileges, and support them through any necessary declarations.  Nonetheless, as explained below, to accommodate Meta's demand for haste, the FTC will substantially complete its production of relevant non-privileged documents exchanged with the House of Representatives no later than June 14, and will provide a privilege log no later than 14 days after it makes its production.  After the FTC has identified the withheld documents and the basis of the FTC's privilege assertions, if the parties have a dispute, the parties should brief the dispute at that time.

Meta likewise attempts to manufacture a dispute where none exists when it complains about the FTC's responses to Meta's interrogatories.  As explained below, Meta revised and clarified its interrogatories on May 11, and on May 13 the FTC agreed to respond.  The FTC anticipates providing its responses by June 14.

A.       **The FTC's Position Regarding its Discovery to Meta**

Rather than identify in good faith sources of responsive information, Meta has forced the FTC to guess as to which Meta employees or former employees might prove to be efficient custodians.  Despite the obvious shortcomings of Meta's approach, the FTC has obliged: shortly after receiving Meta's nonresponsive boilerplate objections to the FTC's RFPs, the FTC suggested a set of search terms, and also suggested former or current employees who might be efficient custodians (the "March 21 Proposal").

At this point, Meta has agreed to search the files of 96 custodians identified by the FTC in its March 21 Proposal.  Meta has also agreed to run 28 search strings (although Meta has not provided to the FTC any information regarding the volume of documents implicated by those search strings).  Thus, Meta is in a position to immediately begin to review the documents resulting from those search strings, but Meta has refused to do so.[2]

1.       **Background**

The FTC served its RFPs on February 15, 2022.  On March 17, Meta provided boilerplate objections, which did not commit to search for or produce any materials responsive to any of the FTC's RFPs.  The FTC promptly provided its March 21 Proposal.  Specifically, the FTC proposed that Meta search for responsive documents by running certain search terms used during the Investigation (the "Modified Existing Search Terms") and targeted additional search terms (the "Supplemental Search Terms") across the files of (a) 60 custodians from the Investigation

---

[2] Meta has to date produced no documents from the files of any of the agreed-upon custodians, despite its assertion that it finally began to produce documents on the eve of this status report.  While Meta did indeed produce 5,570 pages of documents to the FTC on May 25, the production largely consists of SEC filings that were already available to the FTC (and to the general public).  The remainder of the production appears to comprise various regularly prepared revenue reports, and no files from any of the custodial sources to which Meta has agreed.

(the "Modified Existing Custodians"), and (b) 53 additional custodians (the "Supplemental Custodians").  Since its original March 21 Proposal, the FTC has agreed to drop entirely 15 of the 53 originally requested Supplemental Custodians, and limited searches for certain custodians who transitioned into roles that are less relevant to the FTC's claims in this action. Meta has now agreed to search the files of 96 custodians, many of whom were employed by Meta for a relatively brief period of time.

On May 13, Meta agreed to run 28 of the FTC's suggested Modified Existing Search Terms, but it has not yet provided any information regarding hit counts for these terms.[3]  On May 17, more than three months after the FTC served its RFPs, Meta finally provided highly imperfect metrics regarding the FTC's suggested Supplemental Search Terms.  Although the information Meta provided overstates the volume of documents at issue,[4] the FTC provided a revised proposal on May 24 that eliminated or narrowed 43 of the 59 Supplemental Search Term strings to which Meta objected.[5]  The FTC has asked Meta to provide the number of non-

---

[3] The FTC has repeatedly asked Meta to provide metrics regarding the number of hits that would be generated by these 28 search strings.  Meta has not provided any such metrics, despite agreeing on May 13 to employ the terms.  Based on Meta's agreement to run the 28 Modified Existing Search Terms, the FTC concludes that in Meta's view these terms, even when combined with the Supplemental Search Terms, are proportional to the needs of the case and do not generate an unduly burdensome number of hits.

[4] The metrics provided by Meta on May 17 are over-inclusive, and are likely to be enormously overstated.  First, Meta's metrics included hits for 15 custodians that the FTC has agreed to drop.  Second, Meta's metrics do not de-duplicate "hits" between the 60 Modified Existing Custodians and the 53 original Supplemental Custodians.  Third, Meta's metrics do not employ "threading," which eliminates duplicative emails within the same email thread.

[5] Meta claims that the FTC amended its proposal on May 26, but this is misleading.  On May 26 the FTC provided clarification with respect to proposed date ranges for five search strings: the FTC clarified that there was no change from its initial proposal for two search strings, and made a few other adjustments to align with date ranges that the FTC previously agreed to narrow.  The May 26 correspondence did not change in any way the search terms or custodians in the FTC's May 24 proposal.

duplicative "hits" that will be returned by the FTC's May 24 proposal, and awaits this information to allow for further refinement if any is necessary.

### 2. Meta Should Begin Its Review of Custodial Documents

Meta does not, and cannot, explain how waiting to begin its review accomplishes anything other than delaying Meta's first custodial document productions until many months after the FTC propounded its RFPs, and notably months after the FTC itself began its document productions in response to Meta's RFPs (which were served long after the FTC's RFPs to Meta). Meta's approach would inevitably delay fact depositions of Meta's employees.  It would also prejudice the FTC by requiring the FTC to review Meta's document productions on a compressed timetable.

The FTC thus respectfully asks the Court to order Meta to begin its document review as promptly as possible, and produce responsive non-privileged documents on a rolling basis.  The June 30th status report requested by the FTC will also be an important check-in to confirm that Meta is moving forward and will complete its productions in a timely manner.

### 3. Meta's Refusal to Identify Shared Locations

The FTC's March 21 Proposal represents the FTC's best efforts to identify appropriate sources of responsive documents, based on the FTC's necessarily imperfect information.  Meta has ignored its affirmative obligation to identify sources of potentially responsive documents, including shared resources: Meta should search such shared resources and identify them to the FTC, whether or not those resources are relevant to the FTC's suggested custodians.  Information regarding which shared resources are efficient sources of responsive documents is exclusively in Meta's possession.  Meta inaccurately suggests that the FTC already has this information, but in

fact the FTC does not currently know which shared resources Meta intends to search, and does not know which potentially efficient shared resources Meta refuses to search.

After months of refusing to engage on this issue, Meta belatedly states in this status report that it identified to the FTC during the Investigation "the more often used collaborative work environments from which it had collected files during the investigation related to the agreed- upon custodians." Meta notably fails to identify what sources it will search for responsive documents in this litigation. And Meta likewise fails to confirm that it has identified and searched *appropriate* shared resources, regardless of whether those shared resources are tied to the FTC's suggested custodians.

The FTC respectfully asks the Court to instruct Meta to identify to the FTC which shared resources Meta has searched or will search for responsive materials.

B.    <u>The FTC's Position Relating to Meta's Discovery to the FTC</u>

On February 28, 2022, the FTC substantially completed production of its investigative file in accordance with Paragraph 3 of the Joint Scheduling Order.[6] The FTC has completed production of documents from 11 third parties, data from 11 third parties, transcripts of investigative hearings, and correspondence exchanged with third parties during the Pre-Complaint Investigation.

Meta served the FTC with its First Set of Requests for Production on March 9, 2022. The FTC has worked diligently to collect and produce documents responsive to Meta's document requests. The FTC made its first document production on May 20, 2022; this production contained, among other things, non-privileged materials from the FTC's review of the Instagram acquisition in 2012 and the WhatsApp acquisition in 2014. The FTC anticipates completing by

---

[6]    The FTC made productions on February 24 and 28, and provided small supplements on April 7 and April 11.

June 14 its production of non-privileged documents related to the Instagram and WhatsApp reviews.

Meta served its First Set of Interrogatories to the FTC on March 30, 2022, and the FTC provided its responses on April 29.  Based on revisions and clarifications that Meta provided to the FTC on May 6 and May 11, the FTC supplemented its responses to five interrogatories on May 27.  The FTC confirmed on May 13 that it will provide supplemental responses to Interrogatory Nos. 10, 11, and 12, and will provide those responses by June 14.  Meta's request for an accelerated response should be rejected, for the reasons explained below.

1. **The FTC's Position Regarding Documents Provided to the House of Representatives**

In the course of the FTC's diligent and good-faith efforts to identify documents responsive to Meta's discovery requests, the FTC (although it was under no obligation to do so) informed Meta that in 2019 the FTC provided certain documents to the House of Representatives.  Meta has subsequently insisted—incorrectly and without identifying any authority for its claims—that the FTC waived all applicable privileges by producing documents to the House of Representatives.  The FTC informed Meta that the FTC will provide a log that identifies any withheld documents and asserts applicable privileges, to enable Meta to assess the FTC's privilege assertions.  Yet, despite the FTC's rapid compliance with Meta's discovery requests—which stands in stark contrast to Meta's own refusal to provide information and begin custodial document productions—Meta refuses to abide by the process for privilege assertions in this case.  *See* Joint Scheduling Order ¶ 17 (privilege logs are to be provided 45 days "after completion of production for each set of requests for production.").

The Court should reject Meta's effort to create a dispute before the FTC has even had an opportunity to assert applicable privileges.  The FTC's assertion of governmental privileges

typically requires both an appropriate privilege log, and in the event of a dispute, a supporting

declaration.  A declaration is often critical to the assertion of governmental privileges, including

the deliberative process privilege, because "[i]n order to determine whether the agency's claim

that the documents were properly withheld is valid, an understanding of the function the

documents serve within the agency is crucial."  *Coastal States Gas Corp. v. Dept. of Energy*,

617 F.2d 854, 858 (D.C. Cir. 1980) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132

(1975)).  Declarations supporting governmental privileges are typically prepared by an official

in a supervisory position, who often must personally review the documents to make a

determination that the documents are subject to the privilege.  *See Landry v. FDIC*, 340 U.S.

App. D.C. 237, 204 F.3d 1125, 1135-36 (2000) (discussing typical processes for invoking

deliberative process and law enforcement privileges).  The FTC has not yet provided a privilege

log, or a supporting declaration.

While the FTC needs to actually assert its privileges—and identify to Meta the relevant

documents—before this issue will be ripe, the FTC is not attempting to delay a dispute unduly.

To accommodate Meta's demand for haste, the FTC has informed Meta that it will substantially

complete its production of relevant non-privileged documents exchanged with the House of

Representatives no later than June 14, and will provide a privilege log identifying any withheld

documents no later than 14 days after it makes its production.  After Meta has reviewed the

FTC's privilege assertions, in the event of a dispute, the parties can contact the Court.  If such a

dispute arises, the FTC believes that the Court will benefit from full briefing regarding any

challenges Meta makes to the FTC's privilege claims.  In such an event, the FTC will explain

that there is no basis to disregard applicable privileges, and that Meta's uninformed

representations about the contents of the relevant documents and vastly overstated claims

regarding their importance are unavailing.  The FTC will also explain in its briefing, and provide any declarations necessary to establish, that in providing documents to the House of Representatives the FTC did not waive applicable privileges, including the deliberative process privilege.

**2.**  **The FTC's Position Regarding Meta's Interrogatories**

Meta served its First Set of Interrogatories to the FTC on March 30, 2022.  The FTC provided its Responses and Objections on April 29.  The parties met and conferred on May 6, 2022.  Meta sent a follow-up letter clarifying and revising certain interrogatories, which the FTC received on May 11.  The FTC responded on May 13, and committed to provide supplemental responses to certain interrogatories.  The FTC supplemented its responses to five interrogatories on May 27.  The FTC expects to provide supplemental responses to three additional interrogatories (Nos. 10, 11, and 12) no later than June 14.

The FTC's position is that there is no dispute regarding its responses to Meta's interrogatories.  Meta demands an accelerated response below, taking the opportunity to both vastly overstate the importance of the information at issue, and also incorrectly accuse the FTC of failing to provide information that the FTC possesses.  Meta's claims of being unable to defend itself are overwrought and inaccurate, considering the documentary and testimonial evidence indicating that Meta recognizes that personal social networking services are at the core of Facebook Blue and Instagram.  *See e.g.*, Substitute Amended Complaint (ECF No. 81) ¶¶ 177-78.  Moreover, the FTC's responses to the contention interrogatories at issue are the subject of ongoing discovery.  Regardless, the FTC will respond no later than June 14, and if any dispute arises at that time the parties may contact the Court.

**C.**  **The FTC's Position Regarding Non-Party Discovery**

The parties continue to meet and confer regarding appropriate time frames on which to exchange non-parties' document productions, responses & objections to subpoenas, and declarations. The FTC believes that a concrete deadline for such exchanges would be efficient, and that such a deadline may become necessary as discovery progresses. The FTC may raise this issue with the Court in the future if the parties are unable to agree on appropriate deadlines.

As noted above, Meta has served Rule 45 subpoenas on more than 125 nonparties. Many of these nonparties have marginal relevance to the parties' claims or defenses, and many also have limited resources. Certain nonparties have asked the FTC to provide a list of all nonparties that have received subpoenas to date. In an effort to avoid any unnecessary back-and-forth with third parties, and to be transparent with Meta and the Court, the FTC proposed to Meta that the parties file with this report a list of nonparties that have received a Rule 45 subpoena. Meta has asserted that filing such a list with the Court is "inappropriate," but has provided no basis for this assertion. The FTC therefore asks that the Court provide guidance to the parties about how to the parties should communicate this information to nonparties which request it.

### III.    Meta's Statement Regarding the Status of Discovery

The FTC spills much ink to no apparent purpose in complaining about Meta's cooperation in the necessary process of refining the agency's unworkable document requests. The agency does not identify any issue where the parties are at impasse, and neglects to mention that Meta has already offered to start searching, collecting, reviewing, and producing documents from all custodians at issue as soon as the parties reach agreement on search terms and custodians. The FTC provided a revised proposal on custodians and search terms on May 24 (which it corrected on May 26) and requested updated statistics from Meta by June 1. Meta is working diligently to meet that requested deadline.

Perhaps the FTC raises these cavils to distract from the *actual* discovery disputes that require immediate Court intervention: the FTC's refusal to produce eight highly relevant documents it created in 2012 and 2014 containing facts and analyses about the Instagram and WhatsApp acquisitions, and the FTC's failure to respond to threshold interrogatories identifying what activities on Facebook and Instagram are and are not included in its artificial "personal social networking services"  ("PSNS") market.

The eight specifically identified documents at issue are critical to Meta's defenses in this action; they may contain the best contemporaneous evidence of the market conditions and competitive realities at the time the transactions occurred.  Meta is entitled to these documents to dispute the FTC's allegations and to support its defenses.  The FTC argues that Meta has "manufactured" this dispute, because the FTC wants to delay the dispute – by going through the empty exercise of waiting a month or more to provide a privilege log and declaration listing these same disputed documents.   That is nothing but delay for delay's sake.  The dispute is present and crystalized:  There are eight documents; they are specifically identified; and the parties dispute whether those documents are privileged.  Meta respectfully requests the opportunity to brief this fundamental, threshold issue now, because Meta needs these documents in order to frame and conduct appropriate discovery.   The FTC gives no substantive reason why this important dispute should not be resolved now. Meta has attached a copy of its proposed motion, which sets forth its entitlement to the documents, and respectfully requests permission to file it.  (*See infra* Point III.A.)

Just as the FTC seeks to obscure the contemporaneous evidence from 2012 and 2014 as to the relevant market (not PSNS) and the likely effect of the two challenged acquisitions (no harm to competition or consumers), the agency also refuses to tell Meta what is in or out of the

artificial PSNS "market."  This was something invented and tailored by the FTC for purposes of

contending that Meta has monopoly power in some imagined market and that the acquisitions

*were* likely to harm consumers, thereby escaping dismissal of its claims.  The interrogatories

Meta served over two months ago are directed to these threshold issues and the FTC must

provide answers to them *now* in order for discovery to proceed in an efficient, sensible, and fair

manner.  Even though the FTC began its lengthy pre-complaint investigation *three* years ago and

alleges that "Facebook Blue and Instagram are *predominantly used* as personal social networking

services," Am. Compl. ¶ 202, the FTC says it cannot now identify what activities on Facebook or

Instagram even qualify as PSNS.  The FTC suggests that Meta seeks "accelerated" responses to

these interrogatories.  But the interrogatories were served on March 30, 2022 and the answers

were due on April 29 – more than four weeks ago.

      This delay is unjustified and troubling.  The FTC made up the term PSNS for this

litigation; it is not a term that Meta uses – contrary to what the agency suggests in its submission

above, it can't point to a single Meta document or statement that has ever adopted or recognized

its construct.  PSNS is artificial, not grounded in industry practice, and only the FTC knows what

it means.  This case cannot sensibly proceed until the FTC explains the contours of that term to

Meta and the innumerable nonparties that are waiting to understand which activities on

Facebook, Instagram, and scores of other products, are allegedly relevant to this dispute.  (*See

infra* Point III.A.)

      The FTC's complaints about Meta's responses to its request for production of documents

are unfounded and puzzling.  While the FTC has suggestions for the Court, it does not identify

any actual dispute with Meta that requires judicial intervention.  The length and complexity of

the parties' negotiations are the result of the FTC's unworkable and unfocused demands.

Despite having over three million documents (comprising approximately 12 million pages) from its pre-complaint investigation, the FTC's requests, proposed search terms, and proposed custodians called for the review (according to Meta estimates) of approximately 20 million *more* documents, which would have resulted in both great cost and potentially lengthy delay.

Neither Meta nor the agency wanted that.  Meta sought through extensive and cooperative work with counsel for plaintiff to refine unworkable requests, agree on custodians, and come to a resolution that would permit the production of potentially relevant documents within a reasonable period of time.  The FTC just recently (on May 24 with corrections on May 26) provided modified search term proposals, modified custodian requests, and a request for additional statistics relating to these modified proposals by June 1.  Meta appreciates the FTC's willingness to continue to work through and appropriately narrow the number of custodians and search terms, but the FTC's election to revise its prior proposals on May 24 (a week after Meta provided the FTC the information it sought) is not indicative of any delays on Meta's part.  The FTC's request for new information, based on those revised proposals, is likewise not Meta's fault.  The parties are actively meeting and conferring to narrow disputes without Court intervention and are moving closer to a final agreed upon plan.  The FTC's request for novel judicial intervention, in the form of orders requiring immediate production and disclosures of "collaborative work environments," are unnecessary as well as unwarranted, and will only add additional complexity and lead to further disputes.  (*See infra* Point III.B.)

A.   **Meta's Statement Regarding FTC Refusal to Produce Critical Documents**

There are eight specifically identified documents that embody the results of the FTC's investigation of Meta's acquisition of Instagram (2012) and WhatsApp (2014).  These documents, containing both the relevant facts and the agency's contemporaneous conclusions

about the specific transactions it now seeks to challenge, are not merely relevant to the critical issues of market definition and lack of harm to competition – they may well be case dispositive. There is no valid basis for the FTC to withhold them.

They are hardly secret:  The FTC voluntarily furnished each of the eight documents to Members of Congress and their staff (which at the time included the current FTC chair), for use in the House Judiciary Committee's 2019 investigation of digital markets in general and these two transactions in particular.  But when Meta requested their production – seeking evidence that is unlikely to be available from any other source given the unprecedented delay in bringing this case – the agency stonewalled.

The FTC in 2012 and 2014 undoubtedly obtained facts and came to conclusions about the state of competition and the likely effect on consumers from the two acquisitions it now challenges.  It argues implausibly that this critical evidence about market definition and harm to competition (or lack of harm) is somehow irrelevant.  It has claimed that the documents are privileged and will not be produced.[7]   But it also says that the dispute over the eight key documents cannot even be considered until after it has listed the documents on a privilege log at some future date — which it says it will *try* to provide at the end of June, but may provide later if it does not complete its production of *other* documents by mid-June.

---

[7] The FTC initially suggested that the documents were completely immune from production because ¶ 16 of the JSO ostensibly placed the materials off limits.  The FTC then abandoned that argument and admitted that these eight documents are *not* subject to ¶ 16 of JSO because the FTC provided each of them to the House Judiciary Committee.  After admitting that the ¶ 16 of the JSO does not apply to these eight documents, the FTC argued that the dispute over its document production was not ripe because the parties need to first brief the applicability of ¶ 16 of JSO to other documents.  At 5:19 PM on May 31, 2022, the FTC abandoned that argument as well.

The Court should reject these procedural dodges and instead take up this critical and fully crystalized discovery dispute, the immediate resolution of which will make further discovery more efficient and effective for both sides.

*The dispute over the eight documents is ripe.*  Through the meet-and-confer process, the FTC has identified eight specific documents it created during the Instagram and WhatsApp investigations.  It admits that it has them and that it provided them all to the House Judiciary Committee in 2019.  The parties have met and conferred and exchanged letters about these eight documents.  The FTC has explained its position that the documents are subject to the so-called deliberative process privilege and other (unidentified) privileges.  Meta disputes any claim of privilege and maintains any privilege was waived by production to the House Judiciary Committee.  The FTC has definitively refused to produce these documents. The dispute is fully crystalized and not only ripe for judicial resolution but fundamental to the conduct of discovery in this case. The contents of these documents, including witness accounts and other detailed information, will almost certainly provide an important roadmap for further discovery.

*There is no need to wait for a privilege log.*  The FTC has taken the position that the parties should wait to brief this dispute until after it provides a privilege log, which it states that it intends to provide by the end of June.  But it gives no reason why there need be such a long delay in resolving this dispute.  Meta has been seeking these documents for months, and the parties have been at impasse over the FTC's refusal to produce them since mid-April. The FTC claims it must provide a log, but the documents have already been designated by the agency as privileged.  The FTC claims it needs to provide a declaration to support its privilege claims.  But it can provide such a declaration in its opposition to Meta's motion to compel.

Delay harms Meta's ability to defend itself.  Obtaining contemporaneous evidence of

market conditions in 2012 and 2014, and the contemporaneous views of market participants about the likely effects of the two acquisitions will obviously be of critical significance as a guide to Meta's further discovery.

If the agency has valid reasons for not producing the contemporaneous compilations of facts and analyses that it is trying so hard to keep from Meta (and the Court), it should be able to articulate those reasons now.  It has not even claimed that it needs more time to state its grounds for refusing to produce the documents.  The FTC has referenced "deliberative process," which Meta is fully ready to challenge.  And if the agency comes up with new theories to withhold this critical evidence, Meta can and will address them in its reply brief.

*The FTC Memoranda are critically relevant.*  The documents are critical to Meta's defense – they contemporaneously outline the facts relevant to defining the proper market in 2012 and 2014 (almost certainly different from the FTC's current PSNS construct), and the facts relevant to determining any harm to competition from the acquisitions (almost certainly concluding there was no such harm).  The documents are also directly at issue in Meta's equitable defenses (such as laches, waiver, and equitable estoppel) and its equitable defense to the break-up remedy the agency seeks.

*The FTC Memoranda are not privileged*.  The "deliberative process" privilege (which is the only privilege the FTC has specifically mentioned in correspondence) does not immunize the 2012 and 2014 documents from discovery.  The agency has a policy directing its employees *not* to invoke this privilege after ten years, because there is no valid reason to shield aged agency deliberations – and the Instagram acquisition was ten years ago.  The privilege does not apply at all to the *facts* contained in these memoranda.  Moreover, the privilege is qualified and can be overcome where there is sufficient need for the documents.  That test is easily met under

the unprecedented circumstances of this case.  The FTC cleared the Instagram and WhatsApp

deals, then waited for ten and eight years – after Meta invested billions and devoted significant

resources, time, and attention to the growth of Instagram and WhatsApp – to do an about face

and demand an unprecedented breakup of the company those acquisitions helped create.  The

unfairness of this inequitable government conduct to the side, the delay has created significant

obstacles to the defense of this case.  Long delay has resulted in lost documents (including

some of those the FTC collected in 2012 as well as documents from non-parties) and

undoubtedly faded witness memories.  The eight FTC documents at issue are an irreplaceable

repository of proof as to industry conditions and likely effect of the challenged acquisitions.

But even if a privilege existed (and it does not), the FTC waived it when it voluntarily

provided all these documents to Congress in 2019.

*The Court should permit full briefing on this important issue.*  Meta recognizes that the

Court prefers to resolve routine discovery disputes without motion practice.  But Meta

respectfully submits that this issue is sufficiently important that it merits full briefing. The FTC

agrees (at 9) that the dispute merits full briefing.  The Court has previously expressed that it is

willing to permit full briefing for discovery disputes relating to Meta's interrogatories because of

the importance and threshold nature of the FTC's market definition in this case.  *See* Tr. of

Telephonic Sched. Conf. at 36, *FTC v. Meta Platforms, Inc.*, No. 20-3590 (D.D.C. Feb. 28,

2022), ECF No. 109.  These memoranda are equally if not more important because they include

facts and analysis related specifically to market definition and the effect (if any) on competition

that are unavailable elsewhere and central to Meta's defenses.  The Court has permitted briefing

in cases involving similarly critical documents supposedly shielded by privileges.  *See*, *e.g.*,

Mem. Op., *Wengui v. Clark Hill, Plc.*, No. 19-3195 (D.D.C. Jan. 12, 2021), ECF No. 49 (finding

documents not protected by work product doctrine or attorney-client privilege and ordering disclosure); Mem. Op., *Damus v. Nielsen*, No. 18-578 (D.D.C. Oct. 22, 2018), ECF No. 52 (rejecting government's invocation of deliberative process privilege).

Meta therefore respectfully requests that the Court order full briefing on this dispute now and order the FTC to produce these documents, which are critical to Meta's defense. It is important that Meta establish a clear record on its entitlement to these documents. To demonstrate the importance of this dispute, Meta has attached as Exhibit A its proposed motion to compel so that the Court can make a fully informed decision on whether to permit briefing. Meta respectfully suggests a briefing schedule of June 2, 2022 for Meta's opening brief (with a 30 page limit), June 9, 2022 for the FTC's opposition (with a 30 page limit), and June 14, 2022 for Meta's reply (with a 15 page limit).

### B.   Meta's Statement Regarding the FTC's Failure to Answer Meta's Interrogatories

The FTC alleges that Facebook and Instagram are PSNS providers, and that Meta is an alleged monopolist in the provision of PSNS in the United States. *See* Am. Compl. ¶¶ 164, 179. Over two months ago, Meta served interrogatories on the FTC, requesting that the FTC identify which activities performed on Meta's products qualify as the use of a "personal social networking service" and which do not. The FTC's response was due on April 29 – more than four weeks ago. Yet, the FTC has failed to provide any substantive response, despite Meta's specific requests, and the FTC's own commitment to do so.

Specifically, on May 6, Meta met-and-conferred with the FTC explaining the deficiencies in the FTC's responses to the Interrogatories (which provided a boilerplate regurgitation of the Amended Complaint for one of the two Interrogatories at issue and refused to respond to the

other entirely), and the need for the FTC to promptly supplement its response.[8] Meta requested that the FTC supplement its responses to these specific interrogatories by May 20, 2022. The FTC declined but expressly committed to provide it supplemental responses to *those* Interrogatories by Friday, May 27. On May 24, 2022, Meta indicated that it would raise this issue with the Court in this report, if the FTC failed to supplement its response to the Interrogatories 10 and 12 by that date. The FTC failed to meet its own May 27 deadline and still has not answered the interrogatories. Instead, it now says it expects to respond by mid-June, and claims that Meta has "manufacture[d] a dispute" by asking for answers to interrogatories that were due more than four weeks ago. The Court should order the FTC to finally answer these straight-forward questions within one week.

To combat the FTC's market definition and allegations of market power, Meta must understand, *at a minimum*, which portions of its own products are in the alleged market and which are not. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) (explaining that without "an accurate definition of the relevant market" that outlines "the area of effective competition" for the defendant's product and "reflects commercial realities," there is "no way to measure" whether the defendant has any "ability to lessen or destroy competition" and harm the consumers the antitrust laws are designed to protect) (internal quotation marks omitted). Rather than alleging that Facebook and Instagram are used purely for PSNS, the FTC alleged that "Facebook Blue and Instagram are *predominantly used* as personal social networking services," Am. Compl. ¶ 202 (emphasis added). The FTC highlighted this allegation in its opposition to

---

[8] Meta did not "revise" its interrogatories at issue, as the FTC posits. It explained that they should be interpreted in the only sensible way they could be construed, and that the FTC could not feign ignorance over the information Meta is seeking. *See Escamilla v. Nuyen*, 2015 WL 4245868, at *5 (D.D.C. July 14, 2015) ("Interrogatories . . . should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request.") (internal quotation marks omitted).

Meta's motion to dismiss (at 6-7), asserting that the Amended Complaint should not be dismissed because it had alleged that users spent *at least* "*half* of their time on Facebook Blue and Instagram using PSN services." And in denying Meta's motion to dismiss, the Court similarly understood that not all activities performed on Facebook and Instagram qualify as the use of a PSNS. *See FTC v. Facebook, Inc.*, 2022 WL 103308, at *8 (D.D.C. Jan. 11, 2022) ("Defendant is correct that data capturing time spent on platforms providing PSN services includes more than time spent just using such services.").

FTC claims that its market definition is clear enough from the allegations in the Amended Complaint.  Not so.  Which features or activities on Facebook and Instagram are in the alleged market, and which are not, is a complete black box to Meta.  As the Court observed, the FTC's vague complaint, "[leaves] open . . . exactly which features of Facebook, Instagram, *et al.* do and do not constitute part of their PSN services."  *FTC v. Facebook*, 560 F. Supp. 3d 1, 19.  Meta's interrogatories seek answers that will clarify this confusion;  the FTC must identify which activities are included and which activities are not included in the FTC's idiosyncratic definition of PSNS, in order for Meta to understand the case it must defend.
Meta needs this information immediately to shape the scope of discovery in this case, as it considers what evidence to seek and negotiates with nonparties over the materials to be provided pursuant to subpoenas.

The FTC has blown past its own self-imposed deadline, and will likely do so again without Court intervention.  Meta respectfully requests that the Court order the FTC to respond to these interrogatories by June 7, and allow Meta to brief the issues if the FTC's responses remain deficient.

### C.   Meta's Statement Regarding the Status of Document Production to the FTC

There is no ripe dispute over Meta's document production.  With respect to custodians, the parties have now reached an agreement that Meta will search for responsive documents from 96 current and former Meta employees.  With respect to the search terms that Meta will apply, Meta has agreed to use the FTC's proposed search terms with certain limited modifications, and over a time period extending for more than a decade.  The FTC provided modified search term proposals just days ago, on May 24 with corrections on May 26.  The laborious process of search, collection, and review can proceed just as soon as the parties finalize agreement on the appropriate search terms to be used.

Meta has consistently sought to cooperate with the FTC in framing discovery that is feasible, practical, and targeted to generate responsive documents, in order to save both itself and the FTC from having to wade through large volumes of irrelevant material.  Meta has *not* refused to produce responsive documents.  The FTC and Meta are continuing to negotiate in good faith on these issues — in Meta's case to respond to the FTC's latest round of proposed custodian and search term modifications and detailed requests for statistics made by the FTC on May 24 and corrected on May 26.  The FTC suggests that the parties update the Court on the status of discovery on June 30, and Meta agrees.

Meta summarizes below the lack of good cause or any basis for the FTC's two requests of the Court.

     1.      **<u>The FTC's Requests of the Court Are Either Moot or Inappropriate or Both</u>**

          a.     **<u>The FTC's Claim that Meta Has Refused to Start Producing Documents.</u>**

The FTC requests that the Court order Meta to immediately produce documents.  It argues that Meta has refused to produce any documents until the parties agree on each and every

search term, and it requests that the Court order Meta to begin review and production of documents of already agreed-upon custodians immediately.  But any such order is unnecessary, because Meta has already begun producing documents.[9]  Moreover, the FTC only recently (May 24) identified a subset of custodians it would agree to accept, and proposed additional search term modifications on that date as well (corrected on May 26) to ascertain if additional modifications would be productive to both parties.  As part of that process the FTC requested updated statistics by June 1 (tomorrow) and the parties both agree that an update to the Court on June 30 would be appropriate.  Surprisingly, despite that agreement and the FTC's request for updated statistics, the FTC now demands Meta use the very search terms the FTC requested statistics on to get started.[10]  Once the FTC and Meta conclude those negotiations, Meta can begin the process of reviewing, and ultimately producing the rest of the documents in an efficient way.  Meta is in the process of gathering information to respond to the FTC's recent request (made on May 24 and corrected on May 26) for updated statistics using a narrower set of custodians, and a revised set of search terms.  Allowing that process to play out is in the interests of both parties given the amount of time it would take to review and produce documents in response to the FTC's prior proposal regarding custodians and search terms.

---

[9] The FTC criticizes Meta for producing documents from a custodian that is not an agreed-upon custodian.  But Meta collected these materials in response to a specific request from the FTC, and Meta did so in order to provide the documents more quickly.  That is hardly cause for complaint.  In addition, as Meta previously pointed out to the FTC, its statements regarding this production (*see supra* note 1) are inaccurate – more than 92% of the files produced to date were not in fact public SEC filings.

[10] The FTC suggests the metrics previously provided by Meta were overstated.  Meta notes that it had identified all of these issues to the FTC when it provided the metrics.  In addition, while it is true that the numbers are also overstated because they include custodians the FTC agreed to drop, the FTC fails to mention that the FTC agreed to drop a number of those custodians only after the metrics were provided.  Hopefully, the parties will be able to report to the Court on June 30 that they have reached a final agreement on search terms and that document review is well underway.

Meta has not delayed the process.  To be clear, in order to undertake an efficient review of documents that will benefit both parties and avoid having to search for and review documents multiple times, or to review huge numbers of irrelevant files, it is essential to reach agreement over search terms, custodians, and start and end dates.  Meta has offered on multiple occasions to begin its review and production process as soon as the parties have a meaningful agreement on these critical terms.  The parties can update the Court on the status of these issues on June 30.

> **b.** **The FTC's Claim that Meta Has Refused to Identify Sources of Responsive Documents.**

In addition, the FTC requests that Meta identify to the FTC the shared locations and collaborative work environments that Meta has searched, or will search, for responsive materials. But Meta has already provided that information to the FTC for the existing custodians in the investigation.  Moreover, Meta has also indicated it will identify the shared resources used by any new agreed-upon custodians and will search those shared resources for any responsive files. Meta will also agree to search any additional shared resources used by existing custodians (since the investigation) or to update those searches using any new, agreed-upon time periods.  Meta and the FTC have discussed on multiple occasions these "collaborative work environments" – *i.e.*, places in the cloud or on various networks that the specific and agreed upon Meta custodians may use (depending on their length at the company, roles, and responsibilities) to collaborate on particular projects – and the process used to collect materials from those locations.  Indeed, these same issues were topics in the pre-complaint investigation, and the FTC Staff and counsel for Meta had numerous discussions about the tools used to communicate collaboratively.  Meta and the FTC reached an accommodation during the investigative phase where Meta agreed to research any particular linked files from collaborative work environments not already included in the production that the FTC identified.

Notably, certain documents from collaborative work environments were collected and produced as part of that FTC pre-complaint investigation, and Meta explained that collection process to the FTC.  In particular, Meta identified to the FTC (now more than two years ago) a list of the most often used collaborative work environments from which it had collected files during the investigation related to the agreed-upon custodians, and it has explained to the FTC that it intends to proceed in the same way when collecting and producing documents now.  Those collaborative work environments may include (depending on the custodian) Workplace Chats or Groups, Quip, G Suite tools, One Drive or SharePoint, Dropbox, Analytic Notebook Portal, and Network Shares.  Given all this history, Meta disputes the suggestion that it has failed to engage on this issue for months.  It is worth pointing out that the FTC already has a massive document production from the pre-complaint investigation that not only identifies collaborative work environment sources but also provides metadata that specifies the location of produced files.

The FTC has now revealed – for the first time at 5:19 pm today – that it wants this Court to order Meta to search for materials in these shared resources that are responsive to the FTC's requests but also disconnected from the agreed-upon custodians.  This would be a colossal undertaking and wholly inconsistent with the months of negotiations focusing on particular custodians.  The FTC is effectively asking this Court to require Meta to search for documents contained in the collaborative work environments used by tens of thousands of Meta employees, irrespective of their role, function, or relationship to the case.  But there is a much more sensible way to proceed, as Meta has explained to the FTC.  Meta will investigate the methods by which each custodian communicated and how and whether each used particular collaborative work environments during his or her time at Meta.  It will then apply the agreed-upon search terms to each of those identified environments and review unique hits for production. That process is

underway based on the list of agreed upon custodians, and when Meta produces documents to the FTC, the FTC will know the source of each of the documents produced.

The FTC's request of the Court is also premature.  The FTC is simply not entitled at this stage in the litigation to discover how Meta intends to comply with its discovery obligations. Given that Meta has already explained how it intends to proceed, the appropriate path forward is to allow Meta to undertake the document review and production that the parties have spent significant time negotiating.  This last-minute demand by the FTC will only cause further delay. There is, therefore, no basis or need for the Court to issue any order on this or any other supposed issue relating to Meta's document production.

Dated: May 31, 2022                                Respectfully submitted,

                                                    By: */s/ Daniel Matheson*
                                                    Daniel Matheson (D.C. Bar 502490)
                                                    Krisha Cerilli (D.C. Bar 983281)
                                                    Abby L. Dennis (D.C. Bar 994476)
                                                    Maria Dimoscato (D.C. Bar 489743)
                                                    Owen Masters (D.C. Bar 242139)
                                                    Susan Musser (D.C. Bar 1531486)
                                                    Michael Smith (D.C. Bar 996738)

                                                    Federal Trade Commission
                                                    Bureau of Competition
                                                    400 Seventh Street, S.W.
                                                    Washington, D.C. 20024
                                                    Telephone: (202) 326-2075
                                                    Email: dmatheson@ftc.gov

                                                    *Attorneys for Plaintiff*
                                                    *Federal Trade Commission*


                                                     */s/ Mark C. Hansen*
                                                    Mark C. Hansen (D.C. Bar No. 425930)
                                                    Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                                    Kevin B. Huff (D.C. Bar No. 462043)
                                                    Kevin J. Miller (D.C. Bar No. 478154)
                                                    Kenneth J. Fetterman (D.C. Bar No. 474220)
                                                    KELLOGG, HANSEN, TODD,
                                                    FIGEL & FREDERICK, P.L.L.C.
                                                    1615 M Street, N.W., Suite 400
                                                    Washington, D.C. 20036
                                                    Tel: (202) 326-7900
                                                    mhansen@kellogghansen.com

                                                    James P. Rouhandeh (D. C. Bar No. NY0390)
                                                    Michael Scheinkman (D.C. Bar No. NY0381)
                                                    Davis Polk & Wardwell LLP
                                                    450 Lexington Ave.
                                                    New York, New York 10017
                                                    Tel: (212) 450-4754
                                                    james.rouhandeh@davispolk.com

                                                    Sonal N. Mehta (CA SBN 222086)
                                                    Wilmer Cutler Pickering Hale & Dorr LLP
                                                    2600 El Camino Real, Suite 400
                                                    Palo Alto, California 94306
                                                    Tel: (650) 858-6000
                                                    Sonal.Mehta@wilmerhale.com

David Z. Gringer (D.C. Bar No. 1001200)
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
David.gringer@wilmerhale.com

*Counsel for Defendant Meta Platforms, Inc.*