## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

       Plaintiff,

       v.

META PLATFORMS, INC.,

       Defendant.

Case No. 1:20-cv-03590-JEB

## MEMORANDUM IN SUPPORT OF
## META PLATFORMS, INC.'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS COLLECTING AND EVALUATING FACTS AS TO
## INSTAGRAM AND WHATSAPP ACQUISITIONS IN 2012 AND 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.   The FTC Is Withholding Critically Relevant Documents Prepared in 2012 and 2014 About the Acquisitions of Instagram and WhatsApp ........................... 3

    A.   The 2012 Instagram Documents ........................................................................ 3

    B.   The 2014 WhatsApp Documents ....................................................................... 5

    C.   Meta Seeks the Documents; the FTC Categorically Refuses To Produce Them ..................................................................................................... 6

II.  The 2012 Instagram Documents and 2014 WhatsApp Documents Are Critically Relevant and Should Be Produced ....................................................... 8

III. The FTC Memoranda Are Not Protected by Any Applicable Privilege or Protection ............................................................................................................. 11

    A.   The Deliberative Process Privilege Does Not Shield the FTC Memoranda from Discovery ......................................................................... 12

        1.   The Deliberative Process Privilege Does Not Apply to the Instagram Memoranda ............................................................. 12

        2.   The Deliberative Process Privilege Does Not Apply to Factual Materials Contained in the FTC Memoranda ........................ 14

        3.   The FTC Cannot Invoke the Deliberative Process Privilege Because Its Decision-Making Process Is Directly at Issue ............ 14

        4.   The Deliberative Process Privilege Is a Qualified Privilege and Does Not Protect the FTC Memoranda ................................. 15

        5.   The FTC Waived Any Claim of Privilege ................................. 20

    B.   The Work Product Doctrine Does Not Shield the FTC Memoranda from Discovery ......................................................................... 20

        1.   The Bureau of Economics Memorandum Is Not Work Product ..................................................................................... 20

        2.   Meta Has a Substantial Need for the Documents ..................... 21

IV.     The FTC Waived Any Privilege by Voluntarily Providing the Memoranda
        to House Judiciary Committee Members and Staff ..........................................................25

Conclusion ..........................................................................................................................28

# TABLE OF AUTHORITIES*

Page

**CASES**

*Amchem Prods., Inc. v. GAF Corp.*, 64 F.R.D. 550 (N.D. Ga. 1974) ...........................................19

\* *Bird v. Penn Cent. Co.*, 61 F.R.D. 43 (E.D. Pa. 1973) ........................................................23, 24

*Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36 (D.D.C. 2017).................................................19

\* *Brock v. Weiser*, 1987 WL 12686 (N.D. Ill. June 15, 1987).......................................................15

*Cal. State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775
     (N.D. Cal. July 23, 2008)...............................................................17, 19

*Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336
     (D.D.C. 2018) .............................................................................12

*Chisler v. Johnston*, 796 F. Supp. 2d 632 (W.D. Pa. 2011).........................................................17

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Commerce*,
     2020 WL 4732095 (D.D.C. Aug. 14, 2020) ........................................26

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives
     v. Lynch*, 156 F. Supp. 3d 101 (D.D.C. 2016) ..................................19

*Doe 2 v. Esper*, 2019 WL 4394842 (D.D.C. Sept. 13, 2019) ................................................. 14-15

*EPA v. Mink*, 410 U.S. 73 (1973) .............................................................................14

*Fed. Home Loan Mortg. Corp. v. Deloitte & Touche, LLP*,
     2015 WL 12766388 (S.D. Fla. Aug. 4, 2015).....................................18

*Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
     2009 WL 10708594 (D.D.C. June 9, 2009)........................................26

*First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000).........................................16, 26

*FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142 (D.C. Cir. 2015) .............................21

*FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308
     (D.D.C. Jan. 11, 2022) ................................................................25

*FTC v. Lukens Steel Co.*, 444 F. Supp. 803 (D.D.C. 1977) ........................................................8

*FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) ................................................... 9-10

---

* Authorities principally relied upon are marked with an asterisk.

*FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522 (E.D. Pa. 2020) ............................................10

*FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156 (9th Cir. 1984) ....................................................20

*Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010) ................................................................11

*Gradeless v. Am. Mut. Share Ins. Corp.*, 2011 WL 221895
  (S.D. Ind. Jan. 19, 2011) ............................................................................................................19

*Howard v. Fowler Bros., Inc.*, 2011 WL 3438407 (W.D. Ky. Aug. 5, 2011) ................................23

*Interstate Fire & Cas. Co. v. Roman Cath. Church of Diocese of Phoenix*,
  2012 WL 12867974 (D. Ariz. Jan. 19, 2012) ............................................................................22

*Janicker ex rel. Janicker v. George Washington Univ.*, 94 F.R.D. 648
  (D.D.C. 1982) ..............................................................................................................................20

*Johnson v. Wash. Metro. Area Transit Auth.*, 1990 WL 113877
  (D.D.C. July 26, 1990) ............................................................................................................ 22-23

* *Jud. Watch, Inc. v. U.S. Dep't of State*, 2019 WL 2452325
  (D.D.C. June 12, 2019) ...........................................................................................................22, 23

*Kockums Indus. Ltd. v. Salem Equip., Inc.*, 561 F. Supp. 168 (D. Or. 1983) ................................24

*Le v. Diligence, Inc.*, 312 F.R.D. 245 (D. Mass. 2015) ..................................................................22

*Leamon v. KBR, Inc.*, 2011 WL 13340584 (S.D. Tex. Nov. 10, 2011) ..........................................23

*Lundy v. Interfirst Corp.*, 105 F.R.D. 499 (D.D.C. 1985) ........................................................12, 18

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) ................................................17

*Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., In re*, 274 F.R.D. 106
  (S.D.N.Y. 2011) ..........................................................................................................................18

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) .............................................................................14

*Murphy v. Dep't of Army*, 613 F.2d 1151 (D.C. Cir. 1979) ...........................................................27

*NAACP v. Bureau of Census*, 401 F. Supp. 3d 608 (D. Md. 2019) ................................................19

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) .......................................14

*Playboy Enters., Inc. v. Dep't of Just.*, 677 F.2d 931 (D.C. Cir. 1982) .........................................14

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir. 2010) .............................14

*Rafferty v. KeyPoint Gov't Sols., Inc.*, 2018 WL 3059600
(D. Idaho June 19, 2018)...................................................................................21

*Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827 (3d Cir. 1995)....................................12

*Rockwell Int'l Corp. v. U.S. Dep't of Just.*, 235 F.3d 598 (D.C. Cir. 2001)..................................27

*Sealed Case, In re*:

676 F.2d 793 (D.C. Cir. 1982) ...................................................................23

\* 121 F.3d 729 (D.C. Cir. 1997) ..............................................................16, 26

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009) ................................8

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971)...........................................16

*Subpoena Duces Tecum Served on Off. of Comptroller of Currency, In re*,
145 F.3d 1422 (D.C. Cir.), *on reh'g in part*, 156 F.3d 1279
(D.C. Cir. 1998) ..............................................................................14

*Subpoenas Duces Tecum, In re*, 738 F.2d 1367 (D.C. Cir. 1984) ..........................................26, 27

*Swartwood v. Cty. of San Diego*, 2013 WL 6670545 (S.D. Cal. Dec. 18, 2013) ...................16, 17

*Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890
(D.D.C. Dec. 16, 2005) ....................................................................24

*United States v. AT&T Co.*:

86 F.R.D. 603 (D.D.C. 1979)...................................................................23

498 F. Supp. 353 (D.D.C. 1980) .............................................................9

*United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018),
*aff'd*, 916 F.3d 1029 (D.C. Cir. 2019).................................................10

*United States v. Baker Hughes Inc.*, 908 F.2d 981 (D.C. Cir. 1990)...................................8

*United States v. Gates*, 35 F.R.D. 524 (D. Colo. 1964)..................................................18

*United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121 (D.D.C. 2012).......................20, 21

*United States v. Kattar*, 840 F.2d 118 (1st Cir. 1988) ..................................................9

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)..............................................8, 10

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1
(D.D.C. 2013) ...................................................................................11

\* *United States v. Philip Morris Inc.*, 212 F.R.D. 421 (D.D.C. 2002) ..............................................26

*United States v. Warren*, 42 F.3d 647 (D.C. Cir. 1994)...................................................................9

*United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419
(D.D.C. 2014) ................................................................................................................23

*Veiga*, *In re*, 746 F. Supp. 2d 27 (D.D.C. 2010) ..........................................................................26

*Vitamins Antitrust Litig.*, *In re*, 211 F.R.D. 1 (D.D.C. 2002) .......................................................22

*Warren v. Bastyr Univ.*, 2013 WL 2181762 (W.D. Wash. May 17, 2013) ...................................21

*Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*,
2020 WL 527987 (M.D. Pa. Jan. 31, 2020)......................................................................19

## STATUTES AND RULES

Clayton Act, 15 U.S.C. § 12 *et seq.* ............................................................................................10

    § 7, 15 U.S.C. § 18.................................................................................................................10

    § 7A, 15 U.S.C. § 18a...........................................................................................................25

    § 7A(d)(1), 15 U.S.C. § 18a(d)(1) .........................................................................................4

    § 7A(e)(1)(A), 15 U.S.C. § 18a(e)(1)(A)..............................................................................4

Endangered Species Act of 1973, 16 U.S.C. § 1531 *et seq.* .........................................................14

Freedom of Information Act, 5 U.S.C. § 552 .................................................12, 16, 22, 23, 26, 27

    5 U.S.C. § 552(b) ................................................................................................................27

    5 U.S.C. § 552(d) ................................................................................................................27

Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L. No. 94-435,
90 Stat. 1383 .............................................................................................4, 5, 6, 9, 10, 25

Sherman Act, 15 U.S.C. § 1 *et seq.*:

    § 2, 15 U.S.C. § 2.........................................................................................1, 8, 9, 10, 11

Fed. R. Evid. 801(d)(2) ..................................................................................................................9

**OTHER MATERIALS**

5 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2020).......................................8

Fed. Trade Comm'n, *2016 Open Government Plan* (Sept. 15, 2016),
     https://www.ftc.gov/system/files/attachments/open-government/
     final_opengov_plan2016.pdf .......................................................................................13

Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the
     Comm. on the Judiciary, Investigation of Competition in Digital
     Markets:  Majority Staff Report and Recommendations, 116th Cong.
     (Oct. 2020) ..................................................................................................................7, 25

Plaintiff Federal Trade Commission ("FTC" or "Commission") has alleged that Meta Platforms, Inc. ("Meta") monopolized a supposed market for "personal social networking services" ("PSNS") by acquiring Instagram in 2012 and WhatsApp in 2014, in transactions that it now argues were likely at the time to harm competition and consumers. Yet in 2012 and 2014, that same agency reviewed the facts regarding both of those transactions and, at least for the Instagram transaction, prepared documents containing both the relevant facts and the conclusions to be drawn from those facts. The result: a 5-0 Commission vote to clear the Instagram transaction and a similar decision not to challenge the WhatsApp acquisition.

Now, ten years after the fact, Meta is forced to defend itself against an unprecedented, belated Section 2 case, at a time when relevant documents have become unavailable and memories of witnesses may have faded. The FTC has admitted that there are extensive memoranda, from staff attorneys as well as from economists, recounting as of 2012 the relevant facts of competition (*i.e.*, the relevant antitrust market) and the likely effect on competition and consumers from the then-proposed acquisition of Instagram. Indeed, it cannot contend otherwise, as this is standard agency procedure. *See* Royall Decl. ¶ 8. As to the 2014 investigation of the WhatsApp transaction, the FTC allowed the acquisition to close without even making a second request. The FTC admits that it has documents evaluating this acquisition too; those documents are almost certain to reveal that the FTC similarly determined that acquisition was unlikely to harm consumers.

The FTC voluntarily furnished these critically important documents to Members of Congress and their staff (which at the time included the current FTC chair) for use in the House Judiciary Committee's 2019 investigation of digital markets in general and these two transactions in particular. The ensuing committee report expressly referenced them. But when

Meta requested the production of these indisputably relevant documents – containing evidence that is unlikely to be available from any other source – the agency stonewalled.

*The FTC memoranda are highly relevant to this case*.  The facts and conclusions contained in the 2012 and 2014 memoranda are indisputably *relevant*, because the agency was evaluating the very same issues that are central to this case:  the relevant market or markets, and the likely effect of the proposed acquisitions.  The FTC's reasoning in clearing the deals, waiting years while Meta invested in Instagram and WhatsApp, and then changing its mind and belatedly challenging those deals, is also directly at issue in Meta's equitable defenses (such as equitable estoppel) and its equitable challenge to the FTC's requested breakup remedy.

*The "deliberative process" privilege does not immunize the 2012 and 2014 documents*. The agency has been unclear about its basis for withholding the documents.  It has specifically referred to only one claimed privilege:  the "deliberative process privilege."  The agency itself has adopted a presumption that no such privilege should apply after ten years have elapsed.  As of this summer, ten years will have elapsed since the Instagram memoranda were prepared, undermining any argument that disclosure here would chill the candid discussion of FTC staff. And even if applicable, the "deliberative process" privilege cannot shield relevant facts from discovery, and is qualified and overcome by Meta's substantial need here, especially given the FTC's extraordinary, belated decision to change its view of these acquisitions and the loss of evidence resulting from its unprecedented delay.  In addition, any privilege that might have existed has been waived by the voluntary production of all the documents to House Judiciary Committee members and staff.

*The "work product doctrine" does not immunize the 2012 and 2014 documents*.  The FTC has refused to indicate whether it will assert the "work product" doctrine, but courts often consider it when reviewing claims of deliberative process privilege.  Neither privilege is

applicable here.  The documents were in some instances prepared by economists not acting at the direction of lawyers and contain core facts as well as agency admissions.  This doctrine is also qualified and overcome by the substantial need for production of contemporaneous evidence that is not available from any other source.  And, again, any privilege claim was waived when the agency chose to voluntarily share with third parties all the documents Meta now seeks.

The FTC's strenuous efforts to prevent its own 2012 and 2014 compilations of relevant facts and conclusions from seeing the light of day are, if anything, strongly indicative of the need for these documents to be produced so that this case can be litigated fairly and fully.  The agency obviously wants to deprive Meta (and the Court) of relevant evidence that is almost certain to show that there is *no* "Personal Social Networking Services" market, that competition in 2012 and 2014 was robust and involved many firms the agency now wants to exclude from consideration, and that the facts available at the time did *not* show that the subject transactions were likely to harm competition and consumers.

The unfairness of the agency's position here is both patent and unworthy of a government litigant.  The facts reported in the memoranda, as well as the admissions made by agency professionals about the conclusions to be drawn from those facts, are highly relevant, and the withholding of this potentially dispositive evidence cannot be supported by any applicable privilege.  If the Court has doubt about any of this, it should review the documents *in camera* – something the agency tellingly opposes.

## I.    The FTC Is Withholding Critically Relevant Documents Prepared in 2012 and 2014 About the Acquisitions of Instagram and WhatsApp

### A.    The 2012 Instagram Documents

On April 9, 2012, Meta announced an agreement to acquire Instagram for approximately $1 billion.  On April 16, 2012, Meta filed with the federal government a required pre-merger

notification about the acquisition under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR").  The FTC was required to review, and did review, this proposed acquisition to "determine" whether it would, "if consummated, violate the antitrust laws."  15 U.S.C. § 18a(d)(1).

Under the FTC's standard procedures, the FTC's pre-merger office first reviewed the filing.  On May 16, 2012, the FTC issued a second request, "requir[ing] the submission of additional information or documentary material."  *Id.* § 18a(e)(1)(A).  The FTC has confirmed to Meta that, prior to issuing the second request, staff from the FTC's Bureau of Competition and staff from its Bureau of Economics each prepared a "merger screening memorandum."  The Bureau of Competition also prepared a memorandum requesting authorization to use compulsory process and a memorandum regarding the issuance of a civil investigative demand to a third party.  As a matter of standard agency procedure, these memoranda contain *facts* relating to the FTC's review as well as a request for action from the Commission and the reasons for that request.  *See* Royall Decl. ¶¶ 4-6.

The FTC conducted an extensive investigation, requiring production of a significant volume of documents from Meta and others, and interviews of Meta witnesses (including Mark Zuckerberg and Sheryl Sandberg), Instagram witnesses (founders Kevin Systrom and Mike Krieger), as well as third parties.  The FTC interviewed or requested to interview representatives from more than two dozen nonparty companies as part of its review of the Instagram transaction.  Meta and Instagram each produced approximately 10,000 documents to the FTC.  The FTC has conceded that at least some of the documents it obtained in 2012 from third parties are no longer available.  *See* D. Matheson Ltr. at 4 (May 13, 2022).

Following this investigation, the Bureau of Competition and the Bureau of Economics each prepared a memorandum to the Commissioners.  *See* D. Matheson Ltr. at 9 (May 12, 2022).  As a matter of standard practice, these memoranda set forth the facts the FTC has developed in

its investigation.  *See* Royall Decl. ¶ 8.  Of necessity, these facts included information about the

market (or markets) in which Facebook and Instagram competed, barriers to entry (if any) in

those markets, and whether Facebook's acquisition of Instagram would be expected to harm

competition or consumers.  *See id*.  The memoranda also included a recommendation to the

Commission on whether these facts supported a challenge to the acquisition under federal

antitrust law.  *See id*.  The economists' memorandum likewise discussed the facts relevant to

market definition and market power.  *See id*.  If there is any dispute on this point, however, Meta

urges the Court to review the memoranda *in camera* as part of its consideration of the instant

motion.

On August 22, 2012, the FTC voted 5-0 to close its investigation of the Instagram

transaction without taking any action to challenge it or requiring conditions before closing.  On

September 6, 2012, Meta's acquisition of Instagram closed.  For the ensuing decade, Meta has

incorporated and enhanced Instagram as a Meta product, investing significant resources to

improve and grow Instagram from a reported 27 million registered users prior to the acquisition

to more than a billion monthly active users worldwide.

### B.    The 2014 WhatsApp Documents

On February 19, 2014, Meta announced an agreement to acquire WhatsApp for

approximately $19 billion.  On March 13, 2014, Meta filed the required HSR pre-merger

notification.

Pursuant to the FTC's standard procedures, the FTC's pre-merger office reviewed this

filing.  *See* Royall Decl. ¶ 4.  The FTC interviewed or requested to interview representatives

from more than a dozen nonparty companies in connection with its review of the WhatsApp

transaction.  The FTC has confirmed to Meta that the FTC created documents relating to the

WhatsApp HSR review, including a document that appears to consist of notes prepared by staff

from the Bureau of Competition and a note assigning responsibility for the file to the appropriate

division within the FTC.  *See* D. Matheson Ltr. at 9 (May 12, 2022).  The FTC decided not to

issue a second request regarding the WhatsApp acquisition, allowing the transaction to close at

the end of the HSR waiting period in 2014.

Following the acquisition, Meta eliminated the subscription charge and made WhatsApp

free for all consumers.  During the ensuing eight years, Meta has incorporated and enhanced

WhatsApp as a Meta product, investing significant resources to improve and grow WhatsApp,

which now has more than 2 billion monthly active users worldwide.

### C.      Meta Seeks the Documents; the FTC Categorically Refuses To Produce Them

On March 9, 2022, Meta issued its First Set of Requests for Production ("RFP") to the

FTC.  Meta's RFP requests (among other things) documents "created" by the FTC relating to the

2012 Instagram and 2014 WhatsApp investigations.

On April 8, 2022, the FTC asserted boilerplate objections to this request, claiming –

remarkably – that the information is irrelevant and that discovery would not be proportional to

the needs of the case and would be "unduly burdensome."  The FTC also asserted generically

that the information "is protected from discovery by the attorney-client privilege, work product

doctrine, deliberative process privilege, or other privileges or protections."  The FTC further

asserted that paragraph 16 of the Joint Scheduling Order exempts these materials from discovery.

The parties met and conferred on April 19, 2022 and May 6, 2022, and exchanged

follow-up correspondence on April 27, 2022, May 10, 2022, May 12, 2022, and May 13, 2022.

During these communications, the FTC confirmed that it possessed documents regarding the

Instagram and WhatsApp investigations.  Specifically, the FTC confirmed the existence of the

following documents (among others), which will be referred to collectively as the "FTC memoranda":

> <u>Instagram</u>:  (1) Bureau of Competition memorandum to the Commission requesting authorization of the use of compulsory process; (2) "Merger Screening Memoranda" prepared by the Bureau of Competition to the Merger Screening Committee, later provided to the Commission as an attachment to the compulsory process memorandum; (3) "Merger Screening Memoranda" prepared by the Bureau of Economics to the Merger Screening Committee, later provided to the Commission as an attachment to the compulsory process memorandum; (4) "Bureau of Competition . . . memorandum to the Commission with respect to closing the investigation"; (5) "Bureau of Economics . . . memorandum to the Commission with respect to closing the investigation"; and (6) resolution authorizing the use of compulsory process. D. Matheson Ltr. at 8-10 (May 12, 2022).

> <u>WhatsApp</u>:  (1) A document that "appears to consist of notes prepared by Bureau of Competition personnel"; and (2) a "note assigning responsibility for the file to the appropriate merger division." *Id*. at 9.

The FTC also informed Meta that it had voluntarily provided *all* of the above documents to the Antitrust Subcommittee of the House Judiciary Committee in 2019.  *Id*. at 9-10.  At the time, the Subcommittee was investigating the FTC's investigations of digital markets, including the Instagram and WhatsApp acquisitions.  The FTC provided the above documents to the Subcommittee in response to a Request for Information, not a subpoena.  *See* Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, Investigation of Competition in Digital Markets:  Majority Staff Report and Recommendations, 116th Cong. 28 (Oct. 2020).

The FTC informed Meta that it would not produce any of the FTC memoranda, and, notwithstanding several Meta requests, the agency refused to state which privileges it relied on in resisting discovery; the only privilege it specifically invoked was the deliberative process privilege.  Meta then advised the agency that it would seek relief from the Court.  Meta now seeks an order compelling the FTC to produce this critically relevant discoverable evidence.

II.     **The 2012 Instagram Documents and 2014 WhatsApp Documents Are Critically Relevant and Should Be Produced**

To prevail in this antitrust case, the FTC must prove (among other things) that (1) Meta possessed monopoly power in a relevant antitrust market, and (2) Meta's acquisitions of Instagram and WhatsApp harmed competition and consumers.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 50, 58 (D.C. Cir. 2001) (en banc) (per curiam).  The federal rules authorize broad discovery, particularly in antitrust cases.  *See FTC v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977).  The FTC is no more or less entitled to avoid discovery of potentially relevant evidence than any other litigant.  *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) ("Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure.  It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action.").

It cannot be argued with a straight face that the FTC memoranda are irrelevant.  Prepared at a time when relevant documents were available, and witness memories were fresh, they may be the *best* available evidence bearing on two of the most fundamental issues in this Section 2 case:  What is the relevant market or markets for purposes of assessing the effect on competition and consumers of the Instagram and WhatsApp acquisitions?  And what was the likelihood of harm to consumers if the acquisitions were consummated?

The relevant market or markets, and the likely effect on consumers, must be assessed *at the time of the acquisition.  See United States v. Baker Hughes Inc.*, 908 F.2d 981, 989 (D.C. Cir. 1990) (addressing whether the acquisition was "likely to substantially lessen competition"); *see also* 5 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1205a (4th ed. 2020) (assessing the legality of a merger must be done "on the basis of evidence of the situation existing at the time of the acquisition").

8

The government has never sought to prosecute a Section 2 case like this one, based on long-concluded (and cleared) acquisitions.  Thus, the FTC has placed Meta in the difficult position of having to defend itself by developing facts as to the actual state of competition in 2012 and 2014.  The FTC memoranda directly address the issues in this case; most important, they are a compendium of facts from key market participants that are likely unavailable from any other source, as well as admissions from the agency as to the import of those facts.  *See* Fed. R. Evid. 801(d)(2); *United States v. AT&T Co.*, 498 F. Supp. 353, 356 (D.D.C. 1980) (statements made by agency officials admissible as party admissions in antitrust case); *see also United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994) (statement the government adopted was a party admission); *United States v. Kattar*, 840 F.2d 118, 131 (1st Cir. 1988) (same).  Meta has already found, in its efforts to obtain documents via subpoena from third parties, that, for obvious reasons, ten-year-old (or older) documents have not been kept by many such parties.  The FTC has conceded that some of the documents it collected in 2012 are no longer available.  Equally obvious is the fact that witness memories are affected by the passage of time, and it is beyond argument that the witnesses who provided information to the FTC in 2012 and 2014 did so at a time when relevant issues were fresher in mind than they are now.

The facts and admissions contained in the FTC memoranda are discoverable, indeed critically relevant, for all of the following reasons:

*The memoranda necessarily contain facts and admissions regarding the actual state of competition in 2012 and 2014, and the relevant market or markets affected by the Instagram and WhatsApp transactions*.  To discharge its statutory obligation, the FTC necessarily had to find facts regarding the state of competition – who competed with who, and on what basis?  Fundamental to any HSR inquiry is, first and perhaps foremost, determination of the relevant antitrust market or markets that may be affected by the transaction.  *See*, *e.g.*, *FTC v.*

*RAG-Stiftung*, 436 F. Supp. 3d 278, 292 (D.D.C. 2020) (agreeing with defendants that "FTC's

proposed market [is] overbroad and inconsistent with the commercial realities of the industry");

*see also FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 556-57 (E.D. Pa. 2020) (declining

to enjoin merger where government's effort to prove relevant market improperly relied on

"conclusory assertions" and "rank speculation").

It is certain that the FTC undertook this inquiry in 2012 and 2014; it is likewise highly

probable that it did *not* find any facts supporting the existence of the fictive "PSNS" market that

it invented for purposes of this belated claim.  The underlying facts contained in the memoranda

are highly relevant and, given the passage of time, are unlikely to be found in any other place.

The agency's *conclusions* from these facts, its determination of what they show as to the relevant

market or markets, are powerful admissions of a party opponent.

*The memoranda necessarily contain facts and admissions regarding the likely effect on*

*competition and consumers of the Instagram and WhatsApp transactions*.  Under Section 7 of the

Clayton Act, the standard of review for HSR purposes, the agency was required to find facts, and

draw conclusions, as to the likely effect on consumers from the acquisitions, and particularly

whether consumers were likely to be harmed in a tangible, concrete way – for example, by a

price increase.  *See*, *e.g.*, *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 214 (D.D.C. 2018)

(rejecting "speculative" evidence of likely consumer harm and explaining that it fell "far short of

persuasively showing that this merger threatens to harm competition") (cleaned up), *aff'd*, 916

F.3d 1029 (D.C. Cir. 2019).  For purposes of the instant Section 2 case, the same standard applies.

*See*, *e.g.*, *Microsoft*, 253 F.3d at 58-59 (government must show conduct had "anticompetitive

effect" that harmed "the competitive process" and consumers) (emphasis omitted).

The agency necessarily did that in 2012 and 2014, and, because it cleared the transactions,

it is virtually certain that it *did not* find facts supporting a claim that harm to consumers was

likely from either acquisition.  Both the underlying facts and the agency conclusions (admissions)

are highly relevant and highly probative, as well as unavailable from any other source at this late

date.

*The memoranda necessarily contain facts and admissions relevant to Meta's equitable*

*defenses*.  In addition to going directly to the fundamental elements of the agency's Section 2

case, the documents are directly at issue in connection with Meta's equitable defenses.  Where,

as here, a government agency seeks to dismantle a unitary company, ten and eight years after

reviewing and clearing the transactions that created the unitary company, after billions have been

invested in reliance on that clearance, the government's memoranda detailing the facts found and

conclusions drawn are squarely at issue in the defenses of laches, estoppel, and waiver.  *See*, *e.g.*,

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 12-13 (D.D.C. 2013)

("Estoppel is an equitable doctrine invoked to avoid injustice by precluding a litigant from

asserting an otherwise available claim or defense against a party who has detrimentally relied on

that litigant's conduct.").  That evidence would also certainly call into question the availability of

the breakup remedy that the FTC has demanded.  *See*, *e.g.*, *Ginsburg v. InBev NV/SA*, 623 F.3d

1229, 1235-36 (8th Cir. 2010) (equities weighed "overwhelmingly" against divestiture of a

consummated merger that "closed . . . with no opposition by the government's antitrust

enforcers").

## III.    The FTC Memoranda Are Not Protected by Any Applicable Privilege or Protection

In its efforts to keep its highly relevant contemporaneous documents behind closed doors

(except when select others want them), the FTC relies on the so-called "deliberative process"

privilege, among other unnamed privileges and protections.  But the privilege is inapplicable

here, where the deliberative process itself is at issue and Meta has a need for the documents.  Nor

does the work product doctrine protect the documents from disclosure.  There is no valid basis for keeping this critically relevant evidence from Meta and the Court.

A.     **The Deliberative Process Privilege Does Not Shield the FTC Memoranda from Discovery**

The FTC has refused to confirm to Meta which privilege or privileges it relies on here. It has referred specifically to the "deliberative-process privilege," which may cover agency "advisory opinions, recommendations and deliberations" in order to "protect[] the decision making processes of government agencies."  *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 352 (D.D.C. 2018).  The agency's own internal policies provide that no such privilege can be claimed to exempt a document from Freedom of Information Act ("FOIA") disclosure ten years after the fact.  The Instagram investigation closed in August of 2012 (*infra* Part III.A.1).  And the privilege, where it can be claimed, does not even apply to factual material (*infra* Part III.A.2) or agency decision-making called into question by Meta's affirmative defenses (*infra* Part III.A.3).  Even where it applies, it is a "qualified" privilege to be "narrowly construed":  the court may order disclosure of all such materials upon "balanc[ing] the parties' interests."  *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995).  Here, the balance strongly favors disclosure of this critically relevant information.  As this Court has explained, the privilege "obstruct[s] the search for truth," and its "benefits are indirect and speculative," so it must be "strictly construed."  *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 504 (D.D.C. 1985).

1.     The Deliberative Process Privilege Does Not Apply to the Instagram Memoranda

Recognizing that shrouding agency decision-making is inconsistent with open government, the FTC has an internal policy that, even in the FOIA context, where courts have

been more protective of agencies, the deliberative process privilege should not be claimed after

ten years:

> In the absence of staff articulating a reasonably foreseeable harm that a disclosure
> could create, FOIA staff will release the document to the requester.  Further, for
> many years, when processing FOIA requests, the FTC has worked under the
> presumption that most information protected by the Deliberative Process Privilege
> (Exemption 5) should be released if the file has been closed for more than ten
> years unless staff can articulate a compelling reason for withholding the
> information.

FTC, *2016 Open Government Plan* 11 (Sept. 15, 2016), https://www.ftc.gov/system/files/

attachments/open-government/final_opengov_plan2016.pdf.  We are now ten years after the

Instagram acquisition was announced and carefully reviewed by the FTC.  The agency voted 5-0

to close the investigation without enforcement action on August 22, 2012, so the file will have

been closed for ten years by the end of this summer.  In these circumstances, under the agency's

own construction of the deliberative process privilege, it cannot be invoked, at least as to the

documents relating to Instagram.[1]

Moreover, because the FTC has "for many years" operated under the presumption that

documents "should be released" after ten years, the FTC cannot credibly argue that disclosure

would chill the candid speech needed for optimum government decision-making.  The staff who

created both the Instagram and WhatsApp memoranda did so under the assumption that they

would be disclosed to the public ten years later.  All of the memoranda relating to the Instagram

transaction, at minimum, must therefore be produced without redaction.

---

[1] As to WhatsApp, where the agency found nothing even warranting a second request,
there are no conceivable agency deliberations that could justify protection.

2.     The Deliberative Process Privilege Does Not Apply to Factual Materials
       Contained in the FTC Memoranda

It is black-letter law in this Circuit that the deliberative process privilege does not apply

at all to purely factual material.  *See EPA v. Mink*, 410 U.S. 73, 87-88 (1973); *Morley v. CIA*,

508 F.3d 1108, 1127 (D.C. Cir. 2007).

As a matter of standard agency practice, the Bureau of Competition and the Bureau of

Economics must describe in their memoranda the material facts that were found during the

investigation.  *See* Royall Decl. ¶ 8.  At the very least, the Court should review the FTC

memoranda *in camera* and order disclosure of all the factual material.  *See Pub. Citizen, Inc. v.*

*Off. of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (ordering disclosure of factual

information in OMB analysis); *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 30, 39

(D.C. Cir. 2002) (ordering disclosure of "purely factual" "site-specific information about the

location of an endangered species" prepared to assist agency in making determination under

Endangered Species Act); *Playboy Enters., Inc. v. Dep't of Just.*, 677 F.2d 931, 936 (D.C. Cir.

1982) (ordering disclosure of factual material in DOJ Office of Professional Responsibility

report).

3.     The FTC Cannot Invoke the Deliberative Process Privilege Because Its
       Decision-Making Process Is Directly at Issue

Even if a claim of deliberative process privilege could be made (and it cannot be made

here), more than just the facts contained in the FTC memoranda must be disclosed.  The entirety of

each document, containing all of the staff conclusions and recommendations, must also be

disclosed.  The D.C. Circuit has held that the deliberative process privilege "does not enter the

picture at all" when "the government's intent" or "the nature of governmental officials'

deliberations" is at issue.  *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,

145 F.3d 1422, 1424-25 (D.C. Cir.), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998); *see Doe 2*

*v. Esper*, 2019 WL 4394842, at *6 (D.D.C. Sept. 13, 2019) (deliberative process privilege inapplicable because extent of deference afforded to government's position was at issue).

Meta has asserted equitable defenses (laches, estoppel, and waiver) that pivot on the unfairness of the government's conduct here:  clearing transactions, inducing reliance over eight-to-ten years at the cost of billions of dollars, then suddenly reemerging to challenge those acquisitions on grounds that were likely rejected as unfounded when the transactions were reviewed and cleared.  These equitable defenses put squarely at issue the FTC's intent and decision-making processes in 2012 and 2014, and strip any "deliberative process" argument from the contemporaneous documents as to that intent and decision-making.

*Brock v. Weiser*, 1987 WL 12686, at *2 (N.D. Ill. June 15, 1987), is instructive.  There, the Labor Department brought an enforcement action against the defendant after having previously investigated the defendant and informed him that the agency had decided to take "no further action."  *Id.* at *3.  When the Department later brought a case, the defendant asserted an estoppel defense based on reliance on the agency's prior decision.  *Id.*  Because the defendant's estoppel defense made the agency's "decision-making process . . . an issue in th[e] case," the court concluded that the agency could not assert the deliberate process privilege and ordered it to produce documents concerning its decision-making process from its earlier investigation.  *Id.* For the same reasons, the deliberative process privilege is inapplicable here.

4.     <u>The Deliberative Process Privilege Is a Qualified Privilege and Does Not Protect the FTC Memoranda</u>

The deliberative process privilege, even where applicable, is a *qualified* privilege that can be overcome by a showing of need.  Here the need is manifest.  The evidence that Meta needs to defend itself, a decade after the acquisition of Instagram and eight years after the acquisition of WhatsApp, almost certainly overlaps with much of the very same evidence the agency

accumulated in the FTC memoranda.  Those memoranda likely constitute a contemporaneous record of why those acquisitions *did not* violate the antitrust laws and *could not* be challenged in court.  In short, this evidence is highly likely to prove that the FTC has no case.

In making this evaluation, courts consider, *inter alia*, (a) the relevance of the evidence, (b) the availability of evidence from other sources, (c) the seriousness of the litigation, (d) the role of the government, and (e) the possibility of future timidity by government employees.  *See In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (per curiam).  All of these factors strongly favor disclosure of the FTC memoranda.[2]

*Relevance of the evidence*.  As discussed above, *supra* Part II, the FTC memoranda could not be *more* relevant.  The agency necessarily made findings as to the relevant market and the likely effect of the acquisitions.  In addition, its actions are highly relevant to Meta's equitable defenses, as well as the availability of the FTC's requested breakup remedy.  *See*, *e.g.*, *Swartwood v. Cty. of San Diego*, 2013 WL 6670545, at *6 (S.D. Cal. Dec. 18, 2013) (ordering disclosure of report from government investigation in part because it is "clearly relevant" to the case).  The FTC memoranda are all the more relevant because they are contemporaneous with the events at issue in the current litigation, which was brought so long after those events as to unfairly prejudice Meta in its efforts to obtain evidence necessary for its defense.  *See First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 322 (2000) (privilege did not bar disclosure where government's internal communications would help interpret contract by revealing government's intent at the time of the transaction at issue).

---

[2] In an unrelated context, for reasons not applicable here, some courts have protected FTC staff memoranda from disclosure when those documents have been sought under the Freedom of Information Act ("FOIA").  *See*, *e.g.*, *Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971).  These cases are inapplicable because this case does not involve a FOIA request.  Unlike in civil discovery, in FOIA litigation, a showing of need cannot overcome the deliberative process privilege.  *Sealed Case*, 121 F.3d at 737 & n.5.

*Availability of evidence from other sources*.  There is no other source for the evidence available in the FTC memoranda.

*First*, as discussed above, *supra* Part II, the FTC memoranda contain the facts – from documents and witness accounts – *most relevant* to the issues before the Court.  With the passage of time, it is highly unlikely that this same evidence can be reassembled ten and eight years after the fact.  Further, to the extent testifying third parties' thoughts and opinions have changed between when the acquisitions occurred and now, the memoranda may contain critical potential impeachment material.  Certainly no other compendium of evidence centrally relevant to the Instagram and WhatsApp acquisitions exists anywhere else.  *See Swartwood*, 2013 WL 6670545, at *6 (ordering disclosure of government investigative document because such information was unavailable elsewhere); *Cal. State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775, at *5 (N.D. Cal. July 23, 2008) (ordering disclosure because, "[w]hile some of the factual information contained in the analyses may be reproducible elsewhere, it is likely that the quality and persuasiveness of such evidence will be substantially inferior to that produced by the agency charged with enforcing and administering the programs at issue in this litigation").

*Second*, the FTC memoranda are the *only* source of the FTC's decision-making process, which is directly at issue in Meta's equitable defenses, as explained above, *supra* Part II.  *See Chisler v. Johnston*, 796 F. Supp. 2d 632, 641 (W.D. Pa. 2011) (ordering disclosure of internal report because "no other evidence that speaks to the [Department of Corrections'] reaction" exists); *MacNamara v. City of New York*, 249 F.R.D. 70, 82 (S.D.N.Y. 2008) (ordering disclosure of document because it contained information about government personnel and their role in challenged conduct that would be unavailable from other sources).

*Seriousness of litigation*.  This is arguably one of the most significant antitrust cases that the government has ever brought.  The government seeks for the first time ever to dismantle a

major U.S. company, a decade after the company made the acquisitions that helped it grow and serve billions of people, and a decade after the very same government agency cleared the acquisitions.  *Cf. Fed. Home Loan Mortg. Corp. v. Deloitte & Touche, LLP*, 2015 WL 12766388 (S.D. Fla. Aug. 4, 2015) (professional malpractice claim seeking $1.3 billion in damages sufficiently "serious" to support disclosure of documents withheld under claim of "deliberative process" privilege).

*Role of the government*.  Here, the FTC is a plaintiff in a civil lawsuit.  "When the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over."  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 274 F.R.D. 106, 114 (S.D.N.Y. 2011); *see also United States v. Gates*, 35 F.R.D. 524, 529 (D. Colo. 1964) (government cannot "maintain a civil action against one of its citizens" while "at the same time refus[ing] to permit the very . . . company whose dealings are under attack to have access to the materials which appear at this juncture to provide the . . . material both for the government's claim . . . and for [defendant's] defense"); *Lundy*, 105 F.R.D. at 503 (privilege carries less weight in cases where government is party).  Moreover, here, the FTC's actions in first clearing, then delaying, and then abruptly changing its position are directly at issue in Meta's equitable defenses, so its role is uniquely important in this case. *See supra* Part II.

*Possibility of future government timidity*.  The agency itself has recognized that disclosure poses no threat to government decision-making here, where disclosure comes ten years after the fact for the Instagram memoranda.  *See supra* Part III.A.1.  This makes perfect sense:  There is no reason to believe that disclosure of decade-old work will make the FTC staff "timid" in the future.  Moreover, if disclosure did threaten such effect, that ship has sailed: *there has already been disclosure* to House Judiciary Committee members and staff, which belies any

claim that secrecy is required to prevent the chilling of internal deliberations.  *See Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Lynch*, 156 F. Supp. 3d 101, 114 (D.D.C. 2016) (no harms from disclosure where executive previously disclosed contents of documents); *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 2020 WL 527987, at *14 (M.D. Pa. Jan. 31, 2020) (no threat of government timidity where emails had previously been "sent to numerous individuals").  The documents were created, and the decisions made, ten and eight years ago.  This significantly reduces any concern about chilling staff candor.  *See Gradeless v. Am. Mut. Share Ins. Corp.*, 2011 WL 221895, at *5 (S.D. Ind. Jan. 19, 2011) (any harm to deliberative process is "ameliorated by the fact that the administrative decisions at issue took place about seven years ago and have long ago been 'completed'").  Further, the FTC has not claimed and cannot claim that the memoranda contain particularly sensitive information, such that disclosure might chill agency candor.  *Compare Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 46 (D.D.C. 2017) (critiques of agency disciplinary practices highly sensitive), *with NAACP v. Bureau of Census*, 401 F. Supp. 3d 608, 618 (D. Md. 2019) (economic and statistical analyses "not so sensitive that their disclosure might diminish the candor of agency deliberations in the future"), *and Amchem Prods., Inc. v. GAF Corp.*, 64 F.R.D. 550, 553 (N.D. Ga. 1974) (draft Environmental Protection Agency interpretations of statute not shown to be "sensitive").

Finally, here, unlike with Congress, the documents will be subject to a protective order that limits their use to this case, and the agency has the option of producing documents to Meta as "Confidential" or "Highly Confidential."  *See Wagner*, 2008 WL 2872775, at *6 (ordering disclosure where concerns over chilling of agency discussion "may be mitigated by issuing a protective order or having the documents disclosed under seal").  Where the FTC readily revealed these documents to Congress and staff, with no protection against public disclosure, it

cannot credibly claim that disclosure here, under the Protective Order, would inhibit agency staff

candor in the future.[3]

### 5.   The FTC Waived Any Claim of Privilege

Furthermore, the FTC has waived any claim of privilege by voluntarily providing all the

FTC memoranda to House Judiciary Committee members and staff.  *See infra* Part IV.

## B.   The Work Product Doctrine Does Not Shield the FTC Memoranda from Discovery

The FTC has referenced the work product doctrine in its objections, but it has refused to

state whether it is relying on that doctrine here.  Because cases frequently address deliberative

process privilege and work product together, Meta addresses work product here.  But, for

multiple reasons, that doctrine does not shield the FTC memoranda from discovery.

### 1.   The Bureau of Economics Memorandum Is Not Work Product

The Bureau of Economics memorandum evaluating the Instagram transaction is not work

product at all.  It was not created by counsel or by someone acting at the direction of counsel.

*See Janicker ex rel. Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650-51 (D.D.C. 1982).

The FTC's staff economists are not attorneys; they conduct an independent assessment based on

economics and "do not act at the direction of attorneys."  Royall Decl. ¶ 5; *see also United States*

---

[3] To the extent the FTC attempts to rely on *FTC v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984) (per curiam), the case is inapposite.  There, the Ninth Circuit held that two memoranda from the FTC's Bureau of Economics recommending against challenging a merger were protected by the deliberative process privilege.  *Warner* is distinguishable for three reasons:  *First*, in *Warner*, the FTC promptly challenged the acquisition, and similar information was available to the defendants, *id*. at 1161-62; here, the FTC approved the deals and waited years to challenge them, causing a delay that has inhibited Meta's ability to obtain historical information with which to defend itself.  *Second*, the FTC memoranda are central to Meta's equitable defenses, which was not the case in *Warner*.  *Third*, although in *Warner* the FTC disclosed the *conclusion* reached in one of the memoranda, it did not disclose the analysis; here, the FTC gave the entire set of materials to Congress, belying its claim that disclosure to Meta would chill candid staff analysis.

*v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134, 137 (D.D.C. 2012) (degree of counsel's involvement is "key component" that "bears directly on whether the document was prepared in anticipation of litigation"). They review the economic evidence regarding the market or markets, and the likelihood of harm to competition and consumers from the transaction under review. *See* Royall Decl. ¶¶ 5, 8. The work of the FTC's economists should therefore be produced. *See Janicker*, 94 F.R.D. at 650-51 (internal committee report not produced "at the direction of counsel"); *ISS Marine Servs.*, 905 F. Supp. 2d at 138 (investigation "was conducted by a non-attorney who never communicated with outside counsel"); *Warren v. Bastyr Univ.*, 2013 WL 2181762, at *3 (W.D. Wash. May 17, 2013) ("no indication that an attorney requested[] or created" the documents in question); *Rafferty v. KeyPoint Gov't Sols., Inc.*, 2018 WL 3059600, at *7 (D. Idaho June 19, 2018) (investigative report not "prepared . . . at the direction of counsel").

2.   Meta Has a Substantial Need for the Documents

To the extent the work product doctrine is applicable, Meta's need for the FTC memoranda is compelling and exceeds the showing made in other cases in which courts have ordered disclosure.

*There is substantial need for disclosure of the factual materials contained in the FTC memoranda*. There is only limited protection for facts contained in documents prepared by attorneys in anticipation of litigation. "Fact" work product is discoverable upon a showing of substantial need and unavailability through other means. *See FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015). "Substantial need" is established where materials are relevant to the case, have unique value apart from those already in movant's possession, and "special circumstances" prevent the movant from otherwise obtaining the materials. *Id.* at 154-55. Meta easily meets this test under the extraordinary circumstances here.

*The FTC memoranda are relevant*.  There is no question that the facts collected and memorialized by the agency in 2012 and 2014, as to the relevant market or markets and the likely effect of the two transactions, as well as the agency's reasons for acting or not acting, are centrally relevant to Meta's challenges to the government's case and its equitable affirmative defenses.  *See Jud. Watch, Inc. v. U.S. Dep't of State*, 2019 WL 2452325, at *1-3 (D.D.C. June 12, 2019) (emails with attorney opinions were discoverable fact work product because their recommendations – regarding whether Secretary Clinton could use private email to avoid FOIA obligations – amounted to "material facts" central to underlying issues in case).

*The FTC memoranda have unique value*.  The collection of contemporaneous facts, from a variety of sources including documents and witnesses, has unique value because Meta does not possess this evidence and cannot otherwise obtain this evidence – and certainly cannot do so ten and eight years after the transactions at issue.

*Special circumstances prevent Meta from otherwise obtaining the materials*.  The passage of time alone constitutes a special circumstance that prevents Meta from obtaining this centrally relevant evidence.  Meta is already aware that documents have been lost – both the FTC itself and third parties have confirmed this.  It is equally likely that witnesses have significantly diminished memories a decade after the fact.  *See*, *e.g.*, *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 5 (D.D.C. 2002) (substantial need where, *inter alia*, documents had been destroyed); *see also*, *e.g.*, *Le v. Diligence, Inc.*, 312 F.R.D. 245, 245-48 (D. Mass. 2015) ("substantial need" for photos depicting boat where injury occurred because boat underwent "structural changes" and no other depiction of its "condition . . . at the [relevant time]" existed); *Interstate Fire & Cas. Co. v. Roman Cath. Church of Diocese of Phoenix*, 2012 WL 12867974, at *1 (D. Ariz. Jan. 19, 2012) ("substantial need" where – due to passage of time – witnesses, when located, had faded memories); *Johnson v. Wash. Metro. Area Transit Auth.*, 1990 WL 113877, at *2-3

(D.D.C. July 26, 1990) (same); *Leamon v. KBR, Inc.*, 2011 WL 13340584, at *2 (S.D. Tex. Nov. 10, 2011) (same).

The government has never before sought to break up a company ten and eight years after clearing the transactions that created the unitary company.  If that does not establish a compelling case for substantial need for the facts that caused the government to clear the transactions, nothing will.  Indeed, it would be grossly unfair to let the FTC possess and use the contemporaneous evidence collected in 2012 and 2014 without making that evidence equally available to Meta, as courts have held in ordering disclosure.  *See United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. 2014) (substantial need where one side had "substantial advantage from having access to the fruits of [a] prior criminal investigation" that provided "critical sources of evidence for *both* sides"); *Howard v. Fowler Bros., Inc.*, 2011 WL 3438407, at *2 (W.D. Ky. Aug. 5, 2011) (similarly emphasizing unfair asymmetry – defendant's ability to interview key witnesses "unavailable to Plaintiff").

*There is no protected opinion work product here*.  As the Court held in *Judicial Watch*, the agency's reasons for acting or not acting are "material facts" relevant to the FTC's claims and Meta's affirmative defenses.  *See Jud. Watch*, 2019 WL 2452325, at *1-3 (emails with attorney opinions discoverable as fact work product because their recommendations – regarding whether Secretary Clinton could use private email to avoid FOIA obligations – amounted to "material facts" central to underlying issues in case).  But even if the staff conclusions and recommendations here are characterized as opinion work product, they still must be disclosed.  Production of opinion work product can be compelled upon an "extraordinary showing of necessity," *In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982), such as when "evaluative opinions and observations . . . are essential to establish and substantiate [a] defendant's claim," *United States v. AT&T Co.*, 86 F.R.D. 603, 633 n.1 (D.D.C. 1979) (citing *Bird v. Penn. Cent. Co.*,

61 F.R.D. 43 (E.D. Pa. 1973)), or when the opinion work product "goes to the heart of the issues

in the litigation," *Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890, at *6

(D.D.C. Dec. 16, 2005).

Both grounds are present here.  The FTC's evaluative opinions and observations are

essential to substantiate Meta's equitable claims that the government has acted unfairly and

inequitably in bringing this case so many years after the transactions and after conducting careful

reviews that resulted in the transactions being cleared – a clearance on which Meta was entitled

to rely.  The FTC's decision-making is directly at issue in this case.  *See supra* Part II.

*Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D. Pa. 1973) (cited with approval by *AT&T*, 86

F.R.D. at 633 n.1), is instructive.  In that case, plaintiff insurance companies sought to rescind

two insurance policies covering the defendants based on alleged false statements in their

insurance application.  The defendants asserted a laches defense on the ground that the insurers

should have known about the allegedly false statements years ago and sought investigative

materials compiled by the insurers' lawyers.  The court ordered production of the documents,

which the insurers claimed were opinion work product, because they were "essential" for the

defendants to "substantiate their defense."  *Id.* at 46-47; *see also Kockums Indus. Ltd. v. Salem

Equip., Inc.*, 561 F. Supp. 168, 173 (D. Or. 1983) (ordering disclosure of opinion work product

without which "the defendant will have no chance to prove its potentially valid counterclaims");

*Tri-State Hosp.*, 2005 WL 3447890, at *6 (ordering disclosure of opinion work product where

decision to sue was at heart of malicious prosecution case).

Any opinion work product here likewise "goes to the heart of the issues in the litigation."

*Tri-State Hosp.*, 2005 WL 3447890, at *6.  There is no doubt that the agency lawyers identified

and assessed the relevant market or markets, and that issue is of potentially dispositive

significance to this case.  If the FTC fails to prove its "PSNS" market definition, the case fails.

Meta believes the agency lawyers found no such market when they conducted their 2012 and 2014 investigations, and that certainly goes to the heart of this case.  Equally apparent:  the agency was required under HSR to determine whether the acquisitions threatened *likely* harm to competition and consumers.  *See* 15 U.S.C. § 18a.  The same element is present in this case, as the Court has held.  *See FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308, at *12 (D.D.C. Jan. 11, 2022).  Meta believes that the agency lawyers found *no* such harm in 2012 and 2014, even after careful review of relevant contemporaneous evidence.  That, too, indisputably goes to the heart of the case.

This case is therefore the extraordinary case in which it would be fundamentally unfair to allow the adversary to hide its centrally relevant and potentially dispositive admissions behind a screen of work product privilege.  Any protection that arguably exists has been overcome by Meta's showing of substantial need and extraordinary necessity.

Moreover, for the reasons set forth below, *infra* Part IV, the agency waived any claim of privilege when it chose to share all of its memoranda with the members and staff of the House Judiciary Committee.

## IV.    The FTC Waived Any Privilege by Voluntarily Providing the Memoranda to House Judiciary Committee Members and Staff

The FTC has confirmed that it shared the FTC memoranda with Members of Congress and their staff.  *See* D. Matheson Ltr. at 9 (May 12, 2022).  That disclosure was voluntary:  the House Judiciary Committee made only an informal request for those documents and never issued a subpoena to the FTC.  *See* Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, Investigation of Competition in Digital Markets:  Majority Staff Report and Recommendations, 116th Cong. 28 (Oct. 2020).  The FTC has not claimed that it

obtained assurances of confidentiality before handing over these supposedly top-secret

documents.  *See* D. Matheson Ltr. at 9 (May 12, 2022).

This disclosure waived any privilege claim for these documents.  *See*, *e.g.*, *Sealed Case*,

121 F.3d at 741-42 (White House waived deliberative process privilege as to "specific

documents that it voluntarily revealed to third parties outside the White House"); *Citizens for*

*Resp. & Ethics in Wash. v. U.S. Dep't of Commerce*, 2020 WL 4732095, at *2 (D.D.C. Aug. 14,

2020) (Commerce Department waived deliberative process privilege as to documents shared

with "a third party"); *see also In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1369-75 (D.C. Cir.

1984) (company waived attorney-client and work product privilege as to documents voluntarily

disclosed); *In re Veiga*, 746 F. Supp. 2d 27, 35 (D.D.C. 2010) ("[V]oluntary disclosure to a third

party constitutes a waiver [of work product privilege] where the disclosure is made under

circumstances inconsistent with the maintenance of secrecy from one's adversary."); *In re Fed.*

*Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 2009 WL 10708594, at *2 (D.D.C. June

9, 2009) (Federal Housing Finance Agency waived deliberative process privilege by failing to

take "'reasonable steps' to protect its deliberative process privilege" and producing purportedly

privileged documents).

Sharing with legislators and their staff is not different from sharing with any other third

party – it effects a waiver.  *See*, *e.g.*, *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 426

(D.D.C. 2002) (producing documents to Congress waived attorney-client and work product

privilege); *First Heights Bank*, 46 Fed. Cl. at 319 (producing documents to Congress waived

attorney-client privilege).

The FTC argues to the contrary, but relies entirely on inapplicable decisions from cases

decided under the Freedom of Information Act.  FOIA establishes a process that allows members

of the public to request government documents and allows the government to withhold

documents if one of nine statutory exemptions applies.  *See* 5 U.S.C. § 552(b).  FOIA also specifies that the application of one of FOIA's statutory exemptions does not give an agency "authority to withhold information from Congress."  *Id.* § 552(d).  On the basis of § 552(d)'s language, the D.C. Circuit has held that an agency's ability to assert that one of FOIA's statutory exemptions applies is not affected by whether the document has been shared with Congress.  *See Rockwell Int'l Corp. v. U.S. Dep't of Just.*, 235 F.3d 598, 604 (D.C. Cir. 2001); *Murphy v. Dep't of Army*, 613 F.2d 1151, 1155-56 (D.C. Cir. 1979).

Meta does not seek the FTC memoranda under FOIA; the specific statutory provision protecting disclosure to Congress does not apply.  Instead, Meta seeks these memoranda from a litigation adversary pursuing claims to break up the company.  It relies on civil discovery obligations that apply no less to the FTC than to Meta.  In that context, the rule that a voluntary disclosure to Congress waives a party's privileges in contested litigation applies.  *See*, *e.g*., *First Heights Bank*, 46 Fed. Cl. at 319 (two federal entities – the Federal Savings and Loan Insurance Corporation and the Resolution Trust Corporation – waived attorney-client privilege by producing privileged communications to Congress).

Moreover, the FOIA cases present none of the extraordinary facts that are present here.  *See Rockwell*, 235 F.3d 598; *Murphy*, 613 F.2d 1151.  The FTC previously cleared the deals it now challenges.  When a change in leadership prompted second-guessing of those clearances, and Members of Congress sought to revisit them as well, the agency voluntarily disclosed its 2012 and 2014 compilations of facts and conclusions.  The Members and their staff reviewed and then relied on these very documents in a public report specifically addressing the FTC's review of the Instagram and WhatsApp acquisitions.  It would be fundamentally unfair to permit the FTC to funnel these documents to outsiders, while denying Meta the use of these same documents that are critical for its defense.  *See Subpoenas Duces Tecum*, 738 F.2d at 1372

(affirming compulsion order; it would be "unfair to allow [a party] to select according to their

own self-interest to which adversaries they will allow access to the materials").

## Conclusion

The Court should order the FTC to produce to Meta unredacted copies of the FTC

memoranda.

Dated: May 31, 2022                                Respectfully submitted,

                                                   /s/ *Mark C. Hansen*
                                                   Mark C. Hansen
                                                   Kevin B. Huff
                                                   KELLOGG, HANSEN, TODD,
                                                      FIGEL & FREDERICK, P.L.L.C.
                                                   1615 M Street, N.W., Suite 400
                                                   Washington, D.C. 20036
                                                   Tel: (202) 326-7900

                                                   *Counsel for Defendant Meta Platforms, Inc.*