## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

META PLATFORMS, INC.,

        Defendant.

Case No. 1:20-cv-03590-JEB

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST

Defendant Meta Platforms, Inc. ("Meta") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Issuance of Letters of Request for discovery from ByteDance Ltd. ("ByteDance"); Telegram Messenger Inc. ("Telegram"); and Tencent Holdings Ltd. ("Tencent") (the "Foreign Non-Parties").

## INTRODUCTION

Meta brings this Motion to obtain discovery from three non-parties headquartered outside of the United States. Meta believes that each of these non-parties possesses or controls information critical to its defenses in this action, namely on issues related to market definition and market power. The FTC does not dispute the relevance of these targets and has indicated in its initial disclosures that two of these Foreign Non-Parties (ByteDance and Tencent) have information related to "Meta's market power." Although Meta has served these Foreign Non-Parties' domestic subsidiaries where possible, Meta has reason to believe that these subsidiaries have limited responsive documents in their custody or control, and Meta seeks information from

the Foreign Non-Parties only where that information is not in the possession or custody of the domestic subsidiary.

Meta expects that the Foreign Non-Parties' documents and testimony will show that they—along with numerous other entities—compete with Meta, and that contrary to the allegations in the FTC's amended complaint there is no "industry or public recognition of" a product market for "personal social networking services" ("PSNS").  *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).   Meta also expects that documents and testimony will show that there have been no anticompetitive effects from Meta's acquisitions of Instagram and WhatsApp.

Accordingly, Meta respectfully requests that the Court grant this motion to obtain limited documents from the following entities, each of which is described in more detail in Section I, *infra*:

- ByteDance, a Chinese internet technology company, privately holds all of the equity in the popular mobile application TikTok.  The FTC specifically identifies TikTok in the Amended Complaint.  *See* Am. Compl. ¶ 176.

- Telegram, a cloud-based instant messaging service, is registered in the British Virgin Islands.  In late 2021, when Meta experienced a six-hour long outage, Telegram reportedly gained 70 million new users.[1]

---

[1] Jon Porter, *Telegram Gains 70M Users in Just One Day After Facebook Outage*, THE VERGE, https://www.theverge.com/2021/10/6/22712191/telegram-70-million-new-users-facebook-outage-surge-whatsapp (Oct. 6, 2021); *see also* Stan Schroeder, *If You Think Facebook Has No Competition, Just Ask Telegram*, MASHABLE (March 14, 2019), https://mashable.com/article/telegram-3-million-users (noting that over 3 million users signed up for Telegram during the 24 hours after a brief outage of Facebook Messenger, Instagram, and WhatsApp).

- Tencent, a Chinese internet technology company, owns WeChat and QQ, which Tencent labels as "social platform[s]."[2]

Meta respectfully requests that this Court issue letters of request directed at its counterparts in the People's Republic of China and the British Virgin Islands to obtain relevant evidence from these Foreign Non-Parties.

## ARGUMENT

### I.    The Court Has Authority to Issue the Requested Letters of Request.

Congress has authorized this Court to issue letters of request for the production of documents from non-parties located in foreign countries such as the People's Republic of China, and the British Virgin Islands for use in an action pending in the United States.  *See* All Writs Act, 28 U.S.C. § 1781(b)(2) (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner").

China and the United States are signatories to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").[3]  The British Virgin Islands have given statutory effect to the Hague Convention through their own legislation.  *See* Evidence (Proceedings in Foreign Jurisdictions) Act, 1988 art. 9(3) (BVI).  Pursuant to the Hague Evidence Convention, "In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provision[s] of the law of that State, request the

---

[2] *Businesses*, TENCENT, https://www.tencent.com/en-us/business.html (last visited May 12, 2022).

[3] *See Status Table*, *Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, HAGUE CONFERENCE ON PRIVATE INT'L LAW, http://www.hcch net/index_en.php?act=conventions.status&cid=82 (last visited May 12, 2022); *Hague Evidence Convention - Acceptances of Accessions*, HAGUE CONFERENCE ON PRIVATE INT'L LAW, https://assets.hcch.net/docs/f094fd72-6213-4950-96ea-955f41a311eb.pdf (last visited May 12, 2022).

competent authority of another Contracting State, by means of a Letter of Request, to obtain

evidence, or to perform some other judicial act."  Hague Evidence Convention, Art. 1, Mar. 18,

1970, 23 U.S.T. 2555.  The Supreme Court has recognized that the Hague Evidence Convention

is "intended to establish optional procedures that would facilitate the taking of evidence abroad."

*See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S.

522, 538 (1987).

## II.    Meta's Requests Are Relevant and Likely to Lead to Material Evidence.

In deciding whether to issue letters of request, "U.S. courts apply the discovery principles

contained in Rule 26" of the Federal Rules of Civil Procedure.  *Lantheus Med. Imaging, Inc. v.

Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012); *see also Estate of Klieman v.

Palestinian Auth.*, 272 F.R.D. 253, 257 (D.D.C. 2011) (applying Rule 26 in evaluating whether

to issue letters of request under the Hague Convention).  Federal Rule of Civil Procedure

26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case," including material that

is not admissible.  Because the bar for granting a motion for issuance of a letter of request is low,

"[a] court must set forth some good reason to deny a party the judicial assistance requested by

means of a letter rogatory." *Dist. Title v. Warren*, No. 14-1808 ABJ/DAR, 2016 WL 10749155,

at *4 (D.D.C. Dec. 23, 2016) (internal quotation marks, citation, and alteration omitted).

As set forth below, all of the information that Meta seeks from the Foreign Non-Parties

clears this threshold because it is relevant to Meta's defenses—specifically, the competition that

it faces; the low barriers to entry as evidenced by the ability of small upstarts to achieve runaway

success; the contours of the relevant product and geographic market; data regarding market size

and share; and the lack of anticompetitive effects from Meta's acquisitions of WhatsApp and Instagram.

### A.    ByteDance (TikTok)

ByteDance is a multinational international internet technology company headquartered in Beijing, China.  It owns and operates the TikTok app, which was reported to have more than one billion users as of September 2021.[4]  TikTok's user growth exploded after ByteDance acquired the startup Musical.ly for $1 billion in 2017 and merged it with TikTok.

In its Amended Complaint, the FTC recognizes that TikTok is a popular mobile application, but then alleges that it "is not an acceptable substitute for personal social networking services."  Am. Compl. ¶ 176.  According to the FTC, "TikTok users primarily view, create, and share video content to an audience that the poster does not personally know, rather than connect and personally engage with friends and family.  The purpose for which users employ TikTok, and the predominant form of interaction on the platform, is not driven by users' desire to interact with networks of friends and family."  *Id.*  Meta seeks discovery from ByteDance to test these unsupported allegations, which ignore how TikTok's users view the service and how TikTok and Meta compete.

Meta seeks documents related to how ByteDance views competition between TikTok and Meta (Document Request No. 1) and whether TikTok's services meet the FTC's definition of personal social networking services (Document Request No. 2).  *See In re Apple iPhone Antitrust Litig.*, 11-cv-06714 YGR (TSH), 2021 WL 718650, at *1-3 (N.D. Cal. Feb. 24, 2021) (granting motion to compel discovery from third party relevant to market definition); *FTC v. Sysco Corp.*,

---

[4] Kim Lyons, *TikTok Says It Has Passed 1 Billion Users*, THE VERGE (Sept. 27, 2021), https://www.theverge.com/2021/9/27/22696281/tiktok-1-billion-users.

113 F. Supp. 3d 1, 32-33 (D.D.C. 2015) (citing testimony from an "industry's [various] players regarding the boundaries of the product market").  Meta also seeks documents related to ByteDance's acquisition of Musical.ly, which helped spur the popularity of TikTok as a critical competitor to Meta (Document Request No. 3).  To address the FTC's allegations related to market power, Meta is requesting documents related to whether TikTok believes that its privacy policies and practices—one of the FTC's alleged measures of quality—have an effect on TikTok user satisfaction or engagement (Document Request No. 4).  Lastly, Meta has two limited data requests related to the FTC's allegations of market share and market definition regarding time spent and the number of users on TikTok (Document Request Nos. 5 & 6).  Meta believes that this information is critical to countering the FTC's allegations that Meta has monopoly power in any cognizable market.  Meta limited these requests to data regarding average time spent and active user numbers, which the FTC alleges are commonly used user metrics.  *See* Am. Compl. ¶ 193.  Document Request Number 5 seeks data limited to specific periods of time when there were outages on Meta or news relating to a potential ban of TikTok in the United States and seeks information related to diversion between Meta and TikTok.   In Document Request Number 6, Meta has asked for data dating back to 2016 to help respond to the FTC's allegations that Meta has any type of durable monopoly power.

Meta has served document requests on TikTok, Inc. for documents in the custody and control of ByteDance's United States subsidiary, but Meta is also seeking unique and vital documents that it believes are only available in China, where ByteDance is headquartered.  Meta seeks documents only where they are not in the possession or custody of the United States subsidiary.

**B.     Telegram**

Telegram is a free, cross-platform, cloud-based communication service registered in the British Virgin Islands.  Telegram expressly bills itself as an alternative to WhatsApp.[5] Telegram's mission is "to provide a secure means of communication that works everywhere on the planet."[6]  Telegram launched in late 2013 and boasts simultaneous message syncing on all user devices.[7]  By the time Meta closed its acquisition of WhatsApp in October 2014, Telegram already had close to 50 million monthly active users.[8]  In 2020, Telegram introduced video calling with end-to-end encryption.[9]  In January 2021, Telegram's CEO & Founder, Pavel Durov, announced the company had surpassed 500 million monthly active users.[10]  In late 2021, when Meta experienced a six-hour-long outage, Telegram reportedly gained 70 million new users.[11]

Meta seeks discovery from Telegram to show how Telegram has competed with Meta. Meta seeks documents related to how Telegram views competition between Telegram and Meta (Document Request No. 1) and whether Telegram's services meet the FTC's definition of personal social networking services (Document Request No. 2).  Meta has two limited data

---

[5] *Telegram FAQ*, https://telegram.org/faq (last visited May 12, 2022).

[6] *Id*.

[7] *Id*.

[8] *Number of Monthly Active Telegram Users Worldwide from March 2014 to April 2022*, STATISTA (Apr. 29, 2022), https://www.statista.com/statistics/234038/telegram-messenger-mau-users/

[9] Ivan Mehta, *Telegram Introduces End-to-End Encrypted Video Calls*, TNW (Aug. 14, 2020), https://thenextweb.com/news/telegram-introduces-end-to-end-encrypted-video-calls.

[10] Phoebe Magdirila, *Telegram Crosses 500 Million Monthly Active Users*, S&P GLOBAL (Jan. 13, 2021), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/telegram-crosses-500-million-monthly-active-users-62094638.

[11] Jon Porter, *Telegram Gains 70M Users in Just One Day After Facebook Outage*, THE VERGE, https://www.theverge.com/2021/10/6/22712191/telegram-70-million-new-users-facebook-outage-surge-whatsapp (Oct. 6, 2021); *see also* Stan Schroeder, *If You Think Facebook Has No Competition, Just Ask Telegram*, MASHABLE (March 14, 2019), https://mashable.com/article/telegram-3-million-users (noting that over three million users signed up for Telegram during the 24 hours after a brief outage of Facebook Messenger, Instagram, and WhatsApp).

requests related to the FTC's allegations of market share and market definition regarding time

spent on Telegram, including during Meta outages, and the number of users on Telegram

(Document Request Nos. 3 & 4).  Meta believes that this information is critical to countering the

FTC's allegations that Meta has monopoly power in any cognizable market.  Meta limited these

requests to average time spent and active user numbers, which the FTC alleges are commonly

used user metrics.  *See* Am. Compl. ¶ 193.  Document Request Number 3 seeks data limited to

specific periods of time when there were outages on Meta and seeks information related to

diversion from Meta.  In Document Request Number 4, Meta has asked for data from 2013-2016

and 2021 to help respond to the FTC's allegations that Meta has any type of durable monopoly

power.

Meta has served document requests on Telegram LLC for documents in the custody and

control of Telegram's United States subsidiary, but Meta is also seeking unique and vital

documents that it believes are only available in the British Virgin Islands, where Telegram is

headquartered.  Meta seeks documents only where they are not in the possession or control of the

United States subsidiary.

## C.     Tencent

Tencent is a multinational internet technology company headquartered in Shenzhen,

China.  It owns and operates WeChat and QQ, which it refers to as "social platform[s]."[12]  As of

June 30, 2021, WeChat had over 1.2 billion monthly active users worldwide and QQ had over

590 million.[13]  WeChat supports text messaging, video and voice calling, and group messaging

---

[12] *Businesses*, TENCENT, https://www.tencent.com/en-us/business html (last visited May 12, 2022).

[13] *2021 Interim Report*, TENCENT HOLDINGS LTD. 5,
https://static.www.tencent.com/uploads/2021/08/31/7276c2279348d70e0b0f74f6c470f92e.pdf (last visited May 12, 2022).

and calling.[14]  QQ also allows its "users [to] socialize, watch shows and play games together."[15]  WeChat offers a feature called "moments" which "functions like the Facebook Wall and allows users to share their thoughts and photos in a social media feed."[16]  Tencent has explained that QQ provides "immersive social and entertainment experiences."[17]

Meta seeks discovery from Tencent to show how Tencent's products have competed with Meta.  Meta seeks documents related to how Tencent views competition between its products and Meta (Document Request No. 1) and whether WeChat or QQ meet the FTC's definition of personal social networking services (Document Request No. 2).  Meta has two limited data requests related to the FTC's allegations of market share and market definition regarding time spent and the number of users on WeChat and QQ (Document Request Nos. 3 & 4).  Meta believes that this information is critical to countering the FTC's allegations that Meta has monopoly power in any cognizable market.  Meta limited these requests to data regarding time spent and active user numbers, which the FTC alleges are commonly used user metrics.  *See* Am. Compl. ¶ 193.  Document Request Number 3 seeks data limited to specific periods of time when there were outages on Meta and seeks information related to diversion from Meta.  In Document Request Number 4, Meta has asked for data from 2011-2014 and 2021 to help respond to the FTC's allegations that Meta has any type of durable monopoly power.

---

[14] *Everything You Need to Know about WeChat*, WASHINGTON.ORG, https://washington.org/welcomechina/angs-chat/blog-1-wechat (last visited May 12, 2022).

[15] Priyanka Boghani, *Tencent Poised to Lead China's Charge into the Metaverse*, S&P GLOBAL (Mar. 17, 2022), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/tencent-poised-to-lead-china-s-charge-into-the-metaverse-69311462.

[16] *Everything You Need to Know about WeChat*, *supra* note 144.

[17] *2021 Interim Report, supra* note 34, at 6.

Meta has served document requests on Tencent America LLC for documents in the custody and control of Tencent's United States subsidiary, but Meta is also seeking unique and vital documents that it believes are only available in China, where Tencent is headquartered. Meta seeks documents only where they are not in the possession or custody of the United States subsidiary.

### III.      Comity Considerations Favor Issuing These Letters of Request.

When considering whether to authorize international discovery through the Hague Evidence Convention, the Court must also consider international comity concerns.  *See Jaguar Land Rover Ltd. v. DR. ING. H.C. F. Porsche AG*, No. 21-MC-62 (ZMF), 2021 WL 3075698, at *1 (D.D.C. June 22, 2021) (considering comity issues raised by motion for issuance of letters of request).  Courts generally apply the following comity factors to determine whether to grant a motion for issuance of a letter of request: (1) the importance to the litigation of the documents requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.  *Aérospatiale*, 482 U.S. at 544 n.28.  Additionally, "some of the international comity concerns . . . are lessened when only use of the Hague Convention is at issue because all the relevant nations have consented to the treaty process." *Jaguar*, 2021 WL 3075698, at *1 (quoting *Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, No. 20-CV-1869, 2021 WL 2010816, at *7 (3d Cir. May 20, 2021) (internal quotation marks omitted)).

Here, these factors support issuing the letters.  *First*, as set out above, the document requests are vitally important to Meta's defenses in this important litigation.  *Second*, the narrow

requests for each entity are specific, seek only a limited set of evidence, and are directly relevant to issues in this case. *Third* and *fourth*, even if the documents may have originated overseas, Meta specifically seeks only those documents that are unlikely to be found in the United States, which counterbalances the foreign origin of the documents and favors disclosure. *See Lantheus Med. Imaging*, 841 F. Supp. 2d at 793; *Jaguar*, 2021 WL 3075698, at *2 (holding that even if the third factor weighs against issuing the letters, "the fourth [factor] . . . can overcome the third" (quoting *Arcelik*, 2021 WL 2010816, at *7 (internal quotation marks omitted)). *Finally*, "[w]hen a court orders resort to the [Hague] Convention or to other means of international judicial assistance, it commits the issue whether compliance with the request would undermine important interests of the state where the information is located to the courts or other authorities of that state." Restatement (Third) of Foreign Relations Law § 473 reps. n. 5 (AM. L. INST. 1987) (quoted in *Jaguar*, 2021 WL 3075698, at *2). When that is true, "the Court will not assess the fifth factor." *Jaguar*, 2021 WL 3075698, at *2. Therefore, the comity considerations favor issuing the letters of request here.

## CONCLUSION

For the reasons above, Meta respectfully requests that the Court grant this motion and execute the attached letters of request.

Dated:  June 16, 2022                    Respectfully Submitted,

By:  */s/ Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendants Meta Platforms, Inc.*