# Exhibit A

Submitted Pursuant to Local Civil Rules 5.2(b) and 26.2(d).

## Meta's Interrogatory No. 10 (served Mar. 30, 2022)

**INTERROGATORY NO. 10**:

For each feature or activity available to users on Facebook, Instagram, WhatsApp, or Facebook Messenger, specify whether the feature or activity is or is not within the definition of "personal social networking" (see Amended Complaint ¶ 164).

## FTC's Initial Response to Interrogatory No. 10 (served Apr. 29, 2022)

**RESPONSE TO INTERROGATORY NO. 10:**

The FTC notes that "Interrogatory No. 10" constitutes at least the nineteenth, twentieth, twenty-first, and twenty-second interrogatory served by Meta, as it contains at least four discrete interrogatories or discrete subparts. *See supra*, Responses to "Interrogatory No. 1," "Interrogatory No. 2," and "Interrogatory No. 3." As "Interrogatory No. 10" purports to require the FTC to (i) assess each "feature or activity available to users" for each product identified, and also to (ii) identify whether each is or is not within "the definition of 'personal social networking services,'" it in fact contains numerous discrete subparts.

The FTC further objects to "Interrogatory No. 10" as premature because it seeks information and evidence subject to ongoing factual discovery, which is not scheduled to close until May 22, 2023, and because it seeks information and evidence which may be the subject of expert discovery, which is not scheduled to close until January 5, 2024. The FTC also reserves the right to supplement its response to this contention interrogatory, including through ongoing factual discovery and the provision of expert reports appropriately submitted pursuant to the stipulated schedule for expert discovery. The FTC further objects to "Interrogatory No. 10" to the extent that it seeks to discover information and communications, including any mental impressions of counsel, that are protected

1

from disclosure due to the work product privilege, deliberative process privilege, and any other applicable privilege.

The FTC objects to the terms "feature" and "activity" as vague, ambiguous, overly broad, and unduly burdensome. The FTC further objects to the terms "feature" and "activity" because the Substitute Amended Complaint does not describe "personal social networking services" based on particular "features" or "activities" that such services make "available to users."

Subject to and without waiving its General and Specific Objections, the FTC responds as follows. The FTC's Substitute Amended Complaint describes "personal social networking services" as "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space." Substitute Amended Complaint ¶ 166. As further described in the Substitute Amended Complaint, there are three key elements that distinguish personal social networking services from other forms of online services provided to users: (1) "personal social networking services are built on a social graph that maps the connections between users and their friends, family, and other personal connections," (2) "personal social networking services include features that many users regularly employ to interact with personal connections and share their personal experiences in a shared social space, including in a one-to-many 'broadcast' format," and (3) "personal social networking services include features that allow users to find and connect with other users, to make it easier for each user to build and expand their set of personal connections." Substitute Amended Complaint ¶¶ 167-69. Further, the Substitute Amended Complaint distinguishes personal social networking services from other types of online services. *See, e.g., id.* at ¶ 172 (mobile messaging), ¶ 173 (specialized social networking services, such as professional or interest-based networks), ¶ 174 (online services focusing on broadcast or discovery of content, rather than personal connections), ¶ 175 (online services focused on video or audio consumption), ¶¶ 177-79 (explaining that Facebook's own statements and documents indicate "it understands the distinction between personal social networking services and other services").

## FTC's Supplemental Response to Interrogatory No. 10 (served June 14, 2022)

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Based on discussions and correspondence among counsel, Meta has informed the FTC that Meta intends "Interrogatory No. 10" and "Interrogatory No. 12" to focus on identifying whether a particular activity constitutes "use of PSNS," as referenced in Substitute Amended Complaint (SAC) ¶ 202.[1] *See* Huff 5/10/2022 Letter at 3 (citing SAC ¶ 202; FTC Opp. to Motion to Dismiss at 6-7). Without conceding that it is appropriate for Meta to revise "Interrogatory No. 10" to depart from the originally propounded text such that it effectively propounds a different request, in the spirit of cooperation, the FTC agreed to supplement its responses to "Interrogatory No. 10" and "Interrogatory No. 12" to address the substance of Meta's intended meaning. Matheson 5/13/2022 Letter at 1.

The FTC restates the foregoing General and Specific Objections to Interrogatory No. 10, in relation to Meta's revised "Interrogatory No. 10." The FTC further objects to Meta's revised "Interrogatory No. 10" on grounds that it is vague, ambiguous, overly broad, and unduly burdensome in that it impractically and unnecessarily asks the FTC to enumerate each activity that either constitutes or does not constitute "using personal social networking services," notwithstanding Meta's own recognition—without regard to enumerating an exhaustive list of specific activities—that personal social networking services are distinct, and are a core focus of Facebook Blue and Instagram. SAC ¶¶ 177-79; *infra* at 6-7.

---

[1] *See* SAC ¶ 202 ("Facebook recognizes that Facebook Blue and Instagram are predominantly used as personal social networking services. . . . [E]ven if one were to assume, *arguendo*, that half of the time that U.S. users spend on Facebook Blue and Instagram was not in fact spent using personal social networking services, Facebook would still have maintained a dominant share of the U.S. personal social networking market.").

3

Subject to and without waiving its General and Specific Objections, the FTC responds as follows.

The FTC's SAC describes "personal social networking services" as "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space." SAC ¶ 166. The SAC further identifies distinguishing elements of personal social networking services, namely that they (i) are "built on a social graph that maps the connections between users and their friends, family, and other personal connections," (ii) have "features that many users regularly employ to interact with personal connections and share their personal experiences in a shared social space, including in a one-to-many 'broadcast' format," and (iii) have "features that allow users to find and connect with other users, to make it easier for each user to build and expand their set of personal connections." *Id.* ¶¶ 167-69.

Facebook Blue

Facebook Blue has provided personal social networking services since its launch in 2004. A user's use of personal social networking services on Facebook Blue can entail, *inter alia*, sharing "personal updates, interests, photos, news, and videos" with their friends, family, and other personal connections they have "friended" on Facebook Blue. SAC ¶ 168. Use of personal social networking services on Facebook Blue can also entail, *inter alia*, viewing a friend's posts. *Id.* ¶ 21. Use of personal social networking services can additionally entail, *inter alia*, using features such as "People You May Know" that allow users to find and connect with other users. *Id.* ¶ 169.

Meta recognizes the foregoing types of activities—maintaining personal connections and sharing content and experiences with those connections—as the core use case of Facebook Blue.

4

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████ Meta's top executives have also testified that "friends and family" is the core of Facebook Blue. *E.g.*, Meta CEO Mark Zuckerberg IH at 184 (testifying that "the use cases that we've focused on the most over time are helping you connect . . . with your friends and family"); Meta COO Sheryl Sandberg IH at 46 (testifying that the value Facebook Blue provides to its users is "helping you stay in touch with friends and family and helping you know what's going on with them in a very efficient way"); ██████

████████████████████████████████████

████████████████  ████████████████████

███  █████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████

      Notably, the FTC is not yet aware of Meta documents or testimony that exhaustively list every activity captured in this "core use case," though Meta nonetheless recognizes and discusses its existence. Moreover, Meta recognizes its unmatched position with respect to this use case, and the market power it provides. SAC ¶ 212 (Facebook executive in May 2012: "Why are we hard to compete with. Your friends are here. You have made a big investment in your Facebook network and identity.").

      Meta emphasizes the core "friends and family" sharing use case more for certain "display

5

surfaces" (or "surfaces" for short) within the Facebook Blue app and website and makes those surfaces central to the user experience. When users open the Facebook Blue app, they are presented with the "Home" screen, which includes "Feed" (previously called "News Feed") and "Stories." Feed became the default surface when it was introduced in 2006 and remains the default surface today. Meta's top executives describe Feed as central to Facebook Blue. *E.g.*, Meta CEO Mark Zuckerberg IH at 59, 63 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Meta COO Sheryl Sandberg IH at 48 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Feed shows an algorithmically curated feed of posts from a user's friends, family, and other personal connections, as well as advertisements and other content. Feed also allows users to share pictures, updates, and other content with their friends, family, and other personal connections and to react to and comment on such content from their friends, family, and other personal connections. The Home screen of the Facebook Blue app also includes "Stories" (introduced in 2017) above the Feed when a user opens the app. Stories allows users to view ephemeral posts from and share such posts with their friends, family, and other personal connections.

   Ordinary course evidence indicates that Meta positions Feed, Stories, and Timeline (a sequential collection of a user's posts, updates, and other activity) for use of personal social networking services. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6



Meta's public statements also indicate that Feed is aimed at encouraging connections and sharing between friends and family. In a June 2016 Facebook blog post titled "Building a Better News Feed for You," articulating Meta's "News Feed Values," the Company's *first* listed value is "Friends and Family Come First." *See* https://about.fb.com/news/2016/06/building-a-betternews-feed-for-you/. The post explains that "Facebook was built on the idea of connecting people with their friends and family. That is still the driving principle of News Feed today." *Id.*

Facebook Blue also allows users to use personal social networking services through other activities, such as, *inter alia*: (i) viewing and editing their Facebook profiles, (ii) viewing their friends' profiles, (iii) viewing a user's own Timeline of posts, comments, and other interactions with their friends, family, and other personal connections, (iv) viewing friends' Timelines, (v) using the Search function to find friends, family, and other personal connections and content

from such personal connections, (vi) using "People You May Know" and other tools to find and connect with friends, family, and other personal connections.

Over time, Meta has added additional surfaces to Facebook Blue, such as "Marketplace" (introduced in 2016) and "Dating" (introduced in 2019). At least some of these surfaces appear to be offering different services than personal social networking services, such as online shopping and dating services. The FTC nonetheless is still exploring whether and the extent to which Meta uses these surfaces to foster and/or provide personal social networking services, for example, through shared use of core social assets such as one's identity on Facebook Blue, through integration with other aspects of Facebook Blue, or through sharing with friends and family. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Moreover, the FTC is also examining the extent to which these surfaces may bolster Meta's dominant position in personal social networking services, for example, by increasing barriers to entry into the provision of personal social networking services from network effects and switching costs.

Instagram

Personal social networking services are also a core aspect of Instagram and have been since its launch in 2010. For example, a pre-acquisition investor slide deck dated May 31, 2011, underscored Instagram's founders' plan "to develop a complete social networking service." ▇▇▇▇▇▇▇▇▇▇ A user's use of personal social networking services on Instagram can entail, *inter alia*, sharing "personal updates, interests, photos, news, and videos" with their friends, family, and other personal connections that "follow" the user on Instagram. SAC ¶ 168. A user's use of personal social networking services on Instagram can also entail, *inter alia*, viewing posts from friends, family, and other personal connections they have "followed." *Id.* ¶ 21. A user's use of personal social networking services on Instagram can additionally entail,

8

*inter alia*, using features such as "Discover people" that allow users to find and connect with other users. *Id.* ¶ 169.

Ordinary course documents confirm the centrality of the core friends and family sharing use case on Instagram. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; https://about.instagram.com/features ("Create and share with your friends . . . . Our features help you express yourself and connect with the people you love.").

Like Facebook Blue, when a user opens Instagram, they are presented with the Home screen, which includes "Feed" and "Stories." Since its launch in 2010, "Instagram Feed" (or "Feed" for short) was and remains the default surface on Instagram. Feed shows an algorithmically curated feed of content from friends, family, and other accounts that a user follows. Meta also describes Instagram as targeting a core "friends and family" use case. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Additionally, like Facebook Blue, Instagram's Home screen includes a "Stories" surface (introduced in 2016) which is displayed above the Feed and which allows users to view ephemeral posts from their friends, family, and other personal connections and accounts they follow.

Instagram also allows users to use personal social networking services through other activities, such as, *inter alia*: (i) viewing and editing their Instagram profiles, (ii) viewing their friends' profiles, (iii) viewing a user's own posts, (iv) viewing a timeline or other collection of posts from a users' friends, family, and other personal connections, (v) using the Search function to find friends, family, and other personal connections, (vi) using "Discover people" and other

tools to find and connect with friends, family, and other personal connections.

Meta has also added other surfaces to Instagram such as Instagram Shops (released in 2020). At least some of these surfaces appear to be offering different services than personal social networking services, such as online shopping. The FTC nonetheless is still exploring whether and the extent to which Meta uses these surfaces to foster and/or provide personal social networking services, for example, through shared use of core social assets such as one's identity on Instagram, through integration with other aspects of Instagram, or through sharing with friends and family. Moreover, the FTC is also examining the extent to which these surfaces may bolster Meta's dominant position in personal social networking services, for example, by increasing barriers to entry into the provision of personal social networking services from network effects and switching costs.

Messenger

In 2008, Facebook launched an instant messaging platform on its web application called "Facebook Chat." Users could use the instant messaging platform to communicate directly with other users rather than broadcast posts. In 2011, Facebook launched "Facebook Messenger," a standalone mobile messaging application. While the application is separate from the Facebook Blue mobile application, Facebook messenger integrates a user's Facebook Blue "friend list" and their messaging activity on Facebook Chat into the messaging application.

Facebook Messenger provides mobile messaging services. SAC ¶ 19. While Meta's leadership recognized that mobile messaging was a path for a competitive threat to enter the personal social networking services market, *id.* ¶¶ 107-112, Meta also recognized that mobile messaging services are distinct from personal social networking services, *id.* ¶ 172. Meta CEO Mark Zuckerberg described this distinction in a 2019 post, calling personal social networking

providers like Facebook Blue "the digital equivalent[] of the town square," and contrasting the private communication offered by mobile messaging apps as "the digital equivalent of the living room." *Id.* Thus, as alleged in the SAC, Messenger's mobile messaging services are distinct from and not reasonably interchangeable with personal social networking services. *Id.*

Meta integrates Messenger with personal social networking services Meta offers through Facebook Blue and Instagram. For example, Meta provides functionality for users to cross-post Stories between Facebook Blue, Instagram, and Messenger. Additionally, Messenger allows users to view and interact with Stories from their Facebook Blue friends. The FTC is still exploring whether and the extent to which Meta uses these integrations to provide Facebook Blue and Instagram personal social networking services through Messenger. The FTC is also examining the extent to which these integrations may bolster Meta's dominant position in personal social networking services, for example, by increasing barriers to entry into the provision of personal social networking services from network effects and switching costs.

WhatsApp

WhatsApp provides mobile messaging services. SAC ¶19. As noted above for Messenger, while Meta's leadership recognized that mobile messaging was a path for a competitive threat to enter the personal social networking services market, *id.* ¶¶ 107-112, Meta also recognized that mobile messaging services are distinct from personal social networking services, *id.* ¶ 172. Thus, as alleged in the SAC, WhatsApp's mobile messaging services are distinct from and not reasonably interchangeable with personal social networking services. *Id.*

Additionally, the FTC is exploring whether and to what extent Meta has integrated WhatsApp with personal social networking services Meta offers through Facebook Blue and Instagram. For example, Meta provides functionality for users to cross-post between Facebook

11

Blue, Instagram, and WhatsApp. The FTC is also exploring the degree to which WhatsApp integrates with Facebook Blue's and Instagram's social graphs through the ███████ ████. *See, e.g.,* ██████████████████████████████████████████ ████████████████████████████████████████████ ████████████████. The FTC is still exploring whether and the extent to which Meta uses these integrations to provide Facebook Blue and Instagram personal social networking services through WhatsApp. The FTC is also examining the extent to which these integrations may bolster Meta's dominant position in personal social networking services, for example, by increasing barriers to entry into the provision of personal social networking services from network effects and switching costs.