**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION,

        Plaintiff,

        v.

META PLATFORMS, INC.,

        Defendant.

Case No. 1:20-cv-03590-JEB

**PUBLIC REDACTED
VERSION OF  DOCUMENT
FILED UNDER SEAL**

**MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF 2012 AND 2014 FTC MEMORANDA**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.    The FTC Is Withholding Critically Relevant Documents Prepared in 2012
      and 2014 About the Acquisitions of Instagram and WhatsApp .......................... 4

      A.    The 2012 Instagram Documents ........................................................... 4

      B.    The 2014 WhatsApp Documents ........................................................... 5

      C.    Meta Seeks the Documents; the FTC Categorically Refuses To
            Produce Them ..................................................................................... 6

II.   The 2012 Instagram Documents and 2014 WhatsApp Documents Are
      Critically Relevant and Should Be Produced ..................................................... 8

III.  The FTC Memoranda Are Not Protected by Any Applicable Privilege or
      Protection ...................................................................................................... 11

      A.    The Deliberative Process Privilege Does Not Shield the FTC
            Memoranda from Discovery ............................................................... 12

            1.    The Deliberative Process Privilege Does Not Apply to the
                  Instagram Memoranda ............................................................. 12

            2.    The Deliberative Process Privilege Does Not Apply to
                  Factual Materials Contained in the FTC Memoranda ................... 13

            3.    The FTC Cannot Invoke the Deliberative Process Privilege
                  Because Its Decision-Making Process Is Directly at Issue ............. 14

            4.    The Deliberative Process Privilege Is a Qualified Privilege
                  and Does Not Protect the FTC Memoranda ................................. 15

            5.    The FTC Waived Any Claim of Privilege .................................... 20

      B.    The Work Product Doctrine Does Not Shield the FTC Memoranda
            from Discovery ................................................................................. 20

            1.    The Bureau of Economics Memorandum Is Not Work
                  Product ................................................................................... 20

            2.    Meta Has a Substantial Need for the Documents ....................... 22

      C.    The Attorney-Client Privilege Does Not Apply ..................................... 26

      D.    The Investigatory File Privilege Does Not Apply .................................. 27

IV.   The FTC Waived Any Privilege by Voluntarily Providing the Memoranda
      to House Judiciary Committee Members and Staff ...........................................................28

CONCLUSION ...........................................................................................................................30

# TABLE OF AUTHORITIES[*]

Page

**CASES**

*Alexander v. FBI*, 192 F.R.D. 42 (D.D.C. 2000) ..........................................................20

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60
    (D.D.C. 2014) ..........................................................................................................14

*Amchem Prods., Inc. v. GAF Corp.*, 64 F.R.D. 550 (N.D. Ga. 1974) ...........................19

*Anthem, Inc. Data Breach Litig.*, *In re*, 236 F. Supp. 3d 150 (D.D.C. 2017)...............27

\* *Bird v. Penn Cent. Co.*, 61 F.R.D. 43 (E.D. Pa. 1973) ...........................................24, 25

*Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36 (D.D.C. 2017).................................19

*Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980)..............................................26

\* *Brock v. Weiser*, 1987 WL 12686 (N.D. Ill. June 15, 1987)........................................15

*Cal. State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775
    (N.D. Cal. July 23, 2008)...................................................................................17, 19

*Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336
    (D.D.C. 2018) ..........................................................................................................12

*Chisler v. Johnston*, 796 F. Supp. 2d 632 (W.D. Pa. 2011)...........................................17

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Commerce*,
    2020 WL 4732095 (D.D.C. Aug. 14, 2020) ......................................................28, 29

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)............26

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives
    v. Lynch*, 156 F. Supp. 3d 101 (D.D.C. 2016) ........................................... 18-19

*Doe 2 v. Esper*, 2019 WL 4394842 (D.D.C. Sept. 13, 2019) ......................................14

*EPA v. Mink*, 410 U.S. 73 (1973) ........................................................................ 13-14

*Fed. Home Loan Mortg. Corp. v. Deloitte & Touche, LLP*,
    2015 WL 12766388 (S.D. Fla. Aug. 4, 2015)...................................................18

*Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
    2009 WL 10708594 (D.D.C. June 9, 2009)......................................................28

---

[*] Authorities principally relied upon are marked with an asterisk.

*First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000)....................................16, 29, 30

*FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142 (D.C. Cir. 2015) ..............................22

*FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308
(D.D.C. Jan. 11, 2022) ...........................................................................................................25

*FTC v. Lukens Steel Co.*, 444 F. Supp. 803 (D.D.C. 1977) ..........................................................8

*FTC v. Match Grp., Inc.*, No. 1:22-mc-00054-RJL, Dkt. No. 11
(D.D.C. June 8, 2022) ............................................................................................................23

*FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) ......................................................9-10

*FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522 (E.D. Pa. 2020)........................................10

*FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156 (9th Cir. 1984)..................................................20

*Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010)............................................................11

*Gradeless v. Am. Mut. Share Ins. Corp.*, 2011 WL 221895
(S.D. Ind. Jan. 19, 2011) .......................................................................................................19

*Howard v. Fowler Bros., Inc.*, 2011 WL 3438407 (W.D. Ky. Aug. 5, 2011) ..............................24

*Interstate Fire & Cas. Co. v. Roman Cath. Church of Diocese of Phoenix*,
2012 WL 12867974 (D. Ariz. Jan. 19, 2012) .......................................................................23

*Janicker ex rel. Janicker v. George Washington Univ.*, 94 F.R.D. 648
(D.D.C. 1982) ...................................................................................................................20, 21

*Johnson v. Wash. Metro. Area Transit Auth.*, 1990 WL 113877
(D.D.C. July 26, 1990)...........................................................................................................23

* *Jud. Watch, Inc. v. U.S. Dep't of State*, 2019 WL 2452325
(D.D.C. June 12, 2019) .....................................................................................................22, 24

*Kockums Indus. Ltd. v. Salem Equip., Inc.*, 561 F. Supp. 168 (D. Or. 1983) ..............................25

*Le v. Diligence, Inc.*, 312 F.R.D. 245 (D. Mass. 2015) ..............................................................23

*Leamon v. KBR, Inc.*, 2011 WL 13340584 (S.D. Tex. Nov. 10, 2011) ........................................23

*Lundy v. Interfirst Corp.*, 105 F.R.D. 499 (D.D.C. 1985) ......................................................12, 18

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008)..............................................17

*Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., In re*, 274 F.R.D. 106
(S.D.N.Y. 2011)......................................................................................................................18

*Miller v. Holzmann*, 2007 WL 779393 (D.D.C. Mar. 8, 2007) ....................................27

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ............................................14

*Murphy v. Dep't of Army*, 613 F.2d 1151 (D.C. Cir. 1979).................................30

*NAACP v. Bureau of Census*, 401 F. Supp. 3d 608 (D. Md. 2019) ..........................19

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)........................14

*Playboy Enters., Inc. v. Dep't of Just.*, 677 F.2d 931 (D.C. Cir. 1982)........................14

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir. 2010) ..............14

*Rafferty v. KeyPoint Gov't Sols., Inc.*, 2018 WL 3059600
   (D. Idaho June 19, 2018)............................................................21

*Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827 (3d Cir. 1995)....................12

*Rockwell Int'l Corp. v. U.S. Dep't of Just.*, 235 F.3d 598 (D.C. Cir. 2001)...........29, 30

*Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983).................................26

*Sealed Case, In re*:

   676 F.2d 793 (D.C. Cir. 1982) ....................................................24

   * 121 F.3d 729 (D.C. Cir. 1997) ...............................................16, 28

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009) ............................8

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971)................................16

*Subpoena Duces Tecum Served on Off. of Comptroller of Currency, In re*,
   145 F.3d 1422 (D.C. Cir.), *on reh'g in part*, 156 F.3d 1279
   (D.C. Cir. 1998) ....................................................................14

*Subpoenas Duces Tecum, In re*, 738 F.2d 1367 (D.C. Cir. 1984) ........................28, 30

*Swartwood v. Cty. of San Diego*, 2013 WL 6670545 (S.D. Cal. Dec. 18, 2013) ..................16, 17

*Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890
   (D.D.C. Dec. 16, 2005)...........................................................24, 25, 27

*United States v. AT&T Co.*:

   86 F.R.D. 603 (D.D.C. 1979)....................................................24, 25

   498 F. Supp. 353 (D.D.C. 1980) ....................................................9

*United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018),
  *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019) ............................................................10

*United States v. Baker Hughes Inc.*, 908 F.2d 981 (D.C. Cir. 1990) ................................8

*United States v. Gates*, 35 F.R.D. 524 (D. Colo. 1964) ........................................18

*United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121 (D.D.C. 2012) ..............................21

*United States v. Kattar*, 840 F.2d 118 (1st Cir. 1988) ........................................9

*United States v. Legal Servs. for New York City*, 249 F.3d 1077 (D.C. Cir. 2001) ......................11

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ................................8, 10

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1
  (D.D.C. 2013) ............................................................11

* *United States v. Philip Morris Inc.*, 212 F.R.D. 421 (D.D.C. 2002) ............................29

*United States v. Warren*, 42 F.3d 647 (D.C. Cir. 1994) ........................................9

*U.S. ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419 (D.D.C. 2014) ............................23

*Veiga, In re*, 746 F. Supp. 2d 27 (D.D.C. 2010) ........................................28

*Vitamins Antitrust Litig., In re*, 211 F.R.D. 1 (D.D.C. 2002) ........................................23

*Warren v. Bastyr Univ.*, 2013 WL 2181762 (W.D. Wash. May 17, 2013) ............................21

*Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*,
  2020 WL 527987 (M.D. Pa. Jan. 31, 2020) ........................................19

## STATUTES AND RULES

Clayton Act, 15 U.S.C. § 12 *et seq.* ............................................................10

  § 7, 15 U.S.C. § 18 ............................................................10

  § 7A, 15 U.S.C. § 18a ............................................................25

  § 7A(d)(1), 15 U.S.C. § 18a(d)(1) ............................................................4

  § 7A(e)(1)(A), 15 U.S.C. § 18a(e)(1)(A) ............................................................4

Endangered Species Act of 1973, 16 U.S.C. § 1531 *et seq.* ........................................14

Freedom of Information Act, 5 U.S.C. § 552 ............................................12, 16, 22, 24, 26, 29, 30

    5 U.S.C. § 552(b) .............................................................................................................29

    5 U.S.C. § 552(d) .............................................................................................................29

Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L. No. 94-435,
    90 Stat. 1383 ........................................................................................4, 5, 6, 9, 10, 25, 27

Sherman Act, 15 U.S.C. § 1 *et seq.*:

    § 2, 15 U.S.C. § 2 .............................................................................................8, 9, 10, 11

Fed. R. Civ. P. 34 ............................................................................................................................6

Fed. R. Evid. 801(d)(2) ...................................................................................................................9

**OTHER MATERIALS**

5 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2020)......................................8

Fed. Trade Comm'n, *2016 Open Government Plan* (Sept. 15, 2016),
    https://www.ftc.gov/system/files/attachments/open-government/
    final_opengov_plan2016.pdf .........................................................................................13

Ltr. from Daniel J. Matheson (FTC Counsel) to Kevin B. Huff (Meta Counsel)
    (May 12, 2022).......................................................................................................5, 6, 7, 28

Ltr. from Daniel J. Matheson (FTC Counsel) to Kevin B. Huff (Meta Counsel)
    4 (May 13, 2022)..............................................................................................................5

Ltr. from Dione J. Stearns (Assistant General Counsel, FTC) to Andreas L.
    Booher (Apr. 2, 2015).....................................................................................................26

Ltr. from April J. Tabor (Acting Secretary of the Commission) to Reps. Jerold
    Nadler, et al. (House Judiciary Comm.) (Oct. 29, 2019)..................................................29

Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the
    Comm. on the Judiciary, Investigation of Competition in Digital
    Markets:  Majority Staff Report and Recommendations, 116th Cong.
    (Oct. 2020) ........................................................................................................................7

The alleged "exclusionary conduct" in this unprecedented monopolization case is two acquisitions made by Meta Platforms, Inc. ("Meta").  The Federal Trade Commission ("FTC" or "Commission") reviewed and cleared both of these acquisitions, in 2012 (Instagram) and 2014 (WhatsApp).  Meta is seeking the Court's assistance because hiding what the agency found and concluded in 2012 and 2014 is unsupported as a matter of law and simply unfair.  That the FTC finds it necessary to cover up its own contemporaneous findings on issues that it now seeks to litigate, a decade after the fact, speaks volumes about why its case against Meta has no merit.

The FTC has admitted that the eight documents at issue include extensive memoranda, from staff attorneys as well as from economists, recounting as of 2012 the relevant facts of competition (*i.e.*, the relevant antitrust market) and the likely effect on competition and consumers from the then-proposed acquisition of Instagram.  Indeed, it cannot contend otherwise, as this is standard agency procedure.  *See* Ex. B, Royall Decl. ¶ 8.  The FTC similarly allowed the WhatsApp acquisition to close, but without even making a second request for information.  The FTC admits that it has documents concerning this acquisition too.  Both the Instagram and the WhatsApp documents are almost certain to reveal that the FTC determined that each acquisition was unlikely to lessen competition or harm consumers.  The central relevance – indeed, possibly dispositive significance – of these documents cannot seriously be disputed.

There are no other sources for this critical evidence.  Documents are no longer available, including at least some of the documents collected by the FTC; the memories of witnesses, including witnesses who spoke to the FTC, have undoubtedly become less clear if not entirely faded.  Allowing only the FTC to have access to this contemporaneous evidence is unfair.

The FTC voluntarily furnished these pivotal documents to Members of Congress and their staff (which at the time included the current FTC chair) for use in the House Judiciary

Committee's 2019 investigation of digital markets in general and these two transactions in particular. The ensuing committee report references the FTC's voluntary production. But when Meta requested these documents, the FTC stonewalled, claiming unspecified "privilege." In meet-and-confer sessions with Meta counsel, the FTC relied only on "deliberative process." But it now asserts a grab bag of privileges, none of which is applicable and all of which were waived even if applicable.

*The "deliberative process" privilege does not immunize the 2012 and 2014 documents*. The FTC's internal rules provide that the "deliberative process" privilege should not be claimed after ten years have elapsed. As of this summer, ten years will have elapsed since the Instagram acquisition closed. The FTC itself thus recognizes that agency "candor" cannot be chilled by disclosure of these aged materials. And even if applicable, the "deliberative process" privilege cannot shield relevant facts from discovery, cannot shield the FTC's analyses and reasons for clearing the deal where Meta's equitable defenses place the agency's conduct at issue, and is in any case qualified and overcome by Meta's substantial need. That need is compelling here, given the FTC's extraordinary decision to change its view of these acquisitions, ten and eight years after the fact, and the loss of evidence resulting from its unprecedented delay.

*The "work product doctrine" does not immunize the 2012 and 2014 documents*. The "work product doctrine" is inapplicable here. The documents were in some instances prepared by economists not acting at the direction of lawyers, and all of them likely contain core facts as well as FTC admissions. In any case, this doctrine is also qualified and overcome by the substantial need for production of contemporaneous evidence that is not available from any other source.

*The "attorney-client" privilege does not immunize the 2012 and 2014 documents*. In discussions with Meta, the FTC did not rely on this privilege – and for good reason. No

2

attorney-client privilege can be asserted as to staff descriptions and analyses of third-party information, which is what the documents at issue contain.  The attorney-client privilege simply does not apply here, and Meta is aware of no authority supporting the FTC's belated assertion of that privilege.

　　　*No "investigatory file" privilege immunizes the 2012 and 2014 documents*.  The FTC cannot shield its work behind the cloak of an "investigatory file privilege."  If there were such a broad and sweeping privilege, no internal government documents would ever be subject to discovery.  The FTC cannot shoehorn its critical documents into this claimed privilege, which has been applied only in limited circumstances not remotely analogous to those presented here.

　　　*Any claim of privilege was waived when the FTC chose to voluntarily share the documents with House Judiciary Committee members and staff*.  In any event, the FTC cannot assert any of these privileges because it waived them by voluntarily sharing the documents with a third party.  That voluntary circulation was accompanied by no enforceable confidentiality obligation and eviscerates any claim of privilege.

　　　The FTC's strenuous efforts to prevent its own 2012 and 2014 compilations of relevant facts and conclusions from seeing the light of day – indeed, from being reviewed by the Court as part of its consideration of this motion – are strongly indicative of the need for these documents to be produced so that this case can be litigated fairly and fully.  That evidence is highly likely to show that there is *no* "Personal Social Networking Services" market, that competition in 2012 and 2014 was robust and involved many firms the agency now wants to exclude from consideration, and that the facts available at the time did *not* show that the subject transactions were likely to harm competition and consumers in any way.  In short, they are likely to prove that the FTC has no case.  If the Court has doubt about any of this, it should review the documents *in camera* – something the agency tellingly opposes.

I.     **The FTC Is Withholding Critically Relevant Documents Prepared in 2012 and 2014 About the Acquisitions of Instagram and WhatsApp**

A.     **The 2012 Instagram Documents**

On April 9, 2012, Meta announced an agreement to acquire Instagram for approximately $1 billion.  On April 16, 2012, Meta filed with the federal government a required pre-merger notification about the acquisition under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR").  The FTC was required to review, and did review, this proposed acquisition to "determine" whether it would, "if consummated, violate the antitrust laws."  15 U.S.C. § 18a(d)(1).

Under the FTC's standard procedures, the FTC's pre-merger office first reviewed the filing.  On May 16, 2012, the FTC issued a second request, "requir[ing] the submission of additional information or documentary material."  *Id.* § 18a(e)(1)(A).  The FTC has confirmed to Meta that, prior to issuing the second request, staff from the FTC's Bureau of Competition and staff from its Bureau of Economics each prepared a "merger screening memorandum."  The Bureau of Competition also prepared a memorandum requesting authorization to use compulsory process and a memorandum regarding the issuance of a civil investigative demand to a third party.  As a matter of standard agency procedure, these memoranda contain *facts* relating to the FTC's review as well as a request for action from the Commission and the reasons for that request.  *See* Royall Decl. ¶¶ 4-6.

The FTC then conducted an extensive investigation, requiring production of a significant volume of documents from Meta and others, and interviews of Meta witnesses (including Mark Zuckerberg and Sheryl Sandberg), Instagram witnesses (founders Kevin Systrom and Mike Krieger), as well as third parties.  The FTC interviewed or asked to interview representatives from more than two dozen third-party companies as part of its review of the Instagram transaction.  Meta and Instagram each produced approximately 10,000 documents to the FTC.

The FTC has conceded that at least some of the documents it obtained in 2012 from third parties are no longer available.  *See* Ex. C, Ltr. from Daniel J. Matheson (FTC Counsel) to Kevin B. Huff (Meta Counsel) at 4 (May 13, 2022).

The FTC's Bureau of Competition and its Bureau of Economics each prepared a memorandum to the Commissioners.  *See* Ex. D, Ltr. from Daniel J. Matheson (FTC Counsel) to Kevin B. Huff (Meta Counsel) at 9 (May 12, 2022) ("May 12 Matheson Ltr.").  As a matter of standard practice, these memoranda set forth the facts the FTC had developed in its investigation. *See* Royall Decl. ¶ 8.  Of necessity, these facts included information about the market (or markets) in which Facebook and Instagram competed, barriers to entry (if any) in those markets, and whether Facebook's acquisition of Instagram would be expected to harm competition or consumers.  *See id*.  The memoranda also included recommendations to the Commission on whether these facts supported a challenge to the acquisition under federal antitrust law.  *See id*. The economists' memorandum likewise discussed the facts relevant to market definition and market power.  *See id*.  (If there is any dispute on these points, Meta urges the Court to review the memoranda *in camera* as part of its consideration of the instant motion.)

On August 22, 2012, after receipt of these memoranda, the FTC voted 5-0 to close its investigation of the Instagram transaction without challenging it or imposing conditions to closing.  After the acquisition closed on September 6, 2012, Meta incorporated and enhanced Instagram as a Meta product, investing significant resources to improve and grow Instagram from a reported 27 million registered users before the acquisition to more than a billion monthly active users worldwide.

### B.   The 2014 WhatsApp Documents

On February 19, 2014, Meta announced an agreement to acquire WhatsApp.  On March 13, 2014, Meta filed the required HSR pre-merger notification.

Here, as with Instagram, the FTC conducted an investigation that included interviews of nonparty companies. The FTC has confirmed to Meta that the FTC created documents relating to the WhatsApp HSR review, including a document that appears to consist of notes prepared by staff from the Bureau of Competition and a note assigning responsibility for the file to the appropriate division within the FTC. *See* May 12 Matheson Ltr. at 9.

The FTC allowed the transaction to close in 2014 without a second request and without challenge or conditions. In reliance on that regulatory clearance, Meta then made WhatsApp free for all consumers, and incorporated and enhanced WhatsApp as a Meta product, investing significant resources to improve and grow WhatsApp, which now has more than two billion monthly active users worldwide.

### C.     Meta Seeks the Documents; the FTC Categorically Refuses To Produce Them

On March 9, 2022, Meta requested under Federal Rule of Civil Procedure 34 that the FTC produce the documents now at issue, among others. The FTC asserted boilerplate objections to this request on April 8, 2022, claiming that the information was irrelevant, that discovery of the documents (just eight documents, as the FTC later admitted) would not be proportional to the needs of the case, and that it would be "unduly burdensome." *See* FTC's Objections and Responses to Request for Production No. 1 (reproduced pursuant to Local Civil Rule 5.2(b) and 26.2(d) as Exhibit A) (attached)). The FTC also asserted generically that the information sought is protected by privileges.

The parties met and conferred on April 19, 2022 and May 6, 2022, and exchanged follow-up correspondence on April 27, 2022, May 10, 2022, May 12, 2022, and May 13, 2022. During these communications, the FTC confirmed that it possessed documents regarding the Instagram and WhatsApp investigations. Specifically, the FTC confirmed the existence of the

following documents (among others), which will be referred to collectively as the "FTC memoranda":

> Instagram:  (1) Bureau of Competition memorandum to the Commission requesting authorization of the use of compulsory process; (2) "Merger Screening Memoranda" prepared by the Bureau of Competition to the Merger Screening Committee, later provided to the Commission as an attachment to the compulsory process memorandum; (3) "Merger Screening Memoranda" prepared by the Bureau of Economics to the Merger Screening Committee, later provided to the Commission as an attachment to the compulsory process memorandum; (4) "Bureau of Competition . . . memorandum to the Commission with respect to closing the investigation"; (5) "Bureau of Economics . . . memorandum to the Commission with respect to closing the investigation"; and (6) resolution authorizing the use of compulsory process. May 12 Matheson Ltr. at 8-10.

> WhatsApp:  (1) A document that "appears to consist of notes prepared by Bureau of Competition personnel"; and (2) a "note assigning responsibility for the file to the appropriate merger division."  *Id*. at 9.

The FTC also informed Meta that it had voluntarily provided *all* of the above documents to the Antitrust Subcommittee of the House Judiciary Committee in 2019.  *Id*. at 9-10.  At the time, the Subcommittee was investigating the FTC's investigations of digital markets, including the Instagram and WhatsApp acquisitions.  The subcommittee did not issue a subpoena or other compulsory process.  *See* Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, Investigation of Competition in Digital Markets:  Majority Staff Report and Recommendations, 116th Cong. 28 (Oct. 2020).

The FTC initially resisted production of the FTC memoranda to Meta on grounds of "deliberative process privilege."  It refused to say whether it asserted other privileges.  But it now asserts three additional privileges or protections:  attorney-client, investigatory file, and attorney work product.  Ex. E, Vedova Decl. ¶¶ 17-30.

7

## II.     The 2012 Instagram Documents and 2014 WhatsApp Documents Are Critically Relevant and Should Be Produced

To prevail in this antitrust case, the FTC must prove (among other things) that (1) Meta possessed monopoly power in a relevant antitrust market, and (2) Meta's acquisitions of Instagram and WhatsApp harmed competition and consumers.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 50, 58 (D.C. Cir. 2001) (en banc) (per curiam).  The federal rules authorize broad discovery, particularly in antitrust cases.  *See FTC v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977).  The FTC is no more or less entitled to avoid discovery of potentially relevant evidence than any other litigant.  *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) ("Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure.  It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action.").

The FTC memoranda are obviously relevant.  Prepared at a time when significant documents were available, and witness memories were fresh, they may be the *best* available evidence bearing on three of the most fundamental issues in this Section 2 case:  What are the relevant market or markets for purposes of assessing the effect on competition and consumers of the Instagram and WhatsApp acquisitions?  What other entities competed in those markets?  And what was the likelihood of harm to consumers if the acquisitions were consummated?

The relevant market or markets, and the likely effect on consumers, must be assessed *at the time of the acquisition*.  *See United States v. Baker Hughes Inc.*, 908 F.2d 981, 989 (D.C. Cir. 1990) (issue whether acquisition was "likely to substantially lessen competition"); *see also* 5 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1205a (4th ed. 2020) (acquisition must be evaluated "on the basis of evidence of the situation existing at the time of the acquisition").

The government has never sought to prosecute a Section 2 case like this one, based on long-concluded (and cleared) acquisitions.  Thus, the FTC has placed Meta in the difficult position of having to defend itself by developing facts as to the actual state of competition in 2012 and 2014.  The FTC memoranda directly address these issues; most important, they are a compendium of facts from key market participants that are likely unavailable from any other source, as well as admissions from the agency as to the import of those facts.  *See* Fed. R. Evid. 801(d)(2); *United States v. AT&T Co.*, 498 F. Supp. 353, 356 (D.D.C. 1980) (statements made by agency officials admissible as party admissions in antitrust case); *see also United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994) (statement the government adopted was a party admission); *United States v. Kattar*, 840 F.2d 118, 131 (1st Cir. 1988) (same).

Meta has already been informed by third parties that, for obvious reasons, ten-year-old (or older) documents have not been kept.  The FTC has conceded that some of the documents it collected in 2012 are no longer available.  Equally obvious is the fact that witness memories are affected by the passage of time, and it is beyond argument that the witnesses who provided information to the FTC in 2012 and 2014 did so at a time when relevant issues were fresher in mind than they are now.

The facts and admissions contained in the FTC memoranda are discoverable, indeed critically relevant, for all of the following reasons:

*The memoranda necessarily contain facts and admissions regarding the actual state of competition in 2012 and 2014, and the relevant market or markets affected by the Instagram and WhatsApp transactions*.  To discharge its statutory obligation, the FTC necessarily had to evaluate the state of competition – who competed with who, and on what basis?  Fundamental to any HSR inquiry is, first and perhaps foremost, determination of the relevant antitrust market or markets that may be affected by the transaction.  *See*, *e.g.*, *FTC v. RAG-Stiftung*, 436 F. Supp. 3d

278, 292 (D.D.C. 2020) (denying relief where "FTC's proposed market [is] overbroad and inconsistent with the commercial realities of the industry"); *see also FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 556-57 (E.D. Pa. 2020) (declining to enjoin merger where government's effort to prove relevant market improperly relied on "conclusory assertions" and "rank speculation").

It is certain that the FTC undertook this inquiry in 2012 and 2014; it is likewise highly probable that it did *not* find any facts supporting the existence of the fictive "PSNS" market that it invented for purposes of this belated claim. The underlying facts contained in the memoranda are highly relevant and, given the passage of time, are unlikely to be found in any other place. The agency's *conclusions* from these facts, its determination of what they show as to the relevant market or markets, are also powerful admissions of a party opponent.

*The memoranda necessarily contain facts and admissions regarding the likely effect on competition and consumers of the Instagram and WhatsApp transactions*. Under Section 7 of the Clayton Act, the standard of review for HSR purposes, the agency was required to find facts, and draw conclusions, as to the likely effect on competition from the acquisitions, and particularly whether consumers were likely to be harmed in a tangible, concrete way – for example, by a price increase. *See*, *e.g.*, *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 214 (D.D.C. 2018) (rejecting "speculative" evidence of likely harm and explaining that it fell "far short of persuasively showing that this merger threatens to harm competition") (cleaned up), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). For the instant Section 2 case, at least the same standard applies. *See*, *e.g.*, *Microsoft*, 253 F.3d at 58-59 (government must show conduct had "anticompetitive effect" that harmed the competitive process and consumers) (emphasis omitted).

The agency necessarily did that in 2012 when it cleared the Instagram transaction 5-0 and in 2014 when it did not even issue a second request for the WhatsApp transaction. And, because it

cleared the transactions, it is highly likely that it *did not* find facts supporting a claim that harm to consumers was likely from either acquisition.  Both the underlying facts and the FTC's conclusions (admissions) are centrally relevant and highly probative, as well as unavailable from any other source at this late date.

*The memoranda necessarily contain facts and admissions relevant to Meta's equitable defenses*.  In addition to going directly to the fundamental elements of the agency's Section 2 case, the documents are directly at issue in connection with Meta's equitable defenses.  Where, as here, a government agency seeks to dismantle a unitary company, ten and eight years after reviewing and clearing the transactions that created it, after billions of dollars have been invested in reliance on that clearance, the government's memoranda detailing the facts found and conclusions drawn are squarely at issue in the defenses of laches, estoppel, and waiver.  *See*, *e.g.*, *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 12-13 (D.D.C. 2013) ("Estoppel is an equitable doctrine invoked to avoid injustice by precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct.").  That evidence will certainly call into question the availability of the breakup remedy that the FTC has demanded.  *See*, *e.g.*, *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235-36 (8th Cir. 2010) (equities weighed "overwhelmingly" against divestiture of consummated merger "closed . . . with no opposition by the government's antitrust enforcers").

## III.    The FTC Memoranda Are Not Protected by Any Applicable Privilege or Protection

It is the FTC's burden to establish that privilege applies to each of the eight documents it is withholding.  *See United States v. Legal Servs. for New York City*, 249 F.3d 1077, 1081 (D.C. Cir. 2001).  It has not done so.

11

A.      **The Deliberative Process Privilege Does Not Shield the FTC Memoranda from Discovery**

The "deliberative-process privilege" can apply to "advisory opinions, recommendations and deliberations" to "protect[] the decision making processes of government agencies." *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 352 (D.D.C. 2018).  The FTC claims that ███████████████████████████████████████████████████████████████.  *See* Vedova Decl. ¶ 20.  Yet the FTC's own internal policies provide that no such privilege should be claimed after ten years – even to exempt a document from Freedom of Information Act ("FOIA") disclosure, which would release the memoranda to the general public.  The Instagram investigation closed in August 2012 (*infra* Part III.A.1).  The privilege, where it can be claimed, does not even apply to factual material (*infra* Part III.A.2) or agency decision-making called into question by Meta's affirmative defenses (*infra* Part III.A.3).  Even where it applies, it is a "qualified" privilege to be "narrowly construed":  the court may order disclosure of all such materials upon "balanc[ing] the parties' interests." *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995).  Here, the balance strongly favors disclosure of this critically relevant information (*infra* Part III.A.4).  As this Court has explained, the privilege "obstruct[s] the search for truth," and its "benefits are indirect and speculative," so it must be "strictly construed." *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 504 (D.D.C. 1985).  Finally, it was waived (*infra* Part IV).

1.      The Deliberative Process Privilege Does Not Apply to the Instagram Memoranda

Recognizing that shrouding agency decision-making is inconsistent with open government, the FTC has an internal policy that, even in the FOIA context, where courts have been most protective, the deliberative process privilege should not be claimed after ten years:

> In the absence of staff articulating a reasonably foreseeable harm that a disclosure could create, FOIA staff will release the document to the requester.  Further, for many years, when processing FOIA requests, the FTC has worked under the presumption that most information protected by the Deliberative Process Privilege (Exemption 5) should be released if the file has been closed for more than ten years unless staff can articulate a compelling reason for withholding the information.

FTC, *2016 Open Government Plan* 11 (Sept. 15, 2016), https://www.ftc.gov/system/files/

attachments/open-government/final_opengov_plan2016.pdf.  We are now ten years after the

Instagram acquisition was announced and carefully reviewed by the FTC.  The agency voted 5-0

to close the investigation without enforcement action on August 22, 2012, so the file will have

been closed for ten years by the end of this summer.  No "compelling" reason for withholding

has even been suggested.  In these circumstances, under the agency's own construction of the

deliberative process privilege, it cannot be invoked, at least as to the documents relating to

Instagram.

Moreover, because the FTC has "for many years" operated under the presumption that

documents "should be released" after ten years, the FTC cannot credibly argue that disclosure

would chill the candid speech needed for optimum government decision-making.  The staff who

created both the Instagram and the WhatsApp memoranda did so under the assumption that they

would be disclosed to the public ten years later.  All of the memoranda relating to the Instagram

transaction, at minimum, must therefore be produced without redaction.

2.    <u>The Deliberative Process Privilege Does Not Apply to Factual Materials Contained in the FTC Memoranda</u>

As a matter of standard agency practice, the Bureau of Competition and the Bureau of

Economics must describe in their memoranda the material facts that were found during the

investigation.  *See* Royall Decl. ¶ 8.  It is black-letter law in this Circuit that the deliberative

process privilege does not apply at all to purely factual material.  *See EPA v. Mink*, 410 U.S. 73,

13

87-88 (1973); *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007).  The FTC's conclusory

statement ███████████████████████████████████████████████

███████████████, Vedova Decl. ¶ 19, does not amount to the "detailed justification"

necessary to withhold the material.  *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 21 F.

Supp. 3d 60, 83 (D.D.C. 2014).  At the very least, the Court should review the FTC memoranda

*in camera* and order disclosure of all the factual material.  *See id.*; *Pub. Citizen, Inc. v. Off. of

Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (ordering disclosure of factual information

in OMB analysis); *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 30, 39 (D.C. Cir. 2002)

(ordering disclosure of "purely factual" "site-specific information about the location of an

endangered species" for agency decision-making under Endangered Species Act); *Playboy

Enters., Inc. v. Dep't of Just.*, 677 F.2d 931, 936 (D.C. Cir. 1982) (ordering disclosure of factual

material in DOJ Office of Professional Responsibility report).

> 3.     <u>The FTC Cannot Invoke the Deliberative Process Privilege Because Its
> Decision-Making Process Is Directly at Issue</u>

Even if the FTC could invoke the deliberative process privilege here (and it cannot), more

than just the facts contained in the FTC memoranda must be disclosed.  The full documents,

containing all of the staff conclusions and recommendations, must also be disclosed.  The D.C.

Circuit has held that the deliberative process privilege "does not enter the picture at all" when

"the government's intent" or "the nature of governmental officials' deliberations" is at issue.  *In

re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424-25

(D.C. Cir.), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998); *see Doe 2 v. Esper*, 2019 WL

4394842, at *6 (D.D.C. Sept. 13, 2019) (deliberative process privilege inapplicable because

extent of deference afforded to government's position was at issue).

Meta has asserted equitable defenses (laches, estoppel, and waiver) that pivot on the unfairness of the government's conduct here:  clearing transactions, inducing reliance over eight-to-ten years at the cost of billions of dollars, then suddenly reemerging to challenge those acquisitions on grounds that were likely rejected as unfounded when the transactions were reviewed and cleared.  These equitable defenses put squarely at issue the FTC's intent and decision-making processes in 2012 and 2014, and strip any "deliberative process" argument from the contemporaneous documents as to that intent and decision-making.

*Brock v. Weiser*, 1987 WL 12686, at *2 (N.D. Ill. June 15, 1987), is instructive.  There, the Department of Labor brought an enforcement action against the defendant after having previously investigated the defendant and informed him that the agency had decided to take "no further action."  *Id.* at *3.  When the Department later brought a case, the defendant asserted an estoppel defense based on reliance on the agency's prior decision.  *Id.*  Because the defendant's estoppel defense made the agency's "decision-making process . . . an issue in th[e] case," the court concluded that the agency could not assert the deliberate process privilege and ordered it to produce documents concerning its decision-making process from its earlier investigation.  *Id.* For the same reasons, the deliberative process privilege is inapplicable here.

    4.    <u>The Deliberative Process Privilege Is a Qualified Privilege and Does Not Protect the FTC Memoranda</u>

The deliberative process privilege, even where applicable, is a *qualified* privilege that can be overcome by a showing of need.  Here the need is manifest.  The evidence that Meta needs to defend itself, a decade after the acquisition of Instagram and eight years after the acquisition of WhatsApp, almost certainly overlaps with much of the very same evidence the agency accumulated in the FTC memoranda.  Those memoranda likely constitute a contemporaneous

record of why those acquisitions *did not* violate the antitrust laws and *could not* be challenged in court.  In short, this evidence is highly likely to prove that the FTC has no case.

In making this evaluation, courts consider, *inter alia*, (a) the relevance of the evidence, (b) the availability of evidence from other sources, (c) the seriousness of the litigation, (d) the role of the government, and (e) the possibility of future timidity by government employees.  *See In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (per curiam).  All of these factors strongly favor disclosure of the FTC memoranda.  In an unrelated context, for reasons not applicable here, some courts have protected FTC staff memoranda from disclosure when those documents have been sought under the FOIA.  *See, e.g.*, *Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971).  These cases are inapplicable because this case does not involve a FOIA request.  Unlike in civil discovery, in FOIA litigation, a showing of need cannot overcome the deliberative process privilege.  *See Sealed Case*, 121 F.3d at 737 & n.5.

*Relevance of the evidence*.  As discussed above, *supra* Part II, the FTC memoranda could not be *more* relevant.  The agency necessarily made findings as to the relevant market and the likely effect of the acquisitions.  In addition, its actions are highly relevant to Meta's equitable defenses, as well as the availability of the FTC's requested breakup remedy.  *See, e.g.*, *Swartwood v. Cty. of San Diego*, 2013 WL 6670545, at *6 (S.D. Cal. Dec. 18, 2013) (ordering disclosure of report from government investigation in part because it is "clearly relevant" to the case).  The FTC memoranda are all the more relevant because they are contemporaneous with the events at issue in the current litigation, which was brought so long after those events as to unfairly prejudice Meta in its efforts to obtain evidence necessary for its defense.  *See First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 322 (2000) (privilege did not bar disclosure where government's internal communications would help interpret contract by revealing government's intent at the time of the transaction at issue).

*Availability of evidence from other sources.*  There is no other source for the evidence available in the FTC memoranda.

*First*, as discussed above, *supra* Part II, the FTC memoranda contain the facts – from documents and witness accounts – *most relevant* to the issues before the Court.  With the passage of time, it is highly unlikely that this same evidence can be reassembled ten and eight years after the fact.  Further, to the extent testifying third parties' thoughts and opinions have changed between when the acquisitions occurred and now, the memoranda may contain critical potential impeachment material.  Certainly no other compendium of evidence centrally relevant to the Instagram and WhatsApp acquisitions exists anywhere else.  *See Swartwood*, 2013 WL 6670545, at *6 (ordering disclosure of government investigative document because such information was unavailable elsewhere); *Cal. State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775, at *5 (N.D. Cal. July 23, 2008) (ordering disclosure because, "[w]hile some of the factual information contained in the analyses may be reproducible elsewhere, it is likely that the quality and persuasiveness of such evidence will be substantially inferior to that produced by the agency charged with enforcing and administering the programs at issue in this litigation").

*Second*, the FTC memoranda are the *only* source of the FTC's decision-making process, which is directly at issue in Meta's equitable defenses, as explained above, *supra* Part II.  *See Chisler v. Johnston*, 796 F. Supp. 2d 632, 641 (W.D. Pa. 2011) (ordering disclosure of internal report because "no other evidence that speaks to the [Department of Corrections'] reaction" exists); *MacNamara v. City of New York*, 249 F.R.D. 70, 82 (S.D.N.Y. 2008) (ordering disclosure of document because it contained information about government personnel and their role in challenged conduct that would be unavailable from other sources).

*Seriousness of litigation.*  This is arguably one of the most significant antitrust cases that the government has ever brought.  The government seeks for the first time ever to dismantle a

major U.S. company a decade after the company made the acquisitions that helped it grow and

serve billions of people, and a decade after the very same government agency cleared the

acquisitions. *Cf. Fed. Home Loan Mortg. Corp. v. Deloitte & Touche, LLP*, 2015 WL 12766388,

at *7 (S.D. Fla. Aug. 4, 2015) (professional malpractice claim seeking $1.3 billion in damages

sufficiently "serious" to support disclosure of documents withheld under claim of "deliberative

process" privilege).

     *Role of the government*.  Here, the FTC is a plaintiff in a civil lawsuit.  "When the

government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of

materials that a private plaintiff would have to turn over."  *In re Methyl Tertiary Butyl Ether*

*(MTBE) Prods. Liab. Litig.*, 274 F.R.D. 106, 114 (S.D.N.Y. 2011); *see United States v. Gates*,

35 F.R.D. 524, 529 (D. Colo. 1964) (government cannot "maintain a civil action against one of

its citizens" while "at the same time refus[ing] to permit the very . . . company whose dealings

are under attack to have access to the materials which appear at this juncture to provide the . . .

material both for the government's claim . . . and for [defendant's] defense"); *Lundy*, 105 F.R.D.

at 503 (privilege carries less weight where government is party).  Moreover, the FTC's actions

in first clearing, then delaying, and then abruptly changing its position are directly at issue in

Meta's equitable defenses, so its role is uniquely important in this case.  *See supra* Part II.

     *Possibility of future government timidity*.  The agency itself has recognized that

disclosure poses no threat to government decision-making here, where disclosure comes ten

years after the fact for the Instagram memoranda.  *See supra* Part III.A.1.  This makes perfect

sense:  There is no reason to believe that disclosure of decade-old work will make the FTC staff

"timid" in the future.  Moreover, if disclosure did threaten such effect, that ship has sailed:  *there*

*has already been disclosure* to House Judiciary Committee members and staff, which belies any

claim that secrecy is required to prevent the chilling of internal deliberations.  *See Comm. on*

*Oversight & Gov't Reform, U.S. House of Representatives v. Lynch*, 156 F. Supp. 3d 101, 114

(D.D.C. 2016) (no harms from disclosure where executive previously disclosed contents of

documents); *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 2020 WL 527987, at

*14 (M.D. Pa. Jan. 31, 2020) (no threat of government timidity where emails had previously

been "sent to numerous individuals").  The documents were created, and the decisions made, ten

and eight years ago.  This significantly reduces any concern about chilling staff candor.  *See*

*Gradeless v. Am. Mut. Share Ins. Corp.*, 2011 WL 221895, at *5 (S.D. Ind. Jan. 19, 2011) (any

harm to deliberative process is "ameliorated by the fact that the administrative decisions at issue

took place about seven years ago and have long ago been 'completed' ").  Further, the FTC has

not claimed and cannot claim that the memoranda contain particularly sensitive information,

such that disclosure might chill agency candor.  *Compare Breiterman v. U.S. Capitol Police*, 323

F.R.D. 36, 46 (D.D.C. 2017) (critiques of agency disciplinary practices highly sensitive), *with*

*NAACP v. Bureau of Census*, 401 F. Supp. 3d 608, 618 (D. Md. 2019) (economic and statistical

analyses "not so sensitive that their disclosure might diminish the candor of agency deliberations

in the future"), *and Amchem Prods., Inc. v. GAF Corp.*, 64 F.R.D. 550, 553 (N.D. Ga. 1974)

(draft Environmental Protection Agency interpretations of statute not shown to be "sensitive").

Finally, here, unlike with Congress, the documents will be subject to a protective order

that limits their use to this case, and the agency has the option of producing documents to Meta

as "Confidential" or "Highly Confidential."  *See Wagner*, 2008 WL 2872775, at *6 (ordering

disclosure where concerns over chilling of agency discussion "may be mitigated by issuing a

protective order or having the documents disclosed under seal").  Where the FTC readily

revealed these documents to Congress and staff, with no protection against public disclosure, it

cannot credibly claim that disclosure here, under the Protective Order, would inhibit agency staff

candor in the future.

To the extent the FTC attempts to rely on *FTC v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984) (per curiam), the case is inapposite.  There, the Ninth Circuit held that two memoranda from the FTC's Bureau of Economics recommending against challenging a merger were protected by the deliberative process privilege.  In *Warner*, however, the FTC promptly challenged the acquisition, and similar information was available to the defendants, *id.* at 1161-62; here, the FTC cleared the deals and waited years to challenge them, causing a delay that has inhibited Meta's ability to obtain historical information with which to defend itself.  Further, the FTC memoranda are central to Meta's equitable defenses, which was not the case in *Warner*.

5.      The FTC Waived Any Claim of Privilege

Furthermore, the FTC has waived any claim of privilege by voluntarily providing all the FTC memoranda to House Judiciary Committee members and staff.  *See infra* Part IV.

**B.      The Work Product Doctrine Does Not Shield the FTC Memoranda from Discovery**

The FTC asserts that the documents are protected work product.  But, for multiple reasons, that doctrine does not shield the FTC memoranda from discovery.

1.      The Bureau of Economics Memorandum Is Not Work Product

The Bureau of Economics memorandum evaluating the Instagram transaction is not work product at all.  The FTC has not established that it was created by counsel or by someone acting at the direction of counsel.  *See Janicker ex rel. Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650-51 (D.D.C. 1982).  The burden of proving that the work product doctrine applies falls "on the party asserting privilege."  *Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C. 2000).  To carry this burden, a party must offer more than "general and conclusory declarations" and come forward with "specific information" about the creation and use of the documents and the involvement of attorneys.  *Id.* at 45-46.  The FTC fails to carry this burden.  While Ms. Vedova

20

states that ██████████████████████████████ she does not provide any

specific facts ████████████████████████████████████████████

██████████████████████████████. Vedova Decl. ¶ 26; *but see id.* ¶¶ 6, 24

(conceding that ██████████████████████████████████████████████

████████████████████████████). Ms. Vedova does not claim to have been

personally involved in the FTC's contemporaneous evaluation of the Instagram merger at all, and

her declaration does not claim that she wrote or received any memoranda regarding that merger

at the time.

The FTC's staff economists are independent from the Bureau of Competition; they

conduct an independent assessment based on economics and "do not act at the direction of

attorneys." Royall Decl. ¶ 5; *see also United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d

121, 134, 137 (D.D.C. 2012) (degree of counsel's involvement is "key component" that "bears

directly on whether the document was prepared in anticipation of litigation"). They review the

economic evidence regarding the market or markets, and the likelihood of harm to competition

and consumers from the transaction under review. *See* Royall Decl. ¶¶ 5, 8. The work of the

FTC's economists should therefore be produced. *See Janicker*, 94 F.R.D. at 650-51 (internal

committee report not produced "at the direction of counsel"); *ISS Marine Servs.*, 905 F. Supp. 2d

at 138 (investigation "was conducted by a non-attorney who never communicated with outside

counsel"); *Warren v. Bastyr Univ.*, 2013 WL 2181762, at *3 (W.D. Wash. May 17, 2013) ("no

indication that an attorney requested[ ] or created" the documents in question); *Rafferty v.

KeyPoint Gov't Sols., Inc.*, 2018 WL 3059600, at *7 (D. Idaho June 19, 2018) (investigative

report not "prepared . . . at the direction of counsel").

2.    Meta Has a Substantial Need for the Documents

To the extent the work product doctrine is applicable, Meta's need for the FTC memoranda is compelling and exceeds the showing made in other cases where courts ordered disclosure.

*There is substantial need for disclosure of the factual materials contained in the FTC memoranda*.  There is only limited protection for facts contained in documents prepared by attorneys in anticipation of litigation.  "Fact" work product is discoverable upon a showing of substantial need and unavailability through other means.  *See FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015).  "Substantial need" is established where materials are relevant to the case, have unique value apart from those already in movant's possession, and "special circumstances" prevent the movant from otherwise obtaining the materials.  *Id.* at 154-55.  Meta easily meets this test under the extraordinary circumstances here.

*The FTC memoranda are relevant*.  There is no question that the facts collected and memorialized by the agency in 2012 and 2014, as to the relevant market or markets and the likely effects of the two transactions, as well as the agency's reasons for acting or not acting, are centrally relevant to Meta's challenges to the government's case and its equitable affirmative defenses.  *See Jud. Watch, Inc. v. U.S. Dep't of State*, 2019 WL 2452325, at *1-3 (D.D.C. June 12, 2019) (emails with attorney opinions were discoverable fact work product because their recommendations – regarding whether Secretary Clinton could use private email to avoid FOIA obligations – amounted to "material facts" central to underlying issues in case).

*The FTC memoranda have unique value*.  The collection of contemporaneous facts, from a variety of sources including documents and witnesses, has unique value because Meta does not possess this evidence and cannot otherwise obtain this evidence – and certainly cannot do so ten and eight years after the transactions at issue.

22

*Special circumstances prevent Meta from otherwise obtaining the materials*.  The passage

of time alone constitutes a special circumstance that prevents Meta from obtaining this centrally

relevant evidence.  Meta is already aware that documents have been lost – both the FTC itself

and third parties have confirmed this.  It is equally likely that witnesses have significantly

diminished memories a decade after the fact.  *See, e.g., FTC v. Match Grp., Inc.*, No. 1:22-mc-

00054-RJL, Dkt. No. 11, at 15-16 (D.D.C. June 8, 2022) (petition by FTC to enforce Civil

Investigative Demand to obtain internal documents from 2014 because "FTC must be able to

weigh the credibility of witness testimony against the contemporaneous documents"); *In re*

*Vitamins Antitrust Litig.*, 211 F.R.D. 1, 5 (D.D.C. 2002) (substantial need where, *inter alia*,

documents had been destroyed); *see also, e.g., Le v. Diligence, Inc.*, 312 F.R.D. 245, 245-48 (D.

Mass. 2015) ("substantial need" for photos depicting boat where injury occurred because boat

underwent "structural changes" and no other depiction of its "condition . . . at the [relevant time]"

existed); *Interstate Fire & Cas. Co. v. Roman Cath. Church of Diocese of Phoenix*, 2012 WL

12867974, at *1 (D. Ariz. Jan. 19, 2012) ("substantial need" where – due to passage of time –

witnesses had faded memories); *Johnson v. Wash. Metro. Area Transit Auth.*, 1990 WL 113877, at

*2-3 (D.D.C. July 26, 1990) (same); *Leamon v. KBR, Inc.*, 2011 WL 13340584, at *2 (S.D. Tex.

Nov. 10, 2011) (same).

The government has never before sought to break up a company ten and eight years after

clearing the transactions that created the unitary company.  If that does not establish a

compelling case for substantial need for the facts that caused the government to clear the

transactions, nothing will.  Indeed, it would be grossly unfair to let the FTC possess and use the

contemporaneous evidence collected in 2012 and 2014 without making that evidence equally

available to Meta, as courts have held in ordering disclosure.  *See U.S. ex rel. Landis v. Tailwind*

*Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. 2014) (substantial need where one side had

"substantial advantage from having access to the fruits of [a] prior criminal investigation" that provided "critical sources of evidence for *both* sides"); *Howard v. Fowler Bros., Inc.*, 2011 WL 3438407, at *2 (W.D. Ky. Aug. 5, 2011) (similarly emphasizing unfair asymmetry – defendant's ability to interview key witnesses "unavailable to Plaintiff").

*There is no protected opinion work product here.* As the Court held in *Judicial Watch*, the agency's reasons for acting or not acting are "material facts" relevant to the FTC's claims and Meta's affirmative defenses. *See Jud. Watch*, 2019 WL 2452325, at *1-3 (emails with attorney opinions discoverable as fact work product). But even if the staff conclusions and recommendations here are characterized as opinion work product, they still must be disclosed. Production of opinion work product can be compelled upon an "extraordinary showing of necessity," *In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982), such as when "evaluative opinions and observations . . . are essential to establish and substantiate [a] defendant's claim," *United States v. AT&T Co.*, 86 F.R.D. 603, 633 n.1 (D.D.C. 1979) (citing *Bird v. Penn Cent. Co.*, 61 F.R.D. 43 (E.D. Pa. 1973)), or when the opinion work product "goes to the heart of the issues in the litigation," *Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890, at *6 (D.D.C. Dec. 16, 2005).

Both grounds are present here. The FTC's evaluative opinions and observations are essential to substantiate Meta's equitable claims that the government has acted unfairly and inequitably in bringing this case so many years after the transactions and after conducting careful reviews that resulted in the transactions being cleared – a clearance on which Meta was entitled to rely. The FTC's decision-making is directly at issue in this case. *See supra* Part II.

*Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D. Pa. 1973) (cited with approval by *AT&T*, 86 F.R.D. at 633 n.1), is instructive.  In that case, plaintiff insurance companies sought to rescind two insurance policies covering the defendants based on alleged false statements in their insurance application.  The defendants asserted a laches defense on the ground that the insurers should have known about the allegedly false statements years ago and sought investigative materials compiled by the insurers' lawyers.  The court ordered production of the documents, which the insurers claimed were opinion work product, because they were "essential" for the defendants to "substantiate their defense."  61 F.R.D. at 46-47; *see also Kockums Indus. Ltd. v. Salem Equip., Inc.*, 561 F. Supp. 168, 173 (D. Or. 1983) (ordering disclosure of opinion work product without which "the defendant will have no chance to prove its potentially valid counterclaims"); *Tri-State Hosp.*, 2005 WL 3447890, at *6 (ordering disclosure of opinion work product where decision to sue was at heart of malicious-prosecution case).

Any opinion work product here likewise "goes to the heart of the issues in the litigation." *Tri-State Hosp.*, 2005 WL 3447890, at *6.  There is no doubt that the agency lawyers identified and assessed the relevant market or markets, and that issue is of potentially dispositive significance to this case.  If the FTC fails to prove its "PSNS" market definition, the case fails. Meta believes the agency lawyers found no such market when they conducted their 2012 and 2014 investigations, and that certainly goes to the heart of this case.  Equally apparent:  the agency was required under HSR to determine whether the acquisitions threatened *likely* harm to competition and consumers.  *See* 15 U.S.C. § 18a.  The same element is present in this case, as the Court has held.  *See FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308, at *12 (D.D.C. Jan. 11, 2022).  Meta believes that the agency lawyers found *no* such harm in 2012 and 2014, even after careful review of relevant contemporaneous evidence.  That, too, indisputably goes to the heart of the case.

This case is therefore the extraordinary case in which it would be fundamentally unfair to allow the adversary to hide its centrally relevant and potentially dispositive admissions behind a screen of work product privilege.  Any protection that arguably exists has been overcome by Meta's showing of substantial need and extraordinary necessity.

Moreover, for the reasons set forth below, *infra* Part IV, the agency waived any claim of privilege when it chose to share all of its memoranda with the House Judiciary Committee.

### C.    The Attorney-Client Privilege Does Not Apply

The FTC asserts attorney-client privilege over the memoranda, though it has not relied on the privilege in prior correspondence and did not purport to invoke the privilege in response to a FOIA request for similar staff recommendation memoranda relating to Google.  *See* Ltr. from Dione J. Stearns (Assistant General Counsel, FTC) to Andreas L. Booher (Apr. 2, 2015), https://www.ftc.gov/system/files/documents/foia_requests/150401googlememo_0.pdf.  The D.C. Circuit requires an agency that seeks to claim the privilege over a communication from counsel to an agency client to establish that the communication reveals confidential information *belonging to the agency*.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *Brinton v. Dep't of State*, 636 F.2d 600, 603-04 (D.C. Cir. 1980).  The FTC fails to identify any confidential information belonging to the purported agency client – the Commission – that would be revealed by the memoranda.  The FTC claims that these memoranda may ███████████████████████████ Vedova Decl. ¶ 30.  But the D.C. Circuit has held that a communication reflecting confidential information about third parties is insufficient for an agency to claim attorney-client privilege; the privileged document must reveal "private information *concerning the agency*."  *Coastal States*, 617 F.2d at 863 (emphasis added); *see Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (attorney-client privilege did not apply to communication reflecting information from an agency "outsider,"

26

rather than "the Agency official who solicits the Chief Counsel's advice").  Moreover, the

agency waived any claim of privilege by voluntarily sharing all of its memoranda with the House

Judiciary Committee.  *See infra* Part IV.

      **D.**    **The Investigatory File Privilege Does Not Apply**

    The FTC claims "investigatory file privilege" ██████████████████████████

███████████████████████████████████████████████.  Vedova Decl. ¶ 23.

But the FTC has already provided Meta with the names of the third parties it interviewed during

the 2012 and 2014 investigations, and it has agreed that it must produce any documents those

third parties provided (some of which have been lost, as it concedes).  And Ms. Vedova provides

no substance to the claim of "secret" internal procedures.  Those procedures are public under the

HSR and are even disclosed in the very declaration that the FTC has submitted.

    Courts in this district recognizing this privilege have held that "the most crucial and

important factor" is "the importance of the information sought."  *Tri-State Hosp.*, 2005 WL

3447890, at *9.  This factor weighs heavily in favor of Meta for the reasons described above.

Other factors also favor Meta.  Because the FTC's 2012 and 2014 investigations are "long since

over," there is no risk that production of the memoranda will interfere with an ongoing

investigation.  *Miller v. Holzmann*, 2007 WL 779393, at *2 (D.D.C. Mar. 8, 2007); *see Tri-State

Hosp.*, 2005 WL 3447890, at *10 (no investigatory files privilege where investigation "took

place approximately ten years ago").  And any concerns as to third-party confidential

information provided to the FTC a decade ago are unfounded:  the FTC concedes that such

material must be disclosed, including the names of witnesses and documents they produced.

And confidential information, if any, is more than adequately addressed by the Protective Order.

*See In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 167 (D.D.C. 2017) (no

investigatory files privilege; protective order adequately addressed government's concerns

regarding third-party confidential information).  And, once again, the FTC waived any claim of privilege by voluntarily sharing all of its memoranda with the House Judiciary Committee.  *See infra* Part IV.

## IV.   The FTC Waived Any Privilege by Voluntarily Providing the Memoranda to House Judiciary Committee Members and Staff

The FTC has confirmed that it shared the FTC memoranda with Members of Congress and their staff.  *See* May 12 Matheson Ltr. at 9.  That disclosure was voluntary:  the House Judiciary Committee made only an informal request for those documents and never issued a subpoena or other form of compulsory process to the FTC; and the FTC neither sought nor obtained enforceable confidentiality protection.  *See supra* p. 7.

This disclosure waived any privilege claim.  *See*, *e.g.*, *Sealed Case*, 121 F.3d at 741-42 (White House waived deliberative process privilege as to "specific documents that it voluntarily revealed to third parties outside the White House"); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1369 (D.C. Cir. 1984) ("[a]ny voluntary disclosure by the holder" of attorney-client privilege "is inconsistent with the confidential relationship and thus waives the privilege"); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Commerce*, 2020 WL 4732095, at *2 (D.D.C. Aug. 14, 2020) ("*CREW*") (Commerce Department waived deliberative process privilege as to documents shared with "a third party"); *see also In re Veiga*, 746 F. Supp. 2d 27, 35 (D.D.C. 2010) ("[V]oluntary disclosure to a third party constitutes a waiver [of work product privilege] where the disclosure is made under circumstances inconsistent with the maintenance of secrecy from one's adversary."); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 2009 WL 10708594, at *2 (D.D.C. June 9, 2009) (Federal Housing Finance Agency waived deliberative process privilege by failing to take "'reasonable steps' to protect its deliberative process privilege" and producing purportedly privileged documents).  Sharing with

legislators and their staff is not different from sharing with any other third party – it effects a waiver.  *See*, *e.g.*, *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 426 (D.D.C. 2002) (producing documents to Congress waived attorney-client and work product privilege); *First Heights Bank*, 46 Fed. Cl. at 319 (producing documents to Congress waived attorney-client privilege).

The FTC's failure to demand that the House Judiciary Committee issue a formal subpoena or take specific precautions to protect the confidentiality of the materials confirms the FTC waived any privilege claim.  *See CREW*, 2020 WL 4732095, at *2 ("An agency must take steps to protect privileged material that is commensurate with the breadth of the privilege it seeks to claim.").  The FTC's ████████████████████████████████ ████████ in the documents, *see* Ex. F, Ltr. from April J. Tabor (Acting Secretary of the Commission) to Reps. Jerold Nadler, et al. (House Judiciary Comm.) (Oct. 29, 2019) – which the Committee and its staff was free to disregard – was insufficient.  *See Philip Morris*, 212 F.R.D. at 424-26 ("cursory" statement in cover letter to Congress was "insufficient" to protect documents from waiver).

The FTC has denied waiving any applicable privileges based on cases decided under FOIA.  FOIA establishes a process that allows members of the public to request government documents and allows the government to withhold documents if one of nine statutory exemptions applies.  *See* 5 U.S.C. § 552(b).  FOIA also specifies that the application of one of FOIA's statutory exemptions does not give an agency "authority to withhold information from Congress."  *Id.* § 552(d).  On the basis of § 552(d)'s language, the D.C. Circuit has held that an agency's ability to assert that one of FOIA's statutory exemptions applies is not affected by whether the document has been shared with Congress.  *See Rockwell Int'l Corp. v. U.S. Dep't of*

*Just.*, 235 F.3d 598, 604 (D.C. Cir. 2001); *Murphy v. Dep't of Army*, 613 F.2d 1151, 1155-56 (D.C. Cir. 1979).

Meta does not seek the FTC memoranda under FOIA; the specific statutory provision protecting disclosure to Congress does not apply.  Instead, Meta seeks these memoranda from a litigation adversary pursuing claims to break up the company.  It relies on civil discovery obligations that apply no less to the FTC than to Meta.  In that context, the rule that a voluntary disclosure to Congress waives a party's privileges in contested litigation applies.  *See*, *e.g.*, *First Heights Bank*, 46 Fed. Cl. at 319 (two federal entities – the Federal Savings and Loan Insurance Corporation and the Resolution Trust Corporation – waived attorney-client privilege by producing privileged communications to Congress).

Moreover, the FOIA cases present none of the extraordinary facts that are present here. *See Rockwell*, 235 F.3d 598; *Murphy*, 613 F.2d 1151.  The FTC previously cleared the deals it now challenges.  When a change in leadership prompted second-guessing of those clearances, and Members of Congress sought to revisit them as well, the agency voluntarily disclosed its 2012 and 2014 compilations of facts and conclusions.  The Members and their staff reviewed and then relied on these very documents in a public report specifically addressing the FTC's review of the Instagram and WhatsApp acquisitions.  It would be fundamentally unfair to permit the FTC to funnel these documents to outsiders, while denying Meta the use of these same documents that are critical for its defense.  *See Subpoenas Duces Tecum*, 738 F.2d at 1372 (affirming compulsion order; it would be "unfair to allow [a party] to select according to their own self-interest to which adversaries they will allow access to the materials").

## CONCLUSION

The Court should order the FTC to produce to Meta unredacted copies of the eight FTC memoranda that have been withheld on claim of privilege.

Dated: July 5, 2022                    Respectfully submitted,

                                       /s/ *Mark C. Hansen*
                                       Mark C. Hansen (D.C. Bar No. 425930)
                                       Kevin B. Huff (D.C. Bar No. 462043)
                                       L. Vivian Dong (D.C. Bar No. 1722506)
                                       KELLOGG, HANSEN, TODD,
                                         FIGEL & FREDERICK, P.L.L.C.
                                       1615 M Street, N.W., Suite 400
                                       Washington, D.C. 20036
                                       Tel: (202) 326-7900

                                       *Counsel for Defendant Meta Platforms, Inc.*