## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

META PLATFORMS, INC.,

      Defendant.

Case No. 1:20-cv-03590-JEB

**Declaration of Elizabeth Tucci in Support of Plaintiff Federal Trade Commission's Opposition to Defendant Meta Platforms, Inc.'s Motion to Compel Production of 2012 and 2014 FTC Memoranda**

I, Elizabeth Tucci, declare as follows:

1.   I am Deputy General Counsel for the Office of the General Counsel of the Federal Trade Commission ("FTC" or "Commission") and have held that position since September 2020. Since joining the Commission in 2005, I have served in a variety of positions, most recently as Acting Deputy General Counsel (July 2000 – September 2020), Acting Assistant Director for the Division of Advertising Practices (2018-2020), and Chief Litigation Counsel for the Bureau of Consumer Protection (2016-2018). Prior to these positions, I served as an attorney in the Divisions of Advertising Practices and Enforcement.  I am serving as Acting General Counsel in this matter because the General Counsel is recused.

2.   Pursuant to Rule 0.11 of the FTC's Rules of Practice and Procedure, 16 C.F.R. § 0.11, the General Counsel is the Commission's chief law officer and adviser.  The General Counsel advises the Commission, its operating bureaus, and FTC staff on questions of law and policy, including advice with respect to legislative matters.  The General Counsel also represents the Commission in federal and state courts, and the General Counsel responds to requests and appeals filed under the Freedom of Information and Privacy Acts and to intra- and intergovernmental information access requests.

3.   This declaration is based on my professional experience, personal knowledge, review of agency records, and upon information that I have received in my official capacity as Deputy General Counsel.

4.   I make this declaration in support of Plaintiff's Opposition to Defendant Meta's Motion to Compel Production of 2012 and 2014 FTC Memoranda, which was filed in the above-captioned case on July 5, 2022.

## FTC'S HOUSE JUDICIARY COMMITTEE SUBMISSIONS

5.  As a part of my role as Deputy General Counsel of the FTC and my duties at the agency, I interface with Congress as well as staff, supervisors, Bureau management, and Commissioners within the FTC.

6.  The FTC's Office of the General Counsel is responsible for responding to requests and appeals filed under the Freedom of Information and the Privacy Act ("FOIA"). 16 C.F.R. § 4.11(a), 16 C.F.R. § 4.13. As Deputy General Counsel, I also have authority to handle requests from federal and state agencies for access to the Commission's nonpublic records. 16 C.F.R. § 4.11(c), (d).  In addition, requests from congressional committees and subcommittees for nonpublic material are referred to the General Counsel for presentation to the Commission. 16 C.F.R. § 4.11(b).

7.  The statements below are based on my personal knowledge related to the FTC's process for responding to requests from Congress and knowledge that I have obtained in my role as Acting General Counsel related to the FTC's response to the House Judiciary Committee's official requests related to the Committee's investigation of digital markets.

8.  Congress has a constitutional right to conduct investigations to perform its legislative functions. Various statutes, including the FOIA and the FTC Act, accommodate this right. *See, e.g.*, 5 U.S.C. § 552(d) (FOIA "is not authority to withhold information from Congress"); 15 U.S.C. § 57b-2(b)(3)(C) ("Nothing in this section is intended to prevent disclosure to either House of the Congress or to any committee or subcommittee of the Congress, except that the Commission immediately shall notify the owner or provider of any such information of a request for information designated as confidential by the owner or provider."); *id.* § 57b-2(d)(1)(A) (specifying that 15 U.S.C. § 57b-2(c) shall not be

construed to prohibit "the disclosure of information to either House of the Congress or to any committee or subcommittee of the Congress, except that the Commission immediately shall notify the owner or provider of any such information of a request for information designated as confidential by the owner or provider").

9.      Consistent with statutory authority and relevant legal precedent, such as *Ashland Oil v. FTC*, 548 F.2d 977 (D.C. Cir. 1976), *Exxon Corp. v. FTC*, 589 F.2d 582 (D.C. Cir. 1978), *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C. Cir. 1980), since at least the 1970s, the FTC's policy has been to provide congressional committees with nonpublic information only in response to: (1) a subpoena; or (2) a formal, official committee request, signed by the committee chairman in his capacity as chairman. The FTC's longstanding position is to comply with official congressional requests, just as the agency would comply with congressional subpoenas.

10.     16 C.F.R. § 4.11(b) governs the FTC's procedures for handling requests from congressional committees for nonpublic material.  This rule states that requests from congressional committees and subcommittees for nonpublic material shall be referred to the General Counsel for presentation to the Commission and that "neither the Freedom of Information Act, 5 U.S.C. 552, nor the Federal Trade Commission Act, 15 U.S.C. 41, *et seq.,* is authority to withhold information from Congress." When a congressional committee or subcommittee requests nonpublic material, the Commission must vote on whether to authorize its staff to provide the requested documents or information.

11.     On September 13, 2019, the Chairman of the House Judiciary Committee, Representative Jerrold Nadler, sent then-FTC Chairman Joseph Simons an official request for information related to the House Judiciary Committee's investigation of competition in digital markets.

The September 13, 2019 letter was a formal, official committee request, written on committee letterhead and signed by Chairman Nadler in his capacity as committee chairman. Other signatories were the Chairman of the House Judiciary Committee's Subcommittee on Antitrust, Commercial, and Administrative Law, Representative David Cicilline, and the Ranking Members of the Committee and Subcommittee, Representatives Doug Collins and James Sensenbrenner. The official committee request stated that the Committee's digital markets investigation was a central part of its efforts to fulfill its legislative and oversight responsibilities and that its request to the FTC was a part of the Committee's efforts to fully carry out its oversight and legislative duties.  As a part of its official committee request, the House Judiciary Committee attached a Schedule requesting recommendation packages for a number of FTC investigations relating to competition in digital markets, including Facebook, Inc. / Instagram, Inc. (FTC File No. 1210121) and Facebook, Inc. / WhatsApp.

12.     Attached as Exhibit 1 to this declaration is the House Judiciary Committee's September 13, 2019 official committee request to the FTC ("Exhibit 1").

13.     On October 28, 2019, the Commission voted to authorize its staff to provide nonpublic documents sought by the House Judiciary Committee's September 13, 2019 official committee request.  On October 29, 2019, the FTC provided a response and produced documents to the House Judiciary Committee, identifying that the FTC was responding to the Committee's request "as an official request of a Congressional Committee, or Subcommittee."  The FTC's production to the House Judiciary Committee in response to its official committee request included internal FTC analysis and recommendations identified in Plaintiff's June 28, 2022 Privilege Log (attached as Exhibit B to the

Declaration of Daniel Matheson in Support of Plaintiff's Opposition to Defendant Meta's Motion to Compel Production of 2012 and 2014 FTC Memoranda) ("Plaintiff's Privilege Log")).  In its October 29, 2019 cover letter responding to the House Judiciary Committee's September 13, 2019 official request, the FTC highlighted the privileged and confidential nature of documents included in the production and its expectation that "the Committee and Subcommittee and their staffs not disclose any of the nonpublic information provided." In addition to making clear its expectation that the Committee and Subcommittee "maintain its confidentiality," the FTC's October 29, 2019 cover letter also noted that the FTC has no statutory authority to withhold the information requested by the Congressional Committee or Subcommittee under the FTC Act, 15 U.S.C. § 57b-2(d)(1)(A), or the FOIA, 5 U.S.C. § 552(d).  Additionally, this cover letter identified that the FTC's production included internal staff analyses and recommendations that are predecisional and protected by, *inter alia,* deliberative process and work product protections.

14.  Attached as Exhibit 2 to this declaration is the FTC's October 29, 2019 cover letter in response to the House Judiciary Committee's September 13, 2019 official committee request.

15.  On May 12, 2020, Chairman Nadler of the House Judiciary Committee sent then-FTC Chairman Joseph Simons an official committee request for continuing monthly updates related to item #3 in the Schedule attached to the Committee's September 13, 2019 official committee request.  Item #3 in the House Judiciary Committee's September 13, 2019 Schedule requests recommendation packages related to, *inter alia,* "any investigation of an unfair method of competition involving digital markets initiated after January 1, 2009." *See* Exhibit 1, Schedule, Item 3.  Specifically, the House Judiciary Committee directed the

FTC to "please continue to provide all recommendation packages that are forwarded to the Commission or any individual Commissioner, as well as recommendations submitted to the assistant director assigned to the matter." Like the September 13, 2019 letter, the May 12, 2020 letter was a formal, official committee request, written on committee letterhead and signed by Chairman Nadler in his capacity as committee chairman. The co-signatories on the May 12, 2020 official committee request were Chairman Cicilline of the House Judiciary Committee's Subcommittee on Antitrust, Commercial, and Administrative Law, plus Ranking Members Jim Jordan of the House Subcommittee on the Judiciary and James Sensenbrenner of the House Subcommittee on Antitrust Commercial and Administrative Law, respectively.

16.     Attached as Exhibit 3 to this declaration is the House Judiciary Committee's May 12, 2020 official committee request to the FTC.

17.     On June 19, 2020, the Commission voted to authorize its staff to provide nonpublic documents sought by the House Judiciary Committee's May 12, 2020 official committee request. On June 22, 2020, the FTC provided a response to the House Judiciary Committee's September 13, 2019 and May 12, 2020 official committee requests and produced documents, identifying that the FTC was responding the Committee's request "as an official request of a Congressional Committee or Subcommittee." The FTC productions included internal FTC analysis and recommendations related to the FTC's Facebook, Inc. investigation (FTC File No. 1910134) identified in Plaintiff's Privilege Log. Similar to its October 29, 2019 cover letter, the FTC's June 22, 2020 cover letter to the House Judiciary Committee's official requests, the FTC highlighted the privileged and confidential nature of documents included in its productions and its expectation that "the

Committee and Subcommittee and their staffs not disclose any of the nonpublic information provided."  In addition to reiterating its expectation that the Committee and Subcommittee "maintain its confidentiality," this cover letter also again noted that the FTC has no statutory authority to withhold the information requested by the Congressional Committee or Subcommittee under the FTC Act, 15 U.S.C. § 57b-2(d)(1)(A), or the FOIA, 5 U.S.C. § 552(d).  Additionally, this cover letter made clear that the production included internal staff analyses and recommendations that are predecisional and protected by, *inter alia,* deliberative process and work product protections.

18.    Attached as Exhibit 4 to this declaration is the FTC's June 22, 2020 cover letter in response to the House Judiciary Committee's September 13, 2019 and May 12, 2020 official committee requests.

19.    There is no presumption that privileges asserted by the FTC cease to apply after ten years have elapsed.  While the FTC used to have a policy that most information protected solely by FOIA exemption 5 in a file closed over ten years would be released, the FOIA Improvement Act of 2016, Pub. L. No. 114-185, added language to FOIA exemption 5 specifying that "the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." On December 22, 2016, the FTC revised its rules of practice to follow suit.  *See* 81 Fed. Reg. 93804, 93085 (2016) (amending 16 C.F.R. § 4.10(a)(3) to incorporate the statutory language from the FOIA Improvement Act of 2016)).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18 day of July, 2022, in Alexandria, Virginia.

Respectfully submitted,

ELIZABETH TUCCI  Digitally signed by ELIZABETH
TUCCI
Date: 2022.07.18 18:57:55 -04'00'

Elizabeth Tucci