# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

          Plaintiff,

          v.

META PLATFORMS, INC.,

          Defendant.

Case No. 1:20-cv-03590-JEB

## DECLARATION OF HOLLY VEDOVA

I, Holly Vedova, declare as follows:

1.     I am the Director of the Bureau of Competition of the Federal Trade Commission ("FTC" or "Commission"), an agency composed of a Chair and up to four other Commissioners. I have the authority to assert government privileges over documents in the custody and control of the Bureau of Competition. I am the head of the department possessing control over the requested information.

2.     I have served at the FTC for almost 30 years. Prior to my appointment as the FTC's Director of the Bureau of Competition, I was an attorney advisor to FTC Commissioner Rohit Chopra, where I analyzed recommendations regarding competition matters, both merger and non-merger, and advised the Commissioner on all aspects of the FTC's competition mission. I also served as an attorney advisor to four other FTC Commissioners as well as Counsel to the Director of the Bureau of Competition. Prior to that, I spent eight years as a staff attorney in the Bureau of Competition, where I worked on merger reviews and litigations.

3.     I submit this declaration and formal claim of privilege with respect to certain documents, which are more fully described in Paragraphs 17-19 below, in the FTC's files. Defendant Meta Platforms, Inc. (f/k/a Facebook, Inc.) ("Meta") has sought to obtain these documents through discovery requests served on the FTC in the above-captioned case on March 9, 2022.

4.     The statements made herein are based upon my personal knowledge, review of agency records, and upon the knowledge of persons who report directly or indirectly to me or on whom I rely in the ordinary course of carrying out my duties as Director of the Bureau of Competition. I have personally reviewed the documents at issue and their corresponding

entries in Plaintiff's privilege log concurrently submitted herewith ("Plaintiff's Privilege Log").

## I.      Background

### A.      FTC Practices and Procedures in Antitrust Investigations

5.      The FTC contains three Bureaus: the Bureau of Competition, Bureau of Economics, and the Bureau of Consumer Protection.[1] The Bureau of Competition is comprised of a number of divisions and offices focused on the FTC's competition mission, is primarily staffed with attorneys, and is headed by the Office of the Director of the Bureau of Competition, colloquially called the "BC Front Office" (Director, Deputies, and Counsels to the Director). The Bureau of Economics is comprised of several divisions, is primarily staffed with economists, and is headed by an Office of the Director of the Bureau of Economics, colloquially called the "BE Front Office" (Director and Deputies).

6.      The Bureau of Competition has primary responsibility in the FTC for enforcing federal antitrust and trade regulation laws, including Section 7 of the Clayton Act, 15 U.S.C. § 18; the Hart-Scott-Rodino Act 15 U.S.C. § 18a ("HSR Act"); and Section 5 of the FTC Act, 15 U.S.C. § 45. The Bureau of Competition carries out its responsibilities by reviewing filings for acquisitions above a certain threshold under the HSR Act, investigating alleged violations of the law, recommending to the Commission such further steps as may be appropriate, and prosecuting enforcement actions the Commission authorizes. *See* 16 C.F.R. § 0.16. The Bureau of Economics has primary responsibility in the FTC for aiding and advising the Commission about the economic aspects of its functions, as well as for providing "economic and statistical assistance to the enforcement Bureaus [including the Bureau of Competition] in the investigation and trial of cases." *See* 16 C.F.R. § 0.18. Bureau of Competition attorneys and Bureau of Economics economists work closely together to conduct and coordinate investigations pursuant to feedback, guidance, and direction from the Chair and the Commissioners of the FTC. The Commission establishes policy and takes official action (e.g., commencement of an enforcement action) solely through an affirmative vote of a majority of Commissioners.

7.      When investigating antitrust matters, FTC staffers collect information through various means, including, depending on the matter: pre-merger HSR Act filings, "Second Requests" (*see infra*, Paragraph 10), voluntary access letters, interviews with parties and third parties, and subpoenas or civil investigative demands collecting documents or testimony from parties or third parties.

8.      Staff often contact third parties who are knowledgeable about the industry in which the target(s) of an investigation conduct business. FTC staff members involved in

---

[1] The Bureau of Consumer Protection is comprised of a number of divisions and offices focused on the FTC's consumer protection mission, is primarily staffed with attorneys, and is headed by an Office of Director of the Bureau of Consumer Protection, colloquially called the "BCP Front Office" (Director, Deputies, Counsels to the Director).

investigational third-party interviews typically include staff from both the Bureau of Competition and Bureau of Economics, including FTC lawyers, as well as economists and/or paralegals acting at FTC lawyers' direction.  In most instances, third parties provide information requested by FTC staff during the interview on a confidential basis.  As a part of an interview, FTC staff typically explain to third parties its statutory obligation to keep investigative material confidential and that information provided is exempt from Freedom of Information Act ("FOIA") disclosure.  These interviews with third parties are not tape recorded nor is any attempt made to create a verbatim statement of the information conveyed.  Instead, FTC participants may take notes regarding their mental impressions of select parts of the interview, including the points they regard as important or otherwise want to memorialize.  After the interview, FTC staff may draft an internal analysis or memorandum summarizing their mental impressions regarding information obtained in the interview as well as analyzing the reasons the interview was conducted, characterizing the importance of the information learned, evaluating the interviewee as a possible witness, or identifying potential areas of further inquiry.

9.      FTC staff, including attorneys, paralegals, and economists, review these notes and memoranda as part of their deliberations about a matter and to prepare various recommendation memoranda to the Commission.  These recommendation memoranda are confidential as they often pertain to nonpublic investigations, reflect legal advice, contain confidential third-party information, and comprise part of the FTC's internal deliberation and decision-making.  As discussed further below, the Bureau of Competition staff and BC Front Office attorneys compile these recommendation memoranda and other pertinent documents into recommendation packages addressed to Commission decision-makers to inform their decisions, including: (1) screening mergers to determine whether to seek additional information, (2) authorizing and issuing compulsory process, including civil investigative demands and subpoenas, (3) undertaking enforcement through filing complaints, or (4) declining to take further action.  The FTC's Office of the Secretary ("Secretary's Office") typically generates a Commission assignment cover sheet for each staff recommendation package to the Commission identifying the staff contact and assigned Commissioner.  In certain other circumstances, however, FTC staff may provide recommendations through informal notes, summaries, or analyses to managers of the responsible division in the Bureau of Competition or Front Office to inform a decision regarding whether to pursue additional investigation.

10.     For acquisitions that are reportable pursuant to the HSR Act, FTC staff may also prepare recommendation memoranda discussing whether to seek additional information from the merging parties – a process known as issuing "Second Requests."  *See* 15 U.S.C. § 18a(e).  These memoranda are reviewed by a "Merger Screening Committee" typically comprised of Front Office managers of the Bureau of Competition and Bureau of Economics and representatives from the Chair's office, who will then approve or decline the recommendation to issue Second Requests.

11.    In the course of an investigation, unless proceeding pursuant to an omnibus resolution,[2] FTC Bureau of Competition and Bureau of Economics staff may also draft recommendation memoranda requesting that the Commission authorize the use of compulsory process in an investigation. Compulsory process recommendation memoranda summarize and analyze information obtained by staff and potential legal theories in support of recommendations for further investigation through compulsory process.  In HSR reportable acquisition matters, the compulsory process recommendation packages that go to the Commission also often attach and include the recommendation memoranda that the Bureau of Competition and Bureau of Economics prepared for the Merger Screening Committee.  Additionally, BC Front Office management review these various staff recommendation memoranda and typically prepare a short cover memorandum to the Commission.  In most instances, the BC Front Office cover memorandum is a short addendum to the staff memoranda noting whether or not the Front Office concurs with staff's recommendation. Finally, recommendation packages related to compulsory process often also include a draft process resolution from Bureau of Competition staff that describes the nature and scope of investigation as well as the authority to conduct an investigation.  Ultimately, all of these recommendation memoranda are compiled into a recommendation package for the Commission's review prior to the Commission's voting to approve or decline the use of compulsory process. If the Commission votes to approve compulsory process, the Secretary's Office will issue a final signed process resolution as to that matter.

12.    Once the Commission authorizes compulsory process, FTC staff will also prepare recommendations to the Commission in order to issue specific civil investigative demands, subpoenas *duces tecum*, or subpoenas *ad testificandum*, using the compulsory process resolution approved by the Commission.  In particular, Bureau of Competition staff and BC Front Office typically provide a recommendation memorandum and a short cover memorandum to the Commission recommending the issuance of specific civil investigative demands, subpoenas *duces tecum,* or subpoenas *ad testificandum* to particular parties or third parties.  These recommendation memoranda typically include staff analysis related to information gathered in the investigation to that point and staff's analysis and thinking related to the need for the information, documents, and testimony requested.  The Secretary's Office directs these recommendation packages to an assigned Commissioner, who reviews the package and (if he or she approves) signs and authorizes the issuance of the specific subpoenas and civil investigative demands. The executed compulsory process resolution approved by the Commission accompanies each civil investigative demand and subpoena issued in the investigation.

---

[2] Omnibus resolutions approved by the Commission allow staff to proceed with compulsory process as to matters that fall within the scope of the omnibus resolution, without seeking authorization for compulsory process in a specific investigation. The Bureau of Competition only had a few omnibus resolutions in existence at the time of FTC staff's 2012 Instagram investigation, 2014 WhatsApp review, and the 2019 Facebook investigation, but none included criteria that would cover those investigations.  On July 1, 2021, well after the investigations at issue in this declaration took place, the Commission voted to approve certain additional omnibus resolutions covering a wide variety of investigations.

13.     Initiating an enforcement action requires a vote of the Commission, as does closing an investigation if the Commission has authorized compulsory process in that investigation. For instance, the Commission can commence an enforcement action, such as filing a federal complaint enjoining parties from consummating a merger or filing an administrative complaint alleging a proposed merger violates Section 5 of the FTC Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18.  FTC staff provides recommendations to the Commission regarding commencing enforcement actions.  As with recommendations to the Commission regarding whether to issue compulsory process, BC and BE Front Office management typically prepare a cover memorandum to the Commission based on their assessment of staff memoranda.  Closing an investigation without proceeding to enforcement follows the same procedure.  The Commission reviews and evaluates all of these recommendation memoranda and any other pertinent documents compiled in the recommendation package to determine whether to commence an enforcement action or close an investigation.  In matters where the Commission has not authorized compulsory process, or the investigation proceeded pursuant to an omnibus resolution, the authority to close the investigation resides with the investigating staff, managers of the responsible division in the Bureau of Competition, and BC Front Office management.

**B.      The FTC's Prior Reviews of Instagram and WhatsApp**

14.     In 2012, FTC attorneys, paralegals, and economists reviewed Facebook's proposed acquisition of Instagram, following HSR filings submitted by Facebook and Instagram. This investigation followed the procedures outlined in Paragraphs 7-13 above.  First, based on information gathered in a preliminary review, in May 2012, FTC Bureau of Competition and Bureau of Economics staff drafted recommendation memoranda to the Merger Screening Committee about whether to seek additional information from Facebook and Instagram – i.e., whether to issue "Second Requests" to Facebook and Instagram.  These recommendation memoranda comprise staff's opinions about legal theories, analysis and mental impressions regarding information from parties and third parties gathered to that point, and opinions and strategy related to further investigation.  Based on these memoranda, the Chair's Office approved issuing Second Requests for additional information to Facebook and Instagram.  Second, likewise based on information gathered during their preliminary review, in May 2012, Bureau of Competition staff drafted recommendation memoranda to the Commission regarding issuing compulsory process, and BC Front Office management drafted a short cover memorandum to the Commission for inclusion with the Bureau of Competition's recommendation package.  The Commission voted to authorize the use of compulsory process.  Third, throughout the investigation, FTC Bureau of Competition and Bureau of Economics staff interviewed third parties and drafted notes reflecting analysis of those interviews.  Finally, after additional investigation, in August 2012, FTC Bureau of Competition and Bureau of Economics staff submitted recommendation memoranda to the Commission along with a cover memorandum from the BC Front Office with respect to closing the investigation. After deliberating on these recommendations, the Commission voted to close the Instagram investigation on August 22, 2012.

15.    In 2014, FTC Bureau of Competition staff reviewed Facebook's proposed acquisition of WhatsApp, following HSR filings submitted by Facebook and WhatsApp.  The review followed the procedures outlined in Paragraphs 7-9 above.  As part of their review, FTC staff reviewed the filings that the parties made pursuant to the HSR Act and interviewed third parties.  FTC Bureau of Competition staff prepared notes containing analysis of third-party information, legal theories, opinions, and strategy as part of FTC staff's deliberations regarding what investigational steps to take.  FTC Bureau of Competition staff also prepared notes related to assigning responsibility for the file to the appropriate merger division as well as analysis related to further investigation.  Ultimately, FTC staff did not take further action at the time with respect to WhatsApp, and the HSR waiting period expired without the Commission issuing Second Requests to Facebook and WhatsApp.

**C.    The FTC Investigation and Litigation Involving Facebook**

16.    In 2019, FTC Bureau of Competition attorneys opened an investigation into whether Facebook had engaged in anticompetitive conduct.  This investigation followed the procedures outlined in Paragraphs 7-9 and 11-13 above.  Based on information gathered during their preliminary investigation, Bureau of Competition and Bureau of Economics staff drafted recommendation memoranda to the Commission about issuing compulsory process, and BC and BE Front Office management each drafted a short cover memorandum regarding staff's recommendation.  After receiving the Commission's authorization to use compulsory process, Bureau of Competition staff and BC Front Office management also provided various recommendation memoranda to the Commission related to issuing specific civil investigative demands, subpoenas *duces tecum*, and subpoenas *ad testificandum,* and ultimately regarding bringing an enforcement action.  The Commission voted to authorize FTC staff to file a complaint in federal court in the above-captioned matter, which the FTC filed on December 9, 2020.

**II.    Deliberative Process Privilege**

**A.    The Documents at Issue**

17.    I have personally reviewed the documents pertaining to merger screening, authorization of compulsory process, and case recommendations related to the 2012 Instagram investigation over which the FTC claims the deliberative process privilege.  These documents are identified and described in Entry Nos. 1-2g of Plaintiff's Privilege Log.  As described above, these documents were prepared in connection with FTC procedures described in Paragraphs 7-13 for screening mergers, obtaining authority to use compulsory process, issuing such process, and closing the investigation.

- Entry Nos. 1-1e comprise staff's recommendation package to the Commission relating to the authorization of the use of compulsory process for the 2012 Instagram investigation.  This recommendation package includes a Commission assignment cover sheet, BC Front Office cover memorandum, Bureau of Competition staff compulsory process recommendation memorandum, Bureau of Competition and Bureau of Economics merger screening recommendation

memoranda (regarding authorization for the use of compulsory process and issuance of Second Requests), and a draft resolution authorizing the use of compulsory process in a nonpublic investigation.

- Entry Nos. 2-2g comprise staff's recommendation package to the Commission with respect to closing the 2012 Instagram investigation. This recommendation package includes a Commission assignment cover sheet, BC Front Office cover memorandum, Bureau of Competition and Bureau of Economics staff recommendation memoranda, and draft letters with respect to closing the investigation.

These documents are pre-decisional because they were prepared prior to, and provided information and analysis to inform, the Commission's decisions in 2012 to authorize compulsory process and close the investigation relating to Instagram. In addition, the recommendation memoranda and affiliated documents in Entry Nos. 1-2g are deliberative, because they communicate the authors' analyses, thoughts, theories, opinions, conclusions, advice, and recommendations made to the Commission. Further, while the recommendation memoranda in these recommendation packages reflect the thoughts of certain members of the FTC staff, they do not necessarily reflect the thoughts or opinions of any individual Commissioner, nor can they be attributed to the agency as a whole. Insofar as these memoranda include facts, such materials are either inextricably interwoven with the authors' own evaluations, analyses, and recommendations or disclose the mental processes of the FTC staff who selected particular facts to discuss.

18.   I have personally reviewed Bureau of Competition investigative notes related to the 2014 WhatsApp review over which the FTC claims the deliberative process privilege. These documents are identified in Entry Nos. 3-4 of Plaintiff's Privilege Log. As described above, these documents were prepared in connection with FTC procedures described in Paragraphs 7-9. They contain FTC staff analysis of facts and the legal issues arising in the review as well as opinions, recommendations, and strategy relating to further investigation. These documents are pre-decisional because FTC staff used these documents to form their opinions and analyses regarding the investigation into the WhatsApp acquisition. These documents are deliberative in nature, because they communicate the authors' analyses, thoughts, theories, opinions, conclusions, advice, and recommendations. Further, while these documents evince the thoughts of certain members of the FTC staff, they do not necessarily reflect the thoughts or opinions of any individual Commissioner, nor can they be attributed to the agency as a whole. Insofar as the notes include facts, such materials are either inextricably interwoven with the authors' own evaluations, analyses, advice, and recommendations or disclose the mental processes of FTC staff who selected particular facts to discuss.

19.   I have personally reviewed the documents pertaining to Bureau of Competition and Bureau of Economic recommendations to the Commission related to the authorization of the use of compulsory process and issuance of civil investigative demands, subpoenas *duces tecum*, and subpoenas *ad testificandum* related to the 2019 Facebook investigation over which the FTC is claiming the deliberative process privilege. As described above, these documents are identified in Entry Nos. 5-13a of Plaintiff's Privilege Log. These documents

were prepared in connection with FTC procedures described in Paragraphs 7-9 and 11-12 for obtaining authority to use compulsory process and issuing such process.

- Entry Nos. 5-5e comprise staff's recommendation package to the Commission relating to the authorization of the use of compulsory process relating to the 2019 Facebook investigation. This recommendation package includes a Commission assignment cover sheet, BC Front Office cover memorandum, Bureau of Competition staff compulsory process recommendation memorandum, BE Front Office cover memorandum, Bureau of Economics staff recommendation memorandum, and a draft resolution authorizing the use of compulsory process in a nonpublic investigation.

- Entry Nos. 6-13a consist of various BC Front Office cover memoranda and Bureau or Competition staff recommendation memoranda to the Commission related to issuing specific civil investigative demands, subpoenas *duces tecum*, and subpoenas *ad testificandum* related to the 2019 Facebook investigation.

These documents are pre-decisional because they were prepared prior to, and provided information and analysis in support of, the Commission's decisions in 2019 to authorize compulsory process and Commissioner decisions to issue specific civil investigative demands, subpoenas *duces tecum*, and subpoenas *ad testificandum* in the 2019 Facebook investigation. In addition, the documents identified in Entry Nos. 6-13a are deliberative in nature, because they communicate the authors' analyses, thoughts, theories, opinions, conclusions, advice, and recommendations made to the Commission. Further, while these recommendation memoranda reflect the thoughts of certain members of the FTC staff, they do not necessarily reflect the thoughts or opinions of any individual Commissioner, nor can they be attributed to the agency as a whole. Insofar as these memoranda include facts, such materials are either inextricably interwoven with the authors' own evaluations, analyses, and recommendations or disclose the mental processes of FTC staff who selected particular facts to discuss.

## B.      The FTC's Governmental Interest

20.     Congress has directed the FTC to investigate and enforce federal antitrust laws including Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45. Effectively discharging this authority requires the ability to formulate and implement sound law enforcement strategies and policy. In my experience, candor and open debate are integral parts of the Commission's exercise of prosecutorial discretion and a vital aspect of its investigative and case selection process. The disclosure of documents like the ones at issue here would severely damage the FTC's ability to formulate and implement policy in furtherance of its statutory responsibilities. The documents identified in Paragraphs 17-19 above and logged in Plaintiff's Privilege Log express the candid and confidential advice and opinions of the authors and are an important part of the FTC's investigative and pre-decisional deliberative process. The disclosure of these internal documents in this lawsuit would chill free and frank analysis and discussion and impede the Commission's law enforcement investigations.

21.     Maintaining the confidentiality of FTC staff thoughts, analyses, recommendations, and advice to senior management and to the Commission is critical to the ability of the Commission to fulfill its Congressionally mandated duties.  If the requested documents are disclosed, thereby revealing, among other matters, the extent to which the Commission and FTC senior managers accepted or rejected FTC staff recommendations, I believe that the Commission's staff would be less candid in offering advice and recommendations in the future.  As a result, important decisions would be made without the benefit of FTC staff's frank evaluation of the facts and the law, and the Commission's ability to provide meaningful responses to Congressional and other public inquiries, to conduct investigations, and to enforce the law would be seriously impaired.  Exposing intra-agency deliberations to persons having interests adverse to those of the government would result in staff reducing fewer things to writing, would inhibit open and full exchange of legal advice, and would not be conducive to the formulation and implementation of sound law enforcement policy.

22.     Considering the pre-decisional, internal deliberative nature of the documents described in Paragraphs 17-19 and logged in Plaintiff's Privilege Log, and my personal judgment that their disclosure would be injurious to the effective discharge of the responsibilities of the FTC – and, ultimately, to the public interest in effective and proper law enforcement – I assert on behalf of the FTC a formal claim that the deliberative process privilege applies with respect to the contents of the documents described in Paragraphs 17-19 and logged in Plaintiff's Privilege Log.

### III.     Investigatory Files Privilege

23.     I also conclude from my review of the documents described in Paragraphs 17-19 and logged in Plaintiff's Privilege Log Entry Nos. 1-13a that disclosing these documents would abridge the Commission's investigatory file privilege (also known as the law enforcement privilege).   As described above, these documents relate to various FTC Bureau of Competition and Bureau of Economics investigation recommendations to the Commission.  FTC attorneys and economists drafted and compiled these documents for law enforcement purposes.  Per Paragraphs 7-13, FTC staff members analyze and incorporate information from third parties into various case notes as well as their recommendation memoranda to the Commission throughout their reviews and investigations.  As noted above, in most instances, third parties provide this information to FTC staff on a confidential basis.  Indeed, it is FTC practice to direct third parties to its statutory obligation to keep investigative material confidential and explain that information provided is exempt from FOIA disclosure.  Disclosure here would deter third party witnesses from coming forward and candidly discussing their views with staff in future investigations.  Additionally, disclosure of the documents at issue would compromise the FTC's ability to investigate and prosecute violations of the law by revealing investigative techniques for gathering and analyzing evidence as well as procedures used in an investigation.

### IV.   Work Product Protection

24.   FTC Bureau of Competition and Bureau of Economics staff perform the review and investigation processes described in Paragraphs 6-13 above in contemplation of litigation. Documents described in Paragraphs 17-19 and identified in Plaintiff's Privilege Log were prepared in the course of active reviews and investigations focusing on specific events by specific parties. As noted in Paragraphs 6-13 above, Bureau of Competition attorneys and Bureau of Economics economists work closely together to conduct and coordinate investigations pursuant to feedback, guidance, and direction from the Chair and the Commissioners of the FTC.

25.   As described in Paragraphs 14-19 above, in the 2012 Instagram investigation, 2014 WhatsApp review, and 2019 Facebook investigation, FTC Bureau of Competition and Bureau of Economics staff gathered information from parties and third parties and drafted notes and recommendation memoranda for a law enforcement purpose. Specifically, FTC staff analyzed each case with the understanding that the Commission could vote to file a complaint as a result of the investigation.

26.   FTC Bureau of Competition and Bureau of Economics staff investigative notes and recommendation memoranda contained in the recommendation packages identified in Paragraphs 17-19 and Plaintiff's Privilege Log reflect analysis based on information gathered by FTC staff in contemplation of litigation. As described above, FTC staff investigative notes and recommendation memoranda from the 2012 Instagram investigation, 2014 WhatsApp review, and 2019 Facebook investigation, reflect FTC staff thought processes, mental impressions, strategies, legal theories, and other work in contemplation of litigation. It is not possible to segregate non-privileged facts from staff's thought processes, mental impressions, strategies, and other work because all of the facts were gathered by FTC Bureau of Competition and Bureau of Economics staff in contemplation of litigation (in particular, a potential enforcement action by the Commission). These investigative notes and recommendation memoranda reflect and reveal FTC Bureau of Competition and Bureau of Economics thought processes, mental impressions, strategies, and other work in determining what areas of inquiry are relevant to their reviews and investigations, what questions should be asked to elicit information deemed relevant to their review or investigation, and what information should be recorded and analyzed as relevant. The FTC staff investigative notes in the 2014 WhatsApp review were prepared by Bureau of Competition staff attorneys. The recommendation packages in the 2012 Instagram investigation and 2019 Facebook investigation were prepared in connection with FTC procedures described in Paragraphs 6-13 above and in anticipation of litigation by, or at the direction of, attorneys at the FTC, including the Chair and Commissioners and through coordination with the Bureau of Competition. In finalizing the recommendation packages to the Commission, FTC Bureau of Competition staff and BC Front Office attorneys compile the relevant documents for the Commission's review, analysis, and deliberation related to the recommendations.

## V.    Attorney-Client Privilege

27.    In my experience as a staff attorney, Counsel to the Director, attorney advisor to various Commissioners, and Bureau Director at the FTC, I have drafted, submitted, and assessed various staff recommendation packages addressed to the Commission.  As described in Paragraphs 6-13, these recommendation packages contain recommendation memoranda drafted by FTC Bureau of Competition staff attorneys that contain legal advice, analysis, and recommendations to their client: the Commission, which is composed of a Chair and up to four other Commissioners.

28.    Recommendation memoranda to the Commission, such as those identified in Plaintiff's Privilege Log, are drafted by FTC Bureau of Competition attorneys in their capacity as lawyers.  During the course of their deliberations related to nonpublic investigations, Commissioners often provide input and seek legal advice from Bureau of Competition staff attorneys regarding legal theories, opinions, or analysis of information gathered in their review or investigation.

29.    Bureau of Competition attorneys analyze and consider Bureau of Economics recommendation memoranda when drafting their recommendation memorandum and recommendation package cover memoranda to the Commission.  Additionally, as described in more detail in Paragraphs 6-13, the Bureau of Competition attorneys and Bureau of Economics economists work closely together to conduct and coordinate an investigation, and the Bureau of Economics provides assistance to the enforcement Bureaus, including the Bureau of Competition, in the investigation and trial of cases.

30.    Because recommendation packages often contain legal advice pertaining to nonpublic investigations, include confidential third-party information, and comprise part of the FTC's internal deliberation and decision-making, the Bureau of Competition attorneys submit their recommendation packages to the Commission on a confidential basis.  These recommendation packages are submitted to the Secretary's Office who maintain their confidentiality and transmit them to the Commissioners' offices.  These communications are handled and expected to be maintained as confidential communications and are exempt from FOIA disclosure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of June, 2022, in Bluemont, Virginia.

Respectfully submitted,

**HOLLY VEDOVA**

Digitally signed by HOLLY VEDOVA
Date: 2022.06.28 15:58:09 -04'00'

Holly Vedova

11