IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 1:20-cv-03590-JEB

**REPLY MEMORANDUM IN SUPPORT OF META PLATFORMS, INC.'S
MOTION TO COMPEL ANSWER TO INTERROGATORY NO. 10
REGARDING THE FTC'S MARKET DEFINITION**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

I.      The FTC Does Not Lack Information About Its Own Construct .......................................2

II.     The FTC Does Not Need Discovery To Answer The Question .........................................5

III.    The FTC's Other Excuses Are Evasions And Non-Sequiturs .............................................6

        A.      The FTC's Alternative Theory Of Market Power Cannot Justify A Refusal To Provide Fundamental Information About The Theory On Which The Court Permitted The Case To Proceed ............................................6

        B.      Meta's Interrogatory Response Has No Bearing On The FTC's Response ........................................................................................................8

        C.      Whether The FTC Considers Features As Potential "Barriers To Entry" Is Irrelevant ...................................................................................8

        D.      Meta Needs This Information Now To Conduct Effective Discovery ...................................................................................................9

CONCLUSION .......................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

\* *Agnew v. NCAA*, 683 F.3d 328 (7th Cir. 2012)..................................................................4, 9

*Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) ..........................5

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins.*, 166 F. Supp. 3d 988
    (N.D. Cal. 2015)..............................................................................................................4, 9

*Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17 (D.D.C. 2009).............................................8

*FTC v. Facebook, Inc.*:

    560 F. Supp. 3d 1 (D.D.C. 2021)........................................................................................7

    --- F. Supp. 3d ---, 2022 WL 103308 (D.D.C. Jan. 11, 2022) ............................................2

*FTC v. Shkreli*, --- F. Supp. 3d ---, 2022 WL 135026 (S.D.N.Y. Jan. 14, 2022)...........................7

\* *King v. E.F. Hutton & Co.*, 117 F.R.D. 2 (D.D.C. 1987) ........................................................5, 6

*Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) ...........................................................................7

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071
    (C.D. Cal. 2017).................................................................................................................4

*Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594 (1953) ...............................................6

\* *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) .............................................................................................4

*United States v. Anthem, Inc.*:

    2016 WL 11164045 (D.D.C. Oct. 10, 2016) ....................................................................10

    2016 WL 11755527 (D.D.C. Sept. 30, 2016) ...................................................................10

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .....................................................7

---

\* Authorities principally relied upon are marked with an asterisk.

**STATUTES AND RULES**

15 U.S.C. § 2 ............................................................................................................................. 7, 10

Fed. R. Civ. P. 26 ............................................................................................................................ 9

**INTRODUCTION**

The FTC avoided a second dismissal of its case by persuading the Court that it had plausibly alleged facts to support the claim that Meta had and has a monopoly share of a relevant antitrust market, the so-called "personal social networking services" market ("PSNS"). One can do many things on Facebook and Instagram, only some of which the FTC considers to be qualifying PSNS activities. That much is clear. Thus, the FTC asserts that its claim depends on the scope of competition for the provision of those specific PSNS activities, and that Meta has a monopoly share of the *PSNS* time that is spent on Facebook, Instagram, and other firms.

The threshold question in this case, therefore, is what activities are PSNS activities, and what time spent is PSNS time? Without that information, Meta cannot fairly defend against the FTC's core monopoly allegation and cannot conduct the fact discovery necessary to rebut the FTC's allegations that there is a distinct market for PSNS in which Meta has a monopoly.

PSNS is an FTC invention, used by no market participant and understood only by the FTC. What consumers can do on Meta services is public information, available to anyone who uses the services, including the FTC. The answer to Meta's interrogatory requires only the mapping of the FTC's definition (which is opaque to Meta) onto the public information. Meta cannot do that; the FTC can. Notwithstanding the FTC's extensive pre-complaint investigation, the FTC says the answer to this fundamental question must wait until an expert reveals it more than a year from now. But Meta needs to know the case it must defend, and in particular what the FTC's market and power allegations actually mean. It needs the information now, so that it can conduct fact discovery targeted at what the FTC is actually alleging. Meta should not be required to guess at what the FTC is claiming; the FTC should be ordered to tell Meta what activities count as use of PSNS under the FTC's market definition.

**ARGUMENT**

The FTC offers a medley of excuses for its refusal to provide a responsive answer to Interrogatory No. 10.  None is persuasive.

**I.      The FTC Does Not Lack Information About Its Own Construct**

The FTC has said, in substance, that nine activities and perhaps *some* other time spent on "surfaces" such as Facebook and Instagram "Feed" and "Stories" are within the market.  But it has not said and cannot plausibly say that *all* activities and time spent on those surfaces or the many other surfaces on Facebook and Instagram are PSNS, as they include activities such as interest-based broadcast or discovery (e.g., viewing a post by a celebrity) (Substitute Am. Compl. ¶ 174 (Sept. 8, 2021), ECF No. 82 ("Am. Compl.")), "passive" "video or audio consumption" (*id*. ¶ 175), and "content broadcasting and consumption" (*id*. ¶ 176) that the FTC specifically excluded from its three-feature qualitative definition of PSNS.  *See id.* ¶¶ 165-176; *see also FTC v. Facebook, Inc.*, --- F. Supp. 3d ---, 2022 WL 103308, at *8 (D.D.C. Jan. 11, 2022) (time spent "passively viewing a music video . . . falls outside of the market definition"). After months of delay, the FTC now claims it doesn't know whether *anything* on Facebook and Instagram beyond its nine activities meets its criteria for using a PSN service.  *See* Pl. FTC's Mem. Law Opp'n Def. Meta Platforms, Inc.'s Mot. Compel at 1 (July 14, 2022), ECF No. 157 ("Opp'n") (claiming that its list of nine activities "fully" reflects its "current understanding" of what counts as use of "[PSNS]"); *id.* at 7-9 (stating it doesn't know whether viewing content on Facebook Marketplace, Facebook Dating, or Instagram Shops or "content on your Facebook Feed that was not posted by one of your Facebook friends constitutes use of [PSNS]").  This is specious.

The FTC has claimed that Meta had and has a high percentage (greater than 70%) of all time spent on PSN services in the United States. *See* Am. Compl. ¶ 202. To make that claim, it necessarily had to determine what activities on Meta's services and the services offered by other firms constitute use of PSNS, and what time spent on the services offered by those firms is PSNS time. Vague statements from Meta executives that the "use cases that we've focused on the most over time are helping you connect . . . with your friends and family," Def. Meta Platforms, Inc.'s Mem. Supp. Mot. Compel, Ex. A at 5 (July 1, 2022), ECF No. 151-3, which the FTC says show that Facebook Blue and Instagram "facilitat[e] friends and family sharing as a distinct service" Opp'n at 10, cannot possibly provide a good faith basis for such a claim, because it is evident that "sharing" is not co-extensive with PSNS. Among other reasons, the FTC itself claims that friends and family sharing on iMessage, LinkedIn, WhatsApp, Twitter, YouTube, and TikTok is *not* PSNS. *See* Am. Compl. ¶¶ 172-176.

Additionally, the nine activities that the FTC now says qualify as PSNS cannot possibly support even the Meta-specific time-spent allegations the FTC reiterates in its opposition. *See* Opp'n at 15 (reiterating its representation that "Facebook Blue and Instagram are 'predominantly used' as [PSNS]," and that the Court can "conservative[ly]" accept that more than 50% of the time users spend on the apps is on PSNS). Even the testimony and documents cited by the FTC indicate that users spend only a small fraction of their time on activities the FTC says qualify as PSNS, and that they use the apps for many things other than those nine activities. *See*, *e.g.*, ███

███

███

███

3

Unless the FTC is prepared to admit that it had *no* actual basis for the factual allegation that allowed its case to proceed, it must come forward with *all* of the activities it has classified as PSNS in order to support that claim.

Whether or not the FTC had a good faith basis for the only allegation of monopoly power that passed muster with the Court, its other allegations prove that it not only can but *has* determined what *it* thinks is PSNS and what isn't. It has alleged that what people do on YouTube, Reddit, TikTok, Twitter, iMessage, Pinterest, LinkedIn, and Nextdoor (and with whom) is never PSNS. *See* Am. Compl. ¶¶ 172-176. What people do on Facebook and Instagram (and with whom), as well as the various features that they can use, is public information known to every user of the product, just like the features of the other applications the FTC claims to understand fully. It is simply not credible for the FTC to assert that it doesn't have enough information to say what features of Meta's applications count for purposes of assessing the FTC's relevant market. Lack of notice about the boundaries of the relevant product market is grounds for dismissal, not an excuse for refusing to answer an interrogatory calling for that information. *See Agnew v. NCAA*, 683 F.3d 328, 346 (7th Cir. 2012) (affirming dismissal based on insufficient "notice of the relevant market" where the "confines of [the alleged product] market are far too unclear"); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (affirming dismissal where court could not "determine the boundaries of the relevant product market"); *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1084 (C.D. Cal. 2017) (dismissing where definition left "unclear what products this might encompass," because such "ambiguities make Plaintiff's market definition unsustainable on its face"); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins.*, 166 F. Supp. 3d 988, 997 (N.D. Cal. 2015) (dismissing because "Plaintiff must provide enough facts [about the

relevant market] to enable the opposing party to defend itself effectively"); *Am. Sales Co. v. AstraZeneca AB*, 2011 WL 1465786, at *3-4 (S.D.N.Y. Apr. 14, 2011) (dismissing where allegations fell "well below the threshold to allege a relevant product market" because "the Court [was] left to speculate" whether certain products were included).

The FTC cannot withhold this information, plainly in its possession, based on professions of supposed ignorance. *See King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5 (D.D.C. 1987) (rejecting plaintiff's attempts to delay interrogatory response, where it was "inconceivable that, after bringing the claims in this case," it could not answer the question, since "Rule 11 is designed to insure that allegations in a complaint, drafted by a member of the Bar, are supported by sufficient factual information at the time the claims are initially asserted").

## II. The FTC Does Not Need Discovery To Answer The Question

The FTC repeatedly claims (Opp'n at 3, 5, 11, 14) that it need not respond further because it is waiting on Meta to produce "documents and data" that will help explain "how users engage with its products and the extent to which Meta's various features and activities are intertwined with its core use case of personal social networking." That is nonsense.

*First*, the FTC has identified no particular internal Meta information that it lacks, and more fundamentally, no discovery is needed for the FTC to apply its invented definition to the consumer-facing features of Meta's services and the competing services of other firms. That exercise does not require any internal documents as the FTC has had no problem doing it for applications such as Twitter, LinkedIn, Reddit, Apple's iMessage, YouTube, and TikTok – from which it does not claim to have had any meaningful discovery. PSNS activities are allegedly what *consumers* do when using certain applications – the FTC has never claimed that it is dependent on what happens behind the scenes, or whether some features are connected to other

features.  The FTC thus cannot explain why internal information is even relevant to whether activities on consumer-facing features qualify as use of PSNS or not.

*Second*, if discovery were necessary (and it isn't) the FTC already had 18 months of pre-complaint investigation, sought and reviewed more than 12 million pages of Meta documents, took testimony from 18 senior Meta executives, and conducted scores of non-party interviews. Pl. FTC's Mem. Supp. Mot. Compel Rule 26(f) Conf. at 6-7 (Apr. 22, 2021), ECF No. 63-1 (arguing FTC was in position "unlike most private litigants" due to its extensive pre-complaint discovery).  Courts routinely reject similar attempts by government plaintiffs to delay interrogatory responses as premature where they have benefited from similar pre-complaint discovery.  Def. Meta Platforms, Inc.'s Mem. Supp. Mot. Compel at 17 (July 1, 2022), ECF No. 151-1 (collecting cases).  The FTC has devoted intense focus to the issue of PSNS, what it is and what it covers.  It cannot plausibly claim to be unable now to assess public, consumer facing features and provide Meta with the basic outlines of its case.  *See King*, 117 F.R.D. at 5 ("It is no answer for plaintiffs to assert that they will need discovery or to consult with an expert[.]").

**III.    The FTC's Other Excuses Are Evasions And Non-Sequiturs**

    **A.    The FTC's Alternative Theory Of Market Power Cannot Justify A Refusal To Provide Fundamental Information About The Theory On Which The Court Permitted The Case To Proceed**

The FTC makes the surprising (and incorrect) argument that it need not provide information about its market definition because it can proceed "without ever" defining a PSNS market.  Opp'n at 12.  The FTC suggests that it intends to meet its burden by proving monopoly power "through direct proof, which does not turn on establishing a relevant market." *Id.*

The FTC has not abandoned its "indirect" theory of market power, which the FTC agrees requires the FTC to prove a relevant market.  (*Times Picayune*, cited by the FTC (Opp'n at 12),

6

assessing the "newspaper advertising market in New Orleans," does not say otherwise.)  But even under what the FTC now foreshadows as a change in direction, it must prove a relevant market.  That the FTC wants to escape its burden here should be telling evidence that it knows it cannot meet that burden.  That is the very opposite of a valid excuse for not responding to an interrogatory.  As the Court held, while the FTC may want "the Court to simply nod to the conventional wisdom that Facebook is a monopolist . . . , 'monopoly power' is a term of art under federal law with a precise economic meaning: the power to profitably raise prices or exclude competition *in a properly defined market*." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 20 (D.D.C. 2021) (emphasis added).  The FTC made "no real direct-proof argument" at the pleading stage, *id.* at 13, and it is the "rare" case in which direct evidence exists or can carry the day.  *Id.* at 12 (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001)).

If the FTC now wants to shift its theory, it still has the burden of establishing a relevant antitrust market.  In *American Express*, the plaintiffs argued that the Court "need not define the relevant market" because they "offered actual evidence of adverse effects on competition." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018).  The Supreme Court rejected that argument, explaining that the challenged conduct "[could not] be evaluated unless the Court first define[d] the relevant market." *Id.*  That must be true:  a plaintiff cannot demonstrate a *market-wide* effect (e.g., higher prices, lower output) without first defining the market.  The cases cited by the FTC do not support its argument here.  *See Microsoft*, 253 F.3d at 51-56 (affirming finding that Microsoft had monopoly power in the market for operating systems); *FTC v. Shkreli*, --- F. Supp. 3d ---, 2022 WL 135026, at *36 (S.D.N.Y. Jan. 14, 2022) (recognizing that "[t]he analysis" in a § 2 case "relies, as a threshold matter, on the definition of the relevant market").

Meta charges no price, and it will therefore be impossible for the FTC to prove that it charges prices higher than competitive prices. To even articulate such a theory, however, the FTC would have to establish the competitive price, which itself would require a determination of the relevant market – that is, the prices offered by the other firms that competed in such a market. Meta is aware of *no case* that has ever adopted what the FTC hints at in its Opposition: a claim that "quality" (however defined), reduced or less than it otherwise might have been, can provide "direct effects" evidence of monopoly power. That theory simply makes no sense for a host of reasons. But even on its own mistaken terms, as with price there would be a need to establish a competitive benchmark, and therefore a need to prove a relevant market.

### B. Meta's Interrogatory Response Has No Bearing On The FTC's Response

In an apparent tit for tat, the FTC complains (Opp'n at 10) that Meta has inadequately answered one of its interrogatories. Meta has answered and has met and conferred about the request, which in substance asked for an exhaustive list of information that is publicly available. Meta will consider supplementing its response, and if the FTC remains unsatisfied it has recourse to the Court. The injection of this unripe matter into this motion is inappropriate and irrelevant. The FTC cannot justify a refusal to answer an entirely appropriate interrogatory based on dissatisfaction with a Meta answer to one of its interrogatories. *See Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 17, 24 (D.D.C. 2009) (a party is "not justified in providing insufficient [interrogatory] answers just because [the other party allegedly] did").

### C. Whether The FTC Considers Features As Potential "Barriers To Entry" Is Irrelevant

The FTC also justifies its non-answer (Opp'n at 11) with the non-sequitur that "even seemingly different services within Facebook Blue and Instagram (like dating or shopping) may bolster entry barriers in [PSNS] – and thus may play a part in preserving Meta's monopoly

8

power." The interrogatory does not ask for "barriers to entry" but rather for whether these and the other services of Facebook and Instagram are included within PSN services, such that some or all time spent on them counts towards any assessment of supposed power in the claimed relevant market. Saying something might be a barrier to entry is simply another dodge and not a justification for a refusal to answer. The FTC does not offer any authority suggesting otherwise.

        **D.**      **Meta Needs This Information Now To Conduct Effective Discovery**

The FTC does not dispute the central importance of the information sought by Interrogatory No. 10; it just wishes to defer its answer until after fact discovery, when it expects to have an expert answer it. The problem, however, is that *fact discovery* is necessary for the examination of the FTC's PSNS theory. The information that Meta will collect from non-parties will depend in significant part on the contours of the FTC's alleged market – what is in, what is out. Meta should not be required to shadow box or guess on these fundamental questions.

The FTC argues that Meta should simply conduct "industry" discovery without reference to the actual allegations it must defend against. Opp'n at 18. It has neither authority nor logic to support that proposition. In every case, discovery not only can but *must* be shaped by the particular allegations. *See*, *e.g.*, Fed. R. Civ. P. 26. Basic information about the contours of the alleged relevant antitrust market presents the clearest example of information that needs to be provided at the outset to shape the case for discovery. *See Agnew*, 683 F.3d at 346 (plaintiffs cannot "attempt[ ] to hedge [its] bets by keeping their market allegations vague" because defendant must have "sufficient notice of the relevant market" to defend itself); *Bay Area Surgical Mgmt.*, 166 F. Supp. 3d at 997 ("Plaintiff must provide enough facts [about the relevant market] to enable the opposing party to defend itself effectively.").

Meta is aware of no case in the 132-year history of the Sherman Act that has proceeded through discovery in which a plaintiff has refused to tell the defendant which portions of its own products are in the alleged market. The cases cited by the FTC provide no support for its position. In *United States v. Anthem, Inc.*, for example, the government was not withholding the identity of the relevant services in the market. 2016 WL 11755527, at *1 (D.D.C. Sept. 30, 2016). The Special Master denied an interrogatory asking the government to go further by identifying "the market share of each competitor" and "the methodology and all data and documents[ ] that support [the] market share calculation." *Id.*; *see also* 2016 WL 11164045, at *5 (D.D.C. Oct. 10, 2016) (denying request that government identify "presumptively unlawful" markets because that, too, depended on same market-share data). In any case, the expert reports including this information were produced within weeks.

There was no argument there, and can be no serious argument here, that a defendant need not be provided with definitive information about the services at issue, well in advance of expert reports. Meta is not now asking for the specific market share of each competitor in the FTC's PSNS market. What Meta is asking for is the information that the plaintiff *had* provided in *Anthem*, and what every antitrust plaintiff has been required to provide in a Section 2 case: enough information about which of the defendant's services are in the claimed market(s), so as to permit the defendant to conduct the discovery necessary to test the claimed market(s).

## CONCLUSION

The Court should order the FTC to provide a complete answer to Interrogatory No. 10, and to state unequivocally which "surfaces" or features available to users on Meta's services provide PSNS and under what circumstances, such that Meta has fair notice as to what time spent on each of its surfaces or features counts as PSNS time spent.

| | |
|---|---|
| Dated: July 21, 2022 | /s/ *Mark C. Hansen*<br>Mark C. Hansen  (D.C. Bar No. 425930)<br>Kevin B. Huff (D.C. Bar No. 462043)<br>Kevin J. Miller (D.C. Bar No. 478154)<br>Kevin D. Horvitz (D.C. Bar No. 1521032)*<br>Hannah D. Carlin (D.C. Bar No. 1719743)<br>KELLOGG, HANSEN, TODD,<br>  FIGEL & FREDERICK, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Tel: (202) 326-7900<br><br>*Counsel for Defendant Meta Platforms, Inc.*<br><br>* Application for Admission to the Bar of the U.S. District Court for the District of Columbia Pending |

11