**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

META PLATFORMS, INC.,

      Defendant.

Case No. 1:20-cv-03590-JEB

**REPLY IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF 2012 AND 2014 FTC MEMORANDA
EVALUATING INSTAGRAM AND WHATSAPP ACQUISITIONS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

I.    The FTC's Voluntary Production to Congress Waived Any Privileges ............................ 2

      A.    The FTC Voluntarily Produced the Memoranda ..................................................... 2

      B.    The FTC Did Not Ensure the Secrecy of the Memoranda ....................................... 4

      C.    The Freedom of Information Act Has No Application Here .................................... 6

      D.    Under the Unique Circumstances of This Case, Fairness Requires
            Waiver .................................................................................................................... 7

II.   The FTC Memoranda Are Not Protected by Any Applicable Privilege or
      Protection ................................................................................................................... 7

      A.    The FTC Cannot Assert Deliberative Process Privilege Here ............................... 8

            1.    The Deliberative Process Privilege Does Not Apply to the
                  Instagram Memoranda from 2012 ............................................................ 8

            2.    The Deliberative Process Privilege Does Not Apply to
                  Factual Materials Contained in the FTC Memoranda ............................... 8

            3.    The FTC Cannot Invoke the Deliberative Process Privilege
                  Because Its Decision-Making Process Is Directly at Issue ...................... 10

            4.    The Balancing Factors Weigh in Favor of Disclosure ............................. 11

      B.    The Work Product Doctrine Does Not Shield the FTC Memoranda
            from Discovery .................................................................................................... 12

            1.    The Bureau of Economics Memoranda Are Not Work
                  Product .................................................................................................. 12

            2.    Any Factual Information from the FTC Memoranda Must
                  Be Produced Because Meta Has a Substantial Need ............................... 13

            3.    There Is No Protected Opinion Work Product .......................................... 14

      C.    The Attorney-Client Privilege and Investigatory File Privilege Do
            Not Apply ............................................................................................................. 15

# TABLE OF AUTHORITIES[*]

Page

**CASES**

*Alexander v. FBI*, 192 F.R.D. 42 (D.D.C. 2000) ..........................................................................12

*All. for the Wild Rockies v. Pena*, 2017 WL 8778579
  (E.D. Wash. Dec. 12, 2017) ........................................................................................................11

*Ashland Oil, Inc. v. FTC*, 548 F.2d 977 (D.C. Cir. 1976) ...............................................................3

*Chisler v. Johnston*, 796 F. Supp. 2d 632 (W.D. Pa. 2011) ..........................................................12

*Ctr. for Biological Diversity v. U.S. Marine Corps*, 2003 WL 26121134
  (D.D.C. Aug. 21, 2003) .................................................................................................................9

*Doe, In re*, 662 F.2d 1073 (4th Cir. 1981) ......................................................................................5

*Exxon Corp. v. FTC*, 466 F. Supp. 1088 (D.D.C. 1978), *aff'd*, 663 F.2d 120
  (D.C. Cir. 1980) ......................................................................................................................3, 12

\* *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000),
  *clarified in part*, 46 Fed. Cl. 827 (2000) ................................................................................1, 6

*FTC v. Bass Bros. Enters., Inc.*, 1984 WL 2952 (N.D. Ohio May 8, 1984) ..................................13

*FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142 (D.C. Cir. 2015) .........................13, 14

*FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C. Cir. 1980) ......................................3

*Howard v. Fowler Bros., Inc.*, 2011 WL 3438407 (W.D. Ky. Aug. 5, 2011) ...............................14

*Judicial Watch, Inc. v. U.S. Dep't of State*, 2019 WL 2452325
  (D.D.C. June 12, 2019), ...............................................................................................................10

\* *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000) .......................................................................11

*Lone Star Indus., Inc. v. FTC*, 1984 WL 21979 (D.D.C. Mar. 26, 1984) .................................12-13

*Lundy v. Interfirst Corp.*, 105 F.R.D. 499 (D.D.C. 1985) .............................................................11

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) ...............................................12

*Murphy v. Dep't of Army*, 613 F.2d 1151 (D.C. Cir. 1979) ...........................................................6

*NCUA v. First Union Cap. Mkts. Corp.*, 189 F.R.D. 158 (D. Md. 1999) .....................................10

---

[*] Authorities principally relied upon are marked with an asterisk.

*Neumann v. Vidal*, 1981 WL 2219 (D.D.C. Nov. 9, 1981)............................................................8

*New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021),
     *appeal pending*, No. 21-7078 (D.C. Cir.) ..........................................................10

\* *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931 (D.C. Cir. 1982) ................................9, 14

*Protect Democracy Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
     569 F. Supp. 3d 25 (D.D.C. 2021) ....................................................................9

*Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598 (D.C. Cir. 2001) ....................................6, 7

*Safeway Stores Inc. v. FTC*, 428 F. Supp. 346 (D.D.C. 1977) ..........................................7

*Sealed Case*, *In re*:

     676 F.2d 793 (D.C. Cir. 1982) ........................................................................7, 15

     \*121 F.3d 729 (D.C. Cir. 1997) ..............................................................1, 2, 3, 11

*Spirko v. U.S. Postal Serv.*, 147 F.3d 992 (D.C. Cir. 1998) ............................................9

*Subpoenas Duces Tecum*, *In re*, 738 F.2d 1367 (D.C. Cir. 1984) ...............................5, 7

\* *Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, *In re*,
     145 F.3d 1422 (1998), *on reh'g*, 156 F.3d 1279 (D.C. Cir. 1998) ............................10, 11

*Swartwood v. Cnty. of San Diego*, 2013 WL 6670545
     (S.D. Cal. Dec. 18, 2013)...............................................................................12

*Texas v. United States*, 49 F. Supp. 3d 27 (D.D.C. 2014), *aff'd*, 798 F.3d 1108
     (D.C. Cir. 2015) .............................................................................................2

*Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890
     (D.D.C. Dec. 16, 2005) ..................................................................................15

\* *United States v. Philip Morris Inc.*, 212 F.R.D. 421 (D.D.C. 2002) ..........................................1, 2

*United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419
     (D.D.C. 2014) ...........................................................................................13-14

**STATUTES AND REGULATIONS**

Civil Rights Act of 1964, tit. VII, 42 U.S.C. § 2000e *et seq.* ......................................................11

Freedom of Information Act, 5 U.S.C. § 552 ..........................................................................2, 6

5 U.S.C. § 552(c) (1982) ........................................................................................6, 7

5 U.S.C. § 552(d) ...................................................................................................6, 7

15 U.S.C. § 46(f) .........................................................................................................3

15 U.S.C. § 57b-2(b)(3)(C) .........................................................................................3

42 U.S.C. § 1983 ........................................................................................................12

16 C.F.R.:

§ 0.18 .............................................................................................................12

§ 4.11(b) ...........................................................................................................3

## OTHER MATERIALS

FTC, *Freedom of Information Act & Privacy Act Handbook* (Feb. 2017),
https://www.ftc.gov/system/files/attachments/foia-request/
foiahandbook_2017.pdf ................................................................................. 8

Ltr. from Chairwoman C. Maloney to Members of House Committee on
Oversight and Reform (July 20, 2022), *available at*
https://oversight.house.gov/sites/democrats.oversight.
house.gov/files/2022.07.20%20COR%20Census%20Memorandum.pdf ..........................4

Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm.
on the Judiciary, Investigation of Competition in Digital Markets:
Majority Staff Report and Recommendations, 117th Cong. (July 2022) ..........................5

*The FTC Report on Google's Business Practices*, Wall St. J. (Mar. 24, 2015),
http://graphics.wsj.com/google-ftc-report/ ........................................................................9

There are no applicable privileges that justify the unfair denial of access to the critically important collections of facts and analyses prepared by the FTC in 2012 and 2014.  Meta needs that information to defend itself in this unprecedented action to break up the company formed in significant part by those acquisitions.  The FTC has the burden of establishing the basis for withholding each of the eight documents at issue; it has not met that burden as to any of the scattershot privilege claims it has rolled out in its opposition.

But there is no need to consider privilege at all:  It is black-letter law that even privileged information loses any claim to protection after it has been shared voluntarily and unconditionally with third parties.  *See*, *e.g.*, *In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997) (per curiam).  The FTC handed over the eight memoranda to the House Judiciary Committee ("HJC") in 2019, under no legal obligation to do so and with no promise of confidentiality.  There is simply no credible argument that this did *not* effect a complete waiver of any claim of privilege.  Courts have routinely held that such sharing with third parties, including elected representatives and their staff, effects a waiver.  *See*, *e.g.*, *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 425-26 (D.D.C. 2002); *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 319 (2000), *clarified in part on other grounds*, 46 Fed. Cl. 827 (2000).  The FTC cites to no authority for the sweeping and unlimited exception to waiver law that it asks this Court to create.

If there was no harm to the FTC's legitimate interests and internal processes in voluntarily handing these documents over to Congress, which was conducting an investigation and preparing a public report, there can be no credible claim of harm from disclosing the documents to Meta under the Court's Protective Order.  Meta has a manifest need for those highly relevant and potentially dispositive materials, and cannot fairly be required to defend the unprecedented case the FTC has brought without them.

## I.      The FTC's Voluntary Production to Congress Waived Any Privileges

The FTC waived any privileges by voluntarily and unconditionally sharing the memoranda with Congress.  Mot. 28-30.  The FTC effectively concedes (by its silence) that producing these memoranda waived any attorney-client or investigatory file privilege.  *See Texas v. United States*, 49 F. Supp. 3d 27, 39-40 (D.D.C. 2014) ("[I]t is well-established that courts may deem the unaddressed arguments as conceded."), *aff'd*, 798 F.3d 1108 (D.C. Cir. 2015).  There were no such privileges to waive in any case.  Mot. 11-28; *infra* pp. 13-14.

The FTC contends that it did not waive deliberative process privilege or work product protection because (1) the FTC did not voluntarily produce the memoranda to Congress; (2) the FTC purportedly ensured the memoranda would be kept secret from the public and its adversaries; and (3) the D.C. Circuit's Freedom of Information Act ("FOIA") jurisprudence precludes any finding of waiver.  The FTC's argument is incorrect on all three points.  Its wish to please Congress by voluntary production does not come close to establishing compulsion; its passing hope that Congress would keep the documents confidential does not come close to establishing enforceable confidentiality obligations; and FOIA jurisprudence simply has no applicability to Meta's demand for discovery in this litigation.  The FTC's voluntary and unconditional production waived any work product protection or deliberative process privilege that might have applied.  *See Sealed Case*, 121 F.3d at 741-42 (voluntary disclosure to third parties waived deliberative process privilege); *Philip Morris*, 212 F.R.D. at 425-26 (production to Congress waived work product privilege).

### A.      The FTC Voluntarily Produced the Memoranda

The FTC admits that it could have required a subpoena from the HJC compelling production of the memoranda.  It chose instead to proceed voluntarily.  The voluntary nature of the production is underscored by the fact that, by the FTC's own account, the FTC

Commissioners needed to vote to produce in response to a letter from the Committee that merely "request[ed] that the FTC provide" those documents.  ECF No. 160-2; *see* Tucci Decl. ¶¶ 11-13 (citing 16 C.F.R. § 4.11(b)).  As a matter of black-letter law, this voluntary production waives any claim of privilege.  *See Sealed Case*, 121 F.3d at 741-42.

The FTC argues (at 17-18) that the Committee's "request for information" had "the same effect as a subpoena."  Not so.  The authority the FTC cites **permits** the agency to share nonpublic information – particularly, third-party confidential information – with Congress, but it does not **require** the agency to do so.  *See* 15 U.S.C. § 57b-2(b)(3)(C).  *Exxon Corp. v. FTC*, 466 F. Supp. 1088 (D.D.C. 1978), *aff'd*, 663 F.2d 120 (D.C. Cir. 1980), *Ashland Oil, Inc. v. FTC*, 548 F.2d 977 (D.C. Cir. 1976) (per curiam), and *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C. Cir. 1980), hold that 15 U.S.C. § 46(f), which provides that the FTC does "not have any authority to make public" third-party confidential information, "does not preclude the FTC from transmitting [a third party's] trade secrets to Congress pursuant either to subpoena or formal request."  *Ashland Oil*, 548 F.2d at 979.  Those cases do not hold that the FTC must treat a "request" from Congress as having the same legal force as a subpoena.  *See id.* at 981 n.6 ("express[ing] no opinion on the FTC's *obligations* in response to Congressional requests").  It is obviously not true that a simple letter from a Congressional committee compels production.

The FTC also claims (at 17) that its "policy" has been to comply with all Congressional requests for "nonpublic" documents "since at least the 1970s."  Tucci Decl. ¶ 9.  That is irrelevant.  If that has been the policy, then it has also necessarily been the policy to waive any privilege claim as to the documents provided – because that is the legal effect of such a policy.  Saying the FTC chooses to do something does nothing to establish that the FTC is legally required to do it, and the FTC cites no law or regulation requiring it to comply with all Congressional requests for documents.

Indeed, FTC Commissioners have recognized that voluntary disclosure to Congress is unnecessary as well as inconsistent with maintaining confidentiality.  In 1988, Commissioner Calvani explained that he "decided not to comply with the subcommittee's request" because doing so would chill speech, undermine the agency's independence, and risk disclosure of the documents "to the press."  Ex. A (Energy Committee Hearing), at 47.  Whether the FTC's decision to produce the memoranda here was a one-off or standard procedure makes no difference; either way, it was voluntary, and voluntary production effects a waiver.

### B.    The FTC Did Not Ensure the Secrecy of the Memoranda

Even for a compelled production, the FTC would have to demonstrate that it had made reasonable efforts to maintain the secrecy of the purported privileged memoranda.  But here it made no such effort.  The FTC could have secured, but did not secure, an agreement from the HJC that the materials would not be released, shared, quoted, or otherwise disclosed.  While the FTC touts (at 19) a "cover letter" that "request[ed] that the Committee and Subcommittee and their staffs not disclose any of the nonpublic information provided," ECF No. 160-3, a mere request does not support the FTC's claim that it took necessary steps to ensure confidentiality. Such polite requests are routinely disregarded by Congress.  Indeed, just last week, the Committee disregarded Meta's similar request and released portions of a document Meta had requested remain confidential.  And Congress regularly releases documents over which Executive Branch officials have claimed privileges, including deliberate process privilege.  *See generally* Ltr. from Chairwoman C. Maloney to Members of House Committee on Oversight and Reform (July 20, 2022), *available at* https://oversight.house.gov/sites/democrats.oversight. house.gov/files/2022.07.20%20COR%20Census%20Memorandum.pdf.  The FTC's actions "substantially and freely increased the possibility of disclosure to, and use by, anyone [Congress]

desired"; therefore, it "effectively forfeited any protection provided by the work product rule." *In re Doe*, 662 F.2d 1073, 1082 (4th Cir. 1981).

The FTC provided the documents to an investigatory body that was preparing a report *on the FTC's actions*, among other things.  The HJC, which has agency oversight responsibility, sought the documents as part of its investigation of the FTC's enforcement efforts, and specifically its actions in 2012 and 2014 regarding the acquisitions at issue in this case.  Indeed, the HJC concluded in its report that the FTC was "neglecting to fulfill its broad legislative mandate."  Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, Investigation of Competition in Digital Markets: Majority Staff Report and Recommendations, 117th Cong. 339 (July 2022).  In handing documents voluntarily to a body that was investigating it, and potentially criticizing its actions, the FTC was in an adversarial or at least potentially adversarial posture with the HJC.  The disclosure effected a waiver.  *See In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984) ("selective disclosure to particular adversaries" waives work product privilege).

The FTC asks the Court to relieve it of the black-letter consequences of its voluntary and unprotected production because, it claims (at 21), its only alternative was to refuse all cooperation with Congress.  That is both irrelevant and untrue.  The HJC expressly "encourage[d] the FTC to communicate specific concerns" and offered to "discuss potential avenues for addressing them."  ECF No. 160-2, at 2.  The FTC, like many faced with similar Congressional requests, could have requested that the Committee issue a subpoena.  It could have required the Committee to agree to confidentiality protections prior to disclosure of the documents.  Commissioners have previously negotiated and obtained such protections.  *See* Ex. A at 3 (documents for which privilege claimed made available for inspection by Congress in the FTC offices).  Here the FTC did not even try, which demonstrates that it has no serious or

5

legitimate reasons for keeping the documents secret; it merely wants to keep them from a litigation adversary – and the Court – supporting the inference that they are contrary to what the FTC has been telling the Court since it filed this case.

### C.     The Freedom of Information Act Has No Application Here

A defendant faced with a potentially devastating lawsuit, seeking critically important information for its defense, stands in a position different from a citizen who seeks government information under FOIA.  As Meta showed (at 29-30), *Murphy v. Department of Army*, 613 F.2d 1151 (D.C. Cir. 1979), and *Rockwell International Corp. v. Department of Justice*, 235 F.3d 598 (D.C. Cir. 2001), apply only to requests made by members of the public.  In those cases, the D.C. Circuit interpreted FOIA as providing that, when an agency discloses documents to Congress, "no waiver occurs of the privileges and exemptions which are available to the [agency] ***under the FOIA with respect to the public at large***."  *Murphy*, 613 F.2d at 1156 (emphasis added). Ergo, agency sharing with Congress does not open the door to unlimited FOIA access to the shared information.  That is all those cases considered or held.  Neither even addresses whether an agency's disclosure to Congress waives privileges as to civil litigation.  In that context, courts have found that disclosure to Congress *does* effect waiver.  *See First Heights Bank*, 46 Fed. Cl. at 319 ("the Government chose to disclose the advice it received from its attorneys in an effort to bolster the credibility of its request for Congress to 'clarify' the law on deductions of covered asset losses"; privilege waived).

The FTC claims (at 19) that the D.C. Circuit was not interpreting FOIA in *Murphy* and *Rockwell*.  That is incorrect.  In *Murphy*, the D.C. Circuit repeatedly explained that it was construing FOIA and, specifically, then-§ 552(c), which is today codified at § 552(d).  *See* 613 F.2d at 1158 ("What is at issue is the construction to be given to that provision of the law . . ."); *id*. at 1157 ("The statute is more sensibly constructed . . .").  In *Rockwell*, the D.C. Circuit

explained that its holding was "controlled . . . by *Murphy*," which "relied mostly on FOIA

section 552(d) (at the time codified at section 552(c))." 235 F.3d at 604. *Safeway Stores Inc. v.*

*FTC*, 428 F. Supp. 346, 347 (D.D.C. 1977) – a district court ruling that preceded *Murphy* – also

expressly relied on then-§ 552(c). If *Rockwell* has any relevance, it is only to confirm that the

FTC could have made efforts to avoid waiver while still cooperating with Congress, but failed to

do so. In that case, the Justice Department "attempted to preserve" its privileges by giving "the

documents to the Subcommittee only after the Subcommittee expressly agreed not to make them

public." 235 F.3d at 604.

### D.      Under the Unique Circumstances of This Case, Fairness Requires Waiver

In deciding whether the FTC has waived privilege, this Court must also consider whether,

under the circumstances, "fairness negates the assertion of the privilege." *Subpoenas Duces*

*Tecum*, 738 F.2d at 1371 (brackets omitted); *see In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir.

1982). It would be fundamentally unfair to allow the FTC to freely share memoranda about

Meta with Congress, but withhold those memoranda from Meta, *see Subpoenas Duces Tecum*,

738 F.2d at 1372 ("voluntary disclosure of work product to one adversary" while "protecting that

same work product from other adversaries" is unfair), to the detriment of the "truth-seeking

process" in this case, *Sealed Case*, 676 F.2d at 807.

## II.      The FTC Memoranda Are Not Protected by Any Applicable Privilege or Protection

Even if the Court were to find the FTC's conduct did not effect a waiver (it did), the

Court should nonetheless order production of the memoranda because the FTC has not met its

burden of establishing any privilege here.

A.       **The FTC Cannot Assert Deliberative Process Privilege Here**

1.       <u>The Deliberative Process Privilege Does Not Apply to the Instagram
Memoranda from 2012</u>

When the memoranda at issue here were drafted in 2012 and 2014, the FTC recognized

that these documents should not be kept from the public forever; it had an express policy

advising its employees that no deliberative process claim would be made after ten years.  *See*

FTC Opp'n 8; Tucci Decl. ¶ 19.  The individuals who authored the memoranda therefore did so

with the understanding that they could be released ten years later.  There is no credible argument

that such anticipated release in 2022, consistent with FTC policy, could have a "chilling effect."

While the FTC now claims to have changed its policy in 2016 (its 2017 handbook still included

the policy, *see* FTC, *Freedom of Information Act & Privacy Act Handbook* 6 (Feb. 2017),

https://www.ftc.gov/system/files/attachments/foia-request/foiahandbook_2017.pdf, the fact

remains that documents created with no expectation of long-term secrecy need not and should

not retroactively be made secret, contrary to the operative FTC policy.  That policy was

eminently sensible.  It is troubling that the FTC continues to try to hide its ten-year-old

Instagram decision-making and eight-year-old WhatsApp decision-making, not only from the

public, but from the company that relied on the FTC's clearance of those transactions and needs

the memoranda for its defense.

2.       <u>The Deliberative Process Privilege Does Not Apply to Factual Materials
Contained in the FTC Memoranda</u>

The FTC is wrong to suggest (at 9) that Meta is not seeking any genuine "facts."  Meta

expects the facts in these memoranda to include facts bearing directly on "the relevant market[,

which] is predominantly a question of fact."  *Neumann v. Vidal*, 1981 WL 2219, at *1 (D.D.C.

Nov. 9, 1981).  The FTC argues (at 16-17) that former Deputy Director Royall has not reviewed

the specific memoranda at issue and can speak only about standard practice.  *See* Royall Decl.

¶ 8.  But Director Vedova – who did review the memoranda – does not deny that the memoranda recite facts, as they obviously must.  A leaked FTC Bureau of Competition memorandum regarding Google's advertising practices, also written in the summer of 2012, includes a *60-page* "Statement of Facts" section.  *See The FTC Report on Google's Business Practices*, Wall St. J. (Mar. 24, 2015), http://graphics.wsj.com/google-ftc-report/.

The FTC argues (at 8-10) that disclosure of the facts in its memoranda would reveal the thought process of the authors.  That sweeping excuse for non-production has been definitively rejected.  In *Playboy Enterprises, Inc. v. Department of Justice*, 677 F.2d 931 (D.C. Cir. 1982), the D.C. Circuit rejected the agency's argument that an entire report was privileged because the "narration of the facts . . . reflects the evidence selected and credited."  *Id.* at 935.  The court explained:  "a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material" because, "[i]f this were not so, every factual report would be protected as a part of the deliberative process."  *Id.*

The documents should be disclosed without redaction.  But at a minimum, before withholding any part of any of the documents from Meta, the Court would need to conduct an *in camera* review – something the FTC tellingly opposes.  *See Protect Democracy Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 569 F. Supp. 3d 25, 42 (D.D.C. 2021) (ordering *in camera* review when unclear whether factual material would reveal deliberative processes given lack of detail from government); *Ctr. for Biological Diversity v. U.S. Marine Corps*, 2003 WL 26121134, at *6-7 (D.D.C. Aug. 21, 2003) (district court "ha[d] no choice" but to conduct *in camera* review where government made a "conclusory assertion that 'the factual material . . . is inextricably connected with this deliberative material'") (citation omitted); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (collecting cases remanding cases to district court to conduct *in camera* review).  The FTC says (at 26) the Court cannot look at these

documents because the FTC's secrets and internal candor would be compromised.  It had no such

concern in voluntarily disclosing the documents to the HJC, and the notion that *in camera* review

presents a greater risk than that is absurd.  The FTC does not want the Court to see the

documents, stated bluntly, because they will reveal the FTC directly contradicting the assertions

they have made in this litigation, at the time most relevant to this litigation (when the

acquisitions were studied and cleared).

      3.      <u>The FTC Cannot Invoke the Deliberative Process Privilege Because Its Decision-Making Process Is Directly at Issue</u>

The FTC acknowledges (at 10-12) that the deliberative process privilege may be

inapplicable where its intent is at issue.  But it argues that Meta's equitable defenses do not

satisfy that standard.  First, the FTC says (at 12) that Meta's defenses are "farfetched."  But the

FTC has not sought to strike any of the supposedly "farfetched" affirmative defenses and cannot

avoid discovery squarely relevant to those defenses by debating their merits.  *See NCUA v. First*

*Union Cap. Mkts. Corp.*, 189 F.R.D. 158, 161 (D. Md. 1999) (defendants entitled to seek

discovery related to "affirmative defenses . . . still in this case").  As Meta explained (at 15), the

FTC's intent and decision-making process in 2012 and 2014 bears directly on its equitable

defenses of estoppel, waiver, and laches.  For the same reasons, the basis for and the timing of

the FTC's actions are relevant to any equitable remedy.  *See New York v. Facebook, Inc.*, 549 F.

Supp. 3d 6, 35 (D.D.C. 2021).  Just as in *Judicial Watch, Inc. v. U.S. Department of State*, 2019

WL 2452325, at *2 (D.D.C. June 12, 2019), issues in this case "hinge[] on what [the FTC] knew

and when they knew it."

Second, the FTC argues (at 10-11) that Meta must present "credible claims that improper

factors" motivated the FTC's current enforcement action against Meta.  The FTC is wrong.  *In re*

*Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422 (1998)

("*OCC*"), *on reh'g*, 156 F.3d 1279 (D.C. Cir. 1998), and *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000), establish that the deliberate process privilege is inapplicable when "the government's intent" or "the nature of governmental officials' deliberations" is at issue. *OCC*, 145 F.3d at 1424-25. While "credible claims that improper factors" motivated an agency's decision – such as a Title VII claim – bear upon the government's intent, *Landry*, 204 F.3d at 1136, such claims are not required. Indeed, in *OCC*, the D.C. Circuit expressly rejected the "misconduct" test applied by the district court, which demanded such claims. 145 F.3d at 1425.

4.    The Balancing Factors Weigh in Favor of Disclosure

Even if privilege applies and can be asserted (it doesn't and it can't), the FTC memoranda should be disclosed in their entirety because every balancing factor strongly favors disclosure. Mot. 16-20. Meta has a strong need for the memoranda and the FTC's arguments to the contrary are unavailing. *Infra* pp. 13-14.

The FTC's argument (at 12-13) that initiating a lawsuit is insufficient to effect waiver is misdirected. As Meta explained (at 18), under D.C. Circuit law, the FTC's role as a plaintiff in this litigation is indeed an additional factor that weighs in favor of disclosure. *See, e.g.*, *Sealed Case*, 121 F.3d at 737-38; *All. for the Wild Rockies v. Pena*, 2017 WL 8778579, at *7 (E.D. Wash. Dec. 12, 2017). *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 505 (D.D.C. 1985), supports this conclusion. In *Lundy*, another judge of this Court decided two motions to compel against the government in two distinct banking cases, in both of which the government asserted the deliberative process privilege. The Court denied the motion in the first case, where the government was "truly a third party," finding that the subpoena was overbroad. *Id.* at 502-03. But the Court granted in part the motion in the second case, rejecting the privilege claim, where the government was the plaintiff. *Id.* at 503.

The FTC asserts (at 29) that *Chisler v. Johnston*, 796 F. Supp. 2d 632, 641 (W.D. Pa. 2011), *MacNamara v. City of New York*, 249 F.R.D. 70, 82 (S.D.N.Y. 2008), and *Swartwood v. County of San Diego*, 2013 WL 6670545, at *6 (S.D. Cal. Dec. 18, 2013), are irrelevant because they involved claims under 42 U.S.C. § 1983.  In fact, the cases are directly on point:  the courts rejected deliberative process claims after finding that government documents were highly relevant and unavailable elsewhere.

**B.      The Work Product Doctrine Does Not Shield the FTC Memoranda from Discovery**

    1.      The Bureau of Economics Memoranda Are Not Work Product

The work product doctrine does not apply to the Bureau of Economics memoranda because the FTC has failed to come forward, as was its burden, with "specific information" establishing that economists in the Bureau of Economics drafted these memoranda at the direction of attorneys.  *Alexander v. FBI*, 192 F.R.D. 42, 45-46 (D.D.C. 2000).  The FTC vaguely asserts (at 15) that its economists generally "work closely" with attorneys and sometimes – but, admittedly, not always – work at the direction of attorneys.  Vedova Decl. ¶¶ 6-13, 24.  That is not enough.  The FTC has not offered "specific information" about the creation of the two memoranda at issue.  If the agency followed its standard process, economists – not attorneys – drafted these memoranda and provided their own, independent recommendations.  *See* Royall Decl. ¶ 5.

The authority the FTC cites (at 14-15) is either off-point or favors Meta.  16 C.F.R. § 0.18 simply describes the Bureau of Economics; unremarkably, it "is responsible for the preparation of various economic reports."  *Exxon*, 466 F. Supp. at 1090, addressed a report drafted by outside economic experts the FTC specifically hired to assist in the prosecution of Exxon – not the Bureau of Economics.  In *Lone Star Industries, Inc. v. FTC*, 1984 WL 21979, at *4 n.2 (D.D.C.

Mar. 26, 1984), the court did not classify Bureau of Economics memoranda as work product because there was "no clear evidence that they were prepared under an attorney's direction." And *FTC v. Bass Bros. Enterprises, Inc.*, 1984 WL 2952, at *1 (N.D. Ohio May 8, 1984), did not reach the question whether a report prepared by a "staff economist and an accountant" was work product.

> 2.    Any Factual Information from the FTC Memoranda Must Be Produced Because Meta Has a Substantial Need

Work product or not, all factual information must be produced because Meta has demonstrated a substantial need for that information, and it is unavailable through other means. *See FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 153 (D.C. Cir. 2015); Mot. 22-26.  The FTC does not deny that its memoranda may contain information about the third-party documents the FTC concedes "no longer exist" and the 45 third parties the FTC interviewed or sought to interview during its 2012 and 2014 investigations.  FTC Opp'n 22, 24.

The FTC (at 22) tells Meta to go hunt for this information now.  But memories have inevitably faded over the last decade.  Witnesses who could provide important testimony about competitive conditions in 2012 or 2014 may find it difficult to provide the same detail now, especially without the benefit of contemporaneous documents to refresh their recollections. Information about what witnesses told the government in 2012 and 2014 may provide key insight, jog memories, or expose untruthful testimony.  Moreover, notes of testimony given in 2012 and 2014 might be the only source of certain information; witnesses may no longer be alive or may have forgotten things.  We know that relevant documents have already been lost, even by the FTC, as its attorneys have admitted.  The 2012 and 2014 memoranda are critical repositories of important factual information highly relevant to this case.  The FTC does not and cannot claim otherwise.  Fairness requires that Meta have equal access to this information.  *See United States*

*ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. 2014) (ordering the government to produce "fact" work product concerning an earlier investigation because "fairness dictates that both sides have equal access" to information about "witnesses' initial, unadorned testimony on the key issues" that might "reveal how the witnesses' testimony and recollections may have changed over time"); *Howard v. Fowler Bros., Inc.*, 2011 WL 3438407, at *2 (W.D. Ky. Aug. 5, 2011) (similar).

The FTC (at 16-17) again makes the same argument that was discredited in *Playboy*: "fact work product" cannot be segregated from "opinion work product," such that facts can never be disclosed.  But facts can be segregated, if that is even necessary here (it isn't, for the reasons stated above at p. 10).  *See, e.g.*, *Boehringer Ingelheim*, 778 F.3d at 152 (court must conduct *in camera* review to determine whether facts should be disclosed).  The FTC's position that such review cannot be conducted here is unsupported (there is no basis for distrusting the Court when the FTC has trusted the Congress).

### 3.    There Is No Protected Opinion Work Product

The FTC admits (at 16) that opinion work product is discoverable in "extraordinary" circumstances.  This case presents "extraordinary" circumstances because the memoranda contain information from 2012 and 2014 that is no longer available from other sources and is centrally relevant to Meta's affirmative defenses of laches and estoppel.  *Supra* pp. 10, 13.  The FTC predictably makes the parade-of-horribles argument (at 26) that granting Meta access to these documents will open the floodgates for future litigants.  The Court should decide this motion on the facts present here, not based on spectral arguments about what might or might not happen in other cases.  This is a highly unusual case, an unprecedented case.  This is the first time the FTC has ever sued a company over acquisitions *it reviewed and cleared* a decade or

eight years earlier.  Meta easily satisfies the "extraordinary showing of necessity" standard, even if the memoranda do contain opinion work product.  *Sealed Case*, 676 F.2d at 811.

### C. The Attorney-Client Privilege and Investigatory File Privilege Do Not Apply

The FTC has waived any claim of attorney-client and "investigatory file" privileges, *supra* pp. 2-7, and has no such privileges in any event.

It has no attorney-client privilege because, as Meta explained (at 26-27), it identifies no communication revealing information belonging to the *Commission*.  Communications analyzing information provided by third parties or Meta do not suffice.  The FTC cites no authority supporting any attorney-client privilege here.

The FTC's argument as to the investigatory file privilege (at 30) is similarly misdirected. As Meta explained (at 27), courts apply a multi-factor test to determine if the privilege applies, and that test strongly favors Meta.  The factors that weigh strongly in Meta's favor include whether an "investigation has been completed" and "the importance of the information sought." *Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890, at *9 (D.D.C. Dec. 16, 2005). The FTC vaguely asserts (at 30), without specificity or factual support, that these very old documents might disclose "law enforcement techniques."  But it points to none that is still used, not already a matter of public record, or not described in its declarations.  Whatever tenuous relevance that spectral argument may have is outweighed by the many concrete factors that favor Meta, as Meta has demonstrated (at 27-28).

Dated: July 26, 2022

Respectfully submitted,

/s/ *Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
Kevin B. Huff (D.C. Bar No. 462043)
Leslie V. Pope (D.C. Bar No. 1014920)
L. Vivian Dong (D.C. Bar No. 1722506)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900

*Counsel for Defendant Meta Platforms, Inc.*