IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| *Plaintiff,* | ) |
| v. | ) Case No. 1:20-cv-03590-JEB |
| META PLATFORMS, INC., | ) HON. JAMES E. BOASBERG |
| *Defendant.* | ) |

## NON-PARTY TIKTOK INC.'S MOTION TO DENY DEFENDANT'S DESIGNATED IN-HOUSE COUNSELS ACCESS TO HIGHLY CONFIDENTIAL INFORMATION

Pursuant to ¶ E(3) of the Protective Order entered by the Court on March 25, 2022, Non-Party TikTok Inc. ("TikTok") respectfully submits this motion to deny Defendant Meta Platforms, Inc.'s ("Meta") In-House Counsel designated under paragraph D(1)(d) of the Protective Order from accessing TikTok's Highly Confidential Information.

In a matter where Meta is represented by at least five separate law firms (Wilmer Cutler Pickering Hale & Dorr LLP; O'Melveny & Myers LLP; Davis Polk & Wardwell LLP; Cravath, Swaine & Moore LLP; and Kellogg, Hansen, Todd, Figel & Frederick, PLLC), Meta's *in-house* counsel should not also have access to the most competitively sensitive information of a *non-party* that Meta itself has described as a "critical competitor" to this Court. Even assuming that Meta's proposed designated In-House Counsel, Eric Meiring and Christen Dubois, have the best of intentions, the fact remains that both are in-house antitrust counsel, they cannot unlearn any highly sensitive competitive information they receive from TikTok, and it is unclear how they can do their job as in-house antitrust lawyers without advising Meta on competitive matters.

TikTok therefore respectfully requests that the Court deny Meta's request for Mr. Meiring and Ms. DuBois to have access to any Highly Confidential Information produced by non-party TikTok in response to the Rule 45 subpoena issued by Meta to TikTok on February 24, 2022, in the above-captioned Action.

I.     **Background**

TikTok is a non-party to this antitrust litigation, in which the Federal Trade Commission ("FTC") is suing Meta for alleged anticompetitive conduct and monopolization of personal social networking services. (Amended Compl., ECF 82, ¶ 10.) Prior to filing its Complaint, the FTC undertook an investigation, FTC v. Facebook, Inc., FTC No. 191-0134 (Dec. 9, 2020) (the "Investigation"), regarding potential anticompetitive conduct by Defendant. (Protective Order, ECF 134, ¶ A(1)(i).) During the course of this Investigation, TikTok produced highly confidential, competitively sensitive materials to the FTC.

On February 24, 2022, Meta served a Rule 45 subpoena on TikTok in the above-captioned matter (the "Subpoena"). Declaration of Julia K. York Decl. ("York Decl.") ¶ 3. The massively overbroad subpoena contains 54 requests for production (not including subparts) seeking documents and data concerning all aspects of TikTok's business, including the confidential information produced by TikTok to the FTC relating to the Investigation. TikTok and Meta are engaged in discussions to limit the Subpoena to a more reasonable scope given TikTok's concerns regarding the highly sensitive nature of the information sought, the questionable relevance of most of the requests, and the extreme burden on TikTok as a non-party. York Decl. ¶ 3. TikTok has already produced some documents in response to the Subpoena, including documents marked as "Highly Confidential Information," which are limited

to Outside Counsel Eyes Only pending resolution of Meta's request for in-house access.  York Decl. ¶ 9.

This Court entered the Protective Order on March 25, 2022.  The Protective Order permits Meta to designate two In-House Counsel (defined in Section A(1)(h) of the Protective Order) who do not "participate in or advise on Defendant's Competitive Decision-Making" to receive access to Highly Confidential Information disclosed in this Action, including by non-parties.  (Protective Order, ECF 134, ¶ D(1)(d).)  Designated In-House Counsel must also refrain from participating in or advising on Meta's Competitive Decision-Making for a period of two years from the last date on which Highly Confidential Information[1] is disclosed to them.  (*Id.*)  The Protective Order defines "Competitive Decision-Making" as "decision-making relating to a competitor, potential competitor, customer, or distribution partner including decisions regarding contracts, marketing, pricing, product or service development or design, product or service offerings, research and development, mergers and acquisitions, or licensing, acquisition, or enforcement of intellectual property rights."  (*Id.* ¶ A(1)(c).)  On July 20, 2022, pursuant to Section E(1) of the Protective Order, Meta's outside counsel provided TikTok with declarations of its two designated In-House Counsel, Eric Meiring and Christen Dubois.  York Decl. ¶ 5.  TikTok later received Mr. Meiring and Mr. Dubois's signed "Appendix B" forms, which Meta's

---

[1] Pursuant to the Protective Order, Highly Confidential Information includes "trade secrets, including algorithms and source code; non-public, commercially sensitive customer lists; non-public financial, marketing, or strategic business planning information; current or future non-public information regarding prices, costs, or margins; information relating to research, development, testing of, or plans for existing or proposed future products; evaluation of the strengths and vulnerabilities of a Protected Person's product offerings, including non-public pricing and cost information; confidential contractual terms, proposed contractual terms, or negotiating positions (including internal deliberations about negotiating positions) taken with respect to Defendant or competitors to Defendant; information relating to pending or abandoned patent applications that have not been made available to the public; personnel files; sensitive personally identifiable information; sensitive health information; and communications that disclose any Highly Confidential Information." (Protective Order, ECF 134, ¶ A(1)(g).)

3

designated In-House Counsel are required to sign under the terms of the Protective Order. York Decl. ¶ 7.

The Protective Order provides that a "Protected Person"—such as TikTok, a non-party whose Confidential Information and Highly Confidential Information is subject to the Protective Order—may object to Defendant's designated In-House Counsel. (Protective Order, ECF 134, ¶ E.) Consistent with the procedure for objecting to Meta's designations of In-House Counsel as provided in Section E of the Protective Order, on August 1, 2022, TikTok provided Meta's counsel with a written objection to the designations of Mr. Meiring and Ms. Dubois as In-House Counsel capable of accessing Highly Confidential Information. York Decl. ¶ 6. During an August 8, 2022 meet and confer, TikTok reiterated its concerns about Mr. Meiring and Ms. Dubois having access to its Highly Confidential Information, given their close involvement with antitrust matters at Meta, and requested clarification as to whether these In-House Counsel "advise on" Competitive Decision-Making (as defined in Section A(1)(c) of the Protective Order). York Decl. ¶ 8. Meta's counsel ***did not confirm*** that these In-House Counsel do not "advise on" competitive matters, and at the time of this filing, TikTok has not received any clarification on the question. *Id.* Meta failed to provide any more information and merely asserted that the declarations complied with the requirements of the Protective Order without attempting to address any of TikTok's concerns. *Id.* Meta also refused to entertain a modification to the Protective Order to address TikTok's concerns. *Id.* Given Meta's unwillingness to entertain TikTok's reasonable modification requests and given the deadlines in Section E(3) of the Protective Order, TikTok was forced to file this motion.

Pursuant to Local Rule 7(m), counsel for TikTok has contacted counsel for Meta to confer on TikTok's objection to Meta's designated In-House Counsels access to Highly Confidential Information.  Meta opposes this motion.

## II. Meta Views TikTok as a Competitor yet Seeks In-House Access to a Broad Range of TikTok's Highly Confidential Competitively Sensitive Information

There is no dispute that Meta has repeatedly identified TikTok as a competitor.  In filings to the Court, Meta has itself touted TikTok as a "critical competitor."  (Memorandum in Support of Defendant's Motion for Issuance of Letters of Request, ECF 147-1, at 6.)  On a recent earnings call, Mark Zuckerberg, CEO of Meta, repeated Meta's view that TikTok is a significant competitor.[2]  Furthermore, TikTok and Meta are often on the opposite sides of the negotiating table in commercial deals, where Meta's access to confidential TikTok information would give Meta a strategic advantage.

Further, Meta has already made a misrepresentation about TikTok to the Court that it has no interest in addressing.  In its motion for Letters of Request, Meta erroneously identified TikTok's parent company, ByteDance Ltd., as a China entity when it is actually a registered Cayman Islands entity.  (Motion for Issuance of Letters of Request, ECF 147.)  TikTok immediately brought this to Meta's attention on June 27, 2022, but Meta not only refused to

---

[2] *See* York Decl., Ex. E, *Meta Platforms (FB) Q4 2021 Earnings Call Transcript*, Motley Fool (Feb. 3, 2022), https://www.fool.com/earnings/call-transcripts/2022/02/03/facebook-fb-q4-2021-earnings-call-transcript/ ("The thing that is somewhat unique here is that TikTok is so big as a competitor already and also continues to grow at quite a fast rate off of a very large base."); *see also* Adam Levy, *Every Time Mark Zuckerberg Mentioned TikTok on Meta's Earnings Call*, Motley Fool (Feb. 25, 2022), https://www.nasdaq.com/articles/every-time-mark-zuckerberg-mentioned-tiktok-on-metas-earnings-call; Martin Baccardax, *Meta Stock Plunges as Apple Privacy Rules, TikTok Competition Hammer Facebook Growth*, TheStreet (Feb. 3, 2022), https://www.thestreet.com/markets/meta-stock-plunges-as-apple-rules-tiktok-hammer-facebook-growth.)

5

address the error with this Court, but subsequently reiterated the erroneous statement in its motion to compel against non-party Snap on August 3, 2022.[3]

In addition, shortly after the Subpoena was served in February 2022, the Washington Post reported that Meta had hired operatives "to use TikTok's prominence as a way to deflect from Meta's own privacy and antitrust concerns."[4] The Family Online Safety Institute ("FOSI") revoked Facebook's membership because "[q]uestions were raised over the recent reports of a campaign of disinformation around online safety issues that stoked unwarranted fears among students, teachers, and parents."[5] These news reports raise concerns that Meta is using the extraordinarily broad Subpoena as a fishing expedition to obtain information about TikTok.

These concerns are validated by the Subpoena itself. Meta's Subpoena (even the narrower "priority requests" identified by Meta in meet-and-confers) seeks to obtain broad swaths of TikTok's most confidential and highly sensitive business information—information that includes, for example, engagement and other product user metrics; non-public financial, marketing, and strategic business planning information; evaluations of competition and

---

[3] On June 16, 2022, Meta filed a motion for letters rogatory to TikTok's parent company ByteDance Ltd. ("ByteDance") in which it erroneously identified ByteDance Ltd. as a "Chinese internet technology company." (Memorandum in Support of Defendant's Motion for Issuance of Letters of Request, ECF 147-1.) TikTok met and conferred with Meta on June 27, 2022, to inform Meta that ByteDance Ltd. is a Cayman Islands entity and a holding company. York Decl. ¶ 4. Meta acknowledged its error and offered to formally correct the representation with this Court. *Id.* Meta did <u>not</u> correct the representation. Instead, Meta again misrepresented ByteDance Ltd. as a "Chinese entity" in its recent filing to compel production from third party Snap, Inc. Joint Stipulation Regarding Meta Platforms, Inc.'s Motion to Compel Snap Inc. to Produce Documents and Snap Inc.'s Cross-Motion to Quash Subpoenas, at 44, lines 21–24, *Meta Platforms, Inc. v. Snap, Inc.*, 2:22-mc-00146 (C.D. Cal. Aug. 3, 2022), ECF 1-1.

[4] *See* York Decl., Ex. D, Taylor Lorenz and Drew Harwell, *Facebook Paid GOP Firm to Malign TikTok*, Wash. Post (Mar. 30, 2022), https://www.washingtonpost.com/technology/2022/03/30/facebook-tiktok-targeted-victory/; *Facebook Resorts to Old Smear Tactics Against TikTok*, ABC News (Mar. 30, 2022), https://abcnews.go.com/Politics/wireStory/facebook-resorts-smear-tactics-tiktok-83770231.

[5] *See* York Decl., Ex. D, *FOSI Statement on Revocation of Facebook Membership*, (Apr. 22, 2022), https://www.fosi.org/about-press/fosi-statement-facebook-membership.

competitiveness; advertising customers; advertising product metrics; pricing methods; product development plans; and the materials TikTok produced to the FTC during the Investigation.[6]

Numerous courts have recognized the significant competitive sensitivity of these categories of information and the danger posed by their disclosure to competitors.  *See, e.g.*, *In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714-YGR (TSH), No. 19-cv-03074-YGR (TSH), 2020 WL 5993223, at *4 (N.D. Cal. Oct. 9, 2020) (concluding that high-level documents concerning competition are confidential research, development, or commercial information that companies would not disclose to competitors); *In re eBay Seller Antitrust Litig.*, No. C09-0735-RAJ, 2009 WL 10677051, at *4 (W.D. Wash. Aug. 17, 2009) (concluding that marketing plans, pricing plans, assessments of competition, and plans or past efforts to differentiate services from competitors' services were competitively sensitive).  Despite months-long efforts by TikTok to narrow the Subpoena to a more reasonable scope, Meta continues to seek information about every facet of TikTok's business that is highly competitively sensitive.

### III. Meta's Request for In-House Counsel Access to TikTok's Highly Confidential Information Must Be Denied

Against the above backdrop, Meta is seeking to designate two in-house antitrust counsel to access wide-ranging, highly sensitive competitive information from TikTok, despite the fact that Meta already has retained *five* outside counsel law firms on the matter.  TikTok respectfully asks that the Court deny Meta's request.

With respect to Meta's designations, the key inquiry "is whether a designated in-house lawyer is 'positioned to advise the client as to business decisions that the client would make regarding [competitive decision-making].'"  *FTC v. Sysco Corp.*, 83 F. Supp. 3d 1, 3 (D.D.C.

---

[6] All of this information clearly falls within the scope of "Highly Confidential Information" as defined by the Protective Order. (Protective Order, ECF 134, ¶A(1)(g).

2015) (quoting *FTC v. Whole Foods Mkt., Inc.*, No. CIV. A. 07 1021 PLF, 2007 WL 2059741, at *2 (D.D.C. July 6, 2007) (alteration in original)).  "The primary concern underlying the 'competitive decision-making' test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." *Id.* at 3–4.  Further, the "test is not strictly limited to decision-making responsibility; it more broadly encompasses a lawyer's 'activities, association, and relationship' with a client and its competitive decision-making activities."  *Id.* at 4 (quoting *Whole Foods*, at *2); *see also U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (stating that concern over inadvertent or accidental disclosure is governed by "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party").  Courts do not hesitate to prohibit in-house counsel access when this test is not met.  *Sysco*, 83 F. Supp. 3d at 4.

Here, notwithstanding Mr. Meiring's and Ms. Dubois's assertions that they "do not participate in competitive decision making at Meta," their declarations do not attest that they do not "advise on" Competitive Decision-Making, as prohibited under the Protective Order.  *See* Protective Order, ¶ D(1)(d).  While Mr. Meiring and Ms. Dubois may not have decision-making authority, as the court in *Sysco* found, a lack of decision-making ability is not the critical factor.  Rather, the focus should be on whether Ms. Meiring and Ms. Dubois can realistically limit their use of TikTok's Highly Confidential Information to this Action.

To be clear, TikTok does not question the integrity of either Mr. Meiring or Ms. Dubois.  However, "[t]he issue concerns not good faith but risk of inadvertent disclosure," and "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *FTC v. Exxon Corp.*, 636

F.2d 1336, 1350 (D.C. Cir. 1980) (citation omitted).  Even with the best of intentions, Mr. Meiring and Ms. Dubois cannot unlearn the most competitively sensitive information of one of Meta's business partners and self-professed "critical competitors" when advising Meta outside of this Action.

Mr. Meiring's and Ms. Dubois's declarations confirm that they have significant roles counseling Meta on a range of antitrust matters that necessarily involve competitive dynamics (which in turn implicate TikTok).  As stated in his declaration, Mr. Meiring has considerable prior antitrust experience and lists his primary responsibilities as "managing litigation, regulatory investigations, and potential legal disputes and advising the company on litigation and regulatory risk."  York Decl., Ex. A, Declaration of Eric Meiring in Accordance with Section E(1) of the Protective Order, at 2.  The majority of litigations on which he advises Meta are antitrust litigations.  *See id.*  Likewise, as stated in her declaration, Ms. Dubois's primary responsibilities are "managing government antitrust litigation and regulatory and internal investigations and advising the company on litigation and regulatory risk."  *Id*. at 2.  Like Mr. Meiring, the litigations on which Ms. Dubois advises are antitrust litigations.  *See* York Decl., Ex. A, Declaration of Christen Dubois in Accordance with Section E(1) of the Protective Order, at 3.  Further, and notably, neither Mr. Meiring nor Ms. Dubois affirmatively declared that they do not "advise on" Meta's Competitive Decision-Making, as required under ¶ D(1)(d) of the Protective Order.

Additionally, with respect to Ms. Dubois, she states in her declaration that for a period of over 9 years, and as recently as September 2020, she served in a variety of intellectual property counsel roles at Meta, where her primary responsibilities included "enforcement, related to IP issues"—a responsibility that directly constitutes "Competitive Decision-Making" as defined in

9

the Protective Order. *See id*. at 2; (Protective Order, ECF 134 ¶ A(1)(c).) Though TikTok does not doubt that Ms. Dubois would in good faith attempt to cabin her work from Competitive Decision-Making for a period of two years following the date on which she last receives TikTok's Highly Confidential Information, as required by ¶ D(1)(d) of the Protective Order, it seems highly unlikely that her near-decade of experience advising Meta in IP enforcement issues would go unleveraged.

Furthermore, courts routinely deny in-house counsel access to highly confidential information when their employers have sophisticated and experienced outside counsel, as is the case here. *See, e.g.*, *Saint Alphonsus Med. Ctr. v. St. Luke's Health Sys.*, No. 1:12-CV-00560-BLW-RE, 2013 WL 139324, at *5 (D. Idaho Jan. 10, 2013) (denying access to competitively sensitive information where defendant has "experienced outside counsel at the helm of this case and that counsel is well versed in antitrust litigation"); *State of New York v. Microsoft Corp.*, No. CIV. A. 98-1233 CKK, 2002 WL 31628219, at *2 (D.D.C. Nov. 18, 2002) (rejecting "as wholly unsupported Microsoft's bold contention that the denial of access to in-house counsel, while other counsel of record had access to the very limited group of documents designated as 'Highly Confidential,' would 'prejudice Microsoft's ability to defend itself'"). Here, as in *Saint Alphonsus Medical Center*, Defendant Meta has "experienced outside counsel at the helm of this case"—*five* premier law firms that are well versed in antitrust litigation. Meta will suffer no disadvantage if its two designated In-House Counsel are not permitted access to TikTok's Highly Confidential Information. Therefore, the Court should order that Meta's proposed designated In-House Counsel may not receive access to TikTok's Highly Confidential Information, and that such information may only be disclosed to the outside counsel representing Meta in this Action.

**IV.    Conclusion.**

For the reasons set forth above, the Court should deny access to all of TikTok's Highly Confidential Information under the Protective Order for Meta's proposed designated In-House Counsel, and should further order that such information should only be disclosed to Meta's outside counsel working on this Action.

Dated August 15, 2022

                                      Respectfully submitted,

                                      */s/ David Wales*
                                      David Wales (D.C. Bar No 456894)
                                      Julia K. York (D.C. Bar No 478001)
                                      Steven C. Sunshine (D.C. Bar No 450078)
                                      SKADDEN, ARPS, SLATE
                                       MEAGHER & FLOM LLP
                                      1440 New York Avenue NW
                                      Washington, DC 20005-2111
                                      Phone: 202.371.7000
                                      Steve.Sunshine@skadden.com
                                      David.Wales@skadden.com
                                      Julia.York@skadden.com

                                      *Attorneys for TikTok Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2022, I caused the foregoing document to be electronically submitted with the Clerk of the Court for the United States District Court, District of Columbia, using the CM/ECF system.

                                              */s/ David Wales*
                                              David Wales