IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 1:20-cv-03590-JEB

## JOINT STATUS REPORT

Pursuant to the Joint Scheduling Order dated March 3, 2022 (ECF No. 103), the parties submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions.

I.     **The FTC's Statement on the Status of Discovery**

A.     **The FTC's Position Regarding its Discovery to Meta**

As described below, the FTC has issued to Meta three sets of Requests for Production, one set of Interrogatories, and two deposition notices pursuant to Fed. Rule Civ. Pro. 30(b)(6). As described below, the parties have one ripe dispute regarding the FTC's First Set of Requests for Production.

In addition, the FTC anticipates that it may require the Court's assistance to resolve disputes regarding Meta's failure to respond in a timely fashion to the FTC's First Set of Interrogatories, and to the FTC's questions regarding Meta's privilege claims and Meta's production of linked files.

1.     **The Parties Have A Dispute Regarding the FTC's First Set of Requests for Production**

**Meta August 31 Draft (11 a.m. exchange)**

The Court has instructed Meta to substantially complete its production of documents responsive to the FTC's First Set of Requests for Production ("First RFPs") by November 16, 2022. *See* 8/10/2022 Minute Order. Meta has represented that it will provide rolling productions of documents at the end of each of August, September, and October.

The parties have one ripe dispute regarding the FTC's First RFPs. The FTC respectfully asks that the Court instruct Meta to provide an updated "hit count report" indicating (i) the number of documents generated by each search string, and (ii) the number of documents possessed by each custodian that hit on a search term. Meta can do this easily: identical hit count reports were the primary basis on which the parties negotiated the search strings and custodians that Meta is employing in its document review. Based on these previously provided hit count reports, the FTC agreed to substantially narrow search strings, and agreed to eliminate or restrict searches for certain custodians. The hit count report the FTC has requested is the natural continuation of the process through which the parties have negotiated search terms and custodians. Meta has provided no basis for its refusal to provide an updated hit count report, beyond its unexplained assertion that producing the report would cause "delay." Meta has failed to substantiate its claim that providing a hit count report would delay its review of documents: Meta has refused to provide the FTC with any transparency into Meta's collection and review process (refusing to identify even the document review tool that Meta is using), and has refused to provide any explanation for why running a simple search identical to searches that Meta ran in the past would cause "delay."

The Court should thus order Meta to provide an updated hit count report, because it would be helpful to the parties. Meta previously represented to the Court that it is "open to discussing with the FTC ways to prioritize the production of specific documents" related to the

**Meta August 31 Draft (11 a.m. exchange)**

FTC's First RFPs.  ECF No. 164 (Joint Status Report), at 2.  The hit count report the FTC has requested could assist the parties with prioritization: as the FTC has explained to Meta, if the FTC were able to understand which custodians, and which search strings, generate small numbers of hits, the FTC will be able to suggest ways that Meta can prioritize its review in order to facilitate the rapid commencement and completion of depositions.

The FTC has asked Meta to address other deficiencies in its document production.  The FTC hopes to resolve these issues without Court intervention, but such intervention may be required.  For example, Meta initially represented that its August rolling production will substantially complete its production of documents responsive to certain Requests that the parties agreed could be satisfied through a targeted collection of central files (Requests Nos. 18, 19, 20, 23(d), and 40).  Meta recently informed the FTC that Meta did not identify until the week of August 22, 2022 sources of information responsive to Requests 18 and 19, even though these requests were served on February 15, 2022.  Due to Meta's delay in identifying sources of information responsive to Requests 18 and 19, Meta reported on August 26 that it will provide an updated timeline on which it could make available "a sample" of the relevant data, and meet and confer regrading "the contours of further production."  The FTC will attempt to resolve this and other issues with Meta, without the Court's intervention.

> **2.      The Parties Do Not Have a Ripe Dispute Regarding the FTC's Second and Third Set of Requests for Production of Documents**

On July 12, 2022, the FTC served on Meta its Second Set of RFPs, which seeks data that Meta keeps to analyze user behavior, advertiser behavior, the capacity of its infrastructure, and integrity problems and solutions.  The information requested in the Second Set of RFPs is important for evaluating Meta's market power over users and the effects of its conduct on competition in the Personal Social Networking Services market.  On August 11, 2022, Meta

Meta August 31 Draft (11 a.m. exchange)

served boilerplate objections that did not commit to producing any documents or data responsive

to the FTC's Second Set of RFPs.  The parties met and conferred on August 15, 2022 regarding

data-related discovery.  The parties do not have a ripe dispute at this time.

Also on July 12, 2022, the FTC served on Meta its Third Set of RFPs, seeking documents

related to this litigation, and limited requests for "documents sufficient to show" Meta's:

consideration of paying compensation to PSNS participants; advertising practices; development

costs for certain initiatives; and use of third parties for infrastructure and integrity solutions.  On

August 11, 2022, Meta served boilerplate objections that did not commit to producing any

documents responsive to the FTC's Third Set of RFPs.  The parties met and conferred on August

22, 2022, and the FTC provided further clarification and proposals for narrowing in

correspondence on August 23, 2022.  The FTC has requested that Meta provide a response to the

FTC's clarifications and proposals for narrowing no later than September 6, 2022.  The parties

do not have a ripe dispute at this time.

### 3.    The FTC's First Set of Interrogatories

The FTC served its FTC's First Set of Interrogatories ("First Interrogatories") over three

months ago on May 26, 2022.  The First Interrogatories contain only eight requests

(Interrogatories Nos. 1-8).  Yet Meta has not provided a complete response to a single

interrogatory, and has refused to engage in a timely fashion during the meet and confer process

through which the FTC has attempted to narrow disputes.

The FTC has asked Meta to address deficiencies in its interrogatory responses since July:

the FTC requested supplemental responses through the meet and confer process on July 11 and

July 21.  Meta provided no response, and the FTC followed up on August 12 and again on

August 26.  After refusing to respond to the FTC's inquiries for more than a month, on August

29, 2022, Meta finally responded to the FTC, and committed to provide, no later than September

4

**Meta August 31 Draft (11 a.m. exchange)**

21, 2022, supplemental responses to Interrogatories 1, 2, 3, 4, 7, and 8.  Meta has not provided

the FTC with clarity regarding the scope of its planned supplemental responses to these

Interrogatories, nor has Meta committed to provide supplemental responses to Interrogatories 5

and 6.  The FTC hopes to resolve these issues without Court intervention, but such intervention

may be required.

### 4.        The FTC's 30(b)(6) Deposition Notices

On June 28, 2022, the FTC served on Meta a Rule 30(b)(6) deposition notice regarding

surveys relating to user perceptions, beliefs, attitudes, or behavior ("Survey 30(b)(6) Notice").

The parties subsequently met and conferred, and on August 25, 2022, the FTC deposed a witness

on a subset of topics identified in the Survey 30(b)(6) Notice, without prejudice to the FTC's

rights to seek additional testimony.  The parties will continue to meet and confer regarding the

testimony to be provided on the remainder of the topics identified in the Survey 30(b)(6) Notice.

On July 22, 2022, the FTC served on Meta a Rule 30(b)(6) deposition notice identifying

nine topics relating to user data ("User Data 30(b)(6) Notice").  On August 2, 2022, Meta

provided objections and responses to the User Data 30(b)(6) Notice.  In an effort to

accommodate Meta, the FTC provided on August 10, 2022, a counter-proposal narrowing Topics

1 through 3.  The Parties met and conferred at length on August 15, 2022, during which Meta

requested that it be permitted to provide written responses to Topics 1 through 3.  On August 22,

2022, the FTC accepted Meta's request with respect to certain Topics, in an effort to narrow the

scope of Topics 1 through 3 and to continue to streamline this process, and provided counter-

proposals on other aspects.  The FTC requested that Meta accept its August 22 counter proposal

and provide a 30(b)(6) witness the week of September 5, or else identify any remaining aspects

of Topics 1 through 3 with respect to which the parties have a dispute.  Meta has not responded

**Meta August 31 Draft (11 a.m. exchange)**

to the FTC's August 22 request.  The FTC hopes that the parties can resolve this issue without

the Court's assistance.

On August 23, 2022, the FTC provided to Meta a substantially narrowed proposal

regarding Topics 4, 5, and 6 of the User Data Notice, and requested a meet and confer for August

26, 2022.  Meta failed to respond to the FTC's request to meet and confer.  While the parties

have not met and conferred and Meta has provided no counter-proposal regarding Topics 4, 5,

and 6, the FTC hopes that the parties can resolve this issue without the Court's assistance.

> **5.      The FTC May Require the Court's Assistance to Establish a
> Reasonable Protocol for Meta to Provide Linked Files, and to
> Respond to the FTC's Questions Regarding Privilege Claims**

Since at least March 2020, the parties have discussed the need for Meta's production of

documents that appear only as "links" within responsive documents.  Communications between

Meta employees often include links to relevant files under discussion (as opposed to including

the relevant file under discussion as a distinct attachment).  The FTC therefore, in many

instances, cannot understand the communication between Meta employees absent access to a

document that is identified only by a link.  This issue impacts a significant proportion of the

documents in Meta's production, but the FTC has asked Meta to address only a tiny fraction of

the documents that appear to be of particular interest.  On August 10, 2022, the FTC identified to

Meta fifteen relevant documents containing links and requested that Meta provide by August 25,

2022 (i.e., within 15 days) the linked documents and associated information.  Meta responded on

August 26, 2022, noting that it would not be able to provide until September 2, 2022 any of the

documents or information requested by the FTC.  The FTC is attempting to meet and confer with

Meta to explore ways to expedite Meta's production of linked documents, but may require the

Court's assistance to establish a reasonable protocol and time frame for the production of linked

documents.

**Meta August 31 Draft (11 a.m. exchange)**

In addition, in connection with the FTC's pre-complaint investigation, Meta produced a privilege log (the "September 26, 2020 Privilege Log") encompassing over 336,000 entries for documents that Meta claimed were privileged.  Meta has withheld approximately 86% of the documents listed on its privilege log in their entirety – almost all on the basis of attorney-client privilege, even though roughly 50% have no attorney listed as an author or recipient.  The FTC has raised questions regarding Meta's privilege claims on several occasions during this litigation, but Meta has refused to engage with the FTC's inquiries.  Meta has not submitted an amended log to address the issues raised.  On August 4, 2022, the FTC sent Meta a letter chronicling a myriad of deficiencies with Meta's September 26, 2020 Privilege Log, identifying around 550 illustrative examples, offering to meet and confer, and requesting a response no later than August 26, 2022.[1]  Meta responded to the FTC's August 4, 2022 letter for the first time on August 29, 2022.  While Meta still has not produced any documents or additional information related to the questionable entries that the FTC identified on August 4, Meta has committed to providing the FTC with documents that it intends to remove from its log as well as modified entries by September 2, 2022.

Issues related to Meta's September 26, 2020 Privilege Log will impact whether the FTC is able to receive access to documents not appropriately categorized as privileged in advance of depositions in this matter.  The FTC will continue to attempt to engage with Meta on these issues, but may require the Court's assistance.

---

[1]     The deficiencies identified related Meta's September 26, 2020 Privilege Log include: (1) entries where an attorney is neither the author nor recipient; (2) entries that appear to deal with ordinary business dealings as opposed to legal analysis; (3) entries that are too vague to determine the substance or privilege asserted; (4) entries where information is incomplete; (5) entries claimed as privileged under the work product doctrine, that do not appear to have been prepared in anticipation of a specific litigation; (6) entries that have been shared with a third party; and (7) inconsistent privilege claims.

**Meta August 31 Draft (11 a.m. exchange)**

      **B.**        **The FTC's Position Regarding Meta's Discovery to the FTC**

The FTC has worked diligently to respond to Meta's discovery requests, and has

attempted to narrow any disputes by engaging in the meet and confer process in a timely fashion

and in good faith.  The parties do not have any disputes at this time.

      **C.**        **Nonparty Discovery**

Meta and the FTC have both served non-party discovery.  Meta has served document

subpoenas on 132 non-parties.  The FTC has served cross-notices on 119 of those non-parties,

and has served subpoenas on four additional non-parties.

The parties are exchanging notices of modifications, extensions, or postponements to the

subpoenas and cross-notices served on non-parties.  The parties are also exchanging non-party

productions on a rolling basis.

On August 16, 2022, TikTok Inc. filed a Motion to Deny Defendant's Designated In-

House Counsel Access to Highly Confidential Information, which the Court denied without

prejudice.  *See* ECF Nos. 174, 176.

**II.**      **Meta's Statement On The Status Of Discovery**

      **A.**        **Meta's Statement On The Status Of Meta's Discovery**

            **1.**      **Update on Disputes Raised in the Parties' May 31, 2022, Status Report**

In the parties' last status report, Meta raised deficiencies in the FTC's response to

Meta's Interrogatory No. 10 relating to market definition.  The parties briefed that dispute and,

on August 1, 2022, the Court granted Meta's motion, ordering Meta to provide to the FTC a list

of features or activities on Facebook, Instagram, WhatsApp, or Facebook Messenger, and then

ordering the FTC to inform Meta "whether each such feature or activity is or is not within th[e]

definition" of "personal social networking."  *See* ECF No. 165, at 2.  Meta has provided the

FTC with the list and it is currently awaiting the FTC's response.

In addition, in the May 31, 2022, status report, Meta raised the FTC's withholding of

eight documents relating to its review and clearance of Meta's acquisitions of Instagram in

2012 and WhatsApp in 2014.  The parties briefed that dispute and, on August 9, 2022, the

Court ordered the FTC to provide certain documents to the Court for *in camera* review.  *See*

Minute Order (Aug. 9, 2022).  The FTC has indicated it has submitted the requested materials.

Meta's motion to compel remains under consideration by the Court.

### 2.     Additional Disputes that May Require Intervention

Since the last status report, Meta has asked the FTC to address other deficiencies in its

interrogatory responses and document productions.  Meta hopes to resolve these issues without

Court intervention, but such intervention may be required.

*First*, on August 18, 2022, Meta asked the FTC to supplement its responses to certain

interrogatories to address the following deficiencies:

- The FTC's refusal to provide the factual information it received in its interviews with non-parties in its 2012, 2014, and 2019-2020 investigations relating to the issues in this case.  *See* Meta Platforms, Inc.'s First Set of Interrogatories to the FTC, Interrogatory No. 2 (Mar. 30, 2022) ("Meta Interrogatories").

- The FTC's refusal to state the bases for its decisions to permit Meta's acquisitions of Instagram and WhatsApp to proceed in 2012 and 2014 without challenging the transactions.  (Meta Interrogatory Nos. 4, 5.)

- The FTC's failure to identify when each alleged provider of personal social networking services in the United States started and stopped providing personal social networking services.  (Meta Interrogatory No. 3.)

- The FTC's failure to identify the amount of time spent on *any* personal social networking service in *any* year since 2011.  (Meta Interrogatory No. 11.)

**Meta August 31 Draft (11 a.m. exchange)**

- The FTC's refusal to identify personnel from the Bureau of Economics who participated in the Prior Instagram Investigation or Prior WhatsApp Review. (Meta Interrogatory Nos. 8, 9.)

*Second*, Meta has asked the FTC to address potential gaps in its production of documents it received from non-parties during its 2019-2020 investigation, and to explain if it is withholding documents that were produced to any State Attorneys General in connection with their coordinated multi-state investigation that culminated in the filing of *New York v. Facebook, Inc.*, No. 1:20-cv-03589-JEB (D.D.C.).

On August 25, the parties met and conferred with respect to these issues. The FTC explained that, in response to Meta's inquiry, it had identified certain documents that were produced to the FTC by a non-party in its pre-complaint investigation that the FTC did not produce to Meta. The FTC indicated that it is investigating to determine if there are any other non-party document productions that were missing from its investigative file production to Meta. The parties also discussed the interrogatories and Meta's inquiry relating to documents produced to any State Attorneys General. Although Meta will seek to resolve as many of these issues as it can through further negotiation, it will seek Court intervention if that proves necessary.

### B.    Meta's Statement On The Status Of Non-Party Discovery

Meta has served 137 subpoenas for documents on non-parties. Many non-parties have been producing documents on a rolling basis, and Meta expects that they will continue to do so. However some non-parties have employed a litany of tactics to avoid or delay compliance. Meta is attempting to resolve as many of these subpoenas as possible without Court intervention, but Court intervention will likely be required to resolve outstanding disputes with certain non-parties.

**Meta August 31 Draft (11 a.m. exchange)**

On August 3, 2022, Meta filed a motion to compel against Snap Inc. in the Central District of California. *See Meta Platforms, Inc. v. Snap Inc.*, 22-mc-00146 (C.D. Cal.). Meta filed a motion to transfer that dispute to this Court in the interest of judicial efficiency and consistency. Given other non-parties' refusal to meaningfully comply with the subpoenas, Meta anticipates filing motions to compel against a number of other non-parties in the coming weeks and will similarly seek to transfer those disputes to this Court. To the extent those disputes will be resolved in this Court, the parties would benefit from the Court's guidance on its preferred procedures for resolving any disputes transferred to this Court.

### C.   Meta's Statement On The Status Of The FTC's Discovery

Since fact discovery opened, the FTC has propounded on Meta ninety-three requests for production of documents ("RFPs"), many of which include multiple subparts; eight interrogatories; and two Rule 30(b)(6) deposition notices. Meta has worked diligently to respond to those requests promptly and in good faith. Although the FTC purports to identify a few issues related to Meta's compliance with its discovery obligations, none warrants this Court's intervention.

### 1.   The FTC's First RFPs

On June 16, 2022, the parties agreed to apply eighty strings of search-term combinations to the documents of ninety-six custodians and to produce several categories of documents from noncustodial sources in response to the FTC's First RFPs. As Meta previously explained to the FTC and to the Court, it estimates that responding to those requests will require it to collect and review at least four million documents. To date, Meta has been producing documents, is making another production at the end of this month, and has committed significant resources to meet the Court's deadline of November 16, 2022, to substantially complete this production.

**Meta August 31 Draft (11 a.m. exchange)**

Two months after the parties reached agreement on search terms and custodians for the First RFPs, the FTC now seeks to micromanage Meta's document production.  Specifically, the FTC is demanding that Meta provide so-called "hit counts" for each of the search-term strings that Meta agreed to apply so that it can somehow use that information to direct Meta to prioritize the production of certain documents over others.  But as Meta explained to the FTC, this demand will only delay Meta's ability to complete the productions.  The Court should deny the FTC's request.

### a.        The FTC's Demand That Meta Generate Hit Counts

The FTC has asked Meta to provide the number of hits for each of the eighty search strings it agreed to apply to the millions of documents it is collecting in response to the First RFPs.  The FTC claims that the purpose of this hit count report is to allow the FTC to identify certain categories of documents that it will then direct Meta to produce on a priority basis.  On August 22, 2022, the parties met and conferred about this request.  Contrary to the representations of the FTC, Meta explained why this request was burdensome and unlikely to allow for any document prioritization.  Meta explained that the data the FTC was requesting is not presently available in the form requested and that Meta would need to create a bespoke report to identify documents appearing in multiple custodian files.  In addition, hit counts do not show how many documents are responsive and non-privileged, or account for the fact that some documents are easier to process for production than others, or account for overlap of documents that hit on multiple search terms or custodians.  Although hit counts can be useful when the parties are negotiating search terms, they have little if any utility in identifying numbers of non-privileged and responsive documents.

**Meta August 31 Draft (11 a.m. exchange)**

More generally, there is simply no legal authority for the FTC's request that Meta be ordered to provide a hit count report so that it can direct how Meta will produce documents prior to the substantial completion deadline.  To be clear, in an effort to be cooperative, Meta has offered to discuss efficient ways to prioritize the production of certain documents.  In addition, for custodial documents, Meta has offered to consider focusing first on certain former employee custodians who long ago stopped creating responsive documents.  But the FTC has refused to even entertain that suggestion or any others besides its misguided focus on search-term hit counts.  The Court should reject the FTC's attempt to micromanage Meta's document production.

**b.**      **The FTC's Non-Custodial Requests In The First RFPs**

In the July 29 Joint Status Report, Meta confirmed that it would endeavor to substantially complete its production of non-custodial documents relating to certain Requests on August 31 or as soon thereafter as practicable.  While Meta believes it will meet that goal for many of the identified Requests, it recently alerted the FTC that non-custodial documents relating to Requests 18 and 19 will likely not be produced until the first week in September.

**2.**      **The FTC's Interrogatories**

Meta timely served objections and responses to the FTC's interrogatories on June 27, 2022.  The parties met and conferred about the FTC's interrogatories on July 11 and 21, 2022.  During those meet-and-confers, Meta asked clarifying questions about the reasons why the FTC requested supplementation and what specific supplementation the FTC was requesting.  On August 12, the FTC clarified its interrogatories and provided proposals for supplementation but did not state when it preferred a response.  On August 26, the FTC asked Meta to respond in the next four days, by August 30, to its August 12 letter, and to provide any supplementation by

13

September.  Meta responded a day earlier than the FTC requested, on August 29.  Meta

informed the FTC during a meet-and-confer that it is endeavoring in good faith to supplement

most, if not all, of its interrogatory responses by September 21, the date the FTC had requested.

Meta also informed the FTC that it intends to supplement individual interrogatory responses on

a rolling basis and that it will endeavor in good faith to supplement certain responses sooner

than September 21, if possible.  Given that Meta has complied with the FTC's requests to date,

there is presently no dispute about Meta's interrogatory responses for the Court to address.

### 3.      The FTC's Rule 30(b)(6) Deposition Notices

Even though Meta is still actively collecting and reviewing documents, the FTC noticed

two Rule 30(b)(6) depositions on topics similar, and in some cases identical, to those in the

FTC's RFPs.  On June 28, 2022, the FTC served a Rule 30(b)(6) notice seeking testimony on

all surveys performed by Meta (or by a third party on Meta's behalf) from 2012 to today, the

locations of those surveys, and the identities of all Meta employees or consultants who received

those surveys.  The Notice contained five topics with 31 subparts.  The FTC demanded that this

expansive corporate deposition occur by July 18, 2022, less than three weeks from the date of

the notice.  When Meta suggested that it would be more productive to postpone the deposition

until Meta had substantially completed document production so that the FTC could ask more

informed questions and define its Rule 30(b)(6) Notice topics with reasonable particularity, the

FTC refused and insisted on conducting the deposition in August.  Meta agreed to provide a

corporate witness on a subset of topics identified by the FTC, and that deposition took place on

August 25 for nearly 7 hours.

On July 22, 2022, the FTC served another Rule 30(b)(6) notice seeking testimony

regarding user data.  This Notice contains 9 topics with 40 subparts.  Meta believes that the

Meta August 31 Draft (11 a.m. exchange)

parties would benefit from continuing to meet and confer over the scope of the Notice, which

concerns, among other topics, where and how user data worldwide for the last twelve years has

been stored.  Indeed, the FTC sent two letters just last week, modifying some of the noticed

topics and proposing that Meta provide additional corporate testimony on modified versions of

other topics.  Meta is considering the FTC's proposals and will promptly respond to the FTC's

requests.

### 4.      The FTC's Second and Third RFPs

The FTC served its Second and Third RFPs on July 12, 2022.  The Second RFPs seek

granular, user-level data without any geographic limitation over a 12-year period.  The Third

RFPs seek a hodgepodge of information, including documents that Meta is not yet required to

produce under the Scheduling Order, such as documents on which its experts may rely.  Meta

served objections and responses to the FTC's Second and Third RFPs on August 11, 2022.

On August 16, the FTC requested to meet and confer on Meta's objections and

responses to the Third RFPs.  The parties met and conferred on the Third RFPs on August 22.

Meta is willing to meet and confer on the Second and Third RFPs and agrees that there is no

dispute between the parties that is ripe for this Court's consideration.

### 5.      Meta's Production of Hyperlinked Documents

On August 10, 2022, the FTC sent Meta a letter requesting that it review and produce

documents hyperlinked in previously produced documents.  Meta responded to the FTC's letter

on August 26, informing the FTC that it intended to produce responsive, non-privileged

hyperlinked documents identified in the August 10 letter by September 2.  In addition, the FTC

sent another letter on August 22, asking that Meta review and produce more documents

**Meta August 31 Draft (11 a.m. exchange)**

hyperlinked in other previously produced documents.  Meta is working diligently to respond to

the FTC's requests promptly.  Accordingly, there is no ripe dispute for the Court to address.

> **6.      Meta's Privilege Log**

On August 4, 2022, the FTC sent to Meta a 22-page letter (including an Appendix),

raising issues with over 700 entries on the privilege log provided to the FTC during its pre-

complaint investigation.  The FTC demanded that Meta (1) provide unredacted copies of all the

documents identified in the letter or provide additional support for Meta's basis for withholding

those documents, and (2) re-review the entire privilege log and underlying documents provided

during the investigation for any specific clawbacks that may need to be made.  The FTC

unilaterally demanded that this all occur in less than a month, by August 26, 2022.  Meta

responded to the FTC's letter on August 29, 2022, and the parties continue to discuss the points

raised in the FTC's August 4 letter.  There accordingly is nothing here for the Court to address

at this time.

**Meta August 31 Draft (11 a.m. exchange)**

Dated: August 31, 2022

Respectfully submitted,

By: */s/* Daniel Matheson
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Maria Dimoscato (D.C. Bar 489743)
Owen Masters (D.C. Bar 242139)
Susan Musser (D.C. Bar 1531486)
Michael Smith (D.C. Bar 996738)
Mitchell London (D.C. Bar 1029408)
Jessica Moy
Nathan Brenner
Rebecca Weinstein

Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

*/s/* Mark Hansen
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Kevin J. Miller (D.C. Bar No. 478154)
Kenneth M. Fetterman (D.C. Bar No. 474220)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

James P. Rouhandeh (NY0390)
Michael Scheinkman (NY0381)
Davis Polk & Wardwell LLP
450 Lexington Ave.
New York, New York 10017
Tel: (212) 450-4754
james.rouhandeh@davispolk.com

**Meta August 31 Draft (11 a.m. exchange)**

Sonal N. Mehta (CA SBN 222086)
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
Sonal.Mehta@wilmerhale.com

David Z. Gringer (D.C. Bar No. 1001200)
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
David.gringer@wilmerhale.com

*Counsel for Defendant Meta Platforms, Inc.*