UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Civil Action No. 20-3590 (JEB)

## MEMORANDUM OPINION

Defendant Meta Platforms, Inc. made two acquisitions relevant to this antitrust action — Instagram in 2012 and WhatsApp in 2014. Plaintiff Federal Trade Commission reviewed both transactions at the time to assess whether either posed anticompetitive concerns and ultimately allowed both to proceed. In the course of the Commission's review, attorneys from its Bureau of Competition and economists in its Bureau of Economics prepared "recommendation packages" and other notes to advise the FTC on each proposed acquisition.

As the discovery phase of this litigation proceeds, Meta now asks this Court to compel the FTC to produce these materials, arguing that they contain relevant factual information about the contemporaneous state of market competition that is unavailable anywhere else. For its part, the Commission asserts that these materials are protected by a variety of privileges, most notably the deliberative-process privilege. Meta rejoins that the privilege does not apply and that, in any event, the FTC waived any privilege when it disclosed these materials to the House Judiciary Committee in September 2019. As the Court agrees that the FTC has the better of this argument, it will deny the Motion.

I.  **Background**

As this Court has recounted the factual and procedural background of this case in depth in its prior Opinions, see Fed. Trade Comm'n v. Facebook, Inc., 2022 WL 103308 (D.D.C. Jan. 11, 2022); Fed. Trade Comm'n v. Facebook, Inc., 560 F. Supp. 3d 1 (D.D.C. 2021), it will confine this brief background section to the facts surrounding the documents directly at issue in this Motion.

On April 9, 2012, Meta — then, Facebook, Inc. — announced an agreement to acquire Instagram. See ECF No. 155 (Def. Motion to Compel) at 4. In conjunction with this acquisition, Defendant filed a pre-merger notification with the FTC as required by the Hart-Scott-Rodino Act, 15 U.S.C. § 18a. Id. The Commission then reviewed this transaction over the next four months to assess whether it posed anticompetitive concerns, taking the rare step of "requir[ing] the submission [by the parties] of additional information or documentary material relevant to the proposed acquisition." 15 U.S.C. 18a(e)(1)(A). During the course of the agency's review, attorneys from the FTC's Bureau of Competition and economists from its Bureau of Economics prepared two "recommendation packages" for the Commission's review. See ECF No. 160 (Pl. Opp.) at 3. The FTC describes these recommendation packages as including memoranda from BC attorneys and BE economists that "reflect legal advice, contain confidential third-party information, and comprise part of the FTC's internal deliberation and decision-making." ECF No. 160-7, Exh. A (Declaration of Holly Vedova), ¶ 9. These packages are often generated as part of the Commission's decisionmaking process on matters including: "(1) screening mergers to determine whether to seek additional information, (2) authorizing and issuing compulsory process, including civil investigative demands and subpoenas, (3) undertaking enforcement through filing complaints, or (4) declining to take further action." Id.

The first of the two recommendation packages relates to the use of compulsory process to secure facts relevant to the potential acquisition. It includes cover memos from the BC Front Office and BC career staff, memos "to the Merger Screening Committee — later provided to the Commission as an attachment to the compulsory process memorandum" — and a draft resolution authorizing the use of compulsory process. See Pl. Opp. at 3–4; ECF No. 160-8 (FTC Priv. Log) at 1 (entries 1a–1e). The second package concerns BC and BE staff recommendations to close the investigation into the acquisition. See Pl. Opp. at 3–5; FTC Priv. Log at 2 (entries 2a, 2b, and 2e). After deliberating on these materials, the Commission voted 5–0 to allow the acquisition to proceed and issued a no-action letter informing Meta that its "investigation has been closed," with the proviso that the decision "is not to be construed as a determination that a violation may not have occurred." ECF No. 160-9 (FTC Letter).

On February 19, 2014, Meta announced a second acquisition, this time of WhatsApp. Like its previous purchase, this transaction was also subject to Hart-Scott-Rodino Act pre-merger review. See 18 U.S.C. § 18b. This time, however, the FTC's review was more streamlined, and the Commission did not request the submission of additional information. It instead made a decision based solely on Meta's HSR filings and interviews with third parties. See Pl. Opp. at 5. In connection with this review, BC staff created only two documents at issue here, both of which were staff notes related to the investigation. See id.; FTC Priv. Log at 4 (entries 3 and 4). Once again, after reviewing the transaction, the FTC chose not to challenge it.

Meta requested the documents and memoranda from the FTC that its staff generated while reviewing both the Instagram and WhatsApp acquisitions, arguing that they contain centrally relevant factual information about the state of market competition at the time of these deals. See Def. Mot. at 8. The FTC, however, resisted production, arguing that the materials are

3

protected by a variety of privileges, including the deliberative-process, work-product, attorney-client, and investigatory-file privileges. See Pl. Opp. at 1.

In now moving to compel, Meta contends that these documents contain segregable and purely factual information relevant to its case that can be disclosed and that, regardless, the FTC waived any applicable privileges when it shared these documents with the House Judiciary Committee. See Def. Mot. at 2–3. To assist in its analysis, the Court ordered Plaintiff to produce *in camera* redacted and unredacted copies of the disputed materials. See Minute Order of Aug. 9, 2022. Having now reviewed those records, the Court may consider the parties' legal arguments.

## II.    Legal Standard

Federal Rule of Civil Procedure 37 entitles parties to "move for an order compelling an answer [or] production" if, among other things, "a party fails to produce documents . . . requested under Rule 34." Document requests under Rule 34 "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2); see Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) . . . ."). Rule 26(b)(1), in turn, sets the "scope of discovery . . . as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The main question here is whether material concerning the "matter" that Defendant has requested in discovery is privileged under the deliberative-process, work-product, attorney-client, or investigatory-file privileges. The party seeking to withhold a document — here, the FTC — bears the burden of showing that the privilege applies. See United States v. Legal Servs. for NYC, 249 F.3d 1077, 1081 (D.C. Cir. 2001).

**III.     Analysis**

The primary disputes between the parties here are whether the deliberative-process privilege protects the documents that the FTC generated in reviewing the Instagram and WhatsApp acquisitions, and, if it does, whether the Commission waived that privilege when it shared these documents with the House Judiciary Committee. The Court looks at these two questions in turn. While the FTC further contends that some of these documents are also protected by other privileges, the Court need not address these because the deliberative-process privilege acts as a complete shield.

    A.  <u>Deliberative-Process Privilege</u>

In refusing production here, the FTC invokes deliberative process. The Court first considers Meta's position that invoking the privilege runs counter to FTC policy. It next addresses whether the privilege is applicable in the circumstances here, and it then examines Meta's final argument that its showing of manifest need defeats the privilege.

        1.    *Availability of Privilege*

Meta begins by suggesting — albeit halfheartedly — that the deliberative-process privilege is categorically unavailable for the documents at issue here as a matter of FTC policy. See Def. Mot. at 12–13; ECF No. 163 (Def. Reply) at 8. Defendant's only support for this assertion is a citation to the FTC's 2016 Open Government Plan, a nonbinding guidance document that states that, in the context of Freedom of Information Act Exemption 5, the "FTC has worked under the presumption that most information protected by the Deliberative Process Privilege . . . should be released if the file has been closed for more than ten years unless staff can articulate a compelling reason for withholding the information." *2016 Open Government Plan*, FED. TRADE COMM'N (Sept. 15, 2016), https://www.ftc.gov/system/files/attachments/open-

government/final_opengov_plan2016.pdf. Because the closure of the Instagram investigation just celebrated its tenth birthday in August, Meta argues that the documents surrounding that decision are now available for production. This position ignores, however, that the relevant binding FTC regulation provides that the privilege applies for 25 years after the document is created, not the merely ten years announced in the nonbinding guidance. See 16 C.F.R. § 4.10(a)(3) (exempting certain FTC material from being made public, including "[i]nteragency or intra-agency memoranda or letters that would not routinely be available by law to a private party in litigation with the Commission, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records are requested").

Because the Commission is in fact claiming protection for these documents under the deliberative-process privilege consistent with these regulations, the timing window remains open.

            2.      *Applicability of Privilege*

This privilege "protects from disclosure documents generated during an agency's deliberations about a policy, as opposed to documents that embody or explain a policy that the agency adopts." U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 141 S. Ct. 777, 783 (2021). It "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer," Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980), and "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001). If such documents were subject to disclosure, the quality of decisionmaking would deteriorate. Whether the privilege is claimed in the context of FOIA or in the course of civil

discovery is irrelevant because the analysis for both is the same.  See United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984); Judicial Watch, Inc. v. U.S. Dep't of State, No. 15-687, 2021 WL 3363423, at *5 (D.D.C. Aug. 3, 2021) (noting that "under Exemption 5, an agency may withhold from a FOIA requester any 'documents[ ] normally privileged in the civil discovery context'") (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)).

To qualify under this privilege, a record must be both "predecisional" and "deliberative." "Documents are 'predecisional' if they were generated before the agency's final decision on the matter," Sierra Club, Inc., 141 S. Ct. at 786, and remain predecisional even if an agency subsequently makes a final decision on the issue discussed in the record.  See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 360 (1979).  The primary purpose of the "predecisional" requirement is to differentiate between documents "prepared . . . to assist an agency decisionmaker in arriving at his decision" and those drafted "to support a decision already made." Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal quotation marks and citation omitted).  To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." Coastal States Gas Corp., 617 F.2d at 868.

Documents, furthermore, "are 'deliberative' if they were prepared to help the agency formulate its position," Sierra Club, Inc., 141 S. Ct. at 786, and thus "reflect[ ] the give-and-take of the consultative process." Petroleum Info. Corp., 976 F.2d at 1434 (internal citations omitted).  "A document that does nothing more than explain an existing policy cannot be considered deliberative." Pub. Citizen, Inc. v. Off. of Mgmt. & Budget, 598 F.3d 865, 876 (D.C. Cir. 2010).

a. Predecisional

Neither party appears to dispute that these documents are predecisional. The FTC describes the Instagram recommendation packages (entries 1a–1e, 2a, 2b, and 2e of the FTC Privilege Log) as being "prepared prior to, and provid[ing] information and analysis to inform, the Commission's decisions in 2012 to authorize compulsory process and close the investigation relating to Instagram." Vedova Decl., ¶ 17. These documents "communicate[d] [the FTC staff's] analyses, thoughts, theories, opinions, conclusions, advice, and recommendations made to the Commission." Id. Similarly, the WhatsApp documents (entries 3 and 4 of the FTC Privilege Log) are notes created by investigators that contain "analysis of facts and the legal issues arising in the review as well as opinions, recommendations, and strategy relating to further investigation." Id., ¶ 18.

Based on these descriptions, which appear to accurately reflect the content observed in the Court's *in camera* review, the FTC documents were clearly "generated before the adoption of an agency policy," Judicial Watch, 847 F.3d at 739, and contain "evaluations" or "analysis . . . prepared for senior-level review and decisionmaking." Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 370 (D.C. Cir. 2020).

b. Deliberative

The parties clash, however, over whether the documents satisfy the deliberative criterion. Meta stresses that the privilege "does not apply at all to purely factual material" and urges that the FTC memoranda are likely to contain "material facts that were found during the investigation," which must be disclosed. See Def. Mot. at 13. The FTC counters that "any factual material contained in each of the disputed documents are 'inextricably interwoven' with staff's analyses and recommendations." Pl. Opp. at 9; Vedova Decl., ¶¶ 17, 18. Their release

would, consequently, "force the disclosure of the deliberative process" and cause the sorts of harms that the privilege is meant to avoid. See Pl. Opp. at 9. The FTC has the stronger position here.

Meta is correct that "[f]actual material that does not reveal the deliberative process is not protected by this exemption." Morley v. Cent. Intel. Agency, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting Paisley v. Cent. Intel. Agency, 712 F.2d 686, 698 (D.C. Cir. 1983), vacated in part on other grounds, 724 F.2d 201 (D.C. Cir. 1984)); see also Env't Prot. Agency v. Mink, 410 U.S. 73, 88 (1973) ("[P]urely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government."). That does not mean, however, that all factual material contained in government memoranda must be automatically disclosed. Rather, the court "must examine the information requested in light of the policies and goals that underlie the deliberative process privilege." Wolfe v. Dep't of Health and Hum. Servs., 839 F.2d 768, 774 (D.C. Cir. 1988). This is because "privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." Mapother v. Dep't of Just., 3 F.3d 1533, 1537 (D.C. Cir. 1993).

In accordance with these principles, the D.C. Circuit has emphasized that, in some cases, "even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege." Wolfe, 839 F.2d at 774. The privilege thus continues to extend to factual material that "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). The FTC contends that this is precisely the harm that would occur here. It further insists that any factual portions of its recommendation

9

memoranda and notes are nonsegregable, arguing that "[d]isclosing [FTC] staff's determination of which facts are 'material' is tantamount to disclosing staff's opinions and recommendations." Pl. Opp. at 9.

Meta responds by pointing to Playboy Enterprises, Inc. v. Department of Justice, 677 F.2d 931 (D.C. Cir. 1982), where the court held that the Department of Justice could not withhold a report on the activities of a former FBI informant. While the government had asserted that the entire report "reflect[ed] the choice, weighing and analysis of facts" from over 800 volumes of materials, the court noted that "[a]nyone making a report must of necessity select the facts to be mentioned in it" and that "a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material." Id. at 935 (internal quotation marks omitted). Indeed, "[i]f this were not so, every factual report would be protected as a part of the deliberative process." Id.

Meta's reliance on Playboy Enterprises, however, is unpersuasive. The court in that case noted that the documents at issue there were "prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress." Id. Its disclosure, therefore, would not have exposed the agency's deliberations to public light. Unlike in Playboy Enterprises, the factual material in this case "was not assembled for an agency actor merely to pass along to outsiders, but rather for purely internal deliberative purposes." Elec. Priv. Info. Ctr. v. Transp. Sec. Admin., 928 F. Supp. 2d 156, 168 (D.D.C. 2013); see also Montrose Chem. Corp. of Calif. v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974) (holding that factual summaries compiled into documents used by administrator were privileged because "[t]o probe the summaries of record evidence would be the same as probing the decision-making itself"). The documents that FTC staff prepared here are, instead, precisely of the nature that the deliberative-

process privilege is designed to protect, as they were "intended to facilitate or assist development of the agency's final position on the relevant issue[s]." Nat'l Sec. Archive v. Cent. Intel. Agency, 752 F.3d 460, 463 (D.C. Cir. 2014).

If that were not enough, the Court's *in camera* review of the materials confirms the FTC's proffered explanation that there are not segregable and purely factual materials among the documents that would be appropriate for disclosure. Rather, to the extent that those documents contain factual material, they are "inextricably intertwined" with the deliberative portions of the documents, including predecisional staff analysis and opinions. As such, their release would "harm[] the deliberative processes of the government by chilling the candid and frank communications necessary for effective governmental decision-making." Elec. Frontier Found. v. U.S. Dep't of Just., 739 F.3d 1, 12 (D.C. Cir. 2014) (internal quotation marks omitted).

### 3. Challenge to Agency's Decisionmaking

Meta next insists that the deliberative-process privilege does not apply because its equitable defenses (laches, estoppel, and waiver) put the FTC's intent and decisionmaking process directly at issue. See Def. Mot. at 14–15. That argument, too, goes nowhere.

The Court acknowledges that the privilege is "unavailable where 'the Constitution or a statute makes the nature of governmental officials' deliberations the issue.'" Landry v. Fed. Deposit Ins. Corp., 204 F.3d 1125, 1136 (D.C. Cir. 2000) (quoting In re Subpoena Duces Tecum Served on the OCC, 145 F.3d 1422 (D.C. Cir.), reh'g granted, 156 F.3d 1279 (D.C. Cir. 1998)). This exception is "limited to those circumstances in which the cause of action is directed at the agency's subjective motivation." OCC, 156 F.3d at 1280. The privilege is not waived, for example, when a defendant merely complains of "arbitrary and capricious" action under the Administrative Procedure Act absent some other "showing of bad faith or improper behavior."

11

Id. at 1279–80.  Instead, "archetypal" examples of where the government's subjective motivations are at issue include "Title VII action[s] or . . . constitutional claim[s] for discrimination."  OCC, 145 F.3d at 1424.  In those cases, "Congress create[d] a cause of action that deliberatively exposes government decisionmaking to the light," defeating the protection of the deliberative-process privilege.  Id. at 1424.

No such cause of action exists here.  Instead, Meta relies on the fact that its defenses pivot on the "unfairness of the government's conduct" in bringing this action — namely, because the FTC "clear[ed] [these] transactions, inducing reliance over eight-to-ten years at the cost of billions of dollars, then suddenly reemerg[ed] to challenge those acquisitions on grounds that were likely rejected as unfounded when the transactions were reviewed and cleared."  Def. Mot. at 15.  This conduct, the argument goes, "put[s] squarely at issue the FTC's intent and decision-making processes in 2012 and 2014."  Id.  To the extent that Meta's defense hinges on its reliance interests, however, the argument about unfair governmental action would depend not on why the FTC failed to block the mergers in 2012 and 2014, but instead on the fact that the FTC did not challenge those acquisitions at the time they were made.  And Meta has not alleged any kind of "affirmative misconduct" associated with its estoppel argument that would call into question the government's "subjective motivations."  Landry, 204 F.3d at 1136; see also id. (finding that an "ordinary enforcement action in no way implicates the [agency's] subjective motivations"); Morris Commc'ns, Inc. v. Fed. Commc'ns Comm'n, 566 F.3d 184, 191 (D.C. Cir. 2009).

Meta relies on Doe 2 v. Esper, No. 17-1597, 2019 WL 4394842 (D.D.C. Sept. 13, 2019), which is also inapposite because that case did involve a cause of action that was directed at the government's subjective decisionmaking — specifically, a constitutional claim of discrimination

12

where the court weighed whether a policy related to transgender troops was the product of "the considered professional judgment of appropriate military officials" for purposes of deference. Id. at *6.  This required the court to inquire into the "decision-making process resulting in the development of the [policy]" and "the process used to develop" the policy, which it could not do without setting aside the deliberative-process privilege.  Id.  Unlike that discrimination case, no such need exists here to examine the process the FTC used in deciding to forgo action in 2012 or 2014.

In sum, the Commission is entitled to rely on the deliberative-process privilege in refusing to turn over the subject materials.

B.  Waiver

Retreating to its fallback position, Meta next contends that the privilege's applicability is irrelevant because the FTC waived it when, in response to a September 2019 request, it shared these same documents with members of the House Judiciary Committee.  The Court disagrees.

The D.C. Circuit has recognized that "voluntary disclosure of privileged material . . . to unnecessary third parties . . . waives the [deliberative-process] privilege . . . for the document or information specifically released," although such disclosure does not waive the privilege "for related materials."  In re Sealed Case, 121 F.3d at 741 (internal quotation marks and citations omitted).  The Circuit also cautioned that because the privilege "exists to aid the governmental decisionmaking process, a waiver should not be lightly inferred."  Id.

Applying the standard for civil-discovery privileges, this Circuit has held in the FOIA context that an agency does not waive the privilege when it transmits to Congress "memoranda and correspondence created as part of the [agency's] deliberative process."  Rockwell Int'l Corp. v. U.S. Dep't of Just., 235 F.3d 598, 604 (D.C. Cir. 2001).  Documents that were "created

13

specifically to assist Congress" and shared "for the sole purpose of assisting [a] Committee with its deliberations," however, do not continue to benefit from protection. Id. (comparing Dow Jones & Co. v. Dep't of Just., 917 F.2d 571, 573–75 (D.C. Cir. 1990)). The documents here obviously fall into the former category because they were "created as part of the [FTC's] deliberative processes," Rockwell Int'l Corp., 235 F.3d at 604, and contained only agency staff's "preliminary agency opinions rather than articulations of a final decision." Elec. Priv. Info. Ctr., 928 F. Supp. 2d at 165 (quotation marks omitted). As such, they were plainly created to assist with agency, rather than congressional, deliberations.

The mere sharing of the Instagram and WhatsApp records with Congress also did not compromise the confidentiality of those materials. "[A] document otherwise covered by the deliberative process privilege does not lose this status merely because it was disclosed to a member of Congress without an explicit warning of its confidential status." Heggestad v. U.S. Dep't of Just., 182 F. Supp. 2d 1, 13 (D.D.C. 2000). For instance, in Murphy v. Dep't of the Army, 613 F.2d 1151 (D.C. Cir. 1979), the Circuit extended the same protection to documents that were disclosed to an individual congressman, even when that disclosure was not explicitly conditioned on confidentiality. Id. at 1156; see also Rockwell Int'l Corp., 235 F.3d at 604 (reaffirming the protection extended in Murphy in the context of finding that DOJ did not waive privilege when it "gave . . . documents to [a] Subcommittee only after the Subcommittee expressly agreed not to make them public").

The FTC's sharing of its Instagram and WhatsApp documents with the House Judiciary Committee occurred under similar circumstances. In providing the materials to Congress, the Commission was responding to a formal request by the Chairman and Ranking Member acting in their official capacities. See ECF No. 160-2 (House Comm. Letter). In its response to the

14

Committee, moreover, the Commission included a "request[] that the Committee and Subcommittee maintain [the] confidentiality" of the nonpublic and privileged documents, including "predecisional, deliberative materials" it was transmitting. See ECF No. 160-3 (FTC Letter); ECF No. 160-1 (Declaration of Elizabeth Tucci), ¶¶ 13–14, 17–18. The final House report also "does not reproduce or reference FTC staff's internal recommendations or analysis," Pl. Opp. at 20, and instead limits its references to FTC documents to a discussion about the extent to which antitrust enforcement considers anticompetitive effects of acquisitions generally. See Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, Investigation of Competition in Digital Markets: Majority Staff Report and Recommendations, 117th Cong. 332–33, 339 (July 2022). Particularly when transmitted to the congressional committee of competent jurisdiction for overseeing antitrust enforcement and with requests for confidentiality, such a disclosure is "not inconsistent with maintaining secrecy against opponents[] [and] should be allowed without waiver of the privilege." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980) (discussing waiver in context of attorney-client and work-product privileges).

In the context of its argument that Plaintiff also waived the work-product privilege, Meta contends that the FTC and HJC were actually in a "potentially adversarial posture" because HJC was "investigating [the FTC], and potentially criticizing its actions." Def. Reply at 5 (citing In re Subpoenas Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir. 1984)); see also Am. Tel. & Tel. Co., 642 F.2d at 1299 (holding that waiver of work-product privilege depends in part on whether the disclosure is consistent with "protect[ing] information against opposing parties"). The Court need not analyze this argument, as it is inapplicable to waiver in the context of the deliberative-process privilege. The Court nonetheless believes that this issue is worth addressing in the

15

context of the understanding that the FTC and HJC had of the confidentiality of the materials that the Commission disclosed.

In their request letter, the Chairman and Ranking Member identify the focus of their investigation to include three components: "(1) competition problems in digital markets; (2) whether dominant firms are engaging in anti-competitive conduct online; and (3) whether existing antitrust laws, competition policies, and current enforcement levels are adequate to address these issues." House Comm. Letter at 1. The letter goes on to acknowledge that "the requested materials are likely to contain sensitive information regarding the FTC's internal decision-making processes, FTC attorney work product, and third party businesses," but it explains that this information was necessary for the Committee to "assess whether existing antitrust laws are adequate for tackling current competition problems and to identify potential reasons for under-enforcement." Id. at 2. The request for information, then, appears to suggest that the targets of the investigation were participants in digital markets, like Meta, as opposed to the FTC itself, and that the Committee and the Commission understood the need to maintain the confidentiality of investigatory materials.

Meta also insists — with boldface and italics for emphasis — that this Court should not give much credence at all to Rockwell Int'l Corp. and Murphy because these cases were decided in the FOIA context, and FOIA exemptions do not apply to requests from Congress. See Def. Reply at 6; 5 U.S.C. § 552(d). But, as this Court has already explained, "the plain meaning of Exemption 5 is that the scope of the Exemption is coextensive with the scope of the discovery privileges it incorporates." Fed. Trade Comm'n v. Grolier Inc., 462 U.S. 19, 32 (1983) (Brennan, J., concurring in part and in the judgment); see also Weber Aircraft Corp., 465 U.S. at 799 (noting FOIA Exemption 5 merely "incorporates civil discovery privileges"). Additionally,

although the court in Rockwell Int'l Corp. observed that the earlier decision in Murphy "relied mostly on FOIA section 552(d)," the policy justifications underlying the deliberative-process privilege counseled the same result. Rockwell Int'l Corp., 235 F.3d at 604. It noted specifically that under the approach it rejected, and that Meta promotes here, "every disclosure to Congress would be tantamount to a waiver of all privileges and exemptions, [and] executive agencies would inevitably become more cautious in furnishing sensitive information to the legislative branch — a development at odds with public policy which encourages broad congressional access to governmental information." Id.

Nor do the cases that Meta relies upon for waiver move the needle. United States v. Phillip Morris Inc., 212 F.R.D. 421 (D.D.C. 2002), for example, involved an attempt by a party to claim privilege over documents provided to a Congressional committee only after the Committee had already "post[ed] the . . . documents on the internet." Id. at 426. Unlike in that case, the HJC letter specifically acknowledged the privileges that would likely apply to the FTC materials, the FTC correspondingly requested confidentiality, and the materials have since remained confidential. Similarly, In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig., No. 04-16398, 2009 WL 10708594 (D.D.C. June 9, 2009), involved documents that the Office of Federal Housing Enterprise Oversight had inadvertently produced to individual defendants in the litigation and that had, by the time OFHEO claimed the deliberative-process privilege, been in those defendants' possession "for months, if not years." Id. at *2. Finally, Meta relies on Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Commerce, No. 18-3022, 2020 WL 4732095 (D.D.C. Aug. 14, 2020), which involved the Commerce Department's emailing draft congressional testimony to a "non-governmental third party" to print at yet another third party's home. Id. at *2. Because the government did not "take steps to protect

17

[the] privileged materials," the court found that it had waived deliberative-process protection. Id. at *2. Here, however, the FTC did take steps to request the confidentiality of the material it was disclosing, as the Court has already discussed.

C. Showing of Need

Meta's final toss contends that even if the FTC did not waive its claims of privilege, the Instagram and WhatsApp documents should nonetheless be disclosed because Defendant has demonstrated a "manifest" showing of need sufficient to overcome the privilege. See Def. Mot. at 15. This effort falls short of its target.

The deliberative-process privilege is a qualified privilege that can be "overcome by a sufficient showing of need." In re Sealed Case, 121 F.3d at 737. "This need determination is to be made flexibly on a case-by-case, ad hoc basis." Id. Each time the privilege is asserted, a court "must undertake a fresh balancing of the competing interests." Id. (quotation omitted). "The court must weigh the public interest in 'prevent[ing] injury to the quality of agency decisions' against the 'need of the party seeking privileged evidence.'" Brown v. D.C., No. 10-2250, 2021 WL 3883647, at *4 (D.D.C. Aug. 31, 2021) (quoting In re Sealed Case, 121 F.3d at 737, 746); see also In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d 150, 159 (D.D.C. 2017) ("[P]rivileged materials may be ordered disclosed if the court concludes the private need for disclosure outweighs the public interest in non-disclosure.").

In making this determination, a court must consider, *inter alia*, (a) "the relevance of the evidence," (b) "the availability of other evidence," (c) "the seriousness of the litigation," (d) "the role of the government," and (e) "the possibility of future timidity by government employees" should the materials be released. In re Sealed Case, 121 F.3d at 737–38 (internal citations

omitted). "The party seeking the documents bears the burden of demonstrating that the balance of interests tips in his or her favor." In re Anthem, Inc. Data Breach Litig., 236 F. Supp. at 159.

As this Court has already discussed, it is doubtful that the evidence Meta seeks from these memoranda and notes is particularly relevant to its equitable defenses. To the extent that the company characterizes the FTC's current enforcement action as unfair, it is the pure fact that the Commission previously allowed the acquisition to continue that is of relevance to Meta's reliance interests, not the reasoning for their acquiescence. Additionally, the FTC has identified all of the available documents and witnesses that it interviewed ahead of its 2012 and 2014 recommendations, see Pl. Op. at 19, leaving only the staff analysis and opinions as unavailable to Meta. The availability of this evidence negates any need for the specific recommendation memoranda and notes prepared by FTC staff for the Commission. See Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc., 778 F.3d 142, 155–56 (D.C. Cir. 2015) (indicating that "special circumstances" warranting disclosure are not present when witnesses are available for deposition); see also Mischler v. Novograaf Grp. BV, No. 18-2002, 2019 WL 6135447, at *10 (D.D.C. Nov. 19, 2019).

Although the Court recognizes the seriousness of this "la[test] great antitrust battle in our courthouse," Facebook, Inc., 560 F. Supp. 3d at 4, and the role of the government in carrying its burden when seeking affirmative relief, these factors are outweighed by the public interest in "prevent[ing] injury to the quality of agency decisions." In re Sealed Case, 121 F.3d at 737 (quoting Sears, 421 U.S. at 516). For the reasons the Court has already explained based on its *in camera* review of the records, the release of the documents at issue here would "harm[] the deliberative processes of the government by chilling the candid and frank communications necessary for effective governmental decision-making." Elec. Frontier Found., 739 F.3d at 12

19

(internal quotation marks omitted).  Meta has consequently failed to demonstrate a "sufficient showing of need" to defeat the privilege.  In re Sealed Case, 121 F.3d at 737.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Compel.  A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 6, 2022