**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | Case No.: 1:20-cv-03590-JEB |
| Plaintiff, | |
| v. | |
| **META PLATFORMS, INC.**, | |
| Defendant. | |

**STATEMENT OF NON-PARTY ALPHA EXPLORATION CO. INC. (CLUBHOUSE)
IN OPPOSITION TO THE MOTION TO COMPEL BY META PLATFORMS, INC.**

Facing a lawsuit charging it with anti-competitive behavior, Meta Platforms, Inc. ("Meta") identified over one hundred putative competitors and served them with highly burdensome and invasive subpoenas. Among them is Clubhouse, a pre-revenue start-up that must conserve its finite resources in a down market. Meta served a pair of overlapping subpoenas on Clubhouse (in this action and *Klein*) containing 136 document requests including subparts (71 in this action alone). Meta rejected Clubhouse's efforts to negotiate reasonable cost-sharing, and forced it to spend weeks trying to narrow its demands. This is not what Rule 45 contemplates.

Meta now raises two key issues: (1) whether Clubhouse must embark on broad searches of the emails of several custodians without Meta sharing any of the costs; and (2) whether Clubhouse, having already produced all of its Daily Active User ("DAU") and Monthly Active User ("MAU") data, must nonetheless disclose all other user-engagement metrics including trade secret information irrelevant to this case.

Clubhouse. Clubhouse is a start-up, a negligible fraction of Meta's size, with fewer than 100 employees and no revenue. It has one app, which launched in 2020. Needless to say, Clubhouse is not one of the significant competitors Meta identifies in its public disclosures. *See, e.g.*, Meta Platforms, Inc., Form 10-K, United States Securities and Exchange Commission (2022) at 7-8, 21, *available at* https://investor.fb.com/financials/.

Meet and confer efforts. Meta first narrowed its subpoena on June 1, withdrawing non-priority requests after months of debate. It now pursues four vaguely defined "categories" of requests. On June 3, Clubhouse agreed "to produce documents responsive to the four categories stated in [Meta's] letter of May 18." They include: "(1) Clubhouse's competition with Meta and the broader competitive landscape" and "(4) Clubhouse's time spent/user engagement

data." Clubhouse complied with the deal. For example, it produced competition documents on August 25, a week before Meta's surprise motion to compel. And despite its objections, Clubhouse made two more productions in an effort to narrow Meta's motion.

<u>Category 1</u>. Clubhouse has produced documents for Category 1—highly confidential analyses that provide an overview of the competitive landscape. Yet Meta demands that Clubhouse also search the emails of 4 or 5 custodians using overbroad search terms:

- (compet* OR compar* OR diversion OR divert* OR substitut* OR switch* OR churn* OR moat* OR "time spent") AND (Meta* OR Facebook OR FB OR WhatsApp OR WA OR Instagram OR IG OR IGTV OR Insta OR Messenger OR MSGR OR "social media" OR "social network*" OR "social platform" OR "personal social" OR PSN OR Stories OR Newsfeed OR "News Feed" OR Reels)
- (compet* OR compar* OR diversion OR divert* OR substitut* OR switch* OR churn* OR moat* OR "time spent") AND (Snap* OR TikTok OR "Tik Tok" OR YouTube OR YT OR Telegram OR LinkedIn OR Discord OR MeWe OR Pinterest OR Google OR iMessage OR Facetime OR Zoom OR Line OR Kakao OR BeReal OR Dispo OR Netflix OR NFLX OR Reddit OR Twitch OR Twitter OR TWTR)
- ((Market OR mkt) w/5 "share") OR (compet* w/10 (landscape OR position*)) OR "top competitor*" OR "key competitor*" OR "significant competitor*" OR SWOT
- compet* w/20 (analys* OR network* OR track* OR metric* OR study OR studies OR report OR "time spent" OR investigat* OR forecast* OR DAU* OR MAU* OR WAU* OR "daily active" OR "weekly active" OR "monthly active")

Requiring a smaller non-party like Clubhouse to complete such overbroad searches without cost-sharing cannot be reconciled with Rule 45. Even though unwarranted, Clubhouse told Meta on September 20, "Notwithstanding its objections, ***Clubhouse is willing to search custodial emails if Meta agrees in advance to pay for it*** on reasonable terms" (emphasis in original). Clubhouse has not asked for a specific fee amount, it asks only that Meta negotiate a reasonable formula for cost-sharing to "protect" it "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Yet Meta consistently claims that Clubhouse's custodial search costs are unlikely to be "significant," and insists it will only consider an application for cost-sharing after discovery is concluded.

That is not sufficient. All of Meta's incentives are to create more burden for companies it views as competitors. But if Meta is ordered in advance to pay a reasonable rate for any expensive searches it demands, it will at least have a countervailing incentive to keep its demands reasonable. That is what the Federal Rules contemplate where they require that an order compelling production "must" protect a non-party against significant expense. Fed. R. Civ. P. 45(d)(2)(B)(ii). "[F]ix[ing] the costs in advance of production . . . will often be the most satisfactory accommodation[.]" Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.

Category 4. Clubhouse has already produced all MAU and DAU data. Yet Meta again unreasonably demands more—to know all the user-engagement metrics Clubhouse tracks, and all associated data. Its RFPs go so far as to ask for "[a]ll board of directors or management presentations containing data or projections regarding … any … measures of user traffic, density, engagement, adoption, satisfaction, or activity." (RFP 4). This would competitively harm Clubhouse with little benefit for this case. The specific user-engagement metrics Clubhouse uses are competitively sensitive, kept as trade secrets within the company. If granted leave, Clubhouse would provide a declaration to that effect.

Meta's apparent purpose is to dispute the FTC's description of its market share, based on an analysis of a particular user-engagement metric: "'time spent' on the app." Am. Compl. ¶ 199. But Clubhouse does not track the amount of time users spend on its app. Meta cannot challenge the FTC's analysis with data Clubhouse does not have. And Meta has not "show[n] a substantial need" for a range of other highly sensitive data, disclosure of which could help Facebook to develop competing audio features. Fed. R. Civ. P. 45(d)(3)(C)(i).

3

Dated: October 12, 2022                Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Jordan R. Jaffe*
Jordan R. Jaffe (admitted *pro hac vice*)
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Email: JJaffe@wsgr.com

Benjamin D. Margo (D.C. Bar. No. 110445)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Email: BMargo@wsgr.com

*Counsel for Non-Party*
*Alpha Exploration Co. Inc. d/b/a Clubhouse*

## CERTIFICATE OF SERVICE

    I certify that on October 12, 2022, I authorized the electronic filing of the forgoing with the Clerk of Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

*s/ Jordan R. Jaffe*
Jordan R. Jaffe (admitted *pro hac vice*)

*Counsel for Non-Party*
*Alpha Exploration Co. Inc. d/b/a Clubhouse*
