**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>          Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>          Defendant, | Case No. 1:20-cv-03590-JEB |

**PLEADING OF NON-PARTY SNAP
IN OPPOSITION TO META'S MOTION TO COMPEL**

Meta is moving to compel non-party Snap to produce documents responsive to 46 numbered requests, including more than 150 subparts. Many of the requested documents are among Snap's most competitively sensitive documents, with only marginal potential relevance to this case. Other demands are massively overbroad and designed to sweep in plainly irrelevant, yet highly sensitive, material. The individual and cumulative burden of each request—including not only demands from the subpoena in this case but also demands that Meta presses from a subpoena ostensibly served in the companion *Klein* case, that will also be used for this case—is enormous and inappropriate for a non-party in Snap's position to bear.

Meta sorted its requests into six "categories" to make them appear more palatable and avoid any substantial narrowing. These categories are: (1) competitive landscape; (2) challenged conduct; (3) product quality and pricing; (4) metrics and data; (5) cloud infrastructure; and (6) Project Voldemort. Snap made a reasonable offer to produce documents to cover the six topics. Snap also agreed to search for documents responsive to priority categories identified by the FTC, and has been producing them to the FTC and Meta. This should have satisfied Meta, or at least caused Meta to narrow its demands. It did neither. Instead, Meta reflexively insists on wide swaths of custodial searches without showing a substantial need for such an invasive and burdensome method of information-gathering, and presses demands on orthogonal matters based on speculation that they might uncover some shred of additional, marginally relevant information. Meta has also been inflexible and rejected Snap's request for supplemental protections, which are necessary for one of Meta's closest competitors. The Court should (1) deny Meta's motion to compel as unduly burdensome and overly broad; (2) order that Snap may produce highly sensitive documents with an "outside counsel eyes' only" designation; and (3) order Meta to pay Snap's compliance costs.

1. Undue burden and overbreadth: Meta served two subpoenas on Snap, in this action and *Klein*. Meta seeks production in each action of all documents produced by Snap in the other, effectively combining the two subpoenas. If Meta were truly seeking evidence on just the six topics described in their "categories," the parties could likely negotiate a search protocol that gets Meta the information it actually needs without unduly burdening a non-party. Custodial searches are not

1

appropriate or necessary for any of Meta's categories, which can all be adequately covered with targeted searches. *See* Appendix A (Snap's offer to Meta); Appendix B (FTC's priority requests). Meta wrongly asserts that custodial searches are necessary to understand Snap's views of the competitive landscape; Snap's views, however, are reflected in the centrally stored materials Snap is already producing and there is no reason to doubt that Snap's true views are reflected in its internal documents.

Meta's actual demands—far broader than the six "categories" would suggest—sweep well beyond the core material for which Meta could "show[] a substantial need," FRCP 45(d)(3)(C)(i), and far exceed what a non-party should be required to bear. For instance:

- RFP 36 (ostensibly in category 2, challenged conduct) seeks "[a]ll Documents . . . relating to actual and potential acquisitions of or substantial investments in the Company or its Products." Meta wants to rifle through Snap's investment-related documents in the hopes of finding something to suggest that Snap has not suffered as a result of Meta's conduct. Thus, in addition to searching for documents discussing Meta, its conduct, its direct impact on Snap, the market, etc., Meta insists that Snap search the files of additional custodians for minimal and speculative benefit.

- RFP 2 seeks "[d]ocuments sufficient to identify . . . any changes to each Product . . . You have made at least partly in response to competition or potential competition with Meta . . . [or] any company other than Meta." Snap has dozens of user products and several advertiser products. Non-party Snap should not have to identify all changes to every product over a decade-plus period and assess why each change was made, given it has offered to produce documents that directly show how Snap has analyzed and attempted to meet competition over the years.

- RFP 60 requests "[a]ll Documents provided to federal, state, or foreign governmental entities regarding competition issues related to products and services provided by" 14 companies. This obvious fishing expedition would require Snap to investigate—and reveal to Meta—its own regulatory activities for more than a decade, as well as inquiries into other non-parties. The harm of production is enormous (to Snap and enforcement), while the benefit is minuscule. To the extent Snap views these companies as competitors, they will show up in Snap's analyses of competition.

2

- Regarding data, Snap's data experts provided sworn declarations explaining that pulling the incredibly granular data requested by Meta, sliced in myriad ways, would take months if even possible. The ordinary course metrics offered by Snap should suffice.

2. Confidentiality: Meta demands that Snap produce its most sensitive documents, including on competition, product plans, efforts to attract users, capital raising, pricing methods, customers, M&A activity, and technical capabilities. Even if Meta could prove its *outside* counsel has a substantial need for such information (which is dubious), it cannot prove its *in-house* counsel does. Meta's demands *in a case alleging anti-competitive conduct* are particularly concerning.

Snap should be permitted to produce its most sensitive documents to only Meta's outside counsel. Snap is specially situated with respect to in-house access. Snap is the *only* company that Meta and the FTC agree competes with Meta. Meta has targeted Snap for copying and surveillance. Meta obtained Snap's usage data covertly through a spyware app. Meta's CEO threatened to copy Snap's products unless Snap let Meta buy it. Meta then copied Snapchat's features. If these reasons can support discovery of Snap's most sensitive information, they should also support additional protection of such information. And the protective order allows Snap to seek further protections. Snap's need for protection is exacerbated by Meta's unreasonable requests.

Moreover, Meta's designated in-house counsel interact with regulators, lobby, and decide to investigate or bring lawsuits. Meta would obtain an unfair and improper advantage by gaining insight into Snap's efforts, plans, and vulnerabilities. If the Court is skeptical, Snap requests the opportunity to provide examples of "outside counsel eyes' only" documents for *in camera* review.

3. Cost-shifting: The Court should order Meta to pay Snap's compliance costs and attorneys' fees. Under Rule 45, the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" and may "ensure[] that the subpoenaed person will be reasonably compensated." Recent financial struggles resulted in Snap reducing its workforce by 20%, and Meta's invasive demands impose significant expense. Far from "premature," as Meta suggests, "fix[ing] the costs in advance of production" will give Meta an incentive to act reasonably during negotiations. *See* FRCP 45, 1991 Amendment Notes.

<div style="display: flex; justify-content: space-between;">
<div>October 27, 2022</div>
<div>

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

<u>/s/ Justina K. Sessions</u>
Justina K. Sessions, California Bar No. 270914
(admitted per FRCP 45(f))
Email: jsessions@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099

*Counsel for Non-party Snap Inc.*
</div>
</div>

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System.

*/s/ Justina K. Sessions*
Justina K. Sessions