## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

## JOINT STATUS REPORT

Pursuant to the Court's Minute Order of September 30, 2022, the parties submit the following Joint Status Report summarizing the state of discovery, identifying any issues between the parties, and summarizing the parties' respective positions.

### I.   The FTC's Statement on the Status of Discovery

Meta informed the FTC that it would not meet the Court's November 16, 2022 deadline for Meta to substantially complete its production responsive to the FTC's First Set of Requests for Production ("First RFPs"). The FTC's pre-existing concerns with the pace of Meta's discovery compliance are now acute, in light of the revelation – only three days ago – that Meta has yet to review close to a million documents potentially responsive to the FTC's First RFPs. Accordingly, the Court should adopt three pragmatic proposals to accelerate orderly compliance with the Court's May 22, 2023 fact discovery deadline. As explained below, the FTC respectfully asks the Court to:

1. Implement a reasonable protocol for Meta's production of "linked" files;

2. Instruct Meta to comply with its commitment, which Meta has disregarded for four months, to identify the locations of shared sources and collaborative work

environments from which it has produced responsive documents; and

3. Focus non-party discovery efforts by instructing both Defendant and Plaintiff to update their initial disclosures by December 5, 2022, limiting the third parties identified to those from which the party believes, in good faith, that it will seek evidence to support the parties' claims or defenses.

With respect to several other long-standing issues regarding Meta's compliance with the FTC's discovery, in connection with the parties' exchange of drafts of this Joint Status Report, Meta has made various commitments. While the parties do not presently have disputes regarding those issues, the FTC may need to seek the Court's assistance in the coming weeks.

A.    **The FTC's Position Regarding Its Discovery to Meta**

The FTC has issued to Meta five sets of Requests for Production ("RFPs"). The parties have two ripe disputes related to Meta's compliance with the FTC's First RFPs. Despite months of attempted engagement, the FTC has been unable to achieve reasonable compliance with Meta's obligation to produce files "linked" to responsive documents, and Meta has failed to abide by its commitment to list the locations of shared sources and collaborative work environments from which it is producing documents. These issues have already hindered the FTC's efforts to proceed efficiently with discovery, and – if not addressed promptly – will continue to hinder the FTC in achieving orderly compliance with the Court's schedule.

Finally, the FTC has asked that Meta agree to a date by which both parties should narrow their respective Initial Disclosures to identify only non-parties that are truly likely to be targets of discovery in this matter. Meta has declined, so as explained below, the FTC respectfully asks the Court to implement the FTC's reasonable proposal to narrow initial disclosures by December 5, 2022 in order to focus the parties' discovery efforts on appropriate and efficient non-parties.

1.   **The Parties Have a Dispute Because Meta Has Failed to Produce "Linked" Files in a Timely Fashion and in a Reasonably Usable Form.**

Meta employees routinely communicate by exchanging emails or other documents that – in lieu of attachment**s** – instantly connect to related files using links.  As an illustration, an email might say "In advance of tomorrow's meeting, here are latest metrics on major social networking rivals," where "here" indicates a link that, when clicked upon, opens a document that is not attached to the email as a separate file but instead resides in a shared location (often called a "collaborative work environment").  Importantly, not all links are apparent from the image of the document – in the same hypothetical sentence described above, an entirely different document could be linked to the phrase "tomorrow's meeting" (e.g., an agenda or presentation associated with the meeting), and yet based on the way Meta has imaged and produced its files, the FTC would have no way to know that such text linked to a separate file.

Meta does not appear to dispute that it should provide information that allows the FTC to associate linked files with originating emails: understanding the relationship between a "parent" document and its linked "child" document(s) is critical to understand Meta's employees' communications, as well as for establishing documents' authenticity and admissibility.  Software code can facilitate the production of such linked files, but Meta has represented that it lacks the technical capabilities to automate this process.  *Contra* Joint Status Report at 8-9 n.4, *United States v. Google LLC*, Case No. 1:20-cv-03010-APM, ECF No. 361 (D.D.C. June 16, 2022) (Google conducted "an automated search to identify" internal files linked to all emails produced by Google).  Based on this representation, during the FTC's pre-complaint investigation the parties agreed to a manual process: the FTC identified specific documents of interest, and Meta provided all responsive files linked to each document, as well as information that allowed the FTC to establish the connection between each document and associated linked files.

Unfortunately, now that litigation has commenced, Meta has failed to respond in a timely fashion to the small number of requests the FTC has made for linked files and associated information. To prevent delays going forward, this Court should adopt the FTC's proposal set forth below: the FTC should identify up to 1,200 documents in reasonably sized batches of no more than 100 documents, and Meta should presumptively respond to each batch within three weeks unless unexpected issues arise.

The Court should reject Meta's contrary proposal, which would place the onus on the FTC to identify each link Meta should provide in contrast to the FTC's proposal which would require the FTC to identify a list of documents potentially containing hyperlinks. Meta's proposal would jettison the parties' previous practice, and also flout the document-based approach Meta affirmatively proposed in another ongoing litigation. Meta Discovery Brief at 1, *Klein et al. v. Meta Platforms, Inc.*, 3:20-cv-08570-JD, ECF No. 328 (N.D. Cal. Aug. 4, 2022) (Plaintiffs should "identify key *documents* with embedded hyperlinks, and Meta would investigate and produce any relevant, non-privileged hyperlinked documents to the extent they were reasonably available and not already produced or publicly available.") (emphasis added). Moreover, Meta's proposal would unduly restrict Meta's production of responsive files. First, as illustrated above, the image of a document does not necessarily reveal a link to another document, because links can appear to be plain text.[1] Second, the number of links Meta proposes (750) is far too low. Meta has indicated that the documents the FTC has identified contain an average of 6 links each, so Meta in effect proposes that during the entire fact

---

[1]  Moreover, even underlining does not necessarily distinguish a link from text that is simply underscored for emphasis. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (more than a simple underscore is required to ensure that a link "is sufficiently 'set apart' from the surrounding text").

discovery process the FTC will be allowed appropriate discovery into only 125 documents

containing links.  This is far fewer documents, and linked files, than Google provided during fact

discovery, even after Google implemented an automated process to provide internal documents

linked to all produced emails.[2]  *See* Hearing Transcript at 12:24-13:18, 18:5-18, *United States v.*

*Google LLC*, 1:20-cv-03010-APM, ECF No. 362 (D.D.C. June 17, 2022) (during fact discovery

Google manually produced approximately 2,000 files linked to 360 non-email documents; after

fact discovery closed, the *Google* court held that DOJ could identify a minimum of 200

additional linked files for production); *see id.* at 35:13-25 ("[T]he number is going to be 200 for

now and you can come back to me if you think you need more.").  Moreover, Meta's proposal is

even more restrictive than it appears, because in some cases the same document may contain

multiple links to the same file – thus in some instances the FTC may request several different

links, but only receive a single linked file in response.

> **a.     Meta Has Unacceptably Delayed Providing Responses to the Small Number
> of Documents the FTC Has Requested to Date.**

To date during the litigation, the FTC has identified to Meta only 51 documents

containing links that are of particular interest to the FTC – a tiny fraction of the more than

300,000 documents containing links that Meta has thus far produced.[3]  Yet Meta's response has

been too slow.  The FTC identified 15 documents containing links on August 10, 2022, and it

took Meta over two months to complete its production in response.  (Moreover, complete

---

[2]     *See* Joint Status Report at 8-9 n.4, *United States v. Google LLC*, Case No. 1:20-
cv-03010-APM, ECF No. 361 (D.D.C. June 16, 2022) (explaining automated process governing
"all emails produced by Google").

[3]     The FTC's estimate of 300,000 files with links is uncertain, as the FTC is unable
to see and search for every link in responsive files because Meta's productions do not provide
consistent URL information in extracted text.  *Contra* Stipulation and Order Regarding
Discovery Procedure ("ESI Order") at App. 1 §§ G, H, Q, ECF No. 108.  However, just one
URL commonly used to link files suggests it is found in over 300,000 produced documents.

metadata for most of these files still has not been provided.)  Likewise, the FTC identified 21

documents to Meta on August 22, and Meta did not complete its production of the requested

linked files and information required to understand their linked relationships until October 21.

(Again, complete metadata for most of these files still has not been provided.)  The FTC

identified an additional 15 documents on September 30; Meta has not yet provided a production

in response, but has stated they hope to do so by October 31.  Such delay is unwarranted.

Meta exaggerates the supposed burden of identifying the links.  Contrary to Meta's claim

that the files date back to 2009, the 51 files the FTC has identified are overwhelmingly recent: 40

files are from 2017-2022 and none are dated before 2011.  The total number of links is

manageable: based on the information Meta has provided, the 51 requested files contain an

average of 6 links per document, moreover, the FTC has repeatedly clarified to Meta that it need

not produce links that lead to non-responsive content, such as external public sources, intra-

document references, or stock links (e.g. "unsubscribe here").  Finally, the FTC has proven

reasonable in responding to concerns raised by Meta: in fact, when Meta claimed that one of the

51 identified documents contained a large number of links, the FTC withdrew its request

regarding that document, even though the FTC was not – and is not – able to corroborate that the

document contained anywhere close to the number of links asserted by Meta.

### b.    The FTC's Proposal to Identify 1,200 Documents Is Reasonable.

Where employees communicate by exchanging emails that attach one or more separate

documents, the entire "family" of documents appended to a responsive email should be

produced, in a manner that associates emails with attachments.  *See, e.g.*, *In re Denture Cream

Prod. Liab. Litig.*, 292 F.R.D. 120, 125-27, 129 (D.D.C. 2013) (requiring the correction of a

failure to produce documents in a manner that allows the receiving party to match emails with

their attachment); *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, No. 19-1192-CJC, 2020 WL

13311682, at *4-6 (C.D. Cal. July 17, 2020).  Thus, if links within emails were treated identically to attachments, Meta should be required to produce *all* documents linked to responsive emails.  However, the FTC is not insisting that Meta produce all linked documents, notwithstanding Meta employee's standard practice of communicating by emailing links.  *Cf. Erickson v. Erickson*, 437 P.3d 370, 379 (Ct. App. Utah 2018) ("We see no material difference between emailing a file as an attachment and emailing a link to a Google Drive account that contains the file."); *Kelly v Provident Life & Accident Ins. Co.*, 04-cv-0807-WQH, 2009 WL 10664172, at *5 (S.D. Cal. May 29, 2009) (ruling that "any documents at the end of the hyperlinks must be produced").  Instead, in recognition of Meta's assertion that it faces technical limitations, the FTC proposes to identify a reasonable number of specific documents, ensuring that its requests will focus on documents the FTC believes to be important.

Meta's assertion that the FTC's proposed process is disproportionate to the needs of the case is unpersuasive.  Meta cites *Nichols v. Noom*, seizing on the court's conclusion that "a hyperlinked document is [not] an attachment."  *See infra*, citing *Nichols v. Noom Inc.*, 20-CV-3677, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021).  But in fact *Nichols* strongly supports the FTC's position here.  First, the *Nichols* court allowed the plaintiff to evaluate the defendant's production and identify any specific documents "for an additional targeted pull or production or clarifying information."  *Id.*  Notably, the *Nichols* court did not place any limits on the number of documents that the plaintiff could identify: here, the FTC has affirmatively proposed a reasonable limit on the number of documents it will identify during fact discovery, and has committed to identify documents in reasonably sized batches.  Second, the FTC's proposal anticipates and addresses potential inefficiencies identified by *Nichols* court: the FTC has already clarified that it is not requesting links to publicly available websites, intra-document links, or

stock links (such as a hyperlink to a "legal disclaimer" identified by the *Nichols* court). *See id.* (identifying each of these as potential inefficiencies with producing all hyperlinks).

Thus, contrary to Meta's assertions, the FTC's proposal is consistent with the protocols in *Nichols* (which established no limits on the number of requests for production of linked files) and in other recent cases. See, e.g., *IQVIA v. Veeva*, 2:17-cv-00177-CCC-MF, 2019 WL 3069203, at *5 (D.N.J. July 11, 2019) (ordering re-linking of 2,200 files within 30 days as reasonably tailored given specifics in the case). Meta's suggestion, infra, that the Google court required the production of only 200 links simply ignores the most salient factors of that case: (1) the defendant developed an automated process to provide internal documents linked to all produced emails; (2) during fact discovery the defendant manually provided an additional 2,000 linked files from 360 non-email documents; and (3) the court's ruling that plaintiff could identify at a minimum 200 links came after the close of fact discovery. Hearing Transcript at 12:24-12:24-13:18, 18:5-18, 35:13-25, *United States v. Google LLC*, 1:20-cv-03010-APM, ECF No. 362 (D.D.C. June 17, 2022) ("the number is going to be 200 for now and you can come back to me if you think you need more."). Meta likewise ignores the most important factors at play in a different litigation in which the FTC agreed to a linked-based approach, and a smaller number of links. See *infra*, citing *Federal Trade Commission v. Meta Platforms Inc*., et al., 5:22-cv-04325-EJD (N.D. Cal.). The matter to which Meta refers does not approach the scope of this litigation: it is a preliminary injunction action involving only a few weeks of fact discovery. Moreover, the FTC's willingness to tailor its requests to the needs of a narrow litigation seeking a preliminary injunction should not limit the discovery available to it in other litigations. Instead, it demonstrates that the FTC strives to make reasonable proposals and seek only the discovery it requires, as it has done here.

     **c.**      **The Court Should Implement the FTC's Proposal Requiring Meta to Presumptively Comply with Reasonable Requests Within Three Weeks, Subject to Exceptions.**

Unless Meta's compliance with the FTC's future requests to provide linked files accelerates dramatically, the parties will not be well positioned to accomplish depositions in an orderly fashion. Court intervention regarding this issue is needed now: the prospect that slow production of linked files will delay depositions is an acute concern in light of Meta's recent revelation that it will not comply with the Court's November 16, 2022 document production deadline. Production of files after depositions take place at best necessitates additional discovery, and at worst could impact the efficient presentation of evidence at trial. As such, the FTC respectfully asks the Court to establish a reasonable and concrete process, described below, which will enable the parties to prepare for depositions and trial:

- Between October 31, 2022 and the close of fact discovery, the FTC may identify no more than 1,200 documents containing links;

- The FTC shall identify documents containing links in batches limited to 100 documents or less, and shall identify no more than one batch per week absent exceptional circumstances (e.g., the identification of a specific document to facilitate an imminent deposition);

- Meta presumptively shall have three weeks to produce the files linked to each document identified, metadata, and associated linking information, provided that if Meta has issues with a particular document or a particular link, the parties shall meet and confer to discuss whether the FTC should, with respect to that document, extend the timing, narrow the request, or withdraw or substitute the request.

   **2.    The Parties Have a Dispute Because Meta Has Failed to Fulfill Its
          Commitments to Provide Information Regarding Collaborative Work
          Environments.**

Meta has, for several months, ignored its commitment to identify the locations of shared

sources and collaborative work environments from which it has produced responsive documents.

See Plaintiff's Statement in Advance of the Parties' September 30, 2022 Teleconference with the

Court Regarding Discovery Disputes ("Plaintiff's Sept. Statement") at 2, ECF No. 196.  In June,

the parties reported to the Court that "Meta has agreed to provide a list of those locations of

shared sources and collaborative work environments from which it has produced documents on a

rolling basis as it completes production."  Status Conference Transcript at 8 (June 22, 2022).

This report to the Court memorialized an agreement reached between the parties just prior to the

Status Conference to avoid a dispute.  Since that time, Meta has provided multiple document

productions.  Yet, despite the FTC's repeated requests, Meta has refused to provide the promised

list of locations of shared sources and collaborative work environments; nor has Meta

represented to the FTC that its productions do not contain documents from such shared sources.

A list of locations of shared sources is necessary because Meta has not consistently

provided Originating Path information in the metadata accompanying its productions,

particularly for non-email documents.  See ESI Order at App. 1 § D, ECF No. 108 ("Originating

Path" means "File path of the file as it resided in its original environment").  The FTC thus

requires a list of shared sources associated with each document production in order to identify

and investigate shared locations in which important documents may be found.  For example,

some companies may maintain a shared folder containing periodic reports benchmarking the

company against its rivals: identifying such a folder, and reviewing all of the documents within

it, is a far more efficient way to assess a document production than relying on keyword searches.

Meta provides, in its portion of the Joint Status Report, a list of the software applications related to its collaborative work environments, but this information is not helpful to the FTC in identifying locations in which important documents can be found, and it is not what Meta committed to provide.  Nor is the information contained in the metadata of each produced document sufficient to facilitate the FTC's investigation given that in many cases Originating Path is either missing or does not reflect the original environment folder location.  In addition, it is simply not what Meta agreed to do: while the metadata produced with each file is dictated by the ESI Order governing this case, in June, Meta agreed to provide additional information listing locations of shared sources and collaborative work environments.

Meta's failure to honor its June commitment has impaired, and until remedied will continue to impair, the FTC's efforts to investigate Meta's document production and identify efficient early deponents.  The FTC thus respectfully asks the Court to instruct Meta to fulfill its commitment and provide, by November 4, 2022, the promised list of locations of shared sources and collaborative work environments related to each production Meta has made in this litigation.

### 3.   The Court Should Instruct Both Parties to Update Initial Disclosures by December 5, 2022.

Meta identified nearly 290 non-party entities in its Initial Disclosures of February 22, 2022.  The parties have had more than eight months to serve non-parties with discovery, yet less than half of those entities have received Rule 45 subpoenas from Meta and/or the FTC.  If Meta no longer intends to seek discovery from some of the non-parties identified in its February Initial Disclosures, Meta should say so.  While the FTC has no desire to burden the remaining non-parties with outreach and/or unnecessary Rule 45 subpoenas, as long as Meta may seek discovery from them, the FTC will be required to contact at least a significant subset of these non-party entities.

The FTC believes that both parties will benefit from updated initial disclosures that narrow the universe of potentially relevant non-party entities likely to be targeted with discovery. To this end, the FTC asked Meta to agree to a date on which both Plaintiff and Defendant will amend their initial disclosures.  Meta has refused.  Accordingly, the FTC respectfully requests that the Court instruct both Defendant and Plaintiff to update their initial disclosures by December 5, 2022, to include only those non-parties from which the party believes, in good faith, that it may seek documents, or a declaration, or a deposition, or trial testimony.  For the avoidance of doubt, the FTC intends that each party would retain the right to amend its December 5, 2022 disclosures in good faith in response to new information, including by adding new individuals or entities.

At this stage, focusing initial disclosures is necessary to streamline discovery, because Meta has not identified <u>any</u> individuals associated with the disclosed non-parties, instead identifying approximately 290 third-party entities and stating that it might rely on evidence from a "Corporate Representative or employee(s)" of each such entity.  But entities do not provide trial testimony, individuals do.  Thus, Meta's claim that "the FTC is on notice that Meta may use testimony from the identified non-parties in support of its defenses at trial" only reveals the need for focusing Meta's current disclosures.  The FTC is not suggesting that Meta is required to identify its anticipated trial witnesses on December 5, or even identify each individual that might be deposed or provide a declaration.  It is reasonable for disclosures to identify an entity where more specific information is not yet available.  (Indeed, the FTC's disclosures identified individuals associated with entities where possible, but only the entities where the FTC was not aware of more specific information.)  But it is also reasonable for the FTC to request, and for the Court to require, reasonable narrowing of disclosures as the close of fact discovery approaches.

The FTC's proposed date of December 5 is 23 weeks in advance of the close of fact discovery. By that point in time, Meta should be able to make a far more focused disclosure of the entities and individuals likely to have discoverable information that Meta may use to support its defenses.  *Cf.* Fed. R. Civ. P. 26(a)(1)(A) (requiring "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses.").

The FTC's proposal will facilitate the orderly completion of third-party discovery.  By December 5, with only 23 weeks before the close of fact discovery, the parties will need to focus their efforts to obtain third parties' timely compliance with document discovery and deposition subpoenas.  Moreover, exchanging updated initial disclosures on December 5 will allow the parties to provide a more accurate assessment of discovery progress in the December 15, 2022 Joint Status Report.  At present, the FTC does not know whether Meta intends to serve an additional 140+ third party subpoenas in the coming months, or if instead Meta has served Rule 45 subpoenas on all or most of the third parties that Meta intends to serve.  It is neither efficient nor realistic for Meta to insist that by December 5 – with less than six months to go in the fact discovery period – Meta will be unable to narrow its disclosures to fewer than any "Corporate Representative or employee(s)" of 290 entities.

### 4.   Status Update on Other Issues

### a.   Inaccurate or Deficient Privilege Claims, Identified by the FTC on August 4

As the FTC has previously reported, the FTC identified to Meta on August 4 illustrative examples of systematic deficiencies in Meta's September 2020 Privilege Log, which contained approximately 336,000 entries.  See Plaintiff's Sept. Statement at 1-2.  On October 21, Meta completed its production of improperly withheld documents and/or modified privilege descriptions.  Based on the FTC's current assessment, Meta reversed its privilege claims on

approximately half of the of the 557 entries the FTC identified on August 4, and completely changed the basis of its withholding for others (including by reversing its claims that certain documents are protected by the attorney-client privilege and apparently claiming to withhold them based on the "First Amendment").  The FTC intends to meet and confer and approach the Court for assistance in the coming weeks if necessary.

Further, Meta has recently committed to provide by November 23 any improperly withheld documents and/or modified privilege descriptions relating to an additional set of entries that the FTC identified to Meta on September 20.

**b.      The FTC's Interrogatories and 30(b)(6) Notices**

The FTC has issued one set of Interrogatories, and two deposition notices pursuant to Fed. R. Civ. P. 30(b)(6).  While disputes on these issues have lingered unresolved since July, Meta has recently agreed to provide, no later than November 4, counter-proposals regarding four Topics identified in the FTC's 30(b)(6) deposition notices.  See Plaintiff's Sept. Statement at 3. Meta has also agreed to provide, by November 30, supplemental responses to certain of the FTC's First Set of interrogatories; the FTC hopes the promised responses will resolve long-standing disputes over Meta's deficient answers.  Thus, at the present time, the parties do not have disputes regarding Meta's responses to the FTC's interrogatories or the FTC's 30(b)(6) deposition notices.

**B.      The FTC's Position Regarding Non-Party Discovery**

Meta has served document subpoenas on 133 non-parties.  The FTC has served cross-notices on 122 of those non-parties, and has served document subpoenas on fourteen additional non-parties.  The FTC has begun to serve deposition notices on non-parties.  No non-party depositions have yet been conducted.

Pursuant to the Court's instructions, the parties have undertaken or will undertake to bring to this Court any disputes regarding non-party compliance with Rule 45 subpoenas. To date, the FTC does not have any ripe disputes with non-parties regarding subpoena compliance.

The parties are exchanging notices of modifications, extensions, or postponements to the subpoenas and cross-notices served on non-parties. The parties are also exchanging non-party productions on a rolling basis.

### C.      The FTC's Position Regarding Meta's Discovery to the FTC

The FTC has diligently responded to Meta's discovery requests, and has readily met and conferred in a timely fashion in a good-faith effort to avoid disputes. Meta's assertion that there is an "incongruence" between the allegations in the SAC and the FTC's responses to Meta's interrogatories is inaccurate. The parties have no current disputes regarding the FTC's responses to Meta's interrogatories, and the FTC will continue to supplement its responses as appropriate based on ongoing investigation. See Ex. 2 (Pl. FTC's Resp. to Meta's List of Features or Activities (Sept. 12, 2022), at 2-4).

### II.      Meta's Statement On The Status Of Discovery

### A.      Meta's Statement on the Status of Meta's Discovery

In the May 31, 2022 status report, Meta raised deficiencies in the FTC's response to Meta's Interrogatory No. 10 relating to market definition. On August 1, 2022, the Court ordered the FTC to respond to a list of features or activities on Facebook, Instagram, WhatsApp, or Facebook Messenger, provided by Meta, regarding "whether each such feature or activity is or is not within th[e] definition" of "personal social networking." Order at 2, ECF No. 165 (Aug. 1, 2022). The FTC provided the attached response to Meta's list on September 12, 2022. See Ex. 1; Meta's List of Features or Activities (Aug. 22, 2022); See Ex. 2; Pl. FTC's Resp. to Meta's List of Features or Activities (Sept. 12, 2022). Although the Court's denial of

Meta's motion to dismiss was premised on its understanding that there are a number of activities that occur on Instagram and Facebook that do not qualify as use of a "personal social networking service" ("PSNS" or "PSN service"), the FTC now asserts precisely the opposite – that *every* activity on Instagram and Facebook, with the potential exception of activities on Facebook Dating (which was introduced in 2019), qualifies as use of PSNS.  *See* Ex. 2; Pl. FTC's Resp. to Meta's List of Features or Activities (Sept. 12, 2022).

In light of the FTC's change in position, Meta asked the FTC if it still maintains that the only companies that offer PSN services are the companies the FTC identified in its Amended Complaint.  Ltr. from K. Huff to D. Matheson at 3-4 (Sept. 22, 2022).  For example, does the FTC now contend that any activities on YouTube should count as PSNS in light of the FTC's representation that "Viewing Recommended video content" on Facebook qualifies as use of PSNS, or that activities on TikTok should count as PSNS in light of the FTC's representation that "Viewing Reel(s) posted by an account that User does not follow, and that does not follow User" on Instagram qualifies as use of PSNS?  *Id.* (citing Pl. FTC's Resp. to Meta's List of Features or Activities at 12, 18 (Sept. 12, 2022)).  Despite the obvious incongruence between its prior and current position on what activities qualify as PSNS, the FTC stated that its list of alleged PSN providers identified in the Amended Complaint remains "accurate and current." Ltr. from D. Matheson to K. Huff at 2-3 (Sept. 27, 2022).

To understand the basis of the FTC's implausible new theory that all activities on Facebook and Instagram – including those that have nothing to do with "friends and family" sharing – do not compete for the time users spend on identical and similar activities on countless other applications, Meta has served additional interrogatories on the FTC and is

awaiting the FTC's responses, and is pursuing supplemental responses to the interrogatories described below.

On October 27, 2022, the FTC agreed to supplement its response to Meta's Interrogatory No. 3 by November 4, 2022, with the time periods during which alleged PSN providers offered PSNS services. The FTC also indicated that it will supplement by November 4, 2022 its response to Meta's Interrogatory No. 11, which asks for the amount of time users allegedly spend on PSN features and activities on each application that has allegedly provided PSN services. The FTC has stated that its supplemental response will include the Comscore data the FTC relied on in its Amended Complaint reflecting the overall amount of time spent on products that allegedly offer PSNS.

The FTC indicated, however, that it may be limited in its ability to presently indicate the amount of time spent on alleged PSN features or activities, since the Comscore data the FTC has relied on only indicates the overall amount of time spent on each application. Meta has requested that the FTC respond to Interrogatory No. 11 to the best of its ability based on its current understanding, as the Federal Rules of Civil Procedure require. For example, if the FTC's current understanding is that all features and activities on a particular PSN provider's application during an applicable period of time are personal social networking features or activities – as reflected in the FTC's classification of all 146 features or activities on Instagram and all features or activities on Facebook that were available prior to 2019 on Meta's feature list – Meta has explained that the FTC's response should accurately indicate that the overall amount of time on that application reflects the FTC's current understanding of the overall amount of time spent on personal social networking features or activities. If the FTC's supplemental response to

Interrogatory No. 11 remains deficient, Meta anticipates it may need to seek relief from the Court.

###### B.    Meta's Statement on the Status of Non-Party Discovery

The Court should reject the FTC's request to require Meta to identify by December 5, 2022, the identity of nonparties it intends to "seek documents, or a declaration, or a deposition, or trial testimony" from.  Consistent with Rule 26(a)(1), Meta identified in its initial disclosures individual employees and nonparty entities that are likely to have discoverable information that Meta may use to support its defenses.  Since then, Meta has been conducting nonparty discovery with urgency, serving close to one hundred subpoenas *months* before the FTC issued its first handful of subpoenas, exchanging thousands of communications in an effort to obtain compliance with its subpoenas, and serving its first motion to compel against a nonparty (Snap) four months ago.  Consistent with its discovery plan, Meta is continuing to issue subpoenas to entities it identified in its initial disclosures and to conduct other discovery in relation to those entities.  The FTC has never raised with Meta any substantive issue concerning the accuracy of Meta's disclosures, and as discovery progresses, Meta will supplement its initial disclosures in accordance with the Federal Rules of Civil Procedure and this Court's Scheduling Order, including by removing entities or individuals if it determines that it will not use information from them to support its claims and defenses.  However, Meta's efforts should not be artificially limited by requiring it to supplement its initial disclosures on a specific day of the FTC's choosing, more than five months before the close of fact discovery.

First, the Court already rejected these same types of interim deadlines for nonparty discovery when the FTC initially proposed them for inclusion in the Scheduling Order.  *See* Tr. of Telephonic Sched. Conf. at 4:19-21, *FTC v. Meta Platforms, Inc.*, No. 20-3590 (D.D.C. Feb. 28, 2022), ECF No. 109 (rejecting the FTC's almost identical requests to impose a deadline to

complete production of nonparty documents and data and to file motions to compel against nonparties, and explaining "I'm not going to have deadlines about third parties because I think that's part of general discovery and there is a lot of third party discovery that needs to take place"); *see also id.* at 15:11-18 (rejecting the FTC's proposal to require the parties to serve document requests on a non-party within a certain number of days of the opposing party serving a document request on that non-party).  There is no reason to revisit the Court's decision on a nearly identical issue now.

  Second, the FTC does not and cannot provide any reason to depart from the Federal Rules of Civil Procedure by imposing an artificial deadline to constrain the nonparties Meta may rely on in support of its defenses.   Many of the companies on Meta's initial disclosures that Meta has not yet served with a subpoena under Rule 45 identified Facebook or Instagram as a competitor in an Annual Report filed with the Securities and Exchange Commission, even though the FTC does not include those companies within its alleged market.  Meta has complied with Rule 26 by accurately identifying those non-parties, which possess information it may use to support its defenses in this case.  Although the FTC has revealed that its litigation strategy is that it need not "burden" those "third parties" with "outreach," that is the FTC's choice.  Because Meta has and will continue to comply with the Federal Rules of Civil Procedure, the FTC is on notice that Meta may use information from the identified non-parties in support of its defenses. If the FTC wants to seek discovery from those non-parties (perhaps in an effort to get some of them to disclaim their securities filings as false) it is free to do so.  But a litigation adversary's decision to not pursue discovery from certain entities that have been disclosed to it is no basis to impose an artificial limitation on Meta's discovery efforts.

Third, requiring Meta to supplement its disclosures on the specific date the FTC requests will not achieve any efficiencies. The FTC only recently abandoned the definition of PSNS it relied on to overcome Meta's motion to dismiss in favor of a new definition that captures everything users do on Facebook and Instagram. Meta is seeking additional discovery from the FTC on the contours and basis of this new definition, is continuing to receive tens of thousands of documents from non-parties, is issuing additional subpoenas, and is actively seeking to compel production of additional documents from nonparties. All of that information is likely to have bearing on which additional entities Meta will seek discovery from, and Meta can update its disclosures when it is appropriate to do so under the federal rules and Scheduling Order that have governed discovery to date. Requiring Meta to attempt to artificially constrain its discovery plan on the FTC's timeline and only allow it to expand such discovery in response "to new information" as the FTC requests, will only lead to needless fights about what qualifies as "new information" and would prejudice Meta's ability to appropriately evaluate the discovery it has obtained and will obtain between now and December 5, 2022.

### C.    Meta's Statement on the Status of the FTC's Discovery

After telling this Court it mostly had what it needed to litigate the case, *see* FTC's Mem. Supp. Mot. To Compel Rule 26(f) Conference, ECF No. 63-1, at 7 (seeking to expedite discovery planning because the FTC already possessed much of the information it needed), the FTC has issued five sets of requests for the production of documents, a set of Interrogatories (which, including subparts, number more than the total permitted), and two 30(b)(6) deposition notices. Meta has produced over 500,000 documents comprising over 2,400,000 pages during this litigation, on top of over 3,000,000 documents and 12,000,000 pages produced during the FTC's investigation phase of this case. Meta has also presented two Rule 30(b)(6) witnesses, has

provided or will provide written responses to the FTC's remaining Rule 30(b)(6) deposition topics, and has supplemented or agreed to supplement interrogatory responses.

As Meta previously reported, application of search terms to the initial collection of documents (mainly e-mails and Workplace chats), yielded over four million potentially responsive documents. Meta has utilized hundreds of reviewers to cull through this collection for responsive, non-privileged materials. Meta will be making a production of several hundred thousand documents in the coming week. Meta is on target to substantially complete its review and production of this initial collection of documents (mainly e-mails and Workplace chats) by the November 16, 2022 deadline.

Meta has simultaneously been collecting custodial and shared documents from numerous other data sources within the company, the most prevalent include G Suite, Dropbox, Quips, and Workplace Groups. Meta is also applying search terms to the information collected from these data sources. Meta is reviewing potentially responsive documents from these additional data sources – employing hundreds of reviewers sorting through hundreds of thousands of documents – with the goal of substantially completing production of these materials as close to the deadline as possible.

### 1. Production of Hyperlinked Files

The FTC's proposal for production of hyperlinked documents is inefficient, unduly burdensome, and premature. As an initial matter, the FTC ignores the practical realities of collecting hyperlinked documents. Hyperlinks in documents are not the same as attachments to documents, and courts have recognized that they are not required to be produced as part of a document. *See, e.g.*, *Nichols v. Noom Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) ("the Court does not agree that a hyperlinked document is an attachment").

Meta has explained to the FTC repeatedly (in writing and on numerous meet and confers)

that the process of identifying and collecting hyperlinked documents is necessarily manual and labor intensive.  Hyperlinks in a document can point to any of a number of sources, including internal Workplace posts, collaborative documents such as Quips or Tasks, Google documents, Dropbox documents, public sources, entire databases, and many others.  This diversity of sources, coupled with the fact that the FTC seeks production of links from documents dating back many years, means that considerable research is required for many links.  There is no automated approach by which these documents can be retrieved.  (The FTC cites a case in which Google was somehow able to automatically identify in certain already-collected hyperlinked documents from within its own ecosystem.  But the fact that Google – the developer of a broad suite of document sharing products for which it wrote and controls the source code – could devise a means to automate this process does not mean Meta could do so.)

Once hyperlinked documents are identified (to the extent they still exist), those documents must then be collected, processed, reviewed for responsiveness and privilege, and then, if appropriate, prepared for production, with additional (manual) logging required to tie the hyperlinked documents to the original document identified by the FTC.  Between identification and research of each hyperlink, collection, processing, review of any document found, production, and logging, a conservative estimate of the time on average for an easily identifiable, readily accessible hyperlinked document requested is 0.50 hours (and many hyperlinks can require substantial additional time to investigate and recover).  Notwithstanding this burden, Meta has already investigated or begun investigating links from 45 documents identified by the FTC, and produced over 300 documents in response.

The process on which the FTC has insisted to date, and in its proposal above, compounds the already necessarily time-consuming nature of these collection efforts.  Meta has repeatedly

requested that the FTC identify the specific hyperlinks it would like Meta to investigate. The FTC has refused, demanding that Meta investigate every hyperlink in each document identified by the FTC, notwithstanding that some documents contain dozens of hyperlinks, many of which have no bearing on this case. To give just a few examples, the FTC's most recent request included a document containing 36 hyperlinks, including to information clearly identified as related to someone's sojourn to a Harry Potter play and to material clearly described as academic work external to Meta (including the titles and authors of the works). The FTC agrees that Meta is not required to produce such irrelevant or public materials, but the FTC refuses to alter its approach from a document-by-document basis, requiring Meta to sort through every hyperlink in each document, when several hyperlinks quite obviously point to information that is nonresponsive or that the FTC could very easily find through an internet search.

To justify this unfocused, scattershot approach, the FTC claims that it is *unable* to identify where links are found in any particular document. That is simply not true. The FTC's own example illustrates exactly this point: If a document states, "In advance of tomorrow's meeting, here are latest metrics on major social networking rivals," it is clear from the face of the document that the word "here" almost certainly includes an embedded hyperlink to another document that existed (at least at one time). Other hyperlinks appear in the common format of, e.g., "http://facebook.com/[requestedhyperlink]. There is no reason that the FTC cannot review the face of the documents from which it seeks hyperlinks and then identify the individual links it seeks. In that case, if the FTC is interested in only a handful of hyperlinks in a document that contains dozens of them, Meta will be able to research the hyperlinks that the FTC actually wants to receive. This approach will increase the likelihood that the FTC will receive the documents it actually wants and potentially avoid countless hours of unnecessary searching.

That process is precisely what the FTC agreed to do (and did) in *Federal Trade Commission v. Meta Platforms Inc.*, 5:22-cv-04325-EJD (N.D. Cal.) (in which the FTC has agreed to request a maximum of 300 hyperlinked files).  Moreover, identification of specific hyperlinks is not only possible, but also consistent with Federal Rule of Civil Procedure 26(b) for the FTC to identify the "relevant" information it seeks and to minimize the "burden or expense" on Meta in locating such materials.  Meta has not refused to research hyperlinks and provide reasonably available, relevant, and non-privileged documents located in that search.  Meta's request is simply that the FTC identify the specific hyperlinks that it wants, because they may lead to potentially relevant documents.  Limiting the number of hyperlinks to be researched to those that the FTC is actually interested in is particularly important because the burden associated with any particular request by the FTC for hyperlinked documents directly corresponds with the number of actual links that Meta must investigate.  Some documents may contain only a single hyperlink while others may contain dozens, and a request for all hyperlinks on a document-by-document basis therefore does not provide a predictable measurement to Meta for estimating production times.  Meta is unable to commit to a predictable timeline for collection and production of hyperlinked documents absent an agreement on the total number of hyperlinks, not documents, that the FTC would like Meta to investigate.

In addition to seeking to impose a flawed document-by-document approach to hyperlinks, the FTC seeks an order requiring Meta to identify, collect, and produce an unprecedented and unreasonable number of hyperlinked files.  The FTC seeks an order from this Court permitting it to obtain all hyperlinked files from 1,200 documents.  To date, the documents for which the FTC has requested research of hyperlinks have contained approximately six hyperlinks per document on average.  The FTC therefore implicitly insists that Meta manually retrieve and produce

documents associated with roughly 7,200 hyperlinks.  That request exceeds by many multiples the production of hyperlinks ordered in *United States v. Google*, No. 1:20-cv-03010 (D.D.C.), Order at 35 (June 17, 2022) (permitting the DOJ to identify an additional 200 links for production over the remainder of the litigation, following Google's prior investigation of 1,995 links).  Based on Meta's assessment of the time necessary to retrieve the hyperlinks that the FTC has sought to date, the FTC's additional demand would conservatively require *thousands of hours* of work on the part of Meta.  The FTC's request is simply not justified nor is it proportional to the needs of the case given the extensive discovery the FTC has available to it.

In defense of its incredibly burdensome protocol, the FTC has misconstrued both *United States v. Google*, No. 1:20-cv-03010 (D.D.C.) and *IQVIA, Inc. v. Veeva Sys., Inc.*, 2019 WL 3069203 (D.N.J. July 11, 2019).  Contrary to the FTC's representation, in the very hearing it cites, Google's counsel explained that it "*did not* agree to produce . . . every single link in every single email that was otherwise responsive."  Hr'g Tr. 13:18-20 (June 17, 2022) (Dkt. 362) (emphasis added).  While it is true that Google manually retrieved approximately 2,000 hyperlinked documents over the course of discovery (which is still significantly less than the number of hyperlinks the FTC requests that Meta be compelled to research here), Google also explained that for documents within Google's own "G drive document management system," they could "sort of go and scoop that up."  *Id.* Hr'g Tr. 16:12-15.  The FTC also misreads *IQVIA*, 2019 WL 3069203, at *5: the Court did not order the manual retrieval and production of hyperlinked documents – as the FTC requests here – but rather that Veeva provide the information necessary for IQVIA to understand the tie between hyperlinks in emails and undisputedly relevant Google Drive documents that Veeva had already produced or would produce.  Meta is already providing such tying information to the FTC as merely one part of the

laborious collection, review, and production process for hyperlinks that it has voluntarily provided to date and will continue to provide going forward.

Finally, the FTC's request is premature.  Meta is in the process of producing hundreds of thousands of additional documents, including from the sources that the FTC is seeking linked documents, as it approaches the November 16 deadline for substantial completion of its response to the FTC's First Set of Requests for Production.  Once that process is complete, it is possible that the FTC itself will be able to identify many of the linked documents it seeks through simple key word searching, and that others will be identifiable by Meta by cross-reference, improving the efficiency of the process of tracking down hyperlinks.  There is no need at this juncture, with the close of fact discovery more than six months away, to impose a rigid process (or indeed any specific process) for the collection and production of hyperlinked documents.

Meta has proposed a reasonable compromise consistent with the FTC's past practice and guidance from the court in *United States v. Google*.  Specifically, Meta proposes that the FTC be limited to requesting the review and production of available responsive and non-privileged documents relating to a total of 750 hyperlinks during discovery in this matter.  If the FTC's requests are received in groups of 150 hyperlinks or fewer at a time, Meta will make a good faith effort to respond to each request within 3 weeks (which is the timing that the FTC has requested, although the urgency of such production is not immediately apparent).  If, however, more than 150 hyperlinks have been requested at any point in time, Meta will make a good faith effort to respond quickly, but may not be able to provide a response to all of the pending hyperlink requests within 3 weeks.

Meta has also offered to meet and confer with the FTC should the FTC wish to identify higher priority hyperlinks, such as documents requested in relation to the depositions of

particular individuals (the FTC has not currently noticed any), so that the parties can discuss a plan for prioritization of review of those hyperlinks. The FTC rejected this request. It now insists that this Court should impose an unprecedented and unjustifiable burden on Meta's resources using an arbitrary and inefficient methodology. The Court should decline to impose any specific process for production of hyperlinked documents or, in the alternative, adopt a compromise proposal that the FTC be allowed to request a total of 750 hyperlinks during discovery in this litigation.

With regard to the FTC's outstanding requests regarding hyperlinks, Meta provided a detailed spreadsheet to the FTC on October 21, 2022, listing all hyperlinks in documents requested by the FTC in their letters of August 10 and August 22, 2002. Of the 104 links from documents identified in the August 10, 2022 letter, Meta has produced information for all but ten, for which it is continuing its investigation. Of the 89 links in documents requested by the FTC in their August 22, 2022 letter, Meta has produced information on all but 20, for which it is continuing its investigation. Meta will continue to investigate these hyperlinks and will report promptly in the event it is able to determine whether information referenced by these remaining 30 links is still available.

## 2. Shared Work Environments

Meta already has identified for the FTC the "collaborative work environment" sources from which it is collecting and producing documents. *See* May 31, 2022 Joint Status Rep. at 25 (listing the sources). Now the FTC complains that Meta has "refused to provide the promised list of locations of shared sources and collaborative work environments" from which it has produced responsive documents, and the FTC seeks a court order that Meta provide such list by November 4, 2022. Meta has not refused to provide the requested information. No court

intervention is warranted.

Meta has included a load file that lists the sources of documents included in the production along with every production made thus far to the FTC.  In addition, where location information is available for a document, that information is included in the metadata that corresponds to each document in the production.

Meta's document production is ongoing in this case.  Because Meta is concurrently reviewing and producing documents collected from multiple sources, the sources where documents originate may vary with each production.  The parties have stipulated, and the Court has ordered, that Meta need not manually populate that source information if it does not appear in a document's metadata.  Stipulation & Order Regarding Discovery Procedure (Dkt. 108) at 11. In the spirit of cooperation, Meta has agreed to provide a list of "collaborative work environment" sources for each production.  There is accordingly no dispute regarding this issue.

Dated: October 31, 2022                          Respectfully submitted,


By: */s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Maria DiMoscato (D.C. Bar 489743)
Patricia Galvan
Owen Masters (D.C. Bar 242139)
Susan Musser (D.C. Bar 1531486)
Michael Smith (D.C. Bar 996738)
Mitchell London (D.C. Bar 1029408)
Jessica Moy
Nathan Brenner
Rebecca Weinstein

Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*



*/s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Kevin J. Miller (D.C. Bar No. 478154)
Kenneth M. Fetterman (D.C. Bar No. 474220)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

James P. Rouhandeh (NY0390)
Michael Scheinkman (NY0381)
Davis Polk & Wardwell LLP
450 Lexington Ave.
New York, New York 10017

Tel: (212) 450-4754
james.rouhandeh@davispolk.com

Sonal N. Mehta (CA SBN 222086)
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
Sonal.Mehta@wilmerhale.com

David Z. Gringer (D.C. Bar No. 1001200)
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
David.gringer@wilmerhale.com

*Counsel for Defendant Meta Platforms, Inc.*