```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
-------------------------X

 FEDERAL TRADE COMMISSION,

             Plaintiff

                  v.            Civil Action 20-3590 (JEB)

META PLATFORMS, INC.,

             Defendant

----------------------------X
                               Washington, D.C
                               Monday, February 28, 2022
                               10:00 a.m.

        TRANSCRIPT OF A TELEPHONIC SCHEDULING CONFERENCE
           BEFORE THE HONORABLE JAMES E. BOASBERG
                UNITED STATES DISTRICT JUDGE
APPEARANCES:

For the Plaintiff:  Daniel John Matheson, Esq.
                    Krisha Cerilli, Esq.
                    Patricia Galvan, Esq.
                    Robert Zuver, Esq.
                    Maria DiMoscato, Esq.
                    Owen Masters, Esq.
                    FEDERAL TRADE COMMISSION
                    Bureau of Competition
                    400 7th Street, SW
                    Washington, DC 20024
                    (202) 326-2075

For the Defendant:  Mark Charles Hansen, Esq.
                    KELLOGG, HANSEN, TODD,
                       FIGEL & FREDERICK, PLLC
                    1615 M Street, NW, Suite 400
                    Washington, DC 20036
                    (202) 326-7904




Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse, Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247
```

1       **P R O C E E D I N G S**

2           THE COURTROOM DEPUTY:  Good morning.  We are here

3   for a scheduling conference in civil case 20-3590.  Federal

4   Trade Commission versus Meta Platforms, Inc.

5           Counsel, please identify yourselves, beginning with

6   the plaintiffs.

7           SPEAKER 2:  This is Daniel Matheson from the Federal

8   Trade Commission.  I'm joined by my colleagues Krisha

9   Cerilli, Patricia Galvan, Robert Zuver, Maria DiMoscato and

10  Owen Masters.  I do not anticipate anyone else will be

11  speaking aside from those that I just named.  I will probably

12  be doing most of the talking unless something comes up, if

13  there need be a position to address.

14          THE COURT:  Okay.  Thank you.  Good morning to all

15  of you.

16          SPEAKER 1:  Good morning, Your Honor.  Mark Hansen

17  of the Kellogg firm.  I'm here with one of my colleagues, I

18  expect to be doing most of the speaking.  Also on the court's

19  line is Kristen DuBois (ph) who is an associate, I'm sorry,

20  Director and Associate General Gounsel of Meta Platforms,

21  Inc.

22          THE COURT:  All right.  Good morning to you folks as

23  well.

24          So today we're here for scheduling.  And I have to

25  confess to you that there are more disagreements on the

1    scheduling proposal than I think I have seen in any case in

2    my time here.  Now I admit that this is a big case, one of

3    the most complex and involved cases that I've had.  Yet, I

4    hope this doesn't, isn't the harbinger of the way that

5    discovery and other issues will be conducted in this case,

6    meaning I hope that I'm not going to have to be resolving

7    many minor issues that I trust reasonable counsel can resolve

8    themselves.

9         Now obviously some issues are major.  But many are

10   not.  And the idea that you folks really couldn't agree on

11   almost anything is concerning to me and I hope will not be

12   the manner in which you folks will conduct this litigation

13   because, otherwise, it's going to be a lot more expensive,

14   time-consuming, difficult for everybody.  And I just don't

15   intend to proceed that way.

16        So, I'm going to have a number of things I'm going

17   to rule on, and others that I have few questions about.  So

18   let's start with the schedule itself.

19        Generally I believe that the plaintiff's proposal is

20   too compressed in terms of the amount of discovery that I

21   expect needs to occur here.  I think that the timeframe is

22   not realistic.  So my schedule that I'm imposing is closer to

23   Meta's proposal than the FTC's.

24        In addition, my policy has always been not to set

25   trial dates at initial scheduling conferences because we

1    really have no idea when we'll get to that stage.  And it is

2    much more helpful to set all the dates up through the end of

3    discovery and then proceed from there.

4         As a result, I also don't have a bunch of trials

5    cluttering my calendar that aren't ever going to go.  So when

6    and if this case is ready for trial, I will be able to

7    schedule it expeditiously because I won't have a lot of

8    things blocking it.

9         So what I am going to ask counsel to do is, after

10   I've made a number of these rulings, I think there are about

11   a dozen issues I have to resolve here, that you then will

12   submit to me a further joint proposed scheduling order that

13   incorporates all of my rulings today.  If there are things

14   you still can't agree on, then you can mark those.  But in

15   the order, I hope to resolve almost everything that you've

16   flagged in your submission.

17        So for dates, the FTC's proposed schedule on page 7,

18   the first five are fine going through February 24 to 28,

19   2022.  I'm not going to have deadlines about third parties

20   because I think that's part of general discovery and there is

21   a lot of third party discovery that needs to take place, so

22   as to the February 24, 28 dates which are the deadlines to

23   substantially complete production of investigative file of

24   the FTC.

25        The next date will be close of fact discovery and

1    that will be May 22, 2023.  In other words, I'm going to give

2    15 months of discovery which I believe, given the size of the

3    case, is appropriate.  I have plenty of cases that are far

4    more involved than this which take nine months discovery.

5    And some, a year, but 15 months is reasonable.  So the close

6    of fact discovery is May 22.

7         Then next date will be plaintiff to serve their

8    opening expert disclosures, that will be July 3, 2023 which

9    is six weeks.  I will give two months thereafter for the

10   defendant's reports.  So those will be due September 5, 2023.

11   Two months for the plaintiff's rebuttal report, November 6,

12   2023.  The close of expert discovery will be 60 days later,

13   January 5, 2024.

14        We'll then have a post discovery conference, after

15   which, we will talk about summary judgment briefing and

16   potential trial at that point.  But that's the schedule we'll

17   start with.

18        I'm also going to have the parties submit joint

19   status reports every 90 days regarding discovery.  So, the

20   first joint status report then will be due, let's have them

21   due at the end of the month.  So May 31, 2022 and at the end

22   of every quarter thereafter.  In other words, the next will

23   be due at the end of August to November and so forth.  So

24   that will continue during discovery just to keep me updated

25   on what is happening with discovery.  Okay.

1          In terms of the FTC's proposal about remedy

2    timeframe, I also believe that is premature and if the FTC

3    prevails on liability, we'll absolutely move on to remedy.

4    But I don't intend to set a remedies timeframe until there is

5    prevail on remedies.    So that's the schedule.

6          Any questions on that schedule, Mr. Matheson?

7          SPEAKER 2:  No, Your Honor.  Thank you.

8          THE COURT:  Mr. Hansen?

9          SPEAKER 1:  No, Your Honor, thank you.

10          THE COURT:  Let's move to the next areas of dispute

11    which are protective order, ESI order and Rule 502(d) order.

12    So both sides stated that if they hadn't agreed on that, that

13    they would plan to submit a proposal and memorandum in

14    support.

15          Mr. Matheson, has there been agreement on any at

16    all?

17          SPEAKER 2:  No, Your Honor.

18          THE COURT:  So no agreement on anything?

19          SPEAKER 2:  Correct.

20          THE COURT:  So can you submit a brief then by a week

21    from today, March 7th?

22          SPEAKER 2:  Yes.  Your Honor, we would hope to meet

23    and confer this week and hopefully narrow some issues on

24    502(d) and ESI, in particular.  But if we cannot resolve

25    those issues, we are in a position to submit a brief by March

1    7.

2             THE COURT:  Again, as you might imagine from my

3    prefatory comments, I'm always in favor of any meet and

4    conferring and narrowing of issues.

5             So March 7, you will submit and that will be your

6    proposed order or orders regarding the different categories.

7    And memorandum of no more than 10 pages.  Since I don't find

8    simultaneous briefing terribly helpful since people talk past

9    each other, I would then have Meta respond.

10            Can you respond a week later, Mr. Hansen?

11            SPEAKER 1:  Yes, Your Honor.  I would just point out

12   that we were speaking with the counsel for FTC on Friday and

13   we are in the process of trying to work out some of these

14   issues.  So we have taken the Court's guidance to heart.  I

15   think Mr. Matheson also mentioned  that we are in the process

16   of trying to narrow those disputes.  But yes, we can submit a

17   brief for any outstanding issues on the date you mentioned.

18            THE COURT:  March 7th for the FTC with memo no more

19   than 10 pages; March 14 for Meta, same restrictions.  And

20   I'll give the FTC until the 16th of March for a reply with no

21   more than five pages, Mr. Matheson, just because I don't want

22   to -- I'll let you have an opportunity to respond.  Is that

23   okay with you?

24            SPEAKER 2:  That is, thank you, Your Honor. Just to

25   clarify, I take it you mean 10 pages on each issue assuming

1   we're not able to get any of those issues off the table.

2         THE COURT:  Good question, yes.

3         SPEAKER 2:  Thank you.

4         THE COURT:  Okay.  All right.

5         Let's now move to different categories of discovery.

6   The first is document requests.

7         And I guess, Mr. Hansen, my question is, I

8   understand that, for the document requests, interrogatory and

9   the RFA, that your position is essentially, hey, let's just

10  stick with the Rules of Civil Procedure, which is not an

11  unreasonable position.  But it seems that the plaintiff's

12  position on these would expedite and narrow disputes.  So

13  what is the objection about the 7-day meet and confer period

14  regarding document requests and interrogatories?

15        SPEAKER 1:  Well, Your Honor, you stated the first

16  part of it.  The second part of it is, we think it would be

17  an engine to creates disputes because, in seven days, maybe

18  the client is not available during that period.  Maybe it

19  it's the 8th day.   I think it would be better to let the

20  parties work in good faith under the rules which were also

21  noted.  If it becomes a problem, it can be addressed.  But to

22  start redoing procedures now before there is any issue or

23  problem, I think is unwise.

24        I would just note that it is not worth anybody doing

25  this.  The example they give is, when parties agree to do it,

1    it's part of an experiment.  We don't think it's a good

2    experiment.  We think we're going to have disputes and will

3    spill over, and we'll have third parties involved.  And

4    they're going to say they can't meet these requirements.

5         So in the abstract, it doesn't sound so horrible but

6    we just don't see a need for it.  We think, if it's ever

7    going to happen, it should be done after the Court has seen

8    some problem to address, rather than experimenting and

9    redoing the Federal Rules.

10        THE COURT:  Okay.  Mr. Matheson.

11        SPEAKER 2:  Your Honor, with both parties and third

12   parties, it is our consistent experience in these large

13   government, antitrust litigations, that there is a long delay

14   in negotiating responses to requests for production.  And

15   this is, as Mr. Hansen points out, particularly true for

16   third parties.

17        That's our motivation for both having a prompt meet

18   and confer, to make sure issues are teed up promptly, just as

19   it was our motivation for proposing an outside date by which

20   third party disputes be brought to the Court.  We understand

21   Your Honor has rejected that but we do think, if that becomes

22   a problem, that is something that has served us well in prior

23   litigation, to make sure that, as fact discovery draws to a

24   close, we don't have 11 disputes with third parties that have

25   not agreed to produce information, and everyone needs to come

1    to the Court to request an extension.

2         THE COURT:  I think these are both good faith

3    positions and what I'm hoping to do is find the method that

4    is going to resolve these the most efficiently, both for you

5    folks and for me.

6         So Mr. Matheson, Mr. Hansen's position is that this

7    is going to create more dispute than the normal Federal Rules

8    method.  What is your response that?

9         SPEAKER 2:  Your Honor, there is no reason why a

10   requirement to meet and confer within 7 days would create a

11   dispute.  It is hard to imagine running to the court to file

12   some sort of motion because they wanted to meet and confer in

13   8 days instead of 7.  The point here is to ensure that the

14   meet and confer happens in a timely fashion and that the

15   parties have the maximum amount of time possible to discuss

16   this rather than having the meet and confer process be

17   delayed for 21 days.

18        THE COURT:  So Mr. Hansen, it's the 7 days that you

19   are not happy about?  If that were, say, 10 or you just don't

20   like any deadline on that?

21        SPEAKER 1:  Your Honor, I understand the Court's

22   searching for a practical solution here.  What I'm imagining

23   is we've got a dispute with somebody in China and they don't

24   get the right people together for 10 days.  I don't want

25   somebody rushing the Court, Mr. Matheson or anybody else and

1    saying, oh, they violated your rule.

2         If what Mr. Matheson is predicting becomes a

3    problem, we have 90 days status reports, we have mechanisms

4    to advise the Court that there have been problems and the

5    Court can act swiftly.  But to impose these requirements now,

6    I don't know if seven days is the right number, 10 days is

7    the right number, 14 days is the right number.  I think in

8    some instances, it won't happen in seven days.  In some

9    instances, it will happen in two days.

10        I would note that we've been very prompt in

11   communicating with the FTC.  I don't think there have been

12   any issues in our interactions with our friends at the FTC.

13   Third parties, that's going to be a different story.  We have

14   many third parties, including on the disclosure list, 47

15   headquartered abroad.  So to put a one-size-fits-all rule in

16   now, when we have all different kinds of people who are going

17   to be subject to discovery is going produce what Your Honor

18   worries about at the outset at the call, which is a lot of

19   dispute for no reason.

20        We don't want to have those disputes.  We would

21   rather work in good faith with everybody.  If there ever

22   becomes a point when it's not working and there's a problem,

23   we are confident the Court can address it and solve it.  We

24   don't think rewriting the Federal Rules at the outset of the

25   case is a wise thing do.

1          THE COURT:  Again, I don't think -- I wish I knew

2    which way was going to be most efficient here.  And I think

3    we may have some trial and error here.

4          I'm going to impose plaintiff's rule but I am going

5    to extend the 7 days to 14 days.  If it turns out that it is

6    creating more problems than it solves, then I'll reconsider

7    it.  But I think it is not an unreasonable proposal for

8    plaintiffs.  It may be too compressed as you argue, Mr.

9    Hansen, but let's give it a try.  So I'm going to say 14

10   days.  That will relate to both document requests and

11   interrogatories.

12         In terms of requests for admission, the one issue in

13   the RFA that seems reasonable to me, Mr. Hansen, is the idea

14   that the plaintiff could have parties proposing RFAs

15   regarding authenticity after fact discovery closes.  And

16   again, you point out, legitimately, if there is a significant

17   distinction between authenticity and admissibility, and I

18   agree that admissibility is a much more involved, can be a

19   much more involved area.

20         But is there any objection to permitting RFAs

21   regarding authenticity only after fact discovery closes?

22         SPEAKER 1:  Your Honor, this is not the hill I want

23   to die on, Your Honor.  But I will say we think it is more

24   efficient to do this within the discovery period because, for

25   example, they give us 4,000 requests for admission on

1  documents and it triggers some additional discovery we want

2  to do, it's done during the discovery period, then we can do

3  it.  Where, if it is a month after discovery, they want to

4  make a big issue on some document that has not been an issue

5  in the case thus far, we're out of luck.  So again, It sounds

6  reasonable I suppose, but I can imagine some circumstances

7  where it would be harmful to our interests.  That's why we

8  oppose it.

9        THE COURT:  I would agree with you as to

10  admissibility.  I just don't see the harm in authenticity.

11  And again, the idea if we go to trial, even in summary

12  judgment, you're going to be fighting about authenticity.

13  That's certainly not the hill that I want anybody to die on.

14  So I'll permit that, Mr. Matheson, RFAs after the close of

15  fact discovery regarding authenticity only.

16        Okay.  So let's now, on non party discovery, which

17  is the next issue, the FTC wants the same requirements as in

18  the Google case.  What is the problem, Mr. Hansen, with this

19  three business day requirement that the FTC proposes?

20        SPEAKER 1:  I think the problem is, I'm not going to

21  repeat what I said before, Your Honor.  But proposing rules

22  that are not the Federal Rules, one-stop shopping for all

23  sorts of people under all sorts of circumstances and they

24  won't fit all those circumstances.

25        So honestly, in Google they agreed to do this.  This

1    was by agreement.  This was not a contested proposal.  I

2    would note that in Google there had been some issues that

3    required extension of the schedule.  So no disrespect to

4    Judge Mehta or the parties at Google, but the experiments

5    don't seem to be so efficiency-producing after all.

6         Again, I just don't think we need to rewrite the

7    Federal Rules.  Three days may work in some instances, it may

8    not work in other instances, it may not work at all.  We're

9    all experienced working under the Federal Rules.  We have

10   experienced counsel at the FTC.  To start imposing new

11   requirements, Judge, I've been in lots of lawsuits where

12   every requirement leads to disputes, how it is applied,

13   whether it works.

14        THE COURT:  All right.  Mr. Matheson, your response?

15        SPEAKER 2:  Your Honor, advanced notice of all

16   subpoenas is required.  We think this is an

17   efficiency-enhancing proposal because, when a subpoena is

18   served electronically, so when a third -- a non-party agrees

19   to accept service, we think it is efficiency-enhancing to

20   have everybody understand that the subpoena has been served,

21   to put everybody on notice that it's time to engage and

22   prioritize engaging that that non-party, because now they

23   have a discovery request in their hand.

24        This interacts closely with our requests that after

25   the date certain, we proposed May 2, both parties must serve

1    their discovery requests on non parties contemporaneously

2    within 7 days of each other.  We're trying to accelerate

3    third party discovery and we are trying to avoid the

4    predictable.  We all have the experience with the

5    circumstance in which a third party receives the discovery

6    request and they say I'm not going to comply with this until

7    I get the request from the other side because it's unduly

8    burdensome to make me search twice.  That's just a routine

9    thing that happens in every civil litigation.  We want to

10    avoid that.   We're in a hurry, Your Honor, we believe we--

11           THE COURT:  Okay.  Thank you.  What I'm going to is

12    I'm going to impose a requirement that it is going to be five

13    business days instead of three.  But again, I believe that,

14    for the reasons also that we discussed in relation to the

15    document requests and interrogatories that having some

16    mechanism to keep things on the expedited schedule is

17    worthwhile.  So I'll grant the plaintiff's request, but five

18    business days, not three.

19           Next is number of depositions and hours.  So decide

20    to -- you have a number of differences in the number of hours

21    they wish.  So what I'm going to permit is 840 deposition

22    hours.  That's not an arbitrary number picked out of a hat,

23    it is 120 depositions at 7 hours per.  So, 840 deposition

24    hours.

25           I will not deduct the pre-complaint investigation

1    time from that, which is in accordance with the FTC's

2    position.  I believe that that would be unfair to deduct that

3    time.  So 840 hours each side on that.  Experts are not

4    included in this nor are depositions for authenticity of

5    documents only.  I hope for all of your sakes that you are

6    not holding depositions regarding authenticity.  That would

7    be up to you.

8         The limit for current and former Meta employees, the

9    defense says 200 hours, Mr. Hansen, I think that's your

10   position?

11        SPEAKER 1:  Yes, Your Honor.

12        THE COURT:  So what is wrong with some limit for

13   current and former Meta employees, Mr. Matheson?

14        SPEAKER 2:  Your Honor, we have absolutely no need

15   for 640 hours of third party depositions.  We intend to prove

16   our case based on what is in Meta's files largely.  We have

17   identified approximately 140 current and former employees who

18   we believe (unintelligible) response to documents. We

19   obviously don't intend to depose all of those.  But that is

20   where we intend to expend our energy.

21        It is unfair and impractical to essentially tell

22   Meta they can take 840 hours of third party depositions but

23   we're forced to take 640 we don't want because we think are

24   useless and prevent us from taking the discovery that

25   actually, which is where did Meta receive competition.

1        THE COURT:  Okay. Mr. Hansen, your response?

2        SPEAKER 1:  Your Honor, my response is they have

3   already had 200 depositions of former and current Meta

4   people, according to their own -- our calculation is the

5   (unintelligible) witnesses who they have already deposed on

6   each subject, so they've already got a head start there.

7   And frankly, it is quite striking.  What people of Meta

8   thought is really not what this case is.  As the Court points

9   out in its (unintelligible) opinion, it's about the affect,

10  what actually happened.

11       But there really should be some limit.  These folks

12  at Meta, former employees, they deserve some relief from

13  incessant, duplicative depositions.  And another 200 hours is

14  plenty on top of the 200 already granted.

15       THE COURT:  All right.  I'm not going to limit the

16  FTC.  I think, again, if you said they should be able to

17  depose one person for days and days, that might be one thing.

18  But to say, I'm sorry, each of you has to submit to a 7-hour

19  deposition, I understand it is inconvenient for anybody to

20  have to do that but I agree with the plaintiff that that is

21  not appropriate.  So I won't limit that.

22       The other is the limit for 30(b)(6).  Defense says

23  21 hours.  Mr. Matheson, give me any sense of what you're

24  thinking about in terms of 30(b)6 hours.

25       SPEAKER 2:  We didn't want to put an ex ante limit

1    because we think we may need 30(b)(6) depositions on data

2    issues.  We have not yet been able to engage with the

3    plaintiffs on some of the data people might discuss with

4    them.  There might be a provision for them in the ESI order

5    but that is currently in dispute.  So we need to take

6    discovery on what data might be appropriate and where they

7    keep that data.  We don't think it is appropriate to put an

8    ex ante limit on 30(b)(6) depositions.

9         THE COURT:  How about data excluded 30(b)(6)

10   depositions?

11        SPEAKER 2:  I think 21 hours of substantive

12   depositions that do not go to data issues, that would be

13   fine.  I'm not sure, I don't anticipate taking 21 total

14   hours.

15        I'm not sure why it matters if we limit it, Your

16   Honor, if the notion is we're doing it hours-based rather

17   than notice-based, it's not clear why it would be efficient

18   if we serve, let's say,  six 30(b)(6) topics and they say 11

19   different people may speak to those topics, it seems to

20   create, and Mr. Hansen's point, potential for dispute if we

21   argue about what portion of the deposition the 11 people were

22   30 (b)6 hours, what portion is not.  I guess, if there is an

23   overall cap, I don't see the efficiency that is gained in

24   forcing the parties to squabble about whether witnesses

25   testify in their personal capacity or their 30(b)(6)

1    capacity.

2              THE COURT:  Mr. Hansen?

3              SPEAKER 1:  Your Honor, we think there should be

4    some limit here.  They took extensive testimony on data

5    issues in the investigative stage.  If they do 600 hours of

6    30(b)(6), we have to prepare those issues, we have to extend

7    discovery and I think it would be a big burden.  There should

8    be a limit.  We should not be subjected to endless 30(b)(6)

9    depositions which is clearly what the FTC says it wants to

10   do.  It's not right.

11             THE COURT:  I'm going to give you 42 hours.  That's

12   six 7-hour depositions excluding data.  And again, maybe you

13   folks can agree on data, it's not going to be an issue.   But

14   I'm going to give the FTC 42 hours of 30(b)(6) depositions,

15   excluding data.

16             And Mr. Hansen, if it's becoming a mess regarding

17   are you being deposed in your personal capacity or your

18   corporate capacity and it's hamstringing you, I'll hear you.

19   I think it's sensible to put in some limit here but that

20   doesn't close the door for you to seek reconsideration of

21   that.

22             SPEAKER 1:  Thank you, Your Honor.

23             THE COURT:  Next.  Notice of deposition.  Again,

24   we're back at one of the Google issues.  And again, what is

25   unreasonable about the FTC proposal there, Mr. Hansen?

1      SPEAKER 1:  Just that it's imposing an additional

2  requirement that is likely to create disputes, Your Honor.

3      THE COURT:  It seems to me, I think it's a sensible

4  way to handle this.  Again, if you can come back to me, Mr.

5  Hansen, if we have a hearing down the road, and say I told

6  you, Judge, now we have all these disputes, just follow the

7  rules, and if that's true, then I'll offer a mea culpa.  I

8  certainly don't want a self inflicted wound, but I think this

9  is -- that their proposal makes efficiency sense.  So I'll

10  adopt that.

11      SPEAKER 1:  Your Honor, if I could just elaborate on

12  that.  I apologize but to give you a for instance, it says

13  here we have to schedule a deposition in 14 days after return

14  of documents.  We sent out 80 subpoenas so far.  We're not

15  going to schedule depositions until we review the documents.

16  We may not decide to do it until later.  We should have the

17  flexibility to decide when we want to take these depositions,

18  if at all.  And if we're under some artificial requirement,

19  we have to do it within some artificial period of time,

20  that's going to lead us to do unnecessary work.

21      THE COURT:  Let me stop you for a second.  I'm

22  principally focused on the first provision on page 32 about

23  objections.

24      SPEAKER 2:  Your Honor, can I be heard on that?

25      THE COURT:  So Mr. Hansen, you have a specific

1    concern about the objections issue on page 32, first

2    paragraph?  I'm sorry.  I was focused on the first paragraph,

3    so after the introductory paragraph on the plaintiff's, the

4    first substantive paragraph, that I'll adopt.

5         So I'm sorry, Mr. Matheson, go ahead, you want to

6    respond to the second paragraph which carries over from 32 to

7    on 33 regarding the 14 day period?

8         SPEAKER 2:  Correct, Your Honor.  I think that just

9    to make sure we're all communicating clearly, our intention

10   was that the party must schedule a witness' deposition for a

11   date at least 14 calendar days after the return date of the

12   document subpoena.  So the intention is not to force the

13   response to a subpoena and deposition within 14 days.  The

14   purpose is the make sure that both parties have a minimum of

15   14 days to digest the document production.  So we don't have

16   a situation where the deposition is scheduled and we get the

17   documents the night before and then we have a motions to

18   quash because -- that's is what would be -- it is sort of the

19   opposite of what Mr. Hansen has suggested.  That was our

20   proposal in any event.

21        THE COURT:  Okay.

22        Mr. Hansen.

23        SPEAKER 1:  Your Honor, I don't have a problem with

24   giving 14 days, I think there was a miscommunication.

25        THE COURT:  Fine.  I think we're all at the same

1    page.  I'm glad.  So I will adopt plaintiff's proposals on

2    both of those paragraphs.  Okay.  Thank you.

3            Next is allocation of time during depositions.  Now,

4    this is a little bit complicated in terms of what people

5    agree on.  Both sides agree on issue number three, which is

6    non-party witnesses who are not a former employee of

7    defendant.  So we're all squared away on that.

8            But then number one, the first dispute as to number

9    one which is a current employee, I agree with the FTC that

10   current employees should not have depositions limited to

11   prior topics.  They can depose them as they wish.

12           Then the next is the former employees and there are

13   two subcategories there.  So subcategory one is, if noticed

14   by one side, and I think you folks agree on that.  And the

15   other category is, if noticed by both sides.  And on that

16   one, I will find equal time is appropriate with no

17   restriction as to topic.  Again, as to former employees, per

18   deposition notice by both sides, I agree equal time, no

19   restrictions.  Okay.

20           Next up is dispute resolutions.  You folks have

21   cribbed appropriately from my typical scheduling order, which

22   is I don't permit people to file motions to compel or motions

23   for protective order, which I find delays everything.  I

24   prefer, where disputes arise, that the parties jointly call

25   chambers and I'll try to get on the phone and resolve it

1  right there or pick a time to resolve it.

2        Obviously there are more involved disputes, it will

3  be hard for me to pick up the phone and say you are right,

4  you are wrong, and go back to the deposition.  So we may end

5  up having regular hearings covering these.  But let's see how

6  we go through the first period.

7        Again, you are going to give me joint status

8  reports.  And I would think if they're not discovery disputes

9  that are immediately pressing, that in that joint status

10  report, you would flag those for me and we can set a hearing

11  thereafter.

12        But typically if they are somewhat more involved

13  disputes, when you folks call, we'll probably pick a date

14  that I would hope very soon thereafter, maybe in the next day

15  or two, to have a hearing.  If it is a very minor issue I can

16  resolve, I'm happy to get on the phone.  But again, I'm

17  hoping we're not in a situation where there are lots of

18  little things that you are calling chambers about.  But

19  again, no motions to compel.

20        Okay.  Next we're getting near the end here,

21  privilege log timing and format.  So here, plaintiff's

22  position is that the log should be produced no later than 30

23  days prior to the close of fact discovery and defense's

24  position is 90 days after the completion of production.

25        Tell me why you are taking this position please, Mr.

1    Matheson?

2           SPEAKER 2:  Your Honor, while we don't like to

3    presuppose disputes will occur, to the extent that we have

4    disputes over privileged documents, we'll not be in a

5    position to bring those to the Court's attention until we

6    are, we think, well on our way to trial.

7           If they can produce a log 90 days after they

8    complete production, when they dump all the last documents on

9    us at the end of fact discovery, we think that it's

10   appropriate to have these disputes before the depositions of

11   witnesses so we don't need to have further disputes whether

12   we need to redepose people.

13          We think that rolling logs have proven successful in

14   the past to ensure that all privilege disputes occur prior to

15   schedules for depositions, so we don't need to reschedule

16   depositions and we don't need to bother the Court with

17   needless motions.

18          THE COURT:  Let me interrupt you for a second.  But

19   that, your first hypothetical presupposes that discovery is

20   not going to be responded to until much further down the

21   road.  The defense's position was that they're submitting

22   them 90 days after the completion of production for each set.

23   That's going to be rolling.  So you should be getting those

24   over the next year, right?

25          SPEAKER 2:  That's true, Your Honor.  But they also

1   say for production of discovery completed at the close of

2   fact discovery, so they obviously anticipate dumping a bunch

3   of documents at the end of fact discovery.  The parties shall

4   provide privileged log by 30 days after completion of

5   production.  We won't even get their logs with the documents

6   that stay in their review for the longest until after the

7   close of fact discovery.  They have 90 days --

8           THE COURT:  No, go ahead, I'm sorry.

9           SPEAKER 2:  If they have 90 days that means they can

10   produce something three months before the close of fact

11   discovery.  We won't even get the log of those documents

12   until the end of fact discovery.  That seems to be an

13   inordinate delay and it's going to, I fear it will lead to a

14   situation in which we think we got a document off the

15   privilege log that will require a redeposition of somebody

16   and fact discovery will be closed.  We're trying to avoid

17   that eventuality.

18           THE COURT:  Okay.  So there are two issues.  One is

19   the general production of privilege log and the second is the

20   production of the final privilege log.  So why, Mr. Hansen,

21   do you need 90 days after the completion of each production

22   to submit your log?

23           SPEAKER 1:  Your Honor, we're trying to have a

24   workable process here, a rolling privilege log is a

25   nightmare.  What we're saying and I think Mr. Matheson and I

1    are not communicating well.  We are saying, we just got the

2    document requests.  We're going to complete production and

3    give them the privilege log in a timely and complete

4    production within 90 days.  So it's going to be nice and

5    early.  The only time he has to worry is at the end of

6    discovery.  And that's only the position we have there, only

7    if they serve us something at the end of discovery.

8            So, if they pop a document request on us very close

9    to the end of discovery, we're not going to be able to do a

10   privilege log until the production there.  So we have what we

11   think is an orderly process.  Within 90 days, we complete the

12   production, which is happening, we're already in the process

13   of having a document in response.  We'll give them a

14   privilege log.  At the end of dispute, we'll deal with it.

15   If they give us another document request, we'll deal with

16   that.

17           Only a problem arises if, for some reason, 30 days

18   before discovery ends, or some short period of time before

19   discovery ends, they serve us with another request for

20   production of documents.  And obviously, we'll have to give

21   them those documents, the ones that are appropriate and we'll

22   give them a privilege log 30 days after that.  It just gives

23   us a reasonable time to produce a reasonable, appropriate

24   privilege log that makes sense, as opposed to rushing to do

25   things in a half-hearted or inappropriate way, leading to

 1   disputes.

 2         I've never been in a case where you have privilege

 3   log every time documents are trickled out on a rolling basis,

 4   it's just not workable.

 5         THE COURT:  Wait, but they're not--

 6         Mr. Matheson, you are not asking for privilege logs

 7   to be dribbled out.  You are asking for them after the close

 8   of each production, right?

 9         SPEAKER 2:  After they complete their production in

10   response to our request and they say, okay, here is a rolling

11   production that responds to these requests within, we think

12   within an appropriate period, 21 days.  If is 30 days, that's

13   fine, they should be giving us privilege log.

14         I sincerely hope Mr. Hansen is right and we have all

15   of their documents nice and early, and their privilege log

16   well in hand before we start depositions, that would be a

17   wonderful world to live in.  To the extent we have a long,

18   difficult negotiation over responses to RFPs, the notion that

19   we're going to have all of their responses to RFPs in hand,

20   and then we'll have -- be able to wait 90 days for their

21   privilege log before we even start the depositions of the

22   witnesses seems to be assuming that a lot of things go right.

23         THE COURT:  All right.  I'm going to say 45 days

24   after completion of production for each set of requests,

25   privilege log will be due 45 days after completion of

1   production for each set.

2          Again, the final log, the problem is just, we don't

3   know when -- we don't know when the last discovery requests

4   will be issued or will be returned.  So it's hard for me to

5   accept either side's position on that.  So we just don't

6   know.  I'm not going to rule on that.  I'll hold that in

7   abeyance.  As we get near to the end of fact discovery, we

8   can discuss it.  Obviously my ruling will be informed on how

9   things proceed so far.  So I'm holding in abeyance any ruling

10   of final privilege log.

11          Okay.  The last is this presumption of authenticity

12   issue.  I think that, I just don't think need I to decide

13   that here.  That really relates to trial exhibits.  We're a

14   long, long way from that.  So I'm not going to rule on any

15   presumption of authenticity issue.  We can talk about that

16   way down the road if necessary.

17          I believe that covers all the issues.

18          Mr. Matheson, anything you think I've missed.

19          SPEAKER 2:  Three minor issues, two of which are

20   just clarifications.  One relates to RFPs, one relates to raw

21   timing.  But the most important one, Your Honor, which I in

22   no way intend to argue with the Court,  but I just want to

23   make sure that you intend to hold us to a 7 hour deposition

24   of their former employees to be split equally between the

25   sides.

1          The reason I flag that, Your Honor, is there is no

2     limit to deposition notices.  So there is no reason they

3     wouldn't just cross-note every single deposition of former

4     employee, whether they are representing that employee at the

5     deposition, whether they have any intention of asking any

6     questions.  We think that a 10 hour deposition in those

7     circumstances is appropriate or there should be some limits

8     on their ability to notice their former employee simply for

9     the purpose of restricting us to three and half hours.

10          Under the Federal Rules, typically both sides have a

11     limited number of notices which would prevent them from just

12     limiting us to three and half hours with each former

13     employee.

14          THE COURT:  Let me go back to my -- we talked about

15     equal time which I think is appropriate.  But I envision

16     equal time when the parties actually have questions.  I agree

17     with you that that would -- were the defense to operate in

18     that fashion, that would appear to be manipulating the

19     procedure.

20          Mr. Hansen, how do we decide from your

21     representations, which I'm sure are made in good faith, how

22     do we ensure against the situation that Mr. Matheson presents

23     here?

24          SPEAKER 1:  Your Honor, I think where both sides

25     notice somebody that hasn't been deposed before, we certainly

```
1    can have 10 hours, split equally, five and five.  We'd agree
2    to something like that.  We thought there should be a limit
3    on people that they have already deposed, because that should
4    be different.
5         SPEAKER 2:  Your Honor, a 10 hour limit, five and
6    five would be agreeable to the FTC.
7         THE COURT:  That's fine.  You are talking about
8    former employees noticed by both sides?
9         SPEAKER 2:  Yes, Your Honor.
10        THE COURT:  Okay.  That's fine.  I'll agree with
11   that.
12        Next issue?
13        SPEAKER 2:  Your Honor, we had inserted language in
14   our RFP proposal that just says that, with the response to a
15   RFP, a timeline for completion of production would be
16   proposed.  The reason we included that is it's possibly
17   contemplated by the Federal Rules, but not necessarily
18   required.
19        Our thought was, that way, third parties will be
20   forced to provide an approximate schedule and also Meta would
21   be forced to file an appropriate schedule.  I think that
22   would tie in nicely with our periodic reports to the Court,
23   so we could tell the Court when the substantial completion of
24   production is anticipated, and call the Court's attention to
25   anyone who says I'm not going to substantially complete the
```

1    production for an unreasonable period of time.

2            THE COURT:  Okay.  Mr. Hansen?

3            SPEAKER 1:  It's just another one of their attempts

4    to remake the Federal Rules in ways that are going to deter

5    us because they're not going to give us any documents.  They

6    have already told us that.  We've had fights about that,

7    frankly.  They have given us -- the request for production of

8    documents, they had 114 parts, documents going back to 2007,

9    in 11 foreign languages.

10           Then they want us to tell them how fast we're going

11   to get all this stuff.  And then we're going to be back

12   before Your Honor because we're not going to be able to tell

13   them how fast we can get all that stuff.  So this is a recipe

14   for disputes, disagreements.  We're not intending to

15   slow-roll anything.  But they have an artificial requirement

16   to be committed to a production schedule up front in a very

17   long and complicated process.

18           During 18 months of their investigation, 12 millions

19   pages were produced, and it took 18 months to produce it.

20   It's hard to get this stuff.  I realize they're in a big

21   hurry and they want everything done tomorrow.  But if you

22   impose this requirement now, without a showing of need, I

23   think, I'm very strongly confident that what it's going to do

24   is be an occasion for dispute.  If we're foot-dragging, the

25   Court can deal with it.  But to put this artificial

1    requirement in, it's just not appropriate.

2            THE COURT:  Okay.  Given the fact that there will be

3    the status reports, I won't require a deadline now, an

4    estimate to be given by responding parties now.

5            But I agree, Mr. Matheson, that if they're proposing

6    unreasonable dates or appear to be unduly delaying, I will

7    address it.

8            Third one?

9            SPEAKER 2:  Yes, thank you, Your Honor.

10           The third one I had was the timing of contention

11   interrogatory responses.  We had proposed that contention

12   interrogatories can be responded to at any time up to 30 days

13   after close of fact discovery.  I'm not sure the Court needs

14   to rule on that.  I just want to understand if you had in

15   previous cases --

16           THE COURT:  Yeah, I have not.  And I think,

17   particularly things that are really going to be dealt with at

18   the end of fact discovery, we don't need to deal with them

19   now.  So I did not rule but that was intentionally.

20           SPEAKER 1:  Your Honor, may I be heard on that

21   point?

22           THE COURT:  Yes.

23           SPEAKER 1:  They're seeking something that, unless

24   you grant it, they will have to answer to the potential

25   interrogatory.  There is nothing that permits them to dodge

1    those answers.  It is extremely important to us, Your Honor,

2    they said that we live in a market, a so-called personal

3    social networking service market that has no competition.

4    Yet, we're going to ask them who is in this supposed market.

5    They're going to have to answer it.  That is going to be

6    important in feeding our discovery and where we go and what

7    we do.  And we're going to want them to answer those things.

8    If they can't answer, then that will be pretty telling about

9    their case.  So for them to try to avoid answering those

10   things--

11           THE COURT:  Let me just stop you, I don't even --

12   where is the section on contention interrogatories?  There is

13   one sentence by the plaintiff regarding, on 20 -- where do

14   you address the issue?

15           SPEAKER 2:  They do not address it, Your Honor.

16           SPEAKER 1:  It's on page 20 of the status report,

17   Your Honor.

18           THE COURT:  Right. But there's nothing you said

19   about it, right?

20           SPEAKER 1:  We objected to it.  I think we said it

21   should be the Federal Rules.  They say, may be answered at

22   any time after 30 days after the close of fact discovery.

23   That's not the Federal Rules.  The Federal Rules require them

24   to answer within the periods --

25           THE COURT:  Okay.  Hold on a second.  So this issue,

1    because -- I'm sorry, the defense never mentioned anything

2    about this in the response on pages 20, 21, this was not

3    flagged to my attention.

4          So why do you take the position, Mr. Matheson, that

5    contention interrogatories can be answered at any time up to

6    30 days after fact discovery?

7          SPEAKER 2:  Your Honor, numerous courts have held

8    that contention interrogatories do not have to be answered

9    until after the close of fact discovery because that is the

10   point at which the plaintiff is in possession of the

11   discovery it requires.

12         Moreover, interrogatory responses can be

13   supplemented, so we were trying to avoid what is sure to be a

14   dispute based on everything Mr. Hansen just said.  We just

15   thought it would be good to take the dispute off table.  I

16   literally have never been in a position where someone didn't

17   say in their response to a contention interrogatory that they

18   reserve the right to supplement it and/or simply object at

19   the close of fact discovery.  We thought we would take the

20   dispute off the table so we didn't have a fight about whether

21   responses to contention interrogatories on an ongoing interim

22   basis are sufficient and have to keep coming back to the

23   Court on that issue.

24         THE COURT:  There is a difference between being able

25   to supplement it and having to answer in the first place,

though, right?

SPEAKER 2:  Your Honor, there are numerous cases in which courts have said that this contention interrogatory need not be answered until the close of fact discovery.  If we have a dispute on this issue, we should wait for it to a arise and brief it.

THE COURT:  Mr. Hansen.

SPEAKER 1:  We have dispute right now, Your Honor. They are seeking a change to the Federal Rules that is very harmful to Meta.  And they say that there are numerous cases. We don't think there are cases at all that support that.  And it's completely inappropriate here.  What parts of Meta are in and out of the (unintelligible) market in there?  We're entitled to know that.

And Your Honor is exactly right.  If they want to supplement later, they learn more, okay.  But they have already had 18 months of extensive investigation.  They had 10 years since they (unintelligible) acquisition.  The notion they can't answer these questions now is really quite shocking.  And they shouldn't be allowed to dodge this question.  They should answer it now and supplement as appropriate.  But I think it would be extremely damaging and harmful to get discovery in this case to let them evade discovery under the potential topic.  They don't--

THE COURT:  Okay, I'm going to--

1          SPEAKER 2:  Your Honor, may I be heard on this, Your

2     Honor?  He just said we didn't have any cases.  Can we be

3     heard on this?

4          THE COURT:  Yes.

5          SPEAKER 2:  B. Braun Medical, 155 FRD at 527, there

6     is considerable support for deferring contention

7     interrogatories until the end of discovery period.  This case

8     stream cites another eight cases.  If they briefed this and

9     brought it to Your Honor's attention, we would be happy to

10    provide--

11         THE COURT:  Hold on.  I'm going to let you both

12    brief it so I won't decide it because I think it is an

13    important issue, particularly in this case where the

14    definition of the market and Meta's alleged monopoly power

15    therein, how the FTC defines that is pretty significant.  So

16    I'll let you brief it.

17         We'll do the same schedule as we're doing regarding

18    the protective order, ESI order, 502(d) order.  In other

19    words, March 7th for the FTC, March 14th for the Meta, March

20    16 for the FTC.  Page limits of 10, 10 and five.  And I'll

21    rule.  Then we'll incorporate it in the scheduling order

22    thereafter.

23         Okay.  Mr. Matheson, I think that covers your three

24    issues.

25         SPEAKER 2:  Yes, Your Honor, thank you.

1          THE COURT:  Mr. Hansen, any other than scheduling

2    issues you want to raise?

3          SPEAKER 1:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you both.  Again, I

5    don't mean to be too blunt or brusque about disputes.  But I

6    just think the amount of time this could consume for all of

7    us, if parties are not somewhat flexible and reasonable in

8    their resolution of issues, would be enormous.

9          So what I will expect then is, just trying to decide

10   whether -- does either side have a preference whether you

11   want to submit the proposed scheduling order to me now or

12   after we resolve the outstanding issues regarding contention

13   interrogatories and protective order issues?  In other words,

14   you can jointly submit one to me now that we will then

15   supplement, or you can wait until I resolve these two issues.

16         Mr. Matheson, your preference?

17         SPEAKER 2:  My only question on that score, Your

18   Honor, is whether there will be a docket entry that will

19   inform third parties that there will be briefing on the

20   protective order in the event we do not submit a proposal to

21   the Court promptly.

22         THE COURT:  I'm happy to, I'll issue a minute order

23   to that effect today.

24         SPEAKER 2:  In that case, Your Honor, whatever your

25   preference is.  It's clear to have one order.  We're happy to

1    wait if it will be convenient for the Court, I'm sure we can

2    meet and confer with the defendants and get something on file

3    tomorrow that resolves all these issues, and have a

4    free-standing protective order, ESI order and  502(d) order.

5    I guess I would suggest that, Your Honor.  But whatever the

6    Court's preference.

7              THE COURT:  Mr. Hansen.

8              SPEAKER 1:  Thank you, Your Honor.  I think our

9    preference would be to deal with the scheduling order, which

10   is pretty well resolved their way, and then the Court can

11   enter a subsequent order, if that's appropriate.

12             THE COURT:  Fair enough.  Then I will ask you both

13   to submit by Wednesday, in other words, March 2nd, a joint

14   proposed scheduling order which encompasses all the rulings

15   made today.  Then we'll have a separate free-standing

16   protective order, ESI order.  And then we can certainly add

17   the contention interrogatory point, depending on how I rule

18   in the order.

19             All right.  Thank you very much.  I appreciate

20   everyone's good arguments.  And we'll go forward and I'll

21   look to hear from you with a briefing on next week.  Thank

22   you very much.

23             (Whereupon, at 10:56 a.m., the hearing concluded.)

24

25

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of the remotely reported proceedings in the above-entitled matter.

Please Note: This hearing was held in compliance with the COVID-19 pandemic and the standing orders of this court, and is therefore subject to the technological limitations of court reporting remotely, including static, signal interference and other restrictions.

_____  3-4-2022
Lisa Walker Griffith, RPR                 Date