1          IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2

3    FEDERAL TRADE COMMISSION,
                                        Civil Action
4             Plaintiff,                No. 1:20-cv-3590

5        vs.                            Washington, DC
                                        January 5, 2023
6    META PLATFORMS, INC.,
                                        2:01 p.m.
7             Defendant.
     _____/
8

9         TRANSCRIPT OF VIDEO STATUS CONFERENCE
          BEFORE THE HONORABLE JAMES E. BOASBERG
10             UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     For the Plaintiff:    DANIEL MATHESON
13                         SUSAN MUSSER
                            Federal Trade Commission
14                          400 7th Street, SW
                            Washington, DC 20024
15

16   For the Defendant:    MARK HANSEN
                            Kellogg, Hansen, Todd, Figel &
17                          Frederick
                            1615 M Street, NW, Suite 400
18                          Washington, DC 20036

19

20

21

22

23   Court Reporter:       JEFF M. HOOK
                            Official Court Reporter
24                          U.S. District & Bankruptcy Courts
                            333 Constitution Avenue, NW
25                          Room 4700-C
                            Washington, DC 20001

1            **P R O C E E D I N G S**

2            **DEPUTY CLERK:**  Your Honor, we're here today for a

3    status hearing in 20-3590, Federal Trade Commission vs. Meta

4    Platforms, Inc.  Beginning with counsel for the plaintiff,

5    please state your name for the record.

6            **MR. MATHESON:**  Good afternoon, Your Honor.  Daniel

7    Matheson for the Federal Trade Commission.  I'm joined by my

8    colleague Susan Musser.

9            **THE COURT:**  Welcome.

10           **MR. HANSEN:**  Good afternoon, Your Honor.  Mark

11   Hansen for Meta.

12           **THE COURT:**  Good afternoon.  Happy new year to

13   everybody.  I've got the status report, and I think there

14   are just three disputes, as I read it, that are teed up for

15   today.  So let's talk about those, and then I want to just

16   talk for a minute about the upcoming conference with the

17   non-parties also.  So the first relates to the upcoming

18   depositions and the FTC's request that the defense complete

19   its privilege assessments in advance of the deposition.  So

20   I guess the first question I have, Mr. Matheson, is that I

21   know that the status report is dated three weeks ago.

22           How many depositions actually took place in

23   December?

24           **MR. MATHESON:**  So, Your Honor, we took six fact --

25   we've taken six fact witness depositions to date, and those

1    were all taken in December.  And there are 12 more which are

2    scheduled to take place in January.

3            **THE COURT:**  And how many before January 23rd,

4    which is the date of the privilege log?

5            **MR. MATHESON:**  So our request would actually

6    impact approximately 15 depositions, because if you think

7    about 10 days after January 23rd.  What we're asking for,

8    Your Honor -- and there actually have been several

9    developments.  Obviously the request is slightly dated.  I

10   guess our request would be that they use best efforts to get

11   us these documents more than five hours in advance of the

12   deposition, as they did for the first deposition which

13   started at 4:00 o'clock in the morning.  We got the

14   documents -- they rolled off the privilege log, late the

15   night before.

16           There have been other developments.  They informed

17   us on December 30th that they have actually not even started

18   to review 270,000 potentially responsive documents.  So it

19   is no longer accurate to state that they have complied with

20   the Court's instruction to complete their document

21   production by December 7th.  The JSR gives the impression

22   that there was just some minor productions that slipped past

23   December 7th; for instance, 998,000 pages produced on

24   December 13th.  That's no longer true.  We have not yet

25   received an update from Meta on when they intend to actually

1  comply, but they're obviously well past the December 7th

2  production deadline.

3          **THE COURT:**  So let's stick with that topic.

4          Mr. Hansen, what's going on with the late

5  production?

6          **MR. HANSEN:**  Thank you, Your Honor.  I'd be happy

7  to clarify that.  On December 7th -- or by December 7th, as

8  the Court is aware, Meta produced more than 20,000,000 pages

9  of documents, including investigation into this litigation.

10 That was a pretty substantial production.  We told the Court

11 we believed we'd complied with substantial production, and

12 we still believe we complied with that.

13          In addition, there are a couple of follow on

14 productions, as you'd expect, in a production of this scope

15 and scale, which I'm happy to talk about in detail.  What

16 Mr. Matheson refers to is that last week, we learned for the

17 first time that our vendor, a very large, well-respected

18 vendor, had somehow not processed 270,000 of the documents

19 that were slated for processing.  That doesn't mean they're

20 not responsive, it just means they weren't processed.  So we

21 have to complete that process, and we're doing so

22 expeditiously.  But that's not something we were aware of on

23 December 7th, and we're going to complete that.

24          **THE COURT:**  So then the privilege log issue,

25 though, will be completed by January 23rd in relation to

1    everything except the 270 or will it include the 270?

2         **MR. HANSEN:**  Your Honor, it won't include the 270.

3    And there are three really related issues that I think we

4    should be aware of.  In addition to the first request for

5    production, the FTC had -- they've got five additional

6    requests for production that are pending.  In addition to

7    that, Your Honor, we have the 270 that were, due to a vendor

8    error, not processed and have to be processed.  Those have

9    to be privilege reviewed as well.  There's the privilege

10   review on the first request, which we're undertaking and

11   going to finish by the 23rd per the Court's order.  And

12   then, Your Honor, just to be completely transparent, there's

13   the process Your Honor ordered with respect to the

14   investigative privilege log which is ongoing.  So we're in

15   the process of doing that as well.

16        **THE COURT:**  So let me ask you, then, so at this

17   point, Mr. Matheson's asking you to make best efforts to

18   review the documents before the depositions.  Again, if we

19   take the 10-day requirement out, what's the opposition to

20   making best efforts to doing what you can on that?  Again,

21   knowing that the 270, you're unlikely to get to those in

22   time.

23        **MR. HANSEN:**  Your Honor, we are indeed cooperating

24   and trying to make documents available as we go through the

25   review before the 23rd.  I think the average production

1    before the December depositions was about three days in

2    advance.  So we're doing that, Your Honor.  But I don't want

3    there to be any misimpression, there's the 270 that's out

4    there, there's the investigative privilege log that's out

5    there, and there's five other requests for production that

6    are out there.  So we had suggested to the FTC that maybe we

7    should put depositions off a little bit so we can get some

8    of that behind us, but they chose to proceed instead.

9          THE COURT:  Mr. Matheson, so what now?  Putting

10   the 270,000 aside for a minute, aren't you folks close

11   enough on this in terms of they're trying to get you the

12   documents, and they say they're averaging about three days

13   before, and you would like it a little more than that?  But

14   they are making efforts, whether you would characterize them

15   as good or best.  I mean, in other words, what am I supposed

16   to do here?

17         MR. MATHESON:  If we can have an assurance, Your

18   Honor, they're making best efforts to get us documents

19   related to custodians on a rolling basis as quickly as they

20   can, that would be wonderful.  That's really all we're

21   asking for.  Hopefully this will go away by February.

22         THE COURT:  Right.  Mr. Hansen, fair, that's a

23   representation you can make?

24         MR. HANSEN:  Your Honor, that's what we're trying

25   to do already, yes.  But I would note that some of these

1    deponents aren't even the custodians.  So I think we're

2    going above and beyond that to give them documents that

3    reference people who are not custodians.

4         **THE COURT:**  So I think that -- it seems you

5    folks -- and again, I say this in a complimentary fashion,

6    not in a disciplinary or hectoring fashion.  It seems like

7    you folks are pretty much there on that.  Again, I think

8    what may become an issue I understand is that if there are

9    depositions and then, for example, in the 270 you find other

10   significant documents, then the FTC says whoa, we now need

11   to re-depose and you don't want to do that, I don't want to

12   have a debate about all of that.

13        But I can tell you that I would imagine, just to

14   give you an advisory ruling, that if there's significant

15   documents and they're documents from the 270, for example --

16   which, again, as you say is vendor error and not -- so it's

17   solely in your camp, Mr. Hansen, then I'd be more inclined

18   to let the FTC reopen the deposition.  But if it's not in

19   the 270, and if it's not significant, I probably wouldn't.

20        So Mr. Matheson, that gives you some guide as

21   you're figuring out how to go from there, all right?

22        **MR. MATHESON:**  Thank you, Your Honor.  Just one

23   clarifying point.  We don't want to bother Your Honor with

24   something that you think you've already told us the answer

25   to.  But there are, as Mr. Hansen referenced, recent,

1    late-breaking developments regarding the privilege dispute

2    with respect to the original investigation privilege log.  I

3    would hope that we would not prejudge anything that might be

4    necessary to address those issues.  Our hope is to move

5    forward with depositions while Meta completes the process of

6    producing the documents that we should have had two years

7    ago, and that we don't need to have disputes about whether

8    or not a deposition might need to get reopened in the

9    abstract.  But in the event there is an important document

10   that we should have had back in 2020, we would hope that

11   issue has not been prejudged.

12          **THE COURT:**  Right, I think you're right, and we'll

13   see.  But again, it will be a fairly common-sense balancing

14   that I would expect to engage in, and so I would trust you

15   folks would have a pretty good sense of where I would be

16   coming out.  But if you truly can't agree on some of those,

17   you can raise them.

18          The next issue is interrogatory number four.  So,

19   again, Meta has relied on Rule 33(d) which allows them to

20   point to documents, and the FTC is looking for more of a

21   narrative.  Meta certainly is entitled under 33(d) to say

22   these are the documents that show what the valuation was.

23   But there's one line, Mr. Hansen, that -- in the status

24   report that concerned me and that I wanted to get your

25   explanation of.  So this is on -- at the end of the status

1   report, page 30, end of 30, the sentence that carries over

2   from 30 onto 31 where you say:  "If the FTC desires other

3   valuations, such as those after Meta's valuation of WhatsApp

4   but before the deal closed, it may review those" -- I

5   assume, "documents that Meta has produced in response to

6   document requests but which are not responsive to this

7   interrogatory."

8          So my concern here is that the interrogatory is:

9   "Describe and state the basis for the company's valuation of

10  WhatsApp prior to Meta's acquisition of WhatsApp."  It seems

11  that you're saying that valuations prior to closing aren't

12  relevant.  Again, maybe what you're trying to say is between

13  the time of the agreement and the closing they aren't

14  relevant.

15         Can you tell me what your sentence there means?

16         **MR. HANSEN:**  Of course, Your Honor.  It was

17  inartfully drafted.  What it means is this:  We have given

18  more than 30 documents that go through quite a lot of

19  detail, including the CFO's e-mail describing the metrics to

20  the board deck.  This was how the company valued WhatsApp

21  prior to acquiring it.  There are some other documents that

22  have been provided to the FTC that talk in some terms about

23  valuations that were not used by the company to value

24  WhatsApp for those purposes.  So it's not a discovery issue,

25  Your Honor, they have all that stuff.  It's a question of

1    what's the truthful answer here.  We don't think those

2    things were part of the company's valuation prior to the

3    closing.  They may have been used for other purposes, they

4    may have had other functions, but they weren't responsive to

5    the interrogatory as drafted.

6              So we can all argue about what the right answer is

7    here and whether those things were meaningful, but that

8    wouldn't be a truthful answer to the company's valuation of

9    WhatsApp.

10             **THE COURT:**  No, I agree with you that if they are

11   documents that aren't Meta documents, then they wouldn't be

12   responsive.  But if they're Meta documents that show Meta's

13   valuation before the deal closed, then I would believe they

14   are responsive, don't you?

15             **MR. HANSEN:**  Well, Your Honor, I'm trying to be

16   specific here.  I think what the FTC may have in mind is

17   some KPMG valuations of intangible assets or so on that were

18   done for other purposes, and so that comes to mind

19   immediately.  But I'm not aware of Meta documents prior to

20   the close valuing WhatsApp that we aren't including -- Meta

21   valuations.

22             **THE COURT:**  And then it seems in part,

23   Mr. Matheson, that your concern is that Meta hasn't given

24   you everything that concerns the valuation, that you seem to

25   want some kind of confirmation that what they've given you

1        is all of the valuations.

2                Is that your central concern here?

3                **MR. MATHESON:**  Yes, Your Honor, you put your

4        finger on it.  We didn't have ask for the valuations that

5        they conducted prior to agreeing on the purchase price and

6        shaking hands with WhatsApp, we asked for the valuations

7        prior to the acquisition.  So that is one nuance.  We also

8        asked for the basis, the assumptions and the basis.  The

9        documents that Mr. Hansen claims reveal this are 35

10       documents, not all of which are even from Meta's files, some

11       of which are from consultant's files.  If they're willing to

12       tell us that there's no basis or assumption that Meta

13       reached prior to the acquisition, that's a complete answer

14       to the question.  They have not yet represented that.  They

15       have refused to put that in writing.

16               Our concern is unless -- we can't look at the

17       documents and understand the basis and assumption that went

18       into them unless they're willing to tell us there is no

19       basis or assumption that does not appear on the face of the

20       documents.  If they were to give us a narrative response

21       explaining the basis and assumptions, that would be fine.

22       If they were to represent there's nothing you can know --

23       you cannot discover from these documents, that would be

24       fine.  We just want to close the loop to make sure we can

25       actually probe their basis and assumptions at depositions,

1    and we're not going to be surprised when their expert

2    reports come out and it turns out there's a bunch of things

3    that they had in mind but do not appear on the face of these

4    documents.

5         THE COURT:  Okay.  So Mr. Hansen, can you make

6    that certification that the documents themselves -- that the

7    documents provide a full and complete answer to the

8    interrogatory?

9         MR. HANSEN:  Your Honor, we're making the

10   certification that the interrogatory is answered by the

11   documents.  Mr. Matheson is asking something else, saying

12   you're set in stone and you could never say anything else.

13   They themselves have said if additional information comes to

14   light, they reserve the right to amend.  That's part of the

15   whole process.  So we're telling Mr. Matheson that as we sit

16   here now, these documents answer your interrogatory.  His

17   dispute is, well, what about these other things.  We said

18   those don't answer your interrogatory.

19        THE COURT:  Well, so then I'll just ask you to

20   provide some certification, something in writing, that says

21   the documents that we produced, the 30 or 35 documents,

22   fully answer the interrogatory.

23        MR. HANSEN:  As we know now, again, subject to if

24   we learn more information, we obviously reserve the right to

25   amend, as does Mr. Matheson with his answers.

1      **MR. MATHESON:**  Your Honor, respectfully this

2  valuation occurred eight years ago.  They're asking us for

3  things we're investigating.  We're asking them what their

4  client thought eight years ago and its basis and

5  assumptions.  Why is that a hard question to answer now?

6      **THE COURT:**  Well, I think they're saying -- well,

7  at least as I understand it, that these documents reflect

8  what we were thinking eight years ago; that this gives a

9  full reflection of our valuation and the basis for it eight

10  years ago.  So if they say that, that's what it is, and

11  that's what you've got.  Again, I think that's sufficient

12  for you to probe in deposition, the specifics.

13      **MR. MATHESON:**  Absolutely understood, Your Honor.

14  I was reacting to Mr. Hansen's point that the FTC has

15  referred to the fact that we are engaged in ongoing

16  discovery.  It does not seem as if they need to engage in

17  ongoing discovery to understand what their client thought

18  eight years ago and to answer that question.

19      **THE COURT:**  Okay.  In any event -- hold on, we're

20  done with this.  Mr. Hansen, you can provide that

21  certification and we will move forward.

22      So the next is interrogatory 15.  You know, this

23  is a somewhat difficult question I understand because,

24  Mr. Matheson, you very reasonably don't want 30

25  interrogatories to in essence be 150.  And you, Mr. Hansen,

1    need to cover a fair bit of ground in your interrogatories.

2    And there's nothing regarding the merits of 15 by the FTC.

3    Their sole ground for asking me to quash it is numerosity.

4    And viewing the examples that the FTC gives as being

5    compound and multiple, I don't think I'm particularly

6    convinced.  Again, I agree they're not particularly narrow,

7    I don't dispute that, Mr. Matheson.  But in a case like

8    this, I feel that they are reasonable interrogatories, and

9    so I'm going to require you to answer 15.

10          Now, what I then foresee is, okay, what does that

11   mean with the next set that comes.  So, again, Mr. Hansen,

12   I'll be -- this is not a license to you in your remaining

13   interrogatories to sweep exceedingly broadly.  But, again,

14   I'm cognisant of the FTC's position and will look at further

15   interrogatories.  But I'll require the FTC to answer 15.

16   I'm also not saying that you've reached your limit, so you

17   may propound others.

18          **MR. HANSEN:**  Understood, Your Honor.

19          **THE COURT:**  So the last issue relates to the

20   upcoming conference with the non-parties.  So can you

21   gentlemen each tell me -- maybe you know, maybe you don't

22   know yet, do you foresee a substantial number of disputes,

23   moderate number, minimal number?  Mr. Matheson, can you --

24   and if you don't know now, when do you think you'll know?

25          **MR. MATHESON:**  Your Honor, at the moment, we have

1   no identified impasses with third parties.  We are trending

2   toward a potential impasse with one.  Our goal is to reach

3   either an accommodation or impasse by January 17th -- so in

4   advance of the filing on the 20th, with respect to the FTC's

5   document requests and depositions the FTC has noticed.  The

6   only reason I'm a little hesitant to commit that there are

7   going to be a tiny number is that we don't have control over

8   any disputes that might arise over document requests Meta

9   might make in connection with depositions.

10          And the FTC also rolled out data requests after we

11  rolled out our document requests on the reasoning that those

12  would not delay depositions and are more relevant to expert

13  discovery.  We're not as far along with our data requests.

14  With respect to document requests and FTC depositions, we

15  haven't identified any yet.  We intend to identify all the

16  ones that we anticipate will arise throughout this

17  litigation by January 17th, with a few exceptions.

18          **THE COURT:**  Thank you.  Mr. Hansen, same question.

19          **MR. HANSEN:**  Yes, Your Honor.  We tried to get the

20  answer to that question assuming the Court would want to

21  know.  The word I got from my team was that we don't have a

22  lot of identified, clear disputes, but we have some slow

23  rowing going on where we've given the third parties a hard

24  deadline.  We don't know whether that's going to result in

25  compliance or not compliance.  So at the moment, Your Honor,

1    I think there are 20 third parties that fall into that

2    category.  I'm not saying that we have an identified,

3    clarified dispute with those 20 parties, but they're at

4    least on the watch list for a possible dispute.  We'll know

5    more, I think, at least a week in advance of the conference.

6         **THE COURT:**  Okay.  And again, Mr. Matheson, can

7    you remind me, was January 17th the date that I was

8    requiring briefs?

9         **MR. MATHESON:**  No, Your Honor, that was January

10   20th, Your Honor.  We're just trying to do it in advance.

11        **THE COURT:**  Got it, great.  And let me just say

12   this to both of you -- and I know that you're eminently

13   capable of this.  It would be helpful for me, if there are

14   similar disputes or identical disputes with different

15   entities, to either give me tables or charts or combined

16   briefing on the issues just so I can -- again, if there are

17   just a few, then I'm not worried about it.  But if there are

18   20 or 15 that I'm going to have to deal with, to the extent

19   that you can make clear either by grouping or otherwise or

20   by tables or grids, that might be helpful to me as I assess

21   it as opposed to reading 15 sets of briefs.  Even though

22   they're going to be short, at least I'll understand where

23   the commonality of issues is.

24        I'm not going to give you a specific format, I

25   know you're both, as I said, eminently capable of doing

1   that.  But whatever you think will make it easiest for me to

2   resolve it efficiently, I would appreciate that.

3        **MR. HANSEN:**  We're hoping to try and resolve as

4   much as possible and have as few disputes as needed.  Again,

5   I'm hopeful we can work things out with most of the third

6   parties, but we need a deadline in order to make sure we can

7   get this done in the discovery period.

8        **THE COURT:**  Okay, understood.  And Mr. Matheson,

9   again, you may be in the enviable position of not having

10  anything.  But if there are things -- again, it doesn't look

11  like there will be many, to the extent you can present those

12  in as clear a manner as possible, that would be great.

13       **MR. MATHESON:**  Understood, Your Honor, we will do

14  so.

15       **THE COURT:**  So I think that covers everything.

16  Mr. Matheson, do you believe I'm missing anything?  I know

17  that you folks signaled that there may be issues on some

18  other disputes down the line, but I think these are the only

19  ones that were teed up for today.

20       Mr. Matheson, anything else?

21       **MR. MATHESON:**  That's correct, Your Honor, we had

22  flagged some privilege issues that we are discussing with

23  Meta, and we will likely be in front of the Court this --

24  perhaps next week on those issues.  But other than that,

25  there's nothing.

1          **THE COURT:**  Okay.  Mr. Hansen, anything else?

2          **MR. HANSEN:**  Nothing, Your Honor.  Thank you.

3          **THE COURT:**  Okay.  Thank you so much, gentlemen.

4    Ms. Musser, thank you.  I'll look forward to talking at the

5    next one.  Thank you.

6          (Proceedings adjourned at 2:24 p.m.)

1                    **C E R T I F I C A T E**

2


3              I, **Jeff Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the remotely reported proceedings in the above-entitled

6    matter.

7                    **PLEASE NOTE:**  This hearing occurred by

8    videoconference and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13     __January 23, 2023__              _____

14          **DATE**                          **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**1**

10 [1]   3/7
10-day [1]   5/19
12 [1]   3/1
13th [1]   3/24
15 [7]   3/6 13/22
  14/2 14/9 14/15
  16/18 16/21
150 [1]   13/25
1615 [1]   1/17
17th [3]   15/3 15/17
  16/7
1:20-cv-3590 [1]
  1/4

**2**

20 [3]   16/1 16/3
  16/18
20,000,000 [1]   4/8
20-3590 [1]   2/3
20001 [1]   1/25
20024 [1]   1/14
20036 [1]   1/18
2020 [1]   8/10
2023 [1]   1/5
20th [2]   15/4 16/10
23rd [5]   3/3 3/7
  4/25 5/11 5/25
270 [9]   5/1 5/1 5/2
  5/7 5/21 6/3 7/9
  7/15 7/19
270,000 [3]   3/18
  4/18 6/10
2:01 [1]   1/6
2:24 p.m [1]   18/6

**3**

30 [6]   9/1 9/1 9/2
  9/18 12/21 13/24
30th [1]   3/17
31 [1]   9/2
33 [2]   8/19 8/21
333 [1]   1/24
35 [2]   11/9 12/21
3590 [2]   1/4 2/3

**4**

400 [2]   1/14 1/17
4700-C [1]   1/24
4:00 [1]   3/13

**7**

7th [7]   1/14 3/21
  3/23 4/1 4/7 4/7
  4/23

**9**

998,000 [1]   3/23

**A**

above [2]   7/2 19/5
above-entitled [1]
  19/5
Absolutely [1]
  13/13
abstract [1]   8/9
accommodation [1]
  15/3
accurate [1]   3/19

acquiring [1]   9/21
acquisition [3]
  9/10 11/7 11/13
Action [1]   1/3
actually [6]   2/22
  3/5 3/8 3/17 3/25
  11/25
addition [3]   4/13
  5/4 5/6
additional [2]   5/5
  12/13
address [1]   8/4
adjourned [1]   18/6
advance [6]   2/19
  3/11 6/2 15/4 16/5
  16/10
advisory [1]   7/14
afternoon [3]   2/6
  2/10 2/12
again [18]   5/18
  5/20 7/5 7/7 7/16
  8/13 8/19 9/12
  12/23 13/11 14/6
  14/11 14/13 16/6
  16/16 17/4 17/9
  17/10
ago [7]   2/21 8/7
  13/2 13/4 13/8
  13/10 13/18
agree [3]   8/16
  10/10 14/6
agreeing [1]   11/5
agreement [1]   9/13
allows [1]   8/19
along [1]   15/13
amend [2]   12/14
  12/25
answered [1]   12/10
anticipate [1]
  15/16
appear [2]   11/19
  12/3
APPEARANCES [1]
  1/11
appreciate [1]   17/2
approximately [1]
  3/6
argue [1]   10/6
arise [2]   15/8
  15/16
aside [1]   6/10
assess [1]   16/20
assessments [1]
  2/19
assets [1]   10/17
assume [1]   9/5
assuming [1]   15/20
assumption [3]
  11/12 11/17 11/19
assumptions [4]
  11/8 11/21 11/25
  13/5
assurance [1]   6/17
available [1]   5/24
Avenue [1]   1/24
average [1]   5/25
averaging [1]   6/12
aware [4]   4/8 4/22
  5/4 10/19
away [1]   6/21

**B**

back [1]   8/10
balancing [1]   8/13
Bankruptcy [1]   1/23
basis [11]   6/19 9/9
  11/8 11/8 11/12
  11/17 11/19 11/21
  11/25 13/4 13/9
become [1]   7/8
Beginning [1]   2/4
behind [1]   6/8
best [5]   3/10 5/17
  5/20 6/15 6/18
beyond [1]   7/2
bit [2]   6/7 14/1
board [1]   9/20
BOASBERG [1]   1/9
both [2]   16/12
  16/25
bother [1]   7/23
breaking [1]   8/1
briefing [1]   16/16
briefs [2]   16/8
  16/21
broadly [1]   14/13
bunch [1]   12/2

**C**

camp [1]   7/17
can [21]
capable [2]   16/13
  16/25
carries [1]   9/1
case [1]   14/7
category [1]   16/2
central [1]   11/2
certainly [1]   8/21
certification [4]
  12/6 12/10 12/20
  13/21
certify [1]   19/4
CFO's [1]   9/19
characterize [1]
  6/14
charts [1]   16/15
chose [1]   6/8
Civil [1]   1/3
claims [1]   11/9
clarified [1]   16/3
clarify [1]   4/7
clarifying [1]   7/23
clear [3]   15/22
  16/19 17/12
client [2]   13/4
  13/17
close [3]   6/10
  10/20 11/24
closed [2]   9/4
  10/13
closing [3]   9/11
  9/13 10/3
cognisant [1]   14/14
colleague [1]   2/8
COLUMBIA [1]   1/1
combined [1]   16/15
coming [1]   8/16
COMMISSION [4]   1/3
  1/13 2/3 2/7
commit [1]   15/6

common [1]   8/13
common-sense [1]
  8/13
commonality [1]
  16/23
company [2]   9/20
  9/23
company's [3]   9/9
  10/2 10/8
complete [6]   2/18
  3/20 4/21 4/23
  11/13 12/7
completed [1]   4/25
completely [1]   5/12
completes [1]   8/5
compliance [2]
  15/25 15/25
complied [3]   3/19
  4/11 4/12
complimentary [1]
  7/5
comply [1]   4/1
compound [1]   14/5
concern [4]   9/8
  10/23 11/2 11/16
concerned [1]   8/24
concerns [1]   10/24
conducted [1]   11/5
conference [4]   1/9
  2/16 14/20 16/5
confirmation [1]
  10/25
connection [1]   15/9
Constitution [1]
  1/24
consultant's [1]
  11/11
control [1]   15/7
convinced [1]   14/6
cooperating [1]
  5/23
counsel [1]   2/4
couple [1]   4/13
course [1]   9/16
court [9]   1/1 1/22
  1/23 4/8 4/10 15/20
  17/23 19/3 19/9
Court's [2]   3/20
  5/11
Courts [1]   1/23
cover [1]   14/1
covers [1]   17/15
custodians [3]   6/19
  7/1 7/3
cv [1]   1/4

**D**

DANIEL [2]   1/12 2/6
data [2]   15/10
  15/13
date [4]   2/25 3/4
  16/7 19/14
dated [2]   2/21 3/9
day [1]   5/19
days [3]   3/7 6/1
  6/12
DC [4]   1/5 1/14
  1/18 1/25
deadline [3]   4/2
  15/24 17/6

**D**

deal [3]   9/4 10/13
  16/18
debate [1]   7/12
December [11]   2/23
  3/1 3/17 3/21 3/23
  3/24 4/1 4/7 4/7
  4/23 6/1
December 13th [1]
  3/24
December 30th [1]
  3/17
December 7th [6]
  3/21 3/23 4/1 4/7
  4/7 4/23
deck [1]   9/20
Defendant [2]   1/7
  1/16
defense [1]   2/18
delay [1]   15/12
deponents [1]   7/1
depose [1]   7/11
deposition [6]   2/19
  3/12 3/12 7/18 8/8
  13/12
depositions [14]
  2/18 2/22 2/25 3/6
  5/18 6/1 6/7 7/9
  8/5 11/25 15/5 15/9
  15/12 15/14
Describe [1]   9/9
describing [1]   9/19
desires [1]   9/2
detail [2]   4/15
  9/19
developments [3]
  3/9 3/16 8/1
different [1]   16/14
difficult [1]   13/23
disciplinary [1]
  7/6
discover [1]   11/23
discovery [5]   9/24
  13/16 13/17 15/13
  17/7
discussing [1]
  17/22
dispute [5]   8/1
  12/17 14/7 16/3
  16/4
disputes [9]   2/14
  8/7 14/22 15/8
  15/22 16/14 16/14
  17/4 17/18
DISTRICT [4]   1/1
  1/1 1/10 1/23
document [7]   3/20
  8/9 9/6 15/5 15/8
  15/11 15/14
documents [36]
done [3]   10/18
  13/20 17/7
down [1]   17/18
drafted [2]   9/17
  10/5
due [1]   5/7

**E**

e-mail [1]   9/19

easiest [1]   17/1
efficiently [1]
  17/2
efforts [5]   3/10
  5/17 5/20 6/14 6/18
eight [5]   13/2 13/4
  13/8 13/9 13/18
either [3]   15/3
  16/15 16/19
else [4]   12/11
  12/12 17/20 18/1
eminently [2]   16/12
  16/25
end [2]   8/25 9/1
engage [2]   8/14
  13/16
engaged [1]   13/15
enough [1]   6/11
entities [1]   16/15
entitled [2]   8/21
  19/5
enviable [1]   17/9
error [2]   5/8 7/16
essence [1]   13/25
even [4]   3/17 7/1
  11/10 16/21
event [2]   8/9 13/19
everybody [1]   2/13
example [2]   7/9
  7/15
examples [1]   14/4
exceedingly [1]
  14/13
except [1]   5/1
exceptions [1]
  15/17
expect [2]   4/14
  8/14
expeditiously [1]
  4/22
expert [2]   12/1
  15/12
explaining [1]
  11/21
explanation [1]
  8/25
extent [2]   16/18
  17/11

**F**

face [2]   11/19 12/3
fact [3]   2/24 2/25
  13/15
fair [2]   6/22 14/1
fairly [1]   8/13
fall [1]   16/1
far [1]   15/13
fashion [2]   7/5 7/6
February [1]   6/21
FEDERAL [4]   1/3
  1/13 2/3 2/7
feel [1]   14/8
few [3]   15/17 16/17
  17/4
Figel [1]   1/16
figuring [1]   7/21
files [2]   11/10
  11/11
filing [1]   15/4
find [1]   7/9

fine [2]   11/21
  11/24
finger [1]   11/4
finish [1]   5/11
first [6]   2/17 2/20
  3/12 4/17 5/4 5/10
five [3]   3/11 5/5
  6/5
flagged [1]   17/22
folks [5]   6/10 7/5
  7/7 8/15 17/17
follow [1]   4/13
For the Defendant [1]
  1/16
foregoing [1]   19/4
foresee [2]   14/10
  14/22
format [1]   16/24
forward [3]   8/5
  13/21 18/4
four [1]   8/18
Frederick [1]   1/17
front [1]   17/23
FTC [15]   5/5 6/6
  7/10 7/18 8/20 9/2
  9/22 10/16 13/14
  14/2 14/4 14/15
  15/5 15/10 15/14
FTC had [1]   5/5
FTC's [3]   2/18
  14/14 15/4
full [2]   12/7 13/9
fully [1]   12/22
functions [1]   10/4
further [1]   14/14

**G**

gentlemen [2]   14/21
  18/3
given [4]   9/17
  10/23 10/25 15/23
gives [4]   3/21 7/20
  13/8 14/4
goal [1]   15/2
good [5]   2/6 2/10
  2/12 6/15 8/15
great [2]   16/11
  17/12
grids [1]   16/20
ground [2]   14/1
  14/3
grouping [1]   16/19
guess [2]   2/20 3/10
guide [1]   7/20

**H**

hands [1]   11/6
HANSEN [15]   1/16
  1/16 2/11 4/4 6/22
  7/17 7/25 8/23 11/9
  12/5 13/20 13/25
  14/11 15/18 18/1
Hansen's [1]   13/14
happy [3]   2/12 4/6
  4/15
hard [2]   13/5 15/23
hearing [2]   2/3
  19/7
hectoring [1]   7/6
helpful [2]   16/13

16/20
hesitant [1]   15/6
hold [1]   13/19
Honor [32]
HONORABLE [1]   1/9
HOOK [3]   1/22 19/3
  19/14
hope [3]   8/3 8/4
  8/10
hopeful [1]   17/5
Hopefully [1]   6/21
hoping [1]   17/3
hours [1]   3/11

**I**

identical [1]   16/14
identified [4]   15/1
  15/15 15/22 16/2
identify [1]   15/15
imagine [1]   7/13
immediately [1]
  10/19
impact [1]   3/6
impasse [2]   15/2
  15/3
impasses [1]   15/1
important [1]   8/9
impression [1]   3/21
inartfully [1]   9/17
INC [2]   1/6 2/4
inclined [1]   7/17
include [2]   5/1 5/2
including [3]   4/9
  9/19 10/20
indeed [1]   5/23
information [2]
  12/13 12/24
informed [1]   3/16
instance [1]   3/23
instead [1]   6/8
instruction [1]
  3/20
intangible [1]
  10/17
intend [2]   3/25
  15/15
interrogatories [5]
  13/25 14/1 14/8
  14/13 14/15
interrogatory [10]
  8/18 9/7 9/8 10/5
  12/8 12/10 12/16
  12/18 12/22 13/22
into [3]   4/9 11/18
  16/1
investigating [1]
  13/3
investigation [2]
  4/9 8/2
investigative [2]
  5/14 6/4
issue [6]   4/24 7/8
  8/11 8/18 9/24
  14/19
issues [7]   5/3 8/4
  16/16 16/23 17/17
  17/22 17/24

**J**

JAMES [1]   1/9

**J**

January [9]   1/5 3/2
3/3 3/7 4/25 15/3
15/17 16/7 16/9
January 17th [3]
15/3 15/17 16/7
January 23rd [3]
3/3 3/7 4/25
JEFF [3]   1/22 19/3
19/14
joined [1]   2/7
JSR [1]   3/21
JUDGE [1]   1/10

**K**

Kellogg [1]   1/16
kind [1]   10/25
knowing [1]   5/21
KPMG [1]   10/17

**L**

large [1]   4/17
last [2]   4/16 14/19
late [3]   3/14 4/4
8/1
late-breaking [1]
8/1
learn [1]   12/24
learned [1]   4/16
least [4]   13/7 16/4
16/5 16/22
license [1]   14/12
light [1]   12/14
likely [1]   17/23
limit [1]   14/16
limitations [1]
19/9
line [2]   8/23 17/18
list [1]   16/4
litigation [2]   4/9
15/17
little [3]   6/7 6/13
15/6
log [6]   3/4 3/14
4/24 5/14 6/4 8/2
longer [2]   3/19
3/24
look [4]   11/16
14/14 17/10 18/4
looking [1]   8/20
loop [1]   11/24
lot [2]   9/18 15/22

**M**

mail [1]   9/19
making [4]   5/20
6/14 6/18 12/9
manner [1]   17/12
many [3]   2/22 3/3
17/11
MARK [2]   1/16 2/10
MATHESON [17]   1/12
2/7 2/20 4/16 6/9
7/20 10/23 12/11
12/15 12/25 13/24
14/7 14/23 16/6
17/8 17/16 17/20
Matheson's [1]   5/17
matter [1]   19/6

may [8]   7/8 9/4
10/3 10/4 10/16
14/17 17/9 17/17
maybe [4]   6/6 9/12
14/21 14/21
mean [3]   4/19 6/15
14/11
meaningful [1]   10/7
means [3]   4/20 9/15
9/17
merits [1]   14/2
META [17]   1/6 2/3
2/11 3/25 4/8 8/5
8/19 8/21 9/5 10/11
10/12 10/19 10/20
10/23 11/12 15/8
17/23
Meta's [4]   9/3 9/10
10/12 11/10
metrics [1]   9/19
might [5]   8/3 8/8
15/8 15/9 16/20
mind [3]   10/16
10/18 12/3
minimal [1]   14/23
minor [1]   3/22
minute [2]   2/16
6/10
misimpression [1]
6/3
missing [1]   17/16
moderate [1]   14/23
moment [2]   14/25
15/25
more [10]   3/1 3/11
4/8 6/13 7/17 8/20
9/18 12/24 15/12
16/5
morning [1]   3/13
most [1]   17/5
move [2]   8/4 13/21
Mr. [29]
Mr. Hansen [12]   4/4
6/22 7/17 7/25 8/23
11/9 12/5 13/20
13/25 14/11 15/18
18/1
Mr. Hansen's [1]
13/14
Mr. Matheson [15]
2/20 4/16 6/9 7/20
10/23 12/11 12/15
12/25 13/24 14/7
14/23 16/6 17/8
17/16 17/20
Mr. Matheson's [1]
5/17
Ms. [1]   18/4
Ms. Musser [1]   18/4
much [3]   7/7 17/4
18/3
multiple [1]   14/5
MUSSER [3]   1/13 2/8
18/4

**N**

name [1]   2/5
narrative [2]   8/21
11/20
narrow [1]   14/6

necessary [1]   8/4
need [6]   7/10 8/7
8/8 13/16 14/1 17/6
needed [1]   17/4
new [1]   2/12
next [5]   8/18 13/22
14/11 17/24 18/5
night [1]   3/15
non [2]   2/17 14/20
non-parties [2]
2/17 14/20
note [2]   6/25 19/7
noticed [1]   15/5
nuance [1]   11/7
number [5]   8/18
14/22 14/23 14/23
15/7
numerosity [1]   14/3
NW [2]   1/17 1/24

**O**

o'clock [1]   3/13
obviously [3]   3/9
4/1 12/24
occurred [2]   13/2
19/7
off [2]   3/14 6/7
Official [2]   1/23
19/3
one [5]   7/22 8/23
11/7 15/2 18/5
ones [2]   15/16
17/19
ongoing [3]   5/14
13/15 13/17
only [2]   15/6 17/18
onto [1]   9/2
opposed [1]   16/21
opposition [1]   5/19
order [2]   5/11 17/6
ordered [1]   5/13
original [1]   8/2
others [1]   14/17
otherwise [1]   16/19
out [11]   5/19 6/3
6/4 6/6 7/21 8/16
12/2 12/2 15/10
15/11 17/5
over [3]   9/1 15/7
15/8

**P**

p.m [2]   1/6 18/6
page [1]   9/1
pages [2]   3/23 4/8
part [3]   10/2 10/22
12/14
particularly [2]
14/5 14/6
parties [7]   2/17
14/20 15/1 15/23
16/1 16/3 17/6
past [2]   3/22 4/1
pending [1]   5/6
people [1]   7/3
per [1]   5/11
perhaps [1]   17/24
period [1]   17/7
place [2]   2/22 3/2
plaintiff [3]   1/4

1/12 2/4
PLATFORMS [2]   1/6
2/4
please [2]   2/5 19/7
point [4]   5/17 7/23
8/20 13/14
position [2]   14/14
17/9
possible [3]   16/4
17/4 17/12
potential [1]   15/2
potentially [1]
3/18
prejudge [1]   8/3
prejudged [1]   8/11
present [1]   17/11
pretty [3]   4/10 7/7
8/15
price [1]   11/5
prior [8]   9/10 9/11
9/21 10/2 10/19
11/5 11/7 11/13
privilege [11]   2/19
3/4 3/14 4/24 5/9
5/9 5/14 6/4 8/1
8/2 17/22
probably [1]   7/19
probe [2]   11/25
13/12
proceed [1]   6/8
proceedings [2]
18/6 19/5
process [5]   4/21
5/13 5/15 8/5 12/15
processed [4]   4/18
4/20 5/8 5/8
processing [1]   4/19
produced [4]   3/23
4/8 9/5 12/21
producing [1]   8/6
production [10]
3/21 4/2 4/5 4/10
4/11 4/14 5/5 5/6
5/25 6/5
productions [2]
3/22 4/14
propound [1]   14/17
provide [3]   12/7
12/20 13/20
provided [1]   9/22
purchase [1]   11/5
purposes [3]   9/24
10/3 10/18
put [3]   6/7 11/3
11/15
Putting [1]   6/9

**Q**

quash [1]   14/3
quickly [1]   6/19
quite [1]   9/18

**R**

raise [1]   8/17
re [1]   7/11
re-depose [1]   7/11
reach [1]   15/2
reached [2]   11/13
14/16
reacting [1]   13/14

**R**

read [1]   2/14
reading [1]   16/21
really [2]   5/3 6/20
reason [1]   15/6
reasonable [1]   14/8
reasonably [1]
 13/24
reasoning [1]   15/11
received [1]   3/25
recent [1]   7/25
record [1]   2/5
reference [1]   7/3
referenced [1]   7/25
referred [1]   13/15
refers [1]   4/16
reflect [1]   13/7
reflection [1]   13/9
refused [1]   11/15
regarding [2]   8/1
 14/2
related [2]   5/3
 6/19
relates [2]   2/17
 14/19
relation [1]   4/25
relevant [3]   9/12
 9/14 15/12
relied [1]   8/19
remaining [1]   14/12
remind [1]   16/7
remotely [2]   19/5
 19/9
reopen [1]   7/18
reopened [1]   8/8
report [4]   2/13
 2/21 8/24 9/1
reported [1]   19/5
Reporter [3]   1/22
 1/23 19/3
reporting [1]   19/9
reports [1]   12/2
represent [1]   11/22
representation [1]
 6/23
represented [1]
 11/14
request [6]   2/18
 3/5 3/9 3/10 5/4
 5/10
requests [9]   5/6
 6/5 9/6 15/5 15/8
 15/10 15/11 15/13
 15/14
require [2]   14/9
 14/15
requirement [1]
 5/19
requiring [1]   16/8
reserve [2]   12/14
 12/24
resolve [2]   17/2
 17/3
respect [4]   5/13
 8/2 15/4 15/14
respected [1]   4/17
respectfully [1]
 13/1
response [2]   9/5

11/20
responsive [6]   3/18
 4/20 9/6 10/4 10/12
 10/14
result [1]   15/24
reveal [1]   11/9
review [5]   3/18
 5/10 5/18 5/25 9/4
reviewed [1]   5/9
right [7]   6/22 7/21
 8/12 8/12 10/6
 12/14 12/24
rolled [3]   3/14
 15/10 15/11
rolling [1]   6/19
Room [1]   1/24
rowing [1]   15/23
Rule [1]   8/19
ruling [1]   7/14

**S**

same [1]   15/18
saying [5]   9/11
 12/11 13/6 14/16
 16/2
scale [1]   4/15
scheduled [1]   3/2
scope [1]   4/14
seem [2]   10/24
 13/16
seems [4]   7/4 7/6
 9/10 10/22
sense [2]   8/13 8/15
sentence [2]   9/1
 9/15
set [2]   12/12 14/11
sets [1]   16/21
several [1]   3/8
shaking [1]   11/6
short [1]   16/22
show [2]   8/22 10/12
signaled [1]   17/17
significant [3]
 7/10 7/14 7/19
similar [1]   16/14
sit [1]   12/15
six [2]   2/24 2/25
slated [1]   4/19
slightly [1]   3/9
slipped [1]   3/22
slow [1]   15/22
sole [1]   14/3
solely [1]   7/17
somehow [1]   4/18
somewhat [1]   13/23
specific [2]   10/16
 16/24
specifics [1]   13/12
started [2]   3/13
 3/17
state [3]   2/5 3/19
 9/9
STATES [2]   1/1 1/10
status [6]   1/9 2/3
 2/13 2/21 8/23 8/25
stick [1]   4/3
still [1]   4/12
stone [1]   12/12
Street [1]   1/14
 1/17

stuff [1]   9/25
subject [2]   12/23
 19/8
substantial [3]
 4/10 4/11 14/22
sufficient [1]
 13/11
suggested [1]   6/6
Suite [1]   1/17
supposed [1]   6/15
sure [2]   11/24 17/6
surprised [1]   12/1
SUSAN [2]   1/13 2/8
SW [1]   1/14
sweep [1]   14/13

**T**

tables [2]   16/15
 16/20
talk [4]   2/15 2/16
 4/15 9/22
talking [1]   18/4
team [1]   15/21
technological [1]
 19/9
teed [2]   2/14 17/19
telling [1]   12/15
terms [2]   6/11 9/22
the 270 [1]   5/1
therefore [1]   19/8
thinking [1]   13/8
third [4]   15/1
 15/23 16/1 17/5
though [2]   4/25
 16/21
thought [2]   13/4
 13/17
three [5]   2/14 2/21
 5/3 6/11 6/12
throughout [1]
 15/16
tiny [1]   15/7
today [3]   2/2 2/15
 17/19
Todd [1]   1/16
told [2]   4/10 7/24
took [2]   2/22 2/24
topic [1]   4/3
toward [1]   15/2
TRADE [4]   1/3 1/13
 2/3 2/7
transcript [2]   1/9
 19/4
transparent [1]
 5/12
trending [1]   15/1
tried [1]   15/19
true [2]   3/24 19/4
truly [1]   8/16
trust [1]   8/14
truthful [2]   10/1
 10/8
try [1]   17/3
trying [6]   5/24
 6/11 6/24 9/12
 10/15 16/10
turns [1]   12/2
two [1]   8/6

**U**

U.S [1]   1/23
under [1]   8/21
understood [4]
 13/13 14/18 17/8
 17/13
undertaking [1]
 5/10
UNITED [2]   1/1 1/10
unless [2]   11/16
 11/18
unlikely [1]   5/21
up [2]   2/14 17/19
upcoming [3]   2/16
 2/17 14/20
update [1]   3/25
use [1]   3/10
used [2]   9/23 10/3

**V**

valuation [9]   8/22
 9/3 9/9 10/2 10/8
 10/13 10/24 13/2
 13/9
valuations [8]   9/3
 9/11 9/23 10/17
 10/21 11/1 11/4
 11/6
value [1]   9/23
valued [1]   9/20
valuing [1]   10/20
vendor [4]   4/17
 4/18 5/7 7/16
VIDEO [1]   1/9
videoconference [1]
 19/8
viewing [1]   14/4

**W**

Washington [4]   1/5
 1/14 1/18 1/25
watch [1]   16/4
week [3]   4/16 16/5
 17/24
weeks [1]   2/21
Welcome [1]   2/9
well-respected [1]
 4/17
weren't [2]   4/20
 10/4
what's [3]   4/4 5/19
 10/1
WhatsApp [8]   9/3
 9/10 9/10 9/20 9/24
 10/9 10/20 11/6
whoa [1]   7/10
whole [1]   12/15
willing [2]   11/11
 11/18
witness [1]   2/25
wonderful [1]   6/20
word [1]   15/21
words [1]   6/15
work [1]   17/5
worried [1]   16/17
writing [2]   11/15
 12/20

**Y**

years [6]   8/6 13/2
13/4 13/8 13/10
13/18