1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

FEDERAL TRADE COMMISSION,,
3                                      Civil Action
                   Plaintiff(s),      No. 20-03590 (JEB)
4          v.
                                       Washington, D.C.
5    META PLATFORMS, INC.,
                                       February 9, 2023
6                  Defendant(s).

7    ----------------------------------------------------------

8             STATUS CONFERENCE HELD VIA ZOOM
            BEFORE THE HONORABLE JAMES E. BOASBERG
9                UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   FOR THE PLAINTIFF(S):  Daniel J. Matheson, Esquire
                            Susan Musser, Esquire
12                          Federal Trade Commission
                            Bureau of Competition
13                          400 Seventh Street Southwest
                            Washington, D.C. 20024
14

15   FOR THE DEFENDANT(S):  Geoffrey M. Klineberg, Esquire
                            Kellogg, Hansen, Todd, Figel
16                           & Fredrick, PLLC
                            1615 M Street Northwest
17                          Suite 400
                            Washington, D.C. 20036
18

19

20   REPORTED BY:           Tammy Nestor, RMR, CRR
                            Official Court Reporter
21                          333 Constitution Avenue NW
                            Washington, D.C. 20001
22                          tammy_nestor@dcd.uscourts.gov

23

24

25

 1   The following proceedings began at 3:02 p.m.:

 2             THE COURTROOM DEPUTY:  We are here today for a status

 3   hearing in 20-3590, Federal Trade Commission versus Meta

 4   Platforms, Inc.

 5             Beginning with counsel for the plaintiff, please state

 6   your name for the record.

 7             MR. MATHESON:  Good afternoon, Your Honor.  This is

 8   Daniel Matheson for the Federal Trade Commission.  I'm joined

 9   by my colleague Susan Musser.

10             THE COURT:  Good afternoon to both of you.

11             MR. KLINEBERG:  Good afternoon, Your Honor.  Jeffrey

12   Klineberg from Kellogg, Hansen on behalf of Meta Platforms,

13   Inc.

14             THE COURT:  Good afternoon, Mr. Klineberg.

15             All right.  So the good news, I suppose, is when I saw

16   the 55-page report, I guess the good news is there are only 6

17   disputes as opposed to, say, 40 as the weight of that seemed to

18   imply.  So I was relieved, I could say.

19             As a preliminary -- and I appreciate, again, everyone

20   teeing up the issues clearly for me.  Thank you very much.

21             As a preliminary matter, I'm just wondering -- I'm not

22   going to order this.  And I figure you folks are sophisticated

23   and experienced.  But to avoid the sort of you didn't send me

24   your section until 11:43 and we had to get ours done in 15

25   minutes, might it not be better to have a rule that says that

1  on the day the joint status report was due, that each side by,

2  say, noon would have to get their section to the other side?

3  And then I know you have these eager, young lawyers who are

4  happy to stay up past my bedtime to file these, but then

5  perhaps you could get them filed more readily by a reasonable

6  hour.

7          Again, I'm not ordering anything, but I encourage,

8  perhaps, people to adopt some kind of protocol like that

9  because I think it would -- I understand it's hard to put this

10  together when you get the other side's at the last minute, but

11  I'm also not terribly interested in reading the details of when

12  each person got the other side.  I throw it out there.  You

13  don't need to comment.  You can just consider.

14          All right.  So let's go down the list.  Let's start

15  with the FTC list.  And so the first is the FTC would like me

16  to rule that investigative hearing testimony be treated the

17  same as 30(b)(6).

18          And Meta's response is that it wants the FTC to agree

19  not to reexamine the witnesses with respect to the same topics.

20          So I guess, and I could well be missing something

21  here, but why, Mr. Matheson, can't you just say at the

22  beginning of each deposition, do you, Mr. Witness, adopt the

23  testimony that you gave in your investigative hearing testimony

24  as testimony here today, or even the both of you, both sides,

25  could just stipulate that the testimony that was given in the

investigative hearing can be adopted as the testimony here today?

And then we wouldn't have this debate about, well, is it the same topic, is it the same question.  You could then follow up.  You wouldn't be precluded, either side wouldn't be precluded from asking -- and I guess this is really more of an FTC issue.

You wouldn't be precluded, Mr. Matheson, from exploring further issues that were in the investigative hearing.  I certainly wouldn't bar that.  But why couldn't you just get the witness to adopt and then move from there as opposed to requiring some order from me?

MR. MATHESON:  Your Honor, thank you.

That would solve all of the evidentiary issues.  I think there's a little bit of a disconnect between what we have proposed and what the other side is attempting to paint this as.

We are not trying to solve an evidentiary problem. What we are trying to solve is we don't want to depose two of their executives.  We took their IHs.  We don't want to depose them.  We just want some certainty that, at the hearing, it doesn't matter if testimony was given in an IH or in a deposition, it will be treated according to the same whatever guidelines you want to provide for how we are going to put that in front of the Court.

1              Some courts like to have deposition designations done

2    solely in written form because that's more efficient.  Some

3    courts want to have you read it out loud or play the video.  We

4    are just asking that it's all treated the same.  There are no

5    evidentiary issues that need to be resolved right now.

6              We have plenty of precedent that proceeds exactly as

7    Your Honor has suggested.  For example, in the activist case,

8    that's exactly what happened.  Witnesses were just asked to

9    adopt their IH testimony.  That solved evidentiary problems.

10   But it was still up to the trial court to decide whether it

11   wanted that testimony presented live, through lawyers reading

12   it or on the papers or through videotape.

13             So that's all we are asking the Court to decide.

14             THE COURT:  But can't we decide that issue later?  In

15   other words, if -- I mean, I will sort of figure out when it

16   comes time for that, if and when we get there, how I want that

17   read.  But if it's not an evidentiary issue, then I'm -- it is

18   testimony under oath, and it's admissible, so I'm still missing

19   what you require here, in other words, what you need now.

20             MR. MATHESON:  Again, Your Honor, all we are looking

21   for now is a statement that it doesn't matter if the testimony

22   was taken in IH or a deposition, however -- or a Rule 30

23   deposition.  However Your Honor decides to treat Rule 30

24   depositions will also apply to IHs.

25             THE COURT:  Okay.  So, Mr. Klineberg, what is your

1    issue with this?  I had thought that it was more of a, well,

2    you don't want to -- sort of trying to save time in depositions

3    and how it would be treated so as to save time in depositions.

4         MR. KLINEBERG:  Well, Your Honor, the FTC asked us to

5    stipulate that the investigational hearings should be treated

6    as depositions, as Rule 30 depositions.  In exchange for our

7    voluntary agreement to do that, we asked that the FTC commit to

8    not reexamining the same witnesses on the same topics with the

9    same documents, and they refused to make that commitment.  So

10   we have no agreement.  There is no stipulation on this.

11        We agree, though, to the extent that the FTC wants to

12   have these investigational hearing transcripts admitted into

13   evidence, then the FTC is free to seek their admission if and

14   when a trial in this case happens, and through the ordinary

15   application of the federal rules of evidence.  But there is no

16   reason, I think, for the Court to address this now, in our

17   view.

18        THE COURT:  So, Mr. Matheson, it seems that you are

19   saying you don't want to have to -- for example, what you just

20   said, you don't want to have to depose a couple of these

21   executives because you've already had the investigative

22   hearing, but the only reason you would have to do so is sort of

23   as a belt and suspenders, I guess, if the IH transcripts

24   weren't being treated as depositions, right?  But it seems like

25   Meta is agreeing that that's fine.

1              MR. MATHESON:  Your Honor, they are not.  They have

2    said -- they are attempting to get -- they are attempting to

3    extract from us exactly what Your Honor rejected, quite

4    appropriately, when we negotiated the original joint scheduling

5    order.

6              They want a requirement that we can't ask the

7    witnesses about the same documents even though we know a lot

8    more now and we are exploring topics in different ways.  Your

9    Honor expressly rejected that a year ago, and you should reject

10   it again.  We are trying --

11             THE COURT:  Okay.  Hold on.  Hold on.

12             It seems, and I'm not -- there's nothing wrong with

13   this, but it seems that there are sort of two different issues

14   here.  One, I heard you to say we don't want to have to depose

15   these people because we have gotten what we need in the IHs.

16   And the other is, to the extent we do want to depose others, we

17   shouldn't be precluded from reexploring some of the issues.

18   Are those both true?

19             MR. MATHESON:  Those are both true, Your Honor.  We

20   think you already resolved the first one in this case.  And we

21   think if there was any attempt to restrict the FTC's

22   questioning, all that is going to happen is we are going to

23   fight about whether a line of questioning has been explored.

24             I have a very concrete example that might illustrate

25   this.  We just redeposed on Monday of this week a gentleman who

1    used to be a former high-level executive of Meta who we also

2    took his IH.  We got that deposition --

3              (There was an interruption by the court reporter.)

4              MR. MATHESON:  We got that deposition done in about

5    three and a half hours.  We are moving quickly.  We are not

6    needlessly retreading ground.  We have no incentive to do so.

7    We just don't want a rule that's going to cause fights on the

8    record between counsel at a deposition about whether we are

9    asking about a topic that was already covered in IH.

10             THE COURT:  Hold on, Mr. Matheson.

11             So, Mr. Klineberg, doesn't sort of the first bucket

12   that I talked about, don't you prefer that result, in other

13   words, where they say, look, we had the IH, we don't want to

14   have to depose them again, let us use the IH?  That seems to

15   help you too because you don't have to subject your people to

16   another IH, right?

17             MR. KLINEBERG:  Absolutely, Your Honor.  If the

18   stipulation were stipulate to these two IHs being treated as

19   depositions so that we don't have to take the depositions of

20   these two witnesses, that would be a very different

21   conversation.

22             That was not the offer.  The offer was a blanket

23   stipulation that all IHs be treated as depositions.  And that's

24   far beyond what we feel we ought to and need to agree to.

25             THE COURT:  But why?  What's the prejudice to you if I

1  do that?

2       MR. KLINEBERG:  Well, the prejudice by just simply

3  designating all IH depositions -- all IH transcripts be treated

4  as depositions?

5       THE COURT:  Right.

6       MR. KLINEBERG:  I think the concern simply is that we

7  want to try to minimize the extent to which our witnesses are

8  subjected to harassment and additional questioning, repetitive

9  questioning, trying to catch them in inconsistent statements

10  about the same document that was -- that they testified about

11  three years ago.  And this is such an unusual situation where

12  you are redeposing effectively a whole set of executives again.

13       THE COURT:  But didn't I rule earlier that I wasn't

14  going to preclude the government from deposing people they had

15  an IH of?

16       So in other words, it sounds like --

17       MR. KLINEBERG:  You did, Your Honor.  And we are not

18  suggesting to revisit that.  But they have come to us.  They

19  have asked us for our voluntary agreement to have these IHs

20  treated this way.  And we don't find that to be in our interest

21  unless we can get some guarantee that we are not going to have

22  to subject our witnesses to the same --

23       THE COURT:  Yeah.  I mean, I guess I think they've got

24  the better of this argument, because I think that either you

25  are all saving time because they are not going to depose the

```
1    people and that's in everybody's interest, or to the extent

2    they are going to depose people, I have already ruled that they

3    can.

4         So I feel like you are either seeking a

5    reconsideration of that or trying to leverage something that

6    really benefits everybody to help Meta.

7         All right.  I will order that IHs be treated the same

8    as depositions, but I am not going to otherwise -- I'm not

9    going to limit, beyond what I have already said, the FTC's

10   ability to depose as before.

11        Okay.  No. 2, joint stipulated deposition protocol, I

12   think that's -- everyone agrees with that, so that's fine.

13        So do you folks, just mechanically, do you want to

14   just send me an order that then I will sign that then enters

15   that, or do you think I can do that even more easily,

16   Mr. Matheson?

17        MR. MATHESON:  It was our understanding that you could

18   simply sign what was submitted as ECF 227-1.  But if it would

19   be easier to simply send a proposed order, we can do that, Your

20   Honor.

21        THE COURT:  All right.  It's ECF 227-1.  I will sign

22   it.

23        Mr. Klineberg, you are okay with that?

24        MR. KLINEBERG:  Yes, Your Honor.

25        THE COURT:  Great.  Okay.  So No. 3 and 4 are a little
```

1   bit linked, issues No. 3 and 4.  They relate to FTC

2   interrogatories 8 and 9, that FTC wants Meta to provide a

3   complete response to interrogatory 8 and a narrative response

4   to interrogatory 9.

5         So here's what I would propose, Mr. Matheson, and I

6   will hear you on this.  Meta has said that they expect to

7   produce documents in response to interrogatory No. 8, that that

8   will be in lieu of giving an answer, that as they are allowed

9   under the rules, they produce documents that would provide

10   their answer.

11         And then on 9, they are saying they are also going to

12   produce documents, but you are saying they can't possibly

13   answer 9 with just a production.

14         So it seems to me the wiser thing to do -- and this

15   production is set for February 28.  It seems to me the wiser

16   thing to do is let them produce on February 28, and then if

17   you're unhappy with what they have produced, and,

18   Mr. Klineberg, you would have to produce -- on 9, you would

19   have to produce documents or give a narrative.

20         And then if you still don't think it's acceptable,

21   Mr. Matheson, then you could so indicate in your March 15

22   status report.

23         But it seems premature for me to say you have to

24   provide a complete answer and a certification, and they are

25   saying, we are, we are doing it by documents.  It just doesn't

 1   seem that for me to jump in now makes sense, but I will hear

 2   the FTC on that.

 3        MR. MATHESON:  Your Honor, could I allow my colleague

 4   Ms. Musser to address this one?  She's been closer.

 5        THE COURT:  Please.

 6        MR. MATHESON:  Thank you.

 7        MS. MUSSER:  Good afternoon, Your Honor.  I think a

 8   little context here is actually pretty helpful.  The heart of

 9   the FTC's rog 8 has three components, an identification of the

10   provider, the cost associated with the provision of the

11   services, and the dates of those services.  We have been asking

12   for the same information since August 12 which we narrowed in

13   response to their burden claims.

14        We have been -- we have tried to tee this up three

15   times, and each time we have been promised a full and complete

16   response only to get a facially deficient response.

17        So now this is the third time that we are hearing the

18   same thing, Your Honor.  You are going to get a response, and

19   it's -- and you should wait for that.

20        But respectively, given the length of time that's

21   passed, we have already lost the opportunity to get -- to ask

22   Meta witnesses about its response to rog 8.  And having a wait

23   and see response is just going to further prejudice the FTC

24   here.

25        I think this is particularly true because when you

```
 1    look at Rule 33D, it says that you can identify documents, but
 2    only if the burden is substantially the same on both parties.
 3           Here it isn't.  It's not fair to say, FTC, you should
 4    dig through, quote, hundreds of contracts to see if this is a
 5    sufficient response.  These are Meta's contracts.  This is
 6    Meta's information.  And they should be able to tell us, as we
 7    asked, that this provides a complete response, which not only
 8    identifies a provider, but also the cost and the dates of
 9    service.
10           And we just don't see how those contracts can do this.
11    And if we have to wait another month and a half, we are almost
12    at the end of fact discovery, and we just can't make up that
13    time.
14           THE COURT:  Mr. Klineberg?
15           MR. KLINEBERG:  Interrogatories No. 8 and 9 are
16    extraordinarily broad, Your Honor.  And we are trying very hard
17    to sift through an enormous amount of material in order to
18    respond to both of these interrogatories.
19           Objectionable content is defined to include an
20    extraordinary range of issues that appear on Meta's platform,
21    whether it's child endangerment information and pornography or
22    hate speech or intellectual property violations, bullying,
23    terrorism.  These are all handled by different groups within
24    the company.  And there are 15,000 contractors, more than that,
25    in fact, who review this material.
```

1          So I say this only to convey what an extraordinarily

2    burdensome interrogatory this is, for us to try to identify

3    every single contractor from 2009 to the present who has been

4    paid and how much they have been paid every quarter in that

5    time.  That's interrogatory 9.

6          Interrogatory No. 8 includes, not just contractors,

7    but all of the systems and other services that we employ.

8          So we are trying very hard to respond to this.  And it

9    is taking longer than we would like, but it is still something

10   that we are trying very hard to do.

11         With respect to the contracts, I think you're exactly

12   right.  We are trying to produce these contracts.  We think

13   those will contain the information that the FTC is seeking.  To

14   the extent that they don't, they can pursue further inquiries

15   with us.

16         You know, mid-March is not -- or the end of February

17   is not the end of fact discovery.  Far from it.  There are

18   three more months to go.

19         So I don't see this as -- the dispute here is very

20   narrow.  And as you say, it is premature.  We are still trying

21   very hard to produce these documents by the end of this month.

22         And with respect to interrogatory No. 9, we are not

23   sure yet exactly what we can put our hands around and what we

24   have.  And that's still something that we are hoping to provide

25   them next week with a little bit more detail as to what we can

```
 1   do and when we can do it.  But these are not --
 2            THE COURT:  Again, this is --
 3            MR. KLINEBERG:  These are not --
 4            THE COURT:  I understand.  This isn't easy.  And I'm
 5   sure that you folks could have many more disputes brought to
 6   me, so I appreciate the fact that this is a reasonably limited
 7   universe.
 8            I think I am going to give Meta until the end of the
 9   month to either produce or give a response.
10            And then, Ms. Musser, if you think that that's still
11   deficient, I will hear you in the middle of March, and we will
12   again have a status and address it.  But I think that's the
13   wiser course on that.
14            MS. MUSSER:  Your Honor, if I may?
15            THE COURT:  Sure.
16            MS. MUSSER:  Could I respectfully request that that
17   response provide some certification that it's a complete
18   response, at least from their standpoint?
19            THE COURT:  Right.  Mr. Klineberg?
20            MR. KLINEBERG:  Well, they are entitled to a
21   verification under Rule 33 that will say that it's an answer
22   to -- it's a complete answer, as far as we know at that point,
23   to the interrogatory, but we may well have information that we
24   learn later that we need to supplement.
25            So I think in terms of a complete response, I am not
```

1  sure -- that's not what the rule requires.  So I'm not sure

2  what exactly is being asked of us.

3         MS. MUSSER:  Your Honor, if I may clarify?

4         THE COURT:  Sure.

5         MS. MUSSER:  What would be helpful is if Meta can

6  provide transparency that they have answered the response to

7  the best of their ability at this point.  And if in their view,

8  given that it's their contracts, that it does not contain

9  particular types of information that we have explicitly

10  requested such as the dates of service or the amount of money

11  spent, that they tell us at the time they produce it so we can

12  move this forward in an expedited fashion given kind of where

13  we are in the eight months that have lapsed since --

14         THE COURT:  I think what's reasonable, Mr. Klineberg,

15  is for you to say either this is all we got, or this is

16  everything we've gotten from A through R, but S through Z we

17  are still getting.  But then there will need to be a compelling

18  reason why that hasn't been produced at this point.

19         MR. KLINEBERG:  Okay.

20         THE COURT:  Okay.  So the next is the disputes brought

21  to me regarding third parties by February 21.  And that's fine.

22  I think it's helpful, as you both agree, to have told third

23  parties, look, the judge, you got an issue, he needs to hear it

24  by X date.  And that's fine.  But I am a little bit unclear.

25  Are you asking that I -- what precisely do you want me to

1   order, that if a third party has a dispute, they must raise it

2   with me by February 21, in other words, they must file

3   something with me by February 21?  Is that the issue,

4   Ms. Musser or Mr. Matheson?

5           MR. MATHESON:  I'll take that one.  Thank you, Your

6   Honor.

7           Our request was to essentially duplicate the process

8   that we thought worked before.  We have actually, we believe,

9   resolved the particular dispute we were worried about, so we

10  are hopeful that we will do the same thing we did last time,

11  which is just file a notice with the Court that at the moment

12  we don't have an outstanding dispute.

13          Our concern is, and this feeds into the other issues,

14  we just need to know that documents -- that third parties are

15  making commitments to produce documents by dates certain.  And

16  we are in that boat.  We want to make sure Meta is in that boat

17  as well.  And if they have outstanding disputes with third

18  parties, they should be raised quickly so we can get the

19  documents.

20          THE COURT:  In other words, so I would say that if

21  this is a dispute with a third party, then the movant needs to

22  file something with me, again redoing these three-page briefs,

23  by February 21.  Is that fair enough, Mr. Matheson?

24          MR. MATHESON:  Yes.  That would be very helpful, Your

25  Honor.  Thank you.

```
 1            THE COURT:  Mr. Klineberg, you are okay with that?

 2            MR. KLINEBERG:  I'm not sure I completely understand,

 3    Your Honor.  We are fine if the purpose is to have sort of an

 4    omnibus hearing that you had last month, I guess, that did, I

 5    think, do a very effective job at concentrating everyone's mind

 6    and getting these resolved.

 7            What I'm concerned about and one thing we very much

 8    resist is any deadline for the end of discovery for third

 9    parties or --

10            THE COURT:  Sure.  And that's -- and you're right that

11    both of those issues were in No. 5.  I didn't explicitly say

12    I'm teasing them out, but I am teasing them out.

13            MR. KLINEBERG:  Okay.  Understood.

14            THE COURT:  So half of that -- and so what this would

15    be -- and you're right.  What we did, I think, last time was we

16    said, here's a date by which anyone's got to file, and then

17    here's a date for a hearing.

18            We can put the hearing date off now to see if we

19    actually get any of this.  But we could say that anyone who's

20    got to file, if they've got a dispute, if there is a dispute

21    with a third party, that that dispute needs to be brought to my

22    attention by February 21.  And then if there are disputes, then

23    we will set a hearing soon thereafter for that.

24            So, Mr. Klineberg, you are okay with that?

25            MR. KLINEBERG:  I think so.  I guess I wasn't focusing
```

1    on the date precisely, whether February 21 is the right date

2    for this, but if that's --

3            THE COURT:  I mean, I think the idea was to put some

4    pressure on everybody.  If you're saying there should be a

5    different date, I'm happy to hear you on that.

6            MR. KLINEBERG:  Right.  I mean, my sense is that

7    having a deadline for a hearing is useful, and I think -- I

8    guess I haven't thought about the date, but I think the date

9    may well be fine.

10           THE COURT:  Okay.  So then the second piece of 5 and 6

11   was the FTC's desire that parties use best efforts to achieve

12   by March 15 substantial compliance with document requests

13   served on nonparties and that all nonparty deposition subpoenas

14   be served by February 28.

15           Mr. Matheson, I think, I'm trusting this was just an

16   oversight or just something you implied or assumed, that on

17   No. 6, where you talk about deposition subpoenas by

18   February 28, it didn't say nonparties, but I assume that's what

19   you mean by that.  Right?

20           MR. MATHESON:  That is what we mean, Your Honor.  We

21   were attempting to be --

22           THE COURT:  Sure, economical, good.

23           I guess I am sort of in the same place I was earlier

24   when the FTC pushed me to pick earlier dates that things had to

25   be done by.  And I think particularly, as Meta points out, to

1    sort of require deposition subpoenas by February 28, if they

2    don't even have the documents by March 15, isn't that putting

3    the cart before the horse, Mr. Matheson?

4          MR. MATHESON:  Respectfully, Your Honor, as you point

5    out, we raised this in October.  And you told us to come back

6    in January and February so you could reevaluate.  So we are

7    just attempting to address exactly what the Court asked us to

8    do.

9          In our view --

10         THE COURT:  You have a better memory than I do.

11         MR. MATHESON:  It's on page 17 of the

12    (unintelligible), Your Honor.

13         And we are just attempting to make sure that both

14    parties have their deposition subpoenas out the door as quickly

15    as they can.  We think the end of the month is a very good

16    target to use best efforts.  Obviously there can be exceptions.

17    Because we are running into a major logjam of depositions.  We

18    are having a very difficult time getting their witnesses to

19    commit to deposition dates and hold them, and we are having a

20    very difficult time getting third party deposition dates

21    because the calendar is already full.

22         Meta has only noticed and actually scheduled two third

23    party depositions in this entire case.  They don't even happen

24    until February 23 and February 24.  There just isn't going to

25    be enough time to take these depositions if we are serving

1   deposition subpoenas in March and April.  That's our concern,

2   Your Honor.

3          THE COURT:  Mr. Klineberg?

4          MR. KLINEBERG:  Your Honor, we have a fact discovery

5   deadline that we have been working towards, and it would

6   significantly prejudice Meta's ability to get the discovery it

7   needs to cut short the time we have remaining to complete

8   discovery.

9          The FTC has already represented to this Court that it

10  has little need for third party discovery.  So this deadline

11  really only hurts Meta.

12         We have every incentive to try to get these document

13  productions in as quickly as possible.  And we are in the

14  process of figuring out exactly who to subpoena for

15  depositions, and I promise those will be out soon.

16         But the idea of an artificial deadline months before

17  the end of fact discovery closure just -- it would seriously

18  prejudice our ability to do the discovery that we need.

19         THE COURT:  I am not going to make you do it at this

20  point.

21         Mr. Matheson, I appreciate your coming back, and there

22  may -- you folks are going to be busy.  I'm sure you are busy

23  now.  But you will be busy on these depositions come spring.

24  But I think it's premature to force them into this at this

25  point.

1          Okay.  So then the last issue is Meta's issue about

2     compelling the FTC to respond to interrogatories 13 and 14.

3          And I guess part of my question, Mr. Klineberg, is

4     why -- this sort of seems somewhat of a difficult route to

5     proceed to obtain this information.  I understand it's

6     important information, but why isn't this more easily obtained

7     via 30(b)(6) deposition or expert reports or depositions?  It's

8     sort of a why-type interrogatory.  I'm just wondering if it's a

9     blunter instrument than you need use to obtain this

10    information.

11         MR. KLINEBERG:  Well, Your Honor, certainly we will be

12    taking depositions of experts and reviewing their expert

13    reports.  So that certainly is something we are obviously very

14    keen on doing when that's appropriate.  But this is part of our

15    continuous effort to understand the case we are trying to

16    defend against.

17         The FTC has shifted its theory at least once so far,

18    and we are entitled to know what facts support the FTC's

19    categorization of products that are included in the market and

20    those that are excluded from the alleged market.

21         So let me, just for an example.  How is it that a

22    consumer who communicates with strangers in a Facebook group

23    that is dedicated to, say, long-haired dachshunds is doing

24    something materially different from a consumer who communicates

25    with strangers in a Reddit community dedicated to long-haired

1  dachshunds?  And what facts demonstrate that these two products

2  are not reasonable substitutes for one another?  That is what

3  we need to know.

4       What the FTC has essentially told us is that they are

5  different and not substitutes because one occurs on a Facebook

6  platform and the other occurs on Reddit's platform.

7       We genuinely need to know what specifically makes

8  these seemingly identical activities so different that a

9  consumer who's unhappy with her experience in the Facebook

10 group would nevertheless be constrained from switching to the

11 Reddit community.

12       THE COURT:  Let me say, because I've been well

13 acquainted with these issues since the onset of the case, that

14 the market, what is the market and who's in it and why, is a

15 huge issue in this case and will be a huge issue in summary

16 judgment, I'm sure, and a huge issue at trial if we get there.

17       I guess the question is why don't you think what the

18 FTC has done so far is enough that it can't be then

19 supplemented in via experts or depositions?  And maybe the

20 answer is, this is such a critical issue, we want to pin them

21 down every way we can, we want all discovery tools at our

22 disposal.

23       MR. KLINEBERG:  There's no question that we would like

24 to, I wouldn't say pin them down, but I would say receive their

25 thoughtful and careful response with respect to the facts that

 1    they have in their possession at the moment.  Of course they

 2    can always supplement if they learn something more.

 3           But what they shouldn't be allowed to do is to answer

 4    with a tautology, which is what they have done so far, right,

 5    that Facebook groups or Instagram reels are not substitutes for

 6    Reddit communities or TikTok short form videos because the

 7    former are on a platform owned by Meta, and the latter are not.

 8           That's the essence of what they have said so far.

 9    What we need to know is what are the facts that make that

10    distinction meaningful, and they haven't provided those.

11           THE COURT:  The reason, Mr. Matheson, I'm not going to

12    have you respond now in part is because you gave me a lengthy

13    response in the status report.  I think I need to have this

14    briefed.  Again, I think it's a very -- I agree, both sides,

15    that it's a very important issue in the case, and it's an

16    important issue in discovery.  But I think I need to hear more

17    about -- particularly about why the FTC's response isn't

18    sufficient.

19           I don't think you need to tell me why, Mr. Klineberg,

20    this is an important issue or why it's a relevant

21    interrogatory.  I got that.  What I want to know is why is

22    their response not sufficient.  And then from the FTC why it

23    is.

24           So I want to brief this.  I am going to have Meta file

25    its motion, which would -- it can be in the form of a motion to

1    compel, no more than 20 pages, 20 pages for the opposition, 10

2    pages for reply.

3         I would like to -- I know we would like to move this

4    along.  Mr. Klineberg, you tell me.  What's a reasonable date

5    for you to submit?

6         And again, it's obviously your information that you

7    want, so you have the incentive to move it along.  So if you

8    want to take longer, that's fine.  It's just you understand

9    it's going to take longer for you to get the material.

10        MR. KLINEBERG:  Understood.  Since I will be

11   committing the efforts and time of others --

12        THE COURT:  Tomorrow would be good?

13        MR. KLINEBERG:  Right.  Exactly.  What about this

14   afternoon?

15        Why don't we -- perhaps I could suggest that we would

16   do it sort of towards the end of next week.  But I guess the

17   question is, do you need to set a firm date, or it could just

18   be a date --

19        THE COURT:  Okay.  Fair enough.  I won't set a firm

20   date.  Then whenever you can file it -- Mr. Matheson, if I give

21   you ten days to oppose, especially given you've already gotten,

22   I assume, what's going to be a chunk of that brief in, is that

23   sufficient?

24        MR. MATHESON:  We prefer 14, Your Honor, just so if

25   they file on a Friday, we don't lose a couple days and it's

1    reciprocal.

2         The one request we would make, Your Honor, as we

3    pointed out in our papers, is for them to tell us what question

4    they want us to answer.  We have told them which applications

5    are in the market and which are not.  They seem to want to know

6    why.  We have told them why.  We have cited evidence.

7         We want -- we think it's their obligation to make

8    clear to the Court what more do we need to do other than

9    provide an explanation with which they clearly disagree.  They

10   disagree with our market definition approach.  We think they

11   should have to clarify what the FTC has to do other than tell

12   the Court how we have defined the market to this point prior,

13   as Your Honor points out, to the benefit of expert testimony.

14        I really don't know what more we can tell them.  They

15   just don't buy what we are selling.

16        THE COURT:  All right.  Let's all take a look.

17        All right.  I will give you 11 days to oppose, 5 for

18   the reply because I would like to keep this going.

19        All right.  So I think that those were all the

20   disputes that were teed up in the report.

21        Mr. Matheson, am I missing any?  Is there further

22   guidance you need on something else?

23        MR. MATHESON:  We anticipate there will unfortunately

24   be more disputes in front of the Court next week, but I don't

25   think we need to tee those up right now.  We did explain to the

1    Court how the parties intend to resolve the privilege issues.

2    We hope the Court was satisfied with that resolution where they

3    rereviewed a chunk of the investigational log.  We are now

4    engaged in exactly the same fight over the log they produced in

5    the litigation.  We don't have enough information from them to

6    identify who the lawyers are and who the third parties are on

7    that log, but we intend to do exactly the same thing.

8            And so if that was an approach Your Honor thought was

9    reasonable, either we are going to reach resolution with Meta

10   on a similar approach next week, or we will be in front of the

11   Court again.

12           THE COURT:  Okay.  But you are talking about

13   resolution we reached on the sampling last time?

14           MR. MATHESON:  As we reported, Your Honor, their

15   reversal rate on the sample, again, exceeded 70 percent.  So

16   rather than have us haul them back in front of the Court, they

17   agreed to rereview about 96,000 documents that came from the

18   files of important custodians and fell into the problematic

19   categories.

20           So we think that was reasonable of us because they

21   still haven't rereviewed about 260,000 documents that there is

22   every reason to believe that they have an error rate of 70

23   percent of spurious privilege claims, but we view those as less

24   important and so we took what we could get.

25           We intend to do the same thing with their log that

1  they produced in the litigation.  We think there's reason to

2  believe again there are tens of thousands of documents where

3  they haven't identified attorneys and that they need to go back

4  and conduct a, if not complete, near complete rereview for the

5  important custodians.

6          THE COURT:  Again, I think we did do that via sample,

7  and last time I thought that -- again, it seems like that's

8  continued to work well.  So, Mr. Klineberg, do you have any

9  reasons to think that it isn't?

10         MR. KLINEBERG:  Well, Your Honor, we dispute a lot of

11 what Mr. Matheson just said in terms of the error rate.  But

12 one thing that is clear is that we will be producing a

13 supplemental log as a consequence of the review of those

14 documents, I think, that we described last time that a vendor

15 error had identified a certain number of documents that we had

16 not been able to review and we have now -- we are now in the

17 process of reviewing those.  Those are scheduled to be produced

18 in a week or so, and then we will be providing a supplemental

19 log which will be a cumulative log.

20         And, you know, while we agree that there are some

21 issues with the log that got produced, we are intending to

22 correct a lot of those.  So I am hoping that Mr. Matheson might

23 be able to wait and see what the revised log looks like before

24 complaining about it, and then we can go from there.  And there

25 may well be disputes about some aspects of the log at that

1   point, but we will be providing a revised log shortly.

2           THE COURT:  All right.  Other issues that you had for

3   today?

4           MR. KLINEBERG:  Your Honor, the only question I had

5   was whether you find it useful to receive in the status reports

6   reports on issues on which there is no dispute.  In other

7   words --

8           THE COURT:  Good question.  And not terribly.  I

9   appreciate the fact that you folks are keeping me apprised as I

10  asked you to keep me apprised through discovery, but I'm not

11  committing that to, well, they are behaving well on these

12  categories.  It's more helpful to me to just tee up the

13  disputes.

14          MR. KLINEBERG:  Right.  I think it would certainly

15  lead to shorter status reports.

16          THE COURT:  Then I'm definitely for it.

17          MR. KLINEBERG:  Okay.

18          THE COURT:  Okay.  Good.

19          All right.  Thank you all very much.  Ms. Musser,

20  Mr. Matheson, Mr. Klineberg, I'm sure I will hear from you.

21  And I will get an order out this afternoon that memorializes

22  what I just held today.  Thanks, everyone.

23          (The hearing concluded at 3:42 p.m.)

24                          - - -

25

C E R T I F I C A T E

      I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.


2/13/23              s/ Tammy Nestor
                     Tammy Nestor, RMR, CRR
                     Official Court Reporter
                     333 Constitution Avenue NW
                     Washington, D.C. 20001
                     tammy_nestor@dcd.uscourts