# EXHIBIT A

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION,

          Plaintiff,

        v.

META PLATFORMS, INC.,

          Defendant.

Case No. 1:20-cv-03590-JEB

**PLAINTIFF FEDERAL TRADE COMMISSION'S SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO DEFENDANT META'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP") and the
Joint Scheduling Order (the "Case Management Order" or "CMO") entered on March 3, 2022
(Dkt. No. 103), Plaintiff Federal Trade Commission ("FTC" or "Plaintiff") submits these
Supplemental Objections and Responses to Defendant Meta Platforms, Inc.'s ("Meta") Second Set
of Interrogatories to the Federal Trade Commission ("Interrogatories"), dated October 17, 2022.

**GENERAL OBJECTIONS**

1.      The FTC incorporates by reference all of its General Objections in its November
16, 2022 Objections and Responses, and its January 10, 2023 Supplemental Objections and
Responses, to Defendant Meta Platforms, Inc.'s Second Set of Interrogatories.

2.      While the FTC responds here to the best of its present ability after a reasonably
diligent inquiry, discovery in this matter is ongoing, the parties may meet and confer further
regarding these Interrogatories, and the FTC reserves its right to supplement, revise, or correct any
of its responses pursuant to Fed. R. Civ. P. 26(e).

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

3.      Each of these General Objections is incorporated into the FTC's response to each of the individual Interrogatories as though fully set forth therein.  The FTC will not respond to the Interrogatories to the extent objected to except as set forth herein.

## SPECIFIC OBJECTIONS AND RESPONSES TO SELECTED INTERROGATORIES

**INTERROGATORY NO. 13:**

*For each feature or activity that You include within the definition of "personal social networking" in Your Feature or Activity Response such that time spent on the feature or activity counts as time spent using a "personal social networking service," state whether use of that feature or activity or similar feature or activity counts as time spent using a "personal social networking service" when the feature or activity is used or performed on Snapchat, Google+, MeWe, Path, Friendster, Myspace, or Orkut, and explain why or why not.*

**RESPONSES AND OBJECTIONS TO INTERROGATORY NO. 13:**

The FTC objects because "Interrogatory No. 13" poses at least seven separate and discrete Interrogatories or discrete subparts, and thus constitutes at least the twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, and thirty-first interrogatory served by Meta: (1) features or activities used or performed on Snapchat, (2) features or activities used or performed on Google+, (3) features or activities used or performed on MeWe, (4) features or activities used or performed on Path, (5) features or activities used or performed on Friendster, (6) features or activities used or performed on Myspace, and (7) features or activities used or performed on Orkut.  As "Interrogatory No. 13" purports to require the FTC to assess, for each of the seven products identified, all features or activities included in "personal social networking" in its "Feature or Activity Response," a list which included 270 features or activities identified by Meta, and then separately to explain the rationale for its assessment of each feature or activity, Meta's "Interrogatory No. 13" in fact includes nearly 4,000 separate discrete subparts.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

The FTC further objects to "Interrogatory No. 13" as premature because it seeks information and evidence subject to ongoing factual discovery, which is not scheduled to close until May 22, 2023, and because it seeks information and evidence which may be the subject of expert discovery, which is not scheduled to close until January 5, 2024.  The FTC also reserves the right to supplement its response to this contention interrogatory, including through ongoing factual discovery and the provision of expert reports appropriately submitted pursuant to the stipulated schedule for expert discovery.  The FTC further objects to "Interrogatory No. 13" to the extent that it seeks to discover information and communications, including any mental impressions of counsel, that are protected from disclosure due to the work product privilege, deliberative process privilege, and any other applicable privilege.

The FTC objects to the terms "feature" and "activity," and to the phrases "similar feature or activity" and "feature or activity or similar feature or activity . . . when the feature or activity is used or performed on Snapchat, Google+, MeWe, Path, Friendster, Myspace, or Orkut," as vague, ambiguous, overly broad, and unduly burdensome.  Each of the 322 features/activities identified by Meta in its August 22, 2022 List of Features or Activities for Classification ("Meta's List") are specific features/activities with their own specific implementation and functionality provided to users via specific locations (e.g., Watch, Marketplace, Reels, etc.) within specific Meta applications (Facebook, Instagram, Messenger, and WhatsApp).  Snapchat, Google+, MeWe, Path, Friendster, Myspace, and Orkut are each distinct third-party applications, which each possess and offer users their own set of features/activities with their own implementations and functionality.  Meta's request fails to identify any specific features/activities available on any of these applications, and it also does not identify which, if any, of such features/activities it wants classified based on allegedly being the same or similar to

3

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

features/activities available on Meta's applications.  While Meta directs the FTC to the set of 270 features/activities on Meta's applications identified in the FTC's "Feature or Activity Response," Meta makes no effort to identify whether, and to what extent, these seven third-party applications allegedly offer the same or similar features/activities.

Further, the FTC has not presently: (a) attempted to exhaustively catalogue every feature/activity available on these seven third-party applications, (b) made hundreds of individualized determinations of whether, and to what extent, each such feature/activity bears some similarity, if any, to one or more of the 270 features/activities on Meta's applications identified in the FTC's "Feature or Activity Response," or (c) individually assessed and classified some yet undetermined number of features/activities on each of these seven third-party applications as part of or not part of a personal social networking offering.

The FTC further objects to the implied comparison between, on one hand, the 270 features/activities on the Facebook, Instagram, Facebook Messenger, and WhatsApp applications identified in the FTC's "Feature or Activity Response," and on the other, those "feature[s] or activit[ies] or similar feature[s] or activit[ies] . . . when the feature or activity is used or performed on Snapchat, Google+, MeWe, Path, Friendster, Myspace, or Orkut." As previously explained, the FTC's classifications of features/activities "as they are implemented on Facebook, Instagram, WhatsApp, and Messenger . . . . have no implication for whether any specific feature or activity offered by a different product is or is not within the definition of personal social networking." See FTC Response to Meta Activities and Features List (9/12/22).

The FTC further objects to any suggestion that it will eventually need to categorize each feature or activity offered by these seven third-party applications as part of or not part of a personal social networking offering.  The FTC presently does not have this information, and may

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

never undertake to discover this information, because granularly parsing each application by feature or activity is not necessary to establish the FTC's claim that "[a]t least since 2011, Facebook has had monopoly power in the United States with respect to personal social networking." SAC ¶ 237.  For example, the FTC's November 4, 2022 Supplemental Responses and Objections to Interrogatory No. 3 states that "Google+ appears to have offered PSNS at least as early as July 2011, and it appears it continued to offer PSNS until no later than April 2019 when the application was shut down." The FTC does not need to know—and does not know— whether every feature or activity offered by Google+ during that time period "counts as time spent using a 'personal social networking service'" because the answer does not matter: assuming, arguendo, that all usage of Google+ from July 2011 to April 2019 constitutes PSNS usage, Meta nonetheless has had monopoly power "[a]t least since 2011." *See id.* ¶ 237.  Indeed, even assuming, arguendo, that every feature or activity offered by all of the identified providers in the FTC's November 4, 2022 Supplemental Responses and Objections to Interrogatory No. 3 "counts as time spent using a 'personal social networking service'" (and thus that all of these providers' DAU, MAU, and time spent are attributable to PSNS), Meta's shares of common usage metrics well exceed thresholds that establish a presumption of monopoly power.  *See id.* ¶¶ 199-202.

Subject to and without waiving its General and Specific Objections, the FTC responds as follows:

- <u>Snapchat</u>: Meta has neither identified any features/activities that Snapchat offers its users, nor has it asserted that any of Snapchat's features/activities are "similar" to those offered by Meta's products.  Further, the FTC has not presently conducted such an analysis.  Even so, in the interests of cooperation, to the extent Snapchat offers any such similar features/activities, the FTC's present impression is that those similar features/activities are likely part of Snapchat's personal social networking offering.  The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends,

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

family, and personal connections in a shared social space—all built and maintained within the Snapchat application—using Snapchat's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space"). The FTC continues to examine the extent to which users view and experience Snapchat as a mobile messaging application, as opposed to or in addition to as a personal social networking service.

- Google+: Meta has neither identified any features/activities that Google+ offered its users, nor has it asserted that any of Google+'s features/activities were "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, to the extent Google+ offered any such similar features/activities, the FTC's present impression is that those similar features/activities were likely part of Google+'s personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Google+ application—using Google+'s integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").

- MeWe: Meta has neither identified any features/activities that MeWe offers its users, nor has it asserted that any of MeWe's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, to the extent MeWe offers any such similar features/activities, the FTC's present impression is that those similar features/activities are likely part of MeWe's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the MeWe application—using MeWe's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").

- Path: Meta has neither identified any features/activities that Path offered its users, nor has it asserted that any of Path's features/activities were "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, to the extent Path offered any such similar features/activities, the FTC's present impression is that those similar features/activities were likely part of Path's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Path

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

application—using Path's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").

- Friendster: Meta has neither identified any features/activities that Friendster offered its users, nor has it asserted that any of Friendster's features/activities were "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, to the extent Friendster offered any such similar features/activities, the FTC's present impression is that those similar features/activities were likely part of Friendster's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Friendster application—using Friendster's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").

- Myspace: Meta has neither identified any features/activities that Myspace offered its users, nor has it asserted that any of Myspace's features/activities were "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, to the extent Myspace offered any such similar features/activities, the FTC's present impression is that those similar features/activities were likely part of Myspace's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Myspace application—using Myspace's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").

- Orkut: Meta has neither identified any features/activities that Orkut offered its users, nor has it asserted that any of Orkut's features/activities were "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, to the extent Orkut offered any such similar features/activities, the FTC's present impression is that those similar features/activities were likely part of Orkut's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Orkut application—using Orkut's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

The FTC responds here to the best of its present ability after a reasonably diligent inquiry and while discovery in this matter is ongoing, and thus the FTC reserves its right to supplement, revise, or correct any of its responses pursuant to Fed. R. Civ. P. 26(e).  The FTC also reserves its right to revise its response if additional evidence and analysis shows that any features or activities have materially changed such that their classification varies depending on the time period assessed.

**INTERROGATORY NO. 14:**

*For each feature or activity that You include within the definition of "personal social networking" in Your Feature or Activity Response such that time spent on the feature or activity counts as time spent using a "personal social networking service," state whether use of that feature or activity or similar feature or activity counts as time spent using a "personal social networking service" when the feature or activity is used or performed on Strava, LinkedIn, iMessage, Twitter, Reddit, Pinterest, YouTube, Spotify, Nextdoor, Netflix, Hulu, or TikTok, and explain why or why not.*

**RESPONSE TO INTERROGATORY NO. 14:**

The FTC objects because "Interrogatory No. 14" poses at least twelve separate and discrete Interrogatories or discrete subparts, and thus constitutes at least the thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, forty-second, and forty-third interrogatory served by Meta: (1) features or activities used or performed on Strava, (2) features or activities used or performed on LinkedIn, (3) features or activities used or performed on iMessage, (4) features or activities used or performed on Twitter, (5) features or activities used or performed on Reddit, (6) features or activities used or performed on Pinterest, (7) features or activities used or performed on YouTube, (8) features or activities used or performed on Spotify, (9) features or activities used or performed on Nextdoor, (10) features or activities used or performed on Netflix, (11) features or activities used or performed on Hulu, and (12) features or activities used or performed on TikTok. As

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

"Interrogatory No. 14" purports to require the FTC to assess, for each of the twelve products identified, all features or activities included in its "Feature or Activity Response," a list which included 270 features or activities identified by Meta, and then separately to explain the rationale for its assessment of each feature or activity, Meta's "Interrogatory No. 14" in fact includes over 6,000 separate discrete subparts.

The FTC further objects to "Interrogatory No. 14" as premature because it seeks information and evidence subject to ongoing factual discovery, which is not scheduled to close until May 22, 2023, and because it seeks information and evidence which may be the subject of expert discovery, which is not scheduled to close until January 5, 2024. The FTC also reserves the right to supplement its response to this contention interrogatory, including through ongoing factual discovery and the provision of expert reports appropriately submitted pursuant to the stipulated schedule for expert discovery. The FTC further objects to "Interrogatory No. 14" to the extent that it seeks to discover information and communications, including any mental impressions of counsel, that are protected from disclosure due to the work product privilege, deliberative process privilege, and any other applicable privilege.

The FTC objects to the terms "feature" and "activity," and to the phrases "similar feature or activity" and "feature or activity or similar feature or activity . . . when the feature or activity is used or performed on Strava, LinkedIn, iMessage, Twitter, Reddit, Pinterest, YouTube, Spotify, Nextdoor, Netflix, Hulu, or TikTok," as vague, ambiguous, overly broad, and unduly burdensome. Each of the 322 features/activities identified by Meta in its August 22, 2022 List of Features or Activities for Classification ("Meta's List") are specific features/activities with their own specific implementation and functionality provided to users via specific locations (e.g., Watch, Marketplace, Reels, etc.) within specific Meta applications (Facebook, Instagram,

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

Messenger, and WhatsApp). Strava, LinkedIn, iMessage, Twitter, Reddit, Pinterest, YouTube,

Spotify, Nextdoor, Netflix, Hulu, and TikTok are each distinct third-party applications, which

each possess and offer users their own distinct set of features/activities with their own distinct

implementations and functionality. Meta's request fails to identify any specific features/activities

available on any of these applications, and it also does not identify which, if any, of such

features/activities it wants classified based on allegedly being the same or similar to

features/activities available on Meta's applications. While Meta directs the FTC to the set of 270

features/activities on Meta's applications identified in the FTC's "Feature or Activity Response,"

Meta makes no effort to identify, whether and to what extent these twelve third-party

applications allegedly offer the same or similar features/activities. Further, the FTC has not

presently: (a) attempted to exhaustively catalogue every feature/activity available on these

twelve third-party applications, (b) made hundreds of individualized determinations of whether,

and to what extent, each such feature/activity bears some similarity, if any, to one or more of the

270 features/activities on Meta's applications identified in the FTC's "Feature or Activity

Response," or (c) individually assessed and classified some yet undetermined number of

features/activities on each of these twelve third-party applications as part of or not part of a

personal social networking offering.

The FTC further objects to the implied comparison between, on one hand, the 270

features/activities on the Facebook, Instagram, Facebook Messenger, and WhatsApp applications

identified in the FTC's "Feature or Activity Response," and on the other, those "feature[s] or

activit[ies] or similar feature[s] or activit[ies] . . . when the feature or activity is used or

performed on Strava, LinkedIn, iMessage, Twitter, Reddit, Pinterest, YouTube, Spotify,

Nextdoor, Netflix, Hulu, or TikTok." As previously explained, the FTC's classifications of

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

features/activities "as they are implemented on Facebook, Instagram, WhatsApp, and messenger

. . . . have no implication for whether any specific feature or activity offered by a different

product is or is not within the definition of personal social networking." See FTC Response to

Meta Activities and Features List (9/12/22).

Subject to and without waiving its General and Specific Objections, the FTC responds as

follows:

- Strava: Meta has not identified any features/activities that Strava offers its users, nor has it asserted that any of Strava's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Strava are outside the definition of personal social networking because Strava presents a user experience dedicated to interest-based connections, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- LinkedIn: Meta has not identified any features/activities that LinkedIn offers its users, nor has it asserted that any of LinkedIn's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on LinkedIn are outside the definition of personal social networking because LinkedIn presents a user experience dedicated to professional connections, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- iMessage: Meta has not identified any features/activities that iMessage offers its users, nor has it asserted that any of iMessage's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on iMessage are outside the definition of personal social networking because iMessage presents a user experience dedicated to mobile messaging, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- Twitter: Meta has not identified any features/activities that Twitter offers its users, nor has it asserted that any of Twitter's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Twitter are outside the definition of personal social networking because Twitter presents a user experience dedicated to the broadcast or discovery of content based on users' interests, rather than maintaining a network of friends, family, and

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

personal connections and sharing experiences with them in a shared social space.

- <u>Reddit</u>: Meta has not identified any features/activities that Reddit offers its users, nor has it asserted that any of Reddit's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Reddit are outside the definition of personal social networking because Reddit presents a user experience dedicated to the broadcast or discovery of content based on users' interests, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- <u>Pinterest</u>: Meta has not identified any features/activities that Pinterest offers its users, nor has it asserted that any of Pinterest's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Pinterest are outside the definition of personal social networking because Pinterest presents a user experience dedicated to the broadcast or discovery of content based on users' interests, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- <u>YouTube</u>: Meta has not identified any features/activities that YouTube offers its users, nor has it asserted that any of YouTube's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on YouTube are outside the definition of personal social networking because YouTube presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- <u>Spotify</u>: Meta has not identified any features/activities that Spotify offers its users, nor has it asserted that any of Spotify's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Spotify are outside the definition of personal social networking because Spotify presents a user experience dedicated to audio consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- <u>Nextdoor</u>: Meta has not identified any features/activities that Nextdoor offers its users, nor has it asserted that any of Nextdoor's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Nextdoor are outside the definition of personal social networking because Nextdoor presents a user experience dedicated to facilitating sharing only among users that reside in close proximity to one another, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

in a shared social space.

- Netflix: Meta has not identified any features/activities that Netflix offers its users, nor has it asserted that any of Netflix's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Netflix are outside the definition of personal social networking because Netflix presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- Hulu: Meta has not identified any features/activities that Hulu offers its users, nor has it asserted that any of Hulu's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on Hulu are outside the definition of personal social networking because Hulu presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

- TikTok: Meta has not identified any features/activities that TikTok offers its users, nor has it asserted that any of TikTok's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on TikTok are outside the definition of personal social networking because TikTok presents a user experience dedicated to entertainment through viewing short form video content from creators a user does not personally know, as well as creating and sharing short form video content to an audience that the poster does not personally know, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

The FTC responds here to the best of its present ability after a reasonably diligent inquiry and while discovery in this matter is ongoing, and thus the FTC reserves its right to supplement, revise, or correct any of its responses pursuant to Fed. R. Civ. P. 26(e). The FTC also reserves its right to revise its response if additional evidence and analysis shows that any features or activities have materially changed such that their classification varies depending on the time period assessed.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

## JANUARY 10, 2023 SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORY NO. 13:

The FTC restates the foregoing General and Specific Objections to Interrogatory No. 13. Subject to and without waiving its General and Specific Objections, the FTC responds as follows.

As set forth in the parties' December 15, 2022 Joint Status Report, ECF No. 227, "in the interests of avoiding needless disputes, the FTC has agreed to undertake the burdensome exercise of assessing 100 specific features/activities that Meta will identify.  Once Meta identifies the features/activities, the FTC will provide within three weeks a further elaboration of its position. Further, within five weeks, for each of the 100 specific features/activities, the FTC will as requested by interrogatories 13 and 14, 'state whether use of that feature or activity or similar feature or activity counts as time spent using a 'personal social networking service' and 'explain why or why not.'"  The request for "further elaboration" refers to Meta's request during the Parties' Nov. 28, 2022 meet and confer and the FTC's offer during the Parties' Nov. 30, 2022 meet and confer to explain, with respect to the seven third-party applications identified in Meta's interrogatory 13, whether it is the FTC's position that it does not need to say whether each of the individual features/activities on these applications are in or out of the market to define a relevant market and show monopoly power.  The FTC provides herein the requested "further elaboration of its position."  In short, the FTC's position remains unchanged: such an analysis is not necessarily required. [1]

The FTC has made its position plain that it is not necessary to perform a highly granular and burdensome, feature/activity-by-feature/activity analysis of some indeterminate number of

---

[1] The FTC will respond separately with respect to the 100 specific features/activities identified in Meta's Dec. 20, 2022 List of Features or Activities for Explanation by the FTC.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

features/activities on Meta's applications in order to define a relevant market and show

monopoly power.  *See, e.g.*, Pl. FTC's Mem. of Law in Opp'n to Def. Meta Platforms, Inc.'s

Mot. Comp. Answer to Rog. No. 10 Regarding the FTC's Market Definition at 11 (July 14,

2022), ECF No. 157 ("FTC Opp'n to Rog. 10 MTC") ("Here, a granular activity-by-activity

exegesis of what 'counts' as personal social networking is unnecessary to conclude that Meta

possesses monopoly power or that personal social networking services, as alleged in the SAC, is

a properly defined relevant market.").  The FTC has likewise made plain its position that such an

analysis is also unnecessary with respect to the seven third-party applications identified in

Meta's interrogatory 13.  *See, e.g.*, Pl. FTC's Objections and Responses to Defendant Meta's

Second Set of Interrogatories at 10 (Nov. 16, 2022) ("FTC Resp. to Meta's Second Set of

Rogs.") ("The FTC further objects to any suggestion that it will eventually need to categorize

each feature or activity offered by these seven third-party applications as part of or not part of a

personal social networking offering.").

      Nonetheless, the FTC provided Meta with an item-by-item assessment and classification

based on the FTC's present understanding for each of the 322 features/activities on the

Facebook, Instagram, Facebook Messenger, and WhatsApp applications identified in Meta's

August 22, 2022 List of Features or Activities for Classification.  Pl. FTC's Response to Meta

Platforms, Inc.'s List of Features or Activities (Sep. 12, 2022).  The FTC has additionally agreed

to provide a similar assessment of 100 features/activities on non-Meta apps identified in Meta's

Dec. 20, 2022 List of Features or Activities for Explanation by the FTC.  While the FTC believes

it has already made its position clear, the FTC reiterates here its view that conducting a highly

granular and burdensome, feature/activity-by-feature/activity analysis of each of some

indeterminate number of features/activities on the seven non-Meta applications identified in

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Meta's interrogatory 13 is unnecessary to define a relevant market and show monopoly power.

With respect to Meta's applications, the FTC has explained previously that Meta's own ordinary course documents recognize Facebook and Instagram provide personal social networking services without exhaustively enumerating features/activities that comprise that service. *See, e.g.*, FTC Opp'n to Rog. 10 MTC at 2, 9-10; Pl. FTC's Supplemental Objections and Responses to Defendant Meta's First Set of Interrogatories at 6-13. As the FTC further explained, "[a]mong other things, ordinary course documents and user surveys may indicate the basic contours of the service without precisely enumerating or articulating every activity that comprises use of the service—and indeed, that is what the evidence collected to date suggests here." FTC Opp'n to Rog. 10 MTC at 13. Additionally, "[i]n that scenario, the exhaustive delineation Meta demands may be unnecessary or even misleading—as the focus on piecemeal activities overlooks the integrated service being offered. And, with similar and other evidence, one may also observe Meta's dominant position (and the lack of competition) as to that service, regardless of the presence (or absence) of other potential services on Meta's apps." *Id.* This approach is consistent with that of international enforcers. *Id.*

Likewise, as the FTC explained with respect to the seven third-party applications identified in Meta's interrogatory 13, it is unnecessary "to categorize each feature or activity offered by these seven third-party applications as part of or not part of a personal social networking offering." FTC Resp. to Meta's Second Set of Rogs. at 10. As the FTC further explained, even assuming, *arguendo*, that every feature or activity offered by the seven providers identified in Meta's interrogatory 13 counts as time spent using a personal social networking service, Meta's shares of common usage metrics well exceed thresholds that establish a presumption of monopoly power. *Id.* Even if it were necessary to assess whether portions of

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

these applications are part of a personal social networking offering and other portions not, it would not be necessary to conduct a highly granular feature/activity-by-feature/activity analysis of every feature or activity offered by these applications.  Rather, the FTC anticipates it would rely on ordinary course documents, testimony, and other evidence to understand the basic contours of the services offered on these applications.

### JANUARY 24, 2023 SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORY NOS. 13 & 14:

In response to Meta's December 20, 2022 List of Features or Activities for Explanation ("Meta's List"), the Federal Trade Commission ("FTC") provides below its present position on why each of the 100 features or activities identified in Meta's List "do—or do not—qualify as PSNS" and identifies relevant facts.  Joint Status Report at 17-18 (Dec. 15, 2022); *see also* Ltr. from K. Horvitz to N. Brenner (Dec. 5, 2022) (asking the FTC to "explain why those features or activities do or do not qualify as PSNS").

The FTC incorporates by reference all of its General and Specific Objections in its November 16, 2022 Objections and Responses to Defendant Meta Platforms, Inc.'s Second Set of Interrogatories, as well as in its January 10, 2023 Supplemental Objections and Responses to Defendant Meta Platforms, Inc.'s Second Set of Interrogatories.  Moreover, the FTC responds here to the best of its present ability after a reasonably diligent inquiry and while discovery in this matter is ongoing, and thus the FTC reserves its right to supplement, revise, or correct any of its responses pursuant to Fed. R. Civ. P. 26(e).

In particular, the FTC is actively seeking documents, data, and testimony from Meta that will further inform the characteristics and usage of Meta's applications as compared to various third-party applications.  Moreover, such questions will likely be the subject of expert analysis as provided by the Court's Scheduling Order.  Scheduling Order at 1, ECF No. 103 (providing a

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

deadline for expert discovery of January 5, 2024.  The FTC also reserves its right to revise its response if additional evidence and analysis shows that any features or activities have materially changed such that their classification varies depending on the time period assessed.

The tables and text below reflect the FTC's item-by-item assessment and classification for each of the 100 features/activities identified by Meta.

In sum, and as described more fully below, the FTC's present understanding is that the features/activities identified by Meta for Friendster, Google+, MeWe, Myspace, Orkut, Path, and Snapchat qualify as part of each application's respective personal social networking offering. The FTC's classifications are driven in large part by the connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space.  *Cf.* SAC ¶ 166 (alleging that "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space"); *see also* Plaintiff Federal Trade Commission's June 14, 2022 Supplemental Objections and Responses to Defendant Meta Platforms, Inc.'s First Set of Interrogatories at 6-11 (describing how personal social networking is an integrated service that allows people to share personal updates and other content with personal connections).  As described more fully below, by contrast, the FTC's present understanding is that Hulu, iMessage, LinkedIn, Netflix, Nextdoor, Pinterest, Reddit, Spotify, Strava, TikTok, Twitter, and YouTube do not offer personal social networking services.  As such, all features/activities identified by Meta on these applications do not qualify as being part of personal social networking services.  Each application presents a user experience dedicated to some other online services (e.g., mobile messaging, professional networking, etc.) rather than

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

The FTC's classifications are limited to the features/activities identified by Meta as they are or were implemented on each of the nineteen third-party applications. The FTC assumes for purposes of its response that the features/activities identified by Meta are or were available on the nineteen third-party applications. The FTC's response is not an admission that the FTC agrees with Meta's assessment or characterization of what features/activities are or were available on these applications. Further, the FTC's classifications have no implication for whether any specific feature or activity offered by a different product does or does not qualify as PSNS.

The FTC's response should not be construed as an admission that the FTC agrees with Meta's characterization that these 100 features are similar to features/activities on Facebook Blue, Instagram, or Facebook Messenger. As noted below, Meta provides no evidence to suggest that the listed features/activities are similar to any features/activities available on Facebook Blue, Instagram, or Facebook Messenger. Moreover, the FTC has not presently conducted such a feature-by-feature analysis comparing the individual features available on these nineteen third-party applications and those available on Facebook Blue, Instagram, and Facebook Messenger.

Moreover, the FTC's response should not be construed as an admission that the FTC believes that competition should be considered on a feature-by-feature basis. Indeed, the FTC has clarified repeatedly that "it is not necessary to perform a highly granular and burdensome, feature/activity-by-feature/activity analysis of some indeterminate number of features/activities on Meta's applications in order to define a relevant market and show market power." Plaintiff

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Federal Trade Commission's January 10, 2023 Supplemental Objections and Responses to

Defendant Meta Platforms, Inc.'s Second Set of Interrogatories at 9.  Meta seemingly admits it is

unsure whether it believes such an analysis is fruitful.  *See* Meta's List at 2 ("[T]he fact that Meta

lists two similar features should not be construed to indicate . . . that Meta believes that

competition should be considered on a feature-by-feature basis.").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Friendster**

| Number | Feature/Activity on Friendster | Response |
|--------|-------------------------------|----------|
| 90 | Viewing Original photo(s) posted by a Personal Account on Friendster's Bulletin Board, where User has never met the owner of the account in person. | Yes |

Meta's List implies that the above-referenced feature/activity was previously available on Friendster and was "similar" to a feature/activity presently available on Instagram. Meta's List at 17 (implying similarity with Instagram). But Meta provides no evidence to suggest that this particular feature/activity functioned, was presented, or was used similarly to any features/activities available on Instagram. Meta provides no evidence regarding how often this feature/activity occurred on Friendster compared to other user features/activities on Friendster, or indeed that this particular feature/activity ever occurred at all. In addition, according to publicly available sources, Friendster altered its customer offering in 2011, reducing social features. *See, e.g.*, Scott Steinberg, *Friendster is Dead: Encourages U.S. Users to Move On* (May 11, 2011), https://www.rollingstone.com/culture/culture-news/friendster-is-dead-encourages-u-s-users-to-move-on-181118/ ("Once-popular social network Friendster, an early forerunner to Facebook, MySpace and other online fraternization options, is now dead and will be deleting all user-created blogs, photos, comments and groups on May 31. . . . The service plans to operate as a supplement to Facebook and its features going forward, as it plans to reposition itself as a social entertainment website focused on video games playing and music."). For these, among other reasons, the FTC has not presently conducted an analysis comparing the individual features previously available on Friendster and those currently available on Instagram.

Even so, the FTC's present impression is that for a period of time Friendster provided

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

personal social networking services and, during this period of time, the feature/activity identified

above was likely part of Friendster's personal social networking offering.  The FTC's

classification is driven in large part by the likely connection between the feature/activity and

users' ability to share and experience each of the various features and activities with their social

networks of friends, family, and personal connections in a shared social space—all built and

maintained within the Friendster application—using Friendster's integrated and personalized

social experiences.  *Cf.* SAC ¶ 166 (alleging that "personal social networking services" are

"online services that enable and are used by people to maintain personal relationships and share

experiences with friends, family, and other personal connections in a shared social space").

Ordinary course records and other evidence support the FTC's understanding.  *See, e.g.,*

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Google+**

| Number | Feature/Activity on Google+ | Response |
|--------|------------------------------|----------|
| 12 | Viewing or posting content in a Community User joined on Google+ based on the User's interests. | Yes |
| 20 | Posting to all of User's Followers on Google+, encouraging them to attend an industry-networking event hosted by User's employer. | Yes |
| 34 | Viewing content posted by a public figure User follows on Google+ but that does not follow User. | Yes |

Meta's List implies that the above-referenced features/activities were previously available on Google+ and were "similar" to features/activities presently available on Facebook Blue.  Meta's List at 6-9 (implying similarity with Facebook Blue).  But Meta provides no evidence to suggest that these particular features/activities functioned, were presented, or were used similarly to any features/activities available on Facebook Blue.  Meta provides no evidence regarding how often these features/activities occurred on Google+ compared to other user features/activities on Google+, or indeed that these particular features/activities ever occurred at all.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features previously available on Google+ and those currently available on Facebook Blue.

Even so, the FTC's present impression is that Google+ provided personal social

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

networking services and the features/activities identified above were likely part of Google+'s

personal social networking offering.  The FTC's classification is driven in large part by the likely

connection between the features/activities and users' ability to share and experience each of the

various features and activities with their social networks of friends, family, and personal

connections in a shared social space—all built and maintained within the Google+ application—

using Google+'s integrated and personalized social experiences.  *Cf.* SAC ¶ 166 (alleging that

"personal social networking services" are "online services that enable and are used by people to

maintain personal relationships and share experiences with friends, family, and other personal

connections in a shared social space").  Ordinary course records and other evidence support the

FTC's understanding.  *See, e.g.*, ███████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████         Google's public introduction of Google+ likewise supports the FTC's

classification that the application provided personal social networking services.  *See Introducing*

*the Google+ Project: Real-Life Sharing, Rethought for the Web,* Google Official Blog (June 28,

2011), https://googleblog.blogspot.com/2011/06/introducing-google-project-real-life.html

(describing Google+ as designed to "bring the nuance and richness of real-life sharing to

software. . . [and] make Google better by including you, your relationships, and your interests"

and facilitate "[c]oordinating with friends and family.").

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**MeWe**

| Number | Feature/Activity on MeWe | Response |
|--------|--------------------------|----------|
| 35 | Viewing content posted by a public figure User follows on MeWe but that does not follow User. | Yes |

Meta's List implies that the above-referenced feature/activity is available on MeWe and is "similar" to a feature/activity available on Facebook Blue. Meta's List at 10 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often this feature/activity occurs on MeWe compared to other user features/activities on MeWe, or indeed that this particular feature/activity ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on MeWe and those available on Facebook Blue.

Even so, the FTC's present impression is that MeWe provides personal social networking services and the feature/activity identified above is likely part of MeWe's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the MeWe application—using MeWe's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging that "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

in a shared social space").  Ordinary course records and other evidence support the FTC's

understanding.  *See, e.g.,* ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████        *MeWe*

*Raises $4.8 Million, Launches Next-Gen Social Network*, PRWeb (March 9, 2016),

https://www.prweb.com/releases/2016/03/prweb13255526.htm ("MeWe turns the table on

Facebook with a revolutionary integrated social network and chat app that emphasizes social

sharing with privacy-by-design (PbD).  It's the only social network with a Privacy Bill Of Rights

for its members."); *Will Sgrouples end social networking's attack on privacy?*, ZDNet (Aug. 7,

2012), https://www.zdnet.com/article/will-sgrouples-end-social-networkings-attack-on-privacy/

("Sgrouples is for connecting and sharing with people you know in the real world.").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**MySpace**

| Number | Feature/Activity on MySpace | Response |
|--------|------------------------------|----------|
| 47 | Viewing recommended video(s) on Myspace that does not originate from User's friends or connections. | Yes |

Meta's List implies that the above-referenced feature/activity was previously available on Myspace and was "similar" to a feature/activity presently available on Facebook Blue. Meta's List at 11 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that this particular feature/activity functioned, was presented, or was used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often this feature/activity occurred on MySpace compared to other user features/activities on MySpace, or indeed that this particular feature/activity ever occurred at all. Moreover, by 2010 MySpace's CEO publicly announced that Myspace "is not a social network anymore. It is now a social entertainment destination." *See* Complaint, *Klein, et. al. v. Facebook, Inc.*, 5:20-cv-08570-LHK, ECF No. 86 (April 22, 2021), at 11. For these reasons, among others, the FTC has not presently conducted such an analysis comparing the individual features previously available on Myspace and those currently available on Facebook Blue.

Even so, the FTC's present impression is that for a period of time Myspace provided personal social networking services and, during this period of time, the feature/activity identified above was likely part of Myspace's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

maintained within the Myspace application—using Myspace's integrated and personalized social experiences.  *Cf.* SAC ¶ 166 (alleging that "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space").  Ordinary course records and other evidence support the FTC's understanding.  *See, e.g.*,

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Orkut**

| Number | Feature/Activity on Orkut | Response |
|--------|---------------------------|----------|
| 91 | Viewing Original photo(s) posted by an individual on Orkut, where User has never the met the owner of the account in person. | Yes |

Meta's List implies that the above-referenced feature/activity was previously available on Orkut and was "similar" to a feature/activity presently available on Instagram.  Meta's List at 17 (implying similarity with Instagram).  But Meta provides no evidence to suggest that this particular feature/activity functioned, was presented, or was used similarly to any features/activities available on Instagram.  Meta provides no evidence regarding how often this feature/activity occurred on Orkut compared to other user features/activities on Orkut, or indeed that this particular feature/activity ever occurred at all.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features previously available on Orkut and those currently available on Instagram.

Even so, the FTC's present impression is that Orkut provided personal social networking services and the feature/activity identified above was likely part of Orkut's personal social networking offering.  The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Orkut application—using Orkut's integrated and personalized social experiences.  *Cf.* SAC ¶ 166 (alleging that "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

in a shared social space").  Ordinary course records and other evidence support the FTC's

understanding.  *See, e.g.,*

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Path**

| Number | Feature/Activity | Response |
|--------|------------------|----------|
| 93 | Using Path Social to promote User's Original videos to a public audience. | Yes |

Meta's List implies that the above-referenced feature/activity was previously available on Path and was "similar" to a feature/activity presently available on Instagram. Meta's List at 17 (implying similarity with Instagram). But Meta provides no evidence to suggest that this particular feature/activity functioned, was presented, or was used similarly to any features/activities available on Instagram. Meta provides no evidence regarding how often this feature/activity occurred on Path compared to other user features/activities on Path, or indeed that this particular feature/activity ever occurred at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features previously available on Path and those currently available on Instagram.

Even so, the FTC's present impression is that Path provided personal social networking services and the feature/activity identified above was likely part of Path's personal social networking offering. The FTC's classification is driven in large part by the likely connection between the feature/activity and users' ability to share and experience each of the various features and activities with their social networks of friends, family, and personal connections in a shared social space—all built and maintained within the Path application—using Path's integrated and personalized social experiences. *Cf.* SAC ¶ 166 (alleging that "personal social networking services" are "online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections

31

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

in a shared social space").  Ordinary course records and other evidence support the FTC's

understanding.  *See, e.g.,*

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Snapchat**

| Number | Feature/Activity on Snapchat | Response |
|--------|------------------------------|----------|
| 8 | Viewing video(s) on Snapchat Spotlight posted by an account that User does not subscribe to, and that does not subscribe to User. | Yes |
| 18 | Viewing Story(ies) posted by User's Friend on Snapchat. | Yes |
| 50 | Sending message(s) to one other Snapchat Friend. | Yes |
| 65 | Viewing video(s) on Snapchat Spotlight posted by an account that User does not follow, and that does not follow User. | Yes |
| 68 | Posting video(s) to Snapchat Spotlight to a public audience. | Yes |
| 73 | Viewing Story(ies) on Snapchat Discover posted by an account that User subscribes to that does not subscribe to User. | Yes |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on Snapchat | Response |
|--------|------------------------------|----------|
| 74 | Viewing Story(ies) on Snapchat Discover posted by an account for a business User subscribes to that does not subscribe to User. | Yes |
| 75 | Viewing Story(ies) posted on Snapchat by any Personal Account User subscribes to that does not subscribe to User, where User has never met the owner of the account. | Yes |
| 99 | Sending disappearing message(s) on Snapchat. | Yes |

Meta's List implies that the above-referenced features/activities are available on Snapchat and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at 5, 7, 12 (implying similarity with Facebook Blue), 14-15, 18 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on Snapchat compared to other user features/activities on Snapchat, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Snapchat and those available on Facebook Blue and Instagram.

Even so, the FTC's present impression is that Snapchat provides personal social networking services and the features/activities identified above are likely part of Snapchat's

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

personal social networking offering.  The FTC's classification is driven in large part by the likely

connection between the features/activities and users' ability to share and experience each of the

various features and activities with their social networks of friends, family, and personal

connections in a shared social space.  *Cf.* SAC ¶ 166 (alleging that "personal social networking

services" are "online services that enable and are used by people to maintain personal

relationships and share experiences with friends, family, and other personal connections in a

shared social space").  Ordinary course records and other evidence support the FTC's

understanding.  *See, e.g.*, ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████  The

FTC continues to examine the extent to which users view and experience Snapchat as a mobile

messaging or other type of application, as opposed to or in addition to a personal social

networking service.  *See, e.g.*, ██████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████  Nina Godlewski, *Teens Say They're Ditching Texting for Snapchat*

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

*Because It's More Casual*, Business Insider (July 12, 2016),

https://www.businessinsider.com/teens-message-in-snapchat-2016-7.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**Hulu**

| Number | Feature/Activity on Hulu | Response |
|--------|--------------------------|----------|
| 83 | Watching video(s) on Hulu. | No |

Meta's List implies that the above-referenced feature/activity is available on Hulu and is "similar" to a feature/activity available on Instagram. Meta's List at 16 (implying similarity with Instagram). But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Instagram. Meta provides no evidence regarding how often this feature/activity occurs on Hulu compared to other user features/activities on Hulu. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Hulu and those currently available on Instagram.

The FTC's present understanding is that Hulu does not provide personal social networking services and the feature/activity identified above is therefore not part of a personal social networking offering. Hulu presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. *See, e.g.*, SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as Hulu). Ordinary course records and other evidence support the FTC's understanding. *See, e.g.*,

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**iMessage/iMessage FaceTime**

| Number | Feature/Activity on iMessage | Response |
|--------|------------------------------|----------|
| 14 | Viewing content in an iMessage group chat containing 20 Users that are all User's family members. | No |
| 22 | Posting content on iMessage to a limited audience of five or fewer of User's friends or family members whose mobile telephone number User possesses. | No |
| 49 | Sending message(s) to one other friend or family member on iMessage. | No |
| 52 | Sending message(s) to a group of 21-30 other users on iMessage. | No |
| 53 | Using iMessage to send an album of Original photo(s) from iCloud Photos to a group of User's friends or family members. | No |
| 54 | Voice calling with one friend or family member using iMessage/FaceTime Audio. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on iMessage | Response |
|--------|------------------------------|----------|
| 55 | Video calling with one friend or family member using iMessage/FaceTime Video. | No |
| 56 | Video calling with more than one friend or family member using iMessage/FaceTime Video. | No |

Meta's List implies that the above-referenced features/activities are available on iMessage and are "similar" to features/activities available on Facebook Blue.  Meta's List at 6, 8, 12-13 (implying similarity with Facebook Blue).  But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue.  Meta provides no evidence regarding how often these features/activities occur on iMessage compared to other user features/activities on iMessage, or indeed that these particular features/activities ever occur at all.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on iMessage and those currently available on Facebook Blue.

The FTC's present understanding is that iMessage does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering.  iMessage presents a user experience dedicated to mobile messaging, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.  *See, e.g.*, SAC ¶ 172 (distinguishing personal social networking services from mobile messaging services).  Ordinary course records

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

and other evidence support the FTC's understanding. *See, e.g.,*

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**LinkedIn**

| Number | Feature/Activity on LinkedIn | Response |
|---|---|---|
| 17 | Viewing Story(ies) posted by User's Connection on LinkedIn. | No |
| 21 | Posting to User's LinkedIn Connections to promote User's small business. | No |
| 27 | Posting Original photo(s) about a highly personal milestone (such as a health event) on LinkedIn. | No |
| 38 | Viewing content posted in a LinkedIn Group User joined based on User's interests. | No |
| 51 | Sending message(s) on LinkedIn to a friend or family member to wish him a happy birthday. | No |
| 94 | Viewing content on a LinkedIn profile of a Personal Account that is a Connection with User. | No |

Meta's List implies that the above-referenced features/activities are available on LinkedIn and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

7-8, 10, 12 (implying similarity with Facebook Blue), 17 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram.  Meta provides no evidence regarding how often these features/activities occur on LinkedIn compared to other user features/activities on LinkedIn, or indeed that these particular features/activities ever occur at all.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on LinkedIn and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that LinkedIn does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering.  LinkedIn presents a user experience dedicated to professional connections, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.  *See, e.g.*, SAC ¶ 173 (distinguishing personal social networking services from specialized social networking services such as LinkedIn).  Ordinary course records and other evidence support the FTC's understanding.  *See, e.g.*, █████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ *About LinkedIn*, https://about.linkedin.com/?trk=homepage-basic_directory_aboutUrl ("Welcome to LinkedIn, the world's largest professional network . . .").

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**Netflix**

| Number | Feature/Activity on Netflix | Response |
|--------|------------------------------|----------|
| 46 | Viewing recommended video(s) on Netflix. | No |

Meta's List implies that the above-referenced feature/activity is available on Netflix and is "similar" to a feature/activity available on Facebook Blue.  Meta's List at 11 (implying similarity with Facebook Blue).  But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Facebook Blue.  Meta provides no evidence regarding how often this feature/activity occurs on Netflix compared to other user features/activities on Netflix.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Netflix and those currently available on Facebook Blue.

The FTC's present understanding is that Netflix does not provide personal social networking services and the feature/activity identified above is therefore not part of a personal social networking offering.  Netflix presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.  *See, e.g.*, SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as Netflix).  Ordinary course records and other evidence support the FTC's understanding.  *See, e.g.,* ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**



HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Nextdoor**

| Number | Feature/Activity on Nextdoor | Response |
|---|---|---|
| 4 | Viewing items for sale posted by one of User's Nextdoor Connections on the "For Sale and Free" Tab. | No |
| 15 | Using Nextdoor's "Neighborhood Name" Tab to view content in User's immediate neighborhood only. | No |
| 30 | Viewing comments to Original post(s) by a User's Nextdoor Connection. | No |
| 41 | Viewing content posted on Nextdoor in one's immediate neighborhood only by selecting the Tab with User's Neighborhood Name. | No |
| 48 | Viewing Notifications when User's Nextdoor Connection mentions them in a comment. | No |
| 89 | Viewing Original photo(s) posted by a Nextdoor Connection, when User was friends with Connection before connecting online. | No |

Meta's List implies that the above-referenced features/activities are available on

Nextdoor and are "similar" to features/activities available on Facebook Blue and Instagram.

45

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Meta's List at 4-7, 9, 10-12 (implying similarity with Facebook Blue), 17 (implying similarity

with Instagram).  But Meta provides no evidence to suggest that these particular

features/activities function, are presented, or are used similarly to any features/activities

available on Facebook Blue and Instagram.  Meta provides no evidence regarding how often

these features/activities occur on Nextdoor compared to other user features/activities on

Nextdoor, or indeed that these particular features/activities ever occur at all.  For these, among

other reasons, the FTC has not presently conducted such an analysis comparing the individual

features available on Nextdoor and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that Nextdoor does not provide personal social

networking services and the features/activities identified above are therefore not part of a

personal social networking offering.  Nextdoor presents a user experience dedicated to

facilitating sharing only among users that reside in close proximity to one another, rather than

maintaining a network of friends, family, and personal connections and sharing experiences with

them in a shared social space.  *See, e.g.*, SAC ¶ 173 (distinguishing personal social networking

services from specialized social networking services such as Nextdoor).  Ordinary course records

and other evidence support the FTC's understanding.  *See, e.g.*, ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ *Nextdoor*, www.nextdoor.com ("The only

way to instantly connect to the people, businesses, and happenings near your home.").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Pinterest**

| Number | Feature/Activity on Pinterest | Response |
|--------|-------------------------------|----------|
| 3 | Viewing item(s) for sale under the Shop Tab from a Verified Merchant on Pinterest. | No |
| 26 | Viewing Original photo(s) on Pinterest posted by User's family member. | No |
| 45 | Viewing recommended Idea Pins on Pinterest's Watch Tab that do not originate from people or Boards User follows. | No |
| 70 | Posting Idea Pins to User's public Pinterest Board. | No |
| 77 | Reacting to Story Pins on Pinterest posted by an account User follows and that follows User. | No |
| 80 | Viewing Product Pins on Pinterest's Shop Tab. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on Pinterest | Response |
|--------|-------------------------------|----------|
| 81 | Watching video(s) on Pinterest TV. | No |
| 92 | Commenting on Original Static Pin(s) on Pinterest posted by User's friend or family member. | No |
| 97 | Sending or viewing message(s) on Pinterest to an account User follows that does not follow User. | No |

Meta's List implies that the above-referenced features/activities are available on Pinterest and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at 4, 8, 11 (implying similarity with Facebook Blue), 14-18 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on Pinterest compared to other user features/activities on Pinterest, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Pinterest and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that Pinterest does not provide personal social networking services and the features/activities identified above are therefore not part of a

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

personal social networking offering.  Pinterest presents a user experience dedicated to the

broadcast or discovery of content based on users' interests, rather than maintaining a network of

friends, family, and personal connections and sharing experiences with them in a shared social

space.  *See, e.g.*, SAC ¶ 174 (distinguishing personal social networking services from online

services focused on the broadcast or discovery of content based on users' interests rather than

their personal connections, such as Pinterest).  Ordinary course records and other evidence

support the FTC's understanding.  *See, e.g.*, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████  *What

is Pinterest?*, https://help.pinterest.com/en/guide/all-about-pinterest ("Pinterest is a visual

discovery engine for finding ideas like recipes, home and style inspiration, and more.").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Reddit**

| Number | Feature/Activity on Reddit | Response |
|--------|----------------------------|----------|
| 11 | Posting content in a Community on Reddit User joined based on the User's interests, such as the "Instant Pot" Community. | No |
| 13 | Viewing content in a Reddit Community of any size where 0-15% of the members of the community are User's friends or family members. | No |
| 37 | Viewing content posted in a Community User joined on Reddit based on User's interests, such as the "Instant Pot" Community. | No |
| 39 | Viewing linked content (e.g., a NYT article or 20 minute comedy routine from a famous comedian that was posted on YouTube) from a Community User joined on Reddit based on User's interests, such as the "Instant Pot" community. | No |
| 40 | Viewing content posted in a Reddit Community that contains more than 10,000 members. | No |
| 57 | Using the search feature on Reddit to find Communities User is interested in. | No |

Meta's List implies that the above-referenced features/activities are available on Reddit and are "similar" to features/activities available on Facebook Blue.  Meta's List at 6, 10, 13

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

(implying similarity with Facebook Blue).  But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue.  Meta provides no evidence regarding how often these features/activities occur on Reddit compared to other user features/activities on Reddit, or indeed that these particular features/activities ever occur at all.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Reddit and those currently available on Facebook Blue.

The FTC's present understanding is that Reddit does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering.  Reddit presents a user experience dedicated to the broadcast or discovery of content based on users' interests, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.  *See, e.g.*, SAC ¶ 174 (distinguishing personal social networking services from online services focused on the broadcast or discovery of content based on users' interests rather than their personal connections, such as Reddit).  Ordinary course records and other evidence support the FTC's understanding.  *See, e.g.*,

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**Spotify**

| Number | Feature/Activity on Spotify | Response |
|--------|------------------------------|----------|
| 59 | Listening to Podcast(s) on Spotify. | No |

Meta's List implies that the above-referenced feature/activity is available on Spotify and is "similar" to a feature/activity available on Facebook Blue. Meta's List at 13 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often this feature/activity occurs on Spotify compared to other user features/activities on Spotify. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Spotify and those currently available on Facebook Blue.

The FTC's present understanding is that Spotify does not provide personal social networking services and the feature/activity identified above is therefore not part of a personal social networking offering. Spotify presents a user experience dedicated to audio consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. *See, e.g.*, SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as Spotify). Ordinary course records and other evidence support the FTC's understanding. *See, e.g.*, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

███████████████████████████████ *About Us*,

https://www.spotify.com/us/about-us/contact/ ("With Spotify, it's easy to find the right music or

podcast for every moment – on your phone, your computer, your tablet and more.").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Strava**

| Number | Feature/Activity on Strava | Response |
|--------|----------------------------|----------|
| 23 | Posting Original content on Strava, encouraging User's personal friends that reside in close physical proximity to one another to attend a local social event. | No |

Meta's List implies that the above-referenced feature/activity is available on Strava and is "similar" to a feature/activity available on Facebook Blue. Meta's List at 8 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often this feature/activity occurs on Strava compared to other user features/activities on Strava, or indeed that this particular feature/activity ever occurs at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Strava and those currently available on Facebook Blue.

The FTC's present understanding is that Strava does not provide personal social networking services and the feature/activity identified above is therefore not part of a personal social networking offering. Strava presents a user experience dedicated to interest-based connections, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. *See, e.g.*, SAC ¶ 173 (distinguishing personal social networking services from specialized social networking services such as Strava). Ordinary course records and other evidence support the FTC's understanding. *See, e.g.*, ███

███████████████████████████████████████████

███████████████████████████████████████████

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**TikTok**

| Number | Feature/Activity on TikTok | Response |
|---|---|---|
| 5 | Viewing video(s) posted by a Business Account User follows on TikTok. | No |
| 6 | Viewing video(s) on TikTok posted by User's TikTok Friend | No |
| 7 | Viewing video(s) on TikTok posted by an account that is not a TikTok Friend of User. | No |
| 9 | Posting TikTok video(s) to an audience limited exclusively to User's TikTok Friends. | No |
| 44 | Viewing suggested video content on TikTok's "For You" Feed that does not originate from people or accounts User follows. | No |
| 60 | Viewing videos posted on TikTok by a celebrity User follows that does not follow User. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on TikTok | Response |
|--------|----------------------------|----------|
| 62 | Viewing video(s) on TikTok posted by any Personal Account that is User's TikTok Friend where User has met the owner of the account. | No |
| 64 | Viewing video(s) on TikTok posted by an account that User does not follow, and that does not follow User. | No |
| 67 | Posting video(s) to TikTok using the "Friends Only" setting. | No |
| 69 | Posting video(s) to a public audience on TikTok. | No |
| 72 | Commenting on videos on TikTok's Friends Tab posted by User's TikTok Friend. | No |
| 76 | Viewing TikTok Story(ies) posted by User's personal friend or family member. | No |
| 78 | Viewing live video(s) on TikTok posted by User's TikTok Friend. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on TikTok | Response |
|--------|----------------------------|----------|
| 86 | Viewing content on TikTok posted by account that User follows that does not follow User. | No |
| 96 | Viewing content on a TikTok profile of an account that User follows that does not follow User. | No |
| 98 | Sending message(s) containing content posted by an account User does not follow on TikTok. | No |

Meta's List implies that the above-referenced features/activities are available on TikTok and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at 5, 11 (implying similarity with Facebook Blue), 13-16, 18 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on TikTok compared to other user features/activities on TikTok, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on TikTok and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that TikTok does not provide personal social networking services and the features/activities identified above are therefore not part of a

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

personal social networking offering.  TikTok presents a user experience dedicated to

entertainment through viewing short form video content from creators a user does not personally

know, as well as creating and sharing short form video content to an audience that the poster

does not personally know, rather than maintaining a network of friends, family, and personal

connections and sharing experiences with them in a shared social space.  *See, e.g.*, SAC ¶ 176

(distinguishing personal social networking services from a content broadcasting and

consumption service such as TikTok).  Ordinary course records and other evidence support the

FTC's understanding.  *See, e.g.*, ██████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Twitter**

| Number | Feature/Activity on Twitter | Response |
|--------|------------------------------|----------|
| 24 | Viewing Original photo(s) on Twitter posted by a person who User follows and who also follows User. | No |
| 25 | Viewing Original photo(s) on Twitter posted by User's friend or family member. | No |
| 28 | Posting Original photos in a Tweet on Twitter. | No |
| 31 | Viewing content (e.g. a NYT article or 20 minute comedy routine from a famous comedian that was posted on YouTube) linked in a Tweet by an individual who User follows and who also follows User on Twitter. | No |
| 32 | Viewing a Retweet posted by a person who User follows and who also follows User when the Original tweet was posted by an account User does not follow. | No |
| 36 | Viewing content without a link posted by a Professional Account User follows on Twitter. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on Twitter | Response |
|---|---|---|
| 42 | Viewing comments to Tweets posted by a person User follows on Twitter that does not follow User back. | No |
| 58 | Listening to live audio in a Space on Twitter. | No |
| 63 | Viewing video(s) using Twitter's immersive media viewer posted by any Personal Account that User follows and that follows User where User has met the owner of the account. | No |
| 79 | Viewing live video(s) on Twitter posted by User's friend or family member. | No |
| 85 | Viewing content on User's Home timeline on Twitter posted by an account that User follows that does not follow User. | No |
| 87 | Viewing content that was posted to a Twitter Circle with five or fewer members whose mobile telephone number User possessed prior to joining Twitter. | No |
| 88 | Tweeting Original content that encourages Users that reside in close physical proximity to attend a local social event. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

| Number | Feature/Activity on Twitter | Response |
|--------|------------------------------|----------|
| 95 | Viewing content on a Twitter profile of a business User follows and that follows User. | No |
| 100 | Viewing Twitter Fleets posted by an account that follows User, who user also follows. | No |

Meta's List implies that the above-referenced features/activities are available on Twitter and are "similar" to features/activities available on Facebook Blue, Instagram, and Facebook Messenger. Meta's List at 8-11, 13 (implying similarity with Facebook Blue), 14, 16, 18 (implying similarity with Instagram), 18 (implying similarity with Facebook Messenger). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue, Instagram, and Facebook Messenger. Meta provides no evidence regarding how often these features/activities occur on Twitter compared to other user features/activities on Twitter, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Twitter and those currently available on Facebook Blue, Instagram, and Facebook Messenger.

The FTC's present understanding is that Twitter does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. Twitter presents a user experience dedicated to the

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

broadcast or discovery of content based on users' interests, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. *See, e.g.*, SAC ¶ 174 (distinguishing personal social networking services from online services focused on the broadcast or discovery of content based on users' interests rather than their personal connections, such as Twitter). Ordinary course records and other evidence support the FTC's understanding. *See, e.g.*,

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**YouTube**

| Number | Feature/Activity on Twitter | Response |
|---|---|---|
| 1 | Viewing publicly accessible video(s) on YouTube's "Home" Tab, posted by an account User subscribes to. | No |
| 2 | Viewing advertisement(s) on YouTube. | No |
| 10 | Commenting on YouTube Shorts posted by an account User subscribes to. | No |
| 16 | Watching live-stream gaming videos on YouTube Live. | No |
| 19 | Viewing video(s) on YouTube Live posted by an account that is a friend or family member of the User. | No |
| 29 | Viewing Original video(s) posted by a User's friend or family member on YouTube showing their child's first steps. | No |

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

| Number | Feature/Activity on Twitter | Response |
|---|---|---|
| 33 | Viewing content posted by a public figure User subscribes to on YouTube but that does not subscribe to User. | No |
| 43 | Viewing Suggested video content that does not originate from accounts User subscribes to on YouTube. | No |
| 61 | Viewing YouTube Shorts posted by a celebrity User subscribes to who does not subscribe to User. | No |
| 66 | Viewing branded content on YouTube. | No |
| 71 | Commenting on YouTube Shorts posted by an account User subscribes to that does not subscribe to User. | No |
| 82 | Watching a movie trailer on YouTube | No |
| 84 | Viewing content on YouTube posted by account that User subscribes to that does not subscribe to User. | No |

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

Meta's List implies that the above-referenced features/activities are available on YouTube and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at 4-11 (implying similarity with Facebook Blue), 13-14, 16 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on YouTube compared to other user features/activities on YouTube, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on YouTube and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that YouTube does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. YouTube presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. *See, e.g.*, SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as YouTube). Ordinary course records and other evidence support the FTC's understanding. *See, e.g.*,

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**



Dated: January 24, 2023                    Respectfully submitted,

                                           By: */s/ Daniel Matheson*
                                           Daniel Matheson (D.C. Bar 502490)
                                           Krisha Cerilli (D.C. Bar 983281)
                                           Maria Dimoscato (D.C. Bar 489743)
                                           Patricia Galvan
                                           Owen Masters (D.C. Bar 242139)
                                           Susan Musser (D.C. Bar 1531486)
                                           Michael Smith (D.C. Bar 996738)
                                           Mitchell London (D.C. Bar 1029408)
                                           Jessica Moy
                                           Nathan Brenner
                                           Rebecca Weinstein

                                           Federal Trade Commission
                                           Bureau of Competition
                                           400 Seventh Street, S.W.
                                           Washington, D.C. 20024
                                           Telephone: (202) 326-2075
                                           Email: dmatheson@ftc.gov

                                           *Attorneys for Plaintiff*
                                           *Federal Trade Commission*

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2023, I caused true and correct copies of the foregoing PLAINTIFF FEDERAL TRADE COMMISSION'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES to be served via electronic mail on counsel listed below:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com
James P. Rouhandeh
Michael Scheinkman

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

/s/ Nathan Brenner
Nathan Brenner
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2314
Email: nbrenner@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*