**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ANSWER TO INTERROGATORY NO. 2 REGARDING FACTS NONPARTIES PROVIDED THE FTC IN 2012 AND 2014**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 6

A. Interrogatory No. 2 Plainly Seeks The Facts Nonparties Told The FTC During The Instagram And WhatsApp Investigations ........ 7

B. No Privilege Or Doctrine Covers Facts Nonparties Provided The FTC Concerning Meta's Acquisitions ........ 7

1. The Deliberative Process Privilege Is Inapplicable ........ 7

2. The Work Product Doctrine Is Inapplicable ........ 8

3. Meta's Substantial Need For These Facts Overcomes Any Claimed Protection........ 10

4. No Other Privilege Claim Is Valid........ 13

C. The Scheduling Order Does Not Excuse The FTC's Withholding Of Relevant Facts. ........ 14

CONCLUSION........ 15

## TABLE OF AUTHORITIES

### CASES

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) .......... 11

*Cause of Action v. FTC*, 961 F. Supp. 2d 142 (D.D.C. 2013) .......... 9

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .......... 8

*EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343 (N.D. Ill. 2005) .......... 8, 9, 10

*FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142 (D.C. Cir. 2015) .......... 10

*FTC v. RAG Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) .......... 10

*FTC v. Staples*, 2016 WL 259642 (D.D.C. Jan. 21, 2016) .......... 12

*Gipson v. Sw. Bell Tel. Co.*, 2009 WL 7902035 (D. Kan. Mar. 24, 2009) .......... 15

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .......... 10

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) .......... 14

*Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992) .......... 7

*Interstate Fire & Cas. Co. v. Roman Cath. Church of Diocese of Phoenix*, 2012 WL 12867974 (D. Ariz. Jan. 19, 2012) .......... 11

*Johnson v. Wash. Metro. Area Transit Auth.*, 1990 WL 113877 (D.D.C. July 26, 1990) .......... 11

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) .......... 8

*Resolution Tr. Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995) .......... 9

*Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983) .......... 13

*Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890 (D.D.C. Dec. 16, 2005) .......... 14

*United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018) .......... 11

*United States v. Blue Cross Blue Shield of Mich.*, 2012 WL 12930840 (E.D. Mich. May 30, 2012) .......... 13

*United States v. Dean Foods Co.*, 2010 WL 3980185 (E.D. Wis. Oct. 8, 2010) .......... 9, 13

*United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152 (D. Del. 1999) .......... 9, 13

*United States v. US Airways Grp., Inc.*, 2013 WL 12341600 (D.D.C. Oct. 10, 2013) .......... 12

### RULES

Fed. R. Civ. P. 26(b)(3)(A) .......... 8

### OTHER AUTHORITIES

8 Charles Alan Wright et al. Federal Pratice & Procedure § 2023 (3d ed. 2022) .......... 9

## INTRODUCTION

In this unprecedented antitrust lawsuit, the FTC challenges Meta's acquisitions of Instagram in 2012 and WhatsApp in 2014, despite having reviewed and cleared both transactions. As part of its reviews, the FTC interviewed 63 people from 34 companies. The facts the FTC obtained from these interviews many years ago are among the only contemporaneous evidence about the foreseeable competitive effects of the acquisitions at issue in this case. Those facts are also lost to time – or at least to Meta. Meta has attempted to contact each person the FTC interviewed. Of those who have responded to Meta's inquiries, no one recalled their conversation with the FTC back in 2012 or 2014 (with one exception, who remembered very little – not even which acquisition the FTC asked him about). Meta has also found it difficult to obtain documents and data through third-party discovery from that far back. As a result, only the FTC possesses this important evidence, and Meta cannot recreate it.

Meta's Interrogatory No. 2 asked the FTC to state the facts nonparty witnesses gave it about the Instagram and WhatsApp acquisitions. It is undisputed that the FTC still possesses these facts; it admits it has notes of at least some of these interviews. The FTC, however, has refused to answer Meta's interrogatory, claiming that the interrogatory does not actually seek this information, that the facts nonparties gave the FTC are privileged, and that Paragraph 16 of the Scheduling Order precludes discovery of these facts. The FTC is wrong on each count. The interrogatory, read together with its instructions, clearly asked the FTC to provide the facts it obtained from nonparties. No privilege protects mere facts, especially under the highly unusual circumstances here, where the facts are otherwise unavailable because of the FTC's delay in challenging these long-ago transactions. And Paragraph 16 of the Scheduling Order is simply inapplicable to facts the FTC collected from third parties during its past investigations.

The Court denied Meta's previous motion to compel the FTC to produce its investigative

memoranda from the Instagram and WhatsApp acquisitions in part on the ground that Meta could obtain non-privileged factual information directly from the nonparties. Meta has now tried and has been unable to do that. Meta respectfully requests the Court to order the FTC to answer Meta's Interrogatory No. 2 so that both parties have equal access to the facts the FTC collected from nonparties in 2012 and 2014.

**BACKGROUND**

The FTC has confirmed to Meta that it interviewed 63 representatives of more than two dozen competitors and industry participants in connection with its pre-transaction review of Meta's acquisitions of Instagram and WhatsApp. In 2012, the FTC interviewed 47 people about Meta's acquisition of Instagram. Many of these people were from companies that competed with Facebook and Instagram, including [REDACTED] . *See* Ex. A, FTC's Suppl. Objs. & Resp. to Meta's First Set of Interrogs. Nos. 1-2 at 6-7. In 2014, the FTC interviewed 16 people about Meta's acquisition of WhatsApp. Here, too, the FTC focused on companies that competed with Facebook and WhatsApp, such as [REDACTED]. *See id.* The FTC allowed both transactions to close. It then waited until late 2020 – long after memories had faded and documents were lost – to challenge those deals.

On March 30, 2022, Meta served interrogatories asking the FTC to identify the nonparties it interviewed in 2012 and 2014 and any factual information those nonparties provided the FTC about Meta's acquisitions. Interrogatory No. 1 asked the FTC to "[i]dentify all Persons You communicated with relating to Your Prior Instagram Investigation, Prior WhatsApp Review, Pre-Complaint Investigation, or any allegation in the Complaint or Amended Complaint." *Id.* at 1. Interrogatory No. 2 asked the FTC to "[i]dentify all Communications

between You and any other Person relating to the Prior Instagram Investigation, Prior WhatsApp Review, Pre-Complaint Investigation, or any allegation in the Complaint or Amended Complaint." *Id.* at 11. The Interrogatories' instructions stated that "[f]or each interrogatory requesting [the FTC] *identify* an action, event, occurrence, meeting, or Communication," the FTC should provide "*a description of the facts conveyed* in the action, event, occurrence, meeting, or Communication to the extent they are not memorialized in a Document produced in this Action." *Id.* at 1 (emphasis added).

During the parties' meet and confers, the FTC confirmed that it possesses handwritten notes of at least some of the interviews it conducted in 2012 and 2014. *See* Ex. B, Ltr. from D. Matheson to K. Huff at 3 (Apr. 27, 2022). On May 6, 2022, Meta agreed to narrow Interrogatory No. 2, explaining it would be sufficient for the FTC to describe the factual information that nonparties conveyed to it during its interviews for the Instagram and WhatsApp investigations. *See* Ex. C, Ltr. from K. Huff to D. Matheson at 7 (May 10, 2022). The FTC refused to provide this information on the grounds that it was "subject to a number of applicable privileges, including deliberative process." Ex. D, Ltr. from D. Matheson to K. Huff at 2 (May 13, 2022). Instead, the FTC said that, in response to Interrogatory No. 1, it would identify the individuals it contacted during its investigations so Meta could ask those nonparties "what information they conveyed to the FTC." *Id.* On May 27, 2022, the FTC supplemented its response to Interrogatory No. 1 with the companies (but not the specific people) it interviewed. Ex. A at 3-4.

In addition to these interrogatories, Meta also served requests for production of documents, seeking investigative memoranda prepared by FTC staff and economists for the FTC's investigations of Instagram and WhatsApp. The FTC refused to provide these documents as well, asserting various privileges. On July 5, 2022, Meta moved to compel the FTC to

produce its memoranda. The Court denied Meta's motion on September 6, 2022, holding that the deliberative process privilege applied to the memoranda. Among other things, the Court found that Meta had not shown a substantial need for the memoranda because "the FTC has identified all of the available documents and witnesses that it interviewed ahead of its 2012 and 2014 recommendations." Mem. Op., ECF No. 189 at 19 (Sept. 6, 2022). "The availability of this evidence," the Court explained, "negate[d] any need" for the memoranda. *Id.*

On September 22, 2022, Meta again asked the FTC to answer Interrogatory No. 2 by providing the facts it received from nonparties in 2012 and 2014, because "purely factual information provided to the FTC" a decade ago is not privileged. Ex. E, Ltr. from K. Huff to D. Matheson at 2 (Sept. 22, 2022). On Interrogatory No. 1, Meta asked the FTC to identify the specific people it interviewed, pointing out the Court had denied Meta's motion to compel based in part on the FTC's representation that it had "identified to Meta all of the witnesses the FTC interviewed." *Id.* On October 7, 2022, the FTC supplemented its response to Interrogatory No. 1, identifying 63 people it interviewed in 2012 and 2014. Ex. A at 6-7.

Since then, Meta has engaged in an extensive effort to try to contact every person the FTC interviewed in an attempt to recreate the facts the FTC is withholding. Despite this effort, Meta has failed to obtain information from all but *one* witness about what they told the FTC back in 2012 or 2014. Specifically, twenty-two people confirmed to Meta that they had no recollection of speaking with the FTC about Meta's acquisitions, or did not remember the substance of the conversation. Ex. F, Treiger Decl. ¶ 4; *see*, *e.g.*, Ex. G, [REDACTED] One witness vaguely recalled an interview with the FTC, but did not even remember whether the interview concerned Instagram or WhatsApp. Ex. F, ¶ 6. Meta was unable to reach eleven people either because Meta could not locate them or because the FTC failed to provide complete

names (naming people such as "[redacted] *Id.* ¶ 7. Twenty-nine people never responded to Meta's attempts to interview them. *Id.* ¶ 8.

Meta has also done its best to collect as much evidence as possible from 2012-2014 through third-party discovery. But it has encountered numerous obstacles due to the passage of time. Meta has been unable to obtain documents from some nonparties because they are no longer in business or cannot be located. [redacted]

Meta has also struggled to obtain documents from competitors located abroad. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]



In light of Meta's difficulty in obtaining information from other sources, on February 27, 2023, Meta asked the FTC to reconsider its refusal to answer Interrogatory No. 2. On March 8, the FTC reaffirmed its position. *See* Ex. J, Ltr. from J. Moy to K. Huff at 2 (Mar. 8, 2023).

**ARGUMENT**

Meta's Interrogatory No. 2 seeks the facts that nonparties gave the FTC about the central issues in this case. The FTC has not disputed the relevance of this information; indeed, it is critical contemporaneous evidence of the foreseeable competitive effects of Meta's acquisitions. Given the passage of time, these facts are not otherwise available to Meta. None of the FTC's various excuses for refusing to answer the interrogatory withstands scrutiny.

### A. Interrogatory No. 2 Plainly Seeks the Facts Nonparties Told the FTC During the Instagram and WhatsApp Investigations

Interrogatory No. 2 read together with instruction 13 clearly ask the FTC to provide the facts nonparties told the FTC during the Instagram and WhatsApp investigations. Interrogatory No. 2 asks the FTC to "[i]dentify all Communications" it had with "any other Person relating to the Prior Instagram Investigation [or] WhatsApp Review." Ex. A at 11. In turn, instruction 13 explains that, for any interrogatory "requesting [the FTC] identify an action, event, occurrence, meeting, or Communication," the FTC must provide "a description of the facts conveyed" unless contained in a document the FTC had produced. *Id.* at 1. Read together, Meta plainly asked for the information the FTC is withholding. Meta further confirmed this to the FTC months ago, when it agreed that the FTC could satisfy this interrogatory by describing the factual information that nonparties conveyed to it during its Instagram and WhatsApp investigations. *See* Ex. C at 7.

### B. No Privilege or Doctrine Covers Facts Nonparties Provided the FTC Concerning Meta's Acquisitions

#### 1. The Deliberative Process Privilege Is Inapplicable

The deliberative process privilege (which the FTC has asserted) does not apply to a narrative answer to an interrogatory setting forth the facts that the FTC collected during its investigations. That privilege protects only "materials [that] can reasonably be said to embody an agency's policy-informed or -informing judgmental process" such that "disclosure would tend to diminish candor within an agency." *Petrol. Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (compelling disclosure). Accordingly, "[f]actual material that does not reveal the deliberative process is not protected." ECF No. 189 at 9; *see, e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 30, 39 (D.C. Cir. 2002) (ordering disclosure of "purely

factual" information used in agency decision-making). That is the case here.

Meta's interrogatory asks the FTC to state the *facts* that nonparties provided the FTC during interviews conducted in 2012 and 2014. None of this information is deliberative because it reflects how *nonparties* – not the FTC – viewed the foreseeable competitive effects of the acquisitions. Moreover, because Meta seeks a recitation of the facts – not the FTC's questions, interview notes, or memos – the FTC can craft an interrogatory answer that does not reveal its analysis. *See EEOC v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346-47 (N.D. Ill. 2005) (observing "[c]ompetent counsel routinely . . . provide interrogatory responses that set forth only that factual information without revealing 'mental processes, impressions and strategies' ").

For the same reason, the principles that led the Court to hold that the FTC's staff and economist memoranda were protected by the deliberative process privilege do not apply here. The Court held that the factual material in the memoranda was "assembled . . . for purely internal deliberative purposes" and "inextricably intertwined with the deliberative portions of the documents, including predecisional staff analysis and opinions." ECF No. 189 at 10-11 (internal quotation marks omitted). But Meta's interrogatory seeks only the facts nonparties provided to the FTC. Describing those facts in a narrative interrogatory response will not reveal how the FTC assembled them to facilitate its analysis, nor will it sweep in agency analysis or opinions.

### 2. The Work Product Doctrine Is Inapplicable

For similar reasons, the work product doctrine (which the FTC has also invoked) does not apply. Work product shields "documents and tangible things" prepared in anticipation of litigation to protect attorneys' mental impressions, strategies, and opinions. Fed. R. Civ. P. 26(b)(3)(A); *see Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). It does not protect facts. *See Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.

1995); *Cause of Action v. FTC*, 961 F. Supp. 2d 142, 168 (D.D.C. 2013) ("[T]he government cannot exempt pure statements of fact from disclosure by calling them attorney work-product."), *rev'd on other grounds* 799 F.3d 1108 (D.C. Cir. 2015). For that reason, courts have "consistently held that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned . . . even though the documents themselves may not be subject to discovery." 8 Charles Alan Wright et al., Fed. Prac. & Proc. § 2023 (3d ed. 2022); *see, e.g.*, *Jewel Food*, 231 F.R.D. at 346 (compelling answer to interrogatory seeking "substance of the information [witnesses] possess, and the statements they have made"); *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 155-56 (D. Del. 1999) (compelling DOJ to answer interrogatory seeking "all facts" DOJ obtained from "184 individuals and entities who were interviewed").

*United States v. Dean Foods Co.*, 2010 WL 3980185 (E.D. Wis. Oct. 8, 2010), is on point. There, the defendant in an antitrust action moved to compel the government to answer its interrogatory seeking the facts the government obtained from nonparty witnesses during its pre-merger investigation. *See id.* at *1. The court rejected the government's claim of work product, observing that "[t]he doctrine cannot be used to protect the underlying facts found within work-product." *See id.* at *2. Because the interrogatory sought "the kind of factual information [ ] routinely sought during discovery" and did "not delve into the attorneys' impressions about the facts obtained," the court required the government to respond. *Id.* at *3.

The Court should reach the same result here. Meta's interrogatory "does not require the Government to supply its counsel's view of the case, identify the facts which counsel considered significant or reveal the specific questions asked by the Government attorneys." *Dentsply Int'l*, 187 F.R.D. at 155. Instead, as in *Dean Foods*, Meta seeks purely factual information nonparties

provided the FTC in 2012 and 2014 about the market, the then-existing state of competition, and the nonparties' view of the likely effects of Meta's acquisitions. "That kind of factual information is routinely sought in discovery, and may not be withheld from production on the basis of work product." *Jewel Food*, 231 F.R.D. at 346.

**3. Meta's Substantial Need for These Facts Overcomes Any Claimed Protection**

Even when applicable, the deliberative process privilege and work product doctrine are *qualified* protections. The deliberative process privilege "can be overcome by a sufficient showing of need" in light of (1) the relevance of the evidence, (2) its availability from other sources, (3) the seriousness of the litigation, (4) the government's role, and (5) the possibility of future timidity by government employees. *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (per curiam). Work product can be overcome based on similar factors. *See FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 153-55 (D.C. Cir. 2015) (fact work product can be overcome upon showing of "substantial need" for, and unavailability of, the evidence).

In ruling on Meta's prior motion, the Court "recognize[d] the seriousness" of this novel antitrust case. ECF No. 189 at 19. And the disclosure of the pure facts the FTC received from nonparties long ago could not possibly intimidate government employees in future investigations. As a result, whether Meta can overcome these privileges turns on the first two factors – the relevance of the facts and their availability. Both factors favor Meta.

*Meta Has Substantial Need for These Facts*. Meta seeks facts that are highly relevant to the issues before the Court. In 2012 and 2014, the FTC necessarily had to determine the relevant antitrust market that might be affected by the transactions. *See*, *e.g.*, *FTC v. RAG Stiftung*, 436 F. Supp. 3d 278, 292 (D.D.C. 2020) (declining to enjoin merger where FTC "has not identified a relevant market within which to analyze the merger's possible anticompetitive effects"). Because

"industry or public recognition" is one indicium of a relevant market, *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962), it is likely that nonparties provided their views on the competitive landscape. It is also likely that nonparties described how they believed the acquisitions were likely to affect competitors and consumers. *See*, *e.g.*, *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 214 (D.D.C. 2018) (requiring evidence of likely harm from merger), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). One of the questions in this litigation is the foreseeable impact of the two acquisitions on competition in 2012 and 2014, because acquisitions that do not threaten to harm competition under Section 7 cannot be exclusionary under Section 2. *See Brown Shoe*, 370 U.S. at 318 n.32. The contemporaneous views of industry participants on these issues are indisputably relevant to the FTC's Section 2 claim.

*This Evidence Is Otherwise Unavailable to Meta*. Meta cannot reasonably obtain this information elsewhere. Meta has made substantial efforts to contact the 63 people the FTC said it interviewed to try to piece together the facts in the FTC's possession. That investigation has hit a dead end. Meta has been unable to contact eleven people either because the FTC did not disclose the person's full name or because Meta simply could not locate them. Twenty-nine people did not respond to Meta's outreach. All but one of the twenty-three people Meta spoke with (directly or through counsel) could not recall their conversation with the FTC (and some did not even recall being interviewed). It is hard to think of a clearer case of substantial need for discovery due to the unavailability of evidence. *See Interstate Fire & Cas. Co. v. Roman Cath. Church of Diocese of Phoenix*, 2012 WL 12867974, at *1 (D. Ariz. Jan. 19, 2012) ("substantial need" where – due to passage of time – witnesses had faded memories); *Johnson v. Wash. Metro. Area Transit Auth.*, 1990 WL 113877, at *2-3 (D.D.C. July 26, 1990) (same).

This Court previously found Meta could obtain the facts the FTC collected in 2012 and

2014 without assistance from the FTC given the "availability" of the FTC witnesses. ECF No. 189 at 19. At the time, Meta did not know who the witnesses were, let alone whether those witnesses were available. After Meta's months of effort, it is clear that Meta cannot recreate the facts nonparties told the FTC a decade ago. Meta's inability to obtain documents from 2012 or 2014 from many of the companies that the FTC interviewed, as well as other important industry participants, underscores its need for the information solely in the FTC's possession.

The FTC's unprecedented delay in bringing this case provides an additional – and unique – reason to order the FTC to answer Interrogatory No. 2. When the FTC collected facts from nonparties about this case, Meta had no reason to conduct its own interviews. The FTC chose to clear the Instagram deal in 2012 and the WhatsApp deal in 2014. The FTC then waited until late 2020 to bring this lawsuit. In the interim, technology, users' preferences, and Meta's competition evolved dramatically. The long passage of time and intervening changes in the industry make it impossible for Meta to reassemble the facts the FTC possesses. Witnesses' memories of their interviews with the FTC have entirely faded. And whatever witnesses remember about the competitive landscape in 2012 or 2014 has been colored by the past decade. These unusual circumstances bolster Meta's claim to overcome these qualified privileges.

Meta's demonstrated inability to obtain the facts the FTC possesses due to the FTC's extreme delay distinguishes this case from those cases in which courts found defendants lacked a substantial need for the facts the government collected during investigations it conducted shortly before challenging a merger or other conduct. *Cf. FTC v. Meta Platforms, Inc.*, No. 5:22-cv-04325-EJD (N.D. Cal. Sept. 30, 2022) (Keulen, MJ), ECF No. 98-1 at 1; *FTC v. Staples*, 2016 WL 259642, at *3 (D.D.C. Jan. 21, 2016); *United States v. US Airways Grp., Inc.*, 2013 WL 12341600, at *3 (D.D.C. Oct. 10, 2013) (Special Master); *United States v. Blue Cross Blue*

*Shield of Mich.*, 2012 WL 12930840, at *3 (E.D. Mich. May 30, 2012) (Majzoub, MJ). None of those courts confronted the situation presented here, where the government's inexcusably long delay made it impossible to recreate the facts the government collected.

Indeed, fundamental fairness dictates that Meta have access to the facts in the FTC's possession. The FTC admits that it still has access to these facts. It would be grossly unfair to permit the FTC to use these facts to inform its litigation strategy while invoking privilege to deny Meta access to the same facts. *See Dean Foods*, 2010 WL 3980185, at *4 (DOJ cannot use work product "as both a sword and a shield"); *Dentsply*, 187 F.R.D. at 156 (government cannot use work product doctrine to "manipulate the timing of the revelation of facts it has gathered").

**4. No Other Privilege Claim Is Valid**

The FTC previously argued that its staff and economist memoranda were protected by the attorney-client privilege and investigatory file privilege. *See* ECF No. 160 at 29-30. The Court did not address those privileges in resolving Meta's previous motion to compel, *see* ECF No. 189, and the FTC has not cited them in the parties' discussions of Meta's Interrogatory No. 2. And for good reason: the privileges are inapt.

The attorney-client privilege protects confidential communications between lawyers and their clients undertaken for the purpose of providing or obtaining legal advice. *See Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983). Meta's interrogatory does not seek such communications. Nonparties' statements to the FTC are not attorney-client communications. *See id.* (attorney-client privilege did not apply to factual information that was "not provided by the 'client' – the Agency official who solicits the Chief Counsel's advice – but by a third party – the outsider who seeks a ruling from the Agency").

The investigatory file privilege is likewise inapposite. That privilege does not immunize

facts developed in a prior, closed investigation when they are relevant to issues raised in litigation and their disclosure will not jeopardize any ongoing law enforcement matter. *See In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988). The facts Meta seeks go to the heart of this case and, due to the FTC's unprecedented delay, are unavailable elsewhere. *See Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890, at *9 (D.D.C. Dec. 16, 2005) ("the importance of the information sought" is "the most crucial and important factor"). Because the FTC's inquiries ended a decade ago, there is no risk that disclosing facts about Meta's transactions poses a threat to any ongoing investigation. *See id*. at *10 (no privilege where investigation "took place approximately ten years ago").

### C. The Scheduling Order Does Not Excuse the FTC's Withholding of Relevant Facts

In a last-ditch effort to avoid this discovery, the FTC argues that the "contents of FTC staff notes are exempt from discovery" under Paragraph 16 of the Scheduling Order, which provides that certain privileged documents are not discoverable and need not be included in privilege logs. Ex. J at 2. This is wrong for several reasons.

*First*, Meta does not seek a production of interview notes or other documents. As to the FTC, Paragraph 16 applies only to communications "produced by or exchanged solely among and between" "counsel" to the FTC or "persons employed" by the FTC, or the FTC and either "a plaintiff with which the FTC shares a common legal interest" or "counsel employed by any executive-branch agency." Scheduling Order, ¶ 16, ECF No. 103 (Feb. 3, 2022). It does not apply to an interrogatory seeking facts from third parties that may happen to be contained in those communications.

*Second*, Paragraph 16 applies to "privileged or otherwise protected communications." For the reasons discussed above, the information Interrogatory No. 2 seeks is not privileged.

Courts interpreting similar provisions first determine the "validity" of the "privilege and work product objection" – a "crucial" step because, "[i]f there is no valid basis for claiming the information is privileged or protected work product, then the [stipulation] does not apply." *Gipson v. Sw. Bell Tel. Co.*, 2009 WL 790203, at *15 (D. Kan. Mar. 24, 2009) (cleaned up), *objections sustained and overruled in part*, 2009 WL 4157948 (D. Kan. Nov. 23, 2009).

*Third*, Paragraph 16 applies only to documents prepared since the commencement of the present litigation. Such provisions are common in scheduling orders and are intended to reduce the administrative burden of logging thousands of privileged internal communications relating to the active litigation. *See* Ex. K, Ltr. from K. Huff to D. Matheson at 2 (May 4, 2022). In negotiating Paragraph 16, Meta made clear to the FTC that it intended to seek discovery into the FTC's investigations. *See id*. at 3 (discussing the history of the parties' negotiations). The Court should not permit the FTC to dodge answering a critical interrogatory by asserting an immunity that was never intended by the parties or the Court.

*Finally*, even if Paragraph 16 applied (and it does not), for all the reasons set forth above, good cause exists to modify that provision to require the FTC to answer Interrogatory No. 2.

**CONCLUSION**

The Court should order the FTC promptly to provide a complete answer to Interrogatory No. 2 by stating the facts it obtained from nonparties in 2012 and 2014 regarding the Instagram and WhatsApp acquisitions.

Dated: March 13, 2023

Respectfully submitted,

/s/ *Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
Kevin B. Huff (D.C. Bar No. 462043)
Andrew E. Goldsmith (D.C. Bar No. 1007074)
Kevin D. Horvitz (D.C. Bar No. 1521032)
Alex Treiger (D.C. Bar No. 1670925)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
agoldsmith@kellogghansen.com
khorvitz@kellogghansen.com
atreiger@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*