# Exhibit C

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

May 10, 2022

*Via Electronic Mail*

Daniel J. Matheson, Esq.
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024

          Re:    *FTC v. Meta Platforms, Inc.*, Case No. 1:20-cv-03590-JEB (D.D.C.)

Dear Dan:

      I write on behalf of Meta Platforms, Inc. ("Meta") to memorialize the May 6, 2022 meet-and-confer between the Federal Trade Commission ("FTC") and Meta regarding Meta's First Set of Interrogatories to the FTC, dated March 30, 2022, and Meta's First Set of Requests for Production of Documents, dated March 9, 2022.[1]  We request your prompt response to the issues identified in this letter, so that the parties can resolve these fundamental issues, either through your prompt supplementation of your responses, or through Court intervention if we cannot reach agreement.  We discuss herein only some of the FTC's interrogatory responses; we do not concede that any unmentioned responses are adequate; and we reserve all rights with respect to all of Meta's discovery requests.

**I.      The FTC Must Provide Substantive Responses to Interrogatory Nos. 10 and 12, Which Ask the FTC To Identify what Qualifies as "Personal Social Networking" on Facebook, Instagram, WhatsApp, and Facebook Messenger**

      Interrogatory No. 10 asks a straightforward question:  "For each feature or activity available to users on Facebook, Instagram, WhatsApp, or Facebook Messenger, specify whether the feature or activity is or is not within the definition of 'personal social networking' (*see* Amended Complaint ¶ 164)."  In response to this Interrogatory, the FTC lodged objections,

---

[1] FTC Participants on the May 6, 2022 call, in addition to yourself, included Tim Slattery, Sunila Steephen, and Abby Dennis.  Participants for Meta included Kevin Huff, Kevin Horvitz, Ana Paul, Vivian Dong, and Justin Berg.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 10, 2022
Page 2

contending that the request was vague and premature, and quoted your assertion in the Amended Complaint that "'personal social networking services'" are "'online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space,'" and you reiterated "the three key elements" that the Amended Complaint contends "distinguish personal social networking services from other forms of online services provided to users." (Quoting Am. Compl. ¶ 166.) However, regurgitation of the Amended Complaint is not a sufficient response. *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 304–05 (D. Nev. 2019) ("An interrogatory response is improper if it merely references information contained in declarations, pleadings, or other discovery responses.") (collecting cases). Although the FTC has conceded that not all time spent using Facebook and Instagram qualifies as time spent using personal social networking services ("PSNS"), the response to this Interrogatory is plainly deficient because it does not identify *any* activity that is performed on *any* of these Meta applications that either *is* or *is not* within the FTC's definition of using PSNS.

Interrogatory No. 12 asks another simple question: "State whether a user is engaging in personal social networking services when that user is not utilizing each of the '[t]hree key elements' of personal social networking (*see* Amended Complaint ¶¶ 166-169), and state the basis for your answer." In response to this Interrogatory, you lodged objections, contending that the request is premature, and that the "Substitute Amended Complaint does not describe 'personal social networking services' based on whether a user is or is not 'utilizing' any particular 'elements' that distinguish online 'personal social networking services' from other online services and products." You did not provide *any* answer to this Interrogatory, and your response is therefore deficient.

### A. Interrogatory Nos. 10 and 12 Seek Highly Relevant Information

Interrogatory Nos. 10 and 12 seek highly relevant information that goes to the heart of the issues in this case. As you know, the FTC alleges that Facebook and Instagram are PSNS providers and that Meta is an alleged monopolist in the provision of PSNS in the United States. *See* Am. Compl. ¶¶ 164, 179; s*ee also* Am. Compl. ¶ 202 (alleging that if one assumes that 50% of time spent on Facebook and Instagram qualifies as time spent using personal social networking services — "Facebook's share of time spent on U.S. personal social networking services in each month would still have averaged 85% since September 2012.").

To combat the FTC's market definition and allegations of market power, Meta must understand, *at a minimum*, which portions of its own products are in the alleged market and which are not. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) (explaining that without "an accurate definition of the relevant market" that outlines "the area of effective competition" for the defendant's product and "reflects commercial realities," there is "no way to measure" whether the defendant has any "ability to lessen or destroy competition" and harm the

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 10, 2022
Page 3

consumers the antitrust laws are designed to protect) (internal quotation marks omitted). That information is *entirely* in the FTC's possession because the PSNS market is a litigation construct created by the FTC for this litigation. *See FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1 (D.D.C. 2021) (noting that the FTC's alleged market is "idiosyncratically drawn") (internal quotation marks omitted).

As we explained during our call, Meta is entitled to know which activities on Facebook, Instagram, WhatsApp, and Facebook Messenger constitute the use of PSNS and which do not. The FTC has taken the position that not everything done on Facebook and Instagram qualifies as time-spent using PSNS. Rather than alleging that Facebook and Instagram are used purely for PSNS, the FTC alleged that "Facebook Blue and Instagram are *predominantly used* as personal social networking services," Am. Compl. ¶ 202 (emphasis added). The FTC highlighted this allegation in its opposition to Meta's motion to dismiss (at 6-7), asserting that the Amended Complaint should not be dismissed because it had alleged that users spent *at least* "half of their time on Facebook Blue and Instagram using PSN services." The FTC could not have made those factual representations under Federal Rule of Civil Procedure 11 if it did not know what activities on Facebook and Instagram it contended qualify as the use of a PSNS under the FTC's definition, and which activities do not. *See King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5 (D.D.C. 1987) (ordering plaintiff to respond to the interrogatory, because "plaintiffs must have had some factual basis" for making the allegation, "at the time the complaint was filed," and observing that "Rule 11 . . . requires no less").

Moreover, the Court's denial of Meta's motion to dismiss was premised on the Court's understanding that not all activities performed on Facebook and Instagram qualify as the use of a PSNS. *See FTC v. Facebook, Inc.*, 2022 WL 103308, at *8 (D.D.C. Jan. 11, 2022) ("Defendant is correct that data capturing time spent on platforms providing PSN services includes more than time spent just using such services."). Which features or activities on Facebook and Instagram are in the alleged market, however, is a complete black box to Meta. As the Court observed, the FTC's vague complaint, "[leaves] open . . . exactly which features of Facebook, Instagram, *et al.* do and do not constitute part of their PSN services." *FTC v. Facebook*, 560 F. Supp. 3d 1. This leads to innumerable questions:

> The Commission, for instance, expressly alleges that social-networking services based on "interest-based . . . connections" such as Strava are not, by its definition, PSN services. [Redacted Compl.] ¶ 58. That definition of what is in the market, perhaps counterintuitively to Facebook users, would mean that time a user spends engaging with specific interest-based Facebook pages or groups may not qualify as time spent on a PSN service. The same problem arises when a user "passive[ly] consum[es]" "online video" on a PSN service. Id., ¶ 59. To the extent that, say, Instagram users spend their time on the site or app watching a comedy routine posted by the official page of a famous comedian, are they spending time on a PSN service?

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 10, 2022
Page 4

*Id.* In our meet-and-confer, we posed a handful of other representative examples of activities on Facebook and Instagram that Meta does not know how the FTC classifies, including "viewing content on your Facebook Feed that was not posted by one of your Facebook friends," "viewing content on Instagram posted by a celebrity that the user follows," "viewing a video on Instagram Reels posted by an individual that the user does not follow," and "watching a movie trailer embedded on the official page of a movie."[2] The answers to these questions are uniquely in the possession of the FTC.

It is critical for the FTC to explain to Meta the contours of the FTC's definition of the relevant antitrust market. The FTC made up this PSNS market; it is not a term that Meta uses; it is not grounded in industry practice; and it is not supported by economic reality. As such, the FTC's contentions about the scope and contours of this market are solely in the FTC's possession. Meta cannot defend against the FTC's allegations or meaningfully conduct discovery without knowing what activities are inside or outside of the alleged relevant market. Meta needs to know the scope of the market so it can defend against that alleged market definition and the FTC's allegation that Meta possesses monopoly power in that alleged market. Market definition and monopoly power are two of the key issues in any antitrust case. *See FTC v. Facebook*, 2022 WL 103308, at *4 (describing as "threshold inquiry" whether "Facebook has monopoly power in a relevant market"); *Am. Express Co.*, 138 S. Ct. at 2285 ("Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition.") (internal quotation marks omitted).

In addition, Meta needs this information at the outset of the case, not later. For example, Meta needs to know the full scope of the FTC's proposed market in order to seek appropriate testimony from third parties about their views of the FTC's proposed market. Views of market participants on the scope of a proposed antitrust market are a key tool in testing the "boundaries" of any such market. *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *see also*, *e.g.*, *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 32-33 (D.D.C. 2015) (citing testimony from an "industry's [various] players regarding the boundaries of the product market"). The FTC's withholding of this information would therefore deprive Meta of its ability to effectively collect evidence on this central issue. Therefore, the information sought in Interrogatory Nos. 10 and 12 is highly relevant and Meta needs it now instead of later in the course of the litigation.

---

[2] *See also*, *e.g.*, *FTC v. Facebook*, 2022 WL 103308, at *7 (indicating that "watching a movie trailer embedded on the official page of the movie" likely does not qualify as "engaging with a PSN service . . . given how the FTC defined the market").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 10, 2022
Page 5

      B.      **The FTC's Objections Are Meritless**

In the FTC's response to Meta's interrogatories and again on our meet-and-confer call, you raised a handful of meritless objections to Interrogatory Nos. 10 and 12.

*First*, you claimed not to understand the interrogatories on the ground that "personal social networking service" is a noun and Meta's interrogatories sought information about users engaging in "personal social networking," which you said was a verb. This is sophistry. The FTC itself has used the term "personal social networking" as a verb. *See* Compl. ¶ 11 ("Instagram—a mobile-first app that enables users to engage in personal social networking with family and friends through taking, editing, sharing, and commenting on photographs."). The FTC has also said that users "use" "personal social networking." *E.g.*, Am. Compl. ¶ 21. It is clear from the context of the interrogatories – as well as from the FTC's own allegations and the Court's decision – that we seek information about what uses of Facebook or Instagram services constitute PSNS and which do not. In any event, we clarified this point during the meet-and-confer, which confirms that there is no valid basis for an objection on this point. The FTC is obligated to answer the interrogatory, and cannot continue to feign ignorance over the type of information Meta is seeking. *See Escamilla v. Nuyen*, 2015 WL 4245868, at *5 (D.D.C. July 14, 2015) ("Interrogatories . . . should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request.") (internal quotation marks omitted).

*Second*, you argued that it is premature for the FTC to answer these interrogatories. To the contrary, it is critical that the FTC provide this information at the outset of the case. As noted above, the concept of PSNS is a creation of the FTC. Only the FTC has information about what is inside or outside of that made-up definition. The FTC has already had 18 months of discovery during which Meta and several third parties produced a total of millions of pages of documents and the FTC took testimony in 18 investigative hearings. The FTC's Amended Complaint alleges that there is a relevant antitrust market for PSNS and that Meta has a 70-85% market share in that market. The FTC alleged that activities on Facebook and Instagram were "predominately" PSNS. In order to make these allegations in good faith, the FTC must have known what activities were inside and outside of its definition of PSNS. Meta is entitled to know that information now. And while the FTC can take discovery to try to further substantiate alleged market definition, no amount of documents or testimony in fact discovery will provide Meta with any clarity on what the FTC alleges, because there is no evidence that the term "personal social networking" is used by any market participants, and the FTC is in exclusive possession of the meaning of its coined term. There is no reason to delay responses to these foundational framing issues. Indeed, it is not uncommon for courts to order detailed responses to interrogatories before expert reports in antitrust cases and cases where the government has benefited from substantial pre-complaint discovery. *See*, *e.g.*, *In re Urethane Antitrust Litig.*, 2009 WL 2058759, at *2 (D. Kan. July 15, 2009) (although the "expert *may* identify additional

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 10, 2022
Page 6

[information] that support[s] plaintiffs' claims, plaintiffs may not shirk their duty of answering [contention interrogatories] now 'with whatever information they have.'") (citation and footnote omitted); *SEC v. Blackwell*, 2004 WL 6829614, at *3 (S.D. Ohio Jan. 15, 2004) (ordering response to contention interrogatory where "discovery ha[d] just begun" since "the Commission is . . . not in the same position as an ordinary civil litigant that has yet to commence discovery . . . [as] it has the benefit of having conducted a lengthy investigation" and explaining that "[t]he rationale behind the postponement of contention interrogatories is thus not present here, where the Commission has already conducted significant discovery and should have, in fact is required to have, adequate information to support the contentions in its Complaint"); *United States ex rel. Dougherty v. Guild Mortg. Co.*, 2020 WL 3542391, at *5 (S.D. Cal. June 30, 2020) (ordering government plaintiff to respond to purported contention interrogatory prior to the conclusion of fact discovery, and explaining that the "Government's two-year statutory investigation should have enabled it to identify the specific allegations . . . as soon as discovery commenced").

*Third*, your argument that the interrogatories should count as multiple discrete subparts is incorrect. Courts "apply a 'pragmatic approach' when determining whether an interrogatory should count as more than one question within the meaning of Rule 33" and it is clear from the context that these two interrogatories count as only one interrogatory each. *Ramirez v. U.S. Immigration & Customs Enf't*, 2019 WL 11623990, at *2 (D.D.C. June 4, 2019) (explaining that even when there are technical subparts, if the "subparts all relate to the common theme" they only count as one interrogatory).

### C. Supplementation

In our meet-and-confer, we provided further clarification on what information we sought in Interrogatory Nos. 10 and 12. You stated that you would consider whether you would be willing to provide supplemental answers to these two Interrogatories. Please let us know by May 13 whether you are, in fact, willing to supplement your answers to these Interrogatories, and if so please supplement your answer by May 20. If you are not willing to do so, then we will consider the parties at impasse and will promptly raise this dispute with the Court.

### II. The FTC's Remaining Interrogatory Responses

Below, Meta provides a brief overview of our discussion relating to the some of the other interrogatories, and remaining follow up items.

- <u>Interrogatory No. 1</u>: This Interrogatory asks the FTC to "Identify all Persons You communicated with relating to Your Prior Instagram Investigation, Prior WhatsApp Review, Pre-Complaint Investigation, or any allegation in the Complaint or Amended Complaint." In our meet-and-confer, we asked the FTC to identify all individuals it interviewed or requested to interview in connection with the Prior Instagram

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 10, 2022
Page 7

- Investigation, Prior WhatsApp Review, and Pre-Complaint Investigation. You stated you would confer internally on whether you can provide that list. Please let us know by May 13 whether you intend to provide the requested list, and if so, please let us know by when you will do so.

- Interrogatory No. 2: This Interrogatory asks the FTC to "Identify all Communications between You and any other Person relating to the Prior Instagram Investigation, Prior WhatsApp Review, Pre-Complaint Investigation, or any allegation in the Complaint or Amended Complaint." In our meet-and-confer, we clarified that we would consider this Interrogatory satisfied if you convey the sum and substance of the factual information conveyed by non-parties in each of your interviews in the Prior Instagram Investigation, Prior WhatsApp Review, and Pre-Complaint Investigation. You indicated that this information might be privileged. We do not believe that purely factual information conveyed to the FTC is privileged. Please indicate, by May 13, whether you intend to provide the requested information and if so by when.

- Interrogatory No. 3: This Interrogatory asks the FTC to "Identify all Products that have offered 'personal social networking services' in the United States (see Amended Complaint ¶ 164), and the time periods during which those Products offered personal social networking services." In your response, you provided a list of the same providers you identified in the Amended Complaint. In our meet-and-confer, you clarified that your response to Interrogatory No. 3 lists the only providers of PSNS in the United States that the FTC is currently aware of. As requested in the Interrogatory, please promptly supplement your response to identify the dates those firms entered or exited the alleged personal social networking services market.

- Interrogatory No. 5: This Interrogatory asks the FTC to "State the basis for Your decision to permit Meta's acquisition of WhatsApp to proceed in 2014 without challenging the transaction in an administrative proceeding or in federal court." Your response states that "the FTC responds that the Commission did not make any decision regarding the WhatsApp transaction." In our meet-and-confer, we asked for clarification as to whether the FTC believes its response is factually accurate, or potentially overstated, given that it cannot be disputed that the Commission did not issue a second request. You reiterated your view that the FTC's response is factually accurate.

- Interrogatory Nos. 8 and 9: These Interrogatories ask you to identify any FTC personnel that participated in the Prior Instagram Investigation or Prior WhatsApp Review. We explained that these individuals possess relevant information, and you did not indicate that providing such a list would be burdensome. Please indicate, by May 13, whether you intend to provide the requested list and if so by when you will do so.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 10, 2022
Page 8

- Interrogatory No. 11:  This Interrogatory states, "For each Product identified by You in response to Interrogatory No. 3, provide the total number of minutes spent by users on personal social network features or activities on that Product for each year from 2011 to the present (*see* Amended Complaint ¶ 202)."  You objected to responding to this request on the ground that "personal social network features or activities" is not used in the Amended Complaint.  We explained in our meet-and-confer that you can interpret the number of minutes spent by users on "personal social network features or activities" as equivalent to the number of minutes spent by users "using personal social networking services" (*see* Am. Compl. ¶ 202).  In light of this clarification, please supplement your response based on the facts in your possession at this time.  Given your allegation that "Facebook Blue and Instagram are predominantly used as personal social networking services" and your focus on how applications are "primarily" used (*see*, *e.g.*, Am. Compl. ¶ 172), we would expect that the FTC should be able to answer this question at least preliminarily.

### III.   The FTC's Responses to Meta's Requests For Production

At the conclusion of our meet-and-confer on May 6, we asked again about your response to Meta's First Set of Requests for Production of Documents, dated March 9, 2022.  You stated that you were not prepared to discuss those issues, declined our request to discuss on Monday or Tuesday of this week, and indicated that you would respond to our letter of May 4, 2022 at some point this week.  As we have told you, we believe that the FTC is required to produce (among other things) the staff and economist memoranda compiling relevant facts relating to the Prior Instagram Investigation and Prior WhatsApp Review.  Based on our communications with you, it is clear that the FTC refuses to produce these documents.  If that is wrong, and the FTC has changed its mind and is now willing to produce these staff and economist memoranda, please let us know immediately.  Otherwise, we consider ourselves at impasse on those documents.

Sincerely,

*/s/ Kevin B. Huff*

Kevin B. Huff