# Exhibit K

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
───
(202) 326-7900

FACSIMILE:
(202) 326-7999

May 4, 2022

*Via Electronic Mail*

Daniel J. Matheson, Esq.
Federal Trade Commission
Bureau of Competition
400 Seventh Street, SW
Washington, D.C. 20024

    Re:    FTC v. Meta Platforms, Inc., Case No. 1:20-cv-03590-JEB

Dear Dan:

    I write on behalf of Meta to memorialize the April 19, 2022 meet-and-confer between the Federal Trade Commission and Meta regarding Meta's First Set of Requests for Production of Documents, dated March 9, 2022, and to respond to your April 27, 2022 letter. We appreciate the opportunity to discuss these issues with you, and look forward to working to resolve any disputes between the parties or, if we cannot reach agreement, present any disputes promptly and efficiently to the Court for resolution. This letter details our understanding of the parties' positions, responds to points in your recent letter, and identifies the outstanding questions from our call.

    ***Applicability of Paragraph 16 of the JSO.*** During our meet and confer, we asked whether the FTC would produce key information relating to its historical investigations into Meta's acquisition of Instagram in 2012 and WhatsApp in 2014, including (1) any memoranda from the Staff of the Bureau of Competition or the Bureau of Economics to the Commission or any Commissioners relating to those investigations; (2) any interview notes or memoranda of interviews conducted by the Staff relating to those investigations; (3) documents evidencing or explaining the Commission's decisions relating to those investigations, including memoranda, meeting minutes, or recordings of meetings, including such documents created in the intervening years since the decisions were made; (4) communications with third-parties, such as Congress, foreign regulators, or State Attorneys General relating to those investigations; and (5) other documents created by the FTC in connection with those investigations, such as requests for clearance to investigate, merger screening memoranda, requests for authority to use compulsory process, and communications between Commissioners and Bureau Directors. Surprisingly, you

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 4, 2022
Page 2

took the position that Paragraph 16 of the Joint Scheduling Order ("JSO") entirely precluded any discovery (or even a preservation obligation on the FTC) of any documents relating to the FTC's historical Instagram and WhatsApp investigations that the FTC, in its sole discretion, deemed to be privileged or otherwise protected from discovery, including FTC internal communications or external communications with third parties with which the FTC shared a common legal interest. As we explained, we fundamentally disagree with your broad and sweeping reading of Paragraph 16 of the JSO, which is inconsistent with the agreement of the parties as well as the purpose of the provision.

Paragraph 16 of the JSO addresses "Privilege Logs" and states: "the following privileged or otherwise protected communications shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log: emails, notes, drafts, communications, memoranda, documents, or other product produced by or exchanged solely among and between . . . (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission); (e) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel for a plaintiff with which the FTC shares a common legal interest in pursuing or exploring litigation against Meta." This provision does not shield the documents generated in connection with the historical Instagram and WhatsApp investigations or the FTC's more recent investigation of Meta that Meta seeks in discovery.

*First*, Paragraph 16 applies only to communications prepared since the commencement of this litigation. That was Meta's understanding of the purpose and scope of this provision. Such provisions are common and are routinely entered into by parties to avoid the burden of logging ongoing communications about ongoing litigation created after the litigation began. *See United States v. Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010) ("privilege logs are commonly limited to documents created before the date litigation was initiated"); *see also* Responding to Document Requests, 4 Bus. & Com. Litig. Fed. Cts. § 32:42 (5d ed.) ("[I]n most litigations, counsel will agree to omit from the privilege log documents created by outside or in-house counsel after the litigation has commenced."). Indeed, courts have *rejected* attempts to shield pre-litigation communications from privilege logs. *See Ritchie v. Sempra Energy*, 2014 WL 12638874, at *2 (S.D. Cal. Aug. 4, 2014) ("Unlike the privilege log exception commonly allowed for communications between client and counsel created after the filing of a lawsuit, there is no similar consensus for such an exception to be applied to pre-complaint communications."); *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *15 (M.D. Fla. Oct. 25, 2013) (rejecting attempt to "not require [party] to log any documents generated between the date its investigation began and suit was filed" as "inconsistent with Rule 26 and the case law"); *Prism Techs., LLC v. Adobe Sys., Inc.*, 2011 WL 5523389, at *2 (D. Neb. Nov. 14, 2011) (rejecting attempt to extend privilege to "apply to [] communications with counsel before the litigation began").

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 4, 2022
Page 3

    *Second*, such a broad reading of Paragraph 16 is inconsistent with the parties' communications and actions in this case. At no point during the Rule 26(f) conference did the FTC suggest, or did the parties discuss, this provision extending to the FTC's historical 2012, 2014, or 2019 investigations (or Meta's responses to those investigations). If the FTC had taken that position, then Meta certainly would have objected and would not have agreed to this provision. Indeed, Meta already prepared a privilege log for the 2019 investigation; there would have been no reason for Meta to agree to exclude the past investigation from the logging requirements.

    *Third*, the Joint Civil Rule 16.3 Report to the Court, which the JSO incorporates, made clear that Meta has always intended to seek discovery from the FTC regarding documents the FTC created in its prior investigations. Meta stated in its Joint Report that it intended to seek discovery relating to "whether and how the FTC evaluated potential harm to competition and consumers in 2012 and 2014 and why it decided not to challenge those transactions." *See* Dkt. No. 100, at 12. And, that "[t]he FTC's own assessment of these issues – admissions by an opposing party – are both discoverable and potentially of crucial significance." *Id.* The Court took into account this context in issuing the JSO, which provides that, "upon consideration of the Parties Joint Rule 16.3 Report . . . the following provisions should govern the proceedings." JSO at 1. Accordingly, Paragraph 16 cannot be construed to exclude from discovery materials that Meta made explicit it planned to seek during discovery in the Joint Rule 16.3 Report. During the meet and confers prior to the entry of the JSO, Meta also specifically inquired into the FTC's document retention practices relating to the 2012, 2014, and 2019 investigations. *See* Feb. 7, 2022 email from K. Fetterman to D. Matheson (asking how "*internal* decisional documents related to approval, challenges, or market information with respect to the acquisitions" are catalogued or logged; where "the FTC stores documents it created or obtained in its investigation into Facebook's acquisition of Instagram in 2012"; where the FTC "store[s] documents relating to [its] evaluation of those transactions (IG and WhatsApp), including communications to or from the Bureau of Competition, the Commissioners, staff, economists, consultants, or any non-parties"). These statements – made after you shared the draft provision Paragraph 16 with Meta – make clear that Meta never intended to permit the FTC to unilaterally shield documents the FTC created in its prior investigations from any discovery (and even to destroy such documents if it chose to do so).

    *Fourth*, even applying the FTC's incorrect reading of Paragraph 16, it does not extend to the documents Meta seeks about the FTC's historical investigations. For example, Paragraph 16 applies only to "privileged or otherwise protected communications." As explained during the meet and confer, it is Meta's position that the documents it seeks (including the Staff and economist memoranda about the Instagram and WhatsApp investigations) are not privileged or otherwise protected communications. The FTC does not have the unilateral right to decide what is privileged relating to these historical investigations and thereby prevent Meta from presenting to the Court its arguments that these documents are not, in fact, privileged or that an exception to

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 4, 2022
Page 4

any asserted privilege is applicable here. Meta disputes and intends to litigate whether the documents it has requested are privileged, to the extent you stand on your objections and refuse to produce the requested documents. If the Court determines that these documents are not privileged or that an exception to the privilege applies, then the FTC cannot hide behind the JSO to prevent discovery of those documents. Consistent with Meta's interpretation, courts interpreting similar provisions first determine the "validity" of the "privilege and work product objection" – a "crucial" step because, "[i]f there is no valid basis for claiming the information is privileged or protected work product, then the [stipulation] does not apply." *Gipson v. Sw. Bell Tel. Co.*, 2009 WL 790203, at *15 (D. Kan. Mar. 24, 2009) (cleaned up), *objections sustained and overruled in part*, 2009 WL 4157948 (D. Kan. Nov. 23, 2009).

As another example, Paragraph 16 on its face applies only to privileged communications among "counsel" to the FTC or "persons employed" by the FTC. The investigation memoranda Meta seeks (as well as several of the other documents it seeks) are between staff and *the FTC Commissioners*, who are neither "counsel" to the FTC nor "persons employed" by the FTC. Therefore, even under the FTC's overly broad reading of Paragraph 16, it does not apply to many of the documents Meta seeks. As an additional example, during our meet and confer, you acknowledged that the FTC provided documents relating to the 2012 and 2014 investigations to the House Judiciary Committee in 2019. Any information the FTC provided Congress is not shielded by Paragraph 16, which does not concern communications between the FTC and Congress, as they plainly are not communications "exchanged solely among and between" FTC personnel.

In light of the points set forth above, please confirm whether it remains the FTC's position that Paragraph 16 shields the FTC from providing the categories of documents described above that relate to the FTC's historical investigations and that are responsive to Meta's RFPs, including RFPs 1-4, 6-8, and 10-11. And please confirm more generally whether the FTC maintains that Paragraph 16 is applicable to pre-complaint communications and documents. If the FTC maintains that Paragraph 16 is applicable to requests relating to the 2012, 2014, and 2019 investigations, then we respectfully request that the FTC confirm that it has not yet destroyed, and that it will continue to preserve, all documents relating to those investigations until we can present this dispute to the Court. For the avoidance of doubt, if the FTC has already destroyed, or does destroy, any such documents in reliance on Paragraph 16 of the JSO, then Meta reserves all rights to seek all appropriate remedies for such action.

***Privileges Claimed by the FTC***. During our meet and confer, you claimed that the documents listed in the second paragraph of this letter are privileged. In your April 27, 2022 letter, you specifically invoke the deliberative process privilege with respect to some of these documents. Please promptly confirm each privilege, if any, the FTC asserts relating to each of the categories of documents listed in the second paragraph of this letter and please explain the basis for any such claim of privilege. To the extent you assert that the deliberative process

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 4, 2022
Page 5

privilege applies to any of these documents, please "pinpoint an agency decision or policy to which the document contributed" and explain "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 586-87 (D.C. Cir. 1987).

***Specific Categories of Documents***. During our meet and confer, Meta posed questions regarding certain categories of documents encompassed in its RFPs, and you agreed to conduct a review and provide additional information to Meta, including with respect to the materials listed below. Your April 27, 2022, letter answers some of those questions. Some of our remaining questions are outlined below:

- **Staff and economist memorandum to the Commission or any Commissioners.** Your letter indicates (at 2) that with respect to the 2012 investigation, the Staff from the Bureau of Competition prepared two memoranda for the Commission regarding (1) the authorization of the use of compulsory process and (2) the closing of the investigation. You also represent that Staff from the Bureau of Economics prepared a memorandum to the Commission with respect to closing the investigation. Your letter also represents (at 2) that regarding the 2014 investigation, the Staff did not provide any memoranda to the Commission.

    You represented during the meet and confer that the FTC provided Congress "whatever was created" in regards to the 2012 and 2014 investigations. Your letter notes (at 2 and 4) that the FTC provided to the House Judiciary Committee in 2019 "certain materials," "including" memoranda prepared by Staff from the Bureau of Competition regarding (1) authorization of the use of compulsory process and (2) the closing of the investigation, but that you are still investigating "what additional materials" the FTC provided to the House Judiciary Committee concerning the Instagram and WhatsApp investigations. Please promptly provide a list of *all* documents the FTC provided to the House Judiciary Committee relating to Meta, Instagram, or WhatsApp. Please also explain in detail the reasons the FTC provided the materials to the House Judiciary Committee, and provide any Requests For Information or subpoenas the FTC received from the House Judiciary Committee seeking the materials, and any confidentiality agreements the House Judiciary Committee executed in connection with receiving those materials, or any other assurances of confidentiality you received in connection with those materials.

    It is Meta's position that the FTC's transmission of these materials to the House Judiciary Committee waived any otherwise applicable privilege. During the meet and confer, and again in your letter, you asserted that documents remain privileged pursuant to the deliberative process privilege, despite the FTC's sharing of the materials with the House Judiciary Committee. Please provide the basis for your

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 4, 2022
Page 6

>position that the FTC did not waive the deliberative process privilege or any other privilege you allege is applicable and any legal authority that supports it. Finally, in our meet and confer, you said that you would provide an explanation of any other applicable privileges you are asserting over these documents; however, your letter notes only (at 2) that "other things" also protect this material from discovery, without explanation. Please confirm whether the FTC intends to assert any privilege regarding the documents provided to the House Judiciary Committee. Please also provide the bases for your positions on all these points, so that we may promptly present this issue to the Court.

- **Merger screening memoranda**. You represented during the meet and confer that a merger screening memorandum was almost certainly prepared for the 2012 investigation. Was one prepared for the 2014 investigation? As to the 2012 and 2014 investigations, please confirm: (a) if a merger screening memorandum was prepared; (b) the identity of the author(s) of any such document(s); (c) if the documents still exists; (d) if the documents or any portion of the documents were destroyed and, if so, under what circumstances; and (e) the identities of any third party (if any) to whom the FTC provided the documents. Please also let us know whether the FTC intends to assert a privilege over any such documents and if so, please identify which privilege(s) and the bases for your positions.

- **Call records, interview notes, or interview memoranda**. You represented in your letter that, with respect to any transcripts of, or memoranda memorializing, any third-party interviews conducted during the Instagram and WhatsApp investigations, the FTC only "has in its possession" copies of handwritten attorney interview notes for the 2012 or 2014 investigations. Please confirm the identity of the author(s) of the handwritten notes and if the handwritten notes include facts gathered from the interviews. Please also confirm if call records, transcripts, or interview memoranda were prepared but have since been destroyed and, if so, under what circumstances and the identity of the author(s) of any such document(s). Please also let us know whether the FTC intends to assert a privilege over any such documents and if so, please identify which privilege(s) and the bases for your positions.

- **Memoranda or other Documents from the Commission or any FTC Commissioners explaining decisions in 2012 or 2014**. You represented during the meet and confer that your statements in your responses and objections that the FTC made no "decision in 2012 relating to the lawfulness of Meta's acquisition of Instagram" (FTC R&O 4), and no "decision in 2014 relating to the lawfulness of Meta's acquisition of WhatsApp" (FTC R&O 8), were not based on a review of records, but your understanding that those decisions were not necessarily made. Your letter indicates that, other than voting records, closing letters, and press statements,

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 4, 2022
Page 7

> "no other formal or publicly available record exist concerning any decision by the Commission." Please confirm: (a) if any non-public documents, formal or informal, including documents or statements that were prepared but never made public, explaining or evidencing the Commission's decisions were prepared; (b) the identity of the author(s) of any such document(s); (c) if any such documents were destroyed and, if so, under what circumstances; and (d) the identities of any third parties (if any) to whom the FTC provided the documents. Please also let us know whether the FTC intends to assert a privilege over any such documents and if so, please identify which privilege(s) and the bases for each such privilege.

- **Recordings or notes of FTC meetings**. Your letter indicates that you are "unaware of any notes or records of any Commission meetings regarding" the 2012 investigation. Please confirm: (a) if such recordings or documents were prepared but have since been destroyed and, if so, under what circumstances; (b) the identity of the author(s) of any such document(s); and (c) the identities of any third parties (if any) to whom the FTC provided the recording or documents. Please also let us know whether the FTC intends to assert a privilege over any such documents and if so, please identify which privilege(s) and bases for each such privilege.

- **Subsequent documents or memoranda evidencing or explaining decisions**. You represented during the meet and confer that you had not yet investigated whether the FTC or FTC personnel prepared any subsequent documents or memoranda explaining or evidencing the decisions regarding the 2012 or 2014 investigations. It is unclear from your letter if the information you gathered applies to subsequent documents or memoranda. Please confirm: (a) if such documents were prepared; (b) the identity of the author(s) of any such document(s); (c) if the documents still exist; (d) if any such documents were destroyed and, if so, under what circumstances; and (e) the identities of any third parties (if any) to whom the FTC provided the documents. Please also let us know whether the FTC intends to assert a privilege over any such documents and if so, please identify which privilege(s) and the basis for each such privilege.

**Specific Document Requests.** During our meet and confer, Meta sought clarification regarding the FTC's responses to certain document requests, and you agreed to provide responses to questions Meta asked. Your April 27, 2022 letter answered some of those questions. We continue to seek additional clarification on the issues outlined below:

- **RFP 4, 8: Communications with other Government Entities or Actors or Former FTC Commissioners.** Your letter indicates the FTC communicated with the California Attorney General's office regarding the 2012 investigation, and that "the FTC did not communicate or otherwise work with any state regulators" during the 2014 investigation. Please confirm: (a) if the FTC communicated or

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Daniel J. Matheson, Esq.
May 4, 2022
Page 8

> otherwise worked with any other state regulators regarding the 2012 investigation; (b) the identity of the individual(s) involved in any such communication(s); (c) if those communications, and the FTC's communications with the California Attorney General's office, still exist; (d) if any of the communications were destroyed and, if so, under what circumstances; (e) if the FTC is asserting any other communications with state regulators are protected by common interest privilege; and (f) if the FTC is asserting any other privileges apply to these communications, and if so, the basis for that assertion.  Please also indicate whether the FTC has had any communications regarding the 2012 and 2014 investigations with any former FTC Commissioners.

- **RFP 2, 6: All Documents relating to any Communications between the Federal Trade Commission and any other Person (excluding Other Government Entities or Actors) in relation to the Prior Instagram Investigation and Prior WhatsApp Review.**  Thank you for confirming in your letter that you will produce any documents that Facebook and Instagram produced to the FTC in 2012, and any documents that Facebook and WhatsApp produced to the FTC in 2014, in addition to any documents produced by third parties during those investigations that exist on the FTC's shared network drives and can be located pursuant to a reasonable search, as well as any other documents your responses and objections indicate you will produce in response to these requests. Please confirm when you will be producing these documents, and please confirm whether your understanding is that the FTC's shared network drives are likely to include all documents in your possession or control that are responsive to these requests.

    Your letter indicates that "the FTC does not represent that it possesses all documents produced by Facebook, Instagram, WhatsApp, or third parties" during the 2012 and 2014 investigations.  Please promptly inform us if the FTC is aware of any documents that it previously possessed but no longer possesses.  If the FTC is aware of any such documents, please confirm whether the FTC destroyed any documents responsive to these requests, and if so under what circumstances.

Meta looks forward to continuing to meet and confer with the FTC to discuss these issues.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel J. Matheson, Esq.
May 4, 2022
Page 9

                                      Sincerely,

                                      */s/ Kevin B. Huff*

                                      Kevin B. Huff