IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

META PLATFORMS, INC.,

    Defendant.

Case No. 1:20-cv-03590-JEB

**REPLY IN SUPPORT OF
MOTION TO COMPEL ANSWERS TO
INTERROGATORY NOS. 13 AND 14 REGARDING
THE FTC'S MARKET DEFINITION**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................3

I.     The FTC Should Be Required to Answer Meta's Interrogatories Seeking Information About Competing Services Offering Features Identical to or Substantially Similar to the Features Offered by Meta's Services .....................................3

CONCLUSION .......................................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

*FTC v. Cardinal Health, Inc.*,
    12 F. Supp. 2d 34 (D.D.C. 1998) ........................................................................................... 9

*FTC v. Staples, Inc.*:

    970 F. Supp. 1066 (D.D.C. 1997) ....................................................................................... 8, 9

    190 F. Supp. 3d 100 (D.D.C. 2016) ........................................................................................ 8

*FTC v. Sysco Corp.*,
    113 F. Supp. 3d 1 (D.D.C. 2015) ........................................................................................ 2, 9

*FTC v. Whole Foods Market, Inc.*,
    548 F.3d 1028 (D.C. Cir. 2008) .............................................................................................. 9

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989) ................................................................................................ 4

*United States v. Am. Express Co.*,
    838 F.3d 179 (2d Cir. 2016) ............................................................................................ 1-2, 6

**OTHER**

U.S. Dep't of Justice & FTC Horizontal Merger Guidelines § 4.1.2 (2010) .................................. 2

The FTC's Section 2 (monopolization) case against Meta alleges that Meta maintained a monopoly by acquiring Instagram (2012) and WhatsApp (2014). That requires the FTC to plead and prove a relevant antitrust product market that was allegedly monopolized. After several fits and starts, the FTC settled on a claim that the market is "personal social networking services" ("PSNS") that *includes substantially everything people do on Facebook and Instagram*. But people do many things on those services, and for every feature they offer there are literally scores of competitive alternatives. While the FTC incants "friends and family sharing" as its mantra, in fact that is only a portion of the time spent on Facebook and Instagram. Significant time is spent consuming other content that does not come from "friends and family." That includes watching videos, participating in interest groups, and shopping on Facebook Marketplace, all of which the FTC says fall within its definition of PSNS. *See* FTC's Resp. to Meta's List of Features or Activities, at 5-6, 8, 10-12, 24-25, 31-34 (Sept. 12, 2022), ECF No. 243-3.

Meta accordingly asked the FTC to explain, with any facts currently known to it, why the scores of competitors offering the same or substantially similar features do or do not compete with Meta's services for the time and attention of people who use these free online services. The central relevance of that question should be obvious as a matter of black letter antitrust law. All products or services that are acceptable substitutes must be included in the relevant antitrust product market. Stated simply, if enough people would reduce their usage of Facebook and Instagram and turn to other services in response to a 5% price increase, such that the price increase would result in a net loss, those other services must be part of the market. *See United States v. Am. Express Co.*, 838 F.3d 179, 199 (2d Cir. 2016) ("[I]f consumers are able and inclined to switch away from the products in the proposed market in sufficiently high numbers to

render the SSNIP unprofitable, then the proposed market definition is likely too narrow and should be expanded."), *aff'd* 138 S. Ct. 2274 (2018); *see also FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 33-34 (D.D.C. 2015) ("[The SSNIP] is typically assumed to be 'five percent of the price paid by customers for the products or services to which the merging firms contribute value.'") (quoting U.S. Dep't of Justice & FTC Horizontal Merger Guidelines § 4.1.2 (2010)).  Here there is no price – a fundamental problem for the FTC's case for many reasons.  But the point is the same even without price:  if these scores of competitors can take user time away from Meta, they exert a disciplining effect that undermines any claim of monopoly.

      Meta deserves straight answers to its entirely fair Interrogatories.  Indeed, the FTC agreed they posed appropriate questions, and joined Meta in representing to the Court that it would answer them.  But it had second thoughts, and now offers hand-waving justifications for its continued shadow boxing.  There are two months of fact discovery left.  The parties are about to take testimony from more than 60 representatives of third parties, including many third parties that offer competing features and state expressly that they *do* compete with Meta services that the FTC says *are PSNS*.  Meta needs to know the basis, if any, for the FTC's entirely unexplained contention that even things that provide exactly the same experience are not substitutes for people who seek that experience on Meta's services.  Meta's examination of witnesses, as well as its requests for relevant documents, will be hampered if it cannot get that information.  Meta cannot conduct appropriate discovery without fair notice of the case it has to defend, and the factual basis for the FTC's exclusion of these competitors from its artificial "PSNS" market definition.

      If the FTC *has* no facts, and no basis for excluding these many competitors other than its say-so, Meta is entitled to know that as well in clear, unequivocal answers to its Interrogatories.

# ARGUMENT

I. **The FTC Should Be Required to Answer Meta's Interrogatories Seeking Information About Competing Services Offering Features Identical to or Substantially Similar to the Features Offered by Meta's Services**

Meta's Interrogatories ask the FTC to explain "why . . . enumerated features on Facebook and Instagram" – which the FTC has identified as part of the alleged Personal Social Networking Services market – are or are not reasonable substitutes for identical or closely analogous features on competing apps like YouTube, TikTok, Reddit, and others.

Meta provided the FTC with a list of 100 features or activities on specific non-Meta apps that are similar (if not effectively identical) to the features and activities that the FTC classified as PSNS when they occur on Facebook or Instagram; the FTC agreed that it would provide "explanations [that would] include details and any relevant facts on why the FTC classifies the two activities similarly or differently." Joint Status Report, at 18 (Dec. 15, 2022), ECF No. 227; *see also id.* at 8. But the FTC has changed its mind and now seeks to avoid answering the Interrogatories. *See* FTC's Suppl. Objs. & Resps. to Meta's 2d Set of Interrogs. (Jan. 24, 2023) (stating 20 times that the FTC has not "conducted such an analysis comparing the individual features available on [the identified competitor app] and those currently available on Facebook Blue and Instagram"), ECF No. 243-2; Opp. at 18 (stating that its inquiry "concluded" before evaluating any features if the FTC had already concluded that the app is not PSNS).

The FTC offers a hodgepodge of excuses for its changed position. None is valid, or even coherent for the most part.

*Repetition of the FTC's conclusion is not an answer to the interrogatory.* The FTC repeatedly states that the same or similar features available on competing services are not substitutes. But it has refused to explain, based on facts, *why* enumerated *PSNS* features are (or

3

are not) substitutes.  To illustrate, the FTC *asserts* that "Reddit does not offer consumers seeking PSNS an alternative to Meta, in general and even as to the action of discussing 'slow cookers.'" Opp. at 3.  But *why* people seeking to join an interest group focused on slow cookers would not find Reddit's interest group an acceptable substitute is entirely opaque.  There is neither explanation nor facts as to why people seeking to discuss slow cookers in Facebook Groups (among individuals with whom one has no other connection) would not turn to discussing slow cookers on Reddit (among individuals with whom one may have no other connection).  Why, in other words, is Reddit's nearly identical feature not "an alternative to Meta" for consumers seeking *that* aspect of what the FTC has included in PSNS?  *Id.*; *see* FTC's Resp. to Meta's List of Features or Activities, at 1, 6 (Sept. 12, 2022) (stating that this specific activity is "within the definition of 'personal social networking' alleged in the FTC's complaint"), ECF No. 243-3.  Meta's understanding – as reflected in ordinary course documents – is that they are reasonable substitutes.  *See* Mem. at 11 (identifying documents).

The FTC cannot justify its refusal to respond to Meta's Interrogatories simply by asserting that its PSNS market definition includes every feature "connected with Meta's PSNS offering" but excludes competition from (supposedly) "non-PSNS applications" offering such features.  Opp. at 8-9.  That is simply a conclusion, not an explanation, much less an explanation supported by facts.  The FTC must provide any facts that it has to support its conclusions, or state conclusively that it does not have any.  *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1376 (9th Cir. 1989) (bare assertion that a product is distinct from other products because it offers "one-stop shopping" is "wholly inadequate").

*Resort to "friend and family sharing" is not an answer as to why other features do not compete.*  The FTC focuses on "friend and family sharing" as its lodestar, and argues that

consumers seeking such sharing will not turn to other features of other services: even if "a consumer views a Facebook Group as interchangeable with a Reddit discussion group under certain circumstances," this would "not show that the consumer could turn to Reddit rather than Facebook to meet their demand . . . for a social networking experience centered around friends and family." Opp. at 3. This is incoherent and dodges the question. Even assuming that people coming to Facebook and Instagram to share content with family and friends have no acceptable alternatives *for that activity* – which is not true, and which the FTC has offered no facts to support – that does not explain, much less provide factual support for, the contention that people coming to Meta's services to do many other things have no acceptable alternatives even when those other things are offered by competing services. For example, as of December 2022 in the United States, video consumption was roughly half of the time spent on Facebook, and Instagram users spent more time on Instagram consuming short-form videos on Reels than any other type of media content. The FTC has classified viewing short-form videos on Instagram Reels as PSNS, even when such video is posted by a stranger. But the FTC refuses to explain why consumers seeking short-form video on Reels would not turn to very similar offerings on TikTok or YouTube Shorts, in response to dissatisfaction with Meta. Nor does the FTC provide any facts to support its contention. This is information Meta needs to defend itself, and to use in conducting the remaining fact discovery.

  If Facebook Groups are "interchangeable" with Reddit discussion groups, then people seeking that interest-based activity obviously can turn to Reddit as an acceptable alternative. Or if they cannot, the FTC needs to explain why and support that explanation with facts, if it has any. Again, the relevant question for antitrust purposes is *not* whether every user, or every minute of use, will leave Meta for a particular alternative; it is whether *enough* people or minutes

would leave for other services to prevent Meta from exploiting users by, *e.g.*, a price increase above competitive levels.  *See Am. Express*, 838 F.3d at 199 ("[I]f consumers are able and inclined to switch away from the products in the proposed market in sufficiently high numbers to render the SSNIP unprofitable, then the proposed market definition is likely too narrow and should be expanded.").

Where, as here, an entire constellation of features is offered by Meta's services, and is included in the FTC's market definition, defection by *some* users of some features is of potentially outcome determinative significance.  For example, if a 5% price increase (on Meta's free products) would drive people seeking videos to YouTube and TikTok, or drive others to iMessage, and others still to Twitter, Reddit, and many other services, Meta would lose a significant percentage of its total current usage, and the FTC's monopoly claim would evaporate.  These competitive alternatives need not duplicate *every* feature offered by the Meta services.  Meta is constrained by them so long as they are capable of taking a significant amount of usage away from Meta; they are part of the relevant antitrust product market if that is the case.  For short-form video, taking just one example, the FTC needs to do more than just *say* TikTok video is not a substitute for Facebook and Instagram video; it must provide a cogent, fact-supported basis for that naked conclusion.  The FTC cannot simply put its head in the sand and ignore this issue.  Meta is entitled to the FTC's answer, if it has one, and its facts, if it has any.

*The information Meta seeks is not "legally irrelevant" or related only to different "submarkets."*  The FTC waves away the "superficial[] similar[ity]" of features on non-Meta apps with "features on Facebook and Instagram."  It argues (at 9-10) – again without explanation or factual support (and in reference to features it concedes it did not even evaluate) – that Facebook and Instagram are protected from competition even as to those features.  Therefore, it

contends that Meta's services have a separate market or "submarket" essentially to themselves (excepting MeWe and possibly Snap). But terminology hair-splitting is no answer. Whether the FTC calls it a market or a submarket, Meta is entitled to information about whether consumers find features available on other services to be acceptable substitutes for the analogous features on Facebook and Instagram and why (or why not). The legal implications of that information have obvious relevance but need not be decided now.

      The FTC asserts that it does not "matter whether Facebook Watch competes with YouTube in, say, a separate market for online video consumption" because YouTube does not compete with PSNS. Opp. at 18; *see also id.* at 12 (stating that "whether there may exist distinct relevant markets for community groups—or video consumption or e-commerce—in which Meta and Reddit, or Meta and YouTube, or Meta and an e-commerce application, may compete" is not a "relevant question"). Whether that is a "separate market" is a factual question. YouTube *does* offer videos as alternatives to the videos offered by Facebook and Instagram. Merely stating that those videos are not substitutes, because they are in a "different market," is nothing more than a conclusion without explanation or factual support. Indeed, the FTC has unambiguously stated that watching videos (including short-form videos posted by strangers on Reels, long-form videos posted by strangers on Watch, and any other video of any other type on Facebook or Instagram) is within the relevant market – but only when provided by Meta. *See* FTC's Resp. to Meta's List of Features or Activities, at 5, 8, 10, 12, 24-25, 31-34, ECF No. 243-3. The FTC offers no plausible reason why it can refuse to explain the basis for that conclusion and hold back *facts* underlying that explanation. Simply defining competition offered by other services – with identical or nearly identical features that the FTC concedes it has not evaluated – to be "outside the market" only underscores the need for more information. It is the facts, not the labels, that

matter.  The facts regarding competition inform the ultimate legal conclusions about the scope of the relevant market – not the other way around.  The relevant market here cannot exclude, *e.g.*, YouTube and TikTok, merely because the FTC says so.

*The FTC cannot refuse to answer on the ground that courts in other cases, on full factual records, have upheld product market claims.*  Finally, the FTC urges the Court to bypass discovery entirely and simply find that the FTC has proved its market claim because courts in other cases have, on full factual records, upheld product market claims that the FTC contends are similar to the claim it is making here.  That is both untrue and an obvious non-sequitur that puts the proverbial cart before the horse.  The issue here is whether Meta is entitled to basic information about the FTC's market claim, so that the facts can be tested in discovery.  *No* court has held that the government – or any other litigant – can prevent that discovery on the basis of its prediction that it will ultimately prevail on its claim once all the facts are before the Court.

The FTC argues that Meta misses the "key point" because "courts[] consistent[ly]" base "the market definition inquiry on whether there is a substitute for the total service provided, rather than any individual component therein."  Opp. at 13.  But the FTC misses the key point that the cases do not support its argument.  In fact, in its opposition to Meta's Motion to Dismiss, the FTC cited its later case against Staples – *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 122-27 (D.D.C. 2016) – for the *opposite* proposition that "relevant markets are routinely defined to include less than everything a defendant sells."  Opp to Mot. to Dismiss at 16, ECF No. 59.

What the cases do hold is that the question of market definition is entirely fact-dependent.  What the market includes or does not include must be shown with persuasive evidence, not labels.  Thus, in *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1070 (D.D.C. 1997), the FTC provided facts demonstrating that for reasons of convenience and efficiency, consumers paid a higher

price for a specific set of products sold by office "superstores" like Staples or Office Depot and did not consider products sold by smaller retailers to be acceptable substitutes. *Id.* at 1078-79 (evidence established that, despite many similarities between consumable office supplies sold by the office superstores and other retailers of office supplies, the higher prices Staples and Office Depot offered for those set of specific products were not constrained by those retailers). And to that end, the FTC had to engage in the very assessment that is missing here – a product-by-product (or here, a feature-by-feature) assessment of whether similar offerings that could be obtained elsewhere impose a competitive constraint. *Id.* at 1073 (explaining why Staples' sales of certain products like computers had to be excluded from the relevant market).

The other cases cited by the FTC also demonstrate the same close attention to the facts that the FTC refuses to provide here. Shopping for all of the items in a cart of groceries in separate stores – or purchasing prescription drugs and other medical supplies from multiple providers – can impose substantial transaction costs. *See Sysco Corp.*, 113 F. Supp. 3d at 26-30 (reasonable substitution hinges on whether "the switch can be accomplished without the consumer incurring undue expense or inconvenience," and broadline distributors not only "stock thousands of SKUs across every major food and food-related category," but offer customers "flexible delivery schedules" that other distributors do not provide); *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 47 (D.D.C. 1998) ("The evidence presented . . . clearly demonstrates that wholesalers provide customers with an efficient way to obtain prescription drugs through centralized warehousing, delivery, and billing services that enable the customers to avoid carrying large inventories, dealing with a large number of vendors, and negotiating numerous transactions."); *see also FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1037-39 (D.C. Cir. 2008) (Brown, J.) (reasonable substitution depends "on the ease and speed" of substitution).

Literally *none* of the facts that mattered in the above cases are present here – and the FTC has not yet claimed otherwise.  Switching (with the flick of a thumb) among apps on one's phone – iMessage to share a photograph with groups of friends; YouTube to watch a comedian's video; TikTok to watch short cooking videos – imposes no transaction costs or inefficiencies.  If there is a basis for the FTC's conclusion that, *e.g.*, watching short-form videos from public content creators (without any friend-or-family activity) is PSNS when done on Facebook and Instagram, but not on TikTok, it has refused to provide it and remarkably claims that it should not be required to provide it.  *Compare* FTC's Resp. to Meta's List of Features or Activities, at 6, 16, ECF No. 243-3, *with* FTC's Suppl. Objs. & Resps. To Meta's 2d Set of Interrogs., at 56-58, ECF No. 243-2.  The FTC should be required to explain and provide facts so that Meta can test that information in discovery.  As the cited cases make clear, the FTC will not be able to avoid providing that support at summary judgment, or at a trial if the Court determines that there are issues of fact requiring trial.  The FTC should not be allowed to sandbag here, and thereby thwart Meta's entirely appropriate efforts to obtain the discovery necessary for its defense.

## CONCLUSION

Meta respectfully requests that the Court grant its Motion to Compel Answers to Interrogatory Nos. 13 and 14 and to order the FTC to (1) promptly provide a complete answer to Interrogatory No. 13, that includes full explanation as well as relevant facts as to why features of alleged PSNS apps and identical or similar features on Facebook and Instagram are in the alleged PSNS market; and (2) promptly provide a complete answer to Interrogatory No. 14, that includes relevant facts as to why identical or similar features of alleged non-PSNS apps are not reasonable substitutes for the identified identical or similar features on Facebook and Instagram.

Dated: March 13, 2023

/s/ *Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
Aaron M. Panner (D.C. Bar No. 453608)
Andrew E. Goldsmith (D.C. Bar No. 1007074)
Kevin D. Horvitz (D.C. Bar No. 1521032)
Alex A. Parkinson (D.C. Bar No. 166695)
Hilary M. Weaver*
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900

*Counsel for Defendant Meta Platforms, Inc.*

*Application to D.C. Bar Pending