# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

   v.

META PLATFORMS, INC.

Defendant.

Civil Action No. 1:20-cv-03590-JEB

**Plaintiff Federal Trade Commission's Memorandum of Law in Opposition
to Defendant Meta Platforms, Inc.'s Motion to Compel Answer to Interrogatory No. 2**

**Table of Contents**

I.    The Joint Scheduling Order Plainly Provides that FTC Staff's Notes "Shall Not be the Subject of Discovery" ................................................................................................ 3

II.   FTC Staff Notes From Confidential Third Party Witness Interviews Constitute Opinion Work Product Subject To Heightened Protection ............................................................. 6

III.  The Great Weight of Authority Rejects Similar Attempts To Force Government Enforcers To Prepare Summaries of Confidential Third-Party Witness Interviews ........... 8

IV.   Meta's Claim of "Need" Is Unfounded And Not "Extraordinary" .................................. 11

      A.   Meta Already Has Information About The "Competitive Landscape" in 2012 and 2014 ......................................................................................................................... 11

      B.   Meta Has Not Shown an "Extraordinary Justification" That Entitles it to the FTC's "Virtually Undiscoverable" Work Product ................................................................ 122

V.    Deliberative Process & Investigative File Privileges Apply ............................................ 15

CONCLUSION ......................................................................................................................... 15

## Table of Authorities

**Cases**

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ................................................................. 2

*Dir., Off. of Thrift Supervision v. Vinson & Elkins,* LLP, 124 F.3d 1304 (D.C. Cir. 1997) ..... 7, 13

*Fed. Trade Comm'n v. Staples, Inc.*, No. 15-2115, 2016 WL 259642

    (D.D.C. Jan. 21, 2016) ....................................................................................................... 9, 10

*FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142 (D.C. Cir. 2015) ............................... 10

*FTC v. Meta Platforms, Inc.*, No. 22-4325 (N.D. Cal. Sept. 30, 2022) ......................................... 9

*Gipson v. Sw. Bell Tel. Co.,* 2009 WL 790203 (D. Kan. Mar. 24, 2009) ...................................... 4

*In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-2724, 2022 WL 110423

    (E.D. Pa. Jan. 11, 2022) ......................................................................................................... 9

*In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8 (D.D.C. 2008) ................................................ 10

*In re Sealed Case*, 219 U.S. App. D.C. 195, 676 F.2d 793 (1982) .......................................... 7, 13

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) ...................................................................... 13

*Pigford v. Schafer*, 536 F. Supp. 2d 1 (D.D.C. 2008) .................................................................... 1

*Standard Oil Co. v. United States*, 221 U.S. 1 (1911) ................................................................... 3

*United States ex rel. Landis v. Tailwind Sports Corp*., 303 F.R.D. 429 (D.D.C. 2014) ........... 7, 10

*United States v. A. Airlines Grp. Inc and Jetblue Airways Corp.*, No. 21-11558

    (D. Mass. Feb. 17, 2022) ......................................................................................................... 9

*United States v. Am. Optical Co.*, 37 F.R.D. 233 (E.D. Wis. 1965) ............................................. 15

*United States v. Apple Inc.*, No. 12-2826 (S.D.N.Y. Sept. 14, 2012) ............................................ 9

*United States v. Bertie Ambulance Serv., Inc*., No. 2:14-CV-53-F, 2015 U.S. Dist. LEXIS 83537

    (E.D.N.C. June 25, 2015) ....................................................................................................... 15

*United States v. Blue Cross Blue Shield of Michigan*, No. 10-14155, 2012 WL 12930840

   (E.D. Mich. May 30, 2012) ............................................................................... 9

*United States v. Clemens*, 793 F.Supp.2d 236 (D.D.C. 2011) ................................... 7, 8

*United States v. Dean Foods Company*, 2010 WL 3980185 (E.D. Wis. Oct. 8, 2010) ...... 9, 10, 11

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) .................................... 10

*United States v. Dentsply*, 187 F.R.D. 152 (D. Del. 1999) ................................. 9, 10, 11

*United States v. Du Pont*, 353 U.S. 586 (1957) ....................................................... 3

*United States v. Grinnell Corp.*, 236 F. Supp. 244 (D.R.I. 1964) ................................ 3

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ............................................... 3

*United States v. ITT Continental Baking Co.,* 420 U.S. 223 (1975) ............................. 3

*United States v. National Cinemedia, Inc.*, No. 14-8732 (S.D.N.Y. Feb. 5, 2015) ................. 9, 11

*United States v. US Airways Grp., Inc.*, No. 13-1236, 2013 WL 12341600 (D.D.C. Oct. 10,

   2013) *adopted* 2013 U.S. Dist. LEXIS 206515 (D.D.C. Oct. 10, 2013) ..................... 7, 8, 10

*United States v. Western Elec. Co*., 12 F.3d 225 (D.C. Cir. 1993) ................................. 1

*Upjohn v. United States,* 449 U.S. 383 (1981) ........................................................ 13

*Yeda Research & Dev. Co. v. Abbott GMBH & Co. KG*, 2013 U.S. Dist. LEXIS 84948

   (D.D.C. June 17, 2013) .............................................................................. 13

**Statutes**

Sherman Act § 2 ....................................................................................................... 2

Clayton Act § 7 ........................................................................................................ 2

This Court has previously rejected Meta's demand for "factual" information contained in notes and memoranda generated by FTC staff related to the Instagram and WhatsApp transactions.  *See* ECF 152-1 at 13-24 (Meta Motion to Compel); ECF 189 (Order denying Motion).  Meta now repackages its request, demanding that the FTC summarize supposedly "factual" information related to the same topics from an alternate set of FTC staff's notes.  The Court should reject Meta's request again, this time because it seeks discovery that is proscribed by the express language of the stipulated Joint Scheduling Order, which plainly states that the documents Meta targets "shall not be the subject of discovery."  ECF No. 103 (Joint Scheduling Order), ¶ 16 ("JSO ¶ 16") (materials that "shall not be the subject of discovery" include "notes, drafts, communications, memoranda, documents, or other work product produced by or exchanged solely among and between . . . (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission)").

The parties extensively negotiated JSO ¶ 16 over many weeks in January and February of 2022, the parties stipulated to its plain language, and the Court endorsed the language that has governed the parties' discovery efforts for more than a year.  *See* Ex. 1 (May 12, 2022 Matheson Ltr. at 2-7) (explaining the parties' negotiations).  In this Circuit, courts first look to the language drafted by the parties to determine the scope of a stipulation, agreement, or decree.  *See, e.g., United States v. Western Elec. Co.*, 12 F.3d 225, 229 (D.C. Cir. 1993) ("In interpreting the Decree, we apply ordinary principles of contract law."); *see also Pigford v. Schafer*, 536 F. Supp. 2d 1, 10 (D.D.C. 2008) ("Courts generally apply ordinary principles of contract law when interpreting consent decrees and stipulations.").  Here, the language of the JSO is plain, and Meta's effort to disregard it now is not only contrary to law, it would also trigger a new set of potentially contentious discovery issues, with under two months left in the fact discovery period.

Because the language of the JSO is plain, the Court need not consider whether various privileges apply to staff's notes.  However, if the Court elects to reach this question, the answer is clear: FTC staff notes are opinion work product subject to near-absolute protection.  *Infra*, §§ II, III, IV.B.  Moreover, deliberative process privilege also applies, as this Court has previously held.  ECF No. 189, at 8-11, 18-20; *infra*, § V.

Meta fails to show these privileges can be overcome by its supposed "need."  As a preliminary matter, abundant information is available to Meta from non-privileged sources.  *Infra*, § IV.  But more importantly, just as this Court previously observed that "it is doubtful that the evidence Meta seeks from these memoranda and notes is particularly relevant to [Meta's] equitable defenses," ECF 189 at 19, Meta does not now seek information that is particularly relevant to the FTC's monopolization claim.  Meta claims that FTC staff's interview notes will provide "contemporaneous evidence about the foreseeable competitive effects of the acquisitions."  Mem. at 1.  But even assuming, for the sake of argument, that this assertion were true, it would not support Meta's *ipse dixit* assertion of "need," because no authority suggests that the foreseeability of harm at the time of an acquisition is relevant to a subsequent Section 2 monopoly maintenance claim.  The FTC is not aware of any such authority.  Meta cites none, and it should not be heard to argue any new supposed "authority" in its Reply.

Meta simply has no authority supporting its suggestion that the information it seeks is relevant to the FTC's monopolization claim – its sole citation is an inapposite footnote from *Brown Shoe Co. v. United States*, 370 U.S. 294, 318 n. 32 (1962).  *See* Mem. at 11.  That footnote, like all of Meta's other authority, discusses Section 7 of the Clayton Act.  Meta cites no cases that are relevant to claims of monopoly maintenance under Section 2 of the Sherman Act; in the Section 2 context, the Supreme Court has condemned consummated acquisitions that

contribute to monopoly maintenance without even mentioning foreseeability of harm.  *See e.g.,*

*United States v. Grinnell Corp.*, 384 U.S. 563, 570-80 (1966) (affirming lower court's holding

that acquisitions violated Section 2, including an acquisition that had been pre-notified to

Department of Justice – *see United States v. Grinnell Corp.*, 236 F. Supp. 244, 254 (D.R.I.

1964)); *Standard Oil Co. v. United States*, 221 U.S. 1, 79 (1911).  Indeed, while it is not relevant

to the FTC's claim here, even in the Section 7 context the Supreme Court has stated that an

acquisition may be challenged after the fact where no harm was foreseeable at the time of the

acquisition.  *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 242 (1975) ("[T]here

can be a violation [of Section 7] at some time later even if there was clearly no violation—no

realistic threat of restraint of commerce or creation of a monopoly—at the time of the initial acts

of acquisition.") (discussing *United States v. Du Pont*, 353 U.S. 586 (1957)).

## I.    The Joint Scheduling Order Plainly Provides that FTC Staff's Notes "Shall Not be the Subject of Discovery"

The plain language of JSO ¶ 16 forecloses the discovery Meta seeks, and Meta's

suggestions to the contrary are unpersuasive.  First, Meta suggests that JSO ¶ 16 does not apply

because Meta seeks a summary of the contents of FTC staff's notes, rather than production of

copies.  *See* Mem. at 14.  This ignores the plain language of the JSO – the fact that Meta seeks

discovery through an interrogatory rather than a request for documents does not change the fact

that Meta seeks to make FTC staff's "notes" "the subject of discovery."  *See* JSO ¶ 16.  This is

forbidden by the express language of the JSO: "notes" and "other work product" are protected if

they are "produced by or exchanged solely among and between" counsel to the FTC or persons

employed by the FTC.  *See id*.  The obvious reality that Meta seeks discovery into the contents of

staff's protected notes is not obscured by Meta's claim that it is seeking "facts from third

parties."  Mem. at 14.  There are no such "facts" in FTC staff's notes, *see infra* § II, but even if

there were, the JSO forbids Meta from discovering the content of FTC staff's notes.

Second, Meta suggests that JSO ¶ 16 applies only to "notes" and other documents to the extent that the FTC affirmatively establishes them to be "privileged or otherwise protected." Mem. at 14-15. This argument fails, for the simple reason that the staff notes at issue are "otherwise protected," and thus fall within the express language of JSO ¶ 16, as they are attorney work product (and deliberative process privileged). But more fundamentally, JSO ¶ 16 prohibits Meta from making categories of documents the subject of discovery: documents within those categories "need not be preserved, and need not be placed on a privilege log." JSO ¶ 16. Requiring the FTC (and, presumably, Meta) to assert privileges and produce a log for each document described in JSO ¶ 16 would eviscerate its purpose, which was to eliminate the burden (and cost to Meta and U.S. taxpayers) that would be imposed on each party by collecting, searching, and reviewing categories of documents. The whole point of JSO ¶ 16 is that neither Meta nor the FTC are required to evaluate each document and make a privilege determination. For this reason, the lone out-of-circuit case Meta cites is inapposite. *See* Mem. at 15. In that case, the court explained that "the parties' Stipulation Regarding Privilege Logs, by its express terms, applies only to those documents that are 'protected by the attorney-client privilege and the work product doctrine.'" *Gipson v. Sw. Bell Tel. Co.,* 2009 WL 790203, at *15 (D. Kan. Mar. 24, 2009). Thus, the stipulation in *Gipson* contemplated that each party must make a privilege determination before invoking the relevant stipulation governing logging obligations. Here, JSO ¶ 16 entirely exempts certain categories of documents from discovery, obviating the need for the individualized privilege assessments required by the *Gipson* stipulation.

Third, the Court should not seriously entertain Meta's assertion that JSO ¶ 16 applies only to documents prepared since the commencement of the present litigation. Mem. at 15. This

suggestion is unsupported by any language in the JSO, and it would eviscerate the protections that JSO ¶ 16 provides to both parties.  Due to the FTC's investigation prior to filing its Complaint, counsel for both the FTC and Meta likely possess many tens of thousands of internal "notes, drafts, communications, memoranda, documents, or other work product."  JSO ¶ 16.  The FTC, of course, does not know how many such documents exist, because JSO ¶ 16 states that these documents "shall not be the subject of discovery," so the FTC has never attempted to collect or review them.  Presumably Meta's counsel is in the same boat.  Meta's suggestion that JSO ¶ 16 does not apply to pre-Complaint materials would apparently require both parties to engage in the disproportionate and wasteful exercise of collecting, evaluating, and logging a huge number of "notes" and "other work product."

Finally, the Court should reject Meta's cursory suggestion that "good cause" exists to modify the JSO, Mem. at 15.  Under Local Rule 16.4(a), it is Meta's affirmative burden to make a "showing of good cause."  Meta has not met its burden, as it fails to identify authority or argument that supports its vague request for an unspecified change.  Further, Meta has never met and conferred with the FTC regarding the relief it seeks, contrary to Local Rule 7(m).  Meta has never proposed a modification of JSO ¶ 16 to the FTC, and it fails to propose a specific modification to the Court.  Meta's failure to articulate the modification it desires may be due to the fact that modifying the JSO to subject the FTC's internal notes to discovery would necessarily eviscerate the protections that JSO ¶ 16 provides to both parties' pre-Complaint work product, which would create enormous complications that would likely threaten the fact discovery deadline.  In truth, Meta is not seeking a modification to the JSO, but instead an exemption from its express requirements.

In any event, Meta lacks good cause to modify JSO ¶ 16 at this stage of discovery, in

light of its unwarranted delay in bringing this long-ripe issue to the Court.  The FTC's position

that Interrogatory No. 2 seeks information proscribed by JSO ¶ 16 has been clear to Meta since at

least May 13, 2022.  *See* Ex. 21 (May 13, 2022 Matheson Ltr.) at 2.  Indeed, the FTC made its

position clear even earlier – no later than April 19, 2022 – in response to Meta's requests for

production.  *See* Ex. 2 (April 27, 2022 Matheson Ltr.) at 1-2; Ex. 1 at 2.  The FTC has reiterated

its consistent position on multiple occasions, and "repeatedly expressed our willingness to clarify

this issue with the Court, and each time Meta has refused to seek clarification."  Ex. 22 (Aug. 22,

2022 Matheson Ltr.) at 2; *see also* Ex. 23 (Sept. 27, 2022 Matheson Ltr.) at 1-2.  Yet Meta

unjustifiably delayed bringing this question to the Court and has frustrated the FTC's attempts to

do so.  Specifically, in May 2022, the FTC proposed including the dispute over JSO ¶ 16 in the

parties' Joint Status Report so the parties could resolve the issue, but Meta insisted that the

dispute was not ripe and prevented the FTC from briefing the issue.[1]  Matheson Decl., ¶ 3.

Meta's insistence that the dispute was not ripe in May 2022 is untenable in light of its renewed

insistence that the FTC provide discovery into protected pre-Complaint materials.  The FTC

again suggested that the parties brief in the issue in September 2022, *see* Ex. 23 at 2, and Meta

again refused.  The Court should not countenance Meta's long refusal to resolve this issue, only

to attempt at the eleventh hour to finally surface the issue in a manner that will threaten the fact

discovery deadline.  Further, there is no good cause to modify the JSO, because the documents

Meta seeks are shielded by multiple protections, as discussed below.

## II.    FTC Staff Notes From Confidential Third Party Witness Interviews Constitute Opinion Work Product Subject To Heightened Protection

This Court has already rejected Meta's effort to obtain all "factual information" contained

---

[1] The FTC has never had a parallel ripe dispute regarding its discovery requests to Meta, because
the FTC has not sought discovery prohibited by the plain language of JSO ¶ 16.

in the FTC's internal notes and memoranda, prepared in anticipation of possible litigation, related to the Instagram and WhatsApp transactions.  *See* ECF No. 163 (Meta Reply Br.) at 13-14; ECF 189 (Order).  The Court should reject Meta's renewed effort to invade FTC staff's work product, as the Supreme Court, courts in this Circuit, and other courts around the country have all held that such information is squarely protected by the attorney work product doctrine.

Not all work product is treated equally: greater protection is afforded to opinion work product than to fact work product.  Indeed, "[w]here, as here, the documents involved all reflect the opinions, judgments, etc. of a lawyer, the work product privilege is for practical purposes as absolute as the attorney-client privilege . . . ."  *In re Sealed Case*, 219 U.S. App. D.C. 195, 676 F.2d 793, 812, fn 72 (1982)).  Courts in this district hold that government staff's investigational interview notes are entitled to such near-absolute protection, as they are protected "opinion work product" generated through attorneys' efforts to "sift what he [or she] considers to be the relevant from the irrelevant facts."  *See United States v. US Airways Grp., Inc.*, No. 13-1236, 2013 WL 12341600, at *3 (D.D.C. Oct. 10, 2013) ("*US Airways*"), *adopted* 2013 U.S. Dist. LEXIS 206515, at *6 (D.D.C. Oct. 10, 2013) (citations omitted); *Dir., Off. of Thrift Supervision v. Vinson & Elkins,* LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("*OTS*") (finding that attorney investigative notes that are evaluative in nature and center around staff thoughts, opinions, and recommendations regarding information gathered in the investigation qualify as opinion work product, which is "virtually undiscoverable."); *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 429, 431–32 (D.D.C. 2014) (finding witness interview memorandum that "contain[ ] facts elicited in the course of a 'litigation-related investigation'"… "'necessarily reflect[ ] a focus chosen by the lawyer,'" and thus constitute opinion work product entitled to privilege.") (citing *United States v. Clemens*, 793 F.Supp.2d 236, 252 (D.D.C. 2011)).

Here, the documents Meta seeks are not transcripts, nor reports of all that was said in an interview. Galvan Decl. ¶¶ 11-12. They are opinion work product created by FTC attorneys, in anticipation of litigation, who selected which questions to ask, and sifted the information to record in their notes based on the attorneys' mental impressions regarding relevance to potential theories under investigation. *Id.* ¶¶ 8-11, 15-16. The documents have been kept internal to the FTC and used solely for purposes of investigating the acquisitions, preparing for litigation in 2012 and 2014, and making recommendations about litigation to the Commission. *Id.* ¶ 11.

### III.   The Great Weight of Authority Rejects Similar Attempts To Force Government Enforcers To Prepare Summaries of Confidential Third-Party Witness Interviews

Courts in this district disfavor and reject requests to force counsel to prepare summaries of supposedly factual statements contained in opinion work product. "Either way, [defendants are] asking opposing counsel to produce a document prepared by counsel that divulges what counsel learned from interviewing potential witnesses in anticipation of litigation." *US Airways*, 2013 WL 12341600 at *3 (quotation omitted). As the *Clemens* court explained:

> [E]ven if it can be agreed upon that a collection of materials or statements constitute "facts," the collection of those facts might nonetheless reveal an attorney's thought processes and mental impressions of the case, thereby converting the information into "opinion" work product. ... Additionally, the facts elicited from an investigation may be, in some cases, necessarily reflective of an attorney's focus in a case.

*Clemens*, 793 F.Supp.2d at 245 (citations omitted). The Court should reach the same conclusion here, as any "factual" statements FTC staff wrote in the documents at issue are inextricably intertwined with FTC staff's mental impressions, analysis, and recommendations. Galvan Decl. ¶¶ 8-11, 15-16; *US Airways,* 2013 WL 12341600 at *4.

These precedents are consistent with numerous recent antitrust cases in which courts have rejected the same attempts to force the government to recite "facts" learned in investigative interviews. *See FTC v. Meta Platforms, Inc. ("Meta/Within")*, No. 22-4325, slip op. at 1 (N.D.

Cal. Sept. 30, 2022) (Ex. 3) ("The FTC's interview notes are protected work product"); *United States v. A. Airlines Grp. Inc and Jetblue Airways Corp.* ("*Jetblue*"), No. 21-11558 (D. Mass. Feb. 17, 2022) (Dkt. No. 90, Electronic Order); *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-2724, 2022 WL 110423, at *2–4 (E.D. Pa. Jan. 11, 2022); *Fed. Trade Comm'n v. Staples, Inc. ("Staples")*, No. 15-2115, 2016 WL 259642, at *1–5 (D.D.C. Jan. 21, 2016); *United States v. National Cinemedia, Inc. ("Cinemedia")*, No. 14-8732, slip op. at 1 (S.D.N.Y. Feb. 5, 2015) (Ex. 4) ; *United States v. Apple Inc.*, No. 12-2826, slip op. at 2 (S.D.N.Y. Sept. 14, 2012) (Ex. 5); *United States v. Blue Cross Blue Shield of Michigan*, No. 10-14155, 2012 WL 12930840, at *1-4 (E.D. Mich. May 30, 2012).  Each of these courts has expressly or implicitly considered and rejected the cases on which Meta attempts to rely.

Meta relies heavily on *United States v. Dean Foods Company*, 2010 WL 3980185 (E.D. Wis. Oct. 8, 2010), but that case is readily distinguishable.  The *Dean Foods* court was persuaded that the discovery at issue sought "facts . . . that form the basis of the plaintiffs' claims," and that sword-and-shield concerns were implicated because "plaintiff will undoubtably rely on certain of the facts obtained from its third-party interviews in supporting its claims."  *Id.* at *2, *4.  That is not the case here, as the FTC will not rely on interviews conducted in 2012 or 2014, and nothing in FTC staff's notes forms the basis of the FTC's monopolization claim – indeed, the information Meta seeks is not particularly relevant to it.  *See supra* at 2-3.  *Dentsply* is inapposite for the same reasons.  As the *Dean Foods* court explained, "[in *Dentsply*], the court was confronted with a similar situation in an antitrust lawsuit and found that the intent of the work-product doctrine was never to allow a party to 'manipulate the timing of the revelation of facts it has gathered and upon which it intends to rely to suit its purposes.'"  *Dean Foods*, 2010 WL 3980185, at *4 (quoting *United States v. Dentsply*, 187 F.R.D. 152, 156 n. 2 (D. Del. 1999)).

Moreover, *Dean Foods* is unpersuasive because the court reached the questionable conclusion that the relevant interrogatory did not seek work product at all. *Id.*, at *4. This is inconsistent with authority in this District. *See US Airways,* 2013 WL 12341600 at *2, fn 3 (rejecting application of *Dean Foods,* citing *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010)); *Staples,* 2016 WL 259642 at *4, fn 3 (same)). In this district, opinion work product protection applies where attorneys "sharply focused or weeded" and chose what thoughts to record related to the interviews. *Landis*, 303 F.R.D. at 431; *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12-13 (D.D.C. 2008); *cf. FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 152 (D.C. Cir. 2015) (recognizing opinion work product where a lawyer "sharply focused or weeded the materials") (citations omitted).

Further, both *Dean Foods* and *Dentsply* are unpersuasive because those courts concluded that the relevant discovery sought segregable discrete facts. Here, Meta's focus belies its assertion that it seeks relevant "factual" information, as Meta concedes that it truly seeks information regarding how "*nonparties* . . . viewed the foreseeable competitive effects of the acquisitions," Mem. at 8 (emphasis in original); and how the FTC might have defined "the relevant antitrust market that might be affected by the transactions," *id.* at 10; and nonparties' "views on the competitive landscape." *Id.* at 11. Neither nonparties' views nor potential relevant markets at issue in the FTC's 2012 and 2014 investigations constitute "factual" information, and even if they did, they are not particularly relevant to the FTC's monopolization claim. *See supra* at 2-3. Moreover, Meta's concession that it seeks to understand nonparties' views on the acquisitions illuminates the impropriety of its request:

> Defendants and the cases they cite presuppose that information sought consist of easily identifiable facts that can be plucked from Plaintiffs materials like an apple from a tree. In practice, that is not the case. To answer whether a person expressed support for or concern about the merger, Plaintiff would be required to

review its interview notes, memoranda, and other work product and make a determination as to that person's assessment of the proposed merger. The answer may not be clear or straight-forward, particularly if the third party offered conditional support or expressed reservations. The same situation is present in Defendants' request for material facts, which would also require Plaintiff to review its work product and utilize its professional judgment in order to assess a fact's materiality. In both instances, the attorney reviewing the materials would need to form a conclusion based on both opinion and fact work product that would reveal the very mental impressions and legal theories that *Hickman* holds sacred.

*Cinemedia* (Ex. 4), at 1–2.

Finally, the *Dean Foods* and *Dentsply* courts did not consider deliberative process or investigative file privileges, which also apply here. *Infra*, § V.

## IV.   Meta's Claim of "Need" Is Unfounded And Not "Extraordinary"

This Court should again reject Meta's overblown insistence that it "needs" access to purportedly factual material in FTC staff's work product.  As explained previously, Meta's claims of "need" disregard the limited scope of the FTC's 2012 and 2014 investigations, exaggerates the "evidence" available to the FTC at the time, ignores the factual information already available to Meta, and ignores that the disputed staff notes contain recommendations, opinions, and analysis, not distinct factual content.  *See* ECF No. 160 at 21-22.  For the sake of brevity, the FTC refers the Court to arguments and authorities it provided in opposition to Meta's Motion to Compel the same information.  *See* ECF No. 160 at 21-29.

### A.   Meta Already Has Information About The "Competitive Landscape" in 2012 and 2014

Meta is noticeably silent about the contemporaneous market evidence in its own possession from the 2012 and 2014 timeframe.  For example, ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Notably, █████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Moreover, Meta can hardly dispute that it performed and had access to market

assessments, analysis, and studies related to its due diligence and valuation assessments related

to its acquisition of Instagram in 2012 and WhatsApp in 2014. ██████████████████

███████████████████████████████ Further, in addition to

documents, data and witnesses from 2012 and 2014 are still available.

**B.    Meta Has Not Shown an "Extraordinary Justification" That Entitles it to the FTC's "Virtually Undiscoverable" Work Product**

Because they are opinion work product, content in the FTC staff's third-party interview

notes are entitled to heightened protection.  Indeed, "[o]pinion work product…is 'virtually undiscoverable.'" *Yeda Research & Dev. Co. v. Abbott GMBH & Co. KG*, 2013 U.S. Dist. LEXIS 84948 at *27 (D.D.C. June 17, 2013) **(**quoting *OTS*, 124 F.3d at 1307).  Consistent with the Supreme Court's holding in *Upjohn*, the D.C. Circuit recognizes that "to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification."  *In re Sealed Case*, 676 F.2d at 809-10; *see Upjohn v. United States,* 449 U.S. 383, 399-402 (1981); *see also In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) ("[a]s the work product sought here is based on oral statements from witnesses, a far stronger showing is required than the 'substantial need' and 'without undue hardship' standard applicable to discovery of work-product protected documents and other tangible things.").

Meta cannot meet this high bar by pretending that the FTC's files are the exclusive sources of information regarding market conditions in the relevant time period.  Relevant contemporaneous documents indisputably exist, including Meta's own trove of information about competitive dynamics.  The FTC and Meta are identically situated in their efforts to locate third party documents and data from 2012-2014, and Meta has superior access to current and former Meta employees.  Moreover, industry participants interviewed by the FTC in 2012-2014 may provide evidence regarding competitive conditions, even if they cannot recall the precise statements they made to the FTC.  For example, Meta states that it ███████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████  *See* Mem. Ex. F (Treiger Decl.), ¶ 4. However, ████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████

████████████████ This demonstrates the irrelevance of Meta's complaint that some witnesses do not recall "being interviewed by the FTC" or "the substance of the conversation." *See* Mem. at 4-5; *see also* Mem. Ex. F (Treiger Decl.). As ████████ shows, such conclusory statements do not illuminate the relevant individuals' ability to testify regarding competitive dynamics in 2012 and 2014.

Moreover, it is notable that ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ For its part, Meta has been in no hurry to depose nonparties regarding competitive conditions in 2012 and 2014: with two months remaining in the fact discovery period, Meta has to date taken only sixteen total hours of nonparty depositions (including time questioning nonparty witnesses originally noticed by the FTC). Matheson Decl., ¶ 9. Meta questioned ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████ In sum, Meta has not shown it is unable to obtain testimony regarding competitive conditions in 2012 and 2014 from the relevant interviewees or from other nonparty witnesses – Meta has simply made little effort to do so. Further, Meta fails to indicate whether Meta's counsel asked if the interviewees had notes or documents that might reflect the competitive landscape or whether anything might refresh their recollection. Meta's complaints that it lacks access to witness testimony due to the passage of time thus ring hollow.

14

Mem. at 1, 5-6, 11, 12.  Particularly where other sources of evidence exist, the passage of time standing alone is insufficient to establish substantial need for one particular source of information.  *Cf. United States v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 U.S. Dist. LEXIS 83537, at *16-18 (E.D.N.C. June 25, 2015).  Meta's claim that it has been unable to contact some individuals is similarly unavailing.  *United States v. Am. Optical Co.*, 37 F.R.D. 233, 238-39 (E.D. Wis. 1965) (citations omitted) ("[I]t is clear that the mere refusal of these witnesses to be interviewed by defendants' counsel does not constitute a sufficient showing of necessity to justify disclosure of otherwise privileged work[-]product.").

## V.    Deliberative Process & Investigative File Privileges Apply

Above, the FTC focused on work product protections in order to address Meta's principal arguments and to avoid duplicating the FTC's arguments in prior briefing.  *See* ECF No. 160. The FTC has not, at this stage, generated a privilege log or a declaration supporting deliberative process or investigatory files protection for these specific documents, because JSO ¶ 16 states that the FTC is not required to do so.  But to the extent that the Court entertains the question of whether the relevant documents are privileged and would find such a declaration helpful, the FTC should be given an opportunity to provide a declaration.  *Cf.* ECF 160-7, Vedova Decl. ¶¶ 3-4 (supporting deliberative process privilege, based on an examination of documents at issue related to the Instagram and WhatsApp transactions); ¶ 23 (investigatory file privilege applies to staff notes as "in most instances, third parties provide this information to FTC staff on a confidential basis…disclosure here would deter third party witnesses from coming forward and candidly discussing their views with staff in future investigations.").

## CONCLUSION

For the reasons above, Meta's Motion to Compel should be denied.

Dated: March 22, 2023

Respectfully submitted,

/s/ Daniel Matheson
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Susan Musser (D.C. Bar 1531486)
Jessica Moy
Nathan Brenner
Maria DiMoscato (D.C. Bar 489743)
Owen Masters (D.C. Bar 242139)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of March 2023, I served the foregoing on the following counsel via ECF:

      Mark C. Hansen
      Kevin B. Huff
      Kenneth M. Fetterman
      Geoffrey M. Klineberg
      Kevin J. Miller
      Aaron M. Panner
      Alex A. Parkinson
      Ana Nikolic Paul
      Aaseesh P. Polavarapu
      Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
      1615 M Street, N.W. Suite 400
      Washington, DC 20036
      Tel: 202-326-7900
      mhansen@kellogghansen.com
      khuff@kellogghansen.com
      kfetterman@kellogghansen.com
      gklineberg@kellogghansen.com
      kmiller@kellogghansen.com
      apanner@kellogghansen.com
      aparkinson@kellogghansen.com
      apaul@kellogghansen.com
      apolavarapu@kellogghansen.com

      Sonal N. Mehta
      Wilmer Cutler Pickering Hale & Dorr LLP
      2600 El Camino Real, Suite 400
      Palo Alto, CA 94306
      Tel: 650-858-6000
      sonal.mehta@wilmerhale.com

      David Gringer
      Wilmer Cutler Pickering Hale & Dorr LLP
      7 World Trade Center
      250 Greenwich Street
      New York, NY 10007
      Tel: 212-230-8800
      david.gringer@wilmerhale.com
      James P. Rouhandeh
      Michael Scheinkman

      Davis Polk & Wardwell LLP
      450 Lexington Avenue

New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

/s/ Daniel Matheson
Daniel Matheson (D.C. Bar 502490)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*

18