# EXHIBIT 1



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Daniel J. Matheson
Bureau of Competition
Phone: (202) 326-2075
Email: dmatheson@ftc.gov

May 12, 2022

**By Electronic Mail**

Kevin B. Huff, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street NW, Suite 400
Washington, D.C. 20036

RE:     Plaintiff's First Set of Requests for Production of Documents, *FTC v. Meta Platforms, Inc.*, Civ. Action No. 1:20-cv-03590 (JEB) (D.D.C.)

Dear Kevin:

I write in response to your letter dated May 4, 2022, which you sent to us at 11:59 p.m. and we received on May 5.  Your letter purports "to memorialize the April 19, 2022 meet-and-confer between the Federal Trade Commission and Meta regarding Meta's First Set of Requests for Production of Documents."  As a preliminary matter, we do not believe that a letter sent more than two weeks after our meet and confer could accurately "memorialize" our conversation, and not surprisingly, your letter includes misstatements and mischaracterizations of that call.

Additionally, Meta's demand that the FTC act "promptly" (5/4/2022 K. Huff Ltr. at 1, 4, 5, 6, 8) is inconsistent with Meta's delay in providing a letter that it promised within days of our April 19 meet and confer, and with Meta's failure to provide any metrics to support its claims of burden with respect to the FTC's document requests to Meta (as we have requested for several months now), or to produce a single document in response to those document requests, which were served nearly three months ago.  Notwithstanding Meta's own dilatory behavior, and failure to satisfy its own discovery obligations in a timely fashion, the FTC continues to conduct a reasonable search for the documents that we agreed to produce in response to Meta's first set of document requests.  To that end, we anticipate a document production to Meta this month. Below, we respond to the remainder of the points in your correspondence of May 4.

Letter to Kevin B. Huff
May 12, 2022
Page 2

## **Applicability of Paragraph 16 of the Joint Scheduling Order**

On our meet and confer of April 19, Meta was unable to confirm its position as to whether Paragraph 16 of the Joint Scheduling Order (hereinafter, "Paragraph 16") applied to the pre-complaint investigation: you stated you were "not sure" and needed to check with your colleagues regarding that question. 4/27/2022 D. Matheson Ltr. at 2. Despite that prior equivocation, you now assert that "Paragraph 16 applies only to communications prepared since the commencement of this litigation," which "was Meta's understanding of the purpose and scope of this provision." 5/4/2022 K. Huff Ltr. at 2. It is unclear when Meta came to this "understanding"; in any event, Meta's inability to articulate its position until May 4 belies any insinuation that Meta has always had this understanding.

Unlike Meta, the FTC's position has always been consistent: Paragraph 16 means what it says: that "the following privileged or otherwise protected communications shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log: emails, notes, drafts, communications, memoranda, documents, or other work product produced by or exchanged solely among and between: . . . (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission); (e) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel for a plaintiff with which the FTC shares a common legal interest in pursuing or exploring litigation against Meta; (f) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel employed by any executive-branch agency of the federal government." Dkt. 103 ¶ 16. As we have explained to you repeatedly, this provision applies not only to post-complaint documents, but also to documents pre-dating the complaint.

The bases you set forth in your letter for why the language of Paragraph 16 does not mean what it says are unavailing.

***First***, you contend that "Paragraph 16 applies only to communications prepared since the commencement of this litigation." 5/4/2022 K. Huff Ltr. at 2. Not surprisingly, you cite to no language in Paragraph 16 in support of this position. Indeed, Paragraph 16 contains only two explicit limitations: specifically, subsections (b) and (c), which relate to communications between Meta's in-house counsel and outside counsel relating to "defending potential or current litigation against Meta," and among Meta's in-house counsel "on topics relating to potential or current litigation against Meta." By limiting (b) and (c) to "potential or current litigation," the Joint Scheduling Order indicates the parties' agreement not to so limit the other categories in Paragraph 16 (including communication among Meta's outside counsel related to any Meta litigation – past, present, or future). You argue, however, that such an agreement is contrary to "Meta's understanding of the purpose and scope of this provision," citing an out-of-circuit case and a treatise (the chapter cited of which was authored by partners at a firm that currently represents Meta in other matters) for the unremarkable position that parties routinely enter agreements to exclude post-complaint communications to avoid the burden of logging such communications. 5/4/2022 K. Huff Ltr. at 2. Neither of those purported authorities, however, addresses discovery of pre-complaint government investigative materials, and thus they have no bearing on the situation at hand.

Letter to Kevin B. Huff
May 12, 2022
Page 3

On this score, you further assert that "courts have rejected attempts to shield pre-litigation communications from privilege logs." *Id.* Notably, in each of the out-of-circuit cases to which you cite, the parties disagreed as to whether pre-complaint communications should be logged prior to any court order addressing that issue. *Ritchie v. Sempra Energy*, 2014 WL 12638874, at *2 (S.D. Cal. Aug. 4, 2014); *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *15 (M.D. Fla. Oct. 25, 2013); *Prism Techs., LLC v. Adobe Sys., Inc.*, 2011 WL 5523389, at *2 (D. Neb. Nov. 14, 2011); *see also United States v. Bouchard Transp.*, 2010 WL 1529248 (E.D.N.Y. Apr. 14, 2010). Here, the parties have a written agreement, signed by the court, that contemplates and excludes from discovery the categories of pre-complaint communications identified in Paragraph 16.

***Second***, you suggest that Meta's new interpretation is supported by your characterization of the parties' discussions, arguing that "[a]t no point during the Rule 26(f) conference did the FTC suggest, or did the parties discuss, this provision extending to the FTC's historical 2012, 2014, or 2019 investigations (or Meta's responses to those investigations). If the FTC had taken that position, then Meta certainly would have objected and would not have agreed to this provision." 5/4/2022 K. Huff Ltr. at 3. This assertion is unpersuasive. There is no reason that the parties would necessarily discuss orally every proposition that is clear from the plain language of the written drafts that the parties exchanged. Moreover, the proposal that is now memorialized in Paragraph 16 was extensively negotiated, and the FTC made several concessions to Meta in reliance on the exemptions from discovery provided by the plain language of Paragraph 16.

In addition to the parties' oral discussions, the parties exchanged numerous competing drafts of Paragraph 16.

- On January 25, 2022, the FTC sent a draft Scheduling Order to Meta, including a proposed Paragraph 16. *See* 1/25/2022 Matheson Email.

- On February 2, 2022, Meta provided its initial reaction to the FTC's proposals, identifying the FTC's proposed Paragraph 16 as among the FTC proposals regarding which Meta was "largely in agreement with or have slight modifications to." *See* 2/2/2022 K. Miller Email.

- On February 6, 2022, Meta proposed a redline revision explicitly addressing Paragraph 16, proposing extensive additional protections to Meta that would have exempted from discovery all communications between Meta's counsel and "counsel for parties with a common legal interest." *See* 2/6/2022 P. Ana Email (adding, as an additional category of "privileged or otherwise protected communications [that] shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log: email, notes, drafts, communications, memoranda, documents, or other work product produced by or exchanged solely among and between . . . <span style="color:red">(c) outside counsel for Defendant or In-House counsel employed by Defendant and counsel for parties with common legal interest</span>") (coloration in original).

Letter to Kevin B. Huff
May 12, 2022
Page 4

- On February 9, 2022, the FTC responded to Meta's proposal with a counter-proposal that would not have exempted from discovery communications between Defendant's counsel and "counsel for parties with a common legal interest."  *See* 2/9/2022 Matheson Email (proposing, with respect to the relevant provision, exempting from discovery communications between "(b) outside counsel for Defendant and In-House counsel employed by Defendant (as that term is defined in the Protective Order in this action).").

- On February 15, 2022, the parties met and conferred, and discussed the FTC's counter-proposal.

- On February 17, 2022, based on the parties' discussions, the FTC provided a revised proposal, amending the relevant provision to exempt from discovery communications exchanged solely between "(b) outside counsel for Defendant and In-House counsel (as that term is defined in the Protective Order in this action) employed by Defendant and counsel for parties with common legal interest in defending litigation against Meta."  *See* 2/17/2022 D. Matheson Email (emphasis added).

- On February 19, 2022, Meta proposed exempting from discovery an additional category of communications, involving "(c) In-House Counsel (as that term is defined in the Protective Order in this action) employed by Defendant on topics relating to potential or current litigation against Meta."  *See* 2/19/2022 K. Miller Email.

- On February 21, 2022, the FTC accepted Meta's counter-proposal exempting from discovery the communications that Meta requested.  *See* 2/21/2022 D. Matheson Email ("The Parties agree that the following privileged or otherwise protected communications shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log:  email, notes, drafts, communications, memoranda, documents, or other work product produced by or exchanged solely among and between: (a) outside counsel for the Defendant; (b) outside counsel for Defendant and/or In-House counsel (as that term is defined in the Protective Order in this action) employed by Defendant and counsel for Parties with common legal interest in defending potential or current litigation against Meta; (c) In-House Counsel (as that term is defined in the Protective Order in this action) employed by Defendant on topics relating to potential or current litigation against Meta . . .").

- The parties subsequently exchanged several drafts, and on February 22, 2022, the FTC filed the parties' Joint Civil Rule 16.3 Report, which jointly requested the extensively negotiated provision that is now Paragraph 16 of the Joint Scheduling Order.

In summary, the parties extensively negotiated proposals from both the FTC and Meta regarding Paragraph 16.  The FTC made substantial concessions to Meta regarding Paragraph 16, agreeing to exempt from discovery significant categories of correspondence – in particular correspondence exchanged between Meta's in-house counsel – that are not necessarily privileged, and may in many instances represent business-related communications rather than legal advice.  The FTC made these concessions in reliance on the exemption from discovery provided to all "email, notes, drafts, communications, memoranda, documents, or other work

Letter to Kevin B. Huff
May 12, 2022
Page 5

product produced by or exchanged solely among and between . . . (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission); (e) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel for a plaintiff with which the FTC shares a common legal interest in pursuing or exploring litigation against Meta; (f) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel employed by any executive-branch agency of the federal government."

Meta's sophisticated counsel negotiated the language of Paragraph 16 over several weeks and had ample opportunity to—and did—make changes to that language.  It thus is not well taken for Meta to now assert an entirely new "understanding" or "intent" that contradicts the plain meaning of the language that its counsel negotiated.  In any event, binding Circuit law requires that the court first look to the language drafted by the parties to determine the scope of an agreement, stipulation, or decree.  *See, e.g., United States v. Western Elec. Co*., 12 F.3d 225, 229 (D.C. Cir. 1993) ("In interpreting the Decree, we apply ordinary principles of contract law."); *see also Pigford v. Schafer*, 536 F. Supp. 2d 1, 10 (D.D.C. 2008) ("Courts generally apply ordinary principles of contract law when interpreting consent decrees and stipulations."). And, as explained, the plain language is clear that the exclusion categories identified in Paragraph 16 apply to prior investigations and litigations.

*Third*, you assert that the Joint Civil Rule 16.3 Report to the Court and certain correspondence from Meta to the FTC should have put the FTC on notice that "Meta has always intended to seek discovery from the FTC regarding documents the FTC created in its prior investigations."  5/4/2022 K. Huff Ltr. at 3.  This suggestion fails because – to be clear – the FTC is not claiming that <u>all</u> documents that it created in its prior investigations are subject to Paragraph 16.  Meta's efforts to inquire regarding, and seek discovery of, files that the FTC has in its possession related to prior investigations that are <u>not</u> privileged or exempt from discovery in no way provided notice to the FTC that Meta planned to ignore or abrogate the plain language of Paragraph 16.  We have repeatedly told you that the FTC will produce responsive, non-privileged materials – and indeed we have already done so for the pre-complaint investigative file.

You cite to us a Feb. 7, 2022 email from K. Fetterman to D. Matheson.  That email expressly states that it "related to some of the unanswered questions we had **pertaining to the draft ESI protocol** the FTC circulated." (emphasis added).  Meta's questions relating to the FTC's draft ESI proposal (which Meta in large part rejected) have no relation to the meaning of Paragraph 16.  As noted above, the FTC has never claimed that all documents in the FTC's possession are exempt from discovery.  Moreover, we have already provided you much of the information you requested in that correspondence, although we were under no obligation to do so.  *See* 4/27/2022 D. Matheson Ltr.

*Finally*, you claim that the court must first determine whether a document is privileged for the document to be afforded the protections of Paragraph 16.  5/4/2022 K. Huff Ltr. at 3. This ignores the plain language of Paragraph 16, which expressly defines the very categories of documents that you seek as "privileged or otherwise protected communications."  Dkt. 103 ¶ 16 ("the *following* privileged or otherwise protected communications . . . ") (emphasis added).

Letter to Kevin B. Huff
May 12, 2022
Page 6

Moreover, Meta's claim that a document is exempted from discovery by Paragraph 16 only if the party <u>first</u> establishes that it is privileged makes no sense, and would eviscerate the purpose of Paragraph 16, which was to eliminate the burden (and cost to Meta and U.S. taxpayers) that would be imposed on each party by collecting, searching, and reviewing categories of documents that are highly likely to primarily consist of privileged material.  For example, the FTC agreed to Meta's proposal to exempt from discovery communications among Meta's in-house counsel "on topics related to potential or current litigation against Meta," regardless of whether Meta <u>first</u> reviews each communication to determine whether such communications are in fact properly considered attorney-client communications or are instead communications that relate exclusively to business matters.

Meta's attempt to impose a burden on the FTC by asking the FTC to affirmatively review and make a determination that each document within the agreed-upon excluded categories of documents is properly subject to a privilege contradicts the plain language of Paragraph 16 and is directly contrary to its purpose.  The agreed-upon language in Paragraph 16 – and, indeed, all similar agreements in other litigations – is based on the entirely reasonable assumption that, on balance, the burden of reviewing a large number of documents that are predominantly privileged far outweighs the benefit that would be provided by uncovering a few non-privileged documents.  Meta has invoked this basic understanding to its own benefit, not only in extracting concessions from the FTC regarding Paragraph 16, but also in negotiations regarding Meta's efforts to comply with the FTC's First Set of Requests for Production.  For example, Meta asked the FTC to remove Joe Sullivan from the FTC's list of suggested Supplemental Custodians based on the assertion that Mr. Sullivan reported to Meta's General Counsel (and not because Mr. Sullivan is unlikely to possess documents responsive to the FTC's Requests for Production).  Due to this relationship, Meta asserted that Mr. Sullivan's documents were likely to contain a high proportion of privileged documents, and that the burden of reviewing and logging these documents would thus be disproportionate to the benefit of uncovering Mr. Sullivan's responsive, non-privileged documents.  Meta requested that Mr. Sullivan be removed from the FTC's list of proposed Supplemental Custodians on this basis, ***and the FTC agreed to Meta's request***.

Such considerations of burden and proportionality – which Meta has stressed to the FTC – are acute with respect to FTC internal communications.  FTC employees are not industry participants, and do not generate evidence that is likely to be probative of competitive conditions and Facebook's monopoly power, as industry participants are likely to do.  Meta has articulated no basis to believe that the vast majority of the FTC's internal communications are likely to be relevant to the parties' claims or defenses.  Indeed, it should be apparent that the vast majority of the FTC's internal communications are *unlikely* to be relevant to the FTC's claims or to Meta's defenses, and any effort to force the FTC to engage in a burdensome process of reviewing and logging large numbers of privileged and mostly irrelevant communications is inappropriate for this reason alone, even leaving aside Paragraph 16 of the Joint Scheduling Order.

In addition, your correspondence suggests that the FTC Commissioners are not "persons employed" by the FTC.  You cite no authority for this proposition, and the FTC is not aware of any basis to suggest that FTC Commissioners are not "persons employed" by the FTC.

Letter to Kevin B. Huff
May 12, 2022
Page 7

You also ask that "the FTC confirm that it has not yet destroyed, and that it will continue to preserve, all documents relating to those investigations."  We confirm that the FTC has not used, and does not intend to use, the exemption from discovery provided by Paragraph 16 as a basis to destroy documents.

\* \* \*

Most of the remainder of your letter attempts to circumvent the plain language of Paragraph 16 by seeking information about certain categories of documents that are exempt from discovery.  As we explained to you in our letter of April 27, we are under no obligation to provide you detailed information about documents that are subject to Paragraph 16.  Even so, acting in good faith and to avoid disputes and reserving all rights, we answered in our letter of April 27 your questions from our meet and confer.  In response, Meta has propounded a litany of new questions that in some cases go far beyond the discovery requests that Meta has served in this matter.  Moreover, Meta's new requests would eviscerate not just Paragraph 16, but also the provisions of the Joint Scheduling Order dealing with timing and format of privilege logs in this matter.

Meta's barrage of new demands and requests of the FTC are unwarranted, considering Meta's inability to explain the relevance of the documents it seeks concerning the FTC's investigation of the Instagram acquisition in 2012 and the WhatsApp acquisition in 2014.  We have already agreed to produce to Meta any documents produced by, and non-privileged communications with, third parties in connection with the Instagram and WhatsApp investigation.  *See* FTC's Responses and Objections to Meta's First Set of Requests for Production.  Moreover, we have agreed to reproduce to Meta documents produced by Facebook, Instagram, and WhatsApp, even though these documents should presumably already be in Meta's possession, custody, or control.  4/27/2022 D. Matheson Ltr. at 4.  Given Meta's tenuous relevance arguments – and that most of the information you seek is exempted from discovery from Paragraph 16 and certain privileges – we cannot see how you are entitled to any further information.

Nevertheless, we respond to each of your letter's remaining points in turn below.

**<u>Privileges Claimed by the FTC</u>**

You ask that we "confirm each privilege, if any, the FTC asserts relating to each of the categories of documents listed in the second paragraph of this letter and please explain the basis for any such claim of privilege."  5/4/2022 K. Huff Ltr. at 4.  You also demand, with respect to documents protected by the deliberative process privilege, that we "pinpoint an agency decision or policy to which the document contributed" and explain "what deliberative process is involved, and the role played by the documents in issue in the course of that process."  *Id.* at 4-5.  Your request that the FTC any privileges that the FTC may assert, and the bases for those privileges, is premature.  For privileged documents not subject to Paragraph 16, the FTC will "provide a privilege log relating to those documents within **[45]** calendar days after completion of each set of requests for production," in accordance with the Joint Scheduling Order.  Dkt. 103 ¶ 17.

Letter to Kevin B. Huff
May 12, 2022
Page 8

## Specific Categories of Documents

You state that, during our April 19 meet and confer, "Meta posed questions regarding certain categories of documents encompassed in its RFPs, and you agreed to conduct a review and provide additional information to Meta." 5/4/2022 K. Huff Ltr. at 5.  To be clear, I repeatedly informed you during our meet and confer that much of the information you sought was protected from discovery under Paragraph 16.  Nevertheless, despite being under no obligation to do so with respect to the categories of documents exempted from discovery by Paragraph 16, we did conduct a review to answer Meta's questions in good faith; my letter of April 27 provided that information.

You now state that there are "remaining questions" from the meet and confer. 5/4/2022 K. Huff Ltr. at 5.  Most of the "remaining questions" you raise in your correspondence, however, were not the subject of our April 19 call and are in fact new demands, most of which are inconsistent with Paragraphs 16 and 17 of the Joint Scheduling Order and in some cases beyond the scope of Meta's existing discovery requests.  Nevertheless, we endeavor to address your "remaining questions" below.

- ***Staff and economist memorandum to the Commission or any Commissioners.***

Materials Regarding Meta's 2012 Instagram Acquisition

As we informed you in my correspondence of April 27, with respect to the Instagram acquisition, the Bureau of Competition provided memoranda to the Commission regarding the authorization of the use of compulsory process, which included and attached a memorandum written by the Bureau of Economics.[1]  The Bureau of Competition also sent a memorandum to the Commission with respect to closing the investigation, and the Bureau of Economics also sent a memorandum to the Commission with respect to closing the investigation.  Our subsequent review has identified an additional memorandum from the Bureau of Competition to the Commission regarding the issuance of a civil investigative demand to a third party.

Your letter asserts that I stated on our April 19 meet and confer that "the FTC provided Congress 'whatever was created' in regards to the 2012 and 2014 investigations." Ltr. at 5.  If you mean to imply that I represented that the FTC provided to Congress all materials created in connection with the FTC's investigation of the Instagram acquisition in 2012 and the WhatsApp acquisition in 2014, you have misunderstood or misconstrued what I said.  I told you that the FTC provided the House Judiciary Committee with certain memoranda and documents created in connection with a number of acquisitions – most of which did not pertain to Meta.  More specifically, my letter of April 27 informed you that, with respect to the Instagram investigation, the FTC provided to the House Judiciary Committee Bureau of Competition memoranda regarding authorization of the use of compulsory process and the closing of that investigation. 4/27/2022 D. Matheson Ltr. at 4.  I also stated that we were "in the process of investigating what additional

---

[1] *See discussion infra* re: "Merger screening memoranda."

Letter to Kevin B. Huff
May 12, 2022
Page 9

materials the FTC provided the House Judiciary Committee concerning the Instagram and WhatsApp investigations" and would "notify you promptly if we identify any additional documents." *Id.*

We have undertaken that review and determined that the FTC produced to the House Judiciary Committee the aforementioned memoranda concerning the Instagram acquisition from the Bureau of Competition and the Bureau of Economics, as well as a resolution authorizing the use of compulsory process and closing letters to Facebook and Instagram.

Materials Regarding Meta's 2014 WhatsApp Acquisition

As stated in my letter, neither the Bureau of Competition nor the Bureau of Economics provided memoranda to the Commission regarding the WhatsApp acquisition. We have identified two documents provided to the House Judiciary Committee concerning the WhatsApp acquisition, one of which appears to consist of notes prepared by Bureau of Competition personnel, and the other of which appears is a note assigning responsibility for the file to the appropriate merger division (as you know, the FTC refers to this division as "Mergers I").

Applicable Privileges

With respect to documents provided to the House Judiciary Committee over which the FTC asserts applicable privileges, you state: "It is Meta's position that the FTC's transmission of these materials to the House Judiciary Committee waived any otherwise applicable privilege." 5/4/2022 K. Huff Ltr. at 5. You provide no support for that position, which is not surprising given that binding Circuit precedent holds to the contrary. *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 607 (D.C. Cir. 2001); *Murphy v. Dept. of Army*, 613 F.2d 1151, 1159 (D.C. Cir. 1979); *see also Heggestad v. U.S. Dep't of Justice*, 182 F. Supp 2d 1, at *12 (D.D.C. 2000).

You further demand that we "explain in detail the reasons the FTC provided the materials to the House Judiciary Committee." 5/4/2002 K. Huff Ltr. at 5. Please identify the interrogatory that Meta has propounded pursuant to which you believe you are entitled to this information and please explain why you think this information is relevant to the claims and defenses in this case. You also ask for "any Requests For Information or subpoenas the FTC received from the House Judiciary Committee seeking the materials, and any confidentiality agreements the House Judiciary Committee executed in connection with receiving those materials, or any other assurances of confidentiality you received in connection with those materials." Please identify the document request that Meta has propounded pursuant to which you believe the FTC is obligated to search for and produce such materials.

You conclude by asking what privileges the FTC intends to assert regarding these documents and "the bases for your positions on all these points." Ltr. at 6. Your request for any privileges that the FTC intends to assert, and the bases for those privileges, is

Letter to Kevin B. Huff
May 12, 2022
Page 10

premature.  The FTC will "provide a privilege log relating to those documents within **[45]** calendar days after completion of each set of requests for production," in accordance with the Joint Scheduling Order.  Dkt. 103 ¶ 17.

- ***Merger screening memoranda.***  Staff from the Bureau of Competition and the Bureau of Economics each provided a memorandum to the Merger Screening Committee in connection with the 2012 acquisition of Instagram.  These memoranda to the Merger Screening Committee were included in the memorandum provided to the Commission in connection with the authorization of compulsory process regarding the Instagram acquisition.  *See supra*.  They were thus included in the memorandum the FTC provided to the House Judiciary Committee.  *See supra*.  Based on our investigation to date, those memoranda were not shared with any other third parties, including state, foreign, and other federal regulators, or private plaintiffs.

  You ask us to identify any privileges that the FTC intends to assert regarding these documents and "the bases for your positions."  Ltr. at 6.  Your request for any privileges that the FTC intends to assert, and the bases for those privileges, is premature.  The FTC will "provide a privilege log relating to those documents within **[45]** calendar days after completion of each set of requests for production," in accordance with the Joint Scheduling Order.  Dkt. 103 ¶ 17.

  Staff did not provide any memoranda to the Merger Screening Committee in connection with Meta's 2014 acquisition of WhatsApp.

- ***Call records, interview notes, or interview memoranda.***  You ask us to "confirm the identity of the author(s) of the handwritten notes and if the handwritten notes include facts gathered from the interviews" and "whether the FTC intends to assert a privilege over any such documents" and if so, "identify which privilege(s) and the bases for your positions."  As we explained to you on our April 19 meet and confer, and in my correspondence of April 27, these documents are protected from discovery by, among other things, Paragraph 16 of the CMO and the deliberative process privilege.  Should the Court determine that Paragraph 16 does not apply to these documents, the FTC will "provide a privilege log relating to those documents within **[45]** calendar days after completion of each set of requests for production," in accordance with the Joint Scheduling Order.  Dkt. 103 ¶ 17.  Until then, your requests for the list of applicable privileges and the "bases for your positions" are premature.  For the avoidance of doubt, the FTC continues to preserve all call records, interview notes, and interview memoranda in its possession.

- ***Memoranda or other Documents from the Commission or any FTC Commissioners explaining decisions in 2012 or 2014.***  Your correspondence mischaracterizes the FTC's responses and objections to Meta's requests for production 4 and 8.  You state that the FTC's position is "not based on a review of records, but [counsel for the FTC's] understanding that those decisions were ***not necessarily*** made."  (emphasis added).  That is not what we have told you.  As we have explained, the Commission does not make any

Letter to Kevin B. Huff
May 12, 2022
Page 11

decision relating to the lawfulness of *any* acquisition "unless the Commission reaches such a determination upon consideration of the record developed during an administrative proceeding conducted for the purposes of determining whether a proposed or consummated transaction violates Section 5 of the FTC Act and/or Section 7 of the Clayton Act." *See* FTC Responses and Objections to Interrogatory No. 6 (April 29, 2022). This statement applies to Meta's acquisition of both Instagram or WhatsApp, and thus the FTC does not have any documents responsive to that portion of RFPs 4 & 8.

Your letter appears to insinuate that because the FTC possesses certain compulsory process authorizations, and has made publicly available closing letters and public statements, regarding Commission decisions with respect to the Instagram investigation, the Commission indeed made a decision relating to the lawfulness of Meta's acquisition of Instagram. To reiterate: it did not. As I explained to you in my April 27 letter, the Commission did make certain decisions regarding whether to authorize the use of compulsory process and to close the Instagram investigation, which are memorialized in the aforementioned compulsory process authorizations, closing letters, and public statements. Based on our investigation to date, we are unaware of "any non-public documents, formal or informal, including documents or statements that were prepared but never made public, explaining or evidencing" the Commission's decisions to authorize the use of compulsory process and to close the Instagram investigation. As we previously informed you, the Commission did not make a decision regarding the WhatsApp acquisition.

- ***Recordings or notes of FTC meetings.*** In my letter of April 27, I informed you that "[b]ased on our reasonable investigation to date, we are unaware of any notes or records of any Commission meetings regarding the Instagram investigation." 4/27/2022 D. Matheson Ltr. at 3. That remains the case. You further ask whether "if such recordings or documents were prepared but have since been destroyed." 5/4/2022 Ltr. at 7. You cite to no discovery request or applicable authority that obligates us to respond, and we have agreed to produce to you documents regarding the FTC's document retention policies in response to RFP 16. Nonetheless, while we are not obligated to provide this information, to avoid needless disputes, we confirm we are not presently aware of any notes and records of Commission meetings regarding the Instagram investigation that existed at one time and have been destroyed.

- ***Subsequent documents or memoranda evidencing or explaining decisions.*** Based on our reasonable investigation to date, we are unaware of any "subsequent documents or memoranda explaining or evidencing" any decisions regarding the 2012 Instagram investigation. As we previously informed you, the Commission did not make a decision regarding the 2014 WhatsApp acquisition.

## Specific Document Requests

You state that, during our April 19 meet and confer, "Meta sought clarification regarding the FTC's responses to certain document requests," but that our April 27 letter answered only

Letter to Kevin B. Huff
May 12, 2022
Page 12

"some of those questions."  5/4/2022 K. Huff Ltr. at 7.  As with the purportedly "remaining questions" concerning specific categories of documents (*id.* at 5), the questions you now raise are new and are inconsistent with Paragraphs 16 & 17 of the Joint Scheduling Order – and, in some cases, go beyond Meta's existing discovery requests.

- ***RFP 4, 8: Communications with other Government Entities or Actors or Former FTC Commissioners.***  In my letter of April 27, I reiterated what I told you on our April 19 meet and confer: "the FTC shared a common legal interest with a state regulator – the California Attorney General's office – in connection with the Instagram investigation. Any relevant communications between FTC Staff and staff of the California Attorney General would have been pursuant to that common interest."  4/27/2022 D. Matheson Ltr. at 4.  We are unaware of any communications with any other state regulators in connection with the Instagram investigation.  You further demand to know "if those communications, and the FTC's communications with the California Attorney General's office, still exist"; "if the FTC is asserting any other communications with state regulators are protected by common interest privilege"; and "if the FTC is asserting any other privileges apply to these communications, and if so, the basis for that assertion."  Should the Court determine that Paragraph 16 does not apply to any documents exchanged with the California Attorney General's office, the FTC will "provide a privilege log relating to those documents within **[45]** calendar days after completion of each set of requests for production," in accordance with the Joint Scheduling Order.  Dkt. 103 ¶ 17.  Until then, your requests for the list of applicable privileges and the "bases for your positions on all these points" are premature.  For the avoidance of doubt, the FTC will not destroy any communications it may currently possess between FTC employees and the California Attorney General's office concerning the Instagram investigation.

- ***RFP 2, 6: All Documents relating to any Communications between the Federal Trade Commission and any other Person (excluding Other Government Entities or Actors) in relation to the Prior Instagram Investigation and Prior WhatsApp Review.***  As you know, we objected to Meta's document requests that called for the FTC to reproduce to Meta its or its predecessors' own documents, because presumably those documents are within Meta's possession, custody, or control.  *See* FTC's Responses and Objections to Meta's First Set of Requests for Production.  Based on your representation that you were not sure that Meta had "everything" that Meta produced to the FTC during the Instagram or WhatsApp investigations, we agreed to produce to Meta any documents in the FTC's possession that were produced by Facebook, Instagram, and WhatsApp during those investigations.  4/27/2022 D. Matheson Ltr. at 4.  Your most recent correspondence now asks the FTC whether it has destroyed any such documents over the past decade and if so under what circumstances.  Ltr. at 8.  We are aware of no discovery request or applicable authority that suggests your request is reasonable, or obligates us to respond.  We have already agreed to produce to you documents regarding the FTC's document retention policies, and intend to produce those documents this month.  The FTC is not a document repository for one of the world's biggest technology companies, and is not obliged by Meta's Requests for Production to investigate or explain whether and why documents

Letter to Kevin B. Huff
May 12, 2022
Page 13

produced <u>by Meta</u> may no longer be in the FTC's possession.  Meta itself is capable of conducting its own investigation as to what it produced to the FTC.

With respect to documents produced by third parties, based upon our reasonable investigation to date, it is our understanding that the FTC at one time possessed and subsequently deleted documents produced by one third party pursuant to a civil investigative demand during the 2012 Instagram investigation.  It is our understanding that this third party reproduced those documents as part of the FTC's pre-complaint investigation in this case, and that the FTC has accordingly re-produced those documents to Meta as part of the FTC's production of its investigative file.  We also continue to investigate whether there are additional sources of documents responsive to these requests aside from materials located on the FTC's shared network drives.

Sincerely,

/s/ Daniel Matheson
Daniel J. Matheson
*Counsel for Plaintiff Federal Trade Commission*