IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

### DECLARATION OF PATRICIA GALVAN

I, Patricia Galvan, declare as follows:

1. I am the Assistant Director of the Technology Enforcement Division of the Federal Trade Commission ("FTC" or "Commission"). I am the head of the department possessing control over the requested information.

2. I have served at the FTC for 23 years. Prior to my appointment as Assistant Director of the FTC's Technology Enforcement Division, I served as Deputy Assistant Director in the Mergers III Division for over 10 years. Prior to that, I served as a staff attorney in the Mergers III Division starting in 1999. During my tenure with the FTC, I have participated in many investigations in a variety of industries, including technology markets.

3. On December 9, 2020, Plaintiff filed a federal complaint in the above-captioned matter alleging that Defendant Meta (f/k/a Facebook) is illegally maintaining its personal social networking monopoly through a years-long course of anticompetitive conduct in violation of Section 2 of the Sherman Act. I was the Assistant Director overseeing the investigation that led to the filing of the complaint in this matter. As a part of directing the investigation that resulted in the above-captioned case ("Pre-Complaint Investigation"), I also have knowledge about the FTC's previous investigations of Facebook's proposed acquisition of Instagram in 2012 ("Instagram Investigation") and Facebook's proposed acquisition of WhatsApp in 2014 ("WhatsApp Investigation").

4. The statements made herein are based upon my personal knowledge, review of agency records, and upon the knowledge of persons who report directly or indirectly to me or on whom I rely in the ordinary course of carrying out my duties as Assistant Director of the Technology Enforcement Division. I have personally reviewed the documents at issue.

5. I make this declaration in support of Plaintiff's Opposition to Defendant Meta's Motion to Compel Answer to Interrogatory No. 2, which was filed in the above-captioned case on March 13, 2023.

6. On March 13, 2023, Defendant Meta filed a Motion to Compel Answer to Interrogatory No. 2 related to internal FTC staff notes related to confidential interviews of third parties conducted by FTC staff during the Instagram Investigation and WhatsApp Investigation.

7. As Assistant Director overseeing the investigation that led to the filing of the complaint in the above-captioned case as well as my 10-plus years of experience as Deputy Assistant Director in the Mergers III Division, I am familiar with the processes used during the Pre-Complaint Investigation, Instagram Investigation, and WhatsApp Investigation.

8. As part of the investigation process for all of these investigations, FTC attorneys contacted third parties who are knowledgeable about the industry in which the potentially merging parties or party under investigation conduct business.

9. Prior to conducting these interviews, FTC attorneys typically draft outlines of questions to ask the interviewees. To determine which questions to include in the outline and how to phrase the questions, the attorneys rely on their opinions of the information that is likely to be relevant and necessary for them to analyze the proposed mergers or conduct and evaluate any potential anticompetitive effects the proposed mergers or conduct might cause. These proposed questions are discussed and debated among attorneys on the matter who provide their opinions on what information is relevant and needed to analyze the mergers and conduct and what questions should be asked to elicit that information. Attorneys lead the questioning during interviews.

10. FTC staff members involved in these investigational third-party interviews typically include staff from both the Bureau of Competition and Bureau of Economics, including FTC attorneys, as well as economists, legal interns, and/or paralegals acting at the FTC attorneys' direction. In most instances, third parties provide information requested by FTC staff during the interview on a confidential basis. As a part of an interview, FTC staff typically explain to third parties its statutory obligation to keep investigative material confidential and that information provided is exempt from Freedom of Information Act ("FOIA") disclosure.

11. These interviews with third parties are not tape recorded, nor is any attempt made to create a verbatim statement of the information conveyed. Instead, the FTC participants synthesize the questions asked and the information provided, and take notes based on their mental impressions of select parts of the interview. FTC attorneys are not instructed to, and do not attempt to, record everything that is said, but instead record points they regard as important or otherwise want to memorialize. Because attorneys need to make determinations on what to include in their notes and how to phrase the responses to the questions asked, interview notes reflect the attorneys' subjective interpretations of what was asked and what was said, and their impressions of the information provided. These FTC staff interview notes are kept internal to the FTC and used for purposes of

Case 1:20-cv-03590-JEB   Document 259-25   Filed 03/22/23   Page 3 of 4

> investigating FTC's cases, preparing the cases for litigation, and making recommendations about litigation to the Commission.

12. Frequently, the interviewees on these calls are unsure how to accurately answer, or provide precise information, in response to the questions posed by the FTC staff attorneys. And these interviews were not sworn statements provided under penalty of perjury and are voluntary rather than the product of compulsory process.

13. FTC attorneys often separately also collect more specific information through analysis of documents or data provided in response to a Civil Investigative Demand ("CID") or Subpoena Duces Tecum ("SDT") issued to the interviewee's company by the FTC.

14. As a part of their discovery responses and productions in this matter, FTC staff already produced non-privileged third-party information and productions in their possession from the Instagram and WhatsApp Investigations to Defendant Meta. *See* ECF No. 160-6 (Jul. 19. 2022) (Declaration of Daniel Matheson in Support of Plaintiff Federal Trade Commission's Opposition to Defendant Meta Platforms, Inc.'s Motion to Compel Production of 2012 and 2014 FTC Memoranda); *see also* ECF No. 253-3 (FTC's Objections and Responses to Interrogatories Nos. 1 and 2 (served Apr. 29, May 27, and Oct. 7, 2022).

15. FTC attorneys performed the investigation processes described above for the Pre-Complaint Investigation, Instagram Investigation, and WhatsApp Investigation in contemplation of litigation. They interviewed industry participants, and FTC staff drafted interview notes with the prospect of action by the FTC against the parties involved in the proposed merger or conduct being investigated. In addition, economists from the FTC's Bureau of Economics participated in the interviews to assist the Bureau of Competition to prepare for possible litigation.

16. As described above, the FTC staff interview notes reflect attorneys' thought processes, mental impressions, strategies, and other work in contemplation of litigation. The FTC staff interview notes reflect and reveal Plaintiffs' attorneys' thought processes, mental impressions, strategies and other work in determining what areas of inquiry are relevant to FTC investigations in contemplation of litigation, what questions should be asked to elicit information deemed relevant to these investigations, and what information should be recorded as relevant to them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22th day of March, 2023, in Washington, DC.

3

4

Respectfully submitted,

_____

Patricia Galvan