IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

META PLATFORMS, INC.,

    Defendant.

Case No. 1:20-cv-03590-JEB

**REPLY IN SUPPORT OF MOTION TO COMPEL
ANSWER TO INTERROGATORY NO. 2 REGARDING FACTS
<u>NONPARTIES PROVIDED THE FTC IN 2012 AND 2014</u>**

Meta asked the FTC to state in a narrative response to an interrogatory the facts that it received from nonparties in 2012 and 2014 about their views of Meta's then-pending acquisitions. Meta has spent months trying to obtain these facts from the same nonparties the FTC interviewed, to no avail. Few nonparties have documents or data going back to 2012-2014, and no one Meta has reached remembers details from their conversations with the FTC. Only the FTC possesses this highly relevant evidence.

The FTC should not be allowed to withhold this information from Meta. Purely factual information is not work product, much less opinion work product. Even if a qualified privilege applies (none does), the FTC must still answer the interrogatory because Meta has a substantial need for the facts, which are unavailable from another source. Finally, the Scheduling Order does not shield discovery of non-privileged information from long before this litigation began.

## ARGUMENT

### I.     The Facts Nonparties Provided the FTC Are Not Work Product

Meta's interrogatory does not call for work product because it asks only for the facts the FTC received from nonparties about their views of Meta's acquisitions. Mot. 8-10. Disclosing that factual information will not reveal attorneys' mental impressions, conclusions, opinions, or legal theories, which is all the work product doctrine protects. *See* Fed. R. Civ. P. 26(b)(3)(B).

The FTC asserts (at 7) that it need not answer Meta's interrogatory because its interview notes constitute "opinion" work product, citing *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304 (D.C. Cir. 1997). That case is irrelevant because Meta does not seek the FTC's interview notes. It seeks only facts that witnesses told the FTC in 2012 and 2014. In any event, *Vinson & Elkins rejected* the argument that a lawyer's interview notes are invariably opinion work product as "go[ing] too far." *Id.* at 1307-08. The FTC has not established that

even its notes (which Meta does not seek) are opinion work product. Its declaration describing generically how FTC staff "typically," "[f]requently," or "often" conduct interviews, Galvan Decl. ¶¶ 9-13, fails to establish the attorneys in these particular interviews "sharply focused or weeded" facts rather than simply summarizing them, *see United States v. Clemens*, 793 F. Supp. 2d 236, 253-54 (D.D.C. 2011) (interview notes were fact work product subject to disclosure).

      The FTC mischaracterizes Meta's interrogatory asking for pure facts as a request for the FTC's interview notes. Again, Meta does not seek the notes; it seeks a compilation of facts. *See* Mot. 8-9 (collecting cases distinguishing documents from underlying facts). That information is not exempt from discovery simply because it happens to appear in documents that may be work product. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."). Tellingly, other than the special master's decision in *US Airways* (which no court has adopted), *none* of the cases the FTC cites (at 8-9) held that factual information sought by an interrogatory was opinion work product.

      The FTC also suggests (at 10-11) that disclosure of the facts the FTC received from nonparties would reveal FTC staff's mental impressions or legal strategies. That is wrong. The FTC need only provide the facts in its possession. The FTC can craft its answer to Meta's interrogatory without revealing anything about its thought processes. The interrogatory encroaches no more on mental impressions or legal strategies than any interrogatory seeking factual information in a case. In fact, the FTC concedes that the facts sought would not reveal its strategy. According to the FTC (at 9), "nothing in [the] FTC staff's notes forms the basis of the FTC's monopolization claim." If that is true, the concern for the adversarial process that animates the work product doctrine cannot justify depriving Meta of this factual information.

2

## II. The FTC Has Not Carried Its Burden of Shielding the Facts Under the Deliberative Process Privilege or Investigatory Privilege

Meta explained (at 7-8, 13-14) why neither the deliberative process privilege nor the investigatory file privilege applies to the facts the FTC obtained from nonparties in 2012 and 2014. The FTC does not address the substance of those arguments, and admits (at 15) that it has not provided the declaration needed to carry its burden to establish a privilege. *See Ascom Hasler Mailing Sys., Inc. v. USPS*, 267 F.R.D. 1, 4 (D.D.C. 2010). The FTC thus cannot rely on those privileges to withhold the information Meta seeks. *See id.* The FTC claims (at 2) the Court already held the deliberative process privilege applies, but the previous ruling concerned "documents." Dkt. 189 at 5. It does not govern a request for an interrogatory response.

## III. Meta's Substantial Need Overcomes Any Qualified Protection

Even if these doctrines protected the facts Meta seeks (they do not), the FTC must answer Meta's interrogatory because Meta has shown (at 10-13) a substantial need for them, and they are unavailable through other means. The FTC argues at (1-2) that Meta has no need for facts from 2012 and 2014 because its acquisitions may be "exclusionary" under Section 2 even if it was unforeseeable that they would contribute to the creation or maintenance of monopoly power. That is not the law: Section 2 prohibits the acquisition or maintenance of monopoly power through consumer-harming anticompetitive conduct. *See Rambus Inc. v. FTC*, 522 F.3d 456, 463 (D.C. Cir. 2008). It does not proscribe a monopoly maintained through pro-consumer conduct. The FTC's apparent concession that there was nothing anticompetitive about these transactions in 2012 and 2014 means it has no case. Even if there is some question about that, if the Court denies Meta's motion based on the FTC's insistence that contemporaneous facts about competition are irrelevant, then the FTC should be foreclosed from arguing the acquisitions were anticompetitive at the time, with the parties free to argue about the legal effect of that fact.

The FTC also contends (at 13) that Meta cannot show a substantial need to overcome work product, arguing that the FTC and Meta are "identically situated to locate third party" information from 2012-2014. Nonsense. During its investigations, the FTC received information from 63 people on behalf of competitors and industry participants about their contemporaneous views of the competitive landscape. Meta has spent months trying to obtain the same information without success. Despite serving about 150 document subpoenas, Meta has obtained only limited documents from 2012-2014 from many of the same nonparties the FTC interviewed, *see* Mot. 5-6, a fact the FTC ignores. No one Meta has spoken with has remembered specific details they told the FTC in 2012 or 2014. Contrary to the FTC's assertion (at 11-12), Meta's internal analyses are no substitute for evidence from nonparties, which is indisputably relevant. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

The FTC says that Meta should first depose the people it interviewed to confirm under oath that they remember *nothing* relevant to this case from 2012-2014. But the people Meta interviewed could not remember what they told the FTC, which is no surprise given the passage of time. Their lack of memory of the substance of their interview likewise demonstrates that they will not be able to recall their contemporaneous understanding of the likely effects of Meta's acquisitions.[1] Even if witnesses could reconstruct today some of what they thought a decade ago, that reconstruction would be tainted by subsequent events, including Instagram's and WhatsApp's extraordinary success (due to Meta's extensive efforts and investment). There is thus no question that some unique information has been lost to all but the FTC due to the

---

[1] ███████████████████████████████████████████████
███████████████████████ Ex. A., ████████████████████
████████████████████████████████████████████████████

4

FTC's delay in bringing this case. Under these unusual circumstances, it would be deeply unfair to permit the FTC to deny Meta access to the same unique facts the FTC admittedly possesses. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425-26 (D.D.C. 2014) ("witnesses' initial, unadorned testimony on the key issues" had "no substitute"). It also would be inefficient to require Meta to depose all these individuals – on top of the 75 non-party depositions that Meta has already noticed – before the FTC provides this information. That approach would likely require Meta to depose them twice: first to re-establish they do not remember this important factual information (as most have already said), and again after the FTC answers Interrogatory No. 2 to see if new information refreshes their recollection.

### IV.     Paragraph 16 of the Scheduling Order Is Inapposite

The FTC cannot hide behind Paragraph 16 of the Scheduling Order to evade Meta's interrogatory because that provision applies only to a narrow category of privileged documents created since the litigation commenced. The FTC argues (at 3) that Paragraph 16 applies because the facts that Meta seeks are in its interview notes, which the FTC claims qualify for protection under Paragraph 16. But Paragraph 16's exemption from privilege logging applies to "privileged or protected communications" – not information. Were it as the FTC asserts, a party could insulate evidence from discovery simply by memorializing it in attorney communications.

The FTC is also wrong (at 4-5) that Paragraph 16 applies to documents created before the litigation, and that the discovery Meta seeks could somehow "create enormous complications that would likely threaten the fact discovery deadline." Meta has never used Paragraph 16 to withhold non-privileged documents or information (as the FTC seeks to do here), and there will be no adverse consequences to Meta, the FTC, or "U.S. taxpayers" to assessing the FTC's claim of privilege regarding these 2012 and 2014 facts on the merits.

5

Dated: March 24, 2023

Respectfully submitted,

/s/ *Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
Kevin B. Huff (D.C. Bar No. 462043)
Andrew E. Goldsmith (D.C. Bar No. 1007074)
Kevin D. Horvitz (D.C. Bar No. 1521032)
Alex P. Treiger (D.C. Bar No. 1670925)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
agoldsmith@kellogghansen.com
khorvitz@kellogghansen.com
atreiger@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*