UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Civil Action No. 20-3590 (JEB)

**ORDER**

The Federal Trade Commission alleges in this antitrust action that Meta Platforms, Inc. has unlawfully maintained a monopoly over the market for "Personal Social Network Services" by acquiring competitors and potential competitors, specifically Instagram and WhatsApp. The original Complaint defined PSNS to consist of three specific — and required — elements:

> First, [they] are built on a social graph that maps the connections between users and their friends, family, and other personal connections. Second, [they] include features that many users regularly employ to interact with personal connections and share their personal experiences in a shared [virtual] social space, including in a one-to-many "broadcast" format. And [t]hird, [they] include features that allow users to find and connect with other users, to make it easier for each user to build and expand their set of personal connections. The social graph also supports this feature by informing [the user] which [new] connections might be available based on her existing network.

Fed. Trade Comm'n v. Facebook, Inc., 560 F. Supp. 3d 1, 14 (D.D.C. 2021) (internal quotation marks and citations omitted).

Initially, this Court held that the FTC had plausibly alleged that PSNS was a relevant product market for purposes of Section 2 of the Sherman Act, 15 U.S.C. § 2. But it dismissed the complaint with leave to replead because, although the FTC alleged that Facebook possessed

1

"in excess of 60%" of the relevant market, it was unclear what facts the Commission had used to derive that figure. Id. at 18-19. Specifically, the Court noted that other internet services provided at least some of the features available to Facebook's PSNS customers, and that not all uses of Facebook's services (such as viewing online video) constituted the use of "social" networking services. Consequently, what counted for market-share purposes was "the share of total time spent by users on PSN services." Id. 19.

The FTC accepted the Court's invitation to file an Amended Complaint, which supplied considerably more information about network usage on Facebook and other services. The Court subsequently decided that the added user and usage information satisfied the FTC's pleading burden regarding market share at this stage of the case. Fed. Trade Comm'n v. Facebook, Inc., 581 F. Supp. 3d 34, 46–51 (D.D.C. 2022).

That decision gave center stage to the issue of the share of total time spent by users on the variety of social network services — PSNS or otherwise. Meta thus served Interrogatory No. 10, requiring the FTC to identify for various features available on Facebook and other social-media platforms the ones that constituted the use of PSNS. Following a dispute about this Interrogatory's scope, the Court ordered the FTC to state which of a voluminous number of pairs of features or services that Meta identified did and did not constitute use of PSNS. See Order of Aug. 1, 2022.

Meta thereafter served Interrogatory Nos. 13 and 14 to explore this relevant market further. See ECF No. 243 (Motion to Compel) at 5. Interrogatory No. 13 requested the FTC (a) to state, for each of the features and activities identified in its earlier response to Interrogatory 10, whether use of that particular feature or activity (or similar ones) counted when done on seven specific platforms as time spent using a PSNS and (b) to "explain why or why not." ECF

No. 250-2 (Interrogatories and FTC Responses) at 2. Interrogatory No. 14 asked essentially the same two questions, but in connection with the use of eleven different internet platforms. Id. at 8. The FTC responded either "yes" or "no" to each activity and service. It also explained that where it answered "yes," that was because the platform appeared to enable users to communicate with others on the user's "social graph"; where it answered "no," the opposite was true. See, e.g., id. at 59. The FTC's responses cited numerous documents to elucidate its literal answers.

Meta does not contest that Plaintiff answered directly and categorically the "yes or no" aspects of both Interrogatories. It nonetheless moves to compel further responses because, it argues, the FTC has not provided the "relevant facts" Meta sought that would support Plaintiff's positions and categorizations. See Motion to Compel at 5–7. According to Meta, the FTC had provided "none of the information it had promised [and] simply asserted that it had no answer to give." Id. at 6.

The Court disagrees. Had Meta wanted all relevant facts about what makes the use of one platform/feature pair a PSNS usage while another is not, it could have asked for those. That is a familiar interrogatory formulation, but it does not appear in either Interrogatory here. Meta tries to cure this defect by claiming that the FTC agreed informally to provide the information Defendant now seeks, but it identifies no writing from the FTC making such a commitment — notwithstanding the fact that the parties have traded carefully crafted "meet and confer" exchanges on other disputes. Meta points to a statement in its portion of the December 15, 2022, Joint Status Report, see ECF No. 227 (JSR) at 18, to the effect that the FTC promised to provide supplemental responses that would "include details and any relevant facts on why the FTC classifies the two activities similarly or differently." Id. at 18. No such commitment is reflected in the FTC's portion of the Joint Status Report, however. And the subject was not addressed at

the January 5, 2023, status conference.  The Court is thus not prepared to compel a further response on the basis that the FTC breached a commitment it previously made.

Meta also argues that Plaintiff's categorizations are implausible and differ materially from the relevant market alleged in the Amended Complaint.  See Motion to Compel at 5.  The FTC's relevant-market position has been that what differentiates Facebook from many other internet platforms is that it allows users to employ a social graph — a personal list of friends and family — to facilitate communication.  Users' inability to transfer their social graph to other platforms was critical to the FTC's claim that Meta's market power was "durable" because of high switching costs for users.  The FTC's Interrogatory answers do not appear to the Court to deviate from this definitional element of the FTC's case.  While Meta may well not agree with that definition or the relevant market, that is a merits dispute, not a discovery-based one.

The Court accordingly ORDERS that the Motion to Compel is DENIED.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  March 29, 2023