**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Civil Action No. 1:20-cv-03590-JEB |

**PLAINTIFF FEDERAL TRADE COMMISSION'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 10, 11, AND 12 REGARDING DEFENDANT META PLATFORMS, INC.'S ASSERTED PROCOMPETITIVE JUSTIFICATIONS**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.     Meta Bears the Burden of Substantiating Its Claimed Procompetitive Justifications ......... 4

II.    Meta's Interrogatory No. 10 Response Is Materially Deficient........................................... 5

III.   Meta's Interrogatory No. 11 Response Is Materially Deficient......................................... 12

IV.   Meta's Interrogatory 12 Response Is Materially Deficient............................................... 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Graco Inc. v. PMC Glob., Inc.*, 2012 WL 762448 (D.N.J. Mar. 6, 2012) ....................................... 4

*Image Tech. Svcs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ............................. 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 3 (D.D.C. 2011) ......................... 11

*King v. E.F. Hutton & Co.*, 117 F.R.D. 2 (D.D.C. 1987) .............................................................. 12

*Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479 (D.C. Cir. 1984) ................................... 5

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof. Publ'ns, Inc.*,
    63 F.3d 1540 (10th Cir. 1995) ................................................................................................ 5

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ............................................. 4, 10

*Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020) .................................................... 4

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles
    and Their Application* ............................................................................................................ 5

Meta attempts to defend its illegal monopolization of personal social networking services with vague allegations that its acquisitions of Instagram and WhatsApp produced procompetitive benefits. When asked to describe these purported benefits, Meta has to date repeatedly recycled responses that are ▮▮▮▮▮▮▮▮▮▮▮ Meta's Objs. & Resps. to FTC's First Set of Interrogs. at 32, 44 (June 27, 2022) (Ex. 1), and referred to a hodgepodge of documents. Accordingly, the FTC served Interrogatories 10, 11, and 12 to probe Meta's ▮▮▮▮ summaries and self-serving conclusions. Meta has not provided adequate responses, and the FTC therefore asks the Court to compel responses that will provide the specificity and relevant facts that are required if Meta seeks to advance its affirmative defenses at trial. *See infra* § I. Alternatively, if Meta has no further support for its purported procompetitive justifications beyond its current interrogatory responses, Meta should certify to that effect—and should not then be heard to surface with new evidence after the close of fact discovery.

## BACKGROUND

Meta injected procompetitive benefit claims into this litigation when it asserted its Fourth and Fifth Affirmative Defenses, claiming that "there were procompetitive justifications" for the Instagram and WhatsApp acquisitions. Meta's Answer at 38, ECF No. 94. Immediately thereafter, the FTC began a more than year-long effort to identify the full set of procompetitive justifications that Meta is claiming, as well as their factual bases.

The FTC attempted to collect this information through multiple avenues. Specifically, the FTC served Interrogatories 5 and 6 on May 26, 2022, asking Meta to "identify and describe" the procompetitive justifications supporting its affirmative defenses, and "each improvement" it contends it brought to Instagram and WhatsApp. FTC's First Set of Interrogs. at 2 (May 26, 2022) (Ex. 2). Meta responded by asserting that it delivered ▮▮▮▮▮▮▮▮▮▮▮▮

1

Case 1:20-cv-03590-JEB   Document 266-1   Filed 03/31/23   Page 5 of 20

███████████ Meta's Supp. Objs. & Resps. to FTC's Interrogs. at 9-11 (Nov. 30, 2022) (Ex. 3). Further, Meta proceeded to provide only a ███████████ ███████████ Meta's Supp. Objs. & Resps. to FTC's Interrog. No. 6 at 4, 6, 11, 14 (Sept. 22, 2022) (Ex. 4).

Seeking to probe beneath these generalities, the FTC served its First Requests for Admission ("RFA") on December 16, 2022, asking Meta (among other things) to admit that Meta could not identify the resources that Meta claims it contributed to specific alleged improvements. Meta ███████. Meta's Objs. & Resps. to the FTC's First Set of RFAs at 5-8 (Jan. 17, 2023) (Ex. 5). Thus, Meta maintained in its RFA responses that it ███████ ███████████████████████████████

Trying again, the FTC served Interrogatories 10, 11, and 12 on January 30, 2023. Interrogatory 10 seeks highly relevant details concerning Meta's claimed benefits, including the nature and magnitude of each purported benefit, what particular means and methods Meta used to achieve them, and Meta's factual basis for asserting the benefit was achieved. Interrogatory 11 seeks information on the means and methods Meta employs to manage integrity issues—one of Meta's major procompetitive benefit categories—on its applications. Interrogatory 12 seeks detail on the "monetary, technological, or personnel resources" Meta contends contributed to its claimed improvements, including the basis for Meta's denial of the First RFAs related to the same subject.

2

Meta responded to Interrogatory 10 with high-level descriptive text and referrals to document batches, again tracking broad categories. Meta's Objs. & Resps. to FTC's Third Set of Interrogs. at 10-33 (Mar. 1, 2023) (Ex. 6). Disconcertingly, Meta asserted that it was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see, e.g.*, *id.* at 24). Meta refused entirely to respond to Interrogatory 11 and for Interrogatory 12, simply referred to its Interrogatory 10 response. *Id.* at 35, 36-40. Following multiple meet and confers, and futile efforts by the FTC to explain and tailor its requests, this motion ensued.

## ARGUMENT

The FTC has tried for over a year to discover the specifics of Meta's procompetitive justifications. In response, Meta has repeatedly recycled the same high-level, conclusory, and largely unsupported assertions it first put forward approximately two-and-a-half years ago during the FTC's investigation. Meta attempts to elide its obligations to respond fully by claiming, variously, that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Meta's position is untenable. Meta asserts that it has achieved procompetitive benefits, and the information regarding those benefits is within its sole control—Meta cannot claim it requires discovery from nonparties or from the FTC to specify the benefits it claims. As such, Meta should provide the detail requested in Interrogatories 10 through 12. Absent these details, the FTC is left in the dark regarding how Meta allegedly achieved these "benefits" as well as its supposed factual support, and faces an unacceptable risk of ambush at summary judgment or trial.

3

Alternatively, if Meta lacks factual support for its assertions and/or cannot provide the legally required details the FTC demands, Meta should make that concession today.

## I. Meta Bears the Burden of Substantiating Its Claimed Procompetitive Justifications

As described above, Meta asserts that it can avoid liability by proffering a "'procompetitive justification' for its conduct"—that is, a "nonpretextual claim that [the] conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal." *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001); *see* Meta's Answer at 38, ECF No. 94. For this defense to succeed, Meta must establish several elements. First, Meta must show that its claimed benefits are real or actual. *E.g.*, *Microsoft*, 253 F.3d at 72 ("Microsoft had an opportunity to, but did not, present the District Court with evidence demonstrating that the exclusivity provisions have some such procompetitive justification.").

Second, the claimed benefits must not be pretextual. *Id.* at 59. A claimed justification is invalid if it did not motivate the challenged conduct. *See Image Tech. Svcs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1219 (9th Cir. 1997) ("Evidence regarding the state of mind of Kodak employees may show pretext, when such evidence suggests that the proffered business justification played no part in the decision to act."); *Graco Inc. v. PMC Glob., Inc.*, 2012 WL 762448, at *14 (D.N.J. Mar. 6, 2012) ("Graco provides no contemporaneous evidence that the Best Efforts Letter was motivated by an emphasis on reducing customer confusion or preventing free-riding.").

Third, the disputed conduct must be "necessary to achieve" the purported benefits; that is, the purported benefits must not be achievable through other means. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 478 (7th Cir. 2020) (requiring defendant to demonstrate that the disputed conduct "was the result of, or necessary to achieve, much greater procompetitive benefits"); *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof. Publ'ns, Inc.*, 63 F.3d

1540, 1550 (10th Cir. 1995) ("Predatory practices are illegal if they impair opportunities of rivals and are not competition on the merits or are more restrictive than reasonably necessary for such competition[.]"); *see also Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1494-95 (D.C. Cir. 1984) (requiring the physician association to show that its requirement that members practice periodontics exclusively was the least restrictive means for protecting patient care).

Finally, magnitude matters as well. Where a monopolist employs acquisitions to maintain its monopoly power, it must provide "overwhelming" evidence that its claims are nonpretextual, that the claimed benefits were actually achieved and are "substantial," and that they could not have been achieved through other means. Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 701h (due to the "peculiarly strong interest in preventing unjustified mergers creating or reinforcing monopoly," "an efficiency defense cannot be allowed in monopoly cases [involving an acquisition] in the absence of an overwhelming demonstration that substantial efficiencies are involved and either cannot be achieved in other ways or will inevitably destroy the other firms").

## II.   Meta's Interrogatory No. 10 Response Is Materially Deficient

Consistent with the legal standard for evaluating procompetitive benefit claims, Interrogatory No. 10 asks Meta to specifically describe: each claimed procompetitive benefit, including its magnitude; the specific actions Meta took to achieve the benefit; whether the benefit could have been achieved absent the challenged acquisitions, including whether Meta claims the benefit was achieved earlier than it could have without the acquisitions; and whether Meta contemplated the claimed benefit at the time it decided to acquire either Instagram or WhatsApp. The interrogatory additionally requests that Meta describe the basis for its contentions and identify and describe any documents that support its assertions as to the foregoing issues.

5

Meta refused to provide the information requested, and instead merely incorporated by reference the vague and high-level responses it submitted in response to Interrogatories No. 5 and 6, supplemented with lists of documents that lack any context or explanation and fail to supply the details requested in the interrogatory. In short, Meta's response is materially deficient because it fails to address each of the relevant and reasonable components of Interrogatory 10.

Meta's responses for each of its broad categories of purported procompetitive benefit claims—for example, related to ▮▮▮▮—fail to provide more than one of the foregoing requested types of information. To elucidate the deficiencies, we describe how they manifest with respect to two of Meta's categorical claims—purported ▮▮▮-related benefits for Instagram and purported ▮▮▮ related benefits for WhatsApp—but these examples are illustrative only.

**_Purported ▮▮▮-Related Benefits for Instagram_**: Meta stated in its Interrogatory 10 response that a "procompetitive benefit" of the Instagram acquisition is that ▮▮▮▮ Ex. 6 at 12. Meta's response, however, fails to provide any of the requested information regarding this "benefit." To start, the claim is too vague. The concept of ▮▮▮▮ Meta's response fails to identify the ▮▮▮ at issue, or to concretely describe the nature of the purported ▮▮▮ benefits—much less does the response provide supporting information or evidence for Meta having delivered any supposed benefits.

In turn, Meta's response to 10(a) then fails to describe in anything other than vague and conclusory terms the purported ▮▮▮ Meta provided to Instagram for addressing ▮▮▮ Although the response refers to 27 documents, four websites, and six depositions under

the general heading ▮ for Instagram, those materials do not clearly describe ▮ benefits or Meta's methods of achieving them. *Id.* at 16-17. Meta's response also cites its responses to Interrogatories 5 and 6, *id.* at 13, but those responses provide no detail about the specific actions taken to address the ▮ that Meta alludes to; instead, they simply repeat the conclusory assertion that Meta supposedly delivered ▮ ▮ Ex. 4 at 7. Details of what tools or methods Meta was using are critical to understanding (among other things) if the claimed benefits were achievable absent the acquisition.

Meta's response to 10(b) also fails to specify the magnitude of the purported ▮ benefits delivered to Instagram. Meta's 10(b) response cites its Interrogatory 6 response, as well as descriptions of ▮ ▮ Ex. 6 at 29-30. This is deficient both because it fails to identify metrics for the entire period for which Meta has claimed ▮ benefits, and because ▮ ▮ does not explain whether or how those metrics improved post-transaction and how any such improvements are attributable to the acquisition (e.g., what, if any, benefits Meta delivered on top of what Instagram was or could be doing).

Meta's response to 10(c) and (d) are also deficient. Meta's 10(c) response redirects the FTC to its Interrogatory 5 response, but this response says nothing about whether the claimed Instagram ▮ benefits could have been achieved without the acquisition. Meta's response to 10(d) is similarly deficient because it merely points back to its responses to 10(b) and (c), neither of which provide any basis for Meta's vague assertion that it might have achieved benefits more quickly as a result of the acquisition, and neither of which provide any indication of how much more quickly benefits were supposedly achieved.

Finally, Meta's response to 10(e) for this claim is also deficient. Interrogatory 10(e) asks whether Meta's Board of Directors contemplated the particular benefit at the time of the acquisition. FTC's Third Set of Interrogs. at 2 (Jan. 30, 2023) (Ex. 7). Meta responded by redirecting the FTC to its Interrogatory 5 response. That response, however, dances around the information requested by failing to state clearly whether the benefit was contemplated "*at* the time" the acquisition was approved by the Board of Directors. *Id.* Instead, Meta responded with an unsupported assertion that the benefit was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 at 13. This is deficient because this specific information should be easy to provide—Meta should know, and be able to document, whether delivering ▮▮▮▮ benefits was a rationale for acquiring Instagram that was presented to Meta's board prior to the acquisition.

**Purported ▮▮▮▮▮▮▮▮-Related Benefits for WhatsApp**: Meta's Interrogatory 10 response stated that one of the "procompetitive benefits" of the WhatsApp acquisition was that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Ex. 6 at 13.

Meta's Interrogatory 10 response as to this assertion is likewise wholly deficient because it fails to provide nearly all the requested information regarding this purported "benefit." As an initial matter, the claimed "benefit" is vague, as it neither specifies what synergies or efficiencies resulted from WhatsApp's use of Meta's ▮▮▮▮▮▮▮▮ nor identifies what enhancements or developments were made to the WhatsApp user experience. Absent these details, the FTC is left to guess how, if at all, WhatsApp's use of Meta's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ produced any procompetitive benefits—and even what exactly the

purported procompetitive benefits are (e.g., what particular synergies, efficiencies, enhancements, or developments to the WhatsApp user experience are even being claimed).

Next, Meta's 10(a) response for this claim does not identify a single specific action that led to a synergy, efficiency, enhancement, or development of the customer experience. While Meta refers the FTC to 32 documents and two depositions under the ambiguous heading ▓▓▓▓ for WhatsApp, Meta makes no attempt to identify which documents show that a synergy resulted from WhatsApp's use of any of Meta's ▓▓▓▓. Ex. 6 at 20-21. And while Meta incorporates by reference its responses to Interrogatories 5 and 6, *id.* at 13, those responses provide no insight either. The FTC is therefore left in the dark about what specific ▓▓▓▓ resources or actions Meta claims to have brought to bear to improve WhatsApp—a critical piece of information for assessing (among other things) if the benefits were achievable without the acquisition.

Further, Meta's response to 10(b) is deficient because it does not identify the amount of any synergies or efficiencies that resulted from WhatsApp's use of Meta's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In fact, the terms "synergy" and "efficiency" do not even appear in Meta's response to 10(b). Again, Meta's responses to Interrogatories 5 and 6 are of no help. The only discussion of synergies and efficiencies is a nearly identical version of the generically asserted "benefit" quoted earlier: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 3 at 15.

Meta's responses to 10(c) and (d) are also deficient. Instead of directly addressing whether the synergies, efficiencies, and focus on enhancing the customer experience are benefits that could

9

have been achieved absent the WhatsApp acquisition, Meta sidesteps 10(c) by broadly claiming ▮▮▮▮▮ Ex. 6 at 31. While Meta again points the FTC to its Interrogatory 5 response to round out its response to 10(c), as noted above, the only discussion of synergies, efficiencies, and focus on the customer experience in the Interrogatory 5 response is an unsupported statement that Meta believed that those benefits would occur at the time of the WhatsApp acquisition. Meta's response to 10(d) is similarly deficient because it merely points back to its responses to 10(b) and (c), neither of which, as previously mentioned, discuss the connection between WhatsApp's use of Meta's ▮▮▮▮ and synergies, efficiencies, or the ability to focus on enhancing the experience for WhatsApp users.

<p style="text-align:center">*      *      *</p>

Meta's failure to disclose facts that support its claimed procompetitive benefits, including providing the details requested in Interrogatory 10, is prejudicial to the FTC's ability to respond to and rebut Meta's defenses, and to conduct fact discovery. For example, while the FTC knows that Meta is making conclusory assertions that it improved ▮▮▮ on Instagram, the FTC is hampered in its ability to probe that assertion because (among other things) it does not know Meta's evidentiary basis for the assertion—or other relevant facts bearing on whether the claim is legally sufficient, such as whether Meta has evidence that this claimed benefit was a rationale for the transaction or the means Meta is claiming to have used to achieve the benefit (and therefore whether the benefit was achievable without the acquisition). *Cf. Microsoft*, 253 F.3d at 59 (plaintiff may attempt to "rebut" the defendant's claimed procompetitive justification). More generally, because the FTC does not know what facts Meta has to support its procompetitive

justifications, the magnitude of those benefits, or how Meta claims to have achieved each of them, the FTC does not know which witnesses may possess relevant information or what questions to ask to probe Meta's generalized assertions.

Meta's arguments against providing the requested information are unavailing. First, Meta claims it provided a "detailed 22-page narrative response." March 16, 2023 Joint Status Report ("JSR") at 17, ECF No. 258. But on its face, as detailed above, Meta's response does not provide the requested information—at all, much less as to each purported benefit. Indeed, Meta concedes that it has not done so. *Id.* (arguing instead that its response "describes the primary ways it has improved Instagram and WhatsApp"). This is not an adequate response. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 3, 6-7 (D.D.C. 2011) (ordering response to an Interrogatory and explaining, "[i]f the question is how fast were you going when you hit the other car, a narrative answer that speaks of the accident but does not mention how fast the person answering was driving would not comply [with] that person's obligation to answer the question").

Second, Meta suggests it is not "required" to support its affirmative defenses in more detail. JSR at 17, ECF No. 258; *see also* Ex. 6 at 11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As support for this, Meta even suggests tha ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 6 at 12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Meta is wrong concerning what the law requires of a Section 2 defendant in support of procompetitive benefit claims. *See supra* § I. But in any event, Interrogatory 10 seeks relevant information within Meta's control and therefore warrants a complete response, regardless of what Meta believes is legally required to support its affirmative

defenses. Further, accepting Meta's incorrect suggestion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ would only *bolster* the FTC's justification for receiving the requested information: a Section 2 plaintiff cannot respond to a defendant's purported procompetitive benefits that are not detailed or substantiated in the first place.

Finally, Meta's suggestion that the interrogatories call for "premature" expert testimony is vague, conclusory, and troubling. JSR at 17, ECF No. 258; Ex. 6 at 11, 24, 27-29, 31, 32. The information that the FTC seeks is entirely factual, and not the domain of expert testimony. Meta claims to have achieved these purported benefits in the ordinary course of its business, and as such, should have ordinary course evidence to substantiate them. Thus, it is not clear what Meta considers "expert" about the requested information, and this is no basis for refusing to respond. *See King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5-6 (D.D.C. 1987) (a party is not excused from fully responding to an interrogatory with the information in its possession even if it needs "to consult with an expert" before answering interrogatories). Further, all the requested facts, to the extent they exist, are within Meta's exclusive control; and Meta is the only one who knows whether such evidence exists. This dynamic heightens the peril and potential for ambush and surprise. Given the FTC's repeated attempts to uncover such information over the past year, Meta should not be permitted to introduce new evidence in its expert reports, dispositive motions practice, or at trial.

The FTC therefore moves to compel responses to Interrogatories 10(a)-(f) that provide, on a benefit-by-benefit basis, the foregoing incomplete information, or—if Meta has no further information—that Meta be required to so certify.

### III. Meta's Interrogatory No. 11 Response Is Materially Deficient

Meta refused entirely to provide a substantive response to Interrogatory 11. Interrogatory No. 11 requests that Meta identify and describe the "specific methods, tools, or actions" taken to

manage or address integrity on the Facebook Family of Apps (including Instagram and WhatsApp prior to the acquisitions) and when they were deployed on each application. Ex. 7 at 2.

 This information is relevant because, as described above, Meta is making broad and conclusory assertions of having improved ▮▮▮▮ issues on Instagram and (perhaps, but not entirely clearly) WhatsApp. *See supra* at 6-8; Ex. 6 at 12-13. In asserting these claims, Meta vaguely suggests it has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, while providing no detail regarding those strategies. *See* Ex. 6 at 12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pushing past this vagueness, Interrogatory 11 asks Meta to describe what methods it is using to manage integrity on Instagram and WhatsApp, so that the FTC can—among other things—probe whether Meta in fact delivered integrity benefits to Instagram and WhatsApp, and whether those benefits are unique to the acquisitions, as opposed to being the product of strategies available without Meta. The interrogatory also requests information about Meta's integrity approaches for the Facebook Family of Apps, given Meta's suggestion that it used Facebook's approaches to assist Instagram. Ex. 7 at 2.

 Despite the clear relevance of the information, Meta refused entirely to respond, claiming the interrogatory is overbroad and purports to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6 at 35. To be clear, this Interrogatory does not ask Meta to respond in the caricatured manner that Meta describes. Instead, as is clear from its face, Meta is asked to provide only "specific methods, tools, or actions," not to identify each occasion that Meta has used those various techniques. The FTC made this clear in a meet and confer, and subsequent correspondence, to no avail. JSR Ex. L at 5, ECF No. 258-9.

 Meta has also incorrectly claimed that it has already answered Interrogatory 11, pointing to replies to Interrogatories No. 5, 6, 8, 9, and 10 and Request for Production of Documents

13

("RFP") No. 93. JSR at 21, ECF No. 258. But Meta's responses to Interrogatories No. 5 and 6 nowhere describe the specific methods, tools, or actions taken by Meta to manage or address integrity on the Facebook Family of Apps during the relevant period. Likewise, Interrogatories No. 8 and 9 and RFP No. 93 concerned third-party products and services contracted by Meta, and did not ask Meta to describe its overall integrity methods or tools, which is the focus of Interrogatory No. 11. And as already described *supra* § II, Meta's response to Interrogatory No. 10 also fails to address the specific methods, tools, and actions concerning Meta's ▬▬ efforts for the Facebook Family of Apps. As such, Meta has not yet provided the information sought in Interrogatory No. 11.

Given the relevance of the information and the baselessness of Meta's objections, the FTC therefore moves to compel a complete response to Interrogatory No. 11.

### IV. Meta's Interrogatory 12 Response Is Materially Deficient

As an additional effort to understand what evidence Meta possesses to support its procompetitive justifications, the FTC served a series of RFAs asking Meta to admit that it could not identify the "monetary, technological, or personnel resources [that] contributed either separately or collectively" to each procompetitive benefit it is claiming. Ex. 5 at 5-8. Meta ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* Following Meta's ▬▬▬▬▬▬, the FTC served Interrogatory No. 12, which requests a description of the "monetary, technological, or personnel resources" Meta contends contributed to its claimed procompetitive benefits—thereby independently requesting relevant information and probing the basis for Meta's ▬▬▬▬▬▬. Ex. 7 at 2-3.

Meta did not meaningfully respond to Interrogatory No. 12—and instead only pointed to Meta's previously described and wholly deficient response to Interrogatory No. 10. JSR at 22-23, ECF No. 258. As noted above, however, Meta's response to Interrogatory No. 10 fails to identify the specific actions it took to achieve its claimed benefits, and does not identify the "monetary, technological, or personnel resources [that] contributed either separately or collectively" to each procompetitive benefit it is claiming. *Supra* 5-12. Meta's referral to its Interrogatory 10 response is therefore non-responsive.

Meta's ▮▮▮▮▮▮▮▮▮▮ should have been based on something—and Meta's responses to Interrogatory 10 do not describe or explain whatever that is. The FTC therefore moves to compel a Response to Interrogatory No. 12 that provides the foregoing incomplete information, or—if Meta has no further information—that Meta be required to so certify.

## **CONCLUSION**

For the foregoing reasons, the FTC respectfully requests that the Court order Meta to provide the following no later than April 28, 2023:

(1) for each claimed procompetitive justification, a complete response to Interrogatory 10(a)-(f) that either (a) provides relevant facts and supporting evidence or (b) certifies that Meta has no further information;

(2) a complete response to Interrogatory 11; and

(3) for each procompetitive benefit, a complete response to Interrogatory 12 that either (a) provides relevant facts about the monetary, technological, and personnel resources that contributed to each claimed benefit or (b) certifies that Meta has no further information.

Dated:  March 31, 2023                                        Respectfully submitted,

/s/ Daniel Matheson
Daniel Matheson, Esq. (D.C. Bar #502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
Maria Dimoscato (D.C. Bar 489743)
Susan Musser (D.C. Bar 1531486)
David Owyang
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on the 31st day of March 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Daniel Matheson
Daniel Matheson, Esq. (D.C. Bar 502490)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*