# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

**PLAINTIFF FEDERAL TRADE COMMISSION'S**
**FIRST SET OF INTERROGATORIES TO META PLATFORMS, INC.**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure ("FRCP") and the Joint Scheduling Order (the "Case Management Order" or "CMO") entered on March 3, 2022 (Dkt. No. 103), Plaintiff Federal Trade Commission ("FTC" or "Plaintiff") requests Defendant Meta Platforms, Inc. ("Meta") answer the following Interrogatories. The requested answers must be provided within the time allotted under Rule 33(b)(2) and the CMO. These Interrogatories are continuing in nature and should be supplemented in accordance with Rule 26(e).

**INTERROGATORIES**

1. Identify all apps the Company contends were providing "robust and dynamic competition [to Facebook and Instagram] . . . in photo/video sharing" in 2012 (*see Submission by Facebook, Inc., Facebook's Acquisitions of Instagram and WhatsApp*, at 21 (Sept. 18, 2020)), and state the basis for your contention that such apps competed with Facebook and Instagram.

2. Identify and describe each Surface of the Facebook Family of Apps and Facebook Camera made available to users since January 1, 2009, including, but not limited to, the date(s) the Surface was added and removed (if applicable), the types of content and/or functionality available to the user via the Surface; and the dates(s) when new features or services were announced and made broadly available to users on each Surface.

3. Describe how the Company has determined ad load on each Surface of the Facebook Family of Apps since January 1, 2009, including, but not limited to, identifying any changes to how ad load is or was determined on each Surface over time and the dates of any such changes, each variable that affects ad load and the weighing of any such variables, any minimum ad spacing, and any ad load caps.

4. Describe, and state the basis for, the Company's valuation of WhatsApp prior to Meta's acquisition of WhatsApp, including, but not limited to, identifying any valuation estimates developed by Meta or on Meta's behalf, the reasoning or assumptions underlying the valuation estimates, and any sources of data or modeling Meta relied upon in developing valuation estimates for WhatsApp.

5. Identify and describe each procompetitive justification that the Company contends supports its Fourth and Fifth Affirmative Defenses in Meta's Answer and Defenses to the FTC's Substitute First Amended Complaint.

6. Identify and describe each improvement the Company contends it has made to Instagram and WhatsApp since acquiring each (*see generally Submission by Facebook, Inc., Facebook's Acquisitions of Instagram and WhatsApp* (Sept. 18, 2020)), including describing any monetary, technological, personnel, and other resources and investments required for the improvement.

7. Identify and describe all Service Outages for each of the Facebook Family of Apps, including, but not limited to, the beginning and end date and time, duration (in days, hours, or minutes), root cause, contributing cause(s), affected geographies in the United States, and severity in terms of the Company's ordinary course severity measure (*see, e.g.,* FB_FTC_CID_03079242 (referencing SEV 1, SEV 2, SEV 3, etc.)).

8. Identify and describe any product, software, or service offered by any Person other than the Company that the Company has used to detect, deter, measure, quantify, assess or remove Objectionable Content on Facebook Blue, Instagram, and WhatsApp, including, but not limited to, the dates of use and cost of each, all metrics used to measure, quantify, or assess the prevalence of Objectionable Content or the amount of Objectionable Content deterred or removed, and any limitations of any such product, software, service, or metric in detecting, deterring, removing, measuring, quantifying, or assessing the prevalence of Objectionable Content.

# DEFINITIONS

D1.  "Company" or "Meta" means Meta Platforms, Inc. (formerly Facebook, Inc.), its domestic and foreign parents, predecessors, divisions, subsidiaries (including Instagram LLC and WhatsApp LLC), affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial or total ownership or control between the Company and any other Person.

D2.  "Discuss" or "discussing" mean, in whole or in part, constituting, containing, describing, or addressing the designated subject matter, regardless of the length of the treatment or detail of analysis of the subject matter, but not merely referring to the designated subject matter without elaboration. In addition, a document that "discusses" another document includes the other document itself (e.g., a document that "discusses" an agreement or contract includes the agreement or contract itself). Further, these terms include any operating or financial data about the designated subject matter where such data are separately set out as in a chart, listing, table, or graph.

D3.  "Facebook Camera" means the app named Camera that the Company introduced on or around May 24, 2012, and includes all preceding projects to create Camera or a similar app.

D4.  "Facebook Family of Apps" means the Facebook Blue, Instagram, WhatsApp, and Facebook Messenger apps and websites.

D5.  "Instagram LLC" means Burbn, Inc., Instagram, Inc., or Instagram LLC, its domestic and foreign predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing; and includes Instagram, Inc., as an independent company and as a subsidiary of Meta.

D6.  "Objectionable Content" means any type of content that may violate Meta's Community Standards (*see* https://transparency.fb.com/policies/community-standards), including, but not limited to, spam, fake accounts, fraud, pornography, child exploitation, sexual solicitation, violent and graphic content, hate speech, election interference, and bullying.

D7.  "Person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

D8.  "Service Outage" means a period of time during which users in the United States could not access any or all of any Relevant Product offered by the Company, including, but not limited to, a period of time during which the Relevant Product operated outside of its service level agreement or service level objective.

D9.  "Surface" refers to any medium within Facebook Blue, Instagram, WhatsApp, Facebook Messenger, or Facebook Camera through which a user interacts with content. Surfaces

       include, but are not limited to, Facebook News Feed, Facebook Stories, Instagram Feed, Instagram Stories, Facebook Groups, Facebook Watch, Facebook Reels, Facebook Live, Instagram Reels, and Instagram Live. *See, e.g.,* FB_FTC_CID_02552378, at 83.

D10. "WhatsApp LLC" means WhatsApp LLC or WhatsApp Inc., its domestic and foreign predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing; and includes WhatsApp LLC as an independent company and as a subsidiary of Meta.

## **INSTRUCTIONS**

I1.   Unless otherwise indicated, these Interrogatories cover the period from January 1, 2009 to the present.

I2.   These Interrogatories call for information relating to the Company's business in the United States. For the avoidance of doubt, information relating to the Company's global business, or to the Company's business in the United States and in other countries, should be treated as information relating to the Company's business in the United States.

I3.   A party or entity's full or abbreviated name or a pronoun referring to a party or entity means the party or entity and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any Person who is not a party to the litigation.

I4.   The wording of any interrogatory does not constitute an admission of what the facts or evidence will ultimately show.

I5.   The following rules of construction shall apply to all interrogatories:

   (a)   The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

   (b)   the use of a word in its singular form shall be deemed to include within its use the plural form;

   (c)   the connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the interrogatory, definition, or instruction more inclusive;

   (d)   the terms "any," and "each" shall be construed to encompass "all";

   (e)   the term "including" means "including but not limited to"; and

   (f)   the use of the word "the" shall not be construed as limiting the scope of any interrogatory.

I6.   These Interrogatories call for all information (including any information contained in or on any documents or writing) that is known or available to Meta, including all information in the possession of, or available to, Meta's attorneys, agents, or representatives, or any other person acting on Meta's behalf or under Meta's direction or control.

I7.   These Interrogatories, including subparts, are to be answered by Meta separately, completely, and fully, under oath.

I8. These Interrogatories are to be considered continuing in nature, and Meta must promptly furnish supplemental responses if any additional responsive information is discovered or created after Meta's responses are tendered, or if any of Meta's responses are subsequently determined to be incorrect, incomplete, or misleading in any respect.

I9. All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the response. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived. If Meta is withholding responsive information pursuant to any general objection, Meta should so expressly indicate. If, in responding to these Interrogatories, Meta claims any ambiguity in interpreting either the Interrogatories or an applicable definition or instruction, set forth as part of Meta's response the language deemed to be ambiguous and the interpretation used in responding to these Interrogatories, and respond to these Interrogatories as Meta interprets them.

I10. If Meta cannot answer all or part of these Interrogatories after exercising due diligence to secure the full information to do so, so state and answer to the fullest extent possible, specifying Meta's inability to answer the remainder, stating whatever information or knowledge Meta has concerning the unanswered portion, and detailing what Meta did in attempting to secure the unknown information.

I11. The terms "identify" or "specify," when used in reference to a natural person, mean to state the person's (1) full name; (2) present or last-known residence and telephone number and present or last-known business address and telephone number; and (3) present or last-known employer and job title. For any person identified, if any of the above information was different during the time period relevant to the Interrogatory, supply both the current information and such different information as applies to the time period relevant to the Interrogatory. Once a natural person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

The terms "identify" or "specify," when used in reference to a corporation or other non-natural person, mean (1) to state that entity's name; (2) to describe its nature (e.g., corporation, partnership, etc.); (3) to state the location of its principal place of business; and (4) to identify the natural person or persons employed by such entity whose actions on behalf of the entity are responsive to the Interrogatory. Once such an entity has been identified properly, it shall be sufficient thereafter when identifying that same entity to state the name only.

The terms "identify" or "specify," when used in reference to facts, acts, events, occurrences, meetings, or communications, mean to describe, with particularity, the fact, act, event, occurrence, meeting, or communication in question, including but not limited to (1) identifying the participants and witnesses of the fact, act, event, occurrence, meeting, or communication; (2) stating the date or dates on which the fact, act, event, occurrence, meeting, or communication took place; (3) stating the location(s) at or mediums through which the fact, act, event, occurrence, meeting, or communication took place; (4) providing a description of the substance of the fact, act, event, occurrence,

meeting, or communication; and (5) identifying all documents (by Bates number) that memorialize or constitute the fact, act, event, occurrence, meeting, or communication.

I12. For each Interrogatory requesting that the Company "state" or "describe" or "identify" or "specify" the basis for the Company's contentions, decisions, assertions, claims, calculations, or answer, the Company's response shall describe in detail the basis for the Company's contentions, assertions, claims, decisions, calculations, or answer and include (and specifically identify) any related facts, witnesses (name, title, address, and phone number), and Documents (Bates number), including any studies, analyses, models, or other Documents that the Company considered or relied upon as a basis for each contention, decision, assertion, claim, calculation, or answer.

Dated: May 26, 2022                                   Respectfully submitted,

By: */s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Maria Dimoscato (D.C. Bar 489743)
Timothy J. Slattery (D.C. Bar 1023445)
Owen Masters (D.C. Bar 242139)
Susan Musser (D.C. Bar 1531486)
Michael Smith (D.C. Bar 996738)
Abby L. Dennis (D.C. Bar 994476)

Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 26, 2022, I caused true and correct copies of the foregoing PLAINTIFF FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES TO META PLATFORMS, INC. to be served via electronic mail on counsel listed below:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com
James P. Rouhandeh
Michael Scheinkman

8

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

        */s/ Timothy J. Slattery*
        Timothy J. Slattery (D.C. Bar 1023445)
        Federal Trade Commission
        Bureau of Competition
        400 Seventh Street, S.W.
        Washington, D.C. 20024
        Telephone: (202) 326-2471
        Email: tslattery@ftc.gov

        *Attorney for Plaintiff*
        *Federal Trade Commission*