# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br><br>Plaintiff,<br><br>v.<br><br>**META PLATFORMS, INC.**,<br><br>Defendant. | Civil Action No. 1:20-cv-03590 (JEB) |

**PLAINTIFF FEDERAL TRADE COMMISSION'S THIRD SET OF
INTERROGATORIES TO DEFENDANT META PLATFORMS, INC.**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure ("FRCP") and the Joint Scheduling Order (the "Case Management Order" or "CMO") entered on March 3, 2022 (Dkt. No. 103), Plaintiff Federal Trade Commission ("FTC" or "Plaintiff") requests Defendant Meta Platforms, Inc. ("Meta") answer the following Interrogatories. The requested answers must be provided within the time allotted under Rule 33(b)(2) and the CMO. These Interrogatories are continuing in nature and should be supplemented in accordance with Rule 26(e).

**INTERROGATORIES**

10. Identify each Procompetitive Benefit, and for each such Procompetitive Benefit, identify and describe in detail:

    a. what Specific Action(s) the Company took to achieve the Procompetitive Benefit, including, but not limited to, the timeline, status, and costs of such actions; the specific tools, methods, strategies, personnel, or technologies employed; and whether the tools, methods, strategies, personnel, or technologies employed were provided in whole or in part by the Company or any other Person;

    b. the amount of the benefit, including to the extent applicable:

        i. for increased user growth, what measures of user growth increased and the amount(s) of the increase;

        ii. for increased user engagement, what measures of user engagement increased and amount(s) of the increase;

1

   iii. for improved performance (e.g., reduced latency, increased reliability, increased availability), what specific measure(s) of performance improved and the amount(s) of the improvement;

   iv. for cost savings, the measures and amount(s) of the cost savings;

   v. for reduced Objectionable Content, the measures and amount(s) of the reduction; and

   vi. for any other benefit, efficiency, or enhanced consumer appeal, the measure and amount of the improvement;

 c. whether the Company contends the benefit could not have been achieved absent the Transactions, and, if so, the basis for that contention;

 d. whether the Company contends the benefit was achieved earlier than could have been achieved absent the Transactions, and, if so, the amount of time saved and the basis for that contention;

 e. whether the Company contemplated the benefit at the time the Company's Board of Directors approved the Transactions; and

 f. all Documents that support the claimed benefit and the foregoing contentions.

11. Identify and describe in detail the specific methods, tools, or actions taken to manage or address Integrity on the Facebook Family of Apps (including Instagram and WhatsApp prior to their acquisitions by the Company) throughout the Relevant Period, and include in the description the timeline and status of deploying such methods, tools, or actions, and whether the methods, tools, or actions were provided in whole or in part by the Company or any other Person.

12. Identify, describe in detail, and state the basis for, the monetary, technological, or personnel resources the Company contends contributed, either separately or collectively, to the improvements referenced in the Company's denial of the FTC's Requests for Admission Number 4 through 10, including:

 a. each specific infrastructure improvement Meta claims it has made to Instagram since its acquisition;

 b. each specific Integrity improvement Meta claims it has made to Instagram since its acquisition;

 c. the development or improvement of each specific feature that Meta claims it has made to Instagram since its acquisition;

      d.      each specific monetization improvement that Meta claims it has made to Instagram since its acquisition;

      e.      each specific infrastructure improvement Meta claims it has made to WhatsApp since its acquisition;

      f.      each specific new features improvement Meta claims it has made to WhatsApp since its acquisition; and

      g.      each specific monetization improvement Meta claims it has made to WhatsApp since its acquisition.

13.    Since 2010, describe each change made to the Terms of Service (*see., e.g.*, https://www.whatsapp.com/legal/terms-of-service/?lang=en) and Privacy Policies (*see, e.g.*, https://privacycenter.instagram.com/policy) of (a) Facebook Blue, (b) Messenger, (c) Instagram, and (d) WhatsApp, and the date each came into effect.

**DEFINITIONS**

D1.  "Company" or "Meta" means Meta Platforms, Inc. (formerly Facebook, Inc.), its domestic and foreign parents, predecessors, divisions, subsidiaries (including Instagram LLC and WhatsApp LLC), affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial or total ownership or control between the Company and any other Person.

D2.  "Affirmative Defenses" means, <u>and information shall be provided separately for</u>, each procompetitive justification that the Company contends supports its (1) Fourth Affirmative Defenses and (2) Fifth Affirmative Defenses in the Company's Answer to the Federal Trade Commission's Substitute Amended Complaint in this action.

D3.  "And" and "or" have both conjunctive and disjunctive meanings as necessary to bring within the scope of these Requests anything that might otherwise be outside its scope.

D4.  "Discuss" or "discussing" mean, in whole or in part, constituting, containing, describing, or addressing the designated subject matter, regardless of the length of the treatment or detail of analysis of the subject matter, but not merely referring to the designated subject matter without elaboration.  In addition, a document that "discusses" another document includes the other document itself (e.g., a document that "discusses" an agreement or contract includes the agreement or contract itself).  Further, these terms include any operating or financial data about the designated subject matter where such data are separately set out as in a chart, listing, table, or graph.

D5.  "Each," "any," and "all" mean "each and every."

D6.  "Facebook Family of Apps" means, <u>and information shall be provided separately for</u>, the apps and websites for Facebook Blue, Instagram, WhatsApp, and Facebook Messenger.

D7.  "Include" and "including" mean "including, but not limited to."

D8.  "Instagram LLC" or "Instagram" means Burbn, Inc., Instagram, Inc., or Instagram LLC, its domestic and foreign predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing; and includes Instagram, Inc., as an independent company and as a subsidiary of Meta.

D9.  "Integrity" refers to efforts to detect, deter, measure, quantify, assess, or remove Objectionable Content on Facebook Blue, Instagram, and WhatsApp.

D10. "Objectionable Content" means any type of content that may violate Meta's Community Standards (see https://transparency.fb.com/policies/community-standards), including, but not limited to, spam, fake accounts, fraud, pornography, child exploitation, sexual solicitation, violent and graphic content, hate speech, election interference, and bullying.

D11. "Relevant Period" means from January 1, 2009 to the present date.

D12. "Transactions" means, <u>and information shall be provided separately for</u>, the acquisition of (1) Instagram and (2) WhatsApp.

D13. "Procompetitive Benefit" means, <u>and information shall be provided separately for</u>, each procompetitive benefit or procompetitive justification the Company claims has arisen from or is associated with its acquisition of (1) Instagram or (2) WhatsApp, including, but not limited to, any procompetitive benefit or procompetitive justification the Company contends supports its Affirmative Defenses.

D14. "Specific Action" means, <u>and information shall be provided separately for</u>, each specific action resulting in or associated with a Procompetitive Benefit, including, but not limited to, actions to:

   a. improve infrastructure, including, but not limited to, migrating to Meta's infrastructure and using Meta's hardware, software, and middleware;

   b. improve integrity, including, but not limited to, using Meta's integrity tools (*e.g.*, Sentry, Sigma, Blackhole Karma, Orb, Tally);

   c. launch or improve features, including, but not limited to, improving or developing photo tagging, search, location services, video sharing, messaging, Instagram live video, Instagram Stories, and Instagram Shopping, connections pivot, IGTV, WhatsApp business-to-user, voice calling ("VOIP"), video calling, group calling (for voice and video), WhatsApp Status, WhatsApp Pay, and end-to-end encryption;

   d. launch or improve monetization, including, but not limited to, accessing Meta's advertising processes, systems, sales staff, or offering one-stop-shopping for buying ads, premium brand advertising, direct response ad format, Click-to-WhatsApp Advertisements, WhatsApp Business Platform, WhatsApp Business Application Programming Interface, and Cloud-based API;

   e. grow the number of users or increase user engagement on the Facebook Family of Apps, including, but not limited to, promotional efforts and other growth initiatives;

   f. use or share Meta's personnel, know-how, access to capital, or corporate organization (including, but not limited to, administrative, finance, legal, marketing, regulatory services, and physical offices);

   g. use or share Instagram's or WhatsApp's personnel or know-how; and

   h. improve the Facebook Family of Apps, including, but not limited to, using algorithmic ranking.

D15. "WhatsApp LLC" or "WhatsApp" means WhatsApp LLC or WhatsApp Inc., its domestic and foreign predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing; and includes WhatsApp LLC as an independent company and as a subsidiary of Meta.

## **INSTRUCTIONS**

I1. Unless otherwise indicated, these Interrogatories cover the period from January 1, 2009 to the present ("Relevant Period").

I2. These Interrogatories call for information relating to the Company's business in the United States. For the avoidance of doubt, information relating to the Company's global business, or to the Company's business in the United States and in other countries, should be treated as information relating to the Company's business in the United States.

I3. A party or entity's full or abbreviated name or a pronoun referring to a party or entity means the party or entity and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any Person who is not a party to the litigation.

I4. The wording of any interrogatory does not constitute an admission of what the facts or evidence will ultimately show.

I5. The following rules of construction shall apply to all interrogatories:

   a. The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

   b. the use of a word in its singular form shall be deemed to include within its use the plural form;

   c. the connectives "and" and "or" shall be construed either disjunctively or conjunctively, whichever makes the interrogatory, definition, or instruction more inclusive;

   d. the terms "any," and "each" shall be construed to encompass "all";

   e. the term "including" means "including but not limited to"; and

   f. the use of the word "the" shall not be construed as limiting the scope of any interrogatory.

I6. These Interrogatories call for all information (including any information contained in or on any documents or writing) that is known or available to Meta, including all information in the possession of, or available to, Meta's attorneys, agents, or representatives, or any other person acting on Meta's behalf or under Meta's direction or control.

I7. These Interrogatories, including subparts, are to be answered by Meta separately, completely, and fully, under oath.

I8. These Interrogatories are to be considered continuing in nature, and Meta must promptly furnish supplemental responses if any additional responsive information is discovered or

7

created after Meta's responses are tendered, or if any of Meta's responses are subsequently determined to be incorrect, incomplete, or misleading in any respect.

I9. All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the response. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived. If Meta is withholding responsive information pursuant to any general objection, Meta should so expressly indicate. If, in responding to these Interrogatories, Meta claims any ambiguity in interpreting either the Interrogatories or an applicable definition or instruction, set forth as part of Meta's response the language deemed to be ambiguous and the interpretation used in responding to these Interrogatories, and respond to these Interrogatories as Meta interprets them.

I10. If Meta cannot answer all or part of these Interrogatories after exercising due diligence to secure the full information to do so, so state and answer to the fullest extent possible, specifying Meta's inability to answer the remainder, stating whatever information or knowledge Meta has concerning the unanswered portion, and detailing what Meta did in attempting to secure the unknown information.

I11. The terms "identify" or "specify," when used in reference to a natural person, mean to state the person's (1) full name; (2) present or last-known residence and telephone number and present or last-known business address and telephone number; and (3) present or last-known employer and job title. For any person identified, if any of the above information was different during the time period relevant to the Interrogatory, supply both the current information and such different information as applies to the time period relevant to the Interrogatory. Once a natural person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

The terms "identify" or "specify," when used in reference to a corporation or other non-natural person, mean (1) to state that entity's name; (2) to describe its nature (e.g., corporation, partnership, etc.); (3) to state the location of its principal place of business; and (4) to identify the natural person or persons employed by such entity whose actions on behalf of the entity are responsive to the Interrogatory. Once such an entity has been identified properly, it shall be sufficient thereafter when identifying that same entity to state the name only.

The terms "identify" or "specify," when used in reference to facts, acts, events, occurrences, meetings, or communications, mean to describe, with particularity, the fact, act, event, occurrence, meeting, or communication in question, including but not limited to (1) identifying the participants and witnesses of the fact, act, event, occurrence, meeting, or communication; (2) stating the date or dates on which the fact, act, event, occurrence, meeting, or communication took place; (3) stating the location(s) at or mediums through which the fact, act, event, occurrence, meeting, or communication took place; (4) providing a description of the substance of the fact, act, event, occurrence, meeting, or communication; and (5) identifying all documents (by Bates number) that memorialize or constitute the fact, act, event, occurrence, meeting, or communication.

I12.  For each Interrogatory requesting that the Company "state" or "describe" or "identify" or "specify" the basis for the Company's contentions, decisions, assertions, claims, calculations, or answer, the Company's response shall describe in detail the basis for the Company's contentions, assertions, claims, decisions, calculations, or answer and include (and specifically identify) any related facts, witnesses (name, title, address, and phone number), and Documents (Bates number), including any studies, analyses, models, or other Documents that the Company considered or relied upon as a basis for each contention, decision, assertion, claim, calculation, or answer.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2023, I served or caused to be served a true and correct copy of Plaintiff Federal Trade Commission's Third Set of Interrogatories upon the following counsel of record for Meta Platforms, Inc. at the email addresses listed below:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

*/s/ Susan A. Musser*
Susan A. Musser (D.C. Bar 1531486)

*Attorney for Plaintiff Federal Trade Commission*