# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

                 Plaintiff,

     v.

META PLATFORMS, INC.,

                 Defendant.

Case No. 1:20-cv-03590-JEB

**META PLATFORMS, INC.'S OPPOSITION TO THE FTC'S
MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 10, 11, 12
REGARDING DEFENDANT META PLATFORMS, INC'S ASSERTED
<u>PROCOMPETITIVE JUSTIFICATIONS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
   **Page** .......................................................................................................................................... ii
   **Cases** ........................................................................................................................................ ii
INTRODUCTION AND SUMMARY ............................................................................................... 1
ARGUMENT ........................................................................................................................................ 3
   I.   Meta's Responses to Interrogatories 10-12 Satisfy Rule 33 ................................................. 3
      A.   Meta's Responses and Objections to the FTC's Interrogatories Regarding the Procompetitive Effects of the Instagram and WhatsApp Transactions ................................. 3
      B.   Interrogatories 10-12 Are Overly Broad, Unduly Burdensome, and Disproportionate to the Needs of the Case ........................................................................................................ 6
      C.   Interrogatories 10-12 Prematurely Call for Expert and Third-Party Discovery .............. 14
CONCLUSION .................................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Chatman v. Purdue*, 2020 WL 1170230 (D.D.C. Mar. 11, 2020) ...................................................6

*EpiPen Direct Purchaser Litig., In re*, 2023 WL 2675134 (D. Minn. Mar. 29, 2023)..................15

*Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, 2022 WL 111126
 (D. Utah Jan. 12, 2022)......................................................................................................6

*Philips N. Am. LLC v. PKI Healthcare, Inc.*, 2020 WL 3031614 (C.D. Cal. Mar. 10, 2020) .........6

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 4171496 (E.D. Va. Aug. 30, 2018) .................5

*Terazosin Hydrochloride Antitrust Litig., In re*, 2002 WL 31761289
 (S.D. Fla. Mar. 1, 2002)....................................................................................................11

*Unicolors, Inc. v. Kohl's Dep't Stores, Inc.*, 2018 WL 5274584 (C.D. Cal. Mar. 6, 2018) ..........10

## INTRODUCTION AND SUMMARY

Since Meta acquired two-year-old Instagram in 2012 and five-year-old WhatsApp in 2014, it has invested enormous resources — financial, engineering, technological, hiring, and many others — to improve users' experience of these apps and to make them successful businesses. In response to the FTC's interrogatories, Meta provided detailed information about the improvements it made to both apps, including extensive supporting evidence, and Meta is continuing to identify additional responsive materials consistent with its discovery obligations and will supplement its responses as appropriate.

The FTC nevertheless demands a detailed account of literally every "specific action" Meta has ever taken to improve Instagram and WhatsApp over the past 10 years — including all of "the specific tools, methods, strategies, personnel, or technologies employed" for each — and asks Meta to quantify the benefits of each such action. This is impossible. Meta's decade-long effort to improve Instagram and WhatsApp involved innumerable actions, thousands of engineers, billions of dollars of investment, and the bulk of these actions occurred years ago.

With respect to Interrogatory 10, Meta provided a 22-page response listing the primary improvements it has made to Instagram and WhatsApp. For each category of improvement (including integrity that is also the subject of Interrogatory 11), Meta's response cited internal documents, numerous depositions, prior interrogatory responses, and publicly available material. The FTC is thus wrong (at 3) that Meta provided only "high-level, conclusory, and largely unsupported assertions." And the FTC's request for further detail — which it has refused to narrow — is overly broad, unduly burdensome, and disproportionate to the needs of the case, particularly given the FTC's own delay in bringing this action.

The Court should likewise deny the motion with respect to Interrogatory 11, which demands that Meta "Identify and describe in detail the specific methods, tools, or actions taken to manage or address Integrity on the Facebook Family of Apps" from 2009 to the present; the Interrogatory further insists that Meta create a bespoke "timeline" describing the "status of deploying such methods, tools, or actions." Meta objected because there is no practical way to provide the requested level of detail, and because the FTC has failed to show such detail is relevant to any claim or allegation it has made. The FTC, for example, has never explained why the "actions" Facebook took in 2010 related to integrity have any bearing on this case.

Interrogatory 12 requests information supporting Meta's denial of certain Requests for Admission. Meta denied those requests as vague and ambiguous, not on substantive grounds; there is no further information to provide. Further, the information the FTC seems to be seeking overlaps with Interrogatory 10, and is therefore covered in Meta's response to that interrogatory, which Meta cross referenced in its response to Interrogatory 12 subject to its objections.

Finally, the FTC's demand that Meta quantify the benefits of each specific improvement is overbroad, unduly burdensome, disproportionate, and prematurely calls for expert testimony. Meta's response cited ordinary-course documents quantifying various improvements it has made, but the FTC's request for information about whether and how quickly these benefits could have been achieved in a hypothetical world in which the transactions did not occur is a subject for expert testimony. For example, if the FTC claims that Instagram and WhatsApp could have achieved the same benefits using third party cloud infrastructure or integrity providers instead of Meta, experts would need to evaluate that claim with information about those third parties, which is outside Meta's possession or control. Meta is not required to provide such expert testimony now.

## ARGUMENT

**I.   Meta's Responses to Interrogatories 10-12 Satisfy Rule 33**

**A.   Meta's Responses and Objections to the FTC's Interrogatories Regarding the Procompetitive Effects of the Instagram and WhatsApp Transactions**

Meta has provided the FTC with detailed information about the improvements it made to Instagram and WhatsApp. During the investigation stage, Meta explained to the FTC (including in an 83-page white paper) how it runs Instagram and WhatsApp on infrastructure that Meta has built, and how it has improved both apps over the many years it has operated them. In May 2022, the FTC served Interrogatory 5 regarding the procompetitive justifications for the transactions, and Interrogatory 6 regarding improvements Meta made to both apps. In response, Meta supplied over 20 pages of information categorizing the improvements that Meta made to each app's technical infrastructure, capacity to fight undesirable content (referred to as "integrity" improvements), ability to develop new features and functionality, and monetization efforts, among others. Meta also explained that it was impossible to itemize every efficiency it has gained, or every improvement it has made to both Instagram and WhatsApp, over the past decade.

In February 2023, the FTC served Interrogatories 10-12, which seek largely the same information as Interrogatories 5 and 6, but demand even greater detail. The FTC's motion attempts (at 1) to rewrite Interrogatories 10-12 to seek only "relevant facts," but that "familiar interrogatory formulation . . . does not appear" in any of Interrogatories 10-12. Order at 3, ECF No. 264. Interrogatory 10 requests a detailed description of every "Specific Action" taken to achieve each and every "Procompetitive Benefit" or relevant "improvement[]" to Instagram and WhatsApp. *See* Resp. to Rog 10 at 10-11. The FTC defined "Specific Action" tautologically, as "each specific action resulting in or associated with a Procompetitive Benefit, including, but not limited to,

3

actions" regarding several specified categories: "improve infrastructure"; "improve integrity"; "launch or improve features"; "launch or improve monetization"; "grow the number of users or increase user engagement"; "use or share Meta's personnel, know-how, access to capital, or corporate organization"; and "improve the Facebook Family of Apps."

The FTC's Interrogatory No. 12 demands that Meta "identify, describe in detail, and state the basis for, the monetary, technological, or personnel resources the Company contends contributed, either separately or collectively, to the improvements referenced in the Company's denial of the FTC's Requests for Admission Number 4 through 10," including "infrastructure," "Integrity," "feature" and "monetization" improvements.

Meta informed the FTC that interrogatories 10 and 12 were overbroad and requested an extension to search for responsive documents and other materials. The FTC rejected Meta's request for additional time to respond, and made no serious proposal to tailor its demands. To the contrary, its sole correspondence on this issue confirms that the FTC would accept nothing less than a "narrative response" explaining how every improvement to Instagram and WhatsApp "resulted in a procompetitive benefit." *See* Letter from S. Musser, FTC, to G. Block, Counsel for Meta, at 2 (Mar. 7, 2023). Meta provided a detailed and substantive response to Interrogatory 10 that not only describes the primary improvements it made to Instagram and WhatsApp, but also for each main category of improvement provides extensive cites to documents (279 in total), deposition testimony, and other information that further describe and support each of those categories. Meta also provided information and data regarding various ways to measure the improvements it has made and the benefits that it has achieved in operating both apps, such as growing users and engagement, improving performance and reliability, and realizing cost savings.

Interrogatory 11 makes an even greater demand: it asks that Meta identify every "action" it has ever taken to address "Integrity" across Facebook Blue, Instagram, and WhatsApp, without regard to whether each and every such "action" has anything to do with this case. Meta objected to responding on the grounds (among others) that the additional information demanded — a narrative reconstructing each and every one of "the specific methods, tools, or actions taken to manage or address Integrity on the Facebook Family of Apps" — is impossible to assemble and irrelevant to the FTC's claims.

Meta's interrogatory responses represent only some of the information the FTC has obtained about Meta's improvements to both apps. The FTC has taken or will take depositions of Meta's current and past heads of infrastructure, as well as many other senior executives involved in the improvements Meta has made to both apps. Meta has also produced many documents in response to RFPs that address these topics, including requests the FTC made in its first set of RFPs (Requests 28, 29, 31, and 32, in particular). Ex. A, FTC's First Set of Requests for Production of Documents to Defendant Meta Platforms, Inc. There is no basis for the FTC's claim (at 3) that it is "left in the dark regarding how Meta allegedly achieved these 'benefits' as well as its supposed factual support." *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 4171496, at *9 (E.D. Va. Aug. 30, 2018) (in antitrust case, failure to respond to interrogatory harmless because party "could explore" the relevant facts "in more detail at the depositions of [party's] fact witnesses, as demonstrated by" prior questioning).

The FTC revealed its true purpose in serving these interrogatories during the parties' meet and confer on March 9: the FTC said it would consider narrowing these interrogatories only if Meta would certify that it has no additional information about any improvements it made to Instagram and WhatsApp. The FTC's imposition of overly broad, unduly burdensome, and

5

disproportionate discovery requests — in an attempt to force Meta to make such a certification not required by any Rule — is improper. The innumerable benefits Meta made to Instagram and WhatsApp will be discussed both during expert discovery (which does not conclude until January 2024) and in ongoing depositions; Meta is entitled to rely on that information and accordingly should not be required to prematurely certify no such additional information exists.

### B. Interrogatories 10-12 Are Overly Broad, Unduly Burdensome, and Disproportionate to the Needs of the Case

To the extent Interrogatories 10-12 purport to call for additional granular facts, those requests are overly broad and disproportionate to the needs of the case. "[W]hile discovery is broadly allowed, it is not limitless." *Chatman v. Purdue*, 2020 WL 1170230, at *2 (D.D.C. Mar. 11, 2020) (Boasberg, J.). As described in the Declaration of C. DuBois (Ex. B), they would also be exceedingly burdensome for Meta to answer.

The FTC's interrogatories also seek detail that is impossible to provide as a practical matter, particularly given the FTC's years-long delay in bringing this action. *Cf. Philips N. Am. LLC v. PKI Healthcare, Inc.*, 2020 WL 3031614, at *3 (C.D. Cal. Mar. 10, 2020) (denying motion to compel interrogatory response that "covers years and perhaps an unknowable number of business transactions and decisions, [because it] is facially overbroad, unduly burdensome, and disproportionate to the needs of the case"); *see also Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, 2022 WL 111126, at *3 (D. Utah Jan. 12, 2022) (staying discovery on antitrust claim after crediting defendant's objection that discovery requests were "highly burdensome" because they undisputedly "cover[ed] essentially all of [party's] business operations since 2010").

1. **Interrogatory 10**

Meta's response to Interrogatory 10 provides extensive detail regarding the specific steps it has taken to improve Instagram and WhatsApp. These improvements occurred over an entire

6

decade, involved thousands of people, and billions of dollars of investment. There is no way to describe literally every "specific action" that was involved in this massive effort, much less all the "the specific tools, methods, strategies, personnel, or technologies employed" for each. Although the FTC argues that Meta's response is deficient, it has failed to offer any limitation on its overbroad and burdensome requests, much less to explain why such information is relevant.

Contrary to what the FTC suggests, Meta's response demonstrated that both Instagram and WhatsApp run on common infrastructure that Meta built over the past 15 years, and which Meta is continually expanding and improving. *See* Resp. to Rog. 10 at 24 (citing, █████

████████████████████████

████████████████████████

████████████████████████

████████████████ Meta provided information that describes this infrastructure in granular detail. *See id.* at 22 (citing, e.g., ████████████████

████████ Meta also provided information that describes ████████████

████████████████████ as well as information regarding that migration process, including when it occurred and what it entailed. *See id.* at 15, 16, 17, 20 (citing, e.g., ████████████████████████████████

████████████████ Cade Metz, *How Facebook Moved 20 Billion Instagram Photos Without You Noticing*, WIRED (June 26, 2014), https://www.wired.com/2014/06/facebook-instagram/; ████████████████████████

████████████████████ Meta further provided information regarding the benefits that Meta believes its infrastructure offers, including the ways in which Meta ████████

7

██████████████████████████████████████████ *See id.* at 15 (citing, ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

The FTC demands even greater detail, but it offers no limiting principle that would enable Meta even to consider such a request. For example, Meta's response shows it has greatly expanded the number of data centers it operates since the Instagram and WhatsApp acquisitions, ████

████████████████████████████████████████████████████████████████████

██████ *ee, e.g., id.* at 22 ██████████████████████████████████████████████

██████ But it would be impossible to describe every action involved in building just a single data center — let alone all improvements made to Meta's entire infrastructure. For example, ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See, e.g.*, Resp. to Rog. 10

at 16 (citing ██████████████████████████████

As another example, Meta provided extensive information regarding the steps it took to help WhatsApp and Instagram develop new features and functionality. *See* Resp. to Rog. 10 at 17-19 (Instagram) (citing, ██████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ Meta also

8

provided information regarding the ███████████████████████████████████

███████████████████████████████████████████. *See, e.g., id.* at 16 (citing

███████████████████████████████████████████████████████████

████████████████████ The development of new features and functionality for Instagram and WhatsApp involved thousands of engineers and other personnel — all in addition to the thousands of Meta engineers that support the common infrastructure on which Instagram and WhatsApp run, and which has enabled the Instagram and WhatsApp engineers to focus on their apps. *See, e.g., id.* at 15 (citing ██████████████████████████ It is not possible to reduce the past decade of work of these massive teams of engineers and other personnel to itemized lists of individual actions that resulted in feature improvements. There have been thousands of cumulative improvements (big and small), each of which involves many interrelated actions, including proposals to make an improvement, a decision to make it, and the technical steps to implement, test, deploy, and monitor it. The FTC does not show that such detail can be obtained or is necessary for its case.

The FTC's Motion instead (at 6) uses two "illustrative" examples that purport to "elucidate the deficiencies" in Meta's response; neither withstands scrutiny. First, with respect to the "integrity-related benefits for Instagram," the FTC claims (at 6) that Meta does not provide "supporting information or evidence for Meta having delivered any supposed benefits." The FTC acknowledges (at 6-7) that Meta's response in fact "refers to 27 documents, four websites, and six depositions," but claims "those materials do not clearly describe integrity benefits or Meta's methods of achieving them." But even a cursory review of these materials proves otherwise. For example, these materials describe, among other things, ████████████████████████████

██████████████████████████████████████████████████████████, *see*

9

Resp. to Rog. 10 at 16-17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ They further describe how, after the acquisition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ id. at 17 (citing, e.g., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The FTC ignores all of this and instead faults Meta (at 7) for failing to provide "details of what tools or methods Meta was using" to show "if the claimed benefits were achievable absent the acquisition." But Meta is required to provide information only about what it actually did, not about what hypothetically could have occurred absent the transactions. *See Unicolors, Inc. v. Kohl's Dep't Stores, Inc.*, 2018 WL 5274584, at *2 (C.D. Cal. Mar. 6, 2018) (denying motion to compel responses to interrogatories asking party "to speculate as to what 'would have happened or been done'" years earlier); *In re Terazosin Hydrochloride Antitrust Litig.*, 2002 WL 31761289, at *1 (S.D. Fla. Mar. 1, 2002) (denying motion to compel regarding interrogatories that "seek

speculative responses"). Regardless, as described below, this hypothetical inquiry is properly the subject of expert testimony.

The FTC's discussion of the "infrastructure-related benefits for WhatsApp" likewise fails to identify any deficiency in Meta's response. Here, the FTC acknowledges that Meta's response cited 32 documents and two depositions, but baldly claims (at 9) the FTC is "left in the dark about what specific infrastructure resources or actions Meta claims to have brought to bear to improve WhatsApp — a critical piece of information assessing (among other things) if the benefits were achievable without the acquisition." But as noted above, after Meta acquired WhatsApp, ███████████████████████████████████████████████████████████████████████████████ *See* Rog. 10 Resp. at 20-21 (citing, e.g., ███████████████████████████████████████████████████████████████████████████████ Meta's response also detailed the shortcomings of ███████████████████████████████████████████████████████, and many other details. *See* Rog. 10 Resp. at 20-21 (citing, e.g., ███████████████████████████████████████████████████████

11

o███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ Meta also ███████████████████████

███████████████████████████████████████████

█████████ *See id.* at 26-28. The FTC faults Meta (at 10) for not "addressing whether the synergies, efficiencies, and focus on enhancing the customer experience are benefits that could have been achieved absent the WhatsApp acquisition." But as described below, this hypothetical inquiry is the proper subject of expert testimony.

    2.    **Interrogatory 11**

The Court should likewise deny the motion with respect to the FTC's Interrogatory No. 11, which demands that Meta "detail the specific methods, tools, or actions taken to manage or address Integrity" across its entire family of apps since 2009. The FTC has refused to narrow this Interrogatory, and has failed to demonstrate the need for 14 years of highly granular information covering a wide range of disparate enforcement efforts.

Meta cannot identify and describe in detail each discrete "action" the company has taken, from 2009 to the present, to "manage or address Integrity." This request encompasses the efforts of thousands of employees spread across nearly 14 years. Meta nevertheless provided the FTC with detailed information about its Integrity efforts in response to Interrogatory No. 10, which cited 27 documents, portions of seven depositions, and four publicly available documents regarding Meta's integrity efforts for Instagram. *See* Resp. to Rog. 10 at 16-17 (Instagram) (citing, *e.g.*, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

12

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ 21

(WhatsApp) (citing, e.g., ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████  The FTC is simply wrong when it claims (at 7) that these materials "do not clearly describe integrity benefits or Meta's methods of achieving them."

Indeed, much of the information the FTC complains it (allegedly) lacks is already publicly available. During the parties' meet and confer on March 9, Meta reminded the FTC that Meta maintains a publicly available Integrity Timeline that provides, from 2016 to the present, "a comprehensive list of [Meta's] public announcements regarding integrity." *Integrity Timeline*, Meta, https://transparency.fb.com/policies/improving/timeline (last accessed April 11, 2023). The Timeline contains more than 500 detailed posts (examples of which are included as attached Exs. C, D, E) about "product improvements, policy expansions, external engagement, and transparency reports." *Id.* The FTC cannot credibly claim that Meta has withheld information when it effectively ignores the relevant documents Meta has identified. And here, too, the FTC has availed itself of numerous opportunities to ask witnesses about the specific Integrity improvements Meta made to Instagram and WhatsApp.

To be sure, in the Joint Status Report, the FTC represented that it "only sought a high-level understanding of Meta's programs" used to address Objectionable Content. Joint Status Report (Mar. 16, 2023), ECF No. 258, at 9. Yet in its briefing on this issue (at 14), the FTC reversed course, and complained that Meta's responses to Interrogatories 5 and 6 were insufficient to respond to Interrogatory No. 11 because they "nowhere describe the specific methods, tools, or actions taken by Meta to manage or address integrity on the Facebook Family of Apps during the

13

relevant period." If the FTC actually seeks only a "high-level understanding," then it already has that information; if the FTC instead wants Meta to identify all "the specific methods, tools, or actions taken by Meta to manage or address integrity," that would be impossible.

In sum, Interrogatory No. 11 is facially overbroad and unreasonable; this Court should not force Meta to accede to the FTC's improper request for impossibly granular information, which imposes a burden that is grossly disproportionate to any potential benefit.

3. **Interrogatory 12**

Interrogatory 12 seeks information that does not exist: it demands that Meta "identify, describe in detail, and state the basis for, the monetary, technological, or personnel resources the Company contends contributed, either separately or collectively, to the improvements referenced in the Company's denial of the FTC's Requests for Admission Number 4 through 10," including "infrastructure," "Integrity," "feature" and "monetization" improvements. But Meta objected to the RFAs because they were vague and ambiguous and denied them for the same reason; there were no "improvements referenced" in Meta's response. Because the FTC apparently propounded this Interrogatory to again seek information about the improvements it asked for in Interrogatory No. 10, Meta's response to Interrogatory No. 12 cross-referenced its responses to No. 10, in a good faith attempt to provide the FTC the information sought. The FTC should not be permitted to get around its overbroad and burdensome Interrogatory No. 10 through the back door of faulty RFAs.

C. **Interrogatories 10-12 Prematurely Call for Expert and Third-Party Discovery**

The FTC's interrogatories further demand that Meta independently quantify the value of each action Meta has taken to improve both apps. Meta's responses provided ordinary-course documents in which it has, from time to time, quantified the benefits of certain steps it has taken to improve Instagram and WhatsApp. For example, some of the cited materials show how Meta

███████████████████████████████████████████████████████████████

███████████████████████████████████████ *See* Resp. to Rog. 10 at 16 (citing, █████████

███████████████████████████████████████████████████████████████

█████████████████████████████ But Meta has not performed this analysis for every action it has taken on behalf of Instagram and WhatsApp, nor would it be plausible to do so, particularly given their vast scope and scale and the time that has passed since many of them were taken. Further, the information that the FTC repeatedly claims is lacking — detail to show what would have happened "absent" the transactions — is within the purview of expert testimony. The requests therefore fail for the additional reason that they are premature. *Cf. In re: EpiPen Direct Purchaser Litig.*, 2023 WL 2675134, at *11 (D. Minn. Mar. 29, 2023) (in antitrust case, refusing to compel response to a contention interrogatory about the but-for world before expert discovery; response deferred until the end of expert discovery).

The FTC's motion implies that Instagram and WhatsApp could have turned to third-party cloud infrastructure or integrity-system providers to replace the benefits they have enjoyed from being integrated into Meta's infrastructure and ██████████. To the extent the FTC attempts to show that the benefits Meta has actually achieved for Instagram and WhatsApp likely could have been achieved absent the transaction through other means, Meta will submit expert testimony to address that hypothetical showing. But to do that, Meta must see *both* the expert testimony the FTC submits on this issue, and the third-party discovery regarding the capabilities and offerings outside of Meta — information that Meta does not have and cannot obtain in the ordinary course. The FTC's demand that Meta provide by interrogatory responses a sketch of its expert's answers to a rebuttal case it has not yet made is improper.

## CONCLUSION

The Court should deny the FTC's motion.

15

Dated:  April 11, 2023

Respectfully submitted,

s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Kevin J. Miller (D.C. Bar No. 478154)
Kenneth M. Fetterman (D.C. Bar No. 474220)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
mhansen@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
kfetterman@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*