# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

  v.

META PLATFORMS, INC.

Defendant.

Civil Action No. 1:20-cv-03590-JEB

**Plaintiff Federal Trade Commission's Reply in Support of Motion to Compel**
**Answers to Interrogatories Nos. 10-12**

**Table of Contents**

I. Interrogatory No. 10 Requests Highly Relevant Information That Is Not Unduly Burdensome ....................................................................................................... 1

  A. Meta's Responses are Incomplete and Supplementation is Not "Impossible" ....... 2

  B. Meta's Other Arguments Are Similarly Unavailing ............................................... 5

  C. Meta Must Define the Universe of Its Claimed Benefits ....................................... 8

II. Meta's Refusal to Respond to Interrogatory No. 11 is Inappropriate ................................ 9

III. Meta Should Provide a Definitive Response to Interrogatory No. 12 ............................. 10

CONCLUSION ..................................................................................................................... 10

## Table of Authorities

**Cases**

*Deere v. Am. Water Works Co.*, 306 F.R.D. 208 (S.D. Ind. 2015) .................................................. 9

*Richardson v. Sugg*, 220 F.R.D. 343 (E.D. Ark. 2004) .................................................... 5

*US v. TailWind Sports Corp.*, 317 F.R.D. 592 (D.D.C. 2016)........................................................ 6, 7

**Other Authorities**

Fed. R. Civ. P. 26(d)(3)(A) ............................................................................................................ 5

Meta's opposition to the FTC's motion to compel attacks a strawman:  the FTC's purported demand for an itemized list of every individual action taken to deliver Meta's alleged procompetitive benefits after acquiring Instagram and WhatsApp.  Meta's Opp. to Mot. to Compel ("Opp. Br.") at 1, 5, 8, 12, ECF No. 272-1.  As the FTC has explained, Interrogatories No. 10-12 ("Interrogatories") seek no such list.  Rather, the FTC merely seeks sufficient information to understand Meta's own contentions and the facts supporting them.  While an itemized daily list is not necessary, the FTC does need more than conclusions and a "high-level" assertion that a particular benefit occurred.

To fully answer these Interrogatories, Meta needs to explain (and provide the factual basis for):  first, the nature and extent of the claimed benefit; second, what changes, means, and methods Meta deployed to achieve the alleged benefit (programmatically, not as to individual daily actions); third, how it measured the extent of the purported improvement; and finally, whether it contemplated the purported benefits before acquiring Instagram and WhatsApp.  As the Instructions to the FTC's Interrogatories make clear, Meta should provide the foregoing explanations, and "any related facts."  FTC's Third Set of Interrogs., at 9 (Jan. 30, 2023) (Instruction 12) (Ex. A).  Providing this information is not impossible, premature, disproportionate, or irrelevant.  Meta injected its affirmative defenses and procompetitive benefit claims into this litigation, and Meta should speak clearly now regarding what it is contending and the factual bases of its contentions.

I.      **Interrogatory No. 10 Requests Highly Relevant Information That Is Not Unduly Burdensome**

Interrogatory No. 10 requests information relevant to Meta's contentions and the factual basis supporting those contentions for Meta's Fourth and Fifth Affirmative Defenses that claim "procompetitive justifications" for the Instagram and WhatsApp acquisitions.  Meta's Answer at

38, ECF No. 94.  Meta's deficient response to Interrogatory No. 10 fails to provide sufficient

information to understand what changes Meta is alleging resulted in the claimed benefits; fails to

define the universe of claims it is asserting; and fails to state its position or evidentiary support

for other aspects of the interrogatory entirely.  Now, in its opposition, Meta attempts to obstruct

having to cure its deficiencies by distorting the scope and intent of Interrogatory No. 10 and

claiming a supplemental response would be impossible.  Opp. Br. at 8.

> **A.      Meta's Responses are Incomplete and Supplementation is Not "Impossible"**

Meta argues that the FTC "demands a detailed account of literally every 'specific action'

Meta has ever taken to improve Instagram and WhatsApp over the past 10 years[.]"  Opp. Br. at

1.  As the FTC has explained to Meta previously, Interrogatory No. 10 does not request daily

details.  *See* Ltr. from S. Musser to G. Block, at 2 (Mar. 7, 2023) (Ex. B).  Rather, Interrogatory

10 simply asks Meta to go beyond merely providing high level assertions that a procompetitive

benefit occurred and provide details necessary to understand the basis for Meta's claims.

Currently, however, Meta has only identified ad hoc actions or changes it implemented with

respect to various aspects of Instagram's and WhatsApp's businesses (e.g., infrastructure,

integrity), paired with an assertion that the changes delivered "improvements."

Meta's treatment of its Instagram integrity benefits is illustrative:  Meta's response to

Interrogatory No. 10 asserts in a conclusionary fashion that ███████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████   Meta's Objs. & Resps. to FTC's Third Set of

Interrogs., at 12 (Mar. 1, 2023) (Ex. C); Meta's Resps. to Interrog. 6, at 6 (Sept. 22, 2022) (Ex.

D).  Meta provides no additional detail relating to these systems other than a string of citations,

including documents that reference certain Meta ████████████████████████████████

*See* Ex. C at 16-17; Meta's Objs. & Resps to FTC's First Set of Interrogs., at 29, 36 (June 27, 2022) (Ex. E).

These responses, however, even inclusive of the cited documents, do not provide the following information necessary to understand the contours of Meta's Instagram integrity claims:

- A *complete* list of integrity systems, tools, and approaches (at least at a programmatic level) Meta is claiming to have used to manage integrity issues and achieve integrity-related procompetitive benefits on Instagram since the acquisition (10(a));

- What means, methods, technologies, or knowhow (at least at a programmatic level) Meta's integrity systems, tools, and approaches ██████████████ have used to address integrity issues on Instagram since the acquisition (10(a));

- When Meta deployed each Meta integrity system, tool, and approach (and any underlying means, methods, technologies, or knowhow) on Instagram, including when a particular system, tool, or approach was fully deployed or customized to Instagram, and the resources used to do so (10(a), 10(d));

- What type of integrity issue(s) Meta is claiming to have used each integrity system, tool, and approach to address, given that "integrity" is a broad and multifaceted concept (e.g., spam, fraud, harassment, fake accounts) (10, 10(b));

- What measure(s) or metric(s) Meta is claiming represent integrity "improvements" (e.g., rate of spam that reaches users), and whether Meta has any ordinary course evidence that reports on such measures year-over-year since the acquisition, or before and after deployment of the strategies it describes above (10(b));

- Whether Meta is claiming that its integrity systems, tools, and approaches differed from what Instagram was previously doing, and if so, how (10(c));

3

- Whether Meta is claiming that the means, methods, technologies, or knowhow that it has deployed in its integrity systems, tools, and approaches are better than what other online services use or that third-party integrity resources provide, and if so, *the factual basis* for that contention (10(c));

- Whether Meta is claiming that it contemplated any claimed integrity benefits prior to its Board approving the Instagram acquisition, and any evidentiary support Meta has for that contention (10(e))[1]; and

- All the foregoing information for any other approaches (at least at a programmatic level) Meta is claiming to have used to achieve integrity-related benefits on Instagram since the acquisition.

The foregoing information—requested in narrative form with any supporting factual evidence—is highly relevant.  The details on how Meta achieved the purported integrity benefits (first three bullets), and any factual basis for claiming that its methods are better than others (bullets six and seven), are relevant to assessing whether Meta owning Instagram was "necessary to achieve" any purported integrity benefits.  *Cf.* FTC's Mem. In Supp. of Mot. to Compel ("Mot.") at 4-5, ECF No. 267.  Details on the type of integrity improvements Meta is claiming to have delivered, and any ordinary course record of changed integrity outcomes (bullets four and five), are relevant to assessing whether Meta actually delivered integrity-related benefits—because simply changing systems does not necessarily produce better outcomes.  *See id.* at 4.

---

[1] Meta's response to Interrogatory 10(e) directs the FTC to its response to Interrogatory 5.  Ex. C at 32-33.  But Meta's response to Interrogatory 5 does not clearly state whether ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Meta's Resp. to Interrog. 5, at 13 (Nov. 30, 2022) (Ex. F).  Additionally, Meta's response provides no support for any assertion that ████ ██████████████████████████████████ *See id.* at 13.

Finally, whether Meta contemplated integrity benefits prior to the acquisition (eighth bullet) is relevant to assessing whether this benefit claim is pretextual.  *See id.*

Further, Meta *should* be able to provide the foregoing information for its Instagram integrity claim—and each of its other alleged procompetitive benefit claims—and where underlying factual support does not exist, to state so.  Providing the foregoing information does not entail providing "impossibl[y]" detailed lists of "thousands" of daily actions.  Opp. Br. at 3, 9.  Moreover, Meta should know—and be able to clearly state—what it is contending regarding the foregoing points, because Meta is responsible for its affirmative defenses in this litigation. Meta should also be able to describe the factual bases for its assertions, given that the vast majority of the points above relate to describing what Meta is claiming to have done or achieved (information that is factual and in its exclusive possession).

**B.      Meta's Other Arguments Are Similarly Unavailing**

First, Meta suggests that the FTC could get this information through depositions of Meta personnel.  Opp. Br. at 13.  This is wrong, and backwards.  In the first instance, Meta does not get to dictate its preferred form of discovery.  Fed. R. Civ. P. 26(d)(3)(A) ("[M]ethods of discovery may be used in any sequence."); *Richardson v. Sugg*, 220 F.R.D. 343, 348 (E.D. Ark. 2004) ("Ordinarily, a party is free is choose its method of discovery.").  Moreover, the FTC's interrogatory request is not cumulative of other discovery that the FTC has sought in this litigation.  Interrogatory 10 justifiably asks Meta *as a company and defendant in this litigation* to articulate what it is claiming in its affirmative defenses, and its underlying factual bases for those claims.  That information necessarily cannot be furnished through depositions of an individual employee.  Indeed, the FTC should have had the benefit of deposing individual employees responsible for these broad operational areas knowing in advance what Meta was claiming in its affirmative defenses.  In any event, in addition to not speaking for the company as to its

contentions in this litigation, the deponents each lacked material information related to Meta's

operations within each broad category of claimed benefit.  *See, e.g.*, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

Second, Meta suggests that its string citation of documents in Interrogatory 10 is

sufficient.  Opp. Br. at 8, 13.  More generally, Meta seems to suggest that the FTC is supposed to

find the requested information by parsing through Meta's document and data productions.  *Id.* at

4 (claiming, without citation, that Meta provided "information and data regarding various ways

to measure [] improvements").  This, too, is an inadequate response to the interrogatory.  As

detailed above for the Instagram integrity claim, the ad hoc sets of documents cited in

Interrogatory 10 do not provide the omitted information described above.  Additionally, a list of

documents is an insufficient response to a contention interrogatory.  *See US v. TailWind Sports*

*Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016) (holding that document citations "cannot be used with

respect to contention interrogatories" because "documents normally reveal evidence, not a

party's contentions").  Here, the FTC asks for Meta's contentions related to any claimed

procompetitive benefits, and Meta should state in a narrative its contentions and its factual bases.

A list of documents in response to an interrogatory is appropriate when an interrogatory involves

"inquiries of an intensely objective nature," and when the burden of deriving or ascertaining the

answer from the documents will be substantially the same for the moving party as it is for the

producing party. *Id.* at 594. Interrogatory 10 is not an intensely objective inquiry, as it asks

Meta what *it* contends are the acquisitions' procompetitive benefits, and the FTC is unable to

review documents to understand what Meta contends its procompetitive benefits are or what

facts it believes support those benefits.

Third, Meta suggests that providing the requested information is "premature" or calls for

"expert" opinions. Opp. Br. at 2, 6, 10-11, 14. The interrogatories do not request expert analysis

"qualify[ing] the benefits" or answering a "hypothetical" question of what could have occurred

without Meta's acquisitions. *Id.* at 2, 11. Rather, the FTC seeks the *factual* bases of Meta's

contentions in its possession or control. Using integrity as an example, factual information

regarding the nature and magnitude of the claimed benefits would include a statement of what

"improvement" Meta is claiming to have delivered (e.g., reduced user exposure to spam), and

any ordinary course evidence tracking the "before" and "after" performance of such a measure.

Similarly, for assessing whether the acquisitions were necessary for achieving the

claimed benefits, a further factual response could include a statement of whether Meta, not an

expert, is contending the integrity benefits were not achievable without the acquisition, and the

factual basis of that assertion; and whether Meta is claiming that its approaches to integrity are

better than other online services or third-party providers, and its factual basis for that assertion

(including any ordinary course evidence to that effect). It would also entail Meta proffering

details on the programmatic means and methods it has deployed to address integrity issues on

Instagram, which an independent party (including the Court and the FTC) could use to evaluate

whether the purported benefits could be achieved without Meta's acquisition. Meta concedes

that it is required to provide information "about what it actually did," Opp. Br. at 10, but has

failed to provide the necessary programmatic details.

Finally, Meta incongruously claims that providing the requested information is premature because the FTC must effectively "speak first" regarding aspects of Meta's claims.  *See* Opp. Br. at 2 (stating that "if the FTC claims that Instagram and WhatsApp could have achieved the same benefits using third party cloud infrastructure or integrity providers instead of Meta, experts would need to evaluate that claim with information about those third parties, which is outside Meta's possession or control"); *see also id.* at 15.  Meta's framing is exactly backwards.  Meta bears the burden of substantiating its affirmative defenses, and the FTC (and any Section 2 plaintiff) cannot respond to or rebut a claim that has not been fleshed out in the first instance.

### C.    Meta Must Define the Universe of Its Claimed Benefits

In addition to omitting key detail, Meta's response is additionally problematic in that Meta steadfastly refuses to define the universe of claimed benefits, and instead continues to broadly reference "innumerable benefits" and to suggest that it may appear with more details or even claims later.  *See* Opp. Br. at 6 (stating that benefits "will be discussed both during expert discovery . . . and in ongoing depositions").  For example, it is unclear what, if any, integrity-related procompetitive benefits Meta is claiming with respect to the WhatsApp acquisition.



Meta's Resp. & Obj. to FTC's Request for Admission No. 1, at 4 (Jan. 17, 2023) (Ex. I).  In turn, Meta then included some citations to

Ex. C at 13, 21.

The FTC is not playing "gotcha" in requesting that Meta certify the completeness of its responses, *see* Opp. Br. at 5-6, but justifiably asks that Meta define the scope of the claimed procompetitive benefits that will form the basis of its defenses in this litigation—rather than

suggesting it may show up with expert reports, or at summary judgment or trial, with additional claims or underlying factual support after having failed to disclose such information in its interrogatory responses.  That would be prejudicial to the FTC and may cause additional and further evidentiary disputes.  *See Deere v. Am. Water Works Co.*, 306 F.R.D. 208, 220 (S.D. Ind. 2015) ("[T]he interrogatory at issue will help narrow the issues in this litigation by establishing which of many potential theories Defendant may assert to try to avoid liability.").  Meta has been alleging these procompetitive benefits for more than a year; by now it should know what it is claiming, and its factual bases, and it should have to disclose them.

## II.     Meta's Refusal to Respond to Interrogatory No. 11 is Inappropriate

Meta's refusal to respond to Interrogatory 11 is inappropriate.  Contrary to Meta's assertion, ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Understanding the means and methods that Meta has used to manage integrity issues on its apps is relevant given Meta's assertion that it has ██████████████████████████

███████████████████████████████████████████████████

████████████████     *See supra* § I.A; Ex. D at 6.  Given that contention, the FTC justifiably seeks to understand the overall integrity programs and systems Meta is deploying on its apps, to assess whether Meta has any approaches, technologies, or knowhow that are not available elsewhere.  The public timeline that Meta points to, Opp. Br. at 13, starts only in 2016 and is largely irrelevant.  While most of the timeline's blog posts relate to irrelevant topics (e.g., data portability, hacking, face recognition), even the integrity-related topics do not describe Meta's means and methods of managing integrity issues, or address approaches on each application.

### III.    Meta Should Provide a Definitive Response to Interrogatory No. 12

Despite meeting and conferring, and corresponding with Meta about Interrogatory No. 12, Meta now insists that it is unable to respond due to the purported vagueness and ambiguity of the related RFAs rather than on the substance of the interrogatory related to the resources it used to achieve the claimed benefits.  Opp. Br. at 14.

Whether responsive to Interrogatory No. 10 or 12, Meta could have, and should have, provided additional responsive information regarding the resources it has used to achieve its claimed benefits, as appropriate to the claim or category of claim.  For example, for the integrity claims, Meta should have provided, *inter alia*, the number of engineers working on integrity issues for Instagram, WhatsApp, and Facebook Blue year-over-year; a description of any technologies or knowhow Meta is claiming to have brought to bear to achieve integrity benefits on Instagram (or WhatsApp); and the factual basis for any assertion that such technologies or knowhow are unique to Meta.  This information is relevant because of Meta's suggestion that ▮

████████████████████████████████████████████████████████████████

███████████████████████████████████      Ex. C at 12.

Similarly, for the infrastructure claims, Meta should have provided the number and types of servers (including specifications), network capacity, and data center capacity allocated to Instagram, and the costs to support Instagram on Meta's common infrastructure, year-over-year.  *See generally* █████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████      Ex. F at 9; Ex. D at 4.

### CONCLUSION

For the reasons above, FTC's motion to compel should be granted.

Dated: April 17, 2023

Respectfully submitted,

/s/ Daniel Matheson
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Susan Musser (D.C. Bar 1531486)
June Im (D.C. Bar 477297)
David Owyang
Jessica Moy
Nathan Brenner
Maria DiMoscato (D.C. Bar 489743)
Patricia Galvan

Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of April 2023, I served the foregoing on the following counsel via ECF:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M. Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue

New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com


                                        /s/ Daniel Matheson
                                        Daniel Matheson (D.C. Bar 502490)
                                        Federal Trade Commission
                                        Bureau of Competition
                                        400 Seventh Street, S.W.
                                        Washington, DC 20024
                                        Telephone: (202) 326-2075
                                        Email: dmatheson@ftc.gov

                                        *Attorney for Plaintiff*
                                        *Federal Trade Commission*