IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

　　　　Plaintiff,

　　　　v.

META PLATFORMS, INC.,

　　　　Defendant.

Case No. 1:20-cv-03590-JEB

**META PLATFORMS, INC.'S BRIEF IN OPPOSITION TO THE FTC'S
INFORMAL DEMAND FOR A REFRESH OF META'S FIRST RFP PRODUCTIONS
AND FTC REQUEST FOR PRODUCTION 105**

## INTRODUCTION

The Court should deny the FTC's meritless demands that Meta (1) "refresh" its productions responsive to the FTC's First Set of Requests for Production of Documents ("First RFPs") with documents created after the June 30, 2022, cutoff date to which the parties agreed for those RFPs; and (2) produce documents responsive to FTC RFP 105 (from the FTC's Seventh Set of RFPs), which would require Meta to search the entire company for documents "relating" to a 2016 post deleted years ago.

## ARGUMENT

**I.      The FTC's Informal Demand for a "Refresh" of First RFP Productions Is Improper**

On April 5, the FTC sent a letter demanding for the first time that Meta "refresh" its First RFP productions with documents created after the June 30, 2022, cutoff date to which the parties agreed. The FTC insisted that Meta urgently produce, by May 1, an additional nine months of documents (June 30, 2022 – April 1, 2023) from 11 custodians using both a subset of 32 original search strings, with modifications proposed by the FTC, and a list of supplemental search terms not used before. The FTC also demanded a hodgepodge of non-custodial "go-get" documents for the same time period and the production of a privilege log by June 15 (after the close of fact discovery). After four years of discovery in its investigation and this litigation, the FTC already has approximately 5.4 million documents comprising nearly 25 million Bates numbers from over 100 custodians, hundreds of gigabytes of data, and over 400 hours (and counting) of testimony from more than 65 depositions and IHs of Meta current and former employees. The Court should reject the FTC's "refresh" demand for the following reasons:

*First*, it violates the parties' agreement to use June 30, 2022, as the First RFP cutoff date – a date on which Meta relied. The FTC had originally sought a wide swath of documents

through "the present," Meta objected, and in May 2022, the parties agreed to the FTC's proposal that Meta collect documents into the future, through June 30, 2022. *See, e.g.*, Ex. A at 2 (Ltr. from D. Matheson (May 24, 2022)) ("[W]e have proposed (and you agreed) to an end date for collection of June 30, 2022."). Meta needed certainty that the sweeping First RFPs would not require Meta to repeatedly search for and collect additional documents during fact discovery. Meta thus agreed to the FTC's proposed June 30, 2022, cutoff date so that it could plan for and execute on the extremely costly and time-consuming process of collecting, reviewing, and producing multiple millions of documents. *See, e.g.*, Meta Resp. to Order to Show Cause at 3 (Aug. 5, 2022), ECF No. 168 (briefing the appropriate First RFP substantial completion deadline, and explaining that because of the June 30, 2022, cutoff date, Meta was "still collecting and processing documents" to be reviewed). The FTC now unfairly casts aside Meta's settled expectations and demands that Meta redo its prior collections to find documents created after June 30, 2022. If the FTC expected production of additional documents pursuant to its First RFPs, it should have mentioned that nearly a year ago when the parties concluded negotiations about the scope of the RFPs, or in any of the 6 joint status reports submitted since. *See Widevine Techs., Inc. v. Verimatrix, Inc.*, 2009 WL 4884397, at *2 (E.D. Tex. Dec. 10, 2009) (holding that a party "was entitled to rely" on an agreed cutoff date and that it would thus be "unfair" to require it to "duplicate its previous effort").

*Second*, the FTC's informal demand that Meta review what is likely to be tens of thousands of documents postdating June 30, 2022 – at lightning speed for production before May 22 – is unreasonable standing alone. But it does not stand alone: Between April 3 and 7, the FTC flooded Meta with extensive additional formal discovery requests including 18 requests for production of documents (not including subparts), 10 interrogatories (not including subparts), 22

requests for admission, and 2 new Rule 30(b)(6) deposition notices, including one which seeks answers to more than 100 granular questions, many with multiple subparts, about the hundreds of gigabytes of data Meta has already produced. Moreover, the FTC has insisted that Meta continue to produce substantial volumes of additional data in response to its Second Set of RFPs, and party and nonparty depositions are ongoing. With just a month of fact discovery left, Meta should not be forced to also bear the immense burden of additional collection, review, and production of even more First RFP documents because of the FTC's informal refresh request.

*Third*, the FTC's request is disproportionate to the needs of the case. The FTC has never explained why it needs Meta to undertake the significant burden of finding and producing documents created after June 30, 2022, in addition to the extraordinary amount of discovery it already has. The FTC has deposed eight of the eleven custodians listed in its proposed "refresh," and the other three will be deposed very soon, long before Meta could possibly finish collecting, reviewing, and producing additional documents for them. Moreover, when the FTC has wanted specific information created after June 30, 2022, the FTC issued RFPs and negotiated them with Meta to obtain that specific information. *See, e.g.*, Ex. B at 2 (Ltr. from S. Strikis (Feb. 14, 2023)) (agreeing to provide certain survey documents requested in the FTC's Sixth Set of RFPs through February 10, 2023); Ex. C at 3, 4, 7, 8, 14 (Ltr. from L. Smith (Mar. 31, 2023)) (providing certain data into 2023, requested by the FTC in its Second Set of RFPs). Meta also told the FTC during an April 17 meet-and-confer that to resolve the FTC's demand, Meta would be willing to provide a discrete category of documents, which the FTC itself requested in its "refresh" letter demand, that provide updates for the CEO regarding Meta's business since June 2022. The FTC, rather than engaging with Meta's proposal, rejected it out of hand and declared impasse just a few hours later. In light of the information that the FTC has through its own

discovery requests and that Meta has offered, the FTC has no basis to complain that Meta might produce documents created after June 30, 2022, that Meta intends to use for its own defense. In fact, that is exactly what the FTC asked for in its Third Set of RFPs requesting "All Documents" dated through the "present" that "Meta intends to or may use at trial or in any hearing in this Action." See Ex. D (FTC's Third Set of RFPs, at RFP 87 and Instruction I3).

For all of these reasons, the Court should reject the FTC's demand to obtain a "refresh" of First RFP documents past the agreed June 30, 2022, cutoff date.

**II.     The Court Should Deny the FTC's Request Regarding RFP 105**

The Court should also reject the FTC's request that Meta further respond to the FTC's RFP 105 (from the FTC's Seventh Set of RFPs), which demands "[a]ll documents relating to the 2016 'ugly truth' memo" including "any earlier drafts or underlying analyses, any reactions to the memo, or any other communications relating to the memo." The "memo," a 2016 post regarding Facebook's growth by Andrew Bosworth, Meta's current Chief Technology Officer, was the subject of press articles in 2018 and Mr. Bosworth's IH testimony taken in 2020. In that testimony, Mr. Bosworth ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In response to RFP 105, Meta conducted a reasonable search for the post itself, which would have been inclusive of comments, and has confirmed with Mr. Bosworth that the post had been deleted in 2018. See Ex. F at 3 (Ltr. from S. Strikis (Apr. 14, 2023)). It would be unduly burdensome to require Meta to search throughout the entire company (literally thousands of employees) for all documents reflecting "reactions" and "communications" of employees that might "relat[e]" to that now-deleted, irrelevant post. Meta has explained this to the FTC, but the FTC has not agreed to narrow RFP 105 in any respect.

Imposing the extraordinary burden upon Meta to search for "all reactions" and "communications" relating to the post would be inappropriate for a number of additional reasons. *First,* reactions to the post from almost 7 years ago are not germane to anything that this Court will need to determine regarding the FTC's allegations, and forcing Meta to search for them is thus disproportionate. Moreover, Mr. Bosworth's own response to the post has been widely published and confirms the irrelevance of the post to any issue in this case. *See, e.g.*, https://www.bbc.com/news/technology-43594959. The FTC has never explained to Meta why any employee's reaction to an internal post (deleted years ago) has any bearing on this case, and yet it declared impasse without meaningfully responding to Meta's request to meet and confer to determine what reasonably identifiable information the FTC seeks. *Compare* Ex. F at 4 (Ltr. from S. Strikis (Apr. 14, 2023) ("Meta requests a meet and confer to determine what more the FTC believes it is reasonably entitled to in response to this Request . . . .")), *with* Ex. G at 2 (Email from N. Brenner (Apr. 17, 2023) (ignoring Meta's request for a meet and confer and declaring "the parties are at impasse")).

*Second*, the FTC obtained the information it seeks by questioning Mr. Bosworth about the post, and whether he recalls any reactions to it, during his deposition that took place today. Requiring Meta to in addition undertake an extremely broad search for random reactions to the post would not provide the FTC with any additional relevant information and would be disproportionate to the needs of the case.

## CONCLUSION

For the reasons given above, the Court should deny the FTC's demands that Meta (1) produce documents in response to the FTC's First RFPs after June 30, 2022, in contravention of the parties' agreement; and (2) produce documents in response to FTC RFP 105.

Dated:  April 21, 2023

Respectfully submitted,

/s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Kenneth M. Fetterman (D.C. Bar No. 474220)
Silvija A. Strikis (D.C. Bar No. 470805)
Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
mhansen@kellogghansen.com
gklineberg@kellogghansen.com
kfetterman@kellogghansen.com
sstrikis@kellogghansen.com
apolavarapu@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023 I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

 /s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*