# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**FEDERAL TRADE COMMISSION**,

Plaintiff,

v.

**META PLATFORMS, INC.**,

Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

---

**PLAINTIFF FEDERAL TRADE COMMISSION'S THIRD SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT META PLATFORMS, INC.**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Federal Trade
Commission ("FTC") requests that Defendant Meta Platforms, Inc. ("Meta") produce the documents
requested in this Third Set of Requests for Production ("Requests") for inspection, examination, and
production. The documents requested herein should be sent to Daniel J. Matheson, Federal Trade
Commission, 600 Pennsylvania Avenue, NW, Washington, DC 20580, or to another designee that
shall be mutually agreed upon between counsel for Meta and the FTC. The production of
documents shall be in accordance with the Instructions and Definitions set forth below, Federal Rule
of Civil Procedure 34, and the provisions of the Case Management Order and any other relevant
orders governing the production of documents and electronic information the Court shall enter in the
above-captioned action. The Requests are continuing in nature and shall be supplemented in
accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**REQUESTS**

84.   All Documents (including, but not limited to, Communications) created, reviewed, or
      obtained by Meta relating to this Action, the State Action, the Prior Instagram Investigation,
      the Prior WhatsApp Review, the Pre-Complaint Investigation, Meta's acquisition of
      Instagram, Meta's acquisition of WhatsApp, Meta's acquisition of any other Person, any
      defense, objection, or allegation in Meta's Answer, or any defense, objection, or allegation
      the Company has raised in the State Action, the Private Advertiser Action, the Private
      Consumer Action, or any other antitrust action relating to Meta. This request includes, but is
      not limited to, Documents relating to any Communications (whether formal, written, or oral)
      between Meta and any Person.

1

85.     All Documents identified or reviewed in order to respond to any Interrogatory, Request for Admission, or deposition issued pursuant to Federal Rule of Civil Procedure 30(b)(6) from Plaintiff Federal Trade Commission in this Action.

86.     All Documents relied upon by Meta's expert witnesses, including any economic or other analyses, models, data, and reports.

87.     All Documents Meta intends to or may use at trial or in any hearing in this Action.

88.     Documents sufficient to show (a) any compensation paid to any Person to create or post content to Facebook Blue, Instagram, WhatsApp, and Facebook Messenger; and (b) how the Company determined the amount to pay any Person to create or post such content.

89.     Documents sufficient to show (a) any restrictions the Company places on who can advertise on its products or services; and (b) any restrictions the Company faces related to placing advertisements on another Person's products or services.

90.     Documents sufficient to show (a) the types of data and information the Company uses or makes available to advertisers, including, but not limited to, in delivering Custom Audiences, Lookalike Audiences, or campaign performance metrics; and (b) the time periods during which such data and information was made available to advertisers.

91.     Documents sufficient to show:

        a.  the development costs to launch (i) Facebook Watch, (ii) Facebook Stories, (iii) Instagram Stories, (iv) Lasso, and (v) Instagram Reels; and

        b.  to the extent different from subpart(a), the development costs to launch across operating systems (e.g., Android and iOS) (i) Facebook Watch, (ii) Facebook Stories, (iii) Instagram Stories, (iv) Lasso, and (v) Instagram Reels.

92.     Documents sufficient to show:

        a.  since January 1, 2020, any actual, planned, or contemplated use by the Company of any Cloud Services offered by Amazon.com, Inc., Microsoft Corporation, or Alphabet Inc., and the Company's rationale for using or potentially using any such services; and

        b.  since January 1, 2012, each content delivery network or content distribution network operated by any Person other than the Company (including, but not limited to, Akamai Technologies, Inc., Amazon.com, Inc., Cloudflare, Inc., F5 Networks, Inc., and Fastly, Inc.) that the Company has used, currently uses, or has current plans to

2

use for delivering any type of content to users of Facebook Blue, Instagram, or WhatsApp and the Company's rationale for using any such content delivery network or content distribution network.

93.    Documents sufficient to show any product or service, including, but not limited to, Microsoft PhotoDNA, offered by any Person other than the Company that the Company uses or has used to identify or reduce fake accounts, spam, pornography, fraud, misinformation, or disinformation on Facebook Blue, Instagram, WhatsApp, or Facebook Messenger.

## DEFINITIONS

D1.    "Company" or "Meta" means Meta Platforms, Inc. (formerly Facebook, Inc.), its domestic and foreign parents, predecessors, divisions, subsidiaries (including Instagram LLC and WhatsApp LLC), affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial or total ownership or control between the Company and any other Person.

D2.    "Action" means the above-captioned action pending in this Court, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

D3.    "Akamai Technologies, Inc." means Akamai Technologies, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D4.    "Alphabet Inc." means Alphabet Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D5.    "Amazon.com, Inc." means Amazon.com, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures (including, but not limited to, Amazon Video, Twitch Interactive, Amazon Web Services, and Amazon CloudFront); and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D6.    "And" and "or" have both conjunctive and disjunctive meanings as necessary to bring within the scope of these Requests anything that might otherwise be outside its scope.

D7.    "Answer" means Meta's Answer and Defenses to FTC's Substitute First Amended Complaint for Injunctive and Other Equitable Relief filed in this Action by Defendant Meta on January 25, 2022.

D8.    "Cloud Service" means on-demand services provided over the internet, including infrastructure services, such as computing, storage, and networking, and software services, such as databases, caching, and machine learning.

D9.    "Cloudflare, Inc." means Cloudflare, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D10.    "Communication" is used in the broadest possible sense and means any exchange, transfer, or dissemination of information, regardless of the means by which it is accomplished.

D11.  "Discuss" or "discussing" mean, in whole or in part, constituting, containing, describing, or addressing the designated subject matter, regardless of the length of the treatment or detail of analysis of the subject matter, but not merely referring to the designated subject matter without elaboration. In addition, a document that "discusses" another document includes the other document itself (e.g., a document that "discusses" an agreement or contract includes the agreement or contract itself). Further, these terms include any operating or financial data about the designated subject matter where such data are separately set out as in a chart, listing, table, or graph.

D12.  "Document" and "documents" mean any information, on paper or in electronic format, including written, recorded, and graphic materials of every kind, in the possession, custody, or control of the Company. The term "documents" includes, without limitation: computer files; email messages; audio files; instant messages; text messages; messages sent on any enterprise messaging system; any other form of electronic message; drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company. The term "computer files" includes information stored in, or accessible through, computers or other information retrieval systems.  Thus, the Company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, mobile devices, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Company premises.

D13.  "Each," "any," and "all" mean "each and every."

D14.  "F5 Networks, Inc." means F5 Networks, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D15.  "Fastly, Inc." means Fastly, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D16.  "Include" and "including" mean "including, but not limited to."

D17.  "Instagram LLC" means Burbn, Inc., Instagram, Inc., or Instagram LLC, its domestic and foreign predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing; and includes Instagram, Inc., as an independent company and as a subsidiary of Meta.

D18.  "Microsoft Corporation" means Microsoft Corporation, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all

directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing.

D19.  "Person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

D20.  "Plans" means tentative, preliminary, or final proposals, recommendations, or considerations, whether or not authorized or adopted.

D21.  "Pre-Complaint Investigation" means the Federal Trade Commission's investigation conducted in 2019 and 2020 into whether Meta engaged or is engaging in a violation or violations of antitrust laws, including, but not limited to, the investigation or file referred to as FTC File No. 191-0134, and any preinvestigative activity, review, inquiry, information gathering, or collection of Documents Meta engaged in, in relation to Meta's conduct that occurred prior to the commencement of any formal or informal investigation or inquiry in 2019.

D22.  "Private Advertiser Action" refers to the Amended Consolidated Advertiser Class Action captioned *Klein*, *et al. v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD (N.D. Cal.), pending in the Northern District of California, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

D23.  "Private Consumer Action" refers to the Amended Consolidated Consumer Class Action captioned *Klein*, *et al. v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD (N.D. Cal.), pending in the Northern District of California, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

D24.  "Price" or "pricing," includes price, gross price, net price, average price, unit price, effective price, dead net price, rebate, package price, bundled price, discount, credit, charge or chargeback, allowance, debit, or any other payment or receipt of anything of value incurred in whole or in part as a result of the sale or provision of the applicable product.

D25.  "Prior Instagram Investigation" means the Federal Trade Commission's investigation in 2012 to determine whether the proposed acquisition of Instagram by Meta may violate federal antitrust laws, including, but not limited to, the investigation or file referred to as FTC File No. 121-0121, and any pre-investigative activity, review, inquiry, information gathering, or collection of Documents Meta engaged in, in relation to Meta's proposed acquisition of Instagram that occurred prior to the commencement of any formal or informal investigation or inquiry in 2012.

D26.  "Prior WhatsApp Review" means the Federal Trade Commission's review in 2014 of Meta's acquisition of WhatsApp that was reported under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 16 C.F.R. §§ 801-803, including, but not limited to, any investigation, activity, review, inquiry, information gathering, or collection of Documents

Meta engaged in, in relation to Meta's proposed acquisition of WhatsApp that occurred prior to the commencement of any formal or informal review in 2014.

D27.   "Relate," "related to," and "relating to" are used in the broadest possible sense and mean, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting on, discussing, describing, identifying, referring to, reflecting, reporting on, stating, or dealing with.

D28.   The "State Action" means the action filed against Meta, captioned *New York v. Facebook, Inc.*, Case No. 1:20-cv-03589-JEB (D.D.C.), No. 21-7078 (D.C. Cir.).

D29.   "WhatsApp LLC" means WhatsApp LLC or WhatsApp Inc., its domestic and foreign predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, attorneys, consultants, agents, and representatives of the foregoing; and includes WhatsApp LLC as an independent company and as a subsidiary of Meta.

## INSTRUCTIONS

For the purposes of these Requests, the following instructions apply:

I1.     Except as provided below or by agreement of the parties, documents must be produced in accordance with the Stipulation and Order Regarding Discovery Procedure entered in this matter, attached here.

I2.     If the Company previously produced a document in the investigation styled In the Matter of Facebook, FTC File No. 191-0134, the Company need not produce another copy of the document in response to these requests.

I3.     Unless otherwise indicated, these requests cover any and all documents generated, prepared, created, edited, sent, or received during the period from January 1, 2009, to the present.

I4.     Unless otherwise indicated, where a request seeks documents sufficient to show particular information, any response must include documents, where available, sufficient to show relevant information for the entire relevant time period, *i.e.*, from January 1, 2009.

I5.     Unless otherwise indicated, these requests seek documents relating to the Company's business in the United States.  For the avoidance of doubt, documents containing information relating to the Company's global business, or to the Company's business in the United States and in other countries, should be treated as containing information relating to the Company's business in the United States.

I6.     These requests seek documents in actual or constructive possession, custody, or control of the Company, or its representatives, attorneys, or other agents, including without limitation consultants, accountants, lawyers, or any other persons retained, consulted by, or working on behalf of or under the direction of the Company, wherever they may be located.  This includes documents in the Company's possession, custody, or control that were in the possession, custody, or control of Instagram LLC or WhatsApp LLC prior to acquisition by the Company.

I7.     If the Company objects to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object.  Any ground not stated in an objection will be waived.  All objections must be made with particularity and must set forth all the information upon which the Company intends to rely in response to any motion to compel.

I8.     All objections must state with particularity whether and in what manner the objection is being relied upon as a basis for limiting the scope of any search for documents or redacting or withholding any responsive document.  If the Company withholds responsive information pursuant to any general objection, the Company should so expressly indicate.  If, in responding to any request, the Company claims any ambiguity in interpreting either the request or a definition or instruction applicable thereto, set forth

8

as part of the Company's response the language deemed to be ambiguous and the interpretation used in responding to the request, and produce all documents that are responsive to the request as interpreted.

I9.   Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

    a.   The singular form of any word includes the plural, and the plural form includes the singular;

    b.   The past tense of a verb includes the present tense, and the present tense includes the past tense; and

    c.   The term "date" means the exact day, month, and year if ascertainable; if not ascertainable, then "date" means the closest approximation that can be made by means of relationship to other events, locations, or matters.

I10.   Unless otherwise stated, construe each request independently and without reference to any other for the purpose of limitation.

I11.   Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with the FTC. If any document responsive to a particular Specification contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the document.

    a.   The term "Sensitive PII" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

        i.   date of birth

        ii.   driver's license number or other state identification number, or a foreign country equivalent

        iii.   passport number

        iv.   financial account number

        v.   credit or debit card number

    b.   The term "SHI" includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. Sensitive Health Information relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

I12.   Provide an English translation of all non-English documents; submit the foreign language document with the English translation.

I13.   Each production must include a transmittal letter that includes (1) the production date, (2) the Bates range of the materials included in the production, and (3) a brief description of the production, including identification of any relevant custodians.

I14.   Except for information or material subject to a valid claim of privilege, submit the complete, unredacted Document (including all attachments) as kept by the Company in the ordinary course of business.  Where the Company asserts a claim of privilege or other protection from discovery in objecting to any request or sub-part thereof, and withholds (in whole or in part) any document on the basis of such assertion, the Company shall provide a log ("Privilege Log") in accordance with orders of the Court and listing the following: (a) specific grounds for claim of privilege or immunity, (b) type of Document, (c) title or subject line, (d) author(s), (e) date, (f) addressees and recipients of the original Document or any copy thereof (including persons "cc'd" or "blind cc'd"), (g) a description of the subject matter, with sufficient detail to assess the claim of privilege, (h) information sufficient to identify each attachment to the Document, (i) the page length of the document, and (k) for redacted documents, the Bates number.  For each Document withheld under a claim of attorney work-product immunity, the Privilege Log will also list: (l) whether the Document was prepared in anticipation of litigation or for trial, and if so (m) the anticipated litigation or trial upon which the claim is based.  For each person listed, the Privilege Log must include the person's full name, job title, and employer or firm.  Please denote all attorneys with an asterisk ("*").

   a.   If any documents are redacted or withheld on a basis other than privilege, provide the information and reason for redacting or withholding that document.  Plaintiff does not concede the appropriateness of redacting or withholding information on a basis other than privilege and expressly reserves all rights to challenge the redacting or withholding of documents or information.

   b.   Where ESI items need to be redacted, the Company shall produce these materials solely in TIFF format with each redaction clearly indicated.  Any non-privileged metadata fields reasonably available shall be provided.  Documents for which TIFF redactions may be impracticable may be redacted in native format by deleting the data from the document before production.

   c.   If the items redacted and partially withheld from production are audio/visual files, the Company shall, to the extent reasonably practicable, provide the unredacted portions of the content.  If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the Company to produce the unredacted portion of the content.

   d.   All documents containing a redaction must include a metadata field indicating that the document contains a redaction.

I15.   These requests are continuing in nature.  If at a later date the Company identifies additional relevant information, the Company must supplement any responses or document productions promptly as required under the Federal Rules of Civil Procedure.

CERTIFICATE OF SERVICE

   I hereby certify that on July 12, 2022, I served the foregoing on the following counsel via electronic mail:

 Mark C. Hansen
 Kevin B. Huff
 Kenneth M. Fetterman
 Geoffrey M. Klineberg
 Kevin J. Miller
 Aaron M. Panner
 Alex A. Parkinson
 Ana Nikolic Paul
 Aaseesh P. Polavarapu
 Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
 1615 M Street, N.W. Suite 400
 Washington, DC 20036
 Tel: 202-326-7900
 mhansen@kellogghansen.com
 khuff@kellogghansen.com
 kfetterman@kellogghansen.com
 gklineberg@kellogghansen.com
 kmiller@kellogghansen.com
 apanner@kellogghansen.com
 aparkinson@kellogghansen.com
 apaul@kellogghansen.com
 apolavarapu@kellogghansen.com

 Sonal N. Mehta
 Wilmer Cutler Pickering Hale & Dorr LLP
 2600 El Camino Real, Suite 400
 Palo Alto, CA 94306
 Tel: 650-858-6000
 sonal.mehta@wilmerhale.com

 David Gringer
 Wilmer Cutler Pickering Hale & Dorr LLP
 7 World Trade Center
 250 Greenwich Street
 New York, NY 10007
 Tel: 212-230-8800
 david.gringer@wilmerhale.com
 James P. Rouhandeh
 Michael Scheinkman

 Davis Polk & Wardwell LLP
 450 Lexington Avenue

New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

/s/ Daniel Matheson

_____

Daniel Matheson (D.C. Bar 502490)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov
*Attorney for Plaintiff*
*Federal Trade Commission*