UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

       v.

META PLATFORMS, INC.,

    Defendant.

Civil Action No. 20-3590 (JEB)

## MEMORANDUM OPINION

In this antitrust case, the Federal Trade Commission charges that Meta Platforms, Inc. unlawfully maintained a monopoly over the market for "personal social network services" by acquiring competitors and potential competitors, specifically Instagram and WhatsApp.  See Fed. Trade Comm'n v. Facebook, Inc., 560 F. Supp. 3d 1 (D.D.C. 2021); Fed. Trade Comm'n v. Facebook, Inc., 581 F. Supp. 3d 34 (D.D.C. 2022).  In the parties' latest discovery dispute, the FTC moves under Federal Rule of Civil Procedure 37 to compel Meta to provide further supplemental answers to FTC's Interrogatory Nos. 10–12.  See ECF No. 266 (FTC's Motion to Compel).  The Court will grant the Motion only in part.

## I.    Background

Meta's Fourth and Fifth Affirmative Defenses assert that its acquisitions of Instagram and WhatsApp were lawful because "there were procompetitive justifications" for them.  See ECF No. 94 (Answer to Complaint) at 38.  As neither Defense provided further description, the FTC served two interrogatories on Meta in the hopes of eliciting more.  Interrogatory Nos. 5 and 6 asked Meta to "[i]dentify and describe each procompetitive justification" and "each improvement the Company contends it has made to Instagram and WhatsApp."  ECF No. 267-2

(Meta's Sealed Responses to FTC's First Set of Interrogatories) at 27, 32.  Meta answered Interrogatory No. 5 by describing a number of what it claimed to be "procompetitive benefits" of the acquisitions, but its stated list was only "a high-level summary of some of the many pro-competitive benefits that were expected to result (and did result) from the acquisitions of Instagram and WhatsApp."  Id. at 32.  Lest the point be missed, it added that "a complete list of such benefits is impossible to provide at this time."  Id. at 28, 30.  It responded similarly to Interrogatory No. 6, which asked Meta to identify and describe each improvement it contends it has made to Instagram and WhatsApp since acquiring each company.  Id. at 34, 44.

Dissatisfied with Meta's responses, on December 16, 2022, the FTC served Requests for Admission about the "procompetitive benefits" Meta had asserted.  See FTC's Motion to Compel at 2.  Believing that Meta's RFA responses still did not provide full elucidation, the FTC served additional Interrogatories (Numbers 10–12) on this subject.  Meta's responses to those are the subject of this Motion to Compel further answers.

## II.    Analysis

The Court's ruling on this Motion is guided by a few basic points.  First, just as market definition and market power occupy "center stage" of the FTC's affirmative case, see ECF No. 264 (Order of March 29, 2023) at 2, the "procompetitive benefits" argument is the centerpiece of Meta's affirmative defense to the FTC's claims.

Second, because it is an affirmative defense, Meta will bear the burden of proof on the issue.  See United States v. Microsoft, 253 F.3d 34, 58–59 (D.C. Cir. 2001) (shifting to defendants the burden of proof on procompetitive benefits); Viamedia, Inc. v. Comcast Corp., 951 F.3d 429, 478 (7th Cir. 2020) (requiring defendant to demonstrate that disputed conduct "was the result of, or necessary to achieve, much greater procompetitive benefits").

Third, Meta's assertion of procompetitive benefits has been central to its defense all along and even predates its January 25, 2022, Answer to the Amended Complaint.  Indeed, it originally objected to Interrogatory Nos. 5 and 6 because they sought information Defendant claimed it had previously provided during the FTC's "pre-complaint investigation."  Responses to FTC's First Set of Interrogatories at 26.

Fourth, the merits-discovery deadline of May 22, 2023, is quickly approaching.  See ECF No. 106 (Status Report of Mar. 7, 2022) at 1; ECF No. 103 (Scheduling Order of Mar. 3, 2022), ¶ 4.  The FTC has been limited throughout the discovery period by knowing only "examples" of Meta's procompetitive-benefits defense.

Fifth, although Federal Rule of Civil Procedure 26(e) affords Meta the opportunity to supplement its discovery answers, supplementation is not a right, as Meta seems to assert, see ECF No. 267-4 (Meta's Sealed Supplemental Responses to Interrogatory 6) at 1 ("Reservation of Rights"); rather, supplementation is a duty.  See Fed. R. Civ. P. 26(e) ("A party . . . must supplement . . . .").  Rule 26(e) does not authorize a party to respond to otherwise proper questions by providing only a "high-level summary" or only "examples" of the information an interrogatory seeks.

Sixth, that Meta intends experts to testify about procompetitive benefits of its acquisitions does not alter its Rule 33 obligation to provide complete interrogatory responses to questions asking it to state its contentions or to provide facts on which they are based, and Meta does not so argue.  It may be that a party's experts will rely on facts to support the party's contentions, but it is not a valid objection to claim that interrogatories asking about facts and contentions constitute "premature" expert discovery.  In this respect, Rule 26(b)(1) operates separately from Rule 26(b)(4).  And it is augmented by Rule 37(c), which permits sanctions (including

preclusion) where a party seeks to proffer — or its experts rely upon — heretofore undisclosed evidence its adversary properly sought in discovery.

With these principles in mind, the Court turns to Meta's responses to Interrogatory Nos. 10–12. Spoiler alert: each side wins some and loses some.

    A.  <u>Interrogatory No. 10</u>

The response does not identify or describe "each" procompetitive benefit. It provides only a "high-level summary" and "examples." That is not enough. If providing "a complete list of such benefits is impossible," <u>see</u> ECF No. 267-6 (Meta's Responses to FTC's Third Set of Interrogatories) at 12, Meta must certify that its response is full and complete to the best of its knowledge and belief.

    B.  <u>Interrogatory No. 10(a)</u>

The Court appreciates that Interrogatory No. 10(a), read literally, could require Meta to identify what each employee did each day of each year after the acquisitions, on what timeline, with what status, using what tools, methods, and technologies — all to achieve the procompetitive benefits that Meta claims. Such a task would be excessive and disproportionate to the needs of this case. The Court, of course, does not know the contents of the specific documents Meta lists, but its Rule 33(c) response — identifying particular documents organized categorically — appears to be a satisfactory approach.

That said, the Court notes the discrepancy between Meta's assertion regarding Interrogatory No. 10(a) — that it is "not possible . . . to identify 'each specific action resulting in or associated with a Procompetitive Benefit,' much less the details regarding the timeline, costs, specific tools methods, strategies, personnel, and technologies employed," <u>id.</u> at 14 — and Meta's responses to RFA Nos. 4–10, which suggest that Meta indeed <u>can</u> identify the "monetary,

technological or personnel resources" it devoted to the identified endeavors.  See ECF No. 267-5 (Meta's Responses to First Set of Requests for Admission) at 7–10.  The FTC argues that Meta's discovery responses leave it with many unanswered "questions" notwithstanding the documents to which Meta referred, see FTC Mot. to Compel at 5–10, but the Commission fails to explain why or how its ability to defend against Meta's anticipated defense is handicapped without a more detailed response.

In sum, although the Court will deny the request to order Meta to file a further response to Interrogatory No. 10(a), it will look askance at subsequent lay or expert testimony based on specific "details" that Meta claims are "impossible" to disclose in discovery.

C.  Interrogatory Nos. 10(b)(i) and 10(b)(ii)

Both of these subsections request Meta to state the "amount" of a particular benefit and identify the "measures" (which the Court takes to mean "metrics") that measure "user growth" and "user engagement."  ECF No. 266-8 (FTC's Third Set of Interrogatories) at 1.  Although Meta's responses to these subsections provide some responsive information, they share two common shortcomings.  They seem to rely on Meta's general Interrogatory No. 10 objection that "it is not Meta's burden to quantify the amount of each Procompetitive Benefit that resulted from the Transactions."  Responses to FTC's Third Set of Interrogatories at 23.  That may or may not be so, depending on how Meta chooses to present its procompetitive-benefits affirmative defense.  But it is decidedly wrong to the extent it means to say that Meta may withhold responsive information if it possesses it.

The responses to each of (b)(i) and (ii) speak only to "[o]ne measure . . . that Meta has tracked over time . . . ."  Id. at 26.  "For example" is an insufficient response to an interrogatory that effectively asks about "each."  And is particularly significant because (b)(i) asks about

Facebook usage, a key question that Meta has challenged.  Meta must provide a further, complete response or certify that there are "no others."

      D.   Interrogatory No. 10(b)(iii)

The FTC's Motion does not address Interrogatory 10(b)(iii) separately.  See FTC Mot. to Compel at 5–12.  Meta's response provides some information about assessments of "application performance" and notes that it has provided responsive information elsewhere during discovery. See Responses to FTC's Third Set of Interrogatories at 28.  For present purposes, and subject to the caveat *supra* regarding late production of responsive information, no further response will be ordered.

      E.   Interrogatory No. 10(b)(iv)

The FTC also does not address Interrogatory 10(b)(iv) separately.  See Mot. to Compel at 5–12.  Meta's response, as above, provides some information about assessments of "cost savings" of particular procompetitive benefits and notes that it has provided responsive information elsewhere during discovery.  See Responses to FTC's Third Set of Interrogatories at 28–29.  The response is surprisingly barren given that cost savings and efficiencies are frequently raised in defense of merger or monopolization claims, and the standards applied to them are exacting.  See Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 701h (Lexis 2022 ed.) ("[A]n efficiency defense cannot be allowed in monopoly cases [involving an acquisition] in the absence of an overwhelming demonstration that substantial efficiencies are involved . . . .").  For present purposes, however, and subject to the caveat stated *supra* regarding late production of responsive information, no further response will be ordered.

F.   Interrogatory No. 10(b)(v)

Meta's response claims that it previously provided substantial information responding to this Interrogatory, and that it intended to provide additional information by March 31, 2023 — postdating the FTC's Motion to Compel.  See Responses to FTC's Third Set of Interrogatories at 29–30.  The FTC Reply does not address whether the promised supplemental response filled the gap.  See ECF No. 274 (FTC Reply filed Apr. 17, 2023).  The Court is consequently unable to grant the FTC relief regarding this subsection.

G.   Interrogatory No. 10(b)(vi)

This omnibus subsection requests information regarding "any other benefit, efficiency, or enhance[ment to] consumer appeal . . . ."  FTC's Third Set of Interrogatories at 2.  In effect, this is a "clean up" Interrogatory in case the prior subsections missed anything — entirely understandable in light of Meta's responses to Interrogatory Nos. 5 and 6.  Meta's response is similarly unhelpful, identifying nothing.  See Responses to FTC's Third Set of Interrogatories at 30.  If there is nothing further, Meta should state: "Nothing further."  If there is, it should be disclosed.  Meta is ordered to supplement in that manner.

H.   Interrogatory No. 10(c)

Substantively, the burden would be on Meta to demonstrate that benefits it claims resulted from its acquisitions "could not have been achieved absent the 'acquisitions.'" Viamedia, Inc., 951 F.3d at 478 (requiring defendant to demonstrate that disputed conduct "was the result of, or necessary to achieve, much greater procompetitive benefits"); Areeda & Hovenkamp, ¶ 908(b) ("The efficiency defense requires a showing that the merger produces significant cost savings that could not be readily attained by other means.").  The facts

supporting Meta's contention are what Interrogatory No. 10(c) requests Defendant to disclose. Its objection is therefore overruled.

Moving on to the substance of the response, the FTC asked Meta whether it contends that the benefits it asserts "could not have been achieved absent the Transactions, and, if so, the basis for that contention." FTC's Third Set of Interrogatories at 2. Meta answered that it does so contend and offered as its basis only that "Instagram and WhatsApp were able to take advantage of the expertise and resources made available by virtue of the transactions." Responses to FTC's Third Set of Interrogatories at 31. While an abbreviated, almost facile, response, the Court confronted a similar question on Meta's motion to compel the FTC to supplement its response to Meta Interrogatory No. 13. See ECF No. 243 (Meta's Motion to Compel Answers to Interrogatories 13 and 14). That Interrogatory likewise asked a "yes or no" question and for an "explanation." Id. As Meta did here, the FTC answered "yes" or "no" and provided a short explanation that offered little more than the core market definition of its Amended Complaint. The Court rejected Meta's complaint that the response was insufficient, in part because Interrogatory No. 13 asked only for an "explanation." ECF No. 264 (Mar. 29, 2023, Order). The Court noted that had "Meta wanted all relevant facts" supporting the FTC's contention, "it could have asked for those." Id. at 3. So, too, with FTC Interrogatory No. 10(c) and Meta's response. The Court will therefore apply the same approach here and deny the FTC's request for a further response to Interrogatory No. 10(c).

I.   Interrogatory No. 10(d)

The situation regarding this subsection resembles that of Interrogatory No. 10(c). Meta confirms that it does contend that procompetitive benefits of the acquisitions were achieved sooner than they otherwise would have had it not made the acquisitions. See Responses to

8

FTC's Third Set of Interrogatories at 32.  It admits that it has not made any study of this phenomenon.  But its response to Interrogatory No. 10(b) (which it incorporates by reference) contains only "anecdotal examples" of procompetitive benefits being accelerated by the acquisitions.  A complete response would include any other examples of which Meta is aware at this time or a certification that it knows of no others.  The Court orders that Meta do as much in a supplemental response.

J.   Interrogatory No. 10(e)

Meta's response incorporates its supplemental response to Interrogatory No. 5, see Responses to FTC's Third Set of Interrogatories at 32–33, which avers that the Meta board anticipated a number of procompetitive benefits at the time of each acquisition.  See ECF No. 267-3 (Meta's Responses to Interrogatory Nos. 4, 5, and 7) at 14.  But the response identifies only "examples."  Id. at 14, 16.  It is also difficult to understand how it can be, as Meta's Response to Request for Admission No. 2 avers, that the acquisitions occurred so long ago that it cannot acquire information about its board members' reasons to authorize these large acquisitions.  See Meta's Responses to First Set of Requests for Admission at 4.  And Interrogatory No. 10(e) focuses narrowly on the board during the period surrounding the two acquisitions, each of which required a formal Hart-Scott-Rodino Act premerger notification.  Meta should either supplement its Interrogatory No. 10(e) response with any other benefits the board contemplated or confirm that its Supplemental Interrogatory No. 5 response identifies them all.

K.   Interrogatory No. 10(f)

Given the breadth and specificity of Interrogatory Nos. 10(a) through 10(e), Meta understandably objects to identifying documents relating separately to each of Interrogatory

No. 10's multiple subjects.  See Responses to FTC's Third Set of Interrogatories at 33.  The FTC has not argued that Meta has withheld responsive documents from production or that the cataloging Interrogatory No. 10(f) calls for would be sufficiently valuable to warrant Meta's performing such an exercise.  As a result, the Court will not require Meta to supplement its response.

      L.   Interrogatory No. 11

The FTC understandably desires to probe Meta's claims about the benefits its "Integrity" work has yielded.  But Interrogatory No. 11, read literally, seeks stunning detail and warranted Meta's initial refusal to answer it in accordance with its express terms.  See Responses to FTC's Third Set of Interrogatories at 34–35.  During the first stab at negotiating a resolution, the FTC offered what was really no modification at all, see ECF No. 275-2 (March 7, 2023, Letter from FTC to Meta) — even though it told the Court a week later that, notwithstanding the terms of Interrogatory No. 11, it "only sought a high-level understanding of Meta's [Integrity] programs." ECF No. 257 (Joint Status Report of Mar. 16, 2023) at 9.  The FTC also seems in its Reply to seek less detailed information regarding Integrity issues than Interrogatory No. 11 actually demands.  See FTC Reply at 3.  Yet the FTC's Motion seeks a complete response to the Interrogatory.  See ECF No. 266-9 (Text of Proposed Order).

If the FTC would have been satisfied with less than Interrogatory No. 11 requests, it should have made a concrete proposal to that effect in or with the March 16, 2023, Joint Status Report, as its Reply's discussion of Interrogatory No. 10 suggests it could have done.  The Court's experience with the parties suggests that a satisfactory compromise could have been reached.  But the FTC did not do so, and no compromise was reached.  The Motion to Compel a "complete" response to Interrogatory No. 11 is denied.

    M. Interrogatory No. 12

    Interrogatory No. 12 seeks much the same information sought by Interrogatory No. 10,

while also probing the basis on which Meta denied Request for Admission Nos. 4–10.  Meta

responded to Interrogatory No. 12 by referencing its Interrogatory No. 10 responses, see

Responses to FTC's Third Set of Interrogatories at 36–37, a practice that the FTC does not

challenge.  See FTC Mot. to Compel at 15.  As discussed above, a number of those responses are

insufficient and must be supplemented.

    The overlap between sections of Interrogatory Nos. 10 and 11 is such that supplemental

Interrogatory No. 10 responses as ordered by the Court should provide the FTC with the

information Interrogatory No. 12 seeks and protect it from unfair surprise.  The Court therefore

orders Meta to serve a supplemental response to Interrogatory No. 12 that references the

pertinent supplemental Interrogatory No. 10 responses.

**III.   Conclusion**

    The Court accordingly will order that the Motion to Compel is granted in part and denied

in part.  A contemporaneous Order to that effect will issue this day.

                                                        /s/ *James E. Boasberg*
                                                        JAMES E. BOASBERG
                                                        Chief Judge

Date:  April 26, 2023