# Exhibit 2



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Jessica Moy
Bureau of Competition
Phone: (202) 460-9366
Email: jmoy@ftc.gov

April 13, 2023

**By Electronic Mail**
Kevin Horvitz
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street NW, Suite 400
Washington, D.C. 20036

      RE:    **Meta's Second Set of Requests for Production,** *FTC v. Meta Platforms, Inc.*, **Civ. Action No. 1:20-cv-03590 (JEB) (D.D.C.)**

Counsel:

      We write regarding the parties April 12, 2023 meet and confer regarding Meta's Second Set of Requests for Production ("Requests"). As we have expressed during prior meet and confers and previously memorialized, Meta has failed to illuminate how the FTC's use of social accounts is relevant to any specific claim or defense in this litigation, the core conduct at issue in this litigation (Meta's monopoly maintenance over the course of the last decade), or to an assessment of the relevant market in this matter. *See* 2/27/23 Ltr. from J. Moy to K. Horvitz; 3/13/23 Email from J. Moy to Meta's counsel. As such, Meta's continued requests related to its Requests are burdensome and disproportionate to the needs of the case. *Id.; see also* 3/14/23 Email from J. Moy to Meta's counsel; 3/15/23 Email from J. Moy to Meta's counsel.

      Although we maintain that the information Meta seeks is of questionable relevance and already available to Meta, as a show of good faith and compromise, the FTC produced responsive, non-privileged internal policies and guides that address the core information that Meta seeks in its Requests: how, why, and when the FTC uses each FTC social account. *See generally,* Requests; 2/21/23 Ltr. from K. Horvitz to D. Matheson (Meta's counsel explaining that Meta's Requests seek "information about how, why, and when the FTC uses each FTC Account"); *see also* 1/25/23 Email from D. Matheson to Meta's counsel; 2/28/23 Ltr. from J. Moy to Meta's counsel.

      Subsequently, in response to additional items that Meta identified for the first time on March 9, as an even further compromise, the FTC agreed to conduct an additional search to provide Meta with even further information, including prior versions of responsive, non-privileged internal policies and guides related to the FTC's use of social accounts. *See* 3/13/23 and 3/15/23 Emails from J. Moy to Meta's counsel. The FTC also agreed to further investigate the availability and extent to which Meta's request related to the FTC's Social Media Weekly Reports implicate

Letter to Kevin Horvitz
April 13, 2023
Page 2

privileged materials. *Id.* Pursuant to the parties' agreement, the FTC produced additional non-privileged, responsive information and documents to Meta on April 4. *See* 4/4/23 Ltr. from J. Moy to Meta's counsel.

Meta's counsel subsequently identified additional questions related to the FTC's productions. During the parties April 12 the meet and confer, we provided Meta's counsel with additional information regarding FAQs and Rules of Behavior that Meta identified. We explained that the FAQs are directed at individual FTC employees who do not have access to the FTC's accounts and provides advice on personal social media use and directs them to the FTC's Office of Public Affairs ("OPA") for information on any official FTC use. We also explained that the Rules of Behavior is a standard form FTC employees must sign in order to gain access to an FTC account and that individual employees must promise not to disclose passwords and other non-public information. We confirmed that the FTC has produced responsive, non-privileged policies and guides regarding the FTC's use of FTC social accounts. We also clarified that we specifically inquired internally regarding the "updated" reference on documents produced and understand it to be a reference to the date the document became effective and that the first versions of the documents included the "updated" references.

Related to Meta's counsel's questions regarding the FTC's Social Media Weekly Reports, we explained that after conducting an assessment, the information related to FTC social media accounts that Meta seeks are part of an OPA Weekly Report sent to the Commission and other senior managers across the agency. Information in these OPA Weekly Reports cover a range of issues related to public affairs for matters and initiatives that the Commission oversees and analysis related to individual enforcement actions, the vast majority of which have nothing to do with the FTC's use of the FTC's social media accounts. The purpose of these OPA Weekly Reports is to compile staff updates and information to inform assessments and decisions of senior agency managers and decision-makers. The FTC has obligations to maintain the information in the OPA Weekly Reports as confidential, and they are deliberative process privileged material. What's more, given that the vast majority of information in the OPA Weekly Reports has no relevance at all to this matter, and information regarding the FTC's use of its social media accounts is tenuous at best, it is unduly burdensome and disproportionate to the needs of the case for FTC staff to attempt to review, redact, and segregate any purportedly factual information when such information is barely relevant and available elsewhere.

Given the additional context and information that we provided during the meet and confer, we were surprised by Meta's blanket refusal to meaningfully engage on whether other non-privileged sources might exist related to the information in the OPA Weekly Reports that Meta claims it seeks. As we explained during the meet and confer, any facts are enmeshed in staff analysis in these confidential and privileged internal agency documents. Meta has expressed before that it is seeking analytics and metrics contained in the Social Media Weekly Reports. *See* 3/9/23 Ltr. from K. Horvitz to J. Moy, p. 2 (identifying that the "Social Media Weekly Report found within OPA's Weekly Report, which is sent to senior level management every Friday…includes weekly analytics/metrics from Sprout Social which integrates Twitter Analytics, Facebook Insights, and Hootsuite Pro."). Meta of course has this information directly for the

Letter to Kevin Horvitz
April 13, 2023
Page 3

FTC's Facebook account, and could either see such information on the FTC's Twitter, LinkedIn, or YouTube accounts (all of which are set to "public"), or obtain aggregate reports of such information from a web traffic or social media management service. However, in an attempt to engage on whether there are alternative non-privileged sources for the information Meta seeks, we asked whether Meta subscribes to or has ever subscribed to Sprout Social or if Meta has access to other tools (internal or third-party) that track users' postings on Facebook and/or across different social media accounts. Meta has agreed to provide the FTC with a response in writing. As conveyed during the meet and confer, the FTC is willing to further discuss alternative non-privileged sources for the information that Meta seeks related to the Social Media Reports, and that offer remains open.

The FTC has provided the responsive, non-privileged internal policies and guides regarding the FTC's use of FTC social accounts and has repeatedly explained to Meta's counsel that the FTC's detailed and publicly available Privacy Impact Assessments for each of the FTC's social media accounts provide robust information regarding why, how, and when the FTC uses each FTC social account. What's more, Meta now seeks testimony from the FTC regarding these very same topics, including the Social Media Weekly Reports. *See* Meta Platform, Inc.'s Notice of Rule 30(b)(6) Deposition of the Federal Trade Commission ("Meta's 30(b)(6) Deposition Notice"), Topic Nos. 2-5. The FTC has indicated that it is willing to meet and confer to ascertain if the definitions and topics in Meta's 30(b)(6) Deposition Notice can be sufficiently narrowed, modified, or clarified so as to permit the FTC to prepare a witness on matters for examination. *See* Plaintiff Federal Trade Commission's Objections and Reponses to Defendant Meta Platforms, Inc.'s Notice of Rule 30(b)(6) Deposition.

Meta's insistence to call the Court regarding these issues is baseless and premature as Meta has refused to engage in a meaningful way regarding the publicly available and internal guidance regarding the FTC's use of FTC social accounts that the FTC has already provided, alternative non-privileged sources of information related to the Social Media Weekly Reports, and these same topics that are included in Meta's recently-served 30(b)(6) Deposition Notice. In light of these continued discussions and Meta's refusal to consider alternative non-privileged sources of information related to the information in the Social Media Weekly Reports that it seeks, we strongly disagree with Meta's insistence on calling the Court related to these issues.

    Sincerely,

    /s/ Jessica Moy
    Jessica Moy
    *Counsel for Plaintiff Federal Trade Commission*