# Exhibit 3

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

April 19, 2023

*Via Electronic Mail*

Jessica Moy, Esq.
Federal Trade Commission
Bureau of Competition
400 Seventh Street, SW
Washington, D.C. 20024

      Re:    FTC v. Meta Platforms, Inc., Case No. 1:20-cv-03590-JEB

Dear Jessica:

      I write in response to your April 13, 2023 letter.  We disagree with many statements in that letter but focus here only on several.  On December 5, 2022, Meta served its Second Set of Requests for Production, which sought, among other things: all documents related to "the extent to which the FTC uses the FTC Facebook Accounts, the FTC LinkedIn Account, the FTC Reddit Account, the FTC Twitter Accounts, and/or the FTC YouTube Account for similar or different purposes" and "the extent to which the FTC posts the same or similar content to multiple FTC Accounts and why."

      Meta has repeatedly explained the relevance of these requests.  The FTC has argued that Meta has a monopoly in the "personal social networking services" market, and that Twitter, YouTube, and Reddit do not offer services in this market.  How Meta's services are used compared to how these other services are used bears directly on this issue.  The FTC itself routinely asks third parties questions about how various services are used.  The FTC's own use of these and other services is no less relevant.  The FTC has produced just seven documents in response to these requests.

      **1.**    The FTC's meager production demonstrated that the FTC had not produced other relevant documents, specifically the FTC's weekly "Social Media Reports."  Meta did not "identify" these documents for the first time on March 9, as the FTC claims (at 1).  These documents were responsive to Meta's document requests served on December 5 and should have been produced long ago.  After Meta specifically requested those documents, the FTC promised to produce the "Social Media Reports" by April 4, 2023; the FTC did so to prevent this dispute

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Moy, Esq.
April 19, 2023
Page 2

from being presented to the Court during the last Joint Status Report.  *See* J. Moy Email to K. Horvitz (Mar. 15, 2023).  The FTC's only reservation was that it would not produce the "Social Media Reports" if they were privileged.  *See id.* ("continuing to assess the extent to which your requests implicate privileged materials").

      The FTC did not produce the Social Media Reports on April 4 as it had promised.  On April 5, Meta requested that the FTC promptly produce the documents or meet-and-confer if the FTC refused to do so.  *See* email from G. Block to S. Musser (Apr. 5, 2023).  The FTC stated it was not available to meet-and-confer until April 12.  On that meet-and-confer, the FTC did not claim the "Social Media Reports" were privileged.  Nor could the FTC plausibly have done so.  Those reports describe the FTC's use of its social-media accounts; they do not implicate any policy decision-making.  The FTC instead claimed that the "Social Media Reports" were included within Office of Public Affairs ("OPA") Weekly Reports that themselves contain privileged materials.  We are skeptical that weekly reports from the FTC's public affairs personnel qualify for deliberative process privilege or any other type of privilege.  *See Public Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2010) (document covered by deliberative process privilege if "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters").  But even if there happened to be privileged materials in reports created by non-legal, public affairs personnel, the solution is simple:  the FTC needs to produce all the relevant, non-privileged material in the reports; it may redact the privileged portions; and it needs to produce a privilege log justifying the redactions.[1]

      We disagree with the FTC's claim that this ordinary process, which Meta has done for thousands of documents already in this case, is too burdensome for the FTC, which has yet to produce a single redacted document in this matter.  This dispute concerns a discrete set of weekly reports – likely several dozen – that are relevant to a potentially dispositive market definition issue.  By comparison, Meta has reviewed thousands of potentially privileged documents and produced non-privileged portions, despite the fact that many of the documents (and requests) have marginal relevance to the issues in this case.

      The FTC's suggestion that Meta should subpoena a third-party for "analytics and metrics" is also misguided and inappropriate.  Those "analytics and metrics" are not a substitute for the FTC's own assessment of its use of the services at issue.  In any event, the FTC cannot decide how and where Meta seeks relevant materials.  Nor should a third-party bear the burden of producing relevant materials to save the FTC – the party who brought this suit – from conducting a minor privilege review.

---

[1] The FTC's concern that it has "obligations to maintain the information in the OPA Weekly Reports as confidential" is resolved by the protective order in this matter.  Far more sensitive business information than weekly reports of FTC public affairs personnel has been produced under this protective order by Meta and numerous third parties.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Moy, Esq.
April 19, 2023
Page 3

Finally, we disagree with the FTC's claim that it is "premature" to present this dispute and that Meta has "refused to engage." Meta has already significantly narrowed its document requests to seek discrete categories of documents. The FTC explicitly promised to produce the Social Media Reports, and then did not do so. There is nothing left to discuss. Meta will raise this issue in the upcoming JSR and seek production of the documents at issue.

**2.** Meta also requested all of the FTC's social media policies and guides (including drafts), which the FTC also promised to produce by April 4. We asked the FTC to confirm that it had produced all such documents, but the FTC has stated only that it has "has produced responsive, non-privileged policies and guides regarding the FTC's use of FTC social accounts." The FTC further stated that the policies and guides it had produced were the only ones "effective." However, it remains unclear whether the FTC has searched for prior versions of these policies and guides that were not "effective" (including drafts). Please confirm that the FTC has searched for all such policies and guides (including whether "effective" or not and whether in draft form or not).

Sincerely,

*/s/ Geoffrey J.H. Block*

Geoffrey J.H. Block
Counsel for Meta Platforms, Inc.