Case 1:20-cv-03590-JEB   Document 292-1   Filed 05/09/23   Page 1 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

**META PLATFORMS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ANSWER TO INTERROGATORY NOS. 16, 20, 21, 22, 23**

Meta seeks an order requiring the FTC to respond to four contention interrogatories that the FTC has refused to answer and to certify that its answer to another contention interrogatory is "full and complete to the best of its knowledge and belief." ECF No. 281, at 4. The interrogatories are available at ECF No. 284-24. The responses are attached as Exhibit A.

I.      **The Court Should Order The FTC To Answer Interrogatory Nos. 20-23**

Interrogatory Nos. 20-23 seek the facts underlying the FTC's contentions on four central issues on which the FTC bears the burden of proof. The FTC previously stated orally (but refused to do so in writing) that it would provide substantive responses and then subsequently objected to providing any response at all. *See* ECF No. 285-1, at 35-36. Meta needs the information the FTC refuses to provide for use in ongoing expert work, to prepare its summary judgment briefing, and (if necessary) for trial preparation. For each interrogatory, the Court should order the FTC to do what it previously ordered Meta to do: answer the interrogatories or state it "knows of no" facts. ECF No. 281, at 9.

A.      **The FTC's Common Objections Lack Merit**

The FTC asserts several objections common to the interrogatories. *See* Ex. A, at 56-63. Each lacks merit. *First*, Meta has not exceeded its allotted interrogatories. Meta has served 23 interrogatories – 7 fewer than allotted. The Court already rejected the FTC's argument that certain interrogatories should count as multiple ones. *See* ECF No. 227, at 13-15 (FTC argument); *id.* at 20 (Meta response); 1/5/23 Tr. 13-14 (ruling). The Court should reach the same result now because subsequent interrogatories have been "directed at eliciting details concerning a common theme." *Ramirez v. ICE*, 2019 WL 11623990, at *2 (D.D.C. June 4, 2019); *see* Ex. A.

*Second*, the FTC argues the interrogatories "seek[ ] information . . . which may be the subject of expert discovery." *E.g.*, Ex. A, at 56. The interrogatories seek "relevant facts." *Id.* at

- 1 -

56-63. This Court has already ruled that, while those "relevant facts" may also be the subject of expert testimony, that possibility "is not a valid objection to claim that interrogatories asking about facts and contentions constitute 'premature' expert discovery." ECF No. 281, at 3-4.

*Third*, the FTC objects to the extent the interrogatories seek information "protected from disclosure due to the work product privilege." Ex. A, at 56. The federal rules allow Meta's contention interrogatories. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."); *Barnes v. Dist. of Columbia*, 270 F.R.D. 21, 24 (D.D.C. 2010) ("[C]ontention interrogatories . . . in no way impinge[ ] on the attorney's impression or analysis.").

### B.    The Specific Objections Made By The FTC Lack Merit

The FTC has no legitimate objections specific to any of the interrogatories.

**Interrogatory Nos. 20 & 21.** The FTC must show that Meta's acquisitions of Instagram and WhatsApp had "anticompetitive effect" – that is, the acquisitions "harm[ed] the competitive *process* and thereby harm[ed] consumers." *Rambus Inc. v. FTC*, 522 F.3d 456, 463 (D.C. Cir. 2008). Here, the FTC alleges "[c]onsumers have been harmed" by "lower levels of service quality on privacy and data protection." Am. Compl. ¶ 222. Interrogatory Nos. 20 & 21 seek the "relevant facts" for that contention or any other way in which the FTC contends consumers have been harmed by the Instagram and WhatsApp acquisitions. *See* Ex. A. at 56, 59 ("Identify all relevant facts supporting [its] allegation that, if Meta had not acquired Instagram [or WhatsApp], consumers would have products or services that are better than those available today.").

Yet, four years after beginning its investigation and two years after initiating its lawsuit, the FTC refuses to provide any facts on this central element of its case. Meta expects the evidence will show Meta operates in an "industry that . . . has had rapid growth and innovation

with no end in sight," *New York v. Meta Platforms, Inc.*, 2023 WL 3102921, at *3 (D.C. Cir. Apr. 27, 2023), and that Meta has made Instagram and WhatsApp enormously useful to the billions of people that use them *for free*. If the FTC has facts to support its contention that consumers would be better off if Meta had not acquired Instagram and WhatsApp, Meta needs to know what they are now for use in, among other things, expert work that will rebut any notion of degraded product quality. The FTC does not provide any reason not to respond, except for its insufficient common objections.

**Interrogatory No. 22.** The FTC has indicated already that it will attempt to prove the viability of the "personal social networking services" ("PSNS") by using the seven "practical indicia" enumerated in *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962). *See* ECF No. 59, at 8-10 (FTC relying on *Brown Shoe*). Interrogatory No. 22 asks the FTC to identify the facts that the FTC contends supports any of the seven *Brown Shoe* factors. *See* Ex. A, at 62 ("Identify all relevant facts supporting Your PSNS market definition, *see* Am. Compl. ¶¶ 166-176, with respect to the 'practical indicia' enumerated in *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)."). Meta has a special need for these facts given the FTC's "idiosyncratically drawn" market definition. ECF No. 73, at 27.

The FTC incorrectly states that it has answered this interrogatory elsewhere. *See* Ex. A, at 62 ("The FTC directs Meta to its responses to Interrogatory Nos. 10, 13, 14, and 16."). Those other interrogatories concern whether specific features on Meta's or others' services qualify as PSNS. *See* ECF No. 165 (order on Interrogatory No. 10); ECF No. 264 (order on Interrogatory Nos. 13, 14); Ex. A, at 9 (Interrogatory No. 16). They do not address each *Brown Shoe* factor.

**Interrogatory No. 23.** In dismissing the FTC's original complaint, this Court noted the FTC's "striking" choice to identify no other present competitor to Meta. ECF No. 73, at 30-31.

The FTC then alleged in its Amended Complaint that Snapchat was "the next-largest provider" of PSNS. Am. Compl. ¶¶ 2, 169, 184. The Court credited these and other "detailed facts" as sufficiently plausible. ECF No. 90, at 13-20.

The FTC has apparently now had second thoughts about whether Snapchat provides PSNS. In response to Interrogatory No. 13, the FTC stated its "present impression is that Snapchat provides" PSNS but that it "continues to examine the extent to which users view and experience Snapchat as a mobile messaging or other type of application." ECF No. 250-2, at 34-35. The problem that the FTC apparently seeks to avoid with its equivocation is that Snapchat resembles, in many respects, what the FTC calls a mobile messaging app, *see* Snap Inc. 10-K at 6 (2022) ("visual messaging application"), and the FTC explicitly excludes such apps from its market definition, *see* Am. Compl. ¶ 172. So if Snapchat provides PSNS (as the FTC alleged to defeat a motion to dismiss), the FTC's market definition collapses because there would be no basis for the FTC to exclude other similar apps like widely used iMessage from the market.

With fact discovery ending, Meta needs a final answer on whether the app that the FTC once alleged was Meta's most significant competitor is in or out of the FTC's alleged market. Meta served Interrogatory No. 23 for that purpose, but the FTC refused to respond. *See* Ex. A, at 63. The FTC claimed its response would be "redundant" with its response to Interrogatory No. 13 – the same response in which the FTC refused to take a definitive position. The Court should reject the FTC's obfuscation and order the FTC to respond.

## II. The FTC Should Certify Its Response To Interrogatory No. 16 Is Complete

This Court noted from the outset a key issue that "at least some of the features" offered by Meta – such as "watching a comedy routine posted by the official page of a famous comedian" – "are not, seemingly," PSNS. ECF No. 73, at 29-30. Further, some apps that the FTC alleges are outside the market (like iMessage) have features (like sharing with friends and

family) that seemingly are PSNS. Meta served interrogatories asking the FTC to specify which Meta features are PSNS and, if so, whether similar features on other apps are PSNS and to explain why or why not. *See* ECF No. 264, at 2-3; ECF No. 165, at 1. The FTC responded that nearly every Meta feature is PSNS, *see* ECF No. 250-3, at 5-43 (table), but that many similar feature on other apps are not PSNS, *see* ECF No. 250-2, at 37-67 (tables). The FTC contended that similar features on other apps were not PSNS because the other app (as a whole) "presents a [different] user experience"; the FTC denied the relevance of "an analysis comparing the individual features." *E.g.*, ECF No. 250-2, at 58-59; *see also* ECF No. 281, at 8 (noting the FTC's response "offered little more than the core market definition of its Amended Complaint").

Meta served Interrogatory No. 16 seeking the "relevant facts" underlying the FTC's feature classifications, Ex. A, at 9, which is information the Court ruled was not called for by prior interrogatories, *see* ECF No. 264, at 3-4. The FTC responded without "relevant facts" supporting a feature-by-feature analysis of whether similar features on other apps are substitutes for features on Meta's apps. *See* Ex. A, at 10-11 (FTC, again, explicitly rejecting that approach).

Meta takes issue with the FTC's hedging that, among other things, its response "should not be construed as a limitation" on the FTC later relying on "other evidence . . . that supports . . . similar proposition[s]" or "different factual proposition[s]" and to "supplement" after the FTC "complete[s] its assessment of the factual record." Ex. A, at 10-11; *see also* Ex. B. The Court should order the FTC to certify that its "response is full and complete to the best of its knowledge and belief" (as Meta was ordered to do). *See* ECF No. 281, at 4. The Court should also look "askance" at any attempt by the FTC to alter its contentions at a later date by, for example, backfilling its case with contentions regarding substitutability on a feature-by-feature basis. *See* ECF No. 281, at 4-5.

Dated: May 9, 2023                                Respectfully submitted,

    /s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Kevin B. Huff (D.C. Bar No. 462043)
Daniel V. Dorris (D.C. Bar No. 1012305)
Kevin D. Horvitz (D.C. Bar No. 1521032)
Alex P. Treiger (D.C. Bar No. 1670925)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
ddorris@kellogghansen.com
khorvitz@kellogghansen.com
atreiger@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*