# Exhibit A

Submitted Pursuant to Local Civil Rules 5.2(b)
and 26.2(d)

**PLAINTIFF FEDERAL TRADE COMMISSION'S OBJECTIONS AND RESPONSES TO DEFENDANT META'S THIRD SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP") and the Joint Scheduling Order (the "Scheduling Order", "Case Management Order" or "CMO") entered on March 3, 2022 (Dkt. No. 103), Plaintiff Federal Trade Commission ("FTC" or "Plaintiff") submits these Objections and Responses to Defendant Meta Platforms, Inc.'s ("Meta") Third Set of Interrogatories to the Federal Trade Commission ("Interrogatories"), dated April 3, 2023.

**GENERAL OBJECTIONS**

1.      The following General Objections apply to all of the Interrogatories and are hereby incorporated by reference into each of the following responses to each individual Interrogatory. The assertion of the same, similar, or additional objections or the provision of a partial answer in response to an individual Interrogatory does not waive any of the FTC's general objections as to that Interrogatory or other Interrogatories.

2.      These responses are made solely for the purposes of this action. Each response is without waiver or limitation of Plaintiff's right to object on grounds of competency, relevance, materiality, privilege, admissibility as evidence for any purposes, or any and all grounds to the use of any documents or information in any subsequent proceeding in, or trial of, this or any other action. The FTC hereby reserves the right to raise and rely upon such other and further objections as may become apparent during the course of responding to discovery.

3.      The FTC objects to each Interrogatory to the extent it expressly or impliedly seeks information protected from discovery by the attorney-client privilege, attorney work product doctrine, government deliberative process privilege, investigative privilege, common

interest doctrine, or any other privilege, doctrine, or protection as provided by any applicable law. Documents and information covered by such privileges and doctrines are not subject to disclosure. Nothing contained in these responses, including any inadvertent disclosure of privileged information, is intended to be, or in any way shall be deemed, a waiver of any applicable privilege or doctrine.

4.      The FTC objects to each Interrogatory to the extent that it calls for the production of information or documents that are exempted from discovery under Paragraphs 16 or 18 of the Joint Scheduling Order in this case (Dkt. No. 103). The FTC will not produce information or documents that are exempted from discovery by Paragraphs 16 or 18 of the Joint Scheduling Order.

5.      The FTC objects to each Interrogatory to the extent it expressly or impliedly seeks proprietary, confidential, financial, trade secret, or commercially sensitive information of third parties that could harm third parties competitive or business positions or result in a breach of Plaintiff's obligation to maintain the confidentiality of such information. Any confidential or proprietary information will be produced pursuant to the Protective Order in this case, entered March 25, 2022 (Dkt. No. 134), or any modifications thereto.

6.      The FTC objects to each Interrogatory to the extent it concerns matters or issues that are beyond the scope of the allegations in the Substitute Amended Complaint, Dkt. No. 82, filed in the above-captioned matter on September 8, 2021 ("Amended Complaint"), to the proposed relief, or to the defenses of Defendant, on the grounds that such discovery is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7.      The FTC objects to each Definition, Instruction, and Interrogatory to the extent it is inconsistent with, or purports to require Plaintiff to take measures above and beyond, the

requirements of the D.D.C. Local Rules ("Local Rules"), the FRCP, applicable case law, any Court Rules, Orders, or Stipulations entered in the case, or any other agreements among the parties in the case. The FTC reserves all rights pursuant to any Stipulations subsequently agreed to or entered by the Court and expressly incorporates all terms herein.

8.      The FTC objects to each Definition, Instruction, and Interrogatory to the extent that it is vague, ambiguous, overly broad, unduly burdensome, fails to describe the information sought with the required reasonable particularity, requires unreasonable efforts or expense on behalf of Plaintiff, or uses terms that are undefined or not susceptible to a single meaning. The FTC further objects to each Definition, Instruction, and Interrogatory to the extent that each Definition, Instruction, and Interrogatory seeks discovery that is not proportional to the needs of this case.

9.      The FTC objects to each Interrogatory to the extent that it seeks discovery that is available to Defendant from its own files or from information in the public domain equally available to Defendants and the burden and expense of deriving or obtaining such information is substantially the same for Defendants as it is for the FTC.

10.     The FTC objects to each Interrogatory to the extent it impermissibly seeks the premature and nonreciprocal disclosure of expert information or requires the FTC to produce or describe factual analyses, comparative analyses, opinions, or theories that will be the subject of expert discovery, in advance of deadlines set by the Court for such disclosures. The FTC will submit its expert report(s) and correspondence materials in accordance with the deadlines set forth in the Joint Scheduling Order in this case (Dkt. No. 103).

11.     The FTC objects to each Interrogatory to the extent that it seeks from the FTC information from third parties. The FTC is barred from producing information from third parties

without first providing each third party notice of, and an opportunity to object to, any possible disclosure. *See, e.g.*, 16 C.F.C. § 4.10.

12.     The FTC objects to the definition of "Electronically-Stored Information" or "ESI" in the Interrogatories to the extent it is inconsistent with, or purports to require Plaintiff to take measures above and beyond, the requirements of the Local Rules, the FRCP, applicable case law, any Court Rules, Orders, or Stipulations entered in this case, including, but not limited to, the ESI Protocol in this case (Dkt. No. 108).

13.     The FTC objects to the definition of "Facebook" in the Interrogatories as vague and ambiguous, and unduly burdensome, to the extent it demands the FTC define "Facebook" according to the definition provided "unless the context requires otherwise."

14.     The FTC objects to the definition of "Instagram" in the Interrogatories as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it requires the FTC to identify "all Persons or entities acting or that have acted on its behalf, including, but not limited to, divisions, subsidiaries, holding companies, parents, successors, predecessors, Instagram, Inc. and any other related entity."

15.     The FTC objects to the definition of "Listed Feature" to the extent that it is overly broad, unduly burdensome, and not proportional to the needs of the case.

16.     The FTC objects to the definition of "Meta" in the Interrogatories as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it requires the FTC to identify "all Persons or entities acting or that have acted on its behalf, including, but not limited to divisions, subsidiaries, holding companies, parents, successors, predecessors, including, but not limited to, Facebook, Inc., Instagram, WhatsApp, and any other related entity."

17.     The FTC objects to the Definition of "WhatsApp" as overly broad, unduly

burdensome, and not proportional to the needs of this case to the extent it requires the FTC to identify "all Persons or entities acting or that have acted on its behalf, including, but not limited to, divisions, subsidiaries, holding companies, parents, successors, predecessors, and any other related entity."

18.     The FTC objects to the Definitions of "You," "Your," "Federal Trade Commission," and "FTC" as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent they include persons other than the FTC or its employees, and to the extent the Interrogatories purport to require the FTC to conduct a search of the custodial files of each and every FTC employee.

19.     The FTC objects to Instructions 6, 7, 8, 11, 15, and 16 to the extent they are inconsistent with, or purport to require Plaintiff to take measures above and beyond, the requirements of the Local Rules, the FRCP, applicable case law, any Court Rules, Orders, or Stipulations entered in this case, including, but not limited to, the CMO and the ESI Protocol. The FTC further objects to these identified Instructions as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it requires the FTC to produce or identify documents other than those in the possession, custody, or control of the FTC or its employees. The FTC further objects to these identified Instructions to the extent they would impose nonreciprocal obligations on the FTC.

20.     No incidental or implied admissions are intended by the responses herein. The fact that the FTC has responded or objected to any of the Interrogatories should not be taken as an admission that the FTC accepts or admits the existence of any "facts" or premises set forth or assumed by such Interrogatories. The fact that the FTC has responded to part or all of any individual Interrogatory is not intended to be, and shall not be construed to be, a waiver by the

FTC of any part of any general or specific objection to such Interrogatory.

21.     The FTC, in responding to the Interrogatories, does not concede to the relevance or admissibility of any information sought through the Interrogatories, and reserves the right to challenge such relevance or admissibility.

22.     Subject to all objections contained herein, the FTC answers these Interrogatories to the best of its knowledge at the present time, based upon its actions to date. The FTC specifically reserves the right to supplement and amend these responses, including the interposition of additional or different objections.

23.     The FTC objects to each contention interrogatory as premature. Factual discovery is ongoing and is not scheduled to close until May 22, 2023.  Expert discovery is likewise ongoing, with expert discovery not scheduled to close until January 5, 2024.  The FTC anticipates that expert reports and other expert-related materials may provide further support for its response to the Interrogatories. The disclosure and production of such materials will occur in accordance with Fed. R. Civ. P. 26(a)(2) and the dates set forth in the Court's Joint Scheduling Order, Dkt. No. 103 (Mar. 3, 2022). The FTC reserves the right to supplement its response to any contention interrogatory.

24.     While the FTC responds here to the best of its present ability after a reasonably diligent inquiry, discovery in this matter is ongoing, and the FTC reserves its right to supplement, revise, or correct any of its responses pursuant to Fed. R. Civ. P. 26(e). The FTC also reserves its right to present at trial additional evidence or witnesses as they may be discovered or produced and disclaims any intent to be irrevocably bound by any of the answers it provides until its investigation is complete.

25.     Each of these General Objections is incorporated into the FTC's response to each of the individual Interrogatories as though fully set forth therein. The FTC will not respond to

the Interrogatories to the extent objected to except as set forth herein.

26.     The FTC objects to Defendant Meta's numbering of its Third Set of Interrogatories because Meta's Third Set of Interrogatories – while nominally labeled Interrogatory Nos. 17 through 23 – are actually its forty-fifth through sixty-fourth Interrogatories.

**Meta's Third Set of Interrogatories to the FTC (served April 3, 2023)**

**INTERROGATORY NO. 16:**

      With reference to Your Response to Meta's List of Features or Activities (Sept. 12, 2022) and Your Supplemental Objections and Responses to Meta's Interrogatory No. 14 (Jan 24, 2023), identify all relevant facts supporting Your contention that use of each Listed Feature on Facebook, Instagram, or Messenger is a PSNS usage while use of the corresponding Listed Feature on the other products or services is not a PSNS usage.

**FTC's Supplemental Objections and Responses to Meta's Third Set of Interrogatories (served May 03, 2023)**

**RESPONSES & OBJECTIONS TO INTERROGATORY NO. 16:**

      The FTC objects because "Interrogatory No. 16" poses at least 12 separate and discrete Interrogatories or discrete subparts. "Interrogatory No. 16" constitutes at least the forty-fifth through fifty-seventh interrogatory served by Meta, and thus exceeds the number of interrogatories permitted under the Court's Scheduling Order, ECF No. 103. As noted in the FTC's objections to previous interrogatories, Meta's "Interrogatory No. 13" and "Interrogatory No. 14" in fact represent thousands of discrete interrogatories. Likewise, Meta's "Interrogatory No. 1," "Interrogatory No. 2," and "Interrogatory No. 10" each represent hundreds of discrete interrogatories.

      The FTC further objects to "Interrogatory No. 16" as premature because it seeks information and evidence subject to ongoing factual discovery, which is not scheduled to close until May 22, 2023, and because it seeks information and evidence which may be the subject of expert discovery, which is not scheduled to close until January 5, 2024. The FTC further objects to "Interrogatory No. 16" to the extent that it seeks to discover information and communications, including any mental impressions of counsel, that are protected from disclosure due to the work

product privilege, deliberative process privilege, and any other applicable privilege. The FTC objects to this interrogatory because the requirement to "Identify all relevant facts" is overly broad, unduly burdensome, and not proportional to the needs of the case. The FTC further objects to the extent that this Interrogatory seeks information or materials outside the FTC's possession, custody, or control.

The FTC objects to the terms "identify", "corresponding", "products", and "services" as vague, ambiguous, overly broad, and unduly burdensome.  The FTC also objects to the implication that the FTC is contending that a comparison between the features or activities on the Facebook, Instagram, Facebook Messenger, and WhatsApp applications identified by Meta and the feature and activity used or performed on Strava, LinkedIn, iMessage, Twitter, Reddit, Pinterest, YouTube, Spotify, Nextdoor, Netflix, Hulu, or TikTok is necessary to define the relevant market. As the FTC has repeatedly explained, "the FTC's classification of features/activities 'as they are implemented on Facebook, Instagram, WhatsApp, and messenger . . . . have no implication for whether any specific feature or activity offered by a different product is or is not within the definition of personal social networking." *See, e.g.*, FTC Responses and Objections to Meta's Second Set of Interrogatories (Nov. 16, 2022) (quoting FTC Response to Meta Activities and Features List (Sept. 12, 2022)). The FTC explicitly incorporates all of its initial and supplemental Responses and Objections to Interrogatory Nos. 10, 13, and 14 into its Response and Objections to Interrogatory No. 16.

In particular, the FTC notes that the discovery record is just as available to Meta as it is to the FTC, and the FTC's failure to identify a specific document or fact below should not be construed as a limitation on either: (1) the FTC's future reliance on different documents or other evidence (including but not limited to expert testimony) that supports the same or a similar

proposition; (2) the FTC's ability to use evidence identified below to support a different factual

proposition; or (3) the FTC's ability to supplement its responses to include additional evidence

and facts of which the FTC is not presently aware – for example, because the FTC has not

completed its assessment of the factual record, or because the evidence or testimony has not yet

been made available within the factual record. While the FTC continues to digest the evidentiary

record and publicly available facts, the FTC responds here to the best of its present ability after

a reasonably diligent inquiry:

**Hulu**

  As the FTC has previously explained in its Responses and Objections to

Meta's Interrogatory No. 14:

> Meta's List[1] implies that the above-referenced feature/activity is available
> on Hulu and is "similar" to a feature/activity available on Instagram. Meta's List
> at 16 (implying similarity with Instagram). But Meta provides no evidence to
> suggest that this particular feature/activity functions, is presented, or is used
> similarly to any features/activities available on Instagram. Meta provides no
> evidence regarding how often this feature/activity occurs on Hulu compared to
> other user features/activities on Hulu.  For these, among other reasons, the FTC
> has not presently conducted such an analysis comparing the individual features
> available on Hulu and those currently available on Instagram.
>
>  The FTC's present understanding is that Hulu does not provide personal
> social networking services and the feature/activity identified above is therefore
> not part of a personal social networking offering. Hulu presents a user experience
> dedicated to video consumption, rather than maintaining a network of friends,
> family, and personal connections and sharing experiences with them in a shared
> social space. See, e.g., SAC ¶ 175 (distinguishing personal social networking
> services from online services focused on video or audio consumption such as
> Hulu).  Ordinary course records and other evidence support the FTC's
> understanding.  See, e.g., ████████████████████████████████████████
> ████████████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████████████
> ████████████████████████████████████

---

[1] "Meta's List" references Meta's December 20, 2022 List of Features or Activities for
Explanation

Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding:



**iMessage/iMessage Facetime**

As the FTC has previously explained in its Responses and Objections to

Meta's Interrogatory No. 14:

> Meta's List implies that the above-referenced features/activities are available on iMessage and are "similar" to features/activities available on Facebook Blue. Meta's List at 6, 8, 12-13 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often these features/activities occur on iMessage compared to other user features/activities on iMessage, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on iMessage and those currently available on Facebook Blue.

> The FTC's present understanding is that iMessage does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. iMessage presents a user experience dedicated to mobile messaging, rather than maintaining a network of friends, family, and personal connections and sharing

experiences with them in a shared social space. See, e.g., SAC ¶ 172 (distinguishing personal social networking services from mobile messaging services).

Meta's own ordinary course records and other third-party evidence supply the relevant facts that support the FTC's understanding.



**LinkedIn**

As the FTC has previously explained in its Responses and Objections to Meta's

Interrogatory No. 14:

> Meta's List implies that the above-referenced features/activities are
> available on LinkedIn and are "similar" to features/activities available on
> Facebook Blue and Instagram. Meta's List at TikTok -8, 10, 12 (implying

16

similarity with Facebook Blue), 17 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on LinkedIn compared to other user features/activities on LinkedIn, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on LinkedIn and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that LinkedIn does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. LinkedIn presents a user experience dedicated to professional connections, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. See, e.g., SAC ¶ 173 (distinguishing personal social networking services from specialized social networking services such as LinkedIn). Ordinary course records and other evidence support the FTC's understanding. See, e.g.,



Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.





- PX14865 ("About LinkedIn" webpage)

- PX14903 (LinkedIn iOS App Store listing)

- PX14867 at 9, 15 (*LinkedIn Turns 20: An Oral History of an Unlikely Champion,*

Fast Company (Mar. 7, 2023)



- PX14869 at 8-9 (Nilay Patel, *'We Might Be Wrong, But We're Not Confused': How Tomer Cohen, Chief Product Officer at LinkedIn, Figures Out What Works Best*, The Verge (Dec. 20, 2022)

- Julianne Pepitone, *LinkedIn CEO: We're Adding a New User Every Second*, CNN Money (Nov. 18, 2010)*Full Transcript: LinkedIn Executive Editor Daniel Roth on Recode Media*, Vox (Feb. 3, 2017)

**Netflix**

As the FTC has previously explained in its Responses and Objections to

Meta's Interrogatory No. 14:

Meta's List implies that the above-referenced feature/activity is available on Netflix and is "similar" to a feature/activity available on Facebook Blue. Meta's List at 11 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often this feature/activity occurs on Netflix compared to other user features/activities on Netflix. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Netflix and those currently available on Facebook Blue.

The FTC's present understanding is that Netflix does not provide personal social networking services and the feature/activity identified above is

therefore not part of a personal social networking offering. Netflix presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. See, e.g., SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as Netflix). Ordinary course records and other evidence support the FTC's understanding.



Meta's own ordinary course records and other third-party evidence supply the relevant facts that support the FTC's understanding.



**Nextdoor**

As the FTC has previously explained in its Responses and Objections to Meta's Interrogatory No. 14:

Meta's List at 4-7, 9, 10-12 (implying similarity with Facebook Blue), 17

20

(implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on Nextdoor compared to other user features/activities on Nextdoor, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Nextdoor and those currently available on Facebook Blue and Instagram. The FTC's present understanding is that Nextdoor does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. Nextdoor presents a user experience dedicated to facilitating sharing only among users that reside in close proximity to one another, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. See, e.g., SAC ¶ 173 (distinguishing personal social networking services from specialized social networking services such as Nextdoor). Ordinary course records and other evidence support the FTC's understanding. See, e.g.,



Meta's own ordinary course records and other third-party evidence supply the relevant facts that support the FTC's understanding.





███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

**Pinterest**

As the FTC has previously explained in its Responses and Objections to

Meta's Interrogatory No. 14:

Meta's List implies that the above-referenced features/activities are
available on Pinterest and are "similar" to features/activities available on
Facebook Blue and Instagram. Meta's List at 4, 8, 11 (implying similarity with
Facebook Blue), 14-18 (implying similarity with Instagram). But Meta provides
no evidence to suggest that these particular features/activities function, are
presented, or are used similarly to any features/activities available on Facebook
Blue and Instagram. Meta provides no evidence regarding how often these
features/activities occur on Pinterest compared to other user features/activities on
Pinterest, or indeed that these particular features/activities ever occur at all. For
these, among other reasons, the FTC has not presently conducted such an analysis
comparing the individual features available on Pinterest and those currently
available on Facebook Blue and Instagram.

The FTC's present understanding is that Pinterest does not provide personal
social networking services and the features/activities identified above are
therefore not part of a personal social networking offering. Pinterest presents a
user experience dedicated to the broadcast or discovery of content based on
users' interests, rather than maintaining a network of friends, family, and
personal connections and sharing experiences with them in a shared social space.

24

See, e.g., SAC ¶ 174 (distinguishing personal social networking services from online services focused on the broadcast or discovery of content based on users' interests rather than their personal connections, such as Pinterest). Ordinary course records and other   evidence   support   the   FTC's  What is Pinterest?, https://help.pinterest.com/en/guide/all-about-pinterest ("Pinterest is a visual discovery engine for finding ideas like recipes, home and style inspiration, and more.").

Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.

**<u>Reddit</u>**

As the FTC previously explained in its Responses and Objections to Meta's

Interrogatory No. 14:

Meta's List implies that the above-referenced features/activities are available on Reddit and are "similar" to features/activities available on Facebook Blue. Meta's List at 6, 10, 13 TikTok (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often these features/activities occur on Reddit compared to other user features/activities on Reddit, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Reddit and those currently available on Facebook Blue.

The FTC's present understanding is that Reddit does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. Reddit presents a user experience dedicated to the broadcast or discovery of content based on users' interests, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. See, e.g., SAC ¶ 174 (distinguishing personal social networking services from online services focused on the broadcast or discovery of content based on users' interests rather than their personal connections, such as Reddit). Ordinary course records and other evidence support the FTC's understanding.



Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.



("Reddit's distinct impression that its users want to remain anonymous. *As a result,*



**Spotify**

As the FTC previously explained in its Responses and Objections to Meta's

Interrogatory No. 14:

> Meta's List implies that the above-referenced feature/activity is available
> on Spotify and is "similar" to a feature/activity available on Facebook Blue.
> Meta's List at 13 (implying similarity with Facebook Blue). But Meta provides
> no evidence to suggest that this particular feature/activity functions, is presented,
> or is used similarly to any features/activities available on Facebook Blue.  Meta
> provides no evidence regarding how often this feature/activity occurs on Spotify
> compared to other user features/activities on Spotify. For these, among other
> reasons, the FTC has not presently conducted such an analysis comparing the
> individual features available on Spotify and those currently available on
> Facebook Blue.

The FTC's present understanding is that Spotify does not provide personal social networking services and the feature/activity identified above is therefore not part of a personal social networking offering. Spotify presents a user experience dedicated to audio consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. See, e.g., SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as Spotify). Ordinary course records and other evidence support the FTC's understanding.



Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████

**Strava**

As the FTC previously explained in its Responses and Objections to Meta's

Interrogatory No. 14:

Meta's List implies that the above-referenced feature/activity is available on Strava and is "similar" to a feature/activity available on Facebook Blue. Meta's List at 8 (implying similarity with Facebook Blue). But Meta provides no evidence to suggest that this particular feature/activity functions, is presented, or is used similarly to any features/activities available on Facebook Blue. Meta provides no evidence regarding how often this feature/activity occurs on Strava compared to other user features/activities on Strava, or indeed that this particular feature/activity ever occurs at all. For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on Strava and those currently available on Facebook Blue.

The FTC's present understanding is that Strava does not provide personal social networking services and the feature/activity identified above is therefore not part of a personal social networking offering. Strava presents a user experience dedicated to interest-based connections, rather than maintaining a network of friends, family, and personal connections and sharing experiences

with them in a shared social space. See, e.g., SAC ¶ 173 (distinguishing personal social networking services from specialized social networking services such as Strava).  Ordinary course records and other evidence support the FTC's understanding.  See,

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

**TikTok**

As the FTC has previously explained in its Responses and Objections to Meta's Interrogatory No. 14:

> Meta has not identified any features/activities that TikTok offers its users, nor has it asserted that any of TikTok's features/activities are "similar" to those offered by Meta's products. Further, the FTC has not presently conducted such an analysis. Even so, in the interests of cooperation, the FTC's present impression is that the features/activities provided on TikTok are outside the definition of personal social networking because TikTok presents a user experience dedicated to entertainment through viewing short form video content from creators a user does not personally know, as well as creating and sharing short form video content to an audience that the poster does not personally know, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space.

> . . .

> Meta's List implies that the above-referenced features/activities are available on TikTok and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at 5, 11 (implying similarity with Facebook Blue), 13-16, 18 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on TikTok compared to other user features/activities on TikTok, or indeed that these particular features/activities ever occur at all. For these, among other reasons, the FTC has not presently

32

conducted such an analysis comparing the individual features available on TikTok and those currently available on Facebook Blue and Instagram.

The FTC's present understanding is that TikTok does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. TikTok presents a user experience dedicated to entertainment through viewing short form video content from creators a user does not personally know, as well as creating and sharing short form video content to an audience that the poster does not personally know, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. *See, e.g.*, SAC ¶ 176 (distinguishing personal social networking services from a content broadcasting and consumption service such as TikTok).

Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.







███████████████████████████████████████████████████████

████████

**Twitter**

As the FTC has previously explained in its Responses and Objections to

Meta's Interrogatory No. 14:

Meta's List implies that the above-referenced features/activities are
available on Twitter and are "similar" to features/activities available on
Facebook Blue, Instagram, and Facebook Messenger. Meta's List at 8-11, 13
(implying similarity with Facebook Blue), 14, 16, 18 (implying similarity with
Instagram), 18 (implying similarity with Facebook Messenger). But Meta
provides no evidence to suggest that these particular features/activities function,
are presented, or are used similarly to any features/activities available on
Facebook Blue, Instagram, and Facebook Messenger. Meta provides no
evidence regarding how often these features/activities occur on Twitter
compared to other user features/activities on Twitter, or indeed that these
particular features/activities ever occur at all. For these, among other reasons,
the FTC has not presently conducted such an analysis comparing the individual
features available on Twitter and those currently available on Facebook Blue,
Instagram, and Facebook Messenger.

The FTC's present understanding is that Twitter does not provide
personal social networking services and the features/activities identified above
are therefore not part of a personal social networking offering. Twitter presents a
user experience dedicated to the broadcast or discovery of content based on
users' interests, rather than maintaining a network of friends, family, and personal
connections and sharing experiences with them in a shared social space. See,
e.g., SAC ¶ 174 (distinguishing personal social networking services from online
services focused on the broadcast or discovery of content based on users'
interests rather than their personal connections, such as Twitter). Ordinary
course records and other evidence support the FTC's understanding. ████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████

Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.



Facebook, and I don't think we need to worry about them if we continue to create and



## YouTube

As the FTC has previously explained in its Responses and Objections to

Meta's Interrogatory No. 14:

> Meta's List implies that the above-referenced features/activities are available on YouTube and are "similar" to features/activities available on Facebook Blue and Instagram. Meta's List at 4-11 (implying similarity with Facebook Blue),13-14, 16 (implying similarity with Instagram). But Meta provides no evidence to suggest that these particular features/activities function, are presented, or are used similarly to any features/activities available on Facebook Blue and Instagram. Meta provides no evidence regarding how often these features/activities occur on YouTube compared to other user features/activities on YouTube, or indeed that these particular features/activities ever occur at all.  For these, among other reasons, the FTC has not presently conducted such an analysis comparing the individual features available on YouTube and those currently available on Facebook Blue and Instagram.

> The FTC's present understanding is that YouTube does not provide personal social networking services and the features/activities identified above are therefore not part of a personal social networking offering. YouTube presents a user experience dedicated to video consumption, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. See, e.g., SAC ¶ 175 (distinguishing personal social networking services from online services focused on video or audio consumption such as YouTube). Ordinary course records and other evidence support the FTC's understanding.



Meta's own ordinary course records and other third-party evidence supply the

relevant facts that support the FTC's understanding.



- Ofcom Online Nation 2019 Report at 13





**Facebook Blue Application**

       Meta's own statements and ordinary course documents as well as third-party evidence

provide relevant facts that suggest that its Facebook Blue Application provides personal social

networking services and the features/activities of the Facebook Blue Application Meta identified

in Meta's December 20, 2022 List of Features or Activities for Explanation are part of a personal

social networking offering, as set forth in the FTC's September 12, 2022 Response to Meta's

August 22, 2022 List of Features or Activities for Classification.



- PX12687 ("9 Quick Qs With the New Chief of News Feed, John Hegeman")

- PX12688 ("Widely Viewed Content Report: What People See on Facebook, Q2 2021 Report").



- PX13338-001 (Meta Newsroom article titled "Helping Make sure You Don't Miss Stories from Friends")









### Instagram Application

Meta's own statements and ordinary course documents as well as third-party evidence provide relevant facts that suggest that its Instagram Application provides personal social networking services and the features/activities of the Instagram Application Meta identified in Meta's December 20, 2022 List of Features or Activities for Explanation are part of a personal social networking offering, as set forth in the FTC's September 12, 2022 Response to Meta's August 22, 2022 List of Features or Activities for Classification.









The FTC directs Meta to its Responses and Objections to Interrogatory No. 18.

**<u>Facebook Messenger Application</u>**

       Meta's own statements and ordinary course documents and other third-party evidence

provide relevant facts that suggest that its Facebook Messenger Application does not provide

personal social networking services, and, with the exception of the Facebook Messenger Application Stories Feature, the features/activities of the Facebook Messenger Application identified in Meta's August 22, 2022 List of Features or Activities for Classification and its December 20, 2022 List of Features or Activities for Explanation are not part of a personal social networking offering. As the FTC explained previously in its September 12, 2022 response to Meta's August 22, 2022 List of Features or Activities for Classification, "For Messenger and WhatsApp, by contrast, nearly all features/activities are outside the definition of personal social networking because both applications present a user experience dedicated to mobile messaging, rather than maintaining a network of friends, family, and personal connections and sharing experiences with them in a shared social space. Stories, offered on Messenger, is the sole exception because it appears to be fully linked with Facebook's personal social networking services (e.g., users automatically cross-post Stories between Facebook and Messenger)."

- Evidence cited above for the Facebook Blue Application

- Facebook Help Center, Create and Share Your Story, https://www.facebook.com/help/1265605619115

- Facebook Help Center, When I share something to my story on Facebook, where does it appear?, https://www.facebook.com/help/1860890874146432





**Meta's Third Set of Interrogatories to the FTC (served April 3, 2023)**

**INTERROGATORY NO. 20:**

Identify all relevant facts supporting Your allegation that, if Meta had not acquired Instagram, consumers would have products or services that are better than those available today. *See* Am. Compl. ¶¶ 220-222.

**FTC's Supplemental Objections and Responses to Meta's Third Set of Interrogatories (served May 03, 2023)**

**RESPONSES & OBJECTIONS TO INTERROGATORY NO. 20:**

The FTC objects because "Interrogatory No. 20" constitutes at least the sixty-first interrogatory served by Meta, and thus exceeds the number of interrogatories permitted under the Court's Scheduling Order. ECF No. 103. The FTC further objects to "Interrogatory No. 20" as premature because it seeks information and evidence subject to ongoing factual discovery, which is not scheduled to close until May 22, 2023, and because it seeks information and evidence which may be the subject of expert discovery, which is not scheduled to close until January 5, 2024.  The FTC further objects to "Interrogatory No. 20" to the extent that it seeks to discover information and communications, including any mental impressions of counsel, that are protected from disclosure due to the work product privilege, deliberative process privilege, and any other applicable privilege. The FTC objects to this Interrogatory because the requirement to "Identify all relevant facts" is overly broad, unduly burdensome, and not proportional to the needs of the case. The FTC further objects to the extent that this Interrogatory seeks information or materials outside the FTC's possession, custody, or control. The FTC also objects because "better" is not defined and consumers may find the availability of different options to be "products or services that are better than those available today."

The FTC further objects that this request is vague, overly broad, and unduly

burdensome, and misstates the FTC's complaint. Paragraphs 220 through 222 do not allege in isolation that absent Meta's acquisition of Instagram, "consumers would have products or services that are better than those available today." Rather, these paragraphs read: The conduct described above harmed, and continues to harm, competition by limiting and suppressing competition that Facebook otherwise would have to face in the provision of personal social networking. As a result, users of personal social networking in the United States have been deprived of the benefits of competition for personal social networking.

220. Competition benefits users in some or all of the following ways: additional innovation (such as the development and introduction of new features, functionalities, and business models to attract and retain users); quality improvements (such as improved features, functionalities, integrity measures, and user experiences to attract and retain users); and consumer choice (such as enabling users to select a personal social networking provider that more closely suits their preferences, including, but not limited to, preferences regarding the amount and nature of advertising, as well as the availability, quality, and variety of data protection privacy options for users, including, but not limited to, options regarding data gathering and data usage practices).

221. Consumers have been harmed by the lack of sufficient competitive constraints on Facebook, which has enabled Facebook to exercise its monopoly power. Without meaningful competition, Facebook has been able to provide lower levels of service quality on privacy and data protection than it would have to provide in a competitive market.

222. Consumers have been harmed by the lack of sufficient competitive constraints on Facebook, which has enabled Facebook to exercise its monopoly power. Without meaningful competition, Facebook has been able to provide lower levels of service quality on privacy and data protection than it would have to provide in a competitive market.

These paragraphs outline, *inter alia*, that Meta has monopoly power in personal social networking services (paragraph 222); that Meta acquiring Instagram (part of "[t]he conduct described above" in paragraph 220) harmed and suppressed competition in personal social networking services; that Meta's monopoly power harms consumers (paragraphs 221-222); and that Meta's suppression of competition has protected its monopoly power and deprived

consumers of the benefits of competition, which impacts a variety of factors that harm consumers, including product quality, consumer choice, and innovation (paragraphs 221-222). Meta's Interrogatory is therefore not directed at any specific allegation contained in paragraphs 221-222 of the FTC's Complaint, and the FTC therefore cannot practically reply.

Further, an analysis of how Meta's monopoly power harms consumers, and the impact of Meta's anticompetitive conduct, is the proper province of expert reports and will be provided in the upcoming expert reports under the schedule provided in the Joint Scheduling Report.

The FTC stands on its objections.

**Meta's Third Set of Interrogatories to the FTC (served April 3, 2023)**

**INTERROGATORY NO. 21:**

Identify all relevant facts supporting Your allegation that, if Meta had not acquired WhatsApp, consumers would have products or services that are better than those available today. *See* Am. Compl. ¶¶ 220-222.

**FTC's Supplemental Objections and Responses to Meta's Third Set of Interrogatories (served May 03, 2023)**

**RESPONSES & OBJECTIONS TO INTERROGATORY NO. 21:**

The FTC objects because "Interrogatory No. 21" constitutes at least the sixty-second interrogatory served by Meta, and thus exceeds the number of interrogatories permitted under the Court's Scheduling Order. ECF No. 103. The FTC further objects to "Interrogatory No. 21" as premature because it seeks information and evidence subject to ongoing factual discovery, which is not scheduled to close until May 22, 2023, and because it seeks information and evidence which may be the subject of expert discovery, which is not scheduled to close until January 5, 2024.  The FTC further objects to "Interrogatory No. 21" to the extent that it seeks to discover information and communications, including any mental impressions of counsel, that are protected from disclosure due to the work product privilege, deliberative process privilege, and any other applicable privilege. The FTC objects to this Interrogatory because the requirement to "Identify all relevant facts" is overly broad, unduly burdensome, and not proportional to the needs of the case. The FTC further objects to the extent that this Interrogatory seeks information or materials outside the FTC's possession, custody, or control. The FTC also objects because "better" is not defined and consumers may find the availability of different options to be "products or services that are better than those available today."

The FTC further objects that this request is vague, overly broad, and unduly

59

burdensome, and misstates the FTC's complaint. Paragraphs 220 through 222 do not allege in isolation that absent Meta's acquisition of WhatsApp, "consumers would have products or services that are better than those available today." Rather, these paragraphs read:

> 220. The conduct described above harmed, and continues to harm, competition by limiting and suppressing competition that Facebook otherwise would have to face in the provision of personal social networking. As a result, users of personal social networking in the United States have been deprived of the benefits of competition for personal social networking.
>
> 221. Competition benefits users in some or all of the following ways: additional innovation (such as the development and introduction of new features, functionalities, and business models to attract and retain users); quality improvements (such as improved features, functionalities, integrity measures, and user experiences to attract and retain users); and consumer choice (such as enabling users to select a personal social networking provider that more closely suits their preferences, including, but not limited to, preferences regarding the amount and nature of advertising, as well as the availability, quality, and variety of data protection privacy options for users, including, but not limited to, options regarding data gathering and data usage practices).
>
> 222. Consumers have been harmed by the lack of sufficient competitive constraints on Facebook, which has enabled Facebook to exercise its monopoly power. Without meaningful competition, Facebook has been able to provide lower levels of service quality on privacy and data protection than it would have to provide in a competitive market.

These paragraphs outline, *inter alia*, that Meta has monopoly power in personal social networking services (paragraph 222); that Meta acquiring WhatsApp (part of "[t]he conduct described above" in paragraph 220) harmed and suppressed competition in personal social networking services; that Meta's monopoly power harms consumers (paragraphs 221-222); and that Meta's suppression of competition has protected its monopoly power and deprived consumers of the benefits of competition, which impacts a variety of factors that harm consumers, including product quality, consumer choice, and innovation (paragraphs 221-222). Meta's interrogatory is therefore not directed at any specific allegation contained in paragraphs 221-222 of the FTC's Complaint, and the FTC therefore cannot practically reply. Further, an

analysis of how Meta's monopoly power harms consumers, and the impact of Meta's anticompetitive conduct, is the proper province of expert reports and will be provided in the upcoming expert reports under the schedule provided in the Joint Scheduling Report.

The FTC stands on its objections.

**Meta's Third Set of Interrogatories to the FTC (served April 3, 2023)**

**INTERROGATORY NO. 22:**

Identify all relevant facts supporting Your PSNS market definition, *see* Am. Compl.

¶¶ 166-176, with respect to the "practical indicia" enumerated in *Brown Shoe v. United States*,

370 U.S. 294, 325 (1962).

**FTC's Supplemental Objections and Responses to Meta's Third Set of
Interrogatories (served May 03, 2023)**

**RESPONSES & OBJECTIONS TO INTERROGATORY NO. 22:**

The FTC objects because "Interrogatory No. 22" constitutes at least the sixty-third

interrogatory served by Meta, and thus exceeds the number of interrogatories permitted under

the Court's Scheduling Order. ECF No. 103. The FTC further objects to "Interrogatory No. 22"

because it seeks information and evidence which may be the subject of expert discovery, which

is not scheduled to close until January 5, 2024. The FTC further objects to "Interrogatory No.

22" to the extent that it seeks to discover information and communications, including any mental

impressions of counsel, that are protected from disclosure due to the work product privilege,

deliberative process privilege, and any other applicable privilege. The FTC directs Meta to its

responses to Interrogatory Nos. 10, 13, 14, and 16. The FTC is unable to respond to this

Interrogatory without violating attorney work product or creating expert work product.

The FTC stands on its objections.

**Meta's Third Set of Interrogatories to the FTC (served April 3, 2023)**

**INTERROGATORY NO. 23:**

Identify all relevant facts supporting Your allegation, in Paragraphs 2, 169, and

184 of the Amended Complaint, that Snapchat provides PSNS in the United States.

**FTC's Supplemental Objections and Responses to Meta's Third Set of
Interrogatories (served May 03, 2023)**

**RESPONSES & OBJECTIONS TO INTERROGATORY NO. 23:**

The FTC objects because "Interrogatory No. 23" constitutes at least the sixty-

fourth interrogatory served by Meta, and thus exceeds the number of interrogatories permitted

under the Court's Scheduling Order, ECF No. 103. The FTC further objects to "Interrogatory

No. 23" because it seeks information and evidence which may be the subject of expert

discovery, which is not scheduled to close until January 5, 2024. The FTC further objects to

"Interrogatory No. 23" to the extent that it seeks to discover information and communications,

including any mental impressions of counsel, that are protected from disclosure due to the work

product privilege, deliberative process privilege, and any other applicable privilege. The FTC

further objects as this Interrogatory seeks information that is redundant of the information

provided in response to Interrogatory No. 13. As such, the FTC direct Meta to its Interrogatory

No. 13 response.

The FTC stands on its objections.