# EXHIBIT 23

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

   * * * * * * * * * * * * * * *
 FEDERAL TRADE COMMISSION,          )  Civil Action
              Plaintiff,            )  No. 20-3590
 vs.                                )
                                    )
 META PLATFORMS, INC.,              )  May 15, 2023
              Defendant.            )  10:01 a.m.
                                    )  Washington, D.C.
   * * * * * * * * * * * * * * *
```

## TRANSCRIPT OF PROCEEDINGS
### BEFORE THE HONORABLE JAMES E. BOASBERG,
### UNITED STATES DISTRICT COURT CHIEF JUDGE

*(All parties appearing by videoteleconference.)*

**APPEARANCES**:

```
FOR THE FEDERAL TRADE COMMISSION:
            SUSAN MUSSER
            DANIEL JOHN MATHESON
            Federal Trade Commission
            Bureau of Competition
            400 7th Street, SW
            Washington, DC 20024
            (573) 680-5191
            Email: smusser@ftc.gov
            Email: dmatheson@ftc.gov

FOR META:   MARK CHARLES HANSEN
            GEOFFREY M. KLINEBERG
            Kellogg, Hansen, Todd, Figel & Frederick, PLLC
            1615 M Street, NW, Suite 400
            Washington, DC 20036
            (202) 326-7904
            Email: mhansen@kellogghansen.com
            Email: gklineberg@kellogghansen.com
```

Court Reporter: Elizabeth Saint-Loth, RPR, FCRR

This hearing was held via videoconference and is, therefore, subject to the limitations associated with audio difficulties while using technology, i.e., audio feedback, static interference, etc.

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  We're here today for a
 3    motion hearing in Civil Matter 20-3590, Federal Trade
 4    Commission versus Meta Platforms, Inc.
 5              Beginning with counsel for the plaintiff, state
 6    your name for the record.
 7              MS. MUSSER:  Good morning.
 8              This is Susan Musser, and I'm joined by my
 9    colleague Daniel Matheson on behalf of the FTC.
10              THE COURT:  Welcome.
11              MR. KLEINBERG:  Good morning, Your Honor.
12              Geoffrey Klineberg from Kellogg Hansen, on behalf
13    of Meta Platforms, Inc.  Joining me this morning are Eric
14    Meiring, who is the associate general counsel with Meta's
15    legal department; and my partner Daniel Dorris, from Kellogg
16    Hansen, who will be addressing the Court's questions on
17    Meta's motion to compel.
18              THE COURT:  Okay.  Great.  Thank you.
19              Welcome to you, folks, as well.
20              All right.  I was hoping to do this rather quickly
21    this morning.  A few questions.
22              Let me start with Interrogatory 16.  I guess I am
23    not sure what the problem is here.
24              Mr. Dorris, if the FTC certifies that it has
25    provided a full and complete response to Interrogatory
```

1    No. 16 based on the evidence available to it at this time,
2    why isn't that good enough?
3              MR. DORRIS:  Your Honor, this one, thankfully, has
4    been resolved.  The certification provided in the FTC's
5    certification's brief satisfies us.  Up until then, it
6    wasn't clear, but the brief satisfies us.
7              THE COURT:  Glad to know what I thought was an
8    easy one was resolved.
9              Any of the others before I start, Mr. Dorris, or
10   no such luck?
11             MR. DORRIS:  No resolution on the other ones yet.
12             THE COURT:  All right.  So we have got 20 through
13   23.  I guess -- so it seems to me that Meta is generally
14   right on 20 to 21.
15             You know, I looked, Ms. Musser, for example, at
16   paragraph 221 of your amended complaint, and 222.  And it
17   seems you allege fairly clearly that Meta's monopoly has
18   deprived consumers of additional innovation, quality
19   improvements, consumer choice; and then you say Facebook has
20   been able to provide lower levels of service quality or
21   privacy and data protection.
22             So why shouldn't you have to give facts -- and so
23   it seems to me 20 and 21 rise and fall together.  Why
24   shouldn't you then have to identify each additional
25   innovation, quality improvement, consumer choice, and better

1    levels of service quality that the consumers would have had
2    absent the acquisition; isn't that, sort of, the fundamental
3    point of your suit?
4            MS. MUSSER:  Your Honor, I think it's helpful to
5    go back to the actual language that they request in the
6    interrogatories.  What they asked for isn't for the issues
7    that you just stated but, rather, for a -- with the relevant
8    facts that support the FTC's contention that the -- that
9    there would have been a better product.  Right?
10           And when you look at the allegations in -- 220
11   through 222, what those allege is that:  But for Meta's
12   illegal conduct there would have been -- consumers would
13   have benefited from competition.  Now, how consumers would
14   have benefited from competition, the specific parameters,
15   will be analyzed by our expert or experts during expert
16   discovery.  So I think it is important to kind of
17   differentiate those two.
18           In the FTC's mind, what 220 to 222 actually do is
19   look at that "but for" world, which is very similar to
20   Interrogatory 20 that Your Honor decided that Meta did not
21   have to answer last week.  So --
22           THE COURT:  But I feel like it's more closer to
23   the one that I required Meta to answer, saying that "such
24   as," for example, wasn't sufficient; that, in 221, we have a
25   lot of "such as" language and "including but not limited to"

1    language, right?

2             MS. MUSSER:  Yes, Your Honor.

3             However, again, I think when you look at the

4    actual question that they ask, that is not a contention that

5    the FTC has made in those paragraphs but, rather, talks

6    about the holistic benefits of competition in that "but for"

7    world.  The actual allegation that the products would have

8    been better is not a contention made, although that will

9    certainly be part of the contours of expert analysis.  So I

10   think that's the fundamental disconnect here.

11            THE COURT:  I mean, that seems to me -- I am not

12   sure I am agreeing that you are saying that the complaint

13   doesn't allege that it would be better.  But when you say in

14   the complaint that Meta -- that Facebook's monopoly has

15   deprived consumers of certain things, isn't that pretty

16   clear that you are saying that they would be better without

17   that monopoly; in other words, they wouldn't be deprived, so

18   things would be better?

19            MS. MUSSER:  What we're alleging, Your Honor, is

20   that competition could have manifested in a myriad of ways;

21   not only that products were better but, rather, that there

22   could have been differentiation or more services available,

23   that there would have been more choice for consumers.  It's

24   not that narrow contention that Meta is trying to cabin us

25   into; but, rather, a complete analysis of the "but for"

```
 1    world.  We look at all of those factors.  Are there more
 2    choices?  Does the product have a new feature that would
 3    have arisen but for Meta's in a competitive product?
 4              THE COURT:  All right.  Mr. Dorris, do you want to
 5    respond to that?
 6              MR. DORRIS:  Yes, Your Honor.
 7              I think, in paragraph 222, as you pointed out, the
 8    allegation is both:  Facebook has been able to provide lower
 9    levels of service quality on privacy and data protection
10    than it would have been able to provide in a competitive
11    market; so that is an allegation about the "but for" world,
12    about how the products are better or worse.  So we think
13    that that is what the FTC alleged.
14              In any event, even if it wasn't, I think what I
15    just heard the FTC say was that they will be contending that
16    the products are worse as a result of these acquisitions;
17    and what we're looking for is the factual basis for that
18    now, understanding there may be an additional expert gloss
19    on this.  But if the FTC has facts currently to support
20    those allegations, it should provide them right now.
21              THE COURT:  I am going to require you to respond,
22    Ms. Musser, on 220 -- I'm sorry, on 20 and 21; that you have
23    got to give facts that support those contentions that
24    consumer-rooted products or services that are better.  So I
25    think -- specifically, on the four that I mentioned,
```

```
 1    additional innovation, quality improvement, consumer choice,
 2    and the lower levels of service, quality or privacy and data
 3    protection.  I think that's what is contended, and I think
 4    that Meta gets a chance to hear what you have to say.
 5              Again, you are going to -- we're at almost expert
 6    discovery and, again, you are going to be able to do that
 7    and provide further analysis in expert discovery, but I
 8    think you need to respond to 20 and 21, as I mentioned.
 9              Okay.  22, probably because Mr. Klineberg drafted
10    this, I am sure this one -- I can't really follow
11    Interrogatory 22, so I am not blaming the FTC for not being
12    able to follow it.
13              I think it reads a little bit more like what a
14    table of contents might be in a summary judgment motion.  So
15    I think given this phrasing I am not going to require the
16    FTC to respond to that one.
17              On 23, I am going to require a response on this.
18              Again, Snapchat discovery is finished, right,
19    Ms. Musser?  Any further Snapchat discovery ongoing?
20              MS. MUSSER:  I believe we still have additional
21    depositions that will take place.
22              THE COURT:  On Snapchat, folks?  You are saying
23    Snapchat people --
24              MS. MUSSER:  Yes.
25              THE COURT:  All right.  So I will let you answer
```

1    it when those are done, but you have to answer it.
2            In other words, I believe they're providing PSNS
3    and, then, that is entitled to all of the facts you think
4    support that.  I don't think that Interrogatory 13 fully
5    responds, so I think that fully covers you.  I think you do
6    need to respond to 23.  I won't make you respond until you
7    are done with them; Snapchat discovery.
8            So I assume that's -- all of that is going to be
9    done soon.  But, when it's done, you are going to need to
10   respond to that.
11           So the answer is:  I am granting Facebook's motion
12   on 20, 21, and 23.  I am denying 22, and 16 is moot.
13           Any other questions?
14           And, Mr. Dorris, do you want a timetable to
15   respond?  Part of it, maybe, depends on where you folks are
16   in your discussions about wrapping up this discovery in the
17   next couple of weeks.
18           MR. DORRIS:  Yes.  Certainly, that will be
19   helpful, Your Honor.  You know, the expert reports are
20   coming up, and that's really what we want the materials for.
21           So for them to be meaningful responses, it needs
22   to come in advance of the FTC's report so our experts can
23   start to use the information and work on their own reports.
24           On the Snap [sic] depositions, Ms. Musser is
25   right, there are two left I believe to be conducted within

1   the next week, or maybe a little more than a week.  But I
2   don't understand those two to relate to the specific
3   definition in the market definition; they relate to
4   advertising and infrastructure issues.  So I think they
5   fairly have all of the discovery they're going to need to
6   respond to this one.
7               I don't have a specific date in mind; but knowing
8   that the expert reports are due July 3rd, for it to be
9   meaningful, the responses need to come in advance of that.
10              THE COURT:  Okay.  Ms. Musser, do you want to give
11  me a proposed date for the response of the three
12  interrogatories that I am ordering today?
13              MS. MUSSER:  Yes, with just one correction from
14  Mr. Dorris.
15              We do have one Snap [sic] deposition that's taking
16  place out of time.  I also understand that the specific
17  issues that they are testifying to has changed.  So our view
18  is that we do need those depositions in order to fully
19  request that.
20              So I would -- for these interrogatories, say two
21  weeks after the last Snap deposition for a response.  And I
22  will also note that I believe Your Honor ordered a response
23  to 'rogs 10 to 12 supplementation that the FTC still hasn't
24  gotten, so we would like an understanding that we can have a
25  mutually agreed-upon time here.  But that would be our

```
 1   proposal.
 2            THE COURT:  All right.  So 23, though, that is the
 3   only one that refers to Snapchat.  How about the other two?
 4   By the end of May, May 31st, for the others?
 5            MS. MUSSER:  Yes.  May 31st will work.
 6            THE COURT:  And, Mr. Dorris or Mr. Klineberg, you
 7   can get the FTC your responses to Interrogatories 10 through
 8   12 by the 31st?
 9            MR. KLINEBERG:  Yes, Your Honor.  We certainly can
10   by the 31st.
11            THE COURT:  And then, I will say -- when is the
12   last Snap deposition, Ms. Musser?
13            MS. MUSSER:  Your Honor, one second.  I am asking
14   my colleague.  I believe it's the week after the close of
15   fact discovery.  There is one out of time, but I am not sure
16   right now.
17            THE COURT:  I will say -- I will say --
18            MR. DORRIS:  If it helps, I believe it's May 25th,
19   the last deposition.
20            THE COURT:  All right.  I am going to say --
21   thanks.
22            I will say June 7 for the Interrogatory 23
23   response, Ms. Musser.  That's almost two weeks after the
24   last one, if Mr. Dorris is correct.  Okay?
25            MS. MUSSER:  Thank you, Your Honor.
```

```
 1                  THE COURT:  Okay.  So any other issues on this
 2     motion or anything else that -- well, let's start, anything
 3     else?
 4                  I think that this covers this motion.
 5                  Mr. Dorris?
 6                  MR. DORRIS:  Yes, Your Honor.  It does.
 7     Thank you.
 8                  THE COURT:  Ms. Musser?
 9                  MS. MUSSER:  Yes, it does, Your Honor.
10                  THE COURT:  All right.  So then does Meta have any
11     idea -- I guess the briefs are due at noon today -- I think;
12     whether we're getting disputes for what we are having a
13     hearing for on Wednesday or not?
14                  MR. KLINEBERG:  I think, Your Honor, it is still
15     up in the air.  My understanding is that negotiations are
16     happening.  So it's possible, but I don't know for sure yet.
17                  THE COURT:  Sorry to take you both away from those
18     negotiations as the clock winds down.  Okay.  We'll see what
19     we have.
20                  And then, otherwise -- I am sure you folks have
21     things crammed in for the next couple of weeks, and then I
22     will see what the next -- what the final fact discovery
23     report -- I think the end of May is due.
24                  Any other issues that either side wants me to
25     address today, Mr. Klineberg or Mr. Dorris?
```

```
 1                MR. DORRIS:  Nothing, Your Honor.
 2                THE COURT:  Okay.  Ms. Musser?
 3                MS. MUSSER:  Nothing from FTC.
 4                THE COURT:  All right.  Thanks so much.  Good luck
 5      finishing up.  We'll memorialize this in an order.
 6                Thank you.
 7                MR. KLINEBERG:  Thank you, Your Honor.
 8                MS. MUSSER:  Thank you.
 9                (Whereupon, the proceeding concludes, 10:15 a.m.)
10                              * * * * *
11                              **CERTIFICATE**
12
13                I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
14      certify that the foregoing constitutes a true and accurate
15      transcript of my stenographic notes, and is a full, true,
16      and complete transcript of the proceedings to the best of my
17      ability.
18                This certificate shall be considered null and void
19      if the transcript is disassembled and/or photocopied in any
20      manner by any party without authorization of the signatory
21      below.
22
            Dated this 16th day of May, 2023.
23
            /s/ Elizabeth Saint-Loth, RPR, FCRR
24          Official Court Reporter
25
```