# EXHIBIT 25

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

May 25, 2023

*Via Electronic Mail*

Susan Musser, Esq.
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024

      Re:    *FTC v. Meta Platforms, Inc.*, Case No. 1:20-cv-03590-JEB

Dear Susan:

      I write concerning Meta's Rule 30(b)(6) deposition of the FTC. At that deposition, the witness was unprepared to testify regarding Topic 6: "The facts supporting Your Response to Meta's List of Features or Activities (Sept. 12, 2022) and Your responses to Meta's Interrogatory Nos. 13, 14, and 16." The FTC also obstructed questioning on that topic through improper speaking objections and instructions not to answer based on either scope or privilege. Meta requests that the FTC answer its legitimate questions contained herein – either in writing or by renewed deposition. If the FTC does not commit to doing so, Meta intends to raise this issue in the May 31 Joint Status Report.

**I.**    **The Scope Of The Deposition**

      Meta has repeatedly sought an explanation of what is included within the FTC's market definition and the facts supporting those contentions. Such discovery is proper and not privileged. *See* Fed. R. Civ. P. 33(a)(2); *Barnes v. Dist. of Columbia*, 270 F.R.D. 21, 24 (D.D.C. 2010). It is also crucial to this case because, without "an accurate definition of the relevant market" that describes "the area of effective competition" and "reflects commercial realities," there is "no way to measure" whether Meta has any "ability to lessen or destroy competition" and harm consumers. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018).

      On March 30, 2022, Meta served Interrogatory No. 10 seeking the FTC's contention as to whether specific features and activities on Meta's services are included within the FTC's personal social networking services market. The FTC refused to provide a full response, until

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Susan Musser, Esq.
May 25, 2023
Page 2

ordered to do so by the Court. *See* ECF No. 264, at 2. The FTC then answered that every specified feature or activity (except Facebook Dating) was personal social networking.

On October 17, 2022, Meta served Interrogatory Nos. 13 and 14 seeking the FTC's contention as to whether time spent on specified features and activities counted as time spent using personal social networking services when done on (1) other third-party services that the FTC had excluded from its market definition (Interrogatory No. 13), and (2) on other third-party services that the FTC had included within its market definition (Interrogatory No. 14), and to explain the bases for those contentions. *See id.* at 2-3. The FTC again refused to provide meaningful responses until Meta raised the issue in a Joint Status Report – at which point the FTC agreed to respond as to 100 feature or activity pairs. *See* ECF No. 227, at 8.

The FTC responded to Interrogatory Nos. 13 and 14 by stating that all time spent on the specified similar features and activities on third-party services that the FTC had excluded from its market definition did not count as time spent using personal social networking services (Interrogatory No. 13), and that all time spent on the specified similar features and activities on third-party services that the FTC had included within its market definition did count as time spent using personal social networking services (Interrogatory No. 14). The FTC represented that it had not "conducted such a feature-by-feature analysis" comparing the features and activities on Meta's services to other services. As the Court noted, the FTC's response "offered little more than the core market definition of its Amended Complaint." ECF No. 281, at 8.

On April 3, 2023, Meta served Interrogatory No. 16 seeking the factual basis for the FTC's contentions that (1) all time spent on the specified features and activities on Meta's services counts as time spent using personal social networking services (Interrogatory No. 10), but (2) all time spent on a corresponding listed feature on another non-Meta application (such as iMessage or TikTok) did not count as personal social networking services (Interrogatory No. 14). Meta also served a Rule 30(b)(6) notice on the FTC with Topic 6: "The facts supporting Your Response to Meta's List of Features or Activities (Sept. 12, 2022) and Your responses to Meta's Interrogatory Nos. 13, 14, and 16." The Court had previously noted that the explanations Meta sought regarding the FTC's factual contentions for the FTC's market definition would properly be the subject of a Rule 30(b)(6) deposition. *See* 2/9/2023 Tr. 22:1-10.

The FTC responded to Interrogatory No. 16 by reiterating its (scant) narrative explanations that it had previously given in response to Interrogatory Nos. 13 and 14, and by citing many documents without explanation, pin-cites, or parentheticals of what "relevant facts" within the documents supported the FTC's contentions. The FTC also reiterated that it had not conducted a "feature-by-feature analysis."

Meta proceeded to take the Rule 30(b)(6) deposition of the FTC to better understand the factual basis for the FTC's contentions. This is straightforward discovery of another party's contentions for use in preparing Meta's own case – including in its upcoming expert reports and in summary judgment briefing.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Susan Musser, Esq.
May 25, 2023
Page 3

Specifically, Meta sought the answer to the following important questions about "the facts" on which the FTC was relying for its contentions:

1. Do the FTC's classifications of the specified features and activities depend on any facts regarding the reasons why consumers use those features and activities (for example, to communicate with friends and family or for entertainment)? And if so, explain those factual contentions and provide the factual support on which the FTC relies.

2. Do the FTC's classifications of the specified features and activities depend on any facts regarding how consumers actually use those features and activities (for example, to communicate with friends and family or for entertainment)? And if so, explain those factual contentions and provide the factual support on which the FTC relies.

3. Do the FTC's different classifications of the specified pairs of features and activities depend on any facts regarding the similarity or lack of similarity of the user experience for those pairs of features and activities? And if so, explain those factual contentions and provide the factual support on which the FTC relies.

4. Do the FTC's different classifications of the specified pairs of features and activities depend on any facts regarding the circumstances under which consumers would be willing to switch, or have actually switched, between the paired features and activities (for example, switching from watching Instagram Reels to watching TikTok because the user finds the TikTok videos better, or vice versa)? And if so, explain those factual contentions and provide the factual support on which the FTC relies.

5. Do the FTC's different classifications of the specified pairs of features and activities depend on any facts regarding whether there are impediments to consumers switching between the paired features and activities? And if so, explain those factual contentions and provide the factual support on which the FTC relies.

Meta has sought to understand the FTC's factual contentions for each of these questions because the facts sought are crucial to the core market definition issue: Do consumers substitute between use of Meta's services for services that the FTC has excluded from its market definition?

Meta's understanding from the FTC's responses is that the FTC is not relying on any facts underlying these questions because the FTC has stated it has not conducted a "feature-by-feature analysis" and because the documents cited by the FTC do not appear to provide any facts relevant to these questions. Meta has sought discovery on these issues to ensure that it has not misunderstood the factual support for the FTC's case, so that it can appropriately prepare its expert reports and motion for summary judgment.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Susan Musser, Esq.
May 25, 2023
Page 4

## II. The Rule 30(b)(6) Deposition

The witness was wholly unprepared to provide any meaningful testimony on the questions identified above (and many others), and counsel for the FTC improperly obstructed the deposition in response to nearly every question asked. We outline these issues below.

*First*, the witness repeatedly responded to questions by explaining that he could not offer any answers beyond the text of the interrogatory responses. *See*, *e.g.*, Tr. at 284:6 – 284:11 ("If you're asking me why the FTC responded the way it did, which I think is what you're asking, the FTC's explanation of that, as set forth earlier in the document, the part we've been talking about at some great length, I – I can't speculate beyond that."). Meta understands the FTC's position to be that, because the topic was "the facts supporting" the FTC's interrogatory responses, the witness only needed to respond by reciting the interrogatory responses verbatim and without answering any additional questions regarding those facts. That is not a reasonable interpretation of the noticed topic. If that was the whole scope of the noticed topic, there would be no purpose for the Rule 30(b)(6) deposition because Meta already has the interrogatory responses.

Courts routinely reject such hypertechnical readings of discovery requests. *See Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014); *In re Depuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litig.*, No. 13-1071, ECF No. 314, at 10, 16-17 (N.D. Tex. Aug. 12, 2016) (ruling in response to a Rule 30(b)(6) witness that was prepared only to read from documents without additional detail: "Bottom line, you didn't comply. Period. I'm just going to think about how hard I'm going to sanction you. . . . I'm assuming that somewhere along the way you had a brain spasm or something that made you think that a 30(b)(6) witness might as well just" be anyone that "can read").

*Second*, FTC counsel made numerous paragraph-long speaking objections that the questions exceeded the scope of the notice. *See*, *e.g.*, Tr. at 40:15-22 ("Object to form. Also object to the extent that it's going outside the scope of the FTC's interrogatory response, to the extent that – and to the extent that you're calling for Mr. Takashima's legal analysis on behalf of the FTC. If he can answer without doing so, if he's able, he can."). (The question was about whether the FTC relied on facts regarding how consumers perceive various features, not "legal analysis," and it was well within the scope of the notice.) As an initial matter, the speaking objections by themselves were improper, as they influenced the witness's testimony. *See*, *e.g.*, Tr. at 48:5-22 (after prompting by scope objection, witness responding "[b]ut you're asking me about something that at least I don't see in the responses"); 111:8-112:19 (witness reading interrogatory response into record after prompting by an objection to "answer consistent with the rog response"); *see Alexander v. FBI*, 186 F.R.D. 21, 52 (D.D.C. 1998).

More fundamentally, FTC counsel went beyond objecting based on scope: it instructed the witness – more than 30 times – to not testify as the FTC's Rule 30(b)(6) designee and instead in his personal capacity. *See* Tr. 95:6-8 ("When I'm objecting to scope, I'm directing him to testify in his personal capacity, not on behalf of the FTC."). These instructions not to answer on

Susan Musser, Esq.
May 25, 2023
Page 5

behalf of the FTC were improper. *See In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 175 (D.D.C. 2003) (sanctioning party and counsel for "repeatedly" instructing 30(b)(6) witness to "not testify regarding the factual bases for, and accuracy of [party's] governmental submission"); *see also Medline Indus., Inc. v. Wypetech, LLC*, 2020 WL 6343089, at *2 (N.D. Ill. Oct. 29, 2020) (sanctioning counsel who "repeatedly instructed Medline's corporate witnesses not to answer questions on the ground that the questions were beyond the scope of Wypetech's Rule 30(b)(6) deposition notice"); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 8667511, at *1 (E.D. Tex. Jan. 8, 2008) (collecting cases).

To compound matters, the FTC's scope objections lacked merit. As explained above, the topic was "the facts supporting" the FTC's interrogatory responses; questions about those facts, including what types of facts the FTC was or was not relying on were well within the scope of the Rule 30(b)(6) notice. Yet the FTC objected based on scope (thus instructing the witness not to answer) to all such questions, and even to questions that tracked the literal language of the noticed topic. *See*, *e.g.*, Tr. 227:19-228:7 (objecting to scope to question that quoted interrogatory responses and the notice topic "verbatim": "Can you please, in your own words, explain to me the factual basis for why 'Viewing content of any form (such as items for sale) that was not posted by one of user's Facebook Friends' is personal social networking services?"); *see also* Tr. 70:12-19 (objecting to question that quoted an interrogatory and answer verbatim as "misrepresent[ing] our rog response").

*Third*, FTC counsel repeatedly instructed the witness not to testify on privilege grounds without any legal basis for doing so. It is black letter law that a party may seek discovery of another party's factual contentions without invading attorney work product. *See United States v. All Assets Held in Acct. No. XXXXXXXX*, 2019 WL 13197264, at *2 (D.D.C. June 12, 2019) (compelling government to provide additional Rule 30(b)(6) testimony; observing work product "may not be used as a blanket excuse to justify the designee's failure to learn non-privileged, relevant facts"); *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003) (compelling party " to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts . . . regardless of whether such facts are memorialized in work product protected documents or reside in the minds of counsel"). Here, Meta sought only ordinary discovery to understand the contours of the FTC's case. There is no legitimate privilege objection to this type of discovery.

### III.  Meta's Requested Relief

Meta asks that the FTC agree to answer the questions set forth in Part I in writing for each of the specified features and activities or to provide additional Rule 30(b)(6) time with a witness prepared to answer those questions. If the FTC answers in writing, it should certify that the answers are "full and complete to the best of [the FTC's] knowledge and belief." ECF No. 281, at 4. Meta expects that these questions should be straightforward for the FTC to answer at this late stage of the case and given the FTC's repeated statements that it has not conducted, does not rely on, and does not even find relevant, a "feature-by-feature analysis." Meta requests that

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Susan Musser, Esq.
May 25, 2023
Page 6

the FTC either provide the answers in writing or arrange for additional Rule 30(b)(6) time by June 7– the same deadline the Court imposed for other outstanding interrogatory responses by the FTC.

      If the FTC does not agree to this relief, Meta intends to raise this issue in the upcoming Joint Status Report. It will request up to eight pages to brief this issue for the Court in the Joint Status Report. Meta also reserves its ability to seek additional relief in light of the FTC's conduct at the Rule 30(b)(6) deposition. If the FTC does not agree with this method of presenting the dispute, please let us know so that we can call the Court.

                                    Sincerely,

                                      */s/ Dan Dorris*

                                    Daniel V. Dorris

                                    Counsel for Meta Platforms, Inc.