IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 1:20-cv-03590-JEB

## JOINT STATUS REPORT

The parties submit this Joint Status Report pursuant to the Court's request for proposals to make trial more efficient. *See* Min. Entry (Nov. 25, 2024).

## I.    EXHIBITS

### A.    Sponsoring Witness Requirement

**1.    Plaintiff's Position: The Court will substantially increase efficiency by clarifying that the parties are not required to call a live "sponsoring witness" for each exhibit they seek to admit into evidence, and by establishing a process for raising objections to the admissibility of exhibits that are not introduced through a live witness.**

The FTC asks this Court to clarify that the FTC is not required to call a live "sponsoring witness" to establish the admissibility of an exhibit—for example, a business record—and to ultimately move exhibits into evidence. This is the same approach taken by the *Google* court. *See* Order at 1-2, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Aug. 28, 2023), ECF No. 666 (attached as Ex. A); Final Pretrial Conf. Tr. at 84-88, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Sept. 12, 2023), ECF No. 696 (attached as Ex. B). Under the *Google* approach, the parties moved exhibits into evidence both with and without a "live" sponsoring witness. *See* Ex. A at 1 ("The parties may move any exhibits not presented through a

live witness into evidence before resting their case in chief."). The *Google* court resolved any evidentiary disputes regarding exhibits used without a sponsoring witness on an as-needed basis. *Id.* at 2. This is exactly what the FTC proposes here.

This proposal increases efficiency by avoiding the need to call witnesses to mechanically "admit" documents when there is either no dispute regarding the authenticity and admissibility of the document or when any dispute can be resolved with no imposition on witnesses' time. In particular, this proposal will avoid needlessly burdening third parties and Meta's witnesses when there is no dispute that the statements within a document constitute admissible evidence—for example, where the document constitutes a business record. *See* Ex. B at 87 (discussing needlessness of calling a sponsoring witness to admit a document where neither party disputes a third party's certification provided pursuant to Fed. R. Evid. 902(11)).

Importantly, just as in *Google*, this proposal will not prevent either party from raising any appropriate objections to the admissibility of documents or particular statements within documents. The Court can also increase efficiency by instructing the parties promptly regarding the Court's preferred process for raising and resolving such objections. The FTC suggests that, just as in *Google*, the Court instruct the parties to raise objections to exhibits that are not introduced through a live witness either in each party's post-trial filings, or through another appropriate vehicle convenient for the Court. *See* Ex. A at 2 ("The parties can raise objections to [exhibits that are not presented through a live trial witness] in a responsive [Proposed Findings of Fact and Conclusions of Law] or a separate responsive submission. If an evidentiary dispute pertains to an exhibit of consequence, the court will resolve it as part of its final ruling.").

Also as in *Google*, to maximize efficiency, the parties should engage in a pre-trial process of exchanging preliminary lists of proposed exhibits, raising objections to the admissibility of

those exhibits or to statements within those exhibits, and resolving or preserving such objections in an efficient fashion. Indeed, the FTC proposed to Meta several weeks ago a process and a potential schedule for raising and resolving such objections. *See* D. Matheson Ltr. to M. Hansen (Nov. 15, 2024) at 2 (attached as Ex. C). Following the Court's instruction on this matter, the parties should promptly meet and confer and present to the Court proposals regarding the timing and details of such a process.

The FTC's proposal will not risk cluttering the trial or the parties' Proposed Findings with documents that are unhelpful to the Court. The FTC will make every effort to highlight the evidence that is most salient to its case through witnesses at trial or in designated deposition testimony and anticipates that Meta will do the same. *Cf.* Ex. A at 2 ("[T]he court expects that key exhibits will be presented during the trial itself or will have been discussed in designated deposition testimony.").

Meta's contrary proposal is not designed to increase the efficiency of trial proceedings. Meta does not claim that insisting on a sponsoring witness for every document will shorten the length of trial—indeed, Meta's own authority establishes that its proposal will have the opposite effect. Meta relies heavily on *AT&T*, its sole authority from within this district: there the court expressly noted that it "generally instructed the parties to seek admission of documents through sponsoring witnesses . . . recognizing that doing so would <u>extend</u>, somewhat, the length of the trial." *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 187 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019) (emphasis added). Meta appears to suggest that despite this sacrifice of efficiency, this Court should insist on a sponsoring witness for each document in order to "contextualize and explain" every statement in a document. Meta misses the mark for several reasons.

First, the formality of calling a "sponsoring witness" does not suggest that the witness will "contextualize" each statement in a document. Instead, given limited trial time, a "sponsoring witness" requirement for each and every exhibit will likely result in numerous witnesses being called at trial simply to confirm that they wrote or received an email or presentation, or that a document is a business record. Requiring such a mechanical process to "admit" a document is a waste of the Court's time if there is no actual dispute regarding the authenticity or admissibility a document and will reduce the time that the parties have available to contextualize or explain the documents that are most likely to be relevant to the Court's determination of this matter. As noted above, the FTC will focus its trial presentation on the latter documents. *Cf.* Ex. A at 2 ("[T]he court expects that key exhibits will be presented during the trial itself or will have been discussed in designated deposition testimony."). Indeed, Meta ignores the fact that the FTC has every incentive to provide appropriate context to salient documents, as the FTC bears the burden of proving its claims.

Second, *AT&T*, and the other out-of-district cases Meta cites, do not provide good comparators for a case of this magnitude. While the *AT&T* court might have determined that in the circumstances of that case a sacrifice of efficiency was justified, Meta ignores a number of salient differences between *AT&T* and this litigation: (1) *AT&T* involved a discovery record developed in less than two months; (2) trial began less than three months after discovery commenced, thus the parties lacked time to resolve evidentiary disputes prior to trial; and (3) the parties called a total of only 23 fact witness, even though the requirement of sponsoring witnesses required the plaintiff to "'add[] some additional witness' [sic]." *AT&T*, 310 F. Supp. 3d 161, 185 ("Fact discovery began in late December, and concluded in mid-February," trial began on March 19); *id.* at 187 ("The Government called 20 fact witnesses and two expert

witnesses in its case-in-chief . . . defendants called three expert and three fact witnesses.").  This is a case of a different scale—for example, in *AT&T* the parties were each limited to "150 hours of party-depositions, plus 100 hours of non-party depositions," *id.* at 185, while in this case the Court granted the parties 840 hours for fact witness depositions (not including 30(b)(6) depositions)—and by the FTC's count, the FTC has taken approximately 462 hours of fact witness deposition testimony and Meta has taken 181 hours.  Much of the parties' deposition time, and a great deal of their discovery efforts, have involved third-party discovery.  Thus, in this case it is far more likely than it was in *AT&T* that a "sponsoring witness" requirement will significantly increase the time necessary for trial and impose costs on numerous third parties.

Meta's sole other reference to a litigation in this district consists of a citation to a legal brief: Pls.' Mot., *United States v. UnitedHealth*, No. 1:22-cv-00481-CJN (D.D.C. July 13, 2022), ECF No. 75.  While the FTC was not a party to that case, a glance at the legal brief Meta cites demonstrates that the arguments raised by the government are unhelpful to Meta, and indeed confirm the merits of the FTC's position.  In that case, the government moved in limine to exclude third party documents that lacked a sponsoring witness where: (1) "Defendants have not established and will not be able to establish that a hearsay exception—such as the business records exception—applies to render them admissible"; (2) "Defendants are seeking to admit them to prove the truth of the matters asserted within the documents"; and (3) Defendants had not designated deposition testimony from third parties relevant to the documents.  *Id.* at 2; *id.* at n. 2 ("[Plaintiff's motion to exclude] does not include documents from third parties for which deposition testimony has been designated by Defendants or from third parties on Defendants' witness list.").  The government's arguments in *UnitedHealth* are entirely consistent with the FTC's position here: the FTC is not suggesting that documents that lack a sponsoring witness are

5

admissible for the truth of the matter asserted if they do not represent admissible evidence, such as a business record.  And the FTC agrees with the government's suggestion in in *UnitedHealth* that designating deposition testimony is an efficient way to establish the admissibility of documents, which is one reason among many that designating deposition testimony is common practice in this district and should be adopted by the Court here.  *See infra* § IV.A.2.

Finally, to the extent that the Court is concerned that the FTC's proposed approach may lead to a proliferation of unhelpful exhibits, the parties have already agreed that the Court should impose a reasonable limit on the number of exhibits that each party may include on its final exhibit list.  *See infra* § I.B.  The Court can set the exhibit list limit to ensure that the trial record is of assistance to the Court.

For these reasons, the FTC respectfully asks the Court to instruct the parties as follows:

- Each party may offer into evidence exhibits that are not presented through a live witness at the conclusion of its case in chief or at the conclusion of its rebuttal case.

- Any evidentiary disputes regarding exhibits that either party expects to present through a live witness during its case in chief will be resolved at the final pretrial conference or at an appropriate time during trial.

- If an evidentiary dispute pertains to an exhibit that either party introduces without a live witness, and is of consequence to the Court's final ruling, the Court will resolve the dispute at an appropriate time or as part of its final ruling.

- The parties shall promptly meet and confer and submit, no later than December 13, 2024, a proposed schedule for the exchange of preliminary exhibit lists and

the exchange of any objections to the authenticity or admissibility of such

exhibits.

### 2.    Meta's Position

The Court should require the parties to admit documents through witnesses who have

personal knowledge about them and can testify about their meaning and relevance.  Courts

regularly require the "admission of documents through sponsoring witnesses" in bench trials.

*United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 186 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C.

Cir. 2019); *see also*, *e.g.*, *Late v. United States*, 2016 WL 8787120, at *2 (M.D. Pa. Nov. 10,

2016) (admitting "only those exhibits which were properly identified, authenticated, and testified

to during [the bench] trial"); *Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co*., 2012 WL

2589883, at *4 (D. Nev. July 5, 2012) (same); Ex. 1, Hr'g Tr. at 20:1-16, *LG Phillips Display

Co. v. Chi Mei Optoelectronics Corp.*, No. 1:06-cv-00726-LPS (D. Del. May 5, 2009), ECF No.

1244 (same).  That is because sponsoring witnesses are necessary to "contextualize and explain"

documents – "which might otherwise be misunderstood or selectively cited in post-trial briefs,"

*AT&T*, 310 F. Supp. 3d at 186-87 – and to lay the foundation for their admissibility over

legitimate objections, such as hearsay, which often depend on which part of a document a

proponent intends to use and how the proponent intends to use it, *see* Ex. 2, Hr'g Tr. at 9:22-

10:24, *United States v. AT&T Inc.*, No. 1:17-cv-02511-RJL (D.D.C. Mar. 19, 2018), ECF No.

182; *see* FTC Ex. A at 88 (noting potential "hearsay within hearsay" problems, even for

documents admissible via business records certifications).  Indeed, for these reasons, the

government recently took the position that the sponsoring witness requirement is important to the

truth-seeking function of this Court.  *See* Ex. 3, DOJ's Mot. at 1-2, *United States v.

UnitedHealth*, No. 1:22-cv-00481-CJN (D.D.C. July 13, 2022), ECF No. 75 (government's

motion citing *AT&T* and explaining that "[c]ourts generally require a witness to testify about

[documents] prior to their admission," and to lay foundation for admissibility, which allows the court to hear from witnesses "with personal knowledge about these documents to explain their relevance to this case," and provide "adequate context").

There is no dispute that the important exhibits should be addressed by witnesses, or that the parties should not drown the Court in unnecessarily voluminous, marginally relevant, or cumulative exhibits. But the FTC's proposal to do away with the ordinary requirement that documents be admitted by a sponsoring witness will make it substantially more likely that – notwithstanding the good intentions of the parties – dozens, if not hundreds, of unexplained, unimportant, or inadmissible exhibits will end up in the record and distract from the core issues of the case. Meta appreciates the FTC's desire to avoid wasting time bringing witnesses solely to "mechanically" admit exhibits that the parties agree are admissible and do not require explanation. However, Meta believes that there will be few such exhibits and proposes that the parties address any such exhibits on a case-by-case basis. For example, if the FTC seeks to admit Meta's public securities filings, the parties are likely to stipulate that those can be admitted without a sponsoring witness. There may be other similar documents, and Meta is prepared to work with the FTC in good faith to identify them.

Most exhibits, however, will fall outside that category, and maintaining the sponsoring witness requirement has two clear benefits for the parties and the Court. *First*, this requirement gives the parties an appropriate incentive to present their case efficiently at trial. The record contains over 6.1 million documents produced by Meta and nonparties – for a total of more than 32.8 million pages. And the parties' summary judgment submissions included more than 2,000 exhibits. *Compare* ECF No. 379-3 (FTC's 71-page Summary Judgment Exhibit List, containing more than 1,400 exhibits), *with AT&T*, 310 F. Supp. 3d at 188-89 (admitting 120 exhibits total

during trial); *United States v. Bertelsmann SE & Co. KGaA*, 646 F. Supp. 3d 1, 11 (D.D.C. 2022) (admitting just over 230 exhibits total); Ex. 4, *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK (N.D. Cal. Dec. 13, 2018), ECF No. 1003 (limiting the parties at trial to 566 total exhibits, including 126 joint exhibits).  Requiring sponsors for these materials will ensure that the parties focus their witness presentations on addressing the most relevant exhibits that are worthy of the Court's attention.

By contrast, even if this Court adopts a cap on the total number of exhibits, dispensing with the sponsoring witness requirement will inevitably lead to some number of exhibits entering into the record without any testimony as to their admissibility, relevance, or context, which will burden the Court and the parties with unnecessary work.  The Court will be left "to swim in a great reservoir of undifferentiated . . . paper."  *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1253 n.3 (M.D. Fla. 2012) (lamenting "document dump" by the FTC), *aff'd*, 704 F.3d 1323 (11th Cir. 2013).  Meta, meanwhile, will have to spend valuable trial time – including burning its "chess clock," *see infra* Section III.A (Meta's proposal on a chess clock) – to contextualize exhibits that the FTC might later put into the record in order to protect against the risk the FTC will misconstrue selected snippets from those exhibits in closing or post-trial briefing.  This is especially true because the FTC is seeking the option to admit exhibits without any sponsoring witness "at the conclusion of its rebuttal case," *see supra* at p.6 – i.e., the last day of trial – when it would be too late for Meta to call witnesses to explain the exhibits.  It is also likely that the parties will be forced to spend substantial time on, and burden the Court with, disputes over the admissibility of documents that no witness will discuss at trial and that may be, at best, of marginal relevance to the key issues in the case.

While the FTC asserts that its proposal will "substantially increase efficiency" by saving trial time, there is no reason to believe it would do so. The FTC does not say how many documents it will seek to admit without a sponsor (much less establish that these documents would be admissible without a sponsoring witness) or how many witnesses it would drop from its witness list if the Court were to adopt the FTC's proposal. The FTC also does not explain how its proposal will discourage the needless proliferation of exhibits. While the FTC claims to support an exhibit cap, it has yet to propose any specific limit and, even with a cap, the FTC's proposal to do away with the sponsoring witness requirement is still likely to result in the admission of far more exhibits than if the sponsoring witness requirement were kept in place. Moreover, given that Meta is willing to consider admission of exhibits without a sponsoring witness on a case-by-case basis, it is hard to understand why the FTC believes its proposal is necessary if the FTC does not intend to "dump" at least some exhibits into the record without context or explanation.

*Second*, the sponsoring witness requirement supports the truth-seeking function of this Court by requiring the parties to contextualize exhibits. In the government's challenge to the AT&T/Time Warner merger, the Department of Justice proposed – as the FTC has here – that exhibits be admitted without a sponsoring witness during a bench trial. Judge Leon rejected the proposal because it would have deprived him of necessary context; there was "no way of knowing" "from just looking at the email and looking at the PowerPoint" whether the information it conveyed was reliable and relied upon by decisionmakers. Ex. 2, Hr'g Tr. at 25:7-14, *United States v. AT&T Inc.*, No. 1:17-cv-02511-RJL (D.D.C. Mar. 19, 2018), ECF No. 182. Judge Leon's concern is equally applicable here, where the FTC has indicated it will attempt to prove the existence of its alleged "PSNS market" using "ordinary-course documents." Mem. Op.

at 28 (Nov. 13, 2024), ECF No. 384; *see also*, *e.g.*, *id.* at 23-29 (citing internal documents and

presentations from Meta, X, YouTube, TikTok, and Snapchat).  Requiring a sponsoring witness

who can provide context for these documents – especially those written years or even a decade

ago in some cases – is necessary to ensure they are not "misunderstood or selectively cited,"

*AT&T*, 310 F. Supp. 3d at 187, and to allow the Court to determine whether they capture

"accurate perceptions of economic realities," Mem. Op. at 28 (Nov. 13, 2024), ECF No. 384.

Discovery in this case underscores the need for sponsoring witnesses to ensure that

exhibits are accurately placed in context.  For example, at Brian Acton's deposition, the FTC

showed Mr. Acton a February 2013 email in which he wrote that, if WhatsApp took out a loan, it

could "start the iphone free transition sooner than later."  Ex. 163 (Acton Dep. Tr.) at 152:10-23,

153:18-21, Meta Ex. Vol. 14, ECF No. 325-17.  When the FTC asked Mr. Acton what he meant

by "the iphone free transition," Mr. Acton explained that, in 2013, WhatsApp charged iPhone

users in most countries 99 cents upfront to download the app.  *See id.* at 154:3-7.  He then

explained that "when we talk about iPhone free transition, we're talking about the transition of

iPhone" from the "paid model of 99 cents up front" to "free for the first year, $1 per year after" –

in other words, a model that would *increase* WhatsApp's price for anyone who used it for more

than one year, not a model that would make WhatsApp on iPhone "free."  *Id.* at 154:12-22.

Similarly, during Mark Zuckerberg's deposition, the FTC tried to suggest that, when Mr.

Zuckerberg wrote in a 2012 email that "[m]ost photos on Instagram are public, and many people

follow all of their friends," he "meant that most photos [a user posted] on Instagram could be

viewed by all of the Instagram users who followed the Instagram user who posted the photo."

Ex. 142 (Zuckerberg Dep. Tr.) at  62:17-63:2, Meta Ex. Vol. 14, ECF No. 325-17 (quoting

PX1082).  Mr. Zuckerberg testified that, "No, I don't think that's what that means," and went on

to explain that what he wrote meant the exact opposite: "meaning anyone could view the photo, including people who weren't following you." *Id.* at 63:3-7. In both cases, context from a witness with personal knowledge of the document clarified the document's relevance and meaning in important ways.

The FTC contends that it would be beneficial, in particular, to exempt an unidentified set of third-party documents from the sponsoring witness requirement. But, as the government recently explained in this Court, sponsoring witnesses are "particularly important for third party documents because the third party is not a participant in this action and cannot otherwise explain the document or contest the misrepresentation of a document." Ex. 3, DOJ's Mot. at 2-3, *United States v. UnitedHealth Grp. Inc.*, No. 1:22-cv-00481-CJN (Jul. 13, 2022), ECF No. 75. Furthermore, the FTC has not shown that its proposal would meaningfully reduce the burden on third parties. The FTC does not identify any specific third party witness that it will not call if its proposal is adopted and, in any case, the FTC has previously represented that it intends to primarily prove its case through Meta's documents – not those of third parties. *See*, *e.g.*, Scheduling Conf. Tr. at 16:14-25 (Feb. 28, 2022), ECF No. 109; Status Conf. Tr. at 4:1-2 (Nov. 25, 2024), ECF No. 386.

Separately, the FTC requests that the Court order the parties to submit a proposed schedule for exchanging preliminary exhibit lists by December 13, 2024. This is unnecessary. Meta is willing – and has told the FTC that it is willing – to confer about an exhibit list exchange schedule after the Court sets the pretrial statement deadline at the upcoming conference. Because the pretrial statement must include each party's exhibit list, the deadline for pretrial statements will be important in setting an appropriate schedule for exhibit list exchanges. *See* Local Rule 16.5(b)(1)(v). Meta is also willing, as discussed above, to discuss whether it might

be appropriate to admit specific exhibits without a sponsoring witness in advance of trial.  This is consistent with the *Google* order on which the FTC relies; that order was issued on the eve of trial, after the parties exchanged final exhibit lists and requested a ruling on whether a specifically identified group of documents on DOJ's final exhibit list could be admitted without a sponsor.  *See* Ex. 5, Jt. Status Rep. at 2, 5-6, *United States v. Google LLC*, No. 1:20-cv-03010-APM  (D.D.C. Aug. 22, 2023), ECF No. 654.  Meta believes that such an approach would be efficient in this case as well.

> **B.**    **Exhibit List Limits**

The parties agree that the Court should order that there will be a cap on the number of exhibits each party may include on its exhibit list, but are continuing to negotiate when the Court should set that limit and what the limit should be.  The parties propose to meet and confer further on this issue and submit their positions to the Court at a later date.

## II.    CONFIDENTIALITY

> **A.**    **Plaintiff's Position: The Court will increase efficiency and preserve trial time by instructing the parties to propose a process to resolve, prior to trial, all assertions that material cannot be disclosed in open court due to confidentiality considerations.**

The Court will increase the efficiency of trial proceedings by requiring the parties and third parties to resolve prior to trial all assertions that material cannot be addressed in open court due to confidentiality considerations.  In the FTC's experience, failure to resolve confidentiality claims prior to trial risks unnecessarily consuming valuable trial time or reducing the time available for trial with confidentiality disputes.  These risks are heightened in this matter due to the possibility that members of the press or members of the public could potentially seek to intervene.  *Cf.* Order, June 25, 2024, ECF No. 368 (anticipating the possibility that members of

the press might seek access to summary judgment materials); Joint Status Report, June 24, 2024, ECF No. 367 (proposing process to minimize any need for such press intervention).

The FTC respectfully suggests that the best way to minimize such risks is to conclusively resolve, prior to trial, the confidentiality status of relevant materials. To accomplish this goal, the FTC has already proposed to Meta a detailed process for addressing confidentiality assertions. *See* Ex. C at 3. As part of that process, to further the public interest in transparency and minimize the need for press intervention, the FTC is willing to commit to make publicly available on its website all non-confidential documents used with live witnesses at trial.

Meta's main objection to the FTC's proposal is that it cannot agree to a confidentiality procedure without knowing how many documents or transcripts the FTC may attempt to introduce, the length of the FTC's exhibits, what portions of the exhibits the FTC seeks to show in open court, or what categories of information the exhibits concern. But waiting for such detail would delay confidentiality decisions until the middle of trial, which is exactly the inefficiency the FTC is trying to avoid with its proposal. Moreover, the parties have agreed that a limit on exhibit lists is appropriate, and that the parties will meet and confer to discuss an appropriate limit. *Supra* § I.B. The parties should discuss both the confidentiality resolution process and an appropriate limit on exhibits in tandem—by discussing the issues at the same time, the parties can present to the Court a proposal regarding both issues that will ensure that exhibit limits are not set at a level that might interfere with an efficient confidentiality resolution process. Moreover, Meta relies on a misreading of the Protective Order to argue that the FTC's proposal violates said Protective Order. The Protective Order merely requires third parties to be provided advance notice prior to an order governing disclosure. It does not require advance notice before

implementing an order governing the timing and process of reaching confidentiality decisions. *See* ECF No. 134 at 23.

For these reasons there is no need to accept Meta's invitation to delay guidance on these issues. As such, the FTC respectfully asks the Court to instruct the parties to promptly meet and confer and present to the Court no later than December 13, 2024:

- A proposed process, including a proposed schedule, for resolving before trial assertions by parties or third parties that material cannot be addressed in open court due to confidentiality considerations.

### B.     Meta's Position

The parties are close to a potential compromise on how to handle confidentiality issues at trial. Both agree that the procedures for handling confidentiality should be resolved in a future conference, not the upcoming one. The only disagreement is that the FTC asks the Court nonetheless to issue a partial order on confidentiality now that "requir[es]" all "parties and third parties to resolve prior to trial ***all*** assertions that material" is confidential – with no specification of which "material" and how much of it the FTC is contemplating. The Court should reject the FTC's proposal and instead allow the parties to confer about reasonable confidentiality processes to be addressed at a conference at a date later than December 13 (the FTC's arbitrary and unreasonably accelerated deadline proposal).

*First*, issuing an order now requiring that ***all*** confidentiality claims be "conclusively resolved" before trial would be premature. Meta does not know how many documents or transcripts the FTC may attempt to introduce; the length of the FTC's exhibits; which portions of exhibits the FTC seeks to show in open court; or what categories of information the exhibits concern. The parties will be better positioned to propose a reasonable confidentiality procedure

once they learn this information.  And without it, it is impossible to assess how burdensome the FTC's proposal will be on Meta's pretrial preparation time – not to mention the Court's time.

The FTC's insistence on setting some (but not all) rules regarding confidentiality procedures now is also contrary to Section G of the Protective Order.  *See* ECF No. 134 at 23. That section calls for a "separate court order" governing all aspects of confidentiality at trial and provides that, "[i]n advance of the filing of [such] a proposed order," "the Parties shall provide notice of such order to third parties whose Highly Confidential Information or Confidential Information is expected to be used at trial."  *Id.*  The FTC has not provided any proposed confidentiality order to Meta, or to any nonparty whose information the parties "expect[] to . . . use at trial."  *Id.*  Nor could the FTC have done so, because the parties have not disclosed how many of the 139 nonparties that produced documents or testimony will see their information used at trial.  It is inefficient – and contrary to Section G of the Protective Order – to resolve confidentiality issues on a piecemeal basis.  It would be far more efficient for the Court to set a separate conference to resolve all issues relating to confidentiality procedures for trial, at a point when exhibit and witness lists are closer to final.

*Second*, the FTC's proposal is unworkable and unduly burdensome.  Were it to reach the issue now (and it should not), the Court should reject the FTC's request for a requirement to resolve confidentiality over every piece of "material" on any party's exhibit list before trial.  The FTC's proposal (Ex. C at 3) seeks to require that Meta assess the confidentiality of each line in every document that the FTC will include on its exhibit list, months before trial begins (and well before the FTC decides what exhibits it will actually use).  That is unfair and unworkable.  Such a process would unnecessarily burden Meta and the Court.  It would require Meta to file motions with the Court to establish confidentiality for each line of each document on the FTC's exhibit

list and its own – and require the Court to rule before trial on every such confidentiality claim – even if the document is never actually shown at trial.  That would create (potentially unnecessary) substantial pretrial work for Meta and the Court – and none for the FTC.  *See* FTC Ex. C at 3.  Indeed, the FTC's proposal excuses it even from the obligation to meet and confer with Meta in good faith to reach agreement about what portions of material may be shown or redacted at trial.  *Cf.* Ltr. from J. Lorber to L. Smith (Aug. 23, 2024) at 2 (for summary judgment filings, stating that "[t]he FTC does not believe it is practical or helpful to respond to each individual proposed redaction of Meta information").

   ***Meta's Counterproposal.***  Meta offered to meet and confer with the FTC about a process for resolving confidentiality objections to a high-priority list of documents that the FTC actually intends to use at trial.  The FTC initially expressed interest in that suggestion.  Rather than enter a premature order on a process whose contours are not yet clear, the Court should encourage the parties to meet and confer and propose a reasonable procedure at a future conference.  It may well be that the parties can agree on a process, along the lines of what Meta suggested, whereby the FTC identifies a reasonable number of exhibits (e.g., 200) that are "high-priority" – i.e., those the FTC most likely will use at trial – over which the parties can resolve confidentiality disputes prior to trial.

   Meta further proposes that the Court set a reasonable date – i.e., *after* the parties have exchanged preliminary witness and exhibit lists – for submitting proposed confidentiality procedures to the Court.  This will ensure that the parties have adequate time to meet and confer on a proposed process, and that the parties and Court will be better equipped to assess the burden and efficiency of any proposed procedure.

### III.    CHESS CLOCK

#### A.    Meta's Position

The Court should hold the parties to a "chess clock" timing system where each side has an equal amount of time to present evidence and argument to the Court.  The clock should include time spent on (a) direct, cross, and redirect examinations of witnesses, and (b) opening statements.  To the extent the Court adopts a "chess clock" timing system, Meta proposes that the Court allot time for closing statements at a later date.

Courts regularly adopt a "chess clock" timing system, which incentivizes the parties to use their time with each witness efficiently and to fully utilize each trial day.  *See*, *e.g.*, Ex. 6, Pretrial Conf. Tr. at 8:1-16, *Hudson v. Am. Fed'n of Gov't Emps.*, No. 1:17-cv-01867-JEB (D.D.C. Jan. 19, 2024), ECF No. 319 (assigning equal time to each side for direct, cross, and redirect examinations, to be measured by a clock); Ex. 7, Scheduling Conf. Tr. at 10:9-12, *FTC v. Arch Coal, Inc.*, 1:04-cv-00534 (D.D.C. May 10, 2004), ECF No. 118 (counsel for FTC explaining that "what we've done in these kinds of cases . . . is to work off a chess clock, where each side has an equal amount of time"); Ex. 8, Order, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. June 30, 2023), ECF No. 610 (assigning trial time based on hour limits); Ex. 9, Pretrial Conf. Tr., *FTC v. Meta Platforms, Inc.*, No. 5:22-cv-04325-EJD (N.D. Cal. Dec. 5, 2022), ECF No. 494 at 33:7-9 ("What I intend to do is total up the hours and then split those, and then each of you would have 50 percent of those hours to use as you saw fit.").

Meta proposes that the Court assign a total trial time between 96-144 hours, to be divided equally between the parties (48-72 hours per party) – which is the equivalent of 16 to 24 six-hour trial days over the course of four to six weeks.  As Meta stated at the previous hearing, a four-to-six week trial is appropriate in this case; indeed, it would be a significantly longer trial than many recent antitrust cases.  *See*, *e.g.*, *United States v. AT&T Inc.*, No. 1:17-cv-02511-RJL

(D.D.C. 2018) (21 trial days); *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D.

Cal. 2021) (16 trial days); *United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va.

2024) (16 trial days); *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK (N.D. Cal. 2019) (11 trial

days); *United States v. H&R Block, Inc.*, No. 1:11-cv-00948-BAH (D.D.C. 2011) (9 trial days).

The FTC does not oppose the use of a "chess clock" timing system, but contends that the

number of hours allocated to each party should be substantially higher.  The FTC's reliance on

*United States v. Google LLC* (D.D.C.) as a "stalking horse," *see* Status Conf. Tr. at 3:9-12 (Nov.

25, 2024), ECF No. 386, is misplaced.  The *Google* trial required additional time for a second set

of plaintiffs (eleven States) not present here, *cf. New York v. Meta Platforms, Inc.*, 66 F.4th 288,

295 (D.C. Cir. 2023), and for a consolidated discovery sanctions hearing (also not present here),

*see United States v. Google LLC*, 2024 WL 3647498, at *133 (D.D.C. Aug. 5, 2024).  That trial

also involved four alleged relevant markets, *see id.* at *65, whereas here the FTC has alleged

only a single relevant market.

While Meta maintains that four to six weeks is appropriate, Meta's proposal of 96-144

hours for trial is not set in stone. Regardless of the ultimate amount of time the Court sets aside

for trial, the parties must receive equal time.  As the defendant facing liability, it is Meta – not

the FTC – that would "suffer far more prejudice from insufficient time to present evidence." *See*

*infra* at p.22.

The Court has already set April 14 as the start date for trial.  The Court should impose a

chess clock now, at the outset of the parties' trial preparation.  Setting limits now incentivizes the

parties to prepare efficient trial presentations.  In contrast, if the Court waits to set time limits

until after the parties plan lengthy cases (and anchor their timing requests accordingly) – as the

FTC proposes – the parties have no incentive to be efficient.  Setting the time limits that Meta

proposes would ensure that trial concludes by the end of May – the Court's previously stated preference. *See* Status Conf. Tr. at 8:11-12, 11:13-20 (Nov. 25, 2024), ECF No. 386 ("I just don't like my June calendar.  June is going to be hard . . . we have one day of trial for [the last three weeks of June], which I don't think is an efficient way to proceed.").  Giving the parties an open-ended trial with the ability to flood the record with unsponsored documents and video theatre will be decidedly *inefficient*; it will create an unruly, unfocused record for decision, which will not be helpful to the Court.

### B.    Plaintiff's Position: Meta's proposed number of hours is too low, and it would be premature to set a limit on the number of hours assigned to each party.

The FTC does not oppose a "chess clock," assuming the Court would find it useful.  However, Meta's proposed number of hours is far too low and appears to be an attempt to re-litigate a position that the Court has already rejected—namely, that the trial be limited to four to six weeks.  *See* Hr'g. Tr. 4:18-3-5:23, Nov. 25, 2024, ECF No. 386 (Meta stated its position that only four to six weeks are required for trial, and the Court stated that it "will set aside eight to ten weeks").  Meta observes that the Court indicated, when discussing a start date for trial, a preference for concluding the trial by the end of May, but Meta blithely ignores that: (1) the Court also indicated a preference to "start this earlier in March and have it done March, April, maybe bleeding into May," *id.* at 12:4-7; and (2) it is only Meta's resistance to the FTC's request for a March trial date that prevents a trial of eight to ten weeks from being concluded by the end of May.  *See id.* at 5:24-6:10; 8:15-9:8; 11:21-13:11 (the FTC proposed a start date of March 31, Meta proposed May 27, and the Court ordered a trial date of April 14 in light of "the defense's concerns").  In short, Meta's proposed number of hours is contrary to the Court's previously expressed preferences and is too low, as described further below.

The FTC does not yet have a concrete counter-proposal regarding an appropriate number of hours for a "chess clock" because the contours of its trial presentation are dependent on many of the issues raised in this Joint Status Report which directly impact the efficiency with which the FTC will be able to present its case. *See, e.g.*, *supra* § I.A.1 (discussing the FTC's position regarding the need for a sponsoring witness). The parties will be in a better position to make informed proposals after the Court has specified relevant conditions that will govern the presentation of evidence—for example, whether deposition designations can be introduced into evidence in transcript form (as the FTC proposes) or if instead all testimony will consume valuable trial time (as Meta proposes). *See infra*. Further, the FTC will not be able to provide a precise estimate of the number of hours it might require for its case-in-chief, the cross-examination of Meta's witnesses, and its rebuttal case absent information regarding the witnesses Meta intends to call.

Notably, Meta's request for a highly-restrictive trial time cap of between 96-144 hours is based on no specific analysis of the record in the case and what it will take for a fair adjudication of this case's numerous disputed factual issues—and Meta has provided no notice to the FTC or the Court of what documents, witnesses, and arguments it intends to present at trial. *See* Mem. Op. at 76, Nov. 13, 2024, ECF 384 (noting "[a]bundant evidentiary disputes"). The restrictive limit is also in direct tension with Meta's emphasis on the complexity of the issues and expansiveness of the record in this matter: those factors indicate a need for a robust evidentiary presentation for the trier of fact to evaluate the issues. *See* Status Conf. at 6:21-7:6, Nov. 25, 2024, ECF 386 (Mr. Hansen describing this matter as "a very long, complicated case" with "more than 120 witnesses" and "6 million documents").

Additionally, the FTC, as the plaintiff, bears the ultimate burden of proving its claim and thus would suffer far more prejudice from insufficient time to present evidence. The FTC further believes that Meta's restrictive limits would in fact prejudice the FTC's ability to present and prove its case. To this point, Meta has contested every element of the FTC's case, while also asserting an extensive list of purported procompetitive justifications. *See* Mem. Op., Nov. 13, 2024, ECF 384. This expansive set of factual issues is impractical to resolve in a cramped trial presentation of no more than 144 hours. Meta fails to adequately distinguish *Google*—which involved over nine weeks of trial time, approximately 50 live trial witnesses, and 20 additional witnesses appearing by deposition designation—as the closest analog to this case with respect to trial scope. Mem. Op. at 7, *United States v. Google*, No. 1:20-cv-3010-APM (D.D.C. Aug. 5, 2024), ECF 1033 (trial lasted "just over nine weeks"); *id.* at A-1 to -5 (Appendix noting the numbers of live witnesses and deposition designations). Meta notes that *Google* involved four relevant markets, rather than one, and an additional state allegation theory. But Meta overlooks the ways in which this case involves just as robust a set of issues as *Google* (if not more so), including Meta's insistence that it competes with virtually every form of attention available to consumers, the evaluation of two separate acquisitions, and Meta's assertion of numerous procompetitive benefit claims. Mem. Op. at 34-35, Nov. 13, 2024, ECF 384 (noting Meta's position that it "views itself as competing against many other companies for users' time and attention" and observing that this position would admit to "an 'infinite range' of possible substitutes").

Meta's remaining cases are inapposite. At the outset, Meta's cases with shorter trial times are inapposite given Meta's failure to provide any analysis specific to this case regarding how the issues in this matter could be resolved in as little as 9 trial days, as in those other cases.

Further, the only two cases cited by Meta from this district—*United States v. AT&T Inc.* and *United States v. H&R Block, Inc.*—involved significantly different factual postures than this matter. Both were prospective challenges to single acquisitions, not (as here) a monopoly maintenance case involving a more than 10-year monopolization period and two acquisitions. And both involved significantly narrower factual records, including with respect to the defendants' trial presentations. *See United States v. AT & T Inc.,* 310 F. Supp. 3d 161, 187 (D.D.C. 2018)*, aff'd sub nom. United States v. AT&T, Inc.*, 916 F.3d 1029 (D.C. Cir. 2019) (defendants called only three fact witnesses and three expert witnesses, while plaintiff called 20 fact witnesses and two expert witnesses ); *United States v. H&R Block, Inc.,* 833 F. Supp. 2d 36, 44-45 (D.D.C. 2011) (trial involved only eight fact witnesses and three expert witnesses). By contrast, in this matter, Meta alone is proffering nine expert witnesses and refuses to agree that any limit is appropriate regarding the number of potential trial witnesses on its witness list, although it identified more than 250 individuals on its initial disclosure list.

Accordingly, if the Court concludes that it would increase efficiency to impose a chess clock or overall trial time limit in this matter, the Court should require each party to propose, at a later date, a reasonable time limit for each party's trial presentation.

For the same reasons, it would be premature for the Court to determine at this juncture that both parties should be assigned the same amount of time. While this may be appropriate in many cases, it may not be appropriate in this matter, as Meta has consistently argued for a shorter trial than the FTC believes is necessary. Accordingly, once the Court has specified the manner in which evidence shall be presented and the parties have exchanged witness lists, Meta and the FTC should each propose to the Court an estimate of the amount of time the party believes will be necessary to present its evidence and cross-examine the other party's witnesses.

## IV.    PRESENTATION OF WITNESS TESTIMONY

### A.    Live Testimony

#### 1.    Meta's Position

The Court has entered an order providing for nationwide service of process in this case, as authorized by the federal antitrust laws.  *See* Scheduling Order ¶ 22 (Mar. 3, 2022), ECF No. 103.  Witnesses within the parties' subpoena power in the United States should appear and testify live at trial, absent extraordinary circumstances.  *See SEC v. True N. Fin. Corp.*, 2013 WL 4781037, at *4 (D. Minn. Sept. 6, 2013) (denying motion to designate deposition testimony of witnesses subject to nationwide subpoena power and requiring SEC to "make a concerted effort to procure the live testimony").  Meta will undertake reasonable efforts to make its current employees available to testify live.  *Cf. Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1147 (E.D. Cal. 2020) (denying motion to introduce a witness's deposition testimony in lieu of live testimony, reasoning that "Defendants represent that [the witness] is willing and able to testify at trial").  Witnesses outside of the parties' control can and should be subpoenaed for live testimony for efficiency, for creating the best record for the Court, and ultimately for fairness to both sides.

Calling witnesses live is consistent with the Federal Rules' strong preference for live testimony at trial.  *See* Fed. R. Civ. P. 43(a) (absent exception, witness testimony "must be taken in open court"); Fed. R. Civ. P. 32(a)(4)(E) (stressing the "importance of live testimony in open court").  Live testimony furthers a trial's fundamental truth-telling function by allowing the Court to judge witnesses' demeanor and make credibility determinations.  *See* Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment ("The importance of presenting live testimony in court cannot be forgotten.  The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.  The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."); *see also United States v. Yida*, 498 F.3d 945,

950 (9th Cir. 2007) ("Live testimony gives the . . . trier of fact . . . the opportunity to observe the demeanor of the witness while testifying.").

Live testimony will be more efficient and helpful to the Court, allowing the parties to tailor their examinations to the issues that have been crystallized in the Court's summary judgment decision. And, critically, the Court will be able to ask questions of witnesses. *See* Ex. 10, Pretrial Conf. Tr. at 24:2-8, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Sept. 1, 2023), ECF No. 696 (noting the importance of live testimony in a bench trial and the unique opportunity "to ask questions" which the court cannot do if "key witnesses . . . simply sit on the sidelines and let [the judge] look at their deposition testimony"); *Micron Tech., Inc. v. Rambus Inc.*, 2007 WL 9771144, at *3 (D. Del. Aug. 29, 2007) ("[I]n a bench trial, it is important for the fact finder to be able to ask questions of the witness. The most efficient way to do that with respect to a witness who is available to testify live is to have the witness on the witness stand, so that the Court can explore the issues that the Court believes are important."), *special master report and recommendation adopted*, No. 1:00-cv-00792-SLR (Sept. 26, 2007).

Importantly, Meta is not proposing a "blanket rule" on the use of deposition testimony. There are circumstances where deposition designations may be appropriate because a witness is unable to appear live, such as if they are sick. But, absent such circumstances, the parties should make best efforts to have witnesses appear and testify live, including by exercising their nationwide subpoena power for witnesses they do not control.

To avoid cumulative evidence, confusion, and waste of time, the Court should not accept deposition testimony, except for impeachment purposes, for any witness testifying live at trial. There is no legitimate need to introduce the deposition testimony of a witness who will testify live; any important points from the deposition can be addressed more efficiently during the

witness's live testimony.  Avoiding such cumulative evidence through live testimony can also generate efficiencies in trial preparation by sparing the Court and parties the time-consuming process of producing and reviewing deposition designations, litigating and deciding upon the scope of those designations, and playing duplicative video clips.  *See* Fed. R. Evid. 403 (allowing a court to reject evidence that would "wast[e] time" or be "needlessly . . . cumulative"); *see also Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) ("Many trial judges require that a deposed witness testify live, if available."); *González Berrios v. Mennonite Gen. Hosp., Inc.*, 2020 WL 502333, at *3 (D.P.R. Jan. 30, 2020) ("[P]resenting the deposition videos *instead* of live testimony is unwarranted if the witnesses are available and presenting the videos in *addition* to live testimony would cause undue delay and be needlessly cumulative.").  Depositions are necessarily different from trial examinations and are unlikely to be targeted.  The result is that designations often are overinclusive and lead to similarly overinclusive counter-designations, resulting in protracted pretrial disputes and briefing over objections and lengthy clips of testimony that could be appropriately focused if given live.

Meta's position is entirely consistent with Federal Rule of Civil Procedure 32(a).  Even if a deposition may be admissible pursuant to Rule 32(a), including Rule 32(a)(3), the Court nevertheless has discretion under Federal Rule of Evidence 403 to exclude it for a variety of reasons, including "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also S & H Farm Supply, Inc. v. Bad Boy, Inc.*, 2020 WL 8373428, at *1 & n.2 (W.D. Mo. Sept. 4, 2020) (noting that the court "does not allow depositions to be used as substantive evidence for witnesses who are available to testify" and explaining that "[d]espite the language of Rule 32(a)(3) . . . [m]any trial judges require that a deposed witness testify live, if available." (internal quotation omitted)); *Feinwachs v. Minn. Hosp. Ass'n*, 2019 WL 4298085, at

*10 (D. Minn. Sept. 11, 2019) (excluding deposition testimony pursuant to Rule 403 and explaining that "district courts often require that a deposed witness testify live, if available" even if the deposition is admissible under Rule 32(a)(3) (internal quotation omitted)); *FTC v. Advoc. Health Care*, 2016 WL 11940576, at *1 (N.D. Ill. Apr. 4, 2016) (ordering that "[e]xcept for impeachment, no party may use or cite to [investigational hearing] testimony, deposition testimony, affidavits, or declarations of any witness who testifies live."); *White v. United States*, 2013 WL 3422965, at *3 (M.D. Fla. July 8, 2013) (excluding deposition testimony pursuant to Rule 403 and finding that "publishing large portions of the depositions of witness who are available and whom the [Defendant] will likely call as witness not only contravenes the Court's marked preference for live testimony, it would also likely be unnecessarily cumulative and would waste this Court's time and resources").

Requiring live testimony will also give the Court the most accurate, current information in the fast-moving high-tech industry that contextualizes this case. As the Court has explained, "times have changed" since Meta's acquisitions, and "the Facebook and Instagram of 2024 . . . are different – in some cases dramatically so." Mem. Op. at 1, 51 (Nov. 13, 2024), ECF No. 384. But the depositions and investigational hearings in this case will be roughly two to four years old at the time of trial – a lifetime in this fast-paced industry (for example, ChatGPT and commercially available generative AI did not even exist until depositions started and did not exist at all during the investigational hearings, and short form video and TikTok were still gaining initial popularity). *See New York v. Meta Platforms, Inc.*, 66 F.4th 288, 295 (D.C. Cir. 2023) ("The States' lawsuit is . . . '[o]dd' because the States' suit concerns an industry that, even on the States' allegations, has had rapid growth and innovation with no end in sight."). The Court should hear fresh, live testimony about competition today, not stale testimony frozen in

time. *See United States v. Microsoft Corp.*, 253 F.3d 34, 49 (D.C. Cir. 2001) ("By the time a

court can assess liability, firms, products, and the marketplace are likely to have changed

dramatically.").

> **2.      Plaintiff's Position: The Court should not decrease efficiency and disregard Fed. R. Civ. P. 32(a) by requiring either party to unnecessarily offer witness testimony live at trial when the witness's testimony can properly be offered via deposition.**

Meta seeks to prevent the FTC from introducing into evidence testimony provided during

depositions, and instead seeks to limit the FTC's evidence to only the testimony that can be

provided live during the limited time available for trial.  As described below, Meta's proposal is

untenable because it contradicts Federal Rule of Civil Procedure 32 ("Rule 32"), local practice,

and the Scheduling Order that governs this case.  *See infra*.

Further, Meta's proposal clearly would not increase trial efficiency, as it would consume

more trial time—not less—to eliminate the parties' ability to introduce evidence through

deposition designations.  It would require an extended trial to attempt to replicate a meaningful

fraction of the significant testimonial evidence already developed in this matter—by the FTC's

count, the FTC has taken approximately 462 hours of fact witness deposition testimony and Meta

has taken 181 hours.  Rather than increase efficiency, Meta's proposal would significantly

prejudice the FTC, particularly in conjunction with Meta's other proposals.  Taken together,

Meta's proposals would hinder the FTC's ability to introduce evidence in support of its case by

forcing the FTC to consume trial time duplicating testimonial evidence developed in depositions,

calling witnesses to needlessly address concededly admissible documents (*see supra* § I.A.1),

playing unnecessary video deposition testimony when transcript designations are proper and

appropriate (*see infra* § IV.B.1); and also by prematurely truncating the hours available to the

FTC (*see supra* § III.B).  The Court should reject all of Meta's efforts, including its effort to prevent the FTC from efficiently presenting admissible evidence provided during depositions.

First, Meta asks the Court to disregard Rule 32, which specifies the circumstances under which depositions may be used at trial.  *See* Fed. R. Civ. P. 32(a).  Rule 32(a) does not limit the use of depositions at trial to "extraordinary circumstances" as Meta requests; rather, it provides for the use of deposition designations in a variety of circumstances, including the use of depositions of an adverse party or when a witness is "unavailable."  *See* Fed. R. Civ. P. 32(a)(3); 32(a)(4)(B).  Moreover, the parties plainly contemplated that the testimony of a witness who is "unavailable" within the meaning of Rule 32(a) could be offered at trial when they negotiated and proposed to the Court the Scheduling Order that governs this case: the parties asked the Court to order that the "availability of nationwide service of process . . . does not make a witness who is otherwise 'unavailable' for purposes of Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 available under these rules regarding the use at trial of a deposition taken in this action."  Joint Proposed Sched. Order 11-12, Mar. 2, 2022, ECF No. 102.  The Court entered that Order as requested.  Joint Sched. Order 11-12, Mar. 3, 2022, ECF No. 103.  Thus, both parties were plainly on notice that much of the testimony provided by the widely dispersed witnesses in this action would be available for use at trial despite the availability of nationwide service of process, and they proceeded to develop testimonial evidence during depositions accordingly.

Meta provides no relevant authority supporting its request to depart from the provisions of the Scheduling Order and Rule 32(a).  Meta's citation to the *Google* final pretrial conference represents its sole citation involving a court in this district, and *Google* strongly supports the FTC's position and contradicts Meta's.  *See* Ex. B at 23-24.  Meta selectively quotes an out-of-

context snippet in which the *Google* court addressed a third party's attempt to refuse compliance with a trial subpoena; the court did not express any reluctance to accept deposition designations. *See id.* Indeed, Meta's effort to rely on *Google* backfires, as the *Google* court not only provided that deposition designations could be introduced into evidence, it ultimately cited twenty different witnesses' deposition designations in its opinion. *See United States v. Google LLC*, No. 20-CV-3010 (APM), 2024 WL 3647498, at *4 (D.D.C. Aug. 5, 2024) ("The court has included as an Appendix a list of the names and titles of all witnesses whose testimony is cited in the decision."); *id.* at *135 (D.D.C. Aug. 5, 2024) (relevant Appendix lists twenty witnesses' "designated deposition testimony").

Apart from its inapposite citation to *Google*, Meta relies entirely on citations to out-of-district authority. This is unsurprising, as the use of deposition designations represents common practice in this district—including in bench trials involving civil antitrust matters. As already noted, the *Google* court accepted deposition designations and relied on twenty witnesses' "designated deposition testimony." *Id.*; *see also* Scheduling & Case Mgmt. Order at 4-7, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85 (listing deadlines for the parties' exchange of deposition designations); *id.* at 8-9 (where a person is listed on the party's witness list, the party may "call a person to testify as a live witness at trial or designate a person's deposition for introduction at trial . . . ."). Other recent antitrust bench trials in this district have likewise provided for testimony to be introduced through deposition designations. *See* Final Case Mgmt. Order at 4, *United States v. Anthem, Inc.*, No. 16-1493 (ABJ) (D.D.C. Oct. 18, 2016), ECF No. 196 ("Deposition excerpts to which there are no objections or as to which objections have been overruled are to be used as substantive evidence in lieu of live testimony."); Case Mgmt. Order at 6-7, 17, *United States v. AT&T*, No. 1:17-cv-

02511-RJL (D.D.C. Dec. 21, 2017), ECF No. 54 (indicating that the parties could offer deposition designations at trial). Indeed, this District's Local Rules incorporate the designation of deposition testimony as a standard part of pretrial statements. *See* L.R. 16.5(b)(vi) (pretrial statements shall include "a designation of depositions, or portions thereof, to be offered in evidence by the party").

Meta's citation to Fed. R. Civ. P. 43 ("Rule 43") is equally unavailing. Rule 43 neither displaces nor conflicts with Rule 32(a)'s clear provisions regarding the circumstances in which a party "may use for any purpose the deposition" testimony of a witness. *See* Fed. R. Civ. P. 32(a)(3), (4). Meta also cites Rule 32(a)(4)(E), but again misses the mark, as the "exceptional circumstances" language of that Rule provides an alternative reason to permit the use of the deposition of a non-party witness who is otherwise "available," it does not provide the exclusive basis on which a party may use the deposition testimony of a witness "for any purpose" at a trial. *See* Fed. R. Civ. P. 32(a)(3), (4).

In addition to flouting both federal rules and local practice, Meta's proposal inappropriately burdens third parties and inefficiently uses the Court's time. Where a party believes it is appropriate and efficient to present a third party's testimony through deposition designations, it would unduly burden third parties to impose a blanket rule that would require third parties to either appear live in court or to spend time and resources to fight a trial subpoena. Likewise, requiring live testimony where deposition designations are efficient and appropriate threatens to either unnecessarily consume the Court's time by bloating the scope of live testimony or—if paired with the limitations on trial time Meta seeks—limit the evidence presented to the Court to the prejudice of Plaintiffs.

Moreover, Meta's advocacy appears to ask the Court to issue blanket restrictions on the use of deposition designations that contradict Rule 32(a)(3), and are also inefficient and unripe (as there is no concrete controversy that the Court might address). Specifically, Meta appears to request a ruling in the abstract that, contrary to Rule 32(a)(3), the Court should "not accept deposition testimony, except for impeachment purposes, for any witness testifying live at trial." Multiple courts and a leading treatise have recognized that Rule 32(a)(3) provides the opposite— in appropriate circumstances a party may use deposition testimony "for any purpose," even if the witness might testify at a later stage of the trial:

> Federal Rule of Civil Procedure 32(a)(3) states that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, [or] managing agent." Rule 32(a)(3) is "liberally construed," and although "the court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, it may not refuse to allow the deposition to be used merely because the party is available to testify in person."

*Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 408 (E.D.N.Y. 2013) (quoting *N. Ins. Co. of N.Y. v. Albin Mfg., Inc.*, No. 06–CV–190 (S), 2008 WL 3285852, at *3 n.4 (D.R.I. Aug. 8, 2008)); *see also* Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2145 (3d ed.) (same)*; Palmer Coal & Rock Co. v. Gulf Oil Co.*, 524 F.2d 884, 887 (10th Cir. 1975) (applying prior version of Rule 32(a)(3), holding that district court properly admitted testimony offered through deposition designations where "the witness testified, personally, at length later in the trial."). Meta provides no reason that its proposed restriction either complies with Rule 32(a)(3), nor any reason that it would enhance efficiency to impose such a restriction. The Court need not address this issue at this time, as there is no ripe dispute on this issue currently before the Court (and indeed, the parties have never discussed this issue as Meta never raised it with the FTC prior to raising it in their portion of the Joint Statement): if any such dispute arises, the Court should have

the opportunity to make a considered ruling with the complete context regarding the identity of the witness and the scope of the proposed designated testimony, and the opportunity to consider whether the Court would benefit from full briefing on the crystallized dispute.

Meta suggests that a blanket rule requiring live testimony is required because time has passed between the close of fact discovery and the time of trial, but that is hardly a unique circumstance in antitrust cases that requires disregarding the federal rules. *Cf. FTC v. Qualcomm, Inc.*, No. 5:17-cv-00220-LHK Order Denying Qualcomm's Request to Introduce Evidence of Post-Discovery Events (Dec. 13, 2018) at 10 ("At best, the categories of evidence identified by Qualcomm would show some shift in Qualcomm's market power since the close of discovery.  By necessity, the evidence at trial will never be fully up-to-date following the cutoff for discovery.").  Courts give little to no weight to defendants' self-serving post-discovery assertions—which definitionally were not subject to deposition or scrutiny based on ordinary course records—and some courts even bar such evidence. *See id.* at 9 ("evidence related to post-discovery events must derive from "full discovery" and not "cherry picked data").

Meta's request to exclude all deposition designations is meritless and contrary to the federal rules, and its proposals for rulings in advance are neither fleshed out nor appropriate. The Court should reject Meta's inefficient proposal to exclude all deposition designations and instead confirm that deposition designations may be appropriate.  If either party has specific objections to the designation of particular testimony, the parties should raise such objections when the dispute is actually presented, and the Court delay its determination on the admissibility of any deposition designations offered by either party until that time.

B.    **Form of Deposition Designations**

1.    **Plaintiff's Position: The Court will increase efficiency by following the standard approach contemplated by Federal Rule of Civil Procedure 32(c) regarding deposition designations.**

The Court will increase efficiency and conserve valuable trial time by adhering to the standard approach for non-jury trials contemplated by Fed. R. Civ. P. 32(c) regarding witness testimony offered through deposition designations.  Rule 32(c) provides:

> (c) Form of Presentation. Unless the court orders otherwise, a party must provide a transcript of any deposition testimony the party offers, but may provide the court with the testimony in nontranscript form as well. On any party's request, deposition testimony offered in a jury trial for any purpose other than impeachment must be presented in nontranscript form, if available, unless the court for good cause orders otherwise.

Rule 32(c) plainly contemplates that in non-jury trials a party has the option to offer a witness's testimony through deposition designations either in transcript form or in non-transcript form, "[u]nless the Court orders otherwise." *Id.*  The intent of Rule 32(c) is clear because the Rule mandates an approach in jury trials that does not apply to non-jury trials: namely, in jury trials, at the request of any party, deposition testimony offered "for any purpose other than impeachment <u>must be presented in nontranscript</u> form, if available, unless the court for good cause orders otherwise." *Id.* (emphasis added).

The FTC seeks clarification of the Court's preferred approach to this issue to ensure that the FTC is not required to consume valuable trial time playing video depositions (or otherwise presenting deposition testimony in non-transcript form) where the FTC does not believe that it would benefit the Court to do so.  The FTC's proposal increases efficiency because in certain instances it may be most efficient to offer witness testimony in transcript form, even if in other instances the Court may benefit from video testimony.

The FTC's request for the option to offer a witness's testimony through deposition designations in transcript form will not lead to a proliferation of low-value deposition testimony in the record. In conjunction with its proposal on this matter, the FTC has already proposed to Meta that neither party's "witness list may contain more than a specified number of witnesses . . . ." *See* Ex. C at 3-4. Witness testimony offered via deposition designations should count against each party's total number of witnesses, just as the court instructed in *Google*. *See* Case Mgmt. Order at 8, *United States v. Google, LLC*, No. 1:20-cv-03010-APM (D.D.C. Feb. 3, 2021), ECF 108-1 (attached as Ex. D) (limiting the parties' witness lists and instructing that no party "may call a person to testify as a live witness at trial or designate a person's deposition for introduction at trial . . . unless . . . that person was identified on a Party's witness list"). The parties should present to the Court proposals regarding appropriate limits on the number of witnesses at an appropriate juncture.

Meta opposes the FTC's proposal to follow Rule 32(c). First, Meta suggests that all testimony must be presented live – this suggestion fails for the reasons discussed above. *See supra* IV.A.2. Second, Meta suggests that the FTC should be prohibited from offering deposition testimony in transcript form (although this is plainly contemplated by Rule 32(c) in non-jury trials) if Meta would prefer to present "counter-designations" in video form. This suggestion should be rejected, as it is inefficient and it undermines the intent of Rule 32(c). Meta's suggestion is plainly inefficient because it would needlessly consume trial time to force the FTC to play unnecessary video depositions where the FTC does not believe that doing so would benefit the Court. Moreover, it is plainly contrary to Rule 32(c) to give a defendant the power to demand that its adversary present deposition testimony in non-transcript form merely by claiming that the defendant has certain "counter-designations" – if Rule 32(c) was intended to

give a party in a non-jury trial the right to dictate that its adversary present deposition testimony in non-transcript form, the Rule would not draw a distinction between jury trials and non-jury trials. Moreover, any such approach would merely invite disputes over whether the defendant's "counter-designations" are appropriate, efficient, or "in fairness ought to be considered at the same time," etc. *Cf.* Fed. R. Evid. 106.

Meta insists that video depositions would help the Court assess witness credibility, but ignores the burden is on the FTC to present its affirmative case in an effective manner. The Court is fully competent to assess whether any questions of credibility impact its understanding of written deposition designations and, if so, how to answer any such questions. A blanket requirement for video depositions would not aid the Court.

Meta is likewise incorrect to suggest that Rule 32(c) mandates a preference for deposition designations to be presented via video rather than through written transcripts. Meta misunderstands both the Advisory Committees' Notes on the 1993 Amendment to Rule 32(c), which was introduced to accommodate the "increased opportunities for video-recording and audio-recording of depositions" but did not imply that video was superior to deposition transcripts. Moreover, the out-of-circuit cases that Meta cites are unhelpful to Meta's argument. The court in *Express Freight* merely reiterated the aforementioned Advisory Committees' 1993 Notes, *Express Freight Sys. Inc. v. YMB Enterprises Inc.*, 2022 WL 2467176, at *7 (E.D.N.Y. Mar. 29, 2022), while the *Williams* decision concerned an objection by defendants that the plaintiffs opted for a video deposition over a written transcript, *Williams v. Bd. of Comm'rs of McIntosh Cnty.*, 938 F. Supp. 852, 861 (S.D. Ga. 1996). The court in *Williams* observed that "Plaintiffs surely cannot be expected to forego effective presentation in the interest of economy," 938 F. Supp. at 861—whereas here, the FTC believes that it should have to option to determine

whether in at least some circumstances the economy of written transcripts *is* effective presentation.

Finally, Meta suggests that the Court should count its review of deposition designations against the submitting party's allotted trial time, seemingly regardless of the circumstances of the Court's review. Meta has never discussed this proposal with the FTC, so the FTC does not understand Meta how envisions that such a proposal might work, but it is plainly onerous, impractical, unsupported by caselaw, and yet another attempt by Meta to artificially restrict, and thereby prejudice, the FTC's ability to try its case.

For these reasons, the FTC respectfully asks the Court to instruct the parties as follows:

- Where a party offers a witness's testimony through deposition designations, the party may elect to present the witness's testimony in either transcript form or non-transcript form.

- If the other party elects to counter-designate portions of the witness's testimony, such testimony shall be offered in the same form (i.e., transcript form or non-transcript form) chosen by the party that elected to offer the witness's testimony.

- The parties shall promptly meet and confer and present to the Court no later than December 13, 2024 a proposed schedule for the exchange of preliminary witness lists. The parties shall also meet and confer and present to the Court no later than December 13, 2024 a proposed schedule for the exchange of deposition designations and counter-designations.

### 2. Meta's Position

The FTC seeks an order requiring that: (1) a party who designates a deposition unilaterally gets to choose whether that testimony is presented in transcript rather than video

form; and (2) the parties propose a schedule for the exchange of preliminary witness lists and deposition designations within four days of the upcoming December 9 status conference. The Court should reject these proposals.

      ***Deposition Designations.*** As noted above, the parties are able to call witnesses live and should do so rather than conduct the trial by deposition. To the extent that any deposition designations are necessary, however, video should be played during trial. Meta does not agree to the FTC's proposal giving it the option to submit written transcripts rather than playing video during trial, nor is the FTC entitled to mandate the submission of deposition designations in transcript form simply based on its preference even when Meta submits counter-designations. *See* Fed. R. Civ. P. 32(c) (parties "may provide the court with the testimony in nontranscript form" for "any deposition testimony the party offers"). While depositions are not replacements for live testimony – as Judge Hand explained, *see Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) ("[T]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.") (Learned Hand, J.) – video depositions at least permit the Court to better gauge witness credibility in a way that is impossible with a cold transcript. *See Williams v. Bd. of Comm'rs of McIntosh Cnty.*, 938 F. Supp. 852, 861 (S.D. Ga. 1996) ("[A]t a bench trial, the Court's role is to determine the credibility of witnesses. This can easily be done when watching a videotaped deposition, but is nearly impossible when reading a written transcript."). Rule 32(c), the FTC's primary authority, is not to the contrary. That Rule was enacted to make it easier for parties to rely on deposition video at trial. *See* Fed. R. Civ. P. 32(c), advisory committee's note to 1993 amendment (explaining the rule was "included in view of the increased opportunities for video-recording and audio-recording of depositions"); *see also Express Freight Sys. Inc. v. YMB Enters. Inc.*, 2022 WL 2467176, at *7 (E.D.N.Y. Mar. 29,

2022) ("The history of Rule 32(c) reveals that it was added to the Federal Rules in 1993 to facilitate the use of depositions at trial.  As video and audio recorded depositions became common place, a provision was needed to govern their use at trial."), *report and recommendation adopted*, 623 F. Supp. 3d 39 (E.D.N.Y. 2022).

Requiring the parties to play video depositions at trial, as opposed to submitting only deposition transcripts, will encourage the efficient and restrained use of deposition testimony (itself already a poor substitute for live testimony).  As set forth above, deposition designations already tend to be overinclusive; allowing transcripts in lieu of video would only risk submission of longer, less-tailored, designations.  Thus, contrary to the FTC's claim, its proposal increases the likelihood of designating low-value testimony.  Further, submitting deposition transcripts does not save the Court time; it merely shifts the Court's work from during the trial day to outside it, which imposes an additional burden on an already-burdened Court in what the FTC claims must be an unusually lengthy trial (10-12 weeks).  To the extent the Court accepts the FTC's proposal, Meta proposes that, to incentivize efficient and non-cumulative use of deposition testimony, any deposition designations submitted by a party should count against that party's trial time, even if the Court reviews the deposition materials in Chambers.  *See supra* Section III.A (Meta's proposal for a chess clock).

***Preliminary Witness List and Deposition Designation Exchange Schedule.***  Meta has already explained to the FTC that, because the Local Rules require the submission of witness lists and deposition designations with the parties' pretrial statements, *see* Local Rule 16.5(b)(1)(iv), (vi), Meta will meet and confer about a schedule for such exchanges after the Court sets a pretrial statement deadline at the upcoming status conference.  The FTC's request for a Court order – requiring the parties to inform the Court, by December 13, when they will

exchange preliminary versions of these items between themselves before the pretrial statement deadline – is unnecessary.

### C.    Written Direct Examinations

#### 1.    Plaintiff's Position

During the November 25 status conference, the Court asked the parties' position on the use of written directs as a mechanism to increase efficiency.  Status Conf. Tr. at 13:4-7, Nov. 25, 2024.  The FTC recognizes that written direct examinations in some circumstances may lead to the efficient presentation of evidence and have been used in antitrust cases in both this District and in other federal districts.  *See, e.g.*, *United States v. Microsoft*, 253 F.3d 34, 47 (D.C. Cir. 2001) (noting that the district court "required that all trial witnesses' direct testimony be submitted to the court in the form of written declarations"); Order at 1, *Fed. Trade Comm'n v. Vyera Pharma., LLC*, No. 20cv00706 (DLC) (S.D.N.Y. Dec. 10, 2021), ECF 790 ("Direct testimony from witnesses under the control of the parties has been submitted by affidavit with the pretrial order . . . .").  In particular, presenting the written direct testimony of a witness for whom a party has sufficient protections from the disclosure of privileged information can lead to an efficient and effective presentation of evidence.  Likewise, where a witness has not been deposed, written direct examinations can substantially increase the efficiency of a cross examination.

However, the FTC also recognizes that written direct examinations present certain limitations.  First, written directs are impracticable where a party intends to conduct a direct examination of a witness who is adverse or is otherwise not inclined to be cooperative (even if not technically adverse).  Second, written directs reduce the Court's ability to assess the witness's demeanor and relationship (friendly, hostile, or neutral) with counsel for the party

40

offering the testimony.  Third, written direct examinations of expert witnesses limit the Court's ability to ask questions during direct examination.

Due to the practical obstacles that written direct examinations impose, the FTC does not believe that the efficiency benefits of presenting written directs outweighs the practical complications in every circumstance.  That being said, to the extent this Court would find the presentation of a subset of testimony in written form helpful, the FTC proposes that written direct examinations be limited to a subset of fact witnesses identified with a party, and certain expert witnesses.  As discussed below, this proposal balances the potential efficiency-enhancing benefits of written directs with the practical difficulties that written directs may pose.

### 1. *For fact witnesses, a party should be required to present testimony in written direct form only if the witness is identified with the party*

First, written direct examinations should be required only for fact witnesses "identified with" the party presenting the witness's direct testimony.  *Cf.* Fed. R. Evid. 611 (leading questions are proper "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.").  Fact witnesses identified with a party would presumptively include current employees as well as other witnesses represented by counsel for the party.

Presenting the direct testimony of witnesses identified with a party in written form allows for the efficient presentation of evidence and balances practical considerations. Specifically, this proposal significantly streamlines the presentation of evidence at trial by allowing the Court to efficiently receive the witness's direct testimony, while still assessing the credibility of the witness during cross examination and redirect.  Moreover, because this proposal is limited to only witnesses identified with a party (which would likely for the most part be current or former employees) the party's counsel will have full access to these witnesses as

well as an ability to work closely with them to prepare an accurate and fulsome direct examination without fear of disclosure of privileged information.

In contrast, requiring the written direct examination for fact witnesses not identified with a party is impractical. The FTC intends to call multiple Meta employees in its case-in-chief. Understandably, Meta is unlikely to allow the FTC unfettered access to its employees to facilitate the preparation of a direct examination. Moreover, even if a current Meta employee was inclined to cooperate with the FTC, the FTC's attorney work product would inevitably and inappropriately be exposed to Meta's employees during the process (and, if Meta's counsel participated in the process, to Meta's counsel as well).

The parties face similar obstacles to the preparation of written direct examinations for third parties. At least some of these witnesses are unlikely to cooperate with the preparation of a direct examination, as they previously have resisted providing deposition testimony in this matter. *See, e.g.*, Sequoia Cap.'s Mot. to Quash, Nov. 7, 2022, ECF 212; Min. Order, Nov. 10, 2022 (denying Sequoia's motion to quash). And even third-party witnesses that have not actively attempted to frustrate the parties' efforts to obtain testimony still may not have an incentive to cooperate closely enough with counsel to prepare a fulsome and accurate written direct examination. Moreover, even if these individuals were inclined to cooperate with a party to prepare written direct examinations, each party's attorney work product would inevitably and inappropriately be exposed to third parties and might also be subject to disclosure to the opposing party.

> **2.  *Each party should be provided with the option to exempt up to three expert witnesses from the requirement to provide written direct examinations***

While the presentation of expert witnesses through written direct examinations can offer the same efficiency benefits as fact witnesses who are identified with a party, the FTC recognizes that there are also additional benefits to presenting experts live, particularly in a case involving technical economic and factual concepts.  As such, to the extent this Court is inclined to order written direct examinations, the FTC proposes that each party be provided with the option to present up to three expert witnesses live in order to facilitate an effective direct examination and allow the Court an opportunity to engage with the expert's affirmative opinions.  To the extent either party wishes to exercise its choice to present a particular expert's testimony through a live oral examination rather than a written direct, the party shall disclose their intent when final witness lists are exchanged.

This approach will increase efficiency by ensuring that the substantial majority of expert testimony is presented via written direct examination, as the parties have collectively disclosed seventeen experts.

> **2.    Meta's Position**

No party requests the option to present written direct testimony.  The FTC's proposal for pre-written direct testimony, presented only in the event the Court requires it, seeks to impose a significant and lopsided pre-trial burden on Meta.  Meta does not believe that the parties or the Court would benefit from pre-written direct testimony.  As the FTC acknowledges, written direct testimony has limitations, including reducing the Court's ability to gauge a witness's demeanor and preventing the Court from asking questions during direct testimony.  There are better, fairer solutions for promoting trial efficiency, such as requiring witnesses to come live, using a chess clock, and prohibiting dumps of unsponsored documents into the record.  *See supra* Sections

I.A(2), III.A, IV.A(1); *see also* Fed. R. Civ. P. 43 (stating that "[a]t trial, the witnesses' testimony must be taken in open court" absent a rule or statute providing otherwise).

    ***Meta Witnesses.***  Requiring pre-written testimony when Meta calls Meta witnesses would be unfair to Meta.  The FTC limits its proposal to "fact witnesses identified with a party," which the FTC concedes "would likely for the most part be [Meta] current or former employees."  Put simply:  under the FTC's proposal, Meta alone would be forced to pre-write and disclose direct testimony for its witnesses, depriving it and the Court of the benefits of hearing direct testimony live, while the FTC would not have to produce any (or nearly any) written direct testimony or disclose it in advance.

    The FTC's proposal is also inefficient.  The FTC has indicated that it plans to rely primarily on numerous Meta employee witnesses called live in its direct case as adverse witnesses.  *See supra* at p.42 ("The FTC intends to call multiple Meta employees in its case-in-chief."); Scheduling Conf. Tr. at 16:15-18 (Feb. 28, 2022), ECF No. 109 (FTC stating "[w]e intend to prove our case based on what is in Meta's files largely").  Meta will then have to spend significant time examining its employee witnesses in response to the FTC's examination of those witnesses.  Combining live direct and re-direct examination of Meta's employee witnesses is more efficient and will allow Meta to better consolidate and tailor its questioning.  *See infra* Section IV.D (the parties' agreement that fact witnesses should only be called once).

    ***Nonparties.***  The parties agree that written directs are inappropriate for nonparties.  *See supra* at p.42.  The majority of these nonparties are Meta's competitors, and they have no incentive or interest in working with Meta's counsel to craft written direct examinations.  The only effective way for Meta to present nonparty evidence is to subpoena and call these witnesses to testify at the trial.

***Experts.***  Finally, with respect to expert witnesses, Meta agrees with the FTC that there are "benefits to presenting experts live" in order to allow the Court an opportunity to engage with the expert's affirmative opinions during their direct testimony.  Meta thus opposes any requirement for the parties to submit written direct testimony for expert witnesses.

### D.    Fact Witnesses Testify Once

The parties agree that fact witnesses should not be called more than once, and that a fact witness thus should not be re-called absent a finding of good cause by the Court.  The parties propose to meet and confer on how this affects scope limitations of witness examinations and submit their positions to the Court at a later date.

Dated: December 5, 2024                Respectfully submitted,

                                       */s/ Mark C. Hansen*
                                       Mark C. Hansen (D.C. Bar No. 425930)
                                       Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                       Leslie V. Pope (D.C. Bar No. 1014920)
                                       Lillian V. Smith (D.C. Bar No. 252516)
                                       Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
                                       Justin B. Berg (D.C. Bar No. 90003841)
                                       Alex P. Treiger (D.C. Bar No. 1670925)
                                       KELLOGG, HANSEN, TODD,
                                          FIGEL & FREDERICK, P.L.L.C.
                                       1615 M Street, N.W., Suite 400
                                       Washington, D.C. 20036
                                       Tel: (202) 326-7900
                                       mhansen@kellogghansen.com

                                       *Counsel for Defendant Meta Platforms, Inc.*


                                       */s/ Daniel Matheson*
                                       Daniel Matheson (D.C. Bar 502490)
                                       Krisha Cerilli (D.C. Bar 983281)
                                       Maria DiMoscato (D.C. Bar 489743)
                                       Patricia Galvan
                                       Noel Miller (D.C. Bar 1026068)
                                       Federal Trade Commission
                                       Bureau of Competition
                                       400 Seventh Street, S.W.
                                       Washington, D.C. 20024
                                       Telephone: (202) 326-2075
                                       Email: dmatheson@ftc.gov

                                       *Attorneys for Plaintiff Federal Trade Commission*