**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

FEDERAL TRADE COMMISSION,

        Plaintiff,

        v.

META PLATFORMS, INC.,

        Defendant.

Case No. 1:20-cv-03590-JEB

---

**JOINT STATUS REPORT**

The parties submit this Joint Status Report pursuant to the Court's request for a proposed pretrial schedule.  *See* Min. Order (Dec. 9, 2024).

**I.      Pretrial Deadlines**

**A.      The FTC's Position**

The vast majority of disputes between the parties come down to the proposed sequencing of deadlines rather than significant disputes about particular dates.  The FTC's proposal, attached as Exhibit A, is intended to require a good faith disclosure of evidence that the FTC anticipates comprising its case-in-chief.  To that end, the FTC has already disclosed a list of Meta executives it reasonably anticipates calling.  Moreover, the FTC takes seriously the Court's instruction that it would prefer to receive testimony live and wants a well-tailored exhibit list.  The FTC intends to comply with those directives.  Thus, the FTC's proposal would first require disclosure of what will be well-tailored preliminary witness and exhibit lists, grounded in the contours of the parties' planned trial presentations.  Next, the parties will exchange proposed caps for the number of exhibits, the requested time allotment, and limits on motions in limine, all with the benefit of a well-founded understanding about each side's planned trial presentation.  The FTC

1

proposes engaging with these processes early so that the parties, nonparties, and, if necessary, the Court, can all engage in confidentiality assessments and trial presentation planning with time to spare.

Meta's proposals do the opposite, at once demanding evidentiary limits well before the parties' trial planning will be complete and thus likely untethered to the FTC's planned case, and at the same time delaying serious engagement on the substance of each parties' trial plans (e.g., exhibit and witness lists) until far too late. The FTC respectfully requests that the Court direct the parties to engage early on the substance of each other's intended trial presentations, and only then to consider and impose reasonable evidentiary limits with the benefit of such context. The FTC's proposed schedule and position statements are designed with those guiding principles in mind.

*1. Exhibit List Caps.* The parties should exchange proposals for caps on exhibit lists after exchanging preliminary witness and exhibit lists, rather than before, as Meta requests. The FTC proposes that both parties prepare their preliminary exhibit lists with a good faith estimate of the exhibits they intend to introduce; the parties can thereafter negotiate with additional information about the contours of each other's case, rather than setting an arbitrary cap untethered to the parties' needs. Separately, this order would allow both sides to observe any overlap in their trial presentations and propose joint stipulations for exhibits that both parties plan to use.

The FTC does not plan "to flood the record with hundreds of unnecessary documents." *Contra* Meta's Position Statement, JSR at Section I.B.6. Rather, the FTC is actively working to prepare a preliminary exhibit list that is well-tailored to support its developing planned trial presentation. Of course, the FTC cannot agree to exhibit list caps until it first sees Meta's

preliminary witness and exhibit lists, since the FTC may need to supplement its final exhibit list to address evidence Meta plans to offer in support of its purported procompetitive justifications or to contest the FTC's case-in-chief more generally.  That said, the FTC's proposal would have the parties submitting reasonable exhibit list caps less than two weeks after preliminary exhibit and witness lists are exchanged, and more than two months before the trial is set to begin—plenty of time for the parties to adapt and revise trial presentation plans in response to the Court's ordered exhibit list caps.

   *2. Exchange of Preliminary Witness & Exhibit Lists.*  The parties should exchange preliminary witness and exhibit lists in late January, rather than mid-February, to facilitate earlier engagement with the other side's trial planning, review potential areas for joint stipulations, and identify as early as possible any disputes over exhibits so that the parties can resolve such disputes as promptly as possible.  Further, exchanging exhibit lists promptly will allow the parties and any impacted third parties to resolve confidentiality assertions and address any issues regarding the authenticity of exhibits.

   Meta objects to both the timing and the contents of this preliminary exchange.  Meta proposes to exchange preliminary witness and exhibit lists 12 days later than the FTC proposes.  But its proposal provides no advantages and instead—as described above—serves only to frustrate the sequence of disclosures that would offer the parties and the Court the most efficient path forward.

   The parties also disagree about the contents of the preliminary witness list: unlike the FTC, Meta would require the preliminary list—like the final witness list—to adhere to the requirements of Local Rule 16.5(b)(6), notably the requirement that each party provide an estimate for the length of witness examinations.  On its face, however, Local Rule 16.5 applies

only to final witness lists and is silent as to whether a preliminary witness list should be exchanged or what should be contained in any such list. Notwithstanding, the FTC has agreed—at Meta's request—to identify rebuttal witnesses on its preliminary witness list. But there is no valid reason for requiring the parties also to provide timing estimates at such early juncture. Any estimates the FTC provides prior to viewing Meta's preliminary witness list will necessarily be tentative and based on highly incomplete information, as Meta (unlike the FTC), has not provided any information regarding the witnesses they intend to call. Moreover, the parties have not seriously engaged on proposed stipulated facts or the admissibility of either side's exhibits, all of which will also inform the FTC's estimates of the time each witness will require. Providing rough estimates of the length of each witness's examination without such information will not be helpful to either party, nor informative to the Court. Indeed, until the FTC receives such information, it is difficult to even estimate how long the total "chess clock" should be, which is why the FTC has proposed that the parties submit any estimates regarding the total length of time that should be available for trial *after* preliminary witness list and exhibits list are exchanged.

Despite the highly incomplete information that will be available to the parties when preliminary witness lists are exchanged, Meta argues that the Court needs estimates of each examination's length in order to assess whether each party's witness list is reasonable. The FTC disagrees for two reasons. First, for the reasons identified above, the parties' preliminary estimates of the time each witness might require are likely to be highly uncertain at that juncture and unlikely to provide reliable information to the Court. Second, the FTC intends to present an efficient witness list designed to fit within the Court's guidance regarding the time available for trial and believes that this will be apparent to the Court when witness lists are exchanged.

Moreover, if the Court has any concerns about whether either party's list is reasonable, the Court can instruct the parties to provide further information regarding the length of examinations in the event the Court believes it to be appropriate.

**3. *Deadline for Confidentiality Procedures Proposal.*** First, Meta misrepresents in its position statement that "[b]oth parties' proposals recognize that the deadline to submit confidentiality proposal should be set approximately two weeks after the exchange of preliminary exhibit lists, and after the Court rules on an exhibit cap." Meta's Position Statement, JSR at Section I.B.4. The FTC's proposal envisions that the parties submit proposed confidentiality procedures to the Court less than a week after the parties *submit* proposals regarding an exhibit cap, among other things, with no relation whatever to when the Court rules on the latter proposals.

Second, Meta argues that the parties would have insufficient time to negotiate and submit proposed confidentiality procedures after, Meta presumes, hearing from the Court about exhibit caps. The FTC does not believe that the parties should set their pretrial schedules based on when they predict the Court may rule on certain issues, nor does it agree that the parties must know what exhibit cap the Court intends to impose before engaging in good-faith negotiations regarding confidentiality procedures. Further, it is for this very reason that the FTC proposes that the parties exchange preliminary witness and exhibit lists before arbitrarily suggesting exhibit caps: only in this sequence could the parties make reasonable and informed exhibit cap proposals to the Court based on what evidence they genuinely anticipate introducing. The FTC proposes that the parties engage with confidentiality earlier so that they can communicate any issues to all parties, nonparties, and, if necessary, the Court, in a timely manner.

***4. Exchange of Final Witness & Exhibit Lists.*** The parties should exchange final witness and exhibit lists in late February, rather than alongside their final pretrial statements in mid-March. This timeline would give the parties the opportunity to assess each other's final witness and exhibit lists ahead of the proposed deadline for filing pretrial motions in limine, as such motions may relate to or be mooted by the other side's final witness and exhibit lists. Moreover, this allows both sides more time to resolve disputes relating to the admissibility of exhibit lists as well as issues relating to confidentiality.

***5. Schedule for Pretrial Motions in Limine.*** Pretrial motions in limine should be due on a set date, with concrete deadlines for response filings. The parties and the Court will both benefit from the certainty and predictability of preset deadlines, whereas permitting the parties to file motions on a rolling basis would burden the Court with seriatim motions regarding issues that likely need not be resolved before the pretrial conference. Moreover, the substance of any pretrial motions in limine filed by the parties will necessarily relate to the parties' final witness and exhibit lists. It would be premature and unhelpful to compel briefing on an evidentiary dispute in advance of the parties' final exchange, which is why the FTC proposes setting the filing deadline shortly after said exchange, as was done in *United States v. Google. See* Status Conf. Tr. at 17:15-17, No. 1:20-cv-03010-APM (D.D.C. June 29, 2023), ECF 609 ("There was an initial deadline of June 20th for an exchange of exhibits and witness lists. I take it that has happened already?"); *id.* at 31:9-11 ("Would the Court envision that it would want us to address the *Dauberts* or the motions in limine—**obviously we haven't filed those yet**—but at the Pretrial?" (emphasis added)). Meta insists that this Court's "routine practice" is to set deadlines for pretrial motions in limine before final exhibit and witness lists are due, but the cases Meta cites appear anything but ordinary. *See, e.g.*, Joint Pretrial Statement, *Jackson v. Attorney*

*General*, No. 1:18-cv-00026-JEB (D.D.C. May 21, 2021), ECF No. 57 (describing how the case's timeline was altered multiple times due to COVID-19 and pro bono counsel's departure).

Nor does Meta's argument consider the FTC's proposal that the parties exchange final witness and exhibit lists *prior* to submitting their pretrial statements. Of course, in the event that a party needs resolution of a particular issue in advance of the pretrial motions in limine deadline, they can seek relief through a JSR filing or another appropriate vehicle.

Further, the deadlines for the parties' response filings should adhere to the typical cadence of 14 days after a motion for a response and seven days after a response for a reply. *See* L.R. 7(b), (d). Meta has not articulated any reason to depart from the local rules in this regard. There is no need to afford additional time for reply briefs, in particular because the filing party is fully capable of anticipating counterarguments and preparing its reply filing even before the opposing party files any response. Further, adding additional days for a reply unnecessarily pressures the rest of the pretrial schedule. Because pretrial motions in limine should not be filed before the parties exchange their final witness and exhibit lists, extended deadlines for reply filings would mandate shifting whole portions of the contemplated schedule back even earlier.

*6. Joint Status Reports.* While the parties are aligned that joint status reports shall be submitted on January 16 and February 17, the FTC also asks this Court to order that the parties shall submit such reports no later than 5:00 PM EST to avoid delays in joint filings.

### B.    Meta's Position

Meta's proposed pretrial schedule is attached at Exhibit 1. Meta requests that the Court enter it. Meta explains here why the Court should adopt Meta's proposal and reject the FTC's approach.

      *1. **Deadline for Exhibit Cap and Chess Clock Time Allotment Proposals.*** The Court should require exhibit cap and chess clock time allotment proposals in a joint status report due on January 16, so that the Court can set those limits a few weeks before Meta's proposed date for preliminary exhibit and witness list exchanges on February 10. Setting limits beforehand avoids wasting time and resources with bloated preliminary lists. This approach also ensures the parties focus on "a manageable number [of exhibits] that" they "can actually discuss . . . during trial versus just lobbing in hundreds and hundreds of pages that no one is going to discuss." Ex. 2, Hr'g Tr. at 10:17-16:2, *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK (N.D. Cal. Oct. 24, 2018), ECF No. 921 ("*Qualcomm* Tr.") (setting cap before preliminary exchange).

      The FTC is incorrect (at 2) that an exhibit cap in January would be "untethered from the parties' needs." The FTC has been pursuing this case for over 4 years and urged, repeatedly, that it is ready for a prompt trial. Surely it can explain in mid-January how many exhibits it "needs." And it is capable of estimating upper limits before a preliminary exchange. *See, e.g.*, Ex. 2, *Qualcomm* Tr. at 23:15-21 (FTC counsel stating, before preliminary exhibit exchanges: "[I]t's hard to imagine how we introduce more than 50 exhibits a day during a trial day . . . it's hard for me to imagine how, as a practical matter, we would be introducing more than 500 exhibits in the course of trial.").

      In addition, deferring exhibit caps and time limits until after preliminary exchanges (as the FTC proposes) will be wasteful. Without exhibit cap guidance from the Court in January, the parties' preliminary exhibit lists are likely to differ vastly in size. Meta included approximately 500 exhibits at summary judgment (ECF No. 369-4), while the FTC responded with nearly triple that amount (ECF No. 379-3, listing the FTC's 1,400+ exhibits). If, as the FTC proposes, the parties exchange preliminary lists with a disagreement about an appropriate number of exhibits

by a difference of 1,000 exhibits (and the difference may be greater), then the parties' disputes about which exhibits should be cut or remain, and how many and why, will amplify. Then, after the Court's ruling on an exhibit cap (in mid-February under the FTC's proposal), the parties may have to spend more time and resources substantially redoing their exhibit lists in response to the Court's order and the other party's resulting amendments, and that may also delay the parties' related discussions over proposed confidentiality procedures. *See* Ex. 3, Order at 2-3, *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, No. 1:11-cv-00806-RC (D.D.C. Aug. 26, 2014), ECF No. 382 ("*Sabre* Order") (setting cap after exchange and thus requiring re-submission of an "updated, *realistic* list of exhibits" (emphasis in original)).

The FTC asserts (at 2) that deferring exhibit caps until after preliminary exchanges would enable the parties to propose joint stipulations for overlapping exhibits. Nothing in Meta's proposal prevents the parties from achieving that same efficiency after a preliminary exchange subject to a cap. And the parties are *less likely* to reach early joint stipulations about exhibits if, as the FTC proposes, they will not at the time know how many are allowed under the cap. In short, the FTC's proposal will generate inefficiencies and disputes; Meta's reasonable proposal is designed to avoid them.

**2. Deadline for Preliminary Exhibit and Witness List Exchanges.** Meta's proposal to begin preliminary exhibit and witness list exchanges on February 10 – 9 weeks before trial – is reasonable. A February 10 deadline affords the parties time to discuss preliminary lists before finalizing them and is 3.5 weeks after Meta's suggested January 16 deadline for proposals on exhibit caps and chess clock time allotments – limits that, if set early, will help focus the parties' negotiations. This sequencing ensures the parties will have enough time to adjust their lists based on any exhibit cap and time limit ruling before exchanges begin.

The FTC offers no good reason for insisting that the parties rush preliminary exchanges by January 27 (11 weeks, or 2.5 months, before trial). Requiring exchanges so early in the pretrial process will result in premature, unhelpful lists. The parties agree that preliminary lists should be "good faith representations of the witnesses and exhibits that the parties intend to call or introduce," with allowances for "reasonable changes" through amendments after the initial "exchanges." Email from B. Rashkovich (Dec. 13, 2024). Yet the FTC informed Meta that it will not be prepared to provide meaningful time estimates for its witnesses by its January 27 deadline. *See id.* (FTC refusal to agree to include time estimates in preliminary witness lists). The FTC also claims it cannot even propose a reasonable exhibit cap by that date. *See supra* at 2 (proposing February 7 exhibit-cap deadline claiming FTC will not know its exhibit "needs" in mid-January). So, on the FTC's own telling, a January 27 preliminary exchange deadline will ensure that its witness and exhibit lists will not be focused on what the FTC actually intends to introduce at trial; rather, they will be unrealistic and overbroad. That is unhelpful, and likely to generate unnecessary disputes, not promote efficient trial planning. *See* Status Conf. Tr. at 17:12-14 (Dec. 9, 2024), ECF No. 388 ("Dec. 9 Status Conf. Tr.") ("I don't want either side to have to prepare crosses for a whole bunch of witnesses who there's little likelihood of being called.").

The FTC claims (at 6) its proposal will allow the parties "more time" to engage with the other side's trial planning and review potential areas for joint stipulations. That is wrong. The 4-week period that Meta proposes between preliminary and final lists (February 10 – March 10) to negotiate about witnesses and exhibits is the same number of weeks the FTC proposes between preliminary and final lists (January 27 – February 24), so the FTC's proposal does not create "more time" for negotiation. Instead, the FTC's proposal will result in rushed exchanges

that begin prematurely and conclude earlier than the Local Rules require, *see* Local Rule 16.5(a)(2), making unnecessary and inefficient disputes more probable.

       **3.  *Contents of Preliminary Witness Lists.***  The Court asked the parties to specify in witness lists the "form that testimony is going to be" (live or by video deposition).  Dec. 9 Status Conf. Tr. at 5:20-21.  The Court should also order that witness lists should include all the information required by Local Rule 16.5(b)(5) – including "an estimate of the time the party will take in eliciting" testimony from the witness.  Local Rule 16.5(b)(5).  That information will help the parties plan for trial efficiently.  As the FTC previously argued, witness lists are important "for planning purposes in terms of allotting our time."  Dec. 9 Status Conf. Tr. at 16:7-8.  That information will also help the Court assess whether preliminary witness lists "seem[] unrealistic."  *Id.* at 18:5-6.  Because the parties may use their chess clock allotments differently, the number of witnesses is not the lodestar for evaluating whether witness lists are reasonable.  *See id.* at 7:4-9 ("[I]f I'm imposing a chess clock, then you want to call a few witnesses for a long time or a lot of witnesses for a short time, you know, that's up to you.").  Instead, the parties and the Court must have information about time estimates to make that determination.  Discussions about efficient trial planning will be difficult if the FTC need not provide time estimates in its preliminary witness list and only discloses them for the first time in its final witness list (as the FTC proposes).

       There is no good reason why the FTC cannot include time estimates in its preliminary witness list (due by February 10 under Meta's proposal).  During the parties' meet and confer, the FTC's only reason for refusing was its stated inability to provide meaningful time estimates by January 27 (the FTC's proposed preliminary exchange deadline).  But that argument is not credible – the FTC has been urging a prompt trial for years – and it does not support departing

from the sensible witness list requirements in the Local Rules. The FTC's argument, at best, shows the FTC's proposed preliminary exchange deadline is premature and that Meta's later deadline is reasonable.

   ***4. Deadline for Confidentiality Procedures Proposals.*** Meta proposes that the parties submit proposed confidentiality procedures to the Court on February 24. Both parties' proposals recognize that the deadline to submit confidentiality proposals should be set at least 2 weeks after the exchange of preliminary exhibit lists, and after the Court rules on an exhibit cap. This sequencing ensures that the parties may consider pertinent information about the scope of confidential material likely to be at issue, which will impact what confidentiality procedures are appropriate.

   The FTC's proposal to submit confidentiality proposals on February 17 is unrealistic because of its other proposed deadlines. Under the FTC's approach, the parties must propose exhibit caps on Friday, February 7. Assuming the Court rules shortly after that, the parties may then have to substantially revise their exhibit lists, either because of the Court's exhibit cap ruling or in response to exhibit list changes made by the other party. *See* Ex. 3 at 2-3 (*Sabre* Order). And at that same time when the parties' preliminary exhibit lists may be thrown into flux under the FTC's proposal, the parties would have only 6 business days (by Monday, February 17) to negotiate and submit proposed confidentiality procedures while their exhibit lists simultaneously are changing. That approach is impractical and likely to generate inefficient and unnecessary disputes, not obviate them.

   ***5. Deadline for Motions in Limine and Other Pretrial Motions.*** The Court should require motions in limine or other pretrial motions to be filed by February 21, with 14 days for oppositions and 10 days for replies. Meta's proposal ensures that any motions in limine or

pretrial motions will be fully briefed by 1 week before the pretrial conference but allows the parties to file and complete briefing earlier so that the Court can "nip any impending disputes in the bud and also to give guidance as [the parties] proceed."  Dec. 9 Status Conf. Tr. at 23:20-21.

The parties are close on the appropriate timing of motions in limine and other pretrial motions.  But the FTC would not agree to permit the filing of motions in limine any earlier than its proposed February 26 deadline, or allow an extra 3 days for filing reply briefs (which Meta requested as a courtesy extension so that counsel will have enough time to consult with Meta before filing).  The FTC instead has insisted that these pretrial motions can be filed and briefed only after the parties finalize their exhibit and witness lists.  Based on that premise, the FTC insists that the deadline for final lists must be expedited to February 21 (ahead of the Local Rules' deadline) and that any briefing on pretrial motions must be on fixed dates after that, with briefing ending no earlier than March 19.

The FTC's argument is contrary to this Court's routine practice of setting motion-in-limine deadlines before final exhibit and witness lists are due.  *See*, *e.g.*, Min. Order, *Jackson v. Attorney General*, No. 1:18-cv-00026-JEB (D.D.C. May 4, 2020) (motions in limine due before pretrial statements with final lists, allowing 14 days for replies); Min. Order, *Medina v. Kevorkian Cleaning Co.*, No. 1:18-cv-01291-JEB (D.D.C. June 3, 2020) (same).  The FTC's claim that motions in limine cannot be filed before final lists apparently previews its intention to exchange overbroad, unrealistic witness and exhibit lists too early, and then dramatically change them by the time of final lists.

There is no legitimate reason for the motion-in-limine pile-up that the FTC proposes at the end of the pretrial process, which increases the risk that the Court will be saddled with

motions to resolve on the eve of trial, without adequate time for the parties to adjust their trial plans based on the Court's rulings.

      ***6. Deadline for Final Witness Lists, Exhibit Lists, and Deposition Designations.***  Both parties agree that the pretrial statements should be due on March 10.  *See* Local Rule 16.5(a)(2) (14 days before pretrial conference).  Meta thus proposes that the parties submit final witness lists, exhibit lists (with objections), and deposition designations by that same date (5 weeks before trial) – as the Local Rules require.  *See* Local Rule 16.5(b)(1)(iv)-(vi) ("A party's Pretrial Statement shall contain . . . a schedule of witnesses," "list of exhibits," and "designation of depositions, or portions thereof, to be offered in evidence by the party").

      The FTC unreasonably demands a departure from the Local Rules.  The FTC insists that the parties must finalize their witness and exhibit lists weeks earlier, by February 24 (7 weeks before trial).  That premature finalization of lists creates greater risk that the parties will need to amend them, increasing the likelihood of disputes.

      The FTC claims that early final lists are necessary to negotiate confidentiality issues that its exhibit list will present.  The long timeline sought by the FTC between preliminary lists and trial previews its intention to flood the record with hundreds of unnecessary documents.  The Court should prevent that by adopting Meta's proposal to set reasonable exhibit caps in January (which will likewise cabin negotiations over confidentiality, and in turn eliminate the FTC's stated reason for expediting final lists).  *See supra* Section I.B.1.  Moreover, the FTC argues for expedition of final lists based on the incorrect claim that the parties cannot make progress on confidentiality until exhibit lists are finalized.  But that is simply not so.  For example, while the parties finalize their lists between February 10 and March 10 (as Meta proposes), the FTC should identify high-priority exhibits for which it would like to discuss confidentiality.  These

documents are unlikely to change after the exchange of preliminary exhibit lists, and Meta has already offered to engage with the FTC on a reasonable number of them during the pretrial period.

      ***7. Joint Status Reports.***  Meta disagrees with the FTC's characterization of the JSR filing process—and regrets the FTC's decision to burden the Court with this unnecessary issue: one on which the parties have not met and conferred.  The Court should leave the parties to work out among themselves the JSR filing process—as they have done for the past several years of this litigation.

## II.    Witness Disclosures

### A.    The FTC's Position

      The FTC does not object to providing, prior to trial, both a witness order and time estimates for witness examination—the FTC has proposed that this information should be exchanged no later than the exchange of final witness lists on February 24, 2025.  However, there is no merit to Meta's proposal that the Court enter at this point an order that the FTC should provide this information only four weeks prior to trial, and that Meta should only provide information regarding witness availability a few weeks prior to trial.  Meta's requested order would delay the FTC's efforts, which have already begun, to provide Meta with information about the order in which Meta's executives will be called in the FTC's case in chief.

      The FTC has already informed Meta of the Meta executives that the FTC reasonably expects may be called during the FTC's case in chief: Meta should first provide "blackout" dates, or dates the executives that the FTC intends to call at trial are unavailable during the first four weeks of the trial, so that the FTC can determine its witness order.  Based on the information

provided by Meta, the FTC will then provide be able to provide, as promptly as practicable, information regarding the order in which the FTC intends to call Meta's executives.

To facilitate this exchange of information, the FTC sent Meta a good-faith list of Meta executives who the FTC anticipates calling in its case-in-chief on December 16, 2024 (i.e., nearly four months prior to trial), identified Mssrs. Zuckerberg and Schroepfer as the first two Meta witnesses that the FTC presently intends to call in its case in chief, and provided an estimate of when Mssrs. Zuckerberg and Schroepfer will be called. *See* Ex. B at 1. The FTC's transparency should provide Meta with sufficient time to inquire about and communicate any dates on which its executives are unable to appear.

Meta instead asks that the FTC first provide a witness schedule and then the parties shall confer about "scheduling conflicts." Meta's proposal is unworkable and inefficient. The FTC cannot plan the order in which Meta's executives will be called until the FTC knows when Meta's executives are unavailable. It is more workable for Meta's executives to simply identify any dates on which they might be unavailable during the FTC's case-in-chief, for Meta to communicate these dates to the FTC, and then for the FTC to plan its witness order accordingly and communicate its plans promptly to Meta. In response, Meta argues that it is impracticable for their witnesses to "hold" all currently available dates between mid-April and early June, but this is the opposite of what the FTC proposes. As explained above, the FTC is attempting to *avoid* requiring Meta's witnesses to "hold" long periods of time open by providing Meta promptly with information regarding the order in which they will be called—as soon as Meta informs the FTC of any blackout dates on which witnesses are unavailable. For example, the FTC has informed Meta that it is highly likely that Messrs. Zuckerberg and Schroepfer will be called during the first week or the second week of the FTC's case in chief (both of which will

16

occur in April).  Thus, these executives should not need to "hold" any dates in May or June.  The FTC anticipates that once any blackout dates are identified, it will promptly be able to provide even greater specificity for these two witnesses, and for Meta's other executives.  To the extent any Meta executives develop unforeseen unavailability after the initial exchange of blackout dates, the parties can confer, and the FTC will attempt to accommodate where possible and depending on the nature of the witness's conflict.  Moreover, as the FTC has explained during the meet and confer, it does not object to disclosing its complete witness order on March 17 but rather seeks sufficient information from Meta in advance to make such disclosure a meaningful one.

Meta should provide true dates of unavailability instead of mere scheduling conflicts. The FTC is entitled to present its case in the manner that it believes will provide clarity and efficiency for the Court.  While the FTC will of course endeavor to work around dates of genuine unavailability, it is not obligated to structure its trial presentation according to the dates that are most convenient for Meta's executives.

Finally, the FTC also asks this Court to order Meta to provide its witness order as well. During its meet and confer with Meta, the FTC advised Meta that its position was that Meta should likewise disclose its witness order and invited Meta to suggest a date by which it would provide such disclosure.  Meta has yet to respond.  The FTC again asked Meta about disclosing its own witness order via email and, again, Meta has yet to respond.  *See* Ex. B at 4 ("Further, the FTC notes that it has asked Meta to offer when it will make a similar disclosure of Meta's witness order and Meta thus far has refused to respond.").  As such, the FTC asks this Court to order Meta to provide to Plaintiffs their proposed order for all witnesses they may call live at trial in their case in chief and the week in which Meta expects to call the witness.

### B.    Meta's Position

The Court has stated its preference for live testimony and efficient trial presentations. *See* Dec. 9 Status Conf. Tr. at 3:19-20, 4:21-22. Meta believes live testimony is important and has previously committed that it will undertake reasonable efforts to make its current employees available to testify live. *See* Jt. Status Rep. at 24 (Dec. 5, 2024), ECF No. 387. But Meta needs to know who the FTC intends to examine, when, and for how long, because the witnesses the FTC is likely, if not certain, to call have myriad competing and evolving obligations due to business and personal demands. Meta requests that the Court enter an order to facilitate witness scheduling and reduce the risk of wasted trial time. *See* Ex. 4, Pretrial Conf. Tr. at 36:17-20, *Lewis v. District of Columbia*, No. 1:15-cv-00521-JEB (D.D.C. Feb. 22, 2018), ECF No. 108 ("Do not tell me at 3:00 one afternoon 'I've run out of witnesses.'").

Specifically, Meta requests that the Court order the FTC to disclose to Meta, at least 4 weeks before trial (by March 17, if not earlier), the FTC's proposed order for all witnesses it may call live at trial in its case-in-chief, the week in which the FTC expects to call the witness, and the estimated time for the FTC's examinations. *See* Ex. 5, Order at 1, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Aug. 4, 2023), ECF No. 625 (requiring this disclosure 4 weeks before trial). Meta asked the FTC to agree to a joint proposed order that was nearly identical to the one entered in *Google*, which included that Meta would provide the same witness sequencing disclosure for Meta's case-in-chief 1 week before trial begins. The FTC refused, even though there is no prejudice to the FTC from disclosing an order of witnesses before trial. Meta offered to make a similar disclosure before trial and to discuss scheduling witnesses upon consideration of the FTC's preferred ordering (when it informs Meta of its plans).

18

The Court should accept Meta's proposal for the same reasons given in *Google*. There, the court required witness sequencing disclosures so that Google could "begin notifying witnesses and making sure they're available." Ex. 6, Status Conf. Tr. at 16:23-24, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. July 19, 2023), ECF No. 617. The court explained that Google witnesses were (as here) "3,000 miles away presumably," and, of course, "set their schedules more than a week in advance." *Id.* at 19:2-3, 19:8-10. So the Court ruled that trial had "to be planned . . . in advance" and required the government to "sequence" its witness list so that Google could "start lining up people and when they need to be here so we don't have dead time." *Id.* at 18:3-6, 18:24-25, 19:7-10. Those same considerations apply here.

Meta has also explained to the FTC that coordinating schedules for certain Meta executives will need to occur earlier than 4 weeks in advance. A small number of senior Meta executives (no more than 5, some of whom may be overseas) have schedules and circumstances that are especially complicated. So for the same efficiency reasons, the Court should also order that after Meta identifies this small number of Meta executives to the FTC, the FTC shall meet and confer about scheduling their testimony promptly, and shall provide anticipated testimony dates as soon as possible (and by no later than the deadline the Court sets for final witness lists). By that time, the FTC should have a clear plan for when it intends to examine Meta's executives.

The FTC rejected Meta's proposals and instead, provided Meta today (for the first time) with a list of 17 Meta witnesses who the FTC believes it will call live at trial (caveating that this list might change). The list does not state any order of witnesses, provides no estimate for when the FTC will call each witness to testify, or any estimate for how long each witness examination will take. The FTC now wants Meta to provide "blackout" dates on which the listed Meta witnesses cannot testify, even though the FTC elsewhere claims that it cannot provide its own

witness examination timing estimates by mid-February, which is necessary information for discussion about witness ordering and scheduling.

The Court should reject a requirement that Meta provide witness blackout dates for those 17 witnesses now. It would be impracticable, unreasonable, and personally and professionally burdensome to insist that Meta employee witnesses should hold all currently available dates between mid-April and early June until the FTC decides (at some unknown and undisclosed later time) if and when it intends to call each Meta witness on its list and for how long those witnesses should make themselves available. And because blackout dates between now and trial are likely to change – some days may open up and others may become occupied – requiring Meta to provide now blackout dates that will invariably change will not facilitate efficient witness scheduling. In short, providing blackout dates now does not create certainty for the witnesses, the parties, or the Court. Providing a proposed order of witnesses with time and date estimates well in advance of trial makes it much easier for witnesses and the parties to agree on timing and increases the likelihood of an efficient trial.

The FTC's proposal is also unnecessary. Today, the FTC disclosed to Meta the first 2 witnesses it intends to call at trial, and Meta promptly agreed to the FTC's request to confer about those specific witnesses' availability in January (including their immovable conflicts during the first 2 weeks of trial). The Court should require the FTC to continue to keep Meta apprised of its anticipated witness order (and disclose it by no later than March 17) so that Meta can meet and confer with the FTC about scheduling witnesses to appear live.

Instead of adopting the FTC's proposal, the Court should (1) adopt the witness scheduling procedures used in *Google* and require the FTC to provide its witness order at least one month before trial (if not earlier); and (2) order that after Meta identifies to the FTC a

small number of Meta executives with complicated scheduling, the FTC shall meet and confer about scheduling their testimony promptly, and shall provide anticipated testimony dates as soon as possible (and by no later than the deadline the Court sets for final witness lists). This will allow for some degree of certainty for Meta executives and enhance their ability to move around conflicts and hold specific dates for trial and travel based on the FTC's actual trial plans. Meta's proposal will thus ensure an efficient flow at trial and minimize disruptions.

### III.    Video Deposition Designations

#### A.    The FTC's Position

Regarding video designations, it is the FTC's position that for any video designations that will be played in court, the parties should exchange opening designations before the pretrial conference. Contrary to Meta's contention, the FTC does not intend to call a "large number of video-witnesses." *See* Meta's Position Statement, JSR at Section III.B. Based on its current assessment, the FTC expects that in its case in chief only three witnesses will be called by playing deposition video and not called live. That said, the FTC is aligned with Meta that the parties should agree on a process for pre-trial disclosures for video depositions and proposes that the parties align on a process in advance of the January JSR.

#### B.    Meta's Position

The Court has instructed the parties that its preference is to have witnesses appear live. *See* Dec. 9 Status Conf. Tr. at 3:19-23 ("I want to hear the lion's share of the testimony directly from live witnesses in court because I want to judge their credibility and I frequently may be interrupting testimony to ask questions to make sure I understand."). And the parties have the ability to call witnesses live, given their nationwide subpoena power. The FTC nonetheless appears to be planning for a large number of video-witnesses (as well as a truckload of

undesignated deposition transcripts at the very end of the trial, *see infra* Section I.V.B). Meta respectfully submits that there should be only limited video testimony. To the extent the Court allows video testimony, the parties should be permitted to submit objections and cross-designations.

Meta proposes that the parties exchange any opening deposition designations with their preliminary witness lists (whether that is February 10 as Meta proposes, or January 27 as the FTC proposes), with an exception for later opening designations of testimony from a witness a party intends, but is not able, to call live. Given that the parties should be able to provide time estimates by the time of preliminary witness list exchanges, *see supra* Section I.B.3, the parties should know by then which deposition testimony they intend to designate. Opening deposition designations should include *all* deposition excerpts that the parties plan to introduce during the trial (including any portions of transcripts for use in post-trial submissions). *See supra* Section I.B.6.

Meta also proposes that the Court require the parties to submit a proposed schedule for completing the deposition designation exchange process (e.g., for counter-designations and objections) in a joint status report shortly after opening designations are due. That would allow the parties to consider the quantity of opening designations at issue when crafting an appropriate deposition designation schedule. Under Meta's proposal, the parties would submit a proposed deposition designation schedule in a joint status report due on February 17.

The FTC agrees to providing opening video designations at the time of preliminary witness list exchanges but refuses to commit to the witnesses it will call by video by February 10 (Meta's proposed deadline for submitting opening deposition designations). The FTC seeks the option to re-designate any of its witnesses to be called by video at the eleventh hour, so that it

can submit opening deposition designations up until the "pretrial conference" on March 24.

Email from N. Brenner (Dec. 16, 2024).  That proposal is prejudicial and contrary to the Local

Rules, leaving Meta little or no time to object or counter-designate testimony.  *See* Local Rule

16.5(b)(7) (requiring deposition designations with pretrial statement due before pretrial

conference, and providing "[a]ny cross- designation sought by any other party . . . must be made

at or before the final Pretrial Conference.").  The FTC's proposal, that it can audible to call

witnesses by video deposition on the eve of trial, is also inefficient.  The FTC's proposal will

prevent the Court, until the very end of the pretrial process, from evaluating whether the FTC is

"planning on calling too many people via video," Dec. 9 Status Conf. Tr. at 15:7-8, and impede

Meta from adjusting its presentation in light of the FTC's intended video presentation, *see id.* at

15:21-23 ("[Y]ou are going to be able to see each other's lists, and if you think, wait a minute,

we want that person live, fine.").

## IV.    Post-Trial Submission of Deposition Transcripts

### A.    The FTC's Position

Regarding written designations, it is the FTC's position that it is impractical,

unnecessary, and inefficient to exchange deposition designations in advance of trial.  First, the

Court has indicated that each party's post-trial filings can include limited citations to deposition

testimony.  Dec. 9 Status Conf. Tr. at 6:9-14 ("[W]hat I am most likely to do is to say I will let

you submit deposition excerpts, written deposition excerpts, in connection with pos[t]-trial

briefing but only to the extent that they are cited in your posttrial briefing."); *id.* at 9:5-9 ("You

want to put exhibits into the record after trial, fine, but they need to be—but only to the extent

they are going to be cited in posttrial briefing."); *id.* at 19:6-8 ("If there's ancillary or lesser

issues that come in after trial, I will likely permit it . . . .").  The Court also expressed that it

prefers to hear from live witnesses and wants the parties to establish issues of significant importance to the resolution of this matter through live trial presentations rather than citations to written deposition testimony in post-trial filings.

Given the Court's guidance, it is impractical and inefficient to exchange written deposition designations until the parties have drafted their post-trial filings. Any exchange prior to that time would likely incentivize each party to prepare over-inclusive designations to eliminate the possibility that the party might miss testimony that relates to a discrete or ancillary point. That would generate more potential disputes for the Court and the parties to resolve.

Further, most, if not all, of the potential deposition testimony that the parties might designate now or in the remainder of the pre-trial period should prove unnecessary based on other diligent work by the parties in the pre-trial period—such as productive efforts on joint stipulated facts and the admission of business records—or by the course of trial testimony itself. The parties would therefore be investing significant time and effort preparing designations that ultimately go unused, and any disputes between the parties regarding designations that are ultimately unused would needlessly take up the Court's time. The parties are, rather, best served by using their time in the coming months to prepare for the live presentation of evidence during trial, and other productive efforts like exchanging exhibit lists and admissibility objections, rather than engaging in the time-consuming process of exchanging written deposition designations.

Second, it is unnecessary to exchange designations relating to deposition testimony that will only be cited in post-trial filings because the Court can determine, at an appropriate time, a process for submitting post-trial findings that includes an opportunity for post-trial replies. The parties' post-trial reply filings can thus incorporate objections and designations for completeness,

if any, to whichever deposition transcript excerpts the other party has cited to in its proposed post-trial findings.

In any event, Meta's proposal to disclose written designations on each party's preliminary exhibit list is not workable. The FTC has not identified written non-video deposition testimony that the FTC intends to rely on in post-trial findings at this time, because the Court has indicated that it wants the parties to minimize their reliance on such evidence and the FTC is accordingly focused on preparing its live trial presentation. Further, the FTC is focused on beginning the process of engaging with Meta to agree on joint stipulations of fact and on the admissibility of documents, which can both streamline trial presentations and ensure that important facts are established through live witnesses. For example, the FTC hopes that Meta stipulates to uncontroversial facts such as the dates on which Instagram and WhatsApp were acquired, the dates on which certain features were launched, and that the United States is a relevant geographic market (which was uncontested by Meta at summary judgment and in its expert reports). The FTC does not currently anticipate needing to cite written deposition testimony for such ancillary issues; it would only be necessary if the FTC is unable to align with Meta on these issues or otherwise present such evidence to the Court in the form of documents or live testimony. As such, the FTC will not be in a position to designate written deposition testimony by the time of its preliminary witness list.

If, however, the Court prefers disclosure of written deposition testimony in advance of post-trial briefing, the FTC proposes that it identify witnesses it may rely on in its post-trial briefing in its March 17 pre-trial disclosures and submit any deposition designation by the close of its case-in-chief.

### B.    Meta's Position

Meta continues to object to any end-of-trial submission of evidence that was not the subject of trial examination.  *See* Dec. 9 Status Conf. Tr.at 18:17-19:1.  To the extent the Court permits the submission of any such materials, on "ancillary" matters only, *see id.* at 19:6-8, the Court should require pretrial disclosure of those materials (both testimony, via pretrial witness list and deposition designation exchanges, and documents via exhibit list exchanges).  *See* Ex. 7, Am. Scheduling & Case Mgmt. Order at 8, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Feb. 3, 2021), ECF No. 108-1 (instructing that no party may "designate a person's deposition for introduction at trial . . . unless . . . that person was identified on a Party's witness list . . . .").  Such an order is necessary because the FTC has claimed that it need not disclose to Meta, in any pretrial exchanges, the deposition testimony (or documents) it intends to introduce post-trial.  Instead, the FTC claims it can introduce that evidence for the first time after trial concludes, when it is too late for Meta to counter any such evidence.

The FTC's position is unreasonable and prejudicial to Meta.  It would deprive Meta of the opportunity to confront at trial the evidence the government offers against Meta in its effort to obtain extraordinary and unprecedented relief.  *See Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1313 (D.C. Cir. 2021) (pretrial disclosures of witnesses and exhibits "avoids trial by ambush").  And it would allow the FTC to circumvent the chess clock limits that the Court will set, as well as valid objections that Meta might have under the Federal Rules of Evidence that it could have raised during the pretrial process had the FTC disclosed its deposition testimony.

The FTC's argument also contradicts the Federal Rules and this Court's Local Rules.  By default, a party must disclose the witnesses, deposition testimony, and exhibits it intends to rely on at trial in its pretrial disclosures.  Fed. R. Civ. P. 26(a)(3) (requiring pretrial disclosures of the

witnesses the party "expects to present," "the designation of those witnesses whose testimony the party expects to present by deposition," and the exhibits the party "expects to offer"); Local Rules 16.5(b)(5)-(7) (similar). Otherwise, "the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); Local Rule 26.2(a) ("A party that without substantial justification fails to disclose information required by . . . Fed. R. Civ. P. 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."); *Banks v. Vilsack*, 292 F.R.D. 158, 160 (D.D.C. 2013) (granting motion to strike).

The FTC suggests that the Court's guidance, allowing the parties to "sparingly" submit materials post-trial, *see* Dec. 9 Status Conf. Tr. at 19:16-20:2, was an invitation to use undisclosed deposition testimony as it wishes after trial concludes. But the Court never authorized submitting *undisclosed* testimony post-trial, let alone in unlimited amounts. *See id.* at 6:25-7:1 ("[P]ut your people, the people you want me to hear, put them on. Don't save them for a posttrial dump."); *id.* at 9:5-7 ("I don't expect to read exhibits, a whole bunch of exhibits, that are dumped after trial."). On the contrary, the Court instructed that it will not allow use of deposition testimony through "backdoor" post-trial submissions – that is, it warned against the trial-by-ambush strategy the FTC endorses. *See id.* at 19:21-24 ("I am certainly not receptive to any kind of backdoor situation where someone tries to put things in after the trial that they didn't want crossed on or something like that."). Similarly, in *Google*, the court required the parties to exchange deposition designations before trial, *see* Ex. 7, Am. Scheduling & Case Mgmt. Order at 8, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Feb. 3, 2021), ECF No. 108-1, ordered that the parties must move that evidence into the record "before resting their case in chief, and then required the parties to submit that admitted record for the court's reference

(including deposition designations) "at the end of the case." ECF No. 387-11 at 1, 2 (Order, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Aug. 28, 2023) (requesting post-trial submissions "hyperlinked to the record")).

Further, the FTC's proposal is not (as it claims) more efficient. If the FTC follows the Court's guidance to submit post-trial materials "sparingly," *see* Dec. 9 Status Conf. Tr. at 19:16-20:2, rather than "investing significant time and effort" to "prepare over-inclusive designations," as the FTC suggests it will do, *see supra* at 24, any pre-trial designations will be minimal and not needlessly time-consuming. And the parties can address the most efficient process for resolving objections and counter-designations after exchanging their opening deposition designations. Under Meta's proposal, the parties would submit a proposed deposition designation schedule in a joint status report due on February 17.

During the parties' meet and confer, the FTC defended its proposal by claiming it might ultimately cite only limited undisclosed deposition testimony post-trial. That vague claim is no assurance. When Meta asked during the meet and confer, the FTC refused to provide an estimate of how many transcripts, or which ones, it was considering submitting post-trial. Instead, the FTC stated it might cite in post-trial submissions any of the 190+ deposition transcripts in the record, which include more than 1,000 hours of testimony – thus giving Meta no notice of what testimony the FTC intends to rely on or opportunity to confront it. The FTC's proposal is also a way for the FTC to evade the chess clock system to which it agreed (and valid objections); it could submit *hours* of deposition testimony in transcripts post-trial, granting itself additional testimony time beyond the Court's limits. *See supra* at 24 (indicating the FTC will cite written transcripts post-trial when it "miss[es] testimony" at trial).

For the same reasons, the Court should reject the FTC's alternative proposal to delay its designations of transcripts until the end of its case-in-chief and merely identify, before trial, the names of the witnesses for whom it may submit written testimony after trial.  Meta would still have no notice what evidence, in the hours of deposition testimony for each witness, that it needs to meet at trial.  Moreover, because the parties agreed fact witnesses will appear at trial once, if the FTC does not disclose designated transcript testimony for the witness until the very end of its case-in-chief, (after the witness has finished testifying), Meta would not be able to elicit relevant testimony from that witness regarding the designated testimony.  And the FTC would still be able to evade the chess clock system.

The Court should reject the FTC's attempt at a post-trial transcript dump outright.  *See* Ex. 8, Op. & Order at 8, *FTC v. Kroger Co.*, No. 3:24-cv-00347-AN (D. Or. Dec. 10, 2024), ECF No. 521 (recently refusing to admit 114 exhibits the FTC attempted to introduce post-trial based on a party stipulation allowing each to "offer into evidence a reasonable number of exhibits' in support of its proposed findings of fact"); *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1253 n.3 (M.D. Fla. 2012) (lamenting "document dump" by the FTC that left the court "to swim in a great reservoir of undifferentiated . . . paper."), *aff'd*, 704 F.3d 1323 (11th Cir. 2013).

## V.    Amendments to Final Exhibit Lists

### A.    The FTC's Position

The FTC believes it is appropriate for the parties to preserve the standard "good cause" exception to their exhibit lists.  As explained, the parties can meet and confer further regarding the contours of such an exception if needed.  Meta's argument that this standard language is "premature" as the parties have not yet exchanged preliminary exhibit lists makes little sense, as having exchanged those lists will not offer the parties or the Court any new information relevant

29

to whether any exhibit might later be added for good cause.  The Court can determine, if and when appropriate, any requested amendments to a party's final exhibit list are made with good cause.

**B.    Meta's Position**

The FTC asks the Court to authorize adding exhibits to final exhibit lists during trial, including for "good cause."  Meta has explained to the FTC that it is premature to discuss amendments to final exhibit lists at this time.  The Court has not set an exhibit cap, and the parties have not exchanged preliminary exhibit lists.  That information is necessary for Meta to take a position on the circumstances under which the parties should be allowed to amend their final exhibit lists.  For example, if the Court permits the FTC to include thousands of exhibits on its list (it should not), Meta may take the position that the number of amendments to that expansive list, and the permissible reasons for them, should be limited.  The parties may be able to reach an agreement about amendments to final exhibit lists at a later date.  But Meta believes it is too early to decide this issue right now.  In light of the Court's request that the parties and the Court determine trial procedures "in as collaborative a way as possible" to "set up systems that . . . make sense," Dec. 9 Status Conf. Tr. at 3:8-12, Meta requests that the Court defer decision on this issue to allow the parties to meet and confer about it further at a later date.

Dated: December 16, 2024                    Respectfully submitted,

                                            */s/ Mark C. Hansen*
                                            Mark C. Hansen (D.C. Bar No. 425930)
                                            Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                            Leslie V. Pope (D.C. Bar No. 1014920)
                                            Lillian V. Smith (D.C. Bar No. 252516)
                                            Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
                                            Justin B. Berg (D.C. Bar No. 90003841)
                                            KELLOGG, HANSEN, TODD,
                                              FIGEL & FREDERICK, P.L.L.C.

30

1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*


*/s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Susan A. Musser (D.C. Bar 1531486)
Nathan Brenner (IL Bar 6317564)
Ben Rashkovich (D.C. Bar 5972724)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*