## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

META PLATFORMS, INC.,

      Defendant.

Case No. 1:20-cv-03590-JEB

## JOINT STATUS REPORT

The parties submit this Joint Status Report pursuant to the Court's December 20, 2024 Order. *See* Order, ECF No. 390.

### I.      Proposed Joint Stipulations of Fact

#### A.      FTC's Position

The FTC respectfully requests that the Court order Meta to provide, by January 22, a substantive response to the FTC's full first set of 106 proposed joint stipulations, which the FTC originally transmitted to Meta on December 18, 2024 and resubmitted with two minor adjustments on January 2, 2025. *See* Fed. R. Civ. P. 16(c)(2)(C); Ex. A at 10-11, 13. Meta has refused to provide any substantive response to a single one of the FTC's proposed stipulations, which Meta has now had nearly a month to consider. This delay is unwarranted, particularly as the FTC limited its proposed stipulations to uncontroversial propositions, such as:

- Facebook.com launched in 2004. Ex. B at 1.

- In approximately September 2006, Meta introduced Feed (or "News Feed") on Facebook. *Id.*

1

- In September 2021, Meta introduced Facebook Reels. *Id.* at 2.

- Kevin Systrom and Mike Krieger launched Instagram in October 2010. *Id.* at 3.

- Snapchat launched in September 2011 as a mobile-only, iOS application. *Id.* at 4.

- Meta has regularly published Community Standards Enforcement Reports (CSERs) since May 15, 2018. *Id.* at 6.

Meta did not—and still has not—responded to any of the FTC's proposed jointly stipulated facts. Such delay is unnecessary, as illustrated by the FTC's willingness to engage productively with stipulations proposed by Meta: on January 8, 2025, Meta sent its first set of proposed facts for joint stipulation to the FTC, and the FTC provided a substantive response to all of Meta's proposed facts within a week. Ex. A at 9-10 (Meta's transmission); *id.* at 1 (FTC's email response); Ex. C (FTC's substantive response). The FTC has already agreed to stipulate to over one-third of Meta's proposals and has proposed to meet and confer about the remainder of Meta's proposed facts on Tuesday, January 21. *See* Ex. C; Ex. A at 1. The FTC is prepared to discuss its response to each of Meta's proposed facts during that meet and confer, including to explain where potential agreement is possible with revised phrasing or additional information from Meta.

While the FTC has attempted to narrow the issues for trial in a timely and productive manner, Meta has engaged in an unproductive campaign of delay. Meta did not respond to the FTC's December 18 proposed set of stipulations until December 30, 2024, twelve days after the FTC served its proposed stipulations. Ex. A at 11-12. Even then, Meta refused to meet and confer on the substance of the proposal and instead asked the FTC to provide citations with pincites for each proposed stipulated fact. *Id.* The FTC responded to Meta's request three days later on January 2, 2025, with the requested pincites. *Id.* at 11. In a meet and confer on January

10, Meta again refused to provide any substantive response to a single proposed fact, and instead insisted that the FTC reduce the number of proposed stipulations from 106 to 36, an arbitrary number that corresponds to the number of stipulations Meta proposed.  *See id.* at 6-7.  While Meta's refusal to respond to a single proposed fact is entirely unwarranted, the FTC has nonetheless attempted to make progress by providing, on January 13, a narrower set of 36 proposed jointly stipulated facts (without prejudice to the FTC's request for a response on the full first set of proposed stipulations and to the FTC's right to serve additional proposed stipulations).  *Id.* at 5.  Meta has yet to respond to the substance of these proposed stipulations or even agree to a date by which Meta would do so.

Meta's refusal to substantively engage with the FTC's proposed stipulations is an unnecessary filibuster with significant consequences: it materially impacts the FTC's effort to prepare appropriately focused exhibit and witness lists, as well as the FTC's ability to provide accurate forecasts of the time necessary to present its case and the dates on which Meta's witnesses will be called.

Accordingly, the FTC asks the Court to order Meta to respond by January 22 to the FTC's first set of 106 proposed jointly stipulated facts, originally transmitted on December 18, 2024.  The FTC's requested date of January 22 is appropriate and efficient because it will provide greater certainty to both parties prior to the deadlines to exchange preliminary witness and exhibit lists on January 27 and submit proposed time allotments on February 7.  *See* Order at 2, Dec. 20, 2024, ECF No. 390.  This will allow both parties to better tailor their witness and exhibit lists, and to estimate time allotments with greater accuracy.

Meta's opposition to this request and undue delay to date are baseless.  There is no merit to Meta's argument that it would be "unfair and prejudicial" to require Meta to respond to the

FTC's first set of proposed stipulations prior to receiving the FTC's witness and exhibit lists. *Infra* at 5. The whole point of stipulating to uncontroversial facts is to avoid wasting the Court's time by calling unnecessary witnesses, introducing unnecessary exhibits, and having lengthier exams with witnesses that are called. Moreover, Meta is well aware of the evidentiary bases of the FTC's proposed facts, as they are largely based on propositions that were uncontroversial at the summary judgment stage: the FTC drew 37 of its proposed facts from Meta's own statement of material facts presented at summary judgment and 16 more from Meta's response to the FTC's statement of material facts. *See* Ex. B. Other proposed facts were derived from readily accessible sources well known to Meta, such as Meta's own expert reports, Meta's written response to the FTC's Rule 30(b)(6) notice concerning data topics, public blog posts or news articles from Meta or third parties, and deposition and investigational hearing testimony. *Id.*

### B.    Meta's Position

The Court should reject the FTC's proposal. This issue does not require any intervention from the Court at this time. Meta has engaged and continues to engage with the FTC to establish a reasonable process for identifying facts to which both sides can stipulate. In an effort to reach a compromise (and avoid troubling the Court with this issue), Meta has even offered to provide positions on a more manageable set of proposed stipulations (36) of the FTC's choosing by January 22, the date requested by the FTC. The FTC declined that offer of compromise. Now, the FTC claims that it has "responded" to Meta's substantially more tailored list of 36 proposed facts. That is not the case. The FTC's "responses" include its unwillingness to stipulate to the exact product market definition the Court ordered it to provide, and that it then provided in a detailed interrogatory answer. The FTC similarly refuses to stipulate to ten other proposed facts that it did not challenge in Meta's Statement of Undisputed Material Facts. For two-thirds of

Meta's proposed facts for stipulation, the FTC's position is only that it is willing to meet and confer, which is precisely what Meta has offered to do. Whether and to what extent the parties will ultimately be able to stipulate to certain facts remains to be seen. But the FTC's slanted recitation of the status of negotiations should not prompt judicial intervention at this time.

Final pretrial statements (where any joint stipulated facts will be provided to the Court) remain months away. There is no reason to subject the process of negotiating stipulated facts to a premature and arbitrary deadline. The FTC claims these stipulations will enable it to reduce its witness or exhibit lists, but it has not explained which witnesses it will not call, or exhibits it will withdraw, in the event of a stipulation. The proposed stipulations themselves do not appear to narrow or eliminate the need for evidence in any significant way, but they are voluminous and objectionable in many respects. It would be unfair and prejudicial to require Meta to expend the time and resources now to respond to the FTC's excessive list of largely irrelevant proposed stipulations (106 total) before the parties have even exchanged preliminary witness and exhibit lists.

The FTC's position in this JSR amounts to a complaint that Meta is not willing to adhere to the FTC's arbitrary and unilateral deadlines. Meta has told the FTC that it is willing to engage in a sensible and bilateral process for discussing a reasonable number of stipulated facts that may actually streamline the litigation. Meta respectfully submits that the Court should not impose deadlines but should instead allow the parties to continue negotiations. If a deadline is required, Meta proposes February 10 as an appropriate date for the parties to mutually exchange substantive positions on a reasonable number (fewer than 40) of proposed facts to which the parties might stipulate.

## II.    FRE 1006 Summary Exhibits

### A.    The FTC's Position

The FTC respectfully requests the Court to order a reasonable schedule for the pre-trial disclosure of Rule 1006 summaries.  The FTC proposes a specific schedule for this exchange below, though it is agnostic to the particular dates proposed.  Instead, more important than the particular deadlines is that the parties have ample time to disclose their Rule 1006 exhibits, review underlying materials, and exchange objections if any *before* trial begins.  Doing otherwise would invite trial by surprise and prevent the parties and the Court from adequately assessing the evidence.

Rule 1006 summaries are "admitted as evidence to prove the content of voluminous admissible evidence."  FRE 107 (introduced Dec. 1, 2024); *see also* FRE 1006(a) ("Summaries of Voluminous Materials Admissible as Evidence") (as amended Dec. 1, 2024).  When used appropriately in antitrust cases, FRE 1006 exhibits can be valuable summaries that aid the court in assessing voluminous evidence.  But FRE 1006 exhibits also involve a margin of error and—intentionally or not—may either inaccurately summarize evidence or be otherwise impermissible (e.g. constitute impermissible expert opinion).   In contrast to illustrative aids, which are not introduced into evidence, FRE 1006 summary exhibits present unique issues which counsel towards earlier disclosure.

*First*, the Rules of Evidence require the proponent of a summary exhibit make the underlying material "available for examination . . . at a reasonable time and place."  FRE 1006(b).  This is part of why the Federal Rules of Civil Procedure include "summaries" as part of pretrial disclosures.  *See* Fed. R. Civ. P. 26(a)(3)(A)(iii).  Reviewing what can amount to thousands of underlying documents or analyzing hundreds of lines of code is necessarily a time-

intensive endeavor not suited to the middle of trial.  In contrast, disclosing these exhibits in advance of trial will provide each side the necessary time to delve into the underlying evidence and raise any objections in a timely manner in advance of trial.  To the extent the Court sustains any objection to a FRE 1006 exhibit, both sides will have ample time to adapt their presentation of evidence to account for any such ruling.  Moreover, courts have also required a declaration or deposition regarding the preparation of a FRE 1006 exhibit.  *See* 31 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 8043 (2d ed.) (June 2024 update) ("Testimony from the person who prepared the summary evidence usually is required to establish the facts necessary to relevance and authentication.").  To the extent such testimony is appropriate, disclosure in advance of trial allows each side time to conduct a deposition versus having to do so while simultaneously in trial.  Neither side will be prejudiced by early disclosure.  Fact discovery closed in May 2023; expert discovery closed in January 2024.  The evidence fairly at issue in this case has been in the parties' hands for well over a year, allowing both parties more than sufficient opportunity to prepare FRE 1006 exhibits for pre-trial disclosure.  *See* Scheduling Order, Mar. 3, 2022, ECF No. 103.

Meta's argument that the Court exempted the parties' FRE 1006 summary exhibits from the pretrial disclosure requirement of FRCP 26(a)(3)(A)(iii) lacks merit.  *See* Order at 2-3, Dec. 20, 2024, ECF No. 390 ("Final exhibit lists need not include: . . . Rule 1006 exhibits . . . .").  As Meta is aware, the parties' final exhibit lists are due March 10, while trial begins on April 14.  The FTC requested that Rule 1006 exhibits be exempted from final exhibit lists to maximize each party's ability to craft these exhibits, review the documents and data underlying the opposing party's exhibits, exchange objections, and resolve disputes—ahead of trial.  Neither the

parties' discussions regarding their pretrial scheduling proposals nor the Court's Order on the same contemplate allowing the parties to engage in this process during trial.

*Second,* later disclosure invites trial by surprise.  As clarified in the new language of Rule 1006, the proponent of a summary is not required to admit the underlying documents into evidence.  FRE 1006 ("whether or not they have been introduced into evidence").  Late disclosure invites a party to omit evidence from its pretrial exhibit list only to surprise an opposing party with summary evidence mid-trial.  "No federal rule is needed . . . to empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial."  *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005).  If, as Meta proposes, a party may delay disclosure of a summary exhibit until after hearing the other side's evidence, there may not be sufficient time to fairly evaluate the voluminous underlying evidence, consider the method or calculations underpinning the relevant summary, identify objectionable substance, collect opposing evidence, and formulate any responsive calculations.  This danger is particularly acute in antitrust cases, where parties may attempt to use improper FRE 1006 exhibits to introduce new expert analyses or opinions.  While, at times, FRE 1006 exhibits simply summarize evidence presented in expert reports, parties have also attempted to use these exhibits to present new evidence in contravention of agreed-upon deadlines for expert reports and disclosures.  Any debates regarding the propriety of expert-related FRE 1006 exhibits is best had prior to trial versus inviting gamesmanship mid-trial.

Rule 1006 exhibits do require preparation, but that is why these exhibits have already been placed on a separate track from other exhibits.  The current pretrial schedule requires

disclosure of other admissible evidence by March 10, so disclosure of Rule 1006 summaries by March 17 provides an additional week to finalize any needed summaries. Pretrial disclosure of Rule 1006 summaries also comports with the schedule already set in this case. By March 17, the parties must already disclose the witnesses or declarations they would use to introduce their Rule 1006 summaries. Having disclosed all other exhibits and the witnesses used to sponsor them, there is little reason the parties cannot also disclose their summaries.

Meta's arguments are without merit. First, Meta claims that allowing the parties to disclose FRE 1006 exhibits during the middle of trial will promote trial efficiency. As noted previously, disclosure of complicated summary exhibits mid-trial is not efficient and would instead invite trial by surprise. Second, Meta claims that it needs to develop its FRE 1006 exhibits in light of the evidence and testimony presented at trial. The parties have had access to all pertinent information needed to plan for trial, including for FRE 1006 summary exhibits, for well over a year with fact discovery closing in May 2023 and expert discovery closing in January 2024. Meta's FRE 1006 exhibits should not be dependent on how the FTC chooses to lay out its case at trial; and similarly, Meta should not be entitled to create new FRE 1006 exhibits after the FTC presents its case (absent good cause). Third, Meta claims that it should not be required to simultaneously disclose its FRE 1006 exhibits without first receiving notice of the FTC's FRE 1006 exhibits.

While the FTC is not aware of any such requirement that FRE 1006 disclosures be sequenced, in the spirit of compromise, the FTC offered Meta a sequenced exchange of FRE 1006 exhibits and proposed the following schedule:

- March 17: FTC to disclose its FRE 1006 exhibits

- March 24: Meta to disclose its objections to FTC's FRE 1006 exhibits and Meta's FRE 1006 exhibits

- March 31: FTC to disclose objections to Meta's FRE 1006 exhibits and FTC's rebuttal FRE 1006 exhibits

- April 7: Meta to disclose objections to FTC's rebuttal FRE 1006 exhibits

Meta refused this agreement and continues to pursue disclosure of FRE 1006 exhibits during the middle of trial. The FTC respectfully requests that the Court deny Meta's request and order FRE 1006 exhibits be disclosed either (1) pursuant to the FTC's proposed schedule above, or (2) pursuant to an alternative pretrial schedule, as contemplated by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(3)(A)(iii).

### B.    Meta's Position

Federal Rule of Evidence 1006 summary exhibits are efficiency-enhancing trial tools. FRE 1006 enables a party to admit a summary of materials, a chart, or a calculation, and obviates the need to waste time introducing underlying "materials too voluminous to be conveniently examined during trial proceedings." Fed. R. Evid. 1006 advisory committee's note to 2024 amendment. For this category of exhibits, Meta proposes that the Court order the following disclosure schedule:

- Each party shall use best efforts to disclose an FRE 1006 exhibit 14 calendar days before its intended use; and

- Each party shall have 7 calendar days after disclosure of an FRE 1006 exhibit to raise any objections to the exhibit.

Adopting Meta's proposal will promote trial efficiency and development of FRE 1006 exhibits most helpful to the Court. Meta anticipates that, at trial, FRE 1006 exhibits will make

10

trial presentations about the voluminous records in this case more efficient (e.g., through charts or calculations) and will make that information more accessible to the Court.  Meta's proposal, which allows preparation and disclosure of FRE 1006 exhibits during trial, enables the parties to develop these exhibits in light of the evidence and testimony presented at trial and to take account of any questions or observations from the Court.

Meta's proposed disclosure schedule for FRE 1006 exhibits is reasonable.  *See*, *e.g.*, *Cirba Inc. v. VMware, INC.*, 2020 WL 1316464, at *3 (D. Del. Jan. 6, 2020) (adopting proposal to disclose FRE 1006 exhibits "at least one day in advance of anticipated use").  It is similar to (and far more generous than) FRE 1006 exhibit disclosure schedules to which parties often agree.  *See*, *e.g.*, Proposed Pretrial Order at 16, *Arconic Corp. v. Universal Alloy Corp.*, No. 1:15-cv-1466 (N.D. Ga. May 31, 2023), ECF No. 921 (party agreement to disclose FRE 1006 exhibits one day before use).  Moreover, the FTC previously asked the Court to order that FRE 1006 exhibits need *not* be disclosed pretrial, through exhibit lists, and the Court so ordered.  *See* Order at 2 (Dec. 20, 2024), ECF No. 390; FTC's Proposed Order, ECF No. 389-9 (no proposal for separate FRE 1006 exhibit deadlines); Fed. R. Civ. P. 26(a)(3)(B).

The Court should reject the FTC's contrary proposal for two reasons.  *First*, the FTC's proposal is unreasonable, prejudicial, and unfair.  The FTC seeks to require that Meta disclose all of its FRE 1006 exhibits by March 24 – essentially a month before trial begins and well before the defense case even starts.  That deprives Meta, as defendant, of the opportunity to develop FRE 1006 exhibits to respond to the evidence that the FTC presents and emphasizes during its trial presentation.  The government has advocated against that prejudicial approach in other antitrust cases.  *See*, *e.g.*, Proposed Final Pretrial Order at 26-29, *United States v. JetBlue Airways Corp.*, No. 1:23-cv-10511 (D. Mass. Sept. 15, 2023), ECF No. 191 (government's

position that pretrial disclosures "shall not preclude a party from creating FRE 1006 exhibits responding to an opposing party's FRE 1006 exhibits and disclosing them [two] days before [use]").

The FTC also attempts to make all of Meta's objections to all of the FTC's FRE 1006 exhibits, as well as all of Meta's FRE 1006 exhibits, due within seven days of receiving the FTC's first set of FRE 1006 exhibit disclosures (and weeks before trial begins). The FTC would have those deadlines apply to Meta, no matter how many FRE 1006 exhibits the FTC discloses and regardless of the quantity of "voluminous" materials the FTC claims support them – a number that the FTC has represented could be "thousands" of underlying documents per exhibit. Through these unnecessarily compressed deadlines, the FTC seeks to deprive Meta of its entitlement to a "fair opportunity to evaluate" the FTC's FRE 1006 exhibits. Fed. R. Evid. 1006 advisory committee's note to 2024 amendment; Email from B. Rashkovich (Dec. 13, 2024) (FTC's prior agreement that "both parties require adequate notice and opportunity to inspect and object to such exhibits"). Compounding the unfairness, the FTC seeks to allow itself (but not Meta) a second FRE 1006 exhibit disclosure opportunity – for so-called "rebuttal FRE 1006 exhibits." Meta's proposal, by contrast, allows both parties to disclose additional FRE 1006 exhibits at least fourteen calendar days before their intended use. That will give each party a fair and equal opportunity to respond to the other's trial presentation.

*Second*, the FTC's proposal is inefficient. The FTC insists that FRE 1006 exhibits and objections must all be exchanged before trial begins and has insisted that the Court should then resolve all "disputes" over FRE 1006 exhibits "before trial begins." Email from N. Brenner (Jan. 16, 2025). That approach will force the parties to waste valuable pretrial preparation time guessing at which evidence the other side might emphasize during trial, developing potentially

unnecessary FRE 1006 exhibits in anticipation, and exchanging objections to FRE 1006 exhibits that may never be used.  The FTC has claimed these steps are necessary so the FTC can "adapt" its presentation in light of the Court's rulings.  But nothing in Meta's proposal prevents the FTC from obtaining the clarity it seeks by disclosing its FRE 1006 exhibits and seeking early resolution of any objections to them.  But the FTC's approach fails to accommodate the fact that FRE 1006 exhibits might become relevant only in light of developments at trial.

For all these reasons, the Court should adopt Meta's proposal and require that each party use best efforts to disclose an FRE 1006 exhibit at least 14 calendar days before its intended use, with 7 calendar days for the other party to object after the disclosure.  It should reject the FTC's FRE 1006 disclosure proposal.

### III.    Post-Trial Schedule

#### A.    The FTC's Position

The FTC respectfully requests that the Court enter a post-trial schedule regarding submission of post-trial briefs, post-trial findings of fact and conclusions of law, and closing arguments.  The FTC proposes the below schedule and page limitations for post-trial briefing and closing arguments.  Meta has refused to even discuss post-trial briefing and closing arguments in advance of trial.

Plaintiff respectfully requests that the Court enter the below proposed briefing schedule and corresponding page limits.  It is practical and efficient for the parties and the Court to have a post-trial schedule set out in advance of trial—especially in this case, where there is certainty regarding the approximate end date for the trial.  Hr'g Tr. 4:17-5:12; 11:17-25, Dec. 9, 2024 (discussing trial time with expectation that the vast majority of trial testimony will be completed by June 5, 2025).  A post-trial schedule will allow both the parties and the Court to know the

13

complete timeline for the remainder of trial and to plan accordingly. Additionally, page
limitations for post-trial briefing will allow the parties to efficiently prepare post-trial briefing
throughout the trial, and more importantly, will place practical limitations on the size of the
parties' post-trial filings with the goal of reducing judicial burden. To date, Meta has refused to
provide a counterproposal regarding either page limits or briefing schedule—merely noting that
it is "premature" to enter any such schedule. In contrast, setting the schedule now will allow this
Court to most effectively manage its docket and allow all parties to most effectively meet these
deadlines.

| Item | FTC's Proposal |
|---|---|
| Proposed Findings of Fact | Due July 17, 2025<br><br>500 Pages |
| Proposed Conclusions of Law | Due July 17, 2025<br><br>30 pages |
| Post-Trial Brief | Due July 17, 2025<br><br>80 pages |
| Reply Findings of Fact | Due August 14, 2025<br><br>May add no more than 100 pages to the opposing party's proposed findings |
| Reply Brief | Due August 14, 2025<br><br>40 pages |
| Closing Arguments | September 8, 2025, or another date acceptable to the Court. |

### B.    Meta's Position

The FTC's suggestion that the Court should decide now on a post-trial schedule and
briefing parameters is premature. The parties have not even exchanged their preliminary exhibit
or witness lists; it is unrealistic at this stage to know the amount of time or pages that will be
appropriate for any post-trial briefing. The Court, rather than the parties, will have the best sense

of what post-trial schedule will be most helpful to the Court based on the pretrial submissions and trial record.There is no need to decide on post-trial matters now. Meta respectfully requests that this matter be deferred to a later date. To the extent that the Court wishes to entertain proposals from the parties, Meta respectfully submits that the parties will be best positioned to make informed proposals about an appropriate post-trial schedule, and page limits, at or near the end of the trial.

Dated: January 16, 2025                    Respectfully submitted,

                                           /s/ Daniel Matheson
                                           Daniel Matheson (D.C. Bar 502490)
                                           Krisha Cerilli (D.C. Bar 983281)
                                           Nathan Brenner (IL Bar 6317564)
                                           Ben Rashkovich (D.C. Bar 5972724)
                                           Owen Masters (D.C. Bar 242139)
                                           Karen Goff (N.Y. Bar 4630901)
                                           Federal Trade Commission
                                           Bureau of Competition
                                           400 Seventh Street, S.W.
                                           Washington, D.C. 20024
                                           Telephone: (202) 326-2075
                                           Email: dmatheson@ftc.gov

                                           *Attorneys for Plaintiff Federal Trade Commission*

                                           /s/ Mark C. Hansen
                                           Mark C. Hansen (D.C. Bar No. 425930)
                                           Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                           Leslie V. Pope (D.C. Bar No. 1014920)
                                           Lillian V. Smith (D.C. Bar No. 252516)
                                           Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
                                           KELLOGG, HANSEN, TODD,
                                             FIGEL & FREDERICK, P.L.L.C.
                                           1615 M Street, N.W., Suite 400
                                           Washington, D.C. 20036
                                           Tel: (202) 326-7900
                                           mhansen@kellogghansen.com

                                           *Counsel for Defendant Meta Platforms, Inc.*