**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-03590-JEB |
| META PLATFORMS, INC., | |
| Defendant. | |

**JOINT STATUS REPORT**

The parties are filing this joint submission pursuant to the Court's December 20, 2024 Order. *See* Order at 2, ECF No. 390.

## I.    WITNESS LIST CAP

### A.    FTC's Position

Meta's amended preliminary witness list identifies an unrealistic number of witnesses: 48 as "will call" and 38 as "may call." *See* Ex. A.  Accordingly, the FTC respectfully requests the Court to order that Meta provide by February 21 a more realistic witness list limited to 55 total witnesses (live or by video), with a maximum of 20 "may call" witnesses.  Meta refuses to agree to any limitation on the number of witnesses that will be included on its witness list.

The parties' preliminary witness lists identified witnesses as follows:

| FTC | | Meta | | Total after de-duplication | |
|---|---|---|---|---|---|
| Will Call | May Call | Will Call | May Call | Will Call | May Call |
| 35 | 13 | 48 | 38 | 68 | 37 |

Meta's list is unreasonable and will require the FTC to needlessly prepare for numerous cross-examinations that likely will never occur, which the Court has previously stated is

undesirable.  Hr'g Tr. at 17:12-14, Dec. 9, 2024, ECF 388 ("I don't want either side to have to

prepare crosses for a whole bunch of witnesses who there's little likelihood of being called.").

Further, Meta's list will burden the FTC with needlessly adding exhibits to its final exhibit list

for witnesses who are unlikely to be called at trial.  Accordingly, the Court should cap the

number of witnesses that the parties can identify on their witness list, as the Court previously

signaled was appropriate.  *See id.* at 18:5-7 ("[I]f one of the [witness] lists seems unrealistic and

not likely, then I may require capping[.]").

    The FTC disclosed to Meta a preliminary witness list designed to realistically comply

with the Court's guidance of a total trial time of 180 hours.  *Id.* at 5:10-12 ("I would consider up

to 180 [hours], but I would be very unlikely to consider more than that.").  The FTC's list

consists of 35 "will call" witnesses (including 8 expert witnesses) and 13 "may call" witnesses,

for a total of 48 witnesses.  *See* Ex. B.  The FTC carefully selected a narrow set of witnesses to

create a trial presentation that it could realistically present in 90 hours.  Meta, on the other hand,

disclosed a bloated and unrealistic witness list with 48 "will call" witnesses (including 9 expert

witnesses), and 38 "may call" fact witnesses, for a total of 86 witnesses—nearly double the

FTC's list.  *See* Ex. A.

    Meta's inflated witness list is disappointing given that it previously advocated to this

Court that it should impose limitations to "incentivize[] the parties to plan efficient trial

presentations."  Jt. Status Rep. at 19-20, Dec. 6, 2024, ECF 387 (advocating for a chess clock).

It is also in stark contrast to Meta's prior position that it did not need more than 48 to 72 hours

of trial time to make its case.  *Id.* at 18 ("Meta proposes that the Court assign a total trial time

between 96-144 hours, to be divided equally between the parties (48-72 hours per party)").  As

such, Meta's witness list appears to be gamesmanship designed to waste the FTC's limited trial

time on cross-examinations of Meta witnesses and to constrain government resources by forcing the FTC to prepare to examine dozens of witnesses, many of which Meta will not call at trial. Hr'g Tr. at 17:12-14, Dec. 9, 2024, ECF 388 ("I don't want either side to have to prepare crosses for a whole bunch of witnesses who there's little likelihood of being called."). For example, Meta listed the New York Times as a "may call" witness notwithstanding its irrelevance to this case—it does not offer a reasonable substitute for Facebook's or Instagram's personal social networking service ("PSNS") offering. *See* The New York Times Company, Annual Rep. at 1 (Form 10-K) (Feb. 20, 2024) ("We are a global media organization focused on creating and distributing high-quality news and information[.]"). This is just one example of many— including Walmart and eBay—that Meta identifies as witnesses that it may call but is unlikely to realistically call at trial. Meta's assertion that such witnesses may be called at trial is dubious at best, given its own indication that the Court's summary judgment opinion has significantly narrowed the issues for trial. Hr'g Tr. at 13:21-24, Dec. 9, 2024, ECF 388 (Mr. Hansen: "We should confine the proof to the issues that have been narrowed by the summary judgment opinion, all of which will help both efficiency and fairness."); *see also id.* at 25:1-4 ("THE COURT: I think that, again, you know, I have written some long opinions on this already, but again, the case sort of continues to be refined for you through my opinions and narrowing.").

Meta's arguments that it should not be subject to a witness cap are without merit. First, Meta asserts that the FTC somehow has not disclosed the full scope of evidence that it may use at trial. On the contrary, the FTC identified in good faith all the witnesses that it currently anticipates calling at trial, either live or by video, in its case-in-chief and rebuttal case, as required by the Court's order—while still reserving its rights to modify those rebuttal witnesses as explicitly permitted by the Court. *See* Order at 1, Dec. 20, 2024, ECF 390 (permitting the

FTC to "reserv[e] all rights to change such dispositions in its final witness list and amend its list of rebuttal witnesses in response to Meta's witness disclosures").

Second, Meta seeks to force the FTC to reduce its preliminary exhibit list by hundreds of exhibits, despite the fact that the FTC will need to prepare 48 cross-examinations for the witnesses on Meta's preliminary witness list that are not also on the FTC's list. Meta cannot have it both ways—it cannot on the one hand seek to limit the FTC's exhibits, while on the other hand forcing the FTC to identify numerous exhibits to preserve its ability to effectively cross-examine the inordinate number of witnesses on Meta's list (many of whom may not be called).

Third, Meta claims that it can abide by the Court's time limits and still call all 48 of its "will call" witnesses and some of its numerous "may call" witnesses. Meta's claim that it has plenty of time (nearly 2 hours) to examine each of its "will call" witnesses ignores the fact that Meta will presumably desire to cross-examine the witnesses that the FTC calls, and also does not appear to account for any time for its "may call" witnesses—thereby showing its hand that it does not intend to call its "may calls."

Fourth, Meta claims that it served an amended witness list, but the amended list only removed one witness from the total set, and thus did not resolve the FTC's concern. Finally, Meta appears to claim that the FTC is somehow hiding the ball by not disclosing its deposition designations until the date on which Meta agreed the designations are due. But the parties agreed to a deadline of February 14, and the FTC intends to comply with that deadline.

If Meta is not required to revise its witness list—as it should be—the trial is likely to consist of far more trial witnesses in a far shorter period of time than analogous cases: the Google trial involved 47 live trial witnesses over nine weeks, while Meta's current list requires testimony from at least 68 unique "will call" witnesses (and potentially another 37 "may call"

witnesses) over a far shorter period.  *United States v. Google*, No. 1:20-cv-3010, 2024 U.S. Dist. LEXIS 138798, at *34 (D.D.C. Aug. 5, 2024) (noting a trial time of nine weeks and Appendix listing trial witnesses).  It is highly unlikely that the parties can complete such a trial in 180 hours.

Accordingly, the FTC respectfully requests that the Court require a cap on each party of 55 total live or video witnesses, with no more than 20 identified as "may call" witnesses. Alternatively, the FTC respectfully renews its request for more than 180 hours of total trial time. *See* Hr'g Tr. at 3:19-20, Nov. 25, 2024, ECF 386 (FTC proposing 10-12 weeks overall for trial); Hr'g Tr. at 10:23-11:2, Dec. 9, 2024, ECF 388 (reiterating request for 10-12 weeks or 300 to 360 hours).

### B.    Meta's Position

The Court should reject the FTC's request to cap Meta's Amended Preliminary Witness List for at least six reasons.

*First*, Meta's Amended Preliminary Witness List is realistic and appropriately tailored to ensure Meta can defend itself against the FTC's case-in-chief and present its affirmative defenses.  The FTC and Meta are not similarly situated.  While the FTC bears the burden of proof on key issues, like market definition, and already knows how it intends to prove its prima facie case, Meta must anticipate the FTC's strategy and preserve the flexibility to respond to the evidence and arguments the FTC presents.  The need for flexibility is particularly critical in this case, where the FTC will not even stipulate to the market definition that it asserted in response to Meta's interrogatories.  *See* Jt. Status Rep., Ex. C at 4-6 (Jan. 16, 2025), ECF No. 392.  Capping Meta's witness list at this stage will hamstring Meta's ability to react to the FTC's case-in-chief and defend itself against the FTC's claims.

***Second***, the current size of Meta's Amended Preliminary Witness List is comparable to witness lists submitted by defendants in other recent antitrust cases, particularly when the duration of trial is considered.  Meta's Amended Preliminary Witness List has 48 witnesses on the "will call" list and 38 witnesses on the "may call" list.  Notably, 29 of those witnesses are also on the FTC's witness list, which means the FTC will have to prepare examinations for them even if Meta were to shorten its list.  In *Google* (E.D. Va.), the defendant's witness list contemplated more than 100 witnesses (60 on its own list and any witness on the plaintiffs' list, which included more than 40 distinct witnesses) for a 16-day trial.  *See* Def. Google LLC's Witness List/Rule 26(a)(3) Disclosures, *United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va. July 5, 2024), ECF No. 891; Pls.' Witness List, *United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va. July 5, 2024), ECF No. 896.  Trial in this case will be almost twice as long as the trial in *Google* (E.D. Va.), justifying the length of Meta's Amended Preliminary Witness List.  *See* Status Conf. Tr. at 4:24-5:6 (Dec. 9, 2024), ECF No. 388 (expecting five and a half to six hours of trial time per day, or roughly 30 trial days).  Yet, the FTC seeks to impose on Meta an unrealistic limit, as the witness lists from other antitrust cases with much shorter trials demonstrate.  *See*, *e.g.*, Def. Apple Inc.'s Tentative Initial Witness List, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal. Mar. 19, 2021), ECF No. 375 (identifying 43 witnesses for a 16-day trial); Def. Qualcomm Incorporated's Witness List, *FTC v. Qualcomm, Inc.*, No. 5:17-cv-00220-LHK (N.D. Cal. Nov. 19, 2018), ECF No. 946-3 (identifying 53 witnesses for an 11-day trial).  The FTC's citation to the number of witnesses that actually testified in the other *Google* case (D.D.C.) says nothing about the size of *preliminary* witness lists.

***Third***, Meta should not be forced to cap its witness list when the FTC has yet to disclose the full scope of evidence it may use at trial.  The FTC has not identified on its preliminary witness list (and does not believe it is necessary to identify) the witnesses for whom it will seek leave to submit written deposition designations for inclusion in post-trial briefing.  This artificially deflates the size of the FTC's preliminary witness list – making the FTC's comparison (at 1) of its and Meta's lists highly misleading – and leaves Meta in the dark about the complete set of witnesses the FTC intends to rely on.  The FTC also creates the false appearance that its list is shorter than Meta's by insisting that if Meta removes a "will call" witness from its witness list, the FTC should be allowed to put in deposition designations even after the deadline for deposition designations has passed.  *See infra* Section II.  If the FTC needs to elicit evidence from any of Meta's "will call" witnesses, it should put the witness on the FTC's preliminary witness list.  By relying instead on the fact that Meta has listed these witnesses on its witness list, the FTC has misleadingly and inappropriately deflated the size of its list.  In contrast, because Meta's witness list appropriately includes most of the FTC's "will call" witnesses, Meta's witness list appears relatively higher.

***Fourth***, the FTC's concern (at 2) that Meta's Amended Preliminary Witness List will require the FTC to waste resources is overblown and mitigated by the pre-trial procedures the Court has already imposed.  For one, the "chess clock" time system will require the parties to present the evidence efficiently.  Contrary to the FTC's inflammatory suggestion (at 3), Meta's strategic choice to call more witnesses than the FTC is not gamesmanship to waste government resources.  As this Court has already explained, it is up to each party to decide whether to "call a few witnesses for a long time or a lot of witnesses for a short time."  Status Conf. Tr. at 7:2-9 (Dec. 9, 2024), ECF No. 388; *see id.* at 7:4-9 ("I don't think I would impose a witness cap . . .

capping time should cover that."); *see also infra* p. 22 (FTC arguing "the chess clock timing in this case will already adequately discipline the parties' opening statements"). The FTC's assertion (at 2-3) that Meta cannot fit the witnesses on its list into the allotted trial time is speculation and not a reason to cap Meta's witness list. Meta has every intention to abide by the time limits set by the Court. If the parties call *every single witness* on both sides' will and may call lists, Meta would have over 50 minutes to examine each of those witnesses. This is not an unrealistic average, given that the "may calls" on Meta's list are just that – people whom Meta may decide to call only after it hears the FTC's case-in-chief. And Meta anticipates that, to the extent that it calls individuals on its may call list, many of those exams will be completed in as few as ten to fifteen minutes.

Not only is there a chess clock, but the Court also has ordered the parties to exchange on March 10 final witness lists, which must indicate the estimated time for each witness's examination. *See* Order at 2 (Dec. 20, 2024), ECF No. 390; Local Civil Rule 16.5(b)(5). Those time estimates will provide the FTC – more than a month in advance of trial and two months before Meta will even start to put on its case – additional information on how to prioritize its time preparing examinations for the witnesses on Meta's list. In December, Meta proposed – and the FTC rejected – that the parties include in their preliminary witness lists an estimate of the time the parties will spend eliciting each witness's testimony. *See* Jt. Status Rep. at 3-4 (Dec. 17, 2024), ECF No. 389. Had the FTC not rejected that proposal months ago, it would by now have had that additional clarity on how Meta plans to allocate time across its trial witnesses. In addition to witness lists (preliminary and final), the Court has ordered the parties to disclose on March 17 the proposed order for all witnesses they may call live at trial, which will provide the FTC with yet more information on how it might prioritize the witnesses on Meta's list well

before Meta's case begins.  *See* Order at 3 (Dec. 20, 2024), ECF No. 390.  And per the Court's instruction, Meta has also designated witnesses as "will call" and "may call," to provide clarity on which cross examinations are most likely to occur.  *See* Status Conf. Tr. at 17:10-14 (Dec. 9, 2024), ECF No. 388.

***Fifth***, the FTC's *ipse dixit* (at 3) that Meta's "may call" list includes witnesses from nonparties (eBay, the New York Times, and Walmart) that it deems "irrelev[ant] to this case" is not a valid reason to impose a limit on Meta's witness list and thereby exclude actual *evidence* regarding competition between Meta and other services.  Evidence from these nonparties is relevant, particularly given how the FTC has defined its alleged market.  As this Court knows, during fact discovery, Meta sought a "clearer definition" of the "personal social networking" market (*see* Am. Compl. ¶ 164, ECF No. 82), and this Court ordered the FTC to respond to a list of features and activities "available to users on Facebook, Instagram, WhatsApp, or Facebook Messenger" by stating whether each feature or activity "is or is not within" the relevant market. Order at 2 (Aug. 1, 2022), ECF No. 165.  The FTC's response states that each of the identified features or activities on Facebook and Instagram – save Facebook Dating – counts as "personal social networking," *including* activities on Facebook Marketplace and reading a newspaper article on Facebook Feed.  *See* FTC's Resp. to Meta's List of Features or Activities at 5, 11, 16, (Sept. 12, 2022), ECF No. 243-3 (filed Feb. 24, 2023).

Meta is preparing to combat the "all-in" market the FTC defined.  Evidence concerning competition for "personal social networking" time that users spend on Facebook Marketplace with services like eBay or reading the news on Facebook Feed with services like the New York Times is relevant.  If, after the FTC's case-in-chief, Meta calls witnesses from the New York Times, eBay, or Walmart, Meta intends to conduct efficient exams that will demonstrate robust

competition with Meta's apps.  For example, the very document the FTC highlights to argue that the New York Times is "irrelevan[t]" states that the New York Times's "digital news product also competes with customized news feeds, news aggregators and social media products of companies such as Apple, Alphabet, Meta Platforms and X (formerly Twitter)."  The New York Times Co., 2023 Annual Report (Form 10-K) at 5-6 (Feb. 20, 2024).  The New York Times witness on Meta's Amended Preliminary Witness List ████████████████, *see id.* at 125, and its internal documents and deposition testimony are consistent.  Other evidence from these nonparties similarly demonstrates competition with features and activities the FTC includes in its alleged market.  *See*, *e.g.*, █████████████████████████████████████ ████████████████████████; Meta's Mot. for Summ. J., Ex. 38 at -305 (Apr. 5, 2024), ECF No. 325 ████████████████████████████████ █████████████████████████████████████████ █████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████.  The FTC's belief (at 3) that evidence from certain nonparties is irrelevant does not justify a cap on Meta's witness list.

The FTC claims (at 2) that Meta's list will "burden the FTC with needlessly adding exhibits to its final exhibit list," but the FTC is free to decide how much effort it puts into preparing exhibits for witnesses it deems "irrelevant."  If the FTC thinks that a witness possesses no relevant information (at 3), it can allocate its resources – 35 FTC attorneys have filed notices of appearance in this case – accordingly.

*Sixth*, on February 5, Meta served on the FTC an amendment to its Preliminary Witness List, using best efforts to refine its witness list as trial preparation continues. After Meta received and reviewed the FTC's Preliminary Witness List, Meta removed 1 witness from its initial list entirely and changed 4 witnesses from "will call" to "may call." Meta served this amendment even though it had no obligation to provide an update to the FTC before March 10, 2025. Meta will continue to review and refine its witness list as it prepares for trial. In contrast, despite the Court's order that the FTC "make best efforts to identify which witnesses it presently anticipates it may call in rebuttal versus case-in-chief," Order at 1 (Dec. 20, 2024), ECF No. 390, the FTC identified only 3 fact witnesses it "may call" in rebuttal and reserved the right to call in rebuttal any of the 48 individuals on the FTC's preliminary witness list "or any other person for rebuttal testimony." This once again shows that it is the FTC that is manipulating its witness list and that the FTC seeks to constrain Meta's ability to prepare and put on its defense while reserving broad discretion and complete flexibility for its own trial presentation.

For all these reasons, the Court should adhere to its prior determination and reject the FTC's request for an arbitrary cap on witnesses.

## II.    WRITTEN DEPOSITION DESIGNATIONS

### A.    FTC's Position

The FTC respectfully requests the Court to order that (1) written deposition designations to be submitted post-trial need not be listed on either parties' preliminary or final witness lists and (2) either party may provide written deposition designations after the parties' agreed February 14, 2025 exchange of designations for any witness that was removed from the opposing party's preliminary or final witness list. The FTC had hoped that it could reach agreement with Meta on these simple and sensible topics, but Meta has refused, forcing the FTC to seek an Order from the Court.

1.    *Written Deposition Designations Timeline*

The Court's December 20, 2024 Order specified that written deposition designations would be disclosed on a separate timetable from those witnesses who will appear at trial, whether live or via video.  Order at 1, ECF 390 (requiring the parties to state in their preliminary witness list "whether the party intends to present each witness via live testimony or through video designation"); *id.* at 3 (setting March 17, 2025 as the "[d]ate by which both sides must disclose . . . any written deposition excerpts either party will introduce at trial or seek to file at the conclusion of its case").  Meta previously appeared to understand this, and the parties therefore agreed to submit any written deposition designations that a party intends to introduce in post-trial submissions on February 14, 2025.  *See* Ex. C at 4 (Jan. 14, 2025 Email from A. Polavarapu ("To the extent post-trial submissions of evidence are permitted, the February 14 (5 p.m.) deadline would require a party to include in its opening deposition designations any testimony that a party intends to introduce post-trial.")).  The FTC is preparing those designations and will submit them to Meta on February 14, as the parties agreed.

Meta now complains that the FTC did not disclose on its preliminary witness list those witnesses for whom the FTC is submitting deposition designation excerpts for purposes of post-trial briefing.  The FTC respectfully requests the Court to clarify that witnesses for whom only written deposition designations are submitted for use post-trial need not be listed on either parties' preliminary or final witness lists.  Rather, as set out in both the Court's Order as well as the Local Rules, the parties currently anticipate submitting final written deposition designations with the final pretrial statement due on March 10, 2025.  Order at 2-3, Dec. 20, 2024, ECF 390; L.R. 16.5(b) (distinguishing the parties' witness lists from their deposition designations).  This already-established framework is, moreover, logical and appropriate.  As noted, the purpose of

the parties' witness lists is to identify witnesses that either side "may" or "will" call live or by video at trial, which is not what purpose parties' deposition designations serve.

Meta also appears to complain that the FTC may provide Meta with deposition designations on the agreed-upon exchange date that the FTC might not cite in post-trial briefing, and therefore demands that the FTC categorize its designations by "will" or "may" cite in post-trial briefing. This complaint lacks merit as well, and Meta's demand is impractical. That the FTC cannot confirm with certainty which of its February 14 designations will be cited in post-trial briefing is a necessary consequence of the designation deadline coming in the pretrial period, which is what the parties agreed.

Nor does the FTC's approach indicate that it intends to fail to adhere to the Court's preference for live testimony. To the contrary, while the FTC is preparing deposition designations, in many circumstances, the FTC may be able to reach a stipulation with Meta or develop testimony live at trial that renders citations to the FTC's prepared deposition testimony designations unnecessary. In those cases, the Court's expressed preferences will be better served if the FTC refrains from citing deposition testimony and instead cites to live testimony or to a joint stipulation. (As Meta has refused as of this filing to meaningfully engage with the FTC regarding joint stipulations, the latter appears to be a faint hope, but the FTC intends to continue to try to reach reasonable stipulations regarding uncontroversial propositions.)

To be clear, the FTC will identify on February 14 all the deposition testimony that it currently believes it may need to cite in post-trial briefing, subject to the caveat that it may seek to add additional testimony if certain witnesses are not called live at trial, whether because Meta removes them from its witness list or because the parties are unable to procure such third-party witnesses for testimony live at trial. It is unclear what further information Meta requires.

2.    *Designations of Witnesses Removed from "Will Call" Witness Lists*

The FTC also sought agreement from Meta that the parties may provide written deposition designations after the parties' agreed February 14, 2025 exchange for any witness that was removed from the opposing party's "will call" witness list.  This simple request was intended to ensure that neither party be forced to prepare deposition designations for witnesses that would appear live at trial, while simultaneously ensuring a mechanism to designate deposition testimony for any witness that is later removed from a party's "will call" preliminary or final witness list.  The FTC's sensible proposal was intended to benefit both parties, but Meta has refused to agree to this request.

In reliance on Meta's preliminary witness list, the FTC is not planning to submit written deposition designations for witnesses on Meta's "will call" witness list because it will have an opportunity to instead examine them live at trial.  This is consistent with Meta's own position that deposition designations should be limited.  Notably, the FTC is not seeking the same caveat for witnesses on Meta's "may call" witness list, understanding that those witnesses may not be called at trial.  The FTC should be entitled to rely upon Meta's "will call" witness list in preparing its deposition designations.

Meta's own position statement indicates that they are contemplating removing witnesses from their "will call" list as trial proceeds—further bolstering the FTC's position that Meta's witness list is untenable—but if Meta is contemplating not calling its witnesses, those witnesses should not be on the "will call" list.  Meta's claim that it is somehow prejudicial for the FTC to cite deposition testimony in post-trial briefing for witnesses whom Meta removed from its "will call" witness list is unpersuasive.  The FTC should be able to rely on Meta's "will call" designations, and if Meta unexpectedly changes those designations it is no more prejudicial for

the FTC to designate deposition testimony for such witnesses once they are unexpectedly removed from Meta's witness list than it would be for the FTC to conduct live examinations of those witnesses at trial.

The FTC respectfully requests that the Court order that either party may provide written deposition designations after the parties' agreed February 14, 2025 exchange for any witness that was removed from the opposing party's "will call" preliminary or final witness list.

\*\*\*\*\*\*

At approximately 4:32 pm, the FTC added the following paragraph to its position statement in response to Meta's final position statement:

The parties agreed that the parties would exchange final drafts of their respective positions for this joint submission at noon on February 7 and that Meta would file on behalf of both parties at 5 pm.  In this final exchange, Meta for the first time raised a request for relief that the Court prohibit the post-trial submission of any written deposition designations without good cause or, in the alternative, only as they relate to "ancillary matters."  The FTC objects to Meta's last-minute request for a new form of relief.  The parties did not meet and confer regarding these new requests and the FTC has not had adequate time or notice to properly consider Meta's new requests.  As an initial reaction, Meta's proposal has obvious problems, including that it is a solution in search of a problem (the parties have not yet served their deposition designations, and as noted above, the FTC is aware of the Court's preference for live testimony) and is bound to create numerous disputes about the meaning of "ancillary."  Additionally, under Meta's requested relief, neither party would be able to submit any written deposition designations without "good cause."  That is plainly not what the parties or the Court previously contemplated.

The FTC raised its procedural objections to Meta at 1:09 pm today, but at 3:01 pm Meta replied that it refused to remove the new requests from this submission.

The FTC requests that Meta's late-in-time request be rejected. Meta's new request for relief should be resolved, if at all, in the parties' February 17 joint status report.

B.     Meta's Position

1.     Written Deposition Designation Procedures and Disclosure of Witnesses the FTC Intends to Rely on in Post-Trial Briefing

The Court has repeatedly stated its preference for live testimony. *See* Status Conf. Tr. at 3:19-24 (Dec. 9, 2024), ECF No. 388 (explaining preference to judge credibility and ask questions, and stating "obviously I can't do that with transcripts and . . . taped testimony"). As for submission of written deposition designations (i.e., deposition transcript excerpts), the Court explained, "I'm not particularly interested in conducting . . . trial and then having a whole bunch of deposition transcripts dumped on me to consider in addition to the live testimony." *Id.* at 6:5-8. Despite the Court's clear instructions, the FTC continues to suggest it will dump into the record some unspecified number of written deposition designations for the Court to read in addition to the testimony presented during trial. Allowing the FTC to conduct a shadow trial via written deposition designations would be inefficient, prejudicial, and contrary to the Court's stated preference.

Meta maintains its prior objections and respectfully requests that the Court order that it will not accept post-trial submission of written deposition designations. *See* Jt. Status Rep. at 26-29 (Dec. 17, 2024), ECF No. 389; Status Conf. Tr. at 18:17-19:1 (Dec. 9, 2024), ECF No. 388. The parties agree that the Court ruled that witnesses' testimony during trial must be presented either live or by video. *See supra* p. 12 (FTC explanation that witnesses "will appear at trial . . . live or via video"); *see also*, *e.g.*, Order at 1-2 (Dec. 20, 2024), ECF No. 390 (preliminary and

final witness lists must include "whether the party intends to present each witness via live testimony or through [video designation]"). The parties disagree about whether the Court will allow submission of written deposition designations for use in post-trial submissions. The FTC has claimed that the Court already decided the parties may submit written deposition designations for use post-trial. But the FTC ignores the Court's December 20, 2024 Order. After Meta objected that the FTC's submission of written deposition designations for use post-trial would be unfair and prejudicial, *see* Jt. Status Rep. at 26-29 (Dec. 17, 2024), ECF No. 389, the Court provided pretrial disclosure instructions for such material "[t]o the extent post-trial submissions of evidence are permitted." Order at 3 (Dec. 20, 2024), ECF No. 390. The Court thus made clear that a party will need to seek leave for any post-trial submission of evidence.

Allowing substantive information to be submitted outside of trial defeats the purpose of having a trial. *See* Status Conf. Tr. at 19:21-24 (Dec. 9, 2024), ECF No. 388 ("I am certainly not receptive to any kind of backdoor situation where someone tries to put things in after the trial that they didn't want crossed on or something like that."). The FTC has explained that it intends to use these written deposition designations – stale testimony from two to five years ago – to fill gaps as a backup for testimony it "might miss." Jt. Status Rep. at 24 (Dec. 17, 2024), ECF No. 389 (FTC statement); *see also infra* p. 26 (FTC explanation that it will use written deposition designations in case information is "not . . . presented at trial"). But allowing submission of written deposition designations for use post-trial would require Meta to waste its trial time attempting to respond to written deposition designations the FTC might later submit.

If the Court wishes to defer ruling on whether it will permit post-trial submissions of evidence, Meta respectfully requests clarification on the following issues, which are implicated

by the FTC's position statements in this submission and are creating confusion and inefficiency amongst the parties in preparing for trial:

*First*, the Court should order that written deposition designations (if allowed at all) are limited to "ancillary" matters (e.g., the specific date a feature was launched, authorship of a document). Status Conf. Tr. at 19:6-8 (Dec. 9, 2024), ECF No. 388. The FTC has indicated that its written designations will go beyond that. For example, the FTC claims that if Meta drops a live witness from its will call list, the FTC should be able to designate substantive excerpts of that witness's deposition transcript for submission post-trial – that is, testimony the FTC otherwise should have attempted to elicit live. *See infra* Section II.B.2.

*Second*, the Court should order that by February 14 (the date the FTC agreed to provide Meta its opening deposition designations), the FTC must inform Meta which written deposition designations the FTC "will" seek leave to cite in post-trial briefing, and which written designations the FTC "may" attempt to submit for citation in post-trial briefing. Meta must have the opportunity to defend itself – during trial – against all testimony the government relies on for its case. *See Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1313 (D.C. Cir. 2021) (pretrial disclosure of witnesses "avoids trial by ambush"). Meta thus needs to know which testimony the FTC intends to use to assess its own witness and exhibit list needs and to finalize them in time for the March 10 submission of final witness and exhibit lists. Requiring the FTC to disclose its "will use" and "may use" written deposition designations will promote an orderly pretrial process. The FTC's contrary position is unfair. *Cf. infra* p. 26 (FTC claim that it will not disclose which written deposition designations it intends to rely on "until after trial").

*Third*, the Court should reaffirm that final witness lists must include the names of witnesses whose deposition transcripts the FTC intends to seek leave to submit post-trial. The

Court's December 20, 2024 Order provides, "To the extent post-trial submissions of evidence are permitted, final witness and exhibit lists, and deposition designations, shall include materials (both testimony, via the witness list and deposition designations, and documents via exhibit lists) that a party intends to introduce post-trial."  Order at 3, ECF No. 390.  The FTC's final witness list must include all witnesses on which it intends to rely, regardless of whether their testimony will be elicited live, by video deposition designations played during trial, or by written deposition designations for use in post-trial briefing (to the extent such submissions are even permitted).  *See id.*  The final witness list should therefore indicate which deposition designations the FTC intends to play by video at trial and which are contemplated for written submission, and (as explained above) the list should distinguish between deposition designations that it "will use" and those that it "may use."

**Fourth**, the Court should clarify what the parties must disclose on March 17.  The Court's December 20, 2024 Order lists March 17 as the "[d]ate by which both sides must disclose their proposed order for all witnesses they may call live at trial and any written deposition excerpts either party will introduce at trial or seek to file at the conclusion of its case."  Order at 3, ECF No. 390.  The FTC suggests that this is a deadline for disclosure of written deposition designations for use post-trial.  As explained above, the Court already identified March 10 as the deadline for that disclosure.

To clarify these points – and to put an end to this months-long dispute between the parties about whether, how, and when written deposition transcripts may be used, Meta proposes that the Court order the following:

> No written deposition designations may be submitted for use post-trial absent good cause shown.

Alternatively, the Court should order:

> The Court will defer ruling on whether written deposition designations may be submitted for use in post-trial briefing.  To the extent permitted:
>
> (1) Written deposition designations are limited to ancillary matters.
>
> (2) The parties should identify in their February 14, 2025 exchange which written deposition designations they "will" versus "may" seek leave to cite in post-trial briefing.
>
> (3) Each party's witness list must identify any witnesses whose written deposition designations the party will seek leave to cite in post-trial briefing, with a notation that their testimony will be submitted via written deposition designation, and whether their written designations "will" or "may" be used.

******

Meta disagrees with the FTC's claim that Meta raised new issues today.  Meta has been discussing the issues raised in its position statement with the FTC all week.  *See* Ex. 1 Email from A. Polavarapu (Feb. 7, 2025) (excerpt) (describing Meta's prior discussions with the FTC).  Because the parties will begin exchanging deposition designations on Friday, February 14, Meta respectfully requests that the Court provide guidance on written deposition designations in advance.

> 2. **Deadline for Opening Deposition Designations for Witnesses Removed from the Other Party's Witness List**

The parties previously agreed that (1) by February 14, 2025, at 5 p.m., the parties will exchange opening video and written deposition designations; (2) the February 14 deadline will not prejudice a party from submitting, at a later date, opening deposition designations for any witnesses disclosed on the party's witness list whose live testimony the party is unable to procure; and (3) to the extent the Court permits post-trial submissions of evidence, a party is

required to include in its opening deposition designations due on February 14, any testimony that a party intends to introduce post-trial. *See* Ex. C, Email from O. Masters (Jan. 14, 2025 at 12:42 pm). The FTC now seeks a new exception to the parties' agreement reached weeks ago. The FTC asks that it be allowed to belatedly disclose written deposition designations for a witness if Meta removes the person from its preliminary or final witness list. The Court should reject the FTC's request for two reasons.

***First***, the FTC's request is unnecessary. If the FTC wishes to elicit testimony from a witness on Meta's witness list even if Meta does not call that witness, then the FTC should include that witness as a will-call or may-call witness on its own list. Under the parties' agreement, if the FTC includes the witness on its list (as it should), then the FTC may submit deposition designations for the witness after February 14 if the FTC shows it is unable to procure the witness's live testimony. There is no prejudice caused to the FTC by holding it to the parties' agreement.

***Second***, the FTC's request is prejudicial to Meta. The FTC posits, in essence, that Meta must narrow its list of witnesses, and if Meta narrows its list of witnesses as trial proceeds, that should then allow the FTC a backdoor opportunity to dump additional deposition transcripts of these witnesses' testimony into the record for use post-trial. That proposal is unfair and inefficient, and the Court should reject it.

## III.    CHESS CLOCK

### A.    FTC's Position

The FTC offers the timing proposals below and respectfully requests the Court enter these proposed timing rules. Given the limited trial time presently available, the significant number of witnesses and exhibits already proposed, Meta's refusal to pre-admit admissible

evidence, and Meta's refusal to meaningfully engage with jointly stipulated facts, the parties will need timing rules that permit each side to present their case as best they can.

Meta and the FTC agree that each party should have 90 hours of chess clock time, subject to the FTC's concerns regarding Meta's witness list. Given the FTC's concerns about Meta's proposed witness list, as noted above the FTC may seek additional time from the Court if Meta's witness list is not limited appropriately.

       1.    *Opening Statements*

The FTC proposes that opening statements not be time-limited. The FTC does not intend to waste time with a needlessly long opening statement, but it believes that a cap on opening statements is unnecessary, and in any event the FTC is not presently in a position to propose a specific time cap. Meta, by contrast, requests a cap of one hour. The parties already agree that opening statements count against a party's chess clock trial time.

In the FTC's view a cap on opening statement length is unnecessary because the chess clock timing in this case will already adequately discipline the parties' opening statements. Time spent on inadmissible opening statements will limit a party's time to otherwise prove its case, so neither party has an incentive to provide needlessly lengthy commentary. Moreover, even if a time limit cap were appropriate, the FTC is not yet in a position to propose a reasonable cap: the FTC may well need more than an hour to provide its opening statement, or it may need considerably less, but the FTC has yet to make that determination and does not believe an arbitrary figure is needed at this point.

Because an opening statement provides a preview of the issues and evidence to be presented at trial, the FTC believes that parties should have a more finalized understanding of the witnesses (including the witness sequence) and the evidence that will be presented at trial before

settling on the time they think most appropriate for their openings.  The parties have yet to settle on their exhibits, the order or availability of witnesses, jointly stipulated facts, written deposition designations, and a host of other topics that will frame the issues at play and inform the time needed to describe those issues.  Parties need not present opening statements of equal or similar length, but a set figure undoubtedly invites both parties to anchor on the time limit and produce statements of similar time regardless of need.  The lack of a time limit will not impact the scheduling of the FTC's first witness, as Meta suggests, because the FTC has already informed Meta that it would call its first witness on the first day of trial.  The FTC respectfully requests no time limit be imposed at this time.

If the Court nevertheless intends to impose a time limit, the FTC respectfully requests that the Court determine that figure no earlier than the final pretrial conference, when the parties will be far closer to finalizing their opening statements.

2.    *Closing Arguments*

The FTC requests that the Court clarify that any closing arguments that may occur will not be counted against either party's chess clock time.  The Court has not set a date for closing arguments, and the Court set the current trial schedule without accounting for closing arguments. *See* Order, Jan. 17, 2025, ECF 394 (finding no need to set dates for closing arguments at this juncture); *see also* Hr'g Tr. at 5:4-17, Dec. 9, 2024, ECF 388 (calculating time for trial without reference to closing arguments).  Without clarification that closing arguments are not part of the presently allocated chess clock timing, the parties must prepare their cases and set dates for witnesses while also preserving some uncertain amount of time for a closing argument.  This impracticable uncertainty hampers the FTC's ability to prepare its affirmative case and reserve time to rebut Meta's procompetitive benefits defense.  The FTC does not believe the Court

intended this uncertainty when it set the current schedule, and accordingly the FTC respectfully requests the Court clarify that closing arguments do not count against a party's chess clock time for trial.

Notably, Meta now refuses to agree that closing arguments are not part of the parties' chess clock time, but it argued previously that the parties' chess clock time does not include closing arguments. Meta's initial chess clock timing proposal included only "(a) direct, cross, and redirect examinations, and (b) opening statements," not closings. Jt. Status Rep. at 18, Dec. 5, 2024, ECF 387. Indeed, Meta requested that the Court allocate time for closings later. *See id.* ("To the extent the Court adopts a 'chess clock' timing system, Meta proposes that the Court allot time for closing arguments at a later date."). The FTC agrees that closing arguments are not part of the parties' chess clock trial time, and respectfully requests the Court clarify this point.

3.    *Questions from the Court*

The FTC proposes that questions from the Court and answers to those questions should not count against either party's chess clock time. The Court has indicated a preference to examine witnesses directly. Hr'g Tr. at 3:19-24, Dec. 9, 2024, ECF 388 (noting the Court "frequently may be interrupting testimony to ask questions"). Given this stated preference, the FTC requests that the Court be given the opportunity to ask questions without prejudice to the parties' allotted time.

There is time in the present schedule for the Court's questions, even if they are not counted against either party's chess clock time. As the Court has indicated that it has 31 days available between April 14 and June 5, there is every reason to believe that the parties can get 180 hours on the record in that period—this would anticipate approximately 5.8 hours of on-the-record trial time each day—moreover the Court has indicated the presently allocated time

probably "mean[s] going a little bit beyond June 5." *See id.* at 4:17-5:12.  If the Court's questioning obviates the need for additional testimony from a given witness, then the parties can re-deploy their trial time to other issues.  However, if the Court's questions implicate new issues not anticipated by the parties, the parties will need their chess clock time to adequately address these concerns.  Under Meta's proposal, which would charge the parties equal time for questions from the Court, the parties may not have time to address new concerns raised by the Court's questioning.  Time is already limited in this case, and the FTC requests that the Court order the parties' chess clock time will not be charged for questions from the Court and any answers to those questions.

> 4.    *Objections*

The parties agree that lengthy objections should be raised outside of a witness examination, either before or after a witness takes or leaves the stand.  As with other procedural or administrative matters, neither party has proposed these be charged to a party's chess clock time.  The FTC's position is that objections during a witness exam that require more than one minute to resolve should receive the same treatment: i.e., they will not be counted against either party's time.  The chess clock would restart with the next question.  On the other hand, the FTC proposes that brief objections—i.e., those that are resolved in less than one minute—be charged to the chess clock of the party taking the examination.  In the FTC's view, this will minimize disputes over time-counting.

The FTC anticipates that most objections raised at trial during a witness examination will not require lengthy discussion.  However, an objection that requires more than one minute of time is more likely to require additional discussion and argument and, as with other

administrative or procedural matters, the FTC does not believe these longer objections should count against either party's trial time.

5.      *Video Designations*

The parties agree that video deposition designations used by a party (whether an opening designation, counter-designation, or completeness designation) shall be charged to the party that designated the testimony.  The parties agree that the time to be charged shall be equal to the video run time of the deposition designations.

6.      *Written Designations*

The FTC respectfully requests that written designations for use post-trial not count against either party's chess clock time at trial.  As anticipated by the Court and noted above, the FTC intends to submit written designations for use in post-trial briefing, but it cannot be certain until after trial whether any specific designation will be cited.  Under Meta's proposal to count written designations against trial time, the parties must guess what information will or will not be presented at trial and reserve an uncertain amount of time in case designations are needed.  In effect, Meta's proposal to count written designations against trial time artificially shortens the time both parties have to present their case.  But this was not what the Court anticipated when setting the present schedule.  The Court clearly indicated that it would permit the use of deposition designations for post-trial briefing, *see* Hr'g Tr. at 6:15-22, Dec. 9, 2024, ECF 388, and the present schedule does not anticipate charging the parties' trial time for written designations.

Relatedly, charging the parties' trial time for material submitted to the court after trial does not make much procedural sense.  Written transcript designations function like exhibits for briefing, but Courts do not regularly charge a party's time for reviewing exhibits submitted post-

trial. The FTC respectfully requests the Court order that the parties' written designations submitted for use in post-trial briefing not count against the parties' chess clock time at trial.

### B.     Meta's Position

The Court already ruled that to try this case, each side will have "90 efficient hours . . . I just have to believe that that's going to be enough." Status Conf. Tr. at 12:24-13:1 (Dec. 9, 2024), ECF No. 388. Meta proposes the following chess clock procedures: (1) a party's opening statement shall not be longer than one hour; (2) the parties should address the timing and length of closings once the Court has determined what kind of presentation would be most helpful; (3) for time spent during witness examinations on the Court's questions and witnesses' answers to them, the time shall be divided and charged equally to the parties; (4) short objections shall be charged to the party examining the witness at the time of the objection and time spent on objections that take longer than two minutes to resolve shall be charged to the party that loses the objection dispute, (5) time to be charged for a party's video deposition designations shall be equal to the video run time of the deposition designations; and (6) any written deposition designations shall count against a party's chess clock trial time, based on the run time of the video recording of the designations. Together, these procedures are designed to ensure trial ends on or around June 5, as the Court directed.

*1. Openings.* The parties agree that each party's opening statement should count against its 90-hour chess clock allotment. To encourage use of trial time on actual presentation of evidence, Meta proposes that the Court order that a party's opening statement shall not be longer than one hour. Meta's proposal is consistent with the limits set by Judge Mehta in *United States v. Google LLC* (45 minutes for each set of plaintiffs and 60 minutes for Google), and in other complex antitrust trials in this District, *see*, *e.g.*, Final Pre-Trial Order at 2, *United States v. AB Electrolux*, No. 1:15-cv-01039-EGS (D.D.C. Nov. 3, 2015), ECF No. 263 (one hour per side);

Bench Trial Tr. at 4:24-5:1, *United States v. Anthem Inc.*, No. 1:16-cv-01493-ABJ (D.D.C. Nov. 21, 2016), ECF No. 444 (45 minutes per side); Pretrial Conf. Tr. at 17:20-21, *United States v. AT&T, Inc.*, No. 1:17-cv-02511-RJL (D.D.C. Mar. 15, 2018), ECF No. 96 (45 minutes per side). Moreover, the Court already authorized the FTC's request for 25 pages of pre-trial briefing – which is itself ample opportunity for the FTC to preview its case for the Court. *See* Status Conf. Tr. at 24:2-25:7 (Dec. 9, 2024), ECF No. 388; Order at 3 (Dec. 20, 2024), ECF No. 390 (pretrial briefs due April 7). The FTC has not provided any legitimate reason why it, in addition, needs an uncapped opening statement.

The FTC's position – that the Court should allow uncapped openings – is inefficient. The FTC's proposal that it should be allowed to open for "more than an hour" is guaranteed to unnecessarily waste trial time and delay the presentation of evidence. And Meta should not be forced to spend its own valuable trial time addressing an unnecessarily long FTC opening. *See Perry v. Potter*, 2008 WL 200272, at *8 (E.D. Pa. Jan. 23, 2008) ("Opening statements should be *brief*" (emphasis in original)).

The FTC resists Meta's proposal because it claims it has no idea how long its opening might be. But the FTC's noncommittal position about its opening creates practical problems for efficient witness scheduling now – leaving Meta uncertain when the FTC will actually be calling its first witness. And that uncertainty has a ripple effect on scheduling every witness after that. *But see* Order at 3 (Dec. 20, 2024), ECF No. 390 (ordering the FTC to "provide the dates on which" Meta executives "will be called" by January 27).

Accordingly, to aid efficient planning, the Court should order that each party's opening statement shall not be longer than one hour.

**2. *Closings.*** Just three weeks ago, the FTC requested that the Court schedule closing arguments. *See* Jt. Status Rep. at 14 (Jan. 16, 2025), ECF No. 392. The Court ruled there was "no reason" to do so. Order ¶ 3 (Jan. 17, 2025), ECF No. 394. Meta accordingly continues to believe that the Court should require the parties to address the timing and length of closings once the Court has determined what kind of presentation would be most helpful.

**3. *Questions from the Court and Witnesses' Answers.*** The Court previously explained, "I want to hear the lion's share of the testimony directly from live witnesses in court because I want to judge their credibility and I frequently may be interrupting testimony to ask questions to make sure I understand." Status Conf. Tr. at 3:19-23 (Dec. 9, 2024), ECF No. 388. Meta therefore proposes that for time spent during witness examinations on the Court's questions and witnesses' answers to them, the time shall be divided and charged equally to the parties. This chess clock proposal will help ensure that trial ends on the timeline that the Court has directed. The FTC's proposal to leave this time unaccounted for increases the risk that trial will extend longer than the Court's schedule allows. *See id.* at 11:17-18, 24-25 (stating the Court's expectation "to be done pretty soon after" June 5, 2025, because of the Court's June schedule).

**4. *Objections.*** The parties agree that time spent on a short objection raised during a witness examination shall be charged to the party examining the witness at the time of the objection. The parties also agree to endeavor to raise any lengthy objections outside of witness examinations.

The parties disagree about how to count lengthy objections. Meta proposes that if an objection takes two minutes or longer to resolve, time spent on the objection shall be charged to the party that loses the objection dispute. Courts routinely use such a rule because it provides an incentive to parties to raise meritorious disputes and make efficient use of the trial time allotted.

*See, e.g.*, Order After Pretrial Conf. ¶ 1, *The Dufresne Spencer Grp., LLC v. Han Nara Enters. LP*, No. 1:21-cv-01857-JLH (D. Del. June 7, 2024), ECF No. 215 (adopting joint proposal, ECF No. 203 at 19, that for objections, "time shall be charged against the losing party").  The FTC's proposal to leave this time unaccounted for, once again, increases the risk that trial will extend longer than the Court's schedule permits, and provides no disciplining function to encourage only meritorious objections.

      *5. Video Deposition Designations.*  The parties agree that video deposition designations used by a party (whether an opening designation, counter-designation, or completeness designation) shall be charged to the party that designated the testimony.  The parties agree that the time to be charged shall be equal to the video run time of the deposition designations.

      *6. Written Deposition Designations.*  The Court expressed its strong preference for live testimony and cautioned the FTC, "[i]n terms of transcripts, I'm not particularly interested in . . . having a whole bunch of deposition transcripts dumped on me to consider in addition to the live testimony."  Status Conf. Tr. at 6:5-8 (Dec. 9, 2024), ECF No. 388; Order at 3 (Dec. 20, 2024), ECF No. 390 (providing instructions "[t]o the extent post-trial submissions of evidence are permitted").  To the extent the Court allows any submission of written deposition designations for use in post-trial briefing (it should not), the Court should order that any such designations shall count against a party's chess clock trial time, based on the run time of the video recording of the designations.

      Courts routinely use this method to charge time for written deposition designations.  *See, e.g.*, Order at 1-2, *City and Cnty. of S.F. v. Purdue Pharma L.P.*, No. 3:18-cv-07591-CRB (N.D. Cal. Mar. 3, 2022), ECF No. 1131 (explaining that "[t]ime devoted to reviewing these designations will be charged" against the parties' time allotments, and calculating time for

written deposition designations based on run time on transcript); Pretrial Order No. 2 ¶ 2, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal. Mar. 23, 2021), ECF No. 381 (charging parties' trial time for deposition designations that the Court would "read," based on the run time on the transcript). That is because, as this Court already ruled, "deposition designations" (even if written) are "testimony," not "documents," Order at 3 (Dec. 20, 2024), ECF No. 390, or "exhibits" as the FTC continues to incorrectly claim. And time spent on testimony (even if submitted in written form for use in post-trial briefing) should count against the chess clock.

The FTC's proposal is unfair. The FTC is attempting to use written deposition designations to circumvent its chess clock limits. The FTC has explained that it does not intend to limit its attempted use of deposition transcripts for "ancillary" matters as the Court contemplated, *see* Status Conf. Tr. at 19:6-10 (Dec. 9, 2024), ECF No. 388; rather, the FTC plans to seek leave to submit written deposition designations in lieu of *live* testimony the FTC could otherwise elicit. *See supra* p. 20 (FTC requesting permission to submit late "written deposition designations" for a "witness" removed from Meta's list of witnesses that the FTC otherwise would have examined live). So, if the Court allows submission of deposition transcripts for use in post-trial briefing (again, it should not), the Court should count that deposition testimony just as it is counting live testimony Meta will elicit: against the chess clock. Indeed, because Meta is planning to abide by the Court's stated preference for live testimony, Meta will likely need to address any FTC written deposition designations via examination of the witness live, which would count against Meta's chess clock. It would be unfair if the deposition transcripts that the FTC attempts to dump into the record – and which Meta must respond to – do not also count against the FTC's chess clock.

The FTC's proposal is also inefficient. The FTC's plan to seek leave to submit uncapped amounts of written deposition designations will not save the Court any time; rather, it will require the Court to spend additional time, outside of the trial time allotted, poring over any deposition transcripts the FTC is allowed to submit.

For all these reasons, the Court should order that any written deposition designations (to the extent any are allowed) count against a party's chess clock. If the Court does not charge chess clock time for written deposition designations, the Court should, at a minimum, put "caps" on the written deposition designations that may be submitted to ensure these designations, if allowed at all, are truly "ancillary" and not a backdoor method to dump into the record testimony that should have been presented live. Status Conf. Tr. at 19:6-10 (Dec. 9, 2024), ECF No. 388.

## IV.    EXHIBIT LIST CAP

### A.    FTC's Position

In the event that the Court grants the FTC's request to cap the parties' witness lists, the FTC respectfully requests the Court to further order that the parties' final exhibit lists be capped at 950 documents. The FTC believes that this is a reasonable number of exhibits for each party to bring to trial, given the length and scope this case, and that it reflects the parties' good faith efforts to provide the documents they felt were necessary for their respective cases in their preliminary exhibit lists. The FTC listed 880 exhibits in its preliminary exhibit list and Meta listed 1,054 exhibits in its preliminary exhibit list, and so a cap of 950 exhibits represents a reasonable compromise that both parties could reach in the time remaining before their final exhibit lists are due.

For comparison, the Department of Justice in *United States v. Google* submitted over 1,600 exhibits and Google submitted over 1,300 exhibits. *See* Plaintiffs' Redacted Exhibit List, *United States v. Google*, No. 1:20-cv-3010 (D.D.C. Apr. 19, 2024), ECF 887; Google's Redacted

Exhibit List, *United States v. Google*, No. 1:20-cv-3010 (D.D.C. Apr. 19, 2024), ECF 891.

Meta's argument that Judge Mehta only cited a few hundred documents in his *Google* opinion,

*infra* sec. IV.B, notably glosses over the fact that both parties in *Google* submitted far more

exhibits than either the FTC or Meta have listed on their preliminary exhibit lists.  The question

is not how many documents the Court may want to cite in its final opinion, but rather how many

exhibits the parties need to put on effective trial presentations.  The FTC proposes a lower

exhibit cap here, despite this case involving a lengthy monopolization period, two different

acquisitions, and a defendant claiming to compete with hundreds of different apps and asserting

dozens of purported procompetitive justification.

      However, if the Court does not order Meta to constrain its witness list to what is

reasonable and practicable in the trial time allotted, the FTC requests that the Court order that the

parties' final exhibit lists be capped at 1,250 exhibits.  As described above, *supra* sec. I.A, if

Meta's preliminary witness list is in fact representative of what Meta's final witness list may

look like if uncapped, then the FTC would be forced to prepare numerous cross-examinations for

witnesses that Meta will not have the time to call at trial.  The FTC believes that a cap of 1,250

exhibits would be workable in this instance, though far more burdensome and less efficient for

both the parties and the Court than the alternative of capping Meta's final witness list.

      The FTC cannot accept Meta's proposal of a cap of 750 exhibits.  As stated, keeping

Meta's witness list uncapped would force the FTC to expand rather than contract its final exhibit

list to accommodate the many witnesses Meta claims it will or may (but in reality does not have

the time to) call at trial.  Limiting the FTC's exhibit list in this way would significantly hamper

the FTC's ability to both put on its case-in-chief and respond to Meta's rebuttals.  Meta's

argument that "[s]etting a cap below the parties' current preliminary exhibit counts will ensure

both parties work towards *streamlining* their trial presentations," *infra* sec. IV.B. (emphasis in original), gives the game away: Meta appears to have offered a bloated preliminary exhibit list with the intent to cut it down. The FTC, however, offered a narrower preliminary exhibit list containing the evidence the FTC needs to put on an effective trial presentation, with nothing extraneous.

Relatedly, Meta's proposal raises a great deal of confusion as to why Meta believes that the parties should be constrained to 750 exhibits when Meta's preliminary exhibit list contains 1,054 exhibits. Meta has offered no explanation as for why it apparently now believes that close to 30 percent of its preliminary exhibit list was unnecessary and excessive—either Meta now recognizes that it did not take appropriate care to craft its preliminary exhibit list or it was engaging in gamesmanship. Whatever Meta's rationale, the FTC labored in good faith to present a fulsome preliminary exhibit list that genuinely reflects the evidence that the FTC believes it needs to present its case. Despite Meta's repeated insistence that it feared a "document dump" from the FTC, *see* Hr'g Tr. at 20:21-24, Dec. 9, 2024, ECF 388, its current position appears to be that it should be ordered to walk back its own document dump—and that the FTC should be penalized as well.

### B.        Meta's Position

The Court should set a cap of 750 exhibits for each party's final exhibit list. A 750-exhibit cap is reasonable. This proposed cap is much higher than those set in other government antitrust cases. *See*, *e.g.*, Jt. Status Rep. at 1-2, *United States v. Deere & Co.*, No. 1:16-cv-08515 (N.D. Ill. Dec. 12, 2016), ECF No. 127 (DOJ's agreement to a 500-exhibit limit); Pretrial Conf. Order at 2, *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK (N.D. Cal. Dec. 13, 2018), ECF No. 1003 (limiting exhibit lists to 400 per side, and setting further trial limit of 220 exhibits per side plus 126 exhibits on a joint exhibit list). And courts in major antitrust cases typically rely on far

fewer than 750 exhibits in their opinions. *See*, *e.g.*, *United States v. Bertelsmann SE & Co. KGaA*, 646 F. Supp. 3d 1 (D.D.C. 2022) (citing 68 exhibits); *United States v. AT & T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018) (citing 106 exhibits); *United States v. Google LLC*, --- F. Supp. 3d ---, 2024 WL 3647498 (D.D.C. Aug. 5, 2024) (citing 278 exhibits); *FTC v. Qualcomm Inc.*, 411 F. Supp. 3d 658 (N.D. Cal. 2019) (citing 334 exhibits); *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021) (citing 503 exhibits).

Meta's proposed 750-exhibit cap will promote efficiency in pretrial planning and at trial. Both parties' preliminary lists are greater than 750 exhibits (the FTC's preliminary list is 880 exhibits and Meta's preliminary list is 1,054 exhibits). Setting a cap below the parties' current preliminary exhibit counts will ensure both parties work towards *streamlining* their trial presentations to maximize efficient use of the 90 hours allotted to each side. Moreover, Meta, as the defendant, must react to the FTC's exhibit list choices. With a cap in place that requires the FTC to streamline its list, Meta should also be able to make corresponding reductions to its exhibit list. Meta's proposed exhibit list cap will also reduce the potential number of exhibit disputes before and during trial, further enhancing trial efficiency.

The FTC's claim that it will not have room with a 750-exhibit cap to add exhibits to accommodate cross-examination of witnesses on Meta's list is belied by the fact that the FTC's preliminary exhibit list is already full of documents regarding witnesses who do not appear on either party's witness list. In any event, both parties will be subject to the same exhibit cap for the same number of witnesses on both parties' lists, so there is no prejudice to the FTC.

The FTC's proposed 1,250-exhibit cap would allow the FTC to *increase* the number of exhibits on its list by over 40% (370 additional exhibits). As the parties get closer to the March 10 deadline for final exhibit lists and objections, allowing the FTC to dramatically increase the

number of exhibits on its list will have a ripple effect on exhibit lists and other pretrial

discussions.  For example, if the FTC puts hundreds of new documents on its exhibit list, Meta

will then have to react to the FTC's updates by adjusting its own exhibit and witness lists, and

raise appropriate objections to these new exhibits, so that Meta can fairly respond to the FTC's

case.  That path will generate, not minimize, disputes.

    For all these reasons, the Court should impose a 750-exhibit cap on exhibit lists, and

reject the FTC's proposal of a 1,250-exhibit cap.

## V.    LIMITS ON MOTIONS IN LIMINE

### A.    FTC's Position

    The FTC respectfully requests the Court to order that the parties are limited to filing no

more than three motions in limine each, with page limits of 25 per motion, 25 per opposition, and

15 per reply.  The FTC believes that this order is all that is necessary and appropriate,

considering that the Court is well-equipped to hear evidence and assess its weight based on the

parties' trial presentations and arguments and that doing so is generally more efficient than

excluding any such evidence wholesale pretrial.  The Court has stated that its general preference

is to avoid "spend[ing] a bunch of days going over pretrial what objections to certain parts of

certain documents" the parties may have, *see* Hr'g Tr. at 8:9-14, Dec. 9, 2024, ECF 388,

especially given that this case is a bench trial "without a jury," *id.* at 10:12-18.  The FTC also

believes that its proposed limit will prevent a burdensome and unhelpful exchange of evidentiary

disputes that would distract the parties and encumber the Court.

    Questions relating to hearsay, relevance, and the like are thus best suited for during or

after trial, when the Court has the appropriate context, rather than now, when the parties have

other critical areas of trial preparation to focus on.  It is for this reason that federal district courts

in the District of Columbia have recognized that judges in bench trials have extra latitude in

choosing to address evidentiary disputes at or after trial rather than by resolving motions in limine.  *See, e.g.*, *Cobell v. Jewell*, 234 F. Supp. 3d 126, 131-32 (D.D.C. 2017) (collecting cases to support the proposition that judges are "presumed to ignore inadmissible evidence" and avoid improper influence of hearsay in bench trials); *see also United States v. Bray*, 2024 WL 3723942, at *2 (D.D.C. Aug. 8, 2024) ("Advance rulings [on motions in limine] are generally unnecessary, however, in the context of a bench trial.").

The Court has similarly stated its preference that it prefers to hear evidentiary disputes regarding relevance, hearsay, and prejudice during or after trial.  *See* Hr'g Tr. at 8:2-8, Dec. 9, 2024, ECF 388 ("So relevance objections I'm not terribly interested in hearing."); *id.* at 8:9-14 ("Now, if there are specific hearsay objections, for example, I will either deal with it during the trial probably or possibly in posttrial briefings . . ."); *id.* at 10:12-17 ("[W]ithout a jury, I'm a lot less interested in prejudice since . . . I will take things for what they are worth.").

That guidance notwithstanding, in the parties' meet-and-confer on February 5, 2025 regarding the motions in limine the parties are currently contemplating filing, Meta suggested it was currently contemplating ten motions—six of which are rooted in complaints about relevance, hearsay, and prejudice.  Accordingly, the FTC proposes that the Court impose a limit on the parties' motions in limine to ensure that the parties take appropriate care in selecting the evidentiary issues they believe must be resolved before trial rather than overburdening each other and the Court with extensive and unnecessary motions practice.

Meta's position that there be no cap on the parties' motions in limine would serve only to encourage precisely the sort of superfluous, premature, and unduly burdensome evidentiary disputes that the Court has stated it prefers to avoid before trial.  Despite Meta's claim that it "does not intend to file excessive motions," it has already listed ten motions that it plans to file

and insisted that it may continue to file more without prejudice. Meta also noted in a meet-and-confer that it believes it is too early to propose a cap on motions in limine, but this is clearly contrary to the Court's order contemplating that the parties should resolve this question well ahead of the deadline to file any motions in limine on February 21, 2025. *See* Order at 2, Dec. 20, 2024, ECF 390 (including "if needed, limits on motions in limine" in the submission due February 7, 2025).

Meta's counterproposal of capping the total page limits at 80 pages rather than limiting the amount of discrete motions in limine sidesteps the issue, as it leaves open the possibility that Meta will file omnibus motions in limine dealing with numerous issues, and the parties would still be forced to spend resources responding to undisciplined and unnecessary motions practice. It would also unduly prejudice the FTC for narrowly tailoring its motions in limine to those issues necessary for the Court to consider at this time: Meta would have 20 pages for each response to the FTC's two stated motions, while the FTC would have far fewer pages to respond to Meta's ten or more proposed motions. The FTC's proposal of capping the parties' motions in limine thus would encourage the parties to avoid gamesmanship and file only those motions in limine that they believe are essential to resolve prior to trial.

    **B.**        **Meta's Position**

Meta proposes the following limits for motions *in limine*:

- Total pages for opening motions: 80 pages. The parties are not limited by a specific number of motions, but a party may not surpass the page limit for opening motions, and no individual motion shall exceed 20 pages.

- Total pages for opposition briefs: 80 pages. No individual opposition brief shall exceed 20 pages.

- Total pages for reply briefs: 40 pages. No individual reply shall exceed 10 pages.

Under this proposal, the parties would not be capped by a specific number of motions but may instead raise motions as necessary within the page-limit caps. Meta's proposal is reasonable. In *Google* (D.D.C.), where there was no motion-*in-limine* cap, the court ruled on at least 13 pretrial motions filed by the parties (not including categorical exhibit disputes raised in joint status report submissions), and Google's opening briefs totaled over 100 pages.

Meta's proposal will promote efficiency. Motions *in limine* are useful tools to proactively resolve discrete evidentiary issues related to trial. Meta does not intend to file excessive motions. Giving the parties adequate briefing opportunities will enable the parties to tee up evidentiary issues ahead of time and minimize the need to resolve these objections during trial. *Cf.* Order ¶ 2 (Jan. 17, 2025), ECF No. 394 (ruling that it would be "advisable" to resolve "the vast majority" of FRE 1006 exhibit objections "pretrial"); *see also Manion v. Ameri-Can Freight Sys. Inc.*, 2019 WL 3718951, at *4 (D. Ariz. Aug. 7, 2019) ("The point of the motion *in limine* process is to simplify matters for trial"). And as the FTC argued in the last Joint Status Report, both sides benefit from pretrial rulings so they have "time to adapt their presentation of evidence" in light of them. Jt. Status Rep. at 7 (Jan. 16, 2025), ECF No. 392.

Moreover, Meta's proposal is essentially the same as the FTC's in terms of quantity of briefing – Meta proposes just 5 more pages of pretrial briefing (200 pages) than what the FTC proposes (195 pages). The FTC only rejected Meta's proposal because it claimed it wanted more pages to respond. *See* Email from O. Masters (Feb. 7, 2025). That does not make sense; Meta's proposal provides equal pages for opening motions and opposition briefs.

The Court should reject the FTC's insistence on an arbitrary cap of just three pretrial motions. That is unreasonable for a 180-hour trial in which the FTC intends to call 8 experts. A cap on the total number of motions is also premature: the FTC has not disclosed the deposition

designations it will seek to introduce, the FTC seeks to expand its exhibit list by nearly 400

exhibits, and the FTC has thus far refused to stipulate to basic *in limine* proposals from Meta –

for example, that the FTC will not argue its dismissed claims at trial.  The FTC's arbitrary cap of

three motions is also inefficient; it would punish Meta for seeking to file short motions targeted

at discrete categories of evidence that will lead to a more efficient presentation of evidence at

trial.  For these reasons, the Court should adopt Meta's proposal and reject the FTC's proposal;

in all events, the Court should not prematurely put a cap on the total number of pretrial motions.

## VI.    PRETRIAL TUTORIAL

### A.    Meta's Position

Meta believes that a pretrial tutorial at which each party will demonstrate live the features

and functionalities of several of the apps that will be the subject of trial would be useful to the

Court and would provide an efficient way of conveying helpful background information.  Meta

proposes that the Court order the parties to include proposals regarding procedures for the

tutorial in the Joint Status Report due on February 17, 2025.  The purpose of the tutorial would

be to provide background context on these apps; it would not be an occasion for advocacy.  If the

Court determines that a pretrial tutorial would be useful, Meta requests that the Court schedule

the tutorial to be held before trial and rule that time spent on this tutorial would not count against

either party's chess clock time.  Meta suggests the following parameters for the pretrial tutorial,

but ultimately defers to the Court on what would be most useful:

- **Time Limit**:  2 hours per side.
- **Presenter**:  Each party may select its own presenter (expert, attorney, or employee).
- **Apps Meta Presently Intends to Demonstrate**:  Facebook, Instagram, Messenger, WhatsApp, Snapchat, TikTok, YouTube, iMessage, and Twitter.
- **Time Frame for Relevant Apps**:  Meta presently intends to demonstrate the above list of apps as they appear today and is exploring the possibility of demonstrating the historical functionality of these apps as well.

- **Future Use as Evidence**:  None.  The tutorial would take place off the record and be demonstrative in nature.
- **Questions**:  Only the Court (not the parties) would be permitted to ask questions during the tutorial.

Meta submits that a pretrial tutorial with live demonstrations of the features and functionalities of the apps that will be the subject of trial will aid efficient trial presentations.  It will obviate the parties' need to include detailed background information in their opening statements or their evidence.  Instead, the parties and the Court will already have a common understanding of the features and functionalities of the relevant apps, such that they can move directly to discussing how those features and functionalities relate to factual and legal issues in dispute.  Meta has explained to the FTC that to the extent the FTC prefers an on-the-record tutorial, Meta is amenable to that approach, too.

As Judge Mehta explained, the search engine tutorial in *Google* was "really helpful" and added that, "you can't imagine how beneficial it is to a judge to have had this kind of foundational presentation so that . . . I'm not reading hieroglyphics."  Tr. of Tutorial Presentation Proc. at 241:25-242:4, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Sept. 13, 2022), ECF No. 393; *see also* Federal Judicial Center, TUTORIALS ON SCIENCE AND TECHNOLOGY 2 (2018), https://www.fjc.gov/content/331991/tutorials-science-and-technology (suggesting that courts "consider holding science tutorials" in cases involving "newer technologies").  And indeed, such tutorials have become increasingly common in antitrust cases in the technology industry.  *See*, *e.g.*, Letter Order, *United States v. Apple Inc.*, No. 2:24-cv-04055-JXN-LDW (D.N.J. Oct. 30, 2024), ECF No. 187; Min. Order, *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal. Mar. 1, 2023), ECF No. 466; Tr. of Tutorial Presentation Proc., *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Sept. 13, 2022), ECF No. 393; Order Amending Sept. 29, 2020 Hr'g Agenda, *United Am. Corp. v. Bitmain*, No. 1:18-cv-

25106-KMW (S.D. Fla. Sept. 25, 2020), ECF No. 160.  They provide context for the parties' trial presentations and give the court an early opportunity to ask questions to inform its understanding of the relevant technology before the trial begins.

The FTC is wrong that Meta's request is "untimely."  *See*, *e.g.*, Special Master Order No. 3 at 5, 12, *United States v. AT&T Inc.*, No. 1:11-cv-01560 -ESH (D.D.C. Nov. 13, 2011), ECF No. 82 (setting a tutorial in January before a "February 13 trial date").  Meta is proposing a pretrial tutorial in this Joint Status Report, which is where the Court asked for proposals from the parties about allotting time.

Meta believes that the Court could find helpful a tutorial along the lines Meta proposes. If the Court agrees, it should order the parties to include proposals regarding the procedure for the tutorial in the Joint Status Report due on February 17, 2025.

### B.    FTC's Position

The FTC opposes Meta's untimely request for a tutorial at this stage.  The time to propose such a tutorial was many months ago, not two months before trial begins.  The FTC has devoted its resources to preparing admissible evidence for trial and refining its case presentation, and it does not believe that the additional and substantial burden of preparing a tutorial of inadmissible evidence of uncertain value would be helpful to the Court or practicable for the parties.  As the FTC has explained to Meta, a tutorial does not appear to replace the need for presenting admissible trial testimony, and therefore it neither saves time nor makes trial more efficient.  If the information that would be presented in a tutorial is necessary for the Court to decide this case, the parties should present their evidence on the clock at trial.  Presenting the evidence twice, once in a tutorial and again at trial, does not save the parties or the Court time.

Instead, Meta's proposed tutorial appears to be a request for additional untimed opening statements, supported by either undisclosed expert testimony or new fact testimony that Meta has

proposed would remain immune to cross-examination and that presumably would not be disclosed prior to this tutorial. If Meta believes that this tutorial would save time by obviating the need for certain witnesses to testify, that suggests either that the parties need more time at trial to present all the necessary witnesses or that Meta does not need the testimony it claims would be obviated. Additionally, it is unclear why Meta believes it is useful or appropriate to explore the functionality of the apps it lists "as they appear today," given this case's discovery cut-off date, or further how exactly Meta proposes to explore the "historical functionality" of those apps.

While tutorials have been used in antitrust cases to familiarize courts with complex technical issues, these are generally requested by the court and presented well before the start of trial. *See* Min. Order, *United States v. Google*, 1:20-cv-3010 (D.D.C. June 17, 2022) (requesting tutorial to be held on September 8, 2022, nearly a year before the Court issued its summary judgment opinion and approximately a year before it held trial); *see also* Min. Entry, *Klein v. Meta Platforms*, 3:20-cv-8570 (N.D. Cal. Mar. 1, 2023), ECF 466 (confirming tutorial held on February 28, 2023); Mot. to Certify Class, *Klein v. Meta Platforms*, 3:20-cv-8570 (N.D. Cal. Mar. 1, 2023), ECF 643 (class certification motion filed on September 15, 2023). Meta notably omitted this timing aspect from Judge Mehta's reflection on the tutorial in *Google*, when he noted that it was beneficial "to have had this kind of foundational presentation so that **when I start reading these summary judgment briefs,** I'm not reading hieroglyphics." Hr'g Tr. at 242:1-4, *Google*, ECF 393 (emphasis added). Further, Judge Mehta first requested that the parties in *Google* consider a tutorial on February 11, 2022, giving the parties roughly *seven months* to discuss logistics and prepare their presentations. *See* Hr'g Tr. at 57:1-58:10, Feb. 11, 2022, *Google*, ECF 287; *see also* Jt. Status Rep. at 38-45, June 16, 2022, *Google*, ECF 361

(describing disputes between the parties regarding tutorial logistics). By contrast, Meta now unilaterally requests that the Court order the parties to prepare a burdensome tutorial mere few months before trial and with insufficient notice, and further asks the parties to settle on tutorial logistics in a mere week and a half.

In addition to the excessive burden presented by Meta's unrealistic timeline for this proposal, the Court—having reviewed the parties' extensive summary judgment filings—is already familiar with the parties' claims and the applications at issue. *See* Mem. Op. at 4-5, Nov. 13, 2024, ECF 384 (features and functionality of Facebook); *id.* at 6-7 (features and functionality of Instagram); *id.* at 10 (features and functionality of Snapchat); *id.* at 11 (features and functionality of YouTube, Twitter/X, and TikTok). A pretrial technology tutorial would thus not aid the Court in understanding the subject matter. To the extent any such demonstrations would be helpful, they can take place during trial, put on by witnesses and exhibits that the parties have already declared. In the event the Court nevertheless does wish for a tutorial, the FTC respectfully requests that the Court indicate the information it wishes to hear and the form in which it would like to hear that information.

Dated: February 7, 2025

Respectfully submitted,

*/s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Lillian V. Smith (D.C. Bar No. 252516)
Ana N. Paul (D.C. Bar No. 1531904)
Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
Hannah D. C. DePalo (D.C. Bar No. 1719743)
Hilary M. Weaver (D.C. Bar No. 90013222)
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

*/s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Nathan Brenner (IL Bar 6317564)
Noel Miller (D.C. Bar 1026068)
Karen Goff (N.Y. Bar 4630901)
Owen Masters (D.C. Bar 242139)
Ben Rashkovich (D.C. Bar 5972724)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*