**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>META PLATFORMS, INC.,<br><br>　　　　Defendant. | Case No. 1:20-cv-03590-JEB |

**JOINT STATUS REPORT**

The parties submit this joint status report pursuant to the Court's December 20, 2024

Order.  *See* Order, ECF No. 390.

**I.　　Deposition Designation Exchanges**

　　**A.　　Meta's Position**

　　**1.　　*Written Deposition Designations*.**  On Friday, February 14, 2025 (the deadline for

initial deposition designation exchanges) the parties exchanged designations.  The FTC

designated deposition testimony for thirty-two witnesses.  Three of those are witnesses on the

FTC's preliminary witness list that it intends to call by video during trial (if permitted because

the witness is unavailable to testify live).  *See* Part II.A *infra*.  But the FTC also designated

extensive and substantive deposition testimony for **twenty-nine** more individuals for post-trial

consideration.  It will not call these witnesses at trial.  It argues that the many hours of running

time for the video testimony of these non-witnesses should not count against its chess clock.

That is, it argues that it should be able to extend its ninety hours with many additional hours of

evidence that Meta will not have the opportunity at trial to rebut.  The Court should deny the

FTC's transparent attempt to shield its witnesses from the crucible of trial.

1

The extensive designated testimony spans nearly *thirteen hours* across all twenty-nine post-trial designations, including nearly *eight hours* of designations just for individuals not on the FTC's preliminary witness list. The testimony is both substantive and, as cropped, misleading. The FTC omits the testimony that makes the witnesses unhelpful to its case, which explains why the FTC has not put these witnesses on its preliminary witness list. It seeks instead to smuggle "shadow trial" soundbites into the record, to use after trial in briefing and argument. This is both unfair and contrary to the Court's express guidance on the subject of limited designations for post-trial use. Witnesses whose testimony the FTC intends to use in support of its case should be called in the FTC's case, not after the trial record is closed. While the FTC claims that Meta seeks to use the same tactic, that is incorrect. Meta has designated testimony of *trial* witnesses only, who may not appear live in Meta's case. But they will be presented at trial, and within the ninety-hour cap. Meta does *not* seek to offer any deposition transcripts after trial. The FTC, after dodging the question for months, today finally admitted that it does.

a.     **This Abuses the Court's Allowance for Limited Post-Trial Designations:** The lengthy post-trial designations flout the Court's instruction that it "is not interested in receiving a substantial number of written deposition designations to review after the trial, and it intends to largely base its verdict on testimony introduced at trial." Order ¶ 2 (Feb. 10, 2025), ECF No. 398. The Court also warned the parties that that they should not use this process as a "backdoor" to submit testimony "after the trial that they didn't want crossed on." Status Conf. Tr. at 19:21-24 (Dec. 9, 2024), ECF No. 388; *id.* (stating the Court is "certainly not receptive" to this tactic). That is precisely what the FTC is doing, and the FTC has not suggested otherwise in communications preceding this Joint Status Report; this is unfair to both Meta and the Court for multiple reasons.

This tactic is an effort to evade the trial time limit by flooding the record – after trial – with many hours of additional testimony that the FTC is unwilling to introduce during trial. *See* Order at 1-2, *City and Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 3:18-cv-07591-CRB (N.D. Cal. Mar. 3, 2022), ECF No. 1131 (explaining that "[t]ime devoted to reviewing these designations will be charged" against the parties' time allotments, and calculating time for written deposition designations based on run time on transcript); Pretrial Order No. 2 ¶ 2, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal. Mar. 23, 2021), ECF No. 381 (charging the parties trial time for deposition designations that the Court would "read," based on the run time on the transcript).

Further, submitting such extensive, substantive testimony *after* trial will prevent Meta from contesting it fully and, as importantly, will prevent the Court from questioning those witnesses. And the excerpts would be misleading. To cite just one example, the FTC chose not to list on its preliminary witness list *any* witness from MeWe – one of the four alleged "personal social networking services" active in the United States today (itself a revealing decision). But now it seeks to offer nearly 30 minutes of the MeWe founder's deposition for consideration post-trial, obscuring facts that Meta could bring out fully at trial if his testimony were properly offered (including his admission that Instagram is *not* a "personal social network").

In other instances, it appears the FTC may seek to use post-trial designations to admit documents that were not admitted at trial, without any of the important surrounding testimony to explain the documents. As just one of many examples, the FTC designates testimony from a former Meta vice president of engineering as to the creation of a document (PX10267). But the designation omits any discussion of the document itself, which includes testimony that many messaging services are competitive threats – contrary to the FTC's claims of limited competition

from messaging apps.  This is indeed the kind of "backdoor" subterfuge the Court expressly prohibited.

The Court stated that it might allow a reasonable number of deposition designations for use in post-trial briefing, but not on fundamental issues and not for use as a basis for decision in this case.  *See* Status Conf. Tr. at 19:25-20:2 (Dec. 9, 2024), ECF No. 388 ("So I'm not going to preclude it as a matter of – entirely, but I would think it would be used without – it would be used sparingly.").  But the FTC seeks to burst open that small crack in the door that bars evidence from being submitted after trial.  The FTC is not willing to call witnesses live and to submit them to cross-examination or questioning from the Court.  It is not even willing to offer their video testimony during trial.  It seeks instead to introduce substantive evidence through the backdoor for trial-after-trial.

This tactic deprives Meta of the ability to expose the FTC's soundbite theater for what it is, and it prevents the Court from considering witness testimony in context, asking questions, or judging credibility – instead burdening it with hours and hours of post-trial designations and counter-designations, as well as the inevitable objections to all or parts of that voluminous evidence across *dozens* of deposition transcripts from persons that the FTC was unwilling to list as witnesses and bring to trial.

**b.** **"Counter-Designations" Do Not Solve the Problem:**  The FTC's claimed solution is that Meta should have to expend pretrial preparation time and resources on these many hours (and thousands of pages) of deposition designations to prepare post-trial "counter-designations" as well as objections.  That will take a substantial amount of time.  Just countering testimony for more than a score of non-witnesses will require Meta to wade through transcripts collectively spanning 4,411 pages and more than 111 hours of transcript.

Setting aside the burden and distraction this will impose, "counter-designations" are not a solution at all. For example, some of the depositions were taken by the FTC as investigational hearings, five years ago, where Meta had no opportunity for re-direct examination. And if the FTC soundbites are going to be received as part of a post-trial record, Meta may need to bring witnesses live for testimony (and burn its chess-clock), in which event the FTC should be required to examine the witness live, rather than toss soundbites over the transom at trial's end. Stated simply, Meta should be provided with the fair opportunity to confront any proof that the FTC offers, and that proof should come in during the FTC's case.

It would be burdensome and unfair – not just to Meta, but also to the Court – to proceed as the FTC suggests. The Court would be left to wade through many hours of designations and counter-designations just of post-trial material for witnesses not called at trial (twenty or even thirty hours perhaps, assuming Meta's counter-designations are roughly equal in length to the FTC's initial designations), and presumably the documents that the FTC is attempting to admit through this post-trial deposition dump, none of which will have been presented or discussed at trial. The burden this would impose on the Court is significant. The Court would be required to sort through transcripts (never played during trial), consider substantive designations and counter-designations, and then consider and rule on the many objections the parties almost certainly will lodge to all or parts of the deposition testimony. That is unfair to the Court as well as to Meta, and not the way trials are supposed to be conducted.

Trial evidence should come in during trial, so that the parties and the Court can address that evidence in a timely and fair manner – testimony and documents alike. Neither Meta nor the Court will have that opportunity if the Court is left to conduct a shadow trial of deposition snippets and related exhibits after the **actual** trial has ended.

c.      **Requested Relief:**  For the foregoing reasons, the Court should strike all written transcript designations of witnesses who have not been listed as trial witnesses.  In the alternative, consistent with its direction to the parties that it would not give such post-trial designations significant weight, if any, the Court should require the FTC to resubmit no more than one hour of such non-testifying witness designations for use in post-trial briefing or argument, with the designations limited to background information (such as details needed for citations) rather than testimony that goes to the contested issues in this case.  *See* Status Conf. Tr. at 19:6-10 (Dec. 9, 2024), ECF No. 388 (The Court's statement that it is "happy to discuss . . . caps on number of transcripts that . . . come in after").  The Court should further order that Meta may postpone submissions of any counter-designations, completeness designations, and objections to any post-trial written testimony that may be allowed by the Court, until after the trial closes, to avoid the burden of spending significant amounts of time making designations to depositions that will not be received.

d.      **Reply to the FTC's Claimed Justifications:**  The FTC's claimed reasons for the submission of extensive evidence that it will only offer post-trial are without merit.

*First*, the FTC claims the Court has already granted it leave to flood the record with twenty-nine non-testifying witness transcripts, amounting to 1,920 pages.  The Court granted no such permission and advised the parties that it had no intention of entertaining such extensive post-trial submissions.  *See supra.*  The FTC's deposition flood is contrary to the spirit, if not the letter, of the Court's rulings.  And it creates a problem of trial preparation that needs to be resolved now, so that Meta can know the case it must contest.

*Second*, the FTC tries to draw a false equivalence between its non-testimony designations for post-trial and the designations Meta submitted on February 14 by misrepresenting that Meta

might use its designations for post-trial briefing or argument. Meta made clear in providing those disclosures that its designations were protective and for trial witnesses who might not appear live – and would count against its chess-clock. *See* Email H. Weaver to D. Matheson (Feb. 14, 2025, 4:59 p.m.) ("Meta currently anticipates calling witnesses live," but it provided designations "in the interest of providing ample advance notice to the FTC, and to reduce the number of designations that would need to be exchanged during trial in the event that the testimony will need to be presented via deposition."). Meta does not intend to submit that evidence post-trial. But the FTC finally (at noon today) made clear that it does intend to dump many hours of substantive testimony into the record *after* trial. The FTC's equivocation that it may not "need" to rely on *all* that material post-trial only underscores the problem. The FTC seeks to reserve the right to change the record after trial ends, which is inappropriate and unfair. Meta should not be required to respond to a moving FTC-case target, especially one that continues to move after Meta no longer has the opportunity to refute it.

*Third*, the FTC says that submitting designations at trial is standard – but that's not what it wants to do here. It seeks to introduce evidence *after* trial, which is not consistent with either Federal Rule of Civil Procedure 32 (regarding use of depositions "[a]t a hearing *or trial*") or Federal Rule of Evidence 904 (regarding submission of material *into evidence* at a trial). Testimony that is important to the FTC can and should be introduced at trial, not after. That is consistent with the Court's instructions that post-trial designations should be appropriately circumspect; the FTC dumping in hours and hours of such designations covering dozens of non-witnesses it will not present at trial is not.

*Fourth*, Meta is not attempting to exclude admissible testimony, as the FTC asserts. If the FTC has admissible evidence, then it should offer it at trial. Nothing prevents the FTC from

seeking to offer that evidence at trial.  Meta can respond appropriately with any objections, and

the Court can consider its admissibility under appropriate trial conditions.  Meta is seeking only

to confine the trial proof to the trial, consistent with the Court's instructions to the parties that

post-trial submissions should be limited.  The fact that the FTC, in its submission here, takes

Meta to task for not arguing *today* evidentiary objections to the hundreds of pages of designated

testimony, provided three days ago, underscores the prejudice created by the FTC's inappropriate

designations.  Meta should not be required to argue admissibility for evidence not properly

intended to be admitted.

*Fifth*, the FTC's complaint about Meta's timing in raising this issue is unfounded.  *See*

Ex. 1.  The FTC did not disclose its twenty-nine non-testifying witnesses until three days ago

(February 14).  Even after that, until today, the FTC had refused to confirm that it intended to use

this material post-trial.  Meta provided the FTC with a draft of this position statement on

deposition designations on February 16, according to the parties' agreed Joint Status Report

exchange schedule, putting the FTC on full notice of Meta's position.  The FTC, by contrast,

revealed its lengthy position for the first time at noon today (February 17).

*Finally*, the FTC argues this should be a motion *in limine*.  The instant dispute is about

putative – forthcoming, not yet completed, and evolving – processes for deposition

designations.  That is precisely what the Court has addressed through these Joint Status

Reports.  *Cf. Paige Int'l, Inc. v. XL Specialty Ins. Co.*, 2016 WL 3024008, at *3-4 (D.D.C. May

25, 2016) (cited by the FTC; considering motions to strike an expert report – having nothing to

do with the issue of orderly pretrial administration of designations).  The Court has already

addressed the issue of post-trial evidentiary submissions as part of the regular Joint Status Report

process; the parties will benefit from the Court's resolution of this issue now, instead of deferring

it and requiring Meta to address, object to, and counter-designate depositions that will never be a part of the trial record. There is no good reason to kick the can down the road further on this clearly presented problem of trial administration.

*    *    *

The FTC says, in concluding its position statement, that the relief Meta seeks would prejudice the FTC thusly: "It would be unjust to deny the FTC the opportunity to present its case and offer this evidence." But that's exactly what Meta is urging; the FTC has it backwards. The FTC can and *should* present its evidence *in its case* at trial – rather than after the trial, when its case is closed, the evidence is in before the Court, and Meta has no fair opportunity to contest the proof.

### 2. *Proposed Schedule*

**a.    Current Witness List Witnesses:** With respect to Meta's deposition designations and the FTC's eight deposition designations for witnesses that appear on the FTC's preliminary witness list – only three of which the FTC apparently intends to play at trial, Meta proposes the following schedule for preparing counter-designations, completeness designations, and objections:

1. **February 24, 2025 at 5 p.m. ET:** Parties exchange counter-designations, completeness designations, and objections for all deposition designations for the witnesses on the parties' preliminary witness lists.

2. **February 28, 2025 at 5 p.m. ET:** Parties exchange completeness-designations to counter-designations and objections for all deposition designations for the witnesses on the parties' preliminary witness lists.

3. **March 3, 2025 at 5 p.m. ET:** Parties exchange objections to completeness designations for the witnesses on the parties' preliminary witness lists.

4. **March 4-7, 2025 at time TBD:** Parties will meet and confer regarding objections.

5. **March 9, 2025 at time TBD:** Parties exchange final video designations to be included in the March 10, 2025 pretrial statement.

Meta's schedule differs from the FTC's proposal because it includes in the process a deadline to exchange objections to completeness designations – a necessary step to ensure an orderly designation process.

      **b.**     **Witnesses Not On Witness List:** For witnesses who will only be used for written designation post-trial, Meta's position remains that counter-designations are an inefficient and impractical approach, and should be deferred until after the trial closes to the extent the Court allows any such designations following the FTC's misuse of that process.

      **c.**     **Witnesses Removed From the Opposing Party's Witness List:** For witnesses removed from an opposing party's "will call" list who will only be used for written designation post-trial, Meta's position remains that counter-designations are an inefficient and impractical approach (that should be deferred until after the trial closes to the extent the Court allows any such designations following the FTC's misuse of that process).

      For witnesses whose videos the FTC intends to play at trial, Meta does not object to the FTC's proposed schedule, but requests that the Court include three days for objections to completeness designations at the end of the FTC's proposed schedule. Meta maintains that if a witness is removed from the opposing party's witness list, the party seeking to use that testimony should call the witness live (if the witness is available).

**d.** **Witnesses Whose Attendance the Parties Are Unable To Procure Live:** The parties agree that a party may submit opening deposition designations to be played at trial for any witnesses disclosed on the party's witness list whose live testimony the party is unable to procure, provided that the proponent of any such late designation must provide the responding party a reasonable time to object, if circumstances warrant, and to cross- or counter-designate testimony from the relevant witness before introducing any late designation at trial. For any such witnesses, Meta proposes that the parties attempt in good faith to follow the same schedule the FTC proposed for witnesses removed from an opposing party's "will call" list, with the addition of three days for objections to completeness designations at the end of the FTC's proposed schedule. Because the parties may not know that a party is unable to attend live to testify until trial has already started, Meta proposes that the parties work in good faith to exchange cross- or counter-designated testimony from the relevant witness on an accelerated basis as circumstances warrant.

\* \* \*

**Additional Responses to FTC's Arguments Concerning Scheduling**: The FTC argues that Meta did not disclose Meta's positions on sections 2(b), 2(c), and 2(d) above prior to February 17th. The FTC is wrong. Meta promptly set forth its positions on deposition designations after receiving the FTC's designations. *See* Email A. Paul to O. Masters (Feb. 15, 2025, 4:38 p.m.). And Meta even offered to remove sections 2(c) and sections 2(d) in the event the FTC wanted to confer on those issues further. However, the FTC refused, indicating that it would prefer for those sections to be in the JSR. *See* Email O. Masters to A. Polavarapu (Feb. 17, 2025, 3:06 p.m.). As to substance, the FTC raises no reason why the proposal Meta advances in sections 2(b) and 2(c) should not be adopted in the event the Court allows post-trial deposition

designations.  As to Section 2(d), the FTC agrees – consistent with the parties' prior agreement – that the parties may submit designations at a later date in the event they are unable to procure the live attendance of a witness.  The only disagreement the FTC raises is that it contends that it should also be able to make additional *post-trial* designations in the event a witness cannot be procured live, which is inappropriate for all the reasons Meta has explained in this submission.

### B.    FTC's Position

#### 1.    Written Designations Exchange Schedule

The FTC respectfully requests the Court enter the following schedule for completing deposition designations:

- February 27, 2025, at 5 p.m. – Parties submit any completeness and counter-designations in response to an opposing party's opening designations.  All objections to an opposing party's opening designations must be included in this exchange.

- March 6, 2025, at 5 p.m. – Parties submit any completeness and counter-designations in response to the completeness and counter-designations received on February 27.  All objections to an opposing party's completeness or counter-designations must be included in this exchange.

Following this final exchange and ahead of pretrial submissions on March 10, 2025, the parties may meet and confer regarding deposition designations and any objections.  If further meet and

confers are necessary, the parties can continue to meet and confer in advance of the final pretrial conference.

Additionally, the FTC respectfully requests that the Court order the following schedule shall apply to witnesses removed from an opposing party's "will call" list:

- A party has two weeks after learning that the opposing party has removed or failed to call a witness from its "will call" list to submit opening deposition designations for that witness.

- If an opposing party offers opening designations for that witness, the party that removed or failed to call the "will call" witness will have one week after receiving any opening designations to offer any completeness or counter-designations and objections in response.

- Any last completeness or counter-designations and objections in response will be due one week after receiving completeness and counter-designations from the party that removed or failed to call the "will call" witness.

These proposals offer a reasonable and efficient process for concluding the written deposition designations exchange process in the time remaining. They are also consistent with the time periods deemed reasonable in comparable cases. *See, e.g.*, Order 1-2, *United States v. Google LLC*, No. 1:23-cv-108 (LMB/JFA) (E.D. Va. Feb. 26, 2024), ECF 547 (providing for two weeks between disclosure of deposition designations and objections to such designations); *id.* at ECF 917, 919 (parties' further objections and counter designations filed one week later).

*****

At 12:02 p.m. on February 17, 2025, Meta disclosed for the first time three new sections regarding deposition scheduling. Meta's items 2.b (witnesses not on witness list), 2.c (witnesses

removed from the opposing party's witness list), and 2.d.(witnesses whose attendance the parties are unable to procure live) were not provided to the FTC in the parties' exchange of positions at 4 p.m. on February 16. Positions 2.c and 2.d in particular appear to contain new requests that the FTC has not had the opportunity to consider or discuss with Meta, let alone to meaningfully respond. Meta has violated both the parties' agreement governing how the parties are to attempt to present proposals to the Court in an orderly fashion, and the spirit if not necessarily the letter of Local Rule 7. Accordingly, the Court should reject these new proposals.

While the FTC has not discussed these new proposals with Meta and cannot address all of them at this stage, the FTC briefly notes at least one problem with Meta's proposed language. Meta claims that "[t]he parties agree that a party may submit opening deposition designations ***to be played at trial*** for any witnesses disclosed on the party's witness list whose live testimony the party is unable to procure…" (emphasis added). That is not what the parties agreed. The FTC does not agree that designations for an unavailable witness must be played at trial, as opposed to being designated for post-trial briefing. The FTC also does not agree that unavailability is the only basis for designating deposition testimony for the trial record, consistent with the Court's prior rulings on this topic and as discussed in the FTC's response to Meta's motion to strike. As described in the FTC's position statements, the FTC also proposes that designations are appropriate for a witness if the opposing side drops that witness from its "will call" list (including by not calling the witness at trial).

### 2.    Meta's Motion to Strike

The FTC respectfully requests that the Court deny Meta's baseless, repetitive, and procedurally improper motion to strike the FTC's written deposition designations. Specifically, Meta requests that the Court strike all the FTC's "substantive" written designations for witnesses not on the FTC's witness list, or alternatively, that it impose a cap on written deposition

designations so that they total the equivalent of a video runtime of no more than one hour and be limited to "background information."

As detailed below, Meta's late-breaking motion fails for several reasons. First, Meta retreads old ground, asking the Court to once again revisit Meta's position that the use of post-trial written deposition designations should be severely limited, if not barred entirely. Second, the FTC's proffered designations are entirely consistent with the Court's preference for live testimony. Third, admission of deposition designations into a trial record is standard and appropriate, expressly contemplated by the Federal Rules of Civil Procedure and Federal Rules of Evidence and typical in antitrust cases of similar scope and complexity. Fourth, Meta has identified no legal basis for striking or excluding the relevant sworn testimony, nor has Meta articulated any meaningful prejudice it believes may result. Fifth and finally, Meta's request is procedurally improper. Meta once again violated the parties' joint status report schedule, making its out-of-time request for relief on Saturday afternoon before this Monday filing. As a result, Meta has failed to satisfy the parties' agreements as well as the local rules for meeting and conferring in advance of what amounts to a motion *in limine*.

***First, Meta's request retreads old ground and fails to justify reconsideration.*** Meta effectively moves for reconsideration of an issue the Court has already repeatedly decided when it again asks the Court to strike written designations dealing with "substantive" matters—or anything that is not "background information (such as details needed for citations)"—and arbitrarily cap even those "background information" citations to the equivalent of one hour of testimony.

The Court has already rejected Meta's repeated requests to impose arbitrary limits on post-trial deposition designations with respect to both subject matter and volume. In the parties'

December status conference, the Court stated: "what I am most likely to do is to say I will let you submit deposition excerpts, written deposition excerpts, in connection with pos[t]-trial briefing . . . ." Hr'g Tr. at 6:11-12, Dec. 9, 2024, ECF 388. Counsel for Meta objected that Judge Mehta in *United States v. Google* "told the parties that if there was anything they expected him to rely upon in his decision, that should be the subject at trial," but the Court corrected Meta's misinterpretation of Judge Mehta's approach: "No. . . . So I'm not going to preclude [post-trial deposition designations] as a matter of—entirely[.]" *Id.* at 19:11-20:2.

Despite the Court's clarity during the December 9 conference, Meta raised the issue again eight days later and "continue[d] to object to any end-of-trial submission of evidence that was not the subject of trial examination." Joint Status Rep. 26, Dec. 17, 2024, ECF 389. The Court again rejected Meta's position, expressly addressing deposition designations submitted post-trial. *See* Order 2, Dec. 20, 2024, ECF 390 (preliminary exhibit lists need not include "deposition transcripts that the party may designate or cite in proposed findings"); *id.* at 3 ("To the extent post-trial submissions of evidence are permitted, final witness and exhibit lists, and deposition designations, shall include materials (both testimony, via the witness list and deposition designations, and documents via exhibit lists) that a party intends to introduce post-trial.").

Ignoring the Court's clear instructions, Meta raised the issue for a third time in the parties' February 7 joint submission. In that submission, Meta asked the Court to "order that it will not accept post-trial submission of written deposition designations." Joint Status Rep. 16, Feb. 7, 2025, ECF 396. Meta also asked the Court to order that no written deposition designations "may be submitted for use post-trial absent good cause shown" or, in the alternative, that written deposition designations be "limited to ancillary matters." *Id.* at 19-20. The Court yet again rejected Meta's demand, stating that "the Court will not categorically bar the

post-trial submission of such designations nor adopt Meta's good-cause or ancillary-matter requirement" and that "[i]f the testimony will not be presented at trial, the witness need not appear on a party's witness list."  Order 1-2, Feb. 10, 2025, ECF 398.

Meta now raises the issue for the fourth time, refusing to take "no" for an answer.  In particular, Meta asks the Court to impose significant restrictions on the substance and volume of the FTC's deposition designations, in contravention of the Court's clear and repeated orders that it will not do so.  *See supra* sec. I.A (asking the Court to strike the FTC's designations for twenty-four witnesses or, in the alternative, to require the FTC to limit its written deposition designations to one hour's worth of "background information"); *see also* Ex. A at 7, Email from A. Paul (Feb. 15, 2025, 4:38 PM) ("Specifically, we plan to ask the Court to strike the designations [for witnesses not on the FTC's witness list], or in the alternative impose a one-hour cap on post-trial deposition submissions[.]").

Meta offers no explanation for ignoring the Court's prior rulings and burdening both the Court and the FTC by revisiting Meta's strained position yet again.  Nor does Meta show any error in the Court's prior rulings on this issue or meet the standard for what amounts to a repeated motion for reconsideration.  *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) ("This Court may permit revision 'as justice requires.' . . . Justice may require revision when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." (cleaned up)); *see also id.* at 101-02 ("The district court's discretion to reconsider a non-final ruling is, however, limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's

17

decision, they should neither be required, nor without good reason permitted, to battle for it again." (cleaned up)).  The Court should reject Meta's thrice-resurrected request.

       ***Second, the FTC's deposition designations and trial plan abide by the Court's preference for live testimony.***  Pursuant to the Court's schedule for deposition designations, the FTC served its deposition designations on Meta on Friday, February 14, at 5 pm, identifying (1) deposition testimony that the FTC currently intends to present during trial by video and (2) "all deposition testimony it currently believes it may need to cite in post-trial briefing."  Order 1, Feb. 10, 2025, ECF 398.  The FTC designated testimony from 3 witnesses that it currently plans to call by video and from 29 witnesses that "it may need to cite in post-trial briefing," *id.*; these designations total about 1,920 pages.  On the same day, Meta designated testimony from 23 witnesses that it may cite in post-trial briefing; these designations total about 1430 pages.

       The deposition designations proffered by the FTC readily meet the Court's prior instructions, including its preference for live testimony.  Meta focuses on the FTC deposition designations' purported video runtime, claiming that the FTC's post-trial designations are the equivalent of 13 hours of video deposition time.  The FTC cannot verify Meta's runtime estimate on this holiday weekend but observes that assessing written designations by runtime is in tension with the Court's prior guidance that written designations will not be measured in trial time.  Order 2, Feb. 10, 2025, ECF 398 ("Written deposition excerpts submitted after trial shall not count against the clock.").  Meta's claim also overstates the volume of testimony at issue because 7 of the 29 depositions that the FTC may seek to cite in post-trial briefing relate to witnesses on Meta's may-call list.  To the extent Meta actually calls these witnesses at trial, it is highly likely that the FTC will be able to elicit live testimony that would obviate some or all of the deposition

testimony that it has designated, assuming that the scope of the FTC's cross-examination is not unduly restricted. *See infra* sec. III.A.

But even accepting the accuracy of Meta's figure and taking video runtime as the appropriate measure of post-trial written designations, Meta's position underscores the narrow tailoring of the FTC's designations. The parties collectively took more than 640 hours of fact depositions in this matter—462 by the FTC, 181 by Meta— and are set to have a trial of at least 180 hours. *See* Joint Status Rep. 5, Dec. 5, 2024, ECF 387. Meta's estimate thus underscores that the FTC's designations—even if they are all cited in post-trial briefing—would represent just a small fraction of the FTC's anticipated testimonial record at trial (less than 15%) and an even smaller fraction of the testimonial record in the case (less than 2%). Stated differently, per Meta's own estimates, the FTC *will be* presenting the vast majority of its testimonial evidence at the trial hearing itself, not by way of post-trial written designations, consistent with the Court's guidance.

Meta also overstates the length of the FTC's proffered designations for other reasons. As the Court previously ruled, the designations disclosed on February 14 represent citations that the parties "may need" to cite in post-trial briefing. Order 1, Feb. 10, 2025, ECF 398. As previously explained, the FTC may not find it necessary to cite all its designations in post-trial briefing, either because an issue falls away at trial or because the FTC finds other ways to secure similar evidence. Joint Status Rep. 13, Feb. 7, 2025, ECF 396 ("That the FTC cannot confirm with certainty which of its February 14 designations will be cited in post-trial briefing is a necessary consequence of the designation deadline coming in the pretrial period, which is what the parties agreed."). Indeed, the FTC hopes to collect as much live testimony as it can and will continue to attempt to stipulate with Meta to uncontroversial facts. *Id.* ("[W]hile the FTC is

preparing deposition designations, in many circumstances, the FTC may be able to reach a stipulation with Meta or develop testimony live at trial that renders citations to the FTC's prepared deposition testimony designations unnecessary.").  Both avenues will ideally replace the need for many post-trial designations.

Further, neither the Court nor the FTC need instruction or guidance from Meta restricting the "substantive" scope of designations.  The FTC understands that the Court will give greatest attention to testimony presented live at trial and remains mindful of the Court's guidance not to overly rely on post-trial deposition designations.  *See, e.g.*, Order 1, Feb. 10, 2025, ECF 398.  Thus, the FTC (along with Meta) is already incentivized to present its most important evidence live at trial, rather than risk it being overlooked in post-trial briefing.  No further sanction or compulsion from the Court is necessary.

Lastly, it is worth noting that Meta itself submitted designations on February 14 for 23 witnesses, totaling approximately 1,430 pages.  While the FTC has not calculated the runtime of Meta's own designations, as Meta has designated 75% of the amount of testimony the FTC has cited, if the FTC's total runtime is approximately 13 hours, it is likely that Meta's own designations exceed 9.5 hours of runtime.  Meta's request to strike 8 hours' worth of the FTC's written designations is thus yet another instance of Meta demanding an evidentiary cap even though Meta itself has disclosed evidence that dramatically exceeds its own requested limit.  *See* Joint Status Rep. 34-35, Feb. 7, 2025, ECF 396 (Meta requested "a cap of 750 exhibits for each party's final exhibit list" despite listing 1,054 exhibits on its own preliminary exhibit list); *compare id.* at 6 (Meta proffered 86 witnesses on its preliminary witness list) *with* Hr'g Tr. 4:18-5:1, Nov. 25, 2024, ECF 386 (Meta requested only "four to six weeks" of trial).  Meta suggests that it may be differently situated because 24 of the FTC's designated witnesses do not appear on

20

the FTC's witness list, but the Court has already clearly specified that witnesses not appearing at trial need not be on a party's witness list. Order 2, Feb. 10, 2025, ECF 398 ("If the testimony will not be presented at trial, the witness need not appear on a party's witness list.").

In truth, the FTC's designations disclosed on February 14 satisfy the Court's prior orders and guidance, including the Court's expectation that most testimonial evidence will be admitted via live testimony at the trial itself.

*Third, the admission of deposition designations into a trial record is standard and appropriate.* There is especially no reason for the Court to reverse its prior rulings permitting the parties to submit deposition designations into the trial record and post-trial briefing because this practice is standard. Federal Rules of Civil Procedure and the Federal Rules of Evidence permit the use of deposition testimony at trial. Fed. R. Civ. P. 32; Fed. R. Evid. 804. And the Court has ordered that the availability of nationwide service does not alter the standards for FRCP 32 or FRE 804. Joint Scheduling Order 12, Mar. 3, 2022, ECF 103 (ordering that availability for nationwide service under 15 U.S.C. § 23 does not make a witness available under FRCP 32 or FRE 804 with respect to the use of deposition transcripts at trial).

Indeed, the admission of deposition designations post-trial—including of the volume and subject matter of the FTC's designations—is commonplace in antitrust cases, particularly ones of this size and complexity. *See, e.g.*, *United States v. Google*, --- F. Supp. 3d ---, 2024 WL 3647498, at *3, *135 (D.D.C. Aug. 5, 2024) (after hearing from "dozens of live witnesses," receiving designated deposition testimony from an additional 20 witnesses); *United States v. Am. Airlines Grp. Inc.*, 675 F. Supp. 3d 65, 74 (D. Mass. 2023) (after a month-long trial with 24 live witnesses, receiving "more than 2,700 pages of excerpts from the depositions of seventeen additional witnesses"); *FTC v. Shkreli*, 581 F. Supp. 3d 579, 591, 593-94 (S.D.N.Y. 2022) (after

a 7-day trial, receiving excerpts of deposition testimony from more than 25 witnesses); *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 187 (D.D.C. 2017) (accepting "deposition excerpts from more than 100 individuals"); *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 45 (D.D.C. 2011) ("The parties presented testimony from additional witnesses by affidavit and deposition.").

Meta complains in passing that some of the FTC's designations identify investigatory hearing ("IH") transcripts, but this again raises an issue that the Court has already resolved against Meta: the Court clearly instructed that it will treat as IH transcripts exactly like deposition transcripts if the individual testifying in the IH was a Meta employee represented by Meta's counsel. *See* Min. Order, Feb. 9, 2023 ("Investigatory hearing transcripts shall be treated the same as deposition transcripts provided that the current or former Meta employee was represented by Meta counsel during the IH."). This describes all IH testimony that the FTC has cited. There is plainly no reason to exclude or unduly restrict the FTC's ability to rely on such IH testimony now, as the FTC's deposition strategy was formulated in reliance on the Court's prior resolution of this issue.

***Fourth, Meta identifies no legal basis for excluding the FTC's admissible sworn testimony.*** Meta's renewed and repetitive request boils down, remarkably, to a request to strike and suppress admissible sworn testimony from the evidentiary record available to the Court. In this regard, a pattern is developing: Meta argues for little trial time, limited exhibits, and (now) the suppression of sworn deposition testimony. This tactic is predictable, as the FTC bears the ultimate burden of proof on its cause of action and Meta presumably believes it will benefit if it is able to prejudice the FTC's ability to prove its case by arbitrarily restricting the evidentiary record.

Meta's unsurprising tactic should be rejected, because Meta identifies no legal basis for its current demand to strike or exclude sworn deposition testimony from the evidentiary record. Testimony from depositions or IHs in this matter are likely to be highly probative and relevant, and, being duly sworn, they do not have any inherent indicia of unreliability. *Cf.* Fed. R. Evid. 403. Likewise, despite Meta's unexplained references to a "shadow trial," Meta identifies no prejudice or burden associated with the FTC's designations, submitted in accordance with the Court's established procedures for designating deposition testimony.

To the contrary, Meta has in hand—two months before the start of trial—the written designations that the FTC may cite in post-trial briefing. Meta can plan its trial presentation accordingly. Meta was also present for every sworn transcript designated by the FTC, including the FTC's two designated investigative hearing transcripts. *See* Min. Order, Feb. 9, 2023 ("Investigatory hearing transcripts shall be treated the same as deposition transcripts provided that the current or former Meta employee was represented by Meta counsel during the IH."). Meta thus had the opportunity to question these witnesses as much as the FTC had, and indeed had more than 650 hours of deposition time that it declined to use at the close of fact discovery. *See* Joint Status Rep. 5, Dec. 5, 2024, ECF 387 (noting each side had 840 hours for fact depositions and Meta used only 181 hours).

Moreover, if Meta believes specific testimony is inadmissible, it can lodge specific objections pursuant to the schedule and process, proposed by the FTC, which Meta now seeks to short-circuit. Of course, this would require Meta to have a valid evidentiary objection to the proffered testimony. But to date, Meta has not indicated any specific designations are inadmissible—much less that all the FTC's "substantive" designations are.

23

Similarly, if Meta believes other testimony from a designated witness is relevant, it can counter-designate that sworn testimony, or even call the witness at trial using Meta's trial time. Meta's complaint that counter-designations are a burden is specious.  The FTC has proposed a reasonable and orderly process for the parties to lodge objections and counter-designations to each other's opening designations, and the FTC is prepared to meet that schedule with respect to Meta's more than 1,400 pages of designations.  If the FTC can handle this process, so can Meta.

Meta also complains that it wants the opportunity to confront the designated witnesses live at trial.  Nothing is stopping Meta from doing so.  Meta has the FTC's proposed designations, and if Meta feels it must ask more or different questions than were covered in the depositions, it is free to add any of these witnesses to its witness list, subpoena them, and question them at trial.  Meta perhaps feels it does not have adequate time to examine these witnesses at trial, but this would be another indication that Meta's insistence on a heavily restricted trial duration was wildly inaccurate and inappropriate.  Joint Status Rep. 1-5, Feb. 7, 2025, ECF 396 (assessing the impracticability of Meta's inflated preliminary witness list given "Meta's prior position that it did not need more than 48 to 72 hours of trial time to make its case").  The solution to any such concern is not suppressing the FTC's evidentiary record.  If Meta feels it does not have adequate trial time to examine these or other witnesses, the FTC is open to jointly move the Court for additional trial time, provided the FTC receives additional time as well.

***Fifth, Meta's new demand—a late-breaking motion to strike inserted into this joint status report—is procedurally improper***.  The foregoing points are reason enough to reject Meta's request outright and on the merits.  Meta's demand is additionally unsound because it breaches the parties' agreement regarding this joint status report as well as the local rules for

non-dispositive motions.  Meta provided an update to its portion of the statement to the FTC at 4:00 p.m. on February 17, which appears to contain entirely new assertions and arguments that the FTC has not had time to understand or rebut in advance of the Court-ordered deadline of 5:00 p.m.  Indeed, the FTC does not even know if its portion of the JSR addresses Meta's new assertions.  Meta's conduct does not benefit the Court, as Meta's new assertions may have caused the parties' discussions to become ships passing in the night.  The Court should disregard Meta's assertions and arguments.

In advance of today's JSR filing deadline, the parties agreed to a schedule to exchange *timing proposals* for deposition designations on Saturday, February 15, in advance of filing this joint status report with those timing proposals on Monday, February 17, a federal holiday.  Ex. A at 22-27, Email from A. Polavarapu  (Feb. 11, 2025, 9:38 PM).  Exchanging timing proposals is a very different thing than introducing a motion to exclude testimony.  Yet flouting this arrangement, for the first time on Saturday afternoon, Meta told the FTC that it "plan[ned] to ask the Court to strike the designations [of all witnesses not on the FTC's witness list], or in the alternative impose a one-hour cap on post-trial submissions, allowing us at trial's end to counter-designate or move to strike."  Ex. A at 6-8, Email from A. Paul (Feb. 15, 2025, 4:38 PM).  Meta's email cited no authorities and disclosed no basis for its requested relief.  *Id.* at 6-8.

Meta's behavior is a significant and burdensome breach of the parties' agreement, requiring the FTC to scramble this opposition statement in just over a day on a holiday weekend.  Unfortunately, Meta's disregard for agreed-upon notice processes is not a one-off.  *See, e.g.*, Joint Status Rep. 15-16, Feb. 7, 2025, ECF 396  If Meta intends to request the Court order substantial relief, Meta should request leave to file the appropriate motion, not insert this issue unilaterally into a joint status report filing over the weekend.

25

Meta's behavior also means that the parties have not practically met and conferred on Meta's proposed motion, thus violating the letter and spirit of Local Rule 7(m).  The FTC first learned some of Meta's actual arguments—though, critically, no legal justifications—for its requested relief at 5:36 PM on Sunday, February 16, only eighteen hours before the parties agreed to exchange final position statements.  Ex. A at 1, Email from A. Polavarapu (Feb. 16, 2025, 5:36 PM) (attaching Meta's draft JSR insert, including its newly announced motion to strike).  Local Rule 7(m) "may not be satisfied by perfunctory action," and "at least contemplates that counsel will speak to each other."  *See U.S. ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 51-52 (D.D.C. 2006) (cleaned up) (denying motion to strike disclosed to opposing counsel with 24-hours' notice).

While framed as a motion to strike, Meta's request for a bar on the FTC's use of deposition designations for 24 witnesses is also properly characterized as a motion in limine.  *See Paige Int'l, Inc. v. XL Specialty Ins. Co.*, 2016 WL 3024008, at *2-3 (D.D.C. May 25, 2016) (distinguishing motions to strike from motions in limine in this regard).  Material not yet placed on the docket is "in no position to be stricken at all," *Paige Int'l*, 2016 WL 3024008, at *2, and Meta's request seeks to prevent the FTC from *later* introducing admissible evidence.  The FTC has yet to introduce any of the deposition testimony Meta now seeks to exclude.  And as noted, the FTC may ultimately seek to introduce far less of the deposition testimony than what Meta now prematurely moves to exclude, depending on the testimony elicited live at trial and the stipulations that the parties can jointly offer.  The Court has already ordered a process and page limits for motions in limine, which Meta's position statement now flouts.  Order 2, Dec. 20, 2024, ECF 390 (schedule); Order 2, Feb. 10, 2025, ECF 398 (page limits).

Finally, Meta's last-minute motions practice also prejudices the FTC's ability to adequately defend the admissible record it developed over months of discovery. Meta's late-in-time briefing has given the FTC almost no time to respond. It would be unjust to deny the FTC the opportunity to present its case and offer this evidence.

Given Meta's procedural violations, if the Court wishes to entertain Meta's demand, it should order Meta submit this request as part of the motions in limine process. But more pertinently, for the reasons stated above, the Court should deny Meta's baseless and already-rejected requested relief and bar Meta from introducing this issue a fifth time.

## II.    Video Designations

### A.    FTC's Position

The FTC respectfully requests that the Court order that if both parties intend to introduce video designations for a particular witness, those designations must be played separately in each party's case in chief or rebuttal case. Meta, by contrast, requests that all designations from either party be played when either party first introduces video testimony from a given witness.

This dispute includes two related issues: first, whether both parties will play video designations for a given witness on the same date; and second, whether each party should play their designated video separately or if both parties' designations should be aggregated into a single video presented in the order of video timestamps. At present, this dispute implicates at least three witnesses, all of which have been designated by the FTC; Meta has designated no video testimony. The FTC respectfully requests that it be permitted to play its video deposition testimony, along with any completeness designations from Meta, in its case in chief without being required to play whatever other designations Meta may choose to offer for its own case.

Courts have authority to determine the order and manner in which they receive evidence, particularly in a bench trial. The parties agreed to accommodate live witnesses by calling them

only once and conducting questioning for both parties serially. But this accommodation for live witnesses should not apply to video designations. Courts are not required to hear all of one party's video deposition designations in one sitting. *See Blue Cross Blue Shield of N.J., Inc. v. Phillip Morris, Inc.*, 199 F.R.D. 487, 489 (E.D.N.Y. 2001) ("[T]he plaintiff will be permitted to play the portions it wishes in its case-in-chief without counter designations. The defendants may do the same in their case after the plaintiff rests."); *see also SourceOne Dental, Inc. v. Patterson Companies, Inc.*, 2019 WL 13422976, at *2-3 (E.D.N.Y. Sept. 9, 2019) (holding that an "all at once" approach to video designations ran the risk of the defendant's evidence "overshadow[ing]" the plaintiff's during the plaintiff's case in chief and thus substantively denying the defendant's proposal to so structure the parties' video designations at trial).

For example, in *United States v. Microsoft*, the Department of Justice played separate portions of Mr. Bill Gates's testimony on November 2, 9, 16, 17, December 2, 15, 1998, and January 5, 1999. *See* "U.S. v. Microsoft Corporation [Browser and Middleware] - Excerpts," Antitrust Division U.S. Dept. of Just., *available at* https://www.justice.gov/atr/cases/ms_depos.htm (last visited Feb. 14, 2025).

Similarly, in *FTC v. Qualcomm*, the parties proceeded precisely as the FTC proposes here: for the convenience of witnesses, fact witnesses called live were called only once and neither party was limited regarding the scope of its re-direct examinations or cross-examinations; but where video depositions were played, each party presented its own designations (including any designations for completeness) during its own case. *See* Ex. B at 3 (Index of Plaintiff's Witnesses for Jan. 4, 2019) (on Jan. 4, 2019, the FTC presented video deposition testimony from Eric Reifschneider, Ira Blumberg, and Nanfen Yu); Ex. C at 3-4 (Index of Defendant's

Witnesses for January 18, 2019) (on Jan. 18, 2019, the defendant presented its counter-designated video deposition testimony from Eric Reifschneider, Ira Blumberg, and Nanfen Yu).

The Court should adopt the same approach here: Meta is free to call witnesses live or present its own video designations in its own case, but the Court should not require the FTC to cede time in its case to whatever evidence Meta wishes to present by video (excepting appropriate designations for completeness pursuant to Fed. R. Evid. 106). Requiring both parties to play video on the same date artificially allows Meta to interject issues and extend the length of designated video testimony in the FTC's case where no accommodation for a live witness is needed. And requiring that video designations be presented as a single video compilation from both sides obfuscates which party offered specific testimony into evidence. Neither position makes sense, nor is either outcome required by the rules.

Contrary to Meta's suggestion, playing each side's video separately will not create needless disputes over how specific testimony was designated. Meta proposed, and the FTC agreed, to a designation process that identifies what testimony a party designates for completeness or as counter-evidence. *See* Ex. D at 1-2, Email from H. Weaver (Feb. 11, 2025, 7:34 PM) (describing separate tags for counter and completeness designations); Email from O. Masters (Feb. 13, 2025, 4:10 PM) (agreeing). And while in some cases parties might agree to play deposition video at one time, no rule requires that outcome. *See Epic Games, Inc. v. Apple Inc.*, 2021 WL 2350812, at *2 (N.D. Cal. Apr. 21, 2021) ("The Court accepts the following stipulations of the parties: . . . ."); *Microspherix LLC v. Merck Sharp & Dohme Corp.*, 2023 WL

6613306, at *11 (D.N.J. Oct. 5, 2023) (listing deposition video process under "Trial Stipulations").

Federal Rule of Civil Procedure 32(a)(6) provides that a party may offer part of a deposition into evidence and an opposing party may require the "offeror to introduce other parts that in fairness should be considered with that part introduced." Fed. R. Civ. P. 32(a)(6). Rule 32(a)(6) separately provides that "any party may itself introduce any other parts." *Id.* Only completeness designations are required. This does not require that counter designations be presented in the same video or that counter designations be played on the same day. Under the FTC's proposal, each party would play the video it has designated, along with any completeness designations from the other side, during its case in chief. If an opposing party wishes to "introduce any other parts," call the witness live, or present no counter designations, then it may do so in their case in chief. The FTC respectfully requests the Court order that each party may play the video designations they intend to offer, along with any required completeness designations, separately in each party's case in chief.

### B.    Meta's Position

In the event that the Court permits testimony by video, the Court should hear the video testimony designated by both sides at the same time, in chronological order, for each designated witness. The Court should not require separate and likely duplicative viewing sessions. This will be more efficient and easier for the Court to follow, consistent with the "witness appears once" rule to which the parties agreed. *See* Jt. Status Rep. at 45 (Dec. 5, 2024), ECF No. 387. A consolidated approach will avoid chopping up testimony that should be considered together. The alternative proposed by the FTC – each side playing snippets of the same witness's video deposition testimony in its own case – will lead to needless disputes (about, for instance, whether a designation is a "completeness" designation that must be played in any initial viewing or

instead a "counter" designation) and will not assist the Court in assessing the value of the witness's testimony. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2829693, at *4 (S.D.N.Y. June 30, 2017) (recognizing that playing both parties' deposition designations at the same time in chronological order "promote[s] efficiency").

A consolidated approach in which the parties play the video deposition designations for a particular witness all at once, in the order the witness gave the testimony at the deposition, will streamline the trial, make testimony easier to understand, and prevent presentations of misleading soundbites. The FTC's contention that this issue presently affects only "three witnesses" is inconsistent with the FTC's recent disclosure of **32** deposition transcripts for witnesses it expects to present (whether at trial or after remains unclear, *see supra* at Part II.A). And whether three or more, the point is the same: the witness testimony will be easier to understand and will be presented more efficiently if all the testimony is played in one session. And the FTC is wrong that Meta's proposal would require it to "cede time" from its case-in-chief to Meta. The Court already ruled that each party's video deposition designations count against that party's chess clock. *See* Order at 3 (Feb. 10, 2025), ECF No. 398. No time will be ceded. In another case the FTC brought against Meta, the FTC agreed with Meta's proposed straightforward approach: "In the interest of time and considering the special nature of bench trials, . . . deposition designated testimony for both sides will be played in sequence when a witness is called for the first time to testify by deposition." Jt. List of Stipulations at 2, *FTC v. Meta Platforms, Inc.*, No. 5:22-cv-04325-EJD (N.D. Cal Dec. 1, 2022), ECF No. 385. That same common-sense procedure should apply here.

The FTC's proposal, on the other hand, would require the parties to joust, and the Court to decide, which "counters" are required at the time of initial screening, as opposed to separate

testimony to be played in the defense case.  Separate video sessions would also likely require

Meta to repeat information already introduced, resulting in needless duplication.  There is also a

risk that some of Meta's designations would not make sense without the context provided by the

FTC's initial designations.

Recognizing that the FTC's proposed approach would waste time and generate confusion,

courts regularly reject piecemeal presentations of deposition designations.  *See*, *e.g.*,

*Microspherix LLC v. Merck Sharp & Dohme Corp.*, 2023 WL 6613306, at *11 (D.N.J. Oct. 5,

2023) (ordering that "[a]ll portions of the testimony designated by any party will be played at the

same time, including the parties' affirmative designations and counter-designations.  All

designated testimony will be introduced in the sequence in which the testimony was originally

given."); *Ingenico Inc. v. Ioengine, LLC*, 2022 WL 22835287, at *2 (D. Del. July 5, 2022) ("The

designations, counter-designations, and counter-counter-designations will be . . . played by video

in chronological order at the same time."); *Epic Games, Inc. v. Apple Inc.*, 2021 WL 2350812, at

*2 (N.D. Cal. Apr. 21, 2021) ("To the extent that the parties play a witness's deposition

designations at trial, all portions of the testimony designated by any party will be played at the

same time . . . .  All designated testimony will be introduced in the sequence in which the

testimony was originally given.").

The FTC's proposed approach is particularly inappropriate in complex and lengthy trials

where, as here, breaking up the testimony may make it more difficult for the Court to remember

what the witness had said before.  *See* 8A Charles Alan Wright & Arthur R. Miller, Federal

Practice & Procedure § 2148 (3d ed. 1998 & June 2024 update) (under Rule 32(a)(6),

introducing both parties' designations at the same time avoids the "danger" that the testimony

"will be misinterpreted by selective use of portions . . . out of context or with qualifications . . .

32

omitted"); *see also supra* Part I.A.2 (describing examples of the FTC's cherry-picked deposition designations).  For all these reasons, Meta requests that if the Court allows video deposition testimony, the Court should hear all of the testimony designated by both parties at one time in chronological order.

### III.    Scope of Cross-Examinations

#### A.    FTC's Position

The FTC respectfully requests that both parties be granted leave to conduct cross-examinations and re-direct examinations that are not limited to the scope of direct examinations. This approach will ensure that Meta does not gain an asymmetrical advantage from its tactic of listing as a "will call" witness every Meta executive that the FTC informed Meta the FTC intends to call during its case in-chief.  Meta appears to believe that this tactic will ensure "that [Meta does not] have a scope objection from [the FTC]."  Hr'g Tr. 17:17-20, Dec. 9, 2024, ECF 388. The FTC does not object to this, because it is appropriate to allow Meta to conduct examinations outside the scope of the direct examination in order to accommodate fact witnesses' desire to avoid being called twice.  However, the FTC should be afforded symmetrical treatment, otherwise fact witnesses will run the risk of being re-called during the FTC's rebuttal case.  For this reason, the FTC respectfully asks the Court to order that neither party's cross-examinations or re-direct examinations will be limited to the scope of direct examinations.

The FTC should be entitled to conduct cross-examinations of witnesses called by Meta without scope objections, just as Meta seeks for its examinations of the FTC's witnesses.  Under a strict application of the Federal Rules of Evidence, Meta should not have an opportunity to inject its own direct examination of the FTC's case-in-chief witnesses until its own case.  *See* Fed. R. Evid. 611(b) (limiting cross-examinations to the subject matter of direct examinations). In this bench trial, however, the FTC has agreed that for the convenience of the witnesses,

witnesses should only be called once absent a finding of good cause by the Court.  Joint Status

Rep. 45, Dec. 5, 2024, ECF 387 ("The parties agree that fact witnesses should not be called more

than once, and that a fact witness thus should not be re-called absent a finding of good cause by

the Court.  The parties propose to meet and confer on how this affects scope limitations of

witness examinations and submit their positions to the Court at a later date.").  The FTC agrees

to this departure from normal court procedures for the convenience of Meta's witnesses and

third-party witnesses.  While convenient for the witnesses, this departure from trial evidentiary

rules provides Meta with an opportunity to interrupt the FTC's case-in-chief by examining

witnesses on points that are untethered to the scope of the FTC's direct examinations.  The FTC

merely requests reciprocal treatment.

    Meta asserts that the two parties are not similarly situated.  The FTC disagrees.  Just as

Meta will be prohibited from re-calling fact witnesses during its case, so too will the FTC be

prohibited from re-calling fact witnesses during its rebuttal, absent a showing of good cause.  It

would therefore be prejudicial to permit Meta to conduct examinations outside the scope of

direct while not providing the same treatment for the FTC.  Thus, the FTC respectfully requests a

Court order permitting *both* parties to go outside the scope of direct examinations on cross-

examination and re-direct examination, consistent with Meta's stated position that it intends to

do so.  This will produce symmetrical outcomes and avoid disputes regarding whether a

particular matter falls within the scope of a direct examination.

    Meta's claim that the FTC "implicitly concedes that its Court-ordered witness list is

incomplete," *infra* sec. III.B, is incorrect.  In its preliminary witness list, the FTC reserved its

right to "call any of these individuals or any other person for rebuttal testimony."  *See* Joint

Status Rep., Ex. B at 2, Feb. 7, 2025, ECF 396-3.  The parties can avoid forcing the FTC to re-

call on rebuttal witnesses who Meta has already examined for its case-in-chief by dismissing

with scope objections.  The FTC simply seeks to establish a symmetrical process that will avoid

inconveniencing witnesses, but Meta's position—that witnesses only be called once *and* that the

FTC be limited by Meta's scope of direct—would significantly prejudice the FTC's ability to

properly put on its rebuttal case.  Barring this commonsense accommodation, the FTC would be

forced to follow Meta's lead and list Meta's witnesses in the FTC's own "may call" list as

rebuttal witnesses.

### B.    Meta's Position

The Court should reject the FTC's request to be permitted to examine witnesses without

scope restrictions in the defense case.  The FTC can and should obtain testimony to support its

case during its case-in-chief from the witnesses it discloses on its witness list.  Once its case is

concluded, it should not be permitted to range beyond the scope of direct examination to seek

additional proof from defense witnesses not on its witness list.

To avoid fact witnesses having to travel thousands of miles multiple times to provide live

testimony in the courtroom, the parties agreed that "fact witnesses should not be called more than

once, and that a fact witness thus should not be re-called absent a finding of good cause by the

Court."  Jt. Status Rep. at 45 (Dec. 5, 2024), ECF No. 387.  The parties have agreed that when

the FTC calls a witness that Meta also intends to call in Meta's case (i.e., a fact witness on both

parties' witness lists), Meta may conduct its cross-examination (to respond to the testimony the

FTC elicited) *and* its direct examination (for Meta's case) of that witness when called in the

FTC's case-in-chief.  *See supra* at Part III.A (FTC:  "[I]t is appropriate to allow Meta to conduct

examinations outside the scope of the direct examination in order to accommodate fact

witnesses' desire to avoid being called twice.").  Meta explained this plan to the Court in

December:  Meta is "designat[ing]" these overlapping witnesses on Meta's witness list –

disclosing them as witnesses Meta will or may call – so the FTC is on notice of Meta's anticipated examinations and so "we don't have a scope objection" from the FTC during Meta's examination.  Status Conf. Tr. at 17:19-20 (Dec. 9, 2024), ECF No. 388.

The parties have *not* agreed that the FTC can supplement its proof by going beyond the scope of Meta's examinations on re-direct during the FTC's case-in-chief or by examining witnesses called in Meta's case beyond the scope of their direct testimony.  *Cf.*, *e.g.*, Trial Tr. at 4:2-8, *United States v. Dennis*, No. 1:21-cr-00679-JEB (D.D.C. Jan. 9, 2023), ECF No. 59 (counsel for the Government:  "because many of the potential witnesses on the defense witness list are going to be Government witnesses, the parties have agreed that the scope of ***our*** direct does not limit the scope of ***their*** cross.  Essentially, our witnesses can be theirs so they don't call the same person twice." (emphasis added)).  The FTC's proposal makes no sense, and it should be rejected for at least three reasons:

***First***, the FTC's proposal rests on a fundamentally incorrect assumption that the parties are similarly situated.  The FTC, as plaintiff, will have an opportunity to call every disclosed FTC witness during its case.  After the FTC rests its case-in-chief, Meta, as defendant, must have the opportunity to respond to that evidence.  Meta should not have to confront a moving target of additional FTC affirmative evidence coming in during Meta's case.  *See*, *e.g.*, *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) ("It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof.").  If the FTC is planning to examine a witness beyond the scope of Meta's examinations (i.e., the FTC wishes to conduct its own direct examination of the witness), the FTC should list that witness on its own list and affirmatively call the witness during its case-in-chief.

**Second**, the FTC's intent to seek a rebuttal case does not justify adopting the FTC's proposed scope rule. Citing nothing, the FTC asserts that scope restrictions for its examinations of witnesses Meta calls – scope restrictions the Federal Rules of Evidence require – should be eliminated because it intends to seek leave to present "rebuttal" evidence.

"Rebuttal" is not a valid reason for the FTC's proposed elimination of scope rules. The FTC is not automatically entitled to elicit "rebuttal" evidence after it rests, especially from witnesses that it did not designate pretrial. "Once a plaintiff has had a chance to prove a fact, he cannot reopen the matter" through rebuttal "simply by stating that he wishes to introduce more or better evidence." *Virapen v. Eli Lilly, S.A.*, 1995 WL 561518, at *2 (1st Cir. Sept. 22, 1995) (citation omitted); *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) ("Testimony offered only as additional support to an argument made in a case in chief . . . is improper on rebuttal."). As this Court has explained, rebuttal "is intended solely to contradict or rebut evidence on the same subject matter identified by another party," and "cannot be used to advance new arguments or new evidence." *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013) (Boasberg, J.) (collecting cases). A supposed need for a so-called "rebuttal" accordingly does not justify exceeding the scope of Meta's examinations.

Moreover, "[r]ebuttal evidence is admissible only where the need for it could not have been foreseen at the time the plaintiff presented its case-in-chief." *Daly v. Far E. Shipping Co. PLC*, 238 F. Supp. 2d 1231, 1238 (W.D. Wash. 2003), *aff'd sub nom. Daly v. Fesco Agencies NA Inc.*, 108 F. App'x 476 (9th Cir. 2004); *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir. 1999) ("When a party knows that a contested matter is in the case, yet fails to address it in a timely fashion, he scarcely can be heard to complain that the trial court refused to give him a second nibble at the cherry."). Here, the FTC has decreed it has "all pertinent information needed to plan" for Meta's

case, Jt. Status Rep. at 9 (Jan. 16, 2025), ECF No. 392, and that it presently anticipates it "may

call" at most three fact witnesses in any rebuttal (as opposed to its case-in-chief).  Jt. Status Rep.

at 3, 11 (Feb. 7, 2025), ECF No. 396 (FTC's statement that this was a "good faith" estimation).

So a rebuttal, if any, should be limited.  *See* Status Conf. Tr. at 34:16-17, *United States v.*

*Google*, No. 1:20-cv-3010-APM (D.D.C. July 19, 2023), ECF No. 617 ("I'm not contemplating a

very long rebuttal case.").  The FTC's desire for a "rebuttal" is no reason to accept the FTC's

request that the Court relieve it of scope limitations.

  ***Third***, the FTC's proposal is unworkable for the additional reason that the FTC seeks to

exceed the scope of Meta's examinations even for witnesses the FTC has not listed as "will call"

or "may call" witnesses.  The FTC must disclose all of its witnesses (with time estimates) by no

later than March 10, as the Court already ordered.  *See* Order at 2 (Dec. 20, 2024), ECF No. 390.

The FTC's position once again implicitly concedes that its Court-ordered preliminary witness list

is incomplete, and that it expects to call far more witnesses in its case-in-chief (which is the only

reason the FTC would need to examine beyond the scope in the defense case).  If accepted, the

FTC's proposal would allow it to avoid required disclosure of witnesses and time estimates for

those witnesses (due March 10).  Meta would be left to guess at the defense witnesses the FTC

would seek to use for its direct case, and the time such testimony would be expected to take.

  The FTC's proposal is also bound to result in wasted time at trial.  If the FTC omits from

its witness list those individuals for whom it intends to conduct direct examinations, it will be

impossible for the parties to plan when each witness will testify and for how long, thereby

increasing the risk that witnesses will not be available and at the courthouse ready to testify when

the time for their examinations comes.  *See* Pretrial Conf. Tr. at 36:17-20, *Lewis v. District of*

*Columbia*, No. 1:15-cv-00521-JEB (D.D.C. Feb. 22, 2018), ECF No. 108 ("Do not tell me at 3:00 one afternoon 'I've run out of witnesses.'").

*    *    *

The Court should hold to the Local Rule:  if the FTC chooses not to list a witness on its witness list (with time estimates), it will be limited to the scope of Meta's examinations in its cross-examination of that witness.  *See* Order at 1 (Feb. 10, 2025), ECF No. 398; Order at 2 (Dec. 20, 2024), ECF No. 390; Local Civil Rule 16.5(b)(5).

## IV.    Dossier Proposal

### A.    FTC's Position

The FTC believes that providing the Court with a jointly prepared "dossier" containing the roles and tenures of individuals relevant to this case would promote efficient testimony at trial and aid the Court in assessing the weight and relevance of the parties' evidence.  If the Court agrees, the FTC proposes that the Court order the parties to jointly prepare such a dossier for the Court's convenience by the first day of trial and to keep the dossier updated as appropriate throughout the trial proceedings.  The parties can meet and confer about an appropriate schedule and parameters for this joint dossier if the Court agrees.

The FTC submits that a dossier with relevant information regarding individuals' titles and tenures would promote efficient trial presentation and save trial time by allowing the parties to focus their examinations on matters of substantive importance and factual dispute.  The proposed dossier would offer helpful and necessary context to the Court for testimony and exhibits without forcing the parties to waste time or introduce superfluous exhibits simply to establish an employee's position.  Assembling this dossier for the Court would also reduce the need for certain written deposition designations that only serve to establish an employee's title or dates of tenure in the context of an exhibit, or similar foundational testimony.

Courts across the country often rely on illustrative aids as defined by FRE 107 (previously called demonstrative aids and allowed under FRE 611) created for this very purpose. The District Court of New Mexico put it well when confronted with an objection to a party's "demonstrative exhibit which contains a chart . . . listing the titles, employers/affiliations and office locations of certain individuals":

> There is no reason to exclude this exhibit, and every reason to allow it. For some time now in dealing with this case, the Court has been building its own "list" of parties and players (individuals as well as entities), including the meaning of numerous acronyms used throughout the pleadings. This case is complex enough, even with the use of such guides, and the Court wagers that counsel in this case relied on their own lists in order to keep track of the multitude of parties, players and issues in this complex case. The Court is in favor of taking any measures which will make this case less confusing to a jury, should the case proceed to trial, and therefore the objection is OVERRULED.

*United States v. Cmty. Health Sys., Inc.*, 2013 WL 10914292, at *5 (D.N.M. Nov. 27, 2013); *see also Sugartown United Pentecostal Church Inc. v. Church Mut. Ins. Co.*, 2024 WL 62947, at *5 (5th Cir. Jan. 5, 2024) ("Federal Rule of Evidence 611(a) gives courts discretion to allow parties to use summary charts and organizational charts." (cleaned up)); *United States v. Anthony*, 2022 WL 16947930, at *3 (3d Cir. Nov. 15, 2022) (same); *United States v. Johnson*, 54 F.3d 1150, 1159 (4th Cir. 1995) (looking "to the length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate" for the factfinder in assessing the usefulness of an organizational chart under FRE 611(a)).

As for what the dossier would include, the FTC provided the following proposed parameters to Meta:

- **Who would be included?** The parties would work together to compile a list of individuals relevant to the case. We can discuss whether it is most helpful and efficient to include all, some, or no live trial witnesses in the dossier.

- **How many individuals would be on the list?** About 100-150.

- **What is meant by "roles and responsibilities"?**  Job titles and tenure.

- **What time periods will the dossier cover?**  This will depend on the witness; the dossier could cover a witness's titles from 2008 to the current day or be limited to a specific, relevant time period.

- **Would the dossier cover third parties?**  Yes, if the parties agree based on prior testimony what an individual's job title was.

The FTC is amenable to discussing these parameters further and defers to the Court on what would be most useful, as the goal is ultimately to aid the Court and promote substantive and efficient trial presentations.  Additionally, the FTC offered to prepare the first draft of this dossier after conferring with Meta and hearing from the Court.

Meta's dramatic response to the FTC's straightforward proposal—that the Court consider whether such a dossier may aid it in navigating the complex trial ahead of us—is confusing. First, Meta appears to misunderstand several fundamental aspects of the FTC's proposal.  Meta states that most of the individuals on the proposed dossier "will not testify at trial," but assuming Meta's amended witness list is accurate, both parties combined "will" or "may" call nearly 100 witnesses.  Thus, if the Court would find it useful for the proposed dossier to include job titles and tenures for testifying witnesses, then testifying witnesses would easily account for the majority of the dossier.  Additionally, as the FTC represented to Meta multiple times during and following the parties' meet-and-confer on February 13, 2025, the FTC's proposed parameters are just that—proposals—and the FTC is amenable to adjusting said proposals with Meta depending on what the Court may find most useful.  Similarly, the FTC has repeatedly suggested that this dossier would only cover the relevant titles of relevant individuals during relevant time spans. Meta's representation that the FTC seeks "every position within the span of ***seventeen years***" for

"**100-150**" individuals, *infra* sec. IV.B (emphasis in original), is simply untrue.  And as to Meta's claim of asymmetrical burden, the FTC has not insisted that the dossier be limited to Meta employees only and, further, the FTC has already offered to prepare a first draft (with citations) of this dossier to ameliorate Meta's concern.

Second, Meta appears to have overlooked the FTC's several explanations as to why this dossier could be a helpful resource for the Court and an aid to trial efficiency.  Trial will span at least eight weeks and cover expansive topics.  It is a common courtesy in such cases for parties to provide courts with summaries of a witness's relevant titles and tenures ahead of their trial examinations.  In the FTC's view, a jointly prepared dossier containing such information would offer an obvious convenience to the Court, as both memory aid and reference material.  Further, such a dossier could obviate the need for the parties to elicit testimony regarding the positions of relevant non-witnesses involved with exhibits presented at trial from witnesses who may not remember such details.  This resource would also allow the parties to narrow their written deposition designations by removing those designations that similarly address non-witnesses' titles and tenures when relevant to an exhibit.

Finally, the FTC objects to Meta's repeated insistences in this and other submissions that the FTC "is attempting to reopen discovery," "run a 'shadow trial,'" or deliver a "document dump" in contravention of the Rules of Evidence and stated preferences of the Court.  *See supra* sec. I.A; *infra* sec. IV.B; Joint Status Rep. 16, Feb. 7, 2025, ECF 396; *id.* at 21; *id.* at 31-32; Joint Status Rep. 29, Dec. 17, 2024, ECF 389; Hr'g Tr. at 20:21-24, Dec. 9, 2024, ECF 388; *id.* at 21:8-10; Joint Status Rep. 10, Dec. 5, 2024, ECF 387; *id.* at 43.  These baseless exhortations are at best tiresome hyperbole, at worst inappropriate misrepresentations of the FTC's positions and conduct.  The Court should disregard them as such.

### B.    Meta's Position

The FTC's unorthodox proposal that the parties be required to prepare evidence about 100-150 Meta employees and former employees in advance of trial should not be required. There is no need for an extensive "employee dossier" relating to **100-150** "individuals," most of whom will not testify at trial.  In addition, it will surely lead to needless disputes.  The FTC has failed to articulate what useful purpose an "employee dossier" will serve, or any precedent requiring it, and ignores the burden the proposal would unfairly place on Meta.

The witnesses who testify will undoubtedly describe their work experience, and in a far more illuminating manner than the FTC's suggested pretrial "dossier."  As to the unidentified other persons that the FTC wants to include and demands that Meta negotiate, the Court will never hear from them because they are not trial witnesses.  *See supra* at Part IV.A (FTC proposing that the dossier potentially include no "live trial witnesses").  Yet for each such person, the FTC wants their "job title," not just at present, but for every position within the span of **seventeen years** (2008 – present).  Deciding which individuals to include, and researching all of their roles for that extended period, before and during trial (as the FTC proposes), would be a significant project diverting Meta from its preparations for trial and throughout trial.

And to no useful end.  The FTC has failed to articulate how this "dossier" will yield relevant information for the Court that cannot be more efficiently provided at trial.  The Court already explained that it did not require proposed findings of fact before trial.  *See* Status Conf. Tr. at 24:19-20 (Dec. 9, 2024), ECF No. 388 (the Court's request for "pretrial briefs" but "not findings of fact").  If the FTC believes that a person's job titles and history are facts relevant to the case, it can elicit that information simply by asking the witness to state his or her job titles and tenure.  Those questions will take little time.  And they will present the Court with the relevant information when the information matters (if at all) – during the witness's testimony.

The FTC's proposal, in addition, will disproportionately burden Meta by requiring it to investigate, for as many as 150 employees or former employees, likely irrelevant employment details over more than 15 years. The FTC's offer to write the "first draft" of the "dossier" does not reduce that burden. The FTC's "first draft," in effect, is an attempt to reopen discovery and force Meta to answer an interrogatory about the job histories of up to 150 employees years after fact discovery closed.

During the parties' discussions, the FTC indicated it wanted this dossier so that it could cite it as evidence. The FTC cites no authority for foisting the burden of preparing evidence the FTC wishes to use onto Meta before and during trial. The FTC's single authority for its "dossier" proposal (*Community Health Systems, Inc.*) involved one party unilaterally seeking to use a demonstrative (not evidence), *see* Fed. R. Evid. 107, of individuals' employment information for summary judgment briefing. That provides no support for the FTC's claim that Meta should be forced to prepare evidence of likely irrelevant job histories (for non-witnesses and witnesses alike) that the FTC seeks to admit at trial in its own case. And the FTC's other authorities are far afield – they concern situations where a single party sought admission of demonstratives about insurance policies, cell phone communications, and drug transactions in jury trials. The FTC's request appears to be unprecedented.

Moreover, the request appears intended to assist the FTC in its gambit to run a "shadow trial" outside the actual trial – using unsponsored documents from uncalled witnesses to support lawyer arguments about the facts. Indeed, the FTC explains it wishes to force Meta to "jointly" prepare a "dossier" of non-witnesses, so the FTC can provide "necessary context" about the job histories of individuals on an "exhibit" it wishes to admit. That, of course, would only matter for exhibits the FTC will attempt to admit without any testimony from a live witness in a position to

explain the document (and the roles of the individuals on the document) to the Court.  The demand for information about witnesses the FTC will not call can only waste time or cause confusion when the FTC tries to (mis)use that information in arguing from documents not sponsored or explained by any witness at trial.  The FTC should instead be required to prove its case in accordance with the Federal Rules of Evidence.

## V.    Trial Exhibit Disclosures

### A.    FTC's Position

The FTC largely agrees with Meta's proposal regarding trial witness and exhibit disclosures, with one caveat.

The Court should not impose an exhibit disclosure requirement at this time.  The FTC agrees that the parties should negotiate and agree to an exhibit disclosure protocol.  But Meta's proposal is inadequate in several respects, and the parties should be given time to resolve these issues through further negotiation.  Initially, to the extent direct examination exhibits are to be disclosed in advance, the parties should make simultaneous disclosures where a non-adverse witness is being called by both parties.  In other words, if both the FTC and Meta plan to call a given nonparty as a witness, the parties should make direct exam exhibit disclosures for that nonparty's examination at the same time.  Further, Meta's proposed exchange of anticipated exhibits is too far in advance of when the relevant witness is scheduled to testify.  Parties typically exchange exhibits 48-72 hours in advance of their use with a given witness.  A similar timeline would be appropriate here.  Adopting Meta's proposal, which in some cases could require disclosure a full week before exhibits are likely to be used, would result in overbroad disclosures of potential exhibits that could be culled with adequate time.

Regardless, it is premature to impose an exhibit disclosure protocol.  The parties only began attempting to resolve exhibit objections this week and have not yet begun to resolve

confidentiality assertions. The extent to which the parties can productively resolve such disputes before trial will necessarily inform the appropriate time for advanced disclosure of exhibits; i.e., if the parties can resolve most disputes before trial, then a shorter period of time for advanced exhibit disclosures will be feasible. In any event, neither party will be prejudiced by waiting to resolve this issue closer to the start of trial—even under Meta's proposal, the first exhibit disclosure is nearly two months away.

Accordingly, the FTC proposes that the parties continue to negotiate a procedure for exhibit disclosures. If the Court is inclined to order an exhibit disclosure protocol at this time, the FTC proposes that the parties disclose all exhibits likely to be used during a direct examination (excluding direct examinations of an adverse witness) at 8:00 pm, four calendar days before the witness is likely to be called. Exhibits likely to be used during a direct examination of an adverse witness or during a cross-examination shall be disclosed at 6:00 pm the night before the witness is likely to be called. Exhibits used only to impeach or to refresh recollection need not be disclosed in advance. To the extent both parties plan to call the same non-adverse witness on direct, the exhibit disclosure shall be simultaneous.

### B.    Meta's Position

The parties have agreed that during trial, on a weekly basis, the presenting party will confirm the witnesses that the presenting party expects to call, the order it expects to call them in, the day that it expects to call them, and the estimated time for its direct examinations. The purpose of these agreed-upon disclosures between the parties is simple: so the parties can plan efficient trial presentations and help ensure witnesses are available to testify when the presenting party calls them. For similar reasons, Meta also proposed that, in the weekly disclosures, the

presenting party should also include the exhibits it anticipates using for each witness on its weekly list (i.e., the presenting party's direct examination exhibits for the week).

The FTC agrees that disclosing in advance direct examination exhibits that a party anticipates using will be productive and help make trial more efficient. But the FTC claims it would be premature to decide such deadlines because the parties are negotiating confidentiality and planning for exhibit objection exchanges. The FTC has failed to explain why the parties' parallel discussions about exhibit confidentiality and objections prevent it from reaching any agreement with Meta on the timing of exhibit disclosures. The FTC had previously proposed – before the parties began negotiating *any* trial procedures –that a party should disclose anticipated direct examination exhibits "no later than 12:00 p.m. Eastern time on the day prior to the day the exhibit is used during an examination." Jt. Status Rep., Ex. C. at 5 (Ltr. from D. Matheson (Nov. 15, 2024)) (Dec. 5, 2024), ECF No. 387-13. Meta submits that disclosing exhibits one day before their intended use is simply not enough time for the parties to plan efficiently. Meta proposes that the presenting party disclose the exhibits it intends to use during direct examinations the following week, even if there remain confidentiality and admissibility issues to resolve in the interim. Moreover, this deadline will give the parties an obvious incentive to meet and confer about and resolve those issues in a timely and efficient manner to ensure no party's chess clock time is wasted on these matters. These disclosures will similarly help ensure that the parties can notify the Court, after meeting and conferring, about any potentially "lengthy objections" that "should take place before or after [a] witness testifies." Order ¶ 3 (Feb. 10, 2025), ECF No. 398.

In addition, regardless of when the Court sets the deadline for exhibit disclosures, the Court should reject the FTC's unfair proposal that Meta be required to disclose exhibits before

the FTC for witnesses both parties plan to call.  For any witnesses on both parties' witness lists –

regardless of whether the witness is "adverse" – exhibit disclosures for direct examinations

should be simultaneous.  Meta agrees that exhibits to be used during a cross-examination (i.e.,

cross-examination of a witness *not* on the cross-examining party's witness list) may be disclosed

later than exhibits to be used with a witness the party calls.

## VI.    Use of Electronic Devices in the Courtroom

The parties jointly request, for pretrial and trial proceedings, that the Court allow both

parties' counsel (both outside and in-house for Meta) and support staff to use electronic devices

in the courtroom "to transmit and receive data communications, such as email or text messages,

and to access the Internet." Electronic Device Policy, D.D.C.,

https://www.dcd.uscourts.gov/electronic-device-policy.  Meta further requests that Meta

employees assisting with the litigation be afforded the same allowance, which the FTC does not

oppose.


Dated: February 17, 2025                   Respectfully submitted,


                                           */s/ Mark C. Hansen*
                                           Mark C. Hansen (D.C. Bar No. 425930)
                                           Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                           Lillian V. Smith (D.C. Bar No. 252516)
                                           Ana N. Paul (D.C. Bar No. 1531904)
                                           Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
                                           KELLOGG, HANSEN, TODD,
                                             FIGEL & FREDERICK, P.L.L.C.
                                           1615 M Street, N.W., Suite 400
                                           Washington, D.C. 20036
                                           Tel: (202) 326-7900
                                           mhansen@kellogghansen.com

                                           *Counsel for Defendant Meta Platforms, Inc.*

*/s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Nathan Brenner (IL Bar 6317564)
Karen Goff (N.Y. Bar 4630901)
Owen Masters (D.C. Bar 242139)
Ben Rashkovich (D.C. Bar 5972724)
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, D.C. 20024
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*