**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br>Plaintiff,<br>v.<br>**META PLATFORMS, INC.**<br>Defendant. | Civil Action No. 1:20-cv-03590 (JEB)<br>**PUBLIC VERSION** |

**Plaintiff Federal Trade Commission's Motion *in Limine***
**to Exclude Testimony of Jason Nieh Regarding Alleged Cost Savings**

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and for the reasons set forth in the accompanying memorandum of law and supporting documents, Plaintiff Federal Trade Commission ("FTC") hereby moves this Court for an order *in limine* excluding the opinions of Defendant Meta Platforms, Inc.'s ("Meta's") expert Jason Nieh regarding purported infrastructure cost savings arising from Meta's acquisitions of Instagram and WhatsApp. Specifically, the Court should exclude Nieh's cost-savings opinions under Rule 702 because they are not based on sufficient facts or data, they are not the product of reliable principles or methods, and Nieh is not qualified to offer them.

Pursuant to Local Civil Rule 7(m), counsel for the FTC and Meta conferred regarding this Motion *in Limine*.

Dated: February 21, 2025

Respectfully submitted,

/s/ Daniel Matheson
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
Maria Dimoscato (D.C. Bar 489743)
Nathan Brenner
Barrett Anderson
Melissa Ihnat (D.C. Bar 498266)

Federal Trade Commission
Bureau of Competition
400 7th Street, SW
Washington, DC 20024
Tel.: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FEDERAL TRADE COMMISSION,**

Plaintiff,

v.

**META PLATFORMS, INC.**

Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

**PUBLIC VERSION**

**Plaintiff Federal Trade Commission's Memorandum of Law in Support of Plaintiff's Motion *in Limine* to Exclude Testimony of Jason Nieh Regarding Alleged Cost Savings**

**TABLE OF CONTENTS**

LEGAL STANDARD .......... 2

ARGUMENT .......... 4

I. Nieh's Cost-Savings Opinions Are Not Based on Sufficient Facts or Data .......... 4

II. Nieh's Cost-Savings Opinions Are Not the Product of Accepted or Reliable Methods .......... 8

III. Nieh is Not Qualified to Render Opinions About Cost Savings .......... 11

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

### Cases


*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) .................................... 6

*Arsanjani v. United States*, 2023 WL 3231101 (D.D.C. May 3, 2023) .......................................... 8

*Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, 2023 WL 4744155 (D.D.C. July 25, 2023) .... 2, 8, 10

*Bunting v. D.C. CVS Pharmacy, LLC*, 2024 WL 474159 (D.D.C. Feb. 7, 2024) ..................... 3, 11

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ......................................... 1, 2, 3, 10

*Fed. Trade Comm'n v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015) ........................................ 8

*Garcia v. GGI Glass Distrib. Corp.*, 2024 WL 4253161 (D.D.C. Sept. 19, 2024) .................... 3, 6

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .................................................................... 3

*Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958 (D.C. Cir. 2016) ......................... 7

*Henkel v. Varner*, 138 F.2d 934 (D.C. Cir. 1943) ................................................................ 7

*Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036 (5th Cir. 2023) .................................... 6, 10

*Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, 2024 WL 4534156 (D.D.C. July 16, 2024) ........................................................... 3, 10, 11

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................................................ 2

*Parsi v. Daioleslam*, 852 F. Supp. 2d 82 (D.D.C. 2012) ......................................................... 3, 10

*United States v. Ausby*, 436 F. Supp. 3d 134 (D.D.C. 2019) ....................................................... 11

*United States v. Bertelsmann*, No. 21-03886 (D.D.C. Aug. 17, 2022) ........................................... 7

*United States v. DynCorp Int'l LLC*, 715 F. Supp. 3d 45 (D.D.C. 2024) ................................ 7, 12

*United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36 (D.D.C. 2011) .......................................... 6

**Other Authorities**

Federal Rule of Evidence 702 .......... *passim*

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (Lexis 2022 ed.) .......... 5

Meta seeks to defend its illegal monopoly of personal social networking services ("PSNS") by asserting certain procompetitive justifications that it claims arise from its acquisitions of Instagram and WhatsApp. One of those purported justifications—that moving Instagram and WhatsApp to Meta's infrastructure allegedly provided them cost benefits, *i.e.*, saved costs—is based on unsupported and unreliable opinions offered by Meta's unqualified expert witness, Professor Jason Nieh ("Nieh"). The Court should exercise its gatekeeping function under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and not permit Nieh to offer these improper opinions at trial.

[redacted] and [redacted] *see also, e.g.*, *id.* ¶¶ 13, 15 & §§ III.C.2, IV.D, V.B.2(c). But these threadbare [redacted] do not satisfy Rule 702's requirements for three reasons.

*First*, they are not based on sufficient facts or data. [redacted] He thus lacked the information he would have needed to conclude that Meta's costs are comparatively superior to any alternatives. *Second*, Nieh's cost-savings opinions are not the product of an accepted or

reproducible methodology for analyzing infrastructure costs. He did not perform any of the existing analytical tools commonly used by online services to gauge their costs, such as a total-cost-of-ownership ("TCO") evaluation, a rent-versus-buy analysis, or an allocation of costs per daily active user ("DAU"). Instead, he merely quoted a handful of internal Meta documents that recount alleged savings without verifying their sources or replicating their methods, which is improper because it is "essentially no methodology at all." *Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, 2023 WL 4744155, at *2 (D.D.C. July 25, 2023) (citation omitted). *Third*, Nieh is unqualified to opine on purported infrastructure cost savings because he does not possess specialized "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Nieh's cost-savings opinions are therefore inadmissible under Rule 702 and the FTC files this limited, narrow motion *in limine* to exclude them from trial. The Court should grant the motion and thereby conserve its limited time and attention by removing one discrete issue from a trial teeming with other factual and legal disputes.

**LEGAL STANDARD**

In *Daubert*, the Supreme Court held that Rule 702 assigns trial courts "a gatekeeping role" in "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (extending trial court's "gatekeeper" role to all types of expert testimony). Rule 702 requires that to offer an expert opinion a witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and the party proffering the opinion must "demonstrate[] to the court that it is more likely than not that:

a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b) the testimony is based on sufficient facts or data;

c) the testimony is the product of reliable principles and methods; and

d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

To determine the admissibility of an expert opinion, courts must assess whether it is reliable. The court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Courts consider various factors when examining reliability, including "(1) whether the expert's theory or technique can be and has been tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the theory or technique's known or potential rate of error; and (4) whether the theory or technique has been generally accepted within the relevant scientific community." *Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, 2024 WL 4534156, at *2 (D.D.C. July 16, 2024). "Even reliable expert testimony, though, must be 'helpful to the trier of facts in th[e] case.'" *Garcia v. GGI Glass Distrib. Corp.*, 2024 WL 4253161, at *2 (D.D.C. Sept. 19, 2024) (quoting *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 88 (D.D.C. 2012)). Applying those reliability standards, courts have declined to admit expert opinion if it "is connected to existing data only by the *ipse dixit* of the expert" or if "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Courts determining whether a witness is properly qualified to opine on a certain topic look to "whether [the witness's] qualifications provide a foundation for a witness to answer a *specific question*." *Bunting v. D.C. CVS Pharmacy, LLC*, 2024 WL 474159, at *2 (D.D.C. Feb. 7, 2024) (emphasis in original). To be qualified, "the expert's background must match the subject matter of the expert's testimony." *Id.* (citation omitted); *see also Inova Health Care Servs.*, 2024 WL 4534156, at *4 (prohibiting expert from opining on topic because proponent "ha[d] not provided any credentials to qualify [the witness] as an expert" in that topic).



**ARGUMENT**

Nieh's cost-savings opinions—including that Meta's infrastructure provided to Instagram and WhatsApp and as —fail under Rule 702 because Nieh did not know or attempt to quantify Meta's actual infrastructure costs arising from its acquisitions of Instagram or WhatsApp and he did not perform any of the accepted or reliable quantitative cost-savings analyses that were available to him. Further, his background in electrical engineering—not accounting, finance, economics, or any other field involving quantitative cost analysis—does not qualify him to offer opinions on Meta's purported cost savings here.

**I. Nieh's Cost-Savings Opinions Are Not Based on Sufficient Facts or Data**

Nieh's cost-savings opinions should be excluded under Rule 702(b) because he lacked the necessary information to render them; namely,

An opinion that Meta's infrastructure costs are superior to those that Instagram and WhatsApp would have incurred absent their acquisitions would necessarily require some attempt to quantify Meta's actual historical and ongoing costs to operate Instagram and WhatsApp. Nieh does not dispute that obvious point; his report states that, But Nieh never determined and therefore his cost-savings opinions— —are unreliable and fatally flawed.

Some background is in order. Meta has asserted cost savings as a "procompetitive

benefit" in this case and, as this Court recognized, "cost savings and efficiencies are frequently raised in defense of merger or monopolization claims, and the standards applied to them are exacting." Mem. Op. on FTC's Mot. to Compel, ECF No. 281 at 6 ("MTC Op.") (citing Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 701h (Lexis 2022 ed.)). When the FTC propounded discovery for information undergirding Meta's cost-savings defense, Meta provided only vague responses that failed to identify what (if any) cost savings arose from the acquisitions. And when the FTC moved to compel the requested details, the Court observed that Meta's responses regarding "assessments of 'cost savings' of particular procompetitive benefits" were "surprisingly barren." *Id.*

A month later, Meta revealed just *how* barren its information on its purported cost savings was when it served supplemental discovery responses that conceded:



In short, although Meta bears the burden of proving its cost-savings as a procompetitive justification, MTC Op. at 2, Meta's



[redacted]

Meta also asserted that, [redacted]. But Meta's only proffered expert on that issue—[redacted] As such, [redacted] of Meta's infrastructure costs to any alternatives, and his related cost-savings opinions—[redacted]—must be excluded for lack of sufficient facts or data. *See Garcia*, 2024 WL 4253161, at *5 (excluding expert testimony "that [was] not 'supported by good grounds for each step in the analysis'") (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002); *see also United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 89 (D.D.C. 2011) (ruling in Clayton Act case "it is incumbent upon the merging firms to substantiate efficiency claims") (internal quotation marks omitted); *Illumina, Inc. v. Fed. Trade Comm'n*, 88 F.4th 1036, 1060 (5th Cir. 2023) (finding merging parties' claimed efficiency of "significant supply chain and operational efficiencies" was unverifiable because they failed to provide "an underlying model, including the assumptions upon which it was based").

Rather than forming his opinion using Meta's actual infrastructure costs, Nieh's report instead regurgitated Meta's internal information [redacted]

[redacted] For Instagram, [redacted] See id. at 43-54. Nieh also did nothing to verify the information in these [redacted] sources, and the Court should not condone his attempt to simply restate Meta's internal information under the guise of expert opinion. *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 973 (D.C. Cir. 2016) (ruling that when factfinder is "just as competent to consider and weigh the evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom, it is improper to use opinion evidence for the purpose") (quoting *Henkel v. Varner*, 138 F.2d 934, 935 (D.C. Cir. 1943); *United States v. DynCorp Int'l LLC*, 715 F. Supp. 3d 45, 64 (D.D.C. 2024) (excluding expert opinion premised on documents when factfinder could "read the emails and presentation and can determine for itself" the disputed issue); Ex. 4 (Transcript from *United States v. Bertelsmann*, No. 21-03886, (D.D.C. Aug. 17, 2022)) at 2771:9-12 (ECF p. 25) ("It is well established that expert testimony may be excluded under Rule 702 where the expert relies uncritically on information provided to them by the party or parties for whom they are working.").

The story is much the same for Meta's cost-savings claim for WhatsApp. [redacted]

[redacted] The Court does not need Nieh to recite Meta's documents and should reject his effort to launder this unverified information into the case via his "expert" opinion. *See Fed. Trade Comm'n v. Sysco Corp.*, 113 F. Supp. 3d 1, 84 (D.D.C. 2015) (criticizing efficiencies expert for "rely[ing] exclusively on documents created by either McKinsey or Defendants" and "perform[ing] no independent analysis to verify these numbers").

Nieh's cost-savings opinions related to Instagram and WhatsApp should therefore be excluded because they are not based on sufficient facts or data.

**II. Nieh's Cost-Savings Opinions Are Not the Product of Accepted or Reliable Methods**

The Court should exclude Nieh's cost-savings opinions for another reason: they are unreliable because they are not based on "reliable principles and methods" under Rule 702(c). *Arsanjani v. United States*, 2023 WL 3231101, at *5 (D.D.C. May 3, 2023) (excluding opinions based on expert's "subjective beliefs"); *Berkley*, 2023 WL 4744155, at *2 (excluding opinion as lacking methodology because it was "an unexplained application of [witness's] expertise"). In fact, rather than employ analytical methods and tools commonly employed by online services to assess costs—[redacted]—Nieh's report contains *no identifiable methodology at all.*

Start with what Nieh did not do. One available method that Nieh did not employ is the TCO analysis. Online services commonly use TCO evaluations to measure costs, [redacted] *See, e.g.*, Ex. 6 ([redacted] Ex. 7 ([redacted]). And public cloud services like AWS offer TCO tools that, for example, allow online services "to generate a fact-based apples-to-apples TCO comparison for on-premises and AWS infrastructure." Ex. 8 at 1 (announcing launch of AWS's TCO tool); *see also* Ex. 9 (TCO calculator provided by Azure,

another public cloud service, to estimate cost savings possible by migrating workloads to Azure).

Among other things, TCO evaluations assess the capital costs (upfront) and operational costs (recurring) that an online service would need to spend to achieve a certain level of performance. *See* Ex. 10 at 476-77 (ECF pp. 12-13) (describing TCO evaluations).

.

Another existing methodology for assessing infrastructure costs is a rent-versus-buy analysis, which compares the value of renting infrastructure services to building and operating one's own infrastructure. Like TCO evaluations, rent-versus-buy analyses are also used by online services.

Yet a third analytical tool available for evaluating infrastructure costs is to allocate an online service's infrastructure costs per number of daily active users ("DAUs").



[redacted]

Rather than apply these common and readily available analytical methods, [redacted] But while the title of that textbook suggests it is pertinent, [redacted]—it is not about analyzing infrastructure costs for online services, but instead "for computer architects to make intelligent decisions about *whether or not a new feature should be included in designs* where cost is an issue." Ex. 10 at 27 (ECF p. 5) (emphasis added). Another section of the textbook does address TCO analyses, *see id.* at 476, [redacted] In any event, [redacted], and courts reject that "'reading'" a source "standing alone, is an acceptable methodology." *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 89 (D.D.C. 2012); *see also Berkley*, 2023 WL 4744155, at *2 (D.D.C. July 25, 2023) (excluding opinion based on reading irrelevant reports and "unexplained application of . . . expertise").

At base, Nieh's methodology (or lack thereof) underlying his cost-savings opinions does not comport with the *Daubert* factors—it cannot be tested, was not subject to peer review, has no known or potential error rate, and has not been generally accepted within the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *see also Inova*, 2024 WL 4534156, at *2. Nieh's resulting "opinions" related to Meta's purported cost savings are therefore unhelpful and inadmissible under Rule 702. *See, e.g.*, *Illumina*, 88 F.4th at 1060 (rejecting asserted efficiency

where proponent failed to provide "an underlying model").

## III. Nieh is Not Qualified to Render Opinions About Cost Savings

Nieh lacks the "knowledge, skill, experience, training, or education" under Rule 702 to opine on whether Instagram and WhatsApp saved costs they would otherwise have borne by moving to Meta's infrastructure. [REDACTED]. That [REDACTED] hardly qualifies Nieh to offer conclusions concerning Meta's purported cost savings.

Nieh's background does not "match the subject matter of [his] testimony." *Bunting*, 2024 WL 474159, at *2. Nor has he "provided any credentials to qualify [himself] as an expert" on infrastructure cost savings, as would be required to opine on any costs allegedly arising from Meta's acquisitions of Instagram and WhatsApp. *Inova*, 2024 WL 4534156, at *4; *see also United States v. Ausby*, 436 F. Supp. 3d 134, 162-63 (D.D.C. 2019) (finding expert unqualified when "record does not show [he] had experience and training specifically relevant to the kind of fingerprint analysis his testimony subsequently concerned"). Nieh is no better positioned than the Court to read the Meta-provided documents he cited. The Court should therefore find him

unqualified, exclude his unhelpful cost-savings opinions from trial, and—assuming the Meta-provided documents are otherwise admissible—"determine for itself" the disputed issue. *DynCorp Int'l*, 715 F. Supp. 3d 45, 64.

## CONCLUSION

The Court should exclude Nieh's cost-savings opinions under Rule 702 for all of the foregoing reasons—his lack of qualifications, lack of sufficient facts or data, and lack of accepted or reliable methodology.

Dated: February 21, 2025

Respectfully submitted,

*/s/ Daniel Matheson*
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
Maria Dimoscato (D.C. Bar 489743)
Nathan Brenner
Barrett Anderson
Melissa Ihnat (D.C. Bar 498266)

Federal Trade Commission
Bureau of Competition
400 7th Street, SW
Washington, DC 20024
Tel.: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21st day of February 2025, I served the sealed document on the following counsel via electronic mail:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M. Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davisolk.com

Respectfully submitted,

*/s/ Daniel Matheson*
Daniel Matheson, Esq. (D.C. Bar #502490)
Federal Trade Commission
Bureau of Competition
400 7th Street, SW
Washington, DC 20024
Tel.: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*