IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

**META PLATFORMS, INC.'S POSITION STATEMENT REGARDING
CONFIDENTIALITY PROCEDURES**

**I.      The Court Should Enter Meta's Proposed Confidentiality Procedures**

Meta has proposed a confidentiality order (attached as Exhibit A) that will promote efficiency and ensure public access to trial materials, while also guarding against the disclosure of Meta and nonparty confidential information.  As explained below, Meta and the FTC differ on a fundamental point:  Meta believes the Court should resolve confidentiality disputes relating to a discrete set of representative exhibits (30-50) in March and allow the parties to apply the Court's reasoning to the remaining 1,000 or more exhibits – raising discrete disputes to the Court only when necessary, and focusing on evidence that will actually be used at trial.  By contrast, the FTC appears to insist that the Court review and rule on every confidentiality issue raised in *every* Meta produced document appearing on either side's exhibit list (currently more than 1,000 documents, comprising more than 20,000 pages) *before* trial, and including documents the parties may seek to exclude from evidence and exhibits the parties may never seek to admit.  Meta's proposal goes out of its way to facilitate transparent and early resolution of issues to minimize disputes at trial, including agreeing to provide its position before trial on the

1

confidentiality of every line of testimony in depositions and investigative hearings for all Meta will-call witnesses (currently 24, totaling more than 12,800 pages) on the off-chance that the FTC might want to ask questions on those topics or use portions of those transcripts for impeachment. The Court should reject the FTC's convoluted and confusing set of deadlines that will see Meta and the Court (but not the FTC) mired in confidentiality filings for the next six weeks concerning issues that should not require Court intervention and documents that may not even be admitted into evidence. Trial will largely involve Meta's documents; Meta has to review them all and is in the best position to assess what is practical to review and the timeline for doing so; Meta wants (and expects) to reach resolution on as much as possible before trial; Meta has developed a careful plan that will promote efficiency for the parties and the Court; and the FTC does not and cannot identify any prejudice if the Court were to adopt Meta's proposal and enter the proposed order.

Meta urges the Court to resist adopting some "middle ground" between the two proposals. Meta has structured its proposal in a way that is designed to achieve efficiency, and deviations to interim dates in that proposal are likely to impose an outsized burden on Meta that would be counterproductive to achieving resolution of the confidentiality issues.

## A. Types of Confidentiality Treatment at Trial

Meta proposes that the Court adopt two levels of confidentiality treatment to govern how a particular confidential document (and testimony about the document) may be used in court at trial: Complete Nondisclosure and Partial Nondisclosure. Judge Bates provided similar levels of confidentiality in *Aetna*. *See* Order on the Use of Confidential Information at Trial ¶¶ 4-5, *United States v. Aetna, Inc.*, No. 1:16-cv-01494-JDB (D.D.C. Nov. 4, 2016), ECF No. 175. Under this approach, "Complete Nondisclosure" would mean that the entire document would be

sealed from the public record and the courtroom would be closed when the document is discussed. "Partial Nondisclosure" would mean that the witness, attorneys for the parties, and the Court may see an unredacted version of the document, but only the redacted version would be shown on public-facing screens, and the questioner and witness would make every effort not to reveal the confidential portions of the document during questioning and testimony.

These levels of confidentiality will allow the parties flexibility to use confidential documents while reducing the need to close the courtroom. And they allow the parties to accommodate the fact that, while some documents may be susceptible to targeted redactions, others may not be. *Cf. In re Press Application for Access to Jud. Recs.*, 704 F. Supp. 3d 161, 170-71 (D.D.C. 2023) (Boasberg, C.J.) (agreeing, in pretrial context, that for certain documents, a "piecemeal treatment of their contents" would "serve little purpose," and "entail hard work for little reward," when "the required redactions would leave them difficult to read and of little value to the public"). Indeed, Meta and the FTC used a similarly tiered approach with success during another recent bench trial. *See FTC v. Meta Platforms, Inc.*, No. 5:22-cv-04325-EJD (N.D. Cal.) ("*Within*"). There, both sides agreed to several levels of at-trial confidential treatment: one requiring the courtroom to close entirely (akin to Meta's proposed "Complete Nondisclosure" level); another for documents that would be redacted on public-facing screens while unredacted for the judge, party attorneys, and witness (akin to Meta's Partial Nondisclosure level); and a third for documents redacted for the witness, judge, and public gallery (a level that Meta's proposal omits here, to ensure that the Court and the witness are able to see unredacted copies of all documents).

Despite agreeing to a very similar approach in *Within*, the FTC informed Meta that it "will not agree to two separate confidentiality tiers" because "there is one standard" for

evaluating confidentiality substantively. Email from J. Lorber to A. Polavarapu (Feb. 22, 2025). That speaks past (or misunderstands) Meta's proposal. All agree that there is one standard governing the substantive confidentiality analysis. Meta's proposal provides a procedural mechanism to allow the parties to indicate when information will require closing the courtroom entirely or, instead, keeping the courtroom open despite confidential information that exists within a document. The FTC has not addressed the procedures governing designations of confidential documents (and testimony about the documents) at trial. The Court should enter Meta's proposal – a standard feature of confidentiality orders similar to that used by Judge Bates in *Aetna*.

### B.  Party Exhibits And Testimony

#### 1. Party Exhibits: The Court Should Adopt Meta's Proposal For Representative Briefing

**a.** Meta proposes that, on or near March 31, Meta will provide to the FTC its proposed confidentiality positions on every Meta-produced document on either side's final exhibit list. There are presently more than 1,000 Meta-produced documents on both parties' exhibit lists, spanning more than 20,000 pages. Reviewing and providing confidentiality positions for every such document is a massive undertaking that will entail considerable resources – while the parties are otherwise preparing their cases for trial. Meta is willing to do so. But March 31 is the earliest practicable date by which Meta can complete its review. To facilitate review and minimize disputes, Meta proposes that the parties brief disputes over a small set of exemplar documents – representing categories of recurring confidentiality issues – in early March. This approach will allow the Court to resolve disputes over a small set of documents at the outset and to provide the parties guidance for applying confidentiality designations on the remaining

4

documents. This approach will minimize disputes as trial proceeds. More specifically, Meta's proposal would entail the following:

- **March 5**: Meta identifies to the FTC proposed redactions and/or confidentiality positions on a set of exemplar Meta documents on the parties' exhibit lists (approximately 30-50, and no more than 50), which present recurring categories of confidentiality issues.

- **March 7:** The FTC provides Meta its position on each of the exemplar set of documents.

- **March 10:** Meta files a motion seeking confidential treatment and rulings for the documents over which the parties cannot reach agreement.

- **March 12:** Deadline for oppositions.

- **March 14:** Deadline for Meta reply, if any.

- **March 31 (or 14 days after the Court's ruling on Meta's motion, whichever is later):** Meta, using the Court's rulings on the motion regarding exemplar documents as guidance, identifies to the FTC its proposed redactions and confidentiality positions for every Meta-produced document on either side's exhibit list.

- **April 7 (or 7 days after Meta's disclosure of its confidentiality positions, whichever is later):** The FTC provides Meta its position on each of Meta's confidentiality assertions – identifying with specificity the basis for any dispute over Meta's proposed confidentiality treatment and/or redactions for each document over which the FTC disagrees.

- **During Trial:** The parties work in good faith to resolve all outstanding confidentiality issues, using as guidance the Court's rulings on Meta's motion regarding the exemplar documents. If the parties cannot reach agreement on an exhibit's confidentiality by four days before the exhibit's anticipated use, then:

    o The parties must meet and confer over confidentiality of, and redactions to, a document;

    o If the parties cannot resolve a dispute over a document's confidentiality, the party seeking to use the document must either (i) raise the dispute with the Court by two days before the exhibit's anticipated use; or (ii) afford the document Partial Nondisclosure or Complete Nondisclosure treatment (as designated by Meta).

This proposal aims to resolve confidentiality for a large portion of Meta's documents without asking the Court to go line-by-line through the more than 1,000 Meta-produced documents on both sides' exhibit lists. It will enhance efficiency and help the parties productively resolve confidentiality issues amongst themselves based on the Court's guidance.

Moreover, this sort of approach is a common solution in complex antitrust cases with large exhibit lists. *See*, *e.g.*, Trial Confidentiality Order § 2(c)(iii), *United States v. Deere & Co.*, No. 1:16-cv-08515 (N.D. Ill. Dec. 20, 2016), ECF No. 131 (directing briefing for representative sample of 50 exhibits). For example, in *Google*, the government "asked Google to provide [it] with 30 or 40 examples" of documents to identify where to "draw the line," Judge Mehta agreed, *see* Status Conf. Tr. 27:2-3, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. June 28, 2023), ECF No. 609, the parties briefed 30 "exemplar" documents raising "recurring categories" of confidentiality issues, *see* ECF No. 740-1 at 4 (Google's filing), which allowed Judge Mehta to provide the parties with his views on several confidentiality principles which guided all other confidentiality resolutions during trial, *see id.* Status Conf. Tr. at 13:4-13, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Aug. 11, 2023), ECF No. 644 ("It was certainly helpful to read the parties' positions and to have some of the types of documents that are at issue."); *id.* at 13:14-22:2 (providing several guiding principles for confidentiality disputes based on parties' exemplar submission). Meta's proposal – which offers 30 to 50 exemplar documents raising recurring categories of confidentiality issues – echoes the sensible procedures in *Google* and *Deere & Co.* That approach should govern here, too.

And Meta's proposal that the parties attempt amongst themselves, in good faith, to work out confidentiality issues during trial is also consistent with practice in other complex antitrust cases. In *Google,* for example, "[t]he Court . . . directed the parties to attempt to resolve any

confidentiality disputes within 48 hours or otherwise bring them before the Court." Hr'g Tr. at 6:3-6, *United States v. Google LLC*, 1:20-cv-03010-APM (D.D.C. April 24, 2024), ECF No. 895. And in *Within*, the FTC and Meta negotiated with one another – without the FTC insisting that Meta file a motion on every single document – to resolve confidentiality of all exhibits used during trial. The same common-sense approach should govern here as well. It is also consistent with the parties' practice in this case, including at summary judgment.

    **b.** The FTC's proposal, by contrast, would be unfair and unduly burdensome – both to Meta and the Court. The FTC insists that Meta file a motion for *every single* Meta exhibit on either side's exhibit list for which the parties cannot reach agreement – with one omnibus motion on March 12 and a second on April 7. That is plainly unworkable. Because the FTC has generally claimed thus far that Meta cannot assert confidentiality over any document it produced, *see, e.g.*, Email from A. Polavarapu to J. Lorber (Aug. 15, 2024) (memorializing FTC's position that "none of the materials over which Meta intends to maintain confidentiality contain any information that may be sealed"); Ltr. from J. Lorber to M. Reade at 2 (June 18, 2024) (disagreeing with Meta about hundreds of documents, stating that "the FTC does not believe that any portion of the identified documents" is confidential), the FTC's plan would likely require the Court to assess the confidentiality of every redacted line in every Meta-produced document on either side's exhibit list (of which there are more than 1,000) – even if the document is never actually shown at trial. That would create substantial pretrial work for Meta and the Court. *Compare* Status Conf. Tr. at 25:15-17, *United States v. Google LLC*, No. 1:20-cv-03010-APM, (D.D.C. Aug. 11, 2023), ECF No. 644 ("Do you really want me to sit down with 400 documents to line by line redact these things and call balls and strikes on those?"). And, by design, it would require no work for the FTC. *See* Ltr. from J. Lorber to L. Smith at 2 (Aug. 23, 2024) ("The

FTC does not believe it is practical or helpful to respond to each individual proposed redaction of Meta information . . . .").

The FTC's schedule is also unreasonable: it proposes that the FTC (not Meta) identify 100 exhibits by this Friday (February 28) and propose redactions for all of them by next Wednesday, March 5 – less than a week to provide line-by-line positions on 100 documents. Most importantly, the FTC's proposal that it, and not Meta, identify these documents defeats the purpose of Meta's proposal for early resolution of a representative set of 30-50 documents. Meta is in a position to know the types of confidentiality issues that are at issue in its documents – for example, sensitive information about Meta's practices and procedures that could potentially be exploited by bad actors if revealed publicly; certain undisclosed financial information; and sensitive competitive analysis and strategy. *Cf.* Status Conf. Tr. at 20:6-14, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Aug. 11, 2023), ECF No. 644 ("I'm an Article III trial judge, . . . not a businessperson. I am not anyone that understands the industry and the markets in the way you do. And so I take seriously when companies are telling me that if this gets disclosed, it's going to cause competitive harm. . . . I can't see around every corner."). And Meta can select specific documents that raise these issues such that the Court's guidance on them will help Meta apply corresponding redactions to the remaining documents.

Finally, the FTC is incorrect when it suggests that Meta has already made final confidentiality determinations on a vast number of documents. Although Meta has conducted a preliminary confidentiality review of some of the documents on the exhibit lists, Meta will need now to conduct a careful review of all documents that are still designated as Confidential or Highly Confidential. The FTC is simply wrong when it suggests that this work has already been done.

## 2. Party Documents Not on Either Party's Exhibit List

The parties are largely in agreement on how to approach Confidential or Highly Confidential documents that are not on either party's exhibit list – such as impeachment documents. Meta's proposal (with which the FTC largely agrees) is that the FTC must either disclose such documents to Meta 48 hours before use or, alternatively, provide Partial Nondisclosure or Complete Nondisclosure treatment to the document during any use of the document in open court or close the courtroom before using it, so as to avoid disclosure of any information that Meta has designated as Confidential or Highly Confidential.

Meta must have an opportunity to review its documents and to apply, if necessary, confidentiality designations before they are used in open court. And the FTC and Meta agree that advanced notice of 48 hours for this small set of documents is a reasonable period of time to review documents (many of which are very long and must be reviewed line-by-line), assess them for confidentiality, and prepare public redacted versions that may be used.

The FTC informed Meta that it agrees to Meta's proposal subject to one condition: that "Meta would be willing to designate an attorney to be walled off from the trial team to handle the confidentiality review." Email from J. Lorber to A. Polavarapu (Feb. 22, 2025). Meta has indicated to the FTC that it agrees to use a walled-off outside lawyer (or lawyers) for this purpose. Because the FTC does not oppose the general structure – either 48-hours disclosure or presumptively confidential treatment – the Court should adopt it. However, the parties disagree on one aspect of this condition. While Meta agrees to employ a process whereby walled-off attorneys may receive notice of impeachment documents 48 hours in advance, the Order should provide a mechanism for allowing Meta to raise disputes with the Court, should any arise, and it would be impracticable to wall off the trial team under those circumstances. Thus, Meta

9

proposes an exception to the walled-off condition that would allow the walled-off attorney to notify the trial team of disputes relating to this category of documents that remain pending within 24 hours of the examination in question.

### 3. Meta Testimony Not Connected To Documents

**a.** Some live testimony not connected to specific exhibits could well disclose protectible, confidential information, as could use of undisclosed transcripts of Meta employees' depositions when being used for impeachment purposes. There must be a mechanism to ensure that such information is afforded adequate confidentiality treatment. The most efficient way to do so is for Meta to identify to the FTC its confidentiality positions on deposition and investigational-hearing transcripts of witnesses who will be testifying – which will allow the parties to identify in good faith categories of testimony, and portions of deposition transcripts, that may require confidential treatment. Meta therefore proposes the following:

- By March 31, Meta shall identify to the FTC all confidentiality assertions and proposed redactions for deposition and investigational-hearing transcripts for Meta witnesses designated as "will call" witnesses on either side's final witness list.

- For Meta witnesses listed as "may call" on either party's final witness list, the FTC must provide Meta eight days' notice before the witness's potential testimony to assess confidentiality of that witness's transcript(s).

- The parties shall meet and confer in good faith to reach agreement on the confidential nature of information discussed in all such transcripts and other confidential topics that might be the subject of examination.

- If disputes over the confidential nature of a witness's transcript or other topics of anticipated testimony remain unresolved two days prior to the witness's anticipated examination date, or the anticipated date on which a party expects to play a witness's deposition video, the party seeking to elicit or offer the testimony shall raise the issue with the Court.

- The parties must work together in good faith to group testimony in such a manner as to reduce the number of times the courtroom must be closed.

This procedure will facilitate an orderly presentation: it will reduce the need for courtroom closure if the parties meet and confer in good faith ahead of examinations to identify topics most likely to require confidential treatment. Moreover, directing the parties to meet and confer on Meta's proposed schedule will allow them to use the Court's rulings on Meta's exemplar motion to guide their discussions, reducing the likelihood for disputes. And Meta's commitment to identify its confidentiality position for all depositions and investigational-hearing transcript for every will-call witness by March 31 entails a significant burden: there are presently 24 will-call Meta witnesses with deposition and investigational-hearing transcripts, totaling more than 12,800 pages. And that is on top of the over 20,000 pages of exhibits Meta also committed to review line by line and redact by March 31.

  **b.** The FTC also proposes that the Court order the parties to file a joint motion on April 8 "regarding the contours of the testimony that shall be sealed from the public." This would be the third motion the FTC would have the court resolve – on top of the March 12 and April 7 omnibus exhibit motions. Moreover, it is impractical to file a motion asking the court to rule, ahead of time, on abstract categories of live testimony before that testimony is offered. Meta's proposal (which, unlike the FTC's, aims to *reduce* rather than *create* confidentiality issues for the Court to resolve) is preferable. It will allow the parties to meet and confer, narrow any disputes, and raise them (if any are necessary) close to the time testimony is offered – when it will be far clearer what testimony is likely to be offered.

  **C.** **Nonparty Documents and Testimony**

  Meta and the FTC appear to agree that, absent an agreement between them and any nonparty seeking confidential treatment of its materials, such nonparty should file a motion by March 31 to seek confidential treatment for any of its documents on either side's exhibit list –

after the parties inform nonparties by March 13 of each such document. Moreover, to the extent the nonparty has a "will call" witness on either party's witness list, then (absent agreement between the nonparty and parties), the nonparty's motion should include any portion of the nonparty's deposition transcript for which it wishes to seek confidential treatment. Here, as with Meta's deposition transcripts, it will aid the parties and nonparties – when negotiating how to group nonparty testimony during live examinations – to understand what portions of a witness's previous testimony the nonparty views as warranting confidential treatment, and which portions of the transcripts may be used publicly (or with confidentiality treatment) for impeachment if necessary.

For a "may call" nonparty witness, the nonparty should be given eight days' notice before the witness's testimony to assess the confidentiality of the witness's deposition transcript. Both parties and the nonparty shall in good faith attempt to reach agreement on the confidentiality of the witness's deposition transcript prior to the witness's testimony at trial (either by deposition designation, to the extent it is allowed, or live). To the extent a dispute cannot be resolved, the nonparty would raise it with the Court prior to when the witness's testimony is presented (by deposition designation or live), in whatever form the Court prefers.

### D. Presence of Designated Meta In-House Attorney

Meta proposes (and the FTC agrees) that its one in-house attorney previously designated to view nonparty material under the protective order be permitted to be present even when the courtroom is closed during nonparty presentations of confidential evidence. The Court has already ruled that this attorney may access nonparty documents – so permitting the same at trial will introduce no new confidentiality concerns. And all the same protections that apply under the protective order will continue to apply. Judge Mehta entered a similar provision in *Google*,

*see* Stipulated Order on the Use of Confidential Information at Trial ¶ 8, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Aug. 15, 2023), ECF No. 647 (permitting Google representative previously permitted to access nonparty information under protective order to be present during all closed sessions of court, including those involving testimony from nonparties). There is no reason for this Court to do otherwise.

### E. Preparation Of Exhibits

Meta agrees with the FTC that the producing party or nonparty should prepare versions of exhibits that may be used publicly with appropriate redactions. Meta proposed to the FTC – and the FTC has not represented to Meta that it objects – that, in addition, no protected document may be publicly disclosed (other than by the party who produced the document) until it has been admitted and used in open court at trial with appropriate redactions. Moreover, the Court should make clear that public disclosure of trial exhibits shall be governed by another order to be entered in the future, and that that no party – other than the producing party or nonparty with a confidentiality interest in its own documents – may publicly disclose any material designated Confidential or Highly Confidential until that subsequent order governing disclosure, which the parties have discussed but not yet exchanged proposals over, has been entered.

Dated: February 25, 2025

Respectfully submitted,

*/s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*