**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

**<u>JOINT PRETRIAL STATEMENT</u>**

Pursuant to Local Rule 16.5, the Court's December 20, 2024 Order (ECF No. 390), and the Court's ruling during the March 7, 2025 Status Conference, the Federal Trade Commission ("FTC") and Defendant Meta Platforms, Inc. ("Meta") jointly submit this Pretrial Statement.

## I.   STATEMENT OF THE CASE

### A.   FTC's Statement[1]

#### 1.   Nature of the Case

Plaintiff, the Federal Trade Commission ("FTC"), brings this case pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), for a permanent injunction and equitable relief against Defendant Meta Platforms, Inc. to remedy and prevent its anticompetitive conduct and unfair methods of competition in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). The FTC asserts that Meta has had monopoly power in the United States in the personal social networking ("PSN") services market since at

---

[1] Plaintiff will provide a more detailed description of its case in its pretrial brief, which will be submitted pursuant to the Court's December 20, 2024 Order, ECF 390, on April 7, 2025.

least 2011 and that it has unlawfully maintained this monopoly power through anticompetitive conduct consisting of anticompetitive acquisitions. The FTC asserts that Meta's anticompetitive conduct constitutes an unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and is thus an unfair method of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### 2.    Identities of the Parties

Plaintiff FTC is an administrative agency of the United States government, established, organized, and existing pursuant to the FTC Act, 15 U.S.C. §§ 41 *et seq.*, with its principal offices in the District of Columbia. The Commission is vested with authority and responsibility for enforcing, among other things, Section 5 of the FTC Act, 15 U.S.C. § 45, and is authorized under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to initiate court proceedings to enjoin violations of any law the FTC enforces and to seek equitable remedies.

Defendant Meta Platforms, Inc. is a publicly traded, for-profit company, currently incorporated in Delaware with its principal place of business at One Meta Way, Menlo Park, CA 94025. Meta's principal businesses are technologies that facilitate digital interactions and communications.

### 3.    Basis of the Court's Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1137(a), and 1345. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to issue a permanent injunction against violations of the FTC Act and, in the exercise of its equitable jurisdiction, to order equitable relief to remedy the injury caused by Meta's anticompetitive conduct. Meta does not contest that this Court has personal jurisdiction over Meta. Answer, ECF 94 ¶ 13.

    **B.**    **Meta's Statement**

The FTC brings this case under Section 13(b) of the FTC Act, alleging that Meta is violating Section 5(a) of that Act. Specifically, the FTC claims that Meta is violating Section 2 of the Sherman Act by maintaining a monopoly of an alleged relevant market for "personal social networking," by virtue of its acquisitions of Instagram (in 2012) and WhatsApp (in 2014). Meta disputes that it possesses monopoly power and disputes that the acquisitions at issue were exclusionary conduct. The FTC asserts that jurisdiction arises under Section 13(b) of the FTC Act. That provision allows the FTC to pursue injunctive relief in federal court where a defendant "*is violating*, or is about to violate, any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b) (emphasis added). Meta contests the FTC's authority to proceed with this case under Section 13(b).

## II.    STATEMENT OF PLAINTIFF'S CLAIMS

    **A.**    **FTC's Statement**

Meta has violated Section 2 of the Sherman Act, 15 U.S.C. § 2, and thus Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Since at least 2011, Meta has had monopoly power in the United States in the PSN services market. Meta has willfully maintained its monopoly power through a course of anticompetitive conduct consisting of the anticompetitive acquisitions of Instagram in 2012 and WhatsApp in 2014.

Dating back to at least 2011, Meta has had a dominant share, exceeding 60 percent, of the PSN services market in the United States. PSN services are online services that enable and are used by people to maintain personal relationships and share experiences with friends, family, and other personal connections in a shared social space. The PSN services market in the United States is protected by significant entry barriers. Direct evidence, including sustained high profits

3

and inelastic demand, further establishes that Meta has monopoly power over consumers of PSN services in the United States.

Through its conduct, Meta has excluded competition and willfully maintained its monopoly in PSN services through means other than competing on the merits. Indeed, Meta maintained its monopoly power through exclusionary conduct "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Microsoft Corp.*, 253 F.3d at 34, 58 (D.C. Cir. 2001) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)). Meta acquired Instagram and WhatsApp, rather than competing on the merits, and thereby harmed the competitive process, stifled competition, maintained and bolstered barriers to entry, and thereby harmed consumers. Meta's anticompetitive conduct constitutes unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

Meta's asserted defenses fail to redeem its conduct. In particular, Meta's proffered procompetitive justifications fail because (1) they are not legally cognizable; (2) they are pretextual; (3) they do not relate to purported benefits for PSN services in the United States; and (4) they are not merger-specific, i.e., Meta cannot show that Instagram and WhatsApp could not have achieved purported procompetitive benefits without the acquisition or that Meta could not have achieved the same benefits without acquiring Instagram and WhatsApp.

### B. Meta's Statement

The parties agree this section is not applicable to Meta. Meta does not agree with or stipulate to the contents of the FTC's legally and factually incorrect statement.

## III. STATEMENT OF DEFENSES

### A. FTC's Statement

The parties agree this section is not applicable to the FTC.

### B.      Meta's Statement

Meta respectfully refers the Court for a full statement of its defenses to its prior pleadings, including the Answer (*see* ECF No. 94), its Motions to Dismiss the Complaint (*see* ECF No. 56) and the Amended Complaint (*see* ECF No. 83), and its Motion for Summary Judgment (*see* ECF No. 324) as well is its forthcoming Pretrial Brief (*see* ECF No. 390).  Meta restates and reaffirms all such defenses.

In summary, and without waiving any defense, Meta respectfully submits that the FTC cannot prove either required element of its Section 2 monopolization claim.  Meta disputes the FTC's claim of jurisdiction under the FTC Act, because there is no evidence that Meta *is violating* or about to violate Section 2 of the Sherman Act.

*The FTC cannot prove that Meta possesses a monopoly*.  The FTC has no direct evidence that Meta has the power to raise prices above the competitive level or reduce output or quality below a competitive level.  The direct evidence proves that Meta has no such power; ergo, it is not a monopolist.  The "indirect" evidence will likewise fail to establish a rebuttable presumption of power because, when the substitute services offered by obvious competitors such as TikTok, YouTube, and iMessage are included in any market share calculation, Meta lacks a market share even close to one that could rise to the minimum level for suggestion of monopoly power.  Including even *one* of those competitors in any such calculation drives Meta's share below the minimum threshold for such a presumption.

*The FTC also cannot prove that Meta maintained a monopoly by acquiring – and improving – applications that were two small, complementary apps at the time of the acquisitions*.  Neither the Instagram nor the WhatsApp acquisition was anticompetitive.  Meta acquired both with the intent to make those apps better for U.S. consumers as standalone services alongside Facebook, and that was the *effect* of the transactions.  *Effect* is what matters; intent is

relevant only to the extent that it bears on likely effect. Here, such predictions are unnecessary as the effects of the acquisitions over more than a decade are known. Comparable acquisitions have never been condemned under Section 2 of the Sherman Act, let alone via retroactive challenge a decade after the fact. The acquisitions achieved massive and indisputable efficiencies and procompetitive benefits since 2012 and 2014, and the FTC cannot establish that the same or a greater level of efficiencies and benefits would have been achieved at all or as quickly without the acquisitions.

With the exception of the single affirmative defense the Court carved out at summary judgment, Meta maintains all of its affirmative defenses and, to the extent such defenses require proof, Meta will present evidence in support of them at trial.

## IV.    SCHEDULE OF WITNESSES

### A.    FTC's Statement

The FTC's Witness List pursuant to Local Rule 16.5(b)(5) is attached as Attachment A. Plaintiff also submits as Attachment A-1 a summary of salient information, provided for ease of reference.

### B.    Meta's Statement

Attached as Ex. 1 is Meta's schedule of witnesses.

## V.    LIST OF EXHIBITS

### A.    FTC's Statement

The FTC's Exhibit List is attached as Attachment B. To the extent Meta has objected to the exhibits identified by the FTC, those objections are reflected in Attachment B. In addition, the FTC reserves the right to introduce any exhibits listed by Meta and to supplement or amend its list as needed to address new matters offered by Meta or as permitted by the Court. The FTC's inclusion of an exhibit on its Exhibit List is not an admission that the exhibit would be

admissible if offered by Meta, and the FTC reserves the right to object to any exhibit or portion of an exhibit, even if it appears on the FTC's Exhibit list.  With regard to its objections to the exhibits identified on Meta's Exhibit List, the FTC reserves the right to amend its objections to Meta's Exhibit List including withdrawing objections and supplementing objections based on Meta's use of these exhibits at trial or in post-trial briefing.

The FTC objects to Meta's reservation of rights allowing it to swap out exhibits, including exchanging one document for another that contains a different Bates numbers or is in a different format than what was identified on Meta's Exhibit List, as this would allow Meta to circumvent the exhibit list cap they themselves requested and also could be used to swap in a version of a document that is different than what was produced to the FTC and that the FTC has been relying on.

The exhibits identified are exclusive of documents that may be used for purposes of impeachment, Rule 1006 exhibits, and illustrative aids.  Exhibits being offered for pre-admission are identified in the "Meta's Objections" column by an indication that Meta has no objections and agrees to pre-admit those exhibits.  Pursuant to Local Rule 16.5(b)(6), the FTC's exhibit list also identifies those exhibits it "expects to offer."  As described below, the parties anticipate a process for disclosing exhibits close in time to each witness examination.  The FTC's assessment of which exhibits it "expects to offer" will thus naturally be refined in the course of that exhibit disclosure process.

## B.    Meta's Statement

Attached as Ex. 2 is Meta's Exhibit List and the FTC's objections to the exhibits on Meta's Exhibit List.  Meta's trial exhibits will be identified with DX numbers, starting at DX0001.  Pursuant to Local Rule 16.5(b)(6), Meta has placed an asterisk by the exhibit number for exhibits that it expects to offer, with the remainder being exhibits that Meta may offer if the

need arises.  Meta has made these designations in good faith.  However, because of the number of witnesses and exhibits the FTC has disclosed for its multiple-week Case-in-Chief, Meta lacks certainty regarding the exhibits that it will offer versus those that it may offer.  Further, Meta has bolded the exhibit numbers for exhibits that Meta and the FTC agree may be pre-admitted at the start of or during trial should Meta decide to do so.

Meta reserves its rights to introduce exhibits on the FTC's exhibit list; to withdraw any listed exhibits, in whole or in part, at any time; to supplement, amend, or edit its Exhibit List as needed to address new matter offered by the FTC or permitted by the Court; and to supplement, amend, or edit its objections to the FTC's Exhibit List, including its right to object to particular uses of exhibits by the FTC at trial or in post-trial briefing.  Meta's inclusion of an exhibit on its Exhibit List is not an admission that the exhibit is admissible if offered by the FTC, and Meta reserves the right to object to any exhibit or portion of any exhibit, even if it appears on Meta's Exhibit List.  Meta further reserves the right to use a different copy of the same document at trial if, for example, the document has been assigned a different Bates number or deposition exhibit number, or if the document is in a different electronic or native format than the version identified on Meta's Exhibit List.

## VI.    DEPOSITION DESIGNATIONS

### A.    FTC's Statement

The FTC's Deposition Designations for use at trial are attached as Attachment C.  The parties have agreed to a schedule for the exchange of counter and completeness designations and objections; the schedule contemplates finalizing these trial deposition designations by the final Pretrial Conference.  *See* Local Rule 16.5(b)(7).  The FTC reserves the right to modify its deposition designations or add additional deposition designations for use at trial.

**B.      Meta's Statement**

Attached as Ex. 3 are Meta's opening deposition designations for the witnesses on Meta's schedule of witnesses that Meta currently intends to call by video.  Meta is providing these deposition designations in PDF files, but the parties have also exchanged .csv files pursuant to a prior agreement between the parties.  The parties have agreed to a schedule, which contemplates counter and completeness designations and objections, to finalize these deposition designations by the final Pretrial Conference.  *See* Local Rule 16.5(b)(7).  Meta reserves the right to amend its witness list and the right to modify its deposition designations or add additional deposition designations for use at trial.

## VII.    ITEMIZATION OF DAMAGES

The parties agree that this section for "an itemization of damages the party seeks to recover" is not applicable to this case.  Local Rules 16.5(b)(1)(vii), (b)(8).

## VIII.   OTHER RELIEF

**A.      FTC's Statement**

The FTC requests that the Court enter final judgment against Meta, declaring, ordering, and adjudging that Meta's course of conduct violates Section 2 of the Sherman Act and thus constitutes an unfair method of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  Pursuant to the Court's March 3, 2022 Order regarding Bifurcation (ECF No. 103 ¶ 8), the FTC will identify its additional requested relief during a separate proceeding regarding remedies for Meta's legal violations.

**B.      Meta's Statement**

Meta seeks judgment in its favor and dismissal of this action with prejudice.

IX.    **ADDITIONAL ISSUES**

    A.    **Trial Exhibit Disclosures**

        1.    **Meta's Position**

Meta proposes that during trial, the presenting party should disclose each exhibit it anticipates introducing in evidence at least four days before seeking to offer such exhibit or using the exhibit in the examination of a witness.   This rule would *not* apply to exhibits used solely for impeachment.  The Court previously ordered the parties to continue meeting and conferring about trial exhibit disclosures.  *See* Order ¶ 5 (Feb. 21, 2025), ECF No. 401.  The parties agree that if a party intends to use an exhibit during its direct examination of a witness (not including impeachment documents), the exhibit should be disclosed in advance of the examination.  *See* Ltr. from D. Matheson (Nov. 15, 2024) at 5, ECF No. 411-1 (proposing "disclosure of exhibits used during direct examination").  But the parties have been unable to reach an agreement on the timing of such disclosures, with the FTC proposing only two days of advance notice for exhibits it seeks to offer in evidence.

Exhibit disclosures four days in advance will be productive and help make trial more efficient.  Such disclosures will give the parties time to meet and confer about any confidentiality issues and exhibit objections and prepare appropriately redacted versions of exhibits so that they may be used in open court – which will help avoid frequent closure of the courtroom.  Meta requests a four-day disclosure rule to ensure this process will work smoothly.  The FTC has asked Meta to prepare the public redacted versions of the Meta-produced documents that the FTC intends to use as trial exhibits, so that the FTC does not have to apply any agreed redactions to these exhibits for itself.  But to accomplish this, Meta needs enough notice of the FTC's anticipated trial exhibits to ensure it has applied redactions correctly to the exhibits the FTC anticipates using, and has provided redacted versions to the FTC with enough time for the FTC

to review and print them before the relevant trial day.  Truncating the exhibit disclosure schedule to two days will unnecessarily time-crunch the parties and disproportionately burden Meta.

Such disclosures will also ensure that the parties can notify the Court, after meeting and conferring, sufficiently in advance about any potentially "lengthy objections" to exhibits that "should take place before or after [a] witness testifies."  Order ¶ 3 (Feb. 10, 2025), ECF No. 398. This will allow the parties and the Court to plan accordingly and avoid wasting chess clock time. All the exhibits to be offered in evidence have been or will be disclosed, such that there is no tactical reason to prevent witnesses from being made aware of the likely subjects of examination. And some of the documents are lengthy, such that advance disclosure will ensure that the witnesses are familiar with the documents so that scarce Court time will not be wasted as witnesses familiarize themselves on the witness stand with documents they have not had the chance to review before testifying.

The FTC is wrong that Meta's proposal will generate inefficiency by requiring the parties to raise exhibit and illustrative aid disputes at different times.  Nothing in Meta's proposal precludes the parties from presenting exhibit and illustrative aid disputes to the Court at the same time, where appropriate.  Rather, Meta's proposal ensures the parties will have enough time to discuss any exhibit disputes, so that they can most efficiently present them to the Court, if needed.  And the FTC's claim that it will not know, four days ahead of time, which exhibits it anticipates using, is not credible.  The FTC has been preparing for trial for years.

For all these reasons, Meta requests that the Court order that the presenting party should disclose each exhibit it anticipates introducing in evidence at least four days before using the exhibit.

2. **FTC's Position**

***Exhibit Disclosures for Witness Exams.***  In response to Meta's proposal regarding the timing of exhibit disclosures, the FTC offers this counter-proposal: A party that intends to use an exhibit during direct examination of a witness must use best efforts to disclose that exhibit by noon ET two calendar days before the relevant witness will testify.  The receiving party shall have until noon the following calendar day to state any objections.  If the receiving party offers objections, the parties must meet and confer by 8 pm on the calendar day before an exhibit is to be used.

The FTC's proposal offers all the same benefits as those described by Meta; it will give the parties sufficient time to meet and confer about confidentiality issues and exhibit objections, and it will allow the parties to notify the Court each morning to the extent any "lengthy objections" are anticipated during that day's testimony.  Further, given the Court's recent directives on a confidentiality protocol, the FTC expects that most confidentiality issues will be resolved and redactions applied in advance of trial, and thus will require little additional time as part of this proposed exhibit disclosure process.

Last, the FTC's proposal offers efficiencies over Meta's.  First, the parties have already agreed that illustrative aids must be disclosed on this exact same schedule; i.e., that they be disclosed by noon ET two calendar days before the relevant witness will testify, and with the identical cadence for making and resolving objections.  Disclosing exhibits on the same schedule will allow the parties and the Court to simultaneously resolve confidentiality issues and exhibit objections relating to the same witness on the same timeline.  By contrast, Meta's proposal would address disputes regarding exhibits relating to a witness at one time, and disputes regarding illustrative aids two days later.  Second, disclosing exhibits unnecessarily far in advance of a witness's examination is likely to result in overbroad disclosure and thus generate

unnecessary work, because the parties will have to review documents that will never actually be introduced, and the Court may have to resolve unnecessary disputes over documents that will never actually be introduced. Disclosing exhibits two days rather than four days before an examination increases the parties' ability to refine their examination outlines and thus limit their exhibit disclosures to only those documents most likely to be introduced. A narrower, more realistic set of exhibit disclosures will save the parties and the Court time.

Meta's position in its statement that early exhibit disclosure will "ensure that the witnesses are familiar with documents" undermines the goal of advance exhibit disclosure. Early disclosure—which is not required by the federal rules—permits the parties to resolve confidentiality and other disputes regarding the exhibits in advance. Its purpose is not, as suggested by Meta, to facilitate witness testimony preparation tailored to the opposing party's exhibits. Moreover, as Meta notes, all exhibits offered in evidence have been disclosed already, and as such, there is no reason for Meta to obtain notice of a narrower set of exhibits, 4 days in advance of witness testimony, for the purpose of preparing its witnesses.

**B.    Testimony of Meta's Corporate Representative**

**1.    Meta's Position**

Meta intends to call its corporate representative – Alex Schultz (Meta, Chief Marketing Officer & Vice President, Analytics) – in the Defense Case. In the FTC's witness list, the FTC has stated its intention to call Mr. Schultz in the FTC's Case-in-Chief. Although the parties agreed that "a fact witness . . . should not be re-called absent a finding of good cause by the Court," Jt. Status Rpt. at 45 (Dec. 5, 2024), ECF No. 387, that was "for the convenience of the witnesses," Jt. Status Rpt. at 33 (Feb. 17, 2025), ECF No. 399. Accordingly, Meta proposes to make Mr. Schultz available for examination in the FTC's case, if the FTC in fact calls him, and then conduct a "cross examination" of Mr. Schultz limited to the scope of the testimony the FTC

elicits.  Because Mr. Schultz will be at the trial, Meta will then call him for direct examination in the Defense Case, at which point the FTC will have an opportunity to cross-examine him (limited to the scope of that testimony).

It is typical and permissible for a defendant to call its corporate representative to testify in its Defense Case – *see* Transcript of Proceedings before Judge James E. Boasberg held on Sept. 29, 2014, *Ayissi-Etoh v. Fannie Mae*, No. 1:10-cv-01259, ECF No. 125, at 3-4 (D.D.C. Jan. 14, 2015) (the Court:  "All right.  That's permissible . . . .); *see also Ayissi*, ECF No. 111, at 13 (corporate representative called in defense case, not the case in chief) – and, indeed, the ability to call that witness in the Defense Case is an important component of presenting the corporate representative.  It is also necessary in this instance for the effective presentation of the Defense Case, which otherwise may be limited because of the FTC's stated intention to call many or most of the Meta senior executive witnesses in its case; that suffices as good cause here for this reasonable proposal.  There is no convenience-based reason to prevent Meta from presenting its defense in the manner it deems most effective in this respect.  The FTC identifies no prejudice from Meta's proposal, which will allow the FTC to examine Mr. Schultz twice, as well.  The FTC's suggestion that unidentified witnesses might also, hypothetically, not be inconvenienced by attending trial twice is no reason to obstruct Meta from calling its corporate representative in its Defense Case. The FTC has stated its objection to Mr. Schultz testifying in the Defense Case but invokes no authority or sound reason for its objection.

## 2.    FTC's Position

***Meta's Chief Marketing Officer.***  Meta informed the FTC on March 10 that it intends to call Alex Schultz, Meta's Chief Marketing Officer, for a second time in Meta's case, even though he is listed as a witness that the FTC "will call" live in its case-in-chief.  The FTC opposes this request because, as Meta acknowledges, the parties agreed and informed this Court

on December 5, 2024 "that fact witnesses should not be called more than once, and that a fact witness thus should not be re-called absent a finding of good cause by the Court."  JSR at 45, Dec. 5, 2025, ECF 387.  The plain language of the parties' agreement forecloses Meta's request to call Mr. Schultz for a second time after Mr. Schultz is called during the FTC's case-in-chief.  Meta has not established "good cause" for Mr. Schultz to testify twice simply by informing the FTC that it would designate Alex Schultz as its corporate representative for trial.  While it may be true that Mr. Schultz would not suffer inconvenience from being called twice, that may equally be true of many other witnesses, whether they are Meta witnesses or third-party witnesses.  The circumstance that a witness is willing to testify twice does not establish the "good cause" that is required by the plain language of the parties' agreement.

### C.    The FTC's 1006 Witnesses

#### 1.    Meta's Position

Meta objects to the inclusion by the FTC of two witnesses not previously disclosed in either party's Rule 26 disclosures, during discovery, or on its preliminary trial witness list. Specifically, the FTC has now disclosed that it "may call" two FTC employees to testify about the "Admissibility of Rule 1006 Exhibit[s]."  Such exhibits have not been disclosed, but Meta objects to undisclosed witnesses giving expert or other testimony which they are unqualified to give.  Because the FTC has not disclosed what these exhibits are, or how the employees are competent to give testimony, Meta reserves all rights to object to the testimony as well as to the undisclosed Rule 1006 exhibits the FTC says they will sponsor.

#### 2.    FTC's Position

***FTC's Rule 1006 Sponsoring Witnesses.***  Meta objects to the FTC's identification of two witnesses who may be called to testify about the preparation of summaries to prove the content of voluminous writings that cannot be conveniently examined in court.  *See* Fed. R. Evid. 1006.

The FTC plans to disclose Rule 1006 exhibits on March 17 as the Court ordered.  Order, ECF No. 394.  These summary exhibits can and should be admitted without need for live testimony—the underlying voluminous materials are either Meta's own or were produced to Meta in this litigation, and the FTC will be disclosing declarations prepared by each potential witness describing how they prepared these summary exhibits.  That said, the FTC identified these two individuals as potential witnesses in the event that Meta will not stipulate to the admissibility of the FTC's Rule 1006 exhibits, and instead requests an opportunity to cross-examine either witness about how they compiled these summary exhibits.

First, Meta complains that these two witnesses were only disclosed for the first time this week.  But the FTC disclosed these potential witnesses before the Final Witness List was due and before Rule 1006 exhibits were due for disclosure.  Moreover, Local Rule 16.5(b)(5) prohibits objections "to a witness" simply because they were "disclosed for the first time in a party's Pretrial Statement," unless the information has been wrongly withheld.  Not so here. Second, Meta objects that these potential witnesses may provide improper expert testimony. They will not.  The FTC's Rule 1006 exhibits will summarize voluminous materials, not offer expert opinion.  The accompanying declarations—and the potential witnesses providing them—will likewise offer no opinions.

Regardless, Meta's complaints are improperly addressed in this pretrial statement.  The FTC will share its Rule 1006 exhibits and accompanying declarations on March 17.  Meta can then object by March 27, if it chooses, according to the Court's ordered schedule.  Order, ECF No. 394.  Any unresolved disputes can be briefed and resolved at a later date, once the exhibits have actually been disclosed.

### D.     Use of Deposition Testimony When Witnesses Are Testifying Live

#### 1.     Meta's Position

The FTC has stated that it will or may call four nonparty witnesses by deposition in its

case that Meta "will call" live at trial:  employees from TikTok, Snap, and YouTube.  Meta

believes that the parties should conduct these examinations live, rather than split them between

deposition in the FTC's case and live testimony in Meta's case.  The witnesses are all "available"

under the Federal Rules of Civil Procedure, as they have been subpoenaed to testify and have not

obtained an order from the Court relieving them of the obligation to appear.  Therefore, there is

no evidentiary basis that would allow the FTC to admit the depositions of these nonparties into

evidence.  *See Gonzalez Berrios v. Mennonite Gen. Hosp., Inc.*, 2020 WL 502333, at *3 (D.P.R.

Jan. 30, 2020) ("Likewise, '[i]f a nonparty witness is available to testify, the deposition cannot

be used in lieu of live testimony (although it is available to impeach).'"); *Feinwachs v. Minn,

Hosp. Assn.*, 2019 WL 4298085, at *10 (D. Minn. Sept. 11, 2019) (explaining that Rule 32

provided no basis "permit the use of [the nonparty's] deposition testimony in lieu of live

testimony" when the witness could testify live); *G. Hall v. Jaeho Jung*, 819 F.3d 378, 384 (7th

Cir. 2016) (affirming exclusion of deposition of nonparty when the "district court even offered to

allow [the proponent] to have [the nonparty] testify at a later point in the trial if [the nonparty]

appeared."); *E. J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 755 (9th Cir. 1962) ("We see no

reason why the pre-trial deposition of a witness should be admissible when the witness is himself

present.").

Conducting the exams once, and live, will also be more probative and more efficient.

These witnesses are being called to testify about the *current* competitive landscape, which is the

relevant issue.  *See*, *e.g.*, ECF No.  413-9 (Meta MIL Opp. Ex.) at 8 (Declaration of Blake

Chandlee, *TikTok Inc. v. Garland*, No. 24-1113 (D.C. Cir. Dec. 9, 2024)) (recent sworn

statement explaining in the event of a ban of TikTok, it "would not be able to recover all the creators and users lost while TikTok was unavailable, because people who would have continued or started to use TikTok will have already turned to other competing platforms, such as Instagram, Facebook, or YouTube."). The live testimony can address current conditions; the depositions, taken years ago, cannot. If both video and live testimony is permitted, there will also undoubtedly be repetition and wasted time, to no useful end. Witnesses who are available to give testimony in person should testify in person, and not after a video session is used in the FTC's case.

Although the Court previously noted that it would not rule out the possibility of playing video in one party's case (with designations and counter-designations), and calling the witness live in the other party's case, it did not state that it adopted that rule as to **nonparties**, where it would be error for the plaintiff to introduce the hearsay deposition testimony of non-adverse and available witnesses into evidence. Additionally, the Court specifically indicated it would "revisit" the issue of video designations in lieu of live testimony generally after seeing the parties' witness lists. Dec. 9, 2024 Hr'g Tr. at 15:5-10.

The FTC also lists eight party and nonparty witnesses that the FTC indicates it "will call" or "may call" by deposition that are on Meta's witness list as "may call" live witnesses. As to these eight witnesses, Meta proposes that the FTC provide notice two weeks in advance of seeking to introduce the testimony via deposition, at which point Meta will inform the FTC if it has determined whether it intends to call the witness live. If Meta indicates that it will call the witness live, the witness should be called live by the parties, and no deposition video should be played (or read into the record). If Meta indicates that it does not know if it will call the witness live, Meta proposes that the FTC be permitted to call the witness by deposition and Meta's

counter-designations will be included, and Meta may still elect to call the witness live in its case if it so chooses.  This approach will allow the parties to present their case in an efficient and effective manner in accordance with the Federal Rules of Evidence and this Court's expressed preference for live testimony.  *See* Dec. 9, 2024 Hr'g Tr. at 3:19-24.

The FTC's arguments against Meta's sensible proposal are unavailing.  *First*, the FTC argues that the Court has discretion to accept deposition testimony.  But the Court does not have discretion to accept hearsay deposition testimony from non-party witnesses who will testify live at trial, and the FTC does not cite any case to the contrary.  *Second*, the FTC argues that imposing a sensible procedure in advance "awards Meta too much control over the FTC's case" since it could impact the "sequencing of the FTC's trial presentation."  But the sensible and efficient use of trial time is hardly unfair, and rings especially hollow coming from the FTC given that the vast majority of Meta's defense case is being presented in the FTC's case as a result of the FTC's tactical choice to proceed by calling most of the Meta witnesses in its case. *Third*, the FTC argues that the Court should allow this deviation because the designated testimony accounts for a small amount of trial time.  That's far from accurate.  The FTC has designated testimony from **sixteen** witnesses after previously representing to the Court it only intended to designate testimony from three witnesses (and it did not tell Meta otherwise until it was ordered to submit this joint statement).  Almost **half** of all the nonparties on the FTC's witness list are designated to testify by video.  Three of the four nonparty witnesses that the FTC designated and that are on Meta's Will Call list for live testimony were not even on the FTC's preliminary witness list.  *Fourth*, contrary to the FTC's characterization, Meta did not add five "may call" witnesses to its list for "tactical reasons."  It added may call witnesses (three of whom are Meta witnesses) because it had to preserve its ability to address the undisclosed testimony

from the litany of new witnesses the FTC added at the last minute, after refusing Meta's repeated requests for an earlier exchange of the witness lists and draft designations.  For that precise reason, under Meta's proposed approach, Meta will inform the FTC well in advance of any testimony from those witnesses if it determines it need not call them live.

The FTC's proposal is inefficient and prejudicial to Meta.  By design, the FTC wants to selectively dump soundbites into the record in its case, cause Meta to burn chess clock time on counter-designations, and then get a second bite at the apple with the witness in Meta's case where the parties will inevitably retread the same ground.  The Court should not allow this, and it should adopt Meta's sensible proposal.  The FTC will suffer no prejudice from adoption of Meta's proposal.  If, for some reason, a party that the FTC wants to designate for use at trial and Meta wants to call live cannot appear live, the parties can easily designate the testimony, and the FTC has already prepared those designations.

### 2.    FTC's Position

***Meta's Request to Reverse the Court's Prior Instruction That the FTC May Present Video Deposition Testimony During Its Case-in-Chief If Meta Claims It Will Later Call a Witness Live.***  The FTC opposes Meta's request to revisit the Court's unambiguous ruling that the Court would permit the FTC to present video deposition testimony even if Meta later calls the same witness live.  *See* Hr.'g Tr. 15:20-25, Dec. 9, 2024, ECF 388 ("[y]ou are going to be able to see each other's lists, and if you think, wait a minute, we want that person live, fine, but I am not going to prevent them from, depending on the numbers, having it video."); *id.* at 16:21-25 ("You [the FTC] can call the person.  You [the FTC] can play the video.  And then they [Meta] can have their testimony of the witness live. I will permit that.  The fact that they are going to call a witness doesn't preclude you . . . from using the depo video.").  In a bench trial, the Court has broad discretion to accept deposition testimony.  *See*, Scheduling & Case Mgmt. Order at 8-

9, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85 (where a person is listed on the party's witness list, the party may "call a person to testify as a live witness at trial or designate a person's deposition for introduction at trial . . . ."). The Court has provided the circumstances in which it will accept deposition testimony and need not upset that instruction now.

Meta now asks the Court to change its previous ruling, which would empower Meta to veto the FTC's decisions to present a witness's deposition testimony during its case in chief if Meta represents that it wants to call a witness live at some later date. Specifically, Meta asks the Court to order: (1) that the FTC may not present deposition testimony by video in the FTC's case in chief if Meta's witness list identifies a "will call" witness as "live"; and (2) that the FTC must disclose (two weeks in advance) whether it will use deposition testimony for a given witness and then permit Meta to decide whether Meta will call the witness live and bar the FTC from using any video for the witness based on Meta's decision. The Court should reject both requests.

First, the Court has already rejected Meta's position, and Meta has not established good cause for the Court to revisit its unambiguous prior instructions. *See* Hr.'g Tr. 15:20-25, 16:21-25, Dec. 9, 2024, ECF 388. Second, the FTC relied on the Court's prior decision when scheduling witnesses, developing its trial plan, and when designating the testimony submitted in Exhibit E. Upsetting that reliance now would prejudice the FTC's trial presentation and waste that preparation at Meta's discretion. The FTC has limited its designations to less than 7% of its overall trial time, and of these times only an estimated 4.4 hours of deposition testimony are currently marked as will call with 1.5 hours as may call. This limited set reflects the many factors at play in setting a trial plan including the efficient use of the court's trial time, the

availability of witnesses on given trial dates, and the sequencing of the FTC's trial presentation including the FTC's desire to present its prima facie case in the most efficient fashion.

Permitting Meta to decide how and when the FTC is allowed to present evidence inappropriately allows Meta to dictate both the timing and the form in which the testimony appears. That awards Meta too much control over the FTC's case – indeed, it appears that Meta's purpose in asking the Court to revisit its prior ruling is to control the FTC's presentation for tactical reasons, as it added five entirely new witnesses to its "may call" list on March 12, as soon as Meta learned that the FTC identified these as witnesses that the FTC "may call" via video.

By contrast, permitting both parties the flexibility to decide how they will present their evidence does not prejudice Meta. Meta will now have in hand – a month before trial – the FTC's final witness list and the FTC's opening designations. If Meta believes it needs certain testimony, it is free to counter-designate appropriate testimony or to draw on its witness list and call a witness live during Meta's case, as the Court has previously instructed.

The FTC respectfully requests the Court reject Meta's proposals.

### E.    The FTC's Proposed Additional Briefing

#### 1.    FTC's Position

***Admission of Untimely Data, Documents, and Expert Reports.*** Meta recently produced over six new sets of data to the FTC on February 20, 2025 and February 28, 2025, respectively. Subsequently, Meta produced a new supplemental expert report for Dr. Carlton on March 6, 2025 which relies on its recently produced data. Meta also has served seven trial subpoenas requesting documents from TikTok, Google, and Snap witnesses. While, to date, Meta has yet to identify any document produced in response to these subpoenas on its exhibit list, it has represented that it intends to rely on these late-produced data and documents. It is the FTC's

position that the Federal Rules of Civil Procedure preclude introduction of this evidence at trial. Moreover, this evidence is also inadmissible under Federal Rules of Evidence 401, 402, and 403. As such, the FTC intends to move to exclude this evidence. Meta has confirmed in its position statement that it "does not oppose briefing if it would be useful to the Court." Accordingly, the FTC proposes the following briefing schedule in advance of the pretrial conference: no later than March 14, the FTC may file its Opening Brief of no more than 25 pages; and no later than March 20, Meta may file an Opposition Brief of no more than 25 pages. The FTC does not anticipate filing a reply brief, but, if necessary, will file one of no more than 5 pages no later than 5 pm on March 23.

**2.    Meta's Position**

***Meta's Disclosures Regarding the TikTok Outage & Current Usage.*** The FTC has conceded that, to maintain its action under Section 13(b) of the FTC Act, it must show that Meta *currently* maintains a monopoly in the alleged market for "personal social networking services"; for this reason, information about present market conditions is not merely relevant, it is essential. *Cf.* MSJ Op. at 51 (Nov. 13, 2024), ECF No. 384 ("[T]ime and technological change pose serious challenges to the market analysis."). The FTC, in recognition of its burden to prove a monopoly *today,* has listed numerous proposed exhibits that were created after discovery closed and purportedly provide evidence about current conditions. *See*, *e.g.*, PX00732 (March 2025 Meta website describing Feed AI); PX00778 (January 2025 Instagram post by Head of Instagram Adam Mosseri describing the Reels tab); PX00736 (August 2024 Instagram post by Mr. Mosseri describing some of Instagram's use cases). And Meta and nonparty witnesses will necessarily, when they testify, present the facts of competition *today*.

In this context, Meta has voluntarily provided two discrete data productions to the FTC to give the agency the opportunity to review and scrutinize high-level data related to current

23

conditions before trial.  This is evidence that will further support the *existing, disclosed* opinions of Meta's expert witnesses.  The data is in a format familiar to the agency and its economists, and it does two things.  *First*, Meta has produced data associated with the overnight outage of TikTok that occurred on January 18-19, 2025.  This data was (of course) not previously available, and was produced as quickly as possible.  Meta has also disclosed tables and graphs reflecting Professor Carlton's analysis of this data – which shows that when TikTok was unavailable, usage of Instagram (especially), Facebook, and YouTube surged; usage of Snapchat increased but less dramatically.  *Second*, Meta has updated certain tables from prior expert reports related to the declining share of "friends-and-family" content on Facebook and Instagram; Meta has also disclosed the updated tables reflecting that data.

Production of this data and supplementation of Professor Carlton's report – which is limited to the tables and charts described above – are proper.  Nothing in this Court's orders prohibits such supplementation, and Rule 26(e)(2) contemplates it.  Where market conditions are subject to rapid change – as they are here – a refresh of data puts the parties and the Court in the best position to evaluate the import of recent developments.  *United States v. Microsoft Corp.*, 253 F.3d 34, 49 (D.C. Cir. 2001) ("By the time a court can assess liability, firms, products, and the marketplace are likely to have changed dramatically.").  Even in a case where the window between the close of fact discovery and trial was shorter, the district court allowed such supplementation.  *See FTC v. Kroger Co.*, No. 3:24-cv-00347-AN (D. Or. Aug. 16, 2024), ECF No. 407 at 3 (permitting defendant to introduce evidence of post-discovery events relating to its defenses in antitrust case).

There is no prejudice to the FTC.  Meta disclosed the underlying data weeks ago in a form familiar to the FTC's experts, giving the FTC ample opportunity to prepare any response

before trial.  Meta's expert, Professor Carlton, disclosed on March 6, 2025, the specific analyses of these data that he will provide at trial and the previously disclosed opinions they support.  The only harm to the FTC's case is what the data show, and that is hardly a cognizable reason for the Court to preclude the most probative evidence of current market conditions from trial.

Meta does not believe any briefing relating to the use of this evidence is necessary – but does not oppose briefing if it would be useful to the Court.  Twenty-five pages per side is, however, out of proportion to both the scope of this dispute and the page limits for other case submissions.  Meta proposes a ten-page limit per side (exclusive of exhibits and inclusive of any reply briefing).  Meta is amenable to the FTC's proposed briefing schedule or any other schedule the Court would find most helpful.

***TikTok, Google, and Snap Trial Subpoenas.***  On February 5, 2025, Meta served the FTC with notices of nonparty trial subpoenas to certain current employees of Snap, YouTube, and TikTok who appear on one or both of the parties' witness lists.  The trial subpoenas include tailored requests for the witnesses to bring to Court documents in their possession relating specifically to the January 2025 TikTok outage.  *See*, *e.g.*, Ex. 4 (subpoena to David Levenson (Snap)).  These witnesses observed substitution from their app (TikTok) or to their apps (Snap, YouTube) in connection with the outage.

Meta will ask these witnesses about their outage analyses, which are expected to be materially inconsistent with the FTC's allegation that YouTube and TikTok are *not* substitutes for the Meta apps.  In questioning these witnesses, Meta believes that it will be useful to both parties and the Court to have access to the analyses those witnesses would be describing, as a source for potential impeachment, or – if the Court deems appropriate at trial – as a potential exhibit to be entered into evidence.  This is a plainly appropriate use of a trial subpoena for

documents.  *See*, *e.g.*, *Alvarado v. Rainbow Inn, Inc.*, 2016 WL 10703674, at *1 (D.D.C. Feb. 5, 2016) (enforcing trial subpoena for documents).

The FTC did not seek in limine to move on this issue, though it had the subpoenas well before the deadline for such motions.  It should not be allowed to file such motion now, out of time.  Meta does not believe any briefing on the trial subpoenas is necessary.  To the extent the Court believes briefing would be useful, Meta respectfully submits that the parties can address the issue within the same ten-page brief concerning Meta's disclosure of January 2025 outage and current usage data.

F.   **Third Party Remote Attendance**

Several non-party witnesses have raised the prospect of testifying remotely.  The parties will attempt to either resolve or crystallize any disputes in accordance with the Court's instructions, prior to the final pretrial conference.

Dated:    March 12, 2025              Respectfully submitted,

*/s/ Daniel Matheson*
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
Nathan Brenner
Susan Musser (D.C. Bar 1531486)
Noel Miller (D.C. Bar 1026068)
Owen Masters (D.C. Bar 242139)
Maria Dimoscato (D.C. Bar 489743)
Karen Goff

Federal Trade Commission
Bureau of Competition
400 7th Street, SW
Washington, DC 20024
Tel.: (202) 326-2075
Email: dmatheson@ftc.gov

*Counsel for Plaintiff Federal Trade Commission*

*/s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Aaron M. Panner (D.C. Bar No. 453608)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*