IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION**,

               Plaintiff,

v.

**META PLATFORMS, INC.**

               Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

**PUBLIC VERSION**

**MOTION TO EXCLUDE UNTIMELY AND CHERRY-PICKED EVIDENCE**

Meta's eleventh-hour efforts to offer late-produced, cherry-picked documents, data, and expert testimony contravenes this Court's orders, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.  In its Scheduling Order, the Court imposed discovery deadlines on both parties to ensure a fair, orderly, and efficient discovery process and the parties spent months negotiating the contours of discovery within those deadlines.  Meta seeks to upend those efforts by self-selecting how, what, and when it will seek and produce additional discovery.  Far from a procedural faux pas, Meta purportedly plans to use this information to update the Court on recent market conditions.  Evidence relating to Meta's monopoly power may be relevant, but Meta's new evidence has little-to-no probative value on that question.  And what little probative value it does have is substantially outweighed by prejudice.  As it stands now, the public record since the close of discovery shows that Meta continues to reap enormous monopolist profits, Facebook and Instagram continue to be destinations for friends and family sharing, and Meta has faced no material entrant for personal social networking services.  A fulsome update of discovery from Meta and third parties would surely show those conditions still exist today.  But Meta attempts to unbalance and unfairly skew what that clear evidentiary record would show with its cherry-picked, late reopening of discovery.  The Court should not allow it.

Meta's late-produced discovery should not be admitted into evidence for two separate reasons.  First, it is out of time and violates Federal Rules of Civil Procedure 16 and 26.  Second, this discovery's minimal relevance is substantially outweighed by its prejudice making it inadmissible under Rules of Evidence 401, 402, and 403.

I.      **Meta's Late Discovery Violated this Court's Scheduling Order and Rule 26**

      **A.  Meta's Late-Produced Discovery**

The Court set deadlines for fact and expert discovery under Federal Rule of Civil Procedure 16(b)(1).  Scheduling Order at 1 (March 3, 2022), ECF No. 103.  A Scheduling Order

1

"serve[s] as 'the unalterable road map (absent good cause) for the remainder of the case.'" *Olgyay v. Soc. for Env't Graphic Design, Inc.*, 169 F.R.D. 219, 220 (D.D.C. 1996). Under this Scheduling Order, as amended, fact discovery closed on May 22, 2023 and expert discovery closed on February 20, 2024. Musser Decl. ¶¶ 3-5. As such, Meta's selective data productions on February 20 and 28, 2025, and its seven nonparty document subpoenas issued in February, are nearly two years late. Musser Decl. ¶¶ 11, 13, 17. So too with Professor Carlton's March 6, 2025 Expert Report ("March Report"), which is over a year late. Musser Decl. ¶ 14.

Notably, Meta asked neither the FTC nor the Court for leave to amend those deadlines. Even if they had, they cannot fulfill Rule 16(b)(4)'s requirement to show "good cause" to amend. *See Valle v. Karagounis*, No. 1:19-cv-03764, 2020 WL 5505299, at *2 n.1 (D.D.C. Sept. 11, 2020). "The primary factor in determining whether good cause exists is the diligence of the party seeking discovery before the deadline." *United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 136 (D.D.C. 2012). Meta failed to exercise any diligence in seeking (or agreeing to produce) additional out-of-time discovery. And when the FTC attempted to obtain updated discovery, Meta objected on the basis that discovery was closing and a "refresh" was burdensome. Musser Decl. ¶ 10. While the FTC would have been amenable in principle to an orderly and fair discovery refresh schedule negotiated in advance, Meta's belated effort to surreptitiously amend the Scheduling Order by seeking and producing one-sided discovery without having afforded the FTC the opportunity to do to the same is deeply prejudicial to the FTC. Nor can the FTC ameliorate that substantial prejudice. With just weeks to go before trial, there is simply no time for the parties to obtain a fulsome and fair refresh of discovery. *See Madaket, LLC v. Sweet Grace Distilling Co., LLC*, No. 23-2928 (JEB), 2024 WL4973402, at *3 (D.D.C. Dec. 4, 2024) (holding that the moving party "must show both diligence and a lack of

prejudice to the opposing part[y]") (internal quotation omitted).

Nonetheless, Meta asserts that updating the Court on current market conditions is good cause for its violations. Joint Pretrial Statement at 23 (Mar. 12, 2025), ECF No. 417. Not so. Deadlines "put an opposing party on notice of what it must contend with at trial." *Cochran v. Brinkmann Corp.*, 1:08-CV-1790, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009). And while antitrust cases often involve analysis of current competitive conditions, courts recognize that a trial record can never be fully "up-to-date" and impose limits on the admission of "new" evidence. *See* Order at 6-10, *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK (N.D. Cal. Dec. 13, 2018), ECF No. 997 ("By necessity, the evidence at trial will never be fully up-to-date following the cutoff for discovery."); Tr. of Status Conf. at 25-32, *United States v. Google, LLC*, No. 1:20-cv-03010-APM (D.D.C. May 13, 2022), ECF No. 353 (ruling that the end of fact discovery was the cut-off date for document production); Tr. at 89-92, *United States v. Google, LLC*, No. 1:23-cv-00108, ECF No. 1360 (E.D.V.A. Sep. 20, 2024) (sustaining an objection to testimony about a post-discovery document). The Court should reject Meta's efforts to selectively supplement the record.

### B. Prof. Carlton's March Expert Report

In addition to Rule 16, the March Report is also subject to Rule 26, which requires parties to disclose expert reports that contain a complete statement of their opinions "at the times and in the sequence that the court orders." F.R.C.P. 26(a)(2)(B), (D). This disclosure is required to prevent unfair surprise at trial and to lock in the expert witness' opinions and their basis. *See Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003). Here, Meta's Rule 26(b) expert disclosures were to be served by October 3, 2023. Min. Order (Jun. 8, 2023), ECF No. 305. Rule 26(e) provides a "limited exception" to that deadline which is to be used only for "correcting inaccuracies or adding information that was not available at the time of the initial report." *Minebea Co., Ltd. v.*

*Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██. Even for what it is—a late supplemental expert report—the March Report fails to meet basic expert disclosure obligations and does not provide "adequate notice" of the contours of Prof. Carlton's opinion. *Heller v. D.C.*, 952 F. Supp. 2d 133, 139 (D.D.C. 2013). It should be rejected for that reason alone. *See Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D. Kan. 1997) ("To satisfy Fed. R. Civ. P. 26(a)(2)(B) the report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them.").

That aside, Prof. Carlton's March Report also violates Meta's disclosure obligations under Rule 26(b) and is an improper expert supplementation under Rule 26(e). *First*, the first set of figures regarding the TikTok outage in the March Report constitutes an untimely new expert opinion under Rule 26(b)(i). *See* Ex. E ████████████████████████

████████████████████████████████████████████████

Prof. Carlton's initial report, however, contained no analysis of *any* third-party outage events. Rather, it was Prof. List's expert report that analyzed one such event—India's 2020 Chinese App

4

Ban, which included TikTok. To the extent that Prof. Carlton wanted to opine on any outage event involving third-party apps, he should have disclosed that opinion in his original report. As such, the January 2025 TikTok Outage analysis in the March Report is not an update or supplement to any analysis provided by Prof. Carlton in his initial report and should be excluded. *See Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (untimely expert supplementation was impermissible under 26(e) because it advanced a new theory in an attempt to fix a weakness identified at summary judgment); *Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, No. 17CV666 AJB (BGS), 2019 WL 3554938, at *2 (S.D. Cal. Aug. 5, 2019) ("If the information does not correspond to the prior disclosure, it cannot be said to correct an inaccuracy or fill in something incomplete within that prior disclosure.").

*Second*, the other set of figures and tables in the March Report is either improper new opinion or impermissible supplementation under Rule 26(e). Prof. Carlton claims  supplementation of his report with self-selected data after the close of fact discovery and one month before trial is untimely. *See, e.g., Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) (holding that supplementation of an expert report one month prior to trial was untimely). Meta has had sole access to this data since Prof. Carlton's initial report was filed. Meta chose, however, not to supplement Prof. Carlton's analysis on a rolling basis or at any time since expert discovery closed. Rather, it sprung this updated analysis a month before trial, requiring the FTC

5

to either divert resources and reopen discovery while preparing for trial or instead to be hampered in its ability to fully cross Prof. Carlton. Had Meta chosen to propose rolling updates to Prof. Carlton's data sets beforehand, the FTC would have been able to request parallel rolling updates to data underlying the FTC experts' analyses. But Meta instead chose to cherry-pick slices of its own data for only its expert.

Allowing Meta to selectively supplement the record at such a late time frustrates the purpose of the disclosure requirements in Rule 26, "which was to end discovery and fix for the parties the evidence and opinions with which they would have to contend at trial so a trial could be fairly and efficiently conducted." *Cochran,* 2009 WL 4823858, at *5; *see also Fox v. Gen. Motors LLC*, No. 1:17-cv-209-MHC, 2019 WL 3483171, at *15-16 (N.D. Ga. Feb. 4, 2019) (excluding one expert supplement demonstrating "further support" for expert's opinion and another reflecting "consideration of additional evidence"); *Tech Data Corp. v. Au Optronics Corp.*, No. 8:11-CV-2454-T-33JSS, 2015 WL 12843886, at *7-9 (M.D. Fla. Oct. 22, 2015) (excluding expert supplement making "adjustments to the [initial report's] data" and "offer[ing] new conclusions based upon this data."). As such, this Court should exclude the March Report.

## C. The Proper Remedy in this Case is to Exclude Late-Produced Evidence

"Rule 16(f)(1)(c) allows courts to issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii) if a party or its attorney . . . fails to obey a scheduling or other pretrial order." *Shatsky v. Syrian Arab Republic*, 312 F.R.D 219, 224-25 (D.D.C. 2015) (ellipses in original) (internal quotation omitted). Rule 37(b)(2)(A)(ii) in turn permits courts to preclude the "disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Exclusion is an appropriate remedy if it is just and proportional to the infraction. *See Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). In making that determination,

6

courts analyze the following factors: the prejudice to the Plaintiffs; the interest in deterrence; and, finally, the prejudicial impact to the judicial system. *Shatsky*, 312 F.R.D. at 225-26. Similarly, Rule 37 provides that if a party cannot show that its failure to follow Rule 26 was not substantially justified or harmless, "[t]he sanction of preclusion is 'automatic and mandatory.'" *Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 66 (D.D.C. 2010).

Exclusion of Meta's late productions and discovery requests is the appropriate relief under Rule 16. By cherry picking when, how, and to what extent it re-opened both fact and expert discovery, Meta has unilaterally and unevenly skewed the presentation of evidence regarding current market conditions. Unlike Meta, the FTC only has access to public materials post-discovery and, as such, cannot produce new documents to offset any prejudice. The "[p]rejudice is inherent when deadlines are disregarded in complex cases with extensive discovery . . . ." *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-cv-2768, 2015 WL 12645745, at *2 (E.D. Pa. May 26, 2015).

Meta's failure to negotiate a balanced refresh schedule combined with its subsequent decision to unilaterally roll out snippets of new discovery years later is likewise both prejudicial to the Court's interest in an efficient discovery process and justifies a remedy that properly deters such conduct in the future. *See Shatsky*, 312 F.R.D. at 228 ("There is, moreover importance *per se* in not allowing a party to ignore orders to ensure that the litigation process does not descend into chaos.") (internal quotations omitted); Musser Decl. ¶¶ 7-13. Further, given this evidence's limited probative value and prejudicial impact—*see infra* Section II—excluding it is a "just" and "proper" remedy under Rule 16(f)(1)(c).

The foregoing problems also underscore that Meta cannot meet either requirement to avoid the automatic and mandatory preclusion of the March Report under Rules 26 and 37. The

Federal Rules provide that when a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Meta's disregard of Rule 26 is not justified. Meta has relied on and disclosed Prof. List, not Prof. Carlton, as its expert to opine on certain third-party outage events. Now it sets Prof. List aside, and instead Prof. Carlton opines on the recent TikTok outage. This tactical reassignment is not sufficient reason to avoid Rule 37 penalties. *See Key v. Qualcomm Inc.*, No. 23-3354, 2025 WL 597604, at *10 (9th Cir. Feb. 25, 2025) (upholding the district court's exclusion of a supplemental expert report because it "was not offered because 'in some material respect the disclosure or response [was] incomplete or incorrect,' Fed. R. Civ. P. 26(e)(1)(A), but because Plaintiffs shifted their litigation strategy").

Meta also cannot justify its late supplementation of Prof. Carlton's ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Meta had months to produce updated data and only now—nearly a month before trial—chose to provide it to the FTC. *See NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 786 (7th Cir. 2000) (finding the defendant was not justified in filing a supplemental expert report after the close of discovery because it could have filed a preliminary supplemental report or otherwise made the court aware of its plans); *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109-10 (D.D.C. 2005).

Moreover, Meta's late expert proffer is not harmless. It is inherently prejudicial in that only Meta's expert has been able to access Meta's internal documents and data to bolster his opinions and bring them "up to the minute." That dynamic also means this evidence creates an inherently distorted picture of current market conditions: not part of the updated record are the voluminous other data sets and documents relied upon by the FTC's economic expert to

8

demonstrate, *inter alia*, Meta's dominant market shares using multiple metrics; consumers' continued use of Facebook and Instagram for friends and family sharing; and significant ad load burdens and price discrimination based on inelastic demand for friends and family sharing. Given neither the supplementation nor the newly-disclosed opinion is justified or harmless, exclusion of the March Report is proper. *See Jackson v. Teamsters Loc. Union 922*, 312 F.R.D. 235, 237 (D.D.C 2015) (Boasberg, J.) (excluding late supplementation of expert opinion).

## II. Meta Also Cannot Show That its Late-Produced Evidence is Admissible

Setting aside any violation of the Federal Rules, Meta bears the burden to show that its late-produced documents and data are admissible. *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990); *United States v. Fuller*, No. CR 23-209 (CKK), 2024 WL 4880497, at *2 (D.D.C. Nov. 25, 2024). Federal Rule of Evidence 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by unfair prejudice. *See United States v. Bennett*, No. CR 21-312 (JEB), 2023 WL 6460026, at *2 (D.D.C. Oct. 4, 2023).

Here, both the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have low probative value. A study of the TikTok event has all the flaws—and more—of Prof. List's analysis of India's 2020 Chinese App Ban, which the Court noted was "of questionable relevance." *See FTC v. Meta Platforms, Inc.*, 2024 WL 4772423 at *18 (D.D.C. Nov. 13, 2024) (explaining that Prof. List's analysis "confuses the cross-elasticity of demand of [Meta's] own products with that of TikTok," involves a "severe price increase[]," and "risk[s] falling prey" to the Cellophane fallacy). Similarly, Prof. Carlton's attempts to diminish the significance of friends and family content on Facebook and Instagram rely on Meta's own "black box" and unduly narrow definition of "friend" content. And Meta's continued claim that such content is declining as a portion of time spent critically does not refute that friends and family sharing remains a large and important part of both apps. FTC's Opp'n to Meta's Mot. for Summ. J. at 7-

9

8, ECF No. 363-1; Ex. I (PX9007) ¶¶ 234-254.  Further, ███████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

With respect to prejudice, Meta's cherry-picked discovery is the precise type of skewed record evidence that courts in prior antitrust cases have given little weight or outright excluded. *See FTC v. Qualcomm, Inc.*, No. 5:17-cv-00220-LHK Order Denying Qualcomm's Request to Introduce Evidence of Post-Discovery Events, at *5 (N.D. Cal. Dec. 13, 2018) (excluding evidence that post-dated the conclusion of the discovery period because it derived from "cherry-picked data" as opposed to "full discovery"); *Saturn Mfg., Inc. v. Williams Patent Crusher & Pulverizer Co.*, 713 F.2d 1347, 1357 (8th Cir. 1983) (affirming exclusion of evidence discovered during trial because the prejudice outweighed the relevance, as "there was no adequate opportunity for the opposing side to conduct an investigation"); *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 434-35 (5th Cir. 2008) (post-litigation evidence that "*could arguably* be subject to manipulation" not entitled to weight) (emphasis in original).

Given the minimal probative value and prejudice inherent in the information asymmetry, Meta's late discovery and evidence should be excluded under Rule 401, 402, and 403.

## CONCLUSION

For the foregoing reasons, the FTC asks this Court to exclude Meta's February 20, 2025 and February 28, 2025 late-produced data, the March Report and any expert opinions regarding the same, and any documents or data responsive to Meta's third-party document subpoenas.

Dated:   March 14, 2025  Respectfully submitted,

*/s/ Daniel J. Matheson*
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Susan Musser (D.C. Bar 1531486)
Patricia Galvan
Peter Taylor
Owen Masters (D.C. Bar 242139)
Oren Vitenson (D.C. Bar 90005750)

Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff
Federal Trade Commission*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of March 2025, I served the sealed document on the following counsel via electronic mail:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M. Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davisolk.com

       Respectfully submitted,

       */s/ Daniel Matheson*
       Daniel Matheson, Esq. (D.C. Bar #502490)
       Federal Trade Commission
       Bureau of Competition
       600 Pennsylvania Avenue, N.W.
       Washington, DC 20580
       Telephone: (202) 326-2075
       Email: dmatheson@ftc.gov

       *Attorney for Plaintiff*
       *Federal Trade Commission*