# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-03590 (JEB) |
| | **PUBLIC VERSION** |
| **META PLATFORMS, INC.** | |
| Defendant. | |

**Plaintiff Federal Trade Commission's Reply in Support of Plaintiff's Motion *in Limine* to Admit Select Testimony of Adam Presser and Julia Roberts**

Meta concedes that during the discovery process the FTC developed sworn testimony that Meta describes as probative of the "potentially case-dispositive issue of market definition." Def.'s Opp. at 13, ECF No. 414-1 (hereinafter "Opp."). Yet Meta asks the Court to ignore this evidence"—provided by knowledgeable and well-prepared corporate representatives"—that TikTok and Pinterest both understand that Facebook and Instagram are personal social networking services, while TikTok and Pinterest are not. Meta's position should be rejected because it contradicts the approach of cases within this district (*Thomas v. Moreland*), cases involving Section 2 violations (*FTC v. Qualcomm*), and other applicable and well-reasoned authority such as *Sara Lee Corp. v. Kraft Foods Inc*. *See* Pl.'s Br. at 8-9, ECF No. 403-1 (hereinafter "Opening Br."). Meta cannot undermine these cases, and therefore simply says those courts "got it wrong." Opp. at 11. This weak response to the authorities cited by the FTC should not be persuasive to the Court, because the FTC's authorities are applicable to the present situation, while cases cited by Meta are readily distinguishable or entirely inapposite.

Here, unlike in the cases cited by Meta, the FTC seeks to admit testimony regarding matters within the corporate knowledge of relevant industry participants, and that testimony will be provided by witnesses that the FTC will call live at trial, who can be questioned by both the Court and Meta itself. Specifically, in accordance with the Court's instructions to call its "principal witnesses" "in person," Hr'g Tr. 5:22-24, ECF No. 388, the FTC intends to call live at trial Mr. Adam Presser, TikTok's current Chief Operating Officer and Head of Trust and Safety, and Ms. Julia Roberts, Pinterest's Product Growth Lead. Opening Br. at 5, 7. The FTC seeks through this motion to ensure that Mr. Presser and Ms. Roberts are permitted to provide testimony █████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

The Court is well positioned to give appropriate weight to the evidence of TikTok's and Pinterest's corporate views in light of the other evidence that will be presented during the trial, including testimony from all of the other TikTok and Pinterest employees deposed in this case (three former employees and one current employee), each of whom appear on the parties' witness lists:

- Mx. V. Pappas, TikTok's former Chief Operating Officer, who left TikTok in 2023. Meta has identified Mx. Pappas as a "will call" live witness, and the FTC has identified Mx. Pappas as "will call" by video.

- Mr. Scott Coleman, Pinterest's former VP of Growth and International Product, who left Pinterest in 2022. Meta has identified Mr. Coleman as a "will call" live witness.

- Mr. Eric Morrison, TikTok's former Director of UX Research, who left TikTok in 2022. The FTC has identified Mr. Morrison as "may call" by video, and Meta has identified Mr. Morrison as a "may call" live witness.

- Mr. Blake Chandlee, TikTok's President of Global Business Solutions at the time of deposition, who was also a Meta executive from 2007-2020. The FTC has identified Mr. Chandlee as "will call" by video, and Meta has identified Mr. Chandlee as a "will call" live witness.

In sum, Meta concedes that the relevant testimony from Mr. Presser and Ms. Roberts is probative of a key issue in this case and identifies no risk of unfair prejudice that would result from admitting their testimony. This Court is well positioned to give appropriate weight to the testimony of Mr. Presser and Ms. Roberts. Accordingly, the Court should permit Mr. Presser and Ms. Roberts to provide trial testimony related to TikTok's and Pinterest's ████████████████ just as other courts around the country have determined in similar circumstances.

## I.    ARGUMENT

This Court should permit Mr. Presser and Ms. Roberts to testify at trial ████████████ ████████████████████████████ because these topics are "within the collective knowledge

or subjective belief of" their employers, and the witnesses provided knowledgeable deposition testimony on these topics as 30(b)(6) witnesses. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). Meta's contrary position ignores precedent from courts around the country that adopt a pragmatic approach and routinely hold that live trial testimony is appropriate regarding matters within corporate knowledge, when provided by non-party witnesses who testified regarding the same topics at deposition pursuant to Rule 30(b)(6).

### A. Meta's Authorities Are Distinguishable

#### 1. *Kraft Foods* is inapposite

Meta's principal authority, *Kraft Foods Global, Inc. v. United Egg Producers, Inc.*, is readily distinguishable because: (1) the relevant testimony related to how entities acted in particular instances rather than to matters within an entity's collective knowledge; (2) the court addressed whether deposition *transcripts* would be admitted at trial rather than whether live testimony would be admissible at trial; and (3) the case involved a jury trial rather than a bench trial. 2023 WL 5647204, at * 4 (N.D. Ill. Aug. 31, 2023) (the relevant testimony related to "evidence about the pressure from grocers" that was allegedly exerted on egg producers, and "grocers' involvement in purportedly requesting and approving certain aspects of the" program at issue); *id.* at *13 ("the Court reserves a ruling on the admissibility of any particular deposition transcript"); *id.* at *4 ("evidence about the pressure from grocers is directly relevant to the two most critical issues that the jury will decide at trial") (internal quotations omitted).

The FTC has already addressed the significance of the first difference between this matter and *Kraft*: it is appropriate to permit testimony from a non-party's 30(b)(6) witness where it relates to matters within corporate knowledge, while admitting such testimony is "less appropriate" where it relates to how parties acted in a particular instance. *See* Opening Br. at 9

(quoting *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011)).  The second and third differences between this matter and *Kraft* are inter-related and indicate that the Court should admit the testimony of Mr. Presser and Ms. Roberts: in *Kraft*, a jury was asked to consider the deposition transcripts of witnesses who could not be cross-examined; whereas this is a bench trial in which the witnesses will be called live.

For these reasons, *Kraft* does not control this Court's holding in this matter: indeed, the *Kraft* court recognized that even within its own district, "courts seem to follow a flexible, pragmatic approach when it comes to Rule 30(b)(6) testimony at trial," and "several courts in this district have held that 'Federal Rule of Evidence 602's personal knowledge requirement does not preclude 30(b)(6) testimony that is in the nature of corporate knowledge.'"  *Kraft*, 2023 WL 5647204, at *9 (quoting *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2020 WL 10505198, at *1 (N.D. Ill. Dec. 4, 2020)).  In the circumstances of the *Kraft* case, the court might reasonably have determined that the pragmatic approach would require percipient witnesses to provide evidence that grocers pressured egg producers (or did not do so), minimizing the risk that a jury might give inappropriate weight to deposition transcripts not subject to cross examination.  Here, the pragmatic way for the Court to consider evidence about matters within the corporate knowledge of TikTok and Pinterest—but not necessarily within the personal knowledge of any single individual—is to permit Mr. Presser and Ms. Roberts to testify regarding the matters they previously testified to at deposition.  The Court is well positioned to lend appropriate weight to evidence regarding the corporate positions of TikTok and Pinterest, provided by witnesses who will be subject to cross-examination and examination by the Court.

    2.   <u>If *Kraft* were applicable, Mr. Presser's and Ms. Roberts' testimony would be appropriate because each witness has personal knowledge</u>

Furthermore, under *Kraft*, both Mr. Presser's and Ms. Roberts' testimony would be appropriate because *Kraft* holds that witnesses in very similar circumstances have adequate personal knowledge.  The *Kraft* court explained that a "Rule 30(b)(6) witness can gain personal knowledge when preparing for the deposition, and thus satisfy the Rule 602 requirement for personal knowledge through that route."  *Kraft*, 2023 WL 5647204, at *12.  This ability to gain personal knowledge is interpreted broadly and includes information learned "when preparing for the deposition, even if the witness had no personal knowledge beforehand."  *Id.*  Indeed, *Kraft* held that this was the rule the court would apply when examining the deposition transcripts at issue to determine which portions could be considered by the jury.  *Id.* at *13 (holding that the court would admit "the grocers' Rule 30(b)(6) deposition testimony . . . if the witness had personal knowledge. The Court will rule on the admissibility of the Rule 30(b)(6) depositions on a deposition-by-deposition, line-by-line basis as necessary").  In reaching this conclusion, *Kraft* relied on *City of Huntington v. AmerisourceBergen Drug Corporation*, which likewise held that a witness could testify at trial based on personal knowledge he acquired while preparing for a 30(b)(6) deposition.  2022 WL 468183, at *4-5 (S.D. W. Va. Feb. 15, 2022) (Rule 602 does not "require that personal knowledge be acquired contemporaneous with the events at issue").

Thus, even if this Court were to apply the approach of the *Kraft* court, as Meta suggests, the Court should still rule in the FTC's favor because Mr. Presser and Ms. Roberts meet *Kraft*'s definition of personal knowledge and are therefore qualified to testify regarding the █████  Both Mr. Presser and Ms. Roberts spent significant time preparing for their depositions, including ██████████████████████████████████  ████ ██████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████

Therefore, they acquired the personal knowledge necessary to testify regarding ███████

3.  The cases cited in *Kraft* are inapplicable

According to Meta, this Court should disregard the authorities cited by the FTC because the *Kraft* court suggested that the FTC's authorities are contradicted by "the stronger current of the case law."  *See* Opp. at 11 (quoting *Kraft*, 2023 WL 5647204, at *10).  But reviewing the fourteen cases cited in *Kraft* reveals that that the *Kraft* court relied on authority that—whatever its applicability to the entirely different scenario presented in *Kraft*—is largely inapplicable here for reasons that the FTC has already explained.  Of the fourteen cases cited in *Kraft* that suggest that trial testimony must be limited to matters within the witness's personal knowledge, nine are inapposite because they relate to a party's *own* 30(b)(6) witness's testimony.  *Kraft*, 2023 WL 5647204, at *10 (The list includes (1) *Union Pump Co. v. Centrifugal Tech. Inc.*; (2) *Antero Res. Corp. v. C&R Downhole Drilling, Inc.*; (3) *Liquid Cap. Exch., Inc. v. BDC Grp., Inc.*; (4) *Hipwell v. Air & Liquid Sys. Corp.*; (5) *In re Davol, Inc./C.R. Bard, Inc.*; (6) *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., Inc.*; (7) *Brooks v. Caterpillar Glob. Mining Am.*; and (8) *In re RFC & RESCAP Liquidating Tr. Action*; and (9) *Waldrop v. Johnson City*).  The FTC is not seeking to admit testimony of its own 30(b)(6) witness, so all of these cases are inapposite.  *See* Opening Br. at 12-13.  In such cases, the offering party has control over better sources of information: witnesses with personal knowledge or original documents.  And permitting a party's own Rule 30(b)(6) witness to testify beyond their own personal knowledge would allow self-interested witnesses to repeat hearsay.  By contrast, these concerns are not present here where the FTC seeks to elicit the testimony of unbiased non-parties.  *Cf. VIIV Healthcare Co. v. Mylan Inc.*, 2014 WL 2195082, at *2 (D. Del. May 23, 2014) (stating that there's a "better case" for

admitting non-party Rule 30(b)(6) testimony than that of a party's own Rule 30(b)(6) witness, and excluding the testimony of a party's own 30(b0(6) witness.  Notably, this list of nine includes *Sabre International Security v. Torres Advanced Enterprise Solutions, LLC*, 72 F. Supp. 3d 131 (D.D.C. 2014), which Meta appears to cite as a principal authority.

Setting aside the nine cases cited above, the FTC has already explained in its Opening Brief why three additional cases cited by *Kraft* are inapposite.  *See* Opening Br. §§ III.C.2, III.C.3 (discussing *Stryker Corp. v. Ridgeway*, 2016 WL 6585007 (W.D. Mich. Feb. 1, 2016); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2022 WL 2800911 (D. Del. June 27, 2022); and *Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, 2014 WL 4983912 (M.D. Fla. Oct. 6, 2014)).  As the FTC has explained, these cases are inapposite either because the relevant witness disclaimed any knowledge of the relevant matter (*IOENGINE*), or because the testimony at issue related to how a party acted in a given instance rather than to matters within corporate knowledge (*Stryker*, *Indus. Eng'g*), or because the testimony would violate the best evidence rule (*Indus. Eng'g*).  *See* Opening Br. §§ III.C.2, III.C.3.  Meta's opposition does not even attempt to address these distinctions, instead advocating for a blanket rule that would keep probative evidence from this Court.

The thirteenth case cited by *Kraft* is *City of Huntington*: as discussed above, it does not support the exclusion of Mr. Presser's or Ms. Roberts' testimony, because Mr. Presser and Ms. Roberts acquired personal knowledge ███████████████ in the course of preparing for their 30(b)(6) depositions.  *See* 2022 WL 468183, at *4-5.

The fourteenth and final case cited by *Kraft* is also one of Meta's principal authorities, *FTC v. Vyera Pharmaceuticals, LLC*, 2021 WL 5300019 (S.D.N.Y. Nov. 15, 2021).  That case is inapposite for the reasons discussed in the section below.

4.  The *Vyera* defendants did not claim that the non-party witnesses had corporate knowledge

Meta's second principal authority, *FTC v. Vyera Pharmaceuticals, LLC*, fares no better than *Kraft*. The defendants in *Vyera* did not argue that the non-party 30(b)(6) testimony at issue was "based on corporate knowledge," *Sara Lee*, 276 F.R.D. at 503, but rather, claimed the testimony was "(1) not hearsay at all, (2) within the witness's personal knowledge, and/or (3) supported by additional record evidence." Ex. A at 3, Defs.' Opp. to Pls.' Mot. *in Limine*, *Vyera*, 2021 WL 5300019. Thus, the basis for admitting Mr. Presser's and Ms. Roberts' testimony was not considered by the *Vyera* court, for the good reason that unlike the testimony of Mr. Presser or Ms. Roberts, the 30(b)(6) testimony at issue in *Vyera* related to "proving how the parties acted in a given instance." *Sara Lee*, 276 F.R.D. at 503. For example, the *Vyera* defendants sought to admit non-party 30(b)(6) testimony on the steps taken by the non-party's research and development team prior to, and during the development of one of the products at issue. Ex. B, App. A at 9, 118:15-120:7, Pl.'s Mem. In Supp. of Mot. *in Limine*, *Vyera*, 2021 WL 5300019. In another example, the FTC sought to exclude testimony related to the non-party's receipt of a shipment of chemicals. *Id.* at App. A at 12-13, 145:19-148:22. By contrast, Mr. Presser's and Ms. Roberts' testimony ███████████ concerned their corporations' "official position[s]." *See Sara Lee*, 276 F.R.D. at 503.

5.  Meta's remaining authorities are inapposite

As discussed above as well as in the FTC's Opening Brief, Meta's third principal authority, *Sabre*, 72 F. Supp. 3d 131, is inapposite here because the court excluded the testimony of the defendant's own 30(b)(6) witness. Opening Br. at 12-13. The same is true of another case cited by Meta, *Tijerina v. Alaska Airlines, Inc.*, 2024 WL 270090, at *2-3 (S.D. Cal. Jan. 24, 2024).

Meta also cites *Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, 2021 WL 5974163, at \*5 (Fed. Cir. Dec. 16, 2021), but that case is inapposite because the non-party 30(b)(6) testimony at issue related to "proving how the parties acted in a given instance[,]" *Sara Lee*, 276 F.R.D. at 503. In *Alpek*, the 30(b)(6) testimony at issue related to the intended recipient for a particular product shipment; moreover, the testimony was inadmissible because it was outside the witness's personal knowledge and also outside the knowledge of the corporation. *See id.* at \*4 ("a Rule 30(b)(6) corporate representative is only competent to testify about information known to the corporation.").

Meta's final citation, *Digene Corp. v. Ventana Medical Systems, Inc.*, 316 F. Supp. 2d 174, 181 n.10 (D. Del. 2004), is unavailing because similar to *Kraft*, the court rejected the use of a 30(b)(6) deposition transcript, rather than live testimony. Furthermore, *Digene* excluded the Rule 30(b)(6) testimony of a non-party in a footnote without discussing the substance of the proffered testimony, so there is no indication that the testimony related to topics within corporate knowledge. As a result, *Digene* is inapposite.

### B. Regardless Of Mr. Presser's Or Ms. Roberts' Personal Knowledge, They Should Be Permitted To Testify To ███████████████ Because They Are Not Hearsay

Regardless of Mr. Presser's or Ms. Roberts' personal knowledge regarding their ███████████████████, they should still be able to testify about those documents because the documents themselves are subject to hearsay exceptions. Per Meta's own authority, "[30(b)(6)] testimony . . . will be admissible only to the 'extent such information is based on [his] personal knowledge and not on hearsay, *or to the extent that an exception to the hearsay rule applies*.'" *Tijerina*, 2024 WL 270090, at \*3 (emphasis added); *see also Waldrop*, 2022 WL 20439383, at \*2 (admitting 30(b)(6) testimony on matters either based on personal knowledge or

"other matters that are not based on personal knowledge to the extent that they are otherwise admissible pursuant to a hearsay exception."); *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) ("a corporate representative may not testify to matters outside his own personal knowledge to the extent that information is hearsay not falling within one of the authorized exceptions.") (internal citations omitted). ██████████████████ Pinterest and TikTok fall within exceptions to the hearsay rule because (1) ████████████████ ████████████████; and (2) both Pinterest's and TikTok's ████████████ fall within the residual exception.

████████████████████████████████

████████████████████████████████████

████████████; *see* Fed. R. Evid. 803(6) (a record of an act, event, condition or opinion qualifies as a business record if the requisite "conditions are shown . . . by a certification that complies with Rule 902(11)).").

Furthermore, as explained more thoroughly in the FTC's Opposition to Meta's Fifth Motion *in Limine*, ECF No. 412-1, both Pinterest's and TikTok's ████████████████ within the residual exception to the rule against hearsay. Fed. R. Evid. 807. Because both of these documents qualify for exceptions to the hearsay rule, Mr. Presser and Ms. Roberts can testify to their contents, even if this Court finds that they do not have personal knowledge of their creation.

## CONCLUSION

For the foregoing reasons, this Court should grant the FTC's Motion *in Limine* to Admit Select Testimony of Adam Presser and Julia Roberts regarding ██████████ of the FTC's Deposition Notice to TikTok and ██████████ the FTC's Deposition Notice to Pinterest.

Dated:     March 14, 2025                    Respectfully submitted,

*/s/ Daniel Matheson*
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
Maria Dimoscato (D.C. Bar 489743)
Nathan Brenner
Ethan Stevenson
Elan Weinberger

Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of March 2025, I served the sealed document on the following counsel via electronic mail:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M. Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davisolk.com

Respectfully submitted,

*/s/ Daniel Matheson*
Daniel Matheson, Esq. (D.C. Bar #502490)
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*