IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **META PLATFORMS, INC.** <br><br> Defendant. | Civil Action No. 1:20-cv-03590 (JEB) <br><br> **PUBLIC VERSION** |

**Plaintiff Federal Trade Commission's Reply in Support of Its Motion *in Limine*
to Exclude Testimony of Jason Nieh Regarding Alleged Cost Savings**

Meta concedes that Jason Nieh ("Nieh") is ███████████████████████ ███████████████████████████████████████ but nevertheless asks the Court to allow him to opine at trial that moving Instagram and WhatsApp to Meta's infrastructure somehow ████████████████ and ██████████████████ Meta's Opp. to FTC's Mot. to Exclude Nieh "Cost-Savings Opinions" at 2, 11 (Mar. 7, 2025), ECF No. 416-1 ("Opp."). Meta does not (and cannot) explain how Nieh could offer this testimony without even attempting to quantify and compare Meta's infrastructure costs to the available alternatives—an accounting task that Meta concedes Nieh (an engineer) has no experience or training to do. Nieh's "cost-savings opinions" are thus unsupported and unreliable, and that alone is sufficient reason to exclude them under Rule 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997) (affirming exclusion of expert opinion).

Nieh's "cost-savings opinions" are inadmissible for other reasons as well. At core, Meta's opposition rests on the faulty premise that these "opinions" somehow do not involve cost *savings*, but instead ██████████████████████████████████. That invented distinction is both unsupported and immaterial here, where Nieh ████████████████████ and Meta fully admits that Nieh, if allowed to testify, would opine that Meta's infrastructure ███████████████ in costs. That is an accounting—not engineering—opinion.

Meta's opposition also fails to show that Nieh's "cost-savings opinions" satisfy Rule 702's requirements. Meta fails to identify sufficient facts or data underlying Nieh's testimony, pointing only to a smattering of internal Meta documents, hand-selected by Meta and merely regurgitated by Nieh, none of which provide him the basis to render an overarching opinion that Meta's infrastructure ████████████████ compared to alternatives. Meta fails to describe a reliable methodology employed by Nieh—Meta's opposition brief is silent as to what (if any)

1

analysis Nieh actually performed to arrive at his opinions, and Meta's claim that Nieh is responding to the FTC's industry expert, Tim Bray ("Bray"), is misleading; Bray did not offer a comparative cost-performance opinion in his opening report, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

And Meta is wrong to suggest that Nieh could have ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ because, as Meta concedes, Nieh has no specialized knowledge in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 11. In any event, Meta fails to substantiate its claim that any sort of ▇▇▇▇▇▇ ▇▇▇▇▇▇ could qualify Nieh to opine about comparative infrastructure *costs*.

Such flawed "opinion" testimony is precisely what Rule 702 is designed to prevent. The Court should exercise its gatekeeping role and exclude Nieh's "cost-savings opinions."

## ARGUMENT

### I. Meta's Invented Distinction Between Cost "Savings" and Cost "Performance" Is Unsupported and Irrelevant

Meta begins by arguing that Nieh offers an engineering opinion about ▇▇▇ ▇▇▇▇▇▇▇▇ which Meta claims is different than an accounting opinion about "cost savings." Opp. at 3-4. Meta asserts that this difference is "well-known," Opp. at 4, but notably provides no authority explaining the distinction. Instead, Meta cites only to the same textbook that Nieh ▇▇▇ ▇▇▇▇▇▇▇▇, which does not address calculating or comparing infrastructure costs but rather is "for computer architects to make intelligent decisions about whether or not a new feature should be included in designs where cost is an issue." *Compare* Opp. at 4 *with* FTC's Mot. to Exclude Nieh Testimony, Ex. 1 ¶ 75 n.125, ECF No. 402-3 ("Nieh Rep.") (both citing John L. Hennessy & David A. Patterson, *Computer Architecture: A Quantitative Approach* 27 (Todd Green et al. eds., 5th ed. 2012)). That textbook citation does not support Meta's argument that assessing cost performance in the context of online service infrastructure does not require a robust, reliable cost

2

analysis, like a total-cost-of-ownership ("TCO") evaluation or allocation by daily active user ("DAU"). *See* FTC's Memo. ISO Mot. to Exclude Nieh "Cost-Savings Opinions" at 8-10 (Feb. 21, 2025), ECF 402-1 ("Mot.").

In any event, Nieh's "cost-savings opinions" plainly are of the accounting variety. Meta's opposition claims that, if allowed to testify, Nieh would opine that Meta's infrastructure allowed it to ▮▮▮▮ and ▮▮▮▮ Opp. at 2. Nieh's report includes various cost-savings claims—derived entirely from Meta's internal documents—▮▮▮▮ ▮▮▮▮ ▮▮▮▮ And Nieh testified at his deposition that ▮▮▮▮ ▮▮▮▮"). Nieh's opinions are about cost savings—not engineering—and they should be evaluated (and excluded) as such.

## II. Nieh's "Cost-Savings Opinions" Fail Rule 702's Requirements

When framed correctly as the "cost-savings opinions" they are, Meta's arguments in support of Nieh's testimony are readily rejected.

### A. Nieh lacked sufficient facts or data to opine on alleged cost savings

None of the evidence that Nieh cites in his report would allow him—or anyone—to calculate the relative costs of Meta's infrastructure for Instagram and WhatsApp against public cloud services such that he could opine it ▮▮▮▮ Opp. at 2, or that Meta's infrastructure ▮▮▮▮ ▮▮▮▮ To offer opinions like Nieh's—▮▮▮▮ ▮▮▮▮—an expert would need some

3

way to measure the size of, and difference between, the alternative costs. ███

███

███

Nieh Rep. ¶ 75. Meta likewise asserts that ███

███ Opp. at 1.

But Nieh did not calculate or determine comparative infrastructure costs. Meta admits over and over that he ███

███

███

███ Opp. at 5, 8, 11. His "cost-savings opinions" are thus not based on sufficient facts.

Meta tries to save Nieh's opinions by retroactively narrowing them to ███

███

███ Opp. at 5. Such a piecemeal approach to cost savings is inconsistent with Nieh's report, which broadly claims—without reservation—that Meta's infrastructure ███

███

███ Nieh Rep. ¶ 12. Regardless, just as Nieh did not calculate or compare Meta's total infrastructure costs against the alternatives, he also did not calculate or determine any "specific" costs or cost savings. Opp. at 11. Meta's argument that Nieh ███ Opp. at 4, is simply wrong; such a comparison is nowhere in his report.

None of Meta's remaining arguments suffice to show that Nieh had the facts or data he would have needed to opine that Meta saved costs. Meta concedes that it has not produced data

4

regarding █████████████████████████████████████████████████

███████████████████ Opp. at 8; *see also* Mot. at 4-6.  Meta's chief retort is that Nieh

relied on what Meta calls ██████████████████████████████████████

████████████████████████████████████████████████████████████████

Opp. at 2.  But Meta's misleading brief attributes to Nieh specific quotes *from* those Meta

documents, suggesting that Nieh "explains" concepts when, in reality, he just recites them.

*Compare* Opp. at 5-6 ("Professor Nieh explains. . .") *with* Nieh Rep. ¶ 68 (quoting from Meta

documents).  Those Meta documents are not Nieh's work; he did not calculate or re-create any

analyses they allegedly contain.

      Next, Meta argues that Nieh applied █████████████████████████████

████████████████████████████████████████ Opp. at 7.  The only example Meta

offers is ████████████████ that contains █████████████████████████

██████████████████████████████████████████.  Nieh, who is not an

accountant, did not █████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ Opp. Ex. 5 at 7, 21.

      Moreover, as argued *infra* § II.C, Meta fails to explain how Nieh's claimed ███████

████████ qualifies him to opine about comparative infrastructure costs, ████████████

████████████████████████████████████████████████████████████████

5

██████████████████████████████████████████████████

██████████████████████████████████████████████████, and the Court

should thus reject Meta's attempt to distinguish *Garcia v. GGI Glass Distrib. Corp.*, 2024 WL 4253161 (D.D.C. Sept. 19, 2024), *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958 (D.C. Cir. 2016), and *United States v. DynCorp Int'l LLC*, 715 F. Supp. 3d 45 (D.D.C. 2024).

      Meta's assertion that Nieh considered ███████████████████████████ Opp. at 6, fares no better. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████. Opp. at 2. Meta cites *New York v. Deutsche Telekom AG* to suggest that third-party documents bolster Nieh's opinion, but in that case the expert applied his economics expertise and used a model to "measur[e]" and "calculate[] . . . marginal costs" and "quantif[y] . . . value[s]," 439 F. Supp. 3d 179, 213-14 (S.D.N.Y. 2020)—all things Nieh did not (and is not qualified) to do.

      None of the other cases Meta cites are to the contrary either. For example, Meta argues the Court should permit cross-examination on the sufficiency of Nieh's factual support, but in *Robinson v. District of Columbia* the court first considered whether the opinions at issue were "based on sufficient data and reliable methods." 75 F. Supp. 3d 190, 200 (D.D.C. 2014). This Court should decline Meta's invitation to skip that necessary step. And Meta deploys *SEC v. Ripple Labs, Inc.* to argue that "Nieh has provided more than sufficient facts and data" for his testimony. Opp. at 8. *Ripple* is inapposite; that court did not analyze if the expert relied on sufficient facts or data under Rule 702(b), but rather addressed his qualifications and whether he had applied the "wrong legal standard." 2023 WL 5670711, at *18-19 (S.D.N.Y. Mar. 6, 2023).

6

For those reasons, Nieh's "cost-savings opinions" are not supported by sufficient facts or data, and the Court should not bless Meta's attempt to funnel its hand-selected documents into trial with the undeserved imprimatur of an admittedly unqualified expert. In this situation, "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146; *see also* Mot. at 4-8.

    **B.**    **Nieh did not apply a reliable method for calculating cost savings**

Meta's opposition admits that Nieh did not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Opp. at 9-10. Nevertheless, Meta gives three reasons that Nieh's "cost-savings opinions" should not be excluded under Rule 702(c) for lacking a reliable methodology. All three miss the mark.

*First*, Meta claims that the methodology Nieh used to arrive at his "cost-savings opinions" was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 9, but fails to identify what specifically in Nieh's educational background or experience qualifies him to opine on comparative cost savings. Meta's reference to *Heller v. Dist. of Columbia*, 952 F. Supp. 2d 133 (D.D.C. 2013), proves the point. There, the court observed that both experts had "a long history of specialized experience in a particular area" and were "opining on issues within that particular area." *Id.* at 142. Importantly, "[e]ach of the reports specifically identifie[d] this experience as being the basis for the opinions proffered, and each provides some justification—in the form of information gained from the expert's relevant experience—for those opinions." *Id.*; *see also Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, 2006 WL 1343643, at *4 (S.D.N.Y. May 17, 2006) (detailing expert's "educational background and practical experience" before allowing opinion). As argued *infra* § II.C, Nieh's report does not disclose any specialized experience in calculating cost savings or assessing cost performance, nor does Nieh's report reference or justify any such experience as the basis for his "cost-savings opinions."

7

*Second*, Meta contends that Nieh ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Opp. at 4, 10.  Not so.  Bray, an expert in software architecture and online systems, ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 17 (PX9001) at ¶¶ 20, 26-

29, 31-40; Ex. 18 (PX6172) at 249:2-7 ██████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████ Notably, Meta fails to identify where in Bray's

opening report such a cost-comparison opinion appears; it does not.  Nieh thus had no

████████████████████████████████████████████████████████████████████████

The Court should disregard Meta's "Nieh too" argument.

The only cite Meta provides is to Bray's rebuttal report, Opp. at 1, which was served after

Nieh's report.  ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ Based on his review, Bray ████████████████████

████████████████████████████████████████████ Bray thus did not offer an

opinion that Meta's infrastructure saved (or did not save) any costs, an approach at odds with

Nieh's effort to render affirmative "opinions" that Meta's infrastructure resulted in cost savings.

*Third*, Meta asserts that Nieh used Meta's internal cost-savings analyses to ████████

████████ Opp. at 10.  Again, Meta does not argue that Nieh verified or replicated Meta's

8

analyses, and "a proffered expert may not simply pass off as their own, or serve as a vehicle for presenting, the opinions of others in subjects on which the proffered expert is not personally qualified." *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017).

Meta cites inapt cases to suggest that the Court should permit cross examination regarding Nieh's lack of methodology. Unlike here, where Nieh is both unqualified and lacks a reliable methodology, the court in *Paige Int'l, Inc. v. XL Specialty Ins. Co.* found the expert "*does* articulate his methodology and approach." 2016 WL 3024008, at *6 (D.D.C. May 25, 2016) (emphasis in original). And the court in *SEC v. Terraform Labs Pte. Ltd.* addressed an entirely different dispute; namely, that the expert "silent[ly] switched [his] methodology" between his opening and rebuttal reports. 708 F. Supp. 3d 450, 467 (S.D.N.Y. 2023). As detailed, Nieh's "cost-savings opinions" "rel[y] on essentially no methodology at all," and thus should be excluded. *Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, 2023 WL 4744155, at *2 (D.D.C. July 25, 2023) (citation and quotations omitted); *see also* Mot. at 8-11.

### C. Nieh is not qualified to render opinions about cost savings

Meta's brief does not identify any education or experience that Nieh may have in accounting, economics, finance, or any other field involving quantitative cost-savings analysis. Moreover, Meta concedes that Nieh is not opining about ███████████████ ███████████████████████████████████████████ Opp. at 1, 11. Rather, Meta alleges that Nieh should be allowed to offer his "cost-savings opinions" because his ███████████████████████████████████████ Opp. at 11. A "witness d[oes] not qualify as an expert where 'his experience has not established that he is an expert on the areas . . . involved in this case.'" *Wash. Metro. Area Transit Auth. v. Aon Risk Servs., Inc. of Md.*, 2013 WL 12341666, at *5 (D.D.C. Feb. 22, 2013) (quoting *Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 557 F. Supp. 2d 1040, 1051

9

(W.D. Mo. 2008) (finding witness not qualified when "[h]is education is not in this area, his training is not in this area, [and] he has not worked in this area").  Here, Meta points to nothing in Nieh's background or experience—such as prior examples when Nieh provided cost-savings analyses, cost-performance assessments, or any cost-related opinions—that would qualify him to opine that, for example, Meta's infrastructure ▮▮▮▮▮▮▮▮▮▮ Opp. at 2.  Nieh's lone comment that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 11 ▮▮▮▮▮▮▮▮▮, is far too vague to establish the required expertise.  And the Court should not credit Meta's offhanded, unexplained suggestion that "cost performance" is simply part of ▮▮▮▮▮▮ Opp. at 11.

The Court should also reject Meta's argument that Nieh's alleged expertise is ripe for cross examination.  "As the gatekeepers, courts must ensure that an expert witness's testimony is within the scope of his expertise and exclude testimony where it falls outside that scope." *Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, 2024 WL 4534156, at *4 (D.D.C. July 16, 2024).  Meta's cases are not to the contrary.  *See Gordon v. New England Cent. R.R., Inc.*, 2019 WL 4024726, at *4 (D. Vt. Aug. 27, 2019) ("Whether a witness is qualified as an expert . . . is a threshold question that the court must resolve before determining whether his or her opinions are admissible.") (quotations and citation omitted); *Aon Risk*, 2013 WL 12341666, at *5 (ruling "trial court must determine whether the proposed expert possesses a reliable basis in the knowledge and experience of [the relevant] discipline") (quotations omitted).  Nieh lacks the expertise to proffer his "cost-savings opinions" and the Court should therefore preclude him from doing so.  *See* Mot. at 11-12.

## CONCLUSION

For the foregoing reasons, the Court should exclude Nieh's "cost-savings opinions."

10

Dated:   March 14, 2025                    Respectfully submitted,

*/s/ Daniel Matheson*
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
Nathan Brenner
Barrett Anderson
Melissa Ihnat (D.C. Bar 498266)

Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Tel.: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorney for Plaintiff*
*Federal Trade Commission*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of March 2025, I served the sealed document on the following counsel via electronic mail:

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M. Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: 212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davisolk.com

    Respectfully submitted,

    */s/ Daniel Matheson*
    Daniel Matheson, Esq. (D.C. Bar #502490)
    Federal Trade Commission
    Bureau of Competition
    600 Pennsylvania Avenue, N.W.
    Washington, DC 20580
    Telephone: (202) 326-2075
    Email: dmatheson@ftc.gov

    *Attorney for Plaintiff*
    *Federal Trade Commission*