IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

**META PLATFORMS, INC.'S OPPOSITION TO THE FTC'S MOTION
TO EXCLUDE SUPPLEMENTAL DATA AND EXPERT ANALYSIS REGARDING
<u>CURRENT MARKET CONDITIONS</u>**

**INTRODUCTION**

The FTC must prove that Meta "is violating" the antitrust laws to maintain an action under Section 13(b) of the FTC Act. That means *now*, not at some time in the past. If Meta lacks a monopoly today, then there is no case. Competition among mobile device applications and online services is dynamic and evolving. Meta witnesses will testify about competition *today*, and how in the past two years since discovery closed competition has increased, features on competing services have converged, and the kind of "broadcast sharing" that the FTC places at the center of its case has continued to decline. It would be error for the Court to refuse to consider that evidence, and indeed the FTC – which lists on its pretrial disclosures at least twenty exhibits created after the close of discovery – does not dispute the point.

What the FTC does dispute is Meta's ability to present, and the Court's ability to consider, highly relevant recent data about usage of Facebook and Instagram, including, perhaps most important, data from a January 2025 TikTok outage. When TikTok went dark in the United States, users quickly substituted to Facebook, Instagram, and YouTube. That evidence – showing that many millions of users treat these apps as substitutes – goes to the heart of the FTC's claim that competition is limited to only two Meta apps and Snapchat (and little-known MeWe). This provides further and significant evidence that TikTok is in the same market as Instagram and Facebook. The FTC understandably wants to keep this evidence from the Court. But it invites error in doing so.

The FTC does not argue that Meta witnesses cannot tell the Court about the TikTok outage and what happened as a result or bring the Court up to date on the usage trends noted in Professor Carlton's supplemental disclosure. It objects only to Meta's production of additional data (though it became available only this year and was promptly produced) and the supplementation of Professor Carlton's report to analyze that data. But the FTC has no

legitimate basis for excluding this evidence, which is the same data the business uses. The civil rules expressly contemplate such supplementation in support of disclosed opinions (as here), and nothing in this Court's scheduling orders prevents it. The produced data and supplemental analysis will meaningfully inform the key factual issues in the case, and they should be available to the parties and to the Court.

## BACKGROUND

On February 20, 2025, Meta provided to the FTC hourly data related to usage of Meta's apps – as well as third-party apps (on February 28, 2025) – in the United States during the January 2025 TikTok outage. Also on February 20, 2025, Meta produced data related to usage of Facebook and Instagram between January 2023 and January 2025. And on March 6, 2025, Meta produced a one-page supplemental expert declaration from Professor Carlton, accompanied by several pages of charts and tables, analyzing the data and relating those analyses to opinions in his prior report. *See* Ex. 1 ¶¶ 1-3 (Carlton Decl.) (Mar. 6, 2025). The FTC objects and seeks to exclude the supplemental data and analyses from the trial. The FTC seeks also to prevent Meta from obtaining parallel data pursuant to trial subpoenas served on third-party competitors.

1. ***Significant Substitution to Meta Apps, YouTube, and Snapchat During January 2025 U.S. TikTok Outage.*** The data provided to the FTC, and analyzed by Professor Carlton, show that when TikTok was unavailable in the United States, ▇ of the increased usage of other apps was on Facebook, ▇ on Instagram, and ▇ on YouTube – compared to just ▇ on Snapchat. *See id.* at 10, tbl. 3; *see also id.* at 6-9, figs. 3-6; *id.* at 11-14, tbls. 4-7.

2. ***Declining Share of U.S. Time Spent on "Friends-and-Family Sharing" on Facebook and Instagram and Increase in Time Spent on Video.*** The FTC claims that consumption of "friend" content is the centerpiece of the Meta apps. Professor Carlton's prior

2

analysis showed that, as of early 2023, only ▇ of U.S. time spent on Facebook and ▇ of U.S. time spent on Instagram was associated with "friend" (or in Instagram's case, "non-creator reciprocal follow") content. *See* Ex. 2 at 68, tbl. 10 (Carlton Rep.) (Oct. 3, 2023); *id.* at 72, tbl. 12. Professor Carlton also previously showed for Facebook that U.S. user time spent on video (mostly not from friends) increased from approximately ▇ in 2015 to approximately ▇ in 2022. *See id.* at 76, fig. 2. The updated data show that, as of January 2025, just ▇ of U.S. time spent on Facebook was spent on "friend" content, just ▇ of U.S. time spent on Instagram was spent on "non-creator reciprocal follow" content, and Facebook time spent on video has increased to approximately ▇ in the United States. *See* Ex. 1 at 4-5, tbls. 1-2.

    **3.**    ***Trial Subpoenas to Meta Rivals.*** On February 5, 2025 – approximately six weeks ago, and two weeks before the deadline for pretrial motions – Meta served trial subpoenas for documents on three nonparties affected by the January 2025 TikTok outage: TikTok, YouTube, and Snapchat. The subpoenas seek documents about recent developments that postdate discovery, *e.g.*, "[d]ocuments . . . discussing or analyzing the anticipated and actual impact of the TikTok Outage on user engagement or usage of YouTube, Facebook, Instagram, Snapchat, or other competing Products." Ex. 3 at 4. Meta provided the FTC copies of all the subpoenas; but the FTC did not object to them until after filing pretrial motions *in limine*.

## ARGUMENT

    To exclude concededly relevant material from trial, the FTC must establish unfair prejudice. *See Robinson v. Dist. of Columbia*, 75 F. Supp. 3d 190, 196 (D.D.C. 2014) (Rule 26); *Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 327 (D.D.C. 2012) (Rule 16). There is none here. Rule 26 permits Meta's production of a supplemental expert report and the data that Professor Carlton relies upon, and there is no Rule 16 violation in any event.

I.      **Meta's Data and Expert Supplement Are Admissible**

Evidence of substitution is critical to the market definition issues at the heart of this case. The FTC's argument (at 9-10) that the data are irrelevant or inadmissible under Rule 403 makes no sense – its expert witness concedes that evidence of substitution is central to market definition. *See* SMF ¶¶ 630-632, ECF No. 326 (quoting the FTC's expert testimony).

The most recent evidence of substitution is the most relevant evidence in a case where the FTC must demonstrate monopoly power *today*. *See* Am. Compl. ¶ 11 (alleging Meta's monopoly "continues today"); *see also* 15 U.S.C. § 53(b) (authorizing FTC suit only if the defendant "is violating or is about to violate" the antitrust laws); *FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14, 39 (D.D.C. 2023) ("focusing on the state of the market *now* to determine the relevant product market" in Section 2 monopoly-maintenance case (emphasis added)).

Recent evidence is especially important here because, in "technologically dynamic markets," "[b]y the time a court can assess liability, firms, products, and the marketplace are likely to have changed dramatically." *United States v. Microsoft Corp.*, 253 F.3d 34, 49 (D.C. Cir. 2001) (en banc); *see also, e.g.*, *FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1055 (8th Cir. 1999) (reversing where court "did not properly evaluate evolving market forces"); *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 176 n.6 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). And "time and technological change pose serious challenges to the market analysis here." *FTC v. Meta Platforms*, 2024 WL 4772423, at *22 (D.D.C. Nov. 13, 2024).

Products are properly included in the same relevant market if consumers consider them to be adequate substitutes. *See Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 218 (D.C. Cir. 1986) ("[T]he definition of the 'relevant market' rests on a determination of available substitutes."). Evidence of the extent to which TikTok users turned to Instagram,

Facebook, and YouTube when TikTok was unavailable is important evidence of substitution – and Meta's business executives will so testify. The FTC points out (at 4-5) that the Court – in considering other diversion evidence offered at summary judgment – held that it did not eliminate a fact issue regarding what was in the relevant market. But that hardly suggests that the Court should be unwilling to consider relevant evidence regarding that fact issue. *See Meta Platforms*, 2024 WL 4772423, at *19.

Updated data concerning usage of Facebook and Instagram are also highly relevant. The fact that users increasingly spend time on Facebook and Instagram watching videos that they could (and do) watch on TikTok or YouTube flatly contradicts the FTC's contention that those apps do not compete with or constrain Meta's apps. The FTC argues (at 9) that this evidence "does not refute that friends and family sharing remains a large" part of "both apps" – but that is for the Court to decide, and not a basis for excluding evidence showing that the claimed sharing does not currently represent a large part of the usage of either app.

The FTC has no basis for claiming that the data are unreliable. The data are consistent with data previously produced by Meta that both parties used. The FTC's passing assertion (at 10) that Meta suggested otherwise in its production letters mischaracterizes Meta's prior statements. As with prior data productions, and as the parties discussed extensively during discovery, Meta acknowledged the *possibility* of technical or algorithmic errors. But Meta is aware of no such errors in the data at issue here, and questions about the data go to weight, not admissibility. *See United States v. H & R Block, Inc.*, 831 F. Supp. 2d 27, 32 (D.D.C. 2011).

## II. Meta's Expert Supplement and Backup Data Are Timely and Proper

Rule 26(e) permits Professor Carlton to supplement his report to disclose information supporting his disclosed opinions that was unavailable when his report was filed. Nothing in the

5

Rule 16 scheduling order addresses much less prohibits that. And the timely production and disclosure of that information here – to give the FTC ample notice in advance of Meta's witnesses (fact as well as expert) testifying about these topics – creates no unfair prejudice.

A.   **Professor Carlton's Disclosure Is Proper Under Rule 26(e)(2)**

Rule 26(e)(2) permits supplementation of expert reports with new evidence in support of preexisting opinions. *See Capitol Just. LLC v. Wachovia Bank*, 706 F. Supp. 2d 34, 39 (D.D.C. 2009). Professor Carlton's supplement merely "added information that was not available at the time of the initial reports," *Whitmire v. Children's Nat'l Med. Ctr.*, 2021 WL 12263257, at *1 (D.D.C. Dec. 2, 2021) (cleaned up), and it is timely because it occurred before the pretrial-disclosure deadline. The FTC says (at 3) that Rule 26 supplementation is limited to correcting errors (citing *Minebea*). But Rule 26(e)(2) provides for supplementation of the facts or data underlying the expert's opinions, and *Minebea* – about a disclosure after trial had started – does not say otherwise. Professor Carlton's supplement is not (*contra* FTC Mot. at 4) a new opinion. He explains that the analysis supports his prior opinions, including the opinion that the FTC's market is flawed because it omits TikTok. Ex. 1 ¶¶ 2-3. The FTC's assertion that Professor Carlton did not offer an analysis of "any third-party outage events," so his consideration of the TikTok outage is a new opinion, conflates opinion (the market definition is flawed) with facts (the outage). This is nothing like the cases the FTC cites (at 4-5, 8), which address new opinions or are otherwise irrelevant, *e.g.*:

- *Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D. Kan. 1997) (report "simply says [opinions] are based upon the [expert's] education, training, and experience").

- *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (declarations asserting "a new theory of causation" were improper because they "did not correct an inaccuracy" or "fill in a gap based on information previously unavailable").

- *Key v. Qualcomm Inc.*, 2025 WL 597604, at *10 (9th Cir. Feb. 25, 2025) (expert adopted a "novel" damages model "four years after the close of expert discovery" that departed

6

- from plaintiff's "longstanding antitrust theory").

- *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109 (D.D.C. 2005) (expert sought "to *rework* their damages analyses and change the substance of their contentions").

And the FTC does not and cannot seriously dispute that Professor Carlton's analysis of the continued decline in friends-and-family sharing on Meta's apps is obviously supportive of his disclosed opinions, as the FTC basically concedes. *See* FTC Mot. at 5.

The FTC claims (at 8) that Meta should have supplemented earlier – even though it provided Professor Carlton's supplement within weeks of the January 2025 TikTok outage, after considerable effort by Meta to collect the relevant data for use by both sides. The supplemental disclosure was made before Rule 26(e)'s disclosure deadline, unlike *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776 (7th Cir. 2000), where the expert "*did not* file a supplemental expert witness report." *Id.* at 786 (emphasis added). Likewise, the FTC misses the mark in citing (at 9) the Court's decision in *Jackson v. Teamsters Local Union 922*, 312 F.R.D. 235 (D.D.C. 2015), which denied a motion to submit a *fifth* supplemental expert report to add information that was "previously available." *Id.* at 236.

**B.    Meta's Data Productions Are Proper Under Rule 16**

*1.    No Rule 16 Violation*: Rule 16 has no application to an expert witness's supplementation of "facts or data" underlying an opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). Granting that a scheduling order is the "road map (absent good cause)," *see* FTC Mot. at 2 (citing *Olgyay*), that map does not address – let alone preclude – appropriate supplementation by expert witnesses. The FTC asserts (at 2) that Meta did not seek leave to amend, but Meta is not seeking to reopen or extend discovery, and there was therefore nothing to amend.

Even if good cause were required, it is present here because of the relevance of the information, which only became available in the last few weeks. *See, e.g.*, *In re Rail Freight*

7

*Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 12, 14 (D.D.C. 2011); *Geneva Pharms. Tech. Corp. v. Barr Lab'ys, Inc.*, 2005 WL 2132438, at *5 (S.D.N.Y. Sept. 6, 2005). Such supplementation is typical in antitrust cases where *current* market conditions – post-discovery – are critical. *See*, *e.g.*, Op. and Order at 3, *FTC v. Kroger Co.*, No. 3:24-cv-00347-AN (D. Or. Aug. 25, 2024), ECF No. 407 (allowing antitrust defendant to introduce post-discovery evidence); *FTC v. Arch Coal, Inc.*, 2004 WL 7389952, at *3 (D.D.C. July 7, 2004) (similar); *see also BoDeans Cone Co. v. Norse Dairy Sys., LLC*, 678 F. Supp. 2d 883, 895 (N.D. Iowa 2009) (same).

The antitrust cases the FTC cites (at 3) hardly support exclusion here. In *FTC v. Qualcomm, Inc.*, 2018 WL 6597273 (N.D. Cal. Dec. 13, 2018), the court did what the FTC asked and refused to consider evidence of the defendant's "market position" during the six months after discovery closed. *Id.* at *4. The Ninth Circuit then *reversed* the judgment. *See FTC v. Qualcomm, Inc.*, 969 F.3d 974, 992-93 (9th Cir. 2020). And the *Google* courts did *not* prohibit post-discovery evidence of current market conditions, which *was* featured at trial. *See* Trial Tr. at 91:10-15, *United States v. Google, LLC*, No. 1:23-cv-00108 (E.D.V.A. Sep. 20, 2024), ECF No. 1360; Status Conf. Tr. at 32:3, *United States v. Google, LLC*, No. 1:20-cv-03010-APM (D.D.C. May 13, 2022), ECF No. 353.

The FTC makes three arguments untethered to Rule 16 or any other authority. *First*, it says (at 2) that Meta "failed to exercise any diligence" by not producing the data even earlier. But the cases it cites are inapposite – they involved serious and inexplicable schedule violations. *Cf. Olgyay v. Soc'y for Env't Graphic Design, Inc.*, 169 F.R.D. 219, 219 (D.D.C. 1996) (parties "disregard[ed] the Court-ordered discovery schedule"); *Madaket, LLC v. Sweet Grace Distilling Co.*, 2024 WL 4973402, at *5 (D.D.C. Dec. 4, 2024) (denying leave to amend where plaintiff had "plenty of information" before deadline). *Second*, the FTC complains (at 2) that Meta

8

previously objected, on burden grounds, to undertaking a substantial refresh of its productions of more than 5.4 million documents. That is apples-oranges compared to the limited and targeted supplementation of *data* highly relevant to this case and Professor Carlton's disclosed opinions. *Third*, the FTC's complaint (at 3) about notice is misplaced. Meta's disclosures have given the FTC *extra* notice of evidence that is coming in at trial when the Meta fact witnesses testify. The FTC's motion does not and cannot seek to bar that testimony from fact witnesses. And, as to Professor Carlton, the FTC has two months' notice as to his testimony regarding the recent data. The FTC cites no case in which such notice has been found insufficient.

2. **No Unfair Prejudice**: Evidence undermining the FTC's case does not create *unfair* prejudice. *See United States v. Crawford*, 2024 WL 1908799, at *9 (D.D.C. May 1, 2024) ("Unfair prejudice as used in Rule 403 is not to be equated with evidence simply adverse to the opposing party" (cleaned up)). Nor is there any unfair surprise; the FTC has ample time to scrutinize the data, from which it can form arguments using that data and cross-examine Professor Carlton about his analysis at trial. *See Tracinda Corp. v. Daimler Chrysler AG*, 362 F. Supp. 2d 487, 509 (D. Del. 2005) (no unfair prejudice where data was produced before trial).

The FTC says (at 5-8) that Meta is "cherry-picking" data to produce an imbalanced "picture of current market conditions." But it doesn't (and can't) say how. Meta produced the relevant data regarding what happened when TikTok went dark, and the usage figures for Facebook and Instagram since discovery closed. The FTC does not argue that this data is skewed. The FTC suggests that some *other*, unidentified data might help its case. But it doesn't even speculate what that data might be, hasn't sought any such data, and can't use that as an excuse for turning a blind eye to highly relevant evidence about current real-world substitution.

None of the cases the FTC cites (at 10) suggests otherwise. *Cf. Saturn Mfg., Inc. v.*

9

*Williams Pat. Crusher & Pulverizer Co.*, 713 F.2d 1347, 1357 (8th Cir. 1983) (exclusion of new evidence in patent case produced during the second week of trial).  In *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410 (5th Cir. 2008) – a Section 7 potential competition case – the court considered the new evidence about competition, but expressed doubt about its persuasive value.  *Id.* at 434-35.  (The FTC's repeated invocation of *Qualcomm* is curious, because that case was reversed in significant part because of the trial court's handling of similar issues.)

The FTC finally claims (at 7-8) that Meta's production is inherently or "per se" prejudicial, because Meta has ignored relevant deadlines.  Meta has not ignored any deadline.  And the case cites (at 7) do not support the FTC's argument.  *Cf. Apotex, Inc. v. Cephalon, Inc.*, 2015 WL 12645745, at *2 (E.D. Pa. May 26, 2015) (striking untimely and concededly prejudicial report); *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 226-27 (D.D.C. 2015) (striking documents first disclosed in plaintiff's opposition brief because belated disclosure "prevented defendants from addressing the document[s] in their opening brief").

**III.    Meta's Trial Subpoenas for Documents Are Timely and Proper**

The FTC makes a passing attack (at 2, 10) on Meta's trial subpoenas to third parties for documents.  But its brief contains *no* argument about the subpoenas and any objection is therefore waived.  *See Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 24 n.5 (D.D.C. 2019).

## CONCLUSION

The Court should deny the FTC's motion.

Dated: March 20, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ *Mark C. Hansen*
　　　　　　　　　　　　　　　　　　　　Mark C. Hansen (D.C. Bar No. 425930)
　　　　　　　　　　　　　　　　　　　　Aaron M. Panner (D.C. Bar No. 453608)
　　　　　　　　　　　　　　　　　　　　Lillian V. Smith (D.C. Bar No. 252516)
　　　　　　　　　　　　　　　　　　　　Alex A. Parkinson (D.C. Bar No. 166695)
　　　　　　　　　　　　　　　　　　　　Alex P. Treiger (D.C. Bar No. 1670925)
　　　　　　　　　　　　　　　　　　　　KELLOGG, HANSEN, TODD,
　　　　　　　　　　　　　　　　　　　　　　FIGEL & FREDERICK, P.L.L.C.
　　　　　　　　　　　　　　　　　　　　1615 M Street, N.W., Suite 400
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20036
　　　　　　　　　　　　　　　　　　　　Tel: (202) 326-7900
　　　　　　　　　　　　　　　　　　　　mhansen@kellogghansen.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Meta Platforms, Inc.*