**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

META PLATFORMS, INC.,

    Defendant.

Case No. 1:20-cv-3590-JEB

HON. JAMES E. BOASBERG

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE AND FOR
ACCESS TO JUDICIAL RECORDS AND PROCEEDINGS**

The New York Times Company ("The Times") hereby moves to intervene in this case, brought by the Federal Trade Commission ("FTC") against Meta Platforms, Inc. ("Meta"), and to seek access to the judicial records and proceedings of the upcoming trial.

## PRELIMINARY STATEMENT

The public interest in this long-running case is extraordinary. The allegations of wrongful conduct at the center of the litigation are serious and concern products used by hundreds of millions of Americans and billions around the world. The trial in which those allegations will be aired — and that may, ultimately, lead to the break-up of one of the world's most influential and profitable companies — should be as transparent as possible. The improper sealing of records or proceedings of that trial would not just violate the common law and the First Amendment — it could also, in the eyes of observers, "undercut[] the legitimacy of our legal system."[1]

Through this motion, The Times seeks relief that would maximize the trial's openness without undercutting the ability of Meta or third parties to shield material whose disclosure would cause genuine commercial harm. The Times's motion is informed by its experience seeking access to records and proceedings in the liability trial in *United States v. Google*, 1:20-cv-3010, and The Times's requests here largely track those it made in a just-filed motion for the remedies hearing in that case. A major concern in this case is access to trial exhibits. The Times does not have access to the exemplar exhibits that the parties have exchanged, nor to the parties' briefing regarding disputes over the sealing of those documents. But any sealing of trial exhibits, which the proponent of sealing must justify, must satisfy the considerable standards set by the common law and First Amendment. The First Amendment likewise sets a high bar for excluding

---

[1] *See* Nico Grant, Cecilia Kang and Tripp Mickle, *'Unprecedented' Secrecy in Google Trial as Tech Giants Push to Limit Disclosures*, N.Y. Times (Sept. 26, 2023), https://www.nytimes.com/2023/09/26/technology/google-antitrust-trial-secrecy.html.

the public from court proceedings. In addition, trial exhibits (in redacted form, where necessary) should be released to the public in a timely fashion — ideally, at the same time they are used in Court. If that is not feasible, the exhibits should be made available by the evening of each trial day. And before closing the courtroom, the public and press must have the notice and opportunity to be heard, as the First Amendment requires. In the event of any closure, the transcript of the closed session should be promptly reviewed and publicly released, with any redactions justified under the common law and First Amendment standards.

## BACKGROUND

I.   **The Parties' Joint Proposed Confidentiality Order**

The Times assumes familiarity with the factual background of this case and the parties' earlier briefing regarding confidentiality procedures at trial. The discussion here focuses on the parties' joint proposed confidentiality order ("JPCO"), filed on March 20, 2025. ECF No. 451-1.

On the issue of trial exhibits, the JCPO indicates that on March 11 the parties identified and exchanged up to 50 "exemplar exhibits" from their respective exhibit lists that Meta designated confidential or highly confidential pursuant to the protective order. *Id.* at 1. The parties then attempted to resolve disputes about specific exhibits and are now in the midst of briefing the disputes they were unable to resolve. *See id.* at 1-2. Because their briefs are entirely under seal, *see* ECF Nos. 431 (Meta motion to seal), 460 (FTC opposition), The Times cannot speak to the legal principles the parties are applying in those briefs,[2] nor does The Times know how the parties are applying such principles to the exhibits at issue. The JCPO proposes that the Court determine "further deadlines and necessary procedures regarding Meta-produced

---

[2] An earlier brief filed by the FTC discusses the principles that in its view generally govern access to judicial records and proceedings. *See* ECF No. 411 at 1-2. Meta's brief on that subject does not contain discussion of the applicable sealing standards. *See* ECF No. 410.

2

documents after ruling on Meta's motion [to seal the exemplary exhibits]," ECF No. 451-1 at 2, but the JCPO does not speak to when or how the parties will make their trial exhibits (as redacted, where necessary) available to the public.

As to the sealing of court proceedings, the JCPO, consistent with Meta's prior submissions, *see* ECF No. 410 at 2-4, proposes that the Court close the courtroom to the press and public in instances where "Complete Nondisclosure" is appropriate, ECF No. 451-1 at 3. This level of confidentiality, the JCPO says, means that "the entire document will remain sealed from the public record and the courtroom would be closed when the document is discussed." ECF No. 451-1 at 3. In contrast, "Partial Disclosure" means that the courtroom would remain open and a redacted version of the exhibit would be shown to the public, while the unredacted version would be viewable by the witness, attorneys, and the Court. *Id.* at 3.

Apparently, then, the JCPO would mandate sealing of the courtroom in any instance where the parties or Court have determined that the trial exhibit under discussion should be sealed in full.[3] The Times understands that the Court has suggested it may follow this approach. *See* Mar. 7, 2025, Tr. at 12:7-8. But the FTC only last month cogently explained why this approach is, respectfully, unnecessary. Its prior comments are worth quoting at length:

> Meta proposes an unnecessary, "two level" system for confidentiality that would leave some materials marked as "complete nondisclosure" and others as "partial nondisclosure." At bottom, Meta assumes that there is a subset of documents—i.e., those marked "compete nondisclosure"—which cannot be used at all without closing the courtroom in its entirety. This is a flawed assumption. Parties can examine confidential materials in many instances while simultaneously leaving the courtroom open to the public by talking around confidential information. Materials and information contained

---

[3] The JCPO also states that if the FTC wishes to use a Meta document designated as confidential or highly confidential that is not on either party's exhibit list (for instance, to impeach a witness), the FTC must either inform Meta 48 hours in advance so that Meta may review and assess the confidentiality document, or "alternatively, provide no notice but afford the document and related testimony Complete Nondisclosure treatment during the portion of the examination when the document is discussed." ECF No. 451-1 at 2.

3

therein are either confidential or not, and Meta should move the Court accordingly. To the extent Meta believes the courtroom must be sealed for certain topics generally, Meta should move the Court for that relief as well, applying the same *Hubbard* factors.

ECF No. 411 at 6 (cleaned up).

## ARGUMENT

### I. The Court Should Permit The Times to Intervene

The Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The D.C. Circuit has held that third parties, including news organizations, "may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The Court should therefore grant The Times's motion to intervene in this matter for the limited purpose of seeking access to judicial records and proceedings. *E.g.*, *In re Application of Chodiev*, 2021 U.S. Dist. LEXIS 90103, at *9-10 (D.D.C. Mar. 23, 2021) (granting news organization leave to intervene for such purpose).

### II. Any Sealing of Trial Exhibits or the Courtroom Must Substantively Comport with the Common Law and First Amendment Standards

"A trial is a public event," and "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). For that reason, courts in this district — including Judge Mehta in the *Google* case — recognize that the public has a weighty common law right of access to judicial records, including civil trial exhibits. *See, e.g.*, *United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 928 at 1576:2-3 ("[O]nce [an exhibit is] in evidence, it's a presumptively public record."); *United States v. Hsia*, 2000 U.S. Dist. LEXIS 2752, at *1 (D.D.C. Feb. 18, 2000) (finding "that the Local Rules as well as the common law contemplate

4

that trial exhibits be available for public inspection"). Other federal courts have long recognized the same. *See, e.g.*, *United States v. Pagett*, 2022 U.S. App. LEXIS 15883, at *11 (2d Cir. June 8, 2022) (noting that "[t]he public has an especially strong common law right of access to evidence introduced in trials" and finding that lower court properly allowed prosecutors to release to press evidence that was admitted at trial and shown to jury) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (cleaned up)); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir. 1984) (finding that "the public's right of access to civil trials and records is as well established as that of criminal proceedings and records").

The First Amendment independently confers on the public a right of access to judicial proceedings and records, including civil trials and trial exhibits. *See, e.g.*, *In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31*, 704 F. Supp. 3d 161, 167 (D.D.C. 2023) (Boasberg, J.) ("The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." (cleaned up)); *Pagett*, 2022 U.S. App. LEXIS 15883, at *11 ("The public also has a qualified First Amendment right of access to trial exhibits because they are derived from the relevant proceedings and are a necessary corollary of the capacity to attend the trial." (cleaned up)); *ACLU v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011) (noting that "most circuit courts, including the Fourth Circuit, have recognized that the First Amendment right of access extends to civil trials and some civil filings").[4]

---

[4] Should the Court conclude that the common law right of access provides the complete relief sought by The Times here, at least as to judicial records, it need not address the First Amendment right. *See, e.g.*, *Chodiev*, 2021 U.S. Dist. LEXIS 90103, at *28 (finding that the "requested relief can be granted by applying the *Hubbard* factors to evaluate CNN's claim under the common law right of access to records" and therefore declining to reach First Amendment arguments).

Given the democratic values served by an open court system, the presumption of access to judicial records and proceedings is "strong." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (cleaned up). The common law presumption is overcome only by "competing interests," *id.*, an assessment made based on the factors in *United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980).[5] The First Amendment standard is more stringent. The showing required is that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *In re L.A. Times Commc'ns LLC*, 2021 U.S. Dist. LEXIS 99766, at *8 (D.D.C. 2021), *reversed and remanded on other grounds*, 28 F.4th 292 (D.C. Cir. 2022); *see also, e.g.*, *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991) (where First Amendment right applies, "it must be shown that the denial is necessitated by a compelling . . . interest, and is narrowly tailored to serve that interest") (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) (cleaned up)). Under either standard, "[t]he burden is on the party seeking to restrict disclosure to come forward with specific reasons why the record, or any part thereof, should remain under seal." *FTC v. Match Grp., Inc.*, 2023 U.S. Dist. LEXIS 75470, at *24 (D.D.C. May 1, 2023) (cleaned up) (common law); *see, e.g.*, *In re New York Times Co.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) (First Amendment).

---

[5] Those factors are: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *MetLife, Inc.*, 865 F.3d at 665 (cleaned up).

Because the parties' briefing on the exemplar exhibits is entirely under seal, The Times is unable to speak to whether Meta has made the necessary showing to justify the proposed sealing of those exhibits. But The Times underscores several points relevant to the legal analysis. First — what may be an obvious point but one that is worth repeating — the mere fact that Meta designated a document confidential or highly confidential pursuant to a protective order does not warrant its sealing, even assuming the designation was appropriate. *See, e.g.*, *In re Pub. Def. Serv.*, 607 F. Supp. 3d 11, 17 n.1 (D.D.C. 2022) ("The Court agrees that the First Amendment and common law rights of access apply to the unsealing motion, despite the existence of the consent protective order."); *Nielson Consumer LLC v. Circana Grp., L.P.*, 2024 U.S. Dist. LEXIS 40556, at *7 (S.D.N.Y. Mar. 6, 2024) ("The fact that the information was designated by the parties in discovery as confidential under a protective order or was produced pursuant to a protective order has no bearing on the weight accorded to the presumption of public access and is not sufficient to overcome the presumption of public access."). In other words, the change in the status of Meta's documents from discovery materials to trial exhibits is legally significant. A right of access attaches to those latter materials, and they are presumptively public unless Meta demonstrates that any sealing is consistent with the common law and First Amendment.

Second, Meta is unlikely to be able to satisfy the sealing standard for documents that are stale from a competitive point of view. The FTC's allegations in this case concern conduct by Meta that goes back years, in some cases more than a decade. *See, e.g.*, ECF No. 82 ¶¶ 80-106 (alleging that Facebook acquired Instagram in 2012 to "[n]eutralize a [c]ompetitor" and citing internal Facebook documents from February 2011 onwards). To the extent Meta claims that it will suffer commercial harm today from the disclosure of dated information about its finances or commercial strategy, these assertions warrant close scrutiny. *See, e.g.*, *King & Spalding, LLP v.*

*HHS*, 2020 U.S. Dist. LEXIS 60949, at *7 (D.D.C. Apr. 7, 2020) ("To carry its burden under *Hubbard*, a party must specifically identify the commercially sensitive information and explain why its disclosure would harm its competitive standing." (cleaned up)); *United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 892 at 11-14 (unsealing in full a number of third-party exhibits used at trial that were dated, finding in some cases that "[w]hatever competitive interests" the third party once had in the document had become "substantially diminished by its age").

Third, even if the Court finds that Meta has met its burden to justify sealing an exhibit in full, it does not follow that sealing the courtroom during discussion of such an exhibit is necessary — for exactly the same reasons the FTC stated in its earlier briefing. *See* ECF No. 411 at 6. To close the courtroom is an extraordinary step and must be avoided unless there are no alternative measures "that would adequately protect the compelling interest." *In re L.A. Times Commc'ns LLC*, 2021 U.S. Dist. LEXIS 99766, at *8. In roughly the second half of the *Google* liability trial,[6] for instance, Judge Mehta found that it was frequently possible to keep the courtroom open, even when a witness was reviewing documents containing ostensibly sensitive information, by instructing the witness and attorneys to talk around the confidential information in the exhibit. Indeed, during this period of the trial, Judge Mehta closed the courtroom only twice and for only brief periods of time.[7]

---

[6] Judge Mehta later acknowledged that the routine closures of the courtroom earlier in the trial had in hindsight been unnecessary. *See United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 977 at 6691:1-6 ("The first two weeks, the courtroom was closed more than I wanted it to be, and I think the trial transcripts reflect that. And I will put it on myself that it was closed more than it should be. And I should have been a little bit more probing of the parties as to how much of it really needed to be under seal. So, I'll fess up to that.").

[7] Judge Mehta has also indicated that closure of the courtroom during the remedies hearing will be the exception, not the norm. *See United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 1189 at 40:12-14, 40:24–41:5 ("I am going to be very reluctant to close the

8

Fourth, and as the FTC noted correctly in earlier filings, the presumption of access under *Hubbard* is especially strong as to Meta's documents in this case for two other reasons. *See* ECF No. 411 at 2 (citing, *inter alia*, *United States v. Munchel*, 567 F. Supp. 3d 9, 18 (D.D.C. 2021); *Hubbard*, 650 F.2d at 319). One is that the plaintiff in this action is a government party, not a private actor:

> The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation. Indeed, the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation.

*Doe v. McHenry*, 2025 U.S. Dist. LEXIS 34937, at *5-6 (D.D.C. Jan. 31, 2025) (Boasberg, J.) (cleaned up). The other is that as a party to the litigation Meta has a weaker claim to confidentiality. *See e.g.*, *United States v. James*, 2021 U.S. Dist. LEXIS 235358, at *6 (D.D.C. Aug. 23, 2021) (noting that "[t]his case involves only the claimed privacy interest of a party," cutting against sealing).

### III.     The Public and Press Should Have Contemporaneous Access to Trial Exhibits

As noted, the JCPO does not address whether, when, and how the parties must make trial exhibits available to the public after using them at trial. In The Times's view, the baseline rule should be straightforward: parties should make the unsealed portions of trial exhibits available for download from a public website, ideally as soon as possible and certainly no later than the evening of each trial day.

This rule accords with the case law, which regards the public right of access to judicial records as a contemporaneous one. *See, e.g.*, *Robinson*, 935 F.2d at 287 (D.C. Cir. 1991)

---

doors of the courtroom for any reason. . . . I want to just make it known at the outset, if we are going to have any closed sessions, it's only going to be for a circumstance whether there is truly no other way to receive the evidence, and it will be for a very, very limited amount of time, and certainly not for the extent of time that we had some witnesses testifying last time around.").

9

(recognizing "the critical importance of *contemporaneous* access to plea agreements to the public's role as overseer of the criminal justice process") (emphasis in original); *see also In re Associated Press*, 172 F. App'x 1, 2 (4th Cir. 2006) (granting news organizations' mandamus petition seeking contemporaneous access to exhibits admitted into evidence at criminal trial). Even where timely public access entails some degree of administrative burden on the court or the parties, courts have not found a justification for denying or seriously delaying public access. *See, e.g.*, *In re Associated Press*, 172 F. App'x at 6-7.

The request The Times makes here is nearly identical to the request it has made to Judge Mehta for the forthcoming remedies hearing in the *Google* case. *See United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 1192-1 at 4-8. As The Times notes in its brief there, same-day release of exhibits permits the press to report on evidence and inform the public in real time. And the request is not infeasible or unusual. In another complex antitrust case — the Department of Justice's suit against Google over allegedly illegal monopolization of the ad tech market, which was tried in the Eastern District of Virginia last fall — Judge Brinkema ordered that

> although the parties are encouraged to publish admitted trial exhibits as soon as possible, they are required to publish on a publicly available website all exhibits that have been entered into evidence at trial (and are not otherwise sealed by Order of the Court) no later than 10:00 a.m. the day following an exhibit's admission into evidence, *accord In re Associated Press*, 172 F. App'x 1, 4 (4th Cir. 2006).

*United States v. Google LLC*, 2024 U.S. Dist. LEXIS 162670, at *4 (E.D. Va. Aug. 9, 2024).[8] If the FTC and Meta — and, where necessary, the Court — have worked out in advance what

---

[8] In the *Google* search trial, following The Times's intervention, Judge Mehta ordered that a media representative could request exhibits from the parties and that the parties were to make them available within days of their use. *See United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 750.

portions of a trial exhibit are subject to sealing, there should be no reason why the parties cannot arrange to make those exhibits immediately available to the press and public.

To be clear, The Times seeks an order containing the following provisions:

- Ideally as soon as possible, and certainly by the evening of each trial day, each party shall make the exhibits admitted into evidence that day available for download from a public website. Each party shall be responsible for uploading its own exhibits to the website.

- In the rare case where a party is unable to comply with this deadline, it shall so notify the Court at the beginning of the following trial day, provide an explanation for its noncompliance, and state when the exhibit(s) will be released.

- The Times reserves its right to object to the sealing of exhibits while the trial is ongoing, and the Court shall endeavor to resolve any such objections as soon as practicable.

## IV. The Public and Press Should Have an Opportunity to Object to any Courtroom Closure in Advance, and Transcripts of Closed Sessions Should be Promptly Reviewed and Released

As noted above, the substantive bar for closing the courtroom is high under the First Amendment. *See, e.g.*, *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011). But as Judge Mehta recognized in the *Google* case, the law also creates certain procedural protections: the press and public must have notice of possible closure in advance and an opportunity to be heard on their objections to closure. *See United States v. Google*, No. 1:20-cv-3010 (D.D.C.), Minute Order (Oct. 18, 2023);[9] *see also, e.g.*, *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va.), ECF No. 1320 (granting motion of media organizations and ordering that "at the end of each day the parties will advise the Court if they anticipate any issues that may require sealing

---

[9] "As stated on the record during the morning proceedings, moving forward, the court hereby institutes the following procedure for proposed closed-session testimony: (1) a party that believes a closed session will be required for either the director cross-examination of a witness shall so notify the court by the end of the trial day immediately prior to the day of the witness's expected testimony; (2) the court will docket the anticipated closed session the evening before the witness's expected testimony; and (3) the court will consider arguments and objections with respect to the proposed closed session, including from a media representative, at 9:30 a.m. on the day of the witness's expected testimony."

11

the following day); *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 609 n.25 (1982) (observing that for "a case-by-case approach [to closure] to be meaningful, representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" (cleaned up)).

This procedure provides an opportunity for the Court to consider the real-world harms of closure and assure itself that there is no alternative to sealing that would protect whatever compelling interests are at stake. When the press and public are wrongfully excluded from a courtroom, the provision of a transcript after the fact does not remedy the initial injury:

> Documentary access is not a substitute for concurrent access, and vice versa. Where a right of access exists, a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available. Such a transcript would not fully implement the right of access because some information, concerning demeanor, non-verbal responses, and the like, is necessarily lost in the translation of a live proceeding to a cold transcript.

*ABC, Inc. v. Stewart*, 360 F.3d 90, 99-100 (2d Cir. 2004) (quoting *United States v. Antar*, 38 F.3d 1348, 1360 n.13 (3d Cir. 1994) (cleaned up)). Excluding the public from the courtroom, even more so than sealing court records, also tends to undermine the public's faith in the justice system. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers v. Virginia.*, 448 U.S. 555, 572 (1980).

The specific relief sought by The Times here is similar to what Judge Mehta granted during the liability trial in *Google*, *see United States v. Google*, No. 1:20-cv-3010 (D.D.C.), Minute Order (Oct. 18, 2023), and also mirrors the relief The Times seeks for the remedies hearing in that case, *see United States v. Google*, No. 1:20-cv-3010 (D.D.C.), ECF No. 1192-1 at 8-9:

- If the parties anticipate seeking closure of the courtroom during any testimony, they must make that request by the end of the prior trial day, so that the press and public have notice and an opportunity to object to closure at the start of the next trial day.

- In the event of any closure, (i) the parties (and where relevant, third parties), within 24 hours of the end of the closed session, shall review the transcript of the closed session and propose redactions to the Court, and (ii) the Court shall then independently review the proposed redactions and determine whether they comport with the common law and First Amendment, ordering release of any portions that do not.

\*\*\*

If it would be helpful to the Court, counsel for The Times is available to appear before the Court to address any of the above issues at the pretrial conference scheduled for tomorrow, March 24, 2025, at 10 am.

## **CONCLUSION**

For the foregoing reasons, the Court should grant The Times's motion to intervene and for access to judicial records and proceedings and order the following:

  i. Any sealing of trial exhibits or testimony must substantively comport with the common law and First Amendment rights of public access; and

 ii. Ideally as soon as possible, and certainly by the evening of each trial day, each party shall make the exhibits admitted into evidence that day available for download from a public website, with each party responsible for uploading its own exhibits to the website; and

iii. In the rare case where a party is unable to comply with this deadline, it shall so notify the Court at the beginning of the following trial day, provide an explanation for its noncompliance, and state when the exhibit(s) will be released; and

 iv. The Times reserves its right to object to the sealing of exhibits while the trial is ongoing, and the Court shall endeavor to resolve any such objections as soon as practicable; and

  v. If the parties anticipate seeking closure of the courtroom during any testimony, they must make that request by the end of the prior trial day, so that the press and public have notice and an opportunity to object to closure at the start of the next trial day; and

 vi. In the event of any closure, (i) the parties (and where relevant, third parties), within 24 hours of the end of the closed session, shall review the transcript of the closed session and propose redactions to the Court, and (ii) the Court shall then independently review the proposed redactions and determine whether they comport

with the common law and First Amendment, ordering release of any portions that do not.

Dated: March 23, 2025            Respectfully submitted,

/s/ *Dana Green*
Dana R. Green (#1005174)
David McCraw (#NY0200)
Tim Tai (#NY0606)
The New York Times Company
620 8th Avenue
New York, NY 10018
Telephone: (212) 556-5290
Facsimile: (212) 556-4634
dana.green@nytimes.com
mccraw@nytimes.com
timothy.tai@nytimes.com

*Counsel for The New York Times Company*