**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FEDERAL TRADE COMMISSION,**

Plaintiff,

v.

**META PLATFORMS, INC.**

Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

**PUBLIC VERSION**

**FEDERAL TRADE COMMISSION'S OPPOSITION TO META'S MOTION TO SEAL EXEMPLAR POTENTIAL TRIAL EXHIBITS**

The "strong presumption in favor of public access to judicial proceedings" must be the overriding consideration where, as here: (1) a party seeks to seal materials that will actually be used in court during a trial; (2) the government is a party; and (3) a proceeding is likely to generate substantial public interest. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("[T]he starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" (quoting *Johnson v. Greater Southeast Community Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991))); *In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31*, 704 F. Supp. 3d 161, 169 (D.D.C. 2023) ("[T]he presumption of transparency is 'accentuated in cases' like this one 'where the government is a party.'" (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 81 (D.D.C. 2020))); *United States v. Gen. Motors Corp.*, 99 F.R.D. 610, 612 (D.D.C. 1983) ("[T]he greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings."); *United States v. Anthem, Inc.*, Case No. 1:16-cv-01493, 2017 WL 8894428, at *2, *4 (D.D.C. Jan. 18, 2017); *see also id.* n.2 ("If the testimony is

ultimately relied upon as a 'key' element of any party's case in chief or defense, then the public 'need' may be elevated."). In such circumstances, the public has a right to understand the positions taken by their government, and the public's interest in access to the materials that will actually be at issue during trial can be overcome only if Meta carries its heavy burden to show that each of its proposed redactions is "narrowly tailored to include only the specific information which, if released, would be detrimental to [Meta's] business interests." *New York v. Microsoft*, Case No. Civ. A. 98-1233, 2002 WL 1315804, at *1-2 (D.D.C. May 8, 2002).

The FTC's position is that, for each of the documents submitted to this Court as an exemplar set, Meta has failed to meet its burden to establish that each proposed redaction satisfies the high standard for sealing. The FTC does not maintain that *none* of the information in these documents may be appropriately sealed at trial. In particular, Meta creates a strawman when it suggests that the FTC seeks disclosure of [REDACTED] Meta Mot. to Seal Exemplar Potential Tr. Exs. ("Mot.") at 4, ECF 433-1. The FTC does not object to the sealing of Meta's employees' private information (a position Meta knows). But taken as a whole, Meta's proposed redactions to the documents submitted to this Court as an exemplar set are overbroad, and, if implemented, would inappropriately impinge the public's right of access to judicial proceedings and run afoul of this Court's direction to be "strict" with confidentiality. *See* Hr'g Tr. at 9:22-10:4, 10:24-11:1, Mar. 7, 2025; *see also* Hr'g Tr. at 9:10-15, Dec. 9, 2024, ECF 388 (expressing the Court's desire not to "be in a situation of closing the courtroom . . . except for very short periods of time if truly necessary").

## I. Factual Background

The parties exchanged exhibits according to the Court's instructions: the FTC identified 50 documents, Meta identified 48; due to some overlap between the parties' lists, 91 unique

exhibits were ultimately discussed by the parties. The parties discussed Meta's proposed redactions and were able to reach agreement on more than 20 of the exhibits. Meta submitted 64 exhibits to the Court for guidance, with the understanding that the Court's instructions regarding redactions should assume that the exhibit is actually used with a witness during the trial. *See* Mot. at 3 [REDACTED]

[REDACTED].

This approach makes sense, because to the extent that any exhibit is not used with a witness during the trial, the exhibit is less likely to be cited in the parties' post-trial briefing or feature prominently in the Court's opinion. In the event that an exhibit is not used during the trial but is eventually cited in a post-trial submission, the parties will have an opportunity to agree upon appropriate redactions to said submission; and the Court can, consistent with its approach to its summary judgment opinion, provide the parties the same opportunity regarding any opinion the Court issues following this trial.

## II. Argument

"The starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409). To overcome that presumption, courts engage in the six-factor inquiry described in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *See Jones v. Trump*, Case No. 25-401, 2025 WL 485419, at *2 (D.D.C. Feb. 13, 2025). Specifically, courts consider:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317-22). Here, the first and sixth factors indicate that Meta's proposed redactions to the exemplar documents are inappropriately overbroad.

*First*, the Court of Appeals has instructed that "single most important element" governing a sealing request is "the [p]urposes for [w]hich the [d]ocuments [w]ere [i]ntroduced." *Hubbard*, 650 F.2d at 321. Here, Meta's sealing request relates solely to documents that will be used at a trial: the FTC has already told Meta that it will not disclose any document on the parties' exhibit lists until the document is used at trial. The parties have limited time and will necessarily use a limited number of exhibits, and all of the exhibits will go directly to the issue of Meta's liability. Even limited to the 64 exemplars at issue, the exhibits contain information at the heart of the FTC's case: internal recognition of Facebook and Instagram's use for friends and family sharing (*see, e.g.*, [REDACTED]); Meta's ramp up of ad load and ability to price discriminate (*see, e.g.*, [REDACTED]); and Meta's willingness [REDACTED] on WhatsApp (*see, e.g.*, [REDACTED]), among other topics. These exhibits and others will prove Meta's acquisitions of Instagram and WhatsApp were anticompetitive and rebut Meta's purported procompetitive justifications.

In such a situation, the public interest accordingly reaches its apex, and for this reason, most of the authorities on which Meta relies in its motion are inapposite, because they did not deal with materials that were actually used during a trial, and/or they did not deal with materials that were relevant to the core issue of the case—here, Meta's liability for its unlawful monopolization. *See* Mot. at 6-7, 9-10. For example, Meta cites *Apple Inc. v. Samsung Electronics Co.*, but in that case, the court held that materials should have been sealed where

"none of the documents were introduced into evidence," the party seeking confidential treatment had "agreed to make public all of the information contained in these documents that was actually cited by the parties or the district court," and therefore the motion to seal related only to information that was *not* cited by the parties or the court, and thus were "irrelevant to the public's understanding of the judicial proceedings." 727 F.3d 1214, 1288 (Fed. Cir. 2013). Likewise, Meta cites *Doe v. Meta Platforms, Inc.*, but that case did not relate to the use of materials during a trial. *See* Case. No. 22-cv-03580, 2022 WL 17970394, at *2 (N.D. Cal. Dec. 21, 2022) (crediting "Meta's representations regarding the consequences of disclosure *at this early stage*.") (emphasis added). Meta selectively quotes *In re Yahoo!*, but ignores the procedural posture of that court's decision, and the court's express acknowledgement that its analysis could very well change if the evidence became relevant to the merits of the litigation. *See In re Yahoo! Inc. Customer Data Security Breach Litig.*, Case No. 16-MD-02752, 2018 WL 9651897, at *3 (N.D. Cal. Jan. 3, 2018) ("[A]t this stage of the proceedings, it does not appear that the redacted information is integral to the substantive issue of Yahoo's liability . . . if some of the redacted information is later important to a motion that is more than tangentially related to the merits, it may be the case that the reasons to seal do not outweigh the public interest in disclosure."). Similarly, Meta cites *In re Google Inc. Gmail Litigation*, but ignores the fact that the court determined "that there is no strong public interest in disclosure of the material . . . since this material is unlikely to be critical to the substantive issue of liability." Case No. 13-MD-02430, 2013 WL 5366963, at *3 (N.D. Cal. Sept. 25, 2013). Meta's other authorities are likewise inapposite, and indeed undermine Meta's overbroad requests to seal. *See Anthem.*, 2017 WL 8893757, at *4 n.2 ("If the testimony is ultimately relied upon as a "key" element of any

party's case in chief or defense, then the public "need" may be elevated."); *United States v. Aetna Inc.*, Case No. 1:16-cv-01494, 2016 WL 8739257, at *1 n.1 (D.D.C. Dec. 4, 2016) (same).

*Second*, the need for public access weighs against sealing in cases such as this one where the "government is a party." *Nat'l Childrens' Ctr.*, 98 F.3d at 1409; *see also In re Press Application*, 704 F.Supp.3d at 169 ("[T]he presumption of transparency is 'accentuated in cases' like this one 'where the government is a party.'") (quoting *All Assets Held at Bank Julius Baer.*, 520 F. Supp. 3d at 81). There exists a strong public interest in "monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014)) (further quoting *Pub. Citizen*, that "[t]he interest of the public . . . in access to civil proceedings is at its apex when the government is a party to the litigation.").

*Third*, Meta's [REDACTED] [REDACTED]. This case has already generated significant public interest: the parties' summary judgment filings and the Court's summary judgment opinion, in addition to other filings throughout the case, have each generated their own waves of press coverage. *See, e.g.*, Jody Godoy, *Meta Faces April Trial in FTC Case Seeking to Unwind Instagram Merger*, Reuters (Nov. 25, 2024), https://www.reuters.com/technology/meta-faces-april-trial-ftc-case-seeking-unwind-instagram-merger-2024-11-25/; Bobby Allyn, *Judge Allows Federal Trade Commission's Latest Suit Against Facebook to Move Forward*, NPR (Jan. 11, 2022), https://www.npr.org/2022/01/11/1072169787/judge-allows-federal-trade-commissions-latest-suit-against-facebook-to-move-forw; Ex. A, Hannah Murphy, *US Sues Facebook for 'Years-long' Abuse of Monopoly Power*, Financial Times (Dec. 9, 2020), https://www.ft.com/content/5c03ac0f-7122-4c31-97a5-ecab3928a038. The case even has its own Wikipedia page before

trial has begun. *See Federal Trade Commission v. Meta Platforms, Inc.*, Wikipedia, https://en.wikipedia.org/wiki/Federal_Trade_Commission_v._Meta_Platforms,_Inc. (last visited Mar. 21, 2025). And the public interest is nearing its peak as trial draws closer. *See* Hr'g Tr. at 11:23-12:08, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Apr. 25, 2024), ECF 895 ("[P]ublic access is all the more important the closer the proceedings advance to a decision, given the increased likelihood that the documents at issue will be specifically referred to in the trial judge's public decision." (quotation marks omitted)).

A consideration of the remaining *Hubbard* factors—the extent of previous public access to the documents; the strength of any property and privacy interests asserted; and the possibility of prejudice to those opposing disclosure—also weighs against sealing the exemplar documents. Meta puts the exhibits [redacted] For convenience of the Court, the FTC addresses the remaining pertinent *Hubbard* factors for each category below, while noting that, as it relates to the third *Hubbard* factor, the FTC will stipulate that Meta objects to disclosure for each of the exemplar documents at issue.

1. [redacted]

[redacted] In principle, the FTC does not oppose the redaction of such information. But Meta's proposed redactions here are overbroad; certain

analysis is no longer "forward looking"; and some information is either already in the public domain or at such a level of generality that disclosure would not competitively harm Meta.

For example, [redacted] Much of the information [redacted] however, is either public or sufficiently general that disclosure will not "prejudice" Meta. For example, [redacted] According to [redacted]

[redacted] also notes [redacted]

Information that is already public is not necessary to keep under seal, even if the exhibits themselves have not been made public previously. *See, e.g.*, *All Assets Held at Bank Julius Baer*, 520 F. Supp. 3d at 82-83 (deposition testimony unsealed in part because "a considerable amount of the information included in those excerpts is in the public domain," even though the specific testimony at issue was never previously publicly available); *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008) (unsealing warrant materials in part because "much of the critical information is already in the public forum and [] this factor weighs in favor of unsealing . . .").

Other information from [redacted] is so general it cannot possibly implicate Meta's privacy interest nor can the disclosure prejudice Meta. Meta has not made clear, for example, how [redacted] reveal any kind of "roadmap" to competitors such that disclosure would prejudice Defendant or implicate some privacy interest. [redacted]; Mot. at 5.

Even if there is information embedded within the document that satisfies the *Hubbard* factors, Meta's redactions are not "narrowly tailored to include only the specific information which, if released, would be detrimental to [its] business interests." *New York*, 2002 WL 1315804, at *2; *see also FTC v. Match Group, Inc.*, Case No. 1:22-mc-54, 2023 WL 3181351, at

*8 ("[T]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." (quoting *Press–Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984))); *In re McCormick & Co., Inc.*, 316 F. Supp. 3d 455, 462-63 (D.D.C. 2018) ("[M]any of defendants' confidentiality designations have resulted in overbroad redactions that do not comport with the presumptive right of public access.").

Meta's proposed redactions of other exhibits in this category fail for the same defects. Meta proposes redacting wide swaths of [REDACTED], a document [REDACTED] *See* [REDACTED]. The exhibit was [REDACTED]—rendering any potential utility of this document to competitors today largely moot. Meta purports that [REDACTED] are still so sensitive they must be kept under seal. [REDACTED]. So too does Meta maintain that [REDACTED]—is similarly confidential. [REDACTED]. And whatever plans Meta considered [REDACTED] Either way, the information Meta seeks to redact is either so out-of-date as to render it useless for competitors seeking any sort of competitive advantage or it has been rendered moot by subsequent events.



2.

In principle, the FTC does not oppose the redaction of such information. But as above, Meta's proposed redactions here are not narrowly tailored and its explanations are not sufficient to carry their burden under *Hubbard*.

But Meta does not explain how would provide any kind of advantage to competitors or result in any sort of competitive harm to Meta.

provide no insight into Meta's competitive strategy or

[redacted] Further, "only conclusory arguments" for redacting information will not suffice: Meta must "specifically identify the commercially sensitive information and *why* its disclosure would harm their competitive standing." *McCormick*, 316 F. Supp. 3d at 465 (emphasis added). In addition, any potential competitive interest [redacted]. *See* Hr'g Tr. at 21:25-22:6, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Apr. 25, 2024), ECF 895 (noting whatever competitive interests existed in two exhibits were "substantially diminished" by the exhibits' ages of 11 and 14 years, respectively). And perhaps most importantly, the information [redacted]—goes right "to the heart of the case." *Id.* at 26:22-24.

[redacted] Some [redacted] are perhaps competitively sensitive. *See, e.g.*, [redacted]. But Meta argues for redaction of other [redacted] that cannot be competitively sensitive, such as [redacted]. Other [redacted] information in this document that Meta

seeks to redact is so general it could not possibly reveal information Meta's competitors are not already aware of, such as [REDACTED].

Also included in this category is information Meta cannot show either that it has an underlying privacy interest in or that it will be prejudiced by the disclosure of. For example, Meta proposes redacting [REDACTED]. Meta claims [REDACTED] But Meta stretches to [REDACTED]. Likewise, Meta's assertion that [REDACTED] is not sufficient to meet Meta's burden. Rather, Meta's proposed redactions here and elsewhere appear designed at least in part to avoid disclosing information that could damage the company's reputation, which is not sufficient to "overcome

the strong common law presumption in favor of public access." *FTC v. Match Group*, 2023 WL 3181351, at *25; *see also In re McCormick & Co.*, No. 15-1825 (ESH), 2017 WL 2560911, at *2 (D.D.C. June 13, 2017).

Meta's justifications for redacting appear to be similar, with Meta again . But Meta once again fails to explain how the disclosure of cause competitive harm to Meta today. .

3.

In principle, as above, the FTC does not oppose the redaction of such information. But similarly, Meta's proposed redactions here are not narrowly tailored, and its explanations are not sufficient to carry their burden under *Hubbard*.

Meta provides It is true that *See* . But Meta's proposed redactions encompass numerous pieces of information that, if disclosed, would be of little utility to competitors. For example, the notion that Meta does not reveal anything proprietary not

already in the public sphere. [redacted] The same applies to the fact that Meta [redacted].

Meta also [redacted] Meta proposes redacting information about [redacted]. Such information is publicly available [redacted] Other purportedly confidential characterizations [redacted]

[redacted] also do not appear to reveal any kind of proprietary information. Instead, these redactions are seemingly designed to shield Meta from embarrassment [redacted]—which is not a sufficient justification for *Hubbard*. *See In re McCormick & Co*., 2017 WL 2560911, at *2 ("[S]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983))); *see also Kamakana v. Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").

4. [redacted]

In its motion, Meta [redacted] The FTC will. [redacted] Meta contends that the exhibit contains [redacted]. Not so. The document appears to be [redacted]

[REDACTED]. Moreover, the information contained within the document is not specific enough to provide [REDACTED] *See, e.g.*, [REDACTED]

Putting that aside, [REDACTED]

Again, Meta's primary motivation in redacting [REDACTED] does not appear to be [REDACTED] [REDACTED], but rather to prevent [REDACTED] [REDACTED] from receiving public attention. And that is not a valid justification under *Hubbard*. *See In re McCormick & Co.*, 2017 WL 2560911, at *2 (D.D.C. June 13, 2017); *Kamakana*, 447 F.3d at 1179. Other proposed redactions in [REDACTED] may be less likely to cause reputational harm or cover information not yet in the public sphere, but nonetheless do not appear to be competitively sensitive or [REDACTED].

5. [redacted]

Meta's [redacted]. [redacted].

Notably, [redacted] appears on Meta's exhibit list. The FTC does not know what purpose Meta has for introducing the document at trial, what witness it may be introduced with, or the testimony Meta may try to elicit while using it. If Meta uses the document with a witness, the FTC may decide to cross-examine that witness with portions of the document that Meta [redacted]

Putting [redacted] aside, the FTC should not be required to provide insight into its trial strategy by previewing what portions of documents it plans to use with Meta witnesses in order to somehow justify public disclosure of those documents. Meta's argument here turns the *Hubbard* factors on their head. It is Meta's burden under *Hubbard* to propose redactions and demonstrate why certain material is inappropriate for public disclosure. While the FTC is willing to provide high-level guidance regarding the portions of very long documents it intends to introduce into evidence, it is not incumbent upon the FTC to provide a roadmap into its trial strategy by providing page and line numbers for the documents it intends to use at trial.

* * *

With this exemplar set of documents, Meta has failed to meet its burden under the *Hubbard* standard. The examples and deficiencies highlighted by the FTC are consistent across the full scope of exemplar exhibits and with Meta's overall approach to confidentiality. As such, Meta should be directed to reapply the *Hubbard* factors across this set of exemplars as well as all remaining exhibits and testimony currently designated as confidential. Meta must either propose narrowly tailored redactions that comply with the standard in this circuit, or else be required to allow full public access both to these documents and to any discussion thereof.

Dated: March 21, 2025

Respectfully submitted,

*/s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Susan A. Musser (D.C. Bar 1531486)
Nathan Brenner (IL Bar 6317564)
Justin Lorber (D.C. Bar 90005184)
Maria Dimoscato (D.C. Bar 489743)
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*