**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. |

Case No. 1:20-cv-03590-JEB

**NON-PARTY WITNESSES'
<u>JOINT MOTION TO QUASH TRIAL SUBPOENAS</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 4

ARGUMENT ........................................................................................................................... 17

I.    THE TRIAL SUBPOENAS EXCEED THE  GEOGRAPHICAL LIMITATION
      UNDER RULE 45 ........................................................................................................ 17

II.   THE TRIAL SUBPOENAS WOULD
      IMPOSE AN UNDUE BURDEN ON THE NON-PARTY
      WITNESSES OUTWEIGHING ANY BENEFIT TO THE PARTIES .......................... 21

      A.    The Subpoenas Will Impose A
            Substantial Burden on the Non-Party Witnesses ................................................. 22

      B.    The Live Testimony Sought Is Disproportional
            to the Needs of the Case and Can Be Obtained from
            Other Sources that Are Less Burdensome to the Parties ...................................... 25

III.  ALTERNATIVELY, THIS COURT SHOULD PERMIT REMOTE TESTIMONY...... 27

IV.   CONCLUSION ............................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A. Kush & Assocs. (Canada) Ltd. v. Weingeroff Enters., Inc.*,
No. 85 C 493, 1988 WL 64082 (N.D. Ill. June 8, 1988) ........................................20

*\*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*,
No. CV 17-1047, 2022 WL 3655277 (D.D.C. Aug. 25, 2022)............................17, 21, 22, 27

*\*Armenian Assembly of America, Inc. v. Cafesjian*,
746 F.Supp.2d 55 (D.D.C. 2010) ........................................................................17

*Beltran-Tirado v. INS*,
213 F.3d 1179 (9th Cir. 2000 ...............................................................................28

*Cellustar Corp. v. Sprint Sols., Inc.*,
No. CV 19-01559, 2024 WL 418140 (D.P.R. Feb. 5, 2024) .................................22

*\*In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*,
782 F. Supp. 481 (C.D. Cal. 1991) ......................................................................18

*De Jaray v. Lattice Semiconductor Corp.*,
345 F.R.D. 353 (D. Or. 2024) ..............................................................................25

*\*F.T.C. v. Swedish Match N. Am., Inc.*,
197 F.R.D. 1 (D.D.C. 2000)..................................................................................28

*FTC v. Meta Platforms, Inc.*,
2024 WL 4772423 (D.D.C. Nov. 13, 2024) ..........................................................5

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006)..........................................................................24

*Klayman v. Judicial Watch, Inc.*,
2008 WL 11394176 (D.D.C. Sept. 23, 2008) .......................................................27

*Off. Comm. of Unsecured Creditors v. Calpers Corp. Partners*,
No. 1:18-CV-68, 2021 WL 3081880 (D. Me. July 20, 2021).................................25

*Perera v. U.S. Fid. & Guar. Co.*,
No. 2 Civ. 688, 2007 WL 4247699 (M.D. Fla. Dec. 3, 2007)...............................25

*Powers v. Target Corp.*,
2020 WL 8970607 (S.D. Fla. March 9, 2020) .......................................................28

*Reddick v. Dillard Store Servs., Inc.*
  Civ. 08-844, 2010 WL 3025205 (S.D. Ill. Aug. 2, 2010) ......................................................22

*Shatsky v. Syrian Arab Republic*,
  312 F.R.D. 219 (D.D.C. 2015) ...........................................................................................27

*\*Stati v. Republic of Kazakhstan*,
  Civ. No. 14-1638, 2020 WL 3259244 (D.D.C. June 5, 2020) ...............................................21

*Watts v. S.E.C.*,
  482 F.3d 501 (D.C. Cir. 2007) ............................................................................................22

*\*Yamaha Motor Co. v. F.T.C.*,
  657 F.2d 971 (8th Cir. 1981) ..............................................................................................18

**Statutes**

*\*Clayton Act, 15 U.S.C. § 23 .................................................................................. passim*

**Other Authorities**

Fed. R. Civ. P. 26 .....................................................................................................................21

Fed. R. Civ. P. 43 .......................................................................................................................4

*\*Fed. R. Civ. P. 45 ................................................................................................. passim*

Witnesses employed by non-parties Alphabet Inc. ("Google"), Apple Inc. ("Apple"), Discord Inc. ("Discord"), Nextdoor Holdings, Inc. ("Nextdoor"), Pinterest, Inc. ("Pinterest"), Quora, Inc. ("Quora"), TikTok Inc. ("TikTok"), X Corp. ("X," and together with Apple, Discord, Google, Nextdoor, Pinterest, Quora, and TikTok, the "Non-Party Witnesses" or "Witnesses")[1] hereby move the Court, pursuant to Federal Rule of Civil Procedure 45(d)(3), for an order quashing the trial subpoenas served on them by Defendant Meta Platforms, Inc. ("Meta") and the Federal Trade Commission (the "FTC," and, together with Meta, the "Parties"). Pursuant to Local Civil Rule 7(m), counsel for each of the Non-Party Witnesses conferred with counsel for the Parties in an effort to resolve the motion without court action.[2] The Parties have informed Non-Party Witnesses that they oppose this motion.

## INTRODUCTION

Despite being third parties, the non-parties whose Witnesses bring this motion have been subjected to overbroad and burdensome demands throughout this case—including having submitted their witnesses to 21 depositions for more than 119 hours of testimony and produced over 343,300 documents to the Parties consisting of over 4.5 million pages.

---

[1] The Non-Party Witnesses include one current employee of Apple (Ronak Shah (the "Apple Witness")); one former employee of Discord (Julia Tang (the "Discord Witness")); five current or former employees of Google (Aaron Filner, Thomas Kim, Sam Greenfield, Alastair Slattery, and Bradley Horowitz (the "Google Witnesses")); one former employee of Nextdoor (Flora Hsu (the "Nextdoor Witness")); one former employee and one soon-to-be former employee of Pinterest (Julia Roberts and Scott Coleman (the "Pinterest Witnesses")); one current employee of Quora (Court Showerman (the "Quora Witness")); four current or former employees of TikTok (Adam Presser, Blake Chandlee, V Pappas, and Eric Morrison (collectively, the "TikTok Witnesses")); and three current or former employees of X (Keith Coleman, Tim Perzyk, and Jonathan Chen (the "X Witnesses")).

[2] Discord did not participate in the joint meet-and-confer with the other Non-Party Witnesses, but did meet-and-confer with the Parties separately about their request that the Discord Witness (who gave birth earlier this year) not testify at all or be permitted to testify remotely.

Notwithstanding the non-parties' extraordinary efforts to cooperate and comply with the burdensome discovery served on them, the Parties have now issued trial subpoenas purporting to require their Non-Party Witnesses to travel far and wide to continue this discovery expedition in open court. Indeed, notwithstanding the fact that discovery closed in 2023 and this case is set for trial in less than a month, many of the subpoenas purport to require the Witnesses to bring with them documents that reside, if anywhere, in the files of the entities or affiliated entities for which they work. And the Parties have expressed intent to question some of the Witnesses about either new or yet-unidentified documents for the first time at trial. There is no reason to impose these additional burdens, costs, and risks on the non-parties or their Witnesses.

Bearing in mind the distance of the Non-Party Witnesses from the District of Columbia, as well as the burdens and costs attendant to the requirement that they appear at trial, the Court should quash the Parties' subpoenas for two overarching reasons. *First*, the subpoenas are improper because they uniformly exceed Rule 45's 100-mile geographical limitation. The Parties' only argument to the contrary is that this Court's scheduling order—adopting a proposed order by the Parties over three years ago, without input from any non-party and before discovery commenced in earnest—found good cause for nationwide service under Section 13 of the Clayton Act. 15 U.S.C. § 23. But Section 13 of the Clayton Act does not apply to cases brought under the FTC Act. And even if it did, the Parties did not and could not have established good cause for the blunderbuss trial subpoenas that they have now served—subpoenas which seek to require sixteen of the eighteen Non-Party Witnesses to travel over 100 miles.

Second, the subpoenas impose an undue burden on these Non-Party Witnesses, and by extension the non-parties that do or did employ them, that is disproportionate to any benefit the Parties could conceivably obtain from further testimony by these Witnesses. The Parties'

demand for trial testimony will burden the Non-Party Witnesses by disrupting their current or former employers' businesses, making them prepare for testimony yet again, requiring them to travel (in many instances) across the country, and forcing them to incur significant costs associated with those efforts. And in many cases, the Non-Party Witnesses are individuals who have new roles at, or left the employ of, the companies that made them relevant witnesses and now have new responsibilities having nothing to do with this case. The Parties have already had ample opportunity to question these Witnesses about the topics relevant to this case. Based on the proposed trial exhibits, it is evident that in many cases the Parties hope to have the Witnesses come to this Court to echo testimony that they have already given. This testimony was transcribed and recorded, and it can be readily admitted into evidence and played at trial. To the extent that the Parties seek to cover additional documents or topics at trial, the Parties place an even greater burden on the Non-Party Witnesses who will be forced to review lengthy deposition transcripts and also prepare more broadly for the catch-all areas that the Parties failed to cover during discovery.

Compounding the unnecessary burden the Parties seek to impose on the Non-Party Witnesses, Meta's trial subpoenas purport to require several witnesses to produce additional documents that may (or may not) reside in the files of their employers *years* after the close of fact discovery. Requiring these witnesses to appear live when their videotaped depositions may be properly admitted at trial—and to produce new documents on the eve of trial after hundreds of thousands of pages of paper have been exchanged—is unreasonable, unnecessary, and would impose a significant burden.

The Non-Party Witnesses respectfully request the Court quash the trial subpoenas and confirm they need not undertake the extraordinary burden the Parties seek to impose on them.

Alternatively, and pursuant to Federal Rule of Civil Procedure 43(a), this Court should permit the Non-Party Witnesses to testify remotely to limit the burden of any testimony in this case because good cause exists for doing so.

## **BACKGROUND**

The Non-Party Witnesses are or were employed by Apple, Discord, Google, Nextdoor, Pinterest, Quora, TikTok, and X, all of which produced extensive discovery in this case. As set forth below, requiring their Non-Party Witnesses to devote yet more time to this matter would impose significant burden.[3]

*Apple.*  Apple designs and manufactures a wide variety of products, including iPhones, iPads, and Mac computers. These devices run on Apple's iOS, iPadOS, and MacOS operating systems, respectively, for which Apple develops many first-party applications, such as:

- **Messages**, a messaging application that allows users to send text messages to one another via cellular carrier or the Internet (including through Apple's iMessage messaging service);

- **FaceTime**, a video-calling application that allows users to make video calls to one another via the Internet;

- **Photos**, an application that acts as a repository and curator for users' photos, videos, and images, whether captured on their device's camera directly or via other means (e.g., screenshots); and

- **Apple News**, an application that aggregates news articles and similar content in a single virtual space so a user can seamlessly read and enjoy it.

Apple has never offered a social networking service like Meta's Facebook or Instagram.

Apple is of marginal, if any, relevance to this case, much as the Court has recognized. This case concerns Meta's "acquisitions of Instagram and WhatsApp" and their effect on an

---

[3] In the event it would be useful to the Court, the Non-Party Witnesses can provide declarations supporting the facts set forth in support of this Motion.

alleged "market [] for personal social-networking [] services." *FTC v. Meta Platforms, Inc.*, 2024 WL 4772423, at *1 (D.D.C. Nov. 13, 2024). Apple's only conceivable relevance to those issues is to an assessment of the alleged market—i.e., whether, and if so the extent to which, Apple's apps compete with Meta's products. Meta at one time advanced the defense "that it acquired WhatsApp as part of a broader strategy . . . to prevent Apple or Google from 'de-platforming' [its] applications." *Id.* at *40. But the Court has since precluded Meta from advancing that defense because the Court was "aware of no authority" for the proposition that Meta could "justify a potentially anticompetitive acquisition" by "increasing its bargaining leverage over Apple," and Meta provided "no evidence that acquiring WhatsApp was the least restrictive means of obtaining that [purported] benefit" anyhow. *Id.* (internal quotation marks omitted).

Despite its limited relevance, the Parties sought—and received—extensive discovery from Apple. The Parties' impositions on Apple began with document discovery. Meta served Apple with a subpoena containing a breathtaking *71* requests for production, while the FTC served Apple with a subpoena containing *48* separate document requests. After months of significant negotiations, Apple produced over 5,000 documents to the Parties from the files of numerous custodians, amounting to over 42,000 pages of document discovery.

Months after they first issued their document subpoenas, the Parties sent Apple expansive Rule 30(b)(6) deposition subpoenas seeking information about a total of *28* topics that spanned Apple's business. After further extensive negotiations concerning the scope of the parties' topics, Apple informed the Parties that it would produce Ronak Shah (Director, Product Marketing for Internet Technologies and User Privacy and Security) as its corporate representative. The Parties responded with 30(b)(1) deposition subpoenas also seeking testimony from Mr. Shah in his personal capacity.  Mr. Shah prepared extensively to serve as Apple's corporate representative

over multiple days and had numerous conversations with other Apple employees to learn about noticed topics for which he did not have employment responsibilities, interrupting his own professional responsibilities at Apple.

Mr. Shah's deposition proceeded on April 27, 2023, and was recorded by video. During the deposition, Mr. Shah squarely addressed the extent to which Apple's apps compete with Meta's relevant products. Among other things, Mr. Shah testified about Apple's Messages, Photos, FaceTime, and Apple News apps and the features therein; the scope of Apple's competition with respect to those applications and features; and data regarding user usage of, and engagement with, those applications and features. The testimony that Mr. Shah provided, in over six deposition hours, is more than sufficient to assess Apple's place (if any) in the alleged market.

The Parties now seek Mr. Shah's testimony at trial, even though they covered his anticipated trial testimony in detail during his deposition. On their final witness lists, Meta explained that it anticipated it would examine Mr. Shah about "the competitive landscape," Dkt. No. 417-4 at 21—about which Mr. Shah testified extensively at his deposition—while the FTC provided only boilerplate information about Mr. Shah's expected testimony, Dkt. No. 417-1 at 17. Apple has met and conferred with Meta and the FTC about their subpoenas, and during those meet-and-confers, Meta did not identify any topics that it plans to broach during Mr. Shah's examination that the parties did not address at his deposition, while the FTC confirmed that the content of the testimony it seeks to elicit from Mr. Shah at trial will not be materially different than the content of his deposition testimony. And they both have conceded that Mr. Shah's trial testimony would be limited, with the FTC and Meta estimating that their examinations of Mr.

Shah would take only about 30 minutes and 45 minutes, respectively. Dkt. No. 417-1 at 17; Dkt. No. 417-4 at 21.

Appearing at trial to testify would present an immense burden for Mr. Shah. Mr. Shah lives and is employed in California. Testifying would require him to set aside multiple days in his schedule. Meanwhile, the spring is an extraordinarily busy time of the year for Mr. Shah. Apple typically showcases and/or announces new product/feature launches at an information technology conference it holds in early June known as the Worldwide Developers Conference ("WWDC"). The work needed to ensure Apple is prepared for WWDC this year will require significant attention from Mr. Shah and from his team more broadly. Preparing to testify at trial, and ultimately testifying at trial, will divert him from these important efforts.[4]

*Discord.* Meta subpoenaed Discord for documents in February 2022. The FTC likewise subpoenaed Discord for documents and data in May and September of 2022. In the months that followed, Discord engaged in a series of meet-and-confers with each of Meta and the FTC regarding the scope and nature of the Parties' requests. Discord then made eight productions of documents, totaling more than 4,000 pages. In February 2023, the Parties each served a 30(b)(6) subpoena on Discord, and a 30(b)(1) subpoena on Discord's corporate designee—Julia Tang— who was a former employee at the time she was deposed on May 4, 2023.

In February of 2025, each of FTC and Meta reached out to Discord seeking Ms. Tang's testimony at trial in this case. Discord advised the Parties that Ms. Tang lives in California and gave birth to a child in January and therefore did not want to leave her infant to travel across the country for her testimony. The parties subsequently agreed that Ms. Tang should testify

---

[4] Both Meta and the FTC agree that if Mr. Shah is required to testify in this action, he may testify remotely, consistent with Federal Rule of Civil Procedure 43(a).

remotely, if at all. But even remote testimony imposes an undue, and unnecessary, burden on a new mother. In particular, Ms. Tang no longer works for Discord and has not since before she was deposed almost two years ago. Based on correspondence with Meta and the FTC, the Parties seek to question Ms. Tang at trial about the same general topics she testified about at her deposition. In their final witness lists, the Parties also estimate that they will question Ms. Tang at trial for only 30 minutes each. An hour of testimony on topics already covered at deposition is hardly worth disrupting a new mother who is caring for her infant.

**_Google._** Google made tremendous efforts in good faith to satisfy the Parties' overbroad requests during fact discovery. In response to a total of 147 distinct document requests—some with up to thirteen subparts—Google delivered twenty-eight rolling productions to both Parties. Those productions amounted to over 273,000 documents and nearly 3.25 million pages of document discovery, resulting from searches of email files from thirty custodians and shared resources as well as from data pulls coded specifically in response to the Parties' requests.[5] In total, Google transmitted over 810 GB of files and data. Google's production included regulatory filings and other documents that directly address the issue about which the Parties seek testimony—competition between Google and Meta products.

Following document discovery, the Parties deposed eight Google witnesses: Bradley Horowitz (Google+), Samuel Greenfield (Google Cloud), Alastair Slattery (Android Messages), Matthew Leske (over-the-top messaging products such as Google Hangouts), Aaron Filner (YouTube), Thomas Kim (YouTube), Debbie Weinstein (YouTube ads), and Jason Spero

---

[5] The extensive number of custodians was due to the parties' requests covering at least twelve Google products or areas: Google Ads, Google Cloud, Google Photos, Google+, Google Chat, Google Hangouts, Google Allo, Google Duo, Google Meet, Google Messages/Android Messages, Google Play, and Corporate Development.

(Google Ads).  Collectively, Google's witnesses provided approximately 50 hours of deposition testimony (and were made available for up to 80 hours). Each of these witnesses testified about competition between the Google product(s) on which they work and Meta's products.

The Parties have issued trial subpoenas for five of the eight Google witnesses who were already deposed during discovery: Messrs. Horowitz, Greenfield, Slattery, Filner, and Kim. Going even further, Meta's subpoenas to Messrs. Filner and Kim requested that they bring with them to trial two categories of documents that, if in existence, reside in the files of their employer, not their personal files.[6] Google Witnesses are all located more than 100 miles from the District of Columbia and are all outside this Court's Rule 45 subpoena power. Messrs. Horowitz, Kim, Slattery, and Filner are based in California's San Francisco Bay Area; each of them is over 2,500 miles from this Court. Mr. Greenfield is based in the New York City Metropolitan Area, over 200 miles from this Court.

The Parties have not articulated to Google any incremental information they seek to elicit from these witnesses that has not been covered in their depositions. Mr. Horowitz is now a former employee of Google, and his Google work focused on a product that shut down in 2019. He is fully engaged with a new company that faces critical governance decisions during the trial. The FTC seeks less than an hour of his testimony, and while Meta objects to his remote testimony, it has not blocked any time to question him. Mr. Slattery and Mr. Greenfield work on products that are tangentially relevant at most (Android Messages and Google Cloud,

---

[6] Specifically, Meta issued two requests for production to Messrs. Filner and Kim: (1) documents sufficient to identify the number of unique users, number of videos posted, and the time spent using YouTube on an hourly and daily basis from January 10, 2025 through February 2, 2025 in the United States; and (2) documents created on or after December 1, 2024 discussing or analyzing the anticipated and actual impact of the TikTok Outage on user engagement or usage of YouTube, Facebook, Instagram, Snapchat, or other competing Products.

respectively); are only on Meta's "may call" list; and Meta seeks only 30 minutes of testimony from each. And both parties' final witness list confirms the testimony they seek to elicit from Mr. Filner and Mr. Kim (both YouTube employees) is duplicative— there is word-for-word overlap such that they would both testify to the exact same topic for the exact same product. Google has likewise offered to make witnesses on the Parties' "will call" lists available via live video. The FTC has acknowledged that Google has shown good cause for its witnesses to testify via remote video; only Meta has objected to this proposal to reduce witness burdens.

*Nextdoor*.  Meta subpoenaed Nextdoor for documents in February 2022 and the FTC subpoenaed Nextdoor for documents in May 2022. After months of meet-and-confers regarding the scope of the requests, Nextdoor produced over 2,000 pages of documents over the course of four productions. The FTC and Meta served 30(b)(6) deposition notices with over 20 topics, combined, on Nextdoor. Flora Hsu was designated as Nextdoor's 30(b)(6) witness. Both parties later also noticed Ms. Hsu's deposition in her individual capacity. Ms. Hsu prepared extensively for this deposition, spending dozens of hours reviewing Nextdoor's documents and preparing for her deposition. On April 12, 2023, Ms. Hsu sat for over eight hours of in-person testimony in both her corporate and individual capacities.

Shortly thereafter, in November 2023, Ms. Hsu left Nextdoor. Ms. Hsu now works for a company headquartered in San Francisco, California and lives in the San Francisco Bay Area. She has not reviewed any documents in connection with this case since her deposition and is otherwise unfamiliar with any questions that Meta would have for Nextdoor related to the competitive landscape since she left the company.

Two years later, on February 3, 2025, Meta requested that Nextdoor and Ms. Hsu accept service of a trial subpoena for in-person testimony. The FTC has not subpoenaed Nextdoor or

Ms. Hsu for testimony and they do not appear on the FTC's witness list. While Meta claimed it would "try to work in good faith around any immovable conflicts Ms. Hsu has, to the extent possible," Meta requested Ms. Hsu effectively block off the entire month of May to be on-call to testify even though it estimated that it needed only 15 to 30 minutes. Nextdoor and Ms. Hsu objected, citing the enormous burden on Ms. Hsu, and requesting that Meta use Ms. Hsu's deposition testimony. Meta refused. Meta also refused to agree to Ms. Hsu testifying remotely. When asked about the intended substance of Ms. Hsu's testimony, Meta vaguely stated they would question Ms. Hsu about the competition landscape in general, and failed to identify any additional testimony it expected to elicit from Ms. Hsu at trial that was not covered during her deposition.

On March 17, 2025, Meta stated that it intended to call Ms. Hsu to testify during the week of May 19–22, 2025. Meta still refused to use deposition testimony or agree to a remote deposition because "this trial is extremely important for Meta." Meta's position means that Ms. Hsu must fly across the country for an entire week for what is estimated to be under 30 minutes of testimony. She must also prepare ahead of time for potentially far-reaching testimony, the scope of which Meta vaguely describes as the "competitive landscape." Ms. Hsu has not worked for Nextdoor since November 2023, is unfamiliar with Nextdoor's current competitive landscape, and would need to entirely refresh her knowledge about the testimony she gave in 2023, including her 400-page deposition transcript. The burden that this places on both Ms. Hsu, her current employer, and Nextdoor—which will need to prepare a former employee on both substance and confidentiality—is unreasonable given that Meta anticipates only 15–30 minutes of testimony.

*Pinterest.*  To date, Pinterest and its current or former employees have provided extensive discovery to the Parties in response to overbroad discovery requests. During fact discovery, Pinterest produced over 14,200 documents, consisting of more than 85,800 pages and more than 38GB of data following a search of the email files of four custodians and various shared resources.

The Parties also served Pinterest with deposition subpoenas and voluminous Rule 30(b)(6) deposition notices, with Meta seeking testimony on 14 topics (not counting sub-parts) and the FTC seeking testimony on 11 topics (not counting sub-parts). Pinterest designated Julia Roberts, its Head of Growth Product, to testify on these various topics. Both Parties also issued individual deposition subpoenas to (1) Ms. Roberts; and (2) Scott Coleman, a former Pinterest employee who had served as Head of Growth and Head of International before leaving the company in 2022. Collectively, Pinterest's witnesses provided over 12 hours of deposition testimony over the course of three days. Each witness faced disruptions in their work schedules in order to prepare and sit for these depositions.

Now, the Parties have issued trial subpoenas for these same witnesses. Both witnesses are located in California, more than 2,000 miles from this Court and well outside the limitation imposed by Rule 45. In addition, and as noted above, Mr. Coleman is a former Pinterest employee. And by the time of trial, Ms. Roberts also will be a former Pinterest employee, as she has announced her planned departure from the company later this month.

In addition, the subject matters that the Parties expect to cover with the Pinterest witnesses at trial were already extensively covered in their depositions. For example, Meta anticipates examining Mr. Coleman about "[t]he competitive landscape" Dkt. 417-4. Mr. Coleman testified about that topic at length at his deposition in 2023.  And because he was

already a former Pinterest employee at that time, there is no reason to believe he has any new information that would warrant the burdens of live testimony now. Moreover, the Parties' final witness lists indicate that they plan to spend very little time examining these witnesses at trial. Indeed, for Ms. Roberts, the FTC estimates 1 hour of examination and Meta estimates 45 minutes. For Mr. Coleman, Meta estimates 45 minutes. Any marginal value of hearing this brief testimony live (rather than in deposition form) is significantly outweighed by the burdens involved in preparing for and attending trial.

*Quora.* Meta subpoenaed Quora for documents in February 2022 and the FTC subpoenaed Quora for documents in May 2022. After months of meet-and-confers regarding the scope of the requests, Quora produced over 1,000 pages of documents over the course of two productions. The FTC served a deposition subpoena on Quora, and Meta served deposition subpoenas on Quora and its Chief Financial Officer, Court Showerman. In May 2023, Mr. Showerman sat for three hours of deposition testimony in response to all three subpoenas.

Two years later, on February 19, 2025, Meta served Mr. Showerman through counsel with a subpoena for trial testimony. Mr. Showerman was not subpoenaed by the FTC and does not appear on the FTC's witness list. During meet-and-confers regarding trial testimony, Meta represented that it was seeking only 15–30 minutes of in-person testimony from Mr. Showerman. Meta did not identify any trial testimony that it is seeking that is different than Mr. Showerman's prior deposition testimony. Nor did it articulate with any specificity the topics of testimony it intended to cover with Mr. Showerman at trial, stating only that Mr. Showerman's testimony related to the "competitive landscape." The result is that Mr. Showerman will be forced to prepare in detail for testimony broadly touching on competition, despite being called for only a few questions.

13

Meta also refused to agree to remote testimony from Mr. Showerman, taking the position that in-person testimony from non-parties in trial is not unreasonable or an undue burden because, otherwise, "there would be no in-person testimony from non-parties in trials," failing to account for the particular burden on Mr. Showerman.

In addition, Meta initially refused to provide Mr. Showerman with a narrow date range for his testimony, instead asking him to hold open May 5, 2025 to the end of May. On March 17, 2024, Meta told Quora that it was likely to call Mr. Showerman the week of May 19-22 and estimated he would be called May 21, 2025. However, Meta's representations do not substantially narrow the inconvenience to Mr. Showerman, who lives and works in the San Francisco Bay Area. Meta's proposal will require Mr. Showerman to fly to Washington, D.C. and be available for a full week, in addition to the time he spends preparing for his testimony.

**_TikTok_**.  To date, TikTok has provided extensive discovery to the Parties in response to overbroad discovery requests. During fact discovery, TikTok produced over 358,000 pages of document discovery following a search of the email files of ten custodians and various shared resources. This consisted of searching more than 155 GBs of email and approximately 340 GBs of all data. The Parties served deposition subpoenas for two senior executives and a former employee, namely: (1) Blake Chandlee, President of Global Business Solutions; (2) V Pappas, (now-former) Chief Operating Officer; and (3) Eric Morrison, former Director, UX Research. In addition, the FTC and Meta each served voluminous Rule 30(b)(6) deposition notices with eleven and fifteen topics for examination respectively, for which TikTok designated Adam Presser, TikTok's former Chief of Staff, as its designee. Collectively, TikTok's witnesses provided over fifteen hours of deposition testimony over the course of four days. Each witness faced disruptions in their work schedules in order to prepare and sit for these depositions.

14

Now, the Parties have issued trial subpoenas for the same four TikTok Witnesses who were deposed during discovery. On February 14, 2025, Meta served subpoenas for trial testimony on Adam Presser, Blake Chandlee, and Eric Morrison. It separately served V Pappas through their counsel on February 24, 2025. Mr. Morrison and Mx. Pappas are no longer employed by TikTok and are thus unlikely to offer new information beyond their deposition testimony. Mr. Presser has taken on a new role at TikTok since his deposition, and as Head of Operations, is responsible for managing TikTok's operations as it faces unprecedented disruption to its U.S. business.

Additionally, despite the fact that TikTok produced significant discovery, Meta's subpoenas to Messrs. Presser and Chandlee include requests for two new categories of documents—contrary to the Federal Rules of Civil Procedure and Federal Rules of Evidence (*see* Dkt. 417 at 22-23)—that reside, if anywhere, in the files of their employer or its affiliates.[7] For its part, the FTC served a trial subpoena on Adam Presser on February 14, 2025. Each TikTok Witness is located more than 100 miles from this Court and outside the limitation imposed by Rule 45. Mr. Presser is based in Los Angeles—over 2,000 miles from this Court. Mr. Chandlee is based in Austin, Texas and Mr. Morrison is based in New York—over 1,000 and 200 miles from this Court, respectively. And Mx. Pappas is based in California—over 2,000 miles from this Court.

---

[7] Specifically, Meta issued two requests for production to Messrs. Presser and Chandlee: (1) documents sufficient to identify the number of unique users, number of videos posted, number of messages sent, and the time spent using TikTok in the United States on an hourly and daily basis from January 10, 2025 through February 2, 2025; and (2) documents created on or after December 1, 2024 discussing or analyzing the anticipated and actual impact of the TikTok Outage on user engagement or usage of YouTube, Facebook, Instagram, Snapchat, or other competing Products.

Over the course of many meet-and-confers with the Parties, the Parties have provided inconsistent messaging regarding whether testimony would overlap in whole or in part with testimony that TikTok's witnesses have already given in this case. The FTC has not articulated any new ground it hopes to explore at trial. To the contrary, as evidenced by the FTC's recent motion for an advanced ruling that Adam Presser's testimony involving certain topics covered in his Rule 30(b)(6) deposition be admissible at trial, the agency plans to explore the same testimony Mr. Presser has already given. *See* Dkt. 407. On March 12, 2025, the FTC designated V Pappas's video deposition testimony for trial; the FTC will not subpoena Mx. Pappas. Despite the FTC's designation, Meta has indicated that it is unwilling to withdraw its trial subpoena and is still seeking to compel the former employee witness to testify in-person at trial. Meta has alluded to potentially wanting to elicit new information, including testimony related to the post-fact discovery document requests included in its trial subpoenas served on Messrs. Presser and Chandlee. And Meta has indicated that it intends to cover much of the same ground already tread with V Pappas but indicated it also seeks to inquire about additional, yet-unidentified documents and expanded topic areas.

*X.* Together, the Parties have issued trial subpoenas to three individuals affiliated with X Corp.—Keith Coleman, X's current VP of Product; Tim Perzyk, X's former VP of Marketing; and Jonathan Chen, X's former VP of Corporate Development & Strategy. Neither Mr. Chen nor Mr. Perzyk remains employed by X. Mr. Coleman, Mr. Perzyk, and Mr. Chen have each sat for hours of deposition testimony in this case. Mr. Coleman, in fact, was forced to provide more than ten hours of testimony over two days. And while each has knowledge relevant to this case, that knowledge is about the industry as a whole, going to topics like market definition that do not hinge on an assessment of credibility by the factfinder. Accordingly, the video-recorded

deposition testimony of each should be sufficient. The Parties have not identified any new topics they intend to cover with the X witnesses, and indeed counsel for Meta has requested that they use transcripts of those depositions as a proxy for trial testimony when evaluating possible confidentiality concerns. Finally, none of these three reside within 100 miles of Washington, DC. Quite the opposite, all three reside in locations in the western United States that would require plane travel of several hours—likely at least a day in advance—were they to testify live in this case.

**ARGUMENT**

This Court should quash the trial subpoenas issued to the Non-Party Witnesses for two reasons. *First*, the subpoenas should be quashed because they exceed the geographic limits of Rule 45, which provides that trial subpoenas may compel attendance for witnesses only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1). *Second*, the subpoenas should be quashed because Rule 45 requires courts to "quash or modify a subpoena that . . . subjects a person to undue burden" as the subpoenas here would do. Fed. R. Civ. P. 45(d)(3)(A)(iv); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*, No. CV 17-1047, 2022 WL 3655277, at *3 (D.D.C. Aug. 25, 2022) (quashing trial subpoena to third-party witness).

**I.    THE TRIAL SUBPOENAS EXCEED THE GEOGRAPHICAL LIMITATION UNDER RULE 45**

When, as here, trial subpoenas compel witnesses to testify at trial outside a 100-mile geographic limitation, they must be quashed. *See Armenian Assembly of America, Inc. v. Cafesjian*, 746 F.Supp.2d 55, 63 (D.D.C. 2010). In the course of meet-and-confers, the Parties have asserted that Rule 45's geographic limitations are irrelevant because this Court authorized nationwide service under the Clayton Act. While Section 13 of the Clayton Act does indeed

allow for nationwide service in civil cases brought under certain "antitrust laws," *see* 15 U.S.C. § 23, it does not and cannot save the subpoenas here for two reasons:

*First*, the Clayton Act's nationwide service provision is inapplicable here because, by its express terms, the provision applies only to cases brought under the "antitrust laws." *Id.* Those laws are defined in Section 1 of the Clayton Act, and include: (1) the Sherman Act, (2) the Wilson Tariff Act of 1894, (3) the 1914 Amendment to the Wilson Tariff Act, and (4) the Clayton Act itself. The FTC Act—which is the vehicle by which the FTC brought its claims in this case—is not one of those laws. *See* Dkt. 82 at 1 (the FTC "petitions this Court pursuant to Section 13(b) of the [FTC Act] . . . for a permanent injunction and other equitable relief against [Facebook] to remedy and prevent its anticompetitive conduct and unfair methods of competition in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C.§ 45(a)"); *see also id.* ¶¶ 18, 243; *see, e.g., Yamaha Motor Co. v. F.T.C.*, 657 F.2d 971, 973 (8th Cir. 1981) ("Section 7 [of the Clayton Act] is one of the 'antitrust laws' within the meaning of Sections 5(a) and 5(i) of the Clayton Act, while Section 5 of the FTC Act is not."); *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 481, 484 (C.D. Cal. 1991) ("Under the plain wording of the Clayton Act, an action brought under the FTC Act is not an action to enforce the antitrust laws."). Indeed, Congress could not have intended the FTC Act to be included within the scope of the "antitrust laws" defined in the Clayton Act, as the FTC Act was not passed until nearly a year after the Clayton Act. Extending Section 13 to cover the FTC Act would have required an act of Congress. But Congress rejected the only proposal that would have expanded the scope of Section 13 to certain cases brought under the FTC Act.[8]

---

[8] *See* S.4876, 116th Cong, (2020), https://www.govinfo.gov/content/pkg/BILLS-116s4876is/pdf/BILLS-116s4876is.pdf. Notably this amendment still would not have extended

Accordingly, there is no basis under the Clayton Act for the Parties to require the Non-Party

Witnesses who are all more than 100 miles away to testify in this case. 15 U.S.C. § 23.

     *Second*, even if the Clayton Act permitted nationwide service of trial subpoenas in a case

brought under the FTC Act, it only permits the Court to extend the 100-mile limitation in Federal

Rule of Civil Procedure 45 upon "proper application and cause shown." 15 U.S.C. § 23. That

requirement has not been met here. The Parties' only argument to the contrary is that this Court

found "good cause" in the scheduling order it issued in March 2022. *See* Dkt. 103, ¶ 22. That

scheduling order—issued at the outset of discovery without any input from the non-parties and

well before the Parties obtained any discovery from the non-parties—appears to have adopted a

proposal jointly advanced by the Parties.

     Specifically, on February 22, 2022, the Parties filed their Joint Civil Rule 16.3 Report to

the Court, which included proposed scheduling orders from both the FTC and Meta. *See* Dkt.

100. Despite extensive arguments involving discovery throughout the Joint Report, both Parties'

proposals included the exact same language the Parties now claim made a finding of "good

cause" for allowing them to serve trial subpoenas on the Non-Party Witnesses despite having

taken those witnesses' videotaped deposition. *See id.* Ex. A, ¶ 27; *id.*, ¶ 25. Following a

telephonic conference, on March 2, 2022, the Parties submitted their Joint Proposed Scheduling

Order, which included this same "good cause" language. Dkt. 102 ¶ 22. The Court adopted the

Parties' proposed scheduling order the next day. Dkt. 103 ¶ 22.

     The problem with relying on these proposals is that the proposals *assume* good cause

rather than show it. The parties wrote: "Good cause *having been shown* in view of the

---

Section 13 to cases like this one where the FTC seeks injunctive relief under Section 13(b) of the
FTC Act.

geographic dispersion of potential witnesses in this action, the Parties will be allowed nationwide service of process of discovery and trial subpoenas." Dkt. 100 Ex. A, ¶ 27 and Ex. B, ¶ 25 (emphasis added). This language is doubly problematic. First, it assumes good cause has already been shown with no record support. Second, to the extent the parties assert geographic dispersion alone is sufficient to show "good cause," the proposals are legally flawed and would be present in every case where witnesses are located outside 100 miles making the showing redundant. Indeed, cause is not "good" merely because the witnesses live far away. "'Good cause' must mean more than this, . . . or every request for a [nationwide] subpoena would be for good cause per se." *A. Kush & Assocs. (Canada) Ltd. v. Weingeroff Enters., Inc.*, No. 85 C 493, 1988 WL 64082, at *4 & n.7 (N.D. Ill. June 8, 1988) (interpreting cause requirement for nationwide subpoenas under civil RICO, which "reli[ed] on the Clayton Act Model").

The Parties' proposals could not establish good cause for these trial subpoenas. Without having been told of the scope of third-party trial subpoenas the Parties would propound years later, the Court was never in a position to determine whether there actually is "good cause" for the trial subpoenas that have now been served. The Parties' agreement that such cause was preemptively satisfied cannot fill this gap—especially when they have not even attempted to establish their grounds for hauling the Non-Party Witnesses into court from well outside of the 100-mile radius. For these reasons, the Parties cannot invoke Section 13 of the Clayton Act to force the Non-Party Witness outside of Rule 45's 100-mile radius into court. The Court should thus quash the Parties' subpoenas.

II.     THE TRIAL SUBPOENAS WOULD
        IMPOSE AN UNDUE BURDEN ON THE NON-PARTY
        WITNESSES OUTWEIGHING ANY BENEFIT TO THE PARTIES

The subpoenas should also be quashed for the separate reason that they would impose an

undue burden on the Non-Party Witnesses and, by extension, the non-parties that do or did

employ them. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). Courts evaluate motions to quash by weighing

the competing interests involved in enforcing a subpoena, which derive in part from the

discovery requirements under Rule 26 of the Federal Rules of Civil Procedure. *See Stati v.

Republic of Kazakhstan*, Civ. No. 14-1638, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020)

("The undue burden standard for Rule 45 also mirrors the standard included within Rule 26.");

9A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 2463.1 (3d ed. 2024)

(explaining that undue burden "usually raises a question of the reasonableness of the subpoena,"

which "requires a court to balance the interests served by demanding compliance with the

subpoena against the interests furthered by quashing it"). As applied to trial subpoenas, these

factors include: (1) whether the testimony sought is "unreasonably cumulative or duplicative";

(2) whether the testimony sought "can be obtained from some other source that is more

convenient less burdensome, or less expensive"; and (3) whether the testimony sought is

"proportional to the needs of the case," taking into account, among other things, "the parties'

relative access to relevant information" and "whether the burden or expense of the [testimony]

outweighs its likely benefit." *AFL-CIO*, 2022 WL 3655277, at *3-4. The D.C. Circuit has

"admonished district courts to be 'generally sensitive to the costs imposed on third parties' when

considering a motion to . . . quash[] pursuant to Rule 45, reminding [courts] to consider whether

the [testimony] sought is obtainable from some other source that is more convenient, less

burdensome, or less expensive." *Id.* at *3 (quoting *Millenium TGA, Inc. v. Comcast Cable*

*Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012)); *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).

This Court should quash the trial subpoenas because they place an undue burden on the Non-Party Witnesses and non-parties and are unjustified in light of the prior exhaustive deposition testimony that the Parties could admit as evidence in this trial.

### A.    The Subpoenas Will Impose A Substantial Burden on the Non-Party Witnesses

The trial subpoenas impose a substantial burden on the Non-Party Witnesses by disrupting their schedules and, as a consequence, the non-parties' businesses. The Witnesses will be forced, once again, to divert their time and attention away from their jobs to provide testimony. *See AFL-CIO*, 2022 WL 3655277, at *4 (finding undue burden where party issued a trial subpoena of a third-party executive that would "pull[] them away from their substantial duties"); *see also, Cellustar Corp. v. Sprint Sols., Inc.,* No. CV 19-01559, 2024 WL 418140, at *6 (D.P.R. Feb. 5, 2024) (granting motion to quash where "absent a showing that" president and executive director of electric company "possesse[d] first-hand, unique relevant knowledge and without exhausting other discovery methods," subpoena "would certainly cause an undue burden by significantly disrupting his managerial responsibilities"); *Reddick v. Dillard Store Servs., Inc*. Civ. 08-844, 2010 WL 3025205, at *1 (S.D. Ill. Aug. 2, 2010) (quashing subpoena and finding undue burden where a non-party would be required "to travel from Oregon [to Illinois] for trial").

All but one of the witnesses subpoenaed are or were high-level employees with significant responsibilities. Indeed, several are or were true C-Suite executives, like Mr. Presser, who is now TikTok's Head of Operations while the company's U.S. business experiences disruptions caused by a potential ban. What is more, many no longer even work for the company

that made them witnesses in the first instance. By way of example, Mr. Perzyk—who was deposed in his capacity as X's VP of Marketing—has since left X and joined a new (far less established) company in a similar role. And V Pappas left their role as Chief Operating Officer at TikTok in July 2023, with their contract fully terminating in 2024. The same is true of Mr. Chen, who had left X even prior to his deposition. Similarly, as to the Pinterest Witnesses, Mr. Coleman already was a former employee at the time of his deposition, and Ms. Roberts will be by the time of trial. And as for Discord, Ms. Tang left the company shortly before her deposition and has no new relevant knowledge since that time. Ms. Hsu, for Nextdoor, left Nextdoor just months after her deposition—which took place almost two years ago—and now works for a new employer in the San Francisco Bay Area. For Google, Mr. Horowitz oversaw the Google+ social network, which was closed to the public in April 2019. Mr. Horowitz stopped working on that product in 2017, and left Google shortly after his deposition in 2023, so he obviously has nothing new to offer by way of testimony. He is now fully engaged with a new company and is facing several time-sensitive management and governance issues as well as international travel in April and May that likewise make it impossible for him to come to DC—the FTC agrees this constitutes good cause at least for remote testimony.

Against this backdrop, it is not just the non-parties who will be burdened, but also their new employers, forced collectively to sacrifice days of productivity from high-ranking executives for a case that has nothing to do with them. Taking the time to prepare to testify, travel across the country, and provide testimony will be a massive disruption to these executives and the organizations at which they work. This burden is compounded by the fact that the Non-Party Witnesses are likely not to be given significant advance notice of the dates they must appear for testimony, leaving little option but to block off multiple days or even weeks. The

cumulative burden of these factors is particularly excessive in light of the significant uncompensated time and effort each non-party witness has already contributed to this case.

The trial subpoenas will further impose an undue burden because live testimony— particularly on brand new topics and unidentified, new documents—creates a risk of inadvertent disclosure of each non-party's highly competitively sensitive information to their competitors and the public at large. Live testimony may risk inadvertent disclosure of highly sensitive information reflecting business strategies, internal product development efforts, and forward-looking product considerations. The Parties already obtained wide-reaching deposition testimony in a more controlled and, importantly, sealed setting. Requiring the Non-Party Witnesses to navigate additional questioning on new documentary material in a live public trial unnecessarily places them at risk of inadvertent disclosure of sensitive business material with few identifiable benefits to the Parties. The Parties have not established a "substantial need" for potentially confidential testimony live at trial, let alone that such testimony is "essential" to this Court's ultimate determination. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006) (explaining that a party only has a substantial need for a third parties' confidential commercial information where that information is "essential to a judicial determination of its case").

Nor does it appear that the Parties have attempted to lighten the burden or associated costs, individually or collectively, it proposes to place on the Non-Parties. Indeed, the Parties have not even attempted to call a limited number of witnesses. The subpoenas propounded on TikTok are illustrative. All TikTok Witnesses deposed during discovery received trial subpoenas. The same applies to all Pinterest Witnesses. At the very least, the Parties should be required to approach the testimony of Non-Party Witnesses with a scalpel, not sledgehammer. While it is suspect that any of these Witnesses need to provide their same testimony yet again, it

simply cannot be the case that *every single deposition witness* is needed at trial. The Parties should not be permitted to cast the broadest net without any consideration of the burden they impose.

### B.    The Live Testimony Sought Is Disproportional to the Needs of the Case and Can Be Obtained from Other Sources that Are Less Burdensome to the Parties

On the other side of the ledger, the benefits the Parties reap from live testimony is limited, as whatever information the Parties purport to need can be obtained from other sources. Indeed, even the FTC has stated that it will call nonparty witnesses by deposition where Meta will call the same witnesses live at trial. *See* Joint Pretrial Statement (Dkt. 417) at 17. Courts have quashed trial subpoenas as unduly burdensome where they sought testimony that was available from an alternative source. *See Off. Comm. of Unsecured Creditors v. Calpers Corp. Partners*, No. 1:18-CV-68, 2021 WL 3081880, at *4 (D. Me. July 20, 2021) (quashing a non-party trial subpoena where the requesting party "ha[d] the testimony of [the non-party] as recorded by a stenographer at his lengthy deposition and c[ould] offer it at trial"); *Perera v. U.S. Fid. & Guar. Co.*, No. 2 Civ. 688, 2007 WL 4247699, at *1 (M.D. Fla. Dec. 3, 2007) (quashing a non-party trial subpoena where the defendants failed "to show a substantial need for the testimony" and noting that the parties could rely on deposition designations).

The testimony will inherently be cumulative and duplicative of testimony the Parties already elicited over the course of over 119 hours of examination during depositions of each Witness. Nearly all topics that are relevant to this case and could be examined at trial were already subject to extensive examination during the depositions of each Witness. Indeed, as already noted, the FTC has made clear its intent to elicit duplicative testimony from Adam Presser of TikTok by moving for an advanced ruling that certain topics covered in his deposition should be admissible at trial. *See, e.g., De Jaray v. Lattice Semiconductor Corp.*, 345 F.R.D. 353,

358 (D. Or. 2024) (denying motion to compel Rule 30(b)(6) corporate representative to testify at trial merely to "repeat [] answers live in front of the jury" when lengthy deposition transcript available).

For TikTok, the only new topics identified by Meta are in connection with the post-fact discovery document requests it served on Messrs. Presser and Chandlee and publicly available documents that the Court can take judicial notice of without testimony from any of the TikTok Witnesses—much less four of them. Improper document requests—two years after fact discovery closed—cannot be the basis for requiring additional testimony from non-Party Witnesses. *See* Dkt. 417 at 22-23 (arguing that such evidence is precluded by the Federal Rules of Civil Procedure and Federal Rules of Evidence 401, 402, and 403).

For Apple, the Parties have not identified *any* new topics about which they will seek testimony from Apple's witness, Mr. Shah, and whatever relevant information they will seek to elicit need not be provided through his live testimony. Meta, for its part, concedes that it seeks testimony from Mr. Shah pertaining only to "the competitive landscape," about which Mr. Shah testified extensively at his deposition (along with many other topics). And in its meet-and-confers with Apple, Meta did not once articulate testimony it will seek to elicit from Mr. Shah now that it did not address at his deposition. The same is true of the FTC, which confirmed that the content of the testimony it will seek to elicit from Mr. Shah at trial will not be materially different than the content of his deposition testimony. In any event, it is hard to imagine what new information the Parties could plan to elicit from Mr. Shah when they plan to examine him for only a total of one hour and 15 minutes, despite having over six hours of his deposition testimony. Nor is there any apparent benefit for the Court to having Mr. Shah appear live because the topics about which the Parties plan to examine Mr. Shah are uncontroversial, and it

26

is unclear how Mr. Shah's credibility could be at issue. The same is true of Discord's witness Ms. Tang, whom both the FTC and Meta indicated would only be examined on topics already covered at her deposition.

The Parties' demands of course ignore Rule 45's guidance to avoid an undue burden on third parties. The non-parties have worked diligently to comply with overbroad discovery requests and multiple depositions of their executives. Despite each non-party's compliance with these overbroad discovery requests, the Parties now insist on duplicative trial testimony—betraying a disregard for Rule 45's sensitivity to burdens placed on third parties. *See AFL-CIO*, 2022 WL 3655277, at *3 (noting that the D.C. Circuit has "admonished district courts to be 'generally sensitive to the costs imposed on third parties' when considering a motion to . . . quash").

Moreover, the fact that Meta has requested additional document discovery in its trial subpoenas underscores the undue burden it is placing on the non-parties. Issuing document requests almost two years after the close of fact discovery on third parties is inappropriate and cannot be enforced. Dkt. 103 at 1 ("Fact discovery shall close on May 22, 2023); *see Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 229 (D.D.C. 2015) (sanctioning parties who sought to enforce subpoena on non-party after close of discovery); *Klayman v. Judicial Watch, Inc.*, 2008 WL 11394176, at *3 (D.D.C. Sept. 23, 2008) (quashing deposition and document subpoenas to non-parties served eleven days after close of fact discovery).

## III.    ALTERNATIVELY, THIS COURT SHOULD PERMIT REMOTE TESTIMONY

Although the Non-Party Witnesses respectfully submit that the Court should quash the subpoenas in their entirety, in the event the Court declines to do so, the Non-Party Witnesses respectfully request that the Court permit them to testify remotely pursuant to Rule 43(a). Rule 43(a) permits the "presentation of testimony in open court by contemporaneous transmission

27

from a different location" upon "good cause shown in compelling circumstances and upon appropriate safeguards." Courts agree that good cause is shown if the witness is not present in the jurisdiction. *See F.T.C. v. Swedish Match N. Am., Inc.,* 197 F.R.D. 1, 2 (D.D.C. 2000) (good cause is shown supporting testimony via live video transmission "by the serious inconvenience that will arise in requiring Mr. Cross, a resident of Oklahoma, to appear as a witness in the hearing in Washington, DC"); *see also Beltran–Tirado v. INS*, 213 F.3d 1179 (9th Cir. 2000) (permitting the use of telephonic testimony where witness lived in Missouri while the hearing was held in San Diego). Good cause similarly exists here, where no Non-Party Witness is present in this jurisdiction; all, save for two, have to travel over 100 miles for live testimony[9]; and traveling to testify (yet again) would pose the burdens outlined above.[10] Moreover, remote testimony will not prejudice the Parties because "there is no practical difference between live testimony and contemporaneous video transmission." *Swedish Match N. Am.*, 197 F.R.D. at 2.

---

[9] As noted above the Parties have agreed that if the Apple Witness, Mr. Shah, and the Discord Witness, Ms. Tang, are required to testify in this action, they may testify remotely, consistent with Federal Rule of Civil Procedure 43(a).

[10] Some out-of-district cases do suggest that travel time and expenses alone are not good cause for remote testimony under Rule 43(a). *See, e.g.*, *Powers v. Target Corp.*, 2020 WL 8970607 (S.D. Fla. March 9, 2020). However, *Swedish Match*, the only case in this district that movants have located, rejected this view and allowed remote testimony based on witness inconvenience due to distance from the court. *F.T.C. v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000). The cases holding otherwise arise in a different posture as well—a party, unable to secure the appearance of one of its own witnesses, seeks to overcome its failure by remote testimony. Here, neither party is seeking remote testimony, so there is no reason to think remote testimony may unfairly favor one party or the other. Rather, to the extent the Court declines to quash the trial subpoenas in their entirety, the Non-Party Witnesses are requesting that the Court use its discretion to prevent them from facing unnecessary burdens from being hauled into court from far outside the District of Columbia. Finally, given Rule 45's instruction to minimize the burdens to nonparties, it would be unreasonable to find good cause to allow trial subpoenas beyond the 100-mile radius under 15 U.S.C. § 23 but not find good cause for remote testimony under Rule 43(a). Doing so would require interpreting both "good cause" requirements in a way that maximizes rather than minimizes the burdens on nonparties.

Meta in particular should not be heard to argue that it is inappropriate or prejudicial for third party witnesses to testify via live video when it intends to have at least one of its own former executives testify via live video.[11]

## IV.    CONCLUSION

For the foregoing reasons, the Non-Party Witnesses respectfully request that the Court quash the subpoenas issued to them, or in the alternative, permit them to testify remotely.

Date: March 26, 2025                                Respectfully submitted,


                                                    *By: /s/ Craig M. Reiser*
                                                    Craig M. Reiser (*pro hac vice*)
                                                    Danielle D. Irvine (*pro hac vice*)
                                                    Angela M. Farren (*pro hac vice*)
                                                    AXINN, VELTROP & HARKRIDER LLP
                                                    630 Fifth Avenue, 33rd Floor
                                                    New York, NY 10111
                                                    Telephone: (212) 728-2218
                                                    creiser@axinn.com
                                                    dirvine@axinn.com
                                                    afarren@axinn.com

                                                    Tiffany Rider Rohrbaugh (D.C. Bar No. 481520)
                                                    AXINN, VELTROP & HARKRIDER LLP
                                                    1901 L Street NW
                                                    Washington, DC 20036
                                                    Telephone: (202) 912-4700
                                                    trider@axinn.com

                                                    *Counsel for Adam Presser, Blake Chandlee and Eric Morrison*

---

[11] Dkt. 417, Ex. 1. at 9 (Meta's final witness list includes remote video transmission for Fidji Simo who, like most of the Non-Party Witnesses, resides in California).

By: /s/ Karen Hoffman Lent
Karen Hoffman Lent (*pro hac vice*)
Evan Kreiner (*pro hac vice*)
Michael A. Lanci (*pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3276
karen.lent@skadden.com
evan.kreiner@skadden.com
michael.lanci@skadden.com

*Counsel for Ronak Shah*

By: /s/ Darren S. Tucker
Darren S. Tucker (D.C. Bar No. 465575)
Gregory F. Wells (D.C. Bar No. 476328)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6500
darrentucker@velaw.com
gregwells@velaw.com

*Counsel for Aaron Filner, Thomas Kim, Sam Greenfield, Alastair Slattery, and Bradley Horowitz*

By: /s/ Peter J. Mucchetti
Peter J. Mucchetti (D.C. Bar No. 463202)
CLIFFORD CHANCE US LLP
2001 K St. NW
Washington, D.C. 20006
Telephone: (202) 912-5000
peter.mucchetti@cliffordchance.com

John P. Alexander *(pro hac vice)*
CLIFFORD CHANCE US LLP
Two Manhattan West, 375 9th Ave.
New York, NY 10001
Telephone: (212) 878-3225
John.alexander@cliffordchance.com

*Counsel for Julia Roberts and Scott Coleman*

By: /s/ Grace A. Ramirez
Rebecca Furman (*pro hac vice application forthcoming*)
Bradley E. Estes (*pro hac vice application forthcoming*)
Grace A. Ramirez (*pro hac vice application and DDC admission pending*)
LEWIS & LLEWELLYN LLP
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590
bfurman@lewisllewellyn.com
bestes@lewisllewellyn.com
gramirez@lewisllewellyn.com

*Counsel for Flora Hsu and Court Showerman*

By: /s/ Nicholas J. Giles
Nicholas J. Giles (D.C. Bar No. 1024886)
MCGUIRE WOODS LLP
800 E. Canal Street
Richmond, VA 23219
Telephone: (804) 775-4760
ngiles@mcguirewoods.com

By: /s/ Justin V. Shur
Justin V. Shur (D.C. Bar No. 973855)
Caroline A. Veniero (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Avenue NW
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)

*Counsel for Keith Coleman, Tim Perzyk, and*
*Jonathan Chen*

<u>By: /s/ Adam D. Harber</u>
Adam D. Harber (D.C. Bar No. 978762)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Email: AHarber@wc.com

*Counsel for Julia Tang*

jshur@mololamken.com


Jennifer Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
(212) 607-5957 (telephone)

*Counsel for V Pappas*

31