UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>     Defendant. | Case No. 1:20-cv-03590-JEB<br><br>HON. JAMES E. BOASBERG |

**JOINDER AND SUPPLEMENTAL MOTION TO QUASH TRIAL SUBPOENA
FILED ON BEHALF OF A NON-PARTY WITNESS FORMERLY
<u>EMPLOYED BY EPIC GAMES</u>**

   Pursuant to the instructions from this Court provided at the March 24, 2025 meeting with counsel, Kimberly Baumgarten, a non-party to this action formerly employed by Epic Games, Inc. ("Epic Games") joins in that portion of the Joint Motion to Quash Trial Subpoenas filed on behalf of the Non-Party Witnesses employed by Alphabet, Inc., Apple, Inc., Discord, Inc., Nextdoor Holdings, Inc., Pinterest, Inc., Quora, Inc., TikTok, Inc., and X Corp. (the "Joint Motion") arguing that the trial subpoenas served on certain non-party witnesses should be quashed because they pose an undue burden on these non-party witnesses that is disproportionate to any benefit the Parties could obtain from further testimony from these witnesses beyond videotaped deposition testimony each have already provided. *See* Joint Motion at 21-27. In addition, Ms. Baumgarten files this supplemental motion to address the specific reasons why: (a) the subpoena seeking her testimony should be quashed given the unique burdens she would face if required to testify at the upcoming trial in this matter; and (b) this Court should alternatively permit Ms. Baumgarten to testify remotely. Counsel for Ms. Baumgarten conferred with counsel for Meta Platforms, Inc. in an effort to resolve the issues raised in this pleading and could not reach an agreement.

**INTRODUCTION**

As this Court has remarked, the instant case is a "great antirust battle" between the federal government and one of the world's most powerful and influential technology firms. *See FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 4 (D.D.C. 2021). Ms. Baumgarten, a former Epic Games employee and mother of two, is currently caught in the crossfire of this dispute—facing a trial subpoena that would force her to leave her four-year-old and eighteen-month-old children for multiple days to provide a half hour of testimony about topics and documents she previously testified about in a videotaped deposition provided in this case. The burdens associated with this travel and testimony far exceed the marginal value gained by requiring Ms. Baumgarten to repeat her prior testimony, particularly if required to do so in person 2,700 miles from her home. This Court can and should exercise its discretion to quash the trial subpoena served on Ms. Baumgarten or, alternatively, order that her testimony may be taken remotely.

**BACKGROUND FACTS**

Ms. Baumgarten is a former employee of Epic Games. She was deposed in this case in April 2023 and questioned via videoconference for approximately four hours by counsel for Meta and the Federal Trade Commission ("FTC"). Declaration of Kimberly Baumgarten ("Baumgarten Decl."), ¶ 4. On March 6, 2025, Meta served a trial subpoena on Ms. Baumgarten, through her counsel, demanding that she appear before this Court to testify at the trial in the instant matter. *Id.*, ¶ 2. According to Meta's witness list, it intends to call Ms. Baumgarten to testify for 30 minutes to address "the competitive landscape." *See* Dkt. 417-1 at 17. This topic was thoroughly explored in Ms. Baumgarten's deposition, chiefly through questions concerning an app that Epic Games came to own in June 2019 called "Houseparty." Baumgarten Decl., ¶ 4. Epic Games shut down Houseparty in September 2021, 19 months prior to Ms. Baumgarten's videotaped deposition. *Id.* Thus, it is difficult to see what new ground might be covered in Ms. Baumgarten's trial testimony that was not addressed in her videotaped deposition. *Id.*

At the same time Meta will derive minimal value from Ms. Baumgarten's trial testimony, since it promises to be no more than a rehashing of her prior videotaped testimony under oath,

requiring Ms. Baumgarten to reiterate her prior deposition testimony would place a substantial burden on her and her family. She lives in Los Angeles, California, approximately 2,700 miles from the courthouse. *Id.* at ¶ 6. She is the mother and primary caregiver of two young children—an 18-month-old and a four-year-old—and her days are primarily centered on attending to the needs of her children. *Id.* at ¶ 7. Ms. Baumgarten also provides nearly daily support to her parents, who are both in their 80s and lost their home of 40 years in the Palisades Fire two months ago. *Id.* In the wake of this family tragedy, Ms. Baumgarten is spending a significant amount of time helping her parents try to piece their lives back together. *Id.*

Requiring Ms. Baumgarten to traverse the continent twice to testify in this case will result in the forced separation of Ms. Baumgarten for three days or longer (depending on potential trial or travel delays) from these family members who depend upon her. *Id.*, ¶ 8. Indeed, even preparing Ms. Baumgarten to testify about subjects that were amply covered in her deposition two years ago will require a significant commitment that will steal time away from her family obligations and a consulting business she is trying to get off the ground. *Id.*, ¶ 5. On top of all this, Ms. Baumgarten will be forced to bear these burdens despite the fact she no longer works at Epic Games and testifying in this case falls nowhere in any current job duty she has. *Id.*, ¶ 9.

## ARGUMENT

**I.    MS. BAUMGARTEN JOINS IN THE JOINT MOTION'S ARGUMENT THAT HER TRIAL SUBPOENA SHOULD BE QUASHED BECAUSE THE BURDEN IT IMPOSES OVERWHELMS THE UTILITY OF THE TESTIMONY SOUGHT BY META AND A SUBSTITUTE FOR HER LIVE TESTIMONY EXISTS**

As explained in the Joint Motion, a subpoena for trial testimony may be quashed if it imposes an undue burden on a non-party witness that outweighs any benefit to the party seeking the testimony. Joint Motion at 21-27. In determining whether a trial subpoena should be quashed on these grounds, courts consider whether the testimony sought is: (1) "unreasonably cumulative or duplicative"; (2) "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (3) "proportional to the needs of the case," taking into

account, among other things, "the parties' relative access to relevant information" and "whether the burden or expense of the [testimony] outweighs its likely benefit." *Am. Fed'n of State, Cnty. & Mun Emp.*, *AFL-CIO v. Project Veritas Action Fund,* No. CV 17-1047, 2022 WL 3655277 at **3-4 (D.D.C. Aug. 25, 2022); *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007).

These factors overwhelmingly favor quashing the trial subpoena served on Ms. Baumgarten. Requiring Ms. Baumgarten to take the time required to prepare to testify, to travel across the country, and to testify at this trial would significantly disrupt Ms. Baumgarten's life when she is needed by two young children, as well as her elderly parents, who rely on her support in the wake of losing their home in the Palisades Fire. Whatever benefit that Meta hopes to reap from thirty minutes of live testimony must be minimal: Ms. Baumgarten's significance as a witness in this case is minor; Houseparty no longer exists; and any testimony she could offer at trial would be duplicative of testimony already provided in her videotaped deposition. In short, neither Party gains anything by requiring Ms. Baumgarten to crisscross the country, leaving her young children and elderly parents when her support remains critical, to testify for thirty minutes, particularly when she already gave videotaped testimony on the same subjects that will be covered during her trial testimony.

## II. ALTERNATIVELY, MS. BAUMGARTEN SHOULD BE ALLOWED TO TESTIFY REMOTELY

Although Ms. Baumgarten respectfully submits that the Court should quash her trial subpoena in its entirety, in the event the Court declines to do so, she respectfully requests that the Court permit her to testify remotely pursuant to Rule 43(a). Rule 43(a) provides that, "For good cause in compelling circumstances and with the appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." "Good reason" for permitting remote testimony includes the inconvenience and personal hardship caused by travel, which favors allowing Ms. Baumgarten to testify remotely. *See FTC v Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000). The "appropriate safeguards" prong is also easily

4

met, given that her remote testimony would take place in open court, under oath, and be subject to cross examination. *See id.*

### A. Good Cause Exists to Allow Ms. Baumgarten to Testify Remotely

Courts regularly permit trial witnesses to testify remotely when they live far afield from the trial venue. Indeed, courts have found good cause to allow remote testimony in cases where the witness resided significantly closer to the location of the trial than Ms. Baumgarten does here. In *Beltran-Tirado v. INS*, 213 F.3d 1179, 1186 (9th Cir. 2000), for example, the court found good cause to permit remote testimony where a witness lived in Missouri and would have been required to travel to San Diego to testify. Similarly, this Court has found good cause to allow remote testimony due to the "serious inconvenience" that would arise by requiring "a resident of Oklahoma . . . to appear as a witness in the hearing in Washington DC." *Swedish Match N. Am., Inc.*, 197 F.R.D. at 2. Given the distance and the "serious inconvenience" Ms. Baumgarten would face if forced to leave her young children and elderly parents behind for several days, even greater justification exists to permit remote testimony in Ms. Baumgarten's circumstances than in the foregoing cases where remote testimony was authorized.

### B. There Are Appropriate Safeguards in Place to Protect the Integrity of Ms. Baumgarten's Testimony if It is Provided Remotely

"[T]he use of live video transmission will not prejudice the defendants," and remote testimony is thus permissible, where "adequate safeguards exist to protect the procedure." *Id.* "In assessing the safeguards of such contemporaneous transmissions, the courts focus on whether the testimony was made in open court, under oath, and whether the opportunity for cross examination was available." *Id.*; *Beltran-Tirado*, 213 F.3d at 1185-86. If Ms. Baumgarten is permitted to testify at trial remotely via a live video feed, all of these safeguards will be in place. Indeed, the parties found it appropriate to conduct Ms. Baumgarten's deposition remotely via videoconference. Permitting her to testify remotely at trial does not threaten the integrity of her trial testimony any more than the testimony provided at her deposition. *Swedish Match N. Am., Inc.*, 197 F.R.D. at 2 (examining a case where a party sought to compel a witness to "travel across

the continent" finding that "[t]o prefer live testimony over testimony by contemporaneous video transmission is to prefer irrationally one means of securing the witness's testimony which is exactly equal to the other").

## CONCLUSION

For each of the foregoing reasons, Ms. Baumgarten respectfully requests that the Court quash the subpoena seeking her trial testimony, or, in the alternative, permit Ms. Baumgarten to testify remotely.

DATED:  March 26, 2025               KENDALL BRILL & KELLY LLP


                                     By:    /s/ Bert H. Deixler
                                            Bert H. Deixler (DC Bar No. 361778)
                                            Robert E. Dugdale (admitted *pro hac vice*)
                                            Attorneys for Non-Party Kimberly Baumgarten