# EXHIBIT B

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| Federal Trade Commission | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:20-cv-3590-JEB |
| Meta Platforms, Inc. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO APPEAR AND TESTIFY
## AT A HEARING OR TRIAL IN A CIVIL ACTION

To:  Saral Jain c/o David O'Neil, Debevoise & Plimpton LLP
Snap Inc., 3000 31st Street, Santa Monica, CA 90405

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. District Court for the District of Columbia<br>333 Constitution Avenue N.W. Washington D.C. 20001 | Courtroom No.:  22A |
|---|---|
| | Date and Time: 04/14/2025 9:30 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:

Please see the attached document subpoena.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/21/2025

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

s/Mark C. Hansen
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Meta Platforms, Inc. _____ , who issues or requests this subpoena, are:

Mark C. Hansen, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, 1615 M Street, N.W., Washington, D.C. 20036, mhansen@kellogghansen.com, 202-326-7900

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action  (page 2)

Civil Action No. 1:20-cv-3590-JEB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88  (Rev. 02/14)  Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action  (page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit A

**EXHIBIT A**

**INSTRUCTIONS**

1.      In answering each request, You are to produce all responsive Documents in Your possession, custody, or control, regardless of whether the Document is possessed by You or Your agents, attorneys, or representatives.  The term "possession" includes, but is not limited to, legal (de jure), actual (de facto), constructive, and practical possession.

2.      The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

3.      The singular forms shall include the plural and vice versa wherever such dual construction will serve to bring within the scope of these requests any Document that would otherwise not be brought within their scope.

4.      The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of a topic all information that might otherwise be construed to be outside of its scope.

5.      If Documents are withheld under any claim of privilege, including, but not limited to, attorney-client privilege and/or work product doctrine, provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5), identify each such document, and state the specific basis for the claim of privilege for each document withheld, and provide the following information: (1) the date appearing on the document; (2) a description of the general nature of the document (e.g., whether it is a letter, memorandum, e-mail, etc.); (3) the author of the document; and (4) the identity of each person to whom the document was addressed and the

1

identity of each person to whom a copy was sent.

6.      If any request cannot be responded to completely, respond to it to the extent possible, specify the portion(s) that cannot be responded to, and explain why any such portion(s) cannot be responded to.

7.      Produce all Documents in electronic format in accordance with the ESI Protocol attached hereto as Exhibit 1.

8.      Attached for reference is the Stipulation and Order Regarding Discovery Procedure attached hereto as Exhibit 2.

9.      Attached for reference is the Supplemental Declaration of Eric Meiring in Accordance with Section E(1) of the Protective Order attached hereto as Exhibit 3.

10.     Please contact Meta counsel Ana N. Paul at 202-326-7993 or apaul@kellogghansen.com to discuss how You intend to produce the Documents.

## **DEFINITIONS**

1.      "Action" means the above-captioned action pending in this Court, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

2.      "Snap," "You," and "Yours" means Snap Inc., a Delaware corporation, its wholly or partially owned subsidiaries, parent companies, unincorporated divisions, joint ventures, partnerships, operations under assumed names, predecessors, affiliates, investment vehicles, and all directors, officers, partners, employees, agents, attorneys, consultants, and any other person or entity, working for or on behalf of any of the foregoing at any time during the period covered by this Subpoena.

3.      "Document" or "Documents" means all documents or electronically stored

2

information as defined in Federal Rule of Civil Procedure 34(a).

4.    "Facebook," unless the context requires otherwise, means the website Facebook.com and the mobile application "Facebook."

5.    "Instagram" means the website Instagram.com and the mobile application "Instagram."

6.    "Product" means any product, service, application, software, or technology offered by Meta or any other company, including, but not limited to, any product service, application, software, or technology that is no longer offered to users today.

7.    "Snapchat" means the website Snapchat.com and the mobile application "Snapchat."

8.    "TikTok" means the website TikTok.com and the mobile application "TikTok."

9.    "TikTok Outage" refers to the period of time on January 18, 2025 to January 19, 2025 that users in the United States were unable to use or access TikTok.

10.    "YouTube" means the website "YouTube.com" and the mobile application "YouTube."

## <u>DOCUMENTS REQUIRED TO BE PRODUCED</u>

**<u>REQUEST FOR PRODUCTION NO. 1</u>:**  Documents sufficient to identify the number of unique users, number of videos posted, number of messages sent, and the time spent using Snapchat on an hourly and daily basis from January 10, 2025 through February 2, 2025 in the United States.

**<u>REQUEST FOR PRODUCTION NO. 2</u>:**  Documents created on or after December 1, 2024 discussing or analyzing the anticipated and actual impact of the TikTok Outage on user engagement or usage of YouTube, Facebook, Instagram, Snapchat, or other competing Products, including the "engagement lift" on Snapchat that was referenced in Snap's Q4 2024 Quarterly Earnings Call.

# Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.

Defendant.

Civil Action No. 1:20−cv−03590 (JEB)

## STIPULATION AND [~~PROPOSED~~] ORDER REGARDING
## DISCOVERY PROCEDURE

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). The parties' cooperation includes identifying

appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues;

WHEREAS, the parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I.    GENERAL PROVISIONS

1.  Except as specifically set forth herein, this Stipulation and Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the District of Columbia.

2.  The production specifications set forth in this Stipulation and Order apply to Documents and ESI that is to be produced in the first instance in the above-captioned litigation. To the extent any producing party reproduces Documents or ESI previously produced by any party or Non-Party during a pre-complaint investigation of the subject matter of this litigation, that party may reproduce such Documents or ESI in the manner in which it was produced to that party. No party is obligated to reformat a reproduction of any prior production in accordance with the production specifications in this Stipulation and Order.

3.  ESI Liaisons.

    a.  Designation:  Each party agrees to designate one or more ESI Liaisons within ten (10) days after entry of this ESI Protocol.  Any party is free to change its designated ESI Liaisons by providing written notice to the other parties.

    b.  Duties of ESI Liaisons:  Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another

person as primarily responsible), be knowledgeable about the party's eDiscovery efforts, have reasonable access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, explain those systems and answer relevant questions, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter, and have reasonable access to those who are knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## II. PRESERVATION

1. Materials To Be Preserved. Each Party will continue its retention practices with regards to all Documents and ESI and will take reasonable and proportionate steps to preserve relevant and discoverable ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Upon mutual agreement of the parties, a party will modify its retention practices to ensure the preservation of potentially responsive Documents and ESI.

2. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a. Parties shall preserve non-duplicative, relevant information currently in their possession, custody, or control.

   b. Subject to and without waiving any protection described above, the parties agree that:

    i.    The parties will endeavor to agree upon a date limitation for the preservation of ESI;

    ii.    The parties will endeavor to agree upon a list of the types of relevant ESI they believe should be preserved and the custodians, for whom they believe relevant ESI should be preserved. The parties shall add or remove custodians as reasonably necessary.

3.  ESI That Is Not Reasonably Accessible. The following categories of ESI are not reasonably accessible in this litigation, and the parties will continue to meet and confer regarding any additional categories of information that are not reasonably accessible.

    a.  Back-up systems and tapes used for disaster recovery;

    b.  Individual user data subject to routine disposition required by privacy regulations;

    c.  Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

    d.  Logs of calls made from cellular phones;

    e.  Voicemail messages;

    f.  Deleted, slack, fragmented, or unallocated data accessible only by forensics;

    g.  Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

    h.  Online access data such as temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    i.  Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates;

    j.  Server, system, or network logs; and

    k. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party that is duplicative of information that resides in a reasonably accessible data source.

4. Nothing in this Stipulation and Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible.

5. Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## III. COLLECTION AND REVIEW

1. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2. The parties will meet and confer in good faith regarding search terms and/or use of technology-assisted review or a similar tool (collectively "TAR") to identify responsive documents. If a requesting party objects to the sufficiency of the producing party's terms, the requesting Party may propose modifications or a list of additional terms. The parties will meet and confer in good faith regarding any proposed changes. Any disputes over search terms that cannot be resolved between the parties during a meet and confer may be consequently raised with the Court.

3. Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are

5

in fact relevant to the requesting party's request. Nothing in this Order precludes a party from using TAR, or a combination of TAR and search terms, or some other method to fulfill their document production obligations, provided that the party discloses to the other party the process used and complies with the meet and confer obligations outlined in this Order. Similarly, nothing may be construed or interpreted as precluding a producing party from performing a privilege review of documents determined to be relevant by any means. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to the requesting party's request or privileged.

4. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

5. De-Duplication. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that deduplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication. A producing party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated documents through an appropriate load file field such as All Custodians. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be

identified in the BCC metadata field specified in Appendix 1. In the event of rolling productions of documents or ESI, the producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata overlay and will be provided by a producing party on an ongoing basis.

6. Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and inline objects (including inline images and hyperlinks) and including identical text, identical subject(s), identical senders and recipients (including in "to," "cc," and "bcc" fields), within the Last In Time Email. Only email messages (including inline objects, text, subject(s), and senders and recipients) and all attachments that are fully contained in and identical to the Last In Time Email will be considered less inclusive email messages that need not be produced.

7. Cooperation. The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of search terms, TAR, or a combination of the search terms and TAR, or some other method, or for documents that cannot be searched electronically.

8. Filtering. If a producing party proposes to apply other filters to limit Documents and ESI that is collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the producing party shall advise the requesting party and the requesting and producing parties shall meet and confer regarding such additional proposed filters.

## IV. PRODUCTION FORMAT

1. The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of the documents as part of the document production process.

## V. MISCELLANEOUS PROVISIONS

1. Motions. No discovery motions may be filed without leave of court. In the event that a discovery dispute arises, the parties shall jointly call chambers at (202) 354-3300, at which time the Court will either rule on the issue or determine the manner in which it will be handled.

2. Costs of Document Production. Unless this Court orders otherwise for good cause shown, each party and non-party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

3. Integration/Appendices. The following documents are incorporated herein by reference:

    a. "Appendix 1" is a document describing the production format and fields to be included in the documents produced by each party.

SO ORDERED this ____8____ day of ____March____, 2022

_____

HON. JAMES E. BOASBERG
U.S. District Judge

## APPENDIX 1: PRODUCTION FORMAT

A. **Production Components**. Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

1. An ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

2. An image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

3. TIFF images; and

4. Document level .TXT files for all documents containing extracted full text or OCR text.

5. Parent-child relationships will be maintained in production.

6. Document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection.

If a particular document or category of documents warrants a different production format, for example if it is impractical to produce an entire document family for particular documents, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

B. **Production Media and Access Controls**. Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall

identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

C. **Data Load Files/Image Load Files**. All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents'

beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

D. **Metadata Fields**. With the exception of the hard copy paper documents, which are separately addressed in paragraph L below, each of the metadata and coding fields set forth below that can be extracted shall be produced for each document to the extent reasonably practicable. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) ALLCUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, and (j) TEXTFILEPATH, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name[1] | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| CUSTODIAN | Individual from whom the document originated |
|---|---|
| ALLCUSTODIAN(S) | Individual(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |
| ORIGINATING PATH | File path of the file as it resided in its original environment |
| REDACTIONS | Indicate Yes if a document is redacted. If no leave blank. |

| NATIVEFILEPATH | Native File Link (Native Files only) |
|---|---|
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. For instance, MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. (Microsoft application documents only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAILSUBJECT | Subject Line of email |
| TIMESENT | Time email was sent |
| TIMEZONEUSED | Time zone used to standardize date/time during document processing |
| RECEIVETIME | Time email was received |
| FILENAME | File Name of the edoc or email |
| TITLE | Any value populated in Title field of the document properties |
| SUBJECT | Any value populated in the Subject field of the document properties |
| DOCEXT | File extension of the document |
| WITHHELD PLACHOLDER | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y". If not applicable leave blank. |
| TECHNICAL ISSUE PLACEHOLDER | To the extent a file is withheld on the basis of a technical issue, this field must be populated with a "Y". If not applicable leave blank. |

E.  **TIFFs**. Documents that exist only in hard copy format shall be scanned and produced as

TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as

provided below. The imaged data shall retain all attributes of the native or hard-copy file, such

as document breaks, to the extent reasonably practicable. To the extent reasonably practicable,

produced TIFF image will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF forma, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing party retains the option to produce ESI in alternative formats if so agreed by the requesting party, which may include native format, or a combination of native and TIFF formats. Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

F. **Color.** A party that received a production may make reasonable requests that color images be produced where color is helpful to interpret the contents of the relevant document. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Reasonable requests that a document be produced in color for the reasons

set forth in this Paragraph will not be unreasonably denied by the producing party. If a producing party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

G. **Text Files**. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

H. **Native Files**. Spreadsheets (e.g. MS Excel) and presentations (e.g. MS PowerPoint) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph D above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

I. **Request for Other Native Files**. Other than as specifically set forth above, a producing party need not produce documents in native format. If a party would like a particular document produced in native format and this ESI protocol does not require the production of that document in its native format, the party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. The producing party need only produce such a document in native format if reasonably practicable. Any

native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

J. **Linked Files and Collaborative Work Environments**. Where an email or other document links to another file or documents in a collaborative work environment, and a producing party is unable to reasonably generate information indicating relationships for linked files or documents in a collaborative work environment, the parties agree to negotiate a process for identifying impacted documents and producing information to identify relevant relationships.

K. **Confidentiality Designation**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

L. **Databases and Other Structured Data**. The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view the ESI.

M. **Paper Documents**.  A producing party may make paper documents available for inspection and copying in accordance with Federal Rule of Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents.  The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) Beg Bates, (b) End Bates, (e) Custodian, (f) Confidentiality, and (g) Redacted.  Paper documents should be logically unitized for production to the extent reasonably practicable.  Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.  The parties will make reasonable efforts to unitize documents correctly. Where a document or a document group – such as folder, clipped bundle, or binder has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

N. **Date and Time**.  No party shall modify the date or time as contained in any original ESI.  This provision does not prevent parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

O. **Time Zone**.  To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g. Pacific Standard Time) and the time zone shall be disclosed to the requesting party.

P. **Auto Date/Time Stamps**. To the extent reasonably practicable, ESI items shall be processed so as to preserve the data/time shown in the document as it was last saved, not the date of collection or processing.

Q. **Hidden Text**.  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

R. **Password-Protected, Encrypted, or Proprietary-Software Files**.  With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.  In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting party by producing a placeholder TIFF image stating "Technical Issue." ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting party, and the parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.

Defendant.

Civil Action No. 1:20−cv−03590 (JEB)

## [PROPOSED] PROTECTIVE ORDER

In the interests of (i) ensuring efficient and prompt resolution of this Action; (ii) facilitating discovery by the Parties litigating this Action; and (iii) protecting confidential information from improper disclosure or use, the Court, upon good cause shown and pursuant to Fed. R. Civ. P. 26(c)(1), ORDERS as follows:

**A. Definitions**

1. As used herein:

(a) "Action" means the above-captioned action pending in this Court, including any related discovery, pretrial, trial, post-trial, or appellate proceedings.

(b) "Confidential Information" means any trade secret or other confidential research, development, or commercial information, as such terms are used in Fed. R. Civ. P. 26(c)(1)(G), or any document, transcript, or other material containing such information that has not been published or otherwise made publicly available. In addition, a Designating Party may designate as Confidential any information or items made publicly available in violation of a court order to keep such information confidential, that the Designating Party believes should receive Confidential

1

treatment. This includes (i) information copied or extracted, summarized or compiled from Confidential Information, and (ii) testimony, conversations, or presentations that might reveal Confidential Information.

(c) "Competitive Decision-Making" means decision-making relating to a competitor, potential competitor, customer, or distribution partner including decisions regarding contracts, marketing, pricing, product or service development or design, product or service offerings, research and development, mergers and acquisitions, or licensing, acquisition, or enforcement of intellectual property rights.

(d) "Defendant" means Meta Platforms, Inc., and its and their predecessors, divisions, subsidiaries, affiliates, partnerships, successors, and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing, including but not limited to, Instagram and WhatsApp.

(e) "Disclosed" means shown, divulged, revealed, produced, described, transmitted or otherwise communicated, in whole or in part.

(f) "Document" means any document or electronically stored information, as the term is used in Fed. R. Civ. P. 34(a).

(g) "Highly Confidential Information," as defined herein, shall only include Confidential Information that, if disclosed, is likely to cause material and significant harm to a Protected Person.

Highly Confidential Information includes trade secrets, including algorithms and source code; non-public, commercially sensitive customer lists; non-public financial, marketing, or strategic business planning information; current or future non-public information regarding prices, costs, or margins; information relating to research,

development, testing of, or plans for existing or proposed future products; evaluation

of the strengths and vulnerabilities of a Protected Person's product offerings,

including non-public pricing and cost information; confidential contractual terms,

proposed contractual terms, or negotiating positions (including internal deliberations

about negotiating positions) taken with respect to Defendant or competitors to

Defendant; information relating to pending or abandoned patent applications that

have not been made available to the public; personnel files; sensitive personally

identifiable information; sensitive health information; and communications that

disclose any Highly Confidential Information.  Highly Confidential Information also

includes information that a Non-Party believes would expose it or new business

ventures with which it is associated to potential retribution or harm if the information

were disclosed to Defendant.  If a Protected Person (i) has produced Investigation

Materials or (ii) is required by subpoena or court order to produce information that

would cause it material and significant competitive or commercial harm, but that

information does not specifically fall into one of the categories of information listed

in this paragraph, upon a compelling showing, it may seek a court order that such

information is Highly Confidential and should be withheld from In-House Counsel,

subject to the exception in paragraph D(1)(d) below.  If a motion is made pursuant to

this paragraph and is related to Investigation Materials, it must be filed co-currently

with its Highly Confidential Designations under paragraph B(2)(a).  If a motion is

made pursuant to this paragraph and is related to a subpoena or court order, it must be

filed no later than the due date to respond to the subpoena or court order.  If a

Protected Person seeks additional protection pursuant to this paragraph from the

Court, the materials for which additional protection has been sought will not be provided to other Persons, aside from outside counsel, until the Court has ruled.

(h) "In-House Counsel" means attorneys employed by Defendant for the purpose of rendering legal services, as well as paralegals, secretaries, and clerical and administrative personnel that are employed by Defendant for the purpose of assisting attorneys employed by Defendant for the purpose of rendering legal services.

(i) "Investigation" means the pre-Complaint inquiry by Plaintiff, marked as Federal Trade Commission File No. 191-0134, regarding potential anticompetitive conduct by Defendant.

(j) "Investigation Materials" means non-privileged documents, testimony or other materials that (i) any Non-Party provided to the Federal Trade Commission, either voluntarily or under compulsory process, relating to the Investigation; (ii) constitute any communication between the Federal Trade Commission and any Non-Party relating to and during the Investigation; or (iii) Defendant, or affiliated person or entity, provided to the Federal Trade Commission relating to the Investigation.

(k) "Litigation Materials" means non-privileged documents, testimony, or other materials that (i) any Non-Party provides to any Party, either voluntarily or under compulsory process, in connection with and during the pendency of this Action; (ii) constitute any communication between any Party and any Non-Party in connection with and during the pendency of this Action; (iii) Defendant provides to Plaintiff in connection with and during the pendency of this Action; and/or (iv) Plaintiff provides to Defendant in connection with and during the pendency of this Action.

(l) "Non-Party" means any Person not named as a Party to this Action.

4

(m) "Outside Counsel of Record" means the attorneys employed by outside law firms representing Defendant in this proceeding, as well as attorney support staff.

(n) "Party" means the Plaintiff or Defendant in this Action. "Parties" means collectively Plaintiff and Defendant in this Action.

(o) "Plaintiff" means the U.S. Federal Trade Commission and all of its employees, agents, and representatives.

(p) "Person" means any natural person, corporate entity, business entity, partnership, association, joint venture, governmental entity, trust, or other legal entity.

(q) "Protected Person" means any Person (including a Party or Non-Party) that either voluntarily or under compulsory process, has provided or provides (i) Investigation Materials in connection with the Investigation, or (ii) Litigation Materials.

B. **Designation of Highly Confidential Information and Confidential Information**

1. Within 5 business days of the Court's entry of this Order, Plaintiff shall send by email, facsimile, or overnight delivery a copy of this Order to each Non-Party Protected Person (or, if represented by counsel, the Non-Party Protected Person's counsel) that provided Investigation Materials to the Federal Trade Commission.

2. DESIGNATION OF INVESTIGATION MATERIALS AS HIGHLY CONFIDENTIAL BY PROTECTED PERSONS. A Protected Person may designate any Investigation Materials they produced as Highly Confidential pursuant to the following procedures:

(a) Defendant is not required to re-designate Investigation Materials as Confidential or Highly Confidential: all Investigation Materials produced by Defendant presumptively shall be treated as Highly Confidential, subject to the Challenge process described below in Section C, and any further relevant orders or procedures

5

the Court adopts governing the designation and use in this Action of Investigation

Materials produced by Defendant (e.g., procedures governing the designation of trial

exhibits as Highly Confidential).

(b) Other than Defendant, each Protected Person shall have 60 days after receiving a

copy of this Order (the "Designation Period") to designate as Highly Confidential

Information any Investigation Materials to the extent the Protected Person

determines, in good faith, that the Investigation Materials include Highly Confidential

Information, and that such designation is necessary to protect the interests of the

Protected Person.  Such Investigation Materials may be so designated, if they have

not already been designated, by providing written notice by overnight mail or email

and a replacement production to the party to which the Investigation Materials were

produced that includes copies of the Investigation Materials stamped with the legend

"HIGHLY CONFIDENTIAL," in a manner that will not interfere with legibility,

including page numbering, or audibility.  If a Non-Party is unable to submit a

replacement production due to burden, it may instead provide written notice by

overnight mail or email to the party to which the Investigation Materials were

produced that includes detailed designations of every document that includes Highly

Confidential Information.

Any document that contains Highly Confidential Information may be designated

Highly Confidential Information in its entirety.

(c) Until the expiration of this Designation Period, all Investigation Materials will be

treated as Highly Confidential Information in their entirety.

6

Investigation Materials—other than Investigation Materials produced by Defendant—that are not designated as Highly Confidential by the end of the expiration of this Designation Period shall be treated as Confidential Information for purposes of this Order pursuant to the Antitrust Civil Process Act, or any other federal or state statute or regulation, or under any federal or state court precedent interpreting such statute or regulation, as well as any information that discloses the substance of the contents of any Highly Confidential Information or Confidential Information derived from a document subject to this Order, and any information taken from any portion of such material.

The identity of a Non-Party submitting such Highly Confidential Information or Confidential Information shall also be treated as Highly Confidential Information or Confidential Information for the purposes of this Order; unless or until such a time as the Non-Party informs a Party that such treatment is not required.

3. If a Non-Party Protected Person believes that this Order does not adequately protect its Highly Confidential Information or Confidential Information, it may, within 10 days after receipt of a copy of this Order, seek additional protection from the Court for the Non-Party Protected Person's Highly Confidential Information or Confidential Information. If a Non-Party Protected Person seeks additional protection from the Court, the Investigation Materials for which additional protection has been sought will not be provided to other Persons, aside from outside counsel, until the Court has ruled.

4. Any production of documents or testimony not designated as Confidential or Highly Confidential Information will not be deemed a waiver of any future claim of confidentiality concerning such information if it is later designated as Confidential or

Highly Confidential Information.  If at any time before trial of this Action, a Protected Person realizes that it should have designated as Highly Confidential or Confidential any Investigation Materials or Litigation Materials that Person previously produced during discovery in this Action, it may so designate such documents, testimony, or other materials by notifying the Parties in writing and providing a  replacement production to the party to which the Investigation Materials or Litigation Materials were produced that includes copies of the Investigation Materials or Litigation Materials stamped with the legend "HIGHLY CONFIDENTIAL," or "CONFIDENTIAL", in a manner that will not interfere with legibility, including page numbering, or audibility.  The Parties shall thereafter treat the Investigation Materials or Litigation Materials pursuant to the Protected Person's new designation under the terms of this Order.  However, the disclosure of any information for which disclosure was proper when made will not be deemed improper regardless of any such subsequent confidentiality designation.

5. If a Party learns that, by inadvertence or otherwise, it has disclosed a Protected Person's Confidential Information or Highly Confidential Information in any circumstance not authorized under this Order, the Party must immediately (i) notify in writing the Protected Person of the unauthorized disclosure, (ii) use its best efforts to retrieve all unauthorized copies of the disclosed material, (iii) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (iv) request such person or persons acknowledge and agree to be bound by Appendix A.

6. DESIGNATION OF LITIGATION MATERIALS AS HIGHLY CONFIDENTIAL OR CONFIDENTIAL BY PROTECTED PERSONS.  The following procedures govern the process for Protected Persons to designate as Highly Confidential or Confidential any

information that they disclose in this Action after this Order is entered based on a good-faith belief that such materials qualify for that designation under the terms of this Order, including but not limited to information in response to requests under Fed. R. Civ. P. 30, 31, 33, 36, and 45, and documents disclosed in response to Fed. R. Civ. P. 33(d), 34(b)(2) and (c), or 45:

(a) Testimony. All transcripts of depositions taken in this Action after entry of this Order will be treated as Highly Confidential Information in their entirety for 30 days after the date when a complete and final copy of the transcript has been made available to the deponent (or the deponent's counsel, if applicable). Within five (5) business days of receipt of the final transcript, the Party who noticed the deposition shall provide the final transcript to the deponent. Within 30 days following receipt of the final transcript, the deponent may designate as Highly Confidential Information any portion of the deposition transcript, by page(s) and line(s), and any deposition exhibits provided by the deponent or the deponent's employer. To be effective, such designations must be provided in writing to Plaintiff's and Defendant's counsel. Any portion of the transcript or exhibits not so designated pursuant to this subparagraph 6(a) shall be treated as Confidential Information, subject to the Challenge process described below in Section C.

When a Party is entitled under this Order to question a deponent about a document or information that has been designated by a different Protected Person as Highly Confidential or Confidential, the Party that asked such questions shall designate as either Highly Confidential or Confidential the portion of the transcript relating to such Highly Confidential or Confidential document or information.

9

(b) <u>Documents.</u> A Protected Person who designates as Highly Confidential Information any document that it produces in this Action must stamp or otherwise mark each document containing said information with the designation "HIGHLY CONFIDENTIAL" in a manner that will not interfere with legibility, including page numbering, or audibility.

A Protected Person who designates as Confidential Information any document that it produces in this Action must stamp or otherwise mark each document containing said information with the designation "CONFIDENTIAL" in a manner that will not interfere with legibility, including page numbering, or audibility.

Any document that contains Confidential Information may be designated Confidential Information in its entirety. Any document that contains Highly Confidential Information may be designated Highly Confidential Information in its entirety.

(c) <u>Electronic Documents and Data.</u> Where a Protected Person produces electronic files and documents in native electronic format, such electronic files and documents shall be designated by the Protected Person for protection under this Order by appending to the file names or designators information indicating whether the file contains Highly Confidential Information or Confidential Information, or by any other reasonable method for appropriately designating such information produced in electronic format, including by making such designations in reasonably accessible metadata associated with the files. Where Highly Confidential Information or Confidential Information is produced in electronic format on a disk or other medium that contains exclusively Confidential Information, the "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" designation may be placed on the disk or other medium.

When electronic files or documents in native form are printed for use at deposition, in a court proceeding, or for provision in printed form to any person described in subparagraph D(2)(g), the Party printing the electronic files or documents shall affix a legend to the printed document saying, "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" and include the production number and designation associated with the native file.

Any electronic file or document that contains Confidential Information may be designated Confidential Information in its entirety. Any electronic file or document that contains Highly Confidential Information may be designated Highly Confidential Information in its entirety.

7. DESIGNATION OF LITIGATION MATERIALS FROM NON-PARTIES. In the event that a Party receives a discovery request in this Action to produce a Non-Party's Highly Confidential Information or Confidential Information in its possession, then the Party shall:

(a) promptly notify in writing the Party seeking the Highly Confidential Information or Confidential Information that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(b) promptly notify the Non-Party that its Highly Confidential Information or Confidential Information is being requested and either provide a reasonably specific description of the information or make the information requested available for inspection by the Non-Party; and

(c) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation and the relevant discovery request(s).

11

8. If the Non-Party fails to seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Non-Party's Highly Confidential Information or Confidential Information responsive to the discovery request may be produced. If the Non-Party timely seeks a protective order, its Highly Confidential Information or Confidential Information that is subject to the confidentiality agreement shall not be produced before a determination by the Court.[1]

9. The terms of this Order are applicable to information produced by a Non-Party in this action and designated as Highly Confidential Information or Confidential Information. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

## C. **Challenges to Highly Confidential or Confidential Designation**

1. Any Party who objects to any designation of confidentiality (the "Objecting Party") may at any time provide a written notice to the Protected Person who made such designation (the "Designating Party") and all Parties to this Action stating with particularity the grounds for the objection. Objections to a confidentiality designation may be made to any portion of a document that is designated Confidential or Highly Confidential, including any particular statement or information contained within a document. All materials objected to shall continue to be treated as Confidential Information or Highly Confidential Information pending resolution of the dispute. Within 10 days of the Objecting Party's written notice, the Objecting Party and the Designating Party shall

---

[1] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this Court.

attempt to confer to discuss their respective positions. If the Objecting Party and Designating Party cannot reach agreement on the objection within 14 days of the Objecting Party's written notice service (or another deadline agreed to by the Objecting Party and the Designating Party), the Objecting Party may address the dispute to this Court by filing a letter motion and/or motion in accordance with applicable rules. If the Court finds that any portion of the document or statement at issue does not constitute Highly Confidential Information or Confidential Information, the challenged designation shall be considered rescinded with respect to that portion of the document or statement.

### D. Disclosure of Highly Confidential Information or Confidential Information

1. Highly Confidential Information may be disclosed only to the following persons:

   (a) the Court and all persons assisting the Court in this Action, including law clerks, court reporters, and stenographic or clerical personnel;

   (b) U.S. Federal Trade Commission attorneys, paralegals and other professional personnel (including support and IT staff), and agents or independent contractors retained by Plaintiff to assist in this Action whose functions require access to the information;

   (c) Outside Counsel of Record for Defendant, including any attorneys (but not In-House Counsel for the Defendant except as provided in paragraph D(1)(d) and subject to the procedure in Section E), paralegals, and other professional personnel (including support and IT staff) that such outside counsel assigns to this Action whose functions require access to the information (but not any employee of the Defendant);

   (d) Two In-House Counsel of Defendant with responsibilities for the litigation of this Action who do not, as of the time of executing an In-House Counsel Agreement

Concerning Confidentiality in the form of Appendix B, and for a period of two (2) years following the last occasion on which Highly Confidential Information is disclosed to such In-House Counsel, shall not (a) participate in or advise on Defendant's Competitive Decision-Making, whether such In-House Counsel are still employed by Defendant or are employed by a different employer, (b) participate in or advise on Competitive Decision-Making involving a Protected Person whose Highly Confidential Information they accessed during the course of this Action at any employer, or (c) participate in or advise on litigation or other legal actions (aside from litigation arising from or related to the allegations in the Complaint in this action) on behalf of Defendant or any other employer where a Protected Person is a genuinely adverse party (i.e., a party whose interests are more than merely nominally adverse, typified by responding to a Protected Party's subpoena) and whose Highly Confidential Information Designated In-House Counsel accessed in the course of this Action; to qualify for access under this subpart, in-house litigation counsel shall first execute an In-House Counsel Agreement Concerning Confidentiality in the form of Appendix B attached hereto (which executed versions shall be maintained by Outside Counsel for the relevant Defendant and available for inspection upon the request of the Court, any Party, or any non-Party Protected Person) and only access Highly Confidential Information in person at the offices of Defendant's Outside Counsel of Record, or using a secure electronic data room or document review platform using an individual login identification and password.

Defendant shall promptly report any confirmed or suspected unauthorized use or disclosure of Highly Confidential Information to the Court and Plaintiff. Any counsel

subject to this subsection who leaves the employment of Defendant to work in an industry unrelated to the decisions associated with Defendant's Competitive Decision-Making shall be presumed to be exempt from the post-employment limits of this provision absent a showing by Plaintiff or any interested Protected Person that such a person engaged in Competitive Decision-Making;

(e) outside vendors or service providers (such as copy-service providers, eDiscovery vendors and similar service providers, outside court reporters retained for depositions, and document-management consultants) retained by a Party to assist that Party in this Action provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto;

(f) any mediator, arbitrator, or special master that the Parties engage in this Action or that this Court appoints;

(g) persons who the Highly Confidential Information itself indicates, or who the receiving party has a good-faith basis to believe, were the author, addressee, recipient, custodian, or source of the document, to the extent they have previously had lawful access to the document disclosed or to be disclosed; in addition, during a deposition or trial, a witness who is a current or former employee of a Party may be shown any portion of a document produced by that Party that purports to quote, recount, or summarize said employee's statements or communications (for the avoidance of doubt, other portions of a document may be shown to the current or former employee where necessary to orient said employee's deposition or trial testimony regarding the relevant statements);

(h) any person retained by a Party to serve as a testifying or consulting expert in this Action, including employees of the firm with which the expert or consultant is associated or independent contractors who assist the expert's work in this Action, provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto; and

(i) outside trial consultants (including, but not limited to, graphics consultants) provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto.

2. Confidential Information may be disclosed only to the following persons:

(a) the Court and all persons assisting the Court in this Action, including law clerks, court reporters, and stenographic or clerical personnel;

(b) U.S. Federal Trade Commission attorneys, paralegals and other professional personnel (including support and IT staff), and agents or independent contractors retained by Plaintiff to assist in this Action whose functions require access to the information;

(c) Outside Counsel of Record for Defendant, including any attorneys (but not In-House Counsel for the Defendant except as provided in paragraph D(2)(d) and subject to the procedure in section E), paralegals, and other professional personnel (including support and IT staff) that such outside counsel assigns to this Action whose functions require access to the information (but not any employee of the Defendant);

(d) Four In-House Counsel of Defendant with responsibilities for the litigation of this Action who do not currently, and for a period of two (2) years following the last occasion on which Confidential Information is disclosed to such In-House Counsel

shall not (a) participate in or advise on Defendant's Competitive Decision-Making, whether such In-House Counsel are still employed by Defendant or are employed by a different employer, (b) participate in or advise on Competitive Decision-Making involving a Protected Person whose Confidential Information they accessed during the course of this Action at any employer, or (c) participate in or advise on litigation or other legal actions (aside from litigation arising from or related to the allegations in the Complaint in this action) on behalf of Defendant or any other employer where a Protected Person is a genuinely adverse party (i.e., a party whose interests are more than merely nominally adverse, typified by responding to a Protected Party's subpoena) and whose Confidential Information Designated In-House Counsel accessed in the course of this Action; to qualify for access under this subpart, in-house litigation counsel shall first execute an In-House Counsel Agreement Concerning Confidentiality in the form of Appendix B attached hereto (which executed versions shall be maintained by Outside Counsel for the relevant Defendant and available for inspection upon the request of the Court, any Party, or any non-Party Protected Person) and only access Confidential Information in person at the offices of Defendant's Outside Counsel of Record, or using a secure electronic data room or document review platform using an individual login identification and password.

Defendant shall promptly report any confirmed or suspected unauthorized use or disclosure of Confidential Information to the Court and Plaintiff. Any counsel subject to this subsection who leaves the employment of Defendant to work in an industry unrelated to the decisions associated with Competitive Decision-Making

17

shall be presumed to be exempt from the post-employment limits of this provision absent a showing by Plaintiff or any interested Protected Person that such a person engaged in Competitive Decision-Making;

(e) outside vendors or service providers (such as copy-service providers, eDiscovery vendors and similar service providers, outside court reporters retained for depositions, and document-management consultants) retained by a Party to assist that Party in this Action provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto;

(f) any mediator, arbitrator, or special master that the Parties engage in this Action or that this Court appoints;

(g) persons who the Confidential Information itself indicates, or who the receiving party has a good-faith basis to believe, were the author, addressee, recipient, custodian, or source of the document, to the extent they have previously had lawful access to the document disclosed or to be disclosed; any current or former employee of a Party whose statements or communications are quoted, recounted, or summarized in said Party's document; or persons for whom counsel for Plaintiff or Defendant believes in good faith previously received or had access to the document, unless the person indicates that he or she did not have access to the document;

(h) any person retained by a Party to serve as a testifying or consulting expert in this Action, including employees of the firm with which the expert or consultant is associated or independent contractors who assist the expert's work in this Action, provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto; and

18

    (i) outside trial consultants (including, but not limited to, graphics consultants) provided that they shall first execute an Agreement Concerning Confidentiality in the form of Appendix A attached hereto.

3. Counsel for the Party making the disclosure must retain the original of the Agreement Concerning Confidentiality in the form of Appendix A attached hereto for a period of at least one (1) year following the final resolution of this Action.

4. Each individual described in paragraphs D (1) and D (2) of this Order to whom information designated as Highly Confidential Information or Confidential Information is disclosed must not disclose that Highly Confidential Information or Confidential Information to any other individual, except as provided in this Order.

5. Nothing in this Order prevents Plaintiff, subject to taking appropriate steps to preserve the confidentiality of such information, from disclosing such information designated as Highly Confidential Information or Confidential Information (i) in the course of any other legal proceeding in which the U.S. Federal Trade Commission is a party; (ii) for the purpose of securing compliance with a Final Judgment in this Action; or (iii) for law enforcement purposes.  Such disclosures shall be limited to disclosures by the U.S. Federal Trade Commission.

6. Nothing in this Order:

    (a) limits a Protected Person's use or disclosure of its own information designated as Highly Confidential Information or Confidential Information;

    (b) prevents disclosure of Highly Confidential Information or Confidential Information with the consent of the Protected Person that designated the material as confidential;

(c) prevents disclosure by a Party of Highly Confidential Information or Confidential
Information (i) that is or has become publicly known through no fault of that Party;
(ii) lawfully acquired by or known to that Party independent of receipt during the
Investigation or in discovery in this Action; (iii) previously produced, disclosed
and/or provided to that Party without an obligation of confidentiality and not by
inadvertence or mistake; or (iv) pursuant to an order of a court or (v) as may be
required by regulation; or

(d) prevents the U.S. Federal Trade Commission's retention, use, or disclosure of
Investigation Materials outside the context of this Action to the extent permitted by
applicable law or regulation governing such pre-complaint discovery including the
Hart-Scott-Rodino Act, 15 U.S.C. § 18a, and the Antitrust Civil Process Act, 15
U.S.C. §§ 1311-14, or for law enforcement purposes, or as required by law, court
order, or regulation. Any such disclosures shall be limited to those permitted by
applicable law or regulation, including, in the case of materials obtained under the
Antitrust Civil Process Act, 15 U.S.C. § 1313(d). Plaintiff will not disclose any
Litigation Material produced only during the pendency of this Action to any Non-
Party, except as ordered by a court or as may be required by regulation and with
seven (7) days written notice to Defendant or interested Protected Person. If
Investigation Materials or Litigation Materials are requested for disclosure under a
state's public information act or the equivalent, this Order prohibits disclosure to the
extent the state's public information act or the equivalent provides an exception for
disclosure of information protected by court order. If a Party is served with a
subpoena or court order issued in other litigation that compels disclosure of any

Confidential Information or Highly Confidential Information, the Party will promptly notify the Designating Party and the Designating Party shall bear the burden and expense of seeking protection in that court.

(e) permits the disclosure of Highly Confidential or Confidential Information in another Action.

## E. **Challenges to In-House Counsel**

1. Unless otherwise ordered by the Court or agreed to in writing by the Protected Person, seven (7) days before disclosing any information designated as Highly Confidential Information or Confidential Information to the Defendant's designated In-House Counsel, Defendant must submit in writing to Plaintiff and the Protected Person a written statement that (i) sets forth the full name of the Designated In-House Counsel and the city and state of his or her residence, (ii) describes the In-House Counsel's past, current, and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if In-House Counsel is involved, or may become involved, in any Competitive Decision-Making; and (iii) lists the litigations or other legal actions in which the In-House Counsel participates or advises on behalf of Defendant or any other employer.

2. Defendant may disclose Highly Confidential Information and/or Confidential Information to its designated In-House Counsel unless the Defendant receives a written objection from Plaintiff or any Protected Person within 10 days of receiving the Defendant's written statement pursuant to paragraph E(1) above. Any such objection must set forth in detail the grounds on which it is based.

3. If Defendant receives a timely written objection it must meet and confer with the Plaintiff or any Protected Person to try to resolve the matter by agreement within seven

21

(7) days of the written objection. If no agreement is reached, Plaintiff and/or any

Protected Person will have seven (7) days to file a motion with the Court, objecting to

designated In-House Counsel. Defendant will not disclose any Highly Confidential

Information or Confidential Information to its In-House Counsel pending resolution of

the dispute. If the Court finds that the designated In-House Counsel qualifies under the

provisions of paragraph D(1)(d) or D(2)(d), Defendant will be able to disclose Highly

Confidential Information or Confidential Information, as appropriate, to its designated In-

House Counsel in accordance with paragraph D(1)(d) or D(2)(d).

**F.** **Use of Information Designated Highly Confidential or Confidential in This Action**

1. In the event that any Highly Confidential Information or Confidential Information is

   contained in any pleading, motion, exhibit or other paper filed or to be filed with the

   Court, the Court shall be so informed by the party filing such papers, and such papers

   shall be filed under seal, in accordance with Local Rule 5.1(h). This Order hereby grants

   the Parties and any Non-Party Protected Person leave to file such properly designated

   Highly Confidential Information or Confidential Information under seal. Highly

   Confidential Information and Confidential Information contained in the papers shall

   continue to be maintained under seal until further order of the Court, provided, however,

   that such papers may be furnished to persons or entities who may receive Highly

   Confidential Information or Confidential Information pursuant to paragraphs D(1) and

   D(2). Upon or after filing any paper containing Highly Confidential Information or

   Confidential Information, the filing Party or Non-Party Protected Person shall file on the

   public record a duplicate copy of the paper that does not reveal Highly Confidential

   Information or Confidential Information. Further, if the protection for any such material

expires, a Party or Non-Party Protected Person may file on the public record a duplicate copy that also contains the formerly protected material. Nothing in this Order shall restrict the Parties or any interested member of the public from challenging the filing of any Highly Confidential Information or Confidential Information under seal.

2. Parties shall give the other parties notice if they reasonably expect a deposition, hearing, or other proceeding to include Highly Confidential Information or Confidential Information so that the other parties can ensure that only authorized individuals are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as Highly Confidential Information or Confidential Information.

## G. Use of Highly Confidential Information or Confidential Information at Trial

1. Disclosure at trial or at any evidentiary hearing of any document, testimony, or other material designated as Highly Confidential Information or Confidential Information will be governed pursuant to a separate court order. In advance of the filing of a proposed order governing the disclosure of Highly Confidential Information or Confidential Information at trial or any evidentiary hearing, the Parties shall provide notice of such order to third parties whose Highly Confidential Information or Confidential Information is expected to be used at trial or any evidentiary hearing.

2. Unless otherwise provided for in this Order, all Highly Confidential Information and Confidential Information produced by a Party or a Non-Party as part of this proceeding shall be used solely for the conduct of this Action and shall not be used for any business, commercial, competitive, personal, or other purpose.

## H. **Procedures upon Termination of This Action**

1. The obligations imposed by this Order survive final disposition of this Action unless the Court, which shall retain jurisdiction to resolve any disputes arising out of this Order, orders otherwise. Within 90 days after the expiration of the time for appeal of an order, judgment, or decree terminating this litigation, all persons having received information designated as Highly Confidential Information or Confidential Information must either make a good faith effort to return such material and all copies thereof to the Protected Person (or the Protected Person's counsel if represented by counsel) that produced it, or certify that it has destroyed or deleted all such Highly Confidential Information or Confidential Information in writing to the Party or Protected Person.

2. Counsel for the Parties will be entitled to retain court papers and exhibits, deposition transcripts and exhibits, trial transcripts and exhibits, and work product, provided that the Parties and their counsel do not disclose the portions of court papers and exhibits, deposition transcripts and exhibits, trial transcripts and exhibits, or work product containing information designated as Highly Confidential Information or Confidential Information to any person except pursuant to court order or agreement with the Protected Person that produced the Highly Confidential Information or Confidential Information or as otherwise permitted herein. All Highly Confidential Information and Confidential Information returned to the Parties or their counsel by the Court likewise must be disposed of in accordance with this paragraph. Nothing in this paragraph, however, restricts the rights of the Parties under paragraphs D (5) or D (6) of this Order.

## I. **Right to Seek Modification**

1. Nothing in this Order limits any Person, Party, or a Protected Person, from seeking (i) further or additional protections of any of its materials, or (ii) modification of this Order upon motion duly made pursuant to the Rules of this Court, including, without limitation, an order that certain material not be produced at all or is not admissible evidence in this Action or any other proceeding.

## J. **The Privacy Act**

1. Any order of this Court requiring the production of any document, information, or transcript of testimony constitutes a court order within the meaning of the Privacy Act, 5 U.S.C.§ 552a(b)(11).

## K. **Persons Bound by This Order**

1. This Order shall be binding on the Parties to this Action, their attorneys, and their successors, personal representatives, administrators, assigns, parents, subsidiaries, divisions, affiliates, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control. This Order shall also be binding on every person who signs Appendix A or Appendix B.

2. All persons subject to this Order are reminded that this Order may be enforced by the Court's full powers of criminal and civil contempt.

**SO ORDERED.**

DATED: __3/25/22__

_____
Honorable James E. Boasberg
United States District Judge

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20−cv−03590 (JEB) |
| **META PLATFORMS, INC.** | |
| Defendant. | |

### AGREEMENT CONCERNING CONFIDENTIALITY

I, _____, am employed by _____ as _____.

I hereby certify that:

1.  I have read the Protective Order entered in the above-captioned action and understand its terms.

2.  I agree to be bound by the terms of the Protective Order entered in the above-captioned action. I agree to use the information provided to me only as explicitly provided in this Protective Order.

3.  I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

4.  I submit to the jurisdiction of the United States District Court for the District of Columbia solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said court.

_____ SIGNATURE

_____ DATE

**APPENDIX B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION,**

                Plaintiff,

          v.

**META PLATFORMS, INC.**

                Defendant.

Civil Action No. 1:20−cv−03590 (JEB)

## IN-HOUSE LITIGATION COUNSEL AGREEMENT CONCERNING
## CONFIDENTIALITY

I, _____, am employed as _____ by _____.

I hereby certify that:

1. I have read the Protective Order entered in the above-captioned action and understand its terms.

2. I agree to be bound by the terms of the Protective Order entered in the above-captioned action, agree that in my role as in-house litigation counsel for the above Defendant company I meet the requirements of paragraph D(2)(d) of this Protective Order, and agree to use the information provided to me only as explicitly provided in this Protective Order.

3. I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.

4. I submit to the jurisdiction of the United States District Court for the District of Columbia solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said Court.

_____ SIGNATURE

_____ DATE

# Exhibit 3

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

## SUPPLEMENTAL DECLARATION OF ERIC MEIRING IN ACCORDANCE WITH SECTION E(1) OF THE PROTECTIVE ORDER

1.      My name is Eric Michael Meiring.  I am over 21 years of age, and I am competent to make this declaration.  The statements herein are true and are within my personal knowledge unless stated otherwise.

2.      I make this declaration pursuant to Section E(1) of the Protective Order in the above-captioned matter.

3.      I reside in Oak Hill, Virginia.

4.      I am an attorney in good standing and licensed to practice law in Ohio and the District of Columbia.

5.      I am Associate General Counsel of Litigation at Meta Platforms, Inc. ("Meta").  I joined Meta in January 2021, in my current role.

6.      Before working at Meta, I was a Partner at the law firm Winston & Strawn LLP in the Antitrust, White Collar, and Litigation groups from 2018-2021.  Before that, I worked in the Antitrust Division of the Department of Justice from 2008-2018, where I served as Trial Attorney, Assistant Chief, and Acting Chief.

7.      In my current role as Associate General Counsel of Litigation at Meta, my primary job duties and responsibilities are managing litigation, regulatory investigations, and potential legal disputes and advising the company on litigation and regulatory risk.  My primary day-to-day responsibilities involve managing or advising on the litigation listed below, including overseeing and managing the internal and external litigation teams working on those matters; managing non-public regulatory investigations, including overseeing and managing the internal and external teams working on those matters; responding to certain non-party litigation subpoenas; preparing witnesses for testimony; and advising on legal risk related to the litigation and regulatory investigation matters that I work on.

8.      I anticipate that these will remain my primary job duties and responsibilities for the reasonably foreseeable future.

9.      In my current role, I do not participate in or advise on competitive decision making at Meta, and I do not anticipate doing so in the reasonably foreseeable future.  I will not do so for the two-year period specified in paragraph D(1)(d) of the Protective Order.  I do not participate in or advise on any decisions about formulating or implementing strategies to compete with our competitors or potential competitors.  I do not participate in or advise on business decisions on competition-related issues that are the subjects of Confidential or Highly Confidential Information in this case, including decisions regarding contracts, marketing, pricing, product or service development or design, product or service offerings, research and development, mergers and acquisitions, or licensing, acquisition, or enforcement of intellectual property rights.

10.      I currently participate in or advise on the following litigation on behalf of Meta:

- *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.) (filed Dec. 9, 2020).
- *State of New York v. Facebook, Inc.*, No. 1:20-cv-03589-JEB (D.D.C.) (filed Dec. 9, 2020), *appeal pending sub nom. State of New York v. Meta Platforms, Inc.*, No. 21-7078 (D.C. Cir.).

- *In re Google Digital Advert. Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y.) (filed Aug. 12, 2021).
- *Klein v. Facebook, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.) (filed Dec. 3, 2020).
- *Phhoto, Inc. v. Meta Platforms, Inc.*, No. 1:21-cv-6159-KAM-RLM (E.D.N.Y.) (filed Nov. 4, 2021).
- *State of Texas v. Meta Platforms, Inc.*, No. 22-0121 (Harrison Cnty. Dist. Ct.) (filed Feb. 14, 2022).
- *Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757-JD (N.D. Cal.) (filed Jan. 29, 2021).
- *Lag Shot, LLC, v. Facebook, Inc.*, No. 4:21-cv-01495-JST (N.D. Cal.) (filed Mar. 2, 2021).
- *Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc.*, No. 4:22-cv-01470-YGR (N.D. Cal.) (filed Mar. 8, 2022).
- *South Spanish Trail, LLC v. Globenet Cabos Submarinos America, Inc., Caribbean Crossings, Ltd., Inc., and John Does 1-100*, No. 50-2020-CA-2024, (15th Fla. Cir. Ct., Palm Beach Cnty.) (filed July 28, 2020).
- *Pass Herald Ltd. v. Google LLC*, No. T-589-22, (Fed. Ct. of Canada) (filed Mar. 16, 2022).
- *FTC v. Meta Platforms Inc., et al.*, No. 5:22-cv-04325-EJD (N.D. Cal.) (filed July 27, 2022).

I also currently participate in or advise Meta on certain non-public regulatory investigations and its response to certain non-party subpoenas. I do not participate in or advise on litigation or legal actions on behalf of any other employer.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 24, 2022, in Oak Hill, Virginia.

ERIC MEIRING