# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:20-cv-03590 (JEB) |
| **META PLATFORMS, INC.** | |
| Defendant. | |

**Plaintiff Federal Trade Commission's Opposition to Motions to Quash Filed by Alphabet, Apple, Discord, Pinterest, Snap, TikTok & X**

# TABLE OF CONTENTS

I. The FTC Has the Authority to Issue Nationwide Subpoenas in This Matter............................. 3

    A.   This Matter Arises Under the Antitrust Laws as Required By 15 U.S.C. § 23 ................. 4

    B.   The FTC Has Shown "Cause" to Issue Nationwide Subpoenas ........................................ 7

II. The Third Parties Subpoenaed by the FTC Have Not Established Undue Burden .................... 7

    A.   Legal Standard for Undue Burden .................................................................................. 8

    B.   The Trial Subpoenas Do Not Impose Undue Burden and the FTC Has Acted
         Reasonably ..................................................................................................................... 9

    C.   The Third Parties Have Not Demonstrated That They Would Suffer Any
         Undue Burden ................................................................................................................ 12

         Bradley Horowitz (Alphabet). ....................................................................................... 12

         Aaron Filner (Alphabet/YouTube). ............................................................................... 12

         Ronak Shah (Apple) ....................................................................................................... 13

         Julia Tang (Discord). ..................................................................................................... 13

         Julia Roberts (Pinterest). ............................................................................................... 14

         Saral Jain (Snap). .......................................................................................................... 14

         Adam Presser (TikTok). ................................................................................................. 14

         Keith Coleman (X). ........................................................................................................ 15

CONCLUSION ............................................................................................................................. 15

i

# TABLE OF AUTHORITIES

## Cases

*AFL-CIO v. Project Veritas Action Fund*, 2022 WL 3655277 (D.D.C. Aug. 25, 2022) ............. 11

*Ameritox, Ltd. v. Millennium Labs., Inc.*, 2012 WL 6568226 (N.D. Ill. Dec. 14, 2012) ............... 8

*\*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas,*
    262 F.R.D. 293 (S.D.N.Y. 2009) ................................................................................... *passim*

*Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55 (D.D.C. 2010) ...................... 9

*Cellustar Corp. v. Sprint Sols., Inc.*, 2024 WL 418140 (D.P.R. Feb. 5, 2024) ........................... 11

*\*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821) .................................................................... 5

*\*FTC v. Actavis, Inc.*, 1:09-cv-955-TWT ................................................................................. 1, 4

*FTC v. Cement Inst.*, 333 U.S. 683 (1948) ................................................................................... 4

*FTC v. Kroger Co.*, 2024 WL 3400098 (D. Or. July 12, 2024) .................................................... 3

*\*FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14 (D.D.C. 2023) ..................................................... 4

*\*FTC v. Vyera Pharma., LLC*, 479 F. Supp. 3d 31 (S.D.N.Y. 2020) ............................................ 4

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ........................ 6

*Hopkins v. Walker*, 244 U.S. 486 (1917) ..................................................................................... 6

*Horsewood v. Kids "R" Us*, 1998 WL 526589 (D. Kan. Aug. 13, 1998) ...................................... 8

*In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34 (1st Cir. 2016) ................................. 4

*In re Petroleum Products Antitrust Litigation*, 782 F. Supp. 481 (C.D. Cal. 1991) ..................... 6

*Johnson v. Jung*, 242 F.R.D. 481 (N.D. Ill. 2007) ....................................................................... 8

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ................................................. 5

*Merrill Lynch v. Manning*, 578 U.S. 374 (2016) ..................................................................... 5, 6

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109 (2018) ............................................................ 5

*Oakley v. MSG Networks, Inc.*, 2025 WL 72111 (S.D.N.Y. Jan. 9, 2025) .................................... 8

*Official Comm. of Unsecured Creditors v. CalPERS Corp. Partners*,
2021 WL 3081880 (D. Me. July 20, 2021) ................................................................................ 12

*Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824) ........................................ 5

*Payne v. District of Columbia*, 2016 WL 10703795 (D.D.C. Nov. 14, 2016) ........................ 8, 14

*Perera v. U.S. Fid. & Guar. Co.*, 2007 WL 4247699 (M.D. Fla. Dec. 3, 2007) ........................ 12

*Reddick v. Dillard Store Servs., Inc.*, 2010 WL 3025205 (S.D. Ill. Aug. 2, 2010) .................... 11

*U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20 (D.D.C. 2014) .............. 8

*\*United States v. Anthem, Inc.*, 2016 WL 11164033 (D.D.C. Dec. 7, 2016) ........................... 7, 9

*United States v. First Data & Concord EFS, Inc.*, 287 F. Supp. 2d 69 (D.D.C. 2003) ................ 7

*United States v. Household Goods Movers Investigation*, 184 F. Supp. 689 (D.D.C. 1960) ........ 9

*Yamaha Motor Co. v. FTC*, 657 F.2d 971 (8th Cir. 1981) ........................................................... 6

**Statutes**

15 U.S.C. § 12 ......................................................................................................................... 3, 6

15 U.S.C. § 16(a) ........................................................................................................................ 6

*15 U.S.C. § 23 .................................................................................................................. *passim*

28 U.S.C. § 1331 ......................................................................................................................... 6

Section 1 of the Clayton Act ........................................................................................................ 3

*Section 2 of the Sherman Act .................................................................................................. 3, 4

*Section 5 of the FTC Act ................................................................................................... *passim*

Securities Exchange Act of 1934 ................................................................................................. 6

**Rules**

Federal Rule of Civil Procedure 43(a) ................................................................................ 2

*Federal Rule of Civil Procedure 45 ............................................................................... 8

Courts around the country commonly grant nationwide service of process in FTC matters because 15 U.S.C. § 23 plainly grants courts the power to do so, and the FTC routinely brings antitrust cases in which cause exists for courts to exercise that power. For example, in *FTC v. Actavis, Inc.*, 1:09-cv-955-TWT, the FTC sought an order issuing trial subpoenas in an antitrust matter brought by the FTC under Section 5 of the FTC Act. Actavis opposed the motion, arguing that 15 U.S.C. § 23 "does not apply" because it "authorizes nationwide service of process only for claims 'arising under the antitrust laws.'" *See* Ex. B at 4-10 (Actavis Opp.); *see also* Ex. A at 5-8 (FTC Mot.). The *Actavis* court rejected the defendant's arguments and granted the FTC permission to issue its trial subpoenas nationwide. *See* Ex. C (Order).

Here, the Third Parties[1] advance the exact same argument in seeking to quash subpoenas for the trial testimony of 22 witnesses: three subpoenaed only by the FTC, fourteen only by Meta, and five by both parties. The Court should not grant the Third Parties' motion on this basis. Such a holding would be contrary to precedent and common practice and would materially impair the FTC's ability to enforce the antitrust laws.

The Third Parties also argue that the trial subpoenas impose an undue burden. This argument should be rejected as to the eight witnesses subpoenaed by the FTC: Bradley Horowitz (Alphabet), Aaron Filner (Alphabet/YouTube), Ronak Shah (Apple), Julia Tang (Discord), Julia Roberts (Pinterest), Saral Jain (Snap), Adam Presser (TikTok), and Keith Coleman (X). For these witnesses, the Third Parties have not met the high bar of showing that the burden of

---

[1]    Alphabet Inc. ("Alphabet"), Apple Inc. ("Apple"), Discord Inc. ("Discord"), Nextdoor Holdings, Inc. ("Nextdoor"), Pinterest, Inc. ("Pinterest"), Quora, Inc. ("Quora"), Snap Inc. ("Snap"), TikTok Inc. ("TikTok"), and X Corp. ("X") (together the "Third Parties") jointly move to quash trial subpoenas served by the FTC or Meta. Snap Inc. ("Snap") moves separately but adopts the other Third Parties' arguments with respect to that subpoena.

complying with the FTC's lawful subpoenas outweighs the importance of their testimony to this case, and the Court should deny their motion.

The FTC takes no position as to whether the Third Parties' motions should be granted with respect to the trial testimony of twelve additional witnesses subpoenaed by only Meta: Thomas Kim, Alastair Slattery, and Samuel Greenfield from Alphabet; Kimberly Baumgarten from Epic (who filed a separate motion to quash); Flora Hsu from Nextdoor; Scott Coleman from Pinterest; Courtland Showerman from Quora; Blake Chandlee, Eric Morrison, and V Pappas from TikTok; and Jonathan Chen and Tim Perzyk from X. However, the FTC agrees with the Third Parties that Meta's late-in-time document subpoenas are inappropriate and should be quashed, and respectfully refers the Court to the FTC's motion to exclude these abuses of the discovery process. *See* FTC Mot. to Exclude, Mar. 18, 2025, ECF 428.

Finally, the Third Parties request in the alternative that the Court permit remote testimony pursuant to Rule 43(a). The FTC agrees that Mr. Horowitz (Alphabet) and Mr. Filner (Alphabet/YouTube) satisfy requirements of Rule 43(a), and should be permitted to testify remotely, but Meta has not agreed to this accommodation. With respect to Mr. Shah (Apple) and Ms. Tang (Discord), both the FTC and Meta agree that remote testimony is appropriate. With respect to all other witnesses, the FTC takes the position that these witnesses have yet to satisfy Rule 43(a). The FTC is not opposed to remote testimony in principle. But granting a blanket accommodation for these Third Party witnesses whose primary assertion of burden is the inconvenience of travel—which, standing alone, fails to satisfy Rule 43(a)—would unfairly penalize other witnesses who have agreed to testify in person and would run contrary to the Court's prior guidance regarding the importance of in-person testimony. The FTC is willing to revisit its position for any witnesses who identify particularized burdens.

## ARGUMENT

### I.     The FTC Has the Authority to Issue Nationwide Subpoenas in This Matter

The FTC has the authority to issue nationwide subpoenas in this matter under 15 U.S.C.

§ 23, which states:

> In any suit, action, or proceeding brought by or on behalf of the United States subpoenas for witnesses who are required to attend a court of the United States in any judicial district in any case, civil or criminal, arising under the antitrust laws may run into any other district: Provided, That in civil cases no writ of subpoena shall issue for witnesses living out of the district in which the court is held at a greater distance than one hundred miles from the place of holding the same without the permission of the trial court being first had upon proper application and cause shown.

15 U.S.C. § 23; *see also FTC v. Kroger Co.*, 2024 WL 3400098, at *2-3 (D. Or. July 12, 2024)

(holding that "15 U.S.C. § 23 confers nationwide enforcement power over subpoenas issued

pursuant to that provision" when the FTC filed suit under the Clayton Act).  The FTC meets the

requirements of § 23 here because (1) this case is a "suit, action, or proceeding brought by or on

behalf of the United States," (2) "arising under the antitrust laws," with (3) "cause shown."

The Third Parties do not contest the first element, which is satisfied on its face. The FTC

satisfies the second element here because the underlying claim evoked through the FTC's

allegations under § 5 of the FTC Act "aris[es] under" § 2 of the Sherman Act.  The Third Parties

cite no caselaw suggesting that the nationwide subpoena power of 15 U.S.C. § 23 is unavailable

where the FTC Act and the "antitrust laws" as defined by 15 U.S.C. § 12 (Section 1 of the

Clayton Act) are coextensive, and they ignore caselaw to the contrary.  As to the third element,

in March of 2022 the Court found cause in "the geographic dispersion of potential witnesses" to

allow the parties to issue nationwide subpoenas in this case.  *See* Sched. Order ¶ 22, Mar. 3,

2022, ECF 103.  The Third Parties offer no legal basis to support their argument that this order

was deficient.

3

**A.      This Matter Arises Under the Antitrust Laws as Required By 15 U.S.C. § 23**

The FTC's suit against Meta "aris[es] under the antitrust laws."  15 U.S.C. § 23.  It is well settled that "the FTC is empowered to directly enforce the substantive antitrust laws."  *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 60 (1st Cir. 2016).  Section 5 of the FTC Act has long been held to encompass violations of the Sherman Act.  *See FTC v. Cement Inst.*, 333 U.S. 683, 691-93 (1948) ("Thus it appears that soon after its creation the [Federal Trade] Commission began to interpret the prohibitions of s 5 [of the FTC Act] as including those restraints of trade which also were outlawed by the Sherman Act, and that this Court has consistently approved that interpretation of the Act."); *see, e.g.*, *FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14, 34 (D.D.C. 2023) (explaining that the FTC is empowered to bring suit under § 5 of the FTC Act to prevent violations of § 2 of the Sherman Act); *FTC v. Vyera Pharma., LLC*, 479 F. Supp. 3d 31, 43 (S.D.N.Y. 2020) ("'Unfair methods of competition' under the FTC Act encompass violations of the Sherman Act.").  Accordingly, the FTC's suit against Meta properly "arises under" § 2 of the Sherman Act, as the Commission seeks to enforce the Sherman Act through § 5 of the FTC Act and Meta's liability is coextensive with the Sherman Act.

There is no merit to the Third Parties' contention that 15 U.S.C. § 23 is unavailable in this antitrust action because the FTC's case is technically brought under the FTC Act.  As mentioned, in *FTC v. Actavis* the court rejected these same arguments.  *See* Ex. A (FTC Mot.); Ex. B (Actavis Opp.); Ex. C (Order).  This Court should do the same.

Congress did not limit nationwide service of trial subpoenas to cases brought "under" a specific list of antitrust laws.  Instead, Congress extended this authority to actions "*arising under*" the antitrust laws—a phrase subject to centuries of Supreme Court precedent ignored by the Third Parties.  15 U.S.C. § 23 (emphasis added); *see also Nat'l Ass'n of Mfrs. v. Dep't of*

4

*Def.*, 583 U.S. 109, 128-29 (2018) ("As this Court has noted time and time again, the Court is obliged to give effect, if possible, to every word Congress used."). When Congress enacted 15 U.S.C. § 23 in 1914 to authorize nationwide service of subpoenas in actions "arising under" the antitrust laws, Congress did so against a long backdrop of cases construing those words broadly. Where, as here, "Congress used the materially same language in [a statute], it presumptively was aware of the longstanding judicial interpretation of the phrase and intended for it to retain its established meaning." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721-22 (2018).

For instance, in *Cohens v. Virginia*, Chief Justice Marshall explained that for purposes of Article III, "[a] case in law or equity . . . may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either." 19 U.S. (6 Wheat.) 264, 379 (1821). The Court rejected as "too narrow" an interpretation of "arising under" as limited to situations "in which a party comes into Court to demand something conferred on him by the constitution or a law." *Id.*; *see also Merrill Lynch v. Manning*, 578 U.S. 374, 385 (2016) ("This Court has long read the words 'arising under' in Article III to extend quite broadly, to all cases in which a federal question is 'an ingredient' of the action." (cleaned up) (discussing *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823 (1824))). This case thus indisputably "arises under" the Sherman Act: the Commission brought this action to enforce the Sherman Act and remediate Meta's violations of the Act, and the Court's decisions have depended and will continue to depend on the construction and jurisprudence of the Sherman Act. *See, e.g.*, Mem. Op. 77, Nov. 13, 2024, ECF 384 ("Plaintiff, however, brings this suit under Section 2 of the Sherman Act.").

More recent Supreme Court decisions confirm that Congress's use of the phrase "arising under" a law does not mean that the case must be "brought under" that law. For example, the

Supreme Court has held for over a century that even if a case is brought under state law, it may nonetheless "arise under" federal law for jurisdictional purposes under 28 U.S.C. § 1331 where the state claims "nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (discussing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917)). Interpreting this phrase in connection with the Securities Exchange Act of 1934, the Supreme Court concluded that a state-law cause of action "arises under" federal law where the action is "brought to enforce a duty created by" federal law and "the claim's very success depends on giving effect to a federal requirement." *Merrill Lynch*, 578 U.S. at 384 (cleaned up). The same logic applies here. The FTC seeks to enforce duties created by the Sherman Act and the claim's very success depends on whether Meta violated that statute.

Finally, the Third Parties' reliance on *Yamaha Motor Co. v. FTC* and *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation* is misplaced. The statute at issue in *Yamaha Motor*, 15 U.S.C. § 16(a), contains materially different language than does 15 U.S.C. § 23. *See* 657 F.2d 971, 982 (8th Cir. 1981). Specifically, § 16(a) applies to cases "brought under" the antitrust laws, whereas § 23 applies to cases "arising under" the antitrust laws. *Id. Petroleum Products* is equally inapposite. That case involved claims of conscious parallelism and "shared monopoly" that, in the court's view, "venture[d] into the outer reaches of § 5 of the FTC Act" regarding a theory that "[a]ntitrust doctrine [under the Sherman Act] has yet to adopt." 782 F. Supp. 481, 485 (C.D. Cal. 1991). Indeed, that court noted that the case was brought under § 5 of the FTC Act specifically *because* it "could not survive a motion to dismiss . . . for failure to state a claim under the antitrust laws." *Id.* The court in *Petroleum Products* thus emphasized that it was not addressing the issue now before this Court: whether 15 U.S.C. § 12 applies to cases brought under § 5 of the FTC Act that inarguably state a claim under antitrust

laws. *Id.* at 484 n.8 ("The court does not address the hypothetical case where the conduct charged to be in violation of § 5 of the FTC Act also states a claim under the antitrust laws.").

## B. The FTC Has Shown "Cause" to Issue Nationwide Subpoenas

The Court has already determined that "cause" exists for nationwide service of process of discovery and trial subpoenas, consistent with 15 U.S.C. § 23, due to the geographic dispersion of the witnesses. *See* Sched. Order ¶ 22, Mar. 3, 2022, ECF 103. The Third Parties argue that the Court's finding of cause was deficient because it was jointly advanced by the Parties. That the Court adopted the language advanced by the parties does not undermine the Order's import. It is common practice for parties to advance joint proposals where they agree on certain matters, and the fact that the Court decided to accept specific language from the parties' proposal does not make the Court's order less binding.

The Third Parties have offered no basis to conclude that the geographic dispersion of witnesses does not constitute sufficient cause. The Third Parties cite a case interpreting the "good cause" standard under RICO, Mot. to Quash at 20, but the Third Parties ignore that, by its plain terms, 15 U.S.C. § 23 requires only "cause" to issue nationwide subpoenas. The Court's Order is consistent with other courts who have concluded that "geographic dispersion" of the witnesses constitutes sufficient cause to issue subpoenas under 15 U.S.C. § 23 for antitrust cases. *See, e.g.*, *United States v. Anthem, Inc.*, 2016 WL 11164033, at *1-2 (D.D.C. Dec. 7, 2016); *United States v. First Data & Concord EFS, Inc.*, 287 F. Supp. 2d 69, 72 (D.D.C. 2003).

## I. The Third Parties Subpoenaed by the FTC Have Not Established Undue Burden

The eight Third Parties' witnesses subpoenaed by the FTC argue that the subpoenas at issue subject them to undue burden by disrupting their plans and requiring that they travel to Washington, D.C. to present live testimony at trial. Their arguments fall far short of the bar to quash the FTC's subpoenas as unduly burdensome, however, and should be rejected.

### A.    Legal Standard for Undue Burden

The onus of proving "undue burden lies on the party moving to quash." *Payne v. District of Columbia*, 2016 WL 10703795, at *3 (D.D.C. Nov. 14, 2016). Moreover, "[b]ecause the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009). "To demonstrate the undue burden, the movant must provide affirmative and compelling proof." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012); *see also Oakley v. MSG Networks, Inc.*, 2025 WL 72111, at *3 (S.D.N.Y. Jan. 9, 2025) (noting movants failed to "specifically articulate[] how the Rule 45 subpoenas will be unduly burdensome" and thus denying their motion to quash with respect to burden).

A successful motion to quash a subpoena must meet a high bar. "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014). "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Aristocrat Leisure*, 262 F.R.D. at 300. Nor can an individual's "busy schedule." *See Johnson v. Jung*, 242 F.R.D. 481, 486 (N.D. Ill. 2007) ("[T]he fact that an executive has a busy schedule cannot shield that witness from [testifying.]"); *see also Horsewood v. Kids "R" Us*, 1998 WL 526589, at *7 (D. Kan. Aug. 13, 1998) ("That [a witness] is too busy and that a deposition will disrupt his work carries little weight. Most deponents are busy. Most depositions involve some disruption of work or personal business."). Requiring long-distance travel, by itself, is not undue burden in this district. *See Anthem, Inc.*, 2016 WL

11164033, at *2 n.2 (holding that travel is not an "undue" burden); *Aristocrat Leisure*, 262 F.R.D. at 300 (declining to quash trial subpoena where "[t]he [movants] are sophisticated parties with the financial means to travel, particularly where nearly all of the foreign subpoenaed [movants] live in London and can take a flight to one of three airports in the Court's vicinity."); *Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 62 (D.D.C. 2010) (holding that a witness properly served with a trial subpoena "is not entitled to have that subpoena quashed on the ground that it requires long-distance travel").

Further, parties who have been properly served "cannot demand that their depositions be used in lieu of live trial testimony." *Aristocrat Leisure*, 262 F.R.D. at 301. As courts in this district have noted, "there is no requirement in the law that the party seeking nationwide enforcement of a subpoena must also demonstrate that it lacks alternatives." *Anthem*, 2016 WL 11164033, at *2 n.2.

### B. The Trial Subpoenas Do Not Impose Undue Burden and the FTC Has Acted Reasonably

The FTC issued subpoenas to witnesses to elicit live testimony at trial regarding the FTC's proposed market and Meta's monopoly power in that market, among other issues relevant to this case. The relevance of this testimony is apparent. Moreover, it is well-settled that "the breadth and scope of subpoenas issued in antitrust inquiries are perhaps necessarily greater than in other types of cases." *United States v. Household Goods Movers Investigation*, 184 F. Supp. 689, 690 (D.D.C. 1960).

The FTC has endeavored to limit the burden of witnesses for third parties in this case by electing to call only one witness per third party company (with one exception explained below), considering third party witness schedules in selecting trial dates, offering to limit exam durations for certain third-party witnesses, and agreeing to remote testimony for witnesses who have

shown particularized burden, especially regarding health and medical issues, even where Meta has not. The FTC has also given advance notice to witnesses of the specific days on which the FTC intends to call them and has accommodated third-party witness schedules in selecting these trial dates. *Contra* Mot. to Quash at 23 (arguing that witnesses are likely not to be given significant advance notice of the dates they must appear for testimony). The Third Parties' statement that the "Parties have [not] attempted to lighten the burden or associated costs," Mot. to Quash at 24, is simply not accurate vis-à-vis the FTC, which has agreed to limit the burden on the Third Parties to the extent possible.

Additionally, the FTC largely seeks testimony from the Third Parties' employees who are *currently employed* by the relevant third parties—namely, Messrs. and Mmes. Presser, Coleman, Filner, Shah, Jain, and Roberts. The FTC served trial subpoenas on only two former employees of the Third Parties: Mr. Horowitz (Alphabet) and Ms. Tang (Discord). These subpoenas are appropriate because no one else deposed in this matter is more knowledgeable about the relevant services than these witnesses. Not so with Meta, who subpoenaed at least seven former employees of the Third Parties, even though current employees who had been deposed were available. For example, Meta subpoenaed V Pappas, TikTok's former COO, even though the FTC will call live at trial Adam Presser, TikTok's *current* COO as well as its VP of Trust & Safety. Further, the FTC will present deposition testimony via video at trial for V Pappas, just as it will for Mr. Andreou (formerly Snap) and Mr. Chandlee (formerly TikTok), and just as it may for Mr. Morrison (formerly TikTok). By contrast, Meta will not present the video depositions of any of the eight witnesses subpoenaed by the FTC. In short, the FTC has acted reasonably to reduce any burdens imposed by compliance with its trial subpoenas on the Third Party witnesses,

even if Meta has not.  If the Court is inclined to quash any of the parties' subpoenas on the grounds of undue burden, it is Meta's subpoenas that should be quashed, not the FTC's.

Given the FTC's reasonable actions, the cases cited by the Third Parties do not support their undue burden argument.  In *AFL-CIO*, the court refused to quash the subpoena of one senior executive who had "direct knowledge of a major issue at trial," noting that the parties could mitigate burden by scheduling his testimony for a specific date and time to accommodate his commitments.  *AFL-CIO v. Project Veritas Action Fund*, 2022 WL 3655277, at *5 (D.D.C. Aug. 25, 2022).  The FTC has tried to schedule specific dates for all third-party witnesses on its witness list.  The *AFL-CIO* court did quash the subpoena of a second executive at the same third party whose testimony was "negligible, at best" because it was duplicative of testimony offered by other witnesses.  *Id.* at *6.  This case does not apply to the FTC, who has sought to narrow its subpoenas to a single witness from each Third Party, with the necessary exception of Alphabet.

*Reddick* is equally unavailing: that case involved an attempt to circumvent the 100-mile limit on trial subpoenas under the Federal Rules of Civil Procedure, *Reddick v. Dillard Store Servs., Inc.*, 2010 WL 3025205, at *1 (S.D. Ill. Aug. 2, 2010), but 15 U.S.C. § 23 here permits nationwide service with leave of court, which the Court has already granted.  *Cellustar* is likewise inapposite.  There, the court quashed a deposition subpoena, directing the plaintiff to first seek information from other witnesses without prejudice to renew the request for the deposition.  *Cellustar Corp. v. Sprint Sols., Inc.*, 2024 WL 418140, at *6 (D.P.R. Feb. 5, 2024).

The Third Parties' assertion that the trial subpoenas should be quashed because they impose the risk of inadvertent disclosure of confidential information is likewise unpersuasive, as there is a separate procedure to address that issue under the Court's March 25, 2025 confidentiality order.  *See* Order 3-4, Mar. 25, 2025, ECF 478.

11

Finally, the Third Parties' out-of-circuit cases regarding deposition testimony are not on point because those cases involved special circumstances in which the witnesses demonstrated undue burden, which is inapplicable here, as discussed below. *See Official Comm. of Unsecured Creditors v. CalPERS Corp. Partners*, 2021 WL 3081880, at *1 (D. Me. July 20, 2021) (ordering deposition designation in lieu of live testimony because the third-party witness had business obligations in Canada during the weeks of trial and would be forced to incur substantial expense and lose substantial income); *Perera v. U.S. Fid. & Guar. Co.*, 2007 WL 4247699, at *1 (M.D. Fla. Dec. 3, 2007) (quashing subpoena where the witness was given less than one business day to comply and had professional obligations during the trial date).

### C.     The Third Parties Have Not Demonstrated That They Would Suffer Any Undue Burden

The Third Parties have not demonstrated that the witnesses subpoenaed by the FTC would suffer undue burden relative to the relevance of their testimony, as described below:

*Bradley Horowitz (Alphabet).*  First, the FTC has discussed with Alphabet that the FTC is amenable to Mr. Horowitz testifying remotely via video, thereby ameliorating any concerns regarding travel.  Second, although Mr. Horowitz is a former employee of Alphabet, there are no current Alphabet employees better situated to provide well-informed testimony regarding the now-defunct Google+.  From 2011 to 2015 Mr. Horowitz was "second in command" and "a partner to the leader of Google+" with responsibilities concerning "every aspect of the operations there."  *See* Horowitz (Alphabet) Dep. Tr. 16:10-17:10, 19:18-20:8.  Mr. Horowitz then "took over leadership of Google+" in 2015.  *Id.* 19:6-20:13.  Mr. Horowitz's experience is unique, important, and highly relevant to the FTC's case in chief.

*Aaron Filner (Alphabet/YouTube).*  First, as with Mr. Horowitz, the FTC has acknowledged that Alphabet has shown good cause for Mr. Filner to testify via remote video.

Second, while the Third Parties claim that "both parties' final witness list confirms the testimony they seek to elicit from Mr. Filner and Mr. Kim (both YouTube employees) is duplicative," Mot. to Quash at 10, the FTC has only subpoenaed Mr. Filner for trial.  It is Meta, not the FTC, that issued trial subpoenas to both Mr. Filner and Mr. Kim.  To the extent the Court quashes either subpoena on the basis of cumulativeness, it should quash Meta's subpoena of Mr. Kim.

**Ronak Shah (Apple).**  The FTC and Meta have both agreed that Mr. Shah may testify remotely.  Any potential burdens imposed by travel are thus irrelevant with respect to the FTC's subpoena.  The Third Parties argue that "the spring is an extraordinarily busy time of the year for Mr. Shah."  Mot. to Quash at 7.  But as the caselaw in this and other districts make clear, quashing a subpoena requires "setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance," *Aristocrat Leisure Ltd.*, 262 F.R.D. at 299, and inconvenience or busy schedules do not suffice, *see supra* II.A. (listing cases).

 The Third Parties assert that "Apple is of marginal, if any, relevance to this case," but soon after qualify that "Apple's only conceivable relevance to those issues [in this case] is to an assessment of the alleged market—i.e., whether, and if so the extent to which, Apple's apps compete with Meta's products."  Mot. to Quash at 4-5.  As the Court is aware, however, market definition is a disputed issue in this case.  *See* Mem. Op. 18, Nov. 13, 2024, ECF 384.  Any potential burden to Mr. Shah is thus outweighed by the relevance of his anticipated testimony.

**Julia Tang (Discord).**  As the Third Parties note, the FTC and Meta both agree that Ms. Tang should testify remotely given her personal circumstances.  Mot. to Quash at 7-8.  The Third Parties argue that Ms. Tang would suffer undue burden to testify remotely because she has not been employed by Discord since before her deposition.  The Third Parties cite to no caselaw to suggest why this fact alone would satisfy the undue burden requirement, especially here where

the FTC and Meta agreed to remote testimony, nor do they specifically articulate what that burden would actually be.  No other witnesses who are knowledgeable about Discord were deposed in this case, and Ms. Tang's knowledge concerning market definition, a disputed trial issue, outweighs any vague or minimal burden alluded to in the Third Parties' motion.

*Julia Roberts (Pinterest).*  First, that Ms. Roberts would need to travel a longer distance is not sufficient, without more, to show undue burden.  *See Aristocrat Leisure*, 262 F.R.D. at 300.  Second, the Third Parties misleadingly state that "the Parties have issued trial subpoenas for these same witnesses," referring to Ms. Roberts and Mr. Scott Coleman, a former Pinterest employee.  Mot. to Quash at 12.  But the FTC issued a subpoena only to Ms. Roberts.  Third, the Third Parties argue that Ms. Roberts will be a former Pinterest employee by the time of trial. This only serves to demonstrate how the FTC (unlike Meta) has generally endeavored to call witnesses with current relationships to their third-party employers.  That Ms. Roberts will have left Pinterest two weeks before trial is of no moment to her claim of undue burden.

*Saral Jain (Snap).*  Snap argues that "this Court should quash the [Meta] Subpoenas (and the FTC subpoena to Mr. Jain) in their entirety for the reasons set forth in the Omnibus Motion to Quash."  Snap Mot. to Quash at 2, ECF 488.  Snap does not identify any particularized burden regarding Mr. Jain in its individual motion.  The Third Parties' omnibus motion is similarly lacking.  Accordingly, Snap has not met its burden and the Court should not quash Mr. Jain's trial subpoena from the FTC.  *See Payne*, 2016 WL 10703795, at *3 (onus of proving "undue burden lies on the party moving to quash").

*Adam Presser (TikTok).*  TikTok has not established sufficient basis to quash Mr. Presser's subpoena.  He is a knowledgeable current employee of TikTok and his testimony is relevant to the disputed issue of market definition.  TikTok has not specified any undue burden

14

other than the burden of traveling to the Court.  Mot. to Quash at 15-16.  As previously noted,

travel is not sufficient to show undue burden.  *See Aristocrat Leisure*, 262 F.R.D. at 300.  While

TikTok complains that four of its witnesses have been served subpoenas to testify, the FTC has

sought to limit the burden on TikTok by only seeking live testimony from Mr. Presser and

playing video for the others.  Meta, on the other hand, has served subpoenas for testimony on all

four of TikTok's witnesses.  If the Court grants any motions to quash on the grounds of

duplicative testimony, it should do so only for Meta's subpoenas, not the FTC's.

**Keith Coleman (X).**  The FTC has only served a subpoena on one X witness, while Meta

has served subpoenas on three different witnesses from the same company.  Testimony from X is

important to the issue of market definition, and X has not articulated any undue burden other

than the burden of traveling to the Court, Mot. to Quash at 16-17.  As previously noted, travel is

not sufficient to show undue burden.  *See Aristocrat Leisure*, 262 F.R.D. at 300.

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court deny the Third

Parties' Motion to Quash and Snap's Motion to Quash with respect to the FTC's subpoenas.

Dated: March 31, 2025                         Respectfully submitted,

                                              */s/ Daniel Matheson*
                                              Daniel Matheson (D.C. Bar 502490)
                                              Krisha Cerilli (D.C. Bar 983281)
                                              Nathan Brenner (IL Bar 6317564)
                                              Karen Goff (N.Y. Bar 4630901)
                                              Benjamin D. Rashkovich (D.C. Bar 5972724)
                                              Federal Trade Commission
                                              Bureau of Competition
                                              600 Pennsylvania Avenue, N.W.
                                              Washington, D.C. 20580
                                              Telephone: (202) 326-2075
                                              Email: dmatheson@ftc.gov

                                              *Attorneys for Plaintiff Federal Trade Commission*