**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

META PLATFORMS, INC.,

        Defendant.

Case No. 1:20-cv-03590-JEB

**META PLATFORMS, INC.'S OPPOSITION TO**
**<u>NONPARTIES' MOTIONS TO QUASH</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

I.    The Court Properly Authorized The Parties To Serve Nationwide Trial Subpoenas .......... 3

II.   The Competitors Should Testify Live At Trial ................................................................ 5

      A.    Live Testimony From The Competitors Is Essential To Meta's Defense ............... 6

      B.    Competitors Fail To Show That Live Testimony Is Unduly Burdensome ............. 8

      C.    The Competitors Should Testify At Trial, Not Remotely .................................... 11

      D.    The Competitors Do Not Offer Any Specific Circumstances To Justify ............. 11

      1.    TikTok ............................................................................................................ 11

      2.    Google / YouTube .......................................................................................... 14

      3.    Snap ............................................................................................................... 17

      4.    Apple .............................................................................................................. 18

      5.    X Corp. (formerly Twitter) ............................................................................. 19

      6.    Pinterest .......................................................................................................... 20

      7.    Nextdoor ......................................................................................................... 21

      8.    Quora .............................................................................................................. 22

      9.    Discord ............................................................................................................ 22

      10.   Epic Games ..................................................................................................... 23

III.  Meta's Targeted Trial Subpoenas For Documents Are Enforceable ............................... 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*A. Kush & Assocs. (Can.) Ltd. v. Weingeroff Enters., Inc.*,
    1988 WL 64082 (N.D. Ill. June 8, 1988) ........................................................... 5

*Action Nissan, Inc. v. Hyundai Motor Am.*,
    2021 WL 8946139 (M.D. Fla. July 7, 2021) .................................................. 8-9

*\*Alvarado v. Rainbow Inn, Inc.*,
    2016 WL 10703674 (D.D.C. Feb. 5, 2016) ...................................................... 24

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Fund*,
    2022 WL 3655277 (D.D.C. Aug. 25, 2022) ....................................................... 9

*\*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
    262 F.R.D. 293 (S.D.N.Y. 2009) ........................................................... 5, 8, 9, 10

*Beltran-Tirado v. I.N.S.*,
    213 F.3d 1179 (9th Cir. 2000) ........................................................................ 11

*Cellustar Corp. v. Sprint Sols., Inc.*,
    2024 WL 418140 (D.P.R. Feb. 5, 2024) ............................................................ 9

*Donahue v. U.S. Dep't of Homeland Sec.*,
    2021 WL 5764710 (D.D.C. Sept. 30, 2021),
    *aff'd*, 2023 WL 7919630 (D.C. Cir. Nov. 16, 2023) ........................................ 11

*FTC v. Meta Platforms, Inc.*,
    2024 WL 4772423 (D.D.C. Nov. 13, 2024) .......................................... 1, 3, 6, 14

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ......................................................................... 25

*FTC v. Qualcomm Inc.*,
    2018 WL 6597273 (N.D. Cal. Dec. 13, 2018) ................................................. 25

*FTC v. Swedish Match North America, Inc.*,
    197 F.R.D. 1 (D.D.C. 2000) ........................................................................... 11

*Ghawanmeh v. Islamic Saudi Acad.*,
    274 F.R.D. 329 (D.D.C. 2011) ........................................................................ 25

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674 (N.D. Cal. 2006) ..................................................................... 9

*In re Coordinated Pretrial Proceedings in Petrol. Prods. Antitrust Litig.*,
   782 F. Supp. 481 (C.D. Cal. 1991) ...................................................................4

*\*Irons v. Karceski*,
   74 F.3d 1262 (D.C. Cir. 1995) .......................................................................5

*Johnson v. Jung*,
   242 F.R.D. 481 (N.D. Ill. 2007)......................................................................8

*Kirschner v. Klemons*,
   2005 WL 1214330 (S.D.N.Y. May 19, 2005) ..................................................8

*Kluth v. Spurlock*,
   2024 WL 3329046 (D. Colo. July 8, 2024) ....................................................11

*Kolb v. County of Suffolk*,
   109 F.R.D. 125 (E.D.N.Y. 1985) ....................................................................7

*Lillie v. ManTech Int'l Corp.*,
   2019 WL 653085 (C.D. Cal. Feb. 15, 2019).................................................10

*\*Loop LLC v. CDK Glob., LLC*,
   2025 WL 71870 (W.D. Wis. Jan. 10, 2025) ..................................................10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
   578 U.S. 374 (2016)........................................................................................4

*Novello v. Progressive Express Ins. Co.*,
   2021 WL 1751351 (M.D. Fla. May 4, 2021)..................................................11

*Perera v. U.S. Fid. & Guar. Co.*,
   2007 WL 4247699 (M.D. Fla. Dec. 3, 2007)..................................................10

*Reddick v. Dillard Store Servs., Inc.*,
   2010 WL 3025205 (S.D. Ill. Aug. 2, 2010) .....................................................9

*RIMSAT, Ltd. v. Hilliard*,
   207 B.R. 964 (D.D.C. 1997) ...........................................................................8

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
   792 F.2d 210 (D.C. Cir. 1986) ........................................................................6

*SEC v. Mozilo*,
   2010 WL 11468959 (C.D. Cal. Oct. 7, 2010).................................................5

*U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*,
    301 F.R.D. 20 (D.D.C. 2014)........................................................................5

*United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*,
    2022 WL 15092294 (M.D. Ga. Oct. 26, 2022)..............................................6

*\*United States v. Anthem, Inc.*,
    2016 WL 11164033 (D.D.C. Dec. 7, 2016)..............................................8, 10

*United States v. First Data*,
    287 F. Supp. 2d 69 (D.D.C. 2003)................................................................5

*United States v. Int'l Bus. Machs. Corp.*,
    71 F.R.D. 88 (S.D.N.Y. 1976)....................................................................25

*United States v. Int'l Bus. Machs. Corp.*,
    90 F.R.D. 377 (S.D.N.Y. 1981)....................................................................7

*Yamaha Motor Co. v. FTC*,
    657 F.2d 971 (8th Cir. 1981).........................................................................4

## STATUTES AND RULES

15 U.S.C. § 12(a) ..............................................................................................3

15 U.S.C. § 23 ...................................................................................................3

Fed. R. Civ. P. 43(a) .......................................................................................11

## OTHER MATERIALS

Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment.............................11

Order, *FTC v. Actavis, Inc.*,
    No. 1:09-cv-00955-TWT (N.D. Ga. Feb. 4, 2019), ECF No. 810......................4

Order, *FTC v. Amazon.com, Inc.*,
    No. 2:23-cv-01495-JHC (W.D. Wash. Feb. 13, 2024), ECF No. 161 ............4, 5

Order, *FTC v. Kroger Co.*,
    No. 3:24-cv-00347-AN (D. Or. July 12, 2024), ECF No. 195 ..........................5

Order, *FTC v. Surescripts, LLC*,
    No. 1:19-cv-01080-JDB (D.D.C. Feb. 28, 2020), ECF No. 54 ..........................4

Order, *United States v. AT&T Inc.*,
    No. 11-cv-01560-ESH (D.D.C. Sept. 23, 2011), ECF No. 33 ............................................5

Order, *United States v. Google LLC*,
    No. 1:20-cv-03010-APM (D.D.C. Feb. 3, 2021), ECF No. 108-1 .....................................5

Pretrial Conf. Tr., *United States v. Google LLC*,
    No. 1:20-cv-03010-APM (D.D.C. Sept. 1, 2023), ECF No. 696.........................2, 7, 8, 10

# INTRODUCTION

The Court has held that a "pivotal" question in this case is whether the FTC has properly defined a relevant antitrust market. *FTC v. Meta Platforms, Inc.*, 2024 WL 4772423, at *9 (D.D.C. Nov. 13, 2024). The FTC asserts a market for personal social networking services ("PSNS") that includes only Facebook, Instagram, Snapchat, and MeWe. Meta contends that the market includes many more obvious competitors, including TikTok, YouTube, iMessage, and others. Accordingly, Meta served trial subpoenas on 19 witnesses who are or were employees at services that vigorously compete with Meta. This testimony is critical to Meta's defense because it will refute the FTC's unduly narrow market definition by demonstrating user substitution and competition with many apps that the FTC failed to include in its proposed market.

In response to the trial subpoenas, Meta's competitors – TikTok, Alphabet, Apple, Snap, Discord, Nextdoor, Pinterest, Epic Games, Quora, and X Corp. (collectively "Competitors") – banded together and moved to quash. As competitors, they of course would be happy if the FTC succeeded in hurting Meta, and they know their testimony will undermine the FTC's case. Yet they have no good reason to avoid coming to Court and explaining the scope of competition in this market. In fact, they do not dispute that their witnesses will testify that these apps compete with Meta and view Meta as a competitor. Nor do they dispute that such testimony is relevant to the fundamental issue of market definition. Instead, they ask the Court to quash Meta's trial subpoenas on the grounds that this Court does not have authority to issue subpoenas nationwide and that, even if it does, that testimony would supposedly impose an undue burden.

The Competitors' claims lack merit. The Court properly exercised its authority under 15 U.S.C. § 23 to authorize nationwide subpoena service: this case arises under the Sherman Act and there is good cause for nationwide subpoenas, given that most witnesses are based on the West Coast. Absent such subpoenas, Meta would be unable to defend itself in the FTC's chosen

venue against the FTC's claims about an industry centered in California.

Nor can the Competitors meet the high standard of showing that testifying live in Court would impose an undue burden. Meta agreed to remote testimony for the three witnesses (from Apple, Discord, and Epic Games) who identified specific hardships associated with travel (such as recent motherhood). The rest of the witnesses present no compelling reasons why they cannot come to Court and testify on one of the most important issues in the case. Their primary complaint is that live, in-person testimony will distract witnesses from their work and require them to travel across the country, burdens they claim are unnecessary since the Court can review their depositions. But depositions are no substitute for live testimony where the Court can ask questions and assess credibility, and the parties can ask about current market conditions, which is a key issue. For these reasons, court after court has rejected attempts by witnesses to quash a valid subpoena based on generic excuses such as "I'm busy" or "I don't want to travel." Such excuses apply to *every* trial witness (including Meta's current and former employees).

Indeed, in the recent *Google* antitrust trial, Judge Mehta denied motions to quash trial subpoenas by nonparties (including one at issue here) based on *identical* arguments. For example, Samsung argued that requiring a former employee to testify was unduly burdensome because he would have to "fly across the country" "during a critical time for his new company" "for an hour's worth of testimony" on topics "fully covered [in] his videotape deposition." Pretrial Conf. Tr. at 31:22-33:3, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Sept. 1, 2023), ECF No. 696 ("*Google* Tr."). Finding no "compelling circumstances," Judge Mehta declined to relieve the witness of his "obligation" to testify in court. *Id.* at 33:11-14. More than a dozen nonparties testified in-person in that case – including Microsoft's CEO. Here, too, the Court should deny the Competitors' motions and compel them to testify at trial.

Finally, the Court should reject the motions of TikTok, YouTube, and Snap to quash Meta's document requests. Meta sought targeted and specific documents about the recent January 2025 TikTok outage, which are important to show that Meta's apps are used interchangeably with TikTok and YouTube (and others), thereby refuting the FTC's crabbed market definition. Meta intends to ask these witnesses about the effects of that TikTok outage, and the documents will permit impeachment if necessary.

## I.    The Court Properly Authorized The Parties To Serve Nationwide Trial Subpoenas

The Clayton Act authorizes nationwide trial subpoenas in government actions "arising under the antitrust laws" where "cause [is] shown." 15 U.S.C. § 23. Both requirements are met here. *First*, the FTC's lawsuit alleging that Meta's acquisitions "violat[e] Section 2 of the Sherman Act," Am. Compl. ¶ 235 (Sept. 8, 2021), ECF No. 82, is an action "arising under the antitrust laws." *See* 15 U.S.C. § 12(a) ("antitrust laws" includes the Sherman Act). *Second*, there is cause for nationwide subpoena service because many witnesses – including *every* nonparty that has moved to quash Meta's subpoenas and every former Meta employee testifying in this action – resides more than 100 miles from the Court. *See* Scheduling Order ¶ 22 (Mar. 3, 2022), ECF No. 103 (authorizing nationwide service given the "geographic dispersion" of witness). Accordingly, the Court properly authorized the parties to issue nationwide trial subpoenas, and Meta has shaped its discovery and trial strategy in reliance on that ruling.

The Competitors incorrectly assert (at 18) that this case does not "arise under" the antitrust laws because the FTC brought it pursuant to Section 13(b) of the FTC Act, which authorizes the FTC to seek injunctive relief in federal court "against an entity that 'is violating' or 'is about to violate' the antitrust laws." *Meta Platforms, Inc.*, 2024 WL 4772423, at *6. While it is true that the FTC brought this claim pursuant to Section 13(b), the FTC alleges that Meta engaged in "monopoly maintenance under Section 2 of the Sherman Act." *Id.* Given that

the underlying basis for the FTC's claim is an alleged violation of the Sherman Act – which is one of the "antitrust laws"– this case "aris[es] under" the antitrust laws as set forth in 15 U.S.C. § 23. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 384-86 (2016) (statutory phrase "arising under" is "coextensive" with the phrase "brought to enforce" for federal-question jurisdiction).

No court has adopted the Competitors' reading of Section 23. In fact, the only time a party has advanced this argument, the court squarely rejected it. *See* Order, *FTC v. Actavis, Inc.*, No. 1:09-cv-00955-TWT (N.D. Ga. Feb. 4, 2019), ECF No. 810 (rejecting identical argument and allowing nationwide service of process in FTC case alleging Sherman Act claims). Other courts have authorized nationwide service where, as here, the FTC brings claims under the FTC Act alleging violations of the Sherman Act. *See*, *e.g.*, Order ¶ 11, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC (W.D. Wash. Feb. 13, 2024), ECF No. 161; *see also* Order, ¶ 14(b), *FTC v. Surescripts, LLC*, No. 1:19-cv-01080-JDB (D.D.C. Feb. 28, 2020), ECF No. 54. This Court should not be the first to adopt the Competitors' incorrect reading of the statute.

The Competitors' cases (at 18) are inapposite. None of them addressed the question whether Section 23 applies to a claim the FTC brought under Section 13(b) of the FTC Act asserting a violation of the Sherman Act. *See Yamaha Motor Co. v. FTC*, 657 F.2d 971, 982-83 (8th Cir. 1981) (FTC "disclaimed" reliance on antitrust laws); *In re Coordinated Pretrial Proceedings in Petrol. Prods. Antitrust Litig.*, 782 F. Supp. 481, 486 (C.D. Cal. 1991) (addressing tolling where no claims in prior FTC action "sound[ed] in antitrust").

Contrary to the Competitors' assertion (at 19), the Court's finding of cause in its scheduling order was more than sufficient. Courts routinely authorize nationwide subpoenas under 15 U.S.C. § 23 based on a finding that important witnesses are located throughout the

country, including in cases where some of the Competitors were parties. *See*, *e.g.*, Order ¶ 29,

*United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C Feb. 3, 2021), ECF No. 108-1

(authorizing nationwide service "in view of the geographic dispersion of potential witnesses in

this action outside this District"); Order ¶ 8, *United States v. AT&T Inc.*, No. 11-cv-01560-ESH

(D.D.C. Sept. 23, 2011), ECF No. 33 (same); *United States v. First Data*, 287 F. Supp. 2d 69, 72

(D.D.C. 2003) (same); *see also* Order at 5, *FTC v. Kroger Co.*, No. 3:24-cv-00347-AN (D. Or.

July 12, 2024), ECF No. 195 (same); Order ¶ 11, *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-

JHC (W.D. Wash. Feb. 13, 2024), ECF No. 161 (same). The Competitors' RICO case (at 20)

does not help them because antitrust cases are "substantially different." *A. Kush & Assocs.*

*(Can.) Ltd. v. Weingeroff Enters., Inc.*, 1988 WL 64082, at *4 n.7 (N.D. Ill. June 8, 1988).

## II.    The Competitors Should Testify Live At Trial

Witnesses "who have been served properly under Rule 45 cannot demand that their

depositions be used in lieu of live trial testimony." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr.*

*Co. Ams.*, 262 F.R.D. 293, 301 (S.D.N.Y. 2009). Rather, in seeking to quash Meta's trial

subpoenas, the Competitors "bear[] a heavy burden of proof." *Irons v. Karceski*, 74 F.3d 1262,

1264 (D.C. Cir. 1995). The Competitors cannot rely on conclusory allegations of "general

harm"; they "must demonstrate specific facts" showing that "extraordinary circumstances"

warrant relief. *U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25, 28

(D.D.C. 2014); *see Aristocrat*, 262 F.R.D. at 299 (movant must detail the "manner and extent of

the burden"); *see*, *e.g.*, *SEC v. Mozilo*, 2010 WL 11468959, at *4 (C.D. Cal. Oct. 7, 2010)

("conclusory statement[s]" were "inadequate" to establish undue burden).

The Competitors fail to carry their heavy burden to quash Meta's trial subpoenas. Live

testimony from Meta's competitors concerning competition is essential to Meta's defenses and

for the Court to evaluate the evidence (Part II.A). The Competitors do not demonstrate any

individualized or compelling circumstances that create any undue burden (Part II.B).  The Court should therefore deny the motions.  *See*, *e.g.*, *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, 2022 WL 15092294, at *2 (M.D. Ga. Oct. 26, 2022) ("inconvenience" of cross-county travel "pale[d] in significance" to need for nonparty's live testimony).

### A.    Live Testimony From The Competitors Is Essential To Meta's Defense

Testimony from Meta's competitors is central to this case.  One of the "pivotal" questions for trial is whether the FTC's PSNS market includes all reasonable substitutes for the services in the alleged market.  *Meta Platforms, Inc.*, 2024 WL 4772423, at *9; *see Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 218 (D.C. Cir. 1986).  For this reason, competitors routinely testify in antitrust trials, even though they surely would prefer to be doing other things. *See*, *e.g.*, Trial Tr. at 3344:4-9, *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C. Sept. 28, 2023), ECF No. 951 (Microsoft VP testifying about competition with Google); Trial Tr. 131:3-9, *United States v. Google LLC*, No. 1:23-cv-00108-LMB (E.D. Va. Sept. 13, 2024), ECF No. 1355 (former Meta executive testifying about "competitive conditions"); Trial Tr. at 84:2-11, *United States v. AT&T, Inc.*, No. 1:17-cv-02511-RJL (D.D.C. Mar. 22, 2018), ECF No 162 (Cox executive identifying their "biggest competitors").

The Competitors' testimony and ordinary course business documents show that Meta faces much broader competition than the FTC's PSNS market limited to four apps.  These witnesses will testify about public statements of fierce competition with Meta, as well as internal analyses tracking that competition.  For example, Blake Chandlee, TikTok's President of Global Business Solutions, will testify about a sworn declaration filed in the D.C. Circuit in December 2024 (and later submitted to the Supreme Court) stating that if TikTok were banned in the United States, TikTok's users would "***turn[] to other competing platforms, such as Instagram, Facebook, or YouTube***."  Ex. 1 ¶ 15 (DX0107) (emphasis added).

6

The Court has already expressed its preference to hear "testimony directly from live witnesses in court."  Status Conf. Tr. at 3:19-20, 5:24-25 (Dec. 9, 2024), ECF No. 388.  Live testimony is particularly important in this case for three reasons:

*First*, live testimony furthers a trial's fundamental truth-telling function by allowing the Court to assess a witness's demeanor and "judge their credibility."  *Id.* at 3:19-21, 5:24-25; *see United States v. Int'l Bus. Machs. Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("strong preference for live testimony" so the fact finder may "observe the demeanor of the witness").  "[O]bviously [the Court] can't do that with transcripts . . . [or] taped testimony."  Status Conf. Tr. at 3:23-24 (Dec. 9, 2024), ECF No. 388.  Live credibility assessments of the Competitors' witnesses are especially important given their incentives to hurt Meta by denying or downplaying their own internal documents describing intense competition with Meta.

*Second*, live testimony will be more efficient and helpful to the Court, allowing the parties to focus examinations on the issues raised by the Court's summary judgment decision, and by allowing the Court to ask questions of witnesses.  *See id.* at 3:21-22, 5:24-25 ("I frequently may be interrupting testimony to ask questions to make sure I understand."); *see also Google* Tr. at 24:2-8 (the court cannot ask questions if "witnesses . . . simply sit on the sidelines and let [the court] look at their deposition testimony"); *Kolb v. County of Suffolk*, 109 F.R.D. 125, 127 (E.D.N.Y. 1985).  The issues in this case are complex, and it will undoubtedly help the Court to be able to ask questions of these critical witnesses.

*Third*, the FTC must prove that Meta maintains a monopoly *today*.  *See* Meta Opp'n To Mot. To Exclude Data at 4 (Mar. 20, 2025), ECF No. 450.  As a result, Meta will ask these witnesses about *current* market conditions, including – in many instances – events that have occurred since their depositions.  *See* Pretrial Conf. Tr. at 8:23-9:6 (Mar. 24, 2025), ECF No. 471

(noting Meta "will be able to" ask questions to "show that [deposition] testimony is out of date"). For example, Meta plans to ask Snap's and YouTube's witnesses about any increase in usage of their services during an outage of TikTok that occurred in January 2025.

**B.    Competitors Fail To Show That Live Testimony Is Unduly Burdensome**

Given the importance of the Competitors' testimony, they must come forward with particularized and compelling evidence that requiring them to testify live would impose an undue burden. Courts generally require declarations establishing an undue burden. Besides Kimberly Baumgarten of Epic Games (who Meta has agreed can testify remotely), *none* of the witnesses submitted declarations identifying particularized or compelling burden. A lack of declarations alone is enough to deny their motions. *See RIMSAT, Ltd. v. Hilliard*, 207 B.R. 964, 970 (D.D.C. 1997) (courts "cannot quash or modify a subpoena based on mere assertions"); *see*, *e.g.*, *Kirschner v. Klemons*, 2005 WL 1214330, at *3 (S.D.N.Y. May 19, 2005) (declining to quash trial subpoena served on witness who "provide[d] no affidavit . . . regarding the . . . burden").

Even if the Court were to consider the Competitors' unsupported assertions, none of their generic burdens establishes the extraordinary circumstances required to quash Meta's subpoenas.

*First*, the Competitors complain (at 23) that testifying live will require their "high-ranking executives" to "travel across the country" and "disrupt[]" their work. But "[i]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony," *Aristocrat*, 262 F.R.D. at 300, and "the fact that an executive has a busy schedule cannot shield that witness," *Johnson v. Jung*, 242 F.R.D. 481, 486 (N.D. Ill. 2007); *see*, *e.g.*, *Google* Tr. at 23:23-25 (denying Apple executive's motion to quash arguing that testifying required traveling "across the country" and "distracts from the[ir] business"); *United States v. Anthem, Inc.*, 2016 WL 11164033, at *2 n.2 (D.D.C. Dec. 7, 2016) (requiring nonparty to testify despite "inconvenient" travel); *Action Nissan, Inc. v. Hyundai Motor Am.*, 2021 WL 8946139, at

*2 (M.D. Fla. July 7, 2021) (similar); *Aristocrat*, 262 F.R.D. at 300 (similar).

Meta has minimized any burden by offering to accommodate witnesses' schedules when possible, calling them only once (not in each side's case), and streamlining its examinations – many in under an hour. Although the Competitors complain (*e.g.*, at 7, 8, 9) that exams will be short, that makes the exams even less burdensome. In fact, the Competitors grossly exaggerate the time required to testify. At most it will be three days: one to fly east, one to testify, and one to fly home. That is a minor burden given the importance of this evidence.

The Competitors' cases (at 22) – which Apple also cited in its failed motion to quash in *Google* – do not support them. *American Federation of State, County & Municipal Employees, AFL-CIO v. Project Veritas Fund*, 2022 WL 3655277 (D.D.C. Aug. 25, 2022), *denied* a motion to quash a trial subpoena for a witness who had "direct knowledge of a major issue at trial," as is the case here. *Id.* at *5-6. *Reddick v. Dillard Store Services, Inc.*, 2010 WL 3025205 (S.D. Ill. Aug. 2, 2010), quashed an untimely subpoena served "just days" before trial. *Id.* at *1. *Cellustar Corp. v. Sprint Solutions, Inc.*, 2024 WL 418140 (D.P.R. Feb. 5, 2024), concerned the "apex deposition doctrine," which has no relevance here. *Id.* at *1.

*Second*, the Competitors fret (at 24) that testifying live may result in the inadvertent disclosure of their "highly competitively sensitive information to their competitors." Those fears are unfounded: the Court's trial procedures are more than adequate to safeguard confidential information. *Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006), on which the Competitors rely (at 24), *enforced* a subpoena seeking competitively sensitive documents because the information was "essential to a judicial determination." *Id.* at 685. Ironically, this argument proves why the Competitors' testimony is necessary here: They are worried about their competitive information *precisely because they are vigorous competitors of Meta and each*

*other*, showing that the FTC's market is wrong.

*Third*, the Competitors contend (at 25-27) that the testimony might be "duplicative" of their depositions. The existence of depositions cannot be a basis to avoid live trial testimony – otherwise, no witness would ever have to attend trial. *See Anthem*, Inc., 2016 WL 11164033, at *2 n.2 (compelling nonparty who was "recently deposed" to testify); *see also Loop LLC v. CDK Glob., LLC*, 2025 WL 71870, at *18 (W.D. Wis. Jan. 10, 2025) (denying motion to quash trial subpoena served on nonparty's executive who was deposed because "most trial witnesses are deposed before trial"); *Google* Tr. at 31:17-32:17 (same); *Aristocrat*, 262 F.R.D. at 299 (same).

Nor are depositions taken during discovery a substitute for live trial testimony, especially in a bench trial where the Court may ask questions and judge credibility, and when market conditions have continued to rapidly evolve in this dynamic industry. The Competitors cite (at 25) inapt cases where courts quashed subpoenas because their "subpoena power fail[ed] to extend to [the] witnesses." *Perera v. U.S. Fid. & Guar. Co.*, 2007 WL 4247699, at *1 (M.D. Fla. Dec. 3, 2007). That is not the case here. *See supra* pp. 3-5.

*Finally*, Competitors object (at 24-25) that Meta has subpoenaed multiple witnesses from some nonparties, including former employees. But as explained below, each witness has unique testimony and documents, and Meta is entitled to present that evidence at trial. *See Google* Tr. at 32:20-33:14 (quashing nonparty subpoenas would be improper, as it would "essentially dictate" how parties "present their case"); *Lillie v. ManTech Int'l Corp.*, 2019 WL 653085, at *2 (C.D. Cal. Feb. 15, 2019) (refusing to quash trial subpoenas served on five nonparty employees). Each of the witnesses possesses information highly relevant to current market conditions. Nine of the witnesses are current employees of the Competitors; of the former employees, none left prior to 2022, and many left only recently and still work in the industry (*e.g.*, Jacob Andreou from Snap

10

is at VC firm Greylock Partners, which invests in competitor apps like Discord and Nextdoor).

### C.    The Competitors Should Testify At Trial, Not Remotely

Witnesses must testify in "open court" absent "good cause in compelling circumstances."

Fed. R. Civ. P. 43(a).  Compelling circumstances are effectively limited to "unexpected" events,

such as an "accident or illness."  Fed. R. Civ. P. 43 advisory committee's note to 1996

amendment; *see Donahue v. U.S. Dep't of Homeland Sec.*, 2021 WL 5764710, at *1 (D.D.C.

Sept. 30, 2021) (denying nonparty witnesses' request for remote testimony who did not claim

accident or illness), *aff'd*, 2023 WL 7919630 (D.C. Cir. Nov. 16, 2023).  A witness cannot avoid

testifying in person "merely by showing that it is inconvenient . . . to attend the trial."  Fed. R.

Civ. P. 43 advisory committee's note to 1996 amendment; *see*, *e.g.*, *Kluth v. Spurlock*, 2024 WL

3329046, at *1 (D. Colo. July 8, 2024) (witness's conflicting travel plans was not good cause);

*Novello v. Progressive Express Ins. Co.*, 2021 WL 1751351, at *2 (M.D. Fla. May 4, 2021)

(living "far away from . . .  trial" was not good cause).  Therefore, nonparties in antitrust cases

*routinely* testify in person, including busy executives from competitors.  *See supra* p. 6.

The Competitors' cases (at 28) are not on point.  *Beltran-Tirado v. I.N.S.*, 213 F.3d 1179,

1186 (9th Cir. 2000), rejected a due process challenge to the use of remote testimony during a

deportation hearing.  *FTC v. Swedish Match North America, Inc.*, 197 F.R.D. 1 (D.D.C. 2000),

allowed one witness to testify remotely based on that court's view – against the weight of

authority – that Rule 43's preference for live testimony is "irrational[]."  *Id.* at *2.

### D.    The Competitors Do Not Offer Any Specific Circumstances To Justify Quashing the Subpoenas Or Allowing Remote Testimony

#### 1.    <u>TikTok</u>

**V. Pappas (Meta Will Call, FTC Will Call Deposition)** is TikTok's former Chief

Operating Officer and interim Global Head, who worked at TikTok from 2018 to July 2023.

Mx. Pappas will offer unique testimony about the robust competition between Meta and TikTok dating back to 2018. Mx. Pappas will explain that ██████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 2 at -658 (DX0933). Mx. Pappas will explain how ████████████

████████████████████████████████████ Ex. 3 at 53:4-12. Mx. Pappas will testify about a declaration they submitted to a court in this District stating that TikTok's innovation quickly enabled it to "directly compete with major social media platforms like Instagram." Ex. 4 ¶ 17 (DX0060). Finally, Mx. Pappas will offer ████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Ex. 5 at -128-29, -137 (DX0920).

The Competitors identify no unique burden to Mx. Pappas's live attendance. Instead, they merely assert (at 15) that Mx. Pappas should not have to travel from California as they are "unlikely to offer new information beyond their deposition testimony." That is not a sufficient basis to quash a subpoena. *See supra* p. 10. It is also incorrect because, as the Competitors concede (at 16), Meta intends to "elicit new information" that was not discussed at Mx. Pappas's deposition. For example, Mx. Pappas was not asked about the 2021 outage analysis referenced above during their deposition, but Meta intends to ask about that analysis at trial.

**Blake Chandlee (Meta Will Call, FTC Will Call Deposition)** is TikTok's President of Global Business Solutions, who is moving to an advisory position, and who has worked at TikTok since 2019. Mr. Chandlee will testify about TikTok's competition with Facebook and

Instagram for user engagement and advertiser budgets.  He will discuss ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 6 at -751-

53, -780 (DX0934).  He will testify about the declaration he submitted to the D.C. Circuit in

December 2024 (after his deposition), stating that, if TikTok were banned, users would "turn[] to

other competing platforms, such as Instagram, Facebook, or YouTube."  Ex. 1 ¶ 15 (DX0107).

This is critical evidence that TikTok sees Instagram, Facebook, and YouTube as its major rivals,

and Meta should not be prevented from asking Mr. Chandlee about it.  Indeed, the Competitors

concede (at 26) that his testimony will cover additional, recent information that could not have

been covered in his deposition.

The Competitors offer no evidence of any burden on Mr. Chandlee.  They simply assert

(at 15) that he lives in Texas.  That is not enough to quash a subpoena.  *See supra* pp. 8-9.

**Adam Presser (Meta May Call, FTC Will Call)** is TikTok's Head of Operations and

Trust & Safety, who has worked for TikTok since April 2022, and who the FTC will call at trial.

To the extent the FTC calls him (through deposition or otherwise), Meta must be permitted to

call him to testify in person, and to cross-examine him on his documents.  For example, Meta

must be permitted to question Mr. Presser about ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 7

at -252-53 (DX0932).  Meta will also examine him about competitive developments since his

deposition two years ago, including the basis for his statements in a 2024 declaration identifying

"TikTok's competitors in the United States" as including "YouTube, Instagram, and Snapchat." Ex. 8 at -039 (PX0689).

The Competitors identify no specific burden on Mr. Presser. Their assertion (at 22) that he is a busy C-Suite executive is insufficient to quash the subpoena. *See supra* pp. 8-9.

**Eric Morrison (Meta May Call, FTC May Call Deposition)** is TikTok's former Head of User Research. If the FTC advances the argument that watching Reels on Meta's apps is a "fundamentally different experience from watching that same clip on YouTube or TikTok" because Reels are "integrated" in Facebook and Instagram, *see Meta*, 2024 WL 4772423, at \*16, then Meta should be allowed to call Mr. Morrison to rebut that theory. Mr. Morrison can testify about ███████████████████████████████████████████████████████████ ████████████████████████████████████. Ex. 9 at 109:2-110:12. His analysis showed that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ *See* Ex. 10 at -830 (DX0917).

The Competitors identify no specific burden to Mr. Morrison from testifying. He lives in New York, works in the industry for Google, and could make a round-trip to testify in one day.

### 2.    Google / YouTube

**Aaron Filner (YouTube, Meta Will Call, FTC Will Call)** is Senior Director of Product Management, who has been at YouTube for over a decade. He will explain that YouTube ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ Ex. 11 at -312 (DX0766). Mr. Filner will also be able to explain the changes he has helped introduce to YouTube since his deposition two years ago to "help[] people connect" on the platform. Ex. 12 (LinkedIn, Aaron Filner).

The Competitors state (at 10) that the FTC has agreed that Mr. Filner could testify remotely.  But the FTC's desire to minimize the impact of key competitor testimony through remote examination is no basis to quash the subpoena.  Meta wants to examine this important witness in person.  The only burden the Competitors identify is that Mr. Filner lives in California.  That is not enough to quash the subpoena or allow remote testimony.  *See supra* pp. 8-9.  The Competitors also argue that Mr. Filner's testimony would be duplicative of Mr. Kim's testimony.  That is incorrect because, as is explained further below, Mr. Kim's work is focused on creators.

**Thomas Kim (YouTube, Meta Will Call, FTC May Call Deposition)** is Director of Product Management, Creator Monetization & Support, who has worked at YouTube since 2018.  Mr. Kim has been ███████████████████████████████████████████████████ ███████████████████████████████████████████ Ex. 13 at 19:3-19.  Given his focus on creators, he will offer a unique perspective about the connection between competition for creators and users.  Mr. Kim will explain ███████████████████████ ███████████████████████████████████████████████████████ ████████████████ *Id.* at 74:12-76:16.  He will testify about ████████████████ ███████████████████████████ Ex. 14 (DX0779).  He will discuss ██████████████████████████████████████████████████████ ██████████ *See*, *e.g.*, Ex. 15 (DX0780); Ex. 13 at 74:12-76:16.  He will also testify about substitution from TikTok to YouTube during the January 2025 TikTok outage.

The Competitors do not offer any unique burden argument relating to Mr. Kim.

**Alastair Slattery (Google Messages, Meta May Call)** is a Director of Partnerships, and Communications at Google, where he is involved in business strategy for Android/Google

Messages.  He has worked at Google since 2011.  Meta may call him to offer testimony relating

to the industry-wide competitive dynamics ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ Ex. 16 at 57:7-58:5.  Mr. Slattery will

also testify about ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████ Ex. 17 at -.005-.006 (DX1068).  And he will testify about █████████████████

███████████████████████████████████████████████████████ Ex.

18 at -991, -994 (DX0765).  Mr. Slattery will also explain that Google ████████████████

███████████████████████████████ Ex. 19 at -562 (DX0764).

       The Competitors offer no evidence of any burden on Mr. Slattery.  They simply assert (at

9) that he lives in California.  That is not enough.  *See supra* pp. 8-9.

       **Samuel Greenfield (Google Cloud, Meta May Call)** is a software engineer working on

infrastructure and cloud computing.  If Meta calls him to testify, he will explain, among other

things, ██████████████████████████████████████████████████ Ex. 20 at

225:6-226:6.  That testimony will corroborate the procompetitive benefits of Meta's acquisitions.

       The Competitors offer no evidence of any burden on Mr. Greenfield.  He lives in New

York and could make a round-trip to testify in one day.

       **Bradley Horowitz (Google+, FTC Will Call)**.  The Competitors state that the FTC

intends to call Mr. Horowitz to testify remotely.  If the FTC calls him, the testimony should

occur in person, so Meta can effectively cross-examine him.  The Competitors' assertion (at 9)

that "he is fully engaged with a new company that faces critical governance decisions during

trial" – *i.e.*, he is busy – does not come close to establishing compelling circumstances to justify

remote testimony, as courts routinely hold. *See supra* pp. 8-9.

      **3.**      <u>**Snap**</u>

Snapchat, along with MeWe, is one of the two non-Meta services that the FTC alleges is a participant in the PSNS market. Snap lobbied the FTC to bring this action against its rival. But, Snap's internal analyses show that it faces vigorous competition from services outside of the alleged PSNS market, like TikTok, YouTube, and iMessage. These documents are fatal to the FTC's market definition. Snap does not offer *any* arguments that it would be unduly burdensome for its witnesses to testify in person, instead focusing solely on the narrow subpoena for documents issued to David Levenson and Saral Jain, which is addressed in Section III. Therefore, its motion to prevent their in-person testimony should be denied.

**Jacob Andreou (Meta Will Call, FTC Will Call Deposition)** worked at Snap from 2015 to 2023 and was Senior Vice President of Product and Growth when he left Snap. He now works as a venture partner at Greylock, which invests in competitor apps, including Discord and Nextdoor. The FTC has designated 1.4 hours of Mr. Andreou's deposition testimony to be played at trial. *Cf.* Pretrial Conf. Tr. at 8:25-9:1 (Mar. 24, 2025), ECF No. 471 (permitting witnesses to "testify by deposition via the plaintiff and live by the defense"). Meta should be able to call Mr. Andreou to testify live about documents that directly refute the FTC's market definition. For example, Meta will question Mr. Andreou about ███████████████ ████████████████████████████████████████████████████ Ex. 21 at -223 (DX0887); *see* Ex. 22 at -917 (DX0885) (similar); ██████████████████ ██████████████████████████████████████████████ *see* Ex. 21 at -223 (DX0887); ████████████████████ ████████████████████████████ Ex. 23 at -.002 (DX0884). Mr. Andreou will testify that ██████████████████████████████████████████████████

████████████████████████████ Ex. 24 at 80:22-81:18.  Mr. Andreou's testimony is

fatal to the FTC's case, and Meta should not be deprived of its right to elicit it in Court.  As

noted above, Snap provides no specific grounds for live testimony being an undue burden on Mr.

Andreou; so he should testify in person.

**David Levenson (Meta Will Call)** is Snap's Senior Director of Growth.  He will offer

testimony ████████████████████████████████████████████

████████████████████████ Ex. 25 at 28:11-29:5.  He will testify that ███

█████████████████████████████████ *See*, *e.g.*, *id.* at 38:15-18.  He will

testify about █████████████████████████████████████████

███████████ *See*, *e.g.*, Ex. 21 at -306 (DX0877) (stating, ████████████████

███████████████████████ ).  He will ████████████████████████

█████████████████ Ex. 25 at 44:8-14.  He will also testify about the most up-

to-date information relating to competition since his deposition and since Mr. Andreou left the

company, including the engagement lift that Snapchat announced on an earnings call in

connection with the outage to TikTok in January 2025.  *See infra* p. 24.  Snap offers no specific

reason he cannot come to trial live, so he should testify in person.

**Saral Jain (FTC Will Call)**, is the Chief Information Officer at Snap.  The FTC

indicates that it will call Mr. Jain.  To the extent he is called to testify, he should be required to

bring the narrow set of documents with him that are addressed in Section III.  As with the other

Snap witnesses, Snap offers no specific reason he cannot come to trial live.

**4.    Apple**

**Ronak Shah (Meta Will Call, FTC Will Call)** is Apple's Director of Product Marketing

for Internet Technologies and User Privacy who is currently responsible for the Messages and

FaceTime apps.  He has worked at Apple for 20 years.  Mr. Shah will explain ██████



*See*, *e.g.*, Ex. 26 at -817 (DX0215).  And Mr. Shah will testify about █████

████████████████████████████████████████████████████████████ Ex. 27 at -035-36 (DX0228).

The Competitors offer no unique burden argument, simply insisting (at 7) that "spring is an extraordinarily busy time of the year for Mr. Shah."  That is not a sufficient basis to quash a subpoena, *supra* pp. 8-9.  In any case, Meta has already agreed to allow Mr. Shah to testify remotely given ██████████████████████ Appearing to testify for an hour or two over Zoom is not unduly burdensome, even for someone who is "extraordinarily busy."

**5.    X Corp. (formerly Twitter)**

**Jonathan Chen (Meta Will Call)** worked at X from 2013 through 2022, eventually serving as the Vice President and Head of X's Corporate Development group.  In that role, Mr. Chen ████████████████████████████████████ Ex. 28 at 18:6-19:1.  Mr. Chen will explain that ████████████████████████

████████████████████████████████████████████████████████ *Id.* at 19:15-20:17, 23:10-24:5, 26:15-20.  He will testify that ██████████████████████

██████████ *Id.* at 20:22-21:19, 24:15-25:3.  He will also testify that ██████████████████

█████████████████████████████████████ *Id.* at 108:2-14.  Mr. Chen will testify that

██████████████████████████████████████████████ *id.* at 142:14-143:6, and that ██████████████████████████████████████████

██████████████ *see id.* at 130:22-131:10, 141:19-142:6.

The Competitors argue (at 16) only that Mr. Chen lives on the West Coast and "sat for hours of deposition testimony."  Neither reason is a basis to quash the subpoena or allow remote testimony.  *See supra* pp. 8-9.

**Timothy Perzyk (Meta May Call)** worked at X from 2011 until 2024 as the Global Vice President of Marketing & Research and Chief Marketing Officer.  Meta may call Mr. Perzyk to testify at trial.  If called, Mr. Perzyk will ███████████████████████████

███████████████████████████████ Ex. 29 at 22:1-16, 37:10-38:6, 39:7-21.  He will testify that █

███████████████████████████████████ *Id.* at 148:4-11, 151:2-153:8.  Mr. Perzyk will also testify that ███████████████

███████████████ *id.* at 138:7-12, and that, ███████████████

███████████████ *id.* at 139:10-18.

The Competitors identify no specific burden to Mr. Perzyk to testify in person should Meta elect to call him, as they merely repeat the generalized complaints concerning Mr. Chen.

**Keith Coleman (FTC Will Call)**.  If the FTC calls Mr. Coleman, the testimony should occur in person, so Meta can effectively cross-examine him.  The Competitors offer no sufficient reason for remote testimony, asserting (at 17) that he lives in the "western United States."

6.    **Pinterest**

**Scott Coleman (Meta Will Call)** is the former Head of Growth and International Product at Pinterest.  He worked at Pinterest for seven years and left around March 2022.  While at Pinterest, Mr. Coleman ████████████████████████████ *see* Ex. 30 at 21:2-6, 25:17-27:14, 28:15-29:18, and will testify that ███████████████

███████████████████████████████ *id.* at 41:11-42:19; *see also* Ex. 31 at -288 (DX0843).  He will discuss ███████████████

20



███████████████ *See* Ex. 30 at 49:7-50:19.  He will also explain ████████████

████████████████████████████████████████████████████████████████

████████ *See id.* at 112:21-113:12; *see also* Ex. 32 (DX0846).  And he will offer ██████

███████████████████████████████ *See* Ex. 30 at 94:22-95:4.

The Competitors identify no specific burden to Mr. Coleman from testifying, merely asserting (at 12) that he lives in California and that the testimony will likely overlap with his deposition testimony given that he is a former employee.  That is not a sufficient basis to evade in-person testimony on these pivotal issues.  *See supra* pp. 8-9.

**Julia Roberts (Meta May Call, FTC Will Call)** is a Director of Product Management. The FTC has indicated that it intends to call her to testify.  To the extent the FTC calls her to testify (live or otherwise), or Meta decides to call her, Meta should be permitted to examine her in person, including in regard to ████████████████████████████████ *See* Ex. 33 at 78:1-87:18; *see also* Meta Platforms, Inc. Rule 7(h) Stmt. ¶¶ 347-348, 355 (Apr. 5, 2024), ECF No. 325-02 (discussing Ms. Roberts's testimony about competition with Meta).

The Competitors identify no specific burden to Ms. Roberts, merely asserting (at 12) that she lives in California.  That is not enough to quash a subpoena.  *See supra* pp. 8-9.

7.  **Nextdoor**

**Flora Hsu (Meta Will Call)** worked in product growth and development for nearly seven years at Nextdoor, a service that "most directly compete[s]" with Meta "to attract, engage, and retain users."  Ex. 34 at 9 (DX0137).  In addition to discussing ████████████████████ ████████████████████ Ms. Hsu will testify that ████████████████████ ███████████████ Ex. 35 at 157:19-158:4.  She will testify that ████████████████ ████████████████████████ Ex. 36 at -.005 (DX0823), and that

[redacted] *see* Ex. 35 at 100:16-107:14. She will explain how [redacted] *Id.* at 110:7-11. And she will testify that [redacted] *Id.* at 111:15-18.

The Competitors identify no specific burden to Ms. Hsu from testifying, merely asserting (at 10-11) that she lives in California and that the testimony will likely overlap with her deposition testimony. However, that is not a sufficient basis to avoid offering in-person testimony that contradicts the FTC's market definition. *See supra* pp. 8-10. Nor does Ms. Hsu need to come to D.C. for an "entire week," as the Competitors speculate (at 11). Once the date for her testimony gets closer, the parties can confirm a specific day for her to come, and she can likely complete her trip in two or three days.

**8. <u>Quora</u>**

**Court Showerman (Meta Will Call)** is Quora's current Chief Financial Officer, who will testify about [redacted] Ex. 37 at 28:10-13, [redacted] *E.g.*, *id.* at 67:1-7 ([redacted]).

The Competitors identify no specific burden to Mr. Showerman from testifying live. That he lives in California and that the testimony may overlap with his deposition is not enough. *See supra* pp. 8-10. Like Ms. Hsu, he need not come for a "full week" as the Motion insists.

**9. <u>Discord</u>**

**Julia Tang (Meta Will Call, FTC Will Call)** was Vice President of Discord from August 2019 to September 2022, and is now an angel investor and co-founder of a company

advising early-stage tech companies.  She will testify that, ███████████████



███████████████████ *E.g.*, Ex. 38 (DX0234).  She will testify that

███████████████████ *See* Ex. 39 at 22:3-22:6, 162:19-163:4, 170:16-171:13, 254:6-255:16.

Meta previously agreed that Ms. Tang could testify remotely given that she is a new mother.  While Meta is sensitive to Ms. Tang's circumstances, she is an important witness, and it is not unduly burdensome for her to devote an hour or two to testifying remotely before June.

### 10.   Epic Games

**Kimberly Baumgarten (Meta Will Call)** was Houseparty's Head of Marketing and can explain how Houseparty ███████████████



███████████████ Ex. 40 at 37:1-39:14, 72:8-10.  She will testify that ███████████████ *Id.* at 48:11-51:4; Ex. 41 at -010 (DX0250).  She will also explain ███████████████

Meta previously agreed that it would not object to Ms. Baumgarten testifying remotely given her specifically articulated and significant family responsibilities.  While Meta is sensitive to Ms. Baumgarten's circumstances, she is an important witness, and it is not unduly burdensome for her to devote an hour or two to testifying remotely before June.

## III.   Meta's Targeted Trial Subpoenas For Documents Are Enforceable

Meta served trial subpoenas on six senior executives from TikTok, Snapchat, and YouTube (which failed to timely object), seeking documents concerning the impact of the

January 2025 TikTok outage on user engagement. Specifically, on January 18, 2025, TikTok temporarily went offline for roughly 12 hours due to the "ban" imposed in the United States. Meta expects that documents from TikTok, Snap, and YouTube will show that, during this period, TikTok users turned to Facebook, Instagram, and other apps, thereby providing real-world evidence of user substitution that contradicts the FTC's narrow PSNS market definition.

Courts routinely enforce trial subpoenas that request documents "necessary to impeach a witness or prepare for cross-examination." *Alvarado v. Rainbow Inn, Inc.*, 2016 WL 10703674, at *1 (D.D.C. Feb. 5, 2016) (enforcing trial subpoena for documents). Meta's document requests fit that bill. Meta intends to ask witnesses from TikTok, YouTube, and Snap about the TikTok outage and its effects on usage. The documents that Meta has requested about the outage are necessary to examine these witnesses and will permit impeachment, if necessary.

Nor are Meta's requests burdensome. ████████████████████████████ ██████████████████████████████████████ And Snap and TikTok have made public statements relating to analyses they conducted on this important issue. *See* Snap Inc. Q4 2024 Earnings Call Q&A Transcript at 3 (Feb. 4, 2025), bit.ly/4iRTrMm (Snap CEO describing how Snapchat saw an "engagement lift" during the TikTok outage); Ex. 1 ¶ 13 (DX0107) (Mr. Chandlee describing TikTok "modeling" showing user substitution if TikTok were banned). It should not be hard to identify and bring this narrow set of documents to Court.

Snap's arguments for quashing Meta's document requests lack merit. Snap's contention (at 2) that Meta's requests are untimely and seek inadmissible information is wrong twice over. Meta is not reopening discovery; it seeks impeachment material for use at trial, as permitted by the law. Nor is there any basis for the Court to ignore this evidence of current market conditions. As Meta explained in its recent opposition brief concerning Meta's TikTok-outage data (ECF

No. 449), *FTC v. Qualcomm Inc.*, 2018 WL 6597273 (N.D. Cal. Dec. 13, 2018) (on which Snap relies), was *reversed* for errors in how the district court evaluated evidence relating to the alleged relevant market. *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 992-93 (9th Cir. 2020).

Snap also contends (at 3) that its witnesses cannot access documents analyzing the TikTok outage because doing so would violate Snap's corporate policies requiring a business purpose to access confidential information. But Meta seeks a narrow set of documents that Snap's senior executives authored or received in the ordinary course of business, and Snap's corporate policies must yield to a duly issued subpoena. *See United States v. Int'l Bus. Machs. Corp.*, 71 F.R.D. 88, 91 (S.D.N.Y. 1976) (requiring officer to comply with trial subpoena for documents despite board resolution prohibiting their disclosure). Meta's requests are nothing like those in Snap's cases (at 3), which required the recipients to "engag[e] in . . . theft." *Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329, 332 (D.D.C. 2011).

Finally, Snap mistakenly argues (at 4-5) that Meta lacks a substantial need for the information sought and that the requests are unduly burdensome. Meta's substantial need for Snap's data and analyses showing that users switched to Snapchat while TikTok was unavailable is self-evident, as it is probative of substitution between apps in and outside of the alleged market. It is not unduly burdensome for Snap to produce documents analyzing the TikTok outage stored in Mr. Levenson's and Mr. Jain's files – especially considering their importance.

## CONCLUSION

The Court should deny the Competitors' motions and require them to testify in person at trial.

Dated:  March 31, 2025

Respectfully submitted,

/s/ *Mark C. Hansen*

Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Kevin B. Huff (D.C. Bar No. 462043)
Leslie V. Pope (D.C. Bar No. 1014920)
Kevin D. Horvitz (D.C. Bar No. 1521032)
Alex P. Treiger (D.C. Bar No. 1670925)
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

Michael S. Scheinkman (D.D.C. Bar No. NY0381)
DAVIS POLK & WARDWELL LLP
450 Lexington Ave.
New York, New York 10017
Tel: (212) 450-4000
michael.scheinkman@davispolk.com

*Counsel for Defendant Meta Platforms, Inc., in opposition to X Corp. only*