## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

           v.                               Civil Action No. 20-3590 (JEB)

META PLATFORMS, INC.,

      Defendant.

## MEMORANDUM OPINION

In preparation for the high-stakes, national antitrust trial in this case set to begin in a matter of weeks, Plaintiff the Federal Trade Commission and Defendant Meta Platforms, Inc., have served multiple subpoenas on nonparties compelling them to testify (and some to produce documents) if called as witnesses. The nonparty witnesses are all individuals who have worked or currently work for various technology companies that comprise the commercial ecosystem for this dispute, and they now move to quash those subpoenas, asserting that the demands made on them contravene the geographic limitations of Federal Rule of Civil Procedure 45 and otherwise impose an undue burden. See ECF Nos. 486 (Joint Mot.), 487 (Baumarten Mot.). Several have also moved to quash the document requests made in connection with Meta's trial subpoenas. See Joint Mot. at 9, 15–16; ECF No. 488 (Snap Mot.). Unmoved by the nonparties' arguments, the Court will deny the Motions, provided that witnesses Ronak Shah, Julia Tang, and Kimberly Baumgarten may testify remotely.

1

I.    **Background**

In its last ruling in this long-running antitrust dispute, the Court largely denied both parties' Cross-Motions for Summary Judgment, holding that the case "must go to trial."  FTC v. Meta Platforms, Inc., 2024 WL 4772423, at *1 (D.D.C. Nov. 13, 2024).  That day now approaches.  At the "main event," id. at *20, the FTC is expected to press its case that Meta "violated Section 2 of the Sherman Act through its acquisitions of Instagram and WhatsApp." Id. at *1.  A "pivotal" question, over which the parties have spilled much ink, will be whether Plaintiff can show that Meta enjoys monopoly power — i.e., a predominant market share in a relevant product market, protected by barriers to entry.  Id. at *8–9.  If so, the FTC will also have to show that Meta's acquisitions of Instagram and WhatsApp were anticompetitive.  Id. at *23– 24.  In response, Meta may contest these assertions and offer procompetitive justifications for its behavior.  Id. at *23, *34.

Relevant to all of these questions — but particularly to those touching on the relevant product market — is the testimony of individuals who have worked for technology companies that Meta asserts are its competitors.  Between them, the parties have thus issued trial subpoenas to multiple such individuals, including witnesses who work at Alphabet Inc., Apple Inc., Discord Inc., Nextdoor Holdings, Inc., Pinterest, Inc., Snapchat Inc., TikTok Inc., and X Corp., among others.  See Joint Mot. at 1 & n.1; Epic Mot. at 1; Snap Mot. at 1.  In response, the nonparty witnesses have filed an omnibus Joint Motion to Quash the trial Subpoenas, see Joint Mot., as well as two more targeted Motions to Quash, see Baumgarten Mot.; Snap Mot., which the parties have opposed.  See ECF Nos. 497 (FTC Opp.), 499 (Meta Opp.).  Those Motions are all now ripe.

## II.    Legal Standard

Movants invoke Federal Rule of Civil Procedure 45 to quash the subpoenas.  That Rule "applies to both document and testimonial subpoenas, including subpoenas to third-party witnesses called to testify at trial."  Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund, 2022 WL 3655277, at *3 (D.D.C. Aug. 25, 2022) (quotation marks omitted).  It requires a district court to quash a subpoena that, *inter alia*, "requires a person to comply beyond the geographical limits specified in [subsection] (c)" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv).  Under subsection (c), a court may "command a person to attend a trial . . . only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."

The undue-burden analysis "mirrors the standard" for discovery under Rule 26.  Stati v. Republic of Kazakhstan, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020).  It "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it."  9A Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 2463.1 (3d ed. 2024 Update).  To strike this balance, courts must consider several "potentially relevant" factors, including whether the testimony sought is "unreasonably cumulative or duplicative" or "proportional to the needs of the case," and whether it "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  AFL-CIO, 2022 WL 3655277, at *3 (quotation marks omitted).  "A party resisting a subpoena on undue burden grounds cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena."  Stati, 2020 WL 3259244, at *4 (quotation marks omitted).

3

III.    **Analysis**

The Court starts by assessing the nonparties' argument that the subpoenas impermissibly exceed geographic limitations on their enforcement before considering whether they impose an undue burden.

A.    <u>Geographic Limitation</u>

Movants' first line of attack is to invoke Rule 45(c)'s 100-mile limitation on compliance with trial subpoenas.  <u>See</u> Joint Mot. at 17.  If that subsection governed here, then the Court would indeed be powerless to compel the nonparty witnesses to testify at trial.  <u>See</u> <u>In re Kirkland</u>, 75 F.4th 1030, 1043–45 (9th Cir. 2023) (holding that Rule 45(c)'s geographical restrictions also apply to remote video testimony).  The FTC and Meta, however, argue that they may compel the distant nonparty witnesses to testify under a provision of the Clayton Act that authorizes nationwide service of trial subpoenas "on behalf of the United States" when a suit is brought "under the antitrust laws" and "cause [is] shown."  15 U.S.C § 23; <u>see</u> FTC Opp. at 3–7; Meta Opp. at 3–5.  They are correct.

To begin, the dispute "aris[es] under the antitrust laws" as that term is used in § 23 because the Complaint alleges that Meta violated Section 2 of the Sherman Act — a key pillar of those laws.  <u>See</u> ECF No. 76 (Sealed Am. Compl.), ¶¶ 230–41; <u>see also</u> <u>Nashville Milk Co. v. Carnation Co.</u>, 355 U.S. 373 (1958) (defining "antitrust laws" under Clayton Act to include Sherman Act).  Movants resist this conclusion by pointing to the fact that Plaintiff has sought relief under Section 13(b) of the FTC Act — a statute that does not, on its own, count as part of the "antitrust laws" mentioned by § 23.  <u>See</u> Joint Mot. at 13; <u>see also</u> <u>Nashville Milk</u>, 355 U.S. at 375–77 (not listing FTC Act); <u>In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.</u>, 782 F. Supp. 481, 484 (C.D. Cal. 1991) ("[U]nder the plain wording of the Clayton Act,

an action brought under the FTC Act is not an action to enforce the antitrust laws.").  Section

13(b), however, merely authorizes the FTC to seek injunctive relief whenever the agency "has

reason to believe" that, among other things, a corporation "is violating" "any provision of law

enforced by the" FTC.  See 15 U.S.C. § 53(b)(1).  While the "provision of law" the agency seeks

to enforce here is, as a formal matter, Section 5(a) of the FTC Act — which bans "[u]nfair

methods of competition," see 15 U.S.C. 45(a) — that violation is itself premised on an allegation

of monopolization under Section 2 of the Sherman Act.  See Sealed Am. Compl., ¶ 234.  In other

words, Section 5 of the FTC Act and Section 2 of the Sherman Act are, in this suit, coextensive.

In such circumstances, "conduct prohibited by the antitrust laws [is] included within the reach"

of Section 5.  In re Coordinate Pretrial Proc., 782 F. Supp. at 484; see FTC v. Cement Inst., 333

U.S. 683, 691–93 (1948) (Section 5 "includ[es] those restraints of trade which also were

outlawed by the Sherman Act.").  Indeed, it is black-letter law that a case may "arise under"

federal law for the purposes of federal-question jurisdiction even where it invokes only state-law

claims.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).

A case may likewise "arise under" the Sherman Act even though the formal cause of action is

found within the FTC Act.  See FTC Opp. at 5–6.

     Movants nonetheless insist that § 23 does not apply because it additionally requires

"proper application and cause shown" to authorize nationwide service of trial subpoenas.

According to them, nothing of the sort occurred here: good cause was simply "assume[d]" in the

Court's March 2022 Scheduling Order.  See Joint Mot. at 19–20 (emphasis in original); ECF No.

103 (Scheduling Order), ¶ 22 ("Good cause having been shown in view of the geographic

dispersion of potential witnesses in this action, the Parties will be allowed nationwide service of

process of discovery and trial subpoenas pursuant to Federal Rule of Civil Procedure 45 and 15

U.S.C. § 23 to issue from this Court.").  The Court, however, is aware of no authority holding that the adoption of parties' joint submission in a scheduling order is insufficient to meet § 23's good-cause requirement.  On the contrary, the Court's procedure is in line with what other courts in this district have done.  See, e.g., United States v. Google LLC, No. 20-3010, ECF No. 108-1 (Order), ¶ 29 (D.D.C Feb. 3, 2021); United States v. Anthem, Inc., 2016 WL 11164033, at *2 (D.D.C. Dec. 7, 2016) (referencing order); United States v. First Data & Concord EFS, Inc., 287 F. Supp. 2d 69, 72 (D.D.C. 2003) (order).  The Court is thus satisfied that "cause" has been "shown" for nationwide service of the subpoenas.

Because § 23 applies here, it displaces Rule 45(c)'s limitations.  Both Movants and the parties here simply assume this last step, but it presents a potential wrinkle: § 23 speaks only to where subpoenas "may run" (i.e., service), while Rule 45(c)'s limitations apply to compliance with those subpoenas.  Those are, admittedly, different concepts.  Compare, e.g., Rule 45(b)(2) (authorizing nationwide service of subpoenas), with (c)(1)(A) (limiting compliance with trial subpoenas to 100-mile radius).  That issue, however, has not troubled other courts in this district.  See, e.g., Anthem, 2016 WL 11164033, at *2 n.1.  And at least one other court elsewhere has recently observed that while § 23 "has received little attention from the courts to date," a "similar provision of the False Claims Act" is much more litigated, and it has been found to include "a nationwide enforcement authority."  FTC v. Kroger Co., 2024 WL 3400098, at *3 (D. Ore. July 12, 2024).  That court and others have also noted that similarly worded rules and statutes "have been assumed to confer nationwide enforcement power despite only speaking of service."  Id. (citing Fed. R. Crim. P. 17(e) and Walsh Act, 28 U.S.C. § 1793(a)); see also United States v. Wyeth, 2015 WL 8024407, at *2–3 (D. Mass. Dec. 4, 2015) (making this point in relation to

FCA). The Court will thus follow the weight of authority — lean though it may be — and hold that § 23 supplants Rule 45(c)'s geographic restrictions in this case.

    B.    <u>Undue Burden</u>

Undeterred, the nonparty witnesses additionally argue that the subpoenas should be quashed for the separate reason that they would impose an undue burden under Rule 45(d)(3)(A)(iv). <u>See</u> Joint Mot. at 21; Baumgarten Mot. at 3–4. "The quashing of a subpoena is," however, "an extraordinary measure," which is "usually inappropriate absent extraordinary circumstances." <u>U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.</u>, 301 F.R.D. 20, 25 (D.D.C. 2014) (quotation marks omitted). Neither "inconvenience," <u>Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas</u>, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (quotation marks omitted), nor a "busy schedule," <u>Johnson v. Jung</u>, 242 F.R.D. 481, 486 (N.D. Ill. 2007), nor the necessity of long-distance travel, <u>see</u> <u>Anthem</u>, 2016 WL 11164033, at *2 n.2, typically suffices to demonstrate undue burden. Nor is it enough to point out that the trial testimony will substantially overlap with prior deposition testimony. <u>See</u> <u>Aristocrat Leisure</u>, 262 F.R.D. at 301–02. On the contrary, courts within this district have recognized the "long-standing preference for live testimony." <u>Mazloum v. D.C. Metro. Police Dep't</u>, 248 F.R.D. 725, 728 (D.D.C. 2008).

Those principles doom Movants' attempts to avoid their obligations to testify. All nonparty witnesses have arguably relevant testimony from which the Court could benefit, and the parties themselves have an incentive not to call irrelevant witnesses, as doing so wastes the time allotted to each side to present its case. Although Movants here are indisputably busy people with important careers and family obligations — and although no one enjoys crisscrossing the country to testify in court — such concerns, if credited, would eviscerate the role of live testimony for nationally important antitrust trials. The parties have also made significant efforts

to minimize the burden for those testifying, such as by accommodating their schedules to determine specific days on which they will be called, calling them only once, and limiting the length of the examinations.  See Meta Opp. at 9; FTC Opp. at 9–10.  The Court therefore holds that the challenged trial subpoenas do not impose an undue burden and need not be quashed.  It acknowledges, however, that both parties have consented to remote testimony from Julia Tang, Kimberly Baumgarten, and Ronak Shah, and the Court will permit such an accommodation in light of the unique burdens faced by those witnesses.  See Meta Opp. at 19, 23 (noting demands of new motherhood, "specifically articulated and significant family responsibilities," and recovery from back injury); FTC Opp. at 2 (consenting to Tang and Shah and stating that Baumgarten has yet to satisfy Rule 43(a), but not opposing her testifying remotely "in principle").

The same conclusion follows for the objections lodged by some nonparties to the associated document requests.  See Joint Mot. at 9–10 (Google), 15–16 (TikTok); Snap Mot. at 1.  The requests in question are targeted and reasonably narrow, and, as the Court just held, recent data (like those requested here) could not have been produced during fact discovery, which closed in 2023.  See ECF No. 503 (Order).  Good cause thus exists to support their admission.  In addition, while Snap may have a corporate policy generally forbidding its employees to access certain documents, such policy must yield to a court order.  See United States v. Int'l Bus. Machs. Corp., 71 F.R.D. 88, 91 (S.D.N.Y. 1976).  The Court therefore will not quash the document subpoenas.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny the nonparty witnesses' Motions to Quash, except insofar as the aforementioned witnesses (Tang, Baumgarten, and Shah) may testify remotely.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  April 2, 2025