UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

META PLATFORMS, INC.,

    Defendant.

Civil Action No. 20-3590 (JEB)

### ORDER

At a hearing to discuss confidentiality and sealing procedures on March 7, 2025, the parties agreed to provide exemplar trial exhibits to the Court in order to receive guidance on confidentiality treatment at trial. See ECF No. 433-1 (Mot. to Seal) at 1. The Court appreciates the parties' work in since narrowing the number of exemplar exhibits to eight. In the proposed redactions to those exhibits, Defendant Meta Platforms, Inc. seeks to protect information that it claims would give its competitors an advantage. Id. The Federal Trade Commission, on the other hand, asserts that Meta is "overly designating information as confidential," which "require[s] the FTC to either conduct its case-in-chief in the dark or to devote significant time combating Meta's designations in contravention of the process envisioned by Hubbard." ECF No. 496-1 (Sur-Reply) at 11. It asks the Court to order Meta to apply the United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980), standard more strictly. See Sur-Reply at 11. Both parties also request that the Court provide guidance on the following five categories of information that cover the redactions: strategic planning, Meta's ad-load percentages and

1

strategies, WhatsApp's financial revenues and losses, Meta's usage data, and Meta's integrity-related challenges. See id. at 11–12; Mot. to Seal at 1.

This Order will assess the proposed redactions to each exemplar exhibit — (1) PX3606, (2) PX9005, (3) PX3633, (4) PX10236, (5) DX593, (6) PX3609, (7) PX3621, and (8) DX1016 — and then provide guidance on redacting each category of information. At bottom, Meta is generally claiming that too much information is confidential and should more closely follow Hubbard when balancing its confidentiality interests against the presumption in favor of disclosure. In other words, when Meta has a strong privacy interest but the material is key to the case, it must minimize redactions; conversely, when the information is less significant, it may be kept under seal. Finally, when Meta has a minimal privacy interest in the material, the information should be released.

I.  **Exemplar Analysis**

   A.  Exemplar of Meta's Application-Launch Strategies (PX3606)

Meta has a strong privacy interest in its application-launching strategy, as such information could be used by competitors to promote and assess the success of the launch of a competing application. See ECF No. 477-1 (Reply) at 3. The references to how Threads compares to Twitter (now known as "X"), however, are highly relevant for evaluating market competition between Meta and X in this case. See, e.g., ECF No. 477-2 (PX3606) at ECF p. 3 (discussing goal message that Threads is a "kinder Twitter"); id. at ECF p. 4 (discussing launch timing as sensitive to "Twitter outage" or "Elon flare up"). To balance Meta's privacy interests with the need for access to material on market competition, Meta shall release information comparing Threads to Twitter but maintain its redactions of specific strategic information, such as planned messaging to creators, success metrics at each phase, and possible launch events.

B.      Exemplar of WhatsApp-Specific Revenue and Expense Data (PX9005)

While WhatsApp's operating costs are highly relevant in determining whether its acquisition was anticompetitive, sensitive financial data is typically kept under seal. See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V., 292 F.R.D. 19, 25 (D.D.C. 2013) (the "parties' sensitive financial data" is "commonly sealed in federal civil litigation"). To balance these competing interests, the Court will permit the unsealing of only rows E, F, and G — representing Global Revenues, Global Expenses, and Global Revenues less Global Expenses — in Table 6.1 and 6.3 for 2014 to 2020. See ECF No. 433-58 (PX9005) at ECF pp. 6–7. By limiting the disclosure to data from 2020 and before, the potential of competitors to make predictions as to the future of WhatsApp based on the released data is minimized.

C.      Other Exemplars (PX3633, PX10236, DX593, PX3609, and PX3621)

1.      *PX3633*

Meta has heightened privacy interests in its testing methods for potential updates to its applications and data on how such updates allow it to compare to competitors like TikTok, as it shows the decision-making procedures and business strategies employed by Meta as well as the metrics Defendant uses to compare itself to other companies. See, e.g., ECF No. 477-4 (PX3633) at ECF p. 6 (analyzing testing results of various potential Instagram layouts); id. at ECF p. 12 (comparing time spent on Reels and TikTok). The FTC retorts that the strategy behind implementing Reels on Instagram covered in this document is already public, so the proposed redactions are unnecessary. See Sur-Reply at 8. Broad statements from Meta executives on the utility of short-form videos cannot be said to publicize the testing results for displaying Reels in various layouts or usage data following the implementation of Reels.

With an eye towards balancing Meta's privacy interests in its analysis of potential changes to its applications with releasing key information comparing Meta with rivals in the market, the Court will order that general strategic statements that are essentially already known to the public as well as broader usage statistics shall be released. See, e.g., PX3633 at ECF p. 16 (stating Meta must "better showcase short video recommendations on Instagram and shift a meaningful amount of Facebook's long form video towards short form video"); id. at ECF p. 22 ("[W]e think there is an opportunity to create larger shared experiences around content that people love."); id. at ECF p. 32 (graph showing global time spent on YouTube, Facebook, TikTok, Instagram, and Twitter). Information assessing the reasons for rises in usage and detailing strategies to increase usage, however, may remain sealed. See, e.g., id. at ECF p. 12 (indicating sources of Reels growth); id. at ECF p. 19 (specific targets for Reels and plans for future model); id. at ECF p. 20 (results of specific technological advancement in Reels).

    2.    *PX10236*

Meta has a strong privacy interest in its internal growth metrics, usage trends outside the United States, and its prospective goals. See, e.g., ECF No. 477-5 (PX10236) at ECF p. 5 (goals for Facebook and Messenger globally); id. at ECF p. 11 (articulating expectations into 2026). Meta's general goals for the U.S. userbase, however, do not reveal specific strategies but illuminate its behavior in the market. For example, Defendant proposes leaving unredacted a sentence at the beginning of a paragraph that states, "Cleaning up the app," but redacting the text after it that reads, "We significantly reduced excessive promotional experiences and clutter in the app, removing over 10B impressions/day. We also implemented stronger governance and design standards to prevent these from coming back while we focus on larger changes to improve the design of the app." Id. at ECF p. 6. While the latter information is relevant to making the

application more competitive, it is so general that it could not plausibly give Meta's competitors an advantage. Meta should thus release information that generally indicates improvements in its applications and U.S. usage data, but redact material that implicates foreign markets and years beyond 2025.

        3. *DX593*

The redacted information explains how various models work and is largely irrelevant to this suit but could be useful to Meta's competitors. See ECF No. 477-6 (DX593). The proposed redactions are thus permitted.

        4. *PX3609 and PX3621*

The material in PX3609 and PX3621 relating to safeguarding sensitive information is general, see, e.g., ECF No. 477-7 (PX3609) at ECF p. 5 ("We are scheduling a call next week with App Review to share details on Instagram's abuse systems."), and much of it is likely already known by bad actors, as all safeguards mentioned have already been in place for seven years for PX3609 and over five years for PX3621. The entries, moreover, often do not describe how Meta is addressing the problem. For example, one entry in PX3621 states, "Apple shared a concern that they are seeing a trend where certain Instagram profiles are linking out (via a link in bio) to sites where the account owner would sell subscription[] access to inappropriate (porn/nude) images of themselves." ECF No. 477-8 (PX3621) at ECF p. 3; see also id. at ECF p. 4 ("Apple told us we needed to immediately address the exchange of child exploitative images in WA chat groups, which were being flagged under the #dropboxlinks hashtag."); id. at ECF p. 10 ("[T]he introduction of Limit Ad Tracking had an unintended impact on our ability to assist iOS developers [in] measur[ing] the impact of Facebook app install campaigns."). This material should be disclosed.

      D.      <u>Exemplar of Lengthy Documents (DX1016)</u>

Much of the information in this 187-page Board of Directors meeting agenda and accompanying slide deck implicates Meta's privacy interests and is irrelevant, so it does not need to be released. <u>See, e.g.</u>, ECF No. 477-9 (DX1016) at ECF p. 35 (discussing plan to have all outstanding stock have one vote per share). The FTC does not dispute this, but instead argues that Meta has the burden to assess its shorter material in more detail and propose revisions to the FTC for such shorter documents. <u>See</u> Sur-Reply at 10–11. For documents longer than 150 pages, the FTC should continue collaborating with Meta to identify irrelevant material that should not be released. The burden is on Meta, however, to provide specific redactions to shorter exhibits.

**II.**      **Categorical Recommendations**

      A.      <u>Meta's Strategic Planning</u>

Meta should only redact information in its strategic planning documents that might reasonably help competitors directly mirror Meta's strategy in the future. It should thus release general information about strategy, such as broad publicity plans and goal audiences, but not specific information such as precise collaborations, exact timing for switching to certain phases of strategy, and success metrics.

      B.      <u>WhatsApp's Non-Public Financial Information</u>

General revenue information for WhatsApp from 2020 and the years before shall be released as it is critical to the case but does not reveal the utility of specific revenue streams or allow for future strategic predictions. More specific revenue data may be kept under seal.

      C.      <u>Meta's Usage Data and Ad-Load Percentages and Strategies</u>

Meta has a significant privacy concern as it regards usage data and ad loads, but those two concepts also strike at the core of this case. Meta should thus release as much information on these topics as it can without risking giving competitors an advantage. Information that is broad in nature — musings about goals that could be guessed by the public and statistics about usage and ad loads on all users rather than specific populations — and over five years old should generally be released.

D.  Meta's Integrity-Related Challenges

Meta should release all relevant general discussions of integrity issues from more than five years ago. Meta may maintain the seal on discussions that are not directly relevant to this suit.

*   *   *

For these reasons, the Court ORDERS that:

1.) Meta's [433] Motion to Seal is GRANTED IN PART and DENIED IN PART;

2.) Meta shall more closely assess its future redactions in accordance with Hubbard; and

3.) Meta shall make the aforementioned redactions and releases.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 3, 2025