IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

META PLATFORMS, INC.,

    Defendant.

Case No. 1:20-cv-03590-JEB

**META PLATFORMS, INC.'S PRETRIAL MOTION
REGARDING RULE 1006 EXHIBITS**

## I.     PX8013A IS BASED ON INADMISSIBLE SOURCES AND IS NOT A SUMMARY

The Court should exclude PX8013A, which the FTC seeks to pre-admit as a Rule 1006 summary exhibit.  PX8013A is a 185-page chart purporting to summarize current and historical descriptions of 24 apps in the Apple app store going back to January 1, 2011.  *See* Ex. 1 (PX8013A); Ex. 2 ¶¶ 5-7 (PX8013, Hinson Decl.).  The underlying source is an unauthenticated spreadsheet Apple produced in discovery purportedly containing these app descriptions as "submitted" to Apple by various app "provider[s]." Ex. 2 ¶ 6 (PX8013, Hinson Decl.).  Apple did not provide a business records declaration for the spreadsheet, and no witness has authenticated it or established that it is a business record (or testified about it at all).  PX8013A should not be admitted because it is not based on admissible sources and is not a summary.

**A.**     "For a summary to be admissible under Rule 1006, the underlying records to be summarized 'themselves must be admissible.' " *United States v. Fuller*, 2025 WL 511112, at *6 (D.D.C. Jan. 7, 2025) (quoting *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014)); *see also* Paul F. Rothstein, *Federal Rules of Evidence, Rule 1006:  Summaries to Prove Content* (2024 ed.) ("[I]n the case of voluminous or complex originals, a chart, summary, or calculation . . . representing the originals may be introduced . . . assuming the originals would have been admissible.").  PX8013A's underlying sources are inadmissible for at least two reasons.

*First*, the underlying source is an unauthenticated, hearsay spreadsheet that Apple produced.  *See* Fed. R. Evid. 901; Fed. R. Evid. 803(6).  The only information about the spreadsheet comes from a lawyer-drafted production cover letter (hearsay), as summarized by an FTC paralegal in a declaration (also hearsay).  *See* Ex. 2 ¶¶ 6-7 (PX8013, Hinson Decl.).  Courts regularly exclude Rule 1006 exhibits like this in analogous circumstances.  *See*, *e.g.*, *United States v. Oros*, 578 F.3d 703, 708-09 (7th Cir. 2009) ("summary charts should not have been admitted" where "[t]he government did not present any testimony to establish that the records

1

were kept in the course of a regularly conducted business activity" and thus "could not have laid the foundation necessary to demonstrate the[ir] admissibility"); *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) (finding abuse of discretion where district court admitted Rule 1006 exhibit where "[n]o effort whatsoever was made to establish the foundational requirements of Rule 803(6) for admissibility of the underlying . . . records"); *see also* 29A Am. Jur. 2d Evidence § 1079 (2009) ("Since the proponent [of a summary] must establish that the underlying documents are themselves admissible, the same general foundation must be laid as if the underlying materials were actually being offered in evidence").

*Second*, the app store descriptions in the unauthenticated, hearsay spreadsheet, other than those submitted by Meta for its apps, are also hearsay — out-of-court statements third-party app providers submitted to Apple — that the FTC offers for their truth. *See* Ex. 1 (PX8013A); Fed. R. Evid. 801. The FTC claims it is offering the app store descriptions for a non-hearsay purpose: to show "industry recognition" as it relates to market definition. But these app descriptions support "industry recognition" only insofar as the app descriptions truthfully describe the apps. And, in any event, an app's description of itself, written for purposes of advertising the app to users in the app store, does not constitute "recognition of the submarket as a separate economic entity," which it must to constitute "industry recognition" under *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). *See also FTC v. Tempur Sealy Int'l, Inc.*, 2025 WL 617735, *17 (S.D. Tex. Feb. 26, 2025) (rejecting FTC's alleged market and *Brown Shoe* analysis, finding that industry recognition must consist of industry participants "at least . . . agree[ing] on what *products* the description" of the relevant market "actually applies to").

The FTC also claims that, even if the app store descriptions are hearsay, the exception for "market reports" applies. *See* Fed. R. Evid. 803(17). This hearsay exception is "predicated on the two factors of necessity and reliability." 5 *Weinstein's Federal Evidence* § 803.19[1]

(Matthew Bender 2025). Neither exists here. There is no need to admit unauthenticated hearsay descriptions of apps, because knowledgeable witnesses from the app providers were (and are) available, and some will already be testifying about their apps, and the apps they compete with, at trial. *See Fuller*, 2025 WL 511112, at *6 (hearsay statements in a Rule 1006 exhibit were "not more probative" than knowledgeable witness testimony at trial). Nor are these app descriptions sufficiently reliable to warrant applying the market reports exception. The app descriptions are unauthenticated marketing statements to convince consumers to download their apps, not statements "generally relied on by the public or by persons in particular occupations." Fed. R. Evid. 803(17). They do not bear the indicia of reliability required for the exception to apply. *Compare, e.g.*, *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.R.D. 116, 121 (S.D.N.Y. 2000) (admitting prime rates from Federal Reserve Board website as sufficiently reliable under Rule 803(17)), *with Pers. Audio, LLC v. CBS Corp.*, 2014 WL 1202698, at *4 (E.D. Tex. Mar. 20, 2014) (rejecting argument that LinkedIn profiles are sufficiently reliable under Rule 803(17) because journalists use them to locate people). To the extent *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1152520 (2d Cir. Mar. 18, 2024), reached a different conclusion about the app store descriptions at issue in that case, it did so for the limited purpose of establishing the number of app downloads in a trademark-infringement case and did not rely on the descriptions themselves. *See id.* at 222 n.11. In addition, there is no indication that those app store descriptions were sourced from an unauthenticated third-party document with no sponsoring witness. *See id.*

      **B.**     The purpose of a Rule 1006 exhibit is to aid the factfinder by providing a "summary" of voluminous records. Fed. R. Evid. 1006. A 185-page chart hardly qualifies as a "summary"; it is itself a voluminous record. Admitting PX8013A will clutter the record with

3

185 pages of unauthenticated hearsay statements and will not aid the Court in determining any disputed facts in the case. The Court should exclude PX8013A.

## II.     META'S RULE 1006 EXHIBITS ARE PROPER

Meta disclosed 124 Rule 1006 exhibits that it may use at trial. Meta identified the expert that would be the exhibit's sponsoring witness for all but one exhibit (and, for that one, DX1254, which the FTC is not seeking to exclude, Meta disclosed that the exhibit would be used with a fact witness). Meta has made all the underlying sources available to the FTC for examination. *See* Fed. R. Evid. 1006(b).

The FTC objected to each of Meta's Rule 1006 exhibits as "not a summary of voluminous records," "hearsay," and on "FRE 401-403" grounds. It objected to 22 of the exhibits as "late discovery" or "late expert testimony." (Meta withdrew 2 of those 22 exhibits (DX1252 and DX1253), but the FTC informed Meta, the morning of this filing, that it intends to include those 2 withdrawn exhibits in its brief anyway. Meta is no longer offering DX1252 and DX1253 as Rule 1006 exhibits, and it is therefore inappropriate for the FTC to address them in its brief.) Beyond these general, broad objections, the FTC has not addressed specific exhibits in the parties' discussions. Nor did the FTC respond to Meta's request that the FTC identify which exhibits it intended to discuss specifically in its brief. To the extent the FTC raises new arguments or addresses specific exhibits in its brief, Meta respectfully requests the opportunity to respond before the Court rules. As set forth below, the FTC's objections to Meta's Rule 1006 exhibits provide no basis to exclude any of the exhibits. The Court should overrule the FTC's objections or, at a minimum, defer ruling on the objections until Meta seeks to use the exhibits at trial.

### A. Meta's Rule 1006 Exhibits Summarize Voluminous Records

Meta's Rule 1006 exhibits are "summar[ies], chart[s], or calculation[s] offered to prove the content of voluminous [records] that cannot be conveniently examined in court," and should be admitted as evidence. Fed. R. Evid. 1006(a). Of the 124 Rule 1006 exhibits Meta disclosed, 113 summarize data produced by Meta or third parties or derived from publicly available market reports or data compilations. These underlying data files comprise terabytes of data and may require special software to view or manipulate. For example, FTC-META-014039756 is a .csv file containing 32,024 rows of time spent data for 66 different services on Facebook. *See* Ex. 3 (FTC-META-014039756) (converted to PDF for filing). It would be nearly impossible to understand how time spent on these services changed over time by examining this spreadsheet. Rather than seek to admit this voluminous data file, Meta intends to offer DX1146 (attached as Ex. 15), which summarizes the data for certain services in FTC-META-014039756 by putting them in chart form.

DX1146 is representative of many of Meta's Rule 1006 exhibits, which largely come from Meta's experts' reports and similarly summarize, in graphs or tables, voluminous data files or, in a few cases, voluminous documents. *See, e.g.*, Ex. 4 (DX1156) (line graph summarizing data showing increases in U.S. Facebook user time spent on video between 2015 and 2022); Ex. 5 (DX1162) (line graph summarizing data comparing failure rates for Instagram on its legacy infrastructure as compared to Meta's infrastructure); Ex. 6 (DX1168) (chart summarizing data showing impact on user time spent from Facebook feed composition experiments). These exhibits are not argumentative; their titles merely describe the data they summarize. *E.g.*, Ex. 4 (DX1156) ("Figure 2: Share of U.S. Facebook User Time Spent on Video 1Q 2015 to 2Q 2022 (Facebook Video Data)"); Ex. 5 (DX1162) ("Figure 15: Failure Rates for Writes of 'Likes' on Instagram to Legacy Postgres and TAO"); Ex. 6 (DX1168) ("Table 8: Impact on User Time

5

Spent from Facebook Feed Composition Experiments U.S., Q1 2023"). And they do not, as the FTC contends, contain expert opinions or analysis beyond the calculations the experts performed to summarize the underlying data — and "[a] calculation does not constitute a conclusion or opinion," *United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 459 (D.D.C. 2020) (admitting Rule 1006 exhibits containing profit calculations). The decisions Meta's experts made in creating these exhibits likewise do not amount to opinions or analysis. *See United States v. Crawford*, 2024 WL 1908799, at *3 (D.D.C. May 1, 2024) (Boasberg, J.) ("The fact that the Government made decisions about which [information] to include and exclude in the [summary exhibits] and how best to compile [it], among other things, is therefore neither surprising nor troubling under that Rule; if anything, it is inevitable."). That is particularly so where, as here, the FTC has not "argued that the [summaries] actually *misrepresented* [the underlying information]." *Id.*

Courts regularly admit Rule 1006 exhibits containing similar summaries of voluminous records. *See*, *e.g.*, *id.* (admitting 15-minute video montage created from 9 terabytes of footage); *In re Nat'l Prescription Opiate Litig.*, 2021 WL 4341317, at *5 (N.D. Ohio Sept. 23, 2021) (admitting charts summarizing shipment and dosage data, bar graphs showing changes in opioid distribution over time, and pharmacy market share calculations) (admitted Rule 1006 exhibits attached as Ex. 7); *Fahnbulleh*, 752 F.3d at 478-79 (affirming district court's admission of Rule 1006 exhibit summarizing "over 10,000 pages of raw data"); *Amsted Indus. Inc. v. Nat'l Castings, Inc.*, 1990 WL 106548, at *22 (N.D. Ill. July 11, 1990) (admitting Rule 1006 exhibit depicting market share percentages calculated from "substantial" data, noting that "charts and graphs summarizing data culled from the financial records of the parties have often been admitted in the recognition that such summaries are a reasonable and efficient means of presenting the relevant information").

Here, the FTC has offered — and Meta has agreed to pre-admit — its own Rule 1006 exhibits that are indistinguishable from Meta's Rule 1006 exhibits.  *Compare*, *e.g.*, Ex. 8 at -004 (PX8011) (FTC-offered Rule 1006 exhibit that Meta has agreed to pre-admit, showing Instagram latency based on data produced at FTC-META-012478685), *with* Ex. 9 (DX1144) (Meta-offered Rule 1006 exhibit that FTC is objecting to, showing average latency for Instagram data fetching based in part on data produced at FTC-META-012478685).  The FTC has no credible explanation for why a chart summarizing the same data is "not a summary of voluminous records" when offered by Meta but is when offered by the FTC.

### B.     Meta's Rule 1006 Exhibits Were Timely Disclosed

The FTC has objected to 22 of Meta's Rule 1006 exhibits (2 of which Meta has withdrawn) as "late expert testimony" or "late discovery" under Federal Rules of Civil Procedure 16 and 37.  All of these exhibits are timely.  As a threshold matter, these exhibits are not "expert testimony" or "discovery."  They are summaries of voluminous records — records that Meta has produced or are publicly available — that Meta's experts prepared for trial to prove the contents of those records.  *See* Fed. R. Evid. 1006(a).  All of the Rule 1006 exhibits at issue will be sponsored by Meta's experts, and they fall into two categories.

*First*, some of these exhibits summarize calculations Professors Carlton and List performed in analyzing the rebuttal report of the FTC's expert, Professor Hemphill — to which Professors Carlton and List have not yet had a chance to respond.  These exhibits do not reflect new expert opinions that Professors Carlton and List were required to disclose in discovery.  Rather, they contain summaries of data pertinent to Professor Carlton's and List's previously disclosed opinions (with particular reference to the critiques offered by Professor Hemphill only in his rebuttal report).  For example, Professor Hemphill criticized the evidence of diversion offered by Professors Carlton and List on the basis that, if one looked at diversion only among

7

active Snapchat users, the results showed greater diversion to Snapchat. *See*, *e.g.*, Ex. 10 (Hemphill Rebuttal Rep. Exs. 24 & 25). Meta's Rule 1006 exhibits, such as DX1248 (attached as Ex. 11) and DX1249 (attached as Ex. 12), summarize data adjusting diversion in the same way for other apps. This reinforces their original opinions that Snapchat is a more distant substitute for Facebook and Instagram than are YouTube and TikTok.

    Meta's experts have the right to respond to the FTC's experts' rebuttal opinions. *See Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 2024 WL 2279215, at *1 (W.D. Wash. May 20, 2024) ("experts will testify at trial and will have the opportunity to address rebuttal arguments"); *Radecki v. Dahl*, 2023 WL 4231017, at *5 (W.D. Wis. June 28, 2023) ("[E]xperts[ ] may provide rebuttal testimony at trial provided the testimony concerns topics and opinions already included in timely-disclosed reports."); *UHS of Delaware, Inc. v. United Health Servs., Inc.*, 2017 WL 1945490, at *1 (M.D. Pa. May 10, 2017) (permitting expert who did not submit a rebuttal report "to respond to a few points of disagreement she had with [the opposing] expert") (cleaned up). It is standard for experts to respond contemporaneously at trial to expose flaws in an opposing expert's opinions. *See In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 2009 WL 1649773, at *1 (D. Kan. June 9, 2009) ("Numerous courts have permitted experts to testify at trial about the reliability of the opinions of opposing experts."); *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996) (expert could offer testimony that "went directly to refuting" opposing expert); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (refusing to exclude expert's rebuttal testimony "offered to refute" opposing expert). The 20 Rule 1006 exhibits that Meta is offering, which contain Meta's experts' summaries of data responsive to Professor Hemphill's rebuttal opinions, are no different — except that Meta has provided *more* notice of its experts' anticipated testimony than the FTC would ordinarily receive if Meta waited to disclose these calculations in Rule 107 illustrative aids or through trial testimony alone.

*Second*, other of these exhibits update data to support previously disclosed expert opinions. For example, DX1243 summarizes Meta data showing the share of time spent on major services on Facebook in January 2025 as compared to January 2023. *See* Ex. 13 (DX1243). It updates data originally disclosed in Table II-1 in Professor List's report in support of his opinion that the "core" services Professor Hemphill argues most closely embody PSNS — Feed and Stories — account for less than half of total engagement on both platforms. *See* Ex. 14 (DX1213). As DX1243 shows, in just the last two years, time spent on those "core" services continues to decline, while time spent on Reels, where users largely consume video or unconnected content, has nearly tripled. *See* Ex. 13. DX1243 thus shows why Professor List's originally disclosed opinion remains true. The FTC has not argued (and cannot argue) that Meta's experts may not testify at trial about what current data show. And the Court has already recognized the "probative value" of these more recent data. Order (Apr. 2, 2025), ECF No. 503.

  **C.**  **Meta's Rule 1006 Exhibits Are Based on Admissible Evidence**

The FTC has articulated one specific basis for its blanket hearsay objections to the sources underlying Meta's Rule 1006 exhibits: that Meta's structured data (the source for more than 100 of Meta's 124 Rule 1006 exhibits) is hearsay when offered by Meta, but not when offered by the FTC. But "[c]omputer-generated data . . . are extrajudicial statements that are not hearsay," because "there is no declarant making a statement." 5 *Weinstein's Federal Evidence* § 900.07[1][a] (2025); *see United States v. El Gammal*, 831 F. App'x 539, 542 n.7 (2d Cir. 2020) (finding that data produced by Meta in litigation was "not made by a person; rather it [wa]s generated by Facebook," and "may thus be more akin to a machine-generated record, which is unlikely to be considered hearsay"); *United States v. Washington*, 498 F.3d 225, 227 (4th Cir. 2007) ("raw data on which [expert] relied . . . were not hearsay statements").

Even if Meta's structured data were hearsay, it would be subject to at least the business records exception under Federal Rule of Evidence 803(6).  That rule provides for the admission of, among other things, records "made at or near the time by . . . someone with knowledge," if "kept in the course of a regularly conducted activity of a business," and "making the record was a regular practice of that activity."  Courts regularly find data admissible pursuant to Rule 803(6)'s business records exception.  *See*, *e.g.*, *Fahnbulleh*, 752 F.3d at 479 (affirming district court's admission of Rule 1006 exhibit summarizing "raw data," finding it satisfied the business records exception); *United States v. Gooding*, 2024 WL 2132055, at *2 (D.C. Cir. May 9, 2024) (per curiam) (affirming district court's admission of data pursuant to Rule 803(6)).

To the extent the FTC believes that Meta's structured data does not satisfy some provision of Rule 803(6) or another hearsay exception, it has not articulated that to Meta.  If the FTC raises those objections for the first time in its brief, Meta respectfully requests a chance to respond.  Meta is prepared to lay the foundation for its structured data's admissibility at trial if the FTC insists on burdening the Court with its hearsay objections to these data.

## CONCLUSION

For all these reasons, the Court should (1) exclude PX8013A, and (2) overrule the FTC's objections to Meta's Rule 1006 exhibits or, in the alternative, defer ruling on those objections until Meta seeks to offer the exhibits into evidence at trial.

Dated: April 7, 2025               Respectfully submitted,

/s/ Mark C. Hansen
Mark C. Hansen (D.C. Bar No. 425930)
Aaron M. Panner (D.C. Bar No. 453608)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*