UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Civil Action No.: 1:20-cv-003590-JEB |
| Plaintiff, | **MOTION TO SEAL** |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | |

**MOTION TO SEAL**

    Nonparty Snap Inc. ("Snap") will and hereby does move this Court to maintain under seal certain material contained in trial exhibits and deposition transcripts (collectively, the "Confidential Information") that the Federal Trade Commission ("FTC") and Meta Platforms, Inc. ("Meta") (collectively, the "Parties") plan to use at trial, and any related trial testimony. This motion ("Motion") is based on the attached Memorandum of Points and Authorities, the filings and records in this case, the concurrently filed Declaration of David O'Neil, and such evidence and argument as may be presented at the hearing on the Motion. This Motion is made following the conference of counsel pursuant to L.R. 7(m), which took place with counsel for the FTC on March 27, 2025 and April 3, 2025, and with counsel for Meta on April 4, 2025. While the FTC does not oppose Snap's Motion, Meta has not taken a position on the Motion, and reserves all of its rights with respect to the Confidential Information. Snap respectfully requests oral argument on its Motion to Seal pursuant to Local Civil Rule 7(f).

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Nonparty Snap respectfully submits this memorandum in support of its Motion pursuant to the Court's March 25, 2025 Order regarding confidentiality procedures (the "Confidentiality Order"). *See* Dkt. 478 at 3–4. For over four decades, courts in this District have recognized that "where a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great" and have routinely granted third party motions to seal confidential information at trial. *United States v. Hubbard*, 650 F.2d 293, 319 (D.C. Cir. 1980). Snap, a third party to this litigation, has immense privacy concerns implicated by the use of its business documents, confidential deposition transcripts, and any related confidential testimony during the upcoming trial. As set forth below, the narrowly tailored relief Snap seeks is necessary to maintain the confidentiality of competitively sensitive business information contained in certain trial exhibits (and any associated testimony). Snap maintains a robust privacy interest in this information, which has never been publicly disclosed, and the disclosure of which would harm Snap's competitive standing. Because the Confidential Information is not central to the FTC's case, moreover, Snap's privacy interests outweigh any need for the public to access this information. While the FTC does not oppose Snap's Motion, Meta has not taken a position, and maintains its rights with respect to the Confidential Information. The Court should grant Snap's Motion to seal the Confidential Information and any related testimony at trial.[1]

---

[1] Consistent with the Confidentiality Order, Snap seeks to maintain the Confidential Information under seal and to seal the courtroom during any testimony at trial that would result in the public disclosure of the Confidential Information. To date, only one in-house lawyer for Meta has been granted access to "Confidential" and "Highly Confidential Information" under the Protective Order, including the Confidential Information that is the subject of this Motion. Snap seeks to maintain that status quo by allowing Meta's in-house lawyer to remain in the courtroom during such sealed testimony or when Confidential Information is otherwise presented or discussed. *See* Dkt. 478 at 4.

I.        **BACKGROUND AND PROCEDURAL HISTORY**

During discovery, Snap produced over 10,000 documents to the Parties, consisting of nearly 150,000 pages. The vast majority of those materials were designated as highly confidential and produced pursuant to the protective order entered in this case. *See* Dkt. 134.

In late January of this year, the FTC sent Snap a list of the Parties' anticipated Snap trial exhibits. *See* Declaration of David O'Neil ("O'Neil Decl.") ¶ 2. After some modifications, there are now 61 Snap exhibits on the Parties' respective exhibit lists (20 on the FTC's list and 41 on Meta's list). Over the course of the last month and a half, Snap took several steps to identify and narrow the scope of confidential materials at issue, including: (1) enlisting a cross-section of team members at Snap to review and analyze each proposed trial exhibit to identify competitively sensitive non-public business information contained in those exhibits; (2) meeting and conferring with the Parties on several occasions to better understand what portions of their exhibits the Parties planned to rely on at trial; and (3) identifying for the Parties the exhibits and sections of deposition transcripts that Snap had confidentiality concerns over. As a result of that process, Snap identified a subset of 38 trial exhibits, and specific portions of deposition testimony, that contain highly sensitive confidential information (i.e., the "Confidential Information" that is the subject of this motion). The Confidential Information is contained in the following core categories of Snap documents: internal Snap slide decks and PowerPoint presentations; materials prepared for meetings involving the Snap Board of Directors; internal Snap emails containing or reflecting confidential business strategies; and internal Snap strategy and planning documents outlining confidential business plans and proposals for future development and investment. A granular breakdown of the type of Confidential Information contained in the relevant trial exhibits and deposition testimony is set forth in the concurrently filed Declaration of David O'Neil.

Snap's good faith negotiations with the Parties over the Confidential Information were partially successful. As noted above, the FTC does not oppose Snap's Motion. *See* O'Neil Decl. ¶ 4. Snap's negotiations with Meta yielded far less progress. At the start of Snap's negotiations with Meta over a month and a half ago, Meta represented to Snap that it would not oppose Snap's confidentiality designations. *Id.* ¶ 5. However, Meta informed Snap just three days ago, on April 4, 2025, that it does not presently take a position on Snap's confidentiality designations. Instead, Meta "reserves all of its rights" with respect to the Motion. *Id.* ¶ 6. Despite its about-face on the eve of trial, Meta has not identified a *single* specific portion of the Confidential Information that it objects to.

In addition to the Confidential Information at issue in this Motion, Meta recently served trial subpoenas demanding production at trial of an expansive and entirely *new* set of Snap documents (the "Subpoena Document Requests") relating to the January 2025 "TikTok Outage." *See* Dkt. 488. Snap is currently endeavoring to identify and produce materials responsive to the Subpoena Document Requests (the "Responsive TikTok Material") following the Court's denial of its Motion to Quash. *See* Dkt. 505. The Responsive TikTok Material will invariably contain core confidential business information, including granular information showing how the TikTok outage impacted Snapchat user engagement, as well as Snap's internal, non-public assessment of that impact. Given the sensitivity of that information, and for the reasons set forth below, the Responsive TikTok Material (and related trial testimony) should remain under seal at trial.[2]

---

[2] Should the Parties not agree to seal such information, or should the Court require further briefing, Snap reserves all rights to move to seal the Responsive TikTok Material and/or any related testimony at trial.

3

## II. LEGAL STANDARD

Although there is a strong presumption in favor of public access to judicial proceedings, that presumption may be outweighed by competing interests, including the need to protect a third party's sensitive business information and trade secrets. *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). To determine whether the presumption is overcome, courts use a six-factor test articulated in *Hubbard*, assessing "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.* (citing *Hubbard*, 650 F.2d at 317–22).

Public access to judicial records "is not limitless," and public access may be denied to "protect trade secrets… and to minimize the danger of an unfair trial by adverse publicity." *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 316 F. Supp. 3d 455, 463 (D.D.C. 2018) (quoting *Hubbard*, 650 F.2d at 315). Indeed, "protecting an entity's 'competitive standing' through retained confidentiality in business information has been recognized as an appropriate justification for restriction of public or press access." *Id.* (quoting *Nixon v. Warner Comms.*, 435 U.S. 589, 598 (1978)). Thus, "for documents containing sensitive business information and trade secrets, [the *Hubbard*] factors often weigh in favor of sealing and, as *Hubbard* itself noted, courts commonly permit redaction of that kind of information." *MetLife*, 865 F.3d at 671. Additionally, "where a third party's property and privacy rights are at issue," courts recognize that "the need for minimizing intrusion is especially great[.]" *Hubbard*, 650 F.2d at 319. Courts further acknowledge the importance of protecting confidential information where parties produce information "in reliance on continuing confidentiality[,]" as was the case

4

throughout this litigation. *See Mokhiber v. Davis*, 537 A.2d 1100, 1116 (D.C. 1988) (per curiam).

**III.    ARGUMENT**

Snap, as a nonparty to this litigation, has a heightened privacy interest in retaining its Confidential Information (and the Responsive TikTok Material and related trial testimony) under seal. Because the Confidential Information includes commercially sensitive information, disclosure of which would harm Snap's competitive standing, the *Hubbard* factors weigh in favor of granting Snap's Motion to Seal.

        **1.    Snap Has a Robust Privacy Interest in Its Highly Confidential Commercial and Competitively Sensitive Information**

The *Hubbard* factor that weighs most heavily here is Snap's substantial privacy interest in the Confidential Information. This *Hubbard* factor turns on "the objecting party's privacy interest in the particular documents[.]" *Michaels v. NCO Fin. Sys. Inc.*, No. 16-cv-1339, 2023 WL 4857413, at *4 (D.D.C. July 31, 2023). Where documents contain confidential and proprietary information concerning the objecting party's business, courts find "the privacy interests are substantial." *See id.* Courts acknowledge that there is a "substantial property interest" in documents that contain "sensitive business information and trade secrets," factors that "weigh against public access." *United States v. Munchel*, 567 F. Supp. 3d 9, 18 (D.D.C. 2021) (citing *MetLife*, 865 F.3d at 871). That interest is heightened where the confidential information belongs to a third party, like Snap. *See Hubbard*, 650 F.2d at 319.

Here, the Confidential Information reflects four categories of competitively sensitive non-public business information, all of which belong to Snap. *First*, the Confidential Information consists of numerous internal Snap slide decks and PowerPoint presentations that

contain, for example, detailed customer demographic information, analysis of granular usage trends, Snap financial information, and competitive assessments and analyses. None of that information has been shared publicly. As an example, Exhibit 10 to the O'Neil Declaration is a 2021 Growth Bi-weekly PowerPoint Presentation that provides granular daily average user growth metrics broken down on a country-by-country level, including daily average user growth on a quarter-over-quarter basis, broken down by age and by country, including numerous countries outside the United States. At the outset, Snap's detailed financial information is presumptively confidential. *See* Dkt. 510 at 3 ("[S]ensitive financial data is typically kept under seal."). Moreover, disclosure of this competitively sensitive information could provide Snap's competitors insight into Snap's business strategies, strengths and weaknesses, and areas where Snap is competitively vulnerable, including in foreign markets. *See* Dkt. 510 at 2, 5 (permitting Meta to redact information which "could be used by competitors to promote and assess the success of the launch of a competing application" and to "redact material that implicates foreign markets[.]"). Competitors could also use these documents to develop ideas for how to improve their own products and therefore erode Snap's competitive standing. This is precisely the type of information that courts in this District have determined is appropriate for sealing. *See In re McCormick*, 316 F. Supp. at 463 ("Protecting an entity's competitive standing through retained confidentiality in business information has been recognized as an appropriate justification for restriction of public or press access.") (internal quotations omitted).[3]

*Second*, the Confidential Information consists of materials prepared for meetings involving the Snap Board of Directors, including non-public financial forecasts, confidential

---

[3] This information also qualifies as a trade secret and should be sealed on that basis as well. *See Hubbard*, 650 F.2d at 315 (sealing is appropriate to protect "sources of business information that might harm a litigant's competitive standing," as well as "to protect trade secrets[.]") (internal quotations omitted).

strategic business plans, and usage trends on a demographic and geographic level never shared publicly. For example, Exhibit 2 to the O'Neil Declaration is a set of materials presented to the Snap Board of Directors in December 2020 that contains robust financial information and business strategies. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████ The disclosure of this information could provide competitors with insight into Snap's internal strategies, financials, and processes, resulting in harm to Snap's competitive standing. *See Hubbard*, 650 F.2d at 315 (sealing is appropriate to protect "sources of business information that might harm a litigant's competitive standing"). By their very nature, materials prepared for the Board of Directors are "not widely disseminated" and carry immense "private interests." *See McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 933 (D.D.C. 2003) (finding that privacy interests in plaintiff's board minutes "outweighs the clear, probative value of the information contained therein" and maintaining them under seal); *see also* Dkt. 510 at 6 ("Much of the information in this 187-page Board of Directors meeting agenda and accompanying slide deck implicates Meta's privacy interests and is irrelevant, so it does not need to be released.").

*Third*, the Confidential Information consists of internal Snap emails that include or reflect confidential business strategies, disclosure of which would place Snap at a competitive disadvantage. This Court has acknowledged in this case that confidential business strategies are appropriately maintained under seal. *See* Dkt. 510 at 3 (Meta has "heightened privacy interests" in data which demonstrate its "decision-making procedures and business strategies[.]"). Much of

the Confidential Information includes these sensitive decision-making discussions. For example, ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Courts have sealed similar types of confidential business information. S*ee State of New York v. Microsoft Corp.*, No. 98-cv-1233, 2002 WL 818073, at *2 (D.D.C. Apr. 29, 2002) (finding that a third-party proffered a "strong property and privacy interest[] in maintaining the confidentiality" of a contractual agreement and ordering the sealing of the agreement and courtroom proceedings discussing that agreement).

*Fourth*, the Confidential Information consists of Snap strategy and planning documents, none of which have been shared publicly, outlining confidential business plans and proposals for future development and investment. For example, ████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████ This type of granular information about Snap's financial planning, employee headcount needs, and growth forecasts are the type of "confidential and competitively

8

sensitive [non-party] business information" that courts consider to be "proprietary" and that qualify as "trade secret information." *United States v. Anthem*, No. 16-cv-01493, 2016 WL 11164046, at *18 (D.D.C. Nov. 16, 2016) (recommending the district court seal all of non-party McKinsey's 45 documents, notwithstanding that the "volume of material as to which McKinsey [sought] sealing is greater than that as to which other non-parties have sought to have sealed[.]"). Disclosure of this information would harm Snap's competitive standing. For example, competitors could use this information to project Snap's growth needs, and cloud service providers (from whom Snap purchases storage) could use this information to negotiate more favorable terms, harming Snap financially. *See Hubbard*, 650 F.2d at 315 (sealing is appropriate to protect "sources of business information that might harm a litigant's competitive standing," as well as "to protect trade secrets[.]") (internal quotations omitted).

Apart from the Confidential Information, the Responsive TikTok Material (and related trial testimony) will also implicate similar privacy and confidentiality interests. *See* Dkt. 488. The Responsive TikTok Material will include granular and recent information concerning Snapchat user engagement and internal performance metrics related to January 2025 "TikTok Outage." Notably, this type of data includes statistics from a period for which Snap has not yet publicly reported earnings. Public disclosure of this business data would expose internal Snap performance trends and competitive assessments of the very nature which sealing procedures are designed to protect. All of this information should accordingly also remain sealed at trial.

In summary, because disclosure of the Confidential Information would grant Snap's "competitors unwarranted insight into [Snap's] competitive strategy," and because the Confidential Information is comprised of "competitively sensitive [Snap] business and strategic planning information," this *Hubbard* factor favors sealing the Confidential Information. *See*

*United States v. Aetna Inc.*, No. 1:16-cv-01494, 2017 WL 8809512, at *1–2 (D.D.C. Feb. 9, 2017) (recommending that the District Court order "complete non-disclosure" of nonparty Cigna's trial exhibits).

### 2.     The Confidential Information Has Never Been Publicized

Snap's privacy interest here is heightened because the Confidential Information has never been publicly disclosed. The focus of this *Hubbard* factor is "on previous public access to the *sealed information*." *Fed. Trade Comm'n v. Match Grp., Inc.*, No. 1:22-mc-54, 2023 WL 3181351, at *13 (D.D.C. May 1, 2023). When much of the information is in the public forum, disclosure is appropriate. *Munchel*, 567 F. Supp. 3d at 17. But where, as here, a nonparty represents that the documents it seeks to seal have never been publicized, courts consider the second *Hubbard* factor satisfied. *See United States v. Anthem, Inc.*, No. 1:16-cv-01493, 2016 WL 11164059, at *4 (D.D.C. Nov. 20, 2016) (accepting as true the representation by nonparty Cigna that "the public has never before had access to these documents, which were produced in discovery under the terms of this action's Protective Order" and recommending that the court grant nonparty Cigna's motion to seal). The Confidential Information has never been shared publicly, and Snap has no intention ever to make it public. *See* O'Neil Decl. ¶ 7. Accordingly, the second *Hubbard* factor also favors sealing.

### 3.     Snap, a Third Party, Vigorously Objects to Disclosure

Snap's status as a third party also weighs in favor of sealing. Where a "third party's property and privacy rights are at issue," the "need for minimizing intrusion is especially great[,]" and where "objection to access is made by a third party," that factor "weighs in favor of non-disclosure." *Hubbard*, 650 F.2d at 319–20; *see also Match Grp.*, 2023 WL 3181351, at *14 (recognizing that "a number of cases have found" that the third *Hubbard* factor "focuses on the

10

privacy interests of third parties," providing "broader protection from disclosure where a third party's property and privacy rights are at issue [and] the need for minimizing intrusion is especially great.") (internal quotations omitted). Indeed, this factor "tends to favor sealing when a third party is lodging the objection to disclosure." *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, No. 16-cv-54, 2022 WL 2785985, at *6 (D.D.C. July 15, 2022). Here, Snap's status and objection to disclosure as a third-party is paramount. This *Hubbard* factor also favors sealing the Confidential Information.[4]

### 4. Snap Will Be Prejudiced If the Confidential Information Is Disclosed

Disclosure that will cause a party prejudice in later proceedings goes to the appropriateness of sealing. *See Michaels*, 2023 WL 4857413, at *5. Thus, this factor considers "whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." *In re McCormick & Co.*, 316 F. Supp. 3d at 466. This factor typically arises in the context of criminal cases and therefore has less relevance here. *See, e.g.*, *Munchel*, 567 F. Supp. 3d at 19–20*; United States v. Jackson*, No. 21-mj-115, 2021 WL 1026127, at *7–8 (D.D.C. Mar. 17, 2021). Nonetheless, given the highly sensitive nature of the Confidential Information, disclosure could cause prejudice in future or ongoing litigation in which Snap is a party or third party. Moreover, Courts in this District have considered the fourth and fifth *Hubbard* factors together where the movant's "privacy and prejudice-related interests" form the basis of the request for sealing, as is the case here. *See Jackson*, 2021 WL 1026127, at *7 (considering the fourth and fifth *Hubbard* factors together); *see also In re New York Times Co.*,

---

[4] This factor also distinguishes the privacy interests implicated here from the privacy interests the Court recently considered in providing guidance to the Parties on a set of exemplar Meta trial exhibits. *See* Dkt. 510. This factor did not apply to Meta at all, and Snap is therefore afforded greater protection of its privacy interests.

11

No. 21-mc-91, 2021 WL 5769444, at *5 (D.D.C. Dec. 6, 2021) (Boasberg, J.) (noting that the fourth and fifth *Hubbard* factors "can be considered together and bear heavily" on the sealing analysis). Like those cases, the risk of prejudice under the fifth *Hubbard* factor is intertwined with Snap's privacy interest under the fourth *Hubbard* factor. Considered together, these factors weigh in favor of sealing the Confidential Information.

### 5.   Snap Has Not Put the Confidential Information at Issue

The *Hubbard* factors also require the Court to consider "the purposes for which the documents [are] introduced." *Hubbard*, 650 F.2d at 321. Where in certain cases, such as here, the documents provided by a non-party are "proffered to support the claims and defenses *brought by the parties to this case*, and [have] not been independently proffered [by the non-party], meaning that [the non-party] has not voluntarily placed its information at issue," this factor weighs in favor of sealing. *United States v. Anthem, Inc.*, No. 1:16-cv-01493, 2016 WL 11164037, at *2 (D.D.C. Dec. 23, 2016) (recommending the district court grant non-party's motion to seal trial exhibits). At bottom, this trial will assess and resolve the FTC's allegations that Meta engaged in anticompetitive conduct. It would be "ironic indeed" if Snap, a third party and alleged *competitor* of Meta, is required to publicly disclose information which would place Snap at a *further* competitive disadvantage. *See Hubbard*, 650 F.2d at 321. This factor thus weighs in Snap's favor.

### 6.   There is No Need for Public Access to the Confidential Information

The Court must also consider the need for public access to the documents at issue. *Hubbard*, 650 F.2d at 423. The focus of this factor is on the public's need for the specific information that a third party seeks to protect, rather than its need for access to a document "as a whole." *Match Grp., Inc.*, 2023 WL 3181351, at *9 (quoting *Cable News Network v. FBI*, 984

12

F.3d 114, 119 (D.C. Cir. 2021)). Although the FTC contends that Snapchat is one of the two main platforms that competes directly with Facebook and Instagram in the relevant antitrust market, other factors decrease the public's interest in the Confidential Information. First, Snap is a nonparty to this case. Thus, unlike the public's need to access the documents of Meta, which is on trial, the public's need to access Snap's documents is less substantial. Second, much of the Confidential Information is not relevant to *any* issue at trial because the parties do not intend to rely on it, notwithstanding that it is contained in certain trial exhibits. For example, Exhibit 26 to the O'Neil Declaration is an internal draft slideshow containing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ While this presentation is 93 pages long, Meta asked former Snap employee Jacob Andreou about just three pages of this presentation during his deposition. The same is true for Exhibit 3, another lengthy and confidential internal presentation of which only five pages were referenced during the deposition of Snap employee David Levenson. Given that the Parties do not intend to rely on such vast portions of the Confidential Information, the public's need to access that information is minimal. *See* Dkt. 510 at 2 (explaining that when material is not "key to the case," i.e., "when the information is less significant, it may be kept under seal."); *see also* Dkt. 511 at 5 (setting forth Meta's position that "portions of documents not used with (and discussed by) a witness at trial do not constitute judicial records" and should not "require public posting," citing to Judge Mehta's conclusion in the *United States v. Google* trial that if the FTC uses two slides of a 200-slide deck at trial, the other 198 slides do not form the basis for the Court's ruling and thus are not judicial records subject to public disclosure); *see also In re Citibank Aug. 11, 2020 Wire Transfers*, 2020 WL 6782213 at *2 n.3 (S.D.N.Y. Nov. 18, 2020) ("[I]f information in a document is not relevant to the issues in the case, and no party asks the Court to consider it, the parties may – and should

13

– redact the information without leave of Court to obviate any concerns about public access.").

Third, even as to the Confidential Information on which the Parties do intend to rely, much of that material is not central to the key issues at trial. For example, Exhibit 38 to the O'Neil Declaration is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓ While Exhibit 38 was briefly discussed during the deposition of Snap employee Saral Jain,

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is far afield from the central question at trial: what is the definition of the relevant antitrust market. *See* Dkt. 510 at 5 (permitting redaction where the information is "largely irrelevant to this suit but could be useful to Meta's competitors."). In sum, while the public may have some theoretical interest in the Confidential Information, that interest is reduced in the particular circumstances here, and in any event, it does not outweigh the strong interests of Snap as a nonparty in protecting its confidential business information.

## IV. CONCLUSION

For the foregoing reasons, Snap respectfully requests that the Court grant its Motion to Seal the Confidential Information and any related testimony at trial.

Dated: April 7, 2025

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/ David O'Neil
DAVID O'NEIL (DC Bar No. 1030615)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 383-8000
Facsimile: (202) 383-8118
daoneil@debevoise.com

Attorney for Snap Inc.

**CERTIFICATE OF SERVICE**

I hereby certify on this 7th day of April, 2025, a copy of the foregoing Motion to Seal was filed via the Court's electronic case filing system (ECF), which will send notice to all counsel of record, and a copy of the sealed document was served on the Parties via electronic mail.

/s/ David O'Neil
DAVID O'NEIL (DC Bar No. 1030615)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 383-8000
Facsimile: (202) 383-8118
daoneil@debevoise.com