UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>                Defendant. | Case No. 1:20-cv-03590-JEB |

**NON-PARTY DISCORD INC.'S MOTION FOR CONFIDENTIAL
TREATMENT OF DOCUMENTS AND TESTIMONY**

Pursuant to the Protective Order (ECF No. 134), the Order Regarding Confidentiality Procedures Before Trial (ECF No. 478) (the "Confidentiality Order"), and in accordance with Local Civil Rule 5.1(h), non-party Discord Inc. ("Discord") respectfully moves the Court for confidential treatment of certain documents and testimony that it has produced in this case. As required by the Court's Confidentiality Order, Discord has conferred with the FTC and Meta (the "Parties") about the confidential Discord documents each has identified on its final exhibit list and the deposition testimony of Discord's witness (who has been identified as a "will call" witness by each Party). Discord was able to reach agreement with the FTC on targeted redactions of Discord's exhibits and testimony; Meta, however, remains unwilling to agree to a set of limited redactions which would protect third-party Discord's sensitive business information. Discord therefore files this Motion.

The materials and testimony for which Discord seeks confidential treatment were designated Highly Confidential under the Protective Order because they contain non-public, commercially sensitive information—including, "sensitive personally identifiable information,"

1

"non-public financial, marketing, or strategic business planning information," "information relating to research, development, testing of, or plans for existing or proposed future products," "evaluation of the strengths and vulnerabilities of [Discord's] product offerings," or other information that if disclosed "would cause [Discord] material and significant competitive or commercial harm." (ECF No. 143 ¶ A(1)(g)). In particular, Discord seeks to redact from the exhibits and deposition testimony (and, as a result, any subsequent trial testimony on the same topics) personally identifiable information (namely, email and contact information for non-party individuals), information disclosing details about its internal market research, internal evaluation of its products and offerings (including as compared to other companies'), non-public information about its product's performance and user metrics, and commercially sensitive materials about its business strategy and outlook.

Unlike Meta's information, *Discord's* business strategy, market views, competitive tracking, and user metrics are not the subject of this case and therefore the public's interest in them is drastically reduced. And unlike Meta, Discord is a private company that has not shared, and does not intend to share, this information with the public. These two facts clearly distinguish Discord's proposed redactions from materials in Meta's documents that the Court ordered unsealed in its Order of April 3, 2025 (ECF No. 510). As set forth below, the Court should permit confidential treatment of these redacted materials and not force Discord to share highly sensitive information with the public in a case in which it is not even a party.

**ARGUMENT**

In evaluating a motion to seal, a court must "weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602 (1978). Courts commonly seal trial materials in order to "fully account for the

various public and private interests at stake." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017)).  In this Circuit, courts apply the *Hubbard* Factors:  "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *Id.* at 665 (citing *United States v. Hubbard*, 650 F.2d 293, 317-322 (D.C. Cir. 1980)).  In applying these factors, courts recognize the heightened privacy interests of non-parties to a litigation.  *United States v. Jackson*, No. 21-mj-115 (BAH), 2021 WL 1026127, at *7 (D.D.C. Mar. 17, 2021).  As *Hubbard* emphasizes, there is broader protection from disclosure "where a third party's property and privacy rights are at issue."  650 F.2d at 319; *see also Michaels v. NCO Fins. Sys. Inc.*, No. 16-cv-1339 (ACR/ZMF), 2023 WL 4857413, at *4 (D.D.C. July 31, 2023) (noting that a non-party's objection to disclosure has greater weight than a party's); *Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (same).

The information Discord seeks to seal generally falls into the following categories:  Non-public, granular information about Discord's user demographics and performance metrics; confidential internal analyses of Discord's products and product features, including the strengths and weaknesses thereof, and comparisons to other companies' products; Discord's strategy for marketing and growing its business, including its approach to user acquisition; and Discord's confidential views on its positioning in the industry and related strategies.  Declaration of MJ Yoon in Support of Discord's Motion for Confidential Treatment ("Yoon Decl.") ¶¶ 9-14.  Discord also seeks to seal email addresses and other contact information of its employees and other non-party

individuals.  Yoon Decl. ¶ 7.  The *Hubbard* factors weigh in favor of sealing limited portions of non-party Discord's documents and testimony.[1]

**Factor 1: The need for public access.**  The need for the public to access the information Discord seeks to seal is limited.  "[T]he D.C. Circuit has recently clarified that the focus of this [first] factor is on the public's need for the *specific information* that a litigant or third party seeks to protect, rather its need for access to a document as a whole." *Fed. Trade Comm'n v. Match Grp., Inc.*, No. 1:22-MC-54 (RJL/GMH), 2023 WL 3181351, at *9 (D.D.C. May 1, 2023) (emphasis added).  The public does not have a robust interest in the granular particulars of Discord's inner-workings, internal assessments, and business strategies.  Nor does it have an acute interest in the contact information of Discord employees or the employees of Discord's vendors.  Discord is not a party to this case, and its business assessments and strategies are not central to the issues in this case.  The public will remain capable of understanding "the [Court's] rulings as well as the contours of the disputes between the [P]arties," without Discord's confidential information, as those contours will be—and are—readily-discernible from the public testimony and briefing in this case.  *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017).

**Factor 2: Prior public access.**  Under this factor, courts "consider the public's previous access to the sealed information, not its previous access to the information available in the overall lawsuit." *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 119 (D.C. Cir. 2021).  "[T]he appropriate question is whether the public has previously accessed the remaining information redacted from the [document], not whether the [party opposing disclosure] has previously disclosed other information from that same document." *Id.*  The materials and

---

[1] Meta does not oppose Discord's proposed redactions of the following portions of Ms. Tang's deposition transcript (and by extension, any subsequent trial testimony on the same topics):  Tang Dep. Tr. 75:15-78:1; 109:22-112:15; 113:18-114:14; 178:7-179:13; 237:22-244:10.

information that Discord seeks to seal have not been publicly-disclosed. *Food Delivery Holding 12 S.A.R.L. v. DeWitty & Assocs. CHTD*, No. 1:21-MC-0005 (GMH), 2021 WL 860262, at *2 (D.D.C. Mar. 8, 2021) (granting motion to seal where "most of these documents are not now and have not previously been publicly available"). Discord is a privately-held company that does not make public disclosures about its financials, detailed user demographics or user metrics, confidential internal business analyses, or the like. Yoon Decl. ¶ 8.

**Factor 3: Objection to disclosure and the identity of the objecting person.** A non-party's objection to disclosure carries heightened weight. *Michaels v. NCO Fins. Sys. Inc.*, 2023 WL 4857413, at *4. Discord is a non-party to this action that has provided documents and testimony pursuant to compulsory process. Discord is a privately-held company that does not generally disclose this information publicly. *United States v. Anthem, Inc.*, No. 1:16-CV-01493 (ABJ), 2017 WL 10505050, at *2 (D.D.C. Jan. 18, 2017) (granting non-party's motion to seal, noting that "there has been no prior public access" to the materials). Discord strenuously objects to the disclosure of its highly confidential and commercially sensitive information. As further discussed below, disclosure of this information would work competitive harm on Discord. Courts are sensitive to the inequity of forcing a non-party to reveal its confidential business information to the street, by virtue of mandated participation in an action it is not centrally involved in. *See United States v. Jackson*, 2021 WL 1026127, at *7 (explaining that non-parties warrant heightened privacy protection).

**Factor 4: The strength of the privacy and property interest asserted.** Discord's privacy interests are exceedingly strong because disclosure risks competitive and commercial harm to Discord. "Protecting an entity's competitive standing through retained confidentiality in business information" is "an appropriate justification for the restriction of public or press access" to

commercially sensitive information. *State of New York v. Microsoft Corp.*, No. Civ.A 98-1233 (CKK), 2002 WL 818073, at *1 (D.D.C. April 29, 2002) (internal quotation marks omitted). Indeed, courts routinely recognize companies' profound privacy interest in protecting their commercially sensitive business information. *See Fiorentine v. Sarton Puerto Rico, LLC*, No. CV 19-3424 (CKK), 2020 WL 4530610 (D.D.C. Aug. 6, 2020) (granting motion to seal commercial contract); *G&E Real Est., Inc. v. McNair*, No. CV 14-418 (CKK), 2020 WL 956469 (D.D.C. Feb. 27, 2020) (granting motion to seal documents containing "confidential business information"); *United States v. Aetna Inc.*, No. 1:16-CV-01494 (JDB), 2016 WL 8739257, at *2-3 (D.D.C. Dec. 4, 2016) (granting motion to seal trial exhibits reflecting "competitively sensitive information, including information regarding party's current and future corporate strategies and assumptions"); *United States v. Anthem, Inc.*, 2016 WL 11164046, at *3 (D.D.C. Nov. 16, 2016) (granting motion to seal trial exhibits constituting "confidential business information and strategic planning documents"). These concerns are heightened where, as here, a non-party's sensitive information is involved. *See id.*

Sealing is warranted under this factor where, as here, the materials include "sources of business information that might harm [the party's] competitive standing." *Hubbard*, 650 F.2d at 315. Disclosure of the information Discord seeks to seal would cause Discord competitive harm because it would reveal to competitors Discord's business, growth, and marketing strategy, which competitors could exploit to copy, respond to, or neutralize Discord's advantage. Yoon Decl. ¶¶ 9-14. Discord's confidential information about user acquisition and user demographics could also be leveraged by competitors to unfairly compete with Discord and target its users. Yoon Decl. ¶¶ 9-14. Similarly, sensitive information about how Discord has positioned itself in the market relative to other industry participants, and its internal analysis of its products' performance would

6

reveal information about perceived strengths and weaknesses that competitors could leverage and exploit. Yoon Decl. ¶¶ 9-14.

In meet-and-confer discussions with Meta, it has taken the position that the information Discord seeks to seal is either "high-level" or "too generalized" to cause competitive harm. That is simply wrong. As explained in the attached declaration of MJ Yoon, Discord's proposed redactions target specific commercially sensitive information that has not been shared with the public and that would cause significant competitive harm to Discord if it were to be released. For example, a specific list of companies or products Discord considers competitors or tracks for business purposes (including the metrics Discord uses for that tracking) is not high-level or general. It tells the public and the market information about Discord's strategy and positioning that is not public now and that would permit Discord's competitors to leverage asymmetrical information about Discord's market position. Yoon Decl. ¶¶ 9-14. The same is true of Discord's user metrics. Those data are highly guarded and proprietary to Discord; forcing the company to publicly disclose that information—for the first time—in a trial to which it is not even a party would allow other market participants to unfairly target Discord's users. Yoon Decl. ¶¶ 9-14. There is nothing high-level or generalized about the harm to third-party Discord if this information were released.

There is also a strong privacy interest in sealing individuals' contact information, the disclosure of which could subject them to undue public exposure, and is not necessary to the issues in the case. *See Thomas v. Moreland*, No. CV 18-800 (TJK), 2024 WL 2846744, at *2 (D.D.C. June 4, 2024) ("the Court has little difficulty concluding that personal cell phone numbers and [non-party's] email address merit redaction.").

7

**Factor 5: The possibility of prejudice to those opposing disclosure.** The tailored redactions Discord proposes limit any prejudice to Meta, who remains free to advance its substantive arguments at trial.

**Factor 6: The purposes for which the documents were introduced during the judicial proceedings.** Meta and the FTC have identified the materials Discord seeks to protect as trial exhibits. They have also identified deponent Julia Tang as a "will call" trial witness. But trial has not yet started, and it remains to be seen how these materials will be used, if at all. *See McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 940 (D.D.C. 2003) (it is not yet clear that the Court will ultimately deem these documents to be probative and so the Court should restrict public access to these documents during the trial.).

## CONCLUSION

Taken together, the *Hubbard* factors weigh strongly in favor of sealing the limited potions of Discord's documents and Ms. Tang's testimony that Discord requests. Non-party Discord therefore respectfully requests that the Court grant its Motion for Confidential Treatment and enter an order that Discord's confidential business information, as described herein, be sealed accordingly.

April 7, 2025

*/s/ Adam D. Harber*
Adam D. Harber (D.C. Bar No. 978762)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Email: AHarber@wc.com

*Counsel for Discord Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April 2025, I served this Motion for Confidential Treatment on all counsel of record via the CM/ECF system.

/s/ *Adam D. Harber*
Adam D. Harber