IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **META PLATFORMS, INC.** <br><br> Defendant. | Civil Action No. 1:20-cv-03590 (JEB) <br><br> **PUBLIC VERSION** |

**PLAINTIFF FEDERAL TRADE COMMISSION'S STATEMENT REGARDING THE PARTIES' RULE 1006 EXHIBITS**

Only weeks after breaching the Court's discovery deadlines and expert disclosure rules by producing late data and a late supplemental report from one of its economic experts, Prof. Carlton, *see generally* FTC Mot. to Exclude, Mar. 18, 2025, ECF 428, Meta once again produced late supplemental expert analyses—this time from both Prof. Carlton and Prof. List—on March 28, 2025, under the pretense of disclosing its pretrial Fed. R. Evid. 1006 ("Rule 1006") exhibits. While the Court found "good cause" for Meta's prior breach because Meta's supplemental analyses related to a new event (the January 2025 TikTok Outage), *see* Order, Apr. 2, 2025, ECF 503, Meta's additional late analyses do not relate to new information. They could have and should have been disclosed more than a year ago, either in Meta's original expert reports or via a request to submit expert surrebuttal reports. This is improper, and the parties have reached impasse on this dispute and several other issues impacting the parties' Rule 1006 exhibits. As detailed herein, the FTC requests that the Court:

- Exclude 22 of Meta's proposed Rule 1006 exhibits, because they are not proper Rule 1006 exhibits and are improper late supplemental expert analyses from Profs. Carlton and List. *See* Attachment A ("Attachment A Exhibits"). Because these late analyses were not disclosed during expert discovery, the Court should also prevent Meta from proffering these analyses in alternative forms at trial (e.g., via direct testimony from the experts or as illustrative aids under Fed. R. Evid. 107 ("Rule 107")). *Infra* § I.

- Hold that 87 of Meta's other proposed Rule 1006 exhibits are not admissible Rule 1006 exhibits—however, because these reflect expert analyses that were disclosed with Meta's expert reports (including the now-permitted Carlton March 2025 Report), Meta may offer these exhibits as Rule 107 illustrative aids during an expert's testimony. *See* Attachment B ("Attachment B Exhibits"). *Infra* § II.

- Preadmit the FTC's one remaining disputed Rule 1006 exhibit (out of three). *Infra* § III.

I.     **Meta's Late Expert Analyses Proffered as Rule 1006 Exhibits Should be Excluded**

Under the guise of Rule 1006 exhibits, Meta has proffered 22 exhibits containing new expert analyses from Profs. Carlton and List that were not disclosed in either experts' initial reports or Prof. Carlton's March 2025 Report. *See* Attachment A Exhibits. Meta does not dispute that these exhibits were *not* disclosed in either experts' prior reports or the Carlton March 2025 Report. Meta maintains that this is acceptable because the exhibits are merely Rule 1006 summaries of voluminous records. Not so. These exhibits are not Rule 1006 summaries and instead represent new and late expert analysis and opinion, violating this Court's scheduling orders and Rules 26 and 37. The Court should thus reject these proposed Rule 1006 exhibits and preclude the substance of these exhibits from being offered in any form at trial.

A.     **Legal Standard: Rule 1006 exhibits should be objective recitations and not reflect expert opinion**

Rule 1006 provides, in relevant part, that "the court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence." Fed. R. Evid. 1006(a). Rule 1006 requires that such summaries be "representative;" they must "simply catalogue[] instances of objective characteristics." *United States v. White*, 737 F.3d 1121, 1136 (7th Cir. 2013). "[S]ummaries under FRE 1006 may not 'function as pedagogical devices that unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been directly proved.'" *DL v. Dist. of Columbia*, 2015 WL 6446087, at *6 (D.D.C. Oct. 23, 2015) (citations omitted).

Accordingly, Rule 1006 exhibits should not reflect expert analysis and opinion. "Such summary evidence must be a compilation of data without opinion." *United States v. Dish*

*Network LLC*, 75 F. Supp. 3d 916, 933 (C.D. Ill. 2014) (citation omitted); *see also United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 459 (D.D.C. 2020) ("In order to constitute summary evidence, the witness' declaration or testimony cannot contain opinions or conclusions." (citation omitted)). Where the preparation of a summary exhibit "required some use of [an expert's] expertise in analyzing large data sets" and the end result was not "a mere compilation of data," for example, such exhibits have been assessed as expert opinion evidence under Fed. R. Evid. 702 (governing expert testimony) rather than summary evidence under Rule 1006. *Dish Network*, 75 F. Supp. 3d at 933; *see also Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) ("The plaintiffs' proffered calculations are better described as a synthesis rather than a summary of the charts and other evidence on which [the Rule 1006 exhibit preparer] relied.").

A Rule 1006 exhibit that goes beyond summarizing underlying data by including "assumptions, inferences, and projections," and so reflects its preparer's "opinion, rather than the underlying information," is "thus subject to the rules governing opinion testimony and [] properly held inadmissible" under Rule 1006. *Eichorn*, 484 F.3d at 650 (citations omitted); *see also, e.g.*, *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 836-37 (C.D. Ill. 2014) (spreadsheet summarizing loan documents held "inadmissible as substantive evidence under Rule 1006" because "the criteria used to select loans on the spreadsheet" and the calculations used to assess damages were "based upon inferences and assumption" (citations omitted)).

This understanding of Rule 1006 has recently been reinforced by amendments to the Federal Rules of Evidence that took effect on December 1, 2024. That amendment "draws a distinction between summaries of voluminous admissible information offered to prove a fact, and illustrations offered solely to assist the trier of fact in understanding the evidence. The former are subject to the strictures of Rule 1006. The latter are illustrative aids, which are now

3

regulated by Rule 107." Fed. R. Evid. 1006 Comm. Notes on 2024 Amend. In turn, Rule 107 allows a party to "present an illustrative aid to help the trier of fact understand the evidence or argument," and provides that "[w]hen practicable, an illustrative aid used at trial must be entered into the record." Fed. R. Evid. 107(a), (c). The distinction is that Rule 1006 allows a summary of evidence to be admitted as substantive evidence, while under Rule 107 the witness's testimony serves that function. If an expert attempts to offer opinion testimony that has not been properly disclosed pursuant to Fed. R. Civ. P. 26 ("Rule 26"), that testimony is inadmissible, and Rule 107 does not provide an end run around Rule 26's disclosure requirements. Meta cannot try to achieve the same result by pretending its Rule 107 illustrative aids are Rule 1006 exhibits.

      **B.**      **Meta's "Attachment A Exhibits" reflect late expert opinion**

Meta's Attachment A Exhibits are far from mere recitations and reporting of the content of voluminous records. Instead, nearly all of them contain expert quantitative analyses by Profs. Carlton and List—well after the expert discovery deadline. As illustrative examples:

- Prof. Carlton: ▆▆▆ provides quantitative analysis from Prof. Carlton, purporting to assess ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. This is similar in kind to seven other new exhibits from Prof. Carlton. *See, e.g.*, ▆▆▆, ▆▆▆, ▆▆▆, ▆▆▆, ▆▆▆, ▆▆▆, ▆▆▆. In addition, three new exhibits related to Prof. Carlton purport to detail "▆▆▆▆▆" that have appeared on Facebook, Instagram, and WhatsApp since discovery closed. *See, e.g.*, ▆▆▆, ▆▆▆, ▆▆▆. These are not summaries of voluminous records, and instead reflect Prof. Carlton's selective and subjective characterizations of ▆▆▆▆ emphasized in Meta's self-serving press releases. These exhibits therefore do not qualify as Rule 1006 summaries.

- Prof. List: ▆▆▆ provides quantitative analysis from Prof. List of purported "▆▆▆

4

███" from his empirical studies. This is similar in kind to the other ten new exhibits from Prof. List. *See, e.g.*, ███, ███████. (In recent days, Meta withdrew ███ and ███ as Rule 1006 exhibits but reserved the right to present these analyses by other means at trial. The FTC maintains its request for relief to preclude these late analyses from being offered at trial via different means.)

In effect, Meta is attempting to circumvent the Court's expert disclosure deadlines and Rule 26's expert disclosure obligations by proffering expert opinion surrebuttals through the vehicle of Rule 1006 on the eve of trial. Underscoring the point, in a meet-and-confer on the FTC's objections, Meta explicitly acknowledged that these exhibits were Profs. Carlton's and List's responses to analyses offered by FTC expert Prof. Hemphill in his rebuttal report.

But as previously detailed in the FTC's motion to exclude Prof. Carlton's late March 2025 Report, the time for Meta to supplement its expert reports—or to request a surrebuttal—has long since passed. *See* FTC's Mot. to Exclude, Mar. 18, 2025, ECF 428; *Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003) ("The interest served by requiring the disclosure of expert opinions is self evident."). While the Court found good cause for belated disclosure of analysis regarding the January 2025 TikTok outage, Meta has no excuse as to why it only now seeks to supplement its experts' opinions. Nineteen of the 22 exhibits identified above provide empirical analyses of data *in Meta's possession* before the close of expert discovery. If Meta's experts wanted to proffer analysis of that data, they should have done so in their initial reports. If Meta's experts wanted to submit surrebuttal reports to Prof. Hemphill's rebuttal report, Meta should have requested leave to file surrebuttal reports more than a year ago. And while Prof. Carlton's three exhibits dealing with ███████ relate to information post-dating discovery, there is no good cause for permitting Prof. Carlton to offer new analysis of this information. Had Meta wanted to

5

admit information regarding its ███████████████, it could have submitted its press releases on its regular exhibit list.

The Court should therefore exclude Meta's Attachment A Exhibits because they are not Rule 1006 summaries of voluminous records and contain new and untimely expert opinion. The Court should further prevent Meta from offering their substance in alternative form at trial—e.g., through direct testimony or Rule 107 illustrative aids. With no good cause, exclusion is the appropriate remedy. *See* FTC Mot. to Exclude 6-9, Mar. 18, 2025, ECF 428; *see also Laplace-Bayard v. Battle*, 295 F.3d 157, 162 (1st Cir. 2002) (affirming district court's exclusion of expert testimony disclosed merely three days before trial).

If the Court nonetheless opts to permit this additional late expert testimony, it should grant relief to mitigate the prejudice to the FTC from Meta's now-extensive late expert disclosures. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-58 (7th Cir. 2004) (listing "countermeasures" to mitigate prejudice of "failure to disclose experts," including "holding additional depositions to retrieve the information not available because of the absence of a report"); *accord Howard v. Gray*, 291 F.R.D. 6, 9 (D.D.C. 2013). That relief should cover both the Carlton March 2025 Report and these new disclosures, and include: (1) if the FTC chooses, after assessing backup materials,[1] a deposition of up to 5 hours of both Profs. Carlton and List, at least one week before either is called at trial; (2) an opportunity for the FTC's experts to offer analyses and rebuttal testimony to respond to Meta's post-discovery expert disclosures; and (3) leave for the FTC to admit into evidence up to fifty additional documents in response to Meta's late disclosures. *See* FTC Reply to Meta's Opp. to Mot. to Exclude 5, Mar. 23, 2025, ECF 463.

---

[1] Meta produced the Attachment A Exhibits to the FTC without even providing the traditional backup materials required of expert discovery. Meta agreed to provide this backup to the FTC on Friday, April 4, 2025, but the FTC is still waiting for this production.

## II. Meta's "Attachment B Exhibits" Fail to Meet the Requirements of Rule 1006

Meta's proposed Rule 1006 exhibits additionally include 87 exhibits copied from the expert reports of six of Meta's experts: Profs. Carlton (including his March 2025 Report), List, Kaplan, Nieh, Tucker, and Ghose. While these exhibits were timely disclosed during expert discovery or permitted by the Court's Apr. 2, 2025 Order—and thus are not untimely expert opinions—they are not proper Rule 1006 exhibits because they are not objective summaries of underlying, admissible voluminous records, as required by Rule 1006.

Rather, these exhibits are replete with expert opinion, analysis, and characterizations of the sort allowed by Rule 107 but not by Rule 1006. For example, these exhibits include:

- Numerous empirical analyses from Prof. Carlton, applying his own methodologies. *See, e.g.*, ▮ *through* ▮.

- Numerous empirical analyses from Prof. List, applying his own methodologies. *See, e.g.*, ▮ *through* ▮ (▮); ▮ *through* ▮ (same); ▮ (▮); ▮ (▮).

- Quantitative analyses from Prof. Nieh that do not simply report out the content of the underlying data. *See e.g.*, ▮; ▮.

- Characterizations from Prof. Ghose regarding the ▮ ▮. *See e.g.*, ▮.

These exhibits, which transform and characterize the underlying evidence, and layer in expert opinion and characterizations, do not qualify as summaries to prove the content of voluminous records. *See Eichorn*, 484 F.3d at 650 (exhibits involving "assumptions, inferences, and projections" disallowed by Rule 1006); *Su v. E. Penn Mfg. Co.*, 2023 WL 2796120, at *4-5

7

(E.D. Pa. Apr. 5, 2023) (excluding Rule 1006 exhibit where "discretionary decisions are so pervasive throughout the chart" (cleaned up)).

Nor has Meta established that the evidence underlying these exhibits is admissible, as also required by Rule 1006. Numerous exhibits have plain hearsay issues. *See, e.g.*, ▮ *through* ▮ (▮); ▮ (▮); ▮ *through* ▮ (▮).

Meta suggested the FTC's objections to admissibility would unduly take up the Court's time and Meta's trial time, but this has the issue backwards. As the FTC explained to Meta, Meta is welcome to follow the standard course of proffering its expert exhibits as illustrative aids, which would be admitted into the trial record under Rule 107, assuming the expert's corresponding testimony is otherwise admitted. *See* Fed. R. Evid. 107(c). And given that experts can rely on inadmissible evidence in rendering opinions, if the evidence is of the type used in their field, *see* Fed. R. Evid. 703, this approach would obviate the need for the parties or the Court to resolve whether the underlying evidence is admissible. Meta, however, has pursued the highly inefficient—and inappropriate—process of attempting to admit its experts' analyses as Rule 1006 exhibits, which requires evaluation of the admissibility of the underlying evidence.

If Meta were to identify one or more exhibits out of the *dozens* proffered that are properly neutral and accurate summaries of admissible voluminous records, the FTC would entertain engaging further. But as it stands, the FTC's review reveals that these exhibits are replete with expert opinion and underlying hearsay issues—making Meta's request that its expert exhibits be

admitted *en masse* as Rule 1006 exhibits inappropriate. The FTC thus asks the Court to exclude the "Attachment B" proffered Rule 1006 exhibits, without prejudice to Meta proffering them as Rule 107 illustrative aids in connection with expert testimony.

### III.  The FTC's Remaining Disputed Rule 1006 Exhibit is a Proper Summary

The FTC has proffered only three Rule 1006 exhibits, and the parties have already agreed that two are suitable for preadmission. The FTC requests that the Court resolve Meta's remaining objections to PX8013A, after which Meta agrees it can also be preadmitted.

PX8013A is a summary to prove the content of an Apple spreadsheet that provides records of historical app descriptions of selected apps offered through Apple's App Store. Meta has not disputed that the descriptions Apple produced to the parties were accurately recorded. Instead, Meta argues that PX8013A is an "improper summary" under Rule 1006 and that the underlying evidence is hearsay and therefore inadmissible. Neither objection has merit.

First, Meta lodged an "improper summary" objection to PX8013A. But PX8013A readily meets the standard, detailed above, of being an objective summary recitation of a voluminous record. For each of the twenty-four apps in the spreadsheet, PX8013A includes a table that lists the app's first description followed by the description that was displayed every year thereafter on January 1st. During a meet-and-confer, Meta's counsel elaborated on its "improper summary" objection only by saying that PX8013A was too long. But a summary's length is not relevant to its admissibility; to the contrary, PX8013A enables this Court to examine the contents of more than 8,300 rows of a spreadsheet which are not otherwise conveniently examined, which is the purpose of a Rule 1006 exhibit.

Second, Meta objects to PX8013A because it argues that the underlying information it summarizes is inadmissible, lodging a general "double-hearsay" objection to the Apple spreadsheet and its contents. This objection is unfounded. The Apple spreadsheet is an

9

authentic summary of information produced by Apple, and Meta has offered no specific basis for believing that it is inauthentic or that it does not qualify as a business record or other hearsay exception.  The app store descriptions recorded in the spreadsheet are therefore admissible as accurate recitations of each app's description as shown in the Apple App Store.

      Moreover, Fed. R. Evid. 803(17)'s hearsay exception for commercial publications permits use of the app store descriptions as proof of the underlying truth of the matters asserted. As a court has found, "[t]he public relies on this information from the Google Play Store (and similar services, like the Apple App Store) for a description of the applications, number of downloads, and customer reviews.  Google 'know[s] that their work will be consulted; if it is inaccurate, the public or the trade will cease consulting their product.'" *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 222 n.11 (S.D.N.Y. 2022) (citations omitted).  The same applies here to the Apple App Store descriptions, which consumers rely on when downloading apps to their mobile devices. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 967 (9th Cir. 2023) (describing how developers distribute their apps through Apple's App Store with Apple reviewing the app).  Knowing that its users rely on its app descriptions, Apple requires those descriptions to "accurately reflect the app's core experience," and to be updated as new features are added.  *Id.* at 991 ("As part of iOS human review, a reviewer confirms that an app corresponds to its marketing description . . . ."); App Review Guidelines § 2.3, https://developer.apple.com/app-store/review/guidelines/.  Further, even if they were hearsay, those app store descriptions are relevant evidence because, among other things, they show how each app marketed itself to the public, which informs the industry and public perception. *See In re Ebay Seller Antitrust Litig.*, 2010 WL 760433, at *6 n.6 (N.D. Cal. Mar. 4, 2010) (overruling relevance, authentication, and hearsay objections to documents supporting *Brown Shoe* factors).

| | |
|---|---|
| Dated: April 7, 2025 | Respectfully submitted,<br><br>*/s/ Daniel Matheson*<br>Daniel Matheson (D.C. Bar 502490)<br>Krisha Cerilli (D.C. Bar 983281)<br>Nathan Brenner (IL Bar 6317564)<br>Noel Miller (D.C. Bar 1026068)<br>Oren Vitenson (D.C. Bar 90005750)<br>Benjamin Rashkovich (D.C. Bar 5972724)<br>Federal Trade Commission<br>Bureau of Competition<br>600 Pennsylvania Avenue N.W.<br>Washington, DC 20580<br>Telephone: (202) 326-2075<br>Email: dmatheson@ftc.gov<br><br>*Attorneys for Plaintiff*<br>*Federal Trade Commission* |