**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 1:20-cv-03590-JEB |

## JOINT STATUS REPORT

Meta and Snap are filing this joint submission pursuant to the Court's request on April 21, 2025. *See* Trial Tr. at 10:13-15 (Apr. 21, 2025 AM).

**I.    Meta's Position**

Snap has demanded that Meta disclose to it any Snap-produced documents and deposition testimony, and specific questions Meta will ask witnesses about the materials, before Meta uses such material in any way during trial. That prior disclosure is unnecessary in light of the robust confidentiality orders the Court has already entered. Nonetheless, in an effort to reach a compromise, Meta agreed to disclose Snap documents and testimony (but not specific questions) it may use to a team of Snap's outside counsel who are "walled off" from preparing the witness to testify, two days before the materials are used in court. More specifically, Meta has proposed:

- By 8pm EST two days before anticipated use, Meta shall disclose to a walled-off team of outside counsel the Snap-produced documents or deposition testimony Meta may use in its examination. This disclosure obligation applies only to documents or deposition testimony designated as Confidential or Highly Confidential under the Protective Order. It does not apply to public documents or statements.

- The walled-off outside attorneys may work with walled-off in-house Snap lawyers for purposes of assessing any confidentiality issues. These outside and in-house lawyers may only share the disclosed information with each other; they may not disclose it to the FTC, to the team preparing the witnesses, or to the witnesses.

Although Snap agrees to a two-day disclosure period, it has (1) rejected the use of a walled-off team of lawyers; and (2) demanded that Meta disclose to Snap in advance the specific questions Meta plans to ask any Snap witness or expert witness that could implicate a Snap document. The Court should adopt Meta's proposal and reject Snap's position.

**A. Meta's Proposal is Reasonable.** Meta's proposal strikes an appropriate balance: it provides Snap with sufficient time and opportunity to protect its confidential information while protecting Meta's cross-examination strategy from premature disclosure to an adverse non-party and the FTC. Meta's proposal is similar to the walled-off process the Court has established for the FTC and Meta. *See* Trial Confidentiality Order § 1(b), ECF 478. The Court adopted a walled-off procedure to allow the FTC to have documents it may use for impeachment reviewed

2

for confidentiality without disclosing those documents to Meta lawyers preparing the witness. The Court expressly rejected the alternative proposal that would have had parties disclose cross material to trial teams before examinations because such an approach would "cut into the punch of . . . impeachment." Hr'g Tr. at 12:13-14 (Mar. 7, 2025); *id.* at 16:4-7 ("[I]t seems to me the danger you are trying to prevent, and I completely agree with it, is a witness getting essentially cross-exam coaching."). A similar danger exists here. Even if Snap counsel does not intend to use information it learns from confidentiality negotiations to prep Snap witnesses, it is unrealistic to expect that Snap's lawyers will not be influenced by these discussions in prepping witnesses. Meta should not have to disclose its exam strategy to Snap.

Additionally, Snap has been working with the FTC on this case for years. Before the FTC filed its complaint, Snap collected a dossier (called "Project Voldemort") of theories for antitrust lawsuits against Meta, and it shared that dossier with the FTC. *See*, *e.g.*, Fortune (Sept. 23, 2019), https://perma.cc/C768-L877.. And Snap's cooperation with the FTC has continued. Just two months ago, for example, the FTC shared with Snap a list of the Snap exhibits Meta had included on its *preliminary* version of Meta's exhibit list (without Meta's consent).

A walled-off procedure is necessary to guard against Snap's disclosure of Meta's trial strategy, even inadvertently, to its witnesses and the FTC.

3

**B. Snap's Refusal to Adopt a Walled-Off Team Is Unreasonable.**  Snap initially agreed to set up a walled-off team of outside counsel, subject to a number of unreasonable conditions – including that Meta disclose all of its exam questioning and stipulate to Snap's inaccurate claim that Meta violated the protective order in its opening statement.  It has since changed its position and now argues that there should be no walled-off team at all, claiming that it would be too burdensome.  But Snap can easily designate one of its seven outside counsel to serve in this role.  Moreover, Snap is not a neutral third party; it asked the FTC to bring this case and has cooperated with the FTC since.  Snap's refusal to accept the walled-off procedure simply confirms that its interest here is not merely to protect confidential information but to gain a tactical advantage while doing so.

Snap also argues that Meta's walled-off proposal should not extend to Snap's in-house counsel.  But that defeats the purpose of any walled-off requirement.  Once more, the Court should follow the practice it has already set in this case.  The walled-off process established for Meta required that Meta appoint a walled-off in-house counsel who "shall agree not to share" information "disclosed by the FTC" "with the outside-counsel trial team before" the exam.  Trial Conf. Order § 1(b).  The same process should apply here.

**C. Meta Should Not Be Ordered to Disclose Its Questioning to Snap.**  The Court should also reject Snap's unreasonable suggestion that Meta inform Snap of trial questioning using Snap material.  That is unnecessary given the other protections in place and is beyond what the Court has previously ordered.  It should go without saying that Meta should not be ordered to disclose its examination outlines (attorney work product), in advance, to a hostile nonparty like Snap, who is working with the FTC, to coach its witnesses.  And, certainly not to the same outside and in-house Snap counsel preparing its witnesses for trial testimony.

## II.   Statement of Nonparty Snap Inc.

Snap Inc. ("Snap") produced over 10,000 documents in this case. Much of it is designated as confidential or highly confidential and produced pursuant to the Protective Order ("Protected Material"). *See* Dkt. 134. Despite Snap's repeated attempts to ensure that its competitively sensitive confidential information remained sealed at trial, including by filing a motion to seal, Meta has committed multiple violations of the Protective Order resulting in the public disclosure of Protected Material. To ensure there are no further violations, Snap requests that Meta be required to provide Snap's undersigned counsel ("Snap's Counsel") notice 48 hours before it plans to use Snap's Protected Material. This approach would afford Snap a meaningful opportunity to engage with Meta in advance about potential confidentiality issues.

Meta committed multiple violations of the Protective Order on the first day of trial. First, Meta's opening statement slide deck displayed information that was designated as "Highly Confidential Information" by Snap under the Protective Order, including material that was specifically disputed by the parties in Snap's pending Motion to Seal. Second, Meta disseminated its opening statement slide deck to the public with ineffective redactions, disclosing the full content of several slides containing material that was sealed pursuant to the Protective Order. Meta made these disclosures despite: (1) confirming by email that it would not disclose Snap's confidential information in its opening statement; (2) providing no advance notice to Snap that it intended to act contrary to that representation; (3) receiving no advance permission from Snap to do so; and (4) having no authorization from the Court to do so.

Given these events, Snap sought to work with Meta on a protocol to protect Snap's confidential information going forward. Snap proposed a simple solution: in the future, Meta would provide Snap with meaningful notice in advance of the use of any Protected Material at

trial. Meta rejected that proposal. Snap therefore promptly raised these issues with the Court, which directed Snap and Meta to meet and confer to establish a process for resolving disputes concerning the Protected Material and, if unable to reach an agreement, to submit a joint status report. Meta and Snap conferred multiple times by phone and email but were unable to agree.

Snap respectfully requests that the Court adopt the following confidentiality protocol to address Snap's valid concerns about Meta's use at trial of Snap's Protected Material.

### A. Snap's Proposed Confidentiality Protocol

Snap's proposal is straightforward: If Meta intends to use Snap's confidential information in open court, then it should provide Snap with notice and an opportunity to confer in advance. In particular, Snap proposes that it have such an opportunity with respect to: (1) any material contained in Meta's proposed trial exhibits and deposition transcripts that are the subject of the pending Motion to Seal; (2) any Snap material responsive to the trial subpoenas issued by Meta (which Meta has already agreed are appropriate for sealing at trial); and/or (3) any testimony discussing the substance of those materials, whether or not an agreement is reached between Snap and Meta as to redactions for certain portions of Snap's Protected Material. With such materials, Meta shall inform Snap's Counsel, 48 hours in advance, of its intent to use such materials. Alternatively, Meta need not give advance notice as long as it affords Snap's Protected Material and any testimony discussing the substance of such material "Complete Nondisclosure" treatment as set forth in the Court's "Order Regarding Confidentiality Procedures Before and At Trial" and the Court's "Second Order Regarding Confidentiality Procedures At Trial." Dkt. 478, 545. This framework would provide Snap's Counsel a meaningful opportunity to review the Protected Material and ensure that Meta complies with existing court orders and agreements. Given the prior

disclosure violations by Meta, such a protocol is warranted and appropriate. The FTC has already readily agreed to provide Snap notice in this manner.

Meta rejected this proposal based on one purported concern: disclosure of trial strategy to the FTC or witnesses. On that basis, Meta asks the Court to require that Snap create an entirely new "wall team" comprised of additional outside counsel and internal counsel who would receive advance notice from Meta about the anticipated use of Protected Material. The Court should reject that proposal for two fundamental reasons.

First, a wall team is unnecessary. Any concern about protecting trial strategy is easily addressed by an agreement from Snap's Counsel that counsel will not disclose any information obtained solely through these disclosures with any third parties, the FTC, or any witnesses testifying at trial. Snap's Counsel is prepared to make such a commitment and has indicated that to Meta's counsel. And Meta would need not provide Snap any advance notice so long as it affords the materials "Complete Nondisclosure" treatment. Meta has already agreed that all documents produced in response to the trial subpoena are subject to "Complete Nondisclosure" treatment.[1]

Second, Meta's proposal would impose an enormous burden on Snap, which is not a party to this case but has already expended enormous resources to comply with Meta's demands.[2] Snap would need to onboard yet more outside counsel, as well as a new inside counsel, on a complicated and voluminous record for the sole purpose of serving as Snap's wall team. This is an impractical and unnecessary burden and expense for Snap, especially given that this is the third week of trial

---

[1] In a good faith effort to resolve this issue, Snap considered the possibility of a wall team for the very limited purpose of reviewing materials relating only to the three Snap witnesses. That approach would have confined the need for additional lawyers to the specific circumstances where Snap's Counsel even had contact with a testifying witness. Meta insisted, however, on a wall team for disclosures concerning any witness, despite the absence of any plausible trial-disclosure concerns. Meta now seeks to use Snap's efforts to reach accommodation in the meet and confer process against it.

and there is less than a week before Snap's first witness will testify. While such a procedure may be appropriate for the Parties, it is not warranted for a third party like Snap.

Dated: April 29, 2025                    Respectfully submitted,

/s/ Mark C. Hansen
Mark C. Hansen (D.C. Bar No. 425930)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Ana Nikolic Paul (D.C. Bar No. 1531904)
Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
Justin B. Berg (D.C. Bar No. 90003841)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Email: mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*

/s/ David A. O'Neil
David A. O'Neil (D.C. Bar 1030615)
Nicholas Folly (NY Bar 5015383)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 383-8000
Email: daoneil@debevoise.com

*Counsel for Snap Inc.*