# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

META PLATFORMS, INC.,

      Defendant.

Case No. 1:20-cv-03590-JEB

**FILED UNDER SEAL**

### Meta's Opposition To The FTC's Bench Brief
### Regarding Post-Discovery Evidence

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................5

I.      The Court Already Denied The FTC's Motion To Exclude Post-Discovery Evidence ......5

      A.      The FTC Offers No Basis To Reconsider This Court's Prior Rulings ...................6

      B.      Recent Government Antitrust Actions Undermine The FTC's Request ................7

II.     The FTC Has Waived And Forfeited Its Objection To Current Circumstances.................9

III.    Meta Witness Testimony About Current Circumstances Is Proper And Reliable............12

      A.      Meta's Use Of Illustrative Aids Has Been Appropriate .........................................12

      B.      The FTC Does Not Identify Any Unreliable Testimony .......................................13

IV.    Meta Would Be Prejudiced By Exclusion Of Evidence Of Current Circumstances .........15

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES[*]

Page

## CASES

*Boyd v. Wells Fargo Bank, N.A.*, 2016 WL 7323293 (S.D. Ga. Dec. 14, 2016),
    *aff'd sub nom. Boyd v. Experian Info. Sols., Inc.*, 692 F. App'x 980
    (11th Cir. 2017) ........................................................................................10

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997) ...........10

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327 (2020).......6

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962).......................7

*FTC v. AbbVie Inc.*, 976 F.3d 327 (3d Cir. 2020)....................................................6, 7

\* *FTC v. Facebook, Inc.*:

    560 F. Supp. 3d 1 (D.D.C. 2021) .......................................................................5

    581 F. Supp. 3d 34 (D.D.C. 2022) .....................................................................5

*FTC v. Kroger Co.*, No. 24-347, ECF No. 407 (D. Or. Aug. 25, 2024).........................7

*FTC v. Qualcomm Inc.*:

    2018 WL 6597273 (N.D. Cal. Dec. 13, 2018) ..............................................9, 10

    969 F.3d 974 (9th Cir. 2020) .............................................................................9

\* *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019) ....................................6

*Goodman v. Blount*, 427 F. App'x 8 (D.C. Cir. 2011)..................................................6

*Jinks-Umstead v. England*, 2005 WL 3312947 (D.D.C. Dec. 7, 2005) ........................13

*Keepseagle v. Perdue*, 856 F.3d 1039 (D.C. Cir. 2017) ..............................................9

*Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373 (5th Cir. 2012) ...........12

*Morrison v. Millenium Hotels*, 2021 WL 1534293 (S.D.N.Y. Apr. 19, 2021) ...............11

*R & R Assoc., Inc. v. Visual Scene, Inc.*, 726 F.2d 36 (1st Cir. 1984) ...........................13

*United States v. AT&T Inc.*, 310 F. Supp. 3d 161 (D.D.C. 2018), *aff'd*,
    916 F.3d 1029 (D.C. Cir. 2019)......................................................................15

*United States v. Gen. Dynamics Corp.*, 415 U.S. 486 (1974).......................................12

---

[*] Authorities principally relied upon are marked with an asterisk.

*United States v. Google LLC*:

    No. 20-3010, ECF No. 357 (D.D.C. May 25, 2022)........................................................8, 10

    No. 23-108, ECF No. 201 (E.D. Va. May 10, 2023)........................................................8, 10

    747 F. Supp. 3d 1 (D.D.C. 2024) ...................................................................................8

    2025 WL 1132012 (E.D. Va. Apr. 17, 2025) .................................................................9

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ....................................................15

*United States v. Smith*, 804 F.3d 724 (5th Cir. 2015) .................................................................13

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ...............................................7, 8

*Vehicle Mkt. Rsch., Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251 (10th Cir. 2016)............................12

*Walsh v. Hagee*, 316 F.R.D. 1 (D.D.C. 2014), *aff'd*, 2014 WL 4627791
(D.C. Cir. July 11, 2014) ................................................................................................6

## STATUTES AND RULES

Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*:

    § 13(b), 15 U.S.C. § 53(b) .........................................................................1, 6, 7, 8

Fed. R. Civ. P.:

    Rule 26(e)........................................................................................................11

Fed. R. Evid.:

    Rule 107(a)......................................................................................................12

    Rule 1002 ........................................................................................................13

## OTHER MATERIALS

Reply Br. of the FTC, *FTC v. Shire ViroPharma, Inc.*, No. 18-1807,
2018 WL 4191155 (3d Cir. Aug. 30, 2018) ...................................................................6

*United States v. Google LLC*, No. 20-3010 (D.D.C.):

    Tr. of Bench Trial, ECF No. 989 (Nov. 1, 2023) ...........................................................8

    Tr. of Status Conf., ECF No. 353 (May 12, 2022)..........................................................8

*United States v. Google LLC*, No. 23-108 (E.D. Va.):

Tr. of Bench Trial, ECF No. 1338 (Sept. 12, 2024) ..............................................................8

Tr. of Bench Trial, ECF No. 1351 (Sept. 9, 2024) ...............................................................9

Tr. of Bench Trial, ECF No. 1360 (Sept. 20, 2024) .............................................................9

## INTRODUCTION

The FTC must prove that Meta "is violating" the antitrust laws. That is what the FTC repeatedly promised it would do, what the Court held the FTC must do, and what the statute under which the FTC sues – Section 13(b) – requires. Yet, one month into trial, the FTC belatedly seeks to preclude Meta from offering present-day evidence and instead have the Court decide liability based on a discovery record frozen in time by 2023. The reason is plain. Meta's present-day evidence – although unnecessary to rule against the FTC – so clearly undermines the FTC's theories that the FTC must seek to exclude it.

The Court should reject the FTC's desperate gambit. The Court has already ruled that present-day evidence is "certainly relevant" and "probative." The FTC offers no basis for reconsideration and has waived any ability to exclude this evidence several times over. Moreover, the FTC has long known this evidence would be the focus of trial, yet in discovery agreed Meta could apply a June 2022 cut-off date and never sought more recent data. Nor did the FTC seek a pretrial order barring testimony about current circumstances (which would have been meritless) despite Meta expressly stating that it would elicit such testimony at trial. The first time the FTC sought new data was two weeks *into* trial. Even then, when Meta offered to respond to targeted requests (which the FTC's were not), the FTC cut off discussions and filed its motion. The FTC would rather have a legal dispute than (damaging) data going to the merits.

Given that this Court must decide whether Meta has a monopoly *today*, Meta witnesses have appropriately testified about the present, often based on data they observe in the ordinary course of their jobs. At times, they have properly used illustrative aids to assist the Court in understanding their testimony. And the FTC itself has questioned Meta and third-party witnesses about the present, including current data – as it must, given its burden of proof – and can hardly cry foul when Meta does the same. This Court should deny the motion.

**BACKGROUND**

Throughout this litigation, the FTC represented that it would prove at trial that Meta is violating the antitrust laws *today*.  In its amended complaint, the FTC alleged an ongoing violation of the antitrust laws.  *See* ECF No. 82, ¶ 233 ("Facebook's course of conduct is ongoing.").  In opposing summary judgment, the FTC argued that Meta currently has monopoly power because "demand for friends and family sharing has been large and important throughout the relevant period and remains so *today*."  ECF No. 328-1, at 3, 8 (emphasis added).  And in its pretrial brief, the FTC insisted that it would prove "Meta wields monopoly power" (present tense) and that such power "is durable" (also present tense).  ECF No. 519, at 12, 14.

The FTC requested discovery that it believed was relevant to its case.  The parties agreed to a June 30, 2022 cut-off date for Meta's document collection.  *See* Ex. A at 2 (FTC:  "[W]e have proposed (and you agreed) to an end date for collection of June 30, 2022.").  For the FTC's principal data requests, the FTC asked for what "time period" Meta would produce data.  *See* Ex. B at 4-9.  Meta proposed a June 30, 2022 cutoff.  *See* Ex. C at 4, 6, 8.  And the FTC agreed.  *See* Ex. D at 4.  Meta then provided detailed disclosures of the time periods for which it produced data, including any deviation from the June 30, 2022 cut-off date.  *See*, *e.g.*, Exs. E-H.  When the FTC believed it needed more current discovery, the FTC knew to ask.  In one instance, the FTC moved (successfully) to compel Meta to refresh portions of its *document* production through April 1, 2023.  *See* ECF No. 278, at 3 (FTC:  seeking "additional nine months of transparency"); ECF No. 282 (granting motion).  But the FTC *never* pressed complaints about the time periods for which Meta produced data and *never* sought more recent data.

Fast forward to the parties' trial preparation.  In February 2025, Meta produced additional data to the FTC concerning the TikTok ban in January 2025 and updating prior Facebook and Instagram usage data through the beginning of 2025.  *See* ECF No. 422-3, Exs. C-D.  Meta also

served trial subpoenas in February on TikTok, YouTube, and Snap seeking data regarding the recent TikTok ban and updated usage data. *See*, *e.g.*, *id.*, Ex. H. On March 6, Meta served a short declaration from Professor Carlton with this new data to support his previously disclosed opinions. *See id.*, Ex. E. The data from the TikTok ban undermined the FTC's gerrymandered market of Facebook, Instagram, and Snapchat. And the more recent Meta usage data undermined the FTC's argument of a "core use" of friend-and-family sharing on Facebook and Instagram by showing an ongoing decline in time spent on friends-and-family content.

The FTC thus sought to exclude it all, without seeking any additional data. *See* ECF No. 422-1. In opposition, Meta explained that current data is probative of whether Meta has "a monopoly today." ECF No. 450-1, at 1. Critically, Meta also noted that excluding new data would be unwarranted because fact witnesses already would "testify about competition *today*" – a fact the FTC did "not dispute." *Id.*; *see id.* at 9 ("The FTC's motion does not and cannot seek to bar . . . testimony [of recent data] from fact witnesses."). In reply, the FTC asked for multiple forms of relief but did not seek more recent data from Meta or any third party, and it did not seek to preclude fact witnesses from testifying about current circumstances. *See* ECF No. 463, at 5.

On April 2, the Court denied the FTC's motion to exclude the current data. It explained that "Meta is correct that the FTC must prove that it is currently violating the antitrust laws," which made the data "certainly relevant" and "probative." ECF No. 503. The Court also refused to quash the third-party subpoenas. *See* ECF No. 505, at 8. Despite that ruling, the FTC still chose not to ask for more recent data before trial – not from Meta and not from a single nonparty.

The FTC's decision not to ask for more recent data was not because the data was irrelevant. The FTC promised in its opening statement that it would "show that Meta *is* a monopolist of personal social networking services in the United States." Apr. 14 Trial Tr. 42:23-25 (emphasis added); *see id.* at 44:12-15 (discussing Instagram at the "present time"). The FTC

even promised to rebut Meta's argument that the personal social networking services "market does not exist or has become less important" by proving the "basic truth" that Facebook and Instagram "still ha[ve] a core use of friends and family sharing" today.  *Id.* at 63:5-12, 66:8-18.

The FTC opened its case-in-chief by attempting to elicit testimony that it needed to establish a current violation of the antitrust laws.  The FTC pressed the first witness it called – Mr. Zuckerberg – about current circumstances.  *See*, *e.g.*, *id.* at 164:1-6 ("Q.  And you would agree that connecting with friends and family is one of the jobs to be done or core purposes that the Facebook application provides today; right?"); *id.* at 181:20-23 ("Q.  So friend sharing, in the sense of connecting with users known to a user in real life, continues to be important today to both Facebook and Instagram, just as you wrote in April 2022; right?").  The FTC continued to question other witnesses similarly.  *See*, *e.g.*, Apr. 17 Trial Tr. 151:23 ("Q.  Today, what is the core use case of YouTube?"); Apr. 23 Trial Tr. 164:20-166:10 (questioning expert about June 2024 Pew survey); *id.* at 167:6-16 (questioning expert about any change in norms "for mass personal relationship maintenance with friends and family since mid-2022").

Two weeks into trial – as present-day evidence undermining the FTC's case began to mount – the FTC changed course.  On April 28, the FTC complained for the first time that Meta was "inject[ing] unreliable information into the record that has not been subject to complete discovery."  ECF No. 589-6, at 1.  The FTC demanded that Meta produce a massive amount of data within four days.  *See id.* at 2.  Meta promptly met and conferred with the FTC and explained that, while the FTC's requests were untimely and overbroad (especially mid-trial), Meta was willing to consider more targeted data requests on an expedited basis.  *See* Ex. I.  The FTC ignored that offer and instead filed the present motion on May 9 – after four weeks of trial – with a briefing schedule that postponed resolution of this issue until after Meta rested its case.

**ARGUMENT**

What the FTC seeks is unclear.  On the one hand, it asks (at 1) for extraordinary relief that would limit this Court to a record frozen in time as of June 2022 (for most data) or April 2023 (for documents):  "the Court should base its liability determination on the discovery record."  *See also* FTC Br. 2, 5.  On the other hand, it asks (at 13) for vague (but presumably narrower) "[c]ommon sense limits" on testimony about "new data and information."  *See also* FTC Br. 6-10 (objecting to allegedly "unreliab[le] . . . live testimony on unproduced data"). However framed, the Court should deny the FTC's motion for multiple reasons.  There is no basis to reconsider the Court's prior ruling that current circumstances are relevant because the FTC must prove liability *today*.  *See* Part I.  The FTC has forfeited and waived any right to exclude present-day evidence.  *See* Part II.  Meta's witnesses have provided reliable testimony about current market conditions.  *See* Part III.  And it would greatly prejudice Meta to change the ground rules at trial after Meta has rested its case.  *See* Part IV.

**I.      The Court Already Denied The FTC's Motion To Exclude Post-Discovery Evidence**

The Court has ruled multiple times that "the FTC must prove that [Meta] is currently violating the antitrust laws."  ECF No. 503; *see also FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 26 (D.D.C. 2021); *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 58-59 (D.D.C. 2022).  As a result, this Court rejected the FTC's prior attempt to exclude certain recent data because that data "is certainly relevant" and "probative."  ECF No. 503.  Contrary to the FTC's claim (at 5), that ruling was not limited to data on "the discrete public event of the TikTok ban."  The ruling also encompassed recent usage data for Facebook, Instagram, and third-party apps, *and* Professor Carlton's supplemental analysis of that data.  Further, in briefing leading to that ruling, Meta made clear its witnesses would testify to present-day facts, *see* ECF No. 450-1, at 1, 9, and the FTC raised no objection, *see* ECF No. 463.  That is fatal to the FTC's present motion.

A.    **The FTC Offers No Basis To Reconsider This Court's Prior Rulings**

The FTC implicitly seeks reconsideration in claiming that it need only prove "Meta *has*

*violated* the antitrust laws as alleged in the Amended Complaint"; according to the FTC,

consideration of "recent market conditions" can wait until a remedies phase. FTC Br. 11-12

(emphasis added). The FTC does not come close to satisfying the heavy burden for

reconsideration "of identifying 'an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice.'" *Walsh v. Hagee*,

316 F.R.D. 1, 2 (D.D.C. 2014) (quoting *Goodman v. Blount*, 427 F. App'x 8, 8 (D.C. Cir. 2011)),

*aff'd*, 2014 WL 4627791 (D.C. Cir. July 11, 2014) (per curiam).

The two Third Circuit decisions the FTC relies on did not change the law and do not

support the FTC. This Court relied on one of those decisions – *FTC v. Shire ViroPharma, Inc.*,

917 F.3d 147 (3d Cir. 2019) – because it squarely supported this Court's rulings. There, the

Third Circuit held that the plain language of Section 13(b) imposes a "threshold requirement that

a party 'is' violating or 'is about to' violate the law" before it is appropriate to consider a remedy.

*Id.* at 157. The FTC notes that *Shire ViroPharma* discussed pleading standards, but that makes

no difference: what the FTC must plead is what the FTC must prove at trial. *See Comcast Corp.*

*v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 332 (2020) ("Normally, . . . the

essential elements of a claim remain constant through the life of a lawsuit. . . . So, to determine

what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the

plaintiff must prove in the trial at its end."). The FTC itself argued in *Shire ViroPharma* that

different pleading and proof standards would "make[] no sense," as they are "two sides of the

same coin." FTC Reply Br. 10, No. 18-1807, 2018 WL 4191155 (3d Cir. Aug. 30, 2018).

The other decision – *FTC v. AbbVie Inc.*, 976 F.3d 327 (3d Cir. 2020) – also supports this

Court's prior rulings. There, the district court found current antitrust liability under Section 13(b),

and the Third Circuit affirmed.  *See id.* at 374.  However, the Third Circuit held that the district

court erred in rejecting other conduct (a reverse-payment theory) as not anticompetitive.  *See id.*

at 359.  The question the Third Circuit confronted was whether it would be futile to remand to

the district court for a remedy as to the reverse-payment theory because the defendants had

ceased making those payments.  *See id.* at 381.  Because the FTC had already proven liability

(unlike here), the Third Circuit held the district court should apply ordinary equitable principles

to determine whether to issue an injunction as to that additional conduct.  *See id.* (applying a

"likelihood-of-recurrence standard").  *AbbVie* does not excuse the FTC from ever proving Meta

"is violating" or "is about to violate" the antitrust laws.  15 U.S.C. § 53(b).

The Court should reject the FTC's plea (at 10-11) that the Court wait until a remedy

phase to determine whether "monopoly power has been or is being eroded."  The parties and the

Court have devoted substantial resources to this trial to determine whether Meta is presently

violating the law.  Meta strongly believes it is not, but in no event should the outcome be a

tentative finding of liability to be finally resolved later, after more discovery.

### B.    Recent Government Antitrust Actions Undermine The FTC's Request

The FTC's recent litigation to block the Kroger-Alberton's merger provides further

support for relying on present-day evidence.  There, unlike here, the FTC filed a motion to

"categorically exclude new evidence related to the proposed divestiture or efficiencies," and the

court denied it.  *FTC v. Kroger Co.*, No. 24-347, ECF No. 407, at 3 (D. Or. Aug. 25, 2024).  That

ruling is consistent with longstanding Supreme Court authority relied on by the FTC in this case

(at 2) holding that ancient evidence – but not current evidence – may be irrelevant.  *See United*

*States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 229-30 (1940) (excluding evidence significantly

pre-dating the alleged conspiracy as "not relevant," "cumulative," and "clearly collateral"); *see*

*also Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 710 & n.16 (1962) (citing

*Socony-Vacuum Oil* for the proposition that a court may "set a reasonable cut-off date, evidence *before* which point is to be considered too remote") (emphasis added).

The FTC misplaces (at 2-4) reliance on three other recent government antitrust enforcement actions – two against Google and one against Qualcomm.  The two Google cases bear no similarity to this one.  They were brought by the DOJ under different statutory authority than Section 13(b).  Further, in both cases, the government sought orders months prior to the close of fact discovery to prohibit reliance on documents or data produced after the close of discovery except for "good cause."  *See United States v. Google LLC*, No. 23-108, ECF No. 201, at 3-4 (E.D. Va. May 10, 2023); *United States v. Google LLC*, No. 20-3010, ECF No. 357, ¶ 3 (D.D.C. May 25, 2022).  The FTC did not seek such a blanket order before trial.  If it had, Meta would have vigorously opposed it and would have shown good cause to elicit testimony regarding recent data had such an order been entered.

Further, contrary to the FTC's assertions, the *Google* courts did not eschew recent evidence.  Judge Mehta stressed the need for "flexibility" given "the nature of the case" in which that court was being asked "to make a liability finding as of the time of trial" and "it's possible that things could change."  *Google*, No. 20-3010, ECF No. 353, at 31:23-32:4 (D.D.C. May 12, 2022).  Present circumstances were explored at length at trial.  *See*, *e.g.*, *id.*, ECF No. 989, at 8251:19-8253:1 (Nov. 1, 2023) ("Today, . . . we do see with younger users they are increasingly using Instagram and TikTok for discovering things like restaurants.").  The court's ruling was based on competitive conditions "*as they exist today*."  *United States v. Google LLC*, 747 F. Supp. 3d 1, 123 (D.D.C. 2024); *see also*, *e.g.*, *id.* at 52-54 (findings of fact regarding post-discovery developments in artificial intelligence).

Judge Brinkema also heard evidence of current competitive conditions.  *See*, *e.g.*, *Google*, No. 23-108, ECF No. 1338, at 102:23-103:15 (E.D. Va. Sept. 12, 2024) (allowing questioning on

unproduced document); *id.*, ECF No. 1351, at 147:2-25 (Sept. 9, 2024) (testimony about "competition that you're facing today"). The sole instance cited by the FTC (at 3) of Judge Brinkema excluding new evidence concerned testimony that did not go to "any of the core issues." *Google*, No. 23-108, ECF No. 1360, at 91:19-92:1 (E.D. Va. Sept. 20, 2024). And Judge Brinkema ultimately based her ruling on current market conditions. *See United States v. Google LLC*, 2025 WL 1132012, at *20 (E.D. Va. Apr. 17, 2025) (relying on 2025 document); *id.* at *17 (describing "Google's Ad Tech Today"); *id.* at *3 (relying on October 2024 report).

*Qualcomm* also does not support the FTC. There too – unlike here – the FTC sought a pretrial order barring the use of certain post-discovery evidence at trial. The court issued that order in large part because of the short nine-month window between the close of discovery and start of trial; the court explicitly distinguished cases with "delays of several years between the most up-to-date evidence and trial." *FTC v. Qualcomm Inc.*, 2018 WL 6597273, at *1, *4 (N.D. Cal. Dec. 13, 2018). Here, the FTC chose not to request that Meta update its data productions until its mid-trial data request several weeks ago. In any event, *Qualcomm* is not a model to follow. The Ninth Circuit reversed. *See FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020).

## II. The FTC Has Waived And Forfeited Its Objection To Current Circumstances

The FTC has waived and forfeited any complaint regarding testimony of current circumstances three times over by: (1) affirmatively agreeing to the June 30, 2022 cut-off date for Meta's production of data and never seeking to update that data, (2) failing to seek any pretrial order precluding Meta from using data after the cut-off date, and (3) affirmatively injecting current circumstances into the trial (when it suits the FTC). *See Keepseagle v. Perdue*, 856 F.3d 1039, 1053 (D.C. Cir. 2017) ("*waiver* is the intentional relinquishment or abandonment of a known right"; "forfeiture is the failure to make a timely assertion of a right").

***The FTC did not seek updated data.*** The FTC complains (for example, at 9-10) of "unfair prejudice" because Meta's witnesses have referred to data that has not been produced to the FTC. But the FTC agreed to a June 2022 cut-off date for data. *See* Exs. A-D. And despite seeking a refresh of Meta's document productions, the FTC never sought more recent data, *see* ECF Nos. 278, 282 – that is, until two weeks into trial. Even then, the FTC made unreasonable demands and cut off discussion rather than make requests that Meta could accommodate.

***The FTC did not seek to preclude testimony of current circumstances.*** In each of the three recent government monopolization cases that the FTC relies on – the two *Google* cases and *Qualcomm* – the government sought orders before trial to preclude testimony about events occurring after fact discovery. *See supra* pp. 8-9. Despite Meta prominently explaining that its witnesses would testify to current circumstances, *see* ECF No. 450-1, at 1, 9, the FTC never sought an order precluding such testimony until after *four weeks* of trial. That delay forfeits any right to relief the FTC might have had in the past. *See Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1215-16 (D.C. Cir. 1997) (affirming rejection of untimely motion).

To excuse its failure to timely seek relief, the FTC makes two arguments. *First*, the FTC argues (at 5) for exclusion of fact witness "[t]estimony" informed by data that Meta allegedly did not produce in response to the FTC's requests for documents and data "relied upon by Meta's expert witnesses" or documents that Meta "may use at trial." ECF No. 589-5, ¶ 3. The FTC has not shown Meta did not comply with those requests. The FTC never identifies any document or data that Meta's experts relied upon that was not timely produced (to Meta's knowledge, there is none). Nor does the FTC identify any instance in which Meta introduced any unproduced document at trial. Meta witnesses *testified* based on what they observed, and Meta had no duty to disclose that testimony ahead of trial. *See Boyd v. Wells Fargo Bank, N.A.*, 2016 WL 7323293, at *5 (S.D. Ga. Dec. 14, 2016) (requirement to disclose documents to be "use[d]" does

not bar testimony), *aff'd sub nom. Boyd v. Experian Info. Sols., Inc.*, 692 F. App'x 980 (11th Cir. 2017) (per curiam); *Morrison v. Millenium Hotels*, 2021 WL 1534293, at *12 (S.D.N.Y. Apr. 19, 2021) (similar).  *Second*, the FTC claims (at 9) that Rule 26(e) prohibits the introduction at trial of data that Meta did not produce.  But, again, Meta has not sought to introduce any unproduced data at trial.  Illustrative aids are not evidence, and witnesses testified about facts based on their personal knowledge.  To the extent Meta sought to introduce into evidence data (or summaries of data) post-dating the close of discovery, it timely produced that data before trial, and the Court already ruled there was good cause to admit that data, *see* ECF No. 503.

  ***The FTC itself relies on current circumstances.***  The FTC cannot complain that Meta has elicited testimony about the present because the FTC repeatedly has done the same.  For example, with Mr. Presser from TikTok – a competitor to Meta and, hence, an ally to the FTC – the FTC did not shy away from asking him about current data; it somehow knew precisely which data questions to ask Mr. Presser.  *See, e.g.*, Apr. 30 Trial Tr. 74:5-77:13 (eliciting testimony about current social participation rates on TikTok); *id.* at 71:6-18 (questioning about DX1307 from March 2025).  Yet the FTC complains (at 7) that Meta likewise elicited testimony regarding social participation rates for Instagram.  *See* May 8 Trial Tr. 196:13-200:2 (eliciting testimony as of April 2025 using DDX27.2).  There are many other examples of the FTC asking about the present when the FTC felt doing so was in its interest.  *See, e.g.*, May 8 Trial Tr. 87:2-11 ("Q. . . . [C]onnecting users with the people they care about was a priority for Instagram in 2025, isn't that right?"); May 12 Trial Tr. 222:19-25 (Hemphill:  "A. . . .  Meta is indeed exercising monopoly power and has done for the full relevant period," meaning "to the present"); May 14 Trial Tr. 173:6-13 ("Q.  And today, you would agree today, in May of 2025, you would agree that connecting with friends and family is one of the jobs to be done or core purposes that the

Facebook application provides; right?"); *id.* at 210:15-22 ("Q. March 27, 2025, Facebook added a friends tab, and it only has a handful of tabs; right?").

The FTC cannot pick and choose which current evidence is allowed. Its decision to inject current evidence into the trial (which it must do to meet its burden of proof) waives any objection to Meta doing the same. *See Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 381 (5th Cir. 2012) ("settled law" that a party "waives his right to object to the admission of evidence if he later introduces evidence of the same or similar import himself"); *see also Vehicle Mkt. Rsch., Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1257 (10th Cir. 2016) (similar).

## III.    Meta Witness Testimony About Current Circumstances Is Proper And Reliable

Meta's witnesses have offered reliable testimony based on personal knowledge of current circumstances. That testimony often draws from data that Meta tracks, and that those witnesses observe, in the ordinary course of its business. Much of this recent data is a continuation of the same datasets that were produced during discovery and that both parties have relied upon at trial (such as RCAU or data on the production and consumption of various types of content). The FTC offers no basis to doubt the reliability of that data. The FTC's own cited authority (at 8-9) supports reliance on this data. *See United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 506 (1974) (district court "fully justified in using" recent evidence of "changes in the patterns and structure of the coal industry" that resulted from "inevitable pressures on the coal industry in all parts of the country" because that evidence was not susceptible to "deliberate[]" manipulation).

### A.    Meta's Use Of Illustrative Aids Has Been Appropriate

The FTC's complaint (at 6) about Meta's use of illustrative aids has no merit. Those illustrative aids are not evidence; they are visual aids to a witness's testimony; only the testimony is evidence. *See* Fed. R. Evid. 107(a). The only basis to exclude those illustrative aids is for "unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." *Id.*

But because this is a bench trial in which Meta operates on a chess clock (and has been diligent with its time), none of those bases for exclusion applies here.  This Court will have no difficulty separating what is evidence (testimony and exhibits) from what is not (illustrative aids).

Nor does the testimony accompanying the illustrative aids violate the best-evidence rule, as the FTC claims (at 6).  The best-evidence rule only requires an "original writing" to prove the "content" of the writing.  Fed. R. Evid. 1002.  That rule does not "'prohibit[] a witness from testifying to a fact simply because the fact can be supported by written documentation.'"  *Jinks-Umstead v. England*, 2005 WL 3312947, at *5 (D.D.C. Dec. 7, 2005) (quoting *R & R Assoc., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984)); *see United States v. Smith*, 804 F.3d 724, 730 (5th Cir. 2015) (same).  Meta's witnesses may therefore testify about current circumstances.  *See Jinks-Umstead*, 2005 WL 3312947, at *6 (best-evidence rule "does not preclude admission of oral testimony even though it purports to relate to documents not produced").

### B.    The FTC Does Not Identify Any Unreliable Testimony

The FTC's claims (at 6-8) that certain witnesses' testimony has been unreliable fall flat.

**Dr. Cobb** did not give unreliable testimony about user sentiment metrics (like RCAU), as the FTC claims (at 6).  Dr. Cobb obviously has personal knowledge of those metrics.  He is the Vice President of Research responsible for Meta's Main Tracking Survey that tracks those metrics, and the FTC questioned him extensively about them.  *See* Apr. 30 Trial Tr. 192:24-193:5, 196:25-197:6, 198:14-17.  He prepared demonstratives illustrating certain metrics to aid his testimony.  *See* May 1 Trial Tr. 39:16-18, 42:7-10, 46:9-11.  He could have given the exact same testimony without those visual aids; it just would have been more difficult to follow.

**Mr. Olivan** was not prompted by an illustrative aid to give unreliable testimony about Instagram's growth trajectory, as the FTC asserts (at 7).  Mr. Olivan obviously has knowledge of that growth trajectory.  He led Meta's growth team from 2011 to 2022, and he is now Meta's

Chief Operating Officer overseeing the growth team. *See* Apr. 29 Trial Tr. 8:11-9:11. He testified about Instagram's growth independent of the illustrative aid. *See id.* at 190:12-21.

*Mr. Mosseri* gave reliable testimony on the usage of Instagram even before seeing a visual aid, contrary to the FTC's assertion (at 7). *See* May 8 Trial Tr. 196:7-12. He also testified about a Reels holdout experiment in 2023 that he oversaw as the Head of Instagram – just one of many holdout experiments conducted by Meta in the ordinary course of business (some of which the FTC itself relies upon). *See id.* at 190:9-19 (explaining that Meta conducts a holdout experiment for "[a]ny major change" to test how those changes affect usage); *see* May 13 Trial Tr. 50:20-51:17 (Hemphill: testifying about ads holdout). Meta even produced initial data from the Reels holdout experiment, contrary to the FTC's claim (at 7). Professor Carlton testified about those initial results (which were consistent with the final results that were the subject of Mr. Mosseri's testimony). *See* May 21 Trial Tr. 101:22-104:5.

*Mr. Schultz* was well-qualified to testify about recent data. He is Meta's Vice President of Analytics in charge of "interpret[ing] what the data means and mak[ing] sure that the right data is presented and understood by our senior leadership." May 8 Trial Tr. 263:5-264:24. He testified about data that he observes in the ordinary course of his job using illustrative aids that he personally prepared. *See id.* at 267:10-12; May 12 Trial Tr. 27:22-24 ("The data is from one of my favorite dashboards that I had created years ago . . . ."); *id.* at 43:15-16 ("This is a screenshot of the Feed composition dashboard from the Facebook team that I think I took myself . . . .").

*Mr. Zuckerberg* did not provide inaccurate data, as the FTC claims (at 8). *See* Apr. 14 Trial Tr. 185:2-5 (stating "about a quarter" of "stories" impressions are "from friends"). As an initial matter, that answer was given in response to *FTC* questioning. This does not show *Meta* has elicited unreliable testimony. Further, Mr. Zuckerberg's testimony was a miscommunication, which Meta tried to correct because it has no interest in an imprecise record. *See* Apr. 15 Trial

Tr. 205:16-206:14 (attempting to clear up that Mr. Zuckerberg was referring to the proportion of impressions for Feed and Stories that were from friends, not just Stories; prompting Mr. Zuckerberg to defer to Mr. Alison and Mr. Schultz).

*   *   *

In all events, Meta provided each of the illustrative aids used by Meta witnesses to the FTC two days in advance of their testimony per the parties' agreement. This gave the FTC ample time to prepare effective cross-examination, to raise any particular objections it had to those aids, or even to ask for the underlying data (which it never did).

## IV.    Meta Would Be Prejudiced By Exclusion Of Evidence Of Current Circumstances

It would be prejudicial to Meta to retroactively exclude or discount testimony Meta has elicited regarding present-day circumstances. Meta sought to provide the Court with the most up-to-date evidence in this "technologically dynamic market[]." *United States v. Microsoft Corp.*, 253 F.3d 34, 49 (D.C. Cir. 2001) (en banc) (per curiam); *see also United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 176 n.6 (D.D.C. 2018) (error to "ignore . . . industry trends" in a "fast-changing industry"), *aff'd*, 916 F.3d 1029 (D.C. Cir. 2019). Meta is confident it would prevail even if testimony regarding present-day circumstances were to be excluded. That is because Meta has presented ample evidence from the discovery record as of 2023 to undermine the FTC's claims; more recent data merely continues to shift the evidence in Meta's favor. *See, e.g.*, Apr. 14 Trial Tr. 85:3-11 (drop from 11 percent of time on Instagram spent on friend sharing in 2023 to 7 percent in 2025). Nonetheless, Meta should not be punished for providing the most recent (and best) evidence at trial when it is already too late for Meta to recalibrate its proof.

<strong>CONCLUSION</strong>

The Court should deny the motion and rule based on evidence of current circumstances.

- 15 -

Dated:  May 23, 2025                    Respectfully submitted,

                                        */s/ Mark C. Hansen*
                                        Mark C. Hansen (D.C. Bar No. 425930)
                                        Aaron M. Panner (D.C. Bar No. 453608)
                                        Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                        Daniel V. Dorris (D.C. Bar No. 1012305)
                                        KELLOGG, HANSEN, TODD,
                                          FIGEL & FREDERICK, P.L.L.C.
                                        1615 M Street, N.W., Suite 400
                                        Washington, D.C. 20036
                                        Tel: (202) 326-7900
                                        mhansen@kellogghansen.com

                                        *Counsel for Defendant Meta Platforms, Inc.*