IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

META PLATFORMS, INC.,

    Defendant.

Case No. 1:20-cv-03590-JEB

**MOTION TO STRIKE TESTIMONY OF**
**FTC EXPERT WITNESS C. SCOTT HEMPHILL**

On cross-examination, law professor C. Scott Hemphill readily admitted that an expert witness, especially for the government, has a "duty to report with objectivity and not to support preconceived notions," a "duty not to be an advocate for a cause," and that an "expert with a partisan axe to grind is of no use to the finder of fact and becomes just another advocate for a party." Ex. 1 at 147:7-148:2 (May 13 Tr.). The law requires no less. *See Dick v. United States*, 339 F. Supp. 1231, 1235 (D.D.C. 1972); *Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*, 2020 WL 622152, at *4 (D.D.C. Feb. 10, 2020); *Hall v. CIA*, 538 F. Supp. 2d 64, 73 (D.D.C. 2008).

Yet it quickly became apparent that Hemphill is *exactly* the kind of biased witness that should not be permitted to offer expert testimony, as courts in this circuit and elsewhere have repeatedly held. He invented this case, advocated for it, instructed on litigation strategy, and even gave it PR cover – before emerging as the FTC's chosen expert/advocate. If ever there was a case in which an expert witness should be excluded on grounds of prejudgment, advocacy and bias, this is the case. Hemphill is "an advocate for a cause" and not even remotely "an objective expert witness." *Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986), *aff'd* 826 F.2d 420 (5th Cir. 1987) (striking expert witness for bias less patent than here).

***Facts.*** By May 2019, Hemphill and longtime collaborator Tim Wu were at work on a "potential antitrust case against Facebook." Ex. 2 at 2 (DX1433). They most certainly had "an axe to grind": Wu, with Hemphill's acknowledged "collaboration," had published a book in 2018 *advocating* the dismantling of Meta ("*The Curse of Bigness*"). Ex. 1 at 155:1-156:12 (May 13 Tr.). The collaborators read a May 9, 2019, New York Times opinion piece written by disaffected former Meta executive Chris Hughes, "It's Time to Break Up [Meta]." Ex. 3 (DX1412). They invited him to join their ongoing effort to convince the FTC and others to bring a case against Meta. Ex. 4 at 4 (DX1413).

Together, the three collaborators assembled slide decks with their preconceived opinions about Meta's antitrust liability. *See generally* Ex. 5 (DX1475). One deck asserted plain-English opinions about Meta's liability under Sherman Act § 2 (and Clayton Act § 7). *See generally id.* The collaborators marshalled "evidence" that supported their opinions: a story from a tabloid citing "unnamed sources" that mischaracterized undisclosed documents, blogs, and posts from self-professed Meta antagonists. Ex. 1 at 161:10-162:1, 167:2-169:13 (May 13 Tr.).

In June 2019, the collaborators kicked into full gear: they set out on a "roadshow" to persuade the U.S. Department of Justice, the Federal Trade Commission and state attorneys general to bring antitrust charges against Meta. Ex. 4 at 4 (DX1413). Hemphill recounted all this to reporters from the New York Times and the Washington Post. He was cited in their stories as the source of their reporting. *See generally* Ex. 4 (DX1413); Ex. 2 (DX1433). While Hemphill claimed at trial (unpersuasively) that he had been "misquoted," Ex. 1 at 152:23-153:5 (May 13 Tr.), the uncorrected stories continue to be featured as "Press Highlights" linked to Hemphill's biography on the NYU Law website. *See* Ex. 6.

Hemphill's advocacy was successful. The FTC notified Meta of its investigation almost immediately after he presented the case. The FTC contacted the witnesses Hemphill urged them to subpoena and sent investigative demands aimed at the preliminary injunction Hemphill urged the FTC to seek, *see infra* at 4. Little more than a year later, Meta was sued for antitrust violations by both the FTC and a coalition of states. The theories of violation, in both cases, parrot the very same theories Hemphill and his collaborators laid out in their slide deck.

The day after these cases were filed in 2020, Hemphill sought to shape public opinion about them from his lofty perch as a purportedly neutral academic antitrust expert. He co-authored an article with Wu responding to "misunderstandings" about the lawsuits. *See* Ex. 7

2

(DX1481). Comparing Meta to a "bank robber," Hemphill wrote that the cases had merit because Meta's acquisitions of Instagram and WhatsApp "were acquisitions that were: (1) by a monopolist; (2) of its direct competitors or nascent competitors; (3) with abundant evidence of anticompetitive intent." *Id.* at 4. This demonstrated both his patent bias and his willingness to conceal his role. His firm opinions were anything but those of a subject matter expert with no axe to grind.

Two years later he was retained as the FTC's supposedly objective trial expert witness on antitrust economics – something he had done only once before, also for the FTC. *See* Ex. 1 at 144:8-18 (May 13 Tr.). Hemphill prepared extensive reports (853 pages in total) but nowhere disclosed his prejudgments or his prior advocacy. The FTC was complicit in this concealment: Meta requested in discovery, and the FTC agreed to produce, all pre-investigation documents from third parties. *See* Ex. 8 (Meta's First Set of RFPs (Mar. 9, 2022) (Excerpt of Definition 17 and RFP No. 10)); Ex. 9 (FTC's Objs. and Resps. to Meta's First Set of RFPs at 25 (Apr. 8, 2022) (Excerpt of RFP No. 10)). But Hemphill's advocacy presentation was withheld without justification until the FTC's hand was forced in the middle of trial.

Hemphill then gave misleading trial testimony about what he had done. Incredibly, he denied that he had any opinions prior to being hired and denied that he had presented anything resembling an opinion to the FTC – despite the plain language making it obvious that he *had* presented opinions. Ex. 1 at 153:11-13 (May 13 Tr.) ("I wouldn't characterize it as a deck containing my opinions about the antitrust case."); *id.* 159:20-22 (slide deck only "trying to understand what's going on and making a suggestion about a potential investigation"). When he returned for rebuttal testimony, he likewise stonewalled on additional slides in the complete deck the FTC had disgorged. He claimed, contrary to the plain language of slides identifying

3

witnesses to subpoena and injunctions to seek, that he had *not* provided suggestions on how the enforcers could best *litigate* the case he was advocating. *Compare* Ex. 10 at 168:4-10, 172:11-14 (May 27 Tr.), *with* Ex. 5 at 17-19 (DX1475). This was not credible testimony.

Hemphill's prejudgment was on full display during his testimony as to the merits. Testifying more as an advocate than as an expert witness, he gave what amounted to FTC summations based on witness testimony and documents – not the province of an economist by any stretch. In a textbook example of "confirmation bias" he picked snippets of evidence that supported his preexisting conclusions while ignoring testimony from the same witness that was directly contrary to his advocacy. *See*, *e.g.*, Ex. 10 at 112:22-119:11 (May 27 Tr.) (citing A. Mosseri to claim no business decisions were made based on outages, while ignoring A. Mosseri testimony that billion-dollar Meta business decisions *were* made based on outages). It is hardly surprising that a witness willing to sell enforcers on a case with opinions based on tabloids citing unnamed sources would ground his testimony here in contorted "proxies" instead of actual data and out-of-context quotes from aged documents instead of objective economic evidence.

Hemphill's obdurate cover-up of his bias only emphasizes his consciousness of guilt as to the impropriety of his undisclosed, axe-grinding advocacy prior to his retention as a supposedly neutral and objective expert witness. If this could plausibly be defended, he would have defended it honestly.

***Hemphill's Preconceived Opinions and Non-Disclosure Taint His Testimony, Which Should be Struck.*** Where, as here, "an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Viterbo*, 646 F. Supp. at 1425-26 (excluding expert on summary judgment); *Phoenix Restoration Grp., Inc.*, 2020 WL 622152, at *4; *Dick*, 339 F. Supp.

4

at 1235.  *See also In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 427, 430 (E.D. Mich. 1989), *aff'd* 917 F.2d 24 (6th Cir. 1990); *Sutherland v. Matrixx Initiatives, Inc.*, 2006 WL 6617000, at *7 (N.D. Ala. Nov. 7, 2006).

Hemphill's biased advocacy confirms the need for application of the settled rule against expert witnesses with preconceived views.  *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007); *see also Claar v. Burlington N. R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method."); *Perry v. United States*, 755 F.2d 888, 892 (11th Cir. 1985) (same).

It would be easy to sweep all this misconduct under the rug and leave the weight to be given this flawed witness's testimony to the Court's considerable discretion.  But where, as here, a purportedly objective expert witness joins forces with self-proclaimed advocates for the breakup of Meta, authors an antitrust case and litigation strategy based on nothing more than newspaper stories and blog posts, goes on a "roadshow" to persuade authorities to bring his case, gets hired as an expert witness (making "millions of dollars," Ex. 1 at 148:16-19 (May 13 Tr.)), and then gives misleading testimony to cover up those efforts – a clear line has been crossed.  If an expert witness can do all that and suffer no adverse consequences, on behalf of a party equally complicit in the concealment of the witness' bias, then there are no rules and the many judicial opinions condemning lesser abuses are empty vessels.  Hemphill's testimony should be struck from this case as biased and unreliable under *Daubert*, and the prior decisions of this and other courts.  If not in this case, what case would suffice?

5

Dated:  May 30, 2025 			Respectfully submitted,

*/s/ Mark C. Hansen*
Mark C. Hansen (D.C. Bar No. 425930)
Aaron M. Panner (D.C. Bar No. 453608)
Geoffrey M. Klineberg (D.C. Bar No. 444503)
Silvija A. Strikis (D.C. Bar No. 470805)
Andrew Skaras (D.C. Bar No. 90004011)
Zachary M. Meskell (D.C. Bar No. 1782162)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
mhansen@kellogghansen.com

*Counsel for Defendant Meta Platforms, Inc.*