UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

METO PLATFORMS, INC.,

Defendant.

Civil Action No. 20-3590 (JEB)

**ORDER**

Since 2021, the Federal Trade Commission has known that its central burden in this case is to demonstrate that Defendant Meta Platforms, Inc., "is currently violating the antitrust laws." ECF No. 503 (Apr. 2, 2025, Order); see FTC v. Facebook, Inc. (Facebook I), 560 F. Supp. 3d 1, 26 (D.D.C. 2021); FTC v. Facebook, Inc. (Facebook II), 581 F. Supp. 3d 34, 58–59 (D.D.C. 2022); FTC v. Meta Platforms, Inc., 2024 WL 4772423, at *8 (D.D.C. Nov. 13, 2024). That burden is primarily a consequence of the statutory authority under which the agency brings this suit — Section 13(b) of the FTC Act — which permits it to seek injunctive relief whenever it "has reason to believe" a corporation "is violating" any provision of law the FTC enforces, see 15 U.S.C. § 53(b), including Section 2 of the Sherman Act. See Facebook I, 560 F. Supp. 3d at 26. The burden also stems from the alleged antitrust violation at issue in this case: to obtain injunctive relief for long-past acquisitions under a theory of unlawful monopolization, the record must show that Meta currently possesses monopoly power. Id. at 31–32; see Meta Platforms, 2024 WL 4772423, at *8. It was on that basis that the Court previously permitted the introduction of evidence and testimony relating to current market conditions that postdate the

1

close of discovery, such as the TikTok outage of this year. See Apr. 2 Order; ECF Nos. 504 (Nonparty Order) at 1, 505 (Nonparty Mem. Op.) at 8. As the Court then noted, such evidence was "certainly relevant," Apr. 2 Order at 1, and good cause supported its admission. See Nonparty Mem. Op. at 8.

The FTC nonetheless now asks the Court to "ignore entirely, or at least heavily discount," any evidence postdating discovery that has not been produced to Plaintiff, see ECF No. 589-1 (FTC Br.) at 2 — in particular, any testimony from Meta's live witnesses that discusses post-discovery data. Id. at 5–6. On the law, it argues for the first time that Section 13(b)'s language is merely a "pleading standard" with "no independent role to play at the merits." Id. at 12 (emphasis omitted). Rather, it contends — relying on two Third Circuit decisions — that the sole standard for granting injunctive relief is simply whether the antitrust violation is "likely to recur," id. at 12 (citing FTC v. Shire ViroPharma, Inc., 917 F.3d 147 (3d Cir. 2019); and FTC v. AbbVie Inc., 976 F. 3d 327, 381 (3d Cir. 2020)), and that recent data should be considered only in the remedies phase. Id. at 10–11.

Whatever the merits of that approach in some contexts, it makes little sense here, where showing monopoly power now is an essential element of "the Commission's likelihood of ultimate success" on its claim. See 15 U.S.C. § 53(b); Facebook I, 560 F. Supp. 3d at 31–32; see also FTC v. Shkreli, 581 F. Supp. 3d 579, 638 (S.D.N.Y. 2022) (for injunctive relief, plaintiff "must prove an ongoing or likely future violation of the antitrust laws") (emphasis added). Indeed, even adopting the Commission's preferred standard, it would boil down in this case to the same inquiry: evaluating whether Meta's monopolization is "likely to recur" requires asking whether its monopoly will endure, which in turn requires assessing current conditions. The implication of Plaintiff's position is that any discovery into market data postdating the motion-

to-dismiss stage is pointless — a view that would, in theory, permit forward-looking relief on the basis of monopolies that no longer exist. The Court sees no warrant for adopting that position. Cf. United States v. General Dynamics Corp., 415 U.S. 486, 498 (1974) (courts are to assess evidence of "structure, history, and probable future" of an industry). Nor will it do so now, after Meta has tried its case on the understanding that current market conditions would be central to determining liability.

The FTC also argues that testimony concerning post-discovery data is "unreliable" because the Commission has not been able to scrutinize the underlying data, see FTC Br. at 8–9; that the testimony's admission, in conjunction with the use of illustrative aids relying on the same data, violates Federal Rules of Evidence 107 and 1002, id. at 6–8; that Plaintiff would be prejudiced by its admission, id. at 9–10 (citing Fed. R. Evid. 401, 402, and 403); and that barring post-discovery evidence in monopolization cases is standard practice. Id. at 2–4 (citing United States v. Google, 2025 WL 1132012 (E.D. Va. Apr. 17, 2025); United States v. Google, 747 F. Supp. 3d 1 (D.D.C. 2024); and FTC v. Qualcomm Inc., 2018 WL 6597273 (N.D. Cal. Dec. 13, 2018)).

Despite the FTC's conjecture, there is no indication that the testimony of Meta's witnesses on direct examination was unreliable, and Plaintiff has pointed to no instances where misrepresentations were purportedly made in such contexts. Nor has it shown that the testimony violated any of the Federal Rules of Evidence, which do not "'prohibit[] a witness from testifying to a fact simply because the fact can be supported by written documentation,'" Jinks-Umstead v. England, 2005 WL 3312947, at *5 (D.D.C. Dec. 7, 2005) (quoting R & R Assoc., Inc. v. Visual Scene, Inc., 726 F.2d 36, 38 (1st Cir. 1984)), and which permit the use of illustrative aids in the manner Defendant has used them at trial. See Fed. R. Evid. 107(a).

Indeed, as Meta points out, both sides have questioned witnesses about post-discovery data and current market conditions, see ECF No. 601-1 (Meta Opp.) at 11, arguably waiving any objection the FTC might raise. Cf. Manderson v. Chet Morrison Contractors, Inc., 666 F.3d 373, 381 (5th Cir. 2012) ("It is settled law that one waives his right to object to the admission of evidence if he later introduces evidence of the same or similar import himself.") (quotation marks omitted). Plaintiff, moreover, failed to seek a pretrial order limiting the type of testimony at issue — unlike efforts in the cases it cites in support of its late-breaking attempt to do so now. See Meta Opp. at 8–9 (explaining that Government sought such pretrial orders in both Google cases and Qualcomm case).

In the end, the FTC asks this Court to reverse course at the close of trial and exclude potentially probative testimony about current market conditions in a fast-changing industry, all on the basis of speculation about its reliability and despite having introduced such testimony itself. Because doing so is neither legally justified nor fair to Defendant, the Court will OVERRULE the FTC's objection.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 3, 2025