**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

## JOINT STATUS REPORT

The parties submit this Joint Status Report regarding post-trial submissions pursuant to the parties' agreement and as permitted by the Court. *See* Trial Tr. 185:24-186:17 (May 27, 2025). Parts I-V contain the parties' agreed requests and submissions. Parts VI-VIII contain the parties' disputed issues and the parties' respective positions on each disputed issue.

**I.     Agreed Issue:  Parties' Joint Request Regarding Hyperlinking Exhibits in Findings of Fact**

The Court's May 22, 2025 Minute Order provides that the parties' "proposed findings of facts shall contain hyperlinks to any cited exhibit."  The parties jointly request they be permitted to provide hyperlinked versions of their respective proposed findings of fact within seven (7) calendar days of the deadline to file each proposed set of findings of fact on the docket (i.e., by July 9 for the FTC's opening findings of fact, by August 13 for Meta's opening / opposition findings of fact, and by September 3 for the FTC's opposition / reply findings of fact).  The parties believe this additional time to complete the hyperlinking after filing would make the filing process smoother and give the parties more time to ensure the hyperlinking is correct.

The parties propose to submit their hyperlinked findings of fact to the Court by FTP link. Or, if the Court prefers, the parties can send their hyperlinked findings of fact to the Court on a thumb drive.  The parties will proceed however the Court prefers.

## II.    Agreed Issue:  Parties' Joint Request Regarding Citing and Submitting Written Deposition Designations

On February 21, 2025, the Court permitted each party to identify "1,250 pages of written deposition excerpts for potential post-trial submission" before trial, and then limited each party to citing 400 pages from its pool of 1,250 pages in its post-trial submission.  Order ¶ 1 (Feb. 21, 2025), ECF No. 401.  The Court further held that any objections to these designations should be noted in the parties' responsive filings.  *See id.*

The parties jointly request that the Court permit the parties to proceed as follows.  Each party may cite up to 400 pages from its pool of 1,250 pages in its respective finding(s) of fact. Citations to these post-trial deposition designations will be noted with an asterisk (*) to distinguish them from citations to trial testimony.  Any objections should be included in the parties' responsive filings and will count against the page limit for those responsive filings. Within seven (7) calendar days of Meta's reply filing relating only to its affirmative defenses, the parties will submit the complete set of cited deposition pages to the Court.  The parties believe this streamlined process, rather than submitting pages piecemeal with each filing, will be more organized and efficient for the Court.  If the Court prefers to receive the pages with each filing, or prefers to receive these pages in a different manner than what the parties propose, the parties will proceed however the Court prefers.  The parties will submit the materials to the Court by FTP link or thumb drive depending on the Court's preference.

III.    **Agreed Issue:  Parties' Joint Proposal Regarding Impeachment and Confidentiality Deposition Designations**

The Court ruled that the parties may submit deposition testimony used to impeach a witness or, in some circumstances, to avoid revealing confidential information in open court. With respect to impeachment, the Court ruled that "both sides may also submit any portions of sworn testimony that they . . . use to impeach," and that they should do so "at the end of the case."  Trial Tr. 5:12-6:9 (May 1, 2025).  With respect to confidential deposition testimony – which the FTC used in several instances to avoid publicly revealing Meta's or a third party's confidential information – the Court stated that "[i]t can just be submitted at the end of the case." Trial Tr. 62:11-20 (May 8, 2025).

The parties each reserve their rights to bring disputes regarding the impeachment and confidentiality deposition testimony submissions to the Court for resolution, and have agreed to the following timeline to attempt to resolve any disputes:

- Each party will disclose to the other any impeachment and confidentiality deposition designations by noon Eastern on Thursday, June 12, 2025; and

- Each party will disclose any objections to the others' designations by noon Eastern on Thursday, June 19, 2025.

IV.    **Agreed Issue:  Parties' Joint Submission of Agreed Admitted Exhibits**

The parties understand the Court has requested "an agreed-upon list of all admitted exhibits with links" to those exhibits.  Trial Tr. 186:23-24 (May 27, 2025).  Simultaneously with this Joint Status Report, the parties are submitting to the Court an Excel spreadsheet listing all exhibits the parties agree were admitted into evidence at trial, with hyperlinks to those exhibits. The parties are submitting this hyperlinked list, along with all the hyperlinked exhibits, to the

Court via an FTP link.  If the Court prefers to receive these materials by thumb drive, the parties will provide one.

The parties dispute whether other exhibits should be submitted to the Court.  *See* Part VI. Once the Court rules on those disputes, the parties will provide any additional exhibits the Court rules are appropriate to submit using the same format – i.e., in a hyperlinked list submitted by FTP link or thumb drive depending on the Court's preference.

## V.  Agreed Issue:  Parties' Joint Submission of Deposition Transcripts

The parties previously provided the Court with thumb drives containing the videos of fifteen (15) depositions played during trial or submitted to the Court to be played in chambers. The parties also provided the Court with binders containing hard-copy transcripts of those video depositions.  Simultaneously with this Joint Status Report, the parties are submitting to the Court electronic versions of these transcripts for the Court's convenience.  The parties are submitting these transcripts to the Court via an FTP link.  If the Court prefers to receive these materials by thumb drive, the parties will provide one.

## VI.  Disputed Issue:  Whether Pre-Admitted Exhibits Not Used with Witnesses Should Be Admitted into Evidence

### A.  The FTC's Position

Meta seeks now, after trial has concluded, to reopen three settled disputes over the status of preadmitted exhibits that this Court has already resolved or are addressed by clear agreements between the parties.  The first category involves a subset of the 400 documents that the Court permitted the FTC to preadmit, which are all materials that Meta produced during discovery and are of undisputed authenticity and admissibility.  The second involves third-party documents produced with a declaration from the third party attesting they are authentic business records. And the third involves public documents the parties agree are authentic and that Meta itself

insisted should be preadmitted.  With its witnesses safely off the stand, Meta now argues that these preadmitted exhibits are not actually admitted and cannot be used by the FTC in post-trial briefing.  Meta is wrong, and its only arguments that these preadmitted exhibits are not actually admitted are contrary to the Court's clear rulings and the parties' plain agreements.  The Court should reject Meta's attempt to relitigate these issues post-trial and thereby unfairly eliminate evidence upon which the FTC has already relied.

First, some background.  At a status conference on December 9, 2024, the Court urged the parties to agree on which exhibits could be preadmitted.  The Court stated that where there are no authenticity or admissibility issues with respect to exhibits, "[w]e are going to preadmit them."  Declaration of Nathan Brenner ("Brenner Decl."), Ex. E, Hrg. Tr. at 7:21-23 (Dec. 9, 2024).  The Court continued: "That way we don't have any authentication during the trial.  We don't have to call sponsoring witnesses during the trial."  *Id*. at 7:23-25.  The Court also commented, correctly, that for "the vast majority of those exhibits" the parties "would be able to agree and preadmit them."  *Id.* at 7:25-8:1.

Despite this, at a subsequent hearing relating to exhibits held on March 31, 2025, Meta contested the Court's decision that exhibits could be preadmitted and used without calling a sponsoring witness at trial, and argued that it would suffer prejudice if a large number of exhibits could be cited in briefing without being used at trial.  Brenner Decl., Ex. F, Hrg. Tr. at 6:12-19, 8:13-19, 14:16-15:2 (Mar. 31, 2025).  Meta expressly acknowledged that "there is also an understanding that [preadmitted] exhibits could be used in posttrial briefing" and "that [these preadmitted] documents could be used as kind of see also sites, if you will, in posttrial briefing."  Brenner Decl., Ex. F, Hrg. Tr. at 7:7-9, 9:5-6.  When the Court asked how many exhibits the FTC intended to introduce, the FTC estimated that over half may be used at trial or cited as

additional post-trial support for its arguments.  Brenner Decl., Ex. F, Hrg. Tr. at 16:7-15.

Following these arguments, the Court ruled that the FTC could preadmit 400 Meta-produced

exhibits, which were the exhibits at issue during this discussion.  Brenner Decl., Ex. F, Hrg. Tr.

at 16:16-20 (the "Preadmission Ruling").

Meta's attempt to relitigate the preadmission of its own ordinary-course documents

requires that the Court confirm—yet again—that all of the 400 Meta-produced documents the

FTC designated before trial are, in fact, admitted into evidence.  While many of these Meta-

produced exhibits were used with a witness in trial, the Court's clear pronouncements regarding

preadmitted exhibits are unambiguous—as confirmed by the parties' arguments on the topic—

and make it plain that the Court, the FTC, and Meta all understood that even unused preadmitted

exhibits could be cited in post-trial briefing.  *See* Brenner Decl., Ex. I, Trial Tr. (May 1, 2025) at

11:17-12:11 (Meta reiterating understanding that preadmitted exhibits are in the record even

when not used with witnesses).  The FTC chose which witnesses to call at trial, and the exhibits

to use with those witnesses, based on this shared understanding that preadmitted exhibits could

be used in post-trial briefing—whether they were used at trial or not.  The FTC cut and

streamlined its witness presentation to reduce time spent discussing authentic, admissible

documents that speak for themselves, relying on the Court's pronouncements that a limited

number of such exhibits could be cited in post-trial briefing if preadmitted.  Reversing the

Court's prior ruling—without any serious or new justification advanced by Meta—would

severely and unfairly prejudice the FTC by removing important evidence from the record post-

trial, when the FTC no longer has the opportunity to admit the evidence through other means.

The Court should (once more) find all 400 Meta-produced exhibits are in evidence and thus

citable in post-trial briefing.

Further, Meta's attempt to renege on its clear agreements concerning the third-party and public documents requires the Court confirm that these categories, too, are in evidence. For proof that Meta agreed to preadmit third-party exhibits with declarations, the Court need look no further than Meta's statement to the Court on April 9, 2025:

> As to the issue Mr. Matheson raised, I just want to be clear with the Court. I'm not sure there's need for argument because it's pretty clear. Your Honor has already ruled their 400 Meta documents will be preadmitted, so they will be preadmitted over our objection on Monday. We understand that. We also understand that our Meta exhibits will be admitted, 400 of them, maybe over FTC objection, maybe not. I think what Mr. Matheson was talking about were nonparty documents. And we have proposed that they come in by agreement. And so the only dispute, if there is one, is there are business records declarations as to some and there's testimony as to others where the witness identified and authenticated and provided the property [sic].

Brenner Decl., Ex. G, Hrg. Tr. (Apr. 9, 2025) at 80:16-81:4. The parties' agreement on third-party preadmitted exhibits that Meta's counsel referenced to the Court is contained in a series of email exchanges between counsel dated April 8. *See* Brenner Decl., Ex. D at 1-2, 10-11, 13, 16.

The same correspondence reflects the parties' agreement to preadmit certain public exhibits. *See* Brenner Decl., Ex. D at 9, 11, 18. Specifically, those emails show that Meta "propose[d] pre-admitting the third-party 10-Ks and other SEC filings and earnings call transcripts on its exhibit list," and the FTC agreed on the condition that Meta also agree to preadmit certain of its exhibits in the same category of public documents. Brenner Decl., Ex. D at 18. A day later, Meta sent another email to state that there are no "strong objections" to this set of public documents, and even commented "we think it would be unfortunate for the FTC to relitigate objections the Court has made clear it has no interest in hearing." Brenner Decl., Ex. D at 9. The Court should hold Meta to its agreements on these third-party and public preadmitted exhibits, and find they are in evidence.

Curiously, Meta also apparently objects to the FTC even providing the Court with the preadmitted exhibits at issue. Meta points to no authority that would prevent a party from submitting exhibits to the Court for its consideration. In any event, the Court already possesses the preadmitted exhibits at issue, which the FTC previously submitted on a thumb drive in connection with its exhibit list, and will be submitting again in connection with the amended exhibit list it will be filing in the coming days. Meta's objection to the Court even seeing these preadmitted exhibits is thus both too late and without merit.

Meta's principal argument that the preadmitted exhibits are not admitted stems from a court order on an entirely separate issue—confidentiality procedures related to The New York Times Company's Motion to Intervene and for Access to Judicial Records and Proceedings. ECF No. 461 ("NYT Motion"). Specifically, Meta asserts that Section 4 of the Court's April 14, 2025 Second Order Regarding Confidentiality Procedures at Trial, ECF No. 545, (the "NYT Order") constitutes a ruling by the Court or an agreement by the parties that preadmitted exhibits which were not used with a witness are not admitted. Not so. At the time Meta proposed Section 4 of the NYT Order, it stated that this provision would merely set boundaries on the material that would be posted onto a public-facing website pursuant to the NYT Motion. *See* Brenner Decl. ¶ 3. For several reasons, an ancillary provision in an Order governing confidentiality procedures and the administration of a website where trial material was posted for increased public access cannot be rationally viewed as a vehicle for the parties or the Court to fundamentally alter a prior evidentiary ruling, particularly one of this significance.

*First*, the record leading up to the NYT Order's filing clearly demonstrates the parties did not intend for the Order to alter any prior ruling, including the Preadmission Ruling. Meta originally proposed the language that ultimately constituted Section 4 to ensure that they would

not be obligated to post a large amount of preadmission or other documents onto the public-facing website contemplated within Section 1 of the Order on a truncated timeframe.  Brenner Decl. ¶ 3.  Indeed, when proposing the original iteration of Section 4, counsel to Meta explained the language's purpose was "to avoid the problem of potentially 800 documents on the preadmission list being deemed 'judicial records' or 'public records' triggering public-posting issues raised by the [New York] Times at the start of trial[]."  Brenner Decl., Ex. A.  Meta subsequently reiterated the purpose of this language was a means to "stop a flurry of unsealing motions (potentially for up to 800 documents) on the theory that they have all, on day one of trial, become a part of the trial record and therefore subject to unsealing."  Brenner Decl., Ex. B.  The intent of this language was a common thread throughout negotiations and subsequent iterations of the NYT Order, including the final form ultimately entered by the Court.  At no point—either in writing or in several oral conversations discussing the NYT Order—did Meta claim that any portion of the NYT Order, including the final version of Section 4, was intended to govern the admissibility of evidence.  Brenner Decl. ¶¶ 4-6.  Had Meta done so, the FTC would not have agreed to the language in Section 4.  Brenner Decl. ¶ 7.

The parties' mutual understanding that the NYT Order did not alter the Court's Preadmission Ruling, or address admissibility of evidence at all, is further reflected in the parties April 4, 2025 Joint Status Report (ECF No. 511), where Meta, narrowly focused on the New York Times' position that any document considered by the Court should be publicly available, only substantively discussed preadmitted exhibits in the context of whether "a presumption of public access attaches, even if never used at all during trial."  Joint Status Rep. (Apr. 4, 2025), ECF No. 511, at 2-6.  The FTC, on the other hand, expressly set forth its position—consistent with the Preadmission Ruling—"that a document does not need a sponsoring witness to be

admitted as part of the trial record and reserves its right to argue that certain documents should be included in the record even when not used with and discussed with a witness at trial." *Id.*, at 6. Meta reserved its right to oppose the FTC's position (and, by extension, the Preadmission Ruling), but again did not dispute the parties' mutual understanding that the NYT Order did not address preadmission or admissibility at all. *See* Brenner Decl. ¶ 6.

The FTC repeatedly and clearly informed Meta that the parties' negotiations surrounding the NYT Order did not address admissibility or any of the Court's prior evidentiary rulings. For example, immediately prior to the filing of the proposed NYT Order, the FTC wrote to Meta: "With respect to Section 4, nothing within Section 4 should be construed to contradict the Court's orders or guidance on the contours of the Judge's prior evidentiary rulings or trial orders." Brenner Decl., Ex C at 2. Counsel to Meta replied claiming that they would not be able to relay this (at this point mutual) understanding to their client prior to the NYT Order's filing deadline, but offered assurances "to the extent a clarification is necessary," and asked the FTC to "please give consent to file so we don't miss the deadline." *Id.* at 1. In light of the extensive discussion and correspondence making the parties' respective positions clear, the FTC agreed on that basis as a professional courtesy. *Id..* The FTC assumed this understanding was settled until Meta notified the FTC of its new position during a May 24, 2025 meet and confer.

*Second*, the FTC understands Meta's current position is that Section 4 of the NYT Order silently modified the Preadmission Ruling because the NYT Order was entered 14 days later. But throughout this case the Court has repeatedly and consistently declined to revisit prior rulings and should not do so now, particularly because of the FTC's reliance on the Preadmission Ruling when structuring its trial presentation to the Court. *See, e.g.*, Mem. Op. (Nov. 13, 2024), ECF No. 384, at 65 ("The Court previously rejected this argument . . . and sees no reason to

revisit that issue."); Brenner Decl., Ex. J, Trial Tr. (Apr. 16, 2025) at 12:10-12 ("That sort of

goes back to the issue that I have already denied previously, and I am not inclined to revisit

that."); Brenner Decl., Ex. H, Trial Tr. (Apr. 22, 2025) at 6:4-16; 8:12-9:6 (declining to revisit

prior decisions concerning unsealing documents); Brenner Decl., Ex. K, Trial Tr. (May 7, 2025)

at 6:2-5 ("I did rule on this yesterday, Mr. Matheson.  Sorry.  So that's the ruling on that.").  Nor

does the NYT Order itself claim to overrule any of the Court's prior decisions.  The Court's

April 8, 2025 Minute Order similarly does not take a position on preadmitted exhibits other than

to state that they do not need to be made publicly available until their use.

     *Third*, to the extent Meta now claims—despite all evidence to the contrary—that Meta

had intended for the NYT Order to govern the use of preadmitted exhibits all along, that claim is

further belied by the trial record.  Indeed, all evidence suggests that Meta understood the Court's

Preadmission Ruling to be the operative position on preadmitted exhibits subsequent to the entry

of the NYT Order.  *See, e.g.*, Brenner Decl., Ex. I, Trial Tr. (May 1, 2025) at 10:20-12:11

(arguing preadmitted exhibits prejudice Meta because "every single Meta-produced document on

their exhibit list is coming into evidence").

     *Fourth*, should the Court find that the current wording of the NYT Order does alter its

Preadmission Ruling, the FTC respectfully requests—pursuant to Section 6 of the NYT Order—

that the Court modify Section 4 of the NYT Order to reflect the parties' actual intent: to merely

minimize burdens on the parties with respect to reviewing and posting confidential material, and

not to alter any pre-existing Court rulings or understandings as to the admissibility of evidence.

     Meta's claims of purported burden associated with reviewing the preadmitted exhibits for

confidentiality is irrelevant to the question of whether those preadmitted exhibits are admitted.

In any event, it misses mark.  The parties established a process during trial to allow Meta's

outside counsel to review its materials for confidentiality—there is no reason the parties cannot use that same process now.  Time for such a review is also not a concern, especially given that Meta's first post-trial brief is not due until August 6—nine weeks from now.

Given the above context, Meta's remaining arguments are easily dismissed.  For example, the preadmitted exhibits are not "new evidence" that the FTC is offering after trial, so the authority cited by Meta on that point is inapt.  And the FTC is not attempting to "supplement the record" because the parties understood these preadmitted exhibits would be available for post-trial briefing as part of the evidentiary record.  Finally, Meta's suggestion that these preadmitted exhibits are not in evidence because it believes the FTC did not move them into evidence is wrong—even Meta's counsel conceded that "Your Honor has already ruled their 400 Meta documents will be preadmitted, so *they will be preadmitted* over our objection on [the first day of trial].  *We understand that*."  Brenner Decl., Ex. G, Hrg. Tr. (Apr. 9, 2025) at 80:18-21 (emphasis added).  Meta's claim now, after trial, that it somehow does not understand that the preadmitted exhibits are admitted does not pass the smell test.  For the above reasons, the Court should re-affirm that the FTC's preadmitted exhibits are in evidence.

## B.  Meta's Position

The Court permitted each party to designate up to 400 Meta-produced documents on its exhibit list as "pre-admitted" to streamline the trial, and the parties reached separate agreements to "pre-admit" other third-party and public documents on the parties' exhibit lists, all for the express purpose of making use of those documents at trial more efficient.  But the Court ruled that pre-admitted exhibits would *not* become a part of the record until they were used at trial with a witness.  And Meta conducted its defense accordingly – addressing the evidence that was admitted and discussed at trial and *not* extraneous matter not considered important enough for use at trial.  Bloating the record now, after the trial has ended, with as many as 434 pre-admitted

exhibits from the FTC's exhibit list (and many hundreds more from Meta's list of pre-admitted exhibits) that were never discussed with a witness would be contrary to that ruling and unfairly prejudicial to Meta. More than *doubling* the exhibits in the record, after the record is closed, would result in arguments that were not crystallized by examination and cross-examination, and would indeed lead to the mischief of a trial outside the actual confines of the 7-week trial the Court allowed the parties to conduct.

*First*, before trial began, the FTC and Meta jointly proposed the Second Order Regarding Confidentiality Procedures at Trial, *see* Joint Status Report (Apr. 10, 2025), ECF No. 538, which the Court entered on April 14, *see* ECF No. 545. That Order provides that "[d]ocuments, including those on the parties' preadmission lists, shall not become part of the trial record before they are used with a witness during trial." *Id.* ¶ 4. This Order could not be more clear, and comports with the Court's earlier confidentiality ruling that "the parties need not disclose preadmitted exhibits [to the public] until they are used with a witness." Min. Order (Apr. 8, 2025). The Court's Orders and the parties' joint proposal post-date and supersede the December 9, March 31, and April 9 hearing transcripts on which the FTC extensively relies for its incorrect claim that pre-admitted documents never used with witnesses during trial became part of the trial record. Nothing in those snippets changes the controlling rule, or Meta's consistent understanding that under that rule pre-admission applies only to exhibits used at the trial – and not exhibits held back by the FTC.

Entering unused exhibits into evidence now would be contrary to the Court's Orders and the parties' agreement. It would also require Meta and third parties (but not the FTC) to undertake the onerous task of reviewing hundreds of exhibits for confidentiality and preparing

appropriate redactions.  This is an unnecessary burden for exhibits that were not considered important enough for use during the trial and accordingly are not part of the trial record.

The FTC ignores the plain text of the Court's April 14 Order to which it agreed and instead relies on an inaccurate summary of the Order's negotiating history.  During negotiations, Meta made clear to the FTC that the Order should provide that any pre-admitted exhibit should not be deemed "admitted" until its use with a witness because of the confidentiality burdens that would impose.  *See* Ex. 1 at 7-8 (Apr. 3, 2025 Email from J. Berg to S. Musser, 2:09 p.m.) (explaining that Meta insisted on a provision "making clear that documents are not admitted to evidence until actually used with a witness at trial"); *id.* at 6 (Apr. 3, 2025 Email from J. Berg to N. Brenner, 4:56 p.m.) (emphasizing such a provision was "important to" Meta).  The FTC had the same understanding during the parties' discussions; the FTC itself proposed language agreeing that documents on a party's pre-admission list "shall become part of the trial record *once they are used with a witness* during trial."  *Id.* at 3 (April 3, 2025 Email from N. Brenner to J. Berg, 6:21 p.m.) (emphasis added).  After the parties' discussions, the FTC ultimately agreed to the April 14 Order, without any caveats in the parties' joint proposal to the Court on April 10. *See* Jt. Status Rep. (Apr. 10, 2025), ECF No. 538.

Accordingly, the FTC's claims that the parties reached a "mutual understanding" during negotiations that pre-admitted exhibits are in the trial record, even if they were never used, is simply wrong.  *See* Ex. 2 (Apr. 10, 2025 Email from A. Polavarapu to D. Gretz, 11:43 p.m.) (refusing to agree to the FTC's last-minute request for a "clarification" that the language in the parties' joint proposed order, later entered on April 14, would not impact "evidentiary rulings").  Indeed, because unused pre-admitted exhibits would not become part of the trial record until their use with a witness, the FTC agreed it would "*seek* to make" such unused material part of

the trial record after trial ended (a position the FTC has now correctly abandoned), while recognizing Meta would "oppose."  Order ¶ 4 (Apr. 14, 2025), ECF No. 545 (emphasis added). The FTC's agreement confirms the FTC understood all along that unused pre-admitted exhibits were not already admitted into evidence.  In any event, the clear language of the April 14 Order controls over any negotiating history, which the FTC simply mischaracterizes.  The Order unambiguously provides that "[d]ocuments, including those on the parties' preadmission lists, *shall not become part of the trial record* before they are used with a witness during trial."  *Id.* (emphasis added).

The Court should also reject the FTC's fallback request to modify the April 14 Order. The FTC never sought modification of the Order's clear terms since it was entered 1.5 months ago.  It was in effect throughout the trial – and Meta relied on it when determining which material was in the record and thus necessary to address.  It would be unfairly prejudicial to Meta to allow the FTC to modify the Order that controlled the trial, after the trial.  Moreover, the FTC never even sought modification until after the trial; it never met and conferred with Meta about a proposed modification or filed any motion seeking such modification.  *See* Order at 6 (Apr. 12, 2023), ECF No. 273 (refusing Meta's request to modify the parties' Joint Scheduling Order because of "delay" in raising the issue, and because "Meta has not made such a motion, nor has it sought to meet and confer on the topic of JSO modification (as required)").  The FTC does not even explain how it proposes the Court should modify the April 14 Order, or rules that would now govern admission of unadmitted evidence into the now-closed trial record.

*Second*, admitting new evidence now, after the trial record is closed, would unfairly prejudice Meta.  The FTC (correctly) concedes (at 6) that for pre-admitted documents not used with witnesses during trial, it cannot "admit the evidence through other means" after trial has

ended.  Indeed, "new evidence is not properly introduced after the close of trial."  *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 651 F. Supp. 3d 95, 159-60 (D.D.C. 2023).  Courts routinely exclude evidence offered after the parties rest their cases, because it unfairly denies the parties an opportunity to respond to the new evidence.  *See*, *e.g.*, *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1284-85 (10th Cir. 1994) (affirming exclusion of evidence offered by plaintiff on the last day of trial, after defense rested, because admission would unfairly deny defendant opportunity to respond); *John B. v. Emkes*, 710 F.3d 394, 406 (6th Cir. 2013) (affirming exclusion of evidence that "the plaintiffs tried to admit [] en masse, at the end of the hearing, when [the defendant's] witnesses could no longer respond to them"); *Franks v. Edison Elec. Inst.*, 2024 WL 1724705, at *3 n.3 (D.D.C. Mar. 6, 2024) ("[c]onsideration of [new post-hearing evidence] would prejudice Defendant, because [it was] not [] subject to cross-examination" and plaintiff offered no reason the information was unavailable at the time of the hearing).  Meta is unaware of any contrary authority, and the FTC has cited none.

There are 434 exhibits on the FTC's "pre-admitted" exhibit list that were never used with a witness at trial.  Admitting these exhibits would *double* the number of exhibits in evidence (currently, 440 exhibits).  Meta based its defense on the record evidence – not the evidence that could have been but was not offered.  With the chess clock to which both sides agreed, the parties had to prioritize the evidence they sought to offer.  The FTC offered the exhibits it decided were most important, and Meta defended against the case the FTC chose to litigate.  It would not have been possible for the FTC to meaningfully use, or Meta to appropriately respond to, 434 additional exhibits during the time allotted for trial, which would have wasted the Court's and parties' time on ancillary issues.  Meta cannot fairly be required to respond now to that unused evidence, and should not have to respond in post-trial briefing to FTC arguments based

on alleged facts that were not introduced at trial or subjected to cross-examination and contrary proof. *Cf. Dairyland Power Co-op. v. United States*, 103 Fed. Cl. 640, 644 (2012) ("the admission of [] documents, even those that were listed on either [party]'s pre-trial list of proposed exhibits but never offered at trial, may nevertheless be prejudicial" because the party is deprived of the opportunity "to conduct cross-examination").

The FTC is wrong (at 6) that the parties and the Court understood that pre-admitted exhibits "could be cited in post-trial briefing" – i.e., treated as admitted – even if the FTC never sought to admit or use them during trial. *See, e.g.*, Trial Tr. 34:14-35:12, 35:13-16, *Ashraf-Hassan v. Embassy of France*, No. 1:11-cv-00805-JEB (D.D.C. Jan. 27, 2016), ECF No. 110 (where parties stipulated to a document's admissibility, a party still must "move to admit before discussing it"). Contrary to the FTC's claim, during the March 31 hearing, the Court did not rule that any documents designated as pre-admitted would become part of the trial record. On the contrary, the Court allowed the FTC to designate up to 400 Meta-produced documents on its exhibit list as pre-admitted only after asking the FTC to estimate how many documents it intended to actually admit at trial. *See* Hr'g Tr. 16:7-8 (Mar. 31, 2025) ("How many of these are you going to admit?"). In the same hearing, the Court explained there would be no prejudice to Meta from pre-admitting more documents than those that would be used with witnesses at trial because the Court would not consider any extraneous pre-admitted documents: if "the FTC witnesses only end up talking about a hundred of [its pre-admitted documents] or a hundred and fifty, then I won't look at the others. . . . [Pre-admitted documents] that aren't ever relied on . . . will be ignored by me and you folks by the end of the trial." *Id.* 7:23-8:4. The FTC's request to dump hundreds of pre-admitted exhibits never used during trial, for the Court's consideration, creates the exact prejudice the Court sought to avoid.

The FTC is also incorrect that denying the FTC's request would override the Court's prior rulings and prejudice the FTC. Declining to admit hundreds of the FTC's unused pre-admitted exhibits post-trial is consistent with the Court's prior rulings, not contrary to them. The Court clearly provided in its controlling April 14 Order (agreed to by the FTC) that pre-admitted documents would not become part of the trial record until their use with witnesses. And throughout the pre-trial period and during trial, the Court made clear that pre-admitting exhibits was a tool for trial efficiency, not a method for dumping in evidence: "it's a convenience and efficiency to have documents preadmitted, but they should be ones you are going to use." Trial Tr. 11:17-13:3 (May 1, 2025); *see also* Hr'g Tr. 16:1-6 (Mar. 31, 2025) (finding that if exhibits are not used at trial, "then we are wasting time and cluttering the record"). The Court also expressly cautioned against "any kind of backdoor situation where someone tries to put things in after the trial that they didn't want crossed on or something like that." Hr'g Tr. 19:22-24 (Dec. 9, 2024). The FTC's proposal to supplement the record with 434 exhibits never subjected to cross-examination or even mentioned at trial is precisely that, and contrary to the FTC's prior commitments to the Court. *See* Jt. Status Rep. at 3 (Dec. 5, 2024), ECF No. 387 (FTC committing to avoid "cluttering the trial or the parties' Proposed Findings" and to "make every effort to highlight the evidence that is most salient to its case through witnesses at trial or in designated deposition testimony"). The Court already advised the parties that it would not consider materials that were not used at trial. *See* Hr'g Tr. 19:5-6 (Dec. 9, 2024) (the "verdict is certainly not going to hinge on a bunch of stuff that wasn't presented during trial"); Hr'g Tr. 14:13-15 (Feb. 21, 2025) ("[A]s I have said multiple times, I plan on largely or entirely basing my verdict on what happens at trial"). So there is no reason to flood the record with those materials now – and there is certainly no reason to undertake the burden of compiling and

"submitting [these] exhibits to the Court for its consideration," *see supra* at 8, when they are not

in evidence.

Meta respectfully requests that the Court deny the FTC's post-trial request to admit

previously unused exhibits into evidence.

**VII.    Disputed Issue:  Whether Meta Should Be Permitted to Submit Transcripts from
Audio or Video Files Meta Played During Witness Exams that the Court Reporter
Did Not Transcribe**

**A.    Meta's Position**

Meta played audio or video files during its examinations of Professor Lampe, Mr. Arora,

Mr. Systrom, and Professor McCoy, but the court reporter did not transcribe those audio or video

files.  Meta proposes to submit transcripts of those audio and video files to the Court so that the

trial record is complete.  The Court afforded the parties a similar accommodation when

deposition videos the parties played were not transcribed by the court reporter.  *See* Trial Tr.

2:16-22 (Apr. 21, 2025) (Court adopting parties' proposal that the parties "provide to the court

reporter the transcript of the deposition[s]" played during trial, "and then that can be entered as if

it had taken place").

The FTC has not identified any prejudice from Meta's proposal.  Meta has provided the

original audio and video files played in court, as well as the corresponding transcripts, to the

FTC.  The transcripts are easily verifiable, and indeed, the FTC has not identified any

inaccuracies in them.  Moreover, Meta proposes to submit these transcripts so the record is clear

and complete as to what material Meta used to *impeach*, not to submit these transcripts as

substantive evidence.  The FTC's claim that the Court ruled certain video impeachment material

would not be "admitted" is thus beside the point.

Meta respectfully requests the Court's permission to submit these transcripts to the Court

so they can be made part of the record.  None of the transcripts requires sealing treatment, so

Meta proposes to file them on the public docket and submit them to the Court along with any other supplemental submissions the Court permits.

### B.    FTC's Position

The FTC objects to Meta submitting to the Court newly-created, post-trial, unverified transcripts of non-deposition video and audio clips that Meta used at trial but are not in the evidentiary record.  Specifically, at trial, Meta played six audio and video clips during their witness examinations that it did not offer into evidence and were not transcribed by the court reporter in real time.  After trial concluded, Meta commissioned transcripts of these non-deposition clips and seeks to submit them to the Court.

The Court plainly ruled that non-deposition video and audio clips used for impeachment or to refresh a witness's recollection are not admitted into evidence.  Brenner Decl., Ex. H, Trial Tr. (Apr. 22, 2025) at 280:22-25 (ruling that the videos will not be admitted into evidence). Permitting Meta to submit newly-created, post-trial transcripts (and presumably cite to them in its post-trial briefing and findings of fact) would incorrectly create the impression these transcripts are actually from trial, and otherwise inappropriately modify the record after the close of evidence.  It could also create a troublesome precedent that parties may on their own commission post-trial transcripts of in-court proceedings and submit them to the Court, potentially adding unnecessary burdens on the Court and litigants in future cases.

Further, permitting Meta to submit newly-created, post-trial transcripts would prejudice the FTC.  Unlike verified trial and deposition transcripts taken by court reporters in the presence of both parties, Meta commissioned its proposed non-deposition video clip transcripts after trial and under its sole supervision.  These newly-created, post-trial, non-deposition transcripts are thus unverified and should not be accepted onto the record.

## VIII.    Disputed Issue:  Whether Meta's Rule 1006 Exhibits Not Used with Witnesses are Pre-Admitted

### A.    FTC's Position

Meta asserts that, if the Court confirms the exhibits the FTC designated as preadmitted are in evidence, then all of Meta's FRE 1006 exhibits should also be admitted, even if those FRE 1006 exhibits were never used with a witness at trial.  That is incorrect.  FRE 1006 exhibits are not, and never were, part of the Court's order allowing each party to mark 400 exhibits as preadmitted—that 400-exhibit cap applied only to *Meta ordinary-course documents*.  Brenner Decl., Ex. F, Hrg. Tr. 13:23-16:25 (March 31, 2025) (discussing only Meta-produced documents about which there are no authenticity questions).  Consistent with that understanding, Meta identified 400 of its own documents as preadmitted; its FRE 1006 exhibits were not included and are not properly labeled "preadmitted" under that order.  There is thus no basis for Meta to request that its unused FRE 1006 exhibits be admitted on the same grounds as the Meta business records contained in the FTC's preadmitted exhibits.

There are other reasons to doubt Meta's claim that its unused FRE 1006 exhibits are admissible.  While the Court ruled that preadmitted exhibits do not require a sponsoring witness, Brenner Decl., Ex. F, Hrg. Tr. 17:17-23 (March 31, 2025), that ruling does not apply to FRE 1006 exhibits, which the Court has repeatedly confirmed may be offered only after a party first establishes the appropriate foundation through the "witness who prepared [them]."  ECF No. 527 at 2 (quoting *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (finding witness who prepared FRE 1006 exhibit "should introduce it")); *United States v. Fuller*, 761 F. Supp. 3d 125, 136 (D.D.C. 2025) (same).  The Court recognized that requirement when it denied the FTC's motion to exclude Meta's Rule 1006 exhibits, which it did in part because "these exhibits represent calculations done by Meta's experts, and [the Court] will permit the FTC to cross-

examine any of Meta's witnesses sponsoring this evidence." ECF No. 527 at 3 (emphasis in original). And the Court re-affirmed that requirement in its ruling on the FTC's motion to admit the FTC's Rule 1006 exhibits, when it found "that the appropriate result is to admit all of the exhibits about which an FTC expert actually testified at trial," but not admit "[t]hose that an expert did not discuss." ECF No. 609 at 1. Meta's unused FRE 1006 exhibits were, by definition, not introduced with the witness who prepared them, and thus the FTC did not have the opportunity to cross examine the preparer.

Meta implies that the Court's order on the FTC's motion to exclude its FRE 1006 exhibits, ECF No. 527, means that all of its FRE 1006 exhibits (even the unused ones) should be deemed admitted. However, that ruling simply denied the FTC's motion to exclude—it did not affirmatively admit all of Meta's Rule 1006 exhibits. ECF No. 527. Underscoring the point, the Court's ruling expressly stated FRE 1006's requirement that a party must introduce such exhibits with the "witness who prepared [them]." ECF No. 527 at 2. The Court should thus reject Meta's request that its additional, unused FRE 1006 exhibits be admitted into evidence.

### B.    Meta's Position

Meta timely disclosed 123 proposed Rule 1006 exhibits by its pre-trial deadline of March 27. *See* Order ¶ 2 (Jan. 17, 2025), ECF No. 394. The FTC moved to exclude 109 of Meta's proposed Rule 1006 exhibits. *See* FTC's Statement Regarding the Parties' Rule 1006 Exhibits (Apr. 7, 2025), ECF No. 513-1. The Court denied the FTC's motion, finding that 87 of the challenged exhibits "serve[] the purposes of Rule 1006," and that there was "'[g]ood cause' to permit the admission" of the other 22. Order at 2, 3 (Apr. 9, 2025), ECF No. 527.

Meta used 47 of these "pre-admitted" Rule 1006 exhibits with witnesses during trial. These exhibits are listed on the parties' hyperlinked list of agreed admitted exhibits. *See* Part IV. Meta does not believe that its 62 additional, unused Rule 1006 exhibits that the Court previously

ruled are admissible are in evidence or should be admitted into evidence after trial.  If the Court

rules that pre-admitted exhibits not used with witnesses *are* in evidence, however, then Meta

respectfully submits that its "pre-admitted" but unused exhibits, including these 62 additional

Rule 1006 exhibits, should be afforded the same treatment as the hundreds of exhibits the FTC

never used with witnesses.

Dated: June 3, 2025                                    Respectfully submitted,

                                                       */s/ Mark C. Hansen*
                                                       Mark C. Hansen (D.C. Bar No. 425930)
                                                       Geoffrey M. Klineberg (D.C. Bar No. 444503)
                                                       Lillian V. Smith (D.C. Bar No. 252516)
                                                       Aaseesh P. Polavarapu (D.C. Bar No. 1740414)
                                                       KELLOGG, HANSEN, TODD,
                                                         FIGEL & FREDERICK, P.L.L.C.
                                                       1615 M Street, N.W., Suite 400
                                                       Washington, D.C. 20036
                                                       Tel: (202) 326-7900
                                                       mhansen@kellogghansen.com

                                                       *Counsel for Defendant Meta Platforms, Inc.*


                                                       */s/ Daniel Matheson*
                                                       Daniel Matheson (D.C. Bar 502490)
                                                       Krisha Cerilli (D.C. Bar 983281)
                                                       Nathan Brenner (IL Bar 6317564)
                                                       Barrett J. Anderson (D.C. Bar 1024159)
                                                       Owen Masters (D.C. Bar 242139)
                                                       Elan Weinberger (N.Y. Bar 5958905)
                                                       Douglas A. Gretz (N.Y. Bar 5666318)
                                                       Federal Trade Commission
                                                       Bureau of Competition
                                                       400 Seventh Street, S.W.
                                                       Washington, D.C. 20024
                                                       Telephone: (202) 326-2075
                                                       Email: dmatheson@ftc.gov

                                                       *Attorneys for Plaintiff Federal Trade Commission*