# EXHIBIT F

```
 1                   UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
     FEDERAL TRADE COMMISSION,
 3                                          Civil Case
                    Plaintiff(s),           No. 20-03590 JEB
 4           v.
                                            Washington, D.C.
 5   META PLATFORMS, INC.,
                                            March 31, 2025
 6                  Defendant(s).

 7   ---------------------------------------------------------

 8                    HEARING HELD VIA ZOOM
                BEFORE THE HONORABLE JAMES E. BOASBERG
 9              UNITED STATES DISTRICT CHIEF JUDGE

10   APPEARANCES:

11   FOR THE PLAINTIFF(S):   Daniel J. Matheson, Esquire
                             Noel Miller, Esquire
12                           Federal Trade Commission
                             Bureau of Competition
13                           400 Seventh Street Southwest
                             Washington, D.C. 20024
14

15
     FOR THE DEFENDANT(S):   Geoffrey M. Klineberg, Esquire
16                           Daniel V. Dorris, Esquire
                             Lily Smith, Esquire
17                           Kellogg, Hansen, Todd, Figel
                              & Fredrick, PLLC
18                           1615 M Street Northwest
                             Suite 400
19                           Washington, D.C. 20036

20

21
     REPORTED BY:            Tammy Nestor, RMR, CRR
22                           Official Court Reporter
                             333 Constitution Avenue Northwest
23                           Washington, D.C. 20001
                             tammy_nestor@dcd.uscourts.gov
24

25
```

```
 1     The following proceedings began at 11:02 a.m.:
 2          THE COURTROOM DEPUTY:  We are here today for a
 3     hearing in Civil Action 20-3590, Federal Trade Commission
 4     versus Meta Platforms.
 5          Your Honor, please note that the public line is
 6     connected and the courtroom is open.
 7          THE COURT:  Okay.
 8          THE COURTROOM DEPUTY:  Beginning with counsel for the
 9     plaintiff, please identify yourself for the record.
10          MR. MATHESON:  Good morning, Your Honor.  My name is
11     Daniel Matheson from the Federal Trade Commission.  I'm
12     joined this morning by my colleague Noel Miller.
13          THE COURT:  Good morning.
14          MR. KLINEBERG:  Good morning, Your Honor.  Geoffrey
15     Klineberg from Kellogg, Hansen on behalf of Meta Platforms,
16     Inc.  I'm joined this morning by my colleagues Daniel Dorris
17     and Lily Smith.  And also joining us is Eric Meiring,
18     in-house counsel with Meta.
19          THE COURT:  Thank you very much.
20          What's the issue, Mr. Matheson?
21          MR. MATHESON:  Your Honor, Ms. Miller will be
22     addressing the preadmission exhibits issue.
23          THE COURT:  Okay.  Ms. Miller.
24          MS. MILLER:  Good morning, Your Honor.  Noel Miller
25     from the Federal Trade Commission.
```

1            We have two different sets of issues for this morning
2   regarding exhibits that we have been unable to reach
3   agreement on or that we expect to be unable to reach
4   agreement on based on how things have been going.
5            I would like to address the two points.  The first is
6   preadmission of exhibits that are on the parties' exhibit
7   lists, and the second is issues regarding Rule 1006 exhibits
8   that both parties have produced.
9            With regard to the exhibits on the parties' exhibit
10  list, the FTC heard Your Honor loud and clear at the
11  December hearing to say that you would like preadmission of
12  documents where possible.
13           Despite having raised this with Meta, we have raised
14  multiple proposals with Meta, we have so far been unable to
15  reach agreement on preadmission on a vast majority of
16  documents on both parties' exhibit lists.
17           We obviously want to make this trial as efficient as
18  possible and prevent us from having to stop at every turn to
19  argue over things that we understand Your Honor to have
20  already ruled on.  To that end, there are two buckets of
21  exhibits that we think are good candidates for preadmission
22  that we would like to present.  We can talk through those
23  now, Your Honor.  We can present them in briefing.
24           THE COURT:  Okay.  Why don't you tell me what they
25  are.  Why don't you identify them for me.  That would be

1    great.
2         MS. MILLER: Yes, Your Honor. The first is regarding
3    Meta's produced documents that appear on the parties'
4    exhibit lists. There are 610 documents on the FTC's exhibit
5    lists that were produced from Meta's files. We propose that
6    the parties agree to preadmission of those documents subject
7    to retaining the ability to object to hearsay statements
8    within those documents.
9         We anticipate this exception on the hearsay point
10   would be an issue for posttrial briefing only to the extent
11   a hearsay statement that appears within the document is
12   being used for an improper purpose. But allowing these
13   documents in would allow us to -- allow the parties to agree
14   they are authentic documents, Meta is not contesting the
15   authenticity of these documents, and they are admissible for
16   some purposes.
17        To be clear, we would also propose the same treatment
18   for documents produced by Meta that are on Meta's exhibit
19   list. This would accomplish, I think, from my calculation,
20   preadmission of around 462 exhibits that are on their list.
21        Unfortunately, Meta has refused to engage with us on
22   this, so this large set of documents just are sitting there
23   waiting to be argued over.
24        THE COURT: 610 from your list and 462 from their
25   list?

```
1          MS. MILLER:  Yes, Your Honor.  So far, most of those
2    documents only retain a general kind of relevance,
3    prejudice, personal knowledge objection that Meta is
4    asserting, but otherwise, they are not objecting to
5    authenticity of those documents.  They are not objecting to
6    other concerns related to those documents.  Obviously our
7    position is that those are statements of party opponents.
8          THE COURT:  Mr. Klineberg?
9          MR. KLINEBERG:  Thank you, Your Honor.  Mr. Dorris
10   will address our arguments today.
11         THE COURT:  Okay.  Great.
12         MR. DORRIS:  Your Honor, I think, as you just heard,
13   the FTC's proposal is to admit into the record approximately
14   1100 exhibits.  We think it is premature for the Court to
15   address this, and it doesn't need to entertain briefing on
16   this right now because Your Honor recently ordered a
17   four-day disclosure deadline for the exhibits that will
18   actually be used that will allow the parties to resolve
19   objections and any confidentiality issues that arise with
20   respect to the exhibits that the FTC will actually use.
21   Obviously they will not be using 1100 exhibits at trial.
22         We think most objections can be resolved in that
23   process with the exhibits the FTC actually wants to use.  We
24   have been very reasonable.  We have already agreed to
25   preadmit 80 exhibits, Your Honor, into the record, which is
```

1     more than many parties would ever use in a trial.
2             And, Your Honor, if you will allow me, I don't think
3     the Court should entertain this proposal because what it
4     would do is create quite cumbersome of a trial record.  That
5     would be 1100 exhibits.  THE vast majority will never be
6     used.
7             And I think the case -- to prove the point, Your
8     Honor, the local rules require the FTC to disclose which
9     exhibits it expects to use.  And of the 600 exhibits on its
10    own list that it now seeks to preadmit, the FTC only expects
11    to use less than 100.
12            The FTC is proposing to admit over 500 exhibits that
13    it doesn't even expect to use at trial into the record.  We
14    don't think that will be helpful to the Court.  It's going
15    to have no context to these documents.  It won't know what
16    weight to give them.  We think it will be unfair to Meta
17    because our witnesses won't know what documents to even
18    address at trial.  So there's just going to be a massive
19    record at the end, and Your Honor --
20            THE COURT:  Let me stop you.
21            Ms. Miller, so is that right?  Of these 1072
22    exhibits, how many do you expect there will be testimony
23    about?
24            MS. MILLER:  Your Honor, that's not correct.  I
25    believe what Mr. Dorris is using as a reference point is the

```
 1    identification in the exhibit list about what the FTC had
 2    identified at the time of the final exhibit list as
 3    documents they expect to use.  The rest of the documents are
 4    identified as may use documents, Your Honor.
 5         We firmly believe that these would be coming in.  At
 6    this stage we are still finalizing our exhibits that are
 7    going to be used with witnesses.  And there is also an
 8    understanding that exhibits could be used in posttrial
 9    briefing.  So while we identified those with our final
10    briefing, that is not the entire universe.
11         At this point we have many documents that we expect
12    to use that are produced by Meta that don't have an
13    authenticity objection and that Meta is only asserting a
14    kind of 602 relevance, prejudice hybrid objection over.
15         To the extent we are going to address objections in
16    those four days leading up to a witness as well as
17    confidentiality issues, the FTC doesn't understand why we
18    couldn't agree that those types of documents where Your
19    Honor has already said he can identify relevance and he can
20    assess relevance, as this is a bench trial, we don't
21    understand why those documents shouldn't be good candidates
22    for preadmission at this point.
23         THE COURT:  Mr. Dorris, let's say we preadmit 600
24    documents, but the FTC witnesses only end up talking about a
25    hundred of them or a hundred and fifty, then I won't look at
```

1   the others.  What's the prejudice for you then if they admit
2   documents, preadmit documents, that aren't ever relied on
3   that will be ignored by me and you folks by the end of the
4   trial?
5           MR. DORRIS:  Your Honor, two points there.  One, they
6   are not all candidates for preadmission.  There are multiple
7   hundreds of documents that have other outstanding
8   objections.  They may be produced by Meta, but that doesn't
9   mean they are not legitimate objections beyond the personal
10  knowledge sponsoring witness issue Ms. Miller has mentioned.
11  So there are hundreds of exhibit objections that still need
12  to be resolved, and we think they are legitimate objections.
13          Number two, Your Honor, as I understand the FTC's
14  proposal, the preadmission means they are part of the trial
15  record, and the FTC will likely cite them in posttrial
16  briefing.
17          You may ignore them, but they are still going to be
18  part of the trial record as I understand the FTC's proposal
19  that they could use in posttrial briefing.
20          MS. MILLER:  Your Honor, if I may?
21          THE COURT:  Sure.
22          MS. MILLER:  This is based on what we understood Your
23  Honor to have ruled on already in December.  Your Honor
24  already mentioned the sponsoring witness issue in his
25  decisions issued in the December hearing.  Your Honor

1  already determined that he did not need to see a sponsoring
2  witness or he did not believe he would need to see a
3  sponsoring witness and that he could assess the relevance.
4       We are trying -- I believe also Your Honor identified
5  that certain -- that documents could be used as kind of see
6  also sites, if you will, in posttrial briefing.
7       There's no reason that these documents that only
8  retain a kind of prejudice, relevance, personal knowledge
9  hybrid can't then be used and assessed by Your Honor.
10       THE COURT:  All right.  So, Mr. Dorris, you say there
11  are a lot of objections.  What kind of objections are we
12  talking about?
13       MR. DORRIS:  There's hearsay within hearsay.  There
14  are --
15       THE COURT:  Right, so the government --
16       MR. DORRIS:  -- they are legitimately --
17       THE COURT:  Hold on.  Hold on.  Hold on.
18       The government says that we can deal with the hearsay
19  objections in posttrial briefings if they become important.
20  What else?
21       MR. DORRIS:  Well, maybe, maybe not on that point.
22  It may not always be clear.  The witness may make it clear
23  where the information came from, that it came from a third
24  party.
25       Other points, Your Honor, there are other prejudice

```
 1    besides this, documents we think are legitimately not
 2    relevant, should not be entered into the trial record.
 3    There are lots of objections pending --
 4          (There was an interruption by the court reporter.)
 5          MR. DORRIS:  Sure.  There are a number of objections,
 6    Your Honor, that are based on the motions in limine now
 7    pending before you that we don't have rulings on yet, and it
 8    would be premature to preadmit those before that is
 9    resolved.
10          THE COURT:  I am truly planning to get to those, yes.
11          Let me ask you this, Ms. Miller.  How about waiting
12    until I have ruled on the motions in limine before deciding?
13    Maybe that will narrow some of the issues.  I am going to be
14    honest with you, I am hoping by next Monday, but I am having
15    difficulty fitting everything in, both from this case and a
16    few other things.
17          So how about that?  In other words, if you see that
18    and then -- in other words, I'm sympathetic generally,
19    Ms. Miller, to the idea of preadmissions, as I have said all
20    along.  I don't want to see a bunch of minor squabbles over
21    overt issues that, again, I can determine relevance, I can
22    determine hearsay as the trial goes and even posttrial.
23          But if the in limines, and I haven't looked at them
24    carefully, would carve out swaths of exhibits or at least
25    narrow some of this, what is the prejudice to waiting a week
```

```
 1    for that?
 2         MS. MILLER:  Your Honor, I recognize that there may
 3    be some motion in limine objections that are outstanding,
 4    but my understanding -- my recollection from the exhibits is
 5    that that is a very small percentage of what we are
 6    proposing to preadmit here.  If Your Honor would like us to
 7    carve that out, that is fine, but the vast majority of the
 8    documents that we are proposing to preadmit from both sides
 9    do not have that objection on them.
10         THE COURT:  But why is -- and I think you sort of did
11    not concur with that 1072 number, but I thought that's the
12    610 from Meta's files that are on your list and 462 that are
13    on their list.  Was that not the number?
14         MS. MILLER:  I did not add up the two numbers, and --
15         THE COURT:  That's what they add to.
16         MS. MILLER:  I don't disagree with Your Honor's
17    calculation of the total number of documents, Your Honor.
18         THE COURT:  Okay.  So --
19         MS. MILLER:  I think even --
20         THE COURT:  So my point is just -- Mr. Dorris's point
21    is are you really going to be introducing that number of --
22    do you really want to be referring to that number of
23    documents during the trial, do you think?
24         MS. MILLER:  Well, I think there's --
25         THE COURT:  I'm just saying maybe you are.  I mean, I
```

```
 1    don't have any sense in this two-month trial whether a
 2    realistic number is going to be a thousand, 2,000, or 500.
 3    I don't have a sense.
 4          MS. MILLER:  Your Honor, I think that there are two
 5    different points.  One is that our total -- the total that
 6    the FTC has proposed using based on our exhibit list is only
 7    the 602 documents produced by Meta plus third party
 8    documents or public documents.  That number is much smaller
 9    in terms of what the FTC would potentially use.  I do
10    think --
11          THE COURT:  So you are saying you don't object to
12    their preadmitting the 462 from their list?
13          MS. MILLER:  Our proposal is that both sets be
14    preadmitted together, that there is no difference between
15    the two in the sense -- you know, I do think, Your Honor,
16    that while we have a clear reason that our -- the documents
17    produced by Meta are not, themselves, hearsay because of the
18    party opponent rule, Meta's documents are hearsay when
19    offered by Meta.
20          We are willing to forgo a kind of broad hearsay
21    objection recognizing that there is that continued ability
22    to object to hearsay statements within the document, but we
23    are willing to forgo a general objection in order to reach
24    agreement on this because we understood that that was what
25    Your Honor's preference was, and we have tried for months to
```

```
 1    do that.
 2              THE COURT:  Mr. Dorris, Ms. Miller says in limine
 3    isn't going to carve out much.  So again, what's the
 4    problem?
 5              MR. DORRIS:  I don't have the exact count of motions
 6    in limine.  I know it is over 200 objections of the 610 that
 7    have other objections.
 8              Your Honor, and I want to go back to a point that I
 9    mentioned at the start.  This can all be resolved on the
10    four-day deadline.  They need to disclose the exhibits in
11    advance of using them at trial.  We think most of these
12    objections can be resolved.  It is hard to resolve them
13    right now.  There are outstanding objections.  We don't know
14    who the document -- the witness -- which witness the
15    document will be used with, and we don't know a lot of
16    things about how exhibits will be used.
17              So we think this can most likely be resolved on the
18    advance disclosure that Your Honor has already ordered, and
19    there is no reason to address this dispute right now.
20              MS. MILLER:  Your Honor, if I could respond to that
21    really quickly.
22              THE COURT:  Okay.
23              MS. MILLER:  Of the 610 documents that Meta produced
24    that are on the FTC's exhibit list that we are proposing
25    preadmitting, only 75 of those continue to retain a
```

```
 1   sponsoring witness objection which also we understand Your
 2   Honor to have already ruled on in December.  The rest of
 3   those documents, some may have a motion in limine objection,
 4   but all of the other documents, Meta has just provided a
 5   blanket 602 slash relevance slash prejudice objection, and
 6   that is all that remains on many of the rest of the
 7   documents.
 8           THE COURT:  Mr. Dorris, so let's say if they are
 9   preadmitted, then what would be the danger or the prejudice
10   to you preadmitting them subject to their being excluded if
11   in your four-day conference you have strong objections to
12   certain things that you end up bringing to me?
13           In other words, maybe that's an easier way to
14   streamline it.  In other words, the default would be they're
15   in, and then unless there's a big problem, they stay in.
16           MR. DORRIS:  Well, I think it all hinges on what the
17   preadmission actually means, which we are not sure the FTC's
18   proposal.  If they are in the trial record, we take it to be
19   they are in the trial record.  Many of these documents will
20   never be used.  They will never come up in the four-day
21   conference, so we won't know which ones to actually object
22   to.
23           I mean, the vast majority of these the FTC, like we
24   discussed earlier, only disclosed expecting to use less than
25   100.  The vast majority will never be used at trial, will
```

```
 1    never come up at this four-day disclosure.  They will just
 2    be in the record.
 3         The prejudice to us is two.  One, they can use those
 4    documents in posttrial briefing without context to the
 5    judge.  We don't think they will be helpful.  And there is a
 6    practical issue here that does affect the parties greatly.
 7    The FTC has disclosed that it may upload every document
 8    entered into the record onto a public website requiring the
 9    parties to redact and address confidentiality for 1100
10    documents that will never be used.
11         THE COURT:  All right.  So I just have to decide
12    this.  But, Ms. Miller, of these 600, I mean, how many do
13    you think you are using?
14         MS. MILLER:  Your Honor, I don't know that number
15    right now.  I can tell you that with regard to what
16    Mr. Dorris just said, that is not my understanding.  My
17    understanding is that the parties are in discussions with
18    third parties who have moved regarding open transparency of
19    this case, and that is where the public posting has come
20    from and that that -- my understanding is that that
21    agreement is only on documents that were used with a
22    witness.
23         So to the extent that is their prejudice that they
24    are raising, that is not an issue based on my understanding
25    of the agreement --
```

```
 1              THE COURT:  Okay.  But back to my question, which is,
 2   I guess, where I ultimately stand is if most of these -- if
 3   the exhibits are going to be admitted, then let's preadmit
 4   them.  If they are not, then we are wasting time and
 5   cluttering the record.  So I think that's ultimately what I
 6   come down to.
 7         So you tell me.  How many of these are you going to
 8   admit?  And maybe the answer is you -- we preadmit half of
 9   them or two-thirds or a third based on what you think
10   there's a decent chance that you are going to be using.
11              MS. MILLER:  Your Honor, I think that there is a good
12   chance that we would use over half of them with witnesses at
13   trial and then again as noted.  The rest may be available as
14   see also sites for Your Honor to understand that there's
15   other support for a point that's being made.
16              THE COURT:  All right.  Then I am going to say that
17   you can preadmit -- I'll let you preadmit two-thirds of
18   them.  So you pick categories, but we will say preadmit 400
19   of them.  Again, that's based on your good faith belief that
20   they are going to be used in some fashion.
21         And then Meta can do a similar number from their list
22   if they want to do that.  And I don't mean a similar
23   percentage.  You also can do about 400, or I will just say
24   no more than 400 from each side for preadmission unless both
25   parties agree.
```

```
 1            MR. DORRIS:  Your Honor, can I ask one point of
 2   clarification?
 3            THE COURT:  Sure.
 4            MR. DORRIS:  The documents where there are other
 5   objections based on motions in limine, are they included in
 6   this?  Because I think Your Honor does need to rule on those
 7   objections before they can choose to --
 8            THE COURT:  Yes.  These were, again, as Ms. Miller
 9   (inaudible) carve out anything from in limine, carve out
10   what's been covered, what is a basis -- what is covered in
11   the in-limine motion.  Okay?
12            And if I rule for you on the in-limine, Ms. Miller,
13   then you can augment --
14            MS. MILLER:  Thank you, Your Honor.  Can I ask one
15   clarifying question?
16            THE COURT:  Yes.
17            MS. MILLER:  Meta has retained sponsoring witness
18   objections, as I noted.  Our understanding was that Your
19   Honor was not going to require sponsoring witnesses, and
20   therefore, we made our witness list according to that
21   understanding.  Can I just confirm that that will not be an
22   issue?
23            THE COURT:  That's correct.
24            MS. MILLER:  Thank you.
25            THE COURT:  All right.  Next issue, Ms. Miller.
```