# EXHIBIT I

```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
      FEDERAL TRADE COMMISSION,
 3                                              Civil Case
                      Plaintiff(s),             No. 20-03590 JEB
 4            v.
                                                Washington, D.C.
 5    META PLATFORMS, INC.,
                                                May 1, 2025
 6                    Defendant(s).             Morning Session

 7    ----------------------------------------------------------

 8                            BENCH TRIAL
                BEFORE THE HONORABLE JAMES E. BOASBERG
 9                UNITED STATES DISTRICT CHIEF JUDGE

10    APPEARANCES:

11    FOR THE PLAINTIFF(S):   Krisha Cerilli, Esquire
                              Albert Teng, Esquire
12                            Stephen Pearson, Esquire
                              Federal Trade Commission
13                            Bureau of Competition
                              400 Seventh Street Southwest
14                            Washington, D.C. 20024

15    FOR THE DEFENDANT(S):   Lillian Smith, Esquire
                              Kevin Miller, Esquire
16                            Alex Parkinson, Esquire
                              Justin Berg, Esquire
17                            Kellogg, Hansen, Todd, Figel
                               & Frederick, PLLC
18                            1615 M Street Northwest
                              Suite 400
19                            Washington, D.C. 20036

20    FOR SNAP:               David O'Neil, Esquire
                              Debevoise & Plimpton, LLP
21                            66 Hudson Boulevard
                              New York, New York 10001
22

23    REPORTED BY:            Tammy Nestor, RMR, CRR
                              Official Court Reporter
24                            333 Constitution Avenue Northwest
                              Washington, D.C. 20001
25                            tammy_nestor@dcd.uscourts.gov
```

```
 1              THE COURT:  That will be great.  And I am also making
 2     notes in my notes about what is sealed and what is not.
 3     That will be helpful.  I will just return you the Presser
 4     binder.
 5              MS. CERILLI:  That would be great.
 6              THE COURT:  Thank you, Ms. Cerilli.
 7              MS. CERILLI:  Thank you.  Nothing further.
 8              THE COURT:  Meta?
 9              MS. SMITH:  Good morning, Your Honor.  Lillian Smith
10     for Meta.
11              So we understand that the FTC may be seeking to use
12     two exhibits this morning with Mr. Cobb.  Those exhibits are
13     not on their exhibit list.  The deadline to add exhibits to
14     their exhibit list was March 12.  So to amend to add things
15     now, the FTC needs to show that it's substantially justified
16     or harmless.  They haven't made that showing.  I can just
17     quickly explain.
18              It's not substantially justified --
19              THE COURT:  Thank you.  Let's find out what the
20     exhibits are before we go into the argument, if that's okay.
21              FTC?
22              MR. TENG:  Both parties have been swapping in and out
23     exhibits throughout the process, and Meta has added two days
24     ago ten newly-produced third-party documents.  And generally
25     the parties have worked together in agreement to add and
```

```
 1    swap those in.
 2            We disclosed these new documents as part of an
 3    amended exhibit list that we submitted to Meta over a week
 4    ago.  We also disclosed them as part of the four-day process
 5    for Dr. Cobb's exhibits.
 6            And lastly, we think the documents are extremely
 7    relevant.  They speak to updated sentiment metrics which we
 8    hope that Dr. Cobb will testify to and relate to market
 9    conditions.
10            THE COURT:  So are they in the binder?
11            MR. TENG:  They are in the binder.
12            THE COURT:  What numbers?
13            MR. TENG:  15475 and 15474.  And they are both of the
14    kind that we introduced yesterday, but they are more updated
15    versions showing more recent sentiment metrics that we think
16    are highly relevant to the case.
17            THE COURT:  74 relates to 2021 documents, not --
18            MR. TENG:  They do, yes.
19            THE COURT:  So how is that --
20            MR. TENG:  We have been --
21            THE COURT:  Hold on.
22            MR. TENG:  We have --
23            THE COURT:  Hold on.  How is that updated then
24    recently?
25            MR. TENG:  We have been discussing sentiment metrics
```

```
1    from 2020, and I think 47 -- 155474 (sic) is a sentiment
2    update from 2022, and the other document is an email
3    exchange that discusses Meta's characterizations of those
4    sentiment metrics.  And the demonstrative that Meta has
5    prepared today includes sentiment --
6            THE COURT:  I guess my point is these aren't new
7    documents.  These are old documents.  So why are you
8    updating them now?
9            MR. TENG:  Because we were attempting to respond to
10   Meta's arguments in this case about changed market
11   conditions.  We don't believe there is prejudice to Meta in
12   this instance given that they have had the documents for a
13   long time.  They relate to sentiment, which is the subject
14   of dozens of exhibits on the exhibit list here, and we --
15           THE COURT:  All right.
16           MR. TENG:  -- have been swapping in and out --
17           THE COURT:  Okay.  Ms. Smith, what's the prejudice?
18           MS. SMITH:  Well, first, just as Your Honor pointed
19   out, they have had these documents since the close of
20   discovery.  There's no reason they couldn't have put them on
21   their original exhibit list.  They don't go to recent market
22   conditions.
23           The prejudice to us here is, you know, we are trying
24   to prepare our witnesses and our defenses in response to the
25   900 exhibits that are already on their list.  I don't think
```

```
 1    it's a fair characterization of the situation to say that
 2    both parties have been making swaps.  That's not accurate.
 3    The only exhibits that we have added to our exhibit list are
 4    the third-party documents produced in response to the
 5    subpoenas that Your Honor already ruled there was good cause
 6    to add to the list.
 7            And the fuller context here, this isn't the first
 8    time that the FTC has tried to add exhibits to its list
 9    since trial began.  The first time was on the eve of
10    Mr. Zuckerberg's testimony.  We consented then as a courtesy
11    to them.  Now they are trying to do it on the eve of
12    Mr. Cobb's testimony.  Just last night they sent us another
13    batch of exhibits that they want to add.  They also want
14    to --
15            THE COURT:  For whose testimony?
16            MS. SMITH:  They have not disclosed for whose
17    testimony that will be for.  Those documents are also all
18    documents that were produced in discovery that do not relate
19    to recent market conditions.
20            They are also well past their 400 preadmitted
21    exhibits, and they have asked us to start making changes to
22    their preadmitted exhibit list.
23            So our point is we are trying to prepare for trial.
24    We are trying to deal with the exhibits that have been
25    disclosed in a timely fashion.  It's prejudicial to us to be
```

```
 1    dealing with these changes when we should be using our time
 2    to prepare for trial.  So we just ask the Court to hold the
 3    FTC to the deadlines that it previously imposed unless they
 4    can make the requisite showing.
 5             THE COURT:  Okay.  So first of all, let me just, on
 6    the preadmitted, again, this is convenience, and it seems
 7    there have been a lot of exhibits, particularly given my
 8    ruling regarding 801(d)(2), that you folks haven't objected
 9    to their admission.  My feeling is why aren't we adding
10    those to preadmitted so we are not having any discussion
11    about them.  In other words, if there is no objection by
12    Meta, then let's have them preadmitted as opposed -- I gave
13    a numerical limit at the beginning of the trial in an
14    attempt, again, to balance efficiency with fairness, but it
15    seems it's not terribly efficient not to preadmit documents
16    that you folks don't have any objection to.  Fair?
17             MS. SMITH:  Yeah, I think that's fair.  I mean, I
18    think our concern, which is something we have articulated
19    from the beginning, is that this is cluttering the record
20    with all kinds of documents that aren't ever getting used
21    with witnesses.
22             I mean, I would point out, from the preadmitted
23    documents on their list, they are actually not using that
24    many of them in testimony.  They are using new exhibits not
25    on the preadmit list.  We are not objecting because they are
```

1    statements of a party opponent, as you have pointed out.  I
2    think they are 50-50 right now on using exhibits on the
3    preadmit list and not.
4         So where we are ending up is that every single
5    Meta-produced document on their exhibit list is coming into
6    evidence, and it makes it very challenging for us to respond
7    when -- I think they have 675 Meta-produced documents on
8    their list.  You know, this should be a known quantity.
9    It's difficult for us to prepare our witnesses when all of
10   that is on the record, and that's a concern we have had from
11   the beginning.
12        THE COURT:  Valid points.  And I say this is equal
13   that the government should be -- it's a convenience and
14   efficiency to have documents preadmitted, but they should be
15   ones you are going to use.  So I agree that ones that you
16   are going to use that there shouldn't be an objection to
17   should be preadmitted, and we can move along.
18        If you want to seek to preadmit others that you are
19   going to use, then I think you should do that, and Meta
20   shouldn't have a problem with them if they are falling into,
21   again, statement of a party opponent.
22        Again, I'm sure there are good points on both sides.
23   I am not going to exclude these two documents today, but
24   FTC, if the -- behavior is probably a poor word -- the
25   conduct continues, that this is sort of a pattern of trying

```
 1    to introduce exhibits that haven't been listed previously,
 2    then it won't be a free pass.  Okay?
 3            MR. TENG:  Understood.  Thank you, Your Honor.
 4            MS. SMITH:  Could we ask that for the exhibits they
 5    sent us last night that they seek to add to their exhibit
 6    list, we would request that they make the requisite showing
 7    to the Court of substantially justified and harmless before
 8    they amend their list to add those new exhibits.
 9            THE COURT:  All right.  So when does the FTC intend
10    to use those that were just produced last night?
11            MS. CERILLI:  Your Honor, one issue here is that we
12    were not apprised that they were planning to bring this
13    dispute to your attention, so I'm not actually fully
14    apprised of the documents that are in dispute.
15            THE COURT:  Okay.  How many are there, how many
16    documents?
17            MS. SMITH:  I think there are five new exhibits and a
18    number of preadmit swaps, which we will deal with based on
19    your guidance already.
20            THE COURT:  I will have the FTC, if you can submit by
21    9:00 a.m. Monday, an explanation of those -- justification
22    for the late admission, and that way you will be able to see
23    what they are and you can submit them.  Okay?
24            MS. SMITH:  Thank you, Your Honor.
25            And then the last thing I will say, and then I'll let
```

```
 1    us get going here, is I believe we have some substantive
 2    objections to the new exhibits as well.  I will let
 3    Mr. Miller address those if and when the exhibits get used
 4    today.
 5            THE COURT:  Fine.
 6            MS. SMITH:  Thank you.
 7            THE COURT:  Thank you.
 8            All right.  Let's resume
 9            MR. TENG:  Thank you, Your Honor.  At this time the
10    FTC would recall Curtiss Cobb from Meta.
11            THE COURT:  Good morning, sir.  You remain under
12    oath.  Do you understand?
13            THE WITNESS:  I do.
14            THE COURT:  Thank you.
15                            CURTISS COBB
16    Having been previously duly sworn on oath, was further
17    examined and testified as follows:
18                    DIRECT EXAMINATION (Resumed)
19    BY MR. TENG:
20    Q   Good morning, Dr. Cobb.
21    A   Good morning.
22    Q   So I want to flip in your binder, which I think you
23    still have the white binder, to PX3152.
24            MR. TENG:  This has been preadmitted.
25            THE WITNESS:  3152?
```