IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION**,

                Plaintiff,

    v.

**META PLATFORMS, INC.**

                Defendant.

Civil Action No. 1:20-cv-03590 (JEB)

**PUBLIC VERSION**

**Plaintiff Federal Trade Commission's Bench Brief Regarding Post-Discovery Evidence**

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

    I. Courts Adjudicating Monopoly Maintenance Claims Routinely Assess Liability Based on Evidence Through the End of Discovery and Exclude or Disregard Selective Evidence of Supposed Recent Changes ................................................................................................ 2

    II. The Court Should Exclude or Give Little Weight to Meta's Testimony Regarding Recent Data or Information Not Produced During Discovery ........................................................ 5

        A. The Court should exclude or disregard undisclosed, post-discovery evidence because it is unreliable and prohibited by Federal Rules. ........................................................ 5

        B. Meta's post-discovery, undisclosed evidence should be excluded or disregarded because it fundamentally prejudices the FTC ............................................................. 9

    III. Section 13(b) Does Not Provide a Basis for Admitting Post-Discovery Evidence Outside of the Remedy Phase ....................................................................................................... 10

CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F. 3d 410 (5th Cir. 2008) ....................................... 9

*FTC v. AbbVie Inc.*, 976 F. 3d 327 (3d Cir. 2020) ...................................................................... 12

*FTC v. Accusearch, Inc.*, 570 F. 3d 1187 (10th Cir. 2009) .......................................................... 12

*FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................ 12

*FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34 (D.D.C. 2022). ......................................................... 12

*FTC v. Meta Platforms, Inc.*, No. 20-3590 (D.D.C. April 2, 2025) ................................................ 5

*FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK (N.D. Cal. Dec. 13, 2018) .......................... 4, 5, 9

*FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019) ...................................................... 12

*FTC v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022),
  aff'd, No. 22-728, 2024 WL 1026010 (2d Cir. Jan. 23, 2024) ................................................. 12

*FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14 (D.D.C. 2023) ...................................................... 11

*FTC v. Sysco Corp.*, 308 F.R.D. 19 (D.D.C. 2015) ..................................................................... 10

*United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) ................................................... 4

*Hickman v. Taylor*, 329 U.S. 495 (1947) ..................................................................................... 10

*Jean-Baptiste v. Booz Allen Hamilton, Inc.*, No. 1:22-CV-01499 (TNM), 2024 WL 3551941,
  (D.D.C. July 26, 2024) aff'd, No. 24-7110, 2025 WL 32979 (D.C. Cir. Jan. 6, 2025) .............. 6

*Jeffries v. Barr*, 965 F. 3d 843 (D.C. Cir. 2020) ..............................................................................

*Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F. 3d 924 (9th Cir. 2002) ................................. 9

*Smith v. Henderson*, 54 F. Supp. 3d 58 (D.D.C. 2014) .................................................................. 9

*United States ex rel. Purcell v. MWI Corp.*, 824 F. Supp. 2d 12 (D.D.C. 2011) .......................... 10

*United States v. Ausby*, 436 F. Supp. 3d 134 (D.D.C. 2019) ....................................................... 10

*United States v. Gen. Dynamics Corp.*, 415 U.S. 486 (1974) ........................................................ 8

*United States v. Google Ad Tech*, No. 23-cv-108, 2025 WL 1132012
  (E.D. Va. Apr. 17, 2025) ................................................................................................... 3

*United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) ...................................................... 4

*United States v. Google LLC*, No. 20-cv-03010 (D.D.C. May 25, 2022) ........................... 3, 4, 5, 9

*United States v. Google LLC*, No. 23-cv-108 (E.D. Va. March 31, 2023) ........................ 3, 5, 9, 10

*United States v. Google LLC*, No. 23-cv-108 (E.D. Va. Sept. 20, 2024) ......................................... 3

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .................................................. 11

*United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) ...................................................... 10

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ..................................................... 2

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ............................................................ 11, 12

**Statutes**

15 U.S.C. § 53(b) .......................................................................................................................... 12

Section 13(b) of the FTC Act ............................................................................................... 1, 11, 12

Sherman Act Section 2 ............................................................................................................. 2, 11

**Other Authorities**

Substitute Am. Compl. ¶¶ 105, 127, 164, 218 (Sept. 8, 2021) ...................................................... 13

**Rules**

Federal Rule of Civil  Procedure 26(e) ........................................................................................... 9

Federal Rule of Civil Procedure 37(c)(1) ....................................................................................... 9

Federal Rule of Civil Procedure 37(e) ............................................................................................ 1

Federal Rule of Civil Procedure 26(a) ........................................................................................... 9

Federal Rule of Civil Procedure 26(e) ........................................................................................... 9

Federal Rule of Evidence 107 ................................................................................................. 8

Federal Rule of Evidence 401 ............................................................................................... 10

Federal Rule of Evidence 402 ............................................................................................... 10

Federal Rule of Evidence 403 ............................................................................................ 9, 10

Federal Rule of Evidence 602 ................................................................................................. 7

Federal Rule of Evidence 1001 ............................................................................................... 6

Federal Rule of Evidence 1002 ...................................................................................... 1, 6, 8

The Court should follow the practice of the last three courts trying major monopolization cases brought by the government: the Court should base its liability determination on the discovery record and give no weight to the testimony of Meta's executives or experts regarding data and information that has never been produced in this litigation. *Infra* § I. That the FTC brings its case under Section 13(b) of the FTC Act does not call for any different approach; the other government cases alleged ongoing monopolies and sought forward-looking injunctive relief, yet the courts still used evidentiary cutoffs that mirrored discovery deadlines. *Infra* § III.

Deviating from the standard approach is particularly unwarranted here given the nature of the evidence and manner in which Meta seeks to introduce post-discovery evidence. *Infra* § II. Testimony from Meta's executives regarding the content of non-produced data is unreliable and violates Federal Rule of Evidence 1002 and is prohibited by Federal Rule of Civil Procedure 37(e). *Infra* § II.A. And its inclusion at trial unfairly prejudices the FTC. *Infra* § II.B.

## ARGUMENT

The FTC must show in the liability phase that Meta's acquisitions contributed to the maintenance of monopoly power. The FTC has done so: evidence adduced during the discovery period, and the credible testimony of witnesses, shows that (1) consumers can—and in large numbers actually do—rely on Meta's services for friends and family sharing; (2) the only other services that provide reasonable friends-and-family-sharing alternatives are insufficient to restrain Meta's monopoly power; and (3) Meta's acquisitions of Instagram and WhatsApp contributed to the maintenance of its power. The trial evidence similarly shows that Facebook and Instagram continue to be apps anchored in friends and family sharing, and that apps outside the relevant market—including TikTok, YouTube, Pinterest, and others—are not reasonable substitutes for the friends-and-family social networking experience provided by Meta. *See, e.g.*,

1

Trial Tr. (Professor Lampe) at 79:3-82:23, 164:24-165:10, 179:10-180:11 (April 23, 2025); Trial Tr. (Presser) at 51:1-22 (April 30, 2025); Trial Tr. (Filner) at 164:14-20, 174:7-14, 185:3-18, (April 17, 2025); Trial Tr. (Roberts) at 187:1-3, (April 28, 2025).

In response, Meta has elicited testimony from its own executives focusing on supposed data from recent months. Presumably Meta will argue that this supposed data indicates that at the present moment: (1) no market exists for personal social networking (PSN) services in the United States; or/and (2) other services provide consumers with a reasonable alternative for PSN services to a sufficient extent that Meta no longer possesses a dominant share of the relevant market.

As detailed below, for purposes of the liability phase, the Court should follow the standard approach of limiting evidence to the discovery period. The Court should ignore entirely, or at least heavily discount, Meta's witnesses' claims regarding supposed evidence that has never been produced and has been generated well after the discovery cutoff. If the Court finds Meta liable, then the parties and the Court can address more recent evidence, as relevant, during the remedies phase—after an opportunity for appropriate, balanced discovery.

**I.     Courts Adjudicating Monopoly Maintenance Claims Routinely Assess Liability Based on Evidence Through the End of Discovery and Exclude or Disregard Selective Evidence of Supposed Recent Changes**

The Supreme Court long ago recognized that "[t]erminal points are necessary even in a [] trial involving intricate business facts and legal issues." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 230 (1940). For this reason, courts regularly employ evidentiary cut-offs when determining liability in antitrust cases seeking injunctive relief, including claims of ongoing monopoly maintenance. Most notably, in assessing whether a Section 2 defendant was "still today" a monopolist, courts in three recent major government cases relied on evidence

through the close of discovery and excluded or gave little weight to purported "up to the minute" evidence of changed conditions.

*First*, and most recently, in a monopolization case involving Google's advertising technology business, Judge Brinkema imposed strict limits on the introduction of evidence post-dating fact discovery. In that case, the court set a fact discovery deadline of September 8, 2023, and an expert discovery deadline of January 12, 2024. *See* Scheduling Order ¶¶ 1-2, *United States v. Google LLC*, No. 23-cv-108 (E.D. Va. March 31, 2023), ECF No. 94("*Google Ad Tech*"). At trial in September 2024, the defense sought to elicit testimony about events occurring on August 8, 2024, using a document that was not in evidence because it post-dated fact discovery. *See* Ex. A (Trial Tr. at 89:9-90:7, *Google Ad Tech*, No. 23-cv-108 (E.D. Va. Sept. 20, 2024), ECF No. 1360). The court directed defense counsel to limit her questioning to "before September 2023, which was the fact discovery cutoff." *See id.* at 91:3-9. In the court's framing, evidence regarding post-discovery events would be "going to remedies versus liability." *Id*. at 91: 24-25. Just last month, the court found Google liable for ongoing monopolization, relying on evidence from the discovery record. *E.g.*, *Google Ad Tech*, No. 23-cv-108, 2025 WL 1132012 (E.D. Va. Apr. 17, 2025).

*Second*, in this District, in the monopolization case involving Google's search engine, Judge Mehta ordered an evidentiary cut-off date of June 17, 2022—notwithstanding that the court would be determining in 2024 whether Google currently has an unlawful monopoly. *See* Order Regarding Prod. Deadline, Mot. to Compel Deadline, and Evidentiary Cut-Off Date at 3, *United States v. Google LLC*, No. 20-cv-03010 (D.D.C. May 25, 2022), ECF No. 357 ("*Google Search*"). The court explained its reasoning for imposing that cutoff (initially set for May 6, 2022), and the limited exceptions that might be tolerated:

3

> So I think bottom line is this. I think we are all in agreement that the record cut-off, if you will, is the end of fact discovery, documents that pre-exist the record -- the fact discovery date of May the 6th [2022], that's our record. . . . [I]f there are things that happened, and, undoubtedly, those are, I think, the kind of things you all are conceding are likely to be public -- publicly known and public events, you know, we'll just have to see what they are and whether they're the kind of thing that ultimately are going to be relevant and worth bringing to my attention at trial, okay?

*See* Ex. B (Status Conference Tr. at 31:18-32:16, *Google Search*, No. 20-cv-3010 (D.D.C. May 12, 2022), ECF No. 353). The court later extended that deadline to June 17, 2022. Order Regarding Produc. Deadline, Mot. to Compel Deadline, and Evidentiary Cut-Off Date at 3, *Google Search*, No. 20-cv-3010, (D.D.C. May 10, 2024), ECF No. 357. On August 5, 2024, the court ruled that Google does have an unlawful monopoly, relying principally on evidence from 2022 and earlier. *See Google Search*, 747 F. Supp. 3d 1 (D.D.C. 2024).

*Third*, and similarly, in *FTC v. Qualcomm*, Judge Koh enforced an evidentiary cut-off even though the court set a single trial for both liability and remedy and excluded defendant's post-discovery evidence because "[b]y necessity, the evidence at trial will never be fully up-to-date following the cutoff for discovery." *See* Ex. C (Order Den. Qualcomm's Req. to Introduce Evid. of Post-Disc. Events at 6-10, *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK (N.D. Cal. Dec. 13, 2018), ECF No. 997). The court observed that "the discovery required to test Qualcomm's assertions regarding evidence of post-discovery events would have to include documents and testimony from multiple Qualcomm custodians . . . as well as document and deposition discovery from third parties." *Id.* at 8 (cleaned up). Because it was too late for balanced discovery to occur (as it is here), the court excluded the evidence. *Id.* at 8-10.

4

## II. The Court Should Exclude or Give Little Weight to Meta's Testimony Regarding Recent Data or Information Not Produced During Discovery

### A. The Court should exclude or disregard undisclosed, post-discovery evidence because it is unreliable and prohibited by the Federal Rules

This Court should follow the approach of *Google Search*, *Google Ad Tech*, and *Qualcomm*, and focus its liability determination on evidence up through the discovery period. This Court has held that Meta may introduce certain evidence related to the discrete public event of the TikTok ban. *See* Order, *FTC v. Meta Platforms, Inc.*, No. 20-3590 (D.D.C. April 2, 2025), ECF No. 503.[1]  But the Court did not suggest, and should not now hold, that this exception swallowed the general rule and grants Meta an unlimited license to inject unreliable testimony regarding non-produced data that has nothing to do with that event.

Testimony regarding Meta's undisclosed, post-discovery evidence should be excluded or disregarded because it is fundamentally unreliable due to Meta's refusal to produce the underlying data. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[1] For avoidance of doubt, the FTC maintains its objections to such evidence, as set forth in Mot. to Exclude Untimely and Cherry-Picked Evid., *FTC v. Meta Platforms, Inc.*, No. 20-3590 (D.D.C. Mar. 18, 2025), ECF No. 428 and FTC's Reply to Meta's Opp. to Mot. to Exclude Untimely and Cherry-Picked Evid., *FTC v. Meta Platforms, Inc.*, No. 20-3590 (D.D.C. Mar. 23, 2025), ECF No. 463.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████

Notwithstanding Meta's continued refusal to produce data from July 1, 2022 through the present, Meta appears to be attempting to selectively prove, through live testimony, the contents of Meta's unproduced data. This effort violates Federal Rule of Evidence 1002. Under Rule 1002, if Meta wishes to prove the contents of data, it must produce the data and admit it into evidence; its witnesses "cannot just relay what" the data supposedly contains. *Jean-Baptiste v. Booz Allen Hamilton, Inc.*, No. 1:22-CV-01499 (TNM), 2024 WL 3551941, at *4 (D.D.C. July 26, 2024) (citing *Jeffries v. Barr*, 965 F.3d 843, 850 n.1 (D.C. Cir. 2020), *aff'd*, No. 24-7110, 2025 WL 32979 (D.C. Cir. Jan. 6, 2025); *see also* Fed. R. Evid. 1001 (defining "writing" to include "numbers . . . set down in any form").

The unreliability of Meta's attempts to elicit live testimony on unproduced data is compounded by Meta's use of "illustrative aids" that purport to summarize said data. For example, Meta prompted Dr. Cobb's testimony through an "illustrative aid" purporting to show user sentiment statistics through 2025, even though none of the supposed data underlying those "illustrative aids" has ever been produced or introduced into evidence. Dr. Cobb testified that his information was drawn from reading the "illustrative aid" itself, and not from his personal knowledge. *See* Trial Tr. (Cobb) at 39:16-41:2, 46:16-47:23 (May 1, 2025) ("Q From this demonstrative, can you tell us what Facebook's RCAU was, say, at the end of 2024, what percentile? A It looks like it's somewhere around 25. Q And do you happen to know the same number for Instagram? A I would have to look that up. On 16/7, it was hovering around 27."). Thus, the illustrative aid was used to prompt testimony that was not within the witness's personal

6

knowledge, and the FTC has no ability to contradict the testimony, because the underlying data has never been produced. Similarly, Meta presented Mr. Olivan with an "illustrative aid" purporting to show Instagram's monthly active users from the close of fact discovery through 2025 and attempted to elicit testimony reciting the numbers that appeared in those "illustrative aids." After being asked "What does this demonstrative show about the extent to which Instagram grew after 2018?", Mr. Olivan testified that he didn't actually know the numbers for the United States, but—referring to the supposed illustrative aid—testified "this one is roughly right." *See* Trial Tr. (Olivan) at 189:8-190:21 (Apr. 29, 2025); *see also* Trial Tr. (Systrom) at 235:4-237:18 (Apr. 22, 2025) (Despite being prompted with a supposed illustrative aid that Meta's counsel claimed represented "a graph of monthly active users," Mr. Systrom testified he did not know how many MAUs Instagram had in recent years). *See also* Fed. R. Evid. 602 (need for personal knowledge).

Other Meta "illustrative aids" that Meta has disclosed, despite refusing to produce the underlying data, are similarly situated. For Mr. Mosseri, Meta disclosed "illustrative aids" including ███████████████████████████████████████████████████████████████████████████████████. For Mr. Schultz, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

None of these "illustrative aids" are proper because their "utility in assisting comprehension" is "substantially outweigh[ed] by the danger of unfair prejudice" or "confusing the issues." Fed. R. Evid. 107. Witnesses' testimony prompted by the supposed illustrative aids violates Fed. R. Evid. 1002, and the Court should ignore it.

More generally, the Court should exclude or ignore Meta's efforts to backdoor through trial testimony information that has not been subject to the ordinary discovery process, because it will produce testimony that is simply unreliable. One prominent example illustrates the problem: Mr. Zuckerberg testified on the first day of trial that he had seen data that "impressions from friend content on stories" represented approximately 25% of stories impressions on Facebook. Trial Tr. at 185:2-5 (Apr. 14, 2025) ("I'm not sure if I have the most recent stat on this, but I saw -- I think I saw one recently that the number of impressions or the percent of impressions from friend content on stories is -- about a quarter of them are from friends."); *see also* 186:8-10. The next morning, the FTC was able to show that Meta's recent data—according to Meta's own expert—shows that friend content represents 68% of impressions on Facebook stories, and not 25% as Mr. Zuckerberg testified. Trial Tr. at 6:4-8:6 (Apr. 15, 2025). If Prof. Carlton had not happened to produce data contradicting Mr. Zuckerberg's testimony, the Court would have been left with the mistaken impression that only about one quarter of impressions on Facebook stories originate from friends. *See* Trial Tr. at 185:2-5 (Apr. 14, 2025). The potential consequences of basing a liability determination on such unreliable evidence are plain.

In numerous other circumstances, because Meta has refused to disclose relevant data, Meta has blocked the FTC's ability to probe through discovery recent data and testimony that might relate to that data, ensure the data's accuracy, compare different time horizons for that data, or even confirm whether Meta is cherry-picking or manipulating data to skew the record.

8

*See United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 504-05 (1974) (recognizing the "extremely limited" value of evidence created while a lawsuit was "threatened or pending."); *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F. 3d 410, 434-35 (5th Cir. 2008) (evidence that "*could arguably* be subject to manipulation" should be accorded little or no weight).

Unsurprisingly, the practical reasons to close discovery recognized by *Google Ad Tech, Google Search*, and *Qualcomm*, are confirmed by relevant rules prohibiting Meta's conduct. Rule 37(c)(1) specifically directs that "[i]f a party fails to provide information … as required by Rule 26(a) or (e) … the party *is not allowed* to use that information … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Here, Meta unquestionably failed to "supplement" its responses to requests for production as required by Rule 26(e), which prohibits the introduction of that data at trial. Nor is Meta's failure excused because the evidence post-dated discovery, as Meta had the opportunity to attempt to supplement its data productions "in a timely manner" and chose not to do so. Fed. R. Civ. P. 26(e), 37(c)(1).

**B. Meta's post-discovery, undisclosed evidence should be excluded or disregarded because it fundamentally prejudices the FTC**

In addition, Meta's unproduced and post-discovery evidence should be excluded under Federal Rule of Evidence 403. "The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F. 3d 924, 933-34 (9th Cir. 2002). Meta's evidence not only postdates discovery but was not produced at all. The probative value of unproduced data is significantly outweighed by the unfair prejudice to the FTC of conducting a trial based on out-of-time evidence available to only one party. *See, e.g.*, *Smith v. Henderson*, 54 F. Supp. 3d 58, 66 (D.D.C. 2014) ("'eleventh-hour'" evidence harms the

opposing party because the party "'would effectively be deprived of the opportunity'" to depose witnesses about the new facts and "would also have to unexpectedly gather rebuttal evidence at a moment's notice, which could cause substantial harm" to the party's case) (quoting *United States ex rel. Purcell v. MWI Corp.*, 824 F. Supp. 2d 12, 19 (D.D.C. 2011)).  The baseline requirements of the Rules of Evidence dictate that the Court should exclude even relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice to the other side. Fed. R. Evid. 401, 402, 403; *see United States v. Ausby*, 436 F. Supp. 3d 134, 153 (D.D.C. 2019). Accordingly, while the Court may grant case-by-case exceptions for good cause, it should as a general matter exclude testimony regarding unproduced data under Rules of Evidence 401, 402, and 403.  *See Ausby*, 436 F. Supp. 3d at 153.

      Meta's attempts to belatedly and selectively rely on unproduced data and information that Meta has refused to make available to the FTC subverts the basic principle that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *FTC v. Sysco Corp.*, 308 F.R.D. 19, 21-22 (D.D.C. 2015) (parties must "exchange information relevant to their dispute before a trial" to avoid a "trial by ambush."); *id.* (litigation "is not a game of 'blind man's bluff,' but 'a fair contest with the basic issues and facts disclosed to the fullest practicable extent'" (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682-83 (1958)).  Having refused to produce data and information pursuant to an orderly discovery process, Meta should not now be allowed to reverse course and selectively refer to unproduced data.

**III.**     **Section 13(b) Does Not Provide a Basis for Admitting Post-Discovery Evidence Outside of the Remedy Phase**

      As the *Google Ad Tech* court noted, to the extent that a defendant is asserting that its monopoly power has been or is being eroded given recent events, the remedies phase allows for

an assessment of such forward-looking questions.  In this case, the remedies phase will also provide an opportunity for balanced discovery into as-yet unproduced data; if Meta's recent data or other evidence is relevant, the Court can consider it during the remedies phase.  Indeed, the D.C. Circuit has recognized the "enormous practical difficulties" inherent in managing complex antitrust cases involving technology markets and has endorsed using the remedies phase "to update and flesh out the available information" on market conditions.  *United States v. Microsoft Corp.*, 253 F.3d 34, 49 (D.C. Cir. 2001); *see United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (noting that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct").

       That this case is brought under Section 13(b) of the FTC Act does not change the time period relevant to a liability determination or the nature of the Court's antitrust inquiry.  The question before the Court at the liability phase is whether Meta has violated the antitrust laws as alleged in the Amended Complaint.  That inquiry is the same whether the monopolization case is brought by the FTC pursuant to Section 13(b), or by the Department of Justice pursuant to its authorizing statutes.  *Compare FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14, 34-35 (D.D.C. 2023) (describing liability standard for Sherman Act Section 2 monopolization), with *Microsoft*, 253 F.3d at 50 (describing same standard).  If the Court finds Meta liable, then the Court will determine in a subsequent remedies phase whether and what injunctive relief is warranted.  Scheduling Order at 2.  That is the appropriate time to update the Court about recent market conditions before the Court decides what remedy to order.  *Microsoft*, 253 F.3d at 50.

This Court held at the motion to dismiss stage that Section 13(b) requires the FTC to allege that Meta "is violating" or "is about to violate" the antitrust laws.[2] *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 11, 26-27 (D.D.C. 2021); *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 42, 58-59 (D.D.C. 2022). But that language sets forth a *pleading standard*—not an additional substantive element the FTC must prove at trial. *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir. 2019), held that the "is violating" and "is about to violate" language lays out a "threshold requirement" that applies at the time the FTC brings suit. *Id.* at 157-58. The *Shire* court contrasted that "pleading requirement," "which is applied right out of the gate," with the usual legal standard for "whether to grant or deny injunctive relief," "which a court uses to determine the FTC's entitlement to an injunction." *Id.* at 157-58. *Shire* thus acknowledged that the "is" or "is about to" language in Section 13(b) has no independent role to play at the merits stage. *See id.*

The Third Circuit confirmed exactly that in *FTC v. AbbVie Inc.*, 976 F. 3d 327, 381 (3d Cir. 2020). *AbbVie* rejected the defendants' argument that the FTC must show defendants "are violating" or "are about to violate" the antitrust laws in order to *obtain* an injunction. *Id.* Instead, the correct standard at that stage is the usual equitable one—which permits injunctive relief even for violations entirely in the past if the plaintiff can show they are likely to recur. *See id.; see also W.T. Grant Co.*, 345 U.S. at 633. Courts consistently apply that traditional standard—not any distinct "is" or "is about to" requirement—in deciding Section 13(b) cases. *See, e.g.*, *FTC v. Accusearch, Inc.*, 570 F. 3d 1187, 1201-02 (10th Cir. 2009); *FTC v. Shkreli*,

---

[2] The FTC preserves its prior arguments about the proper interpretation of Section 13(b). *See* Pl. FTC's Mem. of Law In Opp. to Def. Facebook, Inc.'s Mot. to Dismiss at 39-41, ECF No. 59 (Apr. 7, 2021); Pl. FTC's Mem. of Law In Opp. to Def. Facebook, Inc.'s Mot. to Dismiss Am. Compl. at 36-38 (Nov. 17, 2021), ECF No. 85.

581 F. Supp. 3d 579, 638 (S.D.N.Y. 2022) (Cote, J.), *aff'd*, No. 22-728, 2024 WL 1026010 (2d Cir. Jan. 23, 2024).  That is consistent with Section 13(b), which provides that "after proper proof, the court may issue[] a permanent injunction." 15 U.S.C. § 53(b). Section 13(b)'s language thus does not alter the Court's fundamental task or provide any basis for allowing late-in-time evidence.

## CONCLUSION

The FTC has alleged and is showing at trial that Meta currently holds an unlawful monopoly in the relevant market.  *See, e.g.*, Substitute Am. Compl. ¶¶ 105, 127, 164, 218 (Sept. 8, 2021), ECF. No. 82.  But this does not mean that Meta is entitled to continue injecting new evidence into the proceedings, no matter how late in the trial or how prejudicial to the FTC.  As a matter of civil procedure, fundamental fairness, and simple logic, the FTC cannot be forced to prove up-to-the-minute market conditions in a complex antitrust case spanning a 13-year period continuing through trial.  Common sense limits must apply.  For the foregoing reasons, the Court should exclude or give little weight to Meta's late injection of selective testimony and purported new data and information.

Dated: May 9, 2025

Respectfully submitted,

*/s/ Daniel Matheson*
Daniel J. Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Maria Dimoscato (D.C. Bar 489743)
Christopher Harris (D.C. Bar 1044088)

Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*