# EXHIBIT A

```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3   ----------------------------x
     UNITED STATES, et al.,       :   Civil Action No.:
 4                                :   1:23-cv-108
              Plaintiffs,         :
 5      versus                    :   Friday, September 20, 2024
                                  :   Alexandria, Virginia
 6   GOOGLE LLC,                  :   Day 10 p.m.
                                  :   Pages 1-165
 7            Defendant.          :
     ----------------------------x
 8
             The above-entitled bench trial was heard before the
 9   Honorable Leonie M. Brinkema, United States District Judge.
     This proceeding commenced at 2:00 p.m.
10
                          A P P E A R A N C E S:
11
     FOR THE PLAINTIFFS:    GERARD MENE, ESQUIRE
12                          OFFICE OF THE UNITED STATES ATTORNEY
                            2100 Jamieson Avenue
13                          Alexandria, Virginia  22314
                            (703) 299-3700
14
                            JULIA TARVER WOOD, ESQUIRE
15                          AARON TEITELBAUM, ESQUIRE
                            MICHAEL WOLIN, ESQUIRE
16                          ALVIN CHU, ESQUIRE
                            UNITED STATES DEPARTMENT OF JUSTICE
17                          ANTITRUST DIVISION
                            450 Fifth Street, NW
18                          Washington, D.C.  20530
                            (202) 894-4266
19
                            BRENT NAKAMURA, ESQUIRE
20                          UNITED STATES DEPARTMENT OF JUSTICE
                            ANTITRUST DIVISION
21                          450 Golden Gate Avenue
                            Room 10-0101
22                          San Francisco, California  94102
                            (415) 205-3248
23

24

25        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

1  A    So we review those earnings calls.  We look at what our
2  competitors are saying about the marketplace, and we try to
3  get a sense of where they're headed with their strategic
4  direction and their technical direction.  So it's pretty
5  important information for us.
6  Q    Does that impact you as the head of your group?
7  A    Absolutely.  It gives us a sense of where we need to
8  focus our efforts and where we need to double our efforts.
9  Q    Okay.  And specifically with respect to the Trade Desk,
10 what, if anything -- what, if any, impact on you has The
11 Trade Desk earnings calls had?
12 A    The most recent earnings calls -- there were some
13 statements in there that their CEO made around the
14 competitiveness of Google that I utilized to --
15          THE COURT:  Just a second.  We're getting an
16 objection.
17          Is this, again, after the time period of discovery
18 closed?
19          MR. TEITELBAUM:  At least I believe -- based on
20 the transcript that we have in the defense binder, that's
21 the time frame we're talking about, Your Honor.  We are
22 talking about August 8, 2024, at least based on what's in
23 the binder.
24          MS. DUNN:  So this is a public statement that has
25 already come up in this trial.  And, in particular, this

1    witness read it.  It impacted him, and he talked about it in
2    specific with respect to competition and with respect to his
3    team.  So I don't seek to admit it for its truth, and it was
4    not an available document during the production period.
5              THE COURT:  Well, the document is in evidence.
6              MS. DUNN:  It is not, Your Honor, in evidence.
7              THE COURT:  It was discussed.
8              MS. DUNN:  It was discussed.  It was discussed
9    but -- do you mind if I ask --
10             THE COURT:  Wait.  Wait.  One at a time.
11             MS. DUNN:  What happened was the CEO -- or I'm
12   sorry, the CRO from The Trade Desk testified.  But because
13   the earnings statement was made by the CEO of The Trade
14   Desk, an objection was made that it was hearsay.  Your Honor
15   didn't let it in.
16             In this circumstance, this witness read it and
17   conveyed it to his team and gave competitive direction to
18   his team.  So I am offering it for the impact on the
19   listener and not for the truth of the matter.
20             THE COURT:  I think you can ask this witness what,
21   if any, directions he's been giving to his team to address
22   perceptions of competitive pressure.  That's certainly
23   within the scope.  But this degree of specificity isn't
24   going to work if it didn't come out during discovery.
25             MR. TEITELBAUM:  And we would just object to the

1  discussion, given that we're talking about August of 2024,
2  after the discovery cutoff regardless of the --
3              THE COURT: So before August 2024, what, if any,
4  discussions was this witness having with his team to address
5  competitive problems?
6              MR. TEITELBAUM: I'm sorry, Your Honor. We would
7  be asking for before September 2023, which was the fact
8  discovery cutoff.
9              THE COURT: All right.
10             MS. DUNN: Well, Your Honor, just for the record
11 then, there is some substantial testimony, including to
12 which we objected, that the plaintiffs' counsel elicited
13 from witnesses about up to the present day. So if that rule
14 were to obtain, we'd have to go back and look at the record
15 because that has been allowed when they elicited it. So
16 this is very narrow. I'm happy to ask the question, Your
17 Honor, reframed, but I think that rule has not been applied
18 thus far.
19             THE COURT: Well, now that I'm thinking back, some
20 of the third parties who came in -- I don't think the timing
21 of their testimony was all that specific. All right.
22             We need to keep this moving. This is all not that
23 devastating or changing any of the core issues, I don't
24 think, in this case. It almost sounds like it's going to
25 remedies versus liability, frankly. But anyway, let's just

Direct Examination - S. Sheffer

1  continue this.  All right.
2  BY MS. DUNN
3  Q    All right.  Mr. Sheffer, what direction have you given
4  your team with respect to competition?
5  A    So after reading that earnings report and what the CEO
6  said about our competitive status, I did two things:
7           One was I said to our team, "We need to find a way
8  to show up better in the marketplace to compete more
9  effectively with The Trade Desk because.  We need to do a
10 better job."
11          The second thing was I've used that as an internal
12 communication vehicle to try to get more resources for our
13 business from the senior leadership of Google.
14 Q    And when you say that -- can you just explain to the
15 Court what you conveyed to your team?
16 A    Yes.  So the statement that was made by the CEO said
17 that Google was --
18          MR. TEITELBAUM:  Objection.
19          THE COURT:  At this point, I'm going to sustain
20 the objection.  Quite frankly, a lot of this testimony is
21 going to be highly questionable and, I'm sure, open up a lot
22 of cross because, frankly, once Google is put on notice of
23 all of these lawsuits addressing these core issues, I think
24 some of this would already be tainted.  All right.  So think
25 about that.  All right.