# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br>                    Plaintiff, <br><br>           v. <br><br> **META PLATFORMS, INC.** <br><br>                    Defendant. | Civil Action No. 1:20-cv-03590 (JEB) |

## FEDERAL TRADE COMMISSION'S OPPOSITION TO META'S MOTION TO STRIKE THE TESTIMONY OF PROFESSOR C. SCOTT HEMPHILL

Rather than contest this case on the merits, Meta resorts to personal attacks and misdirection in its Motion to Strike Testimony of Professor Scott Hemphill ("Mot."). ECF 606. But as Meta's own motion concedes, Prof. Hemphill prepared two "extensive" and rigorously sourced reports, Mot. at 3, which formed the basis of detailed trial testimony over four days. Meta has already cross-examined Prof. Hemphill at length on his analysis and credibility, and its motion fails to provide any justification for striking Prof. Hemphill's testimony. It is also false that Prof. Hemphill "conceal[ed]" or "misle[d]," Mot. at 3, when the presentation that is at the heart of Meta's objections was both reported publicly and openly discussed by Prof. Hemphill during his deposition.

While styled as a "Motion to Strike," Meta does not cite to Fed R. Civ. P. 12(f), Fed R. Evid. 103(a)(1), or any other procedural or evidentiary rule for striking Prof. Hemphill's already-delivered trial testimony. This deficiency is telling and underscores the lack of any legal basis for the motion. Given Meta's passing reference to Prof. Hemphill's testimony being "biased and unreliable under *Daubert*," Mot. at 5, Meta's muddled motion is best construed as a belated *Daubert* motion. This *Daubert* challenge, however, is both factually and legally meritless and untimely. Meta's motion should therefore be summarily denied.

**I. Meta's Motion Lacks Any Legal or Factual Basis**

Meta's *Daubert* challenge to Prof. Hemphill lacks legal or factual support. Expert testimony is admissible when it is offered by a qualified witness, using reliable means and sufficient facts or data. *See, e.g.*, *Robinson v. Dist. of Columbia*, 75 F. Supp. 3d 190, 199 (D.D.C. 2014) (describing the admissibility standard under *Daubert*); *see also* Order at 6-7 (Apr. 7, 2025), ECF 517. Prof. Hemphill readily cleared this threshold. He is well-qualified as an expert in industrial organization economics, as the Court already found with no objection by Meta. Trial Tr. (May 12, 2025) at 204:20-24. And contrary to Meta's misleading suggestion,

1

Mot. at 4, multiple courts have found Prof. Hemphill qualified as an expert in economics and as offering reliable opinions. *See, e.g.*, *FTC v. Vyera Pharms., LLC*, No. 20cv706, 2021 WL 5279465, at *4-5 (S.D.N.Y. Nov. 12, 2021); *FTC v. Shkreli*, 581 F. Supp. 3d 579, 641-42 (S.D.N.Y. 2022); *United Healthcare Servs., Inc. v. Cephalon, Inc.*, No. 17-555, 2019 WL 2994660, at *14 (E.D. Pa. July 8, 2019). Indeed, Prof. Hemphill has even been appointed as a neutral, independent technical advisor to assist a district court in assessing economic evidence. Trial Tr. (May 12, 2025) at 204:14-19; *In re Am. Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221, 2015 WL 4645240, at *6, *11 (E.D.N.Y. Aug. 4, 2015).

Further, Prof. Hemphill offered robustly supported economic opinions that he arrived at using reliable methods. *See, e.g.*, Trial Tr. (May 12, 2025) at 223:1-226:4; Trial Tr. (May 27, 2025) at 12:13-15:15, 17:24-19:23. Meta contradicts its own claims of unreliability and prejudgment by flagging that Prof. Hemphill produced "extensive reports (853 pages in total)." Mot. at 3. Prof. Hemphill's reports are detailed and rigorously supported with quantitative and qualitative evidence drawn from Meta's own data and ordinary course documents, third-party data and documents, and sworn testimony from Meta and other industry participants. Ex. A (Hemphill Rep.) at §§ 1.4-5, 3.2, App. D; Ex. B (Hemphill Rebuttal Rep.) at §§ 1.2, 2.2.2, App. B. This rigorous analysis far exceeds *Daubert*'s standards, just as the Court found in rejecting Meta's pretrial *Daubert* motion of one of Prof. Hemphill's opinions. Order at 6-7 (Apr. 7, 2025), ECF 517.

Stymied by Prof. Hemphill's detailed and well-supported economic analysis, Meta argues that Prof. Hemphill should be excluded because he has shown "bias" and acted as an "advocate," who "prejudged" the facts. Mot. at 1, 3-5. This is a baseless argument that misstates the law and facts. At the outset, the law does not require experts to be objective or disinterested. *See, e.g.*,

*Liberty Mut. Ins. Co. v. B. Frank Joy Co.*, 424 F.2d 831, 832 (D.C. Cir. 1970) ("[D]isinterestedness is not required of expert witnesses any more than it is required of ordinary witnesses."); *CIMC Vehicles Grp. v. Direct Trailer, LP*, 2013 WL 12137320, at *8 (S.D. Tex. Mar. 28, 2013) ("Federal Rule of Evidence 702 contains no objectivity requirement.").

Claims of bias are a basis for "rigorous cross-examination, not [] exclusion." *FDIC v. Dellen*, 2012 WL 12887407, at *4 (C.D. Cal. Oct. 18, 2012); *see also Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010) (reversable error to exclude expert testimony on grounds of bias); *Robinson*, 75 F. Supp. 3d at 199-201 (D.D.C. 2014) (denying motion to strike and holding that attacks on bias and credibility are issues for cross-examination, not a reason to strike an expert); *Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*, 2007 WL 4730934, at *5 (D.D.C. May 30, 2007) (concerns about expert's bias "are fodder for cross examination and impeachment but do not warrant exclusion"). Thus, even if Meta's fanciful and erroneous recitation of the facts were credited, Prof. Hemphill's testimony would be admissible.

More fundamentally, Meta's recitation of facts regarding Prof. Hemphill's purported "bias" is false and misleading. Even a cursory review of the record reveals that Meta's assertions that Prof. Hemphill has an "axe to grind," made "prejudgments," or "invented" the FTC's case (Mot. at 1, 3, 4) are baseless. As Prof. Hemphill testified (and as Meta's motion does not dispute), Prof. Hemphill had a single meeting with FTC staff in June 2019 at which he discussed an academic perspective on a potential investigation into Meta's conduct—and he had no involvement in the FTC's investigation and ensuing litigation (which began December 9, 2020) against Meta for more than two years until the FTC retained him as an expert, well after filing suit. Trial Tr. (May 14, 2025) at 115:2-116:20; Trial Tr. (May 27, 2025) at 176:18-177:11.

3

As Prof. Hemphill also testified, the 2019 presentation relayed public information that indicated a basis for further investigation but did not represent final conclusions. *Id.* at 115:2-116:2; Trial Tr. (May 13, 2025) at 153:8-13, 165:3-12, 166:13-21; Trial Tr. (May 27, 2025) at 173:19-174:8, 176:14-17.  Indeed, Prof. Hemphill's opinions in this matter depart in various ways from ideas in the presentation, belying Meta's assertion that the presentation represents prejudgments or conclusions.  For example, Prof. Hemphill has not defined a relevant market for advertising and has not opined that Meta has market or monopoly power over advertisers in this case.  *Compare* Mot., Ex. 5 at 33, *with* Trial Tr. (May 14, 2025) at 72:17-22.

Further, that Prof. Hemphill commented on public information suggesting antitrust concerns about Meta is unremarkable and reflects appropriate knowledge of issues in the antitrust economics field.  By mid-2019, for instance, multiple foreign antitrust enforcers had found Meta to possess significant market power over users in their respective geographic markets, *see* FTC Counterstatement ("CMF") ¶ 1110(a), ECF 363-2; Ex. B (Hemphill Rebuttal Rep.) ¶ 521(a)-(b), and that number has grown since.  *See* CMF ¶ 1110(b)-(d), ECF 363-2.

Underscoring the hollowness of Meta's objections, Meta's own experts have much greater claims to unreliability, "bias," "prejudgment," or "advocacy," at least as Meta construes the terms.  Prof. Tucker, for instance, has testified on behalf of Meta eight times, *see* Ex. C (Tucker Dep.) at 15:6-8—repeat testimony that would imply "preconceived notions" entering each case and being an "advocate for a party."  Mot. at 1.  Prof. Carlton is also a repeat player for Meta.  Trial Tr. (May 21, 2025) at 242:9-18; Ex. D (Carlton Rep.) at App'x A.  And unlike Prof. Hemphill, who has never had opinions excluded, Prof. Carlton has had his testimony excluded or disregarded at least seven times in the last ten years.  CMF ¶ 940, ECF 363-2.

Finally, none of Meta's cited cases lend support to excluding Prof. Hemphill's testimony.

4

Most involve experts with questionable qualifications or suspect methodologies. *See, e.g.*, *Claar v. Burlington N. R.R.*, 29 F.3d 499, 502-03 (9th Cir. 1994); *In re Bextra & Celebrex Mktg. Sales Prac. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176-77 (N.D. Cal. 2007); *Sutherland v. Matrixx Initiatives, Inc.*, 2006 WL 6617000, at *7-8 (N.D. Ala. Nov. 7, 2006); *Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986). And the other citations are irrelevant. *See, e.g.*, *Phoenix Restoration Grp., Inc. v. Liberty Mut. Grp. Inc.*, 2020 WL 622152, at *3-5 (D.D.C. Feb. 10, 2020) (discussing "two-hatted" witnesses providing both fact and expert testimony); *Hall v. CIA*, 538 F. Supp. 2d 64, 73 (D.D.C. 2008) (plaintiff named himself as an expert); *Dick v. United States,* 339 F. Supp. 1231, 1235 (D.D.C. 1972) (irrelevant dicta).

## II.     Meta's Motion to Strike Is Untimely and Prejudicial

Meta's motion should additionally be denied as untimely and prejudicial. This Court set a deadline of Feb. 21, 2025, for all motions *in limine* and other pretrial motions. Order at 2 (Dec. 20, 2024), ECF 390. Meta attempts to manufacture an excuse for its delay by falsely claiming "concealment." Mot. at 3. But Meta was clearly aware of Prof. Hemphill's meeting with the FTC, as Prof. Hemphill testified about it at his deposition, and the presentation was publicly reported. *See* Trial Tr. (May 14, 2025) at 113:7-115:1; Mot., Ex. 2 at 3 (noting that Facebook declined to comment on the New York Times's reporting); *see also* Mot. at 3, Ex. 7 (incongruously claiming public article involved effort to conceal). Meta's motion is therefore untimely, and granting it now, after the FTC has rested its case, would severely prejudice the FTC. *See Macsenti v. Becker*, 237 F.3d 1223, 1232-33 (10th Cir. 2001) (*Daubert* motion at the close of evidence was untimely).

Dated: June 6, 2025                         Respectfully submitted,

*/s/ Daniel Matheson*
Daniel Matheson (D.C. Bar 502490)
Krisha Cerilli (D.C. Bar 983281)
Patricia Galvan
David Brunfeld (D.C. Bar 1672059)
Oren Vitenson (D.C. Bar 90005750)
Benjamin Rashkovich (D.C. Bar 5972724)
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Telephone: (202) 326-2075
Email: dmatheson@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*